UMG Recordings, Inc. et al v. Veoh Networks, Inc. et al Doc. 63

Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UMG RECORDINGS, INC., et al.<br>Plaintiffs,<br>vs.<br>VEOH NETWORKS, INC. a California Corporation; and DOES 1-10, inclusive<br>Defendants. | **Case No. CV 07 5744 – AHM (AJWx)**<br>The Honorable A. Howard Matz<br>**VEOH NETWORK, INC.'S OPPOSITION TO UMG'S MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD DEFENDANTS** |



Dockets.Justia.com

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1
II. FACTUAL BACKGROUND ........................................ 2
A. UMG's Pre-Filing Conduct ........................................ 2
B. UMG's Proposed First Amended Complaint ........................................ 4
III. LEGAL DISCUSSION ........................................ 7
A. The Relevant Factors Compel Denial of UMG's Motion ........................................ 7
1. UMG's Litigation Tactics Strongly Indicate That Its Motion For Leave to Amend Was Filed in Bad Faith and With Dilatory Motive ........................................ 7
2. UMG's Undue Delay and The Prejudice to Veoh Also Strongly Favor Denial of UMG's Motion ........................................ 9
3. The Lack of Substantive Merit of UMG's Proposed FAC Further Indicates Bad Faith ........................................ 9
IV. CONCLUSION ........................................ 13

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF AUTHORITIES

Page(s)

**CASES**


*Burdick v. Koerner*,
988 F. Supp. 1206 (E.D. Wis. 1998) ........ 11

*Foman v. Davis*
371 U.S. 178 (1962) ........ 7

*Forsyth v. Humana, Inc.*,
114 F.3d 1467 (9th Cir. 1997) ........ 7

*HiRel Connectors, Inc. v. United States,et al.*,
2005 U.S. Dist. LEXIS 44181 ........ 7

*Hughes Aircraft Co. v. National Semiconductor Corp.*,
857 F. Supp. 691 (N.D. Cal. 1994) ........ 8, 9

*Shady Records, Inc. v. Source Enters., Inc.*,
73 U.S.P.Q.2d 1954 (S.D.N.Y. 2005) ........ 12

*Softel Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
118 F.3d 955 (2d Cir. 1997) ........ 12

*Sorosky v. Burroughs Corp.*,
826 F.2d 794 (9th Cir.1987) ........ 7

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........ 10

*UMG Recordings, Inc. v. Bertelsmann AG*,
222 F.R.D. 408 (N.D. Cal. 2004) ........ 10, 11, 12

*UMG v. Hummer Winblad Venture Partners*,
2007 U.S. Dist. LEXIS 19956 (March 19, 2007) ........ 10


**STATUTES**


Fed.R.Civ.P. 15(a) ........ 7



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**OTHER AUTHORITIES**

Matt Richtel, *Napster Has a New Interim Chief and Gets a $15 Million Investment*, NY Times (May 23, 2000) .......... 10

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## I. INTRODUCTION

Plaintiffs' motion for leave to amend is nothing more than a transparent and meritless litigation tactic aimed solely to put pressure on Veoh and its investors and which will cause unnecessary delay in these proceedings. Plaintiffs (collectively "UMG") represented to this Court that they needed to conduct preliminary discovery to determine *whether* they had any basis to bring claims in this case against Veoh's investors. Despite this representation, UMG showed its predisposition early by sending Veoh's investors letters stating that it may name them as defendants *with or without* obtaining discovery, and advising Veoh's counsel that it intended to proceed with this motion before it had obtained any discovery from the investors, other than copies of document retention correspondence UMG had sent the investors after filing the litigation against Veoh, copies of UMG's subpoenas, pleadings, and press articles about Veoh—none of which remotely supported claims of secondary liability for copyright infringement against the investors.

Then, when UMG had received discovery from Veoh's investors that showed merely the unsurprising proposition that they had made investments in Veoh and that certain of Veoh's investors had chosen an individual to sit on Veoh's Board of Directors (discovery that provided no basis whatsoever for any claims of copyright infringement and facts which were public knowledge from Veoh's website, and mentioned in UMG's initial complaint ten months ago), UMG nonetheless brought this motion to name as defendants each of Veoh's investors who had selected an individual to sit on Veoh's Board. As Plaintiffs well know, mere status as an investor, and the selection of minority representation on a Board of Directors, is insufficient to create liability in these circumstances. UMG's motion for leave to amend can therefore only have been made in bad faith, as an improper litigation tactic intended to expand and unnecessarily delay this case and put maximum pressure on Veoh and its investors. Its proposed amended complaint is baseless and it would waste the resources of this Court and the parties to permit claims that are immediately

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

susceptible to inevitable motions to dismiss. UMG's motion should be denied.

## II. FACTUAL BACKGROUND

UMG's actions leading up to this motion leave no doubt that it intended from the beginning to bring Veoh's investors into this lawsuit, with or without any basis to do so, and that UMG's motive for doing so is solely to exact pressure on those investors through the burden of defending meritless claims.

### A. UMG's Pre-Filing Conduct

At the March 17, 2008 scheduling conference, UMG explained to the Court that it was deferring any claims against Veoh's investors until it obtained preliminary discovery in order to determine whether it had any reasonable basis to make the necessary allegations. (March 17, 2008 Hearing Tr. at 10, attached to the McReynolds Decl., ¶ 5 and Ex. 4 ("And once we get the discovery and find out what their role is we'll make an appropriate determination.")) Indeed, that representation was consistent with prior ones that UMG had made, including in the Complaint and Joint Rule 26(f) report. (Complaint ¶ 14 (alleging that they may add the investors as defendants once the full nature and extent of the investors contribution was known); Joint Rule 26(f) Report Sec. V (UMG might add one or more investors as defendants "depending upon information learned in discovery.").) When UMG made all of these representations, UMG was already well aware that certain of Veoh's investors had chosen an individual to sit on Veoh's Board of Directors. (*See* Complaint, ¶ 14 ("Certain of Veoh's investors also reportedly serve on Veoh's board and hold positions as directors, including Messrs. Michael Eisner, Todd Dagres, and Arthur Bilger."))

Notwithstanding UMG's representations to this Court that the Investors would only be added as defendants if discovery provided a sufficient factual basis for doing so, UMG's conduct made clear that it intended to bring the investors in irrespective of what information UMG obtained in discovery. On February 15, 2008, UMG served document subpoenas on seven Veoh investors, including Jonathan Dolgen, Firefly3 LLC ("Firefly"), Time Warner, Inc. ("Time Warner"), Spark Capital Partners, LLC





Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

("Spark"), Shelter Capital Partners ("Shelter"), The Tornante Company, LLC ("Tornante"), and Goldman Sachs Group, Inc. ("Goldman Sachs").[1] Each of the investors timely served written responses to the subpoenas in early April, 2008.[2] In these responses the investors agreed to produce certain categories of documents and offered to meet and confer with Plaintiffs with respect to reasonable narrowing of other vastly overbroad requests.[3] Several of the investors also produced non-confidential documents,[4] and explained that they would produce additional confidential documents as soon as a protective order was in place.[5]

The investors did not hear further from UMG until *a month later,* on May 13, 2008, when UMG sent letters to each of the investors stating that Plaintiffs may seek to add them as defendants *with or without* any significant discovery.[6] Shortly thereafter, on May 20, 2008, UMG contacted Veoh's counsel to request a pre-motion conference in anticipation of the instant motion,[7] and during that conference advised Veoh's counsel that Plaintiffs in all likelihood would proceed to file this motion, notwithstanding the fact that they had not yet received any discovery from Veoh's investors other than copies of document retention correspondence UMG had sent the investors after filing the litigation against Veoh, copies of UMG's subpoenas, pleadings, and press articles about Veoh.[8]

---

[1] Copies of the subpoenas served on Goldman Sachs, Shelter, Tornante, and Spark are attached to the Declaration of Anjuli McReynolds at ¶ 3, Exh. 2. Copies of the subpoenas served on Dolgen, Firefly3 and Time Warner are attached to the Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), ¶ 2 and Exh. A.

[2] Golinveaux Decl., ¶ 3 and Exh. B (copies of written responses and cover correspondence).

[3] (*Id.*)

[4] These productions of non-confidential documents consisted of copies of correspondence received from UMG regarding the lawsuit (attached to the McReynolds Decl., ¶ 2 and Exh. 1.), copies of the document subpoenas served on Veoh's investors by UMG, pleadings, and press articles regarding Veoh.

[5] (*Id.*, ¶ 3, Exh B.)

[6] (Golinveaux Decl., ¶ 4 and Exh. C (Ledahl Ltrs. dated May 13, 2008)).

[7] (*Id.*, ¶ 5, Exh. D (May 20, 2008 Ledahl Ltr.)).

[8] (*Id.*, ¶ 6.)

During the last week of May, days after the court entered an Interim Protective Order, several of the investors made substantial document productions to Plaintiffs of confidential material responsive to the subpoenas.[9]

On the eve of their deadline to amend the complaint to add new parties, Plaintiffs also began serving deposition subpoenas on each of the seven investors.[10] When the investors' counsel attempted to work with Plaintiffs' counsel to set dates for depositions in advance of Plaintiffs' deadline to amend, however, one by one Plaintiffs voluntarily withdrew each of the deposition notices, and took no depositions.[11] That is, Plaintiffs opted to forego the very discovery that they claimed to need to make an "appropriate determination" of whether they had a sufficient factual basis to assert claims against the investors.[12]

When discovery produced by the Investors failed to provide any support for claims of copyright infringement, and without taking a single deposition, on June 16, 2008, UMG nonetheless filed this motion for leave to amend the Complaint to add as defendants each of the seven investors who had also chosen an individual to sit on Veoh's Board, namely Goldman Sachs, Shelter, Spark, and Tornante (collectively, the "Investors").

**B. UMG's Proposed First Amended Complaint**

UMG's [Proposed] First Amended Complaint ("FAC") asserts claims of contributory copyright infringement, vicarious copyright infringement, and inducing copyright infringement against the investors. (FAC, Counts II-IV). The crux of UMG's allegations concerning the Investors in its FAC, is nothing more than that they made investments in Veoh, and each chose an individual to sit on Veoh's Board of Directors. (FAC ¶ 16.)

---

[9] (*Id.*, ¶ 7.)
[10] (*Id.*, ¶ 8.)
[11] (*Id.* ¶ 9.)
[12] (McReynolds Decl. ¶ 5 and Ex. 4, p. 10:9.)

The best UMG can muster against the Investors are utterly conclusory allegations that fall far short of stating claims for secondary copyright infringement, including that the Investors:

- "supported [Veoh]—financially and operationally" (FAC ¶ 4);
- together "comprise a majority of Veoh's Board of Directors and, through those directorships, control Veoh and make all important operational decisions for Veoh," (*id.*), including "the selection and hiring of employees," "as well as decisions about which content would continue to be offered on Veoh, and which would not." (FAC ¶ 31);
- knew "full well that the site displayed and distributed copyrighted works" (FAC ¶ 5);
- "did this solely to enrich themselves" (*id.*);
- "support, facilitate, and benefit from Veoh's infringing acts." (FAC ¶16);
- provide "critical funding necessary for Veoh to continue its infringing operations." (FAC ¶ 31).

In an attempt to concoct the appearance of the "operational control" which would be an indispensable element in any attempt to support claims of vicarious liability against the Investors, UMG alleges in vague and conclusory fashion that the Investors *collectively* "comprise a majority of Veoh's Board of Directors" and "make all important operational decisions at Veoh," "far in excess" of typical shareholders, in order to direct the operations of Veoh. (FAC ¶¶ 4-5).[13] As further discussed in Section III.2.a. below, even giving Plaintiffs the benefit of their pleading, this is insufficient to support claims of secondary copyright infringement against the Investors.

[13] For the Court's convenience, attached to the Golinveaux Decl., ¶ 10 and Exh. F, is a redline showing all changes in UMG's FAC from its Complaint.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Similarly, UMG alleges in conclusory fashion that the Investors knew of infringing activity (FAC ¶ 5), but does not allege which Investor knew what about which infringing conduct, and does not allege that *any* Investor was aware that any UMG infringing content at issue in this lawsuit had appeared on Veoh. Likewise, UMG has not alleged that Veoh or the Investors ever promoted Veoh to infringe copyrights.

Attempting to create the impression that their decision to name the Investors was based on the documents that were provided in discovery by Veoh's Investors, Plaintiffs submit a declaration with their motion for leave to amend, including minutes from Board of Director meetings and three email communications from Board members. (McReynolds Decl., ¶¶ 12-17 and Exhs. 8-13). But none of these materials even support Plaintiffs' conclusory allegations of secondary copyright infringement by the Investors.[14]

The fact that the Board collectively may have had ultimate oversight responsibility for corporate strategy (like all boards of directors) is hardly an indication that individual Board member Investors had the ability to control what third parties uploaded to Veoh, or had day-to-day operational control over the company. The Investors who participated on Veoh's Board performed just as board members are expected to perform. There is nothing in the proposed FAC to suggest that the Investors encouraged, contributed to, had knowledge of, or controlled any of the allegedly infringing conduct at issue in this case.

[14] Exhibits 8-10 are routine Board minutes reflecting routine Board business, and the Board being updated by management and approving certain decisions, but include nothing to suggest that any of the Investors were involved in the day-to-day management of Veoh. Exhibit 10 is simply an email discussion regarding shareholder voting rights. Exhibit 11 is another email discussion regarding the importance of Veoh fully complying with its obligation under the DMCA; and Exhibit 12 is simply an email discussion regarding a potentially infringing third party post to Veoh unrelated to any alleged infringements of UMG's content.



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## III. LEGAL DISCUSSION

### A. The Relevant Factors Compel Denial of UMG's Motion

Where, as here, the opposing party has filed a responsive pleading, the party may amend its pleadings only with leave of court or by written consent of the opposing party. Fed.R.Civ.P. 15(a). A court should consider the following factors when determining whether to grant a leave to amend: (1) bad faith or dilatory motive; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962; *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1482 (9th Cir. 1997) (citations omitted). Each of the relevant factors compel denial of UMG's motion for leave to amend.

#### 1. UMG's Litigation Tactics Strongly Indicate That Its Motion For Leave to Amend Was Filed in Bad Faith and With Dilatory Motive

Motions for leave to amend are properly denied where the amendment is sought in bad faith, such as for an improper motive or litigation tactic. *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir.1987) ("bad faith motive is a proper ground for denying leave to amend."); *see also, HiRel Connectors, Inc. v. United States, et al.*, 2005 U.S. Dist. LEXIS 44181, *16-18 (denying leave to amend where the court doubted the movant's good faith in seeking leave to amend as it was doubtful that purported new evidence changed the movant's view with respect to his claims).

From the outset of this litigation, UMG has abused the judicial process in an effort to exert maximum pressure on Veoh, its financial inferior, even going so far as to sue Veoh on the opposite side of the country, for the identical conduct at issue here.[15] When this dispute began, UMG argued strenuously that this forum was by far the most convenient to litigate the allegations against Veoh; months later, even as this dispute progresses, it is arguing to a New York court that New York is the most

[15] (Golinveaux Decl., ¶ 11 and Exh. G (NY complaint).)



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

convenient forum for its copyright dispute with Veoh.[16] Proliferating multiple litigation assaults are characteristic of UMG's bad faith tactics.

Throughout this litigation, UMG has represented that it would only name the Investors if it had a factual basis to do so. As recently as March of this year, UMG told the Court that it would seek discovery regarding the Investors in order to make "an appropriate determination" to assert claims against them or not.[17] The clear inference was that UMG had not yet engaged in sufficient investigation or obtained sufficient evidence to support a good faith belief that the Investors had engaged in any conduct that would engender liability.

Before receiving any significant discovery, however, UMG advised the Investors that regardless of whether or not they produced requested discovery, UMG may seek leave to amend its Complaint to add them as defendants. (*Id.*, Exh. C.) UMG first delayed seeking documents, and then cancelled all depositions of the Investors. Now, in the absence of anything to support allegations of copyright infringement against the Investors other than their mere status, UMG proceeds to ask the Court for leave to amend to add the Investors—despite the fact that UMG was well aware of who Veoh's investors and Board members were when it filed this action in September 2007. (*See* Complaint, ¶ 14.) Such tactics call into question the merit of UMG's instant motion. *See Hughes Aircraft*, 857 F. Supp. at 701 (movant's "litigation tactics thus far in this case raise a serious question whether their current Motion for Leave to File an Amended Counterclaim was filed in bad faith.").

UMG's misrepresentations to this court, the lack of merit in UMG's unsupported theories of liability, the lack of any factual basis to support UMG's predestined allegations, and the transparent bad faith—evident in the trail UMG tread to this motion—compel denial of this baseless motion. The inescapable conclusion is that the motion for leave to amend is yet another transparent tactic simply designed to gain

---

[16] (*Id.*)
[17] (McReynolds Decl. ¶ 5 and Ex. 4, p. 10:9.)



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

leverage at the negotiating table; such bad faith should not be countenanced.

**2. UMG's Undue Delay and The Prejudice to Veoh Also Strongly Favor Denial of UMG's Motion**

If UMG intended to name the Investors based solely upon the fact that they had invested in Veoh and had each selected a Board member, it could have done so ten months ago when UMG filed its initial Complaint in this action. If it had done so, all parties would have been involved in the pretrial conference process. UMG's tactic of expending months on half hearted attempts to obtain discovery from the Investors (first noticing depositions and then cancelling them), and then proceeding to name the Investors even when documentary discovery from the Investors provided no support to do so, further indicates that UMG's true motive is to protract this litigation and put maximum pressure on a much smaller opponent.

Fact discovery in this case is currently set to close on January 12, 2009. The parties have already exchanged very significant document productions in this case, and UMG's Rule 30(b)(6) deposition of Veoh is scheduled for next week.[18] The addition of four new parties ten months into this case—each of whom will have the right to challenge the amended pleading—will no doubt require a significant extension of the fact discovery deadline, and of the entire case schedule. Veoh will be greatly prejudiced by having the sword of this litigation and its attendant costs hanging over its head that much longer. UMG's efforts to protract this litigation should not be countenanced.

**3. The Lack of Substantive Merit of UMG's Proposed FAC Further Indicates Bad Faith**

UMG's bad faith is underscored by the fact that its proposed claims against the Investors lack any substantive merit. Lack of substantive merit may support a finding of bad faith. *Hughes Aircraft Co. v. National Semiconductor Corp.*, 857 F. Supp. 691,

---

[18] (*Id.*, ¶ 12.)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

701 (N.D. Cal. 1994). Leave to amend "does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted). UMG's allegations against the Investors fall far short of what is required to support the claims alleged, and would be susceptible to immediate motions to dismiss. UMG's overreaching efforts to bring the Investors into this case based upon the mere fact that they invested in Veoh and chose a person for its Board, should be rejected out of hand.

While both in its motion for leave to amend and at the case management conference[19] UMG attempted to analogize this case to a decision denying a motion to dismiss two investors in litigation related to the now defunct Napster service, *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) ("*Bertelsmann*"), the facts of this case are vastly different from those presented in *Bertelsmann*. The two investor defendants in *Bertelsmann*, who were added after significant discovery was conducted, were alleged to be the "only" source of funding for Napster, to have assumed "full control over Napster's operations," and to be "firmly" in control of Napster's management. (*Id.* at 412-13.[20]) Moreover, the plaintiff in *Bertelsmann* made specific allegations that Bertelsmann had "convened a secret 'task force,'" and adopted the decision of the "task force" to keep Napster's

[19] At the March 17 conference where UMG represented to the Court that it would only add Veoh's investors if further discovery supported it, counsel for UMG falsely asserted to the Court that "ultimately the investors in Napster… were held liable." (March 17, 2008 Hearing Tr. at 9-10, attached to the McReynolds Decl., ¶ 5 and Ex. 4.) UMG was lead plaintiff in two separate actions against investors in Napster, and is uniquely qualified to know the investors in Napster ultimately were *not* held liable. UMG settled with both defendants in 2006 and 2007. *UMG v. Hummer Winblad Venture Partners*, Case No. C-MDL-00-1369 (MHP), Case No. C-04-1166 (MHP), 2007 U.S. Dist. LEXIS 19956, at *6 (March 19, 2007).

[20] A partner of one of the defendants was even interim CEO of Napster. Matt Richtel, *Napster Has a New Interim Chief and Gets a $15 Million Investment*, NY Times (May 23, 2000) ("Hummer Winblad also said it had placed one of its partners, Hank Barry, as the company's interim chief executive") (available at http://query.nytimes.com/gst/fullpage.html?res=9C0CE6DE1F3AF930A15756C0A9669C8B63&scp=2&sq=%22HANK+BARRY%22++NAPSTER+INTERIM&st=nyt).



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

services in operation, even though Napster had already been found to be unlawful and infringing. (*Id.* at 412-413.) In *Bertelsmann*, plaintiff's allegations went beyond merely alleging that defendants knew of or contributed to infringing activity, the defendant "specifically *ordered* that such activity take place." (*Id.* at 413.)

In stark contrast, the best UMG can muster against the Investors here are utterly conclusory allegations that fall far short of stating claims for secondary copyright infringement, and are exactly the type of claims that have been properly rejected in the past.[21] Here UMG merely alleges control by the Investors in the *aggregate*: that although separate and independent Investors, together they collectively "comprise a majority of Veoh's Board of Directors, and, through those directorships, control Veoh and make all important operational decisions for Veoh." (FAC, ¶ 4.) There is no legal support for that proposition that UMG can "pool" together voting rights of separate minority Investors to allege that *collectively* these Investors maintained significant power and control over Veoh's day-to-day activities. UMG does not allege anything unique about the Investors role as board members. The mere fact that an investor has a representative on a company's Board of Directors is insufficient to establish secondary liability. *See Burdick v. Koerner*, 988 F. Supp. 1206, 1210 (E.D. Wis. 1998) (granting summary judgment for board members that plaintiff failed to demonstrate were "sufficiently involved in the day-to-day operation of the company in order to establish that [they] had the right and ability to control the actions of the corporation.").

UMG fails to allege any hands-on, day-to-day operational control by the Investors. UMG has failed to identify any specific conduct by any Investor that would support its claims. UMG cannot allege that the Investors are the "only" source of

---

[21] *See Katz v. Napster*, Case No. C 00-4725 MHP, Memorandum and Order dismissing complaint, filed Jul. 9, 2001 at *4-5 (Golinveaux Decl., ¶ 13 and Exh. H) (granting 12(b)(6) motion to dismiss claims against Napster's investors because allegations that an investor substantially contributed to copyright infringement "by investing substantial sums of money, supporting, guiding, encouraging, and promoting [a company] for [the investor's] own future benefit" were insufficient).



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

funding here, as UMG is well aware that Veoh has other investors. Instead it relies on allegations that the Investors "each made a substantial investment in Veoh...." FAC, ¶4.[22] An investment interest in a company is insufficient to establish liability for secondary infringement. *See Softel Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971-972 (2d Cir. 1997); *Shady Records, Inc. v. Source Enters., Inc.*, 73 U.S.P.Q.2d 1954 (S.D.N.Y. 2005).

UMG has failed to allege in other than entirely conclusory terms the elements required to state a claim for vicarious or contributory copyright infringement against the Investors. It has failed to adequately allege the right and ability to control the alleged infringing activity or a direct financial interest in the infringing activity required for vicarious liability; or the knowledge of infringement of UMG's alleged works or material contribution or inducement required for contributory infringement, and its claims against the Investors would be highly susceptible to dismissal on the pleadings if UMG's motion for leave to amend were granted. The lack of substantive merit to UMG's claims against the Investors is further evidence of its bad faith motive and the futility of its Proposed FAC.

///

///

///

///

///

///

///

///

///

///

[22] The *Bertelsmann* court explicitly declined to decide "whether mere financial support" would give rise to claims of vicarious or contributory infringement. (*Id.* at 414.)

## IV. CONCLUSION

There are no legitimate grounds to add the Investors as defendants in this lawsuit. The requested amendment is in bad faith, would unnecessarily protract these proceedings, would add unjustified cost, and would be futile. UMG's motion for leave to file its FAC should be denied.

Dated: July 3, 2008

WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Rebecca L. Calkins
Erin R. Ranahan
333 So. Grand Avenue, 38th Floor
Los Angeles, California 90071
(213) 615-1700
(213) 615-1750 (Facsimile)

Jennifer A. Golinveaux
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin
Thomas P. Lane
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (Facsimile)

Attorneys for Defendants