UMG Recordings, Inc. et al v. Veoh Networks, Inc. et al Doc. 65

Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>VEOH NETWORKS, INC.,<br><br>Defendant. | Case No. CV-07-05744 AHM (AJWx)<br><br>**REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD DEFENDANTS**<br><br>**FILED CONCURRENTLY HEREWITH: DECLARATION OF BRIAN LEDAHL**<br><br>Magistrate: Hon. A. Howard Matz<br><br>Date: July 21, 2008<br>Time: 10:00 a.m.<br>Courtroom: 14<br><br>Discovery Cutoff: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |



Dockets.Justia.com

## TABLE OF CONTENTS

Page


I. PRELIMINARY STATEMENT ........ 1

II. UMG ACTED PROMPTLY AND IN GOOD FAITH ........ 3

A. Veoh Misrepresents UMG's Statements to the Court and to Veoh ........ 3

B. UMG Made A Good-Faith Evaluation Of The Late-Produced Evidence ........ 5

III. VEOH CANNOT ESTABLISH THAT IT WILL SUFFER PREJUDICE ........ 6

IV. UMG'S ALLEGATIONS ARE SUFFICIENT TO STATE CLAIMS FOR SECONDARY LIABILITY ........ 8

A. UMG's Allegations are Sufficiently Detailed to Provide Notice ........ 8

B. UMG Need Not Allege that Any One Investor Had Majority Control ........ 9

C. Veoh's Interpretations of the Documents Are Arguments for Trial, Not the Pleading Stage ........ 11

V. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225 (N.D. Cal. 2006) .......... 7

*DCD Programs Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) .......... 3

*HiRel Connectors, Inc. v. United States*, 2005 U.S. Dist. LEXIS 44181 (C.D. Cal.) .......... 5

*Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*, 857 F.Supp. 691 (N.D. Cal. 1994) .......... 6, 8

*Mendiondo v. Centinela Hosp. Medical Ctr.*, 521 F.3d 1097 (9th Cir. 2008) .......... 8

*Qualcomm, Inc. v. Motorola, Inc.*, 989 F. Supp. 1048 (N.D. Cal. 1997) .......... 3

*Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008) .......... 8

**Rules**

Federal Rule 15 .......... 1, 2

Federal Rule 15(a) .......... 1

Local Rule 7-3 .......... 3

## I. PRELIMINARY STATEMENT

At the March 17, 2008, Scheduling Conference in this case, the Court admonished the parties that it did not "want to have to deal with motion practice relating to [Rule] 15(a) unless there is really a tenable basis to preclude amendment, given the liberal standard for amendment[.]" McReynolds Decl., Ex. 4 at 11:6-9. Notwithstanding this admonition, Veoh opposes UMG's motion for leave to amend with nothing more than false ad hominem assertions about UMG and its counsel, false characterizations of UMG's proposed amendment, and false arguments about the legal merit of UMG's claims. Veoh fails to show that even one of the factors to be evaluated in connection with a request for leave to amend weighs against amendment. As the Court pointed out, amendment is to be liberally granted under Federal Rule 15. Rather than simply accept this fact, Veoh chooses to waste both UMG's time and the Court's time with its frivolous and unsupportable opposition to UMG's motion.

Much of Veoh's opposition postulates that UMG and its counsel engaged in some devious scheme to hide UMG's true intentions regarding potential claims against certain Veoh owners. These arguments are both nonsensical and false. First, as shown in UMG's moving papers, and as the Court knows, UMG has been entirely up-front about its intentions regarding the possibility of amendment. UMG explained to both Veoh and the Court from the outset that it was likely that UMG would seek to add one or more of Veoh's investors as defendants. The parties expressly discussed this possibility with the Court at the March 17 Scheduling Conference. UMG explained to both Veoh and the Court that it hoped to obtain some discovery regarding the roles of the investors in order to make appropriate decisions about amending its complaint. UMG eventually (after much resistance and obstruction from Veoh and its counsel), obtained some limited discovery about the roles and involvement of Veoh's key investors. Though UMG pursued discovery from seven of Veoh's investors, it seeks to add only four of them as

defendants here. Missing from all of Veoh's ad hominem arguments of UMG's supposed bad faith is any sensible explanation of why UMG would have pursued the scheming Veoh claims or what UMG would have hoped to gain by such a supposed plan. Veoh seems to suggest that UMG knew all along precisely what claims it would pursue and against which of the Owner-Defendants. While this assertion is false, it begs the question of how UMG could possibly benefit from any delay in pursuing such claims. The reason for these failures in Veoh's arguments is simple – they are false. Veoh simply makes unsupported, nonsensical accusations.

Veoh also tries, vainly, to assert that UMG's proposed amended claims against the Owner-Defendants are futile. To make this argument, Veoh both mischaracterizes UMG's proposed amended complaint and argues that the Court should draw various counterfactual inferences from the evidence in evaluating the pleading. As the Court is well aware, Veoh faces a high bar in attempting to show that UMG's proposed amended claims are futile. It must show that the allegations, if proven true, with all inferences drawn in UMG's favor, could not give rise to a cognizable claim. Veoh undeniably fails to make any such showing. Instead, Veoh argues about its (incorrect) view of the inferences to be drawn from the already mounting evidence that supports UMG's claims. Such arguments about the proper inferences to be drawn from evidence could not even support a motion for summary judgment, much less an argument about the futility of a proposed amendment. Veoh's arguments reveal that UMG's claims are proper. The place to resolve arguments about the proper inferences to be drawn from evidence is at a trial.

With such non-meritorious arguments, Veoh should have heeded the Court's cautions and stipulated to this amendment. Veoh's refusal to do so wastes resources for both the Court and UMG. UMG satisfied the liberal standards of Federal Rule 15 for granting leave to amend. Veoh fails to make any showing that would warrant denial.

## II. UMG ACTED PROMPTLY AND IN GOOD FAITH

Veoh theorizes that UMG intended to sue Veoh's investors from the beginning, but pursued discovery in order to cause expense and delay. Veoh's arguments lack any factual basis. To the contrary, UMG indicated from the outset that it would likely bring claims against one or more of Veoh's investors, but that it sought discovery before making a final and more informed decision about whether to add such claims. Veoh's attempt to transform such conduct into a nefarious scheme fails badly. That is not surprising; courts expressly approve of a party seeking discovery in order to make decisions before seeking to amend its complaint. *See DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *Qualcomm, Inc. v. Motorola, Inc.*, 989 F. Supp. 1048, 1050 (N.D. Cal. 1997) (both cited in UMG's moving papers at p. 7).

### A. Veoh Misrepresents UMG's Statements to the Court and to Veoh

Veoh would have the Court believe that UMG planned to sue Veoh's investors from the commencement of the case, but represented to the Court at the Scheduling Conference that it needed discovery "to determine *whether* [UMG] had any basis to bring claims in this case against Veoh's investors." Veoh Opp'n at 1. Not true. As the Court is aware, counsel for UMG stated that UMG had subpoenaed the investors, and "would make an appropriate determination" once UMG obtained the discovery and had determined the investors' roles. *See* McReynolds Decl., Ex. 4 (Scheduling Conference at 10:5-9). Counsel for UMG never suggested that it did not have a factual basis to bring suit. Veoh's inaccurate claim that UMG made misrepresentations to the Court says more about Veoh than UMG.

As UMG explained in its opening brief, UMG sought discovery from seven of Veoh's investors at the first opportunity. Though UMG propounded this discovery in February, it took more than three months to obtain any meaningful production of information. In its Scheduling Order, the Court ordered that UMG file its motion to amend by June 16. Pursuant to Local Rule 7-3, UMG was obliged to confer with

counsel for Veoh at least 20 days before filing such motion. When meeting and conferring with Veoh on May 22, 2008, counsel for UMG confirmed that UMG had a present basis to allege claims against Veoh's investors, but preferred to obtain discovery first in order to determine against which investors, if any, UMG *should* pursue claims. Ledahl Decl., ¶ 2. As of May 22, 2008, however, Veoh's investors had produced no substantive documents in response to UMG's subpoenas. *Id.*, ¶ 3. UMG made clear to Veoh that discovery misconduct on the part of the potential defendants would not forestall UMG from making its motion to amend by the deadline set by the Court. UMG's statement in no way suggested that UMG would disregard the content of the documents sought in discovery.[1] It is also telling to note that Veoh's counsel represented four of the seven investors who were refusing to produce documents. Veoh now seeks to benefit from its own stalling.

Veoh also claims that UMG chose not to take the depositions of Veoh's investors, and therefore UMG never actually needed the discovery it sought. When UMG served deposition notices on Veoh's investors, Veoh's investors had not produced any substantive documents in response to UMG's subpoenas. Ledahl Decl., ¶ 4. UMG served the deposition notices in an effort to obtain at least some discovery before the deadline set by the Court for amending the complaint. After Veoh's investors finally began producing documents, UMG deferred the depositions. *Id.* Veoh's unfounded and false accusation that UMG withdrew its deposition notices in bad faith cannot support its opposition to UMG's motion.

---

[1] Though Veoh now asserts that this conduct was bad faith by UMG, during the parties' conference of counsel, at which UMG explained precisely that it already believed it had a basis to assert a claim against the Veoh investors but wanted discovery before making a final determination, Veoh never suggested that this position reflected any bad faith or was otherwise improper. Ledahl Decl., ¶ 2.

### B. UMG Made A Good-Faith Evaluation Of The Late-Produced Evidence

After finally receiving discovery from several of Veoh's investors, UMG chose to add Goldman Sachs, Spark Capital, Shelter Capital, and Tornante as defendants. Veoh conveniently avoids the fact that UMG chose not to allege claims against Veoh's other three major outside investors. Clearly, UMG did consider the discovery produced by Veoh's investors, and determined against which investors it should pursue claims. In any event, as UMG showed in its motion, the documents produced by Veoh's investors do, indeed, show the extent of the Veoh Owner-Defendants' involvement with key decisions affecting the presence of infringing content on Veoh's website and client software. These documents show (and UMG has alleged) much more than the mere fact that the Veoh Owner-Defendants each have a seat on Veoh's Board of Directors. The parties may disagree on the inferences that should be drawn from these documents (which is, as discussed below, an issue for trial). The highly relevant contents of these documents, however, vindicate UMG's efforts to seek them in discovery, and show that UMG rightly considered them when deciding against whom to bring suit.[2]

[2] Veoh cites to *HiRel Connectors, Inc. v. United States*, 2005 U.S. Dist. LEXIS 44181 (C.D. Cal.), in support of the proposition that a court may deny a motion to amend where the court doubts that new evidence actually changed the movant's view with respect to his claims. Veoh leaves out the very unusual facts of that case. In *HiRel*, the plaintiff sought to amend its complaint for the *seventh* time to increase its damages from $10,000 to $5,000,000. In denying the plaintiff's motion, the court noted the plaintiff's continual efforts to add parties and claims, as well as its inability properly to plead causes of action against the various defendants. Regarding the supposed "new evidence" that the plaintiff brought forth to justify its latest amendment, the court received evidence that the plaintiff had always known it could seek higher damages but made a strategic decision to limit its damages to $10,000 in prior complaints. Further, the court noted that the "new" evidence had no connection to an increased calculation of damages. For these reasons and others, the court found that the plaintiff acted in bad faith and denied its motion. The facts of the instant case are obviously dissimilar, to say the least, and Veoh's invocation of *HiRel* establishes nothing other than the carelessness with which Veoh cites precedents.

Veoh submits no evidence whatsoever that UMG acted in bad faith or unduly delayed bringing the instant motion to amend its complaint.[3] UMG deferred bringing suit against Veoh's investors in order to avoid potentially unnecessary litigation, while apprising the Court, Veoh, and the investors of UMG's intent from the beginning. Thus, the record shows that UMG acted with good faith throughout this case.

## III. VEOH CANNOT ESTABLISH THAT IT WILL SUFFER PREJUDICE

Veoh bears the burden of establishing that prejudice will result from UMG's amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The only prejudice that Veoh claims it will suffer as a result of the instant amendment is a delay of the schedule in this case. UMG has no desire to change the scheduling order in this case, or delay these proceedings in any way. Indeed, from the beginning, UMG has advocated a more prompt resolution of this case than Veoh.[4] Indeed, UMG agrees with Veoh that delay is to be avoided. As set forth in UMG's moving papers, no delay should result from UMG's proposed amendment. Furthermore, UMG has moved to amend its complaint within the timeline set by the Court. Veoh did not object to the deadline set by the Court at the

---

[3] Furthermore, *Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*, 857 F.Supp. 691 (N.D. Cal. 1994), which Veoh cites in support of its argument that UMG's supposed "litigation tactics" warrant a finding of bad faith, is wholly distinguishable. The court in *Hughes Aircraft* noted that the party seeking amendment had, in prior litigation, argued that certain tolling agreements were invalid, but later sought to rely upon those same agreements against the opposing party. Further, the moving party was unable to bring forth a single shred of evidence to support its original counterclaim in opposition to a motion for summary judgment. Thus, the court had serious doubts that the moving party brought either the original counterclaim, or the motion to amend, in good faith. The instant case is readily distinguishable. Veoh argues that UMG's decision to file a separate suit against Veoh in state court in New York shows some sort of improper motive, but that case is brought under New York state law, and does not implicate federal law. Veoh's other allegations of improper litigation tactics are nothing more than speculation and misrepresentation by Veoh.

[4] In the parties' Joint Rule 26(f) report, UMG advocated a schedule that would lead to trial more than two months earlier than Veoh's proposed schedule.

Scheduling Conference. Veoh's arguments about delay at this stage are disingenuous at best.

Veoh’s concern about delay is particularly surprising (indeed, almost laughable) given the extent to which Veoh has made every effort to delay this case. Specifically, the following facts confirm that Veoh’s purported concerns about delay have not guided its litigation conduct:

- While UMG has produced over 1.4 million pages of documents, Veoh has produced approximately 5% of that total. Ledahl Decl., ¶ 5.
- Veoh refuses to produce many of the highly relevant documents UMG has requested, such as the agreements by which Veoh licenses content from third parties or sells advertising. *Id.*, ¶ 6.
- Veoh has not produced a single internal email communication. *Id.*, ¶ 7.
- Veoh continues to withhold many of the documents that it had produced in its prior Northern District of California litigation against Io Group. *Id.*, ¶ 8.
- Veoh even refuses to identify which of its employees’ files it will search for responsive documents, and refuses to identify which search terms it will use to identify responsive documents (something even MySpace and Grouper disclosed voluntarily). *Id.*, ¶ 9.

Veoh should not be permitted to claim further delay will cause prejudice when it has repeatedly worked to cause delay in this case.

In any event, Veoh does not explain why any delay of the case schedule would result from UMG’s proposed amendment. This case is still in the early stages of discovery (though UMG has already made a substantial production of information). Given these facts, Veoh can point to no unfair prejudice that will result from the Court’s granting of the instant motion. *See ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225, 227 (N.D. Cal. 2006) (holding that defendants were not prejudiced by amendment because litigation was at an early stage, and

defendants were not surprised by the new factual allegations). Indeed, as UMG noted in its motion, UMG could simply file separate complaints against the Veoh Owner-Defendants, if it chooses to do so, and then coordinate or consolidate the cases. As such, Veoh cannot credibly claim any undue prejudice from the proposed amendment.

## IV. UMG'S ALLEGATIONS ARE SUFFICIENT TO STATE CLAIMS FOR SECONDARY LIABILITY

### A. UMG's Allegations are Sufficiently Detailed to Provide Notice

Veoh repeatedly claims that UMG makes nothing more than conclusory allegations against the Veoh Owner-Defendants, and that UMG fails to allege necessary elements of claims for vicarious and contributory liability. Incredibly, Veoh claims that UMG's allegations are so lacking as to constitute evidence of bad faith.[5] Veoh tries to rewrite the Federal Rules to require such specificity as "which Investor knew what about which infringing conduct." Veoh's Opp'n at 6. Not surprisingly, Veoh can cite no legal authority for its argument that UMG should plead its claims with such specificity. On the contrary, UMG's complaint "need not contain detailed factual allegations." *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). Rather, UMG need only give fair notice of the claim and the grounds upon which it rests. *Mendiondo v. Centinela Hosp. Medical Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Further, a substantive evaluation of the merits of UMG's allegations would be improper on a motion for leave to amend. *See*

[5] Veoh's citation to *Hughes Aircraft v. Nat'l Semiconductor Corp.*, 857 F. Supp. 691 (N.D. Cal. 1994), is inapposite. In that case, the court denied a motion for leave to file an amended counterclaim in part because the moving party had no evidence to support its original counterclaim. The court granted, in the same order, summary judgment on the original counterclaim because the party had "failed to come forward with even an iota of evidence" to support it. *Id.* at 701. Understandably, the court was skeptical of that party's desire to file a new counterclaim. Here, UMG has not been given the opportunity to fully develop its case through discovery. UMG is seeking to amend its complaint in the early stages of the case, not after its primary claim had already failed to produce a favorable result.

William Schwarzer, *et al., Federal Civil Procedure Before Trial* § 8:422 (noting that, "[o]rdinarily, courts do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend.").

In any event, UMG's allegations are far from conclusory. UMG has alleged specific facts from which the liability of the Owner-Defendants flows. UMG has alleged much more than mere passive investment on the part of the Owner-Defendants as Veoh tries to suggest. UMG alleges that the Owner-Defendants actively facilitated Veoh's infringement by demanding and obtaining seats on Veoh's Board of Directors, from which they exercise majority control over Veoh and make all material decisions regarding its operations. FAC ¶¶ 30-32. These decisions include, for example, deciding on the types of content that Veoh makes available – copyrighted music videos, but not adult content – and deciding not to implement filtering technology that could avoid or curtail infringement. The Owner-Defendants failed to use their control to remove infringing content from Veoh, and instead "decided to continue Veoh's infringing operations in order to continue to attract users and advertising dollars to Veoh, and increase the value of their financial interests in Veoh." *Id.* ¶ 31. Thus, UMG's complaint is much more specific than required by the Federal Rules.

### B. UMG Need Not Allege that Any One Investor Had Majority Control

Veoh suggests that UMG's claims must fail because none of the individual investors had majority control of the Board of Directors. Indeed, Veoh claims that *UMG v. Bertelsmann* held that secondary liability only applies where the investor is the sole source of funding. That is false. While one plaintiff in that case had alleged that Bertelsmann was the sole source of funding for Napster, other plaintiffs made different allegations, and the court never suggested that this fact was either necessary or sufficient to support claims for vicarious and contributory liability. Rather, the court focused on whether the plaintiffs had alleged that the investors

exercised control over Napster and were directly responsible for the infringing activity. Indeed, the court noted that the plaintiffs' allegations against Bertelsmann and Hummer Winblad "may be mutually exclusive, as plaintiffs variously claim that both Hummer Winblad and Bertelsmann were managing the same corporate enterprise at approximately the same time." 222 F.R.D. 408, 413 (N.D. Cal. 2004). The court stressed that such questions, however, "*must be left for resolution upon motions for summary judgment or at trial*," because the court must accept the facts alleged in the plaintiffs' complaints as true at the pleading stage. *Id.* (emphasis added).

Veoh apparently believes that, if none of its investors had individual majority control over Veoh, then its investors should be shielded, as a matter of law, from copyright liability even if the investors knowingly encouraged Veoh to infringe copyrights and prevented Veoh from adopting filtering measures to stop the infringement. No court has so held, and for good reason. Veoh's position is absurd and contrary to both the letter and spirit of copyright law. UMG need not allege that any one of the investors had majority or sole control over Veoh. What UMG *does* allege is that each of the Owner-Defendants "used their sizable investments to obtain board seats and otherwise obtain and maintain operational control over all of Veoh's operations," including control over "all critical decisions regarding the content available on Veoh," and control of "decisions over how to monetize Veoh's business, including its substantial use of infringing content." *See* FAC ¶ 32. Thus, contrary to Veoh's suggestion, UMG's proposed amended complaint does not simply "pool" together the voting rights of the Owner-Defendants to find operational control on that basis alone. UMG has clearly alleged, in more detail than necessary, that the Owner-Defendants exercised control over what content was available on Veoh, failed to use that control to prevent Veoh's infringement, and knowingly chose to facilitate Veoh's infringement in order to increase the value of their investment. The full extent of each Owner-Defendants' control over Veoh is a

factual issue that should be addressed during discovery and trial, not at the pleading stage.

### C. Veoh's Interpretations of the Documents Are Arguments for Trial, Not the Pleading Stage

Veoh also attempts to downplay the importance of the documents produced by the Veoh Owner-Defendants. According to Veoh, for example, Exhibit 12 to the McReynolds Declaration is "simply an email discussion regarding a potentially infringing third party post to Veoh unrelated to any alleged infringements of UMG's content." Veoh's Opp'n at 6. Veoh apparently believes that its investors' knowing participation in the infringement of third parties' copyrights would be irrelevant to this case. Veoh cites no caselaw in support of that argument; indeed, Veoh's theory of relevance has no legal support.[6] Veoh is entitled to make arguments about what these documents do or do not mean—but the time and place for this is at trial, not on a motion to amend. Veoh cannot defeat UMG's motion to amend simply because Veoh wants the Court to draw different inferences from the documents./

/

/

/

/

/

/

/

/

/

/

---

[6] For example, if the Veoh Owner-Defendants had actual knowledge of Veoh's infringement of others' copyrights, that could constitute constructive knowledge and/or circumstantial evidence showing knowledge of the infringement of UMG's copyrights.

## V. CONCLUSION

The Court admonished Veoh that it should only oppose a proposed amendment if it had a strong basis on which to do so. Veoh ignored this admonition and presents speculation, ad hominem attacks, and legally incorrect arguments. None of Veoh's arguments presents a colorable basis on which to deny UMG's motion. UMG respectfully submits that its motion for leave to amend its complaint should be granted immediately to prevent Veoh from causing further unnecessary delay.

Dated: July 14, 2008

Respectfully Submitted,

IRELL & MANELLA LLP

By: /s Brian Ledahl
Brian Ledahl

Attorneys for Plaintiffs
UMG RECORDINGS, INC.; UNIVERSAL MUSIC CORP.; SONGS OF UNIVERSAL, INC.; UNIVERSAL-POLYGRAM INTERNATIONAL PUBLISHING, INC.; RONDOR MUSIC INTERNATIONAL, INC.; UNIVERSAL MUSIC – MGB NA LLC; UNIVERSAL MUSIC – Z TUNES LLC; and UNIVERSAL MUSIC – MBG MUSIC PUBLISHING LTD.