Re: Docket # 71

Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UMG RECORDINGS, INC., *et al.*,

Plaintiffs,

v.

VEOH NETWORKS, INC.,

Defendant.

**Case No. CV-07-05744 AHM (AJWx)**

**JOINT STIPULATION UNDER LOCAL RULE 37-2 REGARDING UMG RECORDINGS, INC.'S MOTION TO COMPEL RESPONSES TO DISCOVERY AGAINST VEOH NETWORKS, INC.**

**Filed Concurrently Herewith: [Declaration of Brian Ledahl and Jennifer A. Golinveaux]**

Magistrate: Hon. Andrew J. Wistrich

Date: August 11, 2008
Time: 10:00 a.m.
Courtroom: 690

Discovery Cutoff: January 12, 2009
Pretrial Conference: April 6, 2009
Trial Date: April 21, 2009

**REDACTED PURSUANT TO INTERIM PROTECTIVE ORDER ENTERED ON MAY 21, 2008-CONFIDENTIAL INFORMATION OMITTED UNREDACTED COPY FILED UNDER SEAL**

1899242

Dockets.Justia.com

TABLE OF CONTENTS


Page

I. INTRODUCTORY STATEMENTS ........ 2

A. UMG's Introductory Statement ........ 2

B. Veoh's Introductory Statement ........ 4

II. EXPLANATION OF DOCUMENTS VEOH WILL PRODUCE – REQUESTS FOR PRODUCTION NOS. 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 47, 48, 49, 50, 51, 52, 53, 54, 55, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118 ........ 8

A. Example Verbatim Statement of Disputed Discovery and Response ...... 8

B. UMG's Contentions and Points of Authorities ........ 11

1. Veoh Refuses to Disclose the Employees Whose Files It will search and the search terms it will employ ........ 11

2. Veoh Has Not Produced Emails ........ 12

3. Veoh Should Be Ordered to Identify Document Custodians and Search Terms and Be Given a Deadline for Production ....... 13

C. Veoh's Contentions and Points of Authorities ........ 14

1. UMG Is Not Entitled to the Details of Veoh's Collection and Review Strategy ........ 15

2. Veoh Told UMG That It Was Waiting To Review Internal Email Until It Received A Response To Its June 14, 2008 Letter ........ 17

III. VEOH'S REPEATED OBJECTIONS TO THE TERM "VEOH SOFTWARE"—REQUESTS FOR PRODUCTION NOS. 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 39, 42, 47, 50, 56, 57, 89, 91, 92, 94, 95, 96, 97, 98, 99, 103, 104, iNTERROGATORIES NOS. 4, 6, 7 ........ 18

A. Example Verbatim Statement of Disputed Discovery and Response .... 18

B. UMG's Contentions and Points of Authorities ........ 21

1. Overview of Veoh ........ 21

2. Veoh's Objections to the Term "Veoh Software" Lack Merit .... 23

C. Veoh's Contentions and Points of Authorities ........ 24

IV. REQUESTS FOR PRODUCTION NOS. 1, 9-11, 34, 36, 56-58—VEOH'S COPYRIGHT POLICIES AND PRACTICES ........ 25

Page

A. Verbatim Statement of Disputed Discovery and Response ..... 25
B. UMG's Contentions and Points of Authorities ..... 31
1. The DMCA Implicates Veoh's Copyright Policies and Practices ..... 32
2. The Federal Rules Broadly Define "Relevant" Documents ..... 34
3. Documents and/or Communications Regarding Veoh's Copyright Policies and Practices Are Highly Relevant ..... 34
4. Veoh's Boilerplate Objections Cannot Support Its Refusals To Produce ..... 38
C. Veoh's Contentions and Points of Authorities ..... 39
V. REQUESTS FOR PRODUCTION NOS. 2-3—LITIGATION RELATED DOCUMENTS ..... 41
A. Verbatim Statement of Disputed Discovery and Response ..... 41
B. UMG's Contentions and Points of Authorities ..... 42
1. Documents Regarding the *Io Group* Litigation Are Relevant to this Case ..... 43
2. Veoh Improperly Refuses To Produce Various Documents Regarding The *Io Group* Lawsuit ..... 44
C. Veoh's Contentions and Points of Authorities ..... 45
VI. REQUESTS FOR PRODUCTION NOS. 4, 6, 98-100, AND INTERROGATORY NO. 5—Video Files and Related Data ..... 47
A. Verbatim Statement of Disputed Discovery and Response ..... 47
B. UMG's Contentions and Points of Authorities ..... 51
1. The Discovery Sought is Evidence of Veoh's Infringement, and Therefore Highly Relevant ..... 52
2. Veoh's Proposed Production of a "Spreadsheet" with Links to Video Files is Insufficient and Improper Under Rule 34 ..... 53
3. Veoh's Objection on the Grounds of Burden Lacks Merit Given Veoh's Superior Knowledge of the Video Files ..... 55
C. Veoh's Contentions and Points of Authorities ..... 58
1. The Spreadsheet Veoh Has Proposed Provides UMG With All of The Requested Data ..... 58

Page


2. The Cost and Expense of Having Veoh Copy All Video Files Ever Uploaded, In Addition to Providing UMG With Access to All Files, Cannot Be Justified .................................... 60

3. The Information Sought by UMG With Production Copies of All Video Files Can Be Obtained From Another Source That Veoh Has Offered to Produce .......................................... 62

4. If Veoh Is Required To Produce Individual Files, UMG Should Be Required To Pay The Costs ...................................... 66

VII. REQUESTS FOR PRODUCTION NOS. 7-8, 18-21, 35, 46, 91-92, and interrogatories nos. 3 and 4—TECHNICAL DOCUMENTS ......................... 68

A. Verbatim Statement of Disputed Discovery and Response .................. 68

B. UMG's Contentions and Points of Authorities ..................................... 77

1. The Discovery Sought is Highly Relevant to Veoh's Affirmative Defense Under the DMCA ..................................... 78

2. Despite the Relevance of This Discovery, Veoh Refuses to Produce Responsive Documents ............................................... 79

3. Veoh's Unsupported Objections to Terms Used by UMG Lack Merit ........................................................................... 81

4. Veoh's Response to Interrogatory No. 3 is Insufficient ............. 81

5. Veoh's Response to Interrogatory No. 4 is Lacking ................... 82

C. Veoh's Contentions and Points of Authorities ..................................... 84

VIII. REQUESTS FOR PRODUCTION NOS. 12-17 AND INTERROGATORY NO. 7—FILTERING AND MONITORING OF CONTENT ........................................................................................... 86

A. Verbatim Statement of Disputed Discovery and Response .................. 86

B. UMG's Contentions and Points and Authorities ................................. 91

1. Veoh's Efforts to Screen or Remove Content is Relevant to UMG's Claims and Veoh's DMCA Defense ............................. 92

2. Veoh's Efforts to Screen and/or Remove Other Types of Content, Such as Pornography, Are Also Relevant .................... 94

3. Veoh's Additional Objections Regarding Interrogatory No. 7 Lack Merit ........................................................................... 95

C. Veoh's Contentions and Points and Authorities ................................... 98

IX. REQUESTS FOR PRODUCTION NOS. 22-33—FEATURES OF VEOH'S SITE ........................................................................................... 99

Page

A. Verbatim Statement of Disputed Discovery and Response ..................99

B. UMG's Contentions and Points of Authorities..................................108

1. These Features of Veoh's Software are Relevant to Veoh's Liability ..........................................................................108

2. Veoh Has Refused to Produce Responsive Documents, or Obscured What it Will Produce ...............................................110

C. Veoh's Contentions and Points of Authorities ..................................111

X. REQUESTS FOR PRODUCTION NOS. 39, 93-97—SEARCH AND TRAFFIC RELATED DOCUMENTS .......................................................111

A. Verbatim Statement of Disputed Discovery and Response ................111

B. UMG's Contentions and Points of Authorities..................................115

1. Veoh's Efforts to Track User Traffic and Searches are Relevant to UMG's Claims and the DMCA.............................115

2. Veoh's Objections Lack Merit and Should be Rejected..........116

C. Veoh's Contentions and Points of Authorities ..................................117

XI. REQUESTS FOR PRODUCTION Nos. 5, 59-61, 89-90—LICENSING AGREEMENTS ......................................................................................118

A. Verbatim Statement of Disputed Discovery and Response ................118

B. UMG's Contentions and Points of Authorities..................................122

1. Veoh's Licensing Agreements and Related Documents are Relevant to Multiple Claims, Defenses, and Damages.............122

2. Veoh's Objections to the Terms "License Agreements" and "Veoh Content Providers" are Baseless ...................................125

C. Veoh's Contentions and Points of Authorities ..................................126

XII. REQUESTS FOR PRODUCTION 42, 104—ADVERTISING ..................127

A. Verbatim Statement of Disputed Discovery and Response ................127

B. UMG'S Contentions and Points and Authorities................................128

1. Veoh's Advertising Agreements and Related Documents Are Relevant to Veoh's DMCA Defense.................................128

2. Veoh's Advertising Agreements and Related Documents are Relevant to Damages ...............................................................130

Page


3. Veoh's Advertising Documents are Further Relevant to UMG's Claims for Inducement and Willful Infringement ....... 131

C. Veoh's Contentions and Points and Authorities ................................ 132

XIII. REQUESTS FOR PRODUCTION NOS. 40-41, 105-06, AND INTERROGATORY NO. 9—REVENUE, VALUATIONS, INVESTMENTS AND ACQUISITIONS .................................................. 132

A. Verbatim Statement of Disputed Discovery and Response ................ 133

B. UMG's Contentions and Points and Authorities ................................ 135

1. Revenue Documents Are Relevant to Veoh's DMCA Defense, UMG's Claims, and Damages .................................. 136

2. Veoh's Objections on the Grounds of Relevance and Overbreadth Should be Overruled .......................................... 137

C. Veoh's Contentions and Points of Authorities .................................. 138

XIV. REQUEST FOR PRODUCTION NOS. 43-44, AND INTERROGATORY NO. 1—ORGANIZATIONAL STRUCTURE AND EMPLOYEES ....................................................................... 139

A. Verbatim Statement of Disputed Discovery and Response ................ 139

B. UMG's Contentions and Points of Authorities .................................. 141

C. Veoh's Contentions and Points of Authorities .................................. 142

XV. REQUESTS FOR PRODUCTION NOS. 101-102—PUBLIC STATEMENTS ...................................................................................... 143

A. Verbatim Statement of Disputed Discovery and Response ................ 143

B. UMG's Contentions and Points of Authorities .................................. 144

C. Veoh's Contentions and Points of Authorities .................................. 146

XVI. INTERROGATORY NO. 2—ADVICE OF COUNSEL DEFENSE .......... 147

A. Verbatim Statement of Disputed Discovery and Response ................ 147

B. UMG's Contentions and Points of Authorities .................................. 147

C. Veoh's Contentions and Points of Authorities .................................. 148

XVII. REQUESTS FOR PRODUCTION NOS. 47-55, 62-88, 107-19 AND INTERROGATORIES NOS. 8 AND 10—VEOH'S CONTENTIONS ....... 149

A. Verbatim Statement of Disputed Discovery and Response ................ 149

B. UMG's Contentions and Points and Authorities ................................ 180

Page


C. Veoh's Contentions and Points of Authorities ..... 182

XVIII. INTERROGATORY NO. 6 ..... 183

A. Verbatim Statement of Disputed Discovery and Response ..... 183

B. UMG's Contentions and Points and Authorities ..... 184

1. The Discovery Sought by UMG is Relevant to Veoh's Affirmative Defense Under the DMCA ..... 184

2. Veoh Has No Valid Objection to This Discovery ..... 185

3. Veoh's Purported Rule 33(d) Production is Insufficient ..... 186

C. Veoh's Contentions and Points and Authorities ..... 187

XIX. INTERROGATORY NO. 12 ..... 187

A. Verbatim Statement of Disputed Discovery and Response ..... 187

B. UMG's Contentions and Points and Authorities ..... 188

1. The Veoh User Names or IDs of Veoh's Employees are Likely to Lead to Relevant Evidence ..... 188

2. Veoh's Objections on the Grounds of Relevance, Burden, and Privacy are Baseless ..... 190

C. Veoh's Contentions and Points and Authorities ..... 191

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37-2 of the Local Rules of this Court, Plaintiffs (collectively "UMG") and Defendant Veoh Networks, Inc. ("Veoh") respectfully submit the following Joint Stipulation Regarding UMG's Motion to Compel Responses to Discovery. The parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court.

## I. INTRODUCTORY STATEMENTS

### A. UMG's Introductory Statement

UMG brings this motion to compel defendant Veoh Networks, Inc. ("Veoh") to produce documents and respond to interrogatories. This case has been pending for nearly a full year. During that time UMG has provided discovery on a monumental scale, including the production of more than 1.4 million pages of documents. Veoh, by contrast, has obstructed UMG's efforts to obtain discovery at every turn. It refuses to satisfy its document discovery obligations or to provide meaningful answers to interrogatories. After months of prodding, excuses and delay, Veoh has recently trickled out only a small number of documents. Although Veoh's production just scratched the surface of Veoh's production obligations, UMG's meet and confer efforts to ascertain what additional discovery will be forthcoming voluntarily were met with stonewall. Veoh refused to confirm what additional documents, if any, it will commit to produce, and it refuses to say when, if ever, it will produce additional documents. Veoh has made it clear that absent an order from this Court, Veoh's discovery obstruction will continue indefinitely. UMG accordingly has no choice but to seek the Court's intervention, and it therefore respectfully requests an order compelling Veoh to meet its discovery obligations.

As the Court is aware, this case involves similar issues to UMG's prior actions involving MySpace and Grouper. Like those cases, this case concerns the widespread infringement of the copyrighted works of UMG recording artists and songwriters on Veoh's website and software that Veoh distributes. Like MySpace and Grouper and a

string of mass infringers before it, Veoh tries to excuse its massive infringement by claiming protection under a so-called “safe-harbor” of the Digital Millennium Copyright Act (“DMCA”) available under certain circumstances to “service providers” for materials they passively store “at the direction of a user.” Veoh, however, persists in dragging its feet in discovery to an extent even beyond that employed by MySpace and Grouper in the prior cases before this Court. MySpace and Grouper produced internal email communications and even MySpace and Grouper agreed to identify the employees whose files would be searched and the search terms to be used in searching those files. Veoh by contrast still has not produced internal email communications, and refuses to cooperate in identifying a search methodology. Veoh’s improper stonewalling should not be allowed to continue.

As a further example, Veoh refuses to produce the transcripts of testimony of its own witnesses in another lawsuit currently pending in the Northern District of California in which Veoh is accused of copyright infringement and it invoked the DMCA as a defense. Veoh has not (and cannot) offer any justification for this refusal. Indeed, it attempted to conceal this position by providing only vague and misleading descriptions of what materials it would produce. This is part of a pattern of obstruction—as to nearly all of UMG’s document requests, Veoh has either refused to produce any documents, or it has indicated only that it will produce some unspecified subset of documents that Veoh chooses to provide at some unspecified time. UMG has repeatedly sought Veoh’s clarification of what documents it will produce to avoid unnecessary motion practice, but Veoh has consistently refused to provide any useful information.

Veoh’s refusal to provide relevant discovery and its refusal to commit to supplement its production necessitated this motion. UMG must be able to obtain the discovery relevant to its claims and Veoh’s defenses. UMG therefore respectfully requests that the Court order Veoh to provide the requested materials and

interrogatory responses (as discussed in greater detail in the sections of this Joint Stipulation) and to do so promptly to avoid further prejudice to UMG from delay. Veoh should also be ordered to specify the documents it will produce to avoid confusion or evasion through vaguely crafted response.

UMG has organized this motion to initially address issues that implicate a significant number of requests. UMG first addresses Veoh's failure to identify the categories of documents it will produce and the time by which it will complete its production. UMG second addresses a pervasive, but non-meritorious, objection Veoh makes to the purported vagueness of a defined term in many of UMG's requests ("Veoh software"). Because these issues address a significant number of requests, for brevity, UMG reproduces only some examples of the requests and responses addressed in these sections. A full set of the relevant requests and responses are attached as exhibits to the Ledahl Declaration. The remainder of this motion addresses specific requests which UMG has endeavored to group by categories of issues for the Court's convenience.

**B. Veoh's Introductory Statement**

If UMG had expended ten percent of the effort it has invested in this hefty motion to compel, attempting to informally work out practical solutions to the issues raised by its numerous and unrestrained discovery requests, the parties could have resolved nearly all of the issues themselves long ago.

UMG claims above that it brings this motion because, following the parties' meet and confer efforts, "Veoh refused to confirm what additional documents, if any, it will produce, and it refuses to say when, if ever, it will produce additional documents." *Supra* at 2. To the contrary, over a month ago, Veoh's counsel sent UMG's counsel a multi-page letter (the "June 13, 2008 Letter") detailing additional categories of documents Veoh would agree to produce, and interrogatory responses Veoh was willing to supplement based upon the meet and confer discussions, and asking UMG's counsel to respond promptly as to whether the proposals were

agreeable to UMG, and as to whether any outstanding issues remained regarding Veoh's discovery responses. (Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), ¶ 2 and Exh. A (June 13, 2008 Letter).) Two weeks later, having received no response, Veoh's counsel reminded UMG's counsel during a telephone call that Veoh was still awaiting a response, and that Veoh was waiting to supplement its discovery responses until it received confirmation that the proposals were acceptable so that Veoh was not in the position of having to review the same categories of documents—including large volumes of emails—more than once. UMG's counsel said he understood and acknowledged that he owed Veoh's counsel a response to the letter. (*Id.* at ¶ 3.)

Veoh never received a response. Instead, several weeks later, and with no further communication from UMG's counsel on the subject, Veoh received UMG's portion of this motion to compel. UMG clearly made a strategic determination to utilize the discovery process—not to efficiently exchange practical discovery both sides need to prepare their cases—but to require Veoh, a much smaller opponent, to expend time and money on side battles that need not have been waged, and serve no useful purpose other than to drive up Veoh's costs in time and money. Despite Veoh's good faith efforts to informally resolve the discovery disputes, UMG disingenuously throws out words like "stonewalling," "obstruction," and "delay," and now Veoh will have to waste valuable resources correcting the record in this motion, and re-iterate proposals it has *already made* to UMG (and which UMG never bothered to respond to)—all time that could have been spent on review and document production.

The following chronology of events leading to this motion to compel illustrates how inappropriate UMG's motion is and its strategic misuse of the discovery process:

- **On January 17, 2008**, UMG served its first set of document requests and interrogatories on Veoh. Because UMG had improperly served its discovery before the parties met and conferred pursuant to Rule 26(f), UMG agreed that responses to its discovery would be due on April 9, 2008. (*Id.* at ¶ 4.)

- **On February 11, 2008**, Veoh served its first set of discovery on UMG. (*Id.* at ¶ 5.)
- **On April 9, 2008**, both sides timely served written responses to the other side's discovery. Many of UMG's document requests were overbroad. Accordingly, Veoh stated in its written responses to certain requests that it was willing to discuss with UMG an appropriate tailoring of the requests. (*Id.* at ¶ 6.)
- **A week later, on April 15, 2008**, Veoh sent UMG a letter regarding UMG's written responses to Veoh's discovery, as UMG had objected to the vast majority of Veoh's discovery requests, largely agreeing to only produce documents found from some unspecified custodians using some unspecified search terms. (*Id.* at ¶ 7.)
- **Later that night**, UMG sent Veoh a letter regarding Veoh's discovery responses and requesting a meet and confer to discuss them. (*Id.* at ¶ 8.)
- **On April 25, 2008**, UMG and Veoh began meeting and conferring regarding UMG's and Veoh's discovery responses, and continued to do so over the next several weeks. (*Id.* at ¶ 9.)
- **On June 13, 2008**, Veoh's counsel sent UMG a multi-page letter detailing responses it would supplement based upon meet and confer discussions and requesting that UMG promptly get back to Veoh as to whether the proposed compromises were acceptable, and to let Veoh know whether any outstanding issues remained. (*Id.* at ¶ 2 and Exh. A.)
- **Two weeks later**, having received no response from UMG, during a telephone call Veoh's counsel reminded UMG's counsel that it had yet to receive a response to the June 13, 2008 Letter. UMG's counsel acknowledged that UMG owed Veoh a response, but to date, UMG has never responded to Veoh's June 13, 2008 Letter. (*Id.* at ¶ 3).

- **Between June 20 and June 26, 2008**, Veoh produced 71,540 documents and 30 versions of the Veoh software, while still awaiting UMG's response to the proposals set forth in Veoh's June 13, 2008 Letter. (*Id.* at ¶ 10.)
- **On June 27, 2008**, UMG produced roughly 1.4 million pages on a hard drive, with no organization or discernable categorization, and which appears to be largely a "dump" from its MySpace and Grouper document productions.[1] (*Id.* at ¶ 11.)
- **Less than a week later, on July 3, 2008**, UMG's counsel sent Veoh's counsel its portion of this joint stipulation, without any notice, and without ever responding to the proposals in Veoh's June 13, 2008 Letter. (*Id.* at ¶ 12).

Veoh has already made proposals that should resolve nearly all of the issues raised in this motion. UMG never bothered to respond to Veoh's proposals and instead chose to waste the parties' and Court's time with this motion. UMG's motion is nothing more than a litigation tactic aimed to unnecessarily drive up the litigation costs of a much smaller opponent. It should be denied.

[1] "MySpace and Grouper" refers to the litigation of related cases *UMG Recordings, Inc. et al. v. Grouper et al.*, no. CV06-6561 and *UMG Recordings, Inc. v. MySpace et al.*, no. CV06-7361, respectively.

## II. EXPLANATION OF DOCUMENTS VEOH WILL PRODUCE – REQUESTS FOR PRODUCTION NOS. 2, 3, 4, 6, 7, 8, 9, 10, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 47, 48, 49, 50, 51, 52, 53, 54, 55, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118

### A. Example Verbatim Statement of Disputed Discovery and Response[2]

***REQUEST FOR PRODUCTION NO. 13:***

*All documents relating to steps that You take, have taken, or have considered taking to examine or review Content uploaded to and/or downloaded from Veoh Software to determine whether such Content infringes a copyright.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 13:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable*

---

2 For the Court's convenience and in an effort to reduce the length of this Joint Stipulation, UMG includes only examples of the discovery requests and responses that fail to specify the categories of documents to be produced.

*interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence actions taken or considered with respect to the review of Content shared by users of Veoh's software to determine whether such Content infringes copyright, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[3]

***REQUEST FOR PRODUCTION NO. 24:***

*All documents relating to providing users of Veoh Software with the ability to add "tags" or keywords to the Content posted on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 24:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective*

[3] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to identify steps taken, or considered, to examine or review content uploaded or downloaded from Veoh to determine whether such content infringes a copyright. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence the providing to Veoh users the ability to add tags or keywords to Content posted on Veoh.com, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[4]

***REQUEST FOR PRODUCTION NO. 33:***

*All documents relating to Your process for selecting "Featured Videos."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 33:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to describe Veoh's process for selecting "Featured Videos", to the extent such documents are found within its possession, custody or control after*

[4] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

**B. UMG's Contentions and Points of Authorities**

Though this case has been pending for nearly a year, Veoh has only just begun to produce any documents. Its initial production (made only at the end of June) comprises only approximately 75,000 pages of materials and it does not include many of the most fundamental documents Veoh was obligated to disclose long ago.[5] Veoh refuses to confirm what additional documents, if any, it will commit to produce or when they will be produced, if ever. Instead of producing documents or committing to do so, Veoh produces only vague assertions that it will produce some unspecified category of documents that it deems appropriate at some indeterminate time. This is unacceptable. Veoh must identify the documents it will produce in response to UMG's requests and must complete its production within a reasonable time. Even MySpace and Grouper disclosed the methodology by which they would identify responsive documents. Veoh should do the same. As the Court may recall, in the MySpace and Grouper cases, discovery from defendants only proceeded apace when the Court set a firm deadline by which their primary productions were to be complete. Veoh's conduct confirms that similar relief is needed here.

**1. Veoh Refuses to Disclose the Employees Whose Files It will search and the search terms it will employ**

UMG proposed that the parties exchange lists of employees and executives whose files, including electronic files, would be searched (document custodians). UMG further proposed that the parties exchange lists of search terms that would be used in reviewing the files of these employees and executives. As the Court knows both MySpace and Grouper voluntarily exchanged similar information with UMG in their respective cases. Nonetheless, Veoh refuses to exchange such information.

[5] As the Court may recall, even Grouper, a much smaller internet presence than Veoh, produced hundreds of thousands of pages of material in discovery.

Ledahl Decl., ¶¶ 11-12. Veoh refuses to identify the individuals whose files (including email correspondence) will be searched for potentially responsive documents and it will not disclose the search terms it is using to identify responsive documents. Veoh's refusal to provide this information prevents UMG (and the Court) from evaluating the completeness of Veoh's production.

### 2. Veoh Has Not Produced Emails

Veoh's refusal to identify document custodians and search terms is part of a systematic effort to shield Veoh's wrongdoing from discovery. On June 27, UMG received an initial production of Veoh documents. Although Veoh had months to collect this production, it remarkably did not include any internal communications among Veoh's employees and executives—*not a single internal email has been located in the production*.[6] Veoh has thus failed to produce any of its internal emails or other internal communications, while at the same time it refuses to identify whose files it will search or what search terms will be used to identify potentially responsive communications. Undoubtedly, Veoh's employees and executives exchange hundreds or thousands of emails on relevant subjects every day. None of these communications have been produced. This complete discovery stonewall is unworkable.

As the Court can imagine, Veoh's internal communications, including the many thousands of emails its executives and employees generate each week, contains innumerable highly relevant documents. For example, Veoh employees have undoubtedly communicated about policies for content to be permitted on the Veoh website, technical features of the Veoh web site and Veoh client software, Veoh's approach to copyrighted material, Veoh's plans to monetize content on its service, filtering efforts to remove inappropriate content (including potentially, copyrighted content), and many other subjects that are highly relevant to the claims and defenses in this case. UMG will discuss some of the key issues presented in this case, such as

---

[6] Veoh has produced emails with outsiders requesting removal of content from Veoh. It has not, however, produced any of the emails among its employees.

the issues associated with Veoh's DMCA defense, in subsequent sections. Even at a general level, however, Veoh cannot credibly argue that it has no relevant emails. As UMG's experience with both MySpace and Grouper confirmed, an infringer's emails are an important source of admissions and other invaluable information. Veoh's categorical failure to produce any emails is a red flag that Veoh has not made even the most minimal effort to comply with its discovery obligations.

### 3. Veoh Should Be Ordered to Identify Document Custodians and Search Terms and Be Given a Deadline for Production

Veoh refuses to provide any meaningful commitment either on the categories of documents it will produce or the time frame in which it will produce them. To prevent further delay and prejudice from Veoh's discovery conduct, Veoh should be ordered to identify the Veoh employees and executives whose files have been searched so far, and which will be searched for responsive documents. Veoh further should be ordered to reveal whether it is reviewing all of the custodians' documents, and if it instead is identifying responsive documents through keyword searching, it should be ordered to identify the search terms it has used to date, if any, and which terms it will use in the future. Courts frequently order such disclosures of search methodology – *i.e.*, the identification of document custodians and search terms to be used in identifying potentially responsive documents. *See, e.g., Treppel v. Biovail Corp.*, 233 F.R.D. 363, 377 (S.D.N.Y. 2006) (ordering defendant to disclose its search protocol for identifying responsive documents and to produce the documents identified); *O'Bar v. Lowe's Home Centers, Inc.*, 2007 WL 1299180, *4-7 (W.D.N.C. May 2, 2007) (ordering parties to discuss search methodologies including "identification of the systems to be searched" and "the use of key word searches"). Indeed, various district courts have implemented rules contemplating such disclosures. *See, e.g.*, Suggested Protocol for Discovery of Electronically Stored Information, set forth by the U.S. District Court for the district of Maryland, available at www.mdd.uscourts.gov/news/news/ESIprotocol.pdf. Veoh should be ordered to

produce responsive documents identified from such searching (other than those subject to a claim of privilege) by a date certain. Documents withheld based on a claim of privilege must be logged, with the log to be produced on a date certain.

UMG respectfully requests the forgoing relief so that discovery does not remain unnecessarily stalled in this action.

**C. Veoh's Contentions and Points of Authorities**

First UMG complains that Veoh "has only just begun to produce any documents." The fact is Veoh produced documents <u>before</u> UMG, despite the fact that the parties' discovery responses were due on the same day. (Golinveaux Decl., ¶¶ 10-11.) In addition, UMG's "production" appears to be nothing more than largely an unorganized data dump of its production in the earlier MySpace and Grouper cases totaling roughly 1.4 million pages. (*Id.* at ¶ 11.) UMG also complains about the size of Veoh's production. Veoh has already produced more than 71,000 pages of documents, in addition to close to 30 versions of the Veoh software (*Id.* at ¶ 10), and made specific reasonable proposals to UMG regarding additional categories of documents it is willing to produce in the June 13, 2008 Letter. (*Id.* at ¶ 2 and Exh. A). UMG simply ignored those proposals, apparently considering it more productive to file this motion.[7]

---

[7] UMG argues generally that Veoh's Responses improperly rely upon "general objections." General objections when appropriate may be sustained by a Court. *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661 (D. Kan. 2004); see also *U.S. v. Dentsply Int'l, Inc.*, 2000 WL 654286 (D. Del. May 10, 2000). "[G]eneral objections stated in a clear and discernable manner, based on the facts of the case . . . should be deemed acceptable" if "repeating the objection for multiple responses is pointless and there is no uncertainty regarding what information is being withheld." Moore's Federal Practice, § 33.171. General objections are standard fare in modern litigation and protect the cautious responding party from inadvertently waiving objections when responding to numerous discovery requests. In this case, Veoh made specific objections to each request as appropriate in addition to its general objections. Moreover, while UMG takes issue with Veoh's General Objection on the grounds that it cannot determine whether defendant has actually withheld responsive documents, Veoh has clearly stated when it would produce documents in response to individual requests.

### 1. UMG Is Not Entitled to the Details of Veoh's Collection and Review Strategy

The specific issue UMG raises in this section of its motion, is that Veoh should (1) be ordered to identify the Veoh employees and executives whose files have been searched so far, and which will be searched for responsive documents; (2) that Veoh should be ordered to reveal whether it is reviewing all of the custodians' documents, and if it instead is identifying responsive documents through keyword searching, it should be ordered to identify the search terms it has used to date, if any, and which terms it will use in the future.

As this Court has noted, absent a showing of bad faith, the Federal Rules do not require Veoh to identify for UMG specific custodians or search terms, but to make a good faith effort to produce responsive documents:

> in the absence of bad faith, indiligence, or some other deficiency that is genuinely likely to result in a failure to produce unprivileged relevant documents, courts generally decline to become involved in the process of selecting the particular people whose documents must be reviewed or the particular search that must be utilized.

(Golinveaux Decl. ¶ 13 and Exh. B (Andrew J. Wistrich Order in *UMG v. MySpace et al.* Docket 270, 3/24/08) (noting that regardless of whether search terms were suggested or requested, the producing party has a burden to ensure a complete production)) (citing *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) ("Like other discovery rules, Rule 34(a) does not give the requesting party the right to conduct the actual search.")

UMG's insistence that Veoh disclose the search terms and custodians it has selected to comply with its discovery obligations invades Veoh's work product. The work product doctrine protects trial preparation materials that reveal an attorney's strategy. FRCP 26(b)(3); see *Hickman v. Taylor* (1947) 329 U.S. 495, 511, 67 S.Ct.

385, 393-394; *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 41568, *4-*5 (N.D. Cal. 2006). The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). The Ninth Circuit has held that work product may be discovered and admitted "only upon a showing that the party seeking discovery has a substantial need of the materials in preparation of the party's case . . . " *Holmgren v. State Farm Mut. Auto. Ins*. Co., 976 F2d 573, 577 (9th Cir. 1992). The specific terms and custodians that Veoh's counsel has or intends to use in the future to conduct document searches and review fall squarely within the type of information protected by the work product doctrine.

UMG has made no showing that it has a substantial need to encroach upon Veoh's work product. There is no substantial need here to require disclosure of the search and review methodology decided on by Veoh's attorneys. There is no indication that Veoh will not conduct a good faith search.

The two cases cited by UMG are inapposite. In *Treppel* the Court required Defendant to disclose search terms <u>only after Defendant itself had proposed doing so</u>. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Here, Veoh has represented that it will conduct a reasonable and diligent search, but has not offered to disclose search logic. *O'Bar* is also distinguishable. *O'Bar v. Lowe's Home Centers, Inc.*, No. 5:04-cv-00019, 2007 WL 1299180 (W.D.N.C. May 2, 2007). In *O'Bar*, during the precertification phase of a class action lawsuit, the court, *sue sponte*, ordered the parties to submit an extremely detailed "precertification discovery plan," the specifics of which span from pages two through page eight of the order. *Id.* at *2-*7. Section K of such requirements included the parties addressing search methodologies. *Id.* at *6. Where the court is faced with a potential class of all white males ever employed by Lowe's during a specified period, agreed upon search terms serve to limit the burdens imposed upon the parties prior to a class even being certified. *Id.* at *3-*4. Such concerns are clearly not present here, and Veoh is not seeking limitations on its discovery obligations.

### 2. Veoh Told UMG That It Was Waiting To Review Internal Email Until It Received A Response To Its June 14, 2008 Letter

UMG's apparent justification for its demand that Veoh disclose work product regarding document collection and review efforts, is that Veoh has not yet produced any internal email. Veoh explained to UMG during the meet and confer process that Veoh would review internal email for production once the parties agreed upon the categories of documents to be produced, so that Veoh would not be in the position of having to review large volumes of email correspondence multiple times. UMG did not object to this approach. Veoh sent a letter detailing which documents it would produce and never heard back from UMG. If UMG is now saying Veoh's proposals are acceptable, Veoh will promptly review internal email, and produce the agreed upon documents.

In addition, UMG has failed to explain how Veoh's providing a list of search terms would be a practical procedure for identifying documents in response to many if not most of UMG's requests identified in this Section of the joint stipulation. UMG has offered no reason why it believes Veoh will not include certain custodians and search terms that would result in the most diligent search, or how or why UMG would be in a better position than Veoh to make such determinations with respect to any term or custodian.

UMG has failed to show bad faith on Veoh's part. Veoh has agreed to produce responsive documents, as appropriate under the Federal Rules.[8] Veoh has already produced a large volume of documents and, as it explained repeatedly to UMG, will promptly complete its review and production once it has confirmation that the proposals in its June 13, 2008 letter are acceptable. The Court should deny UMG's request for work product concerning the manner of Veoh's response to the discovery.

---

[8] In stark contrast, in its written responses, UMG *only* agreed to produce documents in response to unspecified key word searches on unspecified custodians. UMG's responses are no substitute for a good faith search.

## III. VEOH'S REPEATED OBJECTIONS TO THE TERM "VEOH SOFTWARE"—REQUESTS FOR PRODUCTION NOS. 4, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 39, 42, 47, 50, 56, 57, 89, 91, 92, 94, 95, 96, 97, 98, 99, 103, 104, INTERROGATORIES NOS. 4, 6, 7

### A. Example Verbatim Statement of Disputed Discovery and Response[9]

***REQUEST FOR PRODUCTION NO. 4:***

*All documents relating to any audiovisual works incorporating UMG's Copyrighted Works that have been uploaded onto Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 4:***

*In addition to its General Objections,[10] Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive, and as vague and ambiguous. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous. Veoh further objects to this Request as so vague, ambiguous, uncertain, and confusing with respect to the defined phrase "UMG's Copyrighted Works" and the term "incorporating" that Veoh is unable to reasonably frame a response.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will consider production of documents identified by UMG in a reasonably tailored request. (Second emphasis added).*

---

[9] For the Court's convenience and in an effort to reduce the length of this Joint Stipulation, UMG includes only examples of the discovery requests and responses that include Veoh's objection to the term "Veoh Software."

[10] Veoh also included "General Objections" in its written responses to UMG's document requests and interrogatories. Veoh generally objects to the term "Veoh Software" as vague, ambiguous, and unintelligible. These objections may be found in each set of responses, which are attached as exhibits to the Ledahl Declaration as Exhibits 10 and 11. UMG has not reproduced those objections for each discovery request at issue here in an effort to reduce the length of this Joint Stipulation and because Veoh does not appear to stand upon the General Objections as a basis for its refusal to provide the requested discovery. Rather, it appears that Veoh has stated (or re-stated) in its response to each request those objections it believes are applicable.

***REQUEST FOR PRODUCTION NO. 56:***

*All documents relating to any analysis, investigation, study and/or report relating to allegedly infringing Content posted to Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 56:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. <u>Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous</u>.*

*(Second emphasis added).*[11]

***REQUEST FOR PRODUCTION NO. 92:***

*All screenshots of Veoh Software, and every Version and/or prior instantiation thereof, that capture and/or show all changes made by Veoh to the layout, design, features, capabilities, and/or any other functional characteristics of Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 92:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant*

---

[11] In addition, Veoh states that it will produce any non-privileged studies or reports relating to allegedly infringing Content posted to Veoh Software. Ledahl Decl., Ex. 13 (06/13/2008 Letter from J. Golinveaux to B. Ledahl).

*to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. <u>Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.</u> Veoh further objects to this Request to the extent that the defined term "Veoh" seeks materials outside of Veoh's possession, custody or control. (Second emphasis added).*

***INTERROGATORY NO. 4:***

*Describe with particularity Your modifications to Your products and services since the first public release of a beta version of Veoh Software, including, by way of example only, any modifications to Your practices for filtering for copyrighted Content.*

***RESPONSE TO INTERROGATORY NO. 4:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as impermissibly compound. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory to the extent it calls for information apparent from the face of documents to be produced, as Veoh and Plaintiff would face a similar burden of deriving or ascertaining the answer to this Interrogatory from those documents. See Fed. R. Civ. P. 33(d).*

*Subject to and without waiving the foregoing general and specific objections, Veoh responds as follows: Veoh has released the following versions of Veoh's client software:*

| | |
|---|---|
| *Veoh Uploader* | *0.5.x* |
| *VeohPlayer* | *1.0.x* |
| *VeohPlayer* | *2.x.x* |
| *VeohPlayer* | *3.0.x* |
| *VeohPlayer* | *3.1.x* |
| *VeohTV Beta* | *3.2.x* |
| *VeohTV Beta* | *3.3.x* |
| *VeohTV Beta* | *3.4.x* |
| *VeohTV Beta* | *3.5.x* |
| *VeohTV Beta* | *3.6.x* |
| *VeohTV Beta* | *3.7.x* |
| *VeohTV Beta* | *3.8.x* |
| *VeohTV Beta* | *3.9.x* |

**B. UMG's Contentions and Points of Authorities**

Throughout its responses to UMG's requests for production and interrogatories, Veoh repeatedly objects to UMG's use of the defined term "Veoh Software." For the convenience of the Court, and to avoid increasing the length of the instant joint stipulation through repetition of this issue, UMG addresses Veoh's objections to the term "Veoh Software" in this section. The relevance of each of these discovery requests, in addition to Veoh's other objections to these requests, will be addressed in subsequent sections of UMG's portion of this Joint Stipulation. To better explain the context of this objection, UMG first provides a brief overview of Veoh.

**1. Overview of Veoh**

Veoh is a massive copyright infringer that has built its business on the back of others' intellectual property. Veoh follows in the ignominious footsteps of other

recent mass infringers such as Napster, Aimster, KaZaA, and Morpheus, engaging in high tech theft in the name of "sharing." Veoh operates Veoh.com, a "video sharing" website where members of the public can search for, view, upload, and download thousands of videos, including thousands of infringing copies of copyrighted works. Complaint ¶ 12.

Veoh has created a sophisticated suite of software and services designed to encourage members of the public to "share" permanent copies of videos. *Id.* ¶ 17. Veoh has also created and distributes for free versions of "client" software, called "VeohTV" and "Veoh Player," that users or "members" of Veoh install on their personal computers. After a member installs the Veoh client software, his or her computer becomes part of the "Veohnet" network, and can be used to facilitate the distribution and display of infringing content over the Internet. *Id.* ¶ 18.

Veoh's software allows members to "share" and/or download videos from Veoh.com, as well as videos displayed on third-party websites, and "post" copies of videos to Veoh.com and other websites. *Id*. A Veoh member who has used Veoh's client software to download a copy of a video from a third party website can then upload that video to Veoh.com, where it can be viewed by thousands over the Internet. *Id*. Veoh users frequently upload infringing copies of videos incorporating UMG's works on Veoh.com. For example, a search on Veoh.com for the UMG artist Fergie, who was listed in Exhibit A of UMG's Complaint returns over 100 results, including unauthorized copies of a professionally-made music video for the song "Big Girls Don't Cry," which song is also listed in Exhibit A of UMG's Complaint. *See* Ledahl Decl., Ex. 15 (screenshot of search results for "Fergie"), Ex. 16 (screenshot of video for "Big Girls Don't Cry" on Veoh.com).

Veoh also makes a variety of free services available to members who upload videos to Veoh.com, including facilitating the posting of copies of videos to other websites. Complaint ¶ 19. Veoh even adds the Veoh logo to videos that are posted on the Internet via the Veoh client software, thereby using UMG's copyrighted content to

advertise Veoh's service without UMG's consent. *Id.*

Veoh is well aware that its website and client software are used for rampant copyright infringement. Indeed, Veoh Networks Founder and Chief Innovation Officer Dmitry Shapiro "acknowledge[d] that only a week after the company's official debut, Veoh.com is host to a wide range of unauthorized and full-length copies of popular programs." Ledahl Decl., Ex. 17 (Greg Sandoval, *A New Copyright Battlefield: Veoh*, CNET News (2.21/2007). Another article singled out Veoh as one of the top destinations for "hard core copyright infringement." *Id.*, Ex. 18 (Michael Arrington, *Forget about YouTube: Go To These Sites If You Want Hard Core Copyright Infringement*, TechCrunch (4/4/2007). Veoh has chosen not to employ simple safeguards against copyright infringement used by competitor websites that would reduce the number of infringing works on Veoh.com. Complaint ¶ 13.

Veoh enjoys the benefits of exploiting UMG's and others' copyrighted content, such as increased traffic to its website and millions of dollars of financial support from investors, without having to pay copyright owners for using their content. *Id.* ¶¶ 13-14. Veoh also sells targeted advertisements that reflect what content, including infringing content, Veoh's members are viewing, and shares in revenues when members use Veoh's services to rent or sell videos. *Id.* ¶ 20.

### 2. Veoh's Objections to the Term "Veoh Software" Lack Merit

UMG propounded requests for production of documents and interrogatories seeking discovery that is relevant to virtually all of the claims and defenses in this case, including Veoh's affirmative defense under the DMCA, as well as damages. Months later, Veoh has only barely begun to produce documents in response to these requests. Veoh flatly refuses to produce documents in response to most of these requests. Many of UMG's requests refer to "Veoh Software." UMG defined this term in its requests as "Veoh.com, Veoh's peer-to-peer Veohnet network, and/or any versions of Veoh's client software, including without limitation VeohTV and/or Veoh Player." Ledahl Decl., Exs. 6, 7. Notwithstanding this clear definition, Veoh objects

to every request containing this term as vague, ambiguous and unintelligible.

Veoh fails to provide any explanation to support its objections. Veoh's claim that the term is "unintelligible" is simply not credible. Veoh has superior knowledge of its technology, including Veoh.com, VeohTV, and the Veoh Player, and should be able to respond to those requests and interrogatories that use the term Veoh Software. Veoh cannot continue to claim that it is unfamiliar with its own software.

Veoh's claim of ambiguity is further undermined by its responses to UMG's interrogatories. Veoh was able to list, in its response to Interrogatory No. 4, a list of various versions of the Veoh client software. Although, as discussed below, Veoh's response to Interrogatory No. 4 is lacking in many respects, it demonstrates that Veoh clearly understood UMG's use of the term "Veoh Software." Given Veoh's superior knowledge of its technology, Veoh's objections to the term "Veoh Software" should be overruled so that discovery can proceed.

**C. Veoh's Contentions and Points of Authorities**

UMG appears to have included this Section in its motion to compel, merely to create the opportunity to spend pages arguing the merits of its case. In this Section, UMG raises another non-issue. Veoh's counsel explained to UMG's counsel during the meet and confer process the reason for Veoh's objection to the term Veoh Software, namely that UMG had defined as "Software", the veoh.com website (which is clearly not software), as well as something that UMG calls "Veoh's peer-to-peer Veohnet network," which UMG does not define, and which UMG's counsel did not further explain during the meet and confer process. Veoh's counsel further explained to UMG's counsel that Veoh would not withhold categories of documents it agreed to produce based upon this objection, and during the meet and confer UMG's counsel agreed that it appeared to, therefore, be a non-issue.

Following the meet and confer discussions, Veoh proposed categories of documents it would produce in response to twenty-seven of the document requests that UMG refers to as disputed in this section. (*See* Golinveaux Decl. ¶ 2 and Exh. A,

June 13, 2008 Letter, Veoh's proposed productions to UMG's request nos. 4, 7, 9, 12, 13, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 56, 57, 98, 99 and 103). Veoh never received a response from UMG regarding its proposals. (*Id.* at ¶ 3). This purported issue is in fact a non-issue. Given that Veoh has said it is not withholding documents it agreed to produce based upon its valid objection, it is unclear what relief UMG is seeking.

## IV. REQUESTS FOR PRODUCTION NOS. 1, 9-11, 34, 36, 56-58—VEOH'S COPYRIGHT POLICIES AND PRACTICES[12]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 1:***

*All communications relating to alleged copyright infringement by Veoh.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 1:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: upon entry of an appropriate Protective Order Veoh will produce non-privileged documents responsive to this Request that constitute communications from third parties to Veoh that include an allegation of copyright infringement by Veoh, and Veoh's responses to the senders of such communications, to the extent such documents are found within*

---

[12] For the convenience of the Court, these document requests have been grouped together because UMG's arguments for their production are substantially overlapping.

*its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[13]

***REQUEST FOR PRODUCTION NO. 9:***

*All documents relating to Your policies or practices relating to the uploading and/or downloading of audio and/or audiovisual works to or from Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 9:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request that constitute all versions of Veoh's Terms of Use and Copyright Policy, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[14]

---

[13] In addition, Veoh states that it will produce non-privileged communications that mention alleged copyright infringement by Veoh. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[14] In addition, Veoh states that it will produce any responsive internal policies. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

***REQUEST FOR PRODUCTION NO. 10:***

*All documents relating to any steps that You have taken to prevent infringing copies of copyrighted materials from being uploaded to and/or downloaded from Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 10:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 11:***

*All documents relating to Veoh's decision not to facilitate the uploading or downloading of audiovisual files.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 11:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request on the grounds that it seeks materials protected by the attorney-client privilege and work product doctrine.*[15]

***REQUEST FOR PRODUCTION NO. 34:***

*All documents relating to Your "Copyright Policy."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 34:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged*

---

[15] After meeting and conferring, Veoh states that it will produce any non-privileged responsive documents relating to Veoh's decision not to facilitate the uploading or downloading of infringing audiovisual files. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*documents responsive to this Request that constitute all versions of Veoh's Copyright Policy, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 36:***

*All documents relating to any notices received by You pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c).*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 36:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined term "You" seeks material outside of Veoh's possession, custody or control.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents constituting notices of alleged copyright infringement received by Veoh, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 56:***

*All documents relating to any analysis, investigation, study and/or report relating to allegedly infringing Content posted to Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 56:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[16]

***REQUEST FOR PRODUCTION NO. 57:***

*All documents relating to any analysis, investigation, study and/or report relating to music videos posted to Veoh Software by members of the public.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 57:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and contusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other*

---

[16] In addition, Veoh states that it will produce non-privileged studies or reports relating to allegedly infringing Content posted to Veoh Software. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[17]

***REQUEST FOR PRODUCTION NO. 58:***

*All documents relating to actual or threatened litigation concerning alleged copyright infringement by You, including without limitation any cease and desist letters, takedown notices or other correspondence relating to such threatened or actual litigation, and all pleadings, briefs, discovery responses, declarations and affidavits filed or served by You in any such legal proceeding.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 58:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

**B. UMG's Contentions and Points of Authorities**

UMG groups these requests together because they relate generally to Veoh's policies and actions regarding copyright infringement and the handling of copyrighted material on its services. As discussed below, these materials are directly relevant to multiple issues in this case, including particularly Veoh's affirmative defenses under

---

[17] In addition, Veoh states that it will produce non-privileged studies or reports relating to music videos posted to Veoh Software by members of the public. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

the DMCA. For the Court's convenience, UMG first provides a brief discussion of the DMCA to help illustrate the relevance of the requested materials.

### 1. The DMCA Implicates Veoh's Copyright Policies and Practices

Veoh claims that it is entitled to the "safe harbor" protections of the DMCA. Indeed, Veoh identifies its DMCA defenses as a "principal legal issue" in this lawsuit. Ledahl Decl. Ex. 5 (*UMG v. Veoh* Joint Rule 26(f) Report at 4) (listing the DMCA as the first "principal legal issue" in this suit). The DMCA contains so-called "safe harbor" provisions, limiting the remedies available from copyright infringement liability under certain circumstances for certain "service providers." Under the DMCA, the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor[.]" 17 U.S.C. § 512(k)(l)(B).[18] For "service providers," the DMCA then provides the following "safe harbor" from liability for certain acts taken under certain tightly circumscribed circumstances:[19]

> (c) Information Residing on Systems or Networks At Direction of Users.—
>
> (1) In general.— A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—

---

[18] Veoh apparently contends that it is a "service provider" and therefore falls under the DMCA. Proving this contention is an element of Veoh's defense, and it therefore must also provide discovery regarding this issue. While UMG also discusses other elements of Veoh's affirmative defense in this motion, obviously, UMG does not concede that Veoh has or can prove any of the individual elements.

[19] This description simplifies from the DMCA's complex scheme. There are other threshold requirements a service provider must make before the safe harbors because available. *See Corbis Corp.v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004) (discussing the threshold requirements for DMCA eligibility).

(A)

(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

…

17 U.S.C. § 512(c).

Accordingly, a "service provider" whose liability arises from "storage" of material on a system or network "at the direction of a user" may have a safe harbor from liability if it can meet all three of the DMCA's requirements:

- The first requirement relates to the service provider's knowledge: Does the service provider have (i) actual knowledge that the material or an activity using the material on the system or network is infringing; (ii) an awareness of facts or circumstances from which infringing activity is apparent; or (iii) if the service provider receives

knowledge, does it acts expeditiously to remove, or disable access to, the material? 17 U.S.C.§512(c)(l)(A)(i)-(iii).

- The second requirement relates to the service provider's financial benefit from the infringing activity and right and ability to control the infringing activity: Does the service provider "receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity"? 17 U.S.C. §512(c)(l)(B).
- The third requirement relates to removing or disabling access to copyrighted material: Does the service provider "upon notification of claimed infringement... respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity"? 17 U.S.C. § 512(c)(l)(C).

**2. The Federal Rules Broadly Define "Relevant" Documents**

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). Courts have interpreted relevance broadly; "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).

**3. Documents and/or Communications Regarding Veoh's Copyright Policies and Practices Are Highly Relevant**

Requests for Production Nos. 1, 9-11, 34, 36, 56-58 seek discovery concerning Veoh's policies and practices regarding copyright infringement, including policies and practices that enable such infringement, on the Veoh website and player. Documents

responsive to these requests include, among other things, reports, plans, and communications among Veoh employees, or between Veoh and its investors, regarding actual or alleged copyright infringement; communications between Veoh and third parties regarding copyright infringement; notices of copyright infringement submitted to Veoh by third parties; Veoh's copyright policies, including documents (such as internal communications) showing the development of these policies and how they are executed; Veoh's terms of use, including documents reflecting their development and execution by Veoh employees; reports describing the number and popularity of infringing, professional music videos uploaded to Veoh; and plans regarding Veoh's decision to allow users to upload and download (potentially infringing) works on the Veoh website and player.

Veoh has refused to produce the vast majority of documents responsive to these requests. Veoh claims that it will produce only the following:

- Communications from third parties to Veoh that include an allegation of copyright infringement by Veoh, and Veoh's responses to the senders of such communications;
- Veoh's internal policies relating to the uploading and/or downloading of audio and/or audiovisual works, and versions of Veoh's official Copyright Policy and Terms of Use; and
- documents responsive to Request No. 10, i.e., relating to steps Veoh has taken to prevent infringement, subject to Veoh's so-called "reasonable interpretation" of the request.

Additionally, Veoh has suggested that it will produce communications that mention copyright infringement by Veoh. *See* Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl). Thus, Veoh refuses to produce, for example, documents reflecting how Veoh's copyright policies are developed and executed in practice. Even as to those requests that Veoh offers to produce some responsive documents, Veoh will not inform UMG of the supposedly "reasonable and diligent"

search it intends to undertake. Veoh will likewise not reveal what its “reasonable interpretation” of Request No. 10 consists of. UMG is therefore unable to determine what exactly Veoh intends to produce. Certainly limiting its production only to documents that use the words “copyright infringement by Veoh,” as Veoh proposes, will exclude numerous relevant documents.

Veoh’s copyright policies and practices are central to this case, and to several of the parties’ claims and defenses, including Veoh’s defenses under the safe harbor provisions of the DMCA. A service provider is not entitled to protection under the safe harbor provisions of the DMCA if the service provider has “actual knowledge that the material or an activity using the material on the system or network is infringing.” 17 U.S.C. § 512(c)(l)(A)(i). Communications or reports discussing copyright infringement on Veoh—whether or not in the form of notices of alleged infringement, and whether or not using the phrase “copyright infringement by Veoh”—may be relevant to showing Veoh’s knowledge of infringing material on its system.

Similarly, the DMCA requires that a “service provider” implement a “repeat infringer” policy. 17 U.S.C. § 512(i). The Ninth Circuit recently held that service providers’ “actions towards copyright holders who are not a party to the litigation are relevant in determining whether [the service providers] reasonably implemented their repeat infringer policy.” *Perfect 10, Inc. v. CCBill LLC,* 481 F.3d 751, 762 (9th Cir. 2007). Accordingly, studies, reports, and internal communications discussing copyright infringement on Veoh may be useful, in addition to allegations of infringement made by third parties, to determining whether Veoh’s has “reasonably” implemented a “repeat infringer” policy under 17 U.S.C. § 512(i).

Communications or other documents that reflect Veoh’s efforts to respond to DMCA or takedown notices are, for the same reason, relevant, but Veoh has refused to produce them. The written response that Veoh sends to the person who sent the notice is insufficient to fully evidence the steps that Veoh actually took. Likewise,

other documents evidencing how Veoh carries out its copyright policy, such as plans, reports, and analyses of Veoh's responses to notices of copyright infringement, as well as documents regarding actual or threatened litigation concerning copyright infringement, are relevant to assessing whether Veoh has reasonably implemented a repeat infringer policy.

Because these documents will also reflect Veoh's knowledge of infringing activity on Veoh.com, they will be further relevant to Veoh's affirmative defenses under the "safe harbor" provisions of the DMCA, 17 U.S.C. §§ 512(c), 512(j). Communications, reports, investigations, and studies relating to the infringement on Veoh are obviously relevant to determining, under the DMCA, whether Veoh had knowledge of infringement or was "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. §512(c)(l)(A)(i),(ii). Studies or reports concerning music videos uploaded to Veoh.com or the Veoh player will also likely demonstrate actual or constructive knowledge of infringement, as well as the financial benefit Veoh derives from the presence of music videos on its site, even if they do not specifically discuss "copyright infringement" per se.

Apart from Veoh's DMCA defense, these documents demonstrate Veoh's liability as a willful infringer, an inquiry relevant to setting the level of statutory damages under the Copyright Act, 17 U.S.C. § 504(c)(2). For example, as stated above these documents will reflect generally on Veoh's knowledge of copyright infringement on Veoh.com. *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement maybe shown from constructive knowledge); *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164,1173 (E.D. Cal. 2006) ("willful blindness" includes "a deliberate effort to avoid guilty knowledge" (quotations and citations omitted)). Similarly, these documents will also likely be relevant to UMG's claim for contributory infringement. *See* Nimmer on Copyright § 12.04[A][3] (explaining that contributory infringement exists where the defendant had knowledge of and induced or materially contributed to the

infringement).

### 4. Veoh's Boilerplate Objections Cannot Support Its Refusals To Produce

Veoh listed various boilerplate objections to these requests in its written responses, including that they are vague or overbroad, without any explanation to support why these requests are objectionable on such grounds.[20] Objections that a request is overbroad and that the production of responsive documents would be unduly burdensome must be accompanied by admissible evidence to that effect, usually in the form of affidavits from the responding party. *See In re Advanced Interventional Sys. Sec. Litig.*, No. SACV92-723-AHS (RWRX), 1993 WL 331006, at *4 n.5 (C.D. Cal. May 17, 1993) (granting motion to compel because the objecting party "failed] to produce any evidence in support" of its contention that the requests were unduly burdensome); *see also Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 498 (D. Md. 2000) (holding that "[t]he party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavits or other reliable evidence"); *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997) (same). Veoh has presented no such evidence. If there are many, many documents responsive to these requests, which is indeed likely, that fact does not make the requests overbroad.

Accordingly, these documents bear upon, or reasonably could lead to documents that could bear upon, UMG's claims or Veoh's defenses. *See* Fed. R. Civ. Pro. 26(b)(l) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). Veoh's objections should be overruled and the Court should grant UMG's motion to compel with respect to Requests Nos. 1, 9-11, 34, 36, 56-58. Specifically, the Court should order Veoh to

---

[20] Veoh also objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to an interim protective order which should resolve any confidentiality concerns Veoh may have noted in its objections.

state the methodology it intends to use to search for and produce documents responsive to each request, including Request for Production No. 10, and order Veoh to produce all responsive documents it identifies using that methodology by a specific deadline.

**C. Veoh's Contentions and Points of Authorities**

Yet again, UMG has apparently included this Section of its motion to compel simply to argue its version of the merits of this case and to create the illusion of disputes over discovery. Either in its responses to UMG's document requests or in its June 13, 2008 Letter, Veoh agreed to produce categories of documents in response to every request identified by UMG in this Section with the exception of request no. 58.

UMG never responded to Veoh's June 13, 2008 Letter, and does not explain how or whether those proposals as well as the additional documents Veoh agreed to produce in its discovery responses are insufficient, or what additional categories of documents UMG seeks. UMG merely reiterates its demand for Veoh to "inform" UMG of the search it intends to undertake, which as addressed in Section II above, the Federal Rules do not require. UMG's contention that Veoh has limited its production "only to documents that use the words 'copyright infringement' by Veoh" (*supra* at 34) is simply false.

For the Court's convenience, Veoh attaches a summary chart to the Golinveaux Decl. as Exhibit C showing each request addressed in this Section, Veoh's initial response, the further proposal set forth in Veoh's June 13, 2008 Letter (to which UMG never responded) (Golinveaux Decl. ¶ 14 and Exh. C). In short, Veoh initially offered to provide documents in response to UMG's request nos. 1, 9, 10, 34, and 36, and subsequently offered to produce additional documents in its June 13, 2008 Letter in response to request nos. 1, 9, 11, 56, and 57. (*Id.* at ¶¶ 2, 14 and Exhs. A, C.)

With respect to request no. 1, Veoh has agreed to produce "communications that mention alleged copyright infringement by Veoh," and Veoh's proposal mirrors this Court's Order in the MySpace and Grouper litigation with respect to nearly

identical requests. (Golinveaux Decl. ¶ 14 and Exh. D; *Judge A. J. Wistrich Order Re Discovery Disputes*, Docket 82, 11/8/07, p. 3(II), ¶ 2-3 (ordering Crackle to respond to discovery requests 3 and 4 as clarified to state: "All communications . . . that mention alleged actual or potential copyright infringement by Grouper."))

Further, Veoh offered to produce all responsive internal policies in response to request no. 9 and 34; and Veoh has already produced all DMCA notices and responses sought by request nos. 10 and 36. In Veoh's June 13, 2007 Letter Veoh offered to produce the documents sought by request nos. 11, 56 and 57, but UMG never responded. (Golinveaux Decl. at ¶¶ 2, 14 and Exhs. A, C.)

In fact, the only request cited in this section which Veoh has either not agreed to produce responsive documents, or otherwise offered to supplement its response in its June 13, 2008 Letter, is request no. 58, which seeks every document relating to actual or threatened litigation, briefs, declarations, pleadings and discovery responses, including all correspondence relating thereto. UMG fails to offer any argument as to whu such documents would be relevant to this case. Third party infringements are generally not relevant for purposes of discovery, even when secondary liability is asserted. *Dolby Labs, Inc. v. Lucent Techs., Inc.,* No. 01-cv-20709, 2004 U.S. Dist. LEXIS 30484, at *16-18 (N.D. Cal. May 26, 2004). Where the defendant in *Lucent* alleged a counterclaim for patent infringement, the court denied its motion to compel documents related to licensees other than the plaintiff accused of infringing patents unrelated to the litigation. *Id.* at *17. ("[the plaintiff] shall be required to produce such responsive documents only as to the 68 licensees accused by [the defendant] of infringing patents-in-suits."). Likewise, UMG's inquiries into cases regarding unrelated allegations of infringement have no connection to UMG's claims and are overbroad, irrelevant and improper, particularly since Veoh has already produced to UMG copies of all DMCA correspondence.[21] Veoh has already offered to produce

[21] Not only is this request overly broad, certain of the material sought is subject to a protective order. Another court's protective order will not be violated; it must authorize disclosure. *Dushkin Publ'g Group v. Kinko's Serv. Corp.*, 136 F.R.D. 334,

documents in response to each of these reqests except request no. 58 and UMG has failed to explain why the documents sought in that request would be relevant to this case. Its motion should be denied as to the requests addressed in this Section.

## V. REQUESTS FOR PRODUCTION NOS. 2-3—LITIGATION RELATED DOCUMENTS[22]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 2:***

*All communications relating to This and Related Actions.*[23]

***RESPONSE TO REQUEST FOR PRODUCTION NO. 2:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties.*

---

335 (D.D.C. 1991).

[22] For the convenience of the Court, these document requests have been grouped together because UMG's arguments for their production are substantially overlapping.

[23] UMG defines the Related Actions as the above-captioned action, *UMG Recordings, Inc., et al. v. Veoh Networks, Inc.*, Central District Case No. CV 07-05744 AHPI/I (AJWx), *Veoh Networks, Inc. v. UMG Recordings, Inc., et al.*, S.D. Cal. Case No. 07 CV 1568 TJW (BLM), and *Io Group, Inc. v. Veoh Networks, Inc.*, N.D. Cal. Case No. C-06-03926 (HRL).

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: upon entry of an appropriate Protective Order Veoh will produce non-privileged documents constituting communications relating to this action, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[24]

***REQUEST FOR PRODUCTION NO. 3:***

*All documents produced in Io Group, Inc. v. Veoh Networks, Inc., N.D. Cal Case No. C-06-03926 (HRL).*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 3:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: upon entry of an appropriate Protective Order Veoh will produce relevant, non-privileged documents produced by Veoh that are responsive to this Request, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

**B. UMG's Contentions and Points of Authorities**

These requests seek documents regarding this action, and Veoh's declaratory

---

[24] In addition, Veoh states that it will produce non-privileged communications that mention Veoh's declaratory relief action against UMG. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

relief claim filed in the Southern District of California, and *Io Group, Inc. v. Veoh Networks, Inc., N.D. Cal Case No. C-06-03926 (HRL)*(a separate copyright infringement matter pending against Veoh in which it asserts many of the same defenses at issue here). The primary dispute between the parties regarding these requests appears to be one of relevance. While Veoh has agreed to produce some documents responsive to these requests (although it refuses to clarify how it intends to make a "reasonable and diligent search) Veoh will not agree to produce various categories of documents regarding the *Io Group* litigation. Veoh contends that such communications are not relevant to the instant case. More recently, Veoh has taken the surprising position that deposition testimony of Veoh witnesses from the *Io Group* matter has not even been requested in this case and refused to produce such transcripts. On the contrary, however, Veoh's documents relating to the *Io Group* case, which raises many of the same claims and defenses at issue in this case, is highly relevant.

**1. Documents Regarding the *Io Group* Litigation Are Relevant to this Case**

Io Group filed suit against Veoh in the Northern District of California, alleging that Veoh had infringed its copyrighted works. As in this case, Veoh has asserted the DMCA as an affirmative defense to Io Group's claims. Thus, Veoh put at issue in that case various aspects of its business and technology, such as the methods by which it stores and transmits information, and its repeat infringer policy. Those same aspects of Veoh's business and technology are now at issue in this case. The fact that UMG is not directly involved with the *Io Group* litigation is of no moment. Indeed, as the Ninth Circuit has recognized, service providers' "actions towards copyright holders who are not a party to the litigation are relevant in determining whether [the service providers] reasonably implemented their repeat infringer policy." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 762 (9th Cir. 2007). Thus, Veoh's actions towards Io Group are relevant to this case.

Judge Matz has confirmed that the *Io Group* litigation is relevant to this case. During the parties' scheduling conference, Judge Matz specifically inquired about the progress of the *Io Group* litigation, and requested that Veoh lodge copies of the summary judgment briefs (which address Veoh's eligibility for safe harbor under the DMCA) with the Court. Ledahl Decl., Ex. 20 (Transcript of Scheduling Conference).

**2. Veoh Improperly Refuses To Produce Various Documents Regarding The *Io Group* Lawsuit**

Notwithstanding the clear relevance of the *Io Group* litigation to this matter, Veoh persists in refusing to provide materials from that action in discovery here. Most notably, Veoh recently disclosed that it was withholding all deposition testimony of Veoh witnesses given in the *Io Group* matter. UMG had thought, based on its prior representations and discovery responses that Veoh would be producing such materials. UMG only discovered Veoh's true position when the issue came to light as a result of certain transcripts having been provided to UMG by *Io Group*'s counsel. Veoh contends that certain portions of two depositions (approximately 6 pages total) should not have been provided to UMG because they were designated under a protective order in the *Io Group* matter. Ledahl Decl., ¶¶ 21-23. UMG offered to address this concern by agreeing to treat the portions of the transcripts in question as Confidential under the Interim Protective Order entered by this Court. *Id.*, ¶ 22. Veoh refused and demanded that UMG destroy these portions of the deposition transcripts. *Id.*, ¶ 23. UMG inquired as to why this would be necessary (or appropriate) since the material was clearly non-privileged and subject to discovery in this case. UMG pointed out that Veoh's demands seemed calculated only to insert delay and obstruct UMG's efforts to prepare its case. *Id.* Veoh contended, for the first time, that UMG had purportedly not even requested these materials and that Veoh refused to provide them in discovery. *Id.* UMG respectfully submits that the requests

set forth above, in addition to many others, clearly seek these transcripts.[25] Veoh's newly disclosed position reveals that Veoh's refusals to produce go beyond even the language of its written responses. Veoh also purports to take unreasonable positions as to the scope of discovery requested while concealing those positions from UMG.

Veoh further argues that certain aspects of the *Io Group* case are irrelevant because *Io Group* deals with pornographic content on Veoh's website. As discussed below, Veoh has refused, in response to other requests, to produce documents concerning Veoh's efforts to screen for or remove content of a pornographic nature. Veoh contends that only its efforts to screen for copyright infringing content are relevant to the instant case. Veoh makes a distinction without a difference. Discovery regarding Veoh's screening or filtering of pornography is relevant to, for example, Veoh's right and ability to control copyright infringement. If Veoh has the right and ability to control the upload of pornography, then UMG can argue that Veoh also has the right and ability to control the upload of infringing music videos. *See Perfect 10 v. Cybernet*, 213 F. Supp. 2d 1146, 1170 (C.D. Cal. 2002) (reasoning that Cybernet "ability to control *other types of images* belies any attempt to argue that Cybernet does not exercise sufficient control over its webmasters to monitor and influence their conduct or deny copyright offenders the benefits of its service" (emphasis added)). Thus, Veoh should be ordered to promptly produce all documents regarding the Related Actions, including the *Io Group* case.

**C. Veoh's Contentions and Points of Authorities**

Veoh specifically addressed both of the requests raised in this Section in its June 13, 2008 letter. (Golinveaux Decl. ¶ 2 and Exh. A). With respect to request no. 2, Veoh offered to produce "communications that mention Veoh's declaratory relief

---

[25] For example, UMG's request 58, discussed further below, seeks "All documents relating to actual or threatened litigation concerning alleged copyright infringement by You, including without limitation any cease and desist letters, takedown notices or other correspondence relating to such threatened or actual litigation, and all pleadings, briefs, discovery responses, declarations and affidavits filed or served by You in any such legal proceeding."

action against UMG." (*Id.*) With respect to request no. 3, Veoh noted that it would identify which documents Veoh intended to produce from the *Io* litigation but asked that UMG confirm that it would agree to do the same with regard to its production of MySpace and Grouper litigation. (*Id.*). In UMG's responses to Veoh's request for documents concerning the MySpace and Grouper litigation, UMG objected on relevance, and agreed only to produce "responsive documents, *if any*" based on UMG's unspecified search terms. (*Id.* at ¶ 22 and Exh. H, UMG's responses to Veoh's request nos. 220 and 221 ) (emphasis added). UMG also outright objects based on "relevance" to Veoh's request no. 218, which seeks documents from other similar lawsuits in which Plaintiff was involved. (*Id.*) UMG never responded to Veoh's proposal, instead electing to address the issue in this motion.

Far from refusing to produce documents from the *Io Group* litigation, Veoh has agreed to produce relevant documents relating to its lawsuit with Io—just as UMG agreed to produce some subset of documents relating to the MySpace and Grouper litigations. The Plaintiff in the *Io Group* case is a provider of pornographic material. Thus, many documents produced in the *Io Group* litigation were specific to such content, and are irrelevant to this action.[26]

UMG's position that the two requests above call for <u>deposition</u> <u>transcripts</u> from the Io case is beyond the pale. Request no. 2 calls for "communications relating to This and Related Actions," and request 3 calls for "documents produced in" the *Io Group* litigation. When Veoh's counsel discussed this issue with UMG's counsel during meet and confer, he was unable to point to any requests that called for the Io deposition transcripts. (Golinveaux Decl. ¶ 16.)

In fact, UMG's rant about the Io deposition transcripts above appears to be nothing more than an attempt to go on the offensive regarding those documents and to

[26] Veoh is also obligated to honor the protective order in place in the *Io Group* litigation. *Dushkin Publ'g Group v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991).

cover the fact that it contacted Io's counsel and received copies of those deposition transcripts, **which contained confidential testimony, in violation of the protective order entered in that case**. (*Id.*) Even worse, when Veoh discovered the violation and requested that UMG tell Veoh whether it had shared the Confidential material with any third parties—and whether the third parties had deleted the Confidential material—so that Veoh could assess the damage caused by the violation, UMG flatly refused. (*Id.*, ¶¶ 17-18 and Exhs. E-F(Correspondence Between Veoh's Counsel and UMG's Counsel.)) The Court should deny UMG's motion as to these requests, and instead require UMG to confirm whether it disclosed the confidential deposition transcripts it received from Io's counsel in violation of the protective order in that case to any third parties.

## VI. REQUESTS FOR PRODUCTION NOS. 4, 6, 98-100, AND INTERROGATORY NO. 5—VIDEO FILES AND RELATED DATA[27]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 4:***

*All documents relating to any audiovisual works incorporating UMG's Copyrighted Works that have been uploaded onto Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 4:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive, and as vague and ambiguous. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous. Veoh further objects to this Request as so vague, ambiguous, uncertain, and confusing with respect to the defined phrase "UMG's Copyrighted Works" and the term "incorporating" that Veoh is unable to reasonably frame a response.*

[27] For the convenience of the Court, these discovery requests have been grouped together because UMG's arguments for their production are substantially overlapping.

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will consider production of documents identified by UMG in a reasonably tailored request.*[28]

***REQUEST FOR PRODUCTION NO. 6:***

*All documents containing a list or lists of Content*[29] *that users have uploaded to or downloaded from Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 6:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request as vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: upon entry of an appropriate Protective Order Veoh will produce non-privileged documents sufficient to list Content that users have uploaded to or downloaded from Veoh Software, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 98:***

*All Video Files*[30] *formerly, but no longer, Available*[31] *on Veoh Software that may contain a UMG copyright.*

---

[28] Veoh has made a "proposal" to provide some limited access to these materials, but without even clarifying that proposal in response to questions from UMG.

[29] UMG defines Content as "any audio, visual and/or audio-visual work and any part or portion thereof."

[30] As defined by UMG, the term "Video File" refers to "both to files themselves as well as any and all associated metadata relating to, for example, the identity of the

***RESPONSE TO REQUEST FOR PRODUCTION NO. 98:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that the defined term "Video File" is vague, ambiguous, uncertain, confusing, overly broad, and unduly burdensome. Veoh further objects to this Request to the extent that the defined phrase "Available" renders the Request vague, ambiguous and argumentative. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 99:***

*All Video Files Available at any time in the past or present on Veoh Software that may contain a UMG Copyrighted Work.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 99:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh*

---

person who made the work available on Veoh Software, the number of times the work was played, the number of times the work was downloaded, the date the work was removed, the reason the work was removed, and the identity of the party who removed the work."

[31] As defined by UMG, a work is "Available" if it was "uploaded to Veoh Software, whether or not it was uploaded by a Veoh user or employee, whether or not it was accessible from Veoh Software, whether or not it was privately or publicly accessible, and whether or not it was quarantined or removed (immediately or not) by Veoh's filters, screeners, users or staff."

*further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that the defined phrase "Video File" to the extent that it is vague, ambiguous, uncertain, confusing, overly broad and unduly burdensome. Veoh further objects to this Request to the extent that the defined phrase "Available" renders the Request vague, ambiguous and argumentative. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 100:***

*All Video Files that do or may contain copyrighted material owned or administered by UMG.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 100:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that the defined term "Video File" is vague, ambiguous, uncertain, confusing, overly broad and unduly burdensome.*

***INTERROGATORY NO. 5:***

*Identify each and every media file in Your possession, custody, or control – including within any so-called quarantined, removed, unavailable, or "deleted" files – containing any work by a UMG Artist.*[32]

***RESPONSE TO INTERROGATORY NO. 5:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory because the defined phrase "UMG Artist" renders the Interrogatory vague and ambiguous: Veoh has no way to identify files "containing any work by a UMG Artist," and Plaintiffs have refused to identify such files.*

**B. UMG's Contentions and Points of Authorities**[33]

As the Court has recognized previously, copies of the potentially infringing media files on an accused infringer's video site are relevant, discoverable, and should be produced. In UMG's experience in related cases, production of an actual copy of the media files (videos held by Veoh and other related information about Veoh's videos) is necessary for UMG's analysis. The Court considered this issue and the need for production of such information in the Grouper matter and ordered production. Veoh persists in refusing to actually produce such material.

---

[32] UMG attached to this interrogatory a list of all UMG artists. Because of the length of the list, it is not repeated herein, but is attached for the Court's convenience as part of Exhibit 7 to the Ledahl Declaration.

[33] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

### 1. The Discovery Sought is Evidence of Veoh's Infringement, and Therefore Highly Relevant

Veoh has insisted that UMG must identify which copyrighted works it believes were infringed by Veoh. *See* Ledahl Decl., Exs. 8, 9 (Veoh First Set of Requests for Production; First Set of Interrogatories). UMG has pointed out the problem with answering such a question when Veoh controls the necessary information for UMG to make such determinations. UMG propounded Requests for Production Nos. 4, 6, 98-100 and Interrogatory No. 5 to Veoh in order to obtain the video files that constitute actual evidence of the infringement, as well as a complete list of works (by a defined group of artists) that were present on Veoh's site, and any communications or reports that mention the presence of UMG's works on Veoh's site. UMG does not assert that every video file or work identified by Veoh will be an instance of infringement. UMG cannot make that determination, however, until it sees the video files and lists of works. The discovery requested here will provide UMG with a group of potentially infringing videos which can then be analyzed. All these requests seek is a narrowing of the full content of files within Veoh's control to identify those which may contain infringing content. Such discovery is obviously highly relevant.

Separate and apart from being discovery relevant to the identification of works at issue in the suit, the identification of these media files relates to Veoh's purported defenses under the DMCA, as well as UMG's damages. The identification of videos containing works by UMG artists may be relevant to, among other things, Veoh's claim that it is eligible for the safe harbor provisions of the DMCA. The discovery sought is relevant to determining the volume of infringing content on Veoh.com, which in turn bears on Veoh's knowledge of the presence of that content, and therefore Veoh's DMCA defense, as well as its liability for willful infringement. 17 U.S.C. § 504(c); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement maybe shown from constructive knowledge); *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164,1173 (E.D. Cal.

2006) ("willful blindness" includes "a deliberate effort to avoid guilty knowledge" (quotations and citations omitted)).

Veoh does not dispute the relevance of these discovery requests. As discussed above, the requests are directly relevant to identifying potentially infringing works that were made available on the Veoh internet site – the precise discovery Veoh has sought in this litigation. Identifying which of those videos contain works by UMG artists is a critical first step to identifying which videos UMG will contend are infringing. Accordingly, there is no doubt that this discovery is highly relevant.

Veoh has stated that it will produce lists of content uploaded or downloaded by Veoh users. This is certainly a step in the right direction, but it is far from sufficient. First, once again, Veoh will not reveal how it intends to conduct its "reasonable search" for these lists of content. Second, Veoh states it will only produce documents "sufficient to show" content that has been uploaded or downloaded, by which Veoh essentially promises nothing at all. More importantly, although these lists will be an important piece of discovery, they do not substitute for the actual audio-video files. In a similar action against video site YouTube pending in New York, the Court ordered production of material sought here by UMG. *See*, July 2, 2008 Order in *Viacom International, Inc., et al. v. YouTube Inc., et al.*, attached as exhibit 21 to the Ledahl Declaration (ordering, among other things, production of videos removed from the YouTube site and all log data about the viewing of videos). Veoh should be ordered to produce such materials here as well.

**2. Veoh's Proposed Production of a "Spreadsheet" with Links to Video Files is Insufficient and Improper Under Rule 34**

During meet and confer discussions, Veoh acknowledged that some sort of production of video files, at the very least, would be necessary. Ledahl Decl., ¶ 13. Veoh proposed to give UMG access to a spreadsheet of metadata for all videos ever uploaded to or available on Veoh's Software, with links to video files embedded in the spreadsheet next to the corresponding metadata for that file. Essentially, as UMG

understands it, this would be a list of videos with information (metadata) stored by Veoh about each video file. Certainly this information is important for production. Veoh has not yet actually carried through on its commitment to produce this data and should do so immediately. Even the production of this list, however, is insufficient.

First, Veoh's proposal does not actually involve producing the videos themselves. Instead, Veoh proposes that UMG merely have access to the files over the internet through links embedded in the list of videos. While Veoh should unquestionably provide this linking information, merely providing internet access to the videos is not sufficient. The files will still be located on Veoh servers, and could be altered or deleted at any time, even if inadvertently. As the Court may recall, in a related case, Grouper attempted a similar approach to production in lieu of producing copies of its media files, and it proved to be an unworkable substitute for actually producing copies of the media files themselves. Veoh must produce not only the metadata for the video files that may incorporate a work by a UMG artist, but also must produce the actual video files requested by UMG. UMG must be able, for example to use technical means to filter the video files if possible to identify potentially infringing works. UMG specifically inquired about this issue during meet-and-confer discussions, but with no response from Veoh. Ledahl Decl., ¶ 13.

Further, Veoh proposes to simply dump all of its videos on UMG to impose the burden of sorting this material onto UMG. As a leading treatise on federal procedure has stated, a party producing discovery has "a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34." 8A Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 2213 (2007). A defendant may not "shift the burden of discovery by telling 'plaintiff that, if he wishes, he may hunt through all the documents and find the information for himself.'" *Transportes Aereos De Angola v. Ronair, Inc.*, 104 F.R.D. 482, 499 (D. Del. 1985). A court may even impose sanctions upon a party who produces documents without reviewing them

for relevance. *See Rothman v. Emory University*, 123 F.3d 446, 455 (7th Cir. 1997) (upholding a district court's order sanctioning a party for producing boxes of numerous unrelated, non-responsive materials).

Moreover, pursuant to Rule 34(b)(2)(E)(i), a responding party "must produce documents as they are kept in the usual course of business or *must organize and label them to correspond to the categories in the request*" (emphasis added). A responding party cannot simply produce the documents as they are kept in the usual course of *storage*. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005). If documents are kept in storage, and are not being kept in the "usual course" of business, the producing party has the "obligation to 'organize and label' the documents to correspond to the document requests." *Id.* "[D]efendants are not at liberty under federal discovery rules to dump massive amounts of documents … on their adversaries and demand that they try to find what they are looking for." *Id.* Likewise, a leading treatise notes that "[i]f the responding party produces a truckload of documents, saying 'this is how they are kept,' the requesting party may seek an order requiring the producing party to segregate the documents into categories." William W. Schwarzer, *et al., California Practice Guide: Federal Civil Procedure Before Trial* § 11:1943.

Rule 34 requires Veoh to sort through its metadata and video files and produce only the files UMG has actually requested, i.e., those files that may contain a UMG copyrighted work. To date, Veoh has produced none of this information, and cannot meaningfully show that it is somehow easier for UMG to examine Veoh's non-existent production than it is for Veoh to comply with its obligations under Federal Rule 34. Veoh's attempt to shift its burden of reviewing these files to UMG is inappropriate and inconsistent with both the letter and spirit of Rule 34. Certainly, Veoh cannot both refuse to sort its files and fail to produce even the larger collection of files.

**3. Veoh's Objection on the Grounds of Burden Lacks Merit**

**Given Veoh's Superior Knowledge of the Video Files**

Veoh's primary objection to these discovery requests is on the grounds of burden.[34] Veoh objects to the term "UMG Artists," essentially on the basis that it believes identification of works by the listed UMG Artists is simply too burdensome.[35] Veoh claims that it has no means of identifying the documents and video files sought, and suggests that UMG should have to analyze and sort the files maintained and controlled by Veoh – the very task Veoh alleges is too burdensome a task for itself. *Id*. A purported objection as to burden must be weighed against the relevance of the discovery sought. Fed. R. Civ. P. 26(b). As stated above, the discovery sought is highly relevant. Thus, this discovery does not pose an *undue* burden.[36] It will be far less burdensome for Veoh to search these files than UMG, particularly regarding the video files that UMG has requested.

- The video files at issue are *Veoh's* video files. Without authorization from or compensation paid to copyright owners, Veoh urged its users to upload and share these files, and sought their assistance in populating Veoh.com with video files. These files are the basis for and are central to Veoh's operations, business, and revenues. Veoh (unlike UMG) knows what is in its files.

---

[34] Veoh also objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

[35] Although Veoh also asserts that the term is vague or ambiguous, the term as defined by UMG could not be more clear; UMG has provided Veoh with a specific list of artists to search for.

[36] Moreover, it is improper for a defendant in an infringement action to refuse discovery merely on the basis that it has engaged in such gross and wide-ranging infringement that it cannot possibly be expected to account for it all. Yet Veoh effectively suggests that the Court should endorse the rule that when an infringer violates enough works such that it becomes burdensome to even identify those works, the burden of doing so shifts to the copyright owner. Neither logic nor authority supports such a proposition.

- Veoh (unlike UMG) undoubtedly has the hardware, software, and technical know-how which would allow it to store, access, manipulate, and search its videos in the most effective manner. Again, these videos are likely Veoh's most important business asset, and it is simply not the case that UMG is capable of searching them as quickly or efficiently as Veoh.
- Veoh (unlike UMG) has, for example, computer programmers and software engineers, capable of automating the searches for relevant videos. Given the importance of these videos to Veoh's business, these engineers and programmers are no doubt fully versed in Veoh's systems, archives, and available methods for searching videos.
- Veoh (unlike UMG) can devise software tools and strategies for seeking out the relevant category of works. Indeed, Veoh almost certainly does just this on a regular basis as part of its daily operations.
- Veoh (unlike UMG) can optimize its hardware to allow for efficient review of these files.

With its superior knowledge of the way in which these files are created, stored, and archived, Veoh (unlike UMG) undoubtedly has the ability to search these videos more effectively, thoroughly, and efficiently than UMG, or any of the named plaintiffs, do. Accordingly, the information sought is both highly relevant and relatively less burdensome for Veoh to provide than for UMG to decipher from Veoh's files. This discovery is proper under Rule 26.

Veoh's burden argument fails because Veoh failed to provide any admissible evidence supporting its contention. *See In re Advanced Interventional Sys. Sec. Litig.*, No. SACV92-723-AHS (RWRX), 1993 WL 331006, at *4 n.5 (C.D. Cal. May 17, 1993) (granting motion to compel because the objecting party "fail[ed] to produce any evidence in support" of its contention that the requests were unduly burdensome); *see*

*also Tucker v. Ohtsu Tire & Rubber Co.*, Ltd., 191 F.R.D. 495, 498 (D. Md. 2000) (holding that "[t]he party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavits or other reliable evidence"); *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997) (same). During the parties' meet-and-confer discussions, Veoh did not identify any evidence that might support its claims of undue burden. Indeed, Veoh failed to provide any explanation of why responding properly to UMG's discovery would be unduly burdensome. Ledahl Decl., ¶ 19.

Veoh apparently believes that it should be excused from providing the documents and files that evidence Veoh's infringement of UMG's works. Veoh fails to demonstrate that the burden of providing this highly relevant information somehow outweighs its relevance and importance. As such, its burden objection should be overruled. These discovery requests seek admittedly relevant discovery into the presence of potentially infringing works on Veoh's site. Certainly, as this Court has recognized in previous actions, Veoh cannot both refuse to identify videos and refuse to produce videos. Veoh has no basis for refusing to respond to this discovery and should be ordered to (1) produce the documents and video files requested by a deadline set by the Court; (2) provide a full response to Interrogatory No. 5 by a set deadline; and (3) clarify the methodology by which it will search for and produce these files.

**C. Veoh's Contentions and Points of Authorities**

**1. The Spreadsheet Veoh Has Proposed Provides UMG With All of The Requested Data**

UMG has demanded that Veoh produce copies of all video files "that may contain a UMG Copyrighted Work" (request no. 99), "that do or may contain copyrighted material owned or administered by UMG" (request no. 100), "All documents relating to any audiovisual works incorporating UMG's Copyrighted Works that have been uploaded onto Veoh Software" (request no. 4), and that Veoh

identify every media file "containing any work by a UMG Artist" (interrogatory no. 5). UMG has defined "UMG's Copyrighted Work" for purposes of the discovery requests as "any and all works in which UMG owns a copyright interest." (Golinveaux Decl. ¶ 19 and Exh. G.)

In its document responses and during meet and confer discussions, Veoh's counsel explained that Veoh was ready and willing to work with UMG to provide copies of video files and related data, but that Veoh had no way to identify which files "may" contain a work "in which UMG owns a copyright interest" or may contain any work by a "UMG Artist," particularly since UMG has refused to specifically identify a single infring file on Veoh.[37] (Golinveaux Decl., ¶ 20.) UMG's counsel said he understood, and asked Veoh to make a proposal regarding how best to provide UMG with access to all video files uploaded to Veoh and associated metadata.

In response, more than two months ago, Veoh offered to produce to UMG copies of spreadsheets populated from Veoh's video databases that would contain metadata regarding each video uploaded to Veoh (such as title, date of upload, current status of the vide, etc.). (Golinveaux Decl., ¶ 21.) In addition, Veoh would provide UMG's counsel with secure access to Veoh's video servers, so that UMG could click on a link to any file from the spreadsheet, and access copies of the file in both the original format in which the user had uploaded it, and in Flash format. (*Id.*) UMG could then review the file, and also make a copy of the file if it was so inclined. Veoh's counsel reiterated this offer in the June 13, 2008 Letter, but UMG never responded (until it served this motion to compel). (Golinveaux Decl., ¶ 2 and Exh. A.) UMG inexplicably (and inaccurately) describes this proposal as Veoh proposing to "simply dump all of its videos on UMG to impose the burden of sorting this material onto UMG." *Supra* at 52.

[37] If UMG had complied with its obligations under the DMCA and provided notices of allegedly infringing material, Veoh would have promptly responded by removing such files, as it does in response to all such notices.

**REDACTED PURSUANT TO PROTECTIVE ORDER (DOCKET # 43)**

> reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(2)(B); *see also Marozsan v. Veterans Admin.,* No. S84-500, 1991 U.S. Dist. LEXIS 20884, at *4-5 (N.D. Ind. June 24, 1991) (noting that it would be "manifestly unjust" to require a responding party to "sift through thousands of individual files and then develop presently non-existent computer programs to analyze the data."); *cf. Cummings v. GMC,* 365 F.3d 944, 954 (10th Cir. 2004) ("Plaintiffs' proposed computer database searches are overly broad in scope . . . and overly burdensome.")

In *Equal Employment Opportunity Commission v. The Boeing Co.*, No. CV-05-03034, 2007 U.S. Dist. LEXIS 29107, *8 (D. Ariz. 2007), the court cited a prior order in the same action in which it determined that based on the costs and burden that the defendant would incur by producing certain documents, such documents were properly considered "inaccessible." In reaching its decision, the court noted that there was no reason to doubt the defendant's estimate of $55,000 for producing such documents:

> [the] defendant made the showing, pursuant to Rule 26(b)(2)(C), Fed. R. Civ. P., that 'the information sought is not reasonably accessible because of undue burden or costs,' and that [the] plaintiff did not show good cause to justify the expense of the proposed discovery, for purposes of Rule 26(b)(2)(B). [] In so holding, we noted that we 'had no reason to doubt defendant's $55,000 estimate.'

*Id. See also*, *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, et al., 247 F.R.D. 567, 570 (holding that where data restoration would cost at least $124,000 plus a monthly storage fee of $27,823, such "high costs" rendered the information presently "inaccessible" under Rule 26(b)(2)); *PSEG Power New York, Inc.*, *supra* (noting that the presence of substantial cost and burden "was without serious contest"

**REDACTED PURSUANT TO PROTECTIVE ORDER (DOCKET # 43)**

committee note (2006).) See also, *Best Buy Stores, L.P. v. Developers Diversified Realty Corp., et al.*, 247 F.R.D. 567, 571 (D. Minn. 2007) (noting that where inaccessible information sought could be more easily obtained from another source, the requesting party did not establish good cause for producing inaccessible data); *Zubulake v. UBS Warburg,* 217 F.R.D. 309, 323 (S.D.N.Y. 2003) (one of the two most important considerations is "the availability of such information from other sources.").

With respect to 26(b)(2)(C)(i), quite clearly the discovery sought is unreasonably duplicative and can be obtained from some other source that is more convenient, less burdensome, or less expensive, namely the spreadsheet that would provide UMG with metadata for each file uploaded to Veoh, and secure links to copies of the file on the relevant servers so that UMG can copy the specific files it considers relevant. The other two factors also require denial of UMG's request as UMG has ample opportunity to obtain actual copies of the video files using the secure link, (and to copy any files it wishes) and the burden and expense of making a separate set of files outweighs its likely benefit, particularly since UMG will have access to all files uploaded to Veoh.

In *Petcou, et al. v. C.H. Robinson Wolrdwide, Inc.,* No. 1:06-cv-2157-HTW-GGB, 2008 U.S. Dist. LEXIS 13723, *4-*5 (N.D. Ga. 2008), the court found that where it was unclear how the responding party would determine whether emails related to or evidenced certain information without reviewing every email, and would provide little, if any relevant information that had not already been provided, the "burden and expense of the proposed discovery as a whole outweighs its likely benefit." *Id.*

Similarly, UMG expects Veoh to review every video to attempt to determine whether it "may" contain a UMG work, in a format that will actually provide less information than the method proposed by Veoh. As the "burden and expense of the proposed discovery outweighs its likely benefit," the Court should deny Plaintiffs' request for this cumulative data. Moreover, the Federal rules specifically state that "[a] party need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 24(b)(2)(E)(iii).

Where a significant volume of documents are proposed in response to a request, while courts might weigh the burdens and costs that have to be borne by the respective parties in such a production, providing access to a larger volume of documents than specifically requested is not improper. *See e.g., Williams, et al. v. Taser International, Inc., et al.,* 2006 U.S. Dist. LEXIS 47255, *19-*21 (N.D. Ga. 2006) (where responding party was required to produce "significant volume of documents," court required the requesting party to sift through the documents, instead of the responding party, because it was more reasonable to impose burdens of selecting and copying documents on the requesting party).[38]

The cases cited by UMG on this point predate the electronic discovery era we are now in. *Transportes Aereos De Angola* is from 1985 and *Rothman* addresses producing "boxes" of numerous, unrelated materials. *See* UMG's preceding discussion re *Transportes Aereos De Angola v. Ronair, Inc.*, 104 F.R.D. 482, 499 (D. Del. 1985) and *Rothman v. Emory University*, 123 F.3d 446, 455 (7th Cir. 1997). Parties are now able to decide what they wish to focus on electronically, in a much more efficient manner than manually reviewing truckloads of documents. As noted in

---

[38] Because there is no reasonable and practical alternative as to this specific category of documents, Veoh seeks to provide UMG access to all of its video files, allowing UMG to copy any specific file it considers relevant. Veoh has specified the requests to which such data responds, and described in detail to UMG what information is contained on the proposed spreadsheet and how to navigate the spreadsheet. This is in stark contrast to UMG's entire document production, which consisted of nothing more than a "data dump" of approximately 1.4 million documents, produced with no indication as to what requests, if any, such data responds.

the committee notes to the 2006 amendment to Rule 26(b)(2), "[e]lectronic storage systems often make it easier to locate and retrieve information." As such, UMG will not be required to sift through boxes upon boxes of material as it suggests—the information will be provided with searchable data that will make it easier for UMG to locate and retrieve information.

UMG's vague reference to the fact that Grouper's approach to production proved to be "unworkable," *supra* at 52, is also irrelevant to whether Veoh providing UMG with access to all of the video files is workable. UMG has presented no evidence that there would be issues with Veoh's production in order to justify the enormous expense that would be involved in making separate copies of all the files.

UMG relies on a recent decision against YouTube in a lawsuit currently pending in New York, where UMG notes that "the Court ordered production of material sought here by UMG." *See*, July 2, 2008 Order in *Viacom International, Inc., et al. v. YouTube Inc., et al.*, ("*Viacom*") attached as exhibit 21 to the Ledahl Declaration. There are numerous distinctions between the present dispute and the order in *Viacom*. First, the defendant in *Viacom*, YouTube, which is owned by Google, indisputably has far greater resources than Veoh. The respective resources of the parties are properly considered when deciding "inaccessibility" under Rule 26(b)(2). Thus, while producing such files may not cause undue burden on a company with such great resources, Veoh would suffer a far greater burden if it were required to produce what UMG requests. Second, despite the defendant's significant resources, recognizing the enormous cost of producing millions of video files, in *Viacom* the "[p]laintiffs offered to supply the hard drives needed to receive those copies." UMG has made no such offer here. If the Court is inclined to require Veoh to produce copies of all video files, it should order UMG (who has far greater resources than Veoh) to pay for the hard drives and employee time necessary to store the requested copies. Third, there is no suggestion in the *Viacom* order whether the defendant offered a more efficient, practical, and accessible means by which to obtain the

information sought by the plaintiff, as Veoh has done here with the proposed spreadsheet. Notably, the court in Viacom did *not* order either party to attempt to sort the video files so that only the plaintiff's potentially infringing works were produced—the court instead ordered production of all video files.

Finally, UMG's assertion that Veoh would not be producing the files as they are kept in the usual course of business is patently false—this is precisely how Veoh maintains the video files. Veoh will also specify precisely the requests to which the spreadsheet responds.

**4. If Veoh Is Required To Produce Individual Files, UMG Should Be Required To Pay The Costs**

If the Court were inclined to order Veoh to copy a separate set of video files in addition to providing UMG with the spreadsheet and access to the files, UMG should be required to pay the reasonable costs associated with the copying. Cost shifting is authorized by Federal Rules of Civil Procedure 26(b)(2) and 26(c), which allow courts to impose limits or conditions on discovery and to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The trend in the law concerning electronic discovery is strongly toward finding an "undue burden" that justifies cost shifting where the requesting party seeks electronic data from inactive or inaccessible sources. *See Zubulake v. UBS Warburg,* 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("*Zubulake I*") (dealing with inaccessible backup tapes); *OpenTV v. Liberate Technologies,* 219 F.R.D. 474, 476-477 (N.D. Cal. 2003) (requiring some cost shifting to obtain source code that could only be accessed after 125-150 hours of work and holding that "[a]ccessibility turns largely on the expense of production.").

The *Zubulake II* court set forth the following factors to be considered in order to determine whether cost-shifting is appropriate for the discovery of inaccessible data, which the court said should be weighted in more or less the following order:

1. The extent to which the request is specifically tailored to discover

relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

4. The total cost of production, compared to the resources available to each party;

5. The relative ability of each party to control costs and its incentive to do so;

6. The importance of the issues at stake in the litigation; and

7. The relative benefits to the parties of obtaining the information.

*Zubulake v. UBS Warburg,* 216 F.R.D. 280, 284 (S.D.N.Y. 2003) ("*Zubulake II"*) (citing *Zubulake I,* 217 F.R.D. at 321.). These factors have now essentially been codified by the Federal Rules with the 2007 amendments to Rule 26(b)(2)(C) of the *Federal Rules of Civil Procedure,* which now state that discovery may be limited where the court finds that:

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Id.*

Such factors have also been adopted in this Circuit. *See OpenTV v. Liberate Technologies,* 219 F.R.D. 474, 476, 479 (N.D. Cal. 2003) (ordering parties to split equally costs of extracting source code from defendant's database where only two factors weighed in favor of cost shifting) (citing *Zubulake II*). Here, considering that Veoh has proposed a reasonable alternative that will give UMG all the information it seeks, factors two, five, six and seven weigh heavily in favor of shifting the costs to

UMG, if it insists that it also needs Veoh to make copies of all of the files.

Additionally, factor four weighs in favor of shifting costs to UMG because UMG is indisputably Veoh's financial superior, as Veoh is a small company that has yet to turn a profit. While factor one may be neutral, and factor three is unknown because it is unclear the total amount in controversy, the fact that UMG has sought excessive damages should not prevent cost-shifting where the equities mandate shifting such costs to UMG. While the Court should properly deny UMG's request for copies of all video files in addition to being provided access to such files, if Veoh were required to make copies of all of the videos files, UMG should be required to pay the reasonable costs of the copying.

## VII. REQUESTS FOR PRODUCTION NOS. 7-8, 18-21, 35, 46, 91-92, AND INTERROGATORIES NOS. 3 AND 4—TECHNICAL DOCUMENTS[39]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 7:***

*All documents relating to any changes by You to computer files constituting Content[40] uploaded to Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 7:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request on the grounds that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to the request in its entirety, and in particular to the term "changes" as vague and ambiguous. Veoh further objects to this Request to the*

[39] For the convenience of the Court, these discovery requests have been grouped together because UMG's arguments for their production are substantially overlapping.

[40] UMG defines Content as "any audio, visual and/or audio-visual work and any part or portion thereof."

*extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*[41]

***REQUEST FOR PRODUCTION NO. 8:***

*All documents relating to any changes to computer files containing audio-visual Content uploaded to Veoh Software for the purposes of enabling or facilitating the display, downloading, emailing, peer-to-peer ("p2p") streaming, file sharing in private groups, encrypted sharing and/or emailing of such Content.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 8:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request on the grounds that it calls for materials protected by the attorney-client privilege and work product doctrine. Veoh further objects to the request in its entirety, and in particular to the term "changes" as vague and ambiguous. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

---

[41] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to identify the nature of any such changes. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*

***REQUEST FOR PRODUCTION NO. 18:***

*All documents relating to any copying or reproducing of Content that users upload or post to Veoh Software onto servers that You own or control.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 18:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*[42]

[42] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to describe the nature of any copying or reproducing of Content that users upload or post to Veoh Software onto servers that Veoh owns or controls. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

***REQUEST FOR PRODUCTION NO. 19:***

*All documents relating to the reformatting and/or modification of Content that users upload or post to Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 19:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*[43]

***REQUEST FOR PRODUCTION NO. 20:***

*All documents relating to the transcoding of Content that users upload or post to Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 20:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further*

---

[43] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to identify the nature of any reformatting and modification of Content that users upload or post to Veoh Software. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*[44]

***REQUEST FOR PRODUCTION NO. 21:***

*All documents relating to adding to Content a Veoh logo to be played before that Content is viewed through a link placed on another website.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 21:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials*

---

[44] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to describe the nature of any transcoding of Content that users upload or post to Veoh Software. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*[45]

***REQUEST FOR PRODUCTION NO. 35***

*All documents relating to modifications made to Veoh Software products and services after the initiation of this lawsuit.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 35***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*[46]

***REQUEST FOR PRODUCTION NO. 46:***

*Documents sufficient to describe Your network database structure and system architecture - including any aspects thereof provided by third parties -*

---

[45] In addition, Veoh states that it is willing to produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[46] In addition, Veoh states that it is willing to produce responsive documents and/or documents sufficient to identify any major or significant modifications to Veoh Software products after the initiation of this lawsuit. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*with reasonable precision, including without limitation all clients and servers and functionality thereof, all databases, all communication protocols, all media formats and standards, all transcoding, all source code, and all functionality.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 46:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***REQUEST FOR PRODUCTION NO. 91:***

*All screenshots of Veoh Software, and every Version and/or prior instantiation thereof, that capture and/or show the features, capabilities, and/or any other functional characteristics of Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 91:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other*

*applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 92:***

*All screenshots of Veoh Software, and every Version and/or prior instantiation thereof, that capture and/or show all changes made by Veoh to the layout, design, features, capabilities, and/or any other functional characteristics of Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 92:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous. Veoh further objects to this Request to the extent that the defined term "Veoh" seeks materials outside of Veoh's possession, custody or control.*

***INTERROGATORY NO. 3:***

*Describe Your network database structure and system architecture – including any aspects thereof provided by third parties - with reasonable precision, including without limitation all clients and servers and the functionality(ies) thereof, all databases, all communication protocols, all media formats and standards, all transcoding, all source code, and all functionality.*

***RESPONSE TO INTERROGATORY NO. 3:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory as impermissibly compound. Veoh further objects to this Interrogatory to the extent it calls for information apparent from the face of documents to be produced, as Veoh and Plaintiff would face a similar burden of deriving or ascertaining the answer to this Interrogatory from those documents. See Fed. R. Civ. P. 33(d).*

*Subject to and without waiving the foregoing general and specific objections, Veoh responds as follows: Veoh will produce documents pursuant to Fed. R. Civ. Proc. 33(d) which provide an overview of Veoh's network database structure and system architecture upon entry of a suitable protective order.*

***INTERROGATORY NO. 4:***

*Describe with particularity Your modifications to Your products and services since the first public release of a beta version of Veoh Software, including, by way of example only, any modifications to Your practices for filtering for copyrighted Content.*

***RESPONSE TO INTERROGATORY NO. 4:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as impermissibly compound. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory to the extent it calls for information*

*apparent from the face of documents to be produced, as Veoh and Plaintiff would face a similar burden of deriving or ascertaining the answer to this Interrogatory from those documents. See Fed. R. Civ. P. 33(d).*

*Subject to and without waiving the foregoing general and specific objections, Veoh responds as follows: Veoh has released the following versions of Veoh's client software:*

| | |
|---|---|
| *Veoh Uploader* | *0.5.x* |
| *VeohPlayer* | *1.0.x* |
| *VeohPlayer* | *2.x.x* |
| *VeohPlayer* | *3.0.x* |
| *VeohPlayer* | *3.1.x* |
| *VeohTV Beta* | *3.2.x* |
| *VeohTV Beta* | *3.3.x* |
| *VeohTV Beta* | *3.4.x* |
| *VeohTV Beta* | *3.5.x* |
| *VeohTV Beta* | *3.6.x* |
| *VeohTV Beta* | *3.7.x* |
| *VeohTV Beta* | *3.8.x* |
| *VeohTV Beta* | *3.9.x* |

**B. UMG's Contentions and Points of Authorities**[47]

Requests for Production Nos. 7-8, 18-21, 35, 46, 91-92, and Interrogatories nos. 3 and 4 seek information regarding the technical aspects of Veoh's website and client software, for example which delineate how Veoh copies and distributes media files, as well as any changes or modifications Veoh has made to its technology. Veoh all but concedes that this discovery is relevant, yet refuses to produce the many of documents requested by UMG. Veoh's objections to these requests are meritless, and should be

[47] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its more detailed discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

rejected.

### 1. The Discovery Sought is Highly Relevant to Veoh's Affirmative Defense Under the DMCA

As described above, Veoh operates Veoh.com, a "video sharing" website where members of the public can search for, view, upload, and download thousands of videos, including thousands of infringing copies of copyrighted works. Complaint ¶ 12. Veoh has created a sophisticated suite of software and services designed to encourage members of the public to "share" permanent copies of videos. *Id.* ¶ 17. Veoh has also created and distributes for free versions of client software, called "VeohTV" and "Veoh Player," that users or "members" of Veoh install on their personal computers. *Id.* ¶ 18. Veoh's software allows members to "share" and download videos, including videos displayed on third-party websites, and "post" copies of videos to Veoh.com and other websites. *Id.* ¶ 19.

Veoh's assertion of the DMCA as a defense puts at issue the technical aspects of its Veoh.com, Veohnet, and the Veoh Player, including the process by which users upload, view and/or download videos from Veoh's software, the manner in which Veoh alters and stores the uploaded videos, the various features of Veoh's client software, and how Veoh has modified those features. For example, the question of whether Veoh is a "service provider" as defined by the DMCA requires an inquiry into whether Veoh offers "the transmission, routing, or providing of connections for digital online communications … of material of the user's choosing, *without modification to the content* of the material as sent or received." 15 U.S.C. § 512(k)(1)(A) (emphasis added). UMG is therefore entitled to discovery regarding Veoh's technology, such as VeohTV, Veoh Player, and Veoh.com, including any changes or modifications Veoh has made to that technology.

Likewise, the issue of whether Veoh has directly infringed UMG's works also requires examination of the technological aspects of Veoh's site, such as how copies of the videos are transmitted to users. *See, e.g., Perfect 10 v. Amazon.com, Inc.*, 487

F.3d 701, 718 (9th Cir. 2007) ("Google does not itself distribute copies of the infringing photographs. It is the website publisher's computer that distributes copies of the images by transmitting the photographic image electronically to the user's computer."). These issues require UMG to have a broad understanding of how Veoh's website and player operate, including how that technology has changed over time.

**2. Despite the Relevance of This Discovery, Veoh Refuses to Produce Responsive Documents**

In its written responses to these requests and interrogatories, Veoh agrees to provide only the following:

- Documents which provide "an overview" of Veoh's network database structure and system architecture, in response to Interrogatory No. 3. Veoh's counsel suggested during the meet and confer process that this was actually just one document that consists of a few pages. Ledahl Decl., ¶ 17. Veoh's production reveals a two-page document which purports to provide this information. Id., Ex. 12. As the Court can see from reviewing the two-pages of drawings that Veoh produced, this single document falls far short of satisfying UMG's requests.
- A list of the names of versions of Veoh's client software, without any further descriptive information, in response to Interrogatory No. 4.

Veoh's responses are insufficient. Veoh refused to produce a majority of the highly relevant documents requested by UMG. After extensive meeting and conferring, Veoh suggests that it would also agree to producing responsive documents and/or documents "sufficient to" identify, describe, or evidence the following:

- the nature of any changes by Veoh to computer files constituting Content, or any reformatting, modification, or transcoding of Content, that users upload or post to Veoh Software (requests nos. 7, 19, 20),

- the nature of any copying or reproducing of Content that users upload or post to Veoh Software onto servers that Veoh owns or controls (request no. 18),
- the adding to Content of a Veoh logo to be played before that Content is viewed through a link placed on another website (request no. 21),
- any major or significant modifications to Veoh Software products after the initiation of this lawsuit (request no. 35),
- Veoh's network database structure and system architecture "to the extent [Veoh] understands this request" (request no. 46), as well as
- native copies of the versions of Veoh's client software (request no. 103).

*See* Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

Veoh all but concedes the relevance of most of these requests. After diligent efforts by UMG to meet and confer, however, Veoh merely suggests that it will produce some set of documents that are responsive to, *and/or sufficient to evidence* some of these requests. UMG is unsure what Veoh means by its addition of the caveat "and/or sufficient to evidence," but by this language Veoh, once again, obscures what it intends to produce. Veoh essentially agrees to produce nothing at all. The only request in response to which Veoh could use the term "sufficient to evidence" with some justification is Request No. 46, in which UMG asked Veoh to produce documents "sufficient to evidence" Veoh's network database structure and system architecture in order to reduce the potential scope of the request. Even here, however, Veoh adds, without further elaboration and without having raised this issue during meet and confer conferences, that it will respond "to the extent it understands" Request No. 46. Veoh refuses to provide a straight answer to UMG's requests.

Veoh's refusal to simply agree, in unconditional terms, to produce responsive documents is shocking given the fact that all of the discovery sought by these requests is relevant to an affirmative defense that Veoh has made one of the central issues in

this case: the DMCA.

### 3. Veoh's Unsupported Objections to Terms Used by UMG Lack Merit

Veoh also objects to several of the terms used by UMG, including "Veoh Software," "Veoh," and "changes."[48] As discussed above, Veoh's objections to the term "Veoh Software" lack merit. UMG defines "Veoh Software" as "Veoh.com, Veoh's peer-to-peer Veohnet network, and/or any versions of Veoh's client software, including without limitation VeohTV and/or Veoh Player." This definition is sufficiently clear to allow Veoh to provide a substantive response. Given Veoh's superior knowledge of its products and services, its objection to the term "Veoh Software" as confusing is not credible.

The same logic applies to Veoh's objection to the term "changes." Veoh asserts that this commonly used term is so confusing that it prohibits a response. UMG submits that the term changes, as used in everyday language as well as in the requests at issue here, is sufficiently clear to allow Veoh to respond. Veoh is surely well aware of changes it has made to its software, and UMG clarified during meet and confer conferences that UMG is only interested in significant changes. Ledahl Decl., ¶ 15. Likewise, Veoh's objection that the term "Veoh" as defined by UMG seeks documents outside Veoh's custody and control. Documents that deal with the technical aspects of Veoh's proprietary technology are surely within Veoh's custody and control. Veoh's professed inability to understand simple words like "change" is evasive gamesmanship that should not be countenanced.

### 4. Veoh's Response to Interrogatory No. 3 is Insufficient

Interrogatory No. 3 asks Veoh to describe its network database structure and system architecture. Veoh purports to respond, pursuant to Rule 33(d), with a production of documents "which provide an overview of Veoh's network database

---

48 Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

structure and system architecture." Veoh justifies this response by the claim that both Veoh and UMG "would face a similar burden of deriving or ascertaining" the requested information from "the fact of documents to be produced."

Rule 33(d) requires that such a response "specify[] the records that must be reviewed, **in sufficient detail** to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d) (emphasis added). Further, a Rule 33(d) production of records is only proper where "the burden of deriving or ascertaining the answer [from the business records] will be **substantially the same for either party**." Fed. R. Civ. P. 33(d) (emphasis added). Veoh has a far superior understanding of its network database structure and system architecture than UMG. Moreover, to the extent Veoh relies upon the two-page drawing that it produced, there can be no question that more response to the interrogatory is needed. Veoh's assertion that the burden of interpreting and understanding these documents as a means to understand its network database structure and system architecture would be equal for either Veoh or UMG is absurd. UMG seriously doubts that Veoh's own engineers and technicians rely on nothing more than the two-page drawing produced by Veoh to understand its systems. Veoh must fully respond to this interrogatory.[49]

**5. Veoh's Response to Interrogatory No. 4 is Lacking**

UMG also served Interrogatory No. 4 to obtain information about Veoh's

---

[49] Veoh also objects that Interrogatory No. 3 is impermissibly compound. Rule 33 provides for 25 interrogatories per party, including "all discrete subparts." Subparts count as one interrogatory "if they are logically or factually subsumed within and necessarily related to" the primary question. *Safeco of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (quoting *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)). "A single question asking for several bits of information relating to the same topic counts as one interrogatory." William Schwarzer *et al.*, *Federal Civil Procedure Before Trial* § 11:1688-89 (Rutter Group). Interrogatory No. 3 asks Veoh to describe its network database structure and system architecture, including all clients and servers, databases, communication protocols, media formats and standards, transcoding, source code, and functionality. The specific aspects of Veoh's network database structure and system architecture that UMG asks Veoh to describe are logically and factually subsumed within the primary question. UMG merely includes clarification of what aspects, among others, Veoh's overall description should address.

technology that is relevant to Veoh's DMCA defense. This interrogatory seeks information about modifications that Veoh has made to its software, such as its addition of the download feature that allows users to download unauthorized copies of UMG's works, to allow UMG to understand the development of Veoh's software and differences between each version. Once again, Veoh makes boilerplate objections and assertions of burden, while failing to provide a complete response.

In its written response, Veoh merely lists the names of various versions of Veoh's software, without any explanation of how one version varies from another. The mere listing of the names of versions of Veoh's software is virtually meaningless to UMG, which lacks any knowledge of the features of these different versions. Veoh refuses to even specify the modifications it has made to its practices for filtering copyrighted content for these versions of software. Veoh indeed seems to have recognized that its response is lacking, and suggested that it would supplement the response during meet and confer discussions. Ledahl Decl., ¶ 18. Veoh has resisted, however, any commitment to supplement this, or any other, interrogatory. UMG has waited long enough. Veoh should be ordered to provide an appropriate response to Interrogatory No. 4.[50]

These requests for production and interrogatories seek discovery that is highly relevant to Veoh's affirmative defense under the DMCA. Veoh should not be permitted to conceal basic evidence regarding how its website and software operate.

---

[50] Veoh further objects that Interrogatory No. 4 is impermissibly compound. Rule 33 provides for 25 interrogatories per party, including "all discrete subparts." Subparts count as one interrogatory "if they are logically or factually subsumed within and necessarily related to" the primary question. *Safeco of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (quoting *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)). "A single question asking for several bits of information relating to the same topic counts as one interrogatory." William Schwarzer *et al.*, *Federal Civil Procedure Before Trial* § 11:1688-89 (Rutter Group). Interrogatory No. 4 asks Veoh to describe modifications it has made to its products and services, and refers, by way of example, to modifications to Veoh's practices for filtering of copyrighted content. Interrogatory No. 4 has *no* subparts, much less discrete ones. Even if UMG's inclusion of an example could be considered a subpart, it is logically and factually subsumed within the primary question regarding modifications to Veoh's software.

Indeed, Veoh will undoubtedly rely upon this information to support its defense. For these reasons, UMG respectfully requests that the Court order Veoh to (1) produce the requested documents by a deadline set by the Court; (2) clarify the methodology by which it will search for and produce the requested documents; and (3) fully supplement its responses to Interrogatories Nos. 3 and 4 by the Court's deadline.

**C. Veoh's Contentions and Points of Authorities**

As UMG knows, Veoh has not refused to produce or respond to any of these requests on the basis of relevance. Based upon the parties' meet and confer discussions, Veoh offered to produce documents in response to request nos. 7, 18, 19, 20, 21, 35, and 46 in its June 13, 2008 Letter. These document requests seek "a<u>ll documents relating to</u>" such broad topics as "any changes by [Veoh] to computer files constituting Content uploaded to Veoh", "any copying or reproducing of Content that users upload or post to Veoh", "the reformatting and/or modification of Content that users upload to Veoh," etc. In response to each of these requests, Veoh specifically offered to produce responsive documents or documents sufficient to identify the nature of any such requested functions. *See* June 13, 2008 Letter at 2-3. While Veoh did not object in each instance when UMG sought "all documents relating to" in its discovery requests, as applied to these requests, that language renders the requests vastly overbroad and overly burdensome, as well as vague and ambiguous, which Veoh's counsel explained during the meet and confer discussions. Veoh's proposals to produce documents sufficient to identify the nature of any of the requested functions was an attempt to provide UMG with documents it considers it needs in a workable format.

The only requests addressed in this Section that Veoh did not agree to produce documents in response to are nos. 8 and 91, 92. Request no. 8 would be subsumed in request no. 7. As Veoh's counsel explained to UMG's counsel during the meet and confer discussions, requests 91 and 92 are vastly overbroad and unduly burdensome as they call for "<u>all screenshots</u> of Veoh Software, and everyVersion and/or prior

instantiation thereof…" Veoh has no practical way to provide such documentation and Veoh has agreed to produce documents sufficient to describe and identify all of the numerous features about which UMG has queried.

In response to interrogatory no. 3, Veoh properly agreed to produce business records in lieu of providing a narrative response. Interrogatory no. 3 asks for a description of Veoh's entire "network database structure and system architecture…." As UMG concedes, Veoh has already produced a document that provides an overview of its network database structure and system architecture and will produce additional responsive documents. In addition, on July 10, 2008, UMG took the 30(b)(6) deposition of Veoh on the structure, operation, functionalities and capabilities of the Veoh Network, including:

- the structure, operation, functionalities, and capabilities of Veoh's client software, including without limitation those relating to uploading, saving, viewing, and downloading video files;
- the structure, operation, functionalities, and capabilities of Veoh's website, including without limitation those relating to uploading, saving, viewing, and downloading video files; and
- the structure, operation, functionalities, and capabilities of Veoh's peer-to-peer file sharing technology, including without limitation Veoh's use of so-called PeerCasting technology.

UMG deposed Veoh's Vice President of Engineering, Joseph Papa, in detail on these topics, and Mr. Papa specifically walked UMG's counsel through the document that provides an overview of Veoh's network database structure and system architecture. Because documents produced by and to be produced by Veoh provide the requested information, Veoh should not also be required to provide a narrative response describing its entire "network database structure and system architecture."

UMG argues that Veoh should also be required to respond, in narrative form to UMG's interrogatory no. 4 by describing all modifications to Veoh's products and

services since the first public release of a beta version of Veoh Software. Such comprehensive technological information will also best be provided in documents that Veoh will produce that will describe such modifications, and the documents provided to UMG will be equally accessible pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. UMG's motion with respect to interrogatory nos. 3 and 4 should also be denied.

## VIII. REQUESTS FOR PRODUCTION NOS. 12-17 AND INTERROGATORY NO. 7—FILTERING AND MONITORING OF CONTENT[51]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 12:***

*All documents relating to steps that You take, have taken, or have considered taking to examine, screen, filter or remove Content that users upload to or download from Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 12:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive and to the extent it is duplicative of Request 13. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this*

[51] For the convenience of the Court, these discovery requests have been grouped together because UMG's arguments for their production are substantially overlapping.

*Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[52]

***REQUEST FOR PRODUCTION NO. 13:***

*All documents relating to steps that You take, have taken, or have considered taking to examine or review Content uploaded to and/or downloaded from Veoh Software to determine whether such Content infringes a copyright.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 13:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence actions taken or considered with respect to the review of Content shared by users of Veoh's software to determine whether such Content*

---

[52] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to identify steps taken, or considered, to examine or review content uploaded or downloaded from Veoh to determine whether such content infringes a copyright. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*infringes copyright, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[53]

***REQUEST FOR PRODUCTION NO. 14:***

*All documents relating to steps that You take, have taken, or have considered taking to examine or review Content uploaded to and/or downloaded from Veoh Software to determine whether such Content contains pornographic or obscene material.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 14:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 15:***

*All documents relating to steps that You take, have taken, or have considered taking to screen, filter, or remove Content uploaded to and/or downloaded from Veoh Software which contains pornographic or obscene material.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 15:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further*

[53] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to identify steps taken, or considered, to examine or review content uploaded or downloaded from Veoh to determine whether such content infringes a copyright. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 16:***

*All documents relating to any use by Veoh Software of any "filter" or "media identification service," including but not limited to Audible Magic, Auditude, SNOCAP, or Gracenote.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 16:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective*

*Order, Veoh will produce non-privileged documents responsive to this Request, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[54]

***REQUEST FOR PRODUCTION NO. 17:***

*All documents relating to any effort You have made to locate any Content on Veoh Software that infringes the copyrights of any Person.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 17:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to the request as calling for a legal conclusion. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[55]

---

[54] In addition, Veoh states that, in response to Request No. 16, it will produce responsive documents and/or documents sufficient to identify efforts made to locate Content on Veoh Software that infringes the copyrights of any persons, in response to Request No. 17. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[55] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to identify efforts made to locate Content on Veoh Software that infringes the copyrights of any persons. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

***INTERROGATORY NO. 7:***

*Describe with particularity all actions that You have taken to examine, review, screen, filter, monitor and/or remove Content uploaded to Veoh Software.*

***RESPONSE TO INTERROGATORY NO. 7:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory to the extent that it is impermissibly compound in that it purports to comprise of just one Interrogatory, but when counting its discrete subparts, it constitutes at least four separate Interrogatories.*

**B. UMG's Contentions and Points and Authorities**[56]

These document requests, as well as Interrogatory No. 7, seek information about Veoh's efforts to examine, review, screen, filter, monitor and/or remove Content uploaded to Veoh's software. UMG defined "Content" as "any audio, visual and/or audiovisual work and any part or portion thereof." Discovery regarding Veoh's filtering or monitoring of content on its software is centrally relevant to many of the claims and defenses in this case. Despite this fact, Veoh either refuses to produce the requested documents, or resists clarifying what, exactly, it will produce. Even after UMG's diligent efforts to meet and confer, Veoh will only agree to produce some undefined set of documents relevant to Veoh's efforts to review,

---

[56] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

monitor, or remove content for copyright infringement. As discussed below, Veoh's responses are insufficient.

**1. Veoh's Efforts to Screen or Remove Content is Relevant to UMG's Claims and Veoh's DMCA Defense**

One of Veoh's principal contentions in this action is that it is protected by the DMCA. Ledahl Decl., Ex. 5 (*UMG v. Veoh* Joint Rule 26(f) Report at 4) (listing applicability of the DMCA as a "principal legal issue"). Veoh's right and ability to screen for and filter for various types of video content is directly relevant to several facets of Veoh's DMCA defense. DMCA safe harbors are not available to a "service provider" if "the service provider has the right and ability to control [infringing] activity." 17 U.S.C. § 512(c)(1)(B). Veoh's efforts to screen content that, for example, is considered undesirable, inappropriate, or violates Veoh's Terms of Use will show that it has the right and ability to control infringing activity on the Veoh website and player.

The issue of Veoh's right and ability to control infringing activity is also relevant to Veoh's vicarious liability for copyright infringement. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1022 (9th Cir. 2001) (noting that vicarious liability applies where a defendant has the right and ability to supervise infringing activity and has a direct financial interest in such activity). As the Ninth Circuit has recognized, "[t]o escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent. Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability." *Id.* at 1023. These requests seek discovery that is specifically relevant to this inquiry—Veoh's practices regarding the "policing" of content on its site.

Despite the obvious relevance of this discovery, Veoh refuses to provide a straightforward answer regarding what documents it intends to produce. After meeting and conferring, Veoh has suggested that it is willing to produce the following:

- Responsive documents "and/or documents sufficient to identify" steps taken, or considered, to examine, screen, filter or remove copyright infringing content from Veoh, or to examine or review content uploaded or downloaded from Veoh to determine whether such content infringes a copyright (requests nos. 12-13)[57],
- Documents relating to any use by Veoh Software of any "filter" or "media identification service," including but not limited to Audible Magic, Auditude, SNOCAP, or Gracenote, subject to Veoh's "reasonable interpretation" of Request No. 16.
- Responsive documents "and/or documents sufficient to identify" efforts made to locate Content on Veoh Software that infringes the copyrights of any person (request no. 17).

*See* Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

Once again, Veoh provides only vague agreements to produce these documents, subject to some unrevealed "reasonable interpretation" of UMG's requests. Veoh uses the hopelessly vague language "and/or documents sufficient to identify," which essentially makes Veoh's supposed agreement to produce documents meaningless. Veoh refuses to clarify how it intends to conduct a "reasonable search" for these documents, and therefore UMG is unable to ascertain whether those efforts are indeed reasonable, and whether UMG will actually receive the necessary discovery. Thus, UMG is forced to ask the Court to order Veoh to provide the necessary clarification and commitment to ensure that UMG will obtain the needed discovery regarding Veoh's monitoring or filtering of content for copyright infringement. Furthermore, as discussed below, Veoh refuses to produce any documents that relate to Veoh's screening or filtering for other types of inappropriate content.

---

[57] In its original written response to Request No. 13, Veoh substantially limits its response to documents relating to Veoh's review of content "shared by users," rather than content "uploaded to and/or downloaded from Veoh Software" as requested by UMG. Veoh now appears to be willing to remove that limitation.

### 2. Veoh's Efforts to Screen and/or Remove Other Types of Content, Such as Pornography, Are Also Relevant

Veoh refuses to produce any documents dealing with its efforts to filter or review for any type of content apart from potentially copyright infringing content. Veoh claims that only its efforts to monitor or review for copyrighted content could be relevant to this case. On the contrary, however, Veoh's efforts to monitor other types of content, such as pornographic or obscene content, would show Veoh's right and ability to control the acts of its users. For example, if Veoh has the right and ability to control the upload of pornography, then UMG can argue that Veoh also has the right and ability to control the upload of infringing music videos. *See Perfect 10 v. Cybernet*, 213 F. Supp. 2d 1146, 1170 (C.D. Cal. 2002) (reasoning that Cybernet "ability to control *other types of images* belies any attempt to argue that Cybernet does not exercise sufficient control over its webmasters to monitor and influence their conduct or deny copyright offenders the benefits of its service" (emphasis added)).

Further, discovery regarding Veoh's efforts to monitor or review content on its site will likely show that Veoh had actual knowledge that unauthorized copies of UMG's copyrighted works were available on its software. If Veoh had a policy or practice of reviewing videos on its servers to screen out pornography, for example, Veoh employees very likely saw professionally created music videos, including those incorporating UMG's copyrighted works, that were uploaded by Veoh users. If Veoh had such actual knowledge that Veoh users uploaded UMG music videos, it is not entitled to safe harbor under the DMCA. The DMCA provides that its safe harbor provisions may not be available to service providers with "actual knowledge that … an activity using the material on the system or network is infringing," or "aware[ness] of facts or circumstances from which infringing activity is apparent." 17 U.S.C. §§ 512(c)(1)(A)(i), (ii). *See also A&M Records, Inc.*, 239 F.3d at 1021 ("[I]f a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and

contributes to direct infringement."). Veoh would certainly have learned of the rampant copyright infringement taking place on its software through any monitoring or reviewing efforts that it may have employed.

Apart from Veoh's DMCA defense, these documents demonstrate Veoh's liability as a willful infringer, an inquiry relevant to setting the level of statutory damages under the Copyright Act, 17 U.S.C. § 504(c)(2). For example, if these documents show that Veoh considered but rejected employing technology to screen for copyrighted content, and then used similar screening techniques used to filter for other types of content, such evidence would support UMG's allegation that Veoh's infringement is willful. *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement may be shown from constructive knowledge); *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164, 1173 (E.D. Cal. 2006) ("willful blindness" includes "a deliberate effort to avoid guilty knowledge" (quotations and citations omitted)).

Further, Veoh will likely argue that it need not have employed any means of filtering or reviewing for copyrighted works because such efforts are unreasonably expensive or burdensome. Veoh's decision to employ filtering or reviewing for some types of content, however, while refusing to review for copyrighted content, would undermine any argument that such preventive measures are not feasible. If Veoh has rejected reasonably feasible measures that would reduce or prevent copyright infringement, that fact is highly relevant to, among other things, Veoh's liability for willful infringement.

**3. Veoh's Additional Objections Regarding Interrogatory No. 7 Lack Merit**

Veoh makes other specific objections regarding Interrogatory No. 7, which seeks a description of all actions Veoh has taken to examine, review, screen, filter, monitor, and/or remove content uploaded to Veoh Software. Contrary to Veoh's objection, the interrogatory is not compound. Rule 33 provides for 25 interrogatories

per party, including "all discrete subparts." Subparts count as one interrogatory "if they are logically or factually subsumed within and necessarily related to" the primary question. *Safeco of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (quoting *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)). "A single question asking for several bits of information relating to the same topic counts as one interrogatory." William Schwarzer *et al.*, *Federal Civil Procedure Before Trial* § 11:1688-89 (Rutter Group). The terms examine, review, screen, filter, monitor, and remove are not discrete subparts or even distinct in meaning, but rather, are included to make clear the scope of discovery that UMG seeks, and prevent Veoh from imposing an unduly narrow reading of the interrogatory.

Nor does the inclusion of these various terms make the interrogatory vague or overbroad. Many video-sharing websites employ various means to monitor or filter content, including the use of electronic filtering software like Audible Magic, or human reviewers. For example, a video-sharing website might employ a team of individuals who view each video that is uploaded, and delete any pornographic or obscene videos. Veoh is no doubt familiar with such methods and employs some of them to monitor the content on its own software.

UMG further rejects Veoh's suggestion that its document production in response to Requests for Production Nos. 12 and 13 are sufficient to respond to this interrogatory. *See* Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl). Rule 33(d) establishes the narrow conditions under which the production of business records may be a satisfactory response to an interrogatory. Veoh's response does not satisfy Rule 33(d). First, Veoh has not yet produced documents that could even arguably provide a response to this interrogatory, even if it were possible for it to do so.

Further, Rule 33(d) requires that such a response "specify[] the records that must be reviewed, **in sufficient detail** to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)

(emphasis added). Further, a Rule 33(d) production of records is only proper where "the burden of deriving or ascertaining the answer [from the business records] will be **substantially the same for either party**." Fed. R. Civ. P. 33(d) (emphasis added). Veoh has not and cannot make such a showing. Any suggestion that UMG is in an equal position to analyze these documents to describe, with particularity, all actions that Veoh has taken to examine, review, screen, filter, monitor and/or remove Content uploaded to Veoh Software is self-evidently false. Furthermore, as described above, Veoh refuses to produce documents that deal with its efforts to screen or filter for other types of content, such as pornography. Thus, Veoh's intended production of documents would obviously be insufficient to provide a complete response to this interrogatory. Even if Veoh's production of documents could be sufficient to provide the information sought, it will be far more efficient, reasonable, and less burdensome for Veoh to describe its actions in this regard, rather than UMG. Clearly, Veoh has greater familiarity with its own actions to examine, screen, monitor, or remove content from its website and player.

For each of these independently sufficient reasons, this discovery will, or reasonably could, lead to documents that could bear upon UMG's claims or Veoh's defenses. Fed. R. Civ. Pro. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."). Veoh's objections lack merit.[58] Accordingly, the Court should grant UMG's motion to compel with respect to Requests Nos. 12-17 and Interrogatory No. 7. Specifically, the Court should order Veoh to (1) produce documents responsive to each request for production, not subject to any purported limitations imposed by Veoh, by a deadline set by the Court; (2) clarify the methodology by which Veoh intends to search for and produce responsive documents; and (3) provide a full response to Interrogatory No. 7

---

[58] Veoh also objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

by the Court's deadline.

**C. Veoh's Contentions and Points and Authorities**

Once again, Veoh offered proposals in its June 13, 2008 Letter with respect to request nos. 12, 13, 16 and 17, and UMG never bothered to respond. With respect to filtering and monitoring, Veoh offers to produce documents sufficient to show all filtering steps taken by Veoh (no. 12); documents sufficient to show steps taken to determine whether content is infringing (no. 13); and documents sufficient to identify efforts made to locate infringing content on Veoh Software (no. 16 and 17). (June 13, 2008 Letter at Golinveaux Decl. ¶ 2 and Exh. A). These proposals are reasonable and would provide UMG with the information it says it needs. UMG's demand for all documents "relating to" these topics renders the requests overbroad, unduly burdensome, and vague and ambiguous.

The remaining requests in this section, nos. 14 and 15, do not satisfy the relevance test. Under the Federal Rules, UMG may only obtain discovery regarding those matters "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). UMG, as the requesting party, bears the burden of demonstrating relevance. *Guruwaya v. Montgomery Ward, Inc.*, 119 F.R.D. 36, 40 (N.D. Cal. 1988) (denying, in part, motion to compel because "[p]laintiff has failed to show relevance"); *Alexander v. FBI, 194 F.R.D. 305, 309* (D.D.C. 2000); *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651 (N.D. Ill. 1994) (noting that a party seeking discovery must present a "plausible chain of inferences showing how discovery of the item sought would lead to admissible evidence"). In addition, Local Rule 37-2 requires that the moving party's papers "detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of FRCivP 26(b)(2) are satisfied." Courts should deny requested discovery when the information sought is too remote to any claim or defense involved in the case. UMG's efforts to obtain extensive discovery regarding "pornographic or obscene material" has nothing to do with UMG or its purportedly infringing content

and thus does not meet this relevance test.

With respect to UMG's interrogatory no. 7, Veoh has already produced documents constituting DMCA notices, responses and related correspondence. Veoh's June 13, 2008 Letter explained that the information sought by request no. 7 will be fully addressed by the supplemental document proposals for request nos. 12 and 13. This interrogatory seeks cumulative information and requiring Veoh to summarize information from the documents it produced would be burdensome and unnecessary.

## IX. REQUESTS FOR PRODUCTION NOS. 22-33—FEATURES OF VEOH'S SITE[59]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 22:***

*All documents relating to providing users of Veoh Software with the ability to post links to the Content posted on Veoh Software on other websites.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 22:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

[59] For the convenience of the Court, these discovery requests have been grouped together because UMG's arguments for their production are substantially identical.

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence the providing to Veoh users the ability to post links to Content posted on Veoh.com on other websites, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[60]

***REQUEST FOR PRODUCTION NO. 23:***

*All documents relating to providing users of Veoh Software with the ability to email links to the Content posted on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 23:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable*

---

[60] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence the providing to Veoh users the ability to email links to Content posted on Veoh.com, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[61]

***REQUEST FOR PRODUCTION NO. 24:***

*All documents relating to providing users of Veoh Software with the ability to add "tags" or keywords to the Content posted on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 24:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence the providing to Veoh users the ability to add tags or*

[61] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*keywords to Content posted on Veoh.com, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[62]

***REQUEST FOR PRODUCTION NO. 25:***

*All documents relating to providing users of Veoh Software with the ability to use RSS ("Really Simple Syndication").*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 25:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[63]

***REQUEST FOR PRODUCTION NO. 26:***

*All documents relating to providing users of Veoh Software with specific data about the number of times that an audio or audiovisual work has been accessed and/or "recommended."*

---

[62] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[63] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

***RESPONSE TO REQUEST FOR PRODUCTION NO. 26:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds that it is willing to work with Plaintiffs counsel so that Plaintiff may narrow and clarify the Request so that Veoh may reasonably respond.*[64]

***REQUEST FOR PRODUCTION NO. 27:***

*All documents relating to the search capabilities You provide to users of Veoh Software, including without limitation providing users with the ability to filter search results by "most popular," "recently added," "top rated," "most discussed," "top favorite," and "run length."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 27:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant*

[64] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[65]

***REQUEST FOR PRODUCTION NO. 28:***

*All documents relating to providing users of Veoh Software with the ability to post comments regarding Content posted on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 28:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[66]

---

[65] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[66] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

***REQUEST FOR PRODUCTION NO. 29:***

*All documents relating to providing users of Veoh Software with the ability to save specific Content to "favorites."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 29:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[67]

***REQUEST FOR PRODUCTION NO. 30:***

*All documents relating to providing users of Veoh Software with the ability to "share" specific Content.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 30:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order.*

[67] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[68]

***REQUEST FOR PRODUCTION NO. 31:***

*All documents relating to providing users of Veoh Software with the ability to "flag" specific Content.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 31:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined term "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to evidence the providing to Veoh users the ability to flag specific Content, to the extent such documents are found within its possession, custody*

[68] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*[69]

***REQUEST FOR PRODUCTION NO. 32:***

*All documents relating to providing users of Veoh Software with the ability to "subscribe" to publishers.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 32:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*[70]

***REQUEST FOR PRODUCTION NO. 33:***

*All documents relating to Your process for selecting "Featured Videos."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 33:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant*

---

[69] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[70] In addition, Veoh states that it will produce responsive documents and/or documents sufficient to evidence any such features. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: subject to Veoh's reasonable interpretation of this request, and upon entry of an appropriate Protective Order, Veoh will produce non-privileged documents responsive to this Request sufficient to describe Veoh's process for selecting "Featured Videos", to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

**B. UMG's Contentions and Points of Authorities[71]**

**1. These Features of Veoh's Software are Relevant to Veoh's Liability**

These requests seek discovery regarding various features of Veoh's website and client software, such as the ability to "flag" a particular video or email a link to a video, that both draw users to Veoh's site and encourage users to upload, distribute, and download videos. For example, users can post links to content (including infringing content) available on Veoh on other websites, thereby advertising Veoh and drawing users to Veoh. Likewise, users can email links to content on Veoh, post comments regarding videos uploaded to Veoh, track the number of times a particular video has been viewed, and distribute videos over the Internet. Veoh also selects certain videos as "Featured Videos."

[71] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

All of these features that Veoh has made available on its software encourage and facilitate the infringement of UMG's copyrighted works by making it easier for users to find and widely distribute any video, and giving users incentives to upload videos. The presence of these features, combined with Veoh's simultaneous resistance to basic, commonly used measures that would curtail copyright infringement, undermines Veoh's argument that it has no actual or constructive knowledge of infringement. Thus, this discovery is relevant to UMG's claims for willful infringement, contributory infringement, and inducement of infringement. *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement may be shown by knowledge, whether actual or constructive); Nimmer on Copyright § 12.04[A][3] (explaining that contributory infringement exists where the defendant had knowledge of and induced or materially contributed to the infringement); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) (holding that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement" is liable for intentional inducement of infringement).

Discovery regarding these features of Veoh's website and player, such as documents showing when and how Veoh put these features in place, is also relevant to Veoh's DMCA defense. Veoh's assertion of the DMCA as a defense puts at issue the technical aspects of Veoh.com, Veohnet, and the Veoh Player, including the various features of Veoh's client software. For example, the question of whether Veoh is a "service provider" as defined by the DMCA requires an inquiry into whether Veoh offers "the transmission, routing, or providing of connections for digital online communications … of material of the user's choosing, without modification to the content of the material as sent or received." 15 U.S.C. § 512(k)(1)(A). The presence of all of these features on Veoh's software make clear that Veoh does not simply offer transmission or provide connections for digital online communications of material of the user's choosing, without modification of the content. Rather, Veoh has carefully

designed a website and software for the specific purpose of encouraging the public to upload and widely distribute as many *videos* as possible, and thereby advertise Veoh's video services far and wide.

Likewise, the issue of whether Veoh has directly infringed UMG's works also requires examination of the technological aspects of Veoh's site, such as how copies of the videos are transmitted to users. *See, e.g., Perfect 10 v. Amazon.com, Inc.*, 487 F.3d 701, 718 (9th Cir. 2007) ("Google does not itself distribute copies of the infringing photographs. It is the website publisher's computer that distributes copies of the images by transmitting the photographic image electronically to the user's computer."). Thus, requests dealing with Veoh users' ability to "share" or "syndicate" videos are relevant because they impact whether Veoh itself distributes infringing copies of videos using the Veoh Software.

**2. Veoh Has Refused to Produce Responsive Documents, or Obscured What it Will Produce**

In response to these requests, Veoh either refuses to produce documents, or states that it will produce some set of documents that Veoh deems "sufficient," once again subject to Veoh's so-called "reasonable interpretation" and using Veoh's secret "reasonable and diligent" search methods.[72] As UMG has made clear, these responses are insufficient, and Veoh's boilerplate objections do not support withholding responsive documents.[73] UMG is unable to determine what documents Veoh will produce, and what Veoh plans to withhold. UMG therefore respectfully requests that the Court order Veoh to (1) promptly produce documents responsive to each of these requests; and (2) clarify its methodology for searching for and producing these

---

[72] After meeting and conferring, Veoh suggested that it would be willing to produce responsive documents "and/or documents sufficient to evidence" the features at issue. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[73] Veoh objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

documents, without the imposition of any purported limitations.

### C. Veoh’s Contentions and Points of Authorities

Veoh's June 13, 2008 Letter offered to produce documents sufficient to evidence all of the features sought by UMG's request nos. 21-32. Veoh already agreed to produce the same with respect to request no. 33. These offers are reasonable because they will provide UMG the discovery it seeks regarding Veoh's various features, without requiring Veoh to turn over every stone for cumulative, irrelevant documents that have no bearing on this action, such as any document that merely mentions any such feature. UMG's requests cover a very broad range of features and its demands for all documents "relating to" all such features are requests are overbroad and unduly burdensome, whereas Veoh's offer is reasonable. This is simply another example of UMG needlessly running up costs where Veoh has made a good faith effort to informally resolve discovery disputes. Conversely, UMG never responded to Veoh's proposals in order to add costs and wasted expense on this already lengthy motion.

## X. REQUESTS FOR PRODUCTION NOS. 39, 93-97—SEARCH AND TRAFFIC RELATED DOCUMENTS[74]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 39:***

*All documents relating to acts by You to increase the number of visitors to and/or users of Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 39:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant*

[74] For the convenience of the Court, these document requests have been grouped together because UMG’s arguments for their production are substantially overlapping.

*to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 93:***

*All documents relating to Search Engine Optimization.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 93:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Search Engine Optimization" is vague, ambiguous, uncertain, confusing, and unintelligible.*

***REQUEST FOR PRODUCTION NO. 94:***

*All documents relating to search results generated by Veoh Software's search engine.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 94:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further*

*objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 95:***

*All documents relating to the terms most frequently searched using Veoh Software's search functions.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 95:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 96:***

*All documents relating to search terms that fail to produce any search results using Veoh Software's search functions.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 96:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 97:***

*All documents that rank, match, and/or compare search terms with the number of results they generate using Veoh Software's search functions.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 97:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

**B. UMG's Contentions and Points of Authorities**[75]

These requests seek documents concerning Veoh's tracking of user traffic and searches for videos on Veoh's website. This discovery, as explained below, is relevant to many of the central issues in this case: UMG's claims for willful, vicarious, and contributory liability, and Veoh's eligibility for safe harbor under the DMCA. Veoh refuses to produce a single responsive document. Instead Veoh asserts that the discovery sought is irrelevant and overbroad.

**1. Veoh's Efforts to Track User Traffic and Searches are Relevant to UMG's Claims and the DMCA**

Documents that describe search results and popular search terms will also demonstrate Veoh's efforts to gain as much knowledge as possible about user behavior on Veoh.com and the Veoh client software in order to increase user traffic and therefore advertising revenues. Such efforts, in particular the tracking of user searches for content on Veoh, would have inevitably uncovered the popularity of infringing copies of music videos, including UMG's copyrighted works. Indeed, Veoh had an incentive to keep popular infringing music videos on the site in order to maximize the number of visitors. Likewise, this discovery will reflect Veoh's effort to obtain a financial benefit from the infringing videos. Veoh's knowledge of, right and ability to control, and financial benefit from the infringement of UMG's works bear directly upon Veoh's liability for willful direct, vicarious, and contributory infringement. *See* Nimmer on Copyright § 12.04[A][2] (noting that the elements of vicarious liability are right and ability to supervise the infringing conduct, and financial interest); *id*. § 12.04[A][3] (explaining that contributory infringement exists where the defendant had knowledge of and induced or materially contributed to the infringement); s*ee also Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044 , 1051 (C.D. Cal. 2001) (noting that, under *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76

---

[75] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

F.3d 259 (9th Cir. 1996), vicarious liability exists where there is "a direct financial benefit to the defendant from the 'draw' of the infringing products''). These issues are likewise highly relevant to Veoh's affirmative defense under the DMCA, which exempts from its safe harbor those online service providers that have actual knowledge of infringement, or who receive a direct financial benefit from and have the right and ability to control infringement. *See* 17 U.S.C. § 512(c)(1)(A) and (B).

For similar reasons, documents concerning Veoh's efforts to attract more visitors to its website are relevant. UMG contends that more users visit Veoh.com because the site provides desirable content, such as infringing copies of UMG's professionally produced and edited videos; in turn, Veoh is able to attract advertisers because many users visit its site. Veoh's efforts to draw more users and traffic to the site are therefore highly relevant to showing that Veoh derives a financial benefit from the infringement of UMG's works. Further, documents discussing efforts to increase user traffic may acknowledge the popularity of music videos, including infringing music videos, or discuss facts and circumstances from which infringing activity would be apparent. Either circumstance suggests Veoh's actual or constructive knowledge of the infringing taking place on the Veoh Software.

**2. Veoh's Objections Lack Merit and Should be Rejected**

As demonstrated, the requested documents are highly relevant to several of UMG's claims and Veoh's principal defense, the DMCA. Thus, Veoh's objections that the requests seek irrelevant material lack merit. Veoh's other objections also lack merit.[76] Veoh asserted during meet and confer conferences that UMG's request for all documents relating to Veoh's efforts to increase user traffic is overbroad, and that any relevant documents, i.e. those dealing with copyright infringement, will otherwise be produced. Ledahl Decl., ¶ 14. Documents describing Veoh's efforts to attract users to

---

[76] Veoh objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

upload, view, and download videos are relevant, as described above, even if the document does not specifically mention copyright infringement or UMG's works. Rather, these documents will likely reveal that Veoh was "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(ii). Veoh's artificial attempts to limit its production to documents specifically referencing copyright infringement are inappropriate and unduly restrictive.

Veoh also objects to the term "Search Engine Optimization" as vague and ambiguous. UMG defines the term as "the process of improving the volume and quality of traffic to any given web page, video, or other digital asset hosted by Veoh coming from any search engine, including but not limited to Veoh Software's internal search engine, via that search engine's search results." Many websites are familiar with the term search engine optimization or "SEO", use the term, and even have SEO departments. It is highly unlikely that Veoh is unfamiliar with this term. In any event, UMG's definition of the term is sufficiently specific and clear to allow Veoh to respond to this request.

As UMG has established, documents concerning search terms, search results, and visitor traffic are relevant to many of the claims and defenses in this case, including UMG's claims for willful, vicarious, and contributory infringement, as well as Veoh's DMCA defense. *See* Fed. R. Civ. Pro. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). Veoh has no valid objection to justify its refusal to produce these documents. UMG therefore respectfully asks the Court to grant UMG's motion to compel regarding Requests for Production Nos. 39, 93-97, and order Veoh to produce responsive documents by a deadline set by the Court.

**C. Veoh's Contentions and Points of Authorities**

These requests are vastly overbroad and burdensome. UMG has made no effort to limit its requests to documents relevant to UMG or purportedly infringing content,

but rather seeks "all documents relating" to any acts by Veoh to increase visitors for any reason (no. 39), which could implicate almost any aspect of Veoh's business, search results (nos. 93-94), and searched terms (nos. 95-97). UMG has failed to explain the relevance of such overbroad requests and has made no effort to tailor the requests to the material it argues would be relevant, such as documents discussing popularity of "infringing music videos." (*Supra* at 112.) There is no possible justification to support the enormous burden that would be imposed upon Veoh to even attempt to collect documents responsive to such an overbroad request. UMG's motion with respect to these requests should be denied.

## XI. REQUESTS FOR PRODUCTION NOS. 5, 59-61, 89-90—LICENSING AGREEMENTS[77]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 5:***

*All documents relating to any rights You possess to use, modify, copy, publicly display or otherwise exploit any of UMG's Copyrighted Works.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 5:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion. Veoh further objects to this Request as so vague, ambiguous, uncertain, and confusing with respect to the defined phrase "UMG's Copyrighted Works" that Veoh is unable to reasonably frame a response.*

[77] For the convenience of the Court, these document requests have been grouped together because UMG's arguments for their production are substantially overlapping.

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will consider production of documents identified by UMG in a reasonably tailored request.*[78]

***REQUEST FOR PRODUCTION NO. 59:***

*All License Agreements between You and any Person.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 59:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "License Agreements" renders the Request vague, ambiguous and argumentative.*

***REQUEST FOR PRODUCTION NO. 60:***

*All documents constituting or purporting to constitute a License Agreement between You and any Person.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 60:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further*

---

[78] In addition, Veoh states that it will produce responsive non-privileged documents if any. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "License Agreement" renders the Request vague, ambiguous and argumentative.*

***REQUEST FOR PRODUCTION NO. 61:***

*All documents relating to negotiations over License Agreements between You and any Person.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 61:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the*

*extent that the defined phrase "License Agreements" renders the Request vague, ambiguous and argumentative.*

***REQUEST FOR PRODUCTION NO. 89:***

*All communications between You and Veoh Content Providers, regarding any of the following: The DMCA, Your potential liability for copyright infringement, and/or the manner in which You or Veoh Content Providers are compensated for advertisements placed on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 89:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Content Providers" renders the Request vague, ambiguous and argumentative. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 90:***

*All agreements with Veoh Content Providers.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 90:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh*

*further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Content Providers" renders the Request vague, ambiguous and argumentative.*

**B. UMG's Contentions and Points of Authorities**[79]

These requests seek Veoh's license agreements which allow it to "reproduce a copyrighted work, prepare derivative works based on the work, distribute copies of the work, perform the work, or display the work," as well as documents purporting to be license agreements, and various documents relating to license agreements. Responsive documents would include, for example, an agreement between Veoh and a copyright holder by which Veoh agrees to pay royalties for the use of certain copyrighted works on its website and client software. Veoh's license agreements with third parties are plainly relevant to the parties' claims and defenses, yet Veoh refuses to produce a single responsive document, with the sole exception of Request No. 5, which deals solely with any purported licenses or consent granted by UMG to Veoh. UMG respectfully submits that Veoh's objections are baseless and cannot support Veoh's refusal to produce its license agreements and related documents.

**1. Veoh's Licensing Agreements and Related Documents are Relevant to Multiple Claims, Defenses, and Damages**

First, these documents are relevant to Veoh's liability for copyright infringement. Veoh's licenses with third parties may reveal Veoh's knowledge of

---

79 For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

infringing content posted on Veoh.com and the client software and a corresponding obligation to license content that might be uploaded by users. *See In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003) ("[w]illful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant *should* have known of the direct infringement)" (citing *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987); 2 Paul Goldstein, *Copyright* § 6.1, p. 6:6 (2d. ed. 2003)). All of Veoh's licenses to reproduce, distribute, perform or display copyrighted works on the Veoh Software are therefore relevant to establishing Veoh's liability under these circumstances.

Second, Veoh's licenses with third parties are relevant to negating its affirmative defenses. For example, Veoh's Fifteenth Affirmative Defense states that "Plaintiffs' claims are barred by Plaintiffs' license, consent and acquiescence to Veoh's use." Request No. 5 seeks all documents relating to any rights Veoh claims to possess to use, modify, copy, publicly display or otherwise exploit any of UMG's works. Thus, Request No. 5 seeks documents that are specifically relevant to Veoh's affirmative defense of license or consent. Further, Veoh's license agreements will be relevant to establishing that it is aware that it was improper to rely on any implied license or consent. Similarly, Veoh's licenses are relevant to negating its affirmative defense that its use was *de minimis*, and its affirmative defense that the damages sought are excessive. *See* Ledahl Decl., Ex. 3 (Veoh Answer at 8) ("Plaintiffs' claims based upon secondary liability are barred because Plaintiffs cannot establish the primary liability of Veoh's users, including because such users' alleged conduct constitutes fair use, de minimus [sic] use and/or is otherwise not actionable."); *id.* at 11 ("The statutory damages sought by Plaintiffs are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained, in violation of the Due Process Clause."). Veoh's license agreements with other content companies may show that UMG's works have substantial value and that Veoh's use of the works was not *de minimis*, and that UMG's actual damages are substantial.

Because these documents will reflect Veoh's knowledge of infringing activity on Veoh's website and software, they will also be relevant to Veoh's affirmative defense under the DMCA. Veoh's license agreements with third parties would reflect its knowledge of posting of infringing content on Veoh and Veoh's knowledge of the extent of the infringement, and would therefore be relevant to determining, under the DMCA, whether Veoh was "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(ii). If Veoh acquired licenses to display content on Veoh.com, those licenses would be relevant to showing that Veoh was aware of infringing activity on Veoh.com, and with respect to other content owners, took steps to provide compensation.

These documents will also be relevant to a damages inquiry for several reasons. First, these documents will reflect the benefit Veoh hoped to achieve from allowing infringing works to be posted on Veoh.com. A court determining the proper level of damages may consider "profits reaped as a result of the defendant's conduct," "revenues lost by the plaintiff as a result of the defendant's conduct," and "the potential for discouraging the defendant from future infringement." *See Columbia Pictures Film Prod. Asia Ltd. v. Uth*, 2006 U.S. Dist. LEXIS 89342, *6 (E.D. Cal. 2006) (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (citing *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F. 2d 1110, 1117 (2d Cir. 1986))). *See also Microsoft Corp. v. PC Exp.*, 183 F. Supp. 2d 448, 454 (D. P.R. 2001) (listing the same factors); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 [B][1][a] (2007). Veoh's license agreements with third parties will reflect on Veoh's motivation for refusing to enter into a license agreement with UMG, and may also reflect Veoh's benefit from allowing infringing works on Veoh.com without first acquiring a license.

Last, these documents will be relevant to Veoh's liability as a willful infringer. These documents may show that Veoh was aware of infringing uses on Veoh Software that it therefore should have acquired a license for the display of UMG's

works. *See* 17 U.S.C. § 504(c)(2) (willful infringement relevant to damages); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement may be shown by knowledge, whether actual or constructive).

**2. Veoh's Objections to the Terms "License Agreements" and "Veoh Content Providers" are Baseless**

Veoh has no legitimate reason to refuse to produce the requested documents. Apart from various boilerplate objections, Veoh asserts that UMG's definitions of the terms "License Agreements" and "Veoh Content Providers" are objectionable.[80] UMG defines the term "License Agreements" as "an agreement which authorizes or purports to authorize You to reproduce a copyrighted work, prepare derivative works based on the work, distribute copies of the work, perform the work, or display the work," excluding "licenses formed with users of Veoh Software under Veoh's Terms of Use." Veoh asserts that this definition is vague, ambiguous, and argumentative. As usual Veoh does not clarify in what way the term is vague, ambiguous, or argumentative. UMG's definition is sufficiently clear to allow Veoh to respond to these requests. Likewise, UMG's definition of the term "Veoh Content Providers" is unobjectionable. This term is defined as "all Persons with whom you have License Agreements or documents constituting or purporting to constitute License Agreements." The term is sufficiently clear, and contrary to Veoh's generalized objections, is not vague, ambiguous, or argumentative.

For each of these independently sufficient reasons, these documents bear upon, or reasonably could lead to documents that could bear upon, UMG's claims or Veoh's defenses. *See* Fed. R. Civ. Pro. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). Veoh's objections to producing such material have no merit and should be overruled and the

[80] Veoh also objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

Court should grant UMG's motion to compel Veoh to produce documents responsive to Requests Nos. 5, 59-61, 89-90, and inform UMG of how it intends to search for and produce the responsive documents.

### C. Veoh's Contentions and Points of Authorities

UMG has moved on request no. 5, but Veoh offered to produce documents responsive to this request in its June 14, 2008 Letter. (June 14, 2008 Letter at 2).

Requests 59 and 60 are duplicative and seek all license agreements between Veoh and any person. Because they seek license agreements with any person on any subject these requests are vastly overbroad and seek irrelevant documents, such as Veoh's end user license agreements for software it may use in the course of business, such as word processing software that is entirely unrelated to the claims in this case. As a compromise, Veoh would be willing to produce documents in response to these requests that constitute executed license agreements for music and music-video related content, subject to Veoh's obligations under the confidentiality restrictions in those agreements.[81] UMG, on the other hand, has refused to produce any license agreements in response to Veoh's document request no. 139, which was more narrowly tailored than UMG's request, and highly relevant to this case. (Golinveaux Decl., ¶ 22 and Exh. H (UMG's Responses to Veoh's First Set of Document Requests at 113).) UMG has failed to establish the relevance of Veoh's license agreements with unrelated third parties, regardless of whether they have anything to do with this lawsuit. Although UMG claims that license agreements with other content companies may show that UMG's works have substantial value, it is unclear how licenses, particularly for non-music related content, would have any bearing on the value of UMG's content. Likewise, although UMG asserts that such license agreements may show that Veoh was aware of "infringing uses on Veoh Software", it is unclear how license agreements would show this.

---

[81] This is the same manner in which UMG agreed to limit similar requests in the MySpace Litigation. (Judge A. J. Wistrich *Order Re Discovery Disputes*, Docket 82, 11/8/07, p. 3(II), ¶¶ 4-5).

Request no 61 seeks all negotiations relating to license agreements. UMG does not specifically address this request in its motion and UMG's counsel agreed not to push forward with respect to this request so long as Veoh did not require UMG to produce similar documents. (Golinveaux Decl. ¶ 24). There is no apparent relevance to such a broad request, and UMG's motion with respect to request no. 61 should be denied.

## XII. REQUESTS FOR PRODUCTION 42, 104—ADVERTISING[82]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 42:***

*All documents relating to any revenue You have earned from advertising on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 42:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

***REQUEST FOR PRODUCTION NO. 104***

*All agreements relating to advertising on Veoh Software.*

---

[82] For the convenience of the Court, these discovery requests have been grouped together because UMG's arguments for their production are substantially overlapping.

***RESPONSE TO REQUEST FOR PRODUCTION NO. 104***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

**B. UMG'S Contentions and Points and Authorities[83]**

Requests Nos. 42 and 104 seek documents relating to all revenue Veoh receives from advertising on Veoh as well as Veoh's advertising agreements. Veoh contends that such materials are not relevant, and refuses to produce these documents.[84] This is a prime example of Veoh's intransigent approach to discovery: Veoh is stonewalling and obdurately refusing to produce even the most obviously relevant documents for no legitimate reason whatsoever.

**1. Veoh's Advertising Agreements and Related Documents Are Relevant to Veoh's DMCA Defense**

The revenue Veoh receives from advertising is directly relevant to a variety of issues in this case. First, again, one of Veoh's principal contentions in this action is

[83] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

[84] Veoh also objects to the term "Veoh Software" on the grounds that it is vague and ambiguous. As addressed above in Part III, Veoh's objection is not credible given Veoh's superior knowledge of its own technology. Further, the parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

that it is protected by the "safe harbor" provisions of the DMCA. Ledahl Decl., Ex. 5 (*UMG v. Veoh* Joint Rule 26(f) Report) (listing applicability of the DMCA as a "principal legal issue"). Documents relating to the revenue Veoh receives from advertising are directly relevant to several facets of Veoh's DMCA defense. A "service provider" may not be able to take advantage of the DMCA's safe harbors if it "receive[s] a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B).

Documents relating to advertising may reflect on the "financial benefit" analysis in at least three ways. First, just like it is more costly to advertise during popular events such as the Super Bowl or the Academy Awards, Veoh is able to charge more for advertising on its internet site when more people visit Veoh.com. UMG contends that more users visit Veoh.com because the site provides desirable content, such as infringing copies of UMG's professionally produced and edited videos; in turn, Veoh is able to attract advertisers because many users visit its site. Documents relating to Veoh's advertising will help UMG to determine the existence of and extent of Veoh's financial benefit from the increased traffic created by extensive infringing activity on Veoh.com.

Second, apart from an increase in revenues because of greater traffic to Veoh.com, UMG expects that such documents will show that Veoh earns advertising revenues from specific searches for UMG content. UMG believes that the advertisements on Veoh are generated by Google through its program known as "AdSense." *See* Ledahl Decl., Ex. 19 (6/10/2008 Screenshot of Veoh.com of Rihanna Video with advertisements stating "Ads by Google"). The Ninth Circuit described AdSense as follows:

> Google generates revenue through a business program called "AdSense." Under this program, the owner of a website [i.e., Veoh] can register with Google to become an AdSense "partner." The website owner [i.e., Veoh] then places

> HTML instructions on its webpages [i.e., Veoh.com] that signal Google's server to place advertising on the webpages that is relevant to the webpages' content. Google's computer program selects the advertising automatically by means of an algorithm. *AdSense participants agree to share the revenues that flow from such advertising with Google.*

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 712 (9th Cir. 2007) (emphasis added).

Veoh likely uses AdSense, or a similar program, to generate advertising based on "key words," such as the names of UMG artists. For example, a Veoh user who watches an unauthorized copy of a music video for the song "Umbrella" by UMG artist Rihanna on Veoh.com will see advertisements for websites that feature "Rihanna Ringtones" and "Sexy Rihanna Photos." *See* Ledahl Decl., Ex. 19 (6/10/2008 Screenshot from Veoh.com of Rihanna Video). UMG believes that Google's AdSense program generates these advertising links, and the *Perfect 10 v. Amazon* decision indicates that the links create a "financial benefit" that Veoh enjoys.

The Ninth Circuit recently reiterated that such increased traffic—or "draw"—to an infringing site may disqualify the service provider from the DMCA. *See Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (explaining that under 17 U.S.C. § 512(c)(1)(B), "the relevant inquiry is 'whether the infringing activity constitutes a draw for subscribers, not just an added benefit'" (quoting *Ellison v. Robertson*, 357 F.2d 1072, 1078 (9th Cir. 2004)). Accordingly, Veoh's advertising agreements and revenue derived from advertising are directly relevant to Veoh's affirmative defense under the DMCA.

**2. Veoh's Advertising Agreements and Related Documents are Relevant to Damages**

Separate from its DMCA defenses, documents relating to Veoh's advertising revenues are also relevant to calculating damages. Under the Copyright Act, the

copyright holder is entitled to recover either actual damages or statutory damages. UMG has elected statutory damages. A court considering the level of statutory damages may consider "profits reaped as a result of the defendant's conduct," and "the potential for discouraging the defendant from future infringement." *See Columbia Pictures Film Prod. Asia Ltd. v. Uth*, 2006 U.S. Dist. LEXIS 89342, *6 (E.D. Cal. 2006) (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (citing *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.,* 807 F. 2d 1110, 1117 (2d Cir. 1986))). *See also Microsoft Corp. v. PC Exp.*, 183 F. Supp. 2d 448, 454 (D. P.R. 2001) (listing the same factors); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 [B][1][a] (2007). For example, documents relating to advertising revenues may show which of Veoh's profits are attributable to infringement; they may also bear on the level of damages necessary to discourage Veoh from future infringement. Thus, the documents are relevant for the purposes of determining statutory damages.

**3. Veoh's Advertising Documents are Further Relevant to UMG's Claims for Inducement and Willful Infringement**

Advertising documents may also help establish liability under an inducement theory. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939-40 (2005). Under an inducement theory, UMG may show through reference to advertising documents that Veoh intended that its users would infringe on Veoh.com and that it intended to profit as a result of that infringement. As the Supreme Court explained in *Grokster*, "[i]t is useful to recall that StreamCast and Grokster [the defendants] make money by selling advertising space, by directing ads to the screens of computers employing their software. As the record shows, the more the software is used, the more ads are sent out and the greater the advertising revenue becomes." *Id.* The Supreme Court has thus articulated the relevance of the very documents Veoh suggests are irrelevant. UMG is entitled to discover Veoh's advertising agreements and revenues to determine the extent to which Veoh's revenues are tied to infringing

uses.

Finally, these documents are relevant to Veoh's liability as a willful infringer, 17 U.S.C. § 504(c)(2). The revenue documents will likely show that Veoh was aware that UMG's infringing works created substantial traffic on Veoh.com and directly contributed greatly to Veoh's advertising revenues (and therefore profits). Such knowledge will be relevant to showing willful infringement. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement may be shown by knowledge, whether actual or constructive).

For each of these independently sufficient reasons, these documents bear upon, or reasonably could lead to documents that could bear upon, UMG's claims or Veoh's defenses. *See* Fed. R. Civ. Pro. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). Veoh's relevance objection should be overruled and the Court should grant UMG's motion to compel with respect to Requests Nos. 42 and 104.

**C. Veoh's Contentions and Points and Authorities**

UMG's requests in this section are overly broad and irrelevant, as such requests are not targeted towards ascertaining purported financial benefit to Veoh from alleged infringement of any of UMG's purported content. 17 U.S.C. § 512(c)(1)(B) addresses only received "financial benefits *directly attributable to the infringing activity"* not any and all financial benefit from any activities. As a compromise, Veoh is willing to produce annual summaries of advertising revenues in response to UMG's request no. 42. Such information would provide all the information that UMG contends it needs in this section. The Court should deny UMG's motion with respect to the agreements sought by UMG's request no. 104. UMG does not specify why copies of the agreements themselves would be relevant, and all of the issues set forth by UMG in this section would be addressed by Veoh's proposal.

**XIII. REQUESTS FOR PRODUCTION NOS. 40-41, 105-06, AND INTERROGATORY NO. 9—REVENUE, VALUATIONS,**

**INVESTMENTS AND ACQUISITIONS**[85]

**A. Verbatim Statement of Disputed Discovery and Response**

***REQUEST FOR PRODUCTION NO. 40:***

*All documents relating to any valuations of You.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 40:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***REQUEST FOR PRODUCTION NO. 41:***

*All documents relating to analyses of actual or projected revenues, costs and profits associated with Veoh.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 41:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order.*

[85] For the convenience of the Court, these document requests have been grouped together because UMG's arguments for their production are substantially overlapping.

*Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***REQUEST FOR PRODUCTION NO. 105:***

*All Your communications related to potential investment in and/or acquisition of Veoh.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 105:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***REQUEST FOR PRODUCTION NO. 106:***

*All agreements related to potential investment in and/or acquisition of Veoh.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 106:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order.*

*Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***INTERROGATORY NO. 9:***

*Identify each and every contract, agreement or other arrangement by which You receive payment for any services You provide.*

***RESPONSE TO INTERROGATORY NO. 9:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties.*

**B. UMG's Contentions and Points and Authorities**[86]

These requests seeks documents relating to Veoh's revenue, valuations of Veoh, and investment in or acquisition of Veoh. These requests would encompass, for example, any valuations of Veoh, as well as the documents relied upon to create those valuations; communications with potential investors or companies interested in acquiring Veoh; actual and projected revenues; and agreements by which Veoh earns revenue. All these documents are plainly relevant to the parties' claims and defenses, yet on purported grounds of relevance and overbreadth Veoh refuses to produce any documents in response to these requests.

[86] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

### 1. Revenue Documents Are Relevant to Veoh's DMCA Defense, UMG's Claims, and Damages

These revenue and valuation documents are directly relevant to several issues in this case. First, one of Veoh's principal contentions in this action is that it is protected by the DMCA. *See* Ledahl Decl. Ex. 3 (Veoh's Answer at 8) (Second Affirmative Defense). Documents relating to the revenue Veoh receives from various sources are directly relevant to several facets of Veoh's DMCA defense. A "service provider" may not be able to take advantage of the DMCA's safe harbors if it "receive[s] a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B).

Valuations of Veoh are directly relevant to the extent to which Veoh receives a direct financial benefit from infringing activity. For example, the documents might show that Veoh's value is tied, principally or disproportionately, to the presence of certain types of content. They might also show that Veoh's value is tied to the number of visitors, or by the types of services it offers. The documents might also show that greater traffic on Veoh.com—caused by the presence of infringing material—directly increases Veoh's value. Indeed, the Ninth Circuit recently reiterated that such increased traffic—or "draw"—to an infringing site may disqualify the service provider from the DMCA. *See Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (explaining that under 17 U.S.C. § 512(c)(1)(B), "the relevant inquiry is 'whether the infringing activity constitutes a draw for subscribers, not just an added benefit'" (quoting *Ellison v. Robertson*, 357 F.2d 1072, 1078 (9th Cir. 2004)).

Separate from its DMCA defenses, documents relating to Veoh's revenues, as well as valuations of Veoh, are also relevant to calculating statutory damages. Under the Copyright Act, the copyright holder is entitled to recover either actual damages or statutory damages. Because UMG has elected statutory damages, the Court may consider "profits reaped as a result of the defendant's conduct," "revenues lost by the

plaintiff as a result of the defendant's conduct," and "the potential for discouraging the defendant from future infringement." *See Columbia Pictures Film Prod. Asia Ltd. v. Uth*, 2006 U.S. Dist. LEXIS 89342, *6 (E.D. Cal. 2006) (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (citing *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F. 2d 1110, 1117 (2d Cir. 1986))). *See also Microsoft Corp. v. PC Exp.*, 183 F. Supp. 2d 448, 454 (D. P.R. 2001) (listing the same factors); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 [B][1][a] (2007). For example, revenue documents and documents relating to valuations of Veoh may show what percentage of Veoh's overall value is attributable to infringement; they may also show the "revenues lost" by UMG and instead captured by Veoh Thus, the documents are relevant for the purposes of determining statutory damages.

Finally, these revenue documents are relevant to Veoh's liability as a willful infringer, 17 U.S.C. § 504(c)(2). Communications regarding acquisition or investment, and valuations of Veoh will likely show that Veoh was aware that UMG's infringing works created substantial traffic on Veoh.com and directly contributed to Veoh's overall value. Such knowledge will be relevant to showing liability for willful infringement. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement may be shown by knowledge, whether actual or constructive). Such documents will also likely show that Veoh was "aware of facts or circumstances from which infringing activity is apparent," which would undermine Veoh's DMCA defense. 17 U.S.C. § 512(c)(1)(A)(ii).

**2. Veoh's Objections on the Grounds of Relevance and Overbreadth Should be Overruled**

As discussed above, Veoh's revenue and valuation documents are highly relevant to several claims and defenses, and well as damages. Veoh's other objections

are likewise meritless.[87] Regarding Interrogatory No. 9, Veoh contends that the interrogatory is overbroad because it seeks all contracts, agreements, or arrangements by which Veoh receives payment, not just those agreements that could be tied to the presence of infringing content on Veoh's software. UMG, however, merely seeks a list of all such agreements in order to identify which agreements may be relevant to this case. Veoh cannot simply pick and choose the agreements that it believes specifically deal with copyright infringement; Veoh would likely produce no agreements based upon its own interpretation of relevance. UMG should be given the opportunity to determine which agreements it believes are relevant. Given the very small burden of merely listing its agreements, Veoh should provide a full response to Interrogatory No. 9.

Veoh's objections to producing the requested discovery have no merit and should be overruled and the Court should grant UMG's motion to compel with respect to Requests Nos. 40-42, 105-06, and Interrogatory No. 9. *See* Fed. R. Civ. Pro. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party").

**C. Veoh's Contentions and Points of Authorities**

The requests addressed in this Section are vastly overbroad with no apparent relevance to this case. As a compromise, Veoh will produce copies of any valuations in response to request no. 40. Request no. 41, seeking documents relating to any analysis or actual or projected revenues; and request nos. 105, 106 seeking <u>all</u> communications and agreements relating to investments and acquisitions in Veoh are overbroad, and seek irrelevant information. While UMG asserts that such documents will likely show that "Veoh was aware that UMG's infringing works created substantial traffic on Veoh.com and directly contributed to Veoh's overall value," (*supra* at 133), UMG offers no explanation for this bald assertion, and, in any event,

---

[87] The parties have stipulated to a temporary protective order which should assuage any confidentiality concerns Veoh may have noted in its objections.

UMG's requests regarding <u>UMG</u> (request no. 4), and alleged copyright infringement (request no. 1) would garner any such information. Interrogatory no. 9 goes even farther afield, and has no apparent relevance, particularly as Veoh has agreed to produce summary documents regarding advertising revenue.

## XIV. REQUEST FOR PRODUCTION NOS. 43-44, AND INTERROGATORY NO. 1—ORGANIZATIONAL STRUCTURE AND EMPLOYEES

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 43:***

*Documents sufficient to show your organizational structure and any changes thereto since Veoh's inception.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 43:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce a current organizational chart of Veoh to the extent a non-privileged version is currently in existence.*

***REQUEST FOR PRODUCTION NO. 44:***

*Documents sufficient to show the number and positions of Your employees, including without limitation employees of Veoh.com.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 44:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce a current organizational chart of Veoh to the extent a non-privileged version is currently in existence.*

***INTERROGATORY NO. 1:***

*Describe with particularity the role of each of Your officers, directors, and employees from Veoh's inception through the present, in the operation of, and/or decision-making relating to, Veoh.*

***RESPONSE TO INTERROGATORY NO. 1:***

*In addition to its General Objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory to the extent that it*

*calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Interrogatory as impermissibly compound. Veoh further objects to this Interrogatory to the extent it calls for information apparent from the face of documents to be produced, as Veoh and Plaintiff would face a similar burden of deriving or ascertaining the answer to this Interrogatory from those documents. See Fed. R. Civ. P. 33(d).*

*Subject to and without waiving the foregoing general and specific objections, Veoh responds as follows: Veoh will produce documents pursuant to Fed. R. Civ. Proc. 33(d) that constitute Veoh's most current organizational chart upon entry of a suitable protective order.*

**B. UMG's Contentions and Points of Authorities**

These requests seek discovery regarding Veoh's organizational structure, as well as the number and positions of Veoh's employees. The discovery sought will allow UMG to understand Veoh's structure and thereby identify individuals whose files should be searched for responsive documents, as well as potential witnesses. There is no question that these documents bear upon, or reasonably could lead to documents that could bear upon, UMG's claims or Veoh's defenses.

Veoh, however, insists that it will produce only a current organizational chart. Veoh's proffered production is insufficient. UMG has not sought any and all documents reflecting Veoh's organizational structure or the duties of its employees; rather, UMG has limited the request to documents that are "sufficient to show" this information. A current organizational chart is highly unlikely to be sufficient to reveal Veoh's entire structure and employees. Further, the current chart will necessarily omit any changes that have been made to Veoh's organizational structure and employees. Veoh has been in existence for several years, and like any company has likely gone through various changes to its corporate structure, has created or removed job positions, and has seen employees come and go. UMG needs information about

Veoh’s prior structure and employees in order to fully assess potential witnesses who may have relevant discovery. At the very least, Veoh should produce all versions of its organizational charts, along with a complete response to Interrogatory No. 1.

Veoh’s various boilerplate objections to these discovery requests lack merit. Further, Veoh’s proffered production of a current organizational chart is insufficient. UMG therefore respectfully requests that the Court grant its motion to compel responses to Requests for Production Nos. 43-44 and Interrogatory No. 1.

**C. Veoh’s Contentions and Points of Authorities**

Veoh has produced its current organizational chart, which includes ten pages of detailed information and an index identifying Veoh's 109 employees and where they can be located in the chart. (Golinveaux Decl. ¶ 23 and Exh. I (organization chart produced by Veoh).) The organizational chart shows Veoh's structure with respect to its corporate overview, finance and operations, corporate development, product strategy, engineering, sales, marketing and programming, product advertising and data services. *Id.* While UMG argues that "a current organizational chart is highly unlikely to be sufficient to reveal Veoh's entire structure and employees," UMG has the copy of the organizational chart Veoh produced and can see for itself that it is sufficient for exactly that purpose. UMG has offered no compelling rationale to obtain all versions that ever existed of Veoh's organizational chart. With respect to interrogatory 1, the organizational chart is highly detailed and sufficient to provide the information sought by this interrogatory, which in any event is highly objectionable, unduly burdensome, and compound as it calls for a particularlized description of the role of each and every employee from Veoh's inception.

Veoh has produced sufficient documents responsive to these requests, and UMG's motion to compel further documents and information should be denied.

## XV. REQUESTS FOR PRODUCTION NOS. 101-102—PUBLIC STATEMENTS

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 101:***

*All speeches, press releases, press statements, and transcriptions and videos of public statements and videos of public statements, given by any of Your officers or directors, where at least one of the topics discussed related to infringement, piracy, anti-piracy, content protection, and/or This and Related Actions.*[88]

***RESPONSE TO REQUEST FOR PRODUCTION NO. 101:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and contusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***REQUEST FOR PRODUCTION NO. 102:***

*A copy of Jennifer Betka's speech on November 6, 2007 in Los Angeles, California, titled "Insights on Internet TV," and related documents, including without limitation all related transcriptions, videos, visual or audiovisual slides, draft speeches, and notes.*

---

[88] The "Related Actions" are defined as above-captioned action, *UMG Recordings, Inc., et al. v. Veoh Networks, Inc.*, Central District Case No. CV 07-05744 AHPI/I (AJWx), *Veoh Networks, Inc. v. UMG Recordings, Inc., et al.*, S.D. Cal. Case No. 07 CV 1568 TJW (BLM), and *Io Group, Inc. v. Veoh Networks, Inc.*, N.D. Cal. Case No. C-06-03926 (HRL).

***RESPONSE TO REQUEST FOR PRODUCTION NO. 102:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request as vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Request to the extent that it calls for confidential proprietary information and/or trade secrets before entry of a suitable protective order. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*[89]

**B. UMG's Contentions and Points of Authorities**[90]

These requests seek various public statements—whether made by speeches, through press releases, or any other means—relating to issues of concern to this case. In its written responses to these requests, Veoh has refused to produce responsive documents. During meet and confer discussions, Veoh suggested that it could produce some of the requested documents but, once again, has still not informed UMG of what it intends to produce.

Public statements relating to infringement, piracy, anti-piracy, content protection, this action, or the *Io Group* litigation (which also deals with allegations of copyright infringement against Veoh) are relevant to Veoh's liability and affirmative defenses, and to UMG's damages. For example, a public statement by a Veoh executive that copyright infringement runs rampant on websites which allow users to view or download music or videos and that such websites have a responsibility to

---

[89] In addition, Veoh states that it will produce responsive non-privileged documents that constitute a copy of the referenced speech or drafts of such speech if any. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

[90] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

police their own content would be highly relevant to negate many of the defenses advanced by Veoh in this action.

Likewise, public statements by Veoh executives acknowledging the ongoing copyright infringement on Veoh is obviously relevant to this case. Indeed, UMG is aware of at least one such statement already made by Veoh Networks Founder and Chief Innovation Officer Dmitry Shapiro, who "acknowledge[d] that only a week after the company's official debut, Veoh.com is host to a wide range of unauthorized and full-length copies of popular programs." Ledahl Decl., Ex. 17 (Greg Sandoval, *A New Copyright Battlefield: Veoh*, CNET News (2.21/2007). Such statements are be relevant to, among many things, Veoh's DMCA defenses. A "service provider" may not be entitled to the safe harbor protections of the DMCA if it is "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(ii).

UMG also specifically requests documents concerning Veoh employee Jennifer Betka's speech on November 6, 2007, in Los Angeles, California, titled "Insights on Internet TV." This speech dealt with Veoh's efforts to draw users to its site, and explained how Veoh tracks its users' behavior in order to better serve its users. Ledahl Decl., ¶ 24. Veoh has no doubt become aware of the copyright infringement on its site, or at least the facts and circumstances from which infringement would be apparent, through these efforts to track user behavior. Thus, Betka's speech is highly relevant to Veoh's actual or constructive knowledge of the infringement of UMG's works on its site and software, which supports UMG's claims for willful and contributory infringement, and undermines Veoh's DMCA defense. *See* Nimmer on Copyright § 12.04[A][3] (explaining that contributory infringement exists where the defendant had knowledge of and induced or materially contributed to the infringement); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (willful infringement maybe shown from constructive knowledge); 17 U.S.C. § 512(c)(1)(A) and (B) (exempting from the DMCA safe harbor those online service

providers that have actual knowledge of infringement). Veoh suggests that it is willing to produce a copy of the speech or drafts of the speech, but UMG also seeks any related transcriptions, videos, visual or audiovisual slides, and notes. These materials should not be burdensome to locate and produce.

Veoh's objections to producing such material have no merit and should be overruled. UMG respectfully submits that the Court should grant UMG's motion to compel with respect to Requests Nos. 101-102, and order Veoh to produce the requested documents by a deadline set by the Court. *See* Fed. R. Civ. Pro. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party").

**C. Veoh's Contentions and Points of Authorities**

Misleadingly, UMG claims that Veoh agreed to produce some responsive documents to these requests, but "has still not informed UMG of what it intends to produce." To the contrary, Veoh's June 13, 2008 Letter offered to produce additional documents to request no. 102, explicitly including the Betka "speech" at issue and "any such drafts" of the speech, but UMG did not respond. *See* June 13, 2008 Letter at 3.

UMG's request no. 101, on the other hand, is vastly overbroad, requesting copies of "all speeches, press releases, press statements, and transcriptions and videos of public statements" made by Veoh's officers or directors on a number of topics. If, UMG identified additional speeches that it was interested in, Veoh would be willing to consider searching for additional responsive materials. Otherwise, UMG has failed to justify the relevance to justify the burden of searching for all such documents.

UMG's motion with respect to these requests should be denied.

## XVI. INTERROGATORY NO. 2—ADVICE OF COUNSEL DEFENSE

### A. Verbatim Statement of Disputed Discovery and Response

***INTERROGATORY NO. 2:***

*Set forth the basis for any contention by You that Your actions that form the basis of this lawsuit were taken in reliance on the advice of legal counsel.*

***RESPONSE TO INTERROGATORY NO. 2:***

*In addition to its general objections, Veoh objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Interrogatory to the extent that it calls for legal conclusions and/or expert testimony. Veoh further objects to this Interrogatory pursuant to Rule 33(c) of the Federal Rules of Civil Procedure on the grounds that it is premature at this stage of litigation.*

### B. UMG's Contentions and Points of Authorities

Interrogatory No. 2 attempts to determine whether Veoh intends to rely upon an advice of counsel defense in this case, and if so, seek the basis for that defense. Veoh refused to respond. Veoh should be able to, at the very least, confirm or deny that it intends to rely upon an advice of counsel defense. Instead, Veoh rests upon its objections that this interrogatory seeks privileged information. Veoh also contends that Interrogatory No. 2 calls for a legal conclusion and/or expert testimony, and is premature. Veoh's objections lack merit, and indeed, Veoh's refusal to respond to this interrogatory may substantially prejudice UMG.

Veoh primarily relies upon its privilege and work product objections. If Veoh relies on the advice of its counsel as a defense to UMG's claims, Veoh will place its communications with counsel squarely at issue. Veoh would therefore waive its attorney-client privilege. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield."). Accordingly, Veoh's objection on the basis of

privilege does not justify its refusal to respond to these requests.

Veoh's other objections to Interrogatory No. 2 also fail to support Veoh's refusal to respond. Rule 33(c) of the Federal Rules of Civil Procedure allows a party to serve an interrogatory the answer to which involves "an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. P 33(c); *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 280-81 (C.D. Cal. 1999). Thus, Veoh's objection that Interrogatory No. 2 calls for a legal conclusion lacks merit. Further, Veoh's claim that Interrogatory No. 2 somehow requires expert testimony is nonsensical. UMG has simply requested the basis for any advice of counsel defense that Veoh intends to assert, which is essentially a contention interrogatory and therefore permissible under Rule 33(c).

Veoh apparently wishes to reserve the right to determine whether it will adopt an advice of counsel defense. Such delay, however, may prejudice UMG's ability to seek necessary discovery if Veoh waits until the last minute to assert its advice of counsel defense. Because Veoh's response—or, more accurately, its refusal to respond—may prejudice UMG, the Court should grant UMG's motion to compel a definitive response to Request No. 37 and Interrogatory No. 2.

**C. Veoh's Contentions and Points of Authorities**

As Veoh's counsel explained during the meet and confer discussions, at this time Veoh does not intend to waive any privilege with respect to documents that could support an advice of counsel defense and, therefore,Veoh is not required to produce privileged documents.

## XVII. REQUESTS FOR PRODUCTION NOS. 47-55, 62-88, 107-19 AND INTERROGATORIES NOS. 8 AND 10—VEOH'S CONTENTIONS[91]

### A. Verbatim Statement of Disputed Discovery and Response

***REQUEST FOR PRODUCTION NO. 47:***

*All documents relating to any contention by You that You are entitled to safe harbor under the Digital Millennium Copyright Act, 17 U.S.C. § 512, including without limitation documents relating to the applicability or potential applicability of the safe harbor provisions to Your activities in connection with Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 47:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

---

[91] For the convenience of the Court, these discovery requests have been grouped together because UMG's arguments for their production are substantially identical.

***REQUEST FOR PRODUCTION NO. 48:***

*All documents relating to any contention by You that Your use of UMG's Copyrighted Works constitutes a "fair use" of those works under the Copyright Act.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 48:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion. Veoh further objects to this Request as vague, ambiguous, uncertain, and confusing with respect to the defined phrase "UMG's Copyrighted Works."*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 49:***

*All documents relating to any contention by You that You possess an implied license to exploit UMG's Copyrighted Works.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 49:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion. Veoh further objects to this Request as vague, ambiguous, uncertain, and confusing.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 50:***

*All documents relating to any contention by You that Veoh Software's products and services have substantial non-infringing uses.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 50:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 51:***

*All documents relating to any contention by You that Your use of UMG's copyrighted works is de minimus [sic].*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 51:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, and to the extent that it calls for a legal conclusion. Veoh further objects to this Request as vague, ambiguous, uncertain, and confusing.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 52:***

*All documents relating to any contention by You that UMG has misused its copyrights at issue in this lawsuit.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 52:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it is vague and ambiguous. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control*

*after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 53:***

*All documents relating to any contention by You that UMG has failed to reasonably cooperate in Your efforts to take down infringing works posted on Veoh Software.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 53:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties. Veoh further objects to this Request to the extent that the defined phrase "Veoh Software" renders the Request vague and ambiguous.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 54:***

*All documents relating to any contention by You that UMG has failed to mitigate its damages relating to this lawsuit.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 54:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it is vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable*

*privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 55:***

*All documents relating to any contention by You that Your infringement was innocent.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 55:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it is vague, ambiguous, uncertain and confusing. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 62:***

*All documents relating to Your contention in Your First Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' Complaint fails to state a claim upon which relief may be granted."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 62:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 63:***

*All documents relating to Your contention in Your Second Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by the statutory immunity granted to service providers under 17 U.S.C. § 512."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 63:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control*

*after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 64:***

*All documents relating to Your contention in Your Third Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims based upon secondary liability are barred because Plaintiffs cannot establish the primary liability of Veoh's users, including because such users' alleged conduct constitutes fair use, de minimus [sic] use and/or is otherwise not actionable."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 64:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 65:***

*All documents relating to Your contention in Your Fourth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims based upon secondary liability are barred because Veoh's products and/or services are staple articles of commerce."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 65:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further*

*objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows:  Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 66:***

*All documents relating to Your contention in Your Fifth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred because the alleged infringement was not caused by a volitional act attributable to Veoh."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 66:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive.  Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows:  Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 67:***

*All documents relating to Your contention in Your Sixth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims based upon contributory liability are barred because Veoh did not have the requisite knowledge of the alleged primary infringement and did not encourage or induce the alleged primary infringement."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 67:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 68:***

*All documents relating to Your contention in Your Seventh Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims based upon vicarious liability are barred because Veoh did not obtain a direct financial benefit from the alleged primary infringement."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 68:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the*

*attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 69:***

*All documents relating to Your contention in Your Eighth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims based upon vicarious liability are barred because Veoh does not have the right or ability to control the alleged primary infringement."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 69:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 70:***

*All documents relating to Your contention in Your Ninth Affirmative Defense in Your Answer to the Complaint that "Veoh's alleged conduct constitutes fair use."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 70:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 71:***

*All documents relating to Your contention in Your Tenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by laches."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 71:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 72:***

*All documents relating to Your contention in Your Eleventh Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by waiver."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 72:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 73:***

*All documents relating to Your contention in Your Twelfth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by estoppel."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 73:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 74:***

*All documents relating to Your contention in Your Thirteenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by unclean hands."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 74:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control*

*after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 75:***

*All documents relating to Your contention in Your Fourteenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' copyrights are invalid and/or unenforceable."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 75:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 76:***

*All documents relating to Your contention in Your Fifteenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by Plaintiffs' license, consent and acquiescence to Veoh's use."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 76:***

*In addition to its General Objections, Veoh objects to this Request to the extent that the defined term "Your" seeks material outside of Veoh's possession, custody or control. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this*

*Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows:  Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 77:***

*All documents relating to Your contention in Your Sixteenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred for lack of subject matter jurisdiction because they lack valid registrations for the intellectual property rights asserted."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 77:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows:  Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 78:***

*All documents relating to Your contention in Your Seventeenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs[] ... have forfeited or abandoned their intellectual property."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 78:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 79:***

*All documents relating to Your contention in Your Eighteenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs[] ... lack standing."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 79:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to*

*the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 80:***

*All documents relating to Your contention in Your Nineteenth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by the doctrine of misuse of copyright."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 80:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 81:***

*All documents relating to Your contention in Your Twentieth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred because Veoh's products and/or services are capable of substantial non-infringing uses."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 81:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the*

*attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 82:***

*All documents relating to Your contention in Your Twenty-First Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred due to Plaintiffs' failure to mitigate damages."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 82:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 83:***

*All documents relating to Your contention in Your Twenty-Second Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims*

*are barred ... because Veoh's conduct was in good faith and with non-willful intent, at all times."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 83:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 84:***

*All documents relating to Your contention in Your Twenty-Third Affirmative Defense in Your Answer to the Complaint that "The statutory damages sought by Plaintiffs are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained, in violation of the Due Process Clause."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 84:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control*

*after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 85:***

*All documents relating to Your contention in Your Twenty-Fourth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by the applicable statutes of limitation."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 85:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 86:***

*All documents relating to Your contention in Your Twenty-Fifth Affirmative Defense in Your Answer to the Complaint that "Veoh's actions and speech are protected by the First Amendment of the Constitution of the United States."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 86:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 87:***

*All documents relating to Your contention in Your Twenty-Sixth Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims ... are preempted by the Copyright Act, 17 U.S.C. § 101 et seq."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 87:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents responsive to this Request, sufficient to evidence this contention to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 88:***

*All documents relating to Your contention in Your Twenty-Seventh Affirmative Defense in Your Answer to the Complaint that "Plaintiffs have not properly or timely registered their works with the U.S. Copyright Office."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 88:***

*In addition to its General Objections, Veoh objects to this Request to the extent that it calls for materials protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Request to the extent that it seeks documents in Plaintiffs own possession, custody or control, or that are equally accessible to Plaintiff from public sources of from third parties.*[92]

***REQUEST FOR PRODUCTION NO. 107:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Video produced by third parties and hosted on Veoh.com is not in any way produced or controlled by Veoh."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 107:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 108:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Users may ... choose to 'syndicate' their video,*

---

[92] In addition, Veoh states that it will produce responsive non-privileged documents. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

*meaning that the video then becomes available through other video hosting websites such as YouTube and Google Video."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 108:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 109:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh is an internet 'service provider' as defined by the Digital Millennium Copyright Act ('DMCA'), 17 U.S.C. § 512(k)(1)(B)."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 109:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and*

*diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 110:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Upon obtaining actual knowledge or awareness that material or an activity using the material on its system is infringing, or upon notification of claimed infringement pursuant to 17 U.S.C. § 512(c)(3), Veoh acts expeditiously to remove or disable access to the allegedly infringing material, pursuant to 17 U.S.C. §§ 512(c)(1)(A)(iii); 512(c)(1)(C)."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 110:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined term "Your" seeks material outside of Veoh's possession, custody or control.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 111:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh has, from the company's inception, been vigilant about preventing copyright infringement. Veoh's system is specifically designed to allow Veoh to terminate access to inappropriate content when notified of such content."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 111:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 112:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh has, in the past, been alerted to the presence of inappropriate content hosted on Veoh.com and has promptly terminated access to allegedly infringing material upon receiving notice of such content."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 112:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and*

*diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 113:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh independently investigates informal complaints made by users and Veoh will remove videos from the Veoh.com website that appear to include copyrighted material."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 113:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 114:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "users who violate the Veoh TOU are warned once of the consequences of copyright infringement. Upon a second violation, Veoh immediately terminates the violating user account, disables all video uploaded by the violating user and adds the user email address to a 'black list,' preventing the user from re-registering with Veoh.com in the future."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 114:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Request to the extent that the defined term "Your" seeks material outside of Veoh's possession, custody or control.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 115:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh ... accommodates standard technical measure used by copyright owners to identify or protect copyrighted works."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 115:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and*

*diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 116:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh ... has adopted a means of digitally 'fingerprinting' video files with what is known as a 'hash.'"*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 116:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 117:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Once Veoh receives a notice that a video contains allegedly infringing material, Veoh removes the individual video and prevents the future uploading of any other video having the same hash. Veoh then terminates user access to any existing files containing the subject hash."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 117:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the*

*attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 118:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh actively works with industry groups to implement state of the art technologies, including filtering and other compliance tools, to ensure that copyrighted material is not infringed."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 118:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

*Subject to and without waiving these or the foregoing General Objections, Veoh responds as follows: Veoh will produce non-privileged documents sufficient to evidence this contention, to the extent such documents are found within its possession, custody or control after a reasonable and diligent search, and to the extent such documents have not already been produced to Plaintiff.*

***REQUEST FOR PRODUCTION NO. 119:***

*All documents relating to Your contention in Your Complaint for Declaratory Relief that "Veoh lacks the ability and the right to directly*

*supervise the content provided by the 85,000 video publishers that frequent and populate its site and utilize its software."*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 119:***

*In addition to its General Objections, Veoh objects to this Request as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Request to the extent that it calls for materials protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.*

***INTERROGATORY NO. 8:***

*Set forth the basis for Your contention in Your Second Affirmative Defense in Your Answer to the Complaint that "Plaintiffs' claims are barred by the statutory immunity granted to service providers under 17 U.S.C. § 512," including, without limitation, the identification of the specific subsections of 17 U.S.C. § 512 You contend provide immunity from Plaintiffs' claims.*

***RESPONSE TO INTERROGATORY NO. 8:***

*In addition to its general objections, Veoh objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Veoh further objects to this Interrogatory to the extent that it calls for legal conclusions and/or expert testimony. Veoh further objects to this contention Interrogatory on the grounds that it is premature at this stage of litigation.*[93]

***INTERROGATORY NO. 10***

*Set forth the basis for any contention You make that any of Plaintiffs' copyrights are invalid or unenforceable.*

---

[93] In a letter dated June 13, 2008, Veoh represented that it would supplement its response to Interrogatory No. 8. Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl).

***RESPONSE TO INTERROGATORY NO. 10:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it calls for legal conclusions and/or expert testimony. Veoh further objects to this Interrogatory to the extent that it seeks documents in Plaintiffs own possession, custody or control, (and which have been requested by Veoh) or that are equally accessible to Plaintiff from public sources of from third parties. Veoh further objects to this contention Interrogatory on the grounds that it is premature at this stage of litigation.*

**B. UMG's Contentions and Points and Authorities**

These requests for production and interrogatories seek the basis for various contentions that Veoh has alleged in its answer and its complaint for declaratory relief against UMG filed in the Southern District of California.[94] This discovery is obviously relevant to this case; indeed, Veoh does not attempt to suggest that it is irrelevant. Rather, Veoh either refuses to produce responsive documents, or states that it will produce documents that are "sufficient to evidence" these contentions. Veoh's responses are wholly insufficient.

Regarding many of these requests, Veoh seems to be willing to produce some ambiguous subset of responsive documents. It attempts to limit its response, however, to documents that are "sufficient to evidence" the contention in question. As UMG explained during the meet and confer process, UMG seeks not only documents that *support* Veoh's contentions. Ledahl Decl., ¶ 16. Rather, UMG also seeks documents that would *undermine* these contentions, or at least provide additional, useful information regarding them. UMG's requests do not ask Veoh to actually identify

[94] Veoh Networks, Inc. v. UMG Recordings, Inc., et al., S.D. Cal. Case No. 07 CV 1568 TJW (BLM).

documents that undermine these contentions; accordingly, the work product doctrine is not implicated in any way, and Veoh's objections on that basis are unfounded. Rather, UMG wants to ensure that Veoh will have no legitimate argument for withholding a document that relates to one or more of Veoh's contentions, even if that document is damaging to Veoh. Veoh should produce the documents as requested by UMG.[95]

Veoh's objections to Interrogatories Nos. 8 and 10 also lack merit. Veoh objects on the grounds that these interrogatories call for legal conclusions or expert testimony, and are premature. UMG merely seeks the basis for contentions that Veoh has already made in pleadings, and therefore put at issue in this case. Rule 33(c) of the Federal Rules of Civil Procedure allows a party to serve an interrogatory the answer to which involves "an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. P 33(c); *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 280-81 (C.D. Cal. 1999). Contention interrogatories, like UMG's Interrogatories Nos. 8 and 10, are not only permissible under Rule 33(c), but are consistent with the requirement of Rule 11 that a party has some factual basis for the allegations in its filings with the Court. *See O'Connor*, 185 F.R.D. at 281.

Presumably, Veoh has some present basis for the assertions in its answer and complaint for declaratory relief. Therefore, UMG's request for the basis of these assertions is not premature. Indeed, in response to Interrogatory No. 8 at the very least, Veoh should clarify the specific statutory provisions within section 512 that it invokes as the purported basis for its defense. This information might significantly affect the discovery UMG needs to pursue in this case. Veoh should not be permitted to keep UMG in the dark regarding the scope of discovery that will be necessary.

---

[95] Furthermore, as UMG has stated regarding other requests, Veoh refuses to clarify the methodology by which it will search for responsive documents. The method proposed by UMG—a search of the files of employees who are likely to have responsive documents, and the use of search terms to identify a subset of potentially responsive documents—is particularly appropriate as a means of conducting an effective, but not boundless search for documents responsive to these requests.

During meet and confer discussions, Veoh suggested that it required discovery from UMG to answer these interrogatories. Any such argument is illogical. Not only should Veoh presently have a basis for the allegations in its pleadings, but the evidence Veoh intends to rely upon to support most, if not all, of its affirmative defenses will necessarily be in Veoh's possession. Likewise, pursuant to Rule 11, Veoh should have some *existing* basis for its affirmative defenses. Veoh should be required to state that basis as it exists now, or withdraw these purported affirmative defenses.

These discovery requests seek discovery that is, by definition, relevant to the claims and defenses in this case. Veoh's response to each of these requests should be a simple agreement to produce documents, or to provide a substantive interrogatory response. Instead, Veoh attempts to obscure what discovery it will produce, and when it will produce it. Unfortunately, this appears to be Veoh's primary tactic—to attach so many caveats and conditions to its discovery responses that UMG cannot determine whether Veoh agreed to produce anything or not. UMG therefore seeks a Court order to compel Veoh to (1) produce the documents requested by Requests for Production Nos. 47-55, 62-88, 107-19; (2) clarify the methodology by which it will search for the requested documents; and (3) provide a complete response to Interrogatories Nos. 8 and 10.

**C. Veoh's Contentions and Points of Authorities**

Veoh agreed to supplement its response to Interrogatory 8 in the June 13, 2008 Letter, so it is unclear why UMG has moved on this interrogatory. Veoh will likewise agree to supplement its response to Interrogatory No. 10.

Veoh has also agreed to produce documents sufficient to evidence its contentions/affirmative defenses in this lawsuit. Veoh responded accordingly because otherwise the requests' demand to produce all "documents relating to" the numerous categories, are overly broad and unduly burdensome. UMG's request that Veoh produce copies of all documents that "undermine" Veoh's contentions seeks protected

work product—in that it would require Veoh's counsel to determine what documents "undermine" Veoh's contentions. Veoh is not withholding relevant documents otherwise subject to production, and has agreed to produce documents sufficient to evidence its contentions. Veoh is not seeking to obscure any responsive, relevant documents, but certainly UMG's views about what documents "undermine" Veoh's contentions and what documents support Veoh's contentions will differ and will be subject to interpretation, and UMG's attempt to have an order requiring Veoh to expand its response to produce documents that "undermine" its defenses and contentions, information that is properly considered Veoh's work product, should be rejected.

## XVIII. INTERROGATORY NO. 6

### A. Verbatim Statement of Disputed Discovery and Response

***INTERROGATORY NO. 6:***

*Describe in detail Your response to each and every notice of copyrighted Content on Veoh Software that you have received (e.g., a notice and request to take down material, or a notice under the Digital Millennium Copyright Act). Your description should include, without limitation, each URL associated with each and every such notice, the date upon which the notice was received, the date upon which the Content referenced in the notice was removed from Veoh Software, the identity of the work actually taken down, all steps You have taken to remove the same work then existing on Veoh Software at a different URL or location on your network, and all steps taken to ensure that the same work was not re-uploaded to Veoh Software.*

***RESPONSE TO INTERROGATORY NO. 6:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information*

*protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory as impermissibly compound in that it purports to comprise one Interrogatory, but when counting its discrete subparts, it constitutes numerous Interrogatories, far surpassing the limit on interrogatories imposed by Fed. R. Civ. Proc. 33. Veoh further objects to this Interrogatory to the extent that the defined phrase "Veoh Software" renders the Interrogatory vague and ambiguous. Veoh further objects to this Interrogatory to the extent it calls for information apparent from the face of documents to be produced, as Veoh and Plaintiff would face a similar burden of deriving or ascertaining the answer to this Interrogatory from those documents. See Fed. R. Civ. P. 33(d).*

*Subject to and without waiving the foregoing general and specific objections, Veoh responds as follows: Veoh will produce documents pursuant to Fed. R. Civ. Proc. 33(d) which constitute notices Veoh has received under the Digital Millennium Copyright Act, and Veoh's written responses to the senders of such notices.*

**B. UMG's Contentions and Points and Authorities[96]**

**1. The Discovery Sought by UMG is Relevant to Veoh's Affirmative Defense Under the DMCA**

UMG's Interrogatory No. 6 seeks information relating to Veoh's responses to notices of copyright infringement that it has received, whether or not pursuant to the DMCA. Specifically, UMG asked that Veoh provide the internet address (or "URL") for the works identified in the notices, the date upon which it received such notices, the date it removed the content from its site, the identity of the work removed, all

---

[96] For the convenience of the Court and to reduce the size of this joint stipulation, UMG refers the Court to its discussion of Veoh, relevance, and the DMCA, *supra*, Part III.B.1, and Part IV.B.1 and 2.

steps (if any) taken to remove the same work if it existed elsewhere on Veoh.com, and all steps (if any) taken to ensure that the same work was not re-posted to Veoh.com. That is, this interrogatory seeks discovery which fully explains how Veoh responds to notices of copyright infringement, as it must in order to qualify for its purported affirmative defense under the DMCA. Veoh primarily objects that this interrogatory is unduly burdensome, and asserts that it will produce notices it has received pursuant to the DMCA, as well as its written responses to those notices. Veoh's response is insufficient.

Under its affirmative defense invoking the safe-harbor provisions of the DMCA, Veoh must show that it "acts expeditiously to remove, or disable access to, the material" identified in a notice of copyright infringement. 17 U.S.C. § 512(c)(1)(A)(iii). Often a copyright holder sends such notices which include a specific URL (*i.e.*, an internet site address) where the infringing work is found. Often, the same work may also be available at other URL's controlled by the same internet site. For example, multiple copies of the video for a popular song might be found in different locations on the Veoh web site, perhaps posted at different times or by different users. All steps taken by Veoh to "remove" "the material" – including steps taken to ensure that the material was permanently removed, or was removed in other locations on Veoh.com – are relevant to Veoh's alleged expeditious removal or disabling of access. Veoh refuses to produce such information.

**2. Veoh Has No Valid Objection to This Discovery**

Considering that Veoh relies upon its purportedly expeditious response to notices of copyright infringement as part of its affirmative defense purporting to excuse its conduct, Veoh does not dispute the relevance of this interrogatory. Veoh cannot reasonably object that this interrogatory is unduly burdensome given the relevance of the discovery. If Veoh took steps to find and remove identical works to those identified in infringement notices, UMG is entitled to know which steps Veoh took. Providing such information should not be difficult for Veoh. Similarly, if Veoh

took steps to ensure that the same works were not re-posted to Veoh, UMG is entitled to discovery into that issue and it should not be burdensome for Veoh to document those steps.

Additionally, of course, Veoh has failed to provide admissible evidence supporting any contention of burden. *See In re Advanced Interventional Sys. Sec. Litig.*, No. SACV92-723-AHS (RWRX), 1993 WL 331006, at *4 n.5 (C.D. Cal. May 17, 1993) (granting motion to compel because the objecting party "fail[ed] to produce any evidence in support" of its contention that the requests were unduly burdensome); *see also Tucker v. Ohtsu Tire & Rubber Co*., Ltd., 191 F.R.D. 495, 498 (D. Md. 2000) (holding that "[t]he party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavits or other reliable evidence"); *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997) (same).

**3. Veoh's Purported Rule 33(d) Production is Insufficient**

Veoh purports to rely upon a production of documents pursuant to Rule 33(d) to satisfy its obligation to respond to Interrogatory No. 6.[97] As discussed above, the information Veoh purports to rely upon is insufficient. Further, if Veoh intends to substitute a production of documents pursuant to Rule 33(d), that rule requires that Veoh "specify[] the records that must be reviewed, **in sufficient detail** to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d) (emphasis added). In addition, a Rule 33(d) production of records is only proper where "the burden of deriving or ascertaining the answer [from the business records] will be **substantially the same for either party**." Fed. R. Civ. P. 33(d) (emphasis added). Veoh has made no attempt to specify the documents that must be reviewed. Further, Veoh is necessarily more familiar with its response to

[97] *See* Ledahl Decl., Ex. 13 (6/13/2008 Letter from J. Golinveaux to B. Ledahl, stating that Veoh's production of Video file data will somehow be sufficient. As this data would not in any way explain how Veoh responded to notices of copyright infringement, it cannot be sufficient to respond to this interrogatory.

notices of infringement.  Thus, the burden on UMG of deriving the answer to this interrogatory from a production of documents is substantially greater than the burden on Veoh of responding.

UMG's Interrogatory No. 6 seeks relevant discovery into Veoh's responses to notices of copyright infringement.  Veoh's preference not to respond to this discovery is not a valid basis for refusing to do so.  UMG respectfully submits that Veoh should be ordered to respond to this interrogatory without further delay.

**C. Veoh's Contentions and Points and Authorities**

As Veoh has already produced thousands upon thousands of documents consisting of all DMCA notices of infringement and all Veoh's standard responses to takedown requests—which show the substance of the requested communications and the dates of the notices, takedowns and Veoh's follow-up response—it is unclear what else UMG could possibly want or what further information it expects Veoh to put into an interrogatory response.  It would be an enormous burden to ask Veoh to pour through these thousands upon thousands of documents only to summarize, in narrative form, the same information that UMG is equally and readily able to derive from the documents already produced by Veoh.  UMG could only seek such cumulative data to create more expense and busy work for Veoh—not as a result of a genuine need to obtain new sources of relevant information.  Thus, Veoh not only satisfies its burden in invoking Fed.R.Civ.P. 33(d), it is hard to imagine an interrogatory more appropriate for the invocation of Fed.R.Civ.P. 33(d).  Accordingly, UMG's motion with respect to this interrogatory should be denied.

**XIX. INTERROGATORY NO. 12**

**A. Verbatim Statement of Disputed Discovery and Response**

***INTERROGATORY NO. 12:***

*Identify the user name or user ID used on Your services for each of Your officers, directors and employees.*

***RESPONSE TO INTERROGATORY NO. 12:***

*In addition to its general objections, Veoh objects to this Interrogatory as overly broad, unduly burdensome, harassing and oppressive. Veoh further objects to this Interrogatory as vague, ambiguous, uncertain and confusing. Veoh further objects to this Interrogatory to the extent that it seeks information not relevant to the claims or defenses of any party to the pending action. Veoh further objects to this Interrogatory to the extent that it seeks information protected from disclosure by Veoh's legal or contractual obligations to third parties. Veoh further objects to this Interrogatory to the extent it seeks information protected by a right of privacy.*

**B. UMG's Contentions and Points and Authorities**

**1. The Veoh User Names or IDs of Veoh's Employees are Likely to Lead to Relevant Evidence**

Interrogatory No. 12 requests the Veoh user ID or name for each of Veoh's employees. This discovery may lead to evidence showing that Veoh's employees have uploaded or "shared" unauthorized copies of UMG's copyrighted works on the Veoh software. This discovery is relevant for several reasons. Veoh employees may have actually uploaded or distributed unauthorized copies of UMG's works, which would constitute, at a minimum, the reproduction and distribution of UMG's copyrighted works, and would therefore constitute direct infringement by Veoh. *See* 17 U.S.C. § 106 (exclusive rights of copyright holder). Further, if Veoh employees posted *any* content to Veoh.com or the Veoh software, that fact is relevant to Veoh's DMCA defense and UMG's claims, as explained below.

On video-sharing websites such as Veoh, the quality of the videos available on the site is crucial to attracting user traffic and, in turn, advertising revenue. UMG's artists are some of the most popular in the world, and many websites pay a premium for the ability to display music videos featuring UMG's copyrighted works. It is likely that Veoh actively sought out UMG music videos in order to upload and

"share" them on the Veoh service in order to draw users. If Veoh's employees themselves are engaging in the infringing activity, Veoh cannot claim that it lacks knowledge of the infringement on its site. For the same reasons, the acts of Veoh's employees will go to whether Veoh is "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(ii). Similarly, if Veoh employees placed infringing works on Veoh.com that would also be relevant to understanding whether Veoh has the "right and ability to control [infringing] activity." 17 U.S.C. § 512(c)(1)(B). Even if Veoh claims that it cannot control the acts of its users, it can certainly control the acts of its employees.

Even if Veoh employees themselves did not post infringing content, if Veoh's employees posted *any* content on Veoh.com that fact is relevant to Veoh's purported DMCA defense. If Veoh employees placed content onto Veoh.com, it would show, among other things, Veoh's knowledge of infringing activity, which is relevant under the DMCA's knowledge prong. For example, through their use of the Veoh Software, Veoh employees would likely have seen infringing copies of UMG's works, or would have learned various facts and circumstances that made the infringement readily apparent.

Setting aside Veoh's DMCA defense, which is an independently sufficient basis to force Veoh to produce these user names or IDs, the acts of Veoh's employees are relevant to other of Veoh's affirmative defenses as well. For example, Veoh claims that UMG has granted a license for, its consent to, or acquiescence in Veoh's use of UMG's works. *See* Ledahl Decl. Ex. 3 (Veoh's Answer at 10) (Fifteenth Affirmative Defense). The acts of Veoh's employees in posting content to Veoh—*any* content—are relevant to negating this defense. Veoh also claims that its infringement is innocent. *See id.* at 11 (Twenty-Second Affirmative Defense). The deliberate acts of Veoh's employees will reflect on Veoh's defense of innocent infringement. Further, innocence and willfulness are factors relevant under the Copyright Act's damages inquiry; accordingly, this evidence of Veoh's willful infringement of UMG's

copyrights will be relevant for the purposes of determining damages. *See* 17 U.S.C. § 504(c) (upon a finding of willful infringement, court may award statutory damages up to $150,000). Clearly, the discovery sought is highly relevant.

### 2. Veoh's Objections on the Grounds of Relevance, Burden, and Privacy are Baseless

As explained above, the discovery sought is highly relevant to several claims and defenses in this case. Furthermore, Veoh's objection on the grounds of burden is not well taken. Veoh is most likely a relatively small company. Even if the user names of Veoh employees are not maintained in a single document or location, it will take relatively little effort to request these user IDs from each employee. Further, Veoh has failed to provide admissible evidence supporting any contention of burden. *See In re Advanced Interventional Sys. Sec. Litig.*, No. SACV92-723-AHS (RWRX), 1993 WL 331006, at *4 n.5 (C.D. Cal. May 17, 1993) (granting motion to compel because the objecting party "fail[ed] to produce any evidence in support" of its contention that the requests were unduly burdensome); *see also Tucker v. Ohtsu Tire & Rubber Co.*, Ltd., 191 F.R.D. 495, 498 (D. Md. 2000) (holding that "[t]he party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavits or other reliable evidence"); *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997) (same).

Veoh also objects on the basis of a right to privacy, apparently asserting the privacy rights of its employees. Veoh cannot conceal the acts of its employees, including potentially direct infringement of UMG's works, on this flimsy basis. In any event, the parties have stipulated to an interim protective order that provides more than sufficient protection for this information.

UMG should be permitted to explore this avenue of highly relevant discovery, given the small burden upon Veoh of obtaining these user IDs, and the great relevance of such evidence if it exists. Accordingly, UMG respectfully requests that the Court

grant its motion to compel Veoh to fully respond to Interrogatory No. 12.

**C. Veoh's Contentions and Points and Authorities**

While UMG tosses out a few tenuous reasons why it should be entitled to the personal user account information of all Veoh employees in hopes that at least one will stick, requiring Veoh to hand over personal account information for every one of Veoh's 100+ employees will serve no legitimate purpose and will unnecessarily tread into the privacy of those employees. *See, e.g., Leventhal v. Knapek*, 266 F.3d 64, 74 (2d Cir. 2001) (employee had reasonable expectation of privacy in contents of workplace computer); *United States v. Slanina*, 283 F.3d 670, 676-77 (5th Cir. 2002) (employee had reasonable expectation of privacy in his computer and files where the employee had installed passwords to limit access), cert. granted, judgment vacated on other grounds, 537 U.S. 802, 123 S. Ct. 69, 154 L. Ed. 2d 3 (2002); *Haynes v. Office of Atty. Gen. Phill Kline,* 298 F. Supp. 2d 1154, 1161-62 (D. Kan. 2003) (employee had reasonable expectation of privacy in private computer files, despite computer screen warning that there shall be no expectation of privacy in using employer's computer system, where employees were allowed to use computers for private communications, were advised that unauthorized access to user's e-mail was prohibited, employees were given passwords to prevent access by others and no evidence was offered to show that the employer ever monitored private files or employee e-mails).

Veoh's policies prohibit anyone from uploading any infringing content. Veoh does not allow its own employees to upload any infringing works, let alone UMG's works. UMG should not be provided with the user name of all employees based on nothing more than the conjecture that such discovery "may" lead to evidence that such employees uploaded infringing material.

There are far less intrusive measures to allow UMG to test its theory than what it requests—such as taking advantage of the spreadsheet offered by Veoh. Veoh has agreed to turn over a spreadsheet that will reveal all of the files ever uploaded to

Veoh. Upon UMG identifying allegedly infring files from the spreadsheet, UMG can then inquire as to those specific files. Until then, it makes no sense to prematurely disclose every one of Veoh's employees' user names or user IDs to UMG.

UMG's suggestion that Veoh employees have engaged in some conspiracy to post UMG infringing works for any reason is specious and designed to harass Veoh and its employees. Such grounds are insufficient to invade the user information and access all videos ever uploaded by Veoh's 100+ employees. Thus, UMG's motion with respect to this request should be denied.

Dated: July 21, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: /s Brian Ledahl
Brian Ledahl

Attorneys for Plaintiffs

Dated: July 21, 2008

WINSTON & STRAWN LLP
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Lawlor Calkins
Erin R. Ranahan

By: /s Jennifer Golinveaux (w/ permission)

Attorneys for Defendants