Re: Docket #71

Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC.,<br><br>Defendant. | Case No. CV-07-05744 AHM (AJWx)<br><br>**UMG'S SUPPLEMENTAL MEMORANDUM REGARDING UMG'S MOTION TO COMPEL DISCOVERY RESPONSES FROM VEOH NETWORKS, INC.**<br><br>Magistrate: Hon. Andrew J. Wistrich<br><br>Date: August 11, 2008<br>Time: 10:00 a.m.<br>Courtroom: 690<br><br>Discovery Cutoff: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |



Dockets.Justia.com

UMG submits the following Supplemental Memorandum in support of UMG's Motion to compel Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37-2.3.

## I. VEOH CONTINUES TO WITHHOLD RELEVANT DISCOVERY

Throughout the Joint Stipulation, Veoh suggests that the motion could be avoided because Veoh is willing to produce documents. A nice sentiment to be sure, but meaningless. Veoh still has not acted on that supposed willingness. More than 5 months after UMG propounded discovery, Veoh still has not made a meaningful production. Veoh now claims that UMG is wasting time and energy with a motion because more meeting and conferring (beyond the many hours UMG already has spent trying to resolve discovery issues) should be required. In these interminable discussions, UMG identified numerous categories of documents that Veoh has not produced. Veoh has delayed and procrastinated too long already. Were Veoh truly willing to produce documents, it could and should have done so by now. It should be ordered to do so immediately.

Here are just some examples of documents Veoh should have already produced, but has not. While Veoh has agreed to produce a copy of its Copyright Policy, it has yet to do so. Supplemental Ledahl Decl. ¶ 2. Likewise, Veoh still has not produced any of its internal email communications. *Id.*

Two weeks ago, UMG was finally able to depose (again, after Veoh delays) a Veoh corporate designee relating to its computer systems for displaying and distributing videos. This deposition revealed in greater detail the extent to which Veoh continues to withhold relevant materials. For example, every time a Veoh employee uses a software tool to remove a video believed to be infringing, Veoh's system generates a record. Veoh has yet to produce any of these records. Supplemental Ledahl Decl., ¶ 4 and Ex. A. Further, Veoh's designee admitted that Veoh has extensive documentation about the operation of its systems. It has not

produced that material. *Id.*[1] When Veoh will not even produce documents it supposedly agreed to produce, UMG can hardly be expected to take on faith Veoh's promise to make a "sufficient" production.

## II. VEOH FAILS TO SPECIFY WHAT IT WILL PRODUCE

Throughout the Joint Stipulation, Veoh suggests that its discovery efforts should be deemed sufficient because it made "proposals" in a letter of June 13. As UMG explained in the Joint Stipulation, those "proposals" merely echo Veoh's refusal to meaningfully identify the documents it will produce (much less any time by which they will be produced). Veoh further argues that it should not be ordered to provide specificity because it asserts, based on nothing more than its counsel's *ipse dixit*, that it will conduct a "reasonable" and "diligent" search. Again, these are nothing but empty promises. Veoh continues to withhold numerous fundamental materials without any justification. Even MySpace and Grouper made more meaningful productions than Veoh. As set forth in UMG's moving papers, Veoh should be ordered immediately to: (1) disclose the employees whose files will be searched, and (2) the methodology (i.e., search terms) which Veoh uses to search for documents to insure that Veoh's production lives up to its obligations of diligence and reasonableness.

## III. VEOH SHOULD PRODUCE ITS MEDIA FILES

Like MySpace and Grouper before it, Veoh complains that it should not have to produce its videos – the evidence of infringement – because it would purportedly be difficult or burdensome. Instead, Veoh argues that it need only produce a spreadsheet listing its videos. Veoh should be producing both. The spreadsheet of metadata (information stored about each video file) is unquestionably relevant and necessary discovery. But it is not sufficient. Veoh must also produce the videos. Veoh demands that UMG identify infringing videos while Veoh refuses to produce

[1] These are examples of the many categories of highly relevant materials identified during the deposition that have yet to be produced. Additional specific examples are set forth in the Supplemental Ledahl Declaration.

the videos. This Court recognized in the Grouper case the preposterous nature of this contention and ordered Grouper to produce its videos. The same result should apply here.

As UMG pointed out in the Joint Stipulation, this Court is not alone in ordering such production. In an infringement case against YouTube pending in New York, the court ordered YouTube to produce its videos as well. *See* Ledahl Decl., Ex. 21. Veoh tries to distinguish itself from every other case about infringing video sites by arguing that YouTube has more money than Veoh. First, that is false – Veoh's well financed investors include Goldman Sachs, Spark Capital and other major financiers. Indeed, Veoh recently received an infusion of $30 million of additional capital from its investors *See* Supplemental Ledahl Decl., Ex. B. Moreover, Veoh should not be able to build a business on copyright infringement and then claim financial hardship when it has to produce the evidence of its extensive infringement in litigation.[2] Veoh should be ordered to produce its videos. UMG will provide hard drives onto which the files can be copied, but UMG cannot be expected to further subsidize Veoh's infringement by paying Veoh's purported staff costs associated with complying with basic discovery obligations.

## IV. VEOH REFUSES TO PRODUCE RELEVANT DISCOVERY

Veoh also argues that it should not have to produce any documents in various highly relevant categories. UMG briefly addresses certain of Veoh's arguments regarding some of these categories.

### A. Allegations of Infringement by Third Parties (Jt. Stip. Section V)

Veoh invoked the DMCA as a defense in this case. Thus, Veoh must show that it did not have reason to know of infringement on its system – so-called "red flags." Claims of infringement are unquestionably relevant to such issues, but Veoh refuses to produce the documents about them. Veoh relies on *Dolby Labs, Inc. v.*

[2] Notably, that this Court also ordered Grouper – an even smaller entity than Veoh – to produce the evidence of infringement contained in its media files.

*Lucent Techs., Inc.*, No. 01-cv-20709, 2004 U.S. Dist. LEXIS 30484 (N.D. Cal. May 26, 2004). This case did not involve any DMCA defense (indeed it did not even involve copyright infringement). A fair reading of the case shows that it has no bearing on the issues presented here.[3] Furthermore, Veoh's claim that it can withhold the discovery *it provided to Io Group* on the grounds of a protective order in that case is nonsensical. Veoh can unquestionably produce its own documents – UMG is not seeking Io Group's confidential material from Veoh.

**B. Monitoring and Filtering Documents (Jt. Stip. Section VIII)**

Veoh placed its ability to filter content at issue by asserting its DMCA defense. Now, Veoh refuses to produce documents relating to that issue – specifically its efforts to monitor, filter, or remove content that contains pornographic or obscene material. Veoh fails to address any of UMG's legal authorities and cites none of its own in arguing that the material is irrelevant. This cannot support its refusal to produce.

**C. Searching and Traffic Documents (Jt. Stip. Section X)**

Veoh refuses to produce its documents regarding searching and tries to limit its production to documents referring to "infringing music videos." Obviously, Veoh is trying to narrow its search to avoid relevant documents that don't use the word "infringing." Veoh maintains extensive information about search and traffic activities that are relevant both to Veoh's knowledge of infringement and the financial benefit it receives from infringement. Veoh placed both matters at issue with its DMCA defense.

**D. License Agreements (Jt. Stip. Section XI)**

Veoh tries to limit its production to license agreements for music and music-video related content, based upon the Court's entry of a stipulation in the MySpace

[3] In *Dolby Labs*, the court acknowledged that the discovery sought was relevant, but limited discovery to the 68 licenses accused of infringing the patents-in-suit because the opposing party had not even addressed why it should not be so limited, and because evidence of the financial arrangements with licensees was no longer relevant given the bifurcation of liability and damages.

case. Veoh's reliance on the MySpace stipulation is misplaced.[4] The fact that UMG compromised with MySpace, which had different portions of its service devoted to activities not involved in that case, has no bearing here. Veoh's entire site is directed at the distribution of videos in general. All of Veoh's licenses for content are relevant because, as set forth in the Joint Stipulation, they show the value Veoh places on content – notwithstanding its willingness to take UMG's content without compensation.

### E. Advertising Agreements (Jt. Stip. Section XII)

UMG showed that Veoh's advertising agreements are relevant to the financial benefit Veoh receives from its infringement. These are the same makeweight objections MySpace raised, and abandoned, in prior litigation.[5] Veoh placed such matters at issue with its DMCA defense and cannot now avoid discovery on it. The ways Veoh targets advertisements and makes money from advertising are highly relevant to showing direct financial benefit from infringement. Veoh should produce the agreements.

### F. Employee User Names (Jt. Stip. Section XIX)

If Veoh's employees are posting infringing content, that is highly relevant. Indeed, it destroys any purported DMCA defense since the threshold requirement of the DMCA is that the service be storing "at the direction of a user." Veoh seeks to conceal that information by withholding their Veoh user names. Veoh relies only on vague, unsupportable assertions of privacy to justify its refusal to provide this information.[6] Veoh could readily compile this information for its approximately one hundred employees and should be compelled to do so.

---

[4] Calling it a Court order is also overreaching given that the Court was entering a stipulated order.

[5] Notably, Grouper never even attempted to hide these types of documents from production, as they are so obviously relevant. It produced them.

[6] Veoh relies on several obviously irrelevant cases that have absolutely nothing to do with discovery standards, but with the Fourth Amendment – inapplicable here.

Dated: July 28, 2008

IRELL & MANELLA LLP

By: /s Brian Ledahl

Brian Ledahl

Attorneys for Plaintiffs