1  IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
2  Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
3  Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
5  Facsimile:  (310) 203-7199

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         WESTERN DIVISION

11

12  UMG RECORDINGS, INC., a          )  Case No. 07-05744 AHM (AJWx)
    Delaware corporation; UNIVERSAL   )
13  MUSIC CORP., a New York          )
    corporation; SONGS OF UNIVERSAL, )  **FIRST AMENDED COMPLAINT
14  INC., a California corporation;   )  FOR DIRECT, CONTRIBUTORY,
                                      )  AND VICARIOUS COPYRIGHT
15  UNIVERSAL-POLYGRAM               )  INFRINGEMENT, AND FOR
    INTERNATIONAL PUBLISHING,         )  INDUCEMENT OF COPYRIGHT
16  INC., a Delaware corporation;     )  INFRINGEMENT**
    RONDOR MUSIC INTERNATIONAL,      )
17  INC., a California corporation;   )
    UNIVERSAL MUSIC – MGB NA         )  **DEMAND FOR JURY TRIAL**
18  LLC, a California Limited Liability )
    company; UNIVERSAL MUSIC – Z     )
19  TUNES LLC, a New York Limited    )
    Liability company; and UNIVERSAL  )
20  MUSIC – MBG MUSIC PUBLISHING     )
    LTD., a UK company,               )
21                                    )
                                      )
22         Plaintiffs,                )
                                      )
23       v.                           )
                                      )
24                                    )
    VEOH NETWORKS, INC., a California )
25  corporation; SHELTER CAPITAL     )
    PARTNERS, LLC, a Delaware limited )
26  liability company; SHELTER        )
    VENTURE FUND, L.P., a Delaware   )
27  limited partnership; SPARK CAPITAL,)
    LLC, a Delaware limited liability  )
28

1900077

1  company; SPARK CAPITAL, L.P., a )
2  Delaware limited partnership; THE )
   TORNANTE COMPANY, LLC, a )
3  Delaware limited liability company, )
                                       )
4          Defendants.                 )
                                       )
5                                      )
                                       )
6

7

8          Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal,

9  Inc., Universal-PolyGram International Publishing, Inc., Rondor Music

10 International, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes

11 LLC, and Universal Music – MBG Music Publishing, Ltd. (collectively "Plaintiffs")

12 allege, on information and belief, as follows:

13         1.     Plaintiffs are part of Universal Music Group ("UMG"), the world's

14 largest music company.  UMG has a long and distinguished heritage dating back

15 more than a century.  Today, UMG stands as a leader and innovator in the

16 development, marketing, sales, promotion and distribution of music around the

17 world.  UMG's extensive and diverse collection record labels include such well-

18 known and legendary names as Decca, Motown, Deutsche Grammophon,

19 Interscope, Geffen, A&M, Island, Def Jam, Universal, Verve, MCA Nashville,

20 Mercury Nashville Records, and Lost Highway.  UMG is also the world's largest

21 music publisher; it owns or administers over 1.5 million copyrighted musical

22 compositions.  UMG's performing artists and songwriters include U2, Black Eyed

23 Peas, Prince, Paul Simon, Luciano Pavarotti, George Strait, BB King, Juanes, Justin

24 Timberlake, Eminem, Beach Boys, Bon Jovi, Sheryl Crow, Dr. Dre, Eminem, Jay-Z,

25 Diana Krall, Nelly, No Doubt, Gwen Stefani, Stevie Wonder, Sting, Mary J. Blige,

26 Elton John, The Killers, Shania Twain, 50 Cent, Ludacris, and Alanis Morrisette, to

27 name but a few.

28

1      2.    Defendant Veoh Networks, Inc. ("Veoh") is a massive copyright

2  infringer that has built its business on the back of others' intellectual property.

3  Veoh follows in the ignominious footsteps of other recent mass infringers such as

4  Napster, Aimster, KaZaA, and Morpheus, engaging in high tech theft in the name of

5  "sharing."  Veoh's disregard for the copyright laws have earned it notoriety in the

6  press for, among other things, "sharing" infringing copies of hard core pornography,

7  "sharing" content Veoh "video-jacked" for videobloggers, and "sharing" full-length

8  infringing copies of audiovisual works, which Veoh permits users to view,

9  reproduce, and downloaded for free.  Veoh Networks Founder and Chief Innovation

10  Officer Dmitry Shapiro "acknowledge[d] that only a week after the company's

11  official debut, Veoh.com is host to a wide range of unauthorized and full-length

12  copies of popular programs."  Greg Sandoval, *A New Copyright Battlefield: Veoh*,

13  CNET News (2/21/2007).  As one author describing Veoh put it in a headline that

14  tells all:  "Forget about YouTube: Go To These Sites If You Want Hard Core

15  Copyright Infringement," Michael Arrington, TechCrunch (4/4/2007) (singling out

16  Veoh as one of top destinations for "hard core copyright infringement").

17      3.    As part of its "hardcore copyright infringement," Veoh has directly and

18  indirectly infringed *thousands* of Plaintiffs' copyrighted sound recordings and

19  musical compositions, which Veoh has reproduced, adapted, displayed and

20  distributed.  Veoh does this by making permanent copies on servers that it owns or

21  controls of audiovisual works containing Plaintiffs' copyrighted music; converting

22  Plaintiffs audiovisual works into commonly used video formats to facilitate

23  infringement by Veoh's users; virally exploiting Plaintiffs' music and audiovisual

24  works without permission or a license; and providing free permanent downloads of

25  Plaintiff's music and audiovisual works.

26      4.    Veoh has not acted alone, however.  Veoh has been actively supported –

27  financially and operationally – in its infringing activities by defendants Shelter

28  Capital Partners, LLC ("Shelter Capital"), Spark Capital, LLC ("Spark Capital"),

1  and The Tornante Company, LLC ("Tornante").  These entities supplied the funding

2  which Veoh has used to operate its business, including constructing and maintaining

3  its hardware and software systems, which not only accomplishes the direct

4  infringement of Plaintiff's copyrighted works, but facilitates third parties who use

5  Veoh's systems to infringe UMG's copyrighted works.  In addition, Shelter Capital,

6  Spark Capital, and Tornante comprise a majority of Veoh's Board of Directors and,

7  through those directorships, control Veoh and make all important operational

8  decisions for Veoh.

9      5.   Shelter Capital, Spark Capital, and Tornante are not – and never have

10  been – passive investors in Veoh.  They sought and obtained control far in excess of

11  the degree of involvement and control that shareholders would typically obtain so

12  that they could direct the operations of Veoh, knowing full well that the site

13  displayed and distributed copyrighted works without appropriate licenses, and

14  knowing full well that Veoh's users used Veoh to engage in massive copyright

15  infringement.  Shelter Capital, Spark Capital, and Tornante did this solely to enrich

16  themselves, without any regard for the copyright holders, songwriters, and recording

17  artists they trampled in the process.

18      6.   The rampant infringement of Plaintiffs' copyrighted music will not stop

19  until Veoh, and those who own, control, and run it, are enjoined and held financially

20  accountable for their mass copyright infringement.

21               **JURISDICTION AND VENUE**

22      7.   This is a civil action seeking damages and injunctive relief for copyright

23  infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq*.  This Court has

24  subject matter jurisdiction over these federal questions pursuant to 17 U.S.C. § 501

25  and 28 U.S.C. §§ 1331 and 1338(a).

26      8.   This Court has personal jurisdiction over defendants in that, among

27  other things, defendants do business in this judicial District, and Plaintiffs do

28  business and are suffering harm in this judicial District.

FIRST AMENDED COMPLAINT FOR COPYRIGHT
INFRINGEMENT AGAINST VEOH NETWORKS, INC.,
ET AL.

1900077

9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

10.   Plaintiff UMG Recordings, Inc. ("UMGR") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles County, California, and is duly qualified to transact business in the State of California.  UMGR is engaged in the business of producing sound recordings, and distributing, selling, and/or licensing the distribution and sale of its sound recordings in phonorecords (as defined in 17 U.S.C. § 101) and in audiovisual works in the United States.  UMGR is the leading producer of such phonorecords in the United States, including on its various record labels such as (by way of example) Interscope, Geffen, A&M, Island, Def Jam, Universal, Motown, and Verve.  UMGR invests substantial sums of money, as well as time, effort, and creative talent, to discover and develop recording artists, and to create, advertise, promote, sell, and license phonorecords embodying the performances of its exclusive recording artists.  UMGR owns copyrights in thousands of sound recordings, including many of the most popular and well-known sound recordings in the world (the "Copyrighted Sound Recordings") for which UMGR has obtained or has applied for Certificates of Copyright Registration issued by the Register of Copyrights.  By way of representative example only, the Copyrighted Sound Recordings include those listed on Exhibit A hereto.

11.   UMGR has the exclusive rights, among other things, to reproduce the Copyrighted Sound Recordings in copies or phonorecords; to prepare derivative audiovisual works based upon the Copyrighted Sound Recordings; to distribute copies or phonorecords of the Copyrighted Sound Recordings to the public; and to perform the Copyrighted Sound Recordings publicly by means of a digital audio transmission.  17 U.S.C. §§ 106(1), 106(2), 106(3), 106(6).

12.   Plaintiff Universal Music Corp. ("UMC") is a corporation duly organized and existing under the laws of the State of New York with its principal place of business in Los Angeles County, California, and is duly qualified to transact business in the State of California.  Plaintiff Songs of Universal, Inc. ("SOU") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California, and is duly qualified to transact business in the State of California.  Plaintiff Universal-Polygram International Publishing, Inc. ("UPIP") is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Los Angeles County, California, and is duly qualified to transact business in the State of California.  Plaintiff Rondor Music International, Inc. ("RMI") is a corporation duly organized and existing under the laws of the State of California, and is duly qualified to transact business in the State of California.  Rondor's principal place of business is Los Angeles County, California.  Plaintiff Universal Music – MGB NA LLC ("MGB") is a limited liability company duly organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California and is duly qualified to transact business in the State of California.  Plaintiff Universal Music – Z Tunes LLC ("Z-Tunes") is a limited liability company duly organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California and is duly qualified to transact business in the State of California.  Plaintiff Universal Music – MGB Music Publishing Ltd. ("MGB UK") is a UK company with its principal place of business in London, England.  UMC, SOU, UPIP, RMI, MGB, Z-Tunes, and MGB UK are engaged in the business of acquiring, owning, publishing, administering, licensing, and otherwise exploiting copyrights in musical compositions.  UMC, SOU, UPIP, RMI, MGB, Z-Tunes, and MGB UK invest substantial sums of money, as well as time, effort, and creative talent, to acquire, administer, publish, license and otherwise exploit such copyrights, on their

own behalf and on behalf of songwriters.  UMC, SOU, UPIP, RMI, and MGB, Z-Tunes, and MGB UK own (in whole or in part) copyrights in thousands of musical compositions, including many of the most popular and well-known compositions in the world (the "Copyrighted Musical Compositions") for which they have obtained or have applied for Certificates of Copyright Registration issued by the Register of Copyrights.  By way of representative example only, the Copyrighted Musical Compositions include those listed on Exhibit A hereto.

13.   UMC, SOU, UPIP, RMI, or MGB, Z-Tunes, and MGB UK have the exclusive rights, among other things, to reproduce the Copyrighted Musical Compositions in phonorecords; to prepare derivative audiovisual works based upon the Copyrighted Musical Compositions; and to perform the Copyrighted Musical Compositions publicly.  17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4).

14.   Defendant Veoh is a privately held California corporation, with its principal places of business in Los Angeles and San Diego, California.  Veoh has taken mass infringement on the Internet to a new and dangerous level by supplying the public with an integrated combination of services and tools that make infringement free, easy, and profitable for Veoh.  Among other things, Veoh operates Veoh.com, a "video sharing" website where members of the public can search for, view, upload and download and otherwise "share" thousands of videos, many thousands of which are infringing copies of copyrighted works.

15.   Veoh is well aware of the mass infringement it has facilitated.  Veoh's infringement is indeed sufficiently egregious to have provoked comment in the mainstream media.  The New York Times, for example, noted that "the major media companies think the firm [Veoh], backed by Time Warner and Michael Eisner, takes a cavalier attitude toward keeping copyrighted material off its service. They complain that Veoh imposes no time limits on uploaded clips and will not embrace digital fingerprinting technology to filter out copyrighted-material." "Veoh vs. Copyright Holders: Is a War Brewing?"  New York Times (8/9/2007).  Veoh has

1 | eschewed effective filtering for one very simple reason: those safeguards work.
2 | When used properly, filters not only reduce infringement, but also the number of
3 | visitors to a website in search of infringing content. Veoh consciously is seeking to
4 | enjoy the benefits of exploiting copyrighted content, such as increased traffic on its
5 | website, without having to pay copyright owners for using their content.

6 |     16.   Veoh has been able to attract tens of millions of dollars of financial
7 | support from various investors, all of whom support, facilitate, and benefit from
8 | Veoh's infringing acts. Veoh's investors include, among others, defendants Shelter
9 | Capital, Spark Capital, and Tornante. Shelter Capital, Spark Capital, and Tornante
10 | have each made a substantial investment in Veoh and, through their investments,
11 | secured a seat on Veoh's Board of Directors. Shelter Capital, Spark Capital, and
12 | Tornante have used their investments and board seats to control and make all
13 | important operational decisions at Veoh, including decisions relating to what
14 | content should be permitted to be displayed on Veoh, and whether Veoh should
15 | employ any technical measures to prevent or limit the presence of infringing content
16 | on Veoh. Further, Shelter Capital, Spark Capital, and Tornante each has a direct
17 | financial interest in Veoh's infringing conduct and benefits from the increased
18 | revenues to Veoh resulting from the presence of Plaintiffs' Copyrighted Sound
19 | Recordings and Copyrighted Musical Compositions on the site, and each will profit
20 | from their investments through the sale of Veoh to a potential acquiring company or
21 | through a public offering. The value of these investments in Veoh and the potential
22 | financial benefit to Shelter Capital, Spark Capital, and Tornante will be significantly
23 | driven by the internet user traffic drawn to Veoh, including traffic drawn as a result
24 | of Veoh's copyright infringement.

25 |     17.   The true names and capacities, whether individual, corporate, associate,
26 | or otherwise, of defendants sued herein as Does 1 through 10, are unknown to
27 | Plaintiffs, which sue said defendants by such fictitious names (the "Doe
28 | Defendants"). If necessary, Plaintiffs will seek leave of Court to amend this

1   complaint to state their true names and capacities when the same have been

2   ascertained.  Plaintiffs are informed and believe and on that basis aver that the Doe

3   Defendants are liable to Plaintiffs as a result of their participation in all or some of

4   the acts hereinafter set forth.  Veoh and the Doe Defendants are referred to

5   collectively herein as "Defendants."

6       18.   Plaintiffs are informed and believe and on that basis allege that at all

7   times mentioned in this complaint, each of the Defendants was the agent of each of

8   the other Defendants and, in doing the things alleged in this complaint, were acting

9   within the course and scope of such agency.

10                          **GENERAL AVERMENTS**

11      19.   Veoh has created a sophisticated suite of software and services designed

12   to encourage, induce, and enable members of the public to make, upload, download,

13   "share," sell, rent, and distribute permanent copies of videos without regard to the

14   rights of copyright owners.  Following in the footsteps of infamous pioneers of mass

15   piracy on the Internet such as Napster, Veoh has created and maintains a proprietary

16   peer-to-peer ("p2p") network, which it has dubbed "Veohnet."  Veoh uses the

17   Veohnet p2p service to facilitate the distribution of high quality copies of infringing

18   content over the Internet and to enable Veoh to exploit its members' computers to

19   engage in acts of copyright infringement.

20      20.   Veoh has also created and distributes for free different versions of client

21   software (called "VeohTV" and "Veoh Player").  Veoh encourages the public to

22   become "members" of Veoh and to download and install Veoh's software on their

23   personal computers.  Once a Veoh member has installed Veoh's software on his or

24   her computer, the member's computer becomes part of Veohnet p2p network, and it

25   can be use used to facilitate the reproduction, distribution and display of infringing

26   content over the Internet.  Veoh's software provides Veoh members with the means

27   to download permanent copies of videos directly from Veoh.com to their computers

28   (or to handheld video players, such as iPods) with the click of a mouse.  Veoh's

1  software also enables the "sharing" and "downloading" of copies of videos that are

2  stored on the computers of other Veoh members who are part of Veoh's p2p

3  network.  Veoh's client software also enables and encourages Veoh's members to

4  download for free to their computers permanent copies of videos that are displayed

5  on third party websites, including websites such as YouTube whose terms of service

6  expressly prohibit making permanent copies.  Once a Veoh member has used

7  Veoh's client software to download a permanent copy of video from a third party

8  website to his or her computer, the member can then use the Veoh client software to

9  upload the video to Veoh.com, where it can be viewed by the public over the

10 Internet.

11      21.  Members who upload videos to Veoh's server are rewarded with a

12 variety of free services that make it easy to further reproduce, display, distribute and

13 to profit from the video without regard to whether it is an infringing copy, and in

14 disregard of the rights of copyright owners.  Among its other free services, Veoh

15 reformats or "transcodes" videos into a number of popular video formats, Veoh

16 enables "posting" of copies of videos to popular websites (which copies prominently

17 display Veoh's logo thereby using UMG's copyrighted content to advertise Veoh's

18 service without UMG's consent), and Veoh even gives members the option of

19 renting or selling downloads of videos through Veoh.com.

20      22.  By offering thousands of infringing works for free viewing and

21 downloading, and by providing sophisticated tools that enable the reproduction and

22 dissemination of video over the Internet, the Veoh.com website has been able to

23 attract millions of unique visitors each month.  Veoh directly profits from its mass

24 infringement by, among other things, selling targeted advertisements that reflect

25 what content (including infringing content) Veoh's members are viewing, and by

26 sharing in revenues when members use Veoh's services to rent or sell videos.

27

28

23.    Veoh engages in direct infringement and indirect infringement of Plaintiffs' copyrights.  By way of example only, Veoh has engaged in the following activities in furtherance of its direct and indirect infringement:

a)    Reproduced (*i.e.*, made permanent copies of) audiovisual works containing thousands of Plaintiffs' copyrighted works on servers that Veoh owns or controls;

b)    "Transcoded" each infringing audiovisual work uploaded to Veoh into commonly used video formats to facilitate further reproduction, display, and distribution and downloading;

c)    Distributed and publicly performed infringing copies of audiovisual works uploaded onto Veoh's servers to their users on demand;

d)    Provided the public with one-click downloads of audiovisual works that are displayed on Veoh.com, including free permanent downloads of infringing works on Veoh.com;

e)    Induced and enabled Veoh members to upload copies of videos without the authorization of the copyright owner, including videos copied from third party websites without authorization of the website or the copyright owner (and often in violation of the third party website's terms of use);

f)    Created and maintained Veoh's p2p Veohnet network, which enables Veoh to use its members computers to aid in the copying and distribution of audiovisual works, including infringing works;

g)    Created and distributed Veoh's client software, which Veoh knows is being used to infringe copyrights;

h)    Failed to use its right and ability to filter or screen for copyright infringement;

FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT AGAINST VEOH NETWORKS, INC., ET AL.

1900077

i)  Encouraged Veoh members to index each audiovisual work by category and by user-generated "tags" or keywords to increase a work's searchability and exposure;

j)  Enabled users to perform complex searches for audiovisual content by specifying desired categories, time periods, keywords and/or tags, and return search queries with both text and thumbnail pictures;

k)  Allowed users to filter search results by "most popular," "most recent," "top rated," "most discussed," "top favorite," and "run length";

l)  Provided users with anonymity to upload, view, download, copy and/or further distribute audiovisual works;

m)  For each video that a viewer watches, generated a selection of "related" videos – which regularly includes copyrighted works – for users to consider while watching the video;

n)  Allowed users to "rate" audiovisual works and made this data available to all users;

o)  Provided users with data such as a video's "rating," how many times the video has been viewed, and how many times it has been downloaded, and allowed users to post and read comments about particular videos;

p)  Allowed users to "Embed this Video" in other websites or to add videos to blogs with the "Add to Blog" function; such embedded videos are presented with a "Veoh" watermark;

24.   Taken together, the foregoing acts indicate Veoh's ability and intent to facilitate, encourage, and profit from the mass unauthorized exploitation of copyrighted content, including Plaintiffs' Copyrighted Sound Recordings and Copyrighted Musical Compositions.

25.   Veoh currently provides several methods by which a Veoh user can easily view, permanently copy, and/or share unauthorized reproductions of music

videos.  Any member of the public can, for example, visit Veoh.com where thousands of infringing works are available for immediate viewing, downloading and other forms of "sharing."  To take but one example, a person looking for a music video featuring the music of the popular UMG recording artist, Fergie need only enter "Fergie" into Veoh.com's search box.  As seen in Exhibit B, Veoh supplies a list of available Fergie videos (including many infringing copies of music videos featuring UMGR's copyright sound recordings) that are available to be viewed from Veoh.com, download or otherwise "shared" by clicking on any of the buttons Veoh prominently displays.  When a user searches on "Fergie," Veoh also displays targeted advertisements based on the search term "Fergie," for example advertising for cell phone "ringtones" featuring Fergie's music.  The user can then view any video appearing in the search results, for example to view the Fergie video for the song "Fergalicious," with one mouse click mouse.  See Exhibit C.  With one more mouse click, the Veoh member can also download a permanent copy of the video to his or her computer.  Veoh supplies statistics about how often each work has been used without the permission of the copyright owner, for example, this one copy of the Fergalicious video, which is clearly marked in the bottom left-hand corner as a copyrighted video, has been viewed 872 times and downloaded 200 times.

26.    Veoh also allows its users to view, copy, and share copyrighted works through Veoh's software, VeohTV and Veoh Player.  As seen in Exhibit D, any member of the public can download Veoh's software for free.  As with the infamous Napster software, Veoh's software makes Veoh's members computer part of a peer-to-peer network used to facilitate "sharing" media files over the Internet.  VeohTV software also includes search functionality that searches for videos not only on Veoh.com, but relevant videos that can be found on third party websites.  *See* Exhibit E.  VeohTV software is designed so that the videos – including videos on

1   third party sites – can be viewed or downloaded using the Veoh software. *See*

2   Exhibit F.

3       27.   To encourage and enable even further dissemination of infringing copies

4   across the Internet, Veoh supplies its members with a number of other tools,

5   including a button to "Share Video," that is, email a link to the infringing video or

6   "embed" a link to the video in another webpage. Veoh also provides buttons to

7   "post" links of the video to other popular websites including Digg, Facebook,

8   del.icio.us, and StumbleUpon. Veoh's distribution of videos on many third party

9   websites is done to drive more traffic to Veoh.com thereby increasing Veoh's

10  popularity and profitability.

11      28.   As Defendants know, should know, and/or with reasonable diligence

12  could ascertain, many of the audiovisual works on Veoh's website contain

13  copyrighted material, including the Copyrighted Sound Recordings and the

14  Copyrighted Musical Compositions. These works often embody popular songs or

15  "hits" performed by prominent recording artists. Many are synchronized with

16  expensive, professionally-made videos, and may include titles, credits, or other

17  indicia that make apparent the source of the recordings. It is widely known and

18  understood that such sound recordings and compositions are protected by copyright.

19      29.   Defendants and their users did not receive any license, authorization,

20  permission, or consent to use the Copyrighted Sound Recordings or the Copyrighted

21  Musical Compositions. Instead, in violation of Plaintiffs' rights under copyright

22  law, Defendants have willfully, intentionally, and purposefully reproduced, adapted,

23  distributed, and publicly performed the Copyrighted Sound Recordings and the

24  Copyrighted Musical Compositions, and/or knowingly facilitated, enabled, induced,

25  and materially contributed to infringing uses thereof, and/or refused to exercise their

26  ability to control or supervise infringing uses thereof from which Defendants

27  financially benefit, including by earning revenue from selling advertising keyed to

28  the content of the work selected for viewing, and from the overall increase in user

1    traffic and commercial value of its business and property arising from the "draw" of

2    infringing Copyrighted Sound Recordings and Copyrighted Musical Compositions.

3    Further, Defendants have continued to willfully infringe Plaintiffs' rights even after

4    Plaintiffs have notified them that their use of Plaintiffs' copyrighted materials

5    violates Plaintiffs' rights under copyright.  In these ways, among others, Defendants

6    have infringed Plaintiffs' copyrights and rights under copyright in the Copyrighted

7    Sound Recordings and the Copyrighted Musical Compositions.

8        30.    Veoh's infringement has been directly facilitated and actively

9    encouraged by the actions of its investors.  Throughout its history, Veoh has relied

10   heavily on the contributions of a small number of well-heeled investors to provide

11   the necessary funding to allow Veoh to operate and expand its infringing business.

12   Without these funds, Veoh would have been unable to continue its infringing

13   operations.  Starting in 2005, Veoh obtained a substantial investment from Shelter

14   Capital, which allowed it to fund its basic operations including paying for hardware,

15   software, and employees to develop its infringing service.  To protect its investment

16   and ensure that Veoh operated in the manner it desired, Shelter Capital sought and

17   obtained two seats on Veoh's Board of Directors as a condition of its investment.

18   Through its seats on Veoh's Board of Directors, Shelter Capital obtained and

19   exercised substantial control over Veoh's operations, including decisions regarding

20   key staffing and senior executive employment and decisions about content to be

21   offered by Veoh and whether or not Veoh would employ the necessary filters to

22   block copyrighted content from being uploaded to the Veoh website.

23       31.    Subsequently, in early 2006, Veoh required a substantial infusion of

24   cash in order to allow it to continue as a business.  Much of this capital was

25   provided through an additional investment by Shelter Capital, as well as new

26   investments by Spark Capital and Tornante.  As with Shelter Capital's initial

27   investment, this further investment by Shelter Capital, Spark Capital and Tornante

28   provided critical funding necessary for Veoh to continue its infringing operations.

1  All three of these investors sought and obtained seats on Veoh's Board of Directors

2  as a condition of their investments.  Indeed, these three investors obtained three of

3  the five seats on Veoh's Board of Directors, thus obtaining full control of Veoh's

4  Board and of Veoh's operations.  These investors used this control to make

5  decisions regarding the selection and hiring of employees, including the CEO of

6  Veoh, as well as decisions about which content would continue to be offered on

7  Veoh and which would not.  For example, these investors exercised their control to

8  remove adult content, but did not use their control over Veoh to remove copyrighted

9  content, including Plaintiffs Copyrighted Sound Recordings and Copyrighted

10  Musical Compositions.  Instead, these investors decided to continue Veoh's

11  infringing operations in order to continue to attract users and advertising dollars to

12  Veoh, and increase the value of their financial interests in Veoh.

13        32.   In 2007, Veoh still again required a sizable infusion of capital to

14  continue its operations.  More than $25 million was collectively provided by Shelter

15  Capital, Spark Capital, Tornante, among other investors.  Once again, Shelter

16  Capital, Spark Capital, and Tornante used their sizable investments to obtain board

17  seats and otherwise obtain and maintain operational control over all of Veoh's

18  operations.  These investors controlled all critical decisions regarding the content

19  available on Veoh, including whether and how Veoh might implement any

20  technology to identify and filter copyrighted content to prevent infringement on

21  Veoh's site.  Further, these investors evaluated and approved Veoh's launch of its

22  VeohTV software client which facilitated further infringement.  These investors, in

23  using their control over Veoh's activities to protect and enhance the value of their

24  investment, controlled decisions over how to monetize Veoh's business, including

25  its substantial use of infringing content.  The investors' control over Veoh was so

26  pervasive and dominant that the in person meetings of the Board of Directors were

27  not even held at Veoh's corporate offices, they were held at the offices of Shelter

28  Capital.

FIRST AMENDED COMPLAINT FOR COPYRIGHT
INFRINGEMENT AGAINST VEOH NETWORKS, INC.,
ET AL.

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT

## [Against Defendant Veoh Networks, Inc.]

33.   Plaintiffs incorporate herein by this reference each and every averment contained in paragraphs 1 through 32, inclusive.

34.   Through their conduct averred herein, Veoh has infringed Plaintiffs' copyrights in the Copyrighted Sound Recordings and the Copyrighted Musical Compositions by reproducing, adapting, distributing, and/or publicly performing audiovisual works embodying the copyrighted material without authorization in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501.

35.   Each infringement by Veoh in and to the Copyrighted Sound Recordings or the Copyrighted Musical Compositions constitutes a separate and distinct act of infringement.

36.   Veoh's acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiffs.

37.   As a direct and proximate result of the infringements by Veoh, Plaintiffs are entitled to damages and Veoh's profits in amounts to be proven at trial which are not currently ascertainable.  If necessary, Plaintiffs will seek leave to amend this complaint to state the full amount of such damages and profits when such amounts have been ascertained.

38.   Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

39.   Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

40.   As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and

1    irreparable injury, for which there is no adequate remedy at law.  Plaintiffs are

2    informed and believe and on that basis aver that unless enjoined and restrained by

3    this Court, Veoh will continue to infringe Plaintiffs' rights in the Copyrighted Sound

4    Recordings and the Copyrighted Musical Compositions.  Plaintiffs are entitled to

5    preliminary and permanent injunctive relief.

6                                          **COUNT II**

7              **CONTRIBUTORY COPYRIGHT INFRINGEMENT**

8                              **[Against All Defendants]**

9          41.   Plaintiffs incorporate herein by this reference each and every averment

10   contained in paragraphs 1 through 32, inclusive.

11         42.   Defendants have and continue to knowingly and systematically

12   materially contribute to, intentionally induce, and/or cause unauthorized

13   reproductions, adaptations, distributions, and/or public performances of the

14   Copyrighted Sound Recordings and the Copyrighted Musical Compositions and thus

15   to the infringement of Plaintiffs' copyrights and exclusive rights under copyright in

16   the Copyrighted Sound Recordings and the Copyrighted Musical Compositions.

17         43.   Each infringement by Defendants in and to the Copyrighted Sound

18   Recordings or the Copyrighted Musical Compositions constitutes a separate and

19   distinct act of infringement.

20         44.   Defendants' acts of infringement were willful, in disregard of and with

21   indifference to the rights of Plaintiffs.

22         45.   As a direct and proximate result of the infringements by Defendants,

23   Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at

24   trial which are not currently ascertainable.  If necessary, Plaintiffs will seek leave to

25   amend this complaint to state the full amount of such damages and profits when

26   such amounts have been ascertained.

27

28

46.   Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

47.   Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

48.   As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiffs are informed and believe and on that basis aver that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Sound Recordings and the Copyrighted Musical Compositions.  Plaintiffs are entitled to preliminary and permanent injunctive relief.

## COUNT III

## VICARIOUS COPYRIGHT INFRINGEMENT

### [Against All Defendants]

49.   Plaintiffs incorporate herein by this reference each and every averment contained in paragraphs 1 through 32, inclusive.

50.   Defendants have the right and ability to supervise and/or control the infringing conduct of Veoh's users.  Defendants have refused to exercise such supervision and/or control over Veoh's users to the extent required under law.  As a direct and proximate result of such refusal, Defendants' users and Veoh have infringed Plaintiffs' copyrights in the Copyrighted Sound Recordings and the Copyrighted Musical Compositions, including by reproducing, adapting, distributing, and publicly performing such Copyrighted Sound Recordings and the Copyrighted Musical Compositions.

51.   Defendants derive a direct financial benefit, including but not limited to from advertising revenue and from the increased user traffic and increase in value of

1  Defendants' business arising from the "draw" of infringing Copyrighted Sound
2  Recordings and Copyrighted Musical Compositions.

3      52.  Each infringement by Defendants in and to the Copyrighted Sound
4  Recordings or the Copyrighted Musical Compositions constitutes a separate and
5  distinct act of infringement.

6      53.  Defendants' acts of infringement were willful, in disregard of and with
7  indifference to the rights of Plaintiffs.

8      54.  As a direct and proximate result of the infringements by Defendants,
9  Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at
10  trial which are not currently ascertainable.  If necessary, Plaintiffs will seek leave to
11  amend this complaint to state the full amount of such damages and profits when
12  such amounts have been ascertained.

13      55.  Alternatively, Plaintiffs are entitled to the maximum statutory damages
14  in the amount of $150,000 with respect to each work infringed, or for such other
15  amounts as may be proper under 17 U.S.C. § 504(c).

16      56.  Plaintiffs further are entitled to their attorneys' fees and full costs
17  pursuant to 17 U.S.C. § 505.

18      57.  As a direct and proximate result of the foregoing acts and conduct,
19  Plaintiffs have sustained and will continue to sustain substantial, immediate, and
20  irreparable injury, for which there is no adequate remedy at law.  Plaintiffs are
21  informed and believe and on that basis aver that unless enjoined and restrained by
22  this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted
23  Sound Recordings and the Copyrighted Musical Compositions.  Plaintiffs are
24  entitled to preliminary and permanent injunctive relief.

25
26
27
28

**COUNT IV**

**INDUCING COPYRIGHT INFRINGEMENT**

**[Against All Defendants]**

58.   Plaintiffs incorporate herein by this reference each and every averment contained in paragraphs 1 through 32, inclusive.

59.   Defendants have designed, distributed, and made available technology and devices with the object and intent of promoting their use to infringe copyrighted materials.  As a direct and proximate result of such inducement, Veoh and its users have infringed Plaintiffs' copyrights in the Copyrighted Sound Recordings and the Copyrighted Musical Compositions, including by reproducing, adapting, distributing, and publicly performing such Copyrighted Sound Recordings and the Copyrighted Musical Compositions.

60.   Each infringement by Veoh and its users in and to the Copyrighted Sound Recordings or the Copyrighted Musical Compositions – including, without limitation, each act of inducing a third party to infringe one of the Copyrighted Sound Recordings or Copyrighted Musical Compositions – constitutes a separate and distinct act of infringement.

61.   Defendants' acts of infringement and inducement of infringement were willful, in disregard of and with indifference to the rights of Plaintiffs.

62.   As a direct and proximate result of the acts of infringement and inducement of infringement by Defendants, Plaintiffs are entitled to damages and Defendants profits in amounts to be proven at trial which are not currently ascertainable.  If necessary, Plaintiffs will seek leave to amend this complaint to state the full amount of such damages and profits when such amounts have been ascertained.

63.   Alternatively, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each act of inducing another to infringe

1 one of the Copyrighted Sound Recordings or Copyrighted Musical Compositions, or

2 for such other amounts as may be proper under 17 U.S.C. § 504(c).

3      64.   Plaintiffs further are entitled to their attorneys' fees and full costs

4 pursuant to 17 U.S.C. § 505.

5      65.   As a direct and proximate result of the foregoing acts and conduct,

6 Plaintiffs have sustained and will continue to sustain substantial, immediate, and

7 irreparable injury, for which there is no adequate remedy at law.  Plaintiffs are

8 informed and believe and on that basis aver that unless enjoined and restrained by

9 this Court, Defendants will continue to infringe and induce infringement of

10 Plaintiffs' rights in the Copyrighted Sound Recordings and the Copyrighted Musical

11 Compositions.  Plaintiffs are entitled to preliminary and permanent injunctive relief.

12                    **PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

14 them, jointly and severally, as follows:

15      1.   For Plaintiffs' damages and Defendants' profits in such amount as may

16 be found; alternatively, for maximum statutory damages in the amount of $150,000

17 with respect to each copyrighted work infringed either directly or indirectly, and

18 with respect to each act of inducing another to infringe one of the copyrighted

19 works, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

20      2.   For a preliminary and a permanent injunction enjoining Defendants, and

21 each of them, and their respective agents, servants, employees, officers, successors,

22 licensees and assigns, and all persons acting in concert or participation with each or

23 any of them, from:  (i) directly or indirectly reproducing, adapting, distributing,

24 publicly performing (in the case of Plaintiffs' sound recordings, by means of a

25 digital audio transmission), or otherwise infringing in any manner any of Plaintiffs'

26 copyrights (whether now in existence or hereafter created), including, without

27 limitation, the copyrights listed on Exhibit A; and (ii) causing, contributing to,

28 inducing, enabling, facilitating, or participating in the infringement of any of

1  Plaintiffs' copyrights, including, without limitation, the copyrights listed on

2  Exhibit A.

3          3.      For prejudgment interest according to law.

4          4.      For Plaintiffs' attorneys' fees and full costs incurred in this action.

5          5.      For such other and further relief as the Court may deem just and proper.

6

7  Dated:  August 26, 2008                    Respectfully submitted,

8                                             IRELL & MANELLA LLP
                                              Steven A. Marenberg
9                                             Elliot Brown
                                              Brian Ledahl
10                                            Benjamin Glatstein

11

12
                                             By: _____
13                                               Steven A. Marenberg

14
                                             Attorneys for Plaintiffs
15                                           UMG RECORDINGS, INC.;
                                             UNIVERSAL MUSIC CORP.; SONGS
16                                           OF UNIVERSAL, INC.; UNIVERSAL-
                                             POLYGRAM INTERNATIONAL
17                                           PUBLISHING, INC.; RONDOR MUSIC
                                             INTERNATIONAL, INC.; UNIVERSAL
18                                           MUSIC – MGB NA LLC; UNIVERSAL
                                             MUSIC – Z TUNES LLC; and
19                                           UNIVERSAL MUSIC – MBG MUSIC
                                             PUBLISHING LTD.

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby request a trial by jury on all issues triable by jury.

3

Dated:  August 26, 2008

Respectfully submitted,

4

IRELL & MANELLA LLP
Steven A. Marenberg

5

Elliot Brown
Brian Ledahl

6

Benjamin Glatstein

7

8

9

By: _____
     Steven A. Marenberg

10

Attorneys for Plaintiffs

11

UMG RECORDINGS, INC.;
UNIVERSAL MUSIC CORP.; SONGS

12

OF UNIVERSAL, INC.; UNIVERSAL-
POLYGRAM INTERNATIONAL

13

PUBLISHING, INC.; RONDOR MUSIC
INTERNATIONAL, INC.; UNIVERSAL

14

MUSIC – MGB NA LLC; UNIVERSAL
MUSIC – Z TUNES LLC; and

15

UNIVERSAL MUSIC – MBG MUSIC
PUBLISHING LTD.

16

17

18

19

20

21

22

23

24

25

26

27

28