UMG Recordings, Inc. et al v. Veoh Networks, Inc. et al Doc. 107



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

UMG RECORDINGS, INC., ET AL., )
)
PLAINTIFFS, )
)
VS. ) CASE CV 07-5744-AHM(AJWX)
)
)
VEOH NETWORKS, INC., ET AL., ) LOS ANGELES, CALIFORNIA
) AUGUST 25, 2008
) (10:07 A.M. TO 11:17 A.M.)
DEFENDANTS. )
_______________________________)

HEARING
BEFORE THE HONORABLE ANDREW J. WISTRICH
UNITED STATES MAGISTRATE JUDGE

APPEARANCES: SEE NEXT PAGE

COURT REPORTER: RECORDED; COURT SMART

COURTROOM DEPUTY: YSELA BENAVIDES

TRANSCRIBER: DOROTHY BABYKIN
COURTHOUSE SERVICES
1218 VALEBROOK PLACE
GLENDORA, CALIFORNIA 91740
(626) 963-0566

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Dockets.Justia.com

APPEARANCES: (CONTINUED)

FOR THE PLAINTIFF: IRELL & MANELLA
BY: BRIAN D. LEDAHL
STEVEN A. MARENBERG
ANJULI MC REYNOLDS
ATTORNEYS AT LAW
1800 AVENUE OF THE STARS
SUITE 900
LOS ANGELES, CALIFORNIA 90067

FOR THE DEFENDANTS: WINSTON & STRAWN
BY: JENNIFER A. GOLINVEAUX
ATTORNEY AT LAW
101 CALIFORNIA STREET
39TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

WINSTON & STRAWN
BY: REBECCA LAWLOR CALKINS
ATTORNEY AT LAW
333 SOUTH HOPE STREET
38TH FLOOR
LOS ANGELES, CALIFORNIA 90071

WINSTON & STRAWN
BY: THOMAS P. LANE
ATTORNEY AT LAW
200 PARK AVENUE
NEW YORK, NEW YORK 10166

# I N D E X

CASE NO. CV 07-5744-AHM(AJWX) AUGUST 25, 2008

PROCEEDINGS: PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES FROM VEOH
DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES AND FOR PRODUCTION OF DOCUMENTS FROM PLAINTIFFS.

LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 25, 2008; 10:07 A.M.

THE CLERK: THIS DISTRICT COURT IS NOW IN SESSION. THE HONORABLE ANDREW J. WISTRICH PRESIDING.

PLEASE BE SEATED.

CALLING CV 07-5744-AHM(AJWX), UMG RECORDINGS, INCORPORATED, ET AL. VERSUS VEOH NETWORKS, INCORPORATED.

COUNSEL, PLEASE MAKE YOUR APPEARANCES.

MR. LEDAHL: GOOD MORNING, YOUR HONOR.

BRIAN LEDAHL, STEVE MARENBERG AND ANJULI MC REYNOLDS OF IRELL & MANELLA ON BEHALF OF THE PLAINTIFFS.

MR. LANE: GOOD MORNING, YOUR HONOR.

THOMAS LANE, REBECCA CALKINS AND JENNIFER GOLINVEAUX ON BEHALF OF THE DEFENDANT.

THE COURT: GOOD MORNING.

SO, I WANT AN UPDATE, FIRST OF ALL, ON WHETHER ANYTHING HAS HAPPENED WITH RESPECT TO THIS MOTION, JUST WHERE THE CASE STANDS GENERALLY.

MAYBE I SHOULD ASK PLAINTIFF'S COUNSEL TO BEGIN WITH THAT.

MR. LEDAHL: THANK YOU, YOUR HONOR.

I THINK UNTIL FRIDAY I WOULD SAY THERE WERE NO DEVELOPMENTS FURTHER. ON FRIDAY WE RECEIVED THE FIRST ADDITIONAL PRODUCTION OF ANY MATERIAL BEYOND WHAT'S REFERENCED IN THE PAPERS THAT WERE SUBMITTED TO THE COURT. WE RECEIVED APPROXIMATELY 23,000 ADDITIONAL PAGES OF

MATERIAL. OF THAT I WOULD SAY SLIGHTLY MORE THAN 21,000 PAGES WERE ONE-LINE, EMAIL MESSAGES ESSENTIALLY THAT APPEARED TO BE AUTOMATICALLY GENERATED WHEN A VIDEO IS REMOVED FROM THE SYSTEM BY MEANS OF -- OR AS A RESULT OF A FILTERING TECHNOLOGY.

THE COURT: THAT'S PART OF WHAT YOU ASKED FOR --

MR. LEDAHL: THERE'S NO QUESTION THIS IS MATERIAL WE'VE ASKED FOR, YOUR HONOR. I WANT TO GIVE THE COURT SOME CONTEXT ON WHAT WE'VE RECEIVED. AS I SAID, THAT MADE UP THE OVERWHELMING MAJORITY OF THE ADDITIONAL MATERIALS.

THERE WERE ONE OR TWO OTHER CATEGORIES. THERE APPEARS TO BE, AS FAR AS WE CAN TELL -- AND, AGAIN, WE ONLY RECEIVED THIS MATERIAL ON FRIDAY. SO, WE'VE HAD A FAIRLY LIMITED OPPORTUNITY TO REVIEW IT. IT'S REGRETTABLE THAT WE DIDN'T GET IT EARLIER.

WE'VE RECEIVED WHAT APPEARS TO BE A FORM OF THE WIKI SITE OR WIKI DOCUMENT THAT'S REFERENCED IN OUR SUPPLEMENTAL BRIEF. IT'S A LITTLE UNCLEAR BECAUSE IT APPEARS THAT IT WAS PRODUCED IN A SOFTWARE CODE FORMAT AS THOUGH IT WERE PRINTED OUT SOFTWARE CODE RATHER THAN A VERSION THAT, FOR EXAMPLE, AN EMPLOYEE MIGHT SEE WHEN LOOKING AT THESE DOCUMENTS IN THEIR EMPLOYMENT. BUT AS BEST WE CAN TELL, THAT'S WHAT IT IS.

AND, THEN, WE ALSO RECEIVED A COUPLE OF OTHER DOCUMENTS, ONE OF WHICH APPEARS TO BE A CONTRACT BETWEEN VEOH

AND AUDIBLE MAGIC, A FILTERING VENDOR THAT THEY HAVE RECENTLY ENGAGED THE SERVICES OF.

AND, FINALLY, THERE'S A DOCUMENT THAT APPEARS TO BE A LISTING OF FILES, ALTHOUGH IT'S UNCLEAR WHAT FILES IT PURPORTS TO BE LISTING.

THAT'S IT. WE STILL DON'T HAVE WHAT I WOULD CHARACTERIZE AS ANY INTERNAL EMAIL COMMUNICATIONS OR OTHER INTERNAL COMMUNICATIONS OF ANY KIND -- MEMORANDA, REPORTS, EMAIL COMMUNICATIONS BETWEEN VEOH EMPLOYEES, EMAIL COMMUNICATIONS BETWEEN VEOH EMPLOYEES AND OUTSIDE PERSONNEL. NONE OF THAT MATERIAL HAS BEEN PRODUCED.

WE STILL DON'T HAVE THE VIDEOS THEMSELVES THAT ARE THE SUBJECT OF THE CASE. WE STILL DON'T HAVE THE SPREADSHEET OR DATABASE LISTING ALL THE VIDEOS IN THEIR METADATA THAT'S REFERENCED AS SOMETHING VEOH PURPORTS TO BE WILLING TO PRODUCE.

AND, OBVIOUSLY, THERE ARE MANY OTHER CATEGORIES THAT WE'VE DISCUSSED WE DON'T HAVE DOCUMENTS -- ABOUT ADVERTISING. WE DON'T HAVE DOCUMENTS ABOUT FINANCES. WE DON'T HAVE DOCUMENTS ABOUT REVENUES. WE DON'T HAVE DOCUMENTS ABOUT ANY OF THOSE MATERIALS.

OTHER THAN THAT I DON'T KNOW THAT THERE'S A LOT TO UPDATE THE COURT ON. THAT'S REALLY THE ADDITIONAL STATE OF PLAY AT THIS STAGE.

THE COURT: ALL RIGHT.

MS. GOLINVEAUX: GOOD MORNING, YOUR HONOR.

AS YOU SAW FROM THE PAPERS, AFTER EXTENSIVE MEET AND CONFERS REGARDING PLAINTIFF'S DISCOVERY REQUESTS, VEOH SENT PLAINTIFF'S COUNSEL A LETTER MAKING OFFERS SPECIFICALLY ADDRESSING SOME OF THEIR REQUESTS THAT WERE IN DISPUTE. WE NEVER HEARD BACK IN RESPONSE TO THAT LETTER. INSTEAD, PLAINTIFFS FILED THIS MOTION TO COMPEL.

SINCE THEY DID SO WE DECIDED THERE WASN'T A REASON TO WAIT TO PRODUCE ANYMORE TO DECIDE WHETHER THEY AGREED WITH OUR COMPROMISES. AND WE'VE CONTINUED TO PRODUCE. THAT'S PART OF WHAT THEY RECEIVED LAST WEEK.

OVER THE NEXT --

THE COURT: WELL, WHAT ABOUT THE VIDEOS AND THE SPREADSHEET DESCRIBING THE VIDEOS?

MS. GOLINVEAUX: YES, YOUR HONOR. WE MADE VERY SPECIFIC PROPOSALS TO PLAINTIFFS, BOTH DURING THE MEET AND CONFERS AND IN MY LETTER, EXPLAINING THAT VEOH IS ABLE TO PRODUCE TO THEM A SPREADSHEET THAT'S TAKEN -- EXTRACTED FROM THE DATABASE --

THE COURT: HAVE YOU DONE THAT YET?

MS. GOLINVEAUX: WELL, THEY HAD -- THEY SAY THAT THAT'S NOT WHAT THEY WANT. THEY SAY THEY WANT COPIES OF SPECIFIC VIDEOS --

THE COURT: ALL RIGHT. SO, YOU'RE --

MS. GOLINVEAUX: -- RATHER THAN JUST GIVING US

ACCESS --

THE COURT: ALL RIGHT. YOU'RE SAYING THEY REFUSED THE SPREADSHEET.

MS. GOLINVEAUX: THEY HAVEN'T REFUSED A SPREADSHEET. BUT THE DISPUTE IS WHAT WOULD BE SUFFICIENT TO GIVE THEM. WHAT WE'VE OFFERED IS THE SPREADSHEET WHICH WILL PROVIDE THE METADATA AS WELL AS LINKS TO THE COPIES OF ALL THE CANCELLED VIDEOS ON VEOH SERVERS.

AND THEY SAY, NO, THAT'S NOT SUFFICIENT. THEY WANT VEOH TO GO TO THE EXPENSE OF MAKING SEPARATE COPIES OF THOSE VIDEOS FOR THEM AS WELL. AND THAT'S ONE OF THE ISSUES IN DISPUTE.

THE COURT: HOW MANY VIDEOS ARE THERE?

MS. GOLINVEAUX: YOUR HONOR, MY UNDERSTANDING IS AT LEAST SEVERAL MILLION.

THE COURT: SEVERAL MILLIONS IN TOTAL ON YOUR CLIENT'S SYSTEM OR POTENTIALLY INFRINGING?

MS. GOLINVEAUX: NO, YOUR HONOR. TOTAL IN OUR SYSTEM.

THE COURT: OKAY. GO AHEAD.

MS. GOLINVEAUX: SO, IN ADDITION TO THE PRODUCTION THAT MR. LEDAHL DESCRIBED RECEIVING ON FRIDAY, WE PLAN TO SEND OUT ANOTHER ROUGHLY HUNDRED THOUSAND PAGES OVER THE NEXT WEEK OR TWO, WHICH IS ADDITIONAL CORRESPONDENCE REFERRING TO COPYRIGHT INFRINGEMENT AS THEY REQUESTED.

HE TALKED ABOUT THE WIKI DOCUMENT THAT THEY RECEIVED. THE WIKI DOCUMENTS ARE FAIRLY COMPREHENSIVE DOCUMENTS. IT'S AN INTERACTIVE TOOL THAT THE ENGINEERS USE. AND THEY CONTAIN THEMSELVES THE PRODUCT SPECIFICATIONS FOR EACH OF THE VERSIONS OF THE CLIENT'S SOFTWARE AND, ALSO, FOR THE WEB SITE. AND THEY ALSO CONTAIN RELEASE NOTES, WHENEVER A NEW VERSION OF THE SOFTWARE IS RELEASED.

THERE ARE THREE DIFFERENT VERSIONS OF THE WIKI. AND WE'RE PRODUCING THOSE IN RESPONSE TO MANY OF THE REQUESTS FOR TECHNICAL DOCUMENTS ABOUT PRODUCT SPECIFICATIONS.

THEY'VE SO FAR RECEIVED THE FIRST -- THERE'S AN OLDER VERSION THAT'S NO LONGER USED, WHICH THEY'VE NOW RECEIVED. AND WE'RE TRYING TO FIGURE OUT THE BEST WAY TO DOWNLOAD -- THESE ARE VERY EXTENSIVE INTERACTIVE DOCUMENTS, AND WE'RE COMING UP WITH THE BEST WAY TO DOWNLOAD AND PRODUCE THE OTHER TWO WIKIS TO THEM. AND I EXPECT WE CAN DO THAT IN THE NEXT SEVERAL WEEKS.

THE COURT: ALL RIGHT. SO THAT GIVES ME THE UPDATE.

ARE YOU PREPARED TO TALK ABOUT YOUR MOTION? ARE YOU GOING TO BE HANDLING THAT?

MS. GOLINVEAUX: YOUR HONOR, MR. LANE AND MS. CALKINS ARE GOING TO BE TALKING ABOUT OUR MOTION.

THE COURT: ALL RIGHT.

LET ME DISCUSS THAT ONE FIRST.

WHO WOULD LIKE TO GO TO THE LECTERN?
MS. CALKINS: GOOD MORNING, YOUR HONOR.
THE COURT: GOOD MORNING.
SO, AS I READ THROUGH THIS OVER THE WEEKEND I BECAME A LITTLE CONFUSED. THERE WAS ONE PLACE WHERE I THINK YOU SAID NOT ONE DOCUMENT HAS BEEN PRODUCED. ANOTHER PLACE WHERE YOU SAID 1.4 MILLION PAGES HAVE BEEN PRODUCED. AND WE HAVEN'T EVEN BEEN ABLE TO LOOK AT THEM.
WHAT'S THE CORRECT --
MS. CALKINS: YES, YOUR HONOR.
I ADDRESSED THAT IN A FOOTNOTE IN THE RESPONSIVE -- OR IN THE REPLY BRIEF.
THE MOTION WAS WELL UNDERWAY BECAUSE WE HAD REACHED SUCH AN IMPASSE WITH PLAINTIFFS ON THE DISCOVERY ISSUES. AND THEY PRODUCED 1.4 MILLION PAGES OF DOCUMENTS A FEW DAYS BEFORE WE FILED THIS MOTION. AND THAT'S JUST A SENTENCE THAT WAS LEFT OVER. AND I APOLOGIZE.
THE COURT: ALL RIGHT. WELL, NOW YOU'VE GONE THROUGH THEIR PRODUCTION.
MS. CALKINS: WE HAVE GONE THROUGH THE MAJORITY OF THEIR PRODUCTION. YES, YOUR HONOR.
THE COURT: OKAY. MY FIRST INSTINCT WHEN I LOOKED THROUGH ALL OF THIS AND ASSUMED THAT THEY HAD PRODUCED SOMETHING WAS THAT REALLY YOU SHOULD COMPLETE THE PROCESS OF GOING THROUGH THEIR PRODUCTION FIRST BEFORE YOU COMPLAIN AND

SEEK RELIEF.

DOESN'T THAT MAKE SENSE?

MS. CALKINS: THERE ARE CERTAIN ISSUES THAT STAND INDEPENDENT FROM THE DOCUMENT PRODUCTION. FOR EXAMPLE, IN PLAINTIFF'S WRITTEN RESPONSES THEY HAVE MADE NO SECRET OF THE FACT THAT THEY WILL NOT SEARCH ALL EMPLOYEES' FILES FOR DOCUMENTS. AND THEY WILL NOT DO A COMPREHENSIVE SEARCH.

THE FEDERAL RULES CONTEMPLATE THAT A DILIGENT SEARCH OCCUR. THEIR WRITTEN RESPONSES SPECIFICALLY DO NOT AGREE TO DO THAT. INSTEAD, THEY AGREE --

THE COURT: OKAY. I AGREE WITH YOU THAT I DON'T REALLY LIKE THE WAY THAT THEY FRAMED IT BECAUSE IT SEEMS TO EXCLUDE THE POSSIBILITY OF, FOR EXAMPLE, TALKING TO PEOPLE AND ASKING THEM WHERE RELEVANT DOCUMENTS MIGHT BE FOUND. SO, I'D RATHER THEY PHRASE THAT DIFFERENTLY.

BUT THEY DON'T REALLY HAVE TO LOOK AT EVERY PIECE OF PAPER IN THE COMPANY, DO THEY? THEY DON'T HAVE TO TALK TO EVERY SINGLE EMPLOYEE IN THE SHIPPING DEPARTMENT OR WHATEVER, DO THEY?

MS. CALKINS: I AGREE WITH YOUR HONOR ON THAT. SO, THAT'S WHY IN THE RESPONSES THEY AGREED TO PRODUCE CERTAIN DOCUMENTS FROM CERTAIN EMPLOYEES WHO THEY WILL IDENTIFY USING CERTAIN SEARCH TERMS THAT THEY WILL IDENTIFY.

BUT WHEN WE HAD OUR MEET AND CONFER, MR. LEDAHL AT THE END OF THE SECOND DAY AGREED TO PRODUCE SUCH A LIST. A

FEW DAYS LATER HE INEXPLICABLY REFUSED TO PRODUCE SUCH A LIST.

AND WITHOUT THAT -- AGAINST THE BACKDROP THAT THEY ARE NOT SEARCHING EVERYONE'S FILE, THAT'S FINE, YOUR HONOR. I AGREE WITH YOU.

WE NEED TO KNOW WHOSE FILES THEY ARE SEARCHING. THERE'S NO WAY TO TEST THE QUALITY OF THE PRODUCTION THAT WAS MADE. I DON'T KNOW IF THEY -- THEY HAVE A -- FOR EXAMPLE, THEY HAVE A LEGAL ASSISTANT THAT IS LISTED AS ONE OF THE PERSONS WITH KNOWLEDGE OF MOST FACTS OF THE CASE IN THEIR INTERROGATORIES. I MEAN, WHERE ARE THESE FILES FROM. HAVE THEY TAPPED THE RELEVANT INDIVIDUALS --

THE COURT: I THINK IT'S AN EXCELLENT POINT. BUT DIDN'T YOU ARGUE THAT THIS IS WORK PRODUCT?

MS. CALKINS: EXCUSE ME?

THE COURT: DIDN'T YOU ARGUE THAT THIS IS WORK PRODUCT?

MS. CALKINS: YOU MEAN WITH --

THE COURT: WHEN THEY --

MS. CALKINS: -- SEARCH TERMS.

THE COURT: WHEN THEY ASKED THAT YOU DISCLOSE THIS INFORMATION.

MS. CALKINS: WELL, YOUR HONOR, THAT'S AN INTERESTING POINT. VEOH AND UMG, WHO HAS MADE NO SECRET, AGAIN, OF HOW MANY EMPLOYEES THEY HAVE, ARE DISSIMILARLY

SITUATED. THAT'S THE FIRST POINT.

AND SECOND, VEOH IN ITS WRITTEN RESPONSES DID NOT PROVIDE A HEDGED RESPONSE, SAYING WE WOULD PROVIDE SOME SEARCH -- SEARCH SOME EMPLOYEES' FILES THAT WE WILL IDENTIFY.

WE SAY WE WILL PRODUCE DOCUMENTS SUBSEQUENT TO OUR DILIGENT SEARCH, WHICH IS EXACTLY WHAT THE FEDERAL RULES CONTEMPLATE. UMG DID NOT MAKE THAT REPRESENTATION --

THE COURT: WELL, I'M JUST -- OKAY. ASSUME FOR A MOMENT THE SITUATION IN THE COMPANIES IS NOT EXACTLY THE SAME. YOU'RE SAYING THAT THAT AFFECTS WHETHER THIS INFORMATION IS WORK PRODUCT OR NOT?

MS. CALKINS: NO, I'M SAYING THAT IN THEIR WRITTEN RESPONSES THEY COMMITTED TO PRODUCING THIS SPECIFIC INFORMATION --

THE COURT: SO, YOU'RE SAYING IT'S WORK PRODUCT, BUT THEY WAIVED IT. YOU, HOWEVER, DID NOT WAIVE IT IN YOUR RESPONSES.

IS THAT YOUR POSITION?

MS. CALKINS: YOU COULD SAY THAT, YOUR HONOR.

THE COURT: IS THAT YOUR POSITION?

MS. CALKINS: I'M NOT SURE THAT IT'S WORK PRODUCT. I'M SAYING IF THEY HAD AGREED --

THE COURT: OKAY. I'M NOT SURE IT IS EITHER. BUT I THOUGHT THAT YOU WERE TAKING THE POSITION THAT THIS INFORMATION, CUSTODIAN SEARCH TERMS, WAS ATTORNEY WORK

PRODUCT.

MS. CALKINS: IT --

THE COURT: AM I WRONG ABOUT THAT? YOU KNOW, I THOUGHT YOU ARGUED THIS IN YOUR BRIEF. MAYBE IT WAS ONE OF THE OTHER LAWYERS RESPONSIBLE FOR THAT. I DON'T MEAN TO BE UNFAIR TO YOU. BUT IS THAT -- IS THIS WORK PRODUCT OR NOT?

MS. CALKINS: IF IT WOULD PLEASE YOUR HONOR, IF I COULD ASK -- I THINK MS. GOLINVEAUX HAS MORE COMPLETE UNDERSTANDING ON THAT ISSUE. SHE WAS HANDLING THAT PARTICULAR ISSUE. IF SHE COULD ADDRESS THAT POINT IT WOULD --

THE COURT: ALL RIGHT. AND WHAT I WANT TO KNOW IS WHAT IS THE POSITION THAT VEOH IS TAKING. IS THIS INFORMATION WORK PRODUCT OR IS IT NOT?

MS. GOLINVEAUX: YOUR HONOR, WOULD YOU MIND IF I ADDRESSED THAT?

THE COURT: THAT'S FINE. WHOEVER CAN TELL ME WHAT VEOH'S POSITION OVERALL IS.

MS. GOLINVEAUX: YOUR HONOR, AS MS. CALKINS EXPLAINED, THE PARTIES TOOK FUNDAMENTALLY DIFFERENT APPROACHES TO RESPONDING TO DISCOVERY. VEOH AGREED TO PRODUCE DOCUMENTS IN RESPONSE TO DILIGENT SEARCHES IN RESPONSE TO MOST OF PLAINTIFF'S REQUESTS.

PLAINTIFFS ON THE OTHER HAND DID NOT AGREE TO PRODUCE RESPONSIVE DOCUMENTS. THEY SAID THEY WOULD ONLY

PRODUCE DOCUMENTS IN RESPONSE TO SPECIFIED KEY TERMS THAT THEY WOULD PROVIDE TO VEOH ON SPECIFIC CUSTODIANS THAT THEY WOULD PROVIDE TO VEOH, WHICH THEY HAVEN'T DONE.

NOW, THEY CAME TO ME IN MEET AND CONFER AND SAID, WELL, BEFORE --

THE COURT: I JUST -- I UNDERSTAND THE HISTORY, BUT I JUST WANT TO KNOW WHAT IS THE POSITION OF VEOH IN THIS CASE. ARE CUSTODIANS AND SEARCH TERMS ATTORNEY WORK PRODUCT OR NOT?

MS. GOLINVEAUX: SO, YOUR HONOR, WHEN THEY ASKED ME DURING MEET AND CONFER WHETHER WE WOULD PROVIDE SEARCH TERMS AND SPECIFIC CUSTODIANS, AND I SAID IF THERE ARE SPECIFIC REQUESTS THAT THAT WOULD RESOLVE OUR DISPUTES OVER, THEN, VEOH WOULD CONSIDER DOING THAT.

BUT THEY DIDN'T IDENTIFY ANY SPECIFIC REQUESTS. THEY WANTED US TO IDENTIFY CUSTODIANS AND SEARCH TERMS ACROSS THE BOARD FOR SEARCHING.

AND OUR POSITION IS THAT THAT IS WORK PRODUCT, AND WE DO NOT -- VEOH HAS NO OBLIGATION TO PROVIDE THAT INFORMATION. IF IT WILL HELP RESOLVE SPECIFIC REQUESTS, WE'RE CERTAINLY WILLING TO CONSIDER IT. BUT WE HAVE NO OBLIGATION TO. AND THAT THAT INFORMATION WILL BE WORK PRODUCT.

THE COURT: WELL, LET'S SAY THAT A CUSTODIAN OF RECORDS DEPOSITION IS BEING TAKEN, AND ONE OF THE ISSUES THAT

IS ALWAYS ASKED ABOUT IS WHAT SORTS OF DOCUMENTS EXIST AT THE COMPANY, HOW ARE THEY KEPT, WHO KEEPS THEM, AND WHAT KIND OF A SEARCH WAS DONE.

ARE YOU SAYING THAT ASKING THE CUSTODIAN, WELL, DID YOU LOOK THROUGH THIS PERSON'S RECORDS AND THAT PERSON'S RECORDS, DID YOU GO TO THIS DEPARTMENT -- THAT'S ALL WORK PRODUCT? THAT'S ALL FORECLOSED FROM INQUIRY?

MS. GOLINVEAUX: NO, YOUR HONOR. I THINK IF THEY WERE ASKING THOSE QUESTIONS OF A FACT WITNESS, THEN, I THINK THEY WOULD BE ENTITLED TO ANSWERS TO THOSE QUESTIONS.

BUT IF THEY'RE ASKING VEOH'S LAWYERS TO IDENTIFY A RESPONSE TO EACH DOCUMENT REQUEST, WHO THEY TALK TO AND WHAT SEARCH TERMS THEY USED TO IDENTIFY POSSIBLY RESPONSIVE DOCUMENTS I THINK THAT IS WORK PRODUCT.

THE COURT: ALL RIGHT. I THINK -- I REALLY HAVE A PROBLEM WITH THAT POSITION. BUT REGARDLESS OF THAT, IT SEEMS TO ME THAT MAYBE THE WORLD HAS MOVED ON A LITTLE BIT. AND WE NOW HAVE E-DISCOVERY. AND THE STRATEGY OF IDENTIFYING CUSTODIANS AND USING SEARCH TERMS IS A VERY PRACTICAL WAY TO DO THIS QUICKLY AND LESS EXPENSIVELY.

IN THE PRIOR CASES WHICH I KNOW YOU'RE FAMILIAR WITH INVOLVING UMG, I DID NOT RELISH GETTING INVOLVED IN THE ISSUE OF SPECIFICALLY WHICH CUSTODIAN SHOULD BE SEARCHED MYSELF. HOWEVER, I THINK IT'S VERY HELPFUL FOR THE PARTIES TO EXCHANGE THAT INFORMATION. IT'S VERY PRACTICAL.

AND, THEN, YOU CAN BOTH SAY, WELL, WHAT ABOUT JOE SMITH. YOU KNOW, IT NOW TURNS OUT HE'S IMPORTANT. YOU DIDN'T SEARCH HIM. WOULD YOU GO BACK AND DO THAT. OR USE A DIFFERENT ROUTE IN THE SEARCHES BECAUSE THAT WILL PICK UP THINGS THAT WE THINK YOU'D MISS OTHERWISE.

THIS IS HELPFUL TO BOTH SIDES, AND IT PREVENTS DOING PRODUCTIONS OVER AND OVER AGAIN.

SO, WOULD YOU HAVE ANY OBJECTION TO EXCHANGING THAT INFORMATION WITH THEM?

MS. GOLINVEAUX: YOUR HONOR, THE ONLY CAVEAT I WOULD ADD IS I THINK PROBABLY THE MAJORITY OF PLAINTIFF'S REQUESTS ARE NOT NECESSARILY AMENABLE TO LOCATING DOCUMENTS BY WAY OF SEARCH TERMS OF SPECIFIC CUSTODIANS.

FOR EXAMPLE, VERY IMPORTANT DOCUMENTS, LIKE THE WIKI OR CHANGE LOGS, THOSE AREN'T THE KINDS OF DOCUMENTS WE'RE GOING TO FIND BY DOING KEY WORD SEARCHES. WE'RE GOING TO FIND THEM BY DOING DILIGENT INTERVIEWS OF THE RIGHT PEOPLE IN THE COMPANY AND IDENTIFYING THE DOCUMENTS. AND THAT WAS THE MAJORITY OF WHAT WILL BE PRODUCED.

THE COURT: THAT MAY BE TRUE, BUT DO YOU HAVE A PROBLEM WITH GIVING THEM THE CUSTODIANS AND THE SEARCH TERMS IF I REQUIRE THEM TO DO THE SAME THING. SO YOU CAN BOTH HAVE A BETTER UNDERSTANDING OF WHAT THE SEARCH HAS BEEN THAT YOU'VE EACH CONDUCTED.

MS. GOLINVEAUX: NO, YOUR HONOR. AND I EXPLAINED

THAT TO MR. LEDAHL --

THE COURT: ALL RIGHT.

MS. GOLINVEAUX: -- DURING MEET AND CONFER. IF THERE WERE SPECIFIC REQUESTS FOR WHICH THAT WOULD BE HELPFUL. I DON'T THINK IT'S HELPFUL ACROSS THE BOARD FOR ALL THE REQUESTS, BUT THEY WOULD BE HAPPY TO CONSIDER THAT.

THE COURT: ALL RIGHT.

HOW CAN WE MEANINGFULLY -- I'M SORRY. I HAVE TO GO BACK TO YOUR COLLEAGUE NOW.

WOULDN'T IT MAKE SENSE FOR ME TO DENY YOUR MOTION WITHOUT PREJUDICE TO YOUR RENEWING SUCH PARTS OF IT AS REALLY NEED TO BE ADDRESSED AFTER YOU'VE COMPLETED YOUR REVIEW OF THE PLAINTIFF'S PRODUCTION?

MS. CALKINS: WELL, YOUR HONOR, I WOULD ASK THAT IN ORDER TO -- IN THE INTERESTS OF STREAMLINING THE PROCESS, UMG HAS PRODUCED, AS WE KNOW, 1.4 MILLION PAGES OF DOCUMENTS FROM CUSTODIANS USING SEARCH TERMS THAT ARE UNKNOWN TO US AT THIS TIME.

WE HAVE DOCUMENT REQUESTS AND INTERROGATORY REQUESTS. IF THEY COULD IDENTIFY TO WHICH DOCUMENT REQUEST A PARTICULAR DOCUMENT OR CATEGORY OR BATES RANGE APPLIES TO. OTHERWISE, WITHOUT THE SEARCH TERMS, WITHOUT THE CUSTODIANS WE ARE LEFT TO GUESS AS TO THE COMPLETENESS OR QUALITY OF THE RESPONSIVE DOCUMENTS PRODUCED.

THE COURT: WELL, WHY DON'T YOU ASSUME THAT I'M

GOING TO REQUIRE BOTH SIDES TO EXCHANGE CUSTODIANS AND SEARCH TERMS ACROSS THE BOARD SO THAT EVERYONE WILL HAVE THAT INFORMATION. SO, LET'S TAKE THAT AS A GIVEN.

MS. CALKINS: OKAY.

THE COURT: NOW, WOULDN'T IT MAKE SENSE FOR ME TO DENY YOUR MOTION WITHOUT PREJUDICE AND LET YOU BRING SUCH PARTS OF IT AS ARE STILL RELEVANT AFTER YOU'VE REVIEWED THEIR PRODUCTION.

MS. CALKINS: I WOULD ASK THAT YOUR HONOR -- I THINK IN MY OPINION IF WE CONTINUED THE HEARING PERHAPS AND IN THE MEANTIME IN ADDITION TO THE SEARCH TERMS, UMG WOULD PROVIDE US --

THE COURT: HERE'S THE PROBLEM I HAVE WITH THAT. I THOUGHT ABOUT THAT BECAUSE I DON'T WANT TO INCONVENIENCE YOU OR CAUSE DELAY.

THIS JOINT STIPULATION EXCEEDS 300 PAGES. IT'S GOT HUNDREDS OF REQUESTS IN THERE. AND IT WAS MY SENSE THAT MANY OF THEM PROBABLY HAVE BEEN LARGELY SATISFIED AT THIS POINT. PERHAPS NOT ALL. IT'S VERY CUMBERSOME FOR ME TO DEAL WITH SOMETHING LIKE THIS.

SO, I THINK REALLY IF YOU REDID IT IN LIGHT OF WHAT YOU'VE LEARNED NOW THAT YOU'VE REVIEWED THEIR PRODUCTION, WE CAN FOCUS ON WHAT REALLY NEEDS TO BE DECIDED WITHOUT HAVING TO WADE THROUGH THIS VERY LENGTHY PIECE OF PAPER.

MS. CALKINS: I WOULD JUST ASK THEN ANOTHER WAY TO

EXPEDITE IT IN ADDITION TO THAT, YOUR HONOR, WOULD BE FOR UMG TO PRODUCE A LIST OR IDENTIFY WHICH OTHER DOCUMENTS CORRELATE TO WHICH OF OUR REQUESTS. THAT WOULD BE -- THAT WAY WE CAN AT LEAST UNDERSTAND WHAT THEY HAVE PRODUCED IN RESPONSE TO PARTICULAR REQUESTS. THEY CAN BE CATEGORIZED FOR THAT MATTER.

OTHERWISE, WE'RE LEFT WITH AN EXTREMELY LARGE VOLUME OF DOCUMENTS WITHOUT KNOWING WHERE THEY HAVE DECIDED TO PRODUCE IN RESPONSE TO REQUESTS THEY PREVIOUSLY REFUSED.

WE JUST HAVE NO SENSE FOR WHERE THEY HAVE COMPLIED AND WHAT TO BRING BEFORE YOUR HONOR SUBSEQUENTLY.

THE COURT: WELL, THAT'S NOT VERY HELPFUL TO ME. YOU HAVE NO SENSE OF WHERE THEY'VE COMPLIED AND WHERE THEY HAVEN'T.

MS. CALKINS: WELL --

THE COURT: OTHER THAN HAVING THEM ORGANIZE THE WHOLE PRODUCTION IN THE WAY THAT YOU WOULD FIND MOST CONVENIENT, WHICH PROBABLY IS NOT REALISTIC, WHAT ELSE COULD I DO TO SIMPLIFY THE SITUATION?

MS. CALKINS: NO, YOUR HONOR, PERHAPS THEY COULD JUST IDENTIFY -- FOR EXAMPLE, THIS BATES RANGE RELATES TO VIRAL MARKETING, AND THAT IS OUR PRODUCTION ON VIRAL MARKETING. THAT WAY --

THE COURT: ISN'T THAT A MATTER OF INTERPRETATION IN PART? AND WOULD YOU THEN NECESSARILY AGREE WITH THEIR

CHARACTERIZATION?

MS. CALKINS: WELL, THERE IS A LARGE -- VIRAL MARKETING IS LARGELY UNDISPUTED. THEY HAVE A DIVISION THAT'S DEVOTED TO VIRAL MARKETING. THEY HAVE DOCUMENTS ENTITLED, "VIRAL MARKETING."

FOR THOSE AT A MINIMUM THEY COULD IDENTIFY, YES, THESE ARE -- THIS IS WHERE YOU GO TO LOOK TO SEE -- TO TEST THE QUALITY OF OUR PRODUCTION IN THIS PARTICULAR CATEGORY.

AND I DON'T THINK THAT WOULD BE UNREASONABLE. THEY HAD TO ORGANIZE AND COLLECT AND GATHER THE DOCUMENTS IN A SIMILAR FASHION. AND THEY KNOW WHERE THEY WENT AND WHICH DOCUMENTS THEY PRODUCED TO WHICH --

THE COURT: WELL, THAT'S NOT THE WAY THEY DESCRIBE WHAT THEY DID, IS IT? DIDN'T THEY SAY THEY USED SEARCH TERMS -- WHICH WE DON'T KNOW WHAT THOSE TERMS ARE YET. AND THEY SEARCHED ON THOSE. AND WHEN THEY FOUND HITS, THEY PRODUCED THEM.

MS. CALKINS: WELL, I THINK YOUR HONOR MAKES A GOOD POINT. THEY DON'T DESCRIBE WHAT THEY DID. THEY --

THE COURT: ALL RIGHT. WELL, WE'RE GOING TO HAVE-- WE'LL GET PAST THAT BARRIER.

OKAY. I THINK THE BEST THING, ALTHOUGH I DO IT WITH SOME RELUCTANCE, IS TO DENY YOUR MOTION TO COMPEL WITHOUT PREJUDICE TO YOUR RENEWING SUCH PARTS OF IT AS ARE NECESSARY TO RENEW AFTER YOU'VE COMPLETED YOUR REVIEW OF

THEIR PRODUCTION.

MS. CALKINS: YOUR HONOR, THERE ARE CERTAIN CATEGORIES OF REQUESTS ALSO THAT THEY COMPLETELY REFUSED TO PRODUCE DOCUMENTS IN RESPONSE TO THAT WOULD ALSO BE INDEPENDENT OF -- I APPRECIATE YOUR HONOR'S --

THE COURT: I'M HAPPY TO ADDRESS THAT, BUT I'M NOT GOING TO WADE THROUGH OVER 300 PAGES TRYING TO FIND THEM. AND I'M NOT GOING TO ASK YOU TO TRY TO LIST THEM FOR ME ON THE RECORD.

AND IN RESPONSE TO MOST OF THE REQUESTS -- I MEAN, I THINK IN ONE OF THE CATEGORIES YOU PROVIDED -- I LIKE CATEGORIES, BUT YOURS WERE SO BROAD THAT THEY REALLY WEREN'T MEANINGFUL. YOU KNOW, GROUPINGS OF RELATED REQUESTS. YOU HAVE 50, 60 PAGES OF REQUESTS AND THEN ONE PAGE OF ARGUMENT.

AND THAT REALLY DOES NOT HELP ME IN UNDERSTANDING WHAT YOUR CONCERN IS AND TRYING TO GET A HANDLE ON WHAT I SHOULD OR SHOULDN'T DO.

I'M SURE YOU'LL DO A BETTER JOB WITH THIS NEXT TIME, AND IT WILL BE MORE CONCISE. AND FOCUS THE COURT BETTER ON WHAT'S REALLY AT ISSUE.

THANK YOU.

MS. CALKINS: YOUR HONOR, MAY I JUST ADDRESS ONE MORE THING?

THE COURT: YES.

MS. CALKINS: WE HAVE INTERROGATORIES ALSO THAT ARE

A PART OF THE MOTION TO COMPEL. THEY -- PLAINTIFF REFUSED TO ANSWER 24 OF OUR 18 INTERROGATORIES --

THE COURT: 24 OF YOUR 18?

MS. CALKINS: EXCUSE ME. 18 OF OUR 24.

THE COURT: OKAY.

MS. CALKINS: AND THE REMAINING SIX CONTAINED RESPONSES THAT IN OUR VIEW ARE EXTREMELY DEFICIENT.

MAY WE PROCEED WITH THAT PORTION OF THE --

THE COURT: YOU CAN FILE A SEPARATE MOTION ON THAT.

I WANT YOU TO MAKE THIS -- THIS IS AN UNMANAGEABLE PACKAGE FOR ME OF THIS LENGTH OF THINGS GROUPED IN THESE VERY BROAD, UNHELPFUL CATEGORIES. I'M NOT TRYING TO BE UNKIND, BUT THIS IS REALLY POOR IN TERMS OF PRESENTING IT TO THE COURT.

SO, PLEASE, IF YOU'RE NOT SATISFIED WITH THEIR INTERROGATORY RESPONSES, FILE A MOTION. BUT DO IT IN A SENSIBLE WAY NEXT TIME. OKAY?

MS. CALKINS: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. LET'S TALK ABOUT PLAINTIFFS' MOTION.

MR. LEDAHL: YOUR HONOR, I'M HAPPY TO PROCEED CATEGORY BY CATEGORY IF THE COURT WOULD PREFER. OR IF THERE ARE PARTICULAR AREAS YOU'D LIKE ME TO FOCUS ON, I'M HAPPY TO DO THAT AS WELL.

I THINK BASICALLY ONE OF OUR PRIMARY CONCERNS, AS

WE'VE DISCUSSED TO A DEGREE ALREADY, IS THAT WE'RE ALMOST A YEAR INTO THIS CASE, AND WE STILL HAVE WHAT WE CONSIDER TO BE SEVERELY LACKING PRODUCTION OF DISCOVERY FROM VEOH. AS I MENTIONED EARLIER, WE STILL HAVE NONE OF THEIR INTERNAL COMMUNICATIONS, NONE OF THE EMAIL COMMUNICATIONS -- WHICH WE KNOW FROM EXPERIENCE ARE A SIGNIFICANT SOURCE OF DISCOVERY. THEY REQUIRE A LOT OF TIME FOR US TO REVIEW. THEY'RE IMPORTANT FOR DEPOSITIONS. WE NEED THOSE KINDS OF MATERIALS TO GET THINGS MOVING.

WE APPRECIATE THE COURT'S COMMENTS ABOUT SEARCH TERMS AND CUSTODIANS. WE THINK THAT IS A PRODUCTIVE WAY TO START DISCOVERY MOVING. WE WOULD ASK AS A PRACTICAL MATTER THE COURT PUT THOSE MATTERS ON A PRETTY QUICK TIME SCALE BECAUSE WE THINK IT'S GOING TO BE IMPORTANT TO GET THAT MOVING AS MUCH AS WE CAN.

WE'D CERTAINLY BE HAPPY WITH AN EXCHANGE OF CUSTODIANS AND SEARCH TERMS AS EARLY AS THE END OF THIS WEEK. WE'D LIKE VERY MUCH TO GET THAT PROCESS MOVING.

WE ALSO THING IT WOULD BE IMPORTANT THAT THE PARTIES BE GIVEN A MEANINGFUL DEADLINE BY WHICH TO COMPLETE THE PRODUCTION THAT THEY'RE CONTEMPLATING.

WE RECOGNIZE THERE MAY BE OUTSTANDING DISPUTES THAT REMAIN. BUT AS TO THE CORE OF THE PRODUCTION THAT THE PARTIES ARE GOING TO PROVIDE, WE'D LIKE TO HAVE THAT HAPPEN AS SOON AS POSSIBLE. WE'VE CERTAINLY PROVIDED --

THE COURT: WHAT WOULD YOU SUGGEST AS A DEADLINE?

MR. LEDAHL: WELL, YOUR HONOR, I RECOGNIZE THAT COUNSEL FOR THE DEFENDANTS MAY SEEK MORE TIME, BUT WE'D CERTAINLY BE -- PRACTICALLY SPEAKING, WE'VE COMPLETED OUR CORE PRODUCTION. WE'VE MADE WHAT WE FEEL TO BE A VERY GOOD FAITH AND SIGNIFICANT PRODUCTION. OBVIOUSLY, IT'S VERY SIZEABLE. THERE'S AN AWFUL LOT OF MATERIAL THERE. AND FROM OUR PERSPECTIVE IT'S ALL RESPONSIVE TO THE VERY VOLUMINOUS REQUESTS THAT HAVE BEEN PROPOUNDED.

SO, WE MAY BE THE WRONG ONES TO ASK, BUT I'D LIKE IT AS SOON AS POSSIBLE BECAUSE WE NEED THE MATERIAL TO GET GOING. THREE WEEKS WOULD BE FINE WITH US. I RECOGNIZE THE DEFENDANTS MAY OBJECT TO THAT, BUT THE SOONER THE BETTER.

THE COURT: OKAY.

MR. LEDAHL: I THINK -- THE FIRST ISSUE IN OUR MOTION THE COURT HAS ALREADY ADDRESSED, THE CUSTODIANS AND SEARCH TERMS. AS I MENTIONED, WE'RE HAPPY TO HAVE THAT EXCHANGE GO FORWARD AS SOON AS POSSIBLE. UNLESS THE COURT WANTS TO HEAR MORE ABOUT THAT, I'M HAPPY TO --

THE COURT: ALL RIGHT. LET ME GIVE YOU SOME OF MY TENTATIVE THOUGHTS ON THIS, AND MAYBE THAT WILL --

MR. LEDAHL: CERTAINLY, YOUR HONOR.

THE COURT: -- HELP US FOCUS ON JUST A FEW AREAS WHERE I FEEL I REALLY NEED SOME HELP.

SETTING A DEADLINE FOR COMPLETION OF THE

PRODUCTION. AND SERVICE OF SUPPLEMENTAL RESPONSES AND A PRIVILEGE LOG IS ONE OF THOSE. AND I'VE HEARD YOUR VIEWS ON THAT.

ONE OF THE CATEGORIES DEALS WITH ADVICE OF COUNSEL DOCUMENTS. WHAT I'M INCLINED TO DO IS TO SET A DEADLINE FOR THEM TO MAKE AN ELECTION AND, THEN, HAVE THE PRODUCTION OCCUR PROMPTLY AFTER THAT IF THEY'RE GOING TO BE ELECTING TO RELY ON ADVICE OF COUNSEL.

I TENTATIVELY PENCILED IN ABOUT NOVEMBER 15 FOR THAT DEADLINE. AND SEPTEMBER 30 FOR COMPLETION OF THE PRODUCTIONS. BUT --

MR. LEDAHL: NOVEMBER 15 -- OH, SEPTEMBER 30 FOR THE OTHER PRODUCTION MATERIAL.

THE COURT: SEPTEMBER 30 FOR THE GENERAL PRODUCTION DEADLINE. AND NOVEMBER 15 FOR DEFENDANT TO ELECT WHETHER OR NOT IT'S GOING TO RELY ON ADVICE OF COUNSEL.

I GUESS UMG HAS ALREADY ELECTED STATUTORY DAMAGES?

MR. LEDAHL: THAT'S CORRECT, YOUR HONOR. WE'VE INDICATED WE WILL PURSUE STATUTORY DAMAGES IN THE CASE.

THE COURT: AND WILL NOT BE PURSUING ACTUAL DAMAGES?

MR. LEDAHL: WE WON'T BE PURSUING OUR ACTUAL DAMAGES.

THE COURT: OKAY.

MR. LEDAHL: THAT'S CORRECT.

THE COURT: WHAT ABOUT THIS JUNE 13, 2008 LETTER. THIS RELATES TO --

MR. LEDAHL: WELL, YOUR HONOR, I THINK TWO POINTS ON THAT. FIRST OF ALL, I THINK WE DISAGREE WITH DEFENDANTS' CHARACTERIZATION OF THEIR CLEAR AND SIGNIFICANT COMMITMENT TO PRODUCE SPECIFIC CATEGORIES OF DOCUMENTS. WE'RE ALL VERY SKILLED COUNSEL, AND WE CAN ALL DRAFT CAREFULLY WORDED RESPONSES THAT ARE SOMEWHAT CLEAR OR SEEMINGLY CLEAR BUT PERHAPS MAY NOT BE AS MUCH SO AS ONE WOULD HOPE.

AND, INDEED, OUR HOPE WAS THAT THE USE OF THINGS LIKE SEARCH TERMS AND CUSTODIANS COULD PROVIDE A DEGREE OF SPECIFICITY THAT MIGHT TRAVERSE SOME OF THESE KINDS OF PROBLEMS. QUITE FRANKLY, IT'S BEEN OUR EXPERIENCE IN THE OTHER CASES THAT WE COULD DISPUTE ENDLESSLY WHETHER A PARTICULAR BROAD PHRASING OF A REQUEST FOR ALL DOCUMENTS RELATING TO A PARTICULAR SUBJECT IS REALLY APPROPRIATE AND WHY IT MIGHT NOT BE.

BUT IF WE HAVE A VERY CLEAR SPECIFICITY THAT WE WILL PRODUCE WHATEVER DOCUMENTS WE FIND IN THESE PEOPLE'S FILES THAT HIT ON THESE SEARCH TERMS, THERE'S A CLARITY THAT THAT BRINGS THAT AVOIDS THIS KIND OF LINGUISTIC DISPUTE. IT'S BEEN OUR VIEW FROM THE BEGINNING THAT THAT'S A MUCH MORE PRODUCTIVE WAY TO PROCEED. IT'S A WAY TO AVOID A LOT OF THESE KINDS OF DISPUTES ABOUT HEDGING LANGUAGE AND WHETHER SOMETHING IS CLEAR OR NOT.

IF THE PARTIES CAN AGREE THAT WE'LL PRODUCE THE DOCUMENTS THAT WE FIND IN THIS PERSON'S FILES THAT HIT ON THESE SEARCH TERMS, UNLESS THEY'RE PRIVILEGED OR NON-RESPONSIVE, WHICH HAPPENS, THEN, I THINK WE CAN GET A LONG WAY TO AVOIDING MOST OF THOSE KINDS OF PROBLEMS.

WE DIDN'T FEEL THAT THE COMMITMENTS OFFERED IN THAT JUNE 13TH LETTER WERE SUFFICIENT, INDEED, BECAUSE THEY WERE VAGUE.  MOREOVER WE FOUND THAT, OBVIOUSLY AS WE'VE STATED, THE PRODUCTION WE'VE RECEIVED TO THE EXTENT THAT PURPORTS TO BE REFLECTIVE OF THOSE PROPOSALS IS GROSSLY INSUFFICIENT.

WHAT I UNDERSTOOD COUNSEL TO BE ARGUING EARLIER IS THAT WHAT THEY WERE SEEKING WAS A CONCESSION THAT SIGHT UNSEEN SOME VAGUE ONE-SENTENCE DESCRIPTION OF THEIR PRODUCTION WOULD BE ADEQUATE, AND WE WOULDN'T BE COMING BACK TO THE COURT ABOUT IT.  OBVIOUSLY WE CAN'T DO THAT.

WE'RE HAPPY TO LOOK AT --

THE COURT:  DID YOU RESPOND TO THE LETTER?

MR. LEDAHL:  WELL, WE RESPONDED IN THE SENSE, YOUR HONOR, THAT WE MADE CLEAR IN OUR MOVING PAPERS THAT IT WASN'T SUFFICIENT.

THE COURT:  YOU'VE NEVER SENT A LETTER BACK.  YOU NEVER CALLED AND SAID --

MR. LEDAHL:  YOUR HONOR --

THE COURT: -- THIS ISN'T QUITE SATISFACTORY. HERE'S SOME FINE TUNING THAT NEEDS TO BE DONE.

MR. LEDAHL: LET ME TRY TO BE CLEAR. AND I LOATHE TO SPEND A LOT OF TIME DREDGING THROUGH THE BACK AND FORTH OF A MEET AND CONFER PROCESS. BUT THAT LETTER FOLLOWED A VERY EXTENSIVE AND LENGTHY PROCESS, MULTIPLE CONFERENCE CALLS, IN-PERSON MEETINGS, DISCUSSING WITH COUNSEL FOR VEOH THE VARIOUS DISCOVERY ISSUES. AS THE COURT HAS NOTED, THERE ARE AN AWFUL LOT OF REQUESTS.

WE HAD SOME DIFFICULTIES BECAUSE -- WITH THE SAME ISSUE THE COURT WAS FACED WITH THIS MORNING. WE WERE TOLD THAT WE COULDN'T TALK TO COUNSEL FOR VEOH ABOUT BOTH PARTIES' DISCOVERY AT THE SAME TIME, THE DIFFERENT LAWYERS WOULD HANDLE IT.

AND WHAT WE FOUND TO BE THE CASE WAS SIMILAR TO WHAT THE COURT FOUND, THAT WE WERE HEARING INCONSISTENT POSITIONS ABOUT VEOH'S PRODUCTION VERSUS UMG'S PRODUCTION.

WE MADE VERY CLEAR THAT IT WAS OUR VIEW THAT WE NEEDED A VERY CLEAR STATEMENT AND COMMITMENT OF WHAT WOULD BE PRODUCED. WE FELT THAT THAT WOULD BE ACHIEVED BEST THROUGH A DISCLOSURE OF CUSTODIANS, SEARCH TERMS, A METHODOLOGY THAT WOULD AVOID THIS KIND OF LINGUISTIC BACK AND FORTH.

WHAT WE RECEIVED WAS BASICALLY A REPHRASING OF DISCOVERY RESPONSES. WE'LL PRODUCE BASED ON UNDEFINED DILIGENT SEARCH WHAT WE THINK IS RESPONSIVE IN THIS MANNER.

AND THAT DOESN'T REALLY ANSWER A CONCERN. IT WAS MORE OF THE SAME. AND IT WAS DIRECTLY NOT RESPONSIVE TO WHAT

I HAD MADE VERY CLEAR WAS NECESSARY TO TRY TO RESOLVE THESE ISSUES.

FOR THAT REASON AFTER A COUPLE MONTHS' WORTH OF BACK AND FORTH, IT WAS OUR CONCLUSION THAT THE MEET AND CONFER PROCESS COULD GO ON ETERNALLY, BUT THAT WE HAD BEEN IN THIS CASE FOR WELL OVER NINE MONTHS AND NEEDED TO REACH SOME RESOLUTION AND SOME CLOSURE ON THESE ISSUES TO MOVE FORWARD, TO BE ABLE TO TAKE DEPOSITIONS, TO BE ABLE TO GET TO CLOSURE.

THE COURT: ALL RIGHT. LET'S TURN TO CATEGORY 6, THE VIDEOS.

MR. LEDAHL: YES, YOUR HONOR. WITH RESPECT TO THE VIDEOS I THINK -- THE DISAGREEMENT THAT WE HAVE IS NOT -- AND I THINK THE COURT EXPLORED THIS A LITTLE BIT A FEW MOMENTS AGO. WE DIDN'T REFUSE PRODUCTION OF A SPREADSHEET LISTING THE VIDEOS AND THE DATA ABOUT THEM. INDEED, WE ARE VERY EAGER TO RECEIVE THAT. AND FRANKLY, GIVEN DEFENDANTS' APPARENTLY WILLINGNESS TO PRODUCE IT, WE DON'T UNDERSTAND WHY WE HAVEN'T GOTTEN IT YET.

WHAT I SEEM TO BE HEARING THIS MORNING WAS A POSITION THAT UNLESS WE WERE WILLING TO AGREE THAT WAS ALL WE WOULD GET, THAT THEY WOULDN'T GIVE IT TO US. AND THAT'S NOT VERY WORKABLE.

FRANKLY, THIS IS IMPORTANT DATA, BUT IT'S NOT THE ONLY DATA. THE VIDEOS THEMSELVES ARE OBVIOUSLY VERY IMPORTANT. THEY'RE THE EVIDENCE. THE PLAINTIFFS -- EXCUSE

ME -- THE DEFENDANTS ARE UNDOUBTEDLY GOING TO TRY TO MAKE VARIOUS ARGUMENTS ABOUT WHAT'S IN THIS VIDEO, ET CETERA. WE NEED THE VIDEOS TO ADDRESS THAT.

WE ALSO HAVE AN ISSUE ABOUT PLAINTIFFS -- EXCUSE ME -- PLAINTIFFS NEED TO IDENTIFY WHAT INFRINGING VIDEOS THERE ARE AND DEFENDANTS' REPEATED REQUESTS FOR THAT INFORMATION.

WELL, ONE OF THE THINGS WE NEED TO BE ABLE TO LOOK FOR THE SCOPE OF THE BREADTH OF INFRINGEMENT -- WE'VE OBVIOUSLY IDENTIFIED SPECIFIC EXAMPLES. BUT TO COVER THE FULL BREADTH OF WHAT'S INFRINGING ON THEIR SITE, WHICH IS QUITE SUBSTANTIAL, WE NEED THE VIDEOS. WE NEED TO BE ABLE TO LOOK AT THEM.

WE THINK THAT IT WOULD BE PRACTICALLY SPEAKING VERY BENEFICIAL, FOR EXAMPLE, TO BE ABLE TO RUN AUTOMATED TECHNOLOGY THAT MIGHT BE ABLE TO REVIEW THEM, TO ANALYZE THE VIDEOS, TO HELP US IDENTIFY VIDEOS THAT MIGHT BE OF INTEREST.

WE NEED THE VIDEOS TO DO THAT. WE HAVEN'T -- I'VE MADE THAT CLEAR TO COUNSEL. I'VE MADE CLEAR THAT WE WOULD BE HAPPY TO DISCUSS SOME OF THESE ISSUES, BUT WE NEED TO BE ABLE TO DO THINGS LIKE THAT. AND I'VE RECEIVED NO ASSURANCE THAT ANY PROPOSAL THAT'S BEEN MADE WOULD ADDRESS THOSE.

THE COURT I'M SURE RECALLS THAT WE HAD SOME ISSUES WITH ATTEMPTS TO OBTAIN ACCESS AS OPPOSED TO THE VIDEOS THEMSELVES IN PRIOR CASES. AS THE COURT MIGHT IMAGINE, WE'RE UNDERSTANDABLY WARY AS A RESULT OF THAT EXPERIENCE BECAUSE IT

RESULTS IN US SPENDING A LOT OF EXTRA TIME AND MONEY CHASING DOWN WHAT TURNS OUT TO NOT REALLY BE THE MATERIAL WE NEED.

AND SO, WE NEED TO GET THROUGH THIS ISSUE AS QUICKLY AS WE CAN. WE THINK IT'S A VERY FEASIBLE THING TO DO TO COPY VIDEO FILES, PUT THEM ON HARD DRIVES. MAYBE IT'S A LOT OF HARD DRIVES. BUT PUT THEM ON DRIVES WHERE THEY CAN BE ANALYZED BY PEOPLE WHO HAVE TECHNICAL EXPERTISE IN THAT MANNER.

THE COURT: ALL RIGHT. WHAT ABOUT X, CATEGORY X?

MR. LEDAHL: JUST TO BE CLEAR SINCE THE NUMBERING --

THE COURT: ROMAN NUMERAL X.

MR. LEDAHL: ROMAN NUMERAL X. OKAY.

THE COURT: -- AS YOU GROUP THEM IN YOUR --

MR. LEDAHL: AND I BELIEVE THAT THAT IS THE SEARCH AND TRAFFIC DOCUMENTS. IS THAT --

THE COURT: WELL, LET'S LOOK. IT'S ON PAGE 111, YES, SEARCH AND TRAFFIC DOCUMENTS.

MR. LEDAHL: OKAY. HERE, YOUR HONOR, I THINK THE ISSUE WE HAVE IS THAT DEFENDANTS, AS DEFENDANTS DID IN THE PRIOR CASES, ASSERTED A DEFENSE UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT.

AS THE COURT MAY RECALL, AND AS WE'VE DISCUSSED IN THE PAPERS, THIS DEFENSE IMPLICATES VARIOUS CONDUCT ON THEIR BEHALF, AND IT MAKES CERTAIN FACTUAL PREDICATES THAT THEY

MUST DEMONSTRATE; FOR EXAMPLE, THAT THEY LACK KNOWLEDGE OF THE MATERIAL THAT'S INFRINGING ON THEIR SITE, THAT THEY TAKE REASONABLE STEPS UNDER CERTAIN CIRCUMSTANCES TO REMOVE MATERIAL, THAT THEY DON'T RECEIVE ANY FINANCIAL BENEFIT FROM THE MATERIAL.

IT HAS BEEN OUR EXPERIENCE THAT SITES LIKE VEOH'S OPERATE IN A MANNER THAT DOES EVERYTHING IT CAN TO TRACK WHAT'S ON THE CITE, WHAT USERS ARE LOOKING FOR, WHAT USERS ARE LOOKING AT. BECAUSE THAT'S THEIR BUSINESS. THEIR BUSINESS IS WHAT IS THE CONTENT.

THEIR DEFENSE SUGGESTS, AND THEY WOULD LIKE TO SUGGEST IN LITIGATION ON A SUBSTANTIVE PLANE, THAT THEY HAVE NO IDEA, AND THAT THEY ARE COMPLETELY AGNOSTIC AS TO THE MATERIAL THAT'S ACTUALLY PRESENT ON THE SITE.

WE BELIEVE THAT NOT TO BE TRUE AND, FRANKLY, CONTRARY TO THE BUSINESS MODEL OF A SITE LIKE VEOH, THAT MAKES ITS MONEY FROM ADVERTISING. AND ADVERTISING IS DRIVEN BY THE TRAFFIC, THE VOLUME OF VISITORS THAT COME TO THE SITE. IT'S MUCH LIKE THE NIELSEN RATINGS IN A TELEVISION CONTEXT. IF A PROGRAM IS POPULAR, IT GETS HIGH RATINGS, AND THE NETWORK CAN SELL MORE PRICEY ADVERTISING. THE SUPER BOWL ADS COST MORE THAN ADS ON A PROGRAM THAT NO ONE WATCHES.

WELL, INTERNET ADVERTISING WORKS IN MUCH THE SAME WAY. FOR EXAMPLE, MOST ADVERTISERS ARE PAID ON WHAT'S REFERRED TO AS A CPM OR COST PER MILL, WHICH MEANS THAT FOR

EVERY THOUSAND IMPRESSIONS, EVERY TIME A THOUSAND VISITORS VISIT THAT PARTICULAR PAGE, ANOTHER TICK IS MADE IN THEIR RATE SET IN A PARTICULAR AGREEMENT. MAYBE IT'S A CENT. MAYBE IT'S A DOLLAR. BUT THAT'S WHAT DRIVES THE FINANCIAL BENEFITS.

AND, AGAIN, THE FINANCIAL BENEFIT THAT THE INFRINGER HERE VEOH RECEIVES AS A DIRECT RESULT OF THE INFRINGING CONDUCT IS ANOTHER ASPECT THAT THEY'VE PLACED AT ISSUE AS A RESULT OF THEIR DMCA DEFENSE.

WE BELIEVE IT'S ALSO RELEVANT TO DAMAGES ISSUES POTENTIALLY. BUT IT'S CERTAINLY RELEVANT TO THE FINANCIAL BENEFIT PRONG OF THE DMCA THAT THEY'VE INVOKED.

AND AS A CONSEQUENCE, WE NEED TO LOOK AT THE DOCUMENTS THAT TRACK THIS KIND OF DATA, THAT TRACK THE HITS AND WHERE THE TRAFFIC IS GOING. AND, ALSO, LOOK AT HOW THEY CAN AFFECT THAT. THESE SITES DON'T SIMPLY SIT BACK AND WATCH TO SEE WHAT HAPPENS. THEY'RE VERY ACTIVE IN OUR EXPERIENCE IN MANAGING THE CONTENT TO DRIVE TRAFFIC TO PARTICULAR PLACES. AND THAT'S WHY THEY LOOK AT SEARCHES AND SEARCH ACTIVITY OF THE USERS.

FOR EXAMPLE, WEB SITES OFTEN LOOK AT WHAT ARE THE MOST POPULAR SEARCHES. AND DO WE HAVE VIDEOS THAT ARE RESPONSIVE TO THOSE SEARCHES. SO, IF PEOPLE ARE SEARCHING FOR, FOR EXAMPLE, VIDEOS BY THE ARTIST RIHHANA, A RECORDING ARTIST WHO RECORDS ON UNIVERSAL MUSIC, THAT'S IMPORTANT TO

US. AND KNOWING THAT THEY'RE LOOKING AT THAT DATA AND PAYING ATTENTION TO THAT IS IMPORTANT TO US. AND IT'S IMPORTANT TO THE DEFENSE THAT THEY'VE INVOKED.

THE COURT: OKAY. LET ME HEAR FROM VEOH.

MS. GOLINVEAUX: YOUR HONOR, WOULD YOU LIKE ME TO GO DOWN THE CATEGORIES YOU JUST IDENTIFIED, OR?

THE COURT: WELL, LET ME JUST TELL YOU THAT I'M CONTEMPLATING GRANTING MOST OF THIS. THERE ARE A FEW AREAS WHERE I'M THINKING OF DENYING AT LEAST SOME OF THE REQUESTS. AND THOSE ARE GROUPED UNDER ROMAN NUMERAL VII. AND THERE ARE ONE OR TWO OTHERS THAT ARE SCATTERED AROUND.

MS. GOLINVEAUX: YOUR HONOR, FIRST IF I MIGHT ADDRESS THE COMMUNICATION I SENT TO MR. LEDAHL AND THE LETTER THAT WAS NEVER RESPONDED TO IN ANY FASHION.

HE KEEPS TALKING ABOUT THE CASE HAVING BEEN PENDING FOR NEARLY A YEAR NOW AS IF WE'VE BEEN DELAYING DISCOVERY UNREASONABLY OR SOMETHING. DISCOVERY RESPONSES WERE DUE IN APRIL, AND BOTH SIDES STARTED MEETING AND CONFERRING IN APRIL.

SOON AFTER WE FINISHED OUR MEET AND CONFERS -- AND DURING THOSE MEET AND CONFERS I EXPLAINED TO HIM IF THERE WERE CERTAIN REQUESTS THAT HE THOUGHT IT WOULD BE HELPFUL FOR THEM TO GET SEARCH TERMS OR CUSTODIANS FOR US TO LET ME KNOW.

WHEN THAT FINISHED WE SENT A SUMMARY LETTER THAT I THOUGHT WAS VERY REASONABLE AND OFFERED TO PROVIDE THEM WITH

MOST OF WHAT THEY'RE SEEKING IN THIS MOTION FRANKLY. AND HE NEVER RESPONDED AT ALL.

WHEN WE'RE ON THE PHONE SEVERAL WEEKS LATER, I REMINDED HIM THAT WE WERE WAITING FOR A RESPONSE, AND THAT WE WEREN'T GOING TO GO THROUGH AND REVIEW EMAIL COMMUNICATIONS, A VERY LARGE BODY OF EMAIL COMMUNICATIONS MULTIPLE TIMES SO I WANTED TO MAKE SURE WE HAD COME TO REASONABLE COMPROMISES. AND HE SAID HE UNDERSTOOD THAT WE WERE WAITING FOR A RESPONSE.

BUT WE NEVER GOT A RESPONSE. INSTEAD, THEY FILED THEIR MOTION TO COMPEL I THINK THE DAY AFTER THEY DID THEIR MASSIVE DOCUMENT PRODUCTION. SO, THERE'S BEEN NO EFFORT TO DELAY HERE. WE'VE BEEN TRYING -- WE TRIED TO BE VERY REASONABLE ON THESE --

THE COURT: WELL, THE ONLY THING I WOULD SAY IS I THINK THAT SOME OF WHAT YOU AGREE TO DO IN YOUR LETTER YOU SHOULD HAVE DONE FROM THE VERY BEGINNING. AND I DON'T KNOW WHY YOU'RE STILL WAITING TO DO THAT. I MEAN, THAT'S MY TAKE ON IT.

I KNOW YOU TRIED TO WORK THINGS OUT. YOU DON'T WANT TO DO THING MULTIPLE TIMES. I UNDERSTAND THOSE CONCERNS. BUT SOME OF THIS MATERIAL IS VERY PLAINLY RELEVANT.

WHAT ABOUT THE VIDEOS?

MS. GOLINVEAUX: WELL, YOUR HONOR, WITH THE VIDEOS

THE REASON WE HAVEN'T PROCEEDED TO PRODUCE THE SPREADSHEET IS BECAUSE WHAT THE SPREADSHEET DOES, AND IT'S GOING TO REQUIRE SOME COST ON VEOH'S SIDE TO SET IT UP, BUT IT GIVES THEM ACCESS TO EACH -- NOW, OF COURSE, PLAINTIFFS HAVE ACCESS TO ALL THE VIDEOS THAT ARE CURRENTLY UP ON THE SITE. THEY CAN ACCESS THEM THROUGH THE PUBLIC SITE.

THE COURT: YES.

MS. GOLINVEAUX: WHAT THE SPREADSHEET WOULD DO WOULD GIVE THEM LINKS TO ALL VIDEOS THAT HAVE BEEN UPLOADED INCLUDING THE CANCELLED VIDEOS. SO, THEY COULD ACTUALLY ACCESS THEM BASED ON LINKS TO THE METADATA, INCLUDING THE TITLE AND THE DESCRIPTION OF THE VIDEO.

WE'RE NOT SATISFIED TO PROCEED WITH THE COST OF SETTING THAT UP IF THEY WERE SAYING, NO, THAT'S NOT HOW WE WANT TO RECEIVE THE VIDEOS. WE WANT YOU TO GO TO THE EXPENSE OF ACTUALLY COPYING THEM ON TO SOME KIND OF HARD DRIVES FOR US.

SO, THAT'S WHAT WE'RE WAITING TO RESOLVE. AND MR. LEDAHL SIMPLY NEVER GOT BACK TO ME ON THAT POINT.

THE COURT: ALL RIGHT. WHAT'S THE EXPENSE OF SETTING UP THE SPREADSHEET?

MS. GOLINVEAUX: IT'S A MATTER OF ENGINEERING TIME FOR THE MOST PART.

THE COURT: WHAT'S THE EXPENSE? HOW MUCH WOULD IT COST?

MS. GOLINVEAUX: MY UNDERSTANDING --

THE COURT: YOU'VE JUST TOLD ME IT'S VERY EXPENSIVE. I WANT TO KNOW WHAT THAT MEANS.

MS. GOLINVEAUX: YOUR HONOR, MY BEST UNDERSTANDING IS THAT IT WOULD TAKE AN ENGINEER AT LEAST THREE TO FIVE DAYS DEVOTED TO THIS TO SET IT UP AND TO SUPERVISE IT TO MAKE SURE THAT IT WORKS CORRECTLY.

THE COURT: ONE ENGINEER ONE WEEK?

MS. GOLINVEAUX: CORRECT, YOUR HONOR.

THE COURT: OKAY. ALL RIGHT.

MS. GOLINVEAUX: BUT VEOH HAS OFFERED THIS AS AN OPTION TO PLAINTIFFS.

THE COURT: WHAT ABOUT PRODUCING THE VIDEOS ON HARD DRIVES?

MS. GOLINVEAUX: PRODUCING THE VIDEOS ON HARD DRIVES, YOUR HONOR, WE SUBMITTED A DECLARATION THAT DETAILED THE EXPENSE. AND IT'S ROUGHLY FOR THE STORAGE MEDIA THAT WOULD BE INVOLVED VEOH'S BEST ESTIMATE WAS AT ROUGHLY HALF A MILLION DOLLARS. AND FOR THE ENGINEERING TIME INVOLVED IN OVERSEEING AND IMPLEMENTING THE PROJECT IT WOULD BE APPROXIMATELY A MONTH FULL-TIME EMPLOYEE DEVOTED TO THAT.

THE COURT: OKAY.

MS. GOLINVEAUX: AND I THINK MORE IMPORTANTLY, YOUR HONOR, THEY WOULD HAVE ACCESS TO EXACTLY THE VIDEOS THAT RESIDE ON VEOH'S SERVERS THROUGH THE SPREADSHEET ORGANIZED BY

METADATA FOR THOSE VIDEOS. SO, IT'S UNCLEAR WHY THEY THINK THEY NEED COPIES PUT ONTO THE SERVER, PUT ONTO HARD DRIVES AS WELL.

THE COURT: SO, YOU'RE SAYING THEY CAN CLICK ON THE LINK, AND THEY WOULD HAVE THE VIDEO WHICH THEY COULD USE AS EVIDENCE?

MS. GOLINVEAUX: CORRECT, YOUR HONOR.

THE COURT: JUST AS CONVENIENTLY AS IF YOU HAD REPRODUCED IT FOR THEM ON A HARD DRIVE?

MS. GOLINVEAUX: EXACTLY, YOUR HONOR. AND IN FACT -- AND WE GO INTO THIS IN THE MULLER DECLARATION. BUT IT'S ACTUALLY MORE CONVENIENT TO THEM BECAUSE IF WE SIMPLY COPIED THESE ON TO A HARD DRIVE, THE WAY THAT SOME OF THESE VIDEOS ARE STORED THEY'RE NOT GOING TO BE IN A FORM THAT PLAINTIFFS CAN ACTUALLY VIEW. WHEREAS IF THEY ACCESS THEM ON THE SERVERS THROUGH THE LINKS WE WOULD PROVIDE THEY WOULD BE.

THE COURT: OKAY. ANY ISSUES THAT YOU WANT TO ADDRESS APART FROM THAT ONE?

MS. GOLINVEAUX: YOUR HONOR, WITH RESPECT TO THE ADVICE OF COUNSEL ISSUE, PLAINTIFFS HAVE INDICATED THAT THEY PLAN IMMINENTLY TO FILE A MOTION FOR SUMMARY JUDGMENT REGARDING VEOH'S ENTITLEMENT TO DMCA SAFE HARBOR.

VEOH ALSO PLANS TO FILE A MOTION FOR SUMMARY JUDGMENT REGARDING ITS ENTITLEMENT TO DMCA SAFE HARBOR SOONER RATHER THAN LATER AND NOT QUITE AS SOON AS PLAINTIFFS EXPECT

TO HAVE THEIRS READY APPARENTLY.

BUT I THINK IT MIGHT MAKE SENSE TO PUT THE DEADLINE FOR ELECTING ANY ADVICE OF COUNSEL DEFENSE OFF UNTIL AFTER A DECISION ON THOSE MOTIONS FOR SUMMARY JUDGMENT.

THE COURT: WELL, MID NOVEMBER WOULDN'T THAT BE SUFFICIENT?

MS. GOLINVEAUX: IT'S POSSIBLE, YOUR HONOR, DEPENDING ON THE TIMING OF THOSE MOTIONS.

THE COURT: OKAY.

ALL RIGHT. SO, YOU'RE TALKING ABOUT MAYBE MAKING IT A LITTLE BIT LATER BUT NOT DISAGREEING IN PRINCIPLE. OKAY.

ALL RIGHT. I'LL THINK ABOUT THAT.

MS. GOLINVEAUX: OKAY. AND YOUR HONOR HAD PROPOSED A SEPTEMBER 30 DEADLINE FOR ADDITIONAL PRODUCTION. WHAT I WOULD ASK FOR I THINK IS OCTOBER 15 WITH THE UNDERSTANDING THAT WE WILL DO A ROLLING PRODUCTION. SO, AS CATEGORIES OF DOCUMENTS ARE READY WE'LL SEND THEM OVER. WE WON'T WAIT TILL OCTOBER 15 TO PRODUCE EVERYTHING TO PLAINTIFFS.

THE COURT: WELL, MY CONCERN IS WE HAVE A DISCOVERY CUTOFF. WE'D LIKE TO BE ABLE TO KEEP TO THAT SCHEDULE. I ANTICIPATE THE POSSIBILITY THAT THERE COULD BE MORE ISSUES ABOUT WHAT WAS OR WASN'T PRODUCED AFTER THE PRODUCTIONS ARE COMPLETE. AND WE REALLY NEED TO GET THAT GOING.

MS. GOLINVEAUX: YOUR HONOR, I AGREE, AND I REALLY

DON'T HAVE A PROBLEM WITH THAT DEADLINE EXCEPT FOR EMAIL COMMUNICATIONS. BECAUSE COMING OUT OF THIS HEARING IT SOUNDS LIKE THE PARTIES WILL NEED TO EXCHANGE KEY WORDS AND CUSTODIANS. AND MY CONCERN IS THAT WE'RE AT THE END OF AUGUST, AND WE'LL NEED SOME TIME TO EXCHANGE THE CUSTODIANS AND KEY WORDS AND, THEN, TO REVIEW WHAT WILL MOST LIKELY BE A LARGE QUANTITY OF EMAILS. SO, I'M JUST -- THAT'S THE ONLY PART OF THE PRODUCTION THAT CONCERNS ME WITH SEPTEMBER 30.

THE COURT: OKAY. WELL, I UNDERSTAND YOUR CONCERN.

ALL RIGHT. ANYTHING ELSE?

MS. GOLINVEAUX: YOUR HONOR, YOU MENTIONED CATEGORY X WITH THE SEARCH DOCUMENTS.

THE COURT: MM-HMM.

MS. GOLINVEAUX: AND AS I EXPLAINED TO MR. LEDAHL DURING MEET AND CONFER, WE DON'T NECESSARILY HAVE A PROBLEM WITH PROVIDING PLAINTIFFS SOME DOCUMENTS HERE. THE PROBLEM IS HOW BROADLY THEIR DISCOVERY REQUESTS ARE DRAFTED. THEY'RE NOT AT ALL -- THERE'S BEEN NO EFFORT AT ALL TO TAILOR THOSE TYPES OF DOCUMENTS TO PLAINTIFFS' CONTENT, TO PLAINTIFFS' ARTISTS THAT THEY'RE CLAIMING THAT THEY OWN RIGHTS TO. ANYTHING LIKE THAT.

SO, IF YOU LOOK, FOR EXAMPLE, AT THE FIRST OF THESE REQUESTS:

"ALL DOCUMENTS RELATING TO ACTS BY YOU TO INCREASE THE NUMBER OF VISITORS TO AND/OR USERS

OF VEOH SOFTWARE."

THE PROBLEM FROM A COLLECTION AND REVIEW STANDPOINT IS THAT THAT DOCUMENT REQUEST IS SO BROAD AS TO REALLY BE MEANINGLESS. I WOULDN'T -- WE WOULDN'T KNOW HOW TO BEGIN TO ATTEMPT TO COLLECT ALL THOSE DOCUMENTS.

AND I THINK SOME OF THE OTHER ONES ARE SIMILAR.

"ALL DOCUMENTS RELATING TO SEARCH ENGINE OPTIMIZATION."

THE COURT: WELL, I AGREE THAT THEY'RE BROAD, BUT I'M NOT SUER THEY'RE MEANINGLESS.

DO YOU WANT TO SUGGEST SOME LIMITATIONS THAT MIGHT BE PRACTICAL. AND I CAN HEAR THE REACTION OF PLAINTIFFS' COUNSEL.

MS. GOLINVEAUX: YOUR HONOR, I THINK REQUEST 95 AND REQUEST 96, FOR EXAMPLE, MAY BE GETTING TOWARD SOMETHING THAT'S MORE TAILORED. ALTHOUGH I THINK THEY SHOULD BE LIMITED TO WORKS THAT UMG IS CLAIMING OR ARTISTS WHOSE WORKS UMG IS CLAIMING IN THE CASE AS OPPOSED TO ANY SEARCH TERMS USED ON VEOH.

(PAUSE IN PROCEEDINGS.)

THE COURT: NEXT.

MS. GOLINVEAUX: YOUR HONOR, THOSE ARE THE ISSUES YOU HAD IDENTIFIED.

THE COURT: OKAY.

MS. GOLINVEAUX: THE OTHER POINT I WOULD MAKE IS

THAT IN RESPONSE TO SOME OF THESE CATEGORIES; FOR EXAMPLE, CATEGORY NUMBER 8 WITH RESPECT TO FILTERING AND MONITORING -- I'M SORRY, YOUR HONOR -- CATEGORY NUMBER 9 WITH RESPECT TO FEATURES OF VEOH'S SITE.

THE COURT: UH-HUH.

MS. GOLINVEAUX: THE WAY PLAINTIFFS HAVE DRAFTED THESE FOR "ALL DOCUMENTS RELATING TO" TO NUMEROUS FEATURES AND REGARDING HOW VEOH'S TECHNOLOGY WORKS, PLAINTIFFS HAVE DEFINED "RELATING TO" EXTREMELY BROADLY. THEY'VE DEFINED IT AS HAVING ANY CONNECTION, EITHER DIRECT OR INDIRECT, TO THE REQUESTED DOCUMENTS.

AND I THINK AS A PRACTICAL MATTER SOME OF THESE WE CAN PROVIDE PLAINTIFFS WHAT THEY'RE LOOKING FOR BY PROVIDING SOME OF THESE MASTER DOCUMENTS, LIKE THE WIKI, THE SPREADSHEET THAT WOULD HAVE ALL THE METADATA. BUT TO FURTHER REQUIRE VEOH TO SEARCH FOR ANY DOCUMENTS "RELATING TO" IS OVERBROAD AND OVERBURDENSOME.

THE COURT: ALL RIGHT. SO, HOW WOULD YOU SUGGEST I REWRITE THAT IF I WERE SO INCLINED?

MS. GOLINVEAUX: WELL, YOUR HONOR, I WOULD SAY WE'VE OFFERED TO PROVIDE DOCUMENTS SUFFICIENT TO DESCRIBE MANY OF THESE FEATURES OR SUFFICIENT TO DESCRIBE VEOH'S TECHNOLOGY IN THE DIFFERENT FASHIONS THEY REQUESTED, WHICH I THINK IS A MORE REASONABLE WAY TO FASHION THESE THAN "ALL DOCUMENTS RELATING," EITHER INDIRECT OR DIRECTLY.

THE COURT: ALL RIGHT. IF I WERE INCLINED TO REWRITE THE REQUEST, HOW SHOULD I REWRITE IT?

MS. GOLINVEAUX: DOCUMENTS SUFFICIENT TO FOR A NUMBER OF THESE.

THE COURT: ALL RIGHT. WHEN YOU SAY A NUMBER OF THESE, WHICH ONES?

MS. GOLINVEAUX: SO, LOOKING AT SECTION 9 ON PAGE 99, FOR EXAMPLE.

"DOCUMENTS SUFFICIENT TO DESCRIBE THE PROVIDING OF USERS OF VEOH SOFTWARE THE ABILITY TO POST LINKS."

THAT'S ONE OF THE FEATURES THEY WANT INFORMATION ABOUT.

SAME FOR THE NEXT ONE:

"DOCUMENTS SUFFICIENT TO DESCRIBE THE PROVIDING OF USERS OF VEOH SOFTWARE THE ABILITY" --

THE COURT: ALL RIGHT. NOW -- I MEAN, HERE'S A CONCERN ABOUT THAT. YOU PRODUCE THINGS THAT DESCRIBE HOW THIS WORKS GENERALLY. BUT BECAUSE THOSE ARE SUFFICIENT YOU DON'T PRODUCE SOMETHING THAT SAYS "WE NEED TO PROVIDE USERS WITH BETTER ACCESS TO COPYRIGHTED WORKS," SOMETHING THAT'S HARMFUL TO YOU.

HOW DO WE MAKE SURE THAT THOSE KINDS OF THINGS ARE INCLUDED?

MS. GOLINVEAUX: WELL, YOUR HONOR, WITH RESPECT TO

THE WIKI DOCUMENTS WE WERE TALKING ABOUT EARLIER, WHENEVER A NEW FEATURE IS ADDED TO THE SOFTWARE OR A NEW -- OR TO THE WEB SITE, IT'S TRACKED WITHIN THE WIKI AND THERE'S DISCUSSION WITHIN THE WIKI. SO, IT'S THE MOST, I THINK, CENTRAL, ORGANIZED PLACE FOR THEM TO OBTAIN THAT TYPE --

THE COURT: WHAT IF THERE ARE DAMAGING ADMISSIONS BY YOUR CLIENT ELSEWHERE IN DOCUMENTS THAT AREN'T NECESSARY TO DESCRIBE A FEATURE, FOR EXAMPLE, BUT RELATE TO THAT FEATURE?

MS. GOLINVEAUX: WELL, YOUR HONOR, I DON'T THINK WE'D HAVE A PROBLEM IF WE'RE TALKING ABOUT A LIMITED NUMBER OF REQUESTS. BUT WE'RE TALKING ABOUT A VERY LARGE NUMBER OF REQUESTS THAT ARE SO BROAD, AS, FOR EXAMPLE, 24 ON PAGE 101:

"ALL DOCUMENTS RELATING TO PROVIDING USERS OF VEOH SOFTWARE, THE ABILITY TO ADD TAGS OR KEY WORDS TO CONTENT."

SO, TAKING THAT -- YOU MIGHT SAY, WELL, COUNSEL CAN WORK OUT KEY WORDS THEY MIGHT FIND THAT EMAIL. BUT IF WE'RE SUPPOSED TO SEARCH ON WORDS LIKE "KEY WORD" OR "TAG," IT'S JUST SO VAGUE AND AMBIGUOUS THAT I THINK THE QUANTITY OF DOCUMENTS THAT IT'S GOING TO TURN UP IS GOING TO BE UNMANAGEABLE.

THE COURT: ALL RIGHT. SO, HOW DO YOU ADDRESS MY CONCERN? IF I'M INCLINED TO GO DOWN THE ROAD YOU'RE SUGGESTING, HOW DO YOU ADDRESS MY CONCERN?

MS. GOLINVEAUX: WELL, I THINK -- YOUR HONOR, IN THE FIRST INSTANCE IF THE PLAINTIFFS RECEIVED DOCUMENTS SUFFICIENT TO DESCRIBE ALL THESE FEATURES WHICH WE'RE TALKING ABOUT AND THE SPECIFIC DOCUMENTS WE'RE CONTEMPLATING PRODUCING, I THINK THEY MIGHT HAVE A BETTER SENSE OF WHAT SPECIFICALLY THEY'RE LOOKING FOR AS OPPOSED TO THROWING OUT THESE INCREDIBLY BROAD REQUESTS.

THE COURT: I STILL DON'T REALLY HEAR A PRACTICAL SUGGESTION TO MY CONCERN.

MS. GOLINVEAUX: WELL, YOUR HONOR, I THINK THOSE TYPES OF DOCUMENTS WOULD ALLOW THEM TO DRAFT MORE SPECIFIC TAILORED REQUESTS RATHER THAN --

THE COURT: YOU'RE SAYING ANOTHER ROUND OF DISCOVERY.

MS. GOLINVEAUX: AFTER LOOKING AT THE MASTER DOCUMENTS THAT DESCRIBE ALL THESE FEATURES.

THE COURT: OKAY.

ALL RIGHT. ANYTHING ELSE?

MS. GOLINVEAUX: I THINK THOSE ARE THE KEY ISSUES, YOUR HONOR.

THE COURT: OKAY.

MS. GOLINVEAUX: THANKS.

MR. LEDAHL: YOUR HONOR, I WANT TO SPEAK BRIEFLY TO A COUPLE OF THE ISSUES. I THINK WITH RESPECT TO THE COURT'S PROPOSAL OF PRODUCTION AND AN EXCHANGE OF DOCUMENTS,

SEPTEMBER 30TH SOUNDS TO US LIKE A WORKABLE DATE. OBVIOUSLY, WE'D LIKE IT AS SOON AS POSSIBLE, BUT I UNDERSTAND THE BALANCING OF THOSE INTERESTS.

I WOULD SUGGEST THAT IT MIGHT BE USEFUL TO HAVE A MUCH SOONER SPECIFIC DATE FOR EXCHANGE OF INFORMATION ABOUT CUSTODIANS AND SEARCH TERMS IN ADVANCE OF THAT. BECAUSE I THINK THAT'S SOMETHING THAT WE SHOULD ADDRESS SOONER --

THE COURT: WHAT DO YOU THINK WOULD BE A REALISTIC DATE FOR THAT?

MR. LEDAHL: WE'D BE PREPARED TO MAKE THAT EXCHANGE TOMORROW, BUT THE END OF THE WEEK SEEMS LIKE A GOOD TIME. WE'D LIKE IT AS SOON AS POSSIBLE OBVIOUSLY.

SEPARATELY, YOUR HONOR RAISED THE ISSUE ABOUT DISCLOSURE OF WHETHER DEFENDANTS INTEND TO RELY ON ADVICE OF COUNSEL DEFENSE. AND I BELIEVE YOU SUGGESTED A TENTATIVE CONCEPT OF A NOVEMBER 15TH DISCLOSURE DATE. AND I HEARD MS. GOLINVEAUX ARGUE THAT THEY BELIEVE IT SHOULD BE EVEN LATER.

OUR CONCERN IS THAT WHAT WE'RE TALKING ABOUT IS GETTING FAR ENOUGH INTO THE PROCESS THAT -- AS WE DISCUSSED IN OUR PAPERS, WE'RE GOING TO HAVE TO TAKE DEPOSITIONS TWICE, THINGS OF THAT NATURE. THIS IS A COST WE WOULD PREFER NOT TO BEAR OBVIOUSLY. IF WE'RE GOING TO PUSH THINGS LATE, AND IT RESULTS IN US HAVING TO TAKE DUPLICATIVE DISCOVERY, WE THINK THERE SHOULD BE SOME WAY OF APPORTIONING THE COSTS ASSOCIATED WITH THAT BECAUSE WE SHOULDN'T HAVE TO BEAR THAT, THAT

ADDITIONAL DUPLICATIVE COST.

WE THINK THAT FRANKLY ENOUGH TIME HAS PASSED THAT IT'S APPROPRIATE TO MAKE THAT DISCLOSURE NOW. I UNDERSTAND THE COURT'S CONCERNS, BUT WE THINK IT BASICALLY MAKES SENSE.

AT THIS POINT WE'VE RECEIVED NO LOG EVEN IDENTIFYING ANY OPINIONS THAT PURPORTEDLY MIGHT BE RELIED ON. THE PRIVILEGE HASN'T EVEN -- BESIDES SOME STATEMENT VAGUELY THAT DEFENDANTS INTEND TO INVOKE THE PRIVILEGE, WE'VE GOT NO IDEA WHAT WE'RE TALKING ABOUT HERE.

GIVEN THAT, I THINK PUSHING OUT TO A NOVEMBER 15TH DATE, MY CONCERN IS WE HAVE A JANUARY DISCOVERY CUTOFF. AFTER NOVEMBER 15TH WE HIT THANKSGIVING, THE HOLIDAYS, ET CETERA. GETTING ALL THESE DEPOSITIONS DONE IN A REASONABLE TIME BECOMES VERY DIFFICULT. I DON'T EVEN KNOW WHOSE DEPOSITION --

THE COURT: WELL, I'M SURE MOST OF THE DEPOSITIONS IN THE CASE WILL BE DONE LONG BEFORE THAT.

MR. LEDAHL: WELL, YOUR HONOR, MY HOPE IS --

THE COURT: -- FEW THAT WILL BE LEFT AT THE LAST MINUTE.

MR. LEDAHL: MY HOPE IS CERTAINLY TO GET THEM MOVING SOONER RATHER THAN LATER. I CERTAINLY TAKE THE COURT'S COMMENTS THAT IN LARGE CASES IT IS NOT AN UNCOMMON PRACTICE THAT A LARGE NUMBER OF DEPOSITIONS TEND TO HAPPEN TOWARD THE LATTER STAGES, AND OBVIOUSLY, THAT HAS SOMETHING

TO DO WITH DOCUMENT PRODUCTION.

RECENTLY WE WOULD SUGGEST THAT A SOONER DATE WOULD BE HELPFUL AND MORE USEFUL IN TERMS OF GETTING THESE THINGS RESOLVED. I DON'T -- MY ASSUMPTION IS THAT SOME OF THE KEY PEOPLE WHO ARE GOING TO BE DEFENSE WITNESSES THAT WE'RE GOING TO WANT TO DEPOSE ABOUT THEIR ACTIONS IN OPERATING THE COMPANY ARE ALSO GOING TO BE PEOPLE WHO PURPORT TO HAVE RELIED ON ANY OPINIONS THAT THEY MIGHT ASSERT. AND, SO, WE'RE GOING TO NEED TO TALK TO THOSE PEOPLE ABOUT BOTH SETS OF ISSUES.

AND, FRANKLY, WE'VE HEARD LOTS OF COMPLAINTS FROM DEFENDANTS ABOUT THE COST, COST ASSOCIATED WITH DELAY IN CONNECTION WITH OUR MOTION TO AMEND, THE COST ASSOCIATED WITH OUR DISCOVERY HERE. WE FEEL THE POSITION IS A LITTLE BIT INCONSISTENT WHEN WE NOW TALK ABOUT ADVICE OF COUNSEL AND THE ASSERTION IS, WELL, DUPLICATIVE DEPOSITIONS ARE OKAY IN THAT CONTEXT.

FRANKLY, WE THINK THAT THERE'S A LITTLE BIT OF A DIFFERENT STANDARD BEING APPLIED.

THE COURT: WHAT ABOUT THIS ISSUE OF THE SPREADSHEETS.

MR. LEDAHL: WELL, YOUR HONOR --

THE COURT: THEY SOUND LIKE IT WOULD BE VERY EXPENSIVE TO PUT ALL THE VIDEOS ON HARD DRIVES.

MR. LEDAHL: I THINK, YOUR HONOR, MY SENSE IS THAT

THE BIG CONCERN I HAVE -- AND I'M PREPARED TO BE OPEN-MINDED BUT OBVIOUSLY WITH A WARINESS THAT COMES FROM EXPERIENCE IN THESE CASES. I CERTAINLY THINK THAT THIS SPREADSHEET THAT'S BEEN DESCRIBED SOUNDS VERY USEFUL, AND IT SOUNDS VERY GOOD IN THEORY. AND, CERTAINLY, WHAT WAS PROPOSED TO US IN PRIOR CASES SOUNDED LIKE IT MIGHT BE GOOD IN THEORY.

MY CHIEF CONCERN IS THAT WHAT I'M NOT HEARING IS A SUGGESTION OF HOW ONE COULD AUTOMATICALLY THROUGH AN ELECTRONIC TECHNOLOGY, FOR EXAMPLE, REVIEW THE VIDEOS.

AND BY THAT WHAT I MEAN IS WE'RE TALKING ABOUT THIS LARGE COLLECTION, PERHAPS SEVERAL MILLION VIDEOS. PRACTICALLY SPEAKING, ONE THING WE WOULD LIKE TO BE ABLE TO DO IS RUN AN ELECTRONIC TECHNOLOGY ACROSS THOSE VIDEOS TO TRY TO SIFT OUT -- MAYBE NOT FIND EVERYTHING FOR US, BUT IT MAY FIND A LOT OF THE VIDEOS IN AN AUTOMATED WAY THAT'S USEFUL TO US AND PROVIDE US INFORMATION ABOUT THEM.

I'M NOT CLEAR HOW I WOULD DO THAT UNDER THIS PROPOSAL. NOW, MAYBE THERE'S A TECHNICAL WAY THAT THAT COULD HAPPEN, BUT I HAVEN'T HEARD IT YET. THAT'S ONE OF THE SPECIFIC QUESTIONS I RAISED DURING THE MEET AND CONFER PROCESS THAT HASN'T BEEN ANSWERED FOR US. AND I RECOGNIZE IT'S A DIFFICULT QUESTION, BUT IT'S AN IMPORTANT ONE FOR US.

NOW, I HAVE HEARD IN SOME DISCOVERY THAT MORE RECENTLY DEFENDANTS HAVE BEGUN, UNLIKE WHAT WAS THE STATE OF AFFAIRS AT THE TIME THAT THIS DISCOVERY WAS PROPOUNDED, HAVE

BEGUN USING A FILTERING TECHNOLOGY. I DON'T KNOW ENOUGH YET ABOUT HOW THEY'VE APPLIED THAT. I KNOW FAIRLY RECENTLY THAT APPLICATION WAS NOT COMPLETE. THEY HAD NOT YET RUN IT ACROSS ALL OF THEIR VIDEOS.

THAT MAY HELP IF THEY HAVE ALL THE DATA FROM THAT PROCESS. I KNOW IN PRIOR CASES THAT WAS VERY HELPFUL DATA TO US. WE STILL NEED TO BE ABLE TO ACCESS THE VIDEOS BUT THAT AT LEAST STARTS US DOWN THE ROAD.

AND SO, I THINK GETTING THAT INFORMATION ALSO -- WHICH WE DON'T HAVE YET. AS THE COURT MAY RECALL FROM THE PRIOR LITIGATION, IT'S OUR UNDERSTANDING THAT THAT FILTERING TECHNOLOGY ESSENTIALLY SPITS OUT A REPORT FOR EACH VIDEO OF EXACTLY WHAT SONG IT IS, WHO THE -- SOMETIMES IT HAS VERY PRECISE INFORMATION ABOUT WHAT RECORDING COMPANY IT COMES FROM, WHO THE ARTIST IS, ALL THAT KIND OF THING, WHAT RECORD ALBUM IT'S ON. THAT'S OBVIOUSLY VERY HELPFUL INFORMATION. THAT CAN HELP MOVE THE PROCESS FORWARD. IT MAY NOT BE COMPLETELY SUFFICIENT, BUT IT CERTAINLY WOULD HELP.

FINALLY, I JUST WANT TO SPEAK TO SOME OF THE ISSUES THAT WERE RAISED ABOUT THE PURPORTED OVERBREADTH. AND I THINK WE SHARE THE COURT'S CONCERN THAT SAYING WE'LL PRODUCE DOCUMENTS SUFFICIENT TO DESCRIBE A FEATURE LEAVES OUT SOME VERY CRITICAL THINGS LIKE EMAIL COMMUNICATIONS, ABOUT HOW THAT FEATURE MIGHT HELP EXACTLY THE INSTANCES THE COURT RAISED.

OUR FEELING IS THAT THIS IS WHY WE NEED SEARCH TERMS AND CUSTODIANS TO CAPTURE NOT JUST THE SORT OF THE MANUAL, IF YOU WILL, BUT THE DOCUMENTS ABOUT --

THE COURT: WHAT ARE WE GOING TO DO ABOUT THE BREADTH OF A TERM LIKE "RELATING TO" AS YOU'VE DEFINED IT?

MR. LEDAHL: WELL, AGAIN, YOUR HONOR, I THINK THAT PRACTICALLY SPEAKING, BY THE TIME YOU DEFINE THE RIGHT PEOPLE AND THE RIGHT TERMINOLOGY TO SEARCH FOR -- I RECOGNIZE IT'S AN IMPERFECT PROCESS. AND THAT IT INEVITABLY YIELDS A LOT OF MATERIAL TO REVIEW. WE'VE PRODUCED 1.4 MILLION PAGES. WE'VE REVIEWED AN AWFUL LOT -- MORE THAN THAT PRACTICALLY SPEAKING BECAUSE WE'VE TRIED TO SEARCH BROADLY. AND AS BROADLY AS WE'VE SEARCHED --

THE COURT: SO, YOU'RE SAYING THAT AS LONG AS THEY'RE USING SENSIBLE OR REASONABLE SEARCH TERMS AND CUSTODIANS YOU THINK THE "RELATING TO" REQUEST WOULD BE SATISFIED?

MR. LEDAHL: I THINK THAT'S CORRECT, YOUR HONOR. I THINK THIS IS A FORMAT THAT EVERYBODY -- CERTAINLY DEFENDANTS PROPOUNDED REQUESTS FRAMED THE SAME WAY. IT'S A COMMON PRACTICE. IT HAS THIS CONCERN IN EVERY CASE. AND I THINK THIS IS ONE OF THE BEST WAYS TO DEAL WITH IT. IT'S A DEFENSE MECHANISM IN PROPOUNDING A REQUEST BECAUSE YOU DON'T WANT PEOPLE TO CONCEAL, AS YOU SUGGEST, THE DAMAGING DOCUMENTS.

THE COURT: IF ANY.

MR. LEDAHL: BUT THE BEST --

THE COURT: IF ANY.

MR. LEDAHL: IF ANY. WE SUSPECT THERE ARE SOME AS YOU MIGHT IMAGINE.

AND PRACTICALLY SPEAKING, IT'S BEEN OUR EXPERIENCE CERTAINLY IN THESE CASES THAT ONE OF THE BEST WAYS TO DEAL WITH THAT CONCERN IS BY COMING UP WITH SOMETHING THAT IS LESS SUBJECTIVE AND MORE OBJECTIVE ABOUT WHAT DOCUMENTS WILL BE PRODUCED.

THE COURT: ALL RIGHT.

GO AHEAD.

MS. GOLINVEAUX: YOUR HONOR, I JUST WANTED TO MAKE TWO POINTS WITH RESPECT TO THE SPREADSHEET. MR. LIDAHL EXPRESSED CONCERN THAT THEY MAY NOT HAVE INFORMATION ABOUT THE FILTERING, ON THE TAP AND ON THE VIDEOS FROM THE SPREADSHEET. AND THAT WOULD BE ONE OF THE FIELDS OF METADATA FOR EACH OF THE VIDEOS THAT WOULD SAY WHETHER OR NOT IT WAS IDENTIFIED BY FILTERING SOFTWARE AND WHETHER IT WAS CANCELLED OR NOT.

ALSO, WITH RESPECT TO THE SPREADSHEET, THEY WOULD HAVE ACCESS TO EXACTLY THE SAME VIDEO THAT VEOH WOULD HAVE ACCESS TO AND COULD MAKE A COPY OF WHATEVER THEY THOUGHT MIGHT POSSIBLY IMPLICATE THEIR COPYRIGHTS AND RUN WHATEVER KIND OF FILTERING SOFTWARE THEY WOULD WANT AFTER THEY DID THAT.

THE COURT: ALL RIGHT. WHAT ABOUT THE ABILITY TO SEARCH ACROSS -- I MEAN, THE WAY YOU DESCRIBED IT TO ME, AND I'M NOT A SOPHISTICATE IN THESE MATTERS, BUT IF YOU WANT TO LOOK AT A VIDEO YOU HAVE TO CLICK ON THAT LINK, AND THEN YOU GET IT.

WHAT IF YOU WANT TO SEARCH ALL THE VIDEOS FOR THE NAME OF AN ARTIST, FOR EXAMPLE, OR SOMETHING LIKE THAT, IS THERE A WAY OF DOING THAT?

MS. GOLINVEAUX: YES, YOUR HONOR. WITH A SPREADSHEET IT WOULD BE ORGANIZED BY VIDEO WITH METADATA FOR EACH VIDEO, WHICH WOULD INCLUDE, FOR EXAMPLE, THE TITLE THAT THE USER PROVIDED, ANY KEY WORDS THAT THE USER PROVIDED ASSOCIATED WITH THAT VIDEO SO THAT THEY COULD DO THOSE KIND OF ELECTRONIC SEARCHES WITHIN THE SPREADSHEET FOR WHATEVER TITLES THEY MIGHT HAVE CONCERN ABOUT OR ARTIST NAMES THAT THEY THOUGHT --

THE COURT: ALL RIGHT. DO YOU FEEL THAT IS THE PRACTICAL EQUIVALENT OF HAVING ALL THE VIDEOS ON A HARD DRIVE. ARE THEY JUST AS EASILY SEARCHABLE, OR ARE THEY IN SOME WAYS LESS EASILY SEARCHIBLE?

MS. GOLINVEAUX: YOUR HONOR, I THINK IT'S THE MOST PRACTICAL SOLUTION IN THIS SITUATION. AND I THINK IT GIVES THEM A VERY SEARCHABLE TOOL THAT IDENTIFIES ALL THE VIDEOS BECAUSE THEY'D HAVE ALL THE METADATA FOR EACH VIDEO AS WELL.

THE COURT: ALL RIGHT. WELL, APART FROM ITS

PRACTICALITY -- AND YOU MAY BE RIGHT ABOUT THAT -- ARE THERE ANY WAYS IN WHICH THEY CANNOT SEARCH FROM THE SPREADSHEET THAT THEY COULD SEARCH IF THEY HAD ALL THE VIDEOS COPIED ONTO HARD DRIVES.

MS. GOLINVEAUX: WELL, I THINK WHAT MR. LEDAHL HAS RAISED IS RUNNING FILTERING -- SOME TYPE OF FILTERING OR IDENTIFICATION SOFTWARE ACROSS THE ENTIRE LIBRARY, WHICH IN ORDER TO DO THAT, THEY WOULD NEED TO DOWNLOAD THE VIDEOS OR COPY THE VIDEOS ONTO SERVERS -- ONTO HARD DRIVES JUST LIKE VEOH WOULD BEFORE THEY WERE ABLE TO DO THAT.

BUT IF THEY CHOSE TO COPY THE ENTIRE LIBRARY, THEN, THEY COULD CERTAINLY GO TO THE COST OF DOING THAT.

THE COURT: ALL RIGHT. WHO WOULD BE THE MOST EFFICIENT COPIER OF THE ENTIRE LIBRARY? IT SOUNDS LIKE THEY WOULD HAVE TO CLICK ON LINK AFTER LINK AFTER LINK AND DOWNLOAD THEM. WHEREAS -- FROM THE SPREADSHEET. WHEREAS, PRESUMABLY, VEOH COULD DOWNLOAD THEM MUCH MORE QUICKLY AND INEXPENSIVELY.

MS. GOLINVEAUX: YOUR HONOR, I DON'T PRETEND TO BE FULLY EQUIPPED TO ANSWER THAT QUESTION, BUT MY UNDERSTANDING IS IS THAT IT'S A VERY MANUAL PROCESS ON VEOH'S PART AS WELL IN TERMS OF COPYING THESE TO THE HARD DRIVE. AND I BELIEVE THAT THERE WOULD BE SOME FORMS OF AUTOMATED WAYS TO DO IT FROM THE SPREADSHEET AS WELL BECAUSE THEY'D HAVE ACCESS TO EXACTLY THE SAME LIBRARY THAT VEOH WOULD BE COPYING FROM ONTO

HARD DRIVES.

THE COURT: OKAY.

ALL RIGHT. I HAVE A REQUEST FROM BOTH OF YOU. AND THAT IS SOME OF THESE ISSUES, PARTICULARLY ONES ADDRESSED IN VEOH'S MOTION, WHICH HAS BEEN DENIED WITHOUT PREJUDICE, BUT ALSO SOME OF THE ONES IN UMG'S MOTION ARE ISSUES THAT I ADDRESSED BEFORE, EITHER IN A HEARING OR IN ORDERS IN THE PREVIOUS UMG CASES.

SOME OF THOSE RULINGS HAVE BEEN CITED TO ME IN THE PAPERS. OTHERS MAY NOT HAVE BEEN.

I WOULD LIKE YOU BY A WEEK FROM TOMORROW TO FILE SUPPLEMENTAL BRIEFS THAT BY ROMAN NUMERAL CATEGORY TELL ME WHERE I HAVE PREVIOUSLY ADDRESSED THESE ISSUES, EITHER IN TRANSCRIPT OR ORDER, AND ATTACH THE FULL TRANSCRIPT OR A COPY OF THE ORDER.

I HAVE SOME OF THAT IN MIND, AND YOU'VE POINTED TO SOME OF IT, BUT I JUST WANT TO BE SURE THAT I HAVE ALL OF IT.

FOR UMG'S GUIDANCE, EVEN THOUGH I'VE DENIED VEOH'S MOTION TO COMPEL, I'M LIKELY TO MAKE EVERY EFFORT TO DECIDE CONSISTENTLY IN THIS CASE AS I DID IN THE PREVIOUS CASES. SO, YOU SHOULD PROBABLY GO AHEAD AND DO WHAT I ORDERED YOU TO DO PREVIOUSLY.

IF YOU DON'T, I'M GOING TO BE LOOKING FOR A VERY, VERY GOOD REASON WHY THIS CASE IS SO DIFFERENT THAT YOU DIDN'T DO THAT.

OKAY. THANK YOU.

MR. LEDAHL: THANK YOU, YOUR HONOR.

MR. MARENBERG: YOUR HONOR, ONE THING BEFORE YOU LEAVE. CAN WE AT LEAST GET NOW -- I KNOW IT MAY TAKE --

THE CLERK: JUST A SECOND. NOTHING'S BEING RECORDED.

MR. MARENBERG: -- BECAUSE I'M NOT SURE WHEN YOU ENVISION ISSUING YOUR ORDER.

THE COURT: UH-HUH.

MR. MARENBERG: CAN WE AT LEAST NOW GET AN UNDERSTANDING THAT, FOR EXAMPLE, THE SEPTEMBER 30TH DEADLINE TO COMPLETE --

THE COURT: OKAY. I WAS GOING TO WRITE THIS UP, BUT LET'S JUST DO IT ON THE RECORD RIGHT NOW.

ALL RIGHT. WHAT WE'LL CALL THE CORE PRODUCTION OF EACH PARTY SHOULD BE COMPLETE BY SEPTEMBER 30. AND I ANTICIPATE THAT ON VEOH'S SIDE, IN ADDITION TO ANY WRITTEN ORDER I MIGHT ENTER THAT'S MORE SPECIFIC, THAT THEY WILL PROCEED WITH WHAT THEY HAVE PROMISED TO DO IN THE JUNE 13, 2008 LETTER.

AND, ALSO, THAT UMG WILL DO AS TO ISSUES IN DISPUTE ON VEOH'S MOTION ESSENTIALLY WHAT I HAD ORDERED THEM TO DO IN THE PREVIOUS CASES.

ALL RIGHT. BY SEPTEMBER 30 EACH SIDE ALSO MUST SERVE SUPPLEMENTAL RESPONSES AND, ALSO, MUST SERVE A

PRIVILEGE CLAIM, EITHER A PRIVILEGE LOG OR OTHER APPROPRIATE CLAIM OF PRIVILEGE AS SPECIFIED IN 26(B)(5) IN THE ADVISORY COMMITTEE NOTES RELATING TO THAT.

I THINK THE ELECTION ON THE ADVICE OF COUNSEL THE DEADLINE FOR THAT SHOULD BE NOVEMBER 15, 2008.

CUSTODIAN AND SEARCH TERMS SHOULD BE DISCLOSED BY A WEEK FROM THIS FRIDAY, WHATEVER THAT DATE IS.

AND, ALSO, BY THAT DATE I WANT VEOH TO PRODUCE THE SPREADSHEET. I'M NOT CERTAIN THAT THE SPREADSHEET NECESSARILY MEETS ALL OF UMG'S REASONABLE NEEDS, BUT IT SEEMS LIKE THAT CAN BE DONE VERY QUICKLY AND RELATIVELY INEXPENSIVELY.

SO, LET'S BEGIN WITH THAT. AND IF THERE ARE CONCERNS ON UMG'S PART, HOPEFULLY YOU'LL BE ABLE TO WORK THEM OUT. BUT IF YOU CAN'T, LET MY CLERK KNOW, AND THAT'S PROBABLY SOMETHING WE COULD ADDRESS ON AN EXPEDITED BASIS.

ALL RIGHT. I THINK THAT HITS THE HIGH POINTS.

MR. MARENBERG: THANK YOU, YOUR HONOR.

THE COURT: YOU'RE WELCOME.

MR. LEDAHL: THANK YOU, YOUR HONOR.

(PROCEEDINGS CONCLUDED AT 11:17 A.M.)

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

DOROTHY BABYKIN AUGUST 29, 2008

______________________________ ___________

FEDERALLY CERTIFIED TRANSCRIBER DATED

DOROTHY BABYKIN