Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC. a California Corporation, DOES 1-10, inclusive,<br><br>Defendants. | **Case No. CV 07 5744 – AHM (AJWx)**<br><br>Discovery Matter<br><br>**VEOH NETWORK INC.'S SUMMARY OF DISCOVERY ORDERS IN *MYSPACE/GROUPER* ACTIONS RELEVANT TO CURRENT DISCOVERY DISPUTES** |

LA#221896



Dockets.Justia.com

# TABLE OF CONTENTS

Page


I. ORDER VEOH REQUESTS THAT THE COURT RECONSIDER .......... 1

A. The Court's Decision Related to Copyright Ownership Documents .......... 1

1. The Presumption Should Not Be Irrebuttable .......... 3

2. The Absence of Burden to UMG; the Compelling Harm to Veoh .......... 6

3. This Inquiry is Effective and Common .......... 7

4. The Scope of the Challenge .......... 8

II. ORDERS VEOH REQUESTS THAT THE COURT REAFFIRM .......... 12

A. The Court Ordered UMG to Identify Employees Whose Job It Was To Monitor The Grouper/Crackle Website And Provide Information Regarding Viral Marketing .......... 12

B. The Court Ordered UMG to Identify Each Song Title, Artist, and URL for Each Work of Which UMG is Aware Has Been Infringed And Those That Were Not Expeditiously Removed Upon Notice .......... 13

C. The Court Ordered UMG To Provide Additional Search Terms If Crackle Believed Such Search Terms to Be Insufficient .......... 14

D. The Court Ordered Grouper/Crackle to Produce Communications That Mention Alleged "Actual or Potential Copyright Infringement" .......... 15

E. The Court Ordered Crackle To Produce Executed, Written Licenses for Music and Video-Related Content .......... 16

F. The Court Ordered Crackle To Complete Its Production of Media Files .......... 16

G. The Court Denied UMG's Motion With Respect To Requiring the Defendant to Compile Information From Its Media Files About UMG's Works Because It Was More Practical For UMG to Do So .......... 17

H. The Court Ordered UMG to Produce Documents Reflecting The Profitability of the Allegedly Infringed Works Including the Value of Copyrighted Works and UMG's Lost Revenues or Lost Profits .......... 18

I. The Court Ordered UMG to Produce a List of the UMG Personnel Responsible for Managing UMG's Relationships With Artists Who Performed the Allegedly Infringed Works .......... 19

J. The Court Ordered UMG to Expand Persons Whose Files UMG Would Search For Responsive Documents, But Cautioned UMG to Ensure a Complete Production Regardless of Search Terms .......... 20



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

K. The Court Ordered UMG to Produce Documents Evidencing the Promotional Value of Various Websites ........ 22

L. The Court Ordered UMG to Produce Documents Evidencing Plaintiffs' Revenues, Profits and Value of Content ........ 22

M. The Court Again Found Information Regarding Viral Marketing To Be Relevant To Damages, Despite UMG's Election of Statutory Damages ........ 23

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AMC Film Holdings LLC v. Rosenberg*, No. 03 Cv. 3835, 2005 WL 2105792 (E.D.N.Y. Aug. 31, 2005) .......... 11

*Asia Entm't, Inc. v. Nguyen*, 1996 WL 652767 (C.D. Cal. 1996) .......... 4

*Big East Entm't, Inc. v. Zomba Enter., Inc.*, 453 F. Supp. 2d 788 (S.D.N.Y. 2006) .......... 5

*Chirico v. Gateway Oaks, LLC*, 2005 WL 2284218 .......... 4

*Dun & Bradstreet, Inc. v. Walter*, 1991 WL 78172 (N.D. Ill. 1991) .......... 4

*Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) .......... 4

*EZ-TIXZ, Inc. v. HIT-TIX, Inc.*, 919 F.Supp. 728 (S.D.N.Y. 1996) .......... 5

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991) .......... 3

*H.K. Co., Inc. v. Mori Lee Assocs., Inc.*, 1989 WL 297953 (S.D. N.Y. 1989) .......... 4

*Hamil Am., Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) .......... 3

*In re Napster, Inc. Copyright Litig.*, 191 F.Supp.2d 1087 (N.D. Cal. 2002) .......... passim

*Lapham v. Porach*, 2007 WL 1224924 (S.D.N.Y. April 25, 2007) .......... 4

*Motta v. Samuel Weiser, Inc.*, 768 F.2d 481 (1st Cir. 1985) .......... 10

*Mullen v. Soc'y of Stage Dirs. & Choreographers*, 2007 WL 2892654 (N.D. Ill. Sept. 30, 2007) .......... 5

*National Center for Jewish Film, Inc. v. Goldman*, 943 F. Supp. 113 (D. Mass. 1996) .......... 5

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

*Oboler v. Goldin*,
714 F.2d 211 (2d Cir. 1983)....4

*Peer Int'l Corp. v. Pausa Records, Inc.*,
909 F.2d 1332 (9th Cir. 1990), cert denied, 498 U.S. 1109 (1991)....18

*Playboy Enters., v. Dumas*,
831 F. Supp. 295 (S.D.N.Y. 1993), rev'd on other grounds, 53 F.3d 559 (2d Cir. 1995)....9

*Sabroso Pub., Inc. v. Caiman Records Am., Inc.*,
141 F. Supp. 2d 224 (D.P.R. 2001)....5

*Schwasinger v. Price*,
789 F. Supp. 347 (D. Kan. 1992)....5

*Silberman v. Innovation Luggage, Inc.*,
01 Civ. 7109 (GEL), 2003 WL 1787123 (S.D.N.Y April 3, 2003)....5

*Skelton Fibres Ltd. v. Canas*,
1997 WL 97835 (S.D. N.Y. 1997)....5

*Techniques, Inc.*, v. *Rohn*,
592 F. Supp. 1195....5

*Twin Peaks Prods., Inc. v. Publ'ns. Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993)....3

*Van Der Zee v. Greenidge*,
2006 WL 44020 (S.D.N.Y. 2006)....19

*World Thrust Films Inc. v. Int'l Family Entm't Inc.*,
1996 WL 605957 (S.D. Fla. 1996)....5

*Yurman Design, Inc. v. PAJ, Inc.*
262 F.3d 101 (2d Cir. 2001)....19

**STATUTES**

17 U.S.C. § 101....9

17 U.S.C. §204(a)....4, 9, 11

17 U.S.C. § 410(c)....3, 4

17 U.S.C. §501(b)....10

17 U.S.C. § 504(c)(2)....6

**OTHER AUTHORITIES**

3 *Nimmer on Copyright* § 12.11[B] .................... 4

4 *Nimmer on Copyright* § 14.04 [B][1][a] (2005) .................... 19, 20

5 *Patry on Copyright* § 17:109 .................... 4

6 *Patry on Copyright* § 21:7 .................... 5

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

During the August 25, 2008 hearing on the parties' first Motions to Compel in the above-referenced action, the Honorable Magistrate Judge Andrew J. Wistrich requested that the parties file briefs summarizing orders relevant to current discovery disputes issued in *UMG Recordings, Inc. et al. v. MySpace, Inc. et al.*, Case No. 06-17361 and *UMG Recordings, Inc. et al. v. Grouper Networks, Inc., et al.*, Case No. 06065-61 ("*MySpace*" and "*Grouper/Crackle*" Actions). To a certain degree Veoh Networks, Inc. ("Veoh") is hampered in this exercise by not having been a party to the earlier actions, and by the significant amount of material filed under seal in those actions. To the extent Veoh is aware of discovery orders and rulings in the earlier actions, it addresses them here. Accordingly, Veoh respectfully submits the following:

## I. ORDER VEOH REQUESTS THAT THE COURT RECONSIDER

### A. The Court's Decision Related to Copyright Ownership Documents

*Relevant to Veoh's MTC, Joint Stip re Veoh's MTC (Docket 81), Issue No. III. 2 "Documents and Information Regarding Identification and Ownership of Copyrights At Issue" pp. 85-110.*

- *Veoh's Request For Production Nos. 1-6, 26, 43-44, 47-51, 64-66, 67, 69, 179-180, & 234 (Id. at pp. 89-106).*
- *Veoh's Interrogatory Nos. 1, 2, 3, 7, & 23 (Id. at pp. 85-89).*

Veoh's chief issue with the Court's earlier rulings in the *MySpace* and *Grouper/Crackle* Actions concerns limitations placed on discovery related to Plaintiffs' ("UMG") ownership of the copyrights in question. Veoh seeks targeted, discrete discovery into the ownership of the copyrights at issue---an inquiry that will



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

not be burdensome in time or expense, particularly as compared to the massive amount in damages that UMG is seeking from Veoh. The inquiry into copyright ownership is one that is necessary, productive, and commonplace.[1] The discovery of copyright ownership documents should not be curtailed in any respect, and will readily demonstrate that many of UMG's copyrights are defective (whether as a rebuttable "work for hire" or otherwise as discussed below), and that those defective copyrights will materially impact the scope of the case and any alleged recovery.

This Court recognized the importance of these ownership documents from the very beginning, although it subsequently narrowed the documents required for production. During the October 29, 2007 hearing, the Court noted its "surprise" that UMG had refused to identify copyrights at issue, and recognized how "absolutely basic" UMG's obligations were to produce "chain of title and ownership information:"

> Another thing that I'm going to pick on UMG a little bit here because its. . . foremost on my mind. But I was very surprised to see the Plaintiff in this case balking at identifying the copyrights at issue, and **balking at revealing all the information about chain of title and ownership**, and right to sue them. . . . **To me, that's absolutely basic** . . . in an intellectual property infringement case. We have to know what we're talking about.

(Declaration of Erin R. Ranahan ("Ranahan Decl."), ¶ 2 and Exh. A at p. 5: 13-22; (10/29/07 Transcript) emphasis added).

---

[1] Veoh's counsel has in fact conducted this type of review as litigation counsel for all types of parties in the music entertainment business--for record companies, individual artists, and alleged infringers. (Declaration of Thomas P. Lane ("Lane Decl."), ¶¶ 2-4).)



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

The Court, however, deferred issuing an order with respect to the issue. On November 5, 2007, UMG represented to the Court that it had already produced "chain of title" documents with respect to the 25 works identified as infringing in its complaint, but not with respect to thousands of others identified by UMG as infringing. (Ranahan Decl. ¶ 3 and Exh. B at p. 107:18-108:7 (11/5/07 Transcript).) On March 27, 2008, the Court ordered UMG in the *MySpace/Grouper Litigation* to produce documents and interrogatories pertaining to the identification and ownership interest in all the works for which they seek relief, but limited the production to "any disagreements or disputes regarding UMG's ownership of [the sound recordings at issue] which rose to a sufficiently serious level that inside or outside counsel became involved . . . " Such an order improperly limits a copyright defendant's standing to challenge copyright ownership to those registrations that have previously been litigated. That limitation finds no support in the case law, and is directly contrary to congressional intent and the interests of justice. Veoh respectfully requests that the Court reconsider the limitations it imposed upon the right to conduct discovery relating to UMG's purported ownership of the works at issue.

### 1. <u>The Presumption Should Not Be Irrebuttable</u>

To establish copyright infringement, UMG must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent original elements of the work. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); see also *Twin Peaks Prods., Inc. v. Publ'ns. Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993) ("To make out a prima facie case of copyright liability, the copyright holder must prove ownership of a valid copyright, and ... copying of constituent elements of the work that are original.") (citations and quotations omitted). Issuance of a certificate of registration before or within five years of a work's initial publication creates a rebuttable presumption that the recipient is owner of a valid copyright. 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (presumption of



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

ownership created by registration may be rebutted). The presumption is modest: "The prima facie status accorded by section 410(c) is slight,[2] since the Copyright Office is merely an office of record. Of necessity, the Office's examination is limited." 5 *Patry on Copyright* § 17:109. "A certificate of registration creates no irrebuttable presumption of copyright validity." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). Further, extending a presumption of validity to a certificate of copyright registration

> merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.

(H. Rep. No. 1476, 94th Cong., 2d Sess. 157, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5659, 5773. *See also Oboler v. Goldin*, 714 F.2d 211, 212 (2d Cir. 1983); 3 *Nimmer on Copyright* § 12.11[B], at 12-79 to 12-80 (1985).)

There are three ways to become a copyright owner: (1) by being the author; (2) by obtaining a valid transfer of an exclusive right from the author;[3] and (3) by operation of law, e.g. via bankruptcy, marital distribution, or corporate merger.[4] Those claiming ownership by transfer bear the burden of proving a clear chain of

---

[2] *Lapham v. Porach*, 2007 WL 1224924, at *4 (S.D.N.Y. April 25, 2007) (the prima facie case "can be rebutted. In this case, plaintiff's case unravels pretty quickly."

[3] Validity is determined by compliance with the writing requirements of § 204(a). *See Chirico v. Gateway Oaks, LLC*, 2005 WL 2284218, at *n.6 (E.D. Mich. Aug. 26, 2005) (noting requirement in standing context).

[4] *Asia Entm't, Inc. v. Nguyen*, 1996 WL 652767 (C.D. Cal. 1996) (corporation that succeeded to assets of sole proprietorship owned copyright); *Dun & Bradstreet, Inc. v. Walter*, 1991 WL 78172 (N.D. Ill. 1991) (subsidiaries of same parent held to be beneficial owners); *H.K. Co., Inc. v. Mori Lee Assocs., Inc.*, 1989 WL 297953 (S.D. N.Y. 1989) (and cases cited therein).



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

title.[5] If none of these methods of obtaining ownership apply, the plaintiff lacks standing.[6] It should also be noted that the ownership must be in the copyright itself, and not in an entity that owns the copyright. 6 *Patry on Copyright* § 21:7

Courts regularly dismiss claims of infringement where plaintiffs fail to sufficiently establish copyright ownership. *See e.g., Big East Entm't, Inc. v. Zomba Enter., Inc.*, 453 F. Supp. 2d 788, 800 (S.D.N.Y. 2006) (dismissing claim of copyright infringement where the plaintiff "failed to show undisputed evidence of its copyright ownership"); *Silberman v. Innovation Luggage, Inc.*, 01 Civ. 7109 (GEL), 2003 WL 1787123 (S.D.N.Y April 3, 2003) (dismissing claim for statutory damages where the plaintiff's copyright was registered after the infringing activity); *EZ-TIXZ, Inc. v. HIT-TIX, Inc.*, 919 F.Supp. 728 (S.D.N.Y. 1996) (same); *Techniques, Inc.*, v. *Rohn,* 592 F. Supp. 1195, 1198 (dismissing claim for copyright infringement where the plaintiffs failed to show that they owned the copyright in question).

In earlier argument to this Court, and in their opposition to Veoh's motion to compel, UMG essentially argued that since a copyright registration establishes a presumption of ownership, and since UMG is allegedly going to produce all relevant copyright registrations, UMG need not provide any further documentation to demonstrate ownership, such as chain of title documents or recording agreements.[7] For UMG, the presumption is apparently an irrebuttable assumption. This is preposterous, and contrary to common practice and to the law. Indeed, in the *Napster* case, cited by UMG, Judge Patel, in allowing discovery of copyright ownership to

[5] *Skelton Fibres Ltd. v. Canas,* 1997 WL 97835 (S.D. N.Y. 1997); *National Center for Jewish Film, Inc. v. Goldman,* 943 F. Supp. 113 (D. Mass. 1996); *World Thrust Films Inc. v. Int'l Family Entm't Inc.*, 1996 WL 605957 (S.D. Fla. 1996) (no chain of title established); *Schwasinger v. Price*, 789 F. Supp. 347, 351–352 (D. Kan. 1992) (no transfer proved), aff'd without opinion, 1992 WL 314183 (10th Cir. Oct. 20, 1992).

[6] *Sabroso Pub., Inc. v. Caiman Records Am., Inc.*, 141 F. Supp. 2d 224 (D.P.R. 2001). See also *Mullen v. Soc'y of Stage Dirs. & Choreographers*, 2007 WL 2892654 (N.D. Ill. Sept. 30, 2007) (noting union would have lacked standing to sue for infringement of a member's play).

[7] This resistance is despite UMG's counsel's recognition that "the most important document in the chain of title is the recording agreement, which gives us rights to the copyright." (Ranahan Decl. ¶ 3 and Exh. B at p. 108:18-20 (11/05/07 Transcript).)



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

proceed, stated that: "refusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrebuttable one." *In re Napster, Inc. Copyright Litig.*, 191 F.Supp.2d 1087, 1100 (N.D. Cal. 2002). In case after case, copyright ownership documents are regularly requested and produced. As the accompanying declaration of Thomas P. Lane sets forth, the production of these documents is not controversial, unexpected, or burdensome. Record companies, such as UMG, demand such documents when they are defendants and are required to produce them when they are plaintiffs. (Lane Decl. ¶¶ 2-4). To order otherwise is to turn a rebuttable presumption into one impossible to rebut.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### 2. <u>The Absence of Burden to UMG; the Compelling Harm to Veoh</u>

In its opposition to Veoh's motion to compel the chain of title/ownership documents, UMG claims that the burden of production will outweigh its benefit. To support this conclusion, UMG offers the declaration of Michael Ostroff, who contends that since UMG owns over 100,000 copyrights in sound recordings and musical compositions, identifying related chain of title/ownership documents will somehow cost millions of dollars. This is baseless, particularly when, at the same time, Mr. Ostroff admits that: (1) UMG has only "specifically identified 32 copyrighted sound recordings and 29 copyrighted musical compositions in its Complaint against Veoh"; and (2) the total infringements may only be in the "hundreds," although Mr. Ostroff unilaterally concludes it could "likely" be in the thousands. Whether the total infringements are the 61 UMG has identified, or hundreds, or thousands, the simple fact is that the alleged "burden" of production of a recording agreement, or of an assignment, or of chain of title documents does not outweigh the massive harm to Veoh by not allowing their production.

Copyright infringement carries statutory penalties of up to $150,000 per work. 17 U.S.C. § 504(c)(2). Where plaintiffs, as here, allege the infringement of thousands

or even tens of thousands of works, and seek maximum recovery, the exposure for a defendant can quickly reach billions of dollars.[8] *See* Joint Stip at 119. Given this enormous potential liability, courts regularly (and rightfully) hold copyright plaintiffs to their obligation to provide defendants with relevant discovery to rebut the thin presumption of validity that a copyright registration carries. *See, e.g., Napster,* 191 F.Supp.2d at 1100 (ordering plaintiffs, including UMG, "to produce all documentation relevant to their ownership of the works listed as 'works for hire'").

Although seeking what will amount to massive damages, UMG essentially asks Veoh to simply take UMG at its word that it owns the copyrights at issue, notwithstanding the fact that many of UMG's copyright registrations – including the very first document in production, UMG000001 – do not list a Plaintiff in this action as either an author or a claimant. (See Lane Decl. ¶ 11 and Exh. 3). With $150,000 at stake per registration, Veoh has a right to rebut UMG's "word."

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**3. <u>This Inquiry is Effective and Common</u>**

In past litigations, similar challenges have revealed deficiencies in ownership claims to thousands of copyrights. UMG's protest that it "is simply not reasonable to suggest that UMG actually does not own these rights on some massive scale" (*See* Joint Stip re UMG's MTC at 120 (Docket 81)) is wholly disingenuous given that past challenges have proven UMG's copyright ownership claims to be massively defective. (Lane Decl. ¶¶ 5-7).

In *UMG Recordings, Inc. v. MP3.com, Inc.*, the defendant apparently successfully challenged 2,564 copyrights, more than half (55%) of the 4,700 copyrights claimed by UMG, thereby reducing liability by $65,000,000. *Compare*

[8] In its opposition to Veoh's motion to compel the ownership documents, UMG refers to those copyrights with ownership issues as being a "handful" at most. (Joint Stip re UMG's MTC filed on July 21, 2008 (Docket 81) at p. 120:9-10). This unsupported conclusion runs contrary to the common practice and experience of Veoh's counsel. (See Lane Decl. ¶¶ 2-10). Further, even if the number of copyrights successfully challenged amounted to a "handful," that number as translated into the statutory damages UMG has elected to pursue could go into the millions of dollars.

No. 00 Civ. 472, 2000 U.S. Dist. Lexis 13293, *18 (S.D.N.Y Sept. 6, 2000) (noting at least 4,700 copyrights claimed and setting statutory damages at $25,000 per work), *and* 2000 U.S. Dist. Lexis 17907, *1 (S.D.N.Y. Nov. 14, 2000) (awarding damages for only 2,136 works). *Id.* [9] (Lane Decl. ¶¶ 6-7 and Exhs. 1-2.) Similar challenges in a recent litigation brought by another major record label, Sony/BMG, revealed deficiencies in 33% of its claimed copyrights. (*Arista Records et al v. Launch Media, Inc.*, 01 Civ. 4450 (S.D.N.Y.); see Lane Decl., ¶¶ 8-9).

Simply stated, the fact that a corporation, such as UMG, is "in the business of obtaining rights to copyrighted sound recordings and musical compositions" (*See* Joint Stip. re UMG's MTC at 120 (Docket 81)) does not mean that it always properly secures those rights. Nor does it relieve UMG of its evidentiary burdens. The enormous potential liability facing Defendant, and the proven capacity of past challenges to decrease such exposure by millions or even tens of millions of dollars, more than justifies any supposed burden on UMG in fulfilling its obligation to prove the most fundamental elements of its case.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### 4. <u>The Scope of the Challenge</u>

Although UMG repeatedly argues burden in having to produce documents, Veoh is not seeking a warehouse of documents, by any measure. Since UMG is not an artist and presumably did not create the works that are at issue in this case, its ownership is based either upon the "work for hire" doctrine or by way of assignment and purchase. To demonstrate proper chain of title/ownership, UMG need merely produce recording agreements in some cases (which UMG admits are vital to its ownership claims) or acquisition or assignment agreements in others. In all, ownership documents usually cover multiple copyrights at a time, further reducing burden.

[9] Vivendi Universal, the parent company of the plaintiffs herein, purchased mp3.com in August 2001. Therefore, Universal is familiar with demanding copyright ownership documents as a defendant and having to produce them as a plaintiff.

There are essentially two main categories of challenges to UMG's ownership that Veoh expects to lodge:

1. copyrights for which the registration denotes a Plaintiff as the author but for which there is no signed document transferring ownership – either as a "work for hire" or via assignment – from the artist to the named author or claimant; or,

2. copyrights for which the registration does not denote a Plaintiff as the author and for which there is no signed document transferring ownership from the author or claimant to a Plaintiff.

Where, as here, the copyright claimants are record companies – and not the artists themselves - the Copyright Act requires a writing demonstrating that the claimant is in fact the owner of the work. The Copyright Act specifies with regard to transfers of ownership: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. §204(a).

In the *Launch* litigation, for example, defendant discovered that approximately 33% of the claimed copyrights were defective. (Lane Decl. ¶¶ 8-9). For example, 79 of the copyright registrations at issue (1) lacked a corresponding artist contract that contained terms necessary to convey rights to plaintiffs, or (2) were supported only by contracts that were not signed by the artist. Included in those copyright registrations were artist contracts that had no language indicating a "work for hire" or otherwise transferring ownership at all.[10] These 79 copyright registrations constituted nearly

[10] The vast majority of sound recording copyrights are registered as "works for hire." *See, e.g.*, UMG 0000001; 17 U.S.C. § 101. None of the copyright registrations so far proffered by UMG are for a work prepared by an employee of UMG. Accordingly, UMG must demonstrate that the albums designated as "work for hire" are part of a compilation (which includes collective works), that both the copyright claimant and the artist executed a written instrument providing that the sound recording shall be considered a work made for hire, and that such agreement was executed before the album subject to the work for hire was created or confirms an earlier oral agreement. *See Playboy Enters., v. Dumas*, 831 F. Supp. 295, 315 (S.D.N.Y. 1993), rev'd on



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

10% of the 835 copyrights claimed by plaintiffs in that litigation and represented almost $12 million dollars of potential exposure. Given that UMG has stated its intention to seek statutory damages for thousands of copyrights (not just the hundreds claimed by the *Launch* plaintiffs), the potential reduction of exposure for Veoh here would be even greater. Veoh is doubtlessly entitled to discovery that could reduce its potential liability by tens of millions of dollars.

Further, under the Copyright Act, the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. §501(b). "The existence of a copyright certificate with someone else's name on it does not vest anyone other than the author with rights to the work. In order to show ownership, plaintiffs need to produce chain of title from the listed author to themselves." *Napster*, 191 F.Supp.2d at 1101 (ordering plaintiffs, including UMG, to produce "chain of title to demonstrate ownership"); *see also Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985) ("If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright."). "Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act." *Id.* If a plaintiff claims ownership of a copyright through a transfer or series of transfers, the transfers are "not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly

---

other grounds, 53 F.3d 559 (2d Cir. 1995) ("the writing requirement ... can be met by a writing executed after the work is created, if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work"). Even this demonstration may be insufficient, as "sound recordings" are not among the nine enumerated categories eligible for "work for hire" status. *See Napster*, 191 F.Supp.2d at 1097-98. In the *Launch* litigation, discovery enabled defendant to uncover "work for hire" defects in 30 copyright registrations, representing $4.5 million dollars in potential exposure. Each of the corresponding purported "works-for-hire" were created before any "work for hire" agreement was executed, thereby invalidating the transfer of ownership.



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

authorized agent." 17 U.S.C. § 204(a); *see also AMC Film Holdings LLC v. Rosenberg*, No. 03 Cv. 3835, 2005 WL 2105792, at *4-5 (E.D.N.Y. Aug. 31, 2005).

In the *Launch* litigation, the defendant discovered 13 copyright registrations for which plaintiffs could not establish ownership through an unbroken chain of title from the original author or artist. In some instances, the *Launch* plaintiffs submitted registrations that did not designate plaintiffs as the author or claimant (like UMG's very first copyright produced in this case, as well as their first hundred overall produced copyrights, *See* Lane Decl. ¶ 11 and Exh. 3) and failed to include all related transfer agreements evidencing a transfer of ownership from the claimant to, ultimately, one of the plaintiffs. In other instances, the *Launch* plaintiffs produced an agreement purporting to transfer ownership, but the agreement was not signed by the purported transferee. These 13 copyrights represented almost $2 million dollars of exposure for defendant. Again, because UMG is potentially claiming more copyrights here, the number of potential defects is greater. This discovery is therefore worth at least several million dollars to Veoh; this potential reduction in exposure alone outweighs any possible burden to UMG.[11]

In most circumstances, the only party with the pressing and immediate incentive to challenge a copyright claimant's ownership stake will be the copyright defendant facing millions or even billions of dollars of potential exposure. The case law holds that copyright defendants must have standing to challenge every claim of ownership – not just those that have previously been disputed. *See Napster*, 192 F.Supp.2d at 1099, 1100 (expressly acknowledging defendants' standing to challenge all copyrights where the registration lists a plaintiff as the author and granting defendants' challenge to all copyrights where the registration lists a third party as the

[11] The potential defects in UMG's ownership claims are not limited to the main categories of challenges above. For example, discovery in the *Launch* litigation enabled the defendant there to discover copyright registrations where the corresponding artist agreements reserved to the recording artist the right to engage in digital distribution of sound recordings. If UMG lacks the right to engage in digital distribution of certain works, it cannot assert a claim of infringement based upon Veoh's digital distribution of such works.



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

author). Narrowing a copyright defendant's standing to challenge ownership claims to just those previously challenged by others claiming ownership frustrates Congress's intent that the presumption of ownership be rebuttable. Lest that intent not be eviscerated, UMG should be ordered to produce documents sufficient to demonstrate ownership of all of the copyrights for which it seeks relief.

## II. ORDERS VEOH REQUESTS THAT THE COURT REAFFIRM

### A. The Court Ordered UMG to Identify Employees Whose Job It Was To Monitor The Grouper/Crackle Website And Provide Information Regarding Viral Marketing

*Relevant to Veoh's Motion to Compel ("MTC"), Joint Stipulation ("Joint Stip") re Veoh's MTC (Docket 81) IV. Issue No. 3, pp. 114-144*

- *Veoh's Request For Production Nos. 40, 42, 45, 46, 54, 55, 150, 154-156, 181, 202-209, 217 (Id. at 119-131).*
- *Veoh's Interrogatory Nos. 9. 10, 11, 13, 15, 16, 19, 24 (Id. at 114-119).*

In its November 8, 2007 Order re Discovery Disputes, the Court ordered UMG to confirm which division within UMGD is responsible for viral marketing and which primary employees conduct its viral marketing activities. (Ranahan Decl. ¶ 4 and Exh. C at p. 1-2, ¶ 4 (11/08 Order Re Discovery Disputes).) The Court also ordered UMG to produce all reports that identify which of plaintiffs' works are marketed virally through UMGD. (*Id.*)

The Order specifically directs UMG to confirm that NetReach is the division within UMGD that conducts its viral marketing. Though Veoh does not expect NetReach to be the only entity within UMG's control relevant to this inquiry (*see*



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

foregoing discussion under Section II(M)), the Court's 11/8/07 Order demonstrates that the Court considers viral marketing relevant and UMG should be obligated to produce responsive documents relating to such efforts. (*Id.*).

### B. The Court Ordered UMG to Identify Each Song Title, Artist, and URL for Each Work of Which UMG is Aware Has Been Infringed And Those That Were Not Expeditiously Removed Upon Notice

*Relevant to Veoh's MTC (Docket 81), Joint Stip re Veoh's MTC, Issue No. III. 2 "Documents and Information Regarding Identification and Ownership of Copyrights At Issue" pp. 85-110.*

- *_Veoh's Request For Production Nos. 1-6, 26, 43-44, 47-51, 64-66, 67, 69, 179-180, & 234* (*Id. at pp. 89-106).*
- *Veoh's Interrogatory Nos. 1, 2, 3, 7, & 23 (Id. at pp. 85-89).*

In the November 8, 2007 Order re Discovery Disputes in the *Grouper Action*, the Court ordered UMG to supplement an interrogatory response by "identifying each song title, artist, and URL for each work of which UMG already is aware that it contends has been infringed by Crackle. UMG shall also make good faith efforts to identify the copyright registration numbers associated with those works . . . ." (Ranahan Decl. Exh. ¶ 4 and Exh. C at ¶ 2 (11/8/07 Order re Discovery Disputes).) UMG has yet to identify a list of allegedly infringing works in this action, and should be ordered to provide such information to Veoh.

In the November 8, 2007 Order re Discovery Disputes in the *Grouper Action*, the Court also ordered UMG to supplement its response to:

> identify any works it contends were not expeditiously removed or disabled after RIAA sent notices of copyright infringement to



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Grouper, or to state that it is not aware of any works that were not expeditiously removed . . . .

(*Id.*)

UMG has yet to send Veoh any notices of alleged infringement pursuant to the DMCA. UMG should likewise be required to respond to requests seeking such information, and if UMG is not aware of any works that were not expeditiously removed after Veoh received a DMCA notice because UMG provided no such notices, it should so state.

### C. <u>**The Court Ordered UMG To Provide Additional Search Terms If Crackle Believed Such Search Terms to Be Insufficient**</u>

*Relevant to General Obligations of Both Parties to Ensure Complete Search Term/Custodian Lists;*
*Veoh's MTC, Joint Stip Re Veoh's MTC (Docket 81) II. Issue No. 1. "Search Terms or Custodians of Responsive Documents" pp. 5-85; and UMG's MTC, Joint Stip Re UMG's MTC (Docket 78) II. pp. 8-18.*

The Court ordered UMG to engage in good faith meet and confer efforts with respect to search terms. (Ranahan Decl. at ¶ 4 and Exh. C at pp. 2-3, ¶ 7 (11/8/07 Order).) UMG should be required to engage in the same good faith meet and confer efforts here with respect to the selection of search terms and custodians, scheduled to be exchanged September 5, 2008, as will Veoh.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### D. <u>The Court Ordered Grouper/Crackle to Produce Communications That Mention Alleged "Actual or Potential Copyright Infringement"</u>

*Relevant to UMG's MTC (Docket 78), Joint Stip re UMG's MTC Issue No. IV. Veoh's Copyright Policies and Practices, pp. 25-26*

- *UMG's Request For Production No. 1 (Id. at p. 25-26).*

The Court ordered Grouper/Crackle to produce documents in response to requests limited as follows: "All communications. . . that mention alleged actual or potential copyright infringement by Grouper." (Ranahan Decl. ¶ 4 and Exh. C at p. 3 II.¶¶ 2-3 (11/8/07 Order).) Accordingly, Veoh offered to carve out UMG's overly broad Request No. 1 in the same manner. (Joint Stipulation re UMG's MTC, filed on or about July 21, 2008 (Docket 78) at IV(C) pp. 39:26-40:4; Declaration of Jennifer Golinveaux filed in Support of Veoh's Opposition to UMG's Motion to Compel on July 21, 2008 (Docket 82) ¶ 2 and Exh. A (June 13, 2008 Letter).)

UMG has refused this limitation, insisting that "the fact that UMG compromised with MySpace . . . has no bearing here." (UMG's Supplemental Memorandum Regarding UMG's Motion to Compel, p. 5:1-3). UMG should be required to honor the same reasonable limitation it found acceptable with respect to MySpace.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**E. The Court Ordered Crackle To Produce Executed, Written Licenses for Music and Video-Related Content**

*Relevant to UMG's MTC, Joint Stip to UMG's MTC (Docket 78), Issue No. XI at p. 118-127*

- *UMG's Request For Production Nos. 5, 59-61, 89-90*

The Court limited the defendant Crackle's obligation to produce license agreements to "executed, written licenses for music and music video-related content." (Ranahan Decl. ¶ 4 and Exh. C (11/8/07 Order at ¶ 4).) If this Court is inclined to order Veoh to produce license agreements, it should include the same limitations.

**F. The Court Ordered Crackle To Complete Its Production of Media Files**

*Relevant to UMG's MTC, Joint Stip re UMG's MTC, Issue No. VI. at p. 47-56*

- *UMG's Request For Production Nos. 4, 6, 98-100*
- *UMG's Interrogatory No. 5*

In its February 25, 2008 Order, the Court ordered Crackle to complete its production of media files. (Ranahan Decl. ¶ 5 and Exh. D). Veoh has not disputed UMG's right to view media files. Indeed, Veoh has proposed a reasonable and efficient alternative—a media spreadsheet that contains links to all videos, including cancelled files and corresponding metadata—to the expensive and ultimately cumulative and unnecessary alternative of copying the millions of Veoh videos onto a hard drive. (*See* Joint Stipulation Re UMG's MTC filed on July 21, 2008. (Docket 78)

at VI. pp. 47-56; Declaration of David Muller in Support of Veoh's Opposition to UMG's MTC filed on July 21, 2008; Ranahan Decl. ¶ 10 and Exh. I at 36:25-39:16)). During the August 25, 2008 hearing, the Court ordered Veoh to produce the proposed media spreadsheet with the video links by September 5, 2008.

Veoh respectfully requests that the Court not consider ordering Veoh to provide further copies of these same videos, which would be enormously burdensome, unnecessary, and costly to Veoh, unless and until UMG demonstrates significant deficiencies in the media spreadsheet that Veoh will produce to UMG by September 5, 2008, and unless UMG absorbs all related expenses.[12]

### G. The Court Denied UMG's Motion With Respect To Requiring the Defendant to Compile Information From Its Media Files About UMG's Works Because It Was More Practical For UMG to Do So

*Relevant to UMG's MTC (Docket 78), Joint Stip re UMG's MTC Issue No. VI. at p. 47-56*

- *UMG's Request For Production Nos. 4, 6, 98-100*
- *UMG's Interrogatory No. 5*

The Court recognized that UMG was in a more suitable position than Crackle to compile information about potentially infringing works from Crackle's media files. (Ranahan Decl. ¶ 5 and Exh. 5; (2/25/08 Order).) Thus, the Court denied UMG's motion that would have required Crackle to compile information about UMG's works from Crackle's media files, noting that "in the circumstances, it is more practical [UMG] to compile the information sought from Crackle's media files than to require

[12] UMG has already indicated that it would pay for the hard drives if such production was required. (UMG's Supplemental Memorandum Re its MTC, filed on July 28, 2008 (Docket 94) at p. 3:15-16.)



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Crackle to do so." (*Id.*) Once again, UMG stands in a more appropriate position to determine which, if any, allegedly infringing videos it chooses to copy from the media spreadsheet that Veoh will produce on September 5, 2008, and to compile related metadata from the spreadsheet.

### H. **The Court Ordered UMG to Produce Documents Reflecting The Profitability of the Allegedly Infringed Works Including the Value of Copyrighted Works and UMG's Lost Revenues or Lost Profits**

*Relevant to Veoh's MTC, V. Issue No. 4 "Documents and Information Relating to Plaintiffs' Alleged Damages, Promotion, Protection, and Value of the Allegedly Infringed Works" at pp. 144-234 (Docket 81).*

- *Veoh's Request For Production Nos. 34-42, 52-53, 96, 98-147, 151-153, 157-159, 161-168, 172, 175-178, 182, 183, 184-202, 210-214, 216, 218, 220-221, 224-225, 227-229, 232-233, 235, 241 (Id. at pp. 148-223).*
- *Veoh's Interrogatory Nos. 4, 5, 12, 14, & 22 (Id. at pp. 144-148).*

The relevance of financial information to a claim for statutory or actual damages has been repeatedly recognized by courts, including this Court. (Ranahan Decl. ¶ 6 and Exh. E (3/17/08 Order).) In its March 17, 2008 Order Re MySpace, Inc.'s Fourth Motion to Compel, the Court found that if Plaintiffs ultimately decide to seek statutory damages instead of actual damages, "[a] district court has wide discretion in awarding statutory damages for copyright infringement and is constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa*



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

*Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990), cert denied, 498 U.S. 1109 (1991). Further, statutory damages still must "bear some relationship to actual damages suffered." *Yurman Design, Inc. v. PAJ, Inc.* 262 F.3d 101, 113-114 (2d Cir. 2001); *Van Der Zee v. Greenidge*, 2006 WL 44020, *2 (S.D.N.Y. 2006). Among the factors a court may consider are the revenues lost by the plaintiffs [and] the value of the copyright." *Van Der Zee, supra*, 2006 WL 44020, at *2; see 4 *Nimmer on Copyright* § 14.04 [B][1][a] (2005) ("the determination of statutory damages within the applicable limits may turn upon such factors as … the revenues lost by the plaintiffs as a result of the defendant's conduct and the infringers' state of mind – whether willful, knowing or innocent."). The financial information sought is therefore undeniably relevant, and like in the *MySpace Grouper/Crackle* Actions, should be produced by UMG here.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## I. **The Court Ordered UMG to Produce a List of the UMG Personnel Responsible for Managing UMG's Relationships With Artists Who Performed the Allegedly Infringed Works**

*Relevant to Veoh's MTC, VIII. Issue No. 7 "Documents Relating to Plaintiffs' Organizational Structure and Identification of Witnesses" at pp. 302-308 (Docket 81).*

- *Veoh's Interrogatory No. 18 (Id. at p. 302).*

In its March 17, 2008 Order, the Court granted MySpace's Motion to compel UMG to respond to an interrogatory that sought a "list of UMG personnel responsible for managing UMG's relationships with artists who performed the allegedly infringing works." (Ranahan Decl. ¶ 6 and Exh. E). As the court noted:

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

> [t]his is simply an attempt to identify persons who may possess relevant knowledge or who may be potential witnesses . . . and if . . . there are such personnel, UMG must identify them. If the specific individual varies by department or functional area of responsibility (e.g., artists or repertoire, business affairs etc.) then UMG must identify each person and the department in which he or she works.

(*Id.*)

UMG argues that a near identical interrogatory here (Veoh's Interrogatory No. 18) is too broad and it should not be required to respond. But as the Court has previously noted, such a request is simply seeking to identify potential witnesses. Veoh respectfully requests that the Court require UMG to respond as it did in the *MySpace* Action.

### J. The Court Ordered UMG to Expand Persons Whose Files UMG Would Search For Responsive Documents, But Cautioned UMG to Ensure a Complete Production Regardless of Search Terms

*Relevant to General Obligations of Both Parties to Ensure Complete Custodian And Search Term Lists for Searching Electronic Data; Veoh's MTC,*

*Joint Stip Re Veoh's MTC (Docket 81) II. Issue No. 1 "Search Terms or Custodians of Responsive Documents" pp. 5-85; and UMG's MTC, Joint Stip Re UMG's MTC (Docket 78) Issue II. pp. 8-18.*

In its March 24, 2008 Order, the Court ordered UMG to utilize additional search terms and custodians requested by MySpace, as UMG's own methodologies

for determining search terms and custodians was found to be inadequate. (Ranahan Decl. ¶ 7 and Exh. F (3/24/08 Order).)

As this Court has noted in its Order, regardless of search terms and custodians agreed to, "the rules governing the disclosure and discovery process are designed to be self-executing. Primary responsibility for ensuring the completeness of responses and production is allocated to the responding party." (3/24/08 Order (Docket 270)). The parties are obligated to make a good faith effort to produce all responsive documents:

> The ruling does not provide a "safe harbor" to UMG which excuses it from searching the records of custodians other than those named [in the order], regardless of whether their addition was or was not requested by MySpace in this motion. Responsibility for taking reasonable steps to ensure the completeness of its production—including identifying all appropriate custodians and preserving and searching their records—remains with UMG.
>
> (*Id.* at p. 2).

Likewise, UMG's obligation to ensure a complete production should not be supplanted by the parties' use of certain agreed-upon search terms and custodians. UMG should be ordered to make a diligent effort to locate and a produce all responsive, non-privileged documents, regardless of whether they are within the possession of certain specified custodians, are discovered after applying certain search terms, or would have otherwise been revealed through exercising basic diligence to ensure its complying with its discovery obligations.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### K. The Court Ordered UMG to Produce Documents Evidencing the Promotional Value of Various Websites

*Relevant to Joint Stip re Veoh's MTC, V. Issue No. 4, Joint Stip pp. 144-226*

- *Veoh's Requests For Production Nos. 34-42, 52-53, 96, 98-147, 151-153, 157-159, 161-168, 172, 175-178, 182-202, 210-214, 216, 218, 220-221, 225-225, 227-229, 232-233, 235-241 (Id. at pp. 148-223)*
- *Interrogatory No. 4, 5, 12, 14, 22 (Id. at pp. 144-148.)*

In its March 27, 2007 Order on MySpace's Motion to Compel, the Court ordered production in response to seven of nine requests that MySpace moved to compel relating to the promotional value of various websites. UMG should likewise be required to produce such information here. (Ranahan Decl. ¶ 8 and Exh. G (3/27/08 Order).)

### L. The Court Ordered UMG to Produce Documents Evidencing Plaintiffs' Revenues, Profits and Value of Content

*Relevant to Joint Stip re Veoh's MTC V. Issue No. 4, pp. 144-226*

- *Veoh's Requests For Production Nos. 34-42, 52-53, 96, 98-147, 151-153, 157-159, 161-168, 172, 175-178, 182-202, 210-214, 216, 218, 220-221, 225-225, 227-229, 232-233, 235-241 (Id. at pp. 148-223)*
- *Interrogatory No. 4, 5, 12, 14, 22 (Id. at pp. 144-148.)]*

In the March 27, 2008 Order on MySpace's Motion to Compel, the Court ordered production in response to all ten requests that MySpace moved to compel relating to revenues, profits, and value of content.

During the November 5, 2007 hearing on this issue, UMG attempted to foreclose discovery related to promotional value, profits, revenues, and other damages-related information as irrelevant given UMG's election of statutory damages. In response, the Court stated to UMG's Counsel:

> We're not arguing the merits here . . . we're trying to provide each side with the information they need to make the best arguments they can. And which one prevails will be decided by a different authority.
>
> (Ranahan Decl. ¶ 3 and Exh. B at p. 139:7-13 (11/5/07 Transcript).)

UMG should be ordered to produce such information here. (Ranahan Decl. ¶ 8 and Exh. G (3/27/08 Order).)

### M. <u>The Court Again Found Information Regarding Viral Marketing To Be Relevant To Damages, Despite UMG's Election of Statutory Damages</u>

*Relevant to Veoh's MTC (Docket 81), IV. Issue 3, pp. 114-144*

- *Veoh's Request For Production Nos. 40, 42, 45, 46, 54, 55, 150, 154-156, 181, 202-209, 217 (Id. at 119-131).*
- *Veoh's Interrogatory Nos. 9. 10, 11, 13, 15, 16, 19, 24 (Id. at 114-119).*

During the April 22, 2008 motion to compel hearing, UMG argued that because the Copyright Act allows the election of statutory damages, it should not be required to produce damages about lost profits or other such information. (Ranahan Decl. ¶ 9 and Exh. H (4/22/08 Transcript at 57:16-64:18.). The defendant argued that if UMG's



Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

viral marketing efforts included leaking free links (e.g., through social networking sites) to the same recordings that UMG was claiming damages for, such would provide evidence that UMG has not actually been damaged. The Court noted that despite UMG's election of statutory damages, if the defendant could demonstrate that UMG did not lose any profits because it was already permitting the same recordings to be freely viewed on the internet, such evidence would be a "a factor the court can consider in determining what amount of statutory damages to award." (*Id.* at 62:24-63:4).

As a result of the Court's November 8, 2007 Order in the *Crackle/Grouper* Action, UMG produced to the defendant some documents with respect to what UMG represented to be the primary viral marketing division, NetReach. Subsequently, the defendant discovered that most viral marketing for UMG artists appeared to be going through many of UMG's record labels, and by the efforts of interns. (*Id.* at 53:11-55:24). Further, as explained by UMG's Counsel at the hearing, the only reports regarding viral marketing that UMG offered to produce (in addition to the past, insufficient production) were marketing reports. (*Id.*) The defendant was concerned that UMG may have intentionally omitted specified viral marketing efforts. (*Id.* at 109:13-110:8). Therefore, the production needed to be expanded. (*Id.*)

While the Court instructed the parties to confer about how to carve out reasonable limitations to the inquiry of which labels and additional custodians to include in viral marketing discovery, the Court repeatedly indicated that UMG should at least search the files of interns and other employees for evidence of viral marketing. (*Id.* at 77:4-78:25; 95:1-4; 98:11-21; 103:23-104-105:19; 109:12-110:118). Thus, UMG should be required to make a diligent search to provide responsive information and documents with respect to viral marketing in this action. This should undoubtedly include all relevant interns and other employees within UMG's control, who are

/ / /

/ / /

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

responsible for the viral marketing of those artists' works that UMG alleges have been infringed in this action.

Dated: September 2, 2008

**WINSTON & STRAWN LLP**

By /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**