Rebecca Calkins (SBN: 195593)
Erin Ranahan (SBN: 235286)
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750
Email: rcalkins@winston.com
Email: eranahan@winston.com

Jennifer A. Golinveaux (SBN 203056)
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)
Email: jgolinveaux@winston.com

Michael S. Elkin (*pro hac vice*)
Thomas P. Lane (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)
Email: melkin@winston.com
Email: tlane@winston.com

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.* <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., *et al.* <br><br> Defendants. | Case No. CV 07 5744 – AHM (AJWx) <br><br> **STATEMENT OF GENUINE ISSUES IN SUPPORT OF VEOH NETWORKS, INC.'S OPPOSITION TO UMG'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: VEOH'S SECOND AFFIRMATIVE DEFENSE (17 U.S.C. § 512)** <br><br> **Local Rule 56-2** <br><br> Date: October 20, 2008 <br> Time: 10:00 a.m. <br> Ctrm: 14 |

Though Veoh Networks, Inc. ("Veoh") does not consider it necessary for the facts below to be litigated before the Court is able to rule on Plaintiffs' motion, Veoh files this separate Statement of Genuine Issues in response to Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law.

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| **Background Facts on Veoh and Its Services** ||
| 1. Veoh operates two interrelated services, a web site (www.veoh.com) and a client software application (VeohTV). Through both services, viewers can freely access video content. | UNDISPUTED |
| 2. Veoh's video content can be viewed through Veoh's website or through its client software, and viewers can download full copies of available videos. | UNDISPUTED |
| 3. Veoh allows its viewers to use its service free of charge. Veoh's revenues and profits come from advertising displayed along with or next to videos. | DISPUTED to the extent that this assumes that Veoh has earned any "profits." Veoh has yet to turn a profit, and Plaintiffs present no evidence about any purported profits earned by Veoh. |
| **Facts Relating to Uploading Videos to Veoh** ||
| 4. Some of Veoh's content is uploaded by its users, either through Veoh's website or through VeohTV. | UNDISPUTED |
| 5. When a user uploads a video through VeohTV, the user is asked to enter some information about the video - a title, a description, a category (such as music or travel) and "tags." This information is collectively known as "metadata." | UNDISPUTED |
| 6. Veoh indexes each video's metadata so it can be searched for by others. | UNDISPUTED |
| 7. Video files come in a variety of formats. Veoh attempts to accommodate all the formats it can. | UNDISPUTED |
| 8. When uploading a video through | UNDISPUTED |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| Veoh's website, a user must "state that [the user] ha[s] read and agree[s] to Veoh Publisher Terms and Conditions." | |
| 9. Veoh's Publisher Terms and Conditions provide that users "grant Veoh a limited, non-exclusive, worldwide, revocable, sublicensable license to perform such acts in connection with [their] Video Material and Publisher Material as are necessary to provide the Veoh Service. Specifically, the foregoing license includes, without limitation, and to the extent necessary to provide the Veoh Service, permission for Veoh, to: (i) publicly display, publicly perform, transmit, distribute, copy, store, reproduce and/or provide [their] Video Material and Publisher Material on or through the Veoh Service, either in its original form, copy or in the form of an encoded work; (ii) secure, encode, reproduce, host, cache, route, reformat, analyze and create algorithms based on [their] Video Material and Publisher Material; (iii) distribute, transmit, and/or display [their] Video Material and Publisher Material and encoded works via such technologies as are supported by Veoh from time to time; and (iv) display advertisements in connection with any display of [their] Video Material and Publisher Material and encoded works. For the avoidance of doubt, Veoh expressly acknowledges and agrees that the Veoh Service does not include taking title to any Video Material and Publisher Material supplied by [its users]." | UNDISPUTED |
| 10. When uploading a video through VeohTV, a user must check a box stating that he or she "ha[s] read, understand[s], and agree[s] to the Veoh Terms of Use." | UNDISPUTED |
| 11. Veoh's Terms of Use provide that when a user uploads a video, Veoh receives a "worldwide, non- exclusive, royalty-free, | UNDISPUTED |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| perpetual, irrevocable, sublicensable and transferable license[,]" which states that Veoh is allowed "to use, reproduce, modify, distribute, prepare derivative works of, display, publish, perform and transmit" videos uploaded by its users. | |
| 12. Veoh's Terms of Use provide that "If you are a publisher and wish to upload video content to the Veoh Service, then, in addition to this TOU [Terms of Use], the Publisher Terms and Conditions or the Veoh Pro Publisher Terms & Conditions..., as applicable, will apply to you and are incorporated by reference." | UNDISPUTED |
| 13. Veoh's search engines will "crawl" other websites, such as YouTube.com, to "surface" videos from other sites. | UNDISPUTED |
| **Uploading Videos Through VeohTV** | |
| 14. For files uploaded through VeohTV, the client software provided by Veoh breaks the video file into 256- kilobyte pieces or "chunks," which are then sent to Veoh, and saved on Veoh computers known as "content servers." | UNDISPUTED |
| 15. Once Veoh receives the video file, it passes the video through its "encoding pipeline," converting the video from its original format into a format known as Flash 7. | UNDISPUTED |
| 16. Videos which have been transcoded by Veoh into Flash 7 format are given a uniform frame rate and size, predetermined by Veoh and not adjustable by the user. | UNDISPUTED |
| 17. Veoh automatically generates a thumbnail image which appears by default on Veoh's website. However, a user can upload a replacement thumbnail image. | UNDISPUTED |
| 18. If the Veoh user who uploaded the video is a "Pro" user, Veoh will also transcode | UNDISPUTED |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| the video into two additional formats, known as Flash 8 (a newer version of the Flash player) and MPEG-4 (another video format that can, for example, play on iPod devices). | |
| 19. For videos uploaded through VeohTV by Pro users, Veoh creates and retains four copies: the 256-kilobye "chunks" copy, a Flash 7 copy, a Flash 8 copy, and an MPEG-4 copy. | UNDISPUTED |
| 20. Veoh Pro membership is free. | UNDISPUTED |
| **Uploading a Video Through Veoh's Website** | |
| 21. When uploading a video through Veoh's website, the user is asked to provide metadata about the video (i.e., a title, description, and, optionally, any category information and tags), assents to Veoh's Publisher Terms and Conditions, and then selects a video file for upload. | UNDISPUTED |
| 22. A copy of the original video file is sent to Veoh's "web upload" servers. | UNDISPUTED |
| 23. Veoh takes the original video file from its "web upload" servers and passes it through its encoding pipeline to create a 256-kilobyte "chunks" copy and then a separate Flash 7 copy of the video. | UNDISPUTED |
| 24. Veoh reformats videos into 256-kilobyte "chunks" copies so that Veoh can more easily distribute permanent copies of the videos to viewers. | DISPUTED with respect to Plaintiffs' use of the phrase "permanent." The copies of videos downloaded into the Veoh player and VeohTV are not properly described as "permanent" because Veoh retains the ability to terminate the user's access to copies of such videos through the Veoh player or VeohTV if, for instance, Veoh receives a DMCA notice so long as the file resides within the user's Veoh directory. Papa Decl. at ¶ 18. |

| **"UNDISPUTED" FACT** | **VEOH'S RESPONSE** |
|---|---|
| 25. When a user uploads a video through Veoh's website, Veoh reformats the video into a predetermined dimension (320 x 240 pixels), video format (Flash 7), and frame rate (512 kilobits per second). | UNDISPUTED |
| 26. There is an additional set of preselected dimensions and formats for videos uploaded by Pro users. | UNDISPUTED |
| 27. The user who uploads a video cannot determine the video's dimension, video format, and frame rate. | UNDISPUTED |
| **Searching for and Viewing a Video Through Veoh's Website** | |
| 28. Veoh uses a method of "streaming" known as "progressive downloading," meaning that when a user "streams" a video, Veoh (or its Content Deliver Network ("CDN") partner) actually provides a full copy of the video in the viewer's temporary computer memory, or browser cache. | UNDISPUTED |
| 29. So long as the viewer does not stop the download, every time a viewer streams a video on Veoh, the viewer will necessarily have a complete copy of the video file. | UNDISPUTED |
| 30. The viewer can direct her internet browser to the website www.veoh.com, and then type "50 Cent Candy Shop" into the Veoh search box. | UNDISPUTED |
| 31. In response to a search query, Veoh searches the title, description, and tag metadata associated with videos uploaded to Veoh, looking for videos responsive to the request. | UNDISPUTED |
| 32. A search for "50 Cent Candy Shop" returned a list of videos, including a video entitled "50 Cent Featuring Olivia - Candy Shop." | UNDISPUTED |
| **Searching for and Viewing Videos Through VeohTV** | |
| 33. When a viewer searches for videos through VeohTV, Veoh returns a list of the | UNDISPUTED |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| responsive videos available on Veoh's website, as well as videos available on other websites, including Yahoo! Video. | |
| 34. The videos located in the search are sorted by tabs identifying the website from where the video originated (*e.g.,* one tab for Veoh, another for Yahoo, etc.). | UNDISPUTED |
| **Downloading a Video Through Veoh** | |
| 35. Veoh viewers can also download permanent copies of most videos available through Veoh. To download a video, the user first downloads the free VeohTV software. | DISPUTED with respect to Plaintiffs' use of the phrase "permanent." The copies of videos downloaded into the Veoh player and VeohTV are not properly described as "permanent" because Veoh retains the ability to terminate the user's access to copies of such videos through the Veoh player or VeohTV if, for instance, Veoh receives a DMCA notice so long as the file resides within the user's Veoh directory. Papa Decl. at ¶ 18. |
| 36. Registration with Veoh is free. The user need only provide an email address. | UNDISPUTED |
| 37. A viewer downloads a video by clicking the "Download Video" Button. | UNDISPUTED |
| 38. When a viewer downloads a video, Veoh transfers the 256-kilobyte "chunks" copy that it previously made of the original video file. The VeohTV software assembles these chunks together into a complete copy of the original file on the viewer's computer. | UNDISPUTED |
| 39. Veoh sometimes uses its "peer-assisted delivery network" to effectuate its viewers' downloading of files. When a download is "peer-assisted," some of the file a viewer seeks to download is transferred from the computers of other Veoh viewers who have already downloaded the file being sought. | UNDISPUTED |

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| 40. Even when the "peer-assisted" delivery mechanism is employed, Veoh itself (or its CDN) delivers roughly between 75% and 100% of the download. | UNDISPUTED |
| 41. When a peer-assisted download initiates, Veoh does not inform its users that they are participating in the peer-assisted distribution of the video. | UNDISPUTED |
| 42. When a viewer wishes to download a video through VeohTV, the viewer clicks the download icon. | UNDISPUTED |
| 43. Veoh delivers videos to its users the same way for downloads initiated on the web site as for downloads initiated through the Veoh client software. | UNDISPUTED |
| **Instances of Specific UMG Works Available Through Veoh** | |
| 44. A video entitled "50 Cent - Candy Shop" was available for streaming and downloading on Veoh and through VeohTV. The video was referenced by Veoh ID number v880111y58q2WGy. The soundtrack to the video contains the sound recording for the work "Candy Shop" by the artist 50 Cent. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Declaration of Stacie Simons ("Simons Decl."), at ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id.* |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| 45. The video entitled "50 Cent - Candy Shop," referenced by Veoh ID number v880111y58q2WGy, on Veoh.com, had, at one point, been viewed 475 times and downloaded 61 times, according to the statistics reported by Veoh. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 46. A video entitled "Fall out Boy - dance Dance" was available for streaming and downloading on Veoh and through VeohTV, referenced by Veoh ID number v898060DsyB38pB. The soundtrack to this video contains the sound recording for the work "Dance, Dance" by the artist Fall Out Boy. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh |

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| | received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 47. The video entitled "Fall out Boy - dance Dance" referenced by Veoh ID number v898060DsyB38pB, on Veoh.com, had, at one time, been viewed 353 times and had been downloaded 73 times, according to the statistics reported by Veoh. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 48. A video entitled "JUST A GIRL NO DOUBT" was available for streaming and downloading on Veoh.com and through VeohTV, referenced by ID number v891742AsTQR5Rq. The soundtrack to this video contains the sound recording for the work "Just a Girl" by the artist No Doubt. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing |

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| | of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 49. The video entitled "JUST A GIRL NO DOUBT" referenced by Veoh ID number v891742AsTQR5Rq, on Veoh.com had, at one time, been viewed 157 times and downloaded 22 times, according to the statistics reported by Veoh. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 50. A video entitled "Bon jovi- its my life" was available for streaming and downloading on Veoh.com and through VeohTV, referenced by ID number v8379297Fyddmxj. The soundtrack to this video contains the | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After |

10

LA:224064.3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| musical composition for the work "It's My Life" performed by the artist Bon Jovi. | Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 51. The video entitled "Bon Jovi- its my life" referenced by Veoh ID number v8379297Fyddmxj, on Veoh.com had, at one time, been viewed 664 times and downloaded 71 times, according to the statistics reported by Veoh. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., at ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by |

11

VEOH'S STATEMENT OF GENUINE ISSUES IN SUPPORT OF OPP TO MSJ

LA:224064.3

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| | Veoh. *Id* |
| 52. A video entitled "Mary J. Blige - Take me as i am" was available for streaming and downloading on Veoh.com and through VeohTV, referenced by ID number v934573ncaPJKP6. The soundtrack to this video contains the musical composition for the work "It's My Life" performed by the artist Bon Jovi. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id* |
| 53. The video entitled "Mary J. Blige - Take me as I am" referenced by Veoh ID number v934573ncaPJKP6, on Veoh.com had, at one time, been viewed 116 times and downloaded 20 times, according to the statistics reported by Veoh. | DISPUTED to the extent that Plaintiffs imply that the copy of this purported representative example of an infringing video is still available on Veoh. After Plaintiffs filed this motion, Veoh checked the status of all five of these videos. Despite never having received notice from Plaintiffs that these pr any videos were infringing (before the filing of this motion), Veoh had independently terminated access to each of these videos back in 2007. Simons Decl., ¶ 6. Two of the videos were terminated in |

| "UNDISPUTED" FACT | VEOH'S RESPONSE |
|---|---|
| | response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id.* |
| 54. Veoh has not obtained authorization from UMG for its exploitation of these works. | UNDISPUTED |
| **Other Facts** | |
| 55. The *American Heritage Dictionary* (Houghton Mifflin 1985) defines "storage" as "[t]tle act of storing goods." "Store" means "1. To reserve or put away for future use. 2. To fill, supply, or stock. 3. To deposit or receive in a storehouse or warehouse." | UNDISPUTED |
| 56. The *American Heritage Dictionary* (Houghton Mifflin 1985) defines "reside" as, "1. To live in a place for an extended period of time. 2. To be inherently present. 3. To be vested, as a power or right." | UNDISPUTED |

## I. VEOH'S CONTENTIONS REGARDING PLAINTIFFS' "CONCLUSIONS OF LAW"

As discussed in detail in Veoh's Opposition, Veoh disputes Plaintiffs' "conclusions of law" set forth in paragraphs 59-60 and 65-68, which find no support in the plain language of Section 512(c), the legislative history or any cases that have ever interpreted Section 512(c) of the DMCA. In fact, under the same circumstances, contrary legal conclusions have already been reached, as Veoh was found eligible for and entitled to Section 512(c) safe harbor in *Io Group, Inc. v. Veoh Networks, Inc.*, 2008 U.S. Dist. LEXIS, 65915, No. 06-3926, slip op. at 20 (N.D. Cal. Aug. 27, 2008), ("*Io Group, Inc.*").

Veoh has also not been provided sufficient discovery[1] regarding Plaintiffs' purported rights to the works listed in Paragraphs 44-53, and thus the Conclusions of Law set forth in paragraphs 57 and 58 about UMG's purported "exclusive rights to reproduce, distribute, and perform its copyrighted works" under 17 U.S.C. § 106 require a factually premature leap.

With respect to Paragraph 59, Veoh disputes that the upload or download of files by its users is a direct (or indirect) infringement by Veoh. As Veoh has not engaged in any volitional conduct with respect to the alleged infringements, Veoh cannot be liable for direct infringement as a result of the actions of Veoh's users. *See CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 554, 555-557 (4th Cir. 2004); *The Cartoon Network LP, LLP v. CSC Holdings, Inc.* 536 F3d 121 (2d Cir., Aug. 4, 2008); *Religious Technology Center v. Netcom On-line Communications Service, Inc.*, 907 F.Supp. 1361 (ND Cal. 1995); *Field v. Google, Inc.*, 412 F. Supp 2d. 1106 (D. Nev. 2006). In addition, Plaintiffs overstate the holding in *A & M Records v. Napster, Inc.,* 239 F.3d 1004 (9th Cir. 2001) (*"Napster"*) as holding that "the download and upload of copyrighted music constitutes direct infringement of copyright." While that court noted that Napster users who "upload file names to the search index for others to copy violate plaintiffs' distribution rights" . . . and "Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights," the court explicitly stated that "the district court's conclusion that plaintiffs have presented a prima facie case of direct infringement by Napster users is not presently appealed by Napster." *Id.* at 1013-1014. *Napster* instead sought to resolve whether the fair use affirmative defense required overturning the preliminary injunction against Napster. *Id.* The court also stated that "absent any specific information which identifies

---

[1] Plaintiffs have failed to even provide a list of allegedly infringing videos. They have also taken the position that their discovery with respect to copyright ownership should be limited to copyright registrations—despite numerous reasons for requiring more extensive discovery. Such is currently an ongoing and unresolved discovery dispute between the parties. *See* Veoh's Summary of Discovery Orders in *MySpace/Grouper* Actions Relevant to Current Discovery Disputes, Docket No. 110, pp. 1-8.

infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material." *Id.* at 1021.

Moreover, in a very recent decision, *Capitol Records Inc., et al. v. Thomas,* Civil File No. 06-1497 (MJD/RLE) (D.C. Minn. 2008), the court vacated a judgment and granted a new trial for the defendant, who had been found liable for infringement for making available recordings owned by the plaintiffs' (including Plaintiff UMG Recordings, Inc.), on a peer-to-peer file sharing network. Declaration of Jennifer Golinveaux, ¶ 7 and Exh. F. After "reviewing the Copyright Act itself, the legislative history, binding Supreme Court and Eighth Circuit precedent, and an extensive body of case law examining the Copyright Act," the court held that merely making a work available to the public does not constitute a distribution. *Id.* at pp. 13-40.

In Paragraph 60, Plaintiffs cite footnote 7 in *Bonneville Intern. Corp. v. Peters,* 347 F.3d 485, 489 n.7 (3d Cir. 2003) ("*Bonneville*") as standing for the proposition that "streaming sound recordings over the internet requires a license." But in *Bonneville,* the requirements at issue involved internet streaming of AM/FM broadcast signals, and the licensing requirements set forth by Plaintiffs involve "interactive, on-demand" services. *Id.* at 489, n. 7, 499-500.[2] The entities at issue in *Bonneville,* internet radio webcasters, intentionally select and play certain copyrighted songs. Veoh's users do grant Veoh a license to stream videos uploaded by users, and Veoh removes infringing works when it has notice of such infringement

Paragraphs 65 and 66 set forth legal conclusions far beyond the issue of Veoh's eligibility for safe harbor protection, and instead ask this Court to reach premature legal conclusions that Veoh "engages in infringing activities." Veoh specifically disputes that any of the actions described in paragraphs 65 and 66 constitute either

---

[2] The court in *Bonneville* also stated that: "[t]he subject matter of the present case, Internet streaming, should not be confused with the use of the Internet to exchange digital copies of entire songs through centralized or distributed peer-to-peer file exchange mechanisms like Napster and KaZaA . . ." *Id.* at 489, n. 8.

15

direct or indirect infringement by Veoh even apart from Veoh's eligibility for Section 512(c) safe harbor. In addition, none of these actions make Veoh ineligible for Section 512(c) safe harbor as set forth in Section III of Veoh's Opposition to Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs also add to this paragraph subsections (vi) and (vii) that assume that Veoh "facilitates and encourages" infringing activities, despite the fact that none of the supposed facts to support these legal conclusions were listed in Plaintiffs' Statement of Uncontroverted Facts, and are instead wholly contradicted by the record and Veoh's strong policies against infringement. (Opp., *Passim*). As Veoh has not engaged in any volitional conduct with respect to the alleged infringements, Veoh cannot be liable for direct infringement as a result of the actions of Veoh's users. *See CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 554, 555-557 (4th Cir. 2004); *The Cartoon Network LP, LLP v. CSC Holdings, Inc.* 536 F3d 121 (2d Cir., Aug. 4, 2008); *Religious Technology Center v. Netcom On-line Communications Service, Inc.*, 907 F.Supp. 1361 (ND Cal. 1995); *Field v. Google, Inc.*, 412 F. Supp 2d. 1106 (D. Nev. 2006).

Veoh has also already been found to fall squarely within the protections of the Section 512(c) safe harbor. *Io Group, Inc., supra* at 20. In reaching its decision, the court in *Io Group Inc.* found Veoh's automated technological features that permit access to videos did not remove Veoh from the safe harbor, and found Veoh to be a model citizen under the DMCA. *Id.* at 31 ("[f]ar from encouraging infringement, Veoh has a strong DMCA policy, takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website"); *see also, The Cartoon Network LP,* LLP v. CSC Holdings, Inc. --F3d--, Nos. 07-1480-cv(L), 07-1511-cv(CON) 2008 WL 2952614 at *9 (2d Cir., Aug. 4, 2008) (the court found "significant," in reversing a finding of infringement against the defendant, that the defendant was not "volitionally" involved in making infringing copies, as any such copies would be made by the defendant's users through automated functions.)

In Paragraphs 67 and 68, Plaintiffs set forth another flawed legal conclusion

16

LA:224064.3

already rejected in *Io Group, Inc.*—that Veoh's Section 512(c) protections should not extend to the automated functions that facilitate user access to content uploaded by Veoh's users. (*See* Opp. pp. 6-8). The only cases cited by Plaintiffs (*Fair Housing Council of San Fernando Valley v. Roomates.com LLC,* 521 F.3d 1157 (9th Cir. 2008) and *Atlantic Recording Corp. v. XM Satellite Radio, Inc*., 2007 WL 136186 (S.D.N.Y. Jan. 19, 2007) (*See* Opp. pp. 24-25)) do not involve the DMCA and are irrelevant to Veoh's eligibility for Section 512(c) safe harbor.

DATED: September 29, 2008   WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan

Rebecca Lawlor Calkins
Erin Ranahan
333 S. Grand Avenue
Los Angeles, California 90071-1543
(213) 615-1700 (Telephone)
(213) 615-1750 (Facsimile)

Jennifer A. Golinveaux
101 California Street
San Francisco, California 94111-5894
(415) 591-1000 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin
Thomas P. Lane
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant