IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian D. Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | Case No. CV-07-05744 AHM (AJWx) |
| Plaintiffs, | **UMG'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: VEOH'S SECOND AFFIRMATIVE DEFENSE (17 U.S.C. § 512)** |
| vs. | |
| VEOH NETWORKS, INC., *et al.*, | |
| Defendants. | Date:    October 20, 2008 |
| | Time:    10:00 a.m. |
| | Ctrm:    14 |
| | Judge:   Hon. A. Howard Matz |

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

Dockets.Justia.com

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................1

II.     THE DMCA EXCLUDES VEOH'S INFRINGING CONDUCT.................2

    A.      The Plain Language of the DMCA Excludes Veoh's
        Conduct ................................................................................3

        1.      The Ordinary meaning of the DMCA excludes Veoh...............4

        2.      The context of Section 512(c) excludes Veoh...........................5

        3.      Veoh's interpretation would improperly rewrite the
            DMCA ...........................................................................6

    B.      The Legislative History Of The DMCA Contradicts
        Veoh's Interpretation ................................................................7

        1.      The DMCA's plain meaning makes sense; Veoh's
            interpretation does not .......................................................8

        2.      The legislative history confirms the plain language
            of the DMCA ...................................................................11

III.    THE ISSUES RAISED BY UMG'S MOTION REMAIN
    ISSUES OF FIRST IMPRESSION ....................................................13

    A.      The *Io Group* Case Does Not Address The Issues
        Presented Here ........................................................................13

    B.      The Other District Court Decisions Relied On By Veoh
        Do Not Address The Issues Presented Here .......................17

        1.      *Corbis Corp. v. Amazon.com, Inc.*...............................17

        2.      *Hendrickson v. Amazon.com, Inc.* .............................18

        3.      *Hendrickson v. eBay, Inc.* .........................................19

        4.      *Costar Group, Inc. v. Loopnet, Inc.*...........................20

IV.     VEOH'S ADDITIONAL ARGUMENTS DO NOT AND
    CANNOT FORESTALL PARTIAL SUMMARY JUDGMENT .............21

    A.      The DMCA Contains No Exception For Automated
        Processing ..............................................................................21

    B.      Veoh Has Not Shown Respect For Copyright .....................23

    C.      Veoh Is Not Entitled To Summary Judgment.....................24

V.      CONCLUSION ..................................................................................25

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Howerton,*
    673 F.2d 1036 (9th Cir. 1982) ........................................................................ 2

*Aronsen v. Crown Zellerbach,*
    662 F.2d 584 (9th Cir. 1981) .......................................................................... 3

*Bowsher v. Merck & Co.,*
    460 U.S. 824 (1983) ....................................................................................... 3

*Christensen v. Comm. I.R.S.,*
    523 F.3d 957 (9th Cir. 2006) .......................................................................... 3

*Corbis Corp. v. Amazon.com, Inc.,*
    351 F. Supp.2d 1090 (W.D. Wa. 2004) ............................................. 17, 18, 19

*CoStar Group, Inc. v. Loopnet, Inc.,*
    164 F. Supp.2d 688 (D. Md. 2001) .......................................................... 20, 21

*CoStar Group, Inc. v. Loopnet, Inc.,*
    373 F.3d 544 (4th Cir. 2004) ..................................................................... 16, 20

*Department of Hous. & Urban Dev. v. Rucker,*
    535 U.S. 125 (2002) ....................................................................................... 7

*Ellison v. Robertson,*
    357 F.3d 1072 (9th Cir. 2004) ...................................................................... 10

*Hendrickson v. Amazon.com, Inc.,*
    298 F. Supp.2d 914 (C.D. Cal. 2003) ...................................................... 18, 19

*Hendrickson v. eBay, Inc.,*
    165 F. Supp.2d 1082 (C.D. Cal. 2001) ......................................................... 19

*Lamie v. United States Trustee,*
    540 U.S. 526 (2004) ....................................................................................... 6

*MAI Systems Corp. v. Peak Computer, Inc.,*
    991 F.2d 511 (9th Cir. 1993) .......................................................................... 2

*McCarthy v. Bronson,*
    500 U.S. 136 (1991) ....................................................................................... 3

*Muscarello v. United States,*
    524 U.S. 125 (1998) ....................................................................................... 3

*Nuclear Info. and Resource Service v. U.S. Dept. of Trans. Res.,*
    457 F.3d 956 (9th Cir. 2006) .......................................................................... 3

*On Command Video v. Columbia Pictures,*
    777 F. Supp. 787 (N.D. Cal. 1991) .............................................................. 23

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

|  | Page(s) |
|---|---|

*Perfect 10, Inc. v. CCBill, LLC,*
    488 F.3d 1102 (9th Cir. 2007)......................................................4, 9, 10

*The Cartoon Network LP, LLP v. CSC Holdings, Inc.,*
    536 F.3d 121(2d Cir. 2008) ...............................................................16

*United States v. Daas,*
    198 F.3d 1167 (9th Cir. 1999) ..............................................................2

*United States v. Locke,*
    471 U.S. 84 (1985) ...............................................................................6

*United States v. Missouri Pac. R. Co.,*
    278 U.S. 269 (1929) .............................................................................7

*United States v. Mohrbacher,*
    182 F.3d 1041 (9th Cir. 1999) .........................................................2, 3

*United States v. Wenner,*
    351 F.3d 969 (9th Cir. 2003) ...........................................................3, 6

## Statutes

17 U.S.C. § 101...............................................................................................2

17 U.S.C. § 512.......................................................................................passim

## Other Materials

*Forget about YouTube: Go To These Sites If You Want Hard Core*
    *Copyright Infringement,*
    TechCrunch (4/4/2007) ......................................................................23

*Veoh vs. Copyright Holders: Is a War Brewing?,*
    New York Times (8/9/2007) ..............................................................23

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

# I.    INTRODUCTION

Veoh does not dispute that it makes numerous copies of copyrighted works uploaded by users, transcodes those copyrighted works into different file formats so that they can be further distributed by Veoh, publicly performs those works on demand to anyone in the world with a computer, and distributes copies of those works for free to anyone who wants a copy. Nor does Veoh dispute that these acts of reproduction, public performance, and distribution are all exclusive rights of copyright holders under the Copyright Act. Instead, Veoh argues that it is permitted to do all this pursuant 17 U.S.C. § 512(c). In making this argument, Veoh ignores the plain language of that statute, which only limits liability for "storage at the direction of a user." Regardless of how Veoh wants to spin its conduct, one thing is clear: Veoh's acts of infringement have nothing to do with "storage" and certainly are not done "at the direction of a user." The limitation on liability set forth in Section 512(c) simply does not protect Veoh.

Though this case presents a simple question of statutory interpretation, Veoh fails to follow the clear rules set forth by the Supreme Court and the Ninth Circuit for interpreting statutes. In fact, Veoh's contentions ignore – and, in some cases, rewrite – the actual language of the DMCA. Likewise, Veoh's arguments mischaracterize, by using incomplete and selectively misleading quotations, the legislative history of the DMCA. The legislative history supports UMG's interpretation, not Veoh's. Still further, Veoh argues that various decisions have already held that the DMCA protects conduct like Veoh's. But none of these decisions either controls here or so holds.

Finally, Veoh retreats to empty rhetoric, suggesting that its business represents the "democratization of television," as if such hyperbole could excuse copyright infringement. Nothing in the DMCA – not its text nor its legislative history – remotely suggests that Congress intended to permit firms such as Veoh to use copyrighted content on the Internet without the requisite licenses, while

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 1 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

externalizing the costs of operating an illegal business onto the victims of this infringing business model. The DMCA gives Veoh no protection for its business model, much less its reproduction, public performance, and distribution of UMG's copyrighted works.

## II.     THE DMCA EXCLUDES VEOH'S INFRINGING CONDUCT

There is no dispute here regarding the material facts. Veoh concedes that it reproduces works uploaded to its system into a Flash-format file; that it reproduces works uploaded to its system into a "chunk" copy to facilitate later distribution; that it streams a copy of works uploaded to its system to viewers on the internet; and that it distributes copies of works to viewers via its download function.[1] All of these acts are done at the direction of Veoh, and no one else. And, none of these acts have anything to do with "storage at the direction of a user," as they must for Section 512(c) of the DMCA to apply They all have to do with putting content in a commercially distributable form and then distributing that content. These acts give rise to Veoh's infringement liability.

To avoid liability, Veoh engages in a tortured analysis of Section 512(c), which not only ignores its plain language and meaning – but effectively rewrites it. Veoh violates every rule of statutory construction, starting with the most basic one, which is to "discern the intent of Congress in enacting a particular statute," by looking "to the plain language of the statute." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) (*citing Adams v. Howerton*, 673 F.2d 1036, 1040 (9th Cir. 1982) and *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999)). Only where a plain meaning cannot be ascertained is resort to legislative history

---

[1] Veoh disputes that its downloads are "permanent." This is far from sufficient to create a disputed issue of fact; its downloads are unquestionably "fixed in a tangible medium of expression" on the computer of each viewer that downloads a copy. 17 U.S.C. § 101; s*ee also MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517-19 (9th Cir. 1993). Thus, Veoh unquestionably distributes copies of copyrighted videos.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 2 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

1   appropriate.  *See Nuclear Info. and Resource Service v. U.S. Dept. of Trans. Res.*,
2   457 F.3d 956, 960 (9th Cir. 2006).

3       Here, the plain language of the statute clearly excludes Veoh's conduct from
4   protection and it is unnecessary and inappropriate to resort to the legislative history.
5   But even if the legislative history is considered, it too confirms that Veoh's conduct
6   is not protected by the DMCA.

7       **A.    The Plain Language of the DMCA Excludes Veoh's Conduct**

8       The plain language of section 512(c) provides protection only for
9   "infringement of copyright by reason of the storage at the direction of a user."  The
10  Ninth Circuit recognizes three core principles to follow in assessing the meaning of
11  a statute.  First, "[w]here a statutory term is not defined in the statute, it is
12  appropriate to accord the term its ordinary meaning."  *Mohrbacher*, 182 F.3d at
13  1048 (internal quotations and citation omitted).  Unless there is an indication that
14  Congress intended some specific legal meaning, the Court may look to sources such
15  as dictionaries for a definition.  *See Muscarello v. United States*, 524 U.S. 125, 128
16  (1998).  Second, the Court should "look to the particular statutory language at issue,
17  as well as the language and design of the statute as a whole."  *McCarthy v. Bronson*,
18  500 U.S. 136, 139 (1991); *see also Christensen v. Comm. I.R.S.*, 523 F.3d 957, 960
19  (9th Cir. 2008) (same principle).  Finally, a court should not rewrite a statute either
20  by removing language or adding language.  *See United States v. Wenner*, 351 F.3d
21  969, 975 (9th Cir. 2003) ("[A] statute should not be construed so as to render any of
22  its provisions mere surplusage."); *see also Bowsher v. Merck & Co.*, 460 U.S. 824,
23  833 (1983) (restating "the settled principle of statutory construction that we must
24  give effect . . . *to every word of the statute*") (citations omitted)(emphasis added);
25  *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 590 (9th Cir. 1981) ("[A] court should
26  not add language to an unambiguous statute absent a manifest error in drafting or
27  unresolvable inconsistency.") (citations omitted).  Each of these three guiding
28  principles confirms that Veoh's conduct is not protected by the DMCA.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 3 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

## 1.   The Ordinary meaning of the DMCA excludes Veoh

Veoh does not dispute the ordinary meaning of "storage" that UMG provided in its opening brief.  UMG Opening Mem. (Docket No. 133), at 13.  Veoh contests neither the accuracy nor applicability of this definition.  *See* Veoh Statement of Genuine Issues (Docket No. 149), at ¶¶ 55-56 (listing definitions as "UNDISPUTED").  Veoh never explains how its reproduction, public performance, and distribution of copyrighted works – the reason for its infringement liability – constitute "storage."  It cannot.  These are not acts of reserving or putting away material as contemplated by the plain meaning of the word "storage."  This simple concession should end the inquiry.

Rather than dispute the ordinary meaning of "storage" within the DMCA, Veoh tries to suggest that the phrase "infringement of copyright by reason of the storage at the direction of a user" is "broad causal language.  Veoh Opp'n at 12.  This argument suggests that as long as something Veoh does could be called storage, its other acts "caused" by that storage would also be immunized.  In other words, Veoh contends that if anything it does falls within the limitation on liability of Section 512(c), then everything it does is categorically protected.  However, the Ninth Circuit has expressly rejected such a view.  *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1116-17 (9th Cir. 2007) (recognizing that the "by reason of" language used in the DMCA limits the reach of the "safe harbor" protections to the specifically listed conduct such that other "functions would remain outside of the safe harbor").[2]  The actual language of Section 512(c) provides only a limitation on liability that arises "by reason of the storage," not all acts further caused by storage.

But even if this language were "causal" as Veoh suggests, Veoh never explains how any storage it might perform somehow "causes" Veoh to make

_____

[2] Veoh argues that the *Fair Housing Council* and *Atlantic Recording* cases discussed by UMG in the moving papers (at 18-19) are irrelevant.  Veoh misses the point.  These cases confirm (like the Ninth Circuit's *CCBill* decision) that a limitation on liability for certain acts does not confer blanket immunity on the actor for other, unprotected, actions.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 4 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

multiple reproductions of a file (into a Flash-format file *and* into a "chunk" copy to facilitate distribution). Veoh never explains how storage "causes" Veoh to publicly perform the video contained in that file and it certainly never explains how any storage "causes" Veoh to transfer additional copies to the computers of any viewer who presses a download button. Storage does not cause Veoh to take these other actions. Veoh takes these additional actions to do something else – operate an internet TV network that exploits the intellectual property of others to allow Veoh to profit from the sale of advertising.

## 2. The context of Section 512(c) excludes Veoh

The DMCA creates a three-step process to determine an entity's eligibility for one of its limitations on liability. First, it must show that it is a "service provider" within the definitions set forth in the statute. Second, it must show that its infringement liability is "by reason of" engaging in one of the acts specifically identified in subsections (a) through (d). Third, it must show that none of the other tests in the relevant subsection disqualify it from protection (*e.g.*, Section 512(c)(1)(A-C)).

Veoh tries to eliminate all meaning from the middle step (i.e. demonstrating that its liability arises "by reason of the storage at the direction of a user"). Instead, Veoh argues that merely because it falls within the definition of a "service provider" under Section 512(k), this presupposes that its activities must fall within the limitation on liability of Section 512(c). An accused "service provider" must still show that its infringement arises by reason of one of the specified activities set forth in Sections 512(a-d). Veoh's argument contradicts the express structure created by Congress. If Congress intended any entity that qualified as a service provider was presumptively entitled to protection, there would have been no need for the specific identification of potentially protected activities in the DMCA.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 5 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

### 3. Veoh's interpretation would improperly rewrite the DMCA

A court should not rewrite the language of a statute in interpreting it. Thus, "a statute should not be construed so as to render any of its provisions mere surplusage." *Wenner*, 351 F.3d at 975. Likewise, a statute should not be construed to add additional provisions not included by Congress. *See Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from 'deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill.'") (quoting *United States v. Locke*, 471 U.S. 84, 95 (1985)). Veoh's asserted interpretation of the DMCA violates both principles.

Veoh argues that if an entity qualifies as a "service provider," then that entity's activities are presumptively within the scope of protection of one of the DMCA "safe harbors" unless subsequently excluded, for example by actual knowledge of infringement. *See, e.g.,* 17 U.S.C. § 512(c)(1)(A)(i). Veoh would effectively eliminate the language found in Section 512(c)(1) providing that the limitation on liability is available only for particular conduct. Under Veoh's interpretation, Section 512(c)(1) would be rewritten as follows:

> "A service provider shall not be liable for monetary relief, or; except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright ~~by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider,~~ if the service provider- . . ."

Obviously, such an interpretation cannot stand.

Veoh also offers an alternative argument that the storage of material "presupposes" (Opp'n, at 13) a purported right to display and distribute the material to others. This argument would also effectively rewrite the statute by adding language to the statute which Congress did not include, this time as follows:

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 6 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

"A service provider shall not be liable for monetary relief, or; except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user, or reproduction, or public performance, or distribution of material that resides on a system or network controlled or operated by or for the service provider, if the service provider-"

Again, such an interpretation cannot stand.

Both of Veoh's alternatives are inconsistent with the actual language enacted by Congress, which must be given effect by this Court.  Veoh's activities which give rise to its infringement liability are not storage.  Thus, Veoh's copyright infringement is not "by reason of the storage at the direction of a user."  Section 512(c) as written by Congress does not provide a limitation on liability for the activities giving rise to Veoh's infringement liability here.[3]  Veoh's arguments amount to nothing more than an improper effort to rewrite the statute.

**B.  The Legislative History Of The DMCA Contradicts Veoh's Interpretation**

Unless a statute is ambiguous or nonsensical, courts should look only to the plain language to interpret the text.  *See Department of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) ("[R]eference to legislative history is inappropriate when the text of the statute is unambiguous."); *United States v. Missouri Pac. R. Co.*, 278 U.S. 269, 278 (1929) ("[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended.").  Veoh makes no argument that the plain language is ambiguous.  Veoh merely argues that UMG's interpretation would render the statute nonsensical or inconsistent.  Veoh is wrong and resort to the

---

[3] Veoh's argument that the DMCA limitation on liability is purportedly "meant to cover more than mere electronic storage lockers" (Opp'n, at 13) implicitly concedes that Veoh's infringing activities go well beyond storage.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

legislative history is inappropriate.  Regardless, the legislative history confirms the plain meaning of the DMCA – that it does not protect Veoh's infringing activities.

### 1.  The DMCA's plain meaning makes sense; Veoh's interpretation does not

The plain language of Section 512(c) is neither ambiguous nor nonsensical. Although Veoh suggests that construing Section 512(c) narrowly would render it illusory, Veoh does not show that the statute would never protect any service provider, only that it would not protect Veoh – hardly a reason to ignore the plain language.

Veoh tries to bootstrap itself into the DMCA's protections by arguing for an implicit right to display infringing content, citing Section 512(c)(1)(C) involving notices of infringement sent to service providers.  Veoh argues that this provision implies that a service provider is permitted to publicly perform and distribute material because otherwise there would be no possibility that copyright holders would know of infringing material about which to send a notice.  In making this argument, Veoh tries to conflate the notice provision – which can be sent for any type of infringement – with the provision that limits monetary relief for only one type of infringement – storage.  ***The fact that a notice of infringement can be sent for infringements beyond storage (e.g., distribution) does not mean that Congress intended to limit liability for all forms of infringement.***  Veoh cannot use the notice provision to expand the limit of liability provision.  But that is precisely what Veoh is trying to do – and it relies on several false assumptions in doing so.

First, Veoh wrongly assumes that all "service providers" within the definition of Section 512(k) are operators of internet websites (like Veoh.com) that display material on the internet that may be viewed by people accessing the website.  In fact, Section 512(k) defines "service provider" as "a provider of online services or network access, or the operator of facilities therefore."  17 U.S.C. § 512(k)(1)(B).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

- 8 -

This definition encompasses entities that simply provide web *hosting* services.[4] These businesses provide servers (storage space) and connections that may be utilized by businesses that want to operate a website but not invest in all of the infrastructure hardware necessary for such an enterprise. *See, e.g., Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117-18 (9th Cir. 2007) (explaining that defendant "CWIE provides web hosting and related Internet connectivity services to the owners of various websites").[5] Such entities might host many different web sites. In the context of web-hosting businesses, the web-host is a "service provider" within the meaning of the DMCA, and the operator of the website is the "user" who stores material on the web-host's system or network.

Veoh further incorrectly assumes that an internet service provider inherently must be able to display the material that is "stor[ed] at the direction of a user" so copyright holders can send the infringement notices contemplated by the statute.[6] Veoh ignores the distinction between web hosts and website operators. Section 512(c) of the DMCA contemplates that a website hosted by a web-hosting service provider might be engaging in infringing behavior, such as through the display or performance of copyrighted material on a user's website. Under such circumstances, the DMCA (and specifically Section 512(c)(1)(C)) contemplates that

---

[4] The inclusion of such service providers is also explicitly set forth in the legislative history. *See* S. Rep. 105-190, at 54-55 (*available at* 1998 WL 239623, *54-55) ("This definition includes, for example, services such as providing Internet access, e-mail, chat room and web page hosting services.").

[5] *See generally http://en.wikipedia.org/wiki/Web_hosting.*

[6] Veoh's opposition spends significant time arguing that the DMCA's protection for "storage" of material implicitly confers a right to "provid[e] access to the material." See, e.g., Opp'n at 11. Beyond being contrary to both the DMCA's plain language and legislative history, this argument could not possibly forestall summary judgment here. The activities that are the subject of this motion are still in no manner undertaken at "the direction of a user", and are wholly unnecessary to merely providing "access" to the material. For example, all of Veoh's activities at issue here, including *offering **to the entire world** downloads and progressive streams of UMG's content, far exceed what even Veoh contends is necessary to provide "access." Instead, these activities are undertaken to implement Veoh's business purpose of profiting from the exploitation of copyrighted works for which it has no license. Thus, Veoh's activities still exceed the scope of DMCA protection, even under Veoh's incorrect construction of the DMCA.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

1945931

- 9 -

the web-hosting provider should take action when it receives notice of such infringing conduct from a copyright holder. This scheme does not require, as Veoh suggests, that the website be permitted to display material (much less publicly perform it or distribute copies of it to others). Instead, the DMCA contemplates that the "user" (the website operator) might display or perform copyrighted material without permission, but that the "service provider" (the web host) would take action upon receipt of notice of such infringement.

Other provisions of the DMCA are more sensible, not less (as Veoh contends) when Section 512(c) is correctly interpreted to limit liability only for infringement actually arising from storage, rather than multiple acts of reproduction, performance, and distribution. For example, Section 512(c)(1)(B) provides that the limitation on liability is only available where the service provider "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." The Ninth Circuit holds that analysis of "financial benefit" parallels the traditional vicarious liability analysis, where, for example increased traffic from infringement constitutes a direct financial benefit. *See CCBill LLC*, 488 F.3d at 1117-18 ("the relevant inquiry is 'whether the infringing activity constitutes a draw for subscribers'") (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)). Website operators almost invariably benefit from increased traffic (certainly they do when they sell advertising). Thus, under Veoh's assumptions, service providers could rarely, if ever, suggest that the financial benefit prong was not satisfied. Web-hosting service providers, in contrast, often charge a flat fee for their "webhosting and related Internet connectivity services." *Id.* at 1108 (describing defendant CWIE's business).[7] Thus, contrary to Veoh's arguments, the DMCA's structure makes more

---

[7] The Ninth Circuit noted in *Perfect 10* that the legislative history of the DMCA expressly contemplated that "receiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

- 10 -

sense, not less, when construed according to its plain language.

**2.**   **The legislative history confirms the plain language of the DMCA**

Even if resort to the legislative history of the DMCA were necessary, that legislative history confirms that Section 512(c) provides no protection for Veoh's infringing conduct.  Veoh selectively quotes from the legislative history, obscuring and mischaracterizing its true meaning.  Veoh principally relies on a single sentence in the House of Representatives Report stating that "Examples of such storage include *providing server space for* a user's web site, for a chatroom, or other forum in which material may be posted at the direction of users."  H.R. Rep. 105-551(II), at p. 53 (*available at* 1998 WL 414916, at *53) (emphasis added).  Rather than consider the entire sentence, Veoh repeatedly asserts that the legislative history of the DMCA states that Section 512(c) should limit liability for the operation of a chatroom.  In context, however, the actual legislative history refers to "*providing server space . . . for a chatroom.*"  That is, the storage is web-hosting (providing server space), not website operation (running the chatroom itself).   Tellingly, Veoh never quotes the explicit reference to operation of a website even though that is what Veoh actually does.  Veoh carefully avoids Congress's reference to "providing server space for a user's web site" because the legislative history refers to the operator of a web site as a "*user*" and not as a "*service provider.*"  The legislative history contemplates that "storage at the direction of a user" under Section 512(c) refers to web hosting a user's web site, not reproducing, publicly performing, and distributing copyrighted works through a website operated by the putative service provider.  Thus, the legislative history fits perfectly with UMG's understanding of the statute, but is directly at odds with Veoh's.

Veoh also references a passage in the Senate Report and suggests that this passage somehow shows that a service provider has a right to reproduce, display,

---

not constitute receiving a 'financial benefit directly attributable to the infringing activity.'"  *Id.* at 1118 (quoting H.R. Rep. 105-551(II) at 54 (1998)).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 11 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

perform, and distribute material. Once again, however, Veoh's selective quotations are misleading at best. The passage that Veoh carefully excerpted does not even suggest that service providers should have a right to reproduce, display, perform, or distribute copyrighted material. It merely confirms that such acts are infringing and contemplates that notice may be sent to the service provider hosting such infringing websites.[8] Thus, as with the House Report, the Senate Report contemplates that the limitation on liability for storage will apply to those providing server space for web sites operated by others.

The legislative history further confirms that the DMCA's limitations on liability were intended primarily for infrastructure service providers, not those who reproduce, display, publicly perform, and distribute content. For example, in the Senate Report, the Committee stated:

> "In the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability. For example, service providers must make innumerable electronic copies by simply transmitting information over the Internet. Certain electronic copies are made to speed up the delivery of information to users. Other electronic copies are made in order to host World Wide Web sites. Many service providers engage in directing users to sites in response to inquiries by users or they

---

[8] The full passage Veoh excerpts reads: "Subsection (c)(1)(A) sets forth the applicable knowledge standard. This standard is met either by actual knowledge of infringement or in the absence of such knowledge by awareness of facts or circumstances from which infringing activity is apparent. The term 'activity' is intended to mean activity using the material on the system or network. The Committee intends such activity to refer to wrongful activity that is occurring at the site on the provider's system or network at which the material resides, regardless of whether copyright infringement is technically deemed to occur at that site or at the location where the material is received. For example, the activity at an online site offering audio or video may be unauthorized public performance of a musical composition, a sound recording, or an audio-visual work, rather than (or in addition to) the creation of an unauthorized copy of any of these works." S. Rep. 105-190, at p. 44 (available at 1998 WL 239623, at *44) (emphasis added).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

volunteer sites that users may find attractive. Some of these sites

might contain infringing material.

S. Rep. 105-190, at 8 (*available at* 1998 WL 239623, at \*8).

All of the copying referenced in describing the purpose for the DMCA's limitations on liability addresses infrastructure activities such as transmission, hosting, etc. There is no suggestion that the focus of these protections was those who were operating the World Wide Web sites themselves. Indeed, websites like Veoh, or YouTube, or MySpace (often referred to as "web 2.0 sites") did not even exist in 1998 when the DMCA was enacted. Certainly, nothing in the legislative history suggests that a website operator (like Veoh) that makes multiple reproductions of works, publicly performs those works, and distributes copies of those works is entitled to protection under the DMCA.

## III. THE ISSUES RAISED BY UMG'S MOTION REMAIN ISSUES OF FIRST IMPRESSION

Veoh argues Magistrate Judge Lloyd fully considered the issues raised by UMG in the *Io Group* case and that the same issues have also been resolved by other Courts. Veoh cites no case from the Ninth Circuit, or indeed any Courts of Appeals to have considered whether Section 512(c) provides a limitation on liability for the kind of reproduction, public performance, and distribution of copyrighted works engaged in by Veoh. Moreover, none of the district court cases that Veoh cites have addressed the issues raised in this motion.

### A.    The *Io Group* Case Does Not Address The Issues Presented Here

Veoh spends much of its opposition arguing that Magistrate Judge Lloyd already considered the issues presented here in the *Io Group* case. Veoh is simply wrong. As UMG explained in its moving papers, Magistrate Judge Lloyd never considered reproduction of copyrighted works through creation of a "chunk" copy in order to facilitate distribution; public performance of copyrighted works through "streaming" to viewers; or distribution of copyrighted works through the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

downloading of copies of the works to viewers' computers.[9]  Indeed, even the

passages of the *Io Group* decision that Veoh quotes discuss the "uploading" of

videos, while never addressing Veoh's public performance and distribution of works

or explaining how such activities could constitute "storage at the direction of a

user."  Veoh implicitly concedes that these infringing activities were not the subject

of the decision in *Io Group*, arguing instead that they are "likewise automated

functions whereby a user's content is made accessible to other users."  Veoh Opp'n,

at 17.  Had Magistrate Judge Lloyd actually considered these issues, Veoh would

not be straining to argue that they were decided by implication or analogy.

    Veoh also argues that Magistrate Judge Lloyd properly relied on the two

different definitions of "service provider" found in Section 512(k).  Magistrate

Judge Lloyd, according to Veoh, concluded that any activity that would not

disqualify an entity from being a "service provider" should also permit that entity to

invoke the limitation on liability under Section 512(c).  This reasoning is backwards

and would expand Congress's language of "storage at the direction of a user" far

beyond any fair interpretation.

    Not only did Magistrate Judge Lloyd incorrectly expand Section 512(c) to

cover activities other than storage, but Magistrate Judge Lloyd's factual assumptions

about the two different definitions of "service provider" were also incorrect.  He

relied on the fact that Section 512(k)(1)(A) defines a "service provider" as an entity

offering transmission or connections "without modification of the content of the

material as sent or received."  Because the definition of service provider found in

---

[9] Veoh's characterization of the *Io Group* decision as "precedent" is also
incorrect.  The unpublished decision of a Magistrate Judge in another district which
does not consider the actual issues presented in this case is neither precedent nor
even persuasive authority.  Even more so given that Magistrate Judge Lloyd refused
to accept or consider amicus briefs based on Veoh's assertion that the *Io Group* case
presented "unusual" facts.  *See* Ledahl Decl. (Dkt. #137), Ex. S at p. 4.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 14 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

Section 512(k)(1)(B)[10] does not contain this language, Magistrate Judge Lloyd assumed that "modification of content" is an activity that falls within the limitation on liability of Section 512(c). This would rewrite Section 512(c)(1) to add the words "or modification of content" after the statutory language "storage at the direction of a user." Importing additional protections into Section 512(c), based on erroneous assumptions, is not a proper statutory interpretation.

Magistrate Judge Lloyd appears to equate "modification to the content" with Veoh's reproduction of a work to create a Flash-format copy of the file uploaded to Veoh's system.[11] However, the language does not refer to modification of the form, but to actual modification of the content. Indeed, the legislative history of the DMCA indicates that altering the form, but not the content of material does not constitute a "modification to the content" which could exclude an entity from the definition of "service provider" in Section 512(k)(1)(A). *See* H.R. Rep. 105-551(II) at 63 (1998) ("An entity is not disqualified from being a 'service provider' because it alters the form of the material, so long as it does not alter the content of the material."). Magistrate Judge Lloyd was, therefore, incorrect to assume that reproducing a file into a different form (*e.g.,* a Flash-format file) would necessarily disqualify an entity from being a "service provider" under Section 512(k)(1)(A). Because this fundamental assumption was wrong, all of the further reasoning that flowed from it was similarly wrong. Thus, not only was Magistrate Judge Lloyd's reasoning – which protects additional acts under Section 512(c) not included by Congress – incorrect, but Magistrate Judge Lloyd also relied on a false premise to reach this conclusion. This further undermines the validity of his analysis.

---

[10] An entity may only qualify for the protections of Section 512(a) if it is a service provider as defined in Section 512(k)(1)(A). Entities may qualify for the protections of Sections 512(b-d) if they are service providers as defined in Section 512(k)(1)(B).

[11] Magistrate Judge Lloyd never considered Veoh's further reproduction of files to make a "chunk" copy in order to facilitate Veoh's distribution of works via download.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 15 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

Ultimately, Veoh argues that Magistrate Judge Lloyd ruled that "'[h]ad Congress intended to include a limitation as to a service provider's modification of user-submitted information **[with respect to those eligible for Section 512(c) safe harbor]**, it would have said so expressly and unambiguously.'" Veoh Opp'n, at 18-19 (quoting *Io Group*, slip op. at 19) (brackets in Veoh Opp'n, emphasis added). Veoh fails to acknowledge that Congress *did* include an express and unambiguous limitation as to a servicer provider's modification of user-submitted information. That limitation is found in Section 512(c)(1) which provides that a limitation on liability is available *only* for "infringement by reason of storage at the direction of a user of material." Veoh desperately seeks to avoid this precise language because it does not describe the activities which give rise to Veoh's liability. Moreover, even if Magistrate Judge Lloyd correctly found that reproduction of a file into a Flash-format file was "modification" and that such "modification" was within the protections of Section 512(c), this would still not provide any protection for Veoh's public performance and distribution of copyrighted works – issues Magistrate Judge Lloyd did not even address. Certainly Veoh cannot suggest that these are acts of "modification" of the content.

Veoh also defends Magistrate Judge Lloyd's reliance on the *Cartoon Network* and *CoStar* cases. Because neither the Second Circuit in *Cartoon Network*, nor the Fourth Circuit in *CoStar* even purport to rule on any issue under the DMCA, Veoh's arguments are unavailing. *See The Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) (analyzing issues of direct infringement); *CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544 (4th Cir. 2004) (same). Instead, both of these cases address whether, under very different facts than those presented here, a specific reproduction constitutes direct infringement by the defendant. That question is not before the Court here. Neither case even purports to consider what activity constitutes "storage at the direction of a user."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 16 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

## B. The Other District Court Decisions Relied On By Veoh Do Not Address The Issues Presented Here

Veoh cites four district court decisions to support its contention that "courts routinely apply section 512(c) to service providers that provide access to user-supplied material." None of these cases actually addresses the questions presented here or supports Veoh's broad characterization.

### 1. *Corbis Corp. v. Amazon.com, Inc.*

*Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp.2d 1090 (W.D. Wa. 2004) analyzed, in part, whether Amazon.com was entitled to DMCA protection in connection with a service called zShops in which Amazon provided space on its internet platform in which other merchants could construct their own internet retail sites. *Id.* at 1094 ("To sell on zShops, a vendor creates a web page on the zShops platform that includes information regarding the product being sold."). Corbis contended that one or more vendors sold copyrighted Corbis images through their zShops web sites. *Id.* at 1097.[12] These allegations differ sharply from the issues presented in this case.

Additionally, in analyzing the DMCA issues in the *Corbis* case, the Court inexplicably skips the inquiry into whether the asserted liability is "by reason of the storage of material at the direction of a user" under Section 512(c)(1). Specifically, in *Corbis*, the Court correctly begins by analyzing the threshold question of whether Amazon is a "service provider." *Id.* at 1099. After analyzing this question, the Court recites that Section 512(c) protects a service provider from liability for

---

[12] Corbis further contended that two of their images were improperly displayed in a banner advertisement displayed on another website owned and operated by Amazon – IMDb.com. *Id.* Notably, Amazon did not even argue that the DMCA protected it for the images displayed on the IMDb site, so the court entered summary judgment against Amazon on the issue of DMCA protection for the Amazon-operated web site IMDb. *Id.* at 1110, n. 11. Thus the only DMCA issue considered in the *Corbis* case involved a zShops web site, hosted by Amazon – highly distinct from the facts present in this case where the infringement takes place on Veoh's own web site and through its own client software product.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 17 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

"infringement of copyright by reason of the storage at the direction of a user . . ."
The Court offers no analysis however, of whether Amazon's alleged liability is for
such infringement "by reason of the storage at the direction of a user." The Court
skips this analysis to proceed directly to the three additional requirements of Section
512(c)(1)(A-C), just as Veoh asks this Court to do. It is unclear from the Court's
opinion whether the parties did not contest that the alleged liability arose by reason
of the storage at the direction of a user . . ." or if the Court simply failed to perform
the necessary analysis. In any event, a case that did not analyze or consider the
question presented here provides no guidance for this Court's decision.

Veoh suggests that UMG's interpretation of the DMCA would require that
this case be decided differently. This argument is a red herring. First, since the case
is from another district court, there is no requirement that this Court follow its
rulings. More importantly, however, Veoh is simply wrong. UMG expresses no
opinion on whether the very different facts of the *Corbis* case could support a
DMCA defense for Amazon. UMG notes, however, that the court's description of
Amazon's zShops business as involving hosting third-party websites hews much
more closely to the intended focus of the DMCA than Veoh's conduct at issue here.

### 2. *Hendrickson v. Amazon.com, Inc.*

Next, Veoh relies on the district court decision in *Hendrickson v.
Amazon.com, Inc.*, 298 F. Supp.2d 914 (C.D. Cal. 2003). In this case, Amazon's
alleged liability arose from carrying advertisements for the sale of infringing DVDs
by a third party on Amazon's internet site. *Id.* at 914-15. Amazon carried an
advertisement for these DVDs, placed by the seller, but did not itself display,
perform, or reproduce any copyrighted work through its website. *Id.* at 918 ("Here,
the infringing activity is the sale of the unauthorized work, not the posting of the
listing."). Thus, unlike Veoh, Amazon's alleged liability did not arise from its
reproduction, public performance, or distribution of a copyrighted work.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

1    Additionally, like the *Corbis* decision, in analyzing the DMCA, Judge Hatter

2   did not analyze whether the infringement at issue was "by reason of the storage at

3   the direction of a user of material."  Indeed, the Court stated, "Because Amazon

4   qualifies as an ISP [Internet Service Provider] under the DMCA, it is entitled to the

5   safe harbor affirmative defense against a claim of vicarious copyright infringement

6   if it establishes the following three elements: . . ." *Id.* at 916.  The court proceeded

7   to recite the provisions of Section 512(c)(1)(A-C), but never considered the

8   language of Section 512(c)(1) in any form.  Thus, this case provides no guidance for

9   the questions presented here.

10              **3.  *Hendrickson v. eBay, Inc.***

11              Veoh also relies upon the district court decision in *Hendrickson v. eBay, Inc.*,

12  165 F. Supp.2d 1082 (C.D. Cal. 2001).  As with Hendrickson's case against

13  Amazon, the case against eBay involved carrying a listing advertising a third-party's

14  sale of infringing DVDs.  *Id.* at 1084-85.  As with the Amazon case, nothing

15  actually displayed on eBay's website infringed plaintiff's copyright.  *Id.* at 1087

16  ("Plaintiff does not allege that the advertisements that sellers posted on eBay's

17  website violate his copyright in 'Manson.'").  Thus, as with the previous case, and

18  unlike Veoh, the infringement liability had nothing to do with the reproduction,

19  public performance, or distribution of copyrighted works via the defendant's

20  website or client software.

21              While the district court in the *eBay* case did purport to analyze whether

22  eBay's allegedly infringing conduct fell within the category of conduct for which a

23  limitation on liability was available, the Court improperly rewrote the statutory

24  language in several respects, stating that "This section applies where a plaintiff

25  seeks to hold an Internet service provider responsible for either (1) infringing

26  'material' stored and displayed on the service provider's website *or* (2) infringing

27  'activity using the material on the [service provider's computer] system." *Id.* at

28  1088 (italics in original).  Notably, Judge Kelleher cited a separate statutory

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 19 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

1    requirement, Section 512(c)(1)(A)(i), in purporting to describe the language of

2    section 512(c)(1).  After extensively rewriting the actual statute, the court

3    effectively changed "storage at the direction of a user of material" to storage *and*

4    *display on the service provider's website or infringing activity using the material*.

5    This rewriting of the statute is supported neither by the plain meaning of "storage at

6    the direction of a user," nor by the legislative history.  Instead, the court's

7    interpretation violates the canon of statutory interpretation that additional provisions

8    or language may not be imported into an act of Congress.  *See* Section II.A, *supra*.

9              **4.    *CoStar Group, Inc. v. Loopnet, Inc.***

10          Finally, Veoh relies upon the district court decision in *CoStar Group, Inc. v.*

11   *Loopnet, Inc.*, 164 F. Supp.2d 688 (D. Md. 2001).  Veoh's reliance on this district

12   court decision is particularly perplexing since the case was subsequently appealed to

13   the Fourth Circuit which did not even consider the DMCA issues discussed by the

14   district court.  *See CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544 (4th Cir.

15   2004).  Moreover, the district court did not actually rule that LoopNet was entitled

16   to protection under the DMCA.  *CoStar*, 164 F. Supp.2d at 717 ("both motions

17   concerning the safe harbor defense of the DMCA will be denied").  Thus, the Court

18   entered no rulings that could be considered even persuasive precedent on the

19   application of the DMCA.

20          While the court purported to analyze some of the DMCA issues, its discussion

21   of "storage at the direction of a user" falls prey to the same logical error that Veoh

22   asks this Court to make.  The *CoStar* court incorrectly assumes that anyone who

23   displays material is entitled to rely on a notice and take-down policy as a basis to

24   avoid liability and therefore must be included in the 512(c) limitation on liability.

25   This analysis puts the cart before the horse.  If the infringing activity is not "storage

26   at the direction of a user" then there is no need to consider whether the defendant

27   could have effectuated a notice and takedown procedure – the defendant was never

28   entitled to rely on such a procedure.  Only if the service provider's liability is by

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931                                              - 20 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

1   reason of "storage at the direction of a user" is any consideration of applicable

2   notice provisions appropriate. The fact that an entity has a notice and take-down

3   procedure cannot transform its infringing activities into "storage at the direction of a

4   user." *CoStar* offers no guidance for this Court's decision here.

## IV.    VEOH'S ADDITIONAL ARGUMENTS DO NOT AND CANNOT FORESTALL PARTIAL SUMMARY JUDGMENT

### A.    The DMCA Contains No Exception For Automated Processing

Veoh's opposition repeatedly invokes the mantra that it merely "automatically

processes and allows users to view and download videos that users have uploaded to

its system." *See, e.g.*, Opp'n, at 14:20-25; 15:10-13; 17:15-18; 22:20-21. Veoh

suggests that because some of its processes are automated, it is therefore somehow

absolved of liability. Yet Section 512(c) provides a clear limitation on liability for

certain conduct ("storage at the direction of user,") and nothing in Section 512(c)

provides a limitation on liability for automatically processing material, much less for

allowing internet viewers to view and download copyrighted videos. Indeed,

elsewhere in the DMCA, Congress expressly provided a limitation on liability for

certain very narrowly-defined categories of automated processing. *See* 17 U.S.C.

§ 512(b)(1)(C) (providing a limitation on liability for intermediate and temporary

storage (*i.e.,* caching) where "the storage is carried out through an automatic

technical process . . ."). When Congress wanted to describe a limitation on liability

for automated processing, it knew precisely how to do so.[13] Congress specifically

did not use such language in Section 512(c).

Moreover, Veoh's characterization of its infringement as mere "automated

processing" is also factually misleading. Veoh intentionally designed its computer

system to perform certain functions. As set forth in UMG's opening brief, Veoh

makes all of the decisions about how to handle material uploaded by its users. Veoh

seems to argue that as long as it creates a machine, robot, computer program, or

---

[13] Of course Veoh does not attempt to invoke Section 512(b)'s limitation on liability because it cannot meet the various requirements.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

other automated process to perform the actual acts of reproduction, public performance, and distribution of copyrighted works on its behalf, it can have no responsibility for the resulting copyright infringement. This reasoning is patently absurd. Veoh chooses to make multiple reproductions of video files uploaded by its users, including at least a reproduction into a Flash-format file, and a reproduction into a "chunk" copy. Veoh chooses to publicly perform videos that are uploaded by its users by streaming them from Veoh's computers to the computers of viewers on the internet. Veoh chooses to distribute full copies of videos that are uploaded by its users to the computers of other viewers through its download function. These are all volitional acts by Veoh. The mere fact that Veoh chooses to implement its own decisions through a computer system does not absolve it of liability.

Veoh tries to suggest that these are all acts performed "at the direction of its users." First, this would only matter if these acts constituted storage, which they do not – "storage" and "at the direction its users" being independent requirements under Section 512(c). Additionally, however, these acts are performed at *Veoh's* direction, not its users', so that Veoh can implement a system to perform and distribute video content to viewers. Its ability to perform and distribute such content permits Veoh to sell advertising and to seek to profit from its activities. Veoh's revenues do not come from users paying a fee for Veoh to store videos – quite the contrary, users who store videos pay nothing. *See* SUF, ¶ 3 (materially undisputed). Instead, Veoh uses the content uploaded by its users (for which Veoh pays nothing) to sell advertising. This system only works because Veoh makes the decision to take the material uploaded by users and reproduce it, publicly perform it, and distribute it. Nothing requires Veoh to undertake these acts except its own profit motive.

Veoh also seems to suggest that if its activity is "automated," it cannot constitute infringement. The question of whether Veoh's conduct constitutes direct infringement is not presented by this motion and is reserved for another day. Thus,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE

Veoh's arguments have no bearing on the issues before the Court. While UMG will not address them at length here, UMG briefly notes that Veoh is also incorrect in its assertions. One who implements his infringement by a machine is still an infringer. *See, e.g.*, *On Command Video v. Columbia Pictures*, 777 F. Supp. 787, 790 (N.D. Cal. 1991) (analyzing an automated system for delivering movies to hotel rooms, and concluding that the system creator "'publicly performs' defendants' movies").

## B.    Veoh Has Not Shown Respect For Copyright

Veoh devotes significant space in its opposition to attempting to characterize itself as a great respecter of copyright.[14] Obviously, even if true, such a fact would have no bearing on the issue presented in this motion. Moreover, and in any event, Veoh's suggestions of respect for copyright are patently false. Veoh has been frequently recognized as one of the most egregious harbors of copyright piracy on the internet, including by *The New York Times*.[15] Similarly, Veoh's claim to be "at the forefront of collaborative inter-industry efforts alongside content owners to prevent infringement" is pure fiction. As set forth in UMG's moving papers, Veoh refused to implement filtering technology, such as that provided by Audible Magic, until long after it had already built a business on the back of UMG's content.[16]

---

[14] Veoh also implies that UMG cares little for its own copyrights, as evidenced by its failure to send DMCA notices. The opposite is true. UMG has been at the forefront of copyright protection. Moreover, UMG is not obliged to police Veoh's site in a endless game of "whack a mole," nor is Veoh entitled to purposely turn a blind eye to the rampant infringement it is facilitating, inducing, and profiting from.

[15] *Veoh vs. Copyright Holders: Is a War Brewing?*, New York Times (8/9/2007); *Forget about YouTube: Go To These Sites If You Want Hard Core Copyright Infringement,* TechCrunch (4/4/2007), a*vailable at* http://www.techcrunch.com/2007/04/04/forget-youtube-go-to-these-sites-if-you-want-hard-core-copyright-infringing-content/.

[16] Veoh provides this Court with the same misleading description of its previously-implemented "hash filtering" technology it offered to Magistrate Judge Lloyd. *See* Veoh Opp'n, at 7. This is not a "fingerprinting" technology as Veoh suggests. Indeed, as conceded by Veoh in deposition, this technology is capable *only* of recognizing exactly identical files. Glatstein Decl. in Support of Reply, Ex.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Veoh only began scanning the collection of videos on its website in June, 2008, after this lawsuit was filed, even though Grouper (now called Crackle) and MySpace had done so in November 2006 and February 2007, respectively.[17]  Glatstein Decl., Ex. A (Papa Depo.), at 103.

In truth, Veoh seeks to operate its business by turning a blind eye to rampant copyright infringement while collecting advertising dollars driven by viewers' interest in precisely that infringing content.  Veoh not only argues it should be able to make its living from such a model, but that true content owners, like UMG should be forced to expend their own resources to pursue the Sisyphean task of a never-ending chase after each instance of infringement on Veoh and every other site on the internet.  This would simply externalize the true cost of operating Veoh's business onto the shoulders of the victims of rampant copyright infringement.  Such a system is neither respectful of copyright, nor consistent with the DMCA.

## C.  Veoh Is Not Entitled To Summary Judgment

Veoh also suggests that although it has filed no motion, it should be granted summary judgment, rather than UMG.  Even if the Court were to disagree with UMG regarding the merits of this motion, Veoh has not demonstrated its own entitlement to summary judgment that it is entitled to the protections of Section 512(c).  This motion addresses only one specific issue under the DMCA, whether Veoh's infringement is by reason of the storage at the direction of a user of

---

A (Papa Depo.), at 50:1-51:7.  It does not recognize the underlying content in the file (as Audible Magic's technology does).  If two different users attempted to upload the same video that each had independently recorded from an MTV broadcast, for example, those two files would have entirely different hash values.  *Id.* at 50:21-51:7.  Likewise, if a user edited a previously rejected video to remove a fraction of a second from the video, the newly edited video would have an entirely different hash value than the previously rejected video and would be accepted without a true "fingerprinting" filter.  *Id.* at 50:25-51:7.

[17] *See* http://www.audiblemagic.com/news/press-releases/pr-2006-11-16.asp (Grouper); http://www.audiblemagic.com/news/press-releases/pr-2007-02-12.asp (MySpace)..

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

material . . . ." Because it is not, Veoh cannot obtain protection under the DMCA. Even if this were not so, Veoh has an affirmative burden of demonstrating its entitlement to DMCA protection, including demonstrating that it has an effective policy for terminating repeat infringers (17 U.S.C. § 512(i)); demonstrating that it lacked actual knowledge of infringement (17 U.S.C. § 512(c)(1)(A)(i)); demonstrating that it is not aware of facts or circumstances from which infringing activity is apparent (17 U.S.C. § 512(c)(1)(A)(ii)); does not receive a financial benefit directly attributable to the infringing activity where it has the right and ability to control such activity (17 U.S.C. § 512(c)(1)(B)); and acts expeditiously to remove material identified as infringing (17 U.S.C. § 512(c)(1)(C)). All of these issues are beyond the scope of this motion and, in any event, Veoh has not demonstrated any of these elements. Indeed, Veoh continues to conceal and withhold evidence directly relevant to these issues, including numerous categories of documents which are the subject of a motion to compel which is currently *sub judice* before Magistrate Judge Wistrich. Veoh's contention that it has any claim on summary judgment is entirely without merit.

## V.    CONCLUSION

Based on its moving papers and the foregoing, partial summary judgment should be entered in UMG's favor.

Dated: October 10, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: _____
      Steven A. Marenberg

Attorneys for Plaintiffs

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1945931

- 25 -

UMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
VEOH'S SECOND AFFIRMATIVE DEFENSE