IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian D. Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., *et al.*, <br><br> Defendants. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RE: DEPOSITIONS** <br><br> **Concurrently filed herewith:** <br> **(1) Declaration of Harvey Geller in Support of *Ex Parte* Application** <br> **(2) Declaration of Brian Ledahl in Support of *Ex Parte* Application** <br><br> Magistrate: Hon. Andrew J. Wistrich <br><br> Date: TBD <br> Time: TBD <br> Ctrm: 690 <br><br> Discovery Cutoff: January 12, 2009 <br> Pretrial Conference: April 6, 2009 <br> Trial Date: April 21, 2009 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1946070

UMG'S EX PARTE APPLICATION FOR PROTECTIVE
ORDER RE: DEPOSITIONS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Local Rule 7-19, Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, and Universal Music – MBG Music Publishing Ltd., (collectively "UMG") hereby apply to the Court *ex parte*, for a Protective Order re: Depositions of Messrs. Harvey Geller and David Ring. Specifically, UMG seeks an order that Mr. Geller's deposition not be taken and that in none of Veoh's depositions proceed until such time as Veoh has made an appropriate document production so that both parties' deposition efforts can proceed.

There are two grounds for this *ex parte* application. First, with respect to Mr. Geller, Veoh has noticed the deposition of UMG's senior in-house litigation counsel and the UMG employee responsible for overseeing this litigation. Such depositions are rarely permitted and Veoh cannot provide any valid basis for the deposition here. Second, with respect to both of Veoh's deposition notices, notwithstanding the Court's involvement to date, Veoh continues to withhold numerous categories of basic documents, interfering with UMG's ability to pursue its own deposition discovery. Veoh seeks to plunge ahead with its discovery (since UMG long-ago provided an extensive production) while stonewalling UMG's efforts at legitimate discovery. UMG seeks a protective order to prevent such one-sided discovery practice.

*Ex parte* relief is necessary to resolve these issues. Veoh served notice of these depositions on October 9, 2008, and scheduled the depositions for October 22 and October 24 – thirteen and fifteen days later. Thus, relief would not be timely were UMG to seek relief by a regularly noticed motion. UMG moved promptly to address these issues, giving Veoh notice of its concerns the day after the deposition notices were served.

The name, address, and telephone number of Veoh's counsel are as follows:

| | |
|---|---|
| Jennifer Golinveaux<br>WINSTON & STRAWN LLP<br>101 California Street<br>San Francisco, CA 94111-5894Fax:<br>Telephone: (310) 586-7800<br>Facsimile: (310) 591-1400<br>Email: jgolinveaux@winston.com | Rebecca Calkins<br>Erin Ranahan<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071-1543<br>Telephone: 213-615-1700<br>Facsimile: 213-615-1750<br>Email: rcalkins@winston.com<br>Email: eranahan@winston.com |

Michael S. Elkin
Thomas P. Lane
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: tlane@winston.com
Email: melkin@winston.com

Counsel for Veoh received notice of this *ex parte* application on October 14, 2007. Ledahl Decl. ¶ 2. Counsel for Veoh indicated that they oppose this application. *See* Ledahl Declaration, ¶ 2.

Dated: October 14, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl
Brian Ledahl

Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this Application, UMG seeks a protective order concerning certain depositions in this case. Most narrowly, this Application seeks a protective order regarding the deposition of Harvey Geller, UMG's Deputy General Counsel and head of UMG's in-house litigation department. Notwithstanding the clear authority discussed below that circumscribes the taking of depositions of persons in such positions, Veoh noticed Mr. Geller's deposition on October 9, 2008 for October 22, 2008 and has refused to abandon its intent to take it.

Veoh's notice of Mr. Geller's deposition makes little sense other than as a vehicle for harassment. Courts routinely prevent parties from deposing litigation counsel because of the significant potential for prejudice and the limited value of such depositions. In his position at UMG, Mr. Geller's primary responsibilities are to manage and oversee litigation, including this case. Because of Mr. Geller's role as litigation counsel, Veoh bears the burden of showing a need for this deposition and the inability to obtain the discovery elsewhere. Veoh has not and cannot make such a showing.

At the same time Veoh noticed Mr. Geller's deposition, it noticed the deposition of another UMG attorney, David Ring. That notice raised the need for even broader relief in this case. Stated simply, this Application seeks a more generalized temporary protective order to immediately remedy an unfair, untenable imbalance in discovery in this case. Notwithstanding this Court's expectations at the hearing on cross-motions to compel held in late August 2008, Veoh persists in refusing to comply with the most basic discovery obligations – refusing to produce documents by hiding behind the fact that the Court has yet to issue an order on UMG's motion to compel even though it indicated on the record that it was

"contemplating granting most of [UMG's motion].[1] This conduct, when coupled with the deposition notices Veoh has served, has created a situation in which Veoh seeks to advance its own discovery efforts while preventing UMG from moving forward with its own. To give but one example, among the numerous categories of highly relevant material Veoh still refuses to produce are *virtually all its internal email communications*. Thus, even though UMG almost immediately produced to Veoh all of the documents it was ordered to produce in the *MySpace* and *Grouper* cases previously administered by this Court,[2] Veoh has effectively blocked UMG's ability to take depositions. Not surprisingly, having received the discovery it needs to take depositions, Veoh has decided to start noticing depositions of UMG (though why it started with Mr. Geller and Mr. Ring remains a mystery), while UMG is disabled from pursuing meaningful depositions of its own. As noted, Veoh's excuse for all this: because the Court has not yet ordered production of such materials in connection with UMG's Motion to Compel (Dkt. # 71), Veoh need not produce such materials.

As a consequence of the foregoing, UMG seeks a protective order to prevent Veoh's efforts at one-sided discovery. UMG reiterates that it is more than willing for depositions to go forward mutually, but Veoh should not be permitted to benefit from its own discovery intransigence. Under these circumstances, a protective order (as well as a ruling on UMG's motion to compel that remains *sub judice*) is

---

[1] As the Court will recall, Veoh brought its cross-motion to compel without ever actually reviewing the over 1 million documents UMG had produced in this case. Hence, the Court denied Veoh's tactical cross-motion to compel, without prejudice to renew, if necessary, once Veoh actually put the "horse before the cart" by conducting the review of UMG's production it should have undertaken before filing any motion.

[2] The only exception to this relates to certain financial summary information concerning copyrighted works allegedly infringed by Veoh. However, as to this piece, as in the Grouper and MySpace cases, UMG needs to receive the media files from Veoh so it can identify the universe of infringing works so as not to engage in a piecemeal production of this information. Despite its assurances to the Court that it would give UMG access to these files within weeks of the August hearing, Veoh has failed to do that as well.

1 necessary. UMG is also prepared to attend a discovery conference with the Court if
2 the Court deems it advisable. We want, and need, to get discovery going.

## II. *EX PARTE* RELIEF IS NECESSARY HERE

*Ex parte* is procedurally proper under the circumstances. Veoh served the relevant notices of deposition on October 9, 2008, and noticed the depositions to take place on October 22 and October 24. Ledahl Decl., Exs. B (2008-10-09 letter from Golinveaux to Ledahl); C (Geller Deposition Notice); D (Ring Deposition Notice). UMG contacted Veoh the day after it received the notices (October 10, 2008) to raise its concerns. The requested protective order could not, however, be obtained by noticed motion prior to the dates set forth in Veoh's notices. Given this circumstance, UMG must resort to this *ex parte* application to obtain the necessary relief.

## III. MR. GELLER'S DEPOSITION SHOULD NOT GO FORWARD

The Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c). Because their potential testimony is generally privileged and their depositions are disruptive and frequently sought for the purposes of harassment, courts are generally wary of depositions of in-house litigators. The leading practice guide explains that "Litigation counsel are *presumptively entitled* to a protective order against being deposed by an adversary." W. Schwarzer, et al., Federal Civil Procedure Before Trial, § 11:1142, p. 11-141 (2008) (emphasis in original).[3]

---

[3] *See also N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987) ("[D]eposition of the attorney [usually] merely embroils the parties and the court in controversies over the attorney-client privilege and more importantly, involves forays into the area most protected by the work product doctrine-that involving an attorney's mental impressions or opinions."); *S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (granting protective order for deposition of counsel); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 593 (N.D.N.Y. 1989) ("[T]he deposition of counsel increases the likelihood that the attorney will be called as a witness at trial. Under such circumstances the attorney would normally be disqualified from providing further services."); *Securities and Exchange Commission v. World-Wide Coin Investments, Ltd.*, 92 F.R.D. 65, 67 (N.D.Ga. 1981) (barring deposition of SEC trial counsel); *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) ("[E]xperience teaches

Mr. Geller is litigation counsel for UMG in this case. Mr. Geller is UMG's Senior Vice President, Business & Legal Affairs, and is responsible for managing UMG's litigation, including the present lawsuit. Geller Decl., ¶¶ 3-4. As such, Mr. Geller interacts with outside counsel (including UMG's outside counsel in this matter, Irell & Manella), reviews and drafts pleadings and briefs, develops case strategy, and otherwise manages the litigation of this case and other UMG litigations. Geller Decl., ¶¶ 3-4.

Because of the inherent risk of harassment and disruption, the party seeking the deposition of litigation counsel (like Mr. Geller) must establish all three of the following factors: (1) that the opposing counsel has information that is "relevant and non-privileged"; (2) that the information is "crucial to preparation of the case," and (3) that "[n]o other means exist to obtain the information" other than to depose litigation counsel. *Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 478-79 (N.D. Cal. 1998) (applying and quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *Mori v. Baroni*, 2008 WL 2509143, *4 (E.D. Cal. 2008) (same); W. Schwarzer, Federal Civil Procedure Before Trial, § 11:1142 (same test). Veoh cannot meet any of these requirements.

First, Veoh does not explain how Mr. Geller's testimony is "relevant and non-privileged." This case involves Veoh's mass infringement of UMG's copyrights. Other than his involvement in managing this case (which clearly implicates privileged and work-product information), Veoh has pointed only to the fact that Mr. Geller participated in a settlement discussion with Veoh and its counsel prior to the filing of this lawsuit. Veoh has not explained – and it is difficult to imagine – how this fact is relevant to the matters at issue here.

Even if Veoh could demonstrate that Mr. Geller has some relevant, non-privileged information, it cannot establish that Mr. Geller's testimony would be

---

that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters.") (internal quotations omitted).

"crucial" to Veoh's preparation of its case. As noted above, other than his involvement in privileged and work-product activities, Mr. Geller was involved in a pre-litigation settlement discussion with Veoh. Veoh fails to explain how testimony about such a meeting (attended by Veoh officials and their litigation counsel) would be "crucial" to its preparation of this case, particularly given the fact that Federal Rule of Evidence 408 would likely render such testimony inadmissible.

Finally, Veoh cannot show that no "other means exist to obtain the information" it seeks through Mr. Geller's deposition. Once again, other than his involvement in privileged and work-product activities, Mr. Geller attended a settlement meeting with Veoh. Since Veoh and its counsel participated in that meeting, they do not need Mr. Geller to testify about what happened there.

In sum, Mr. Geller's deposition would be largely if not entirely unproductive and unnecessary. Veoh cannot satisfy any of the requirements to depose litigation counsel – and certainly cannot satisfy <u>all</u> three which it must satisfy in order to depose Mr. Geller.[4]

Accordingly, a protective order should issue to prevent this deposition.

---

[4] Veoh's suggestion that UMG identified Mr. Geller as a proper target for deposition is a red herring. Veoh served to UMG an interrogatory which asked UMG to "Identify <u>all</u> persons with knowledge of the <u>facts, allegations, and claims</u> set forth in the complaint…" Ledahl Decl., Ex. E (UMG's Responses to Veoh's First Set of Interrogatories). UMG responded with a list of individuals "who are the most knowledgeable about Veoh's infringement of plaintiffs' copyrights," including Mr. Geller. *Id.* However, Mr. Geller's knowledge – including his opinions, mental impressions, and other facts and knowledge acquired and prepared in anticipation of litigation – are privileged or are work product. *See, e.g., Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."); *United States ex rel. Bagley v. TRW. Inc.*, 212 F.R.D. 554 (C.D. Cal. 2003) (Wistrich, Mag. J.,) ("'Work product protection is designed to preserve the privacy of attorneys' thought processes, and to prevent parties from borrowing the wits of their adversaries.'" (quoting William W Schwarzer, et al., <u>Federal Civil Procedure Before Trial</u> ¶ 11:39 (2002) (citations omitted)).

# IV. **VEOH SHOULD NOT BE PERMITTED TO PURSUE ONE-SIDED DISCOVERY**

The Court should also issue a protective order regarding both the Geller and Ring depositions – and any further Veoh depositions – until Veoh produces its documents so that the parties can establish a mutual deposition schedule.

UMG filed a Motion to Compel the production of documents and other discovery against Veoh on July 21, 2008. *See* Docket #71 (Notice of Motion); Docket #87 (Joint Stipulation). The Court held a hearing on that Motion on August 25, 2008. During the hearing, the Court entered several preliminary orders on the record, expressed the view that it was "contemplating granting most of [UMG's Motion]," and took the rest of UMG's First Motion under submission. Ledahl Decl., Ex. F (2008-08-25 Hearing Tr.), at 35:7-8. The Court subsequently entered a Minute Order, formalizing the orders it gave on the record during the August 25 hearing. *See* Ledahl Decl., Ex. G (2008-08-25 Minute Order (Docket # 144)).

To move discovery forward while UMG's Motion was *sub judice*, the Court ordered Veoh (1) to produce its custodian list and search terms by September 5, 2008; and (2) to "complete [its] core production of documents by September 30, 2008. That production shall include all responsive documents the parties will produce without an order by the Court ...." 2008-08-25 Minute Order, at pp. 1-2. The Court further explained that September 30 was the "general production deadline" for Veoh's document production. 2008-08-25 Hearing Tr., at 26:14-15.

UMG completed its core production, including 1.4 million pages of responsive documents and emails, on September 30. Veoh did not. The details of Veoh's production are recounted in detail in the Declaration of Brian Ledahl, concurrently filed herewith. In short, however, Veoh failed to produce the documents it agreed to produce (though the Court's Minute Order required it to produce such documents), including summaries of its revenues, copies of its Terms of Use and Copyright Policies, and any valuations of Veoh. *See* Ledahl Decl., ¶ 8.

Presumably, Veoh has produced all documents that it will agree to produce without a further Court Order. Yet excluded from this production are such documents as internal emails identified as responsive through its use of custodians and search terms (which the Court ordered Veoh to disclose to UMG). *See* Ledahl Decl., ¶ 8. For example, Veoh identified its CEO, Steve Mitgang, as a custodian, yet only produced five emails authored by Mr. Mitgang. Ledahl Decl., ¶ 8. It is inconceivable that Mr. Mitgang, the CEO of an internet company, has only authored five relevant email messages. By way of contrast, MySpace produced several thousand of its CEO's emails. Similarly, Veoh identified its Senior Vice President, Finance of Operations, Bruce Wiseman, as a custodian, yet only produced three emails authored by Mr. Wiseman. Ledahl Decl., ¶ 8. In total, Veoh has produced fewer than 300,000 pages. As a point of reference, Grouper, a defendant smaller than Veoh in its operations, produced more than 1 million pages of material in UMG's related case.

Instead of a quality production of its "core" documents, the vast, majority of Veoh's production was made up of form documents such as: (i) notices of copyright infringement sent to Veoh and its form responses to those notices (more than 140,000 pages), (ii) Veoh's automatically-generated notices to its users that their videos have been removed as infringing (more than 90,000 pages), and (iii) documents containing nothing but a copy of the Veoh logo (more than 10,000 pages). *See* Ledahl Decl., ¶ 7. Veoh's "core" production of documents lacks essentially any of the substantive internal communications and information sought by UMG. Apparently Veoh will not produce any such documents without a Court Order on UMG's pending Motion to Compel.

Though it continues to withhold such basic discovery, Veoh seeks to pursue depositions of UMG witnesses. Obviously, Veoh is able to meaningfully prepare for such depositions because UMG has already made an extensive and substantive production. UMG's ability to proceed with depositions, however, is severely

hampered by Veoh's continuing refusal to make a good-faith production of documents.[5] UMG therefore requests a protective order preventing Veoh from proceeding with these depositions until it has made such a production. UMG had hoped, as the Court presumably did as well, that Veoh's "core" production (which the Court Ordered produced by September 30) would include among other things its internal email communications and similar documents. Unfortunately, Veoh continues to withhold such material. UMG respectfully submits that an order from the Court on UMG's pending Motion to Compel is needed to move Veoh's discovery forward so that UMG can meaningfully depose Veoh's witnesses. UMG is, of course, mindful of the many demands on the Court's time and accordingly has not bothered the Court previously with requests to decide the *sub judice* matter. However, before the Court is able to rule, Veoh should not be able to gain a tactical advantage from its refusal to engage in good faith document production – to wit, to produce documents that any litigant approaching the matter in good faith, would acknowledge the obligation to produce without a court order. Thus, UMG respectfully requests that a protective order issue preventing Veoh from pursuing further depositions until the parties can agree upon a mutual schedule for depositions after Veoh has made a further production in response to any Order the Court may issue on UMG's pending Motion to Compel.

/
/
/
/
/
/
/

---

[5] Unlike Veoh, non-party Time-Warner did produce its documents and has agreed with UMG upon a schedule for its deposition to go forward.

UMG'S EX PARTE APPLICATION FOR PROTECTIVE
ORDER RE: DEPOSITIONS

1946070                             - 8 -

## V. CONCLUSION

For the reasons set forth above, UMG respectfully requests a protective order be issued.

Dated: October 14, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl
Brian Ledahl

Attorneys for Plaintiffs