Robert G. Badal (Bar No. 81313)
Robert.Badal@WilmerHale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: +1 (213) 443-5300
Facsimile: +1 (213) 443-5400

Annette L. Hurst (Bar No. 148738)
ahurst@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: +1 (415) 773-5700
Facsimile: +1 (415) 773-5759

Attorneys for Defendants
SHELTER CAPITAL PARTNERS, LLC and
SHELTER VENTURE FUND, L.P.

[OTHER COUNSEL LISTED ON SIGNATURE PAGES]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC. et al., <br><br> Defendants. | Case No. CV07-5744 AHM (AJWx) <br><br> **NOTICE OF MOTION AND MOTION BY INVESTOR DEFENDANTS TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> [Fed. R. Civ. P. 12(b)(6)] <br><br> Date:  November 10, 2008 <br> Time:  10:00 a.m. <br> Trial Date:  April 21, 2009 <br><br> The Honorable A. Howard Matz |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .................................... 1

STATEMENT OF FACTS ................................................................................. 3

      A.    Procedural Background. ...................................................... 3

      B.    Allegations Of The First Amended Complaint. ................... 4

ARGUMENT ................................................................................................. 5

I.     PLAINTIFFS' COPYRIGHT CLAIMS AGAINST THE
       INVESTOR DEFENDANTS SHOULD BE DISMISSED. ......................... 6

      A.    No Court Has Authorized The Imposition Of Derivative
           Liability For Copyright Infringement Based Upon
           Investment Or The Collective Power To Manage
           Inherent In A Board Of Directors. ...................................... 6

           1.    Count II Does Not State A Claim For Contributory
                Copyright Infringement Against Any Of The
                Investor Defendants. ............................................ 8

           2.    Count III Does Not State A Claim For Vicarious
                Copyright Infringement Against Any Of The
                Investor Defendants. .......................................... 10

           3.    Count IV Does Not State A Claim For Inducement
                To Infringe Copyright Against Any Of The
                Investor Defendants. ........................................... 11

      B.    Public Policy Counsels Strongly Against The Imposition
            Of Copyright Liability Based Upon These Allegations. ..................... 13

CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

<u>Page</u>

## FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001).......................................................... 8, 10, 15

*A. Stucki Co. v. Worthington Indus., Inc.*,
   849 F.2d 593 (Fed. Cir. 1988).................................................................. 12

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990).................................................................... 5

*Bell Atlantic v. Twombly*,
   127 S. Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007)................................. 5, 9

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002)..................................................................... 13

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004)................................................................. 10

*Flynt Distributing Co. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984)................................................................. 14

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996)..................................................................... 10

*Frances T. v. Village Green Owners Assn.*,
   42 Cal. 3d 490, 229 Cal. Rptr. 456 (1986)............................................... 14

*Grosset v. Wenaas*,
   42 Cal. 4th 1100, 72 Cal. Rptr. 3d 129  (2008).......................................... 11

*In re Firearm Cases*,
   126 Cal. App. 4th 959, 24 Cal. Rptr. 3d 659 (2005).............................. 13-14

*Insituform Technologies, Inc. v. CAT Contracting, Inc.*,
   385 F.3d 1360 (Fed. Cir. 2004)................................................................ 12

*MercExchange LLC v. eBay, Inc.*,
   401 F.3d 1323 (Fed. Cir. 2005) , *rev'd in part on other grounds*, *eBay, Inc.
   v. MercExchange LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed. 2d 641 (2006)..... 12

*MGM v. Grokster Ltd.*,
   545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)...................... 9-12

*Papasan v. Allain*,
   478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed. 2d 209 (1986)........................ 5

*Port Chester Elec.  Const. v. Atlas*,
   40 N.Y.2d 652, 657, 357 N.E. 2d 983 (1976)............................................ 14

*RIAA v. Diamond Multimedia Sys., Inc.*,
    180 F.3d 1072 (9th Cir. 1999) ............................................................. 15

*Sony Corp. v. Universal City Studios*,
    464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ................................. 8

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ......................................................... 8, 9, 10

Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,
    752 A.2d 1175 (Del.Ch. 1999) ............................................................ 14

## FEDERAL STATUTES

17 U.S.C. §106 ............................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ............................................................................. 5-6

## OTHER AUTHORITIES

BRIEF OF AMICI CURIAE SIXTY INTELLECTUAL PROPERTY AND TECHNOLOGY LAW
    PROFESSORS, 20 BERKELEY TECH. L. J. 535, 564 (2005) ............................. 10

J. COX, T. HAZEN AND F. O'NEAL, *CORPORATIONS* §7.8 (1999) ........................ 14

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 10, 2008 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the above-entitled Court located at 255 East Temple Street, Los Angeles, California, Defendants Shelter Capital Partners, LLC, Shelter Venture Fund, L.P., Spark Capital, LLC, Spark Capital, L.P. and The Tornante Company, LLC (the "Investor Defendants"), by and through their counsel of record, will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the First Amended Complaint ("FAC") filed by Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music-MGB NA LLC, Universal Music-Z Tunes LLC, and Universal Music-MBG Music Publishing Ltd. (collectively, "Plaintiffs") on or about August 26, 2008, because the claims set forth therein fail to state a claim against any of the Investor Defendants upon which relief may be granted, and Plaintiffs had ample and extensive opportunity to conduct discovery prior to alleging these claims.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 10, 2008. *See* Declaration of Annette L. Hurst in Support of Investor Defendants Motion to Dismiss ¶¶2-4, Exs. A-C.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities following herein and FAC attached hereto, the Declarations of Annette L. Hurst and Sean Sullivan and exhibits thereto (filed herewith), the Declaration of Anjuli McReynolds in Support of Motion for Leave to Amend (previously filed at Docket #62), Declaration of Jennifer Golinveaux in Support of Veoh's Opposition to the Motion for Leave to Amend and exhibits thereto (previously filed at Docket #64), and all other papers and pleadings on file in this action and such additional evidence and argument as may be offered prior to or at the

time of hearing.

October 16, 2008                    Respectfully submitted,

                                    WILMER CUTLER HALE PICKERING &
                                    DORR LLP

                                    ORRICK HERRINGTON & SUTCLIFFE LLP


                                    By */s/ Annette L. Hurst*
                                            ANNETTE L. HURST

                                    Attorneys for Defendants
                                    SHELTER CAPITAL PARTNERS, LLC and
                                    SHELTER VENTURE FUND, L.P.

October 16, 2008                    Respectfully submitted,

                                    KULIK, GOTTESMAN, MOUTON & SIEGEL,
                                    LLP


                                    By */s/ Alisa S. Edelson*
                                            GLEN L. KULIK
                                            ALISA S. EDELSON

                                    Attorneys for Defendant
                                    THE TORNANTE COMPANY LLC

October 16, 2008                    Respectfully submitted,

                                    WILMER CUTLER HALE PICKERING AND
                                    DORR LLP


                                    By */s/ Maria Vento*
                                            MARIA VENTO

                                    Attorneys for Defendants
                                    SPARK CAPITAL PARTNERS, LLC AND
                                    SPARK CAPITAL, L.P.

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

Nearly one year after this copyright infringement action against Veoh was commenced, Plaintiffs UMG Recordings, Inc. et al. ("Plaintiffs" or "UMG") amended their complaint to allege that Defendants Shelter Capital Partners, LLC, Shelter Venture Fund, L.P., Spark Capital, LLC, Spark Capital, L.P. and The Tornante Company, LLC (collectively, the "Investor Defendants") should be liable for copyright infringement. The First Amended Complaint ("FAC") posits against these investors three theories of derivative liability for infringement based upon allegations that these newly added parties invested in and became shareholders of Veoh, thus obtaining the right to designate individuals to sit on Veoh's Board of Directors, who then exercised their statutory powers to direct the affairs of that company. No court has ever gone so far in imposing liability for copyright infringement under any of the three prongs of derivative liability based upon the scant allegations present in this case (which, in all events, were known to Plaintiff from the outset of this litigation and well before the Investor Defendants were added as parties). The few courts that even have been willing to entertain theories of derivative liability against shareholders have never gone as far as UMG would have this court go and, indeed, have been cautious in imposing liability only where there was clear evidence that each shareholder sought to be held liable had both (1) knowledge of infringement, and (2) individually exercised operational control over the affairs of the company. These circumstances are not alleged here, and given Plaintiffs' extensive opportunity to obtain discovery of the Investor Defendants prior to filing the FAC, it is apparent that they cannot be. Given (1) the wholly defective nature of the claims of the FAC as set out in detail herein, (2) Plaintiffs' extensive opportunity for discovery before filing the FAC, and (3) the now fast-approaching trial date in this action, the FAC should be dismissed with prejudice.

First, Plaintiffs' theory of *contributory* infringement is defective because they

have not alleged that any Investor Defendant knew of and materially contributed to specific acts of copyright infringement. Part I(A)(1), *infra*. Second, Plaintiffs' theory of *vicarious* infringement is defective because they have not alleged that any Investor Defendant individually assumed operational control of and stands to profit directly from copyright infringement. Part I(A)(2), *infra*. Third, Plaintiffs' theory of *inducement* liability is completely far-fetched, because they have alleged neither that any of these defendants distributed the allegedly infringing device nor that any of them exhorted and encouraged infringement. Nor have they alleged facts that would demonstrate that any of the Investor Defendants is an alter ego of Veoh. Part I(A)(3), *infra*.

Finally, this Court should not stray so far from the text of the Copyright Act as Plaintiffs would have it. Plaintiffs' theories of liability enjoy no grounding in the text of the Copyright Act, and the negative consequences of expanding Copyright Act liability to the circumstances alleged here would be far-reaching and substantial, discouraging investment and chilling technological innovation. Part I(B), *infra*.

With no sound legal basis, and in light of Plaintiffs' extensive opportunity for discovery prior to amending their complaint, this Motion by Investor Defendants to Dismiss the First Amended Complaint ("Motion") should be granted, and the FAC dismissed with prejudice.

# STATEMENT OF FACTS

## A. Procedural Background.

On September 4, 2007, Plaintiffs filed this action against Veoh for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement. Complaint (Docket #1) ("Compl."). Plaintiffs alleged Veoh infringed their copyrighted works by making such works available through Veoh's website and software for streaming and downloading. Compl. ¶¶2-4.

The initial complaint also alleged that Veoh's investors, including Shelter Capital LLC, Spark Capital LLC, and The Tornante Company, LLC, benefited from Veoh's infringing activities. *Id.* ¶14. Implying that more facts would be required to assert claims against the investors, Plaintiffs purported to reserve their right to add as defendants Veoh's investors "once the full nature and extent of their contribution to, and facilitation of, the infringing conduct taking place on Veoh is known." *Id.* Approximately six weeks after the initial complaint was filed, Plaintiffs sent a letter to each of the Investor Defendants informing them of this lawsuit and their asserted potential liability. Declaration of Anjuli McReynolds in Support of Motion for Leave to Amend ¶2 & Ex. 1 (Docket #62) ("McReynolds Decl."). Four months later in February 2008, Plaintiffs served wide-ranging document subpoenas upon the Investor Defendants. *Id.* ¶3 & Ex. 2; *see* Declaration of Sean Sullivan in Support of Motion to Dismiss ("Sullivan Decl.") ¶2 & Ex. A. Each of the Investor Defendants served a timely response to the subpoenas in early April 2008. Declaration of Jennifer Golinveaux in support of Veoh's Opposition to the Motion for Leave to Amend, Ex. B (Docket #64) ("Golinveaux Decl.").)

In March 2008, Plaintiffs represented to the Court in the Joint Rule 16(b) Report, and at the Scheduling Conference, that Plaintiffs may seek to amend the Complaint depending upon facts they developed through discovery. McReynolds Decl. ¶¶4, 5 & Ex. 3 at 75, Ex. 4 at 92. After the Investor Defendants produced non-

3

confidential documents, and further agreed to produce confidential documents pursuant to the entry of a protective order, Plaintiffs sent letters on May 13, 2008 to each of the Investor Defendants stating that Plaintiffs may seek to add them as defendants with or without additional significant discovery.  Golinveaux Decl. ¶¶3, 4 & Exs. B, C.

Within days of the Court's entry of the Interim Protective Order on May 20, 2008 (Docket #43), several of the Investor Defendants made substantial productions of confidential documents responsive to the subpoenas.  Golinveaux Decl. ¶7.  Other Investor Defendants had offered to make further productions, but Plaintiffs did not bother to take them up on it.  *See* Sullivan Decl. ¶¶10-13.  With a fast approaching deadline to amend, Plaintiffs began serving non-party deposition subpoenas.  Golinveaux Decl. ¶8.  When Investor Defendants' counsel attempted to work with Plaintiffs' counsel to schedule depositions prior to the deadline to amend, Plaintiffs voluntarily withdrew the deposition notices and did not take a single deposition.  *Id.* ¶9; Sullivan Decl. ¶¶10-13.  On the last day set by the Court to amend the complaint, Plaintiffs filed their motion for leave to amend to add the Investor Defendants.  McReynolds Decl. ¶5; Docket No. 54.  The Court subsequently granted Plaintiffs' motion for leave to amend, and Plaintiffs filed their FAC on August 26, 2008.

### B.  Allegations Of The First Amended Complaint.

The FAC (Counts II-IV) contains claims for contributory infringement of copyright, vicarious infringement of copyright, and inducing copyright infringement against the Investor Defendants.  Despite the extensive opportunities for documentary and deposition discovery of the Investor Defendants outlined above, the factual allegations of the FAC supporting these claims are scant.

In particular, Plaintiffs' claims against the Investor Defendants—when stripped of their inflammatory rhetoric and conclusory legal assertions—are all based on three principal allegations:  (1) that these defendants invested in Veoh, (2) that they each obtained the right to designate a person to sit on Veoh's Board of

4

Directors, and (3) that these Board members collectively exercised their statutorily vested power to manage the affairs of Veoh. FAC ¶¶4, 5, 16, 30-32. In particular, the Veoh Board of Directors—including designees of Shelter, Spark and Tornante—are alleged to have hired executives, and set company and product direction acting in their roles as board members of Veoh. *Id.* ¶¶30-32. Particular product decisions the Veoh Board is alleged to have made include the scope of content to be displayed and whether technical measures would be used to prevent or limit infringing content. *Id.* ¶¶16, 30-32. The only distinction made amongst the Investor Defendants was one of timing. Shelter Capital was the first to invest in and obtain the right to designate a board member in 2005, Spark and Tornante are alleged to have followed in 2006. *Id.* ¶¶30-32.

## ARGUMENT

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) may be based either on "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). With regard to the latter prong, the Supreme Court held last year in *Bell Atlantic Corp. v. Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations," it still *must plead facts*, and must do so sufficiently "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007) (emphasis added). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiffs' FAC fails both standards because it does not allege facts that would establish liability on the part of any of the Investor Defendants for copyright

infringement. The facts pled here have never been accepted as sufficient to establish liability under any existing theories of secondary liability for copyright infringement. Indeed, no court anywhere has accepted the legal theories Plaintiffs assert against the Investor Defendants in the claims of the FAC. Disregarding conclusory labels, and giving Plaintiffs the benefit of the doubt regarding factual inferences as required in a Rule 12(b)(6) motion, the FAC nonetheless pleads nothing more than (1) the Investor Defendants invested funds in Veoh that it used as working capital to develop and deploy its dual-use technology, and (2) they each obtained the right to designate a Veoh board member who, acting collectively with the other Veoh board members, was vested with, and exercised, the statutory right to collectively manage the corporation through the appointment of officers and approval of company strategy. No court anywhere has ever premised copyright liability under these circumstances, and there are a host of good reasons why this Court should not be the first.

Moreover, the FAC was filed *after* Plaintiffs had an extensive opportunity to take third party discovery of the Investor Defendants. In light of this procedural background and the relatively short period of time until the scheduled trial of this action, the claims against the Investor Defendants should be dismissed with prejudice now.

I. **PLAINTIFFS' COPYRIGHT CLAIMS AGAINST THE INVESTOR DEFENDANTS SHOULD BE DISMISSED.**

    A. **No Court Has Authorized The Imposition Of Derivative Liability For Copyright Infringement Based Upon Investment Or The Collective Power To Manage Inherent In A Board Of Directors.**

UMG's FAC concedes that Veoh's service is a dual-use technology—that is, while UMG alleges that the service is used by consumers to infringe, it also implicitly concedes that it is used by consumers for noninfringing purposes as well. *Cf.* FAC ¶¶14, 28 (service is used to share thousands of videos, "many thousands of which"—but not all—are alleged to be infringing). Nowhere in the FAC does UMG

6

allege that the sole purpose of Veoh's service is to infringe the copyrights of UMG or others.  Additionally, as noted above, none of the Investor Defendants are alleged to have created the service, deployed the service, or used the service directly to infringe Plaintiffs' copyrights.  Instead, they are alleged to have become investors, funded the company's operations (including the creation and deployment of the service), and to have obtained the contractual right to designate members of the Board of Directors of the company—and that such Veoh board members at some point in time acquired sufficient voting authority under governing corporate law to manage Veoh's affairs.  This is, in essence, an allegation of tertiary liability for copyright infringement by the Investor Defendants premised upon their investment in Veoh and the statutory collective right of their designees to Veoh's Board of Directors to manage the affairs of that company.  Nowhere does the FAC allege any facts that would demonstrate that any single one of the Investor Defendants actually assumed operational supervision or control of Veoh or directed any infringing conduct.

Nothing in the text of the Copyright Act authorizes the imposition of liability on tertiary actors based on their status as investors and their opportunity to appoint directors of the company in which they invested.  Secondary liability is grounded in the preamble of Section 106 of the Act, which affords an exclusive right to do, or to "authorize" the doing of the acts specified therein.  17 U.S.C. §106.  Hence, UMG's complaint against Veoh has been litigated beyond the pleading stage of this action.  But no part of the language of the Act affords a theory that those who allegedly authorize the authorizers, here the Investor Defendants purportedly authorizing Veoh, can be held liable thereunder.  The theory is far too attenuated, and courts are and should be reluctant to extend liability under such circumstances.  The allegations of UMG's FAC amount to no more than purported tertiary infringement that wholly fails to meet the governing standards for contributory, vicarious or inducement liability—theories which to date have remained tethered to the statute.  No court has gone so far as UMG asks this Court to go in authorizing the imposition of copyright

liability, and this Court should not be the first.

### 1. Count II Does Not State A Claim For Contributory Copyright Infringement Against Any Of The Investor Defendants.

Contributory copyright infringement requires knowledge or reason to know of the direct infringement and material assistance in achieving it. *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001). Where the accused device or service is capable of substantial noninfringing uses, then the constructive knowledge standard does not apply and a plaintiff must show actual knowledge of and material assistance with respect to specific acts of direct infringement. *Napster*, 239 F.3d at 1020-21.

As noted above, the FAC concedes that Veoh's technology has dual uses. UMG has not alleged that any of the Investor Defendants had actual knowledge of specific infringing acts and contributed materially to them. UMG nowhere identifies any specific act of infringement to which any of the Investor Defendants is believed to have contributed. Instead, UMG premises its mistaken theory of liability exclusively upon the Investor Defendants' investment in Veoh and the purported collective exercise of managerial control by Veoh's Board of Directors to hire officers, deploy filters, and remove pornography. FAC ¶¶30-32. None of these allegations implicates any of the Investor Defendants in the type of conduct necessary to state a contributory infringement claim.

Undoubtedly UMG will rely upon the decision in *UMG v. Bertelsmann AG* allowing claims to proceed against certain investors in the *Napster* case. *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004). But even assuming this Court accepts the dubious conclusion in *Bertelsmann* that investors in enterprises distributing dual-use devices can be sued under the Copyright Act, the case does not support the liability theory here, for two reasons. First, the knowledge requirement was met in *Bertelsmann* because the defendants *continued operating the*

*system in the face of a preliminary injunction.* *Id.* at 412-13. Second, with regard to the material assistance prong, the court in *Bertelsmann* was careful to note that the factual allegations demonstrated operational supervision by the investors *on an individual basis.* *Id.* at 413 ("Plaintiffs' allegations that defendants exercised essentially full operational control over Napster...may be wholly unfounded; indeed, they may be mutually exclusive, as plaintiffs variously claim that both Hummer Winblad and Bertelsmann were managing the same corporate enterprise at approximately the same time.") No case that the Investor Defendants have found has authorized a theory of derivative liability premised, as here, merely upon investment and the appointment of directors. Moreover, given *Twombly's* requirement that actual facts, not just conclusions, be pled, the FAC does not contain allegations sufficient to show that any one of the Investor Defendants actually exercised operational supervision over Veoh's allegedly infringing activities, thus meeting the material assistance requirement as articulated in *Bertelsmann.*

The legal theory is defective. Moreover, UMG has made no factual allegation here that would satisfy *Twombly's* plausibility test to demonstrate that what any of the Investor Defendants did with regard to Veoh was in any way sufficiently out of the ordinary to justify the imposition of copyright liability under its highly suspect legal theory. The FAC's allegations amount to no more than a theory that Veoh's Board of Directors hired executives, set company strategy, and held meetings at places other than the company while the company operated a dual-use service. FAC ¶¶30-32. This is clearly a theory of tertiary liability that is incompatible with the Act and the cases decided under it. If Congress wishes to alter longstanding state and federal jurisprudence to significantly expand derivative corporate liability (*see* Part B *infra*), it undoubtedly can. But this Court should not do so without guidance from that legislative body. *See generally*, *MGM v. Grokster Ltd.*, 545 U.S. 913, 959-60, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ("The additional risk and uncertainty would mean a consequent additional chill of technological development") (Breyer, J.

concurring); BRIEF OF AMICI CURIAE SIXTY INTELLECTUAL PROPERTY AND TECHNOLOGY LAW PROFESSORS, 20 BERKELEY TECH. L. J. 535, 564 (2005).

### 2. Count III Does Not State A Claim For Vicarious Copyright Infringement Against Any Of The Investor Defendants.

Vicarious copyright liability may be imposed where a party has the right and ability to supervise the infringing conduct, and has a direct financial interest in the infringing activities. *Napster*, 239 F.3d at 1023; *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996); *see also Grokster*, 545 U.S. at 931 n.9 ("vicarious liability theory [] allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer") (approving in *dicta* Second Circuit's stricter formulation of vicarious liability test).

The allegations against the Investor Defendants do not meet this legal test, either. First, none of the Investor Defendants is alleged to have a direct financial interest in the infringing activities. By definition, as investors they profit only indirectly through either distributions from the company or a sale of its business. UMG has failed to allege facts establishing even these indirect forms of financial benefit, which in all events would be legally insufficient to state a claim under the Supreme Court's formulation of vicarious liability in *Grokster*—which requires supervision and direct profit from the infringement.

Additionally, as discussed above, the Court should not approve of a theory where the statutory collective management power vested in a company's board of directors to manage its affairs under state law automatically satisfies the "right and ability to supervise" prong of vicarious copyright liability against either a board member or a shareholder appointing that board member. In *Bertelsmann*, the Court allowed the case to proceed based upon allegations of each defendant's alleged individual operational control of the business. Unless a business has no lawful purpose whatsoever, a theory that automatically imposes vicarious liability premised

10

simply upon the fact that an individual is a member of a board of directors—or appointed someone to the board—would impose grave deterrence to innovative companies trying to attract capital and qualified management.  UMG has not alleged that Veoh has no lawful purpose, nor could it.  In the absence of such an allegation, the statutory power to manage the affairs of a corporation vested in a Board of Directors should be held legally insufficient to establish the supervision prong of vicarious liability against any member of such a board, or any shareholder appointing that member.[1]

### 3. Count IV Does Not State A Claim For Inducement To Infringe Copyright Against Any Of The Investor Defendants.

In *Grokster*, the Court held that inducement liability may be found where "one [] distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." 545 U.S. at 936-37.  A simple and important reason why this theory does not apply to the Investor Defendants is that none of them is alleged to have distributed the device purportedly used by third parties to infringe.  Veoh is the only defendant alleged to have distributed the accused device.

A theory of inducement liability premised upon an investment in the distributor of an accused device has not been approved by any court and is an extreme and unwarranted extension of the copyright law.  Indeed, recognizing the tenuous nature of such derivative theories of liability, the Federal Circuit has consistently rejected allegations that stock ownership and board seats, even where coupled with extensive use of an allegedly infringing system, are sufficient to

---

[1] It is also worth noting that Plaintiffs have failed to allege any specific act by any member of Veoh's board that Plaintiffs assert meets any test for tertiary liability, or how such acts, even if alleged, relate to the shareholder-entities actually named as defendants.  Absent allegations of alter ego not present here, Veoh must be considered a separate legal entity from its stockholders.  *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1107-08, 72 Cal. Rptr. 3d 129 (2008)  ("It is fundamental that a corporation is a legal entity that is distinct from its shareholders").

demonstrate inducement liability. *MercExchange LLC v. eBay, Inc.*, 401 F.3d 1323, 1332-33 (Fed. Cir. 2005) ("First, the testimony regarding eBay's investment in ReturnBuy's business and its presence on ReturnBuy's board of directors does not demonstrate an intent to induce infringement, or even show that eBay had knowledge of any acts of infringement by ReturnBuy. Rather, investment and board presence merely indicate that there was a business relationship between the two companies and that eBay had a financial interest in ReturnBuy's business."), *rev'd in part on other grounds*, *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L. Ed. 2d 641 (2006); *see also Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1379-81 (Fed. Cir. 2004) (at a minimum, alter ego standard must be met to hold separate corporate entity responsible for induced infringement by its affiliate); *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593 (Fed. Cir. 1988) (affirming JMOL of no inducement liability premised upon 50% ownership of infringing subsidiary where no evidence of affirmative acts to induce infringement). As the copyright inducement standard was expressly borrowed from the patent law, *see Grokster*, 545 U.S. at 936-37, no different result should obtain here.

Additionally, there is no allegation anywhere in the FAC that any of the Investor Defendants exhorted, promoted or otherwise knowingly encouraged infringement in connection with the distribution of the accused device. *See Grokster*, 545 U.S. at 936-37.

In order to establish inducement liability against shareholders, the shareholders must either directly participate in the inducement by distributing the accused device themselves with the requisite intent and bad acts, or they must be demonstrated to be alter egos of the accused inducer. The allegations of the FAC do not come close to meeting these requirements. This theory fails on all counts.

**B.      Public Policy Counsels Strongly Against The Imposition Of Copyright Liability Based Upon These Allegations.**

In addition to straying far from the text of the Copyright Act, the negative

12

societal consequences of a rule that would impose copyright liability under these circumstances would be serious and far-reaching. For example, if an angel investor can be held liable solely because it believed in the promise of an inventor's technology and appointed a board member who provided early business advice in connection with the effort to commercialize such technology, such inventions would never see the light of day.

Indeed, even were long established companies (such as Sony) willing to engage in the legal battles inevitably attendant upon the development of such devices, permitting liability against investors under these circumstances would inevitably alter the circumstances of the entities who seek to commercialize their inventions. Under a rule of tertiary liability, even substantial corporate entities will not be immune from strike suits against their officers and directors for the development of new technologies that may have both positive and negative consequences. Undoubtedly, even the mere existence of such suits will discourage investment in legitimate innovation when the person responsible for analyzing such investments and carrying them out suddenly finds herself analyzing the threat of a personal strike suit in addition to the economics of such an investment. In essence, UMG proposes that a corporate investor shall be liable for all downstream consequences of lawful products sold by the company commercializing the invention—a theory heretofore unknown to any species of tort law. Even the companies selling such devices generally are not held liable under ordinary tort principles, let alone their investors. *See, e.g., City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002) (affirming dismissal of plaintiffs' claims that tort liability should be assessed against gun manufacturers when their legally sold, non-defective products are criminally used to injure others); *In re Firearm Cases*, 126 Cal. App. 4th 959, 24 Cal. Rptr. 3d 659 (2005) (refusing to hold gun manufacturers liable under nuisance or unfair competition laws for failing to investigate or sanction resellers).

Congress and courts around the country have repeatedly and explicitly rejected

such a result. Indeed, one of the principal salutary purposes of the corporate form of organization is to permit individuals to shield themselves from personal liability for torts that may arise as a byproduct of legitimate business. *See, e.g., Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 507-08, 229 Cal. Rptr. 456 (1986) ("[t]he legal fiction of the corporation as an independent entity- and special benefit of limited liability permitted thereby- is intended to insulate stockholders from personal liability from corporate acts . . ."). The entire development of the doctrine of alter ego, or piercing the corporate veil, was designed to accommodate such tensions.

And, as noted above, the Federal Circuit has required in the patent context that the alter ego standard be met before shareholders can be held liable for infringement. Alter ego requires far more than has been pled here to pierce the corporate veil and impose liability on corporate shareholders, directors and officers. *See, e.g., Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del.Ch. 1999) (alter ego requires "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud"); *Port Chester Elec. Const. v. Atlas*, 40 N.Y.2d 652, 657, 357 N.E. 2d 983 (1976) ("determinative factor [for liability] is whether 'the corporation is merely a dummy for its individual stockholders'"); J. Cox, T. Hazen and F. O'Neal, *Corporations* §7.8 (1999).

There is no reason why copyright infringement should be treated differently from the entire body of accepted law concerning the imposition of liability upon individual corporate participants for torts allegedly committed by corporate organizations. There is certainly no good reason to draw a distinction between patent and copyright laws in this context—especially when the entire doctrine of substantial noninfringing uses as a defense to contributory infringement, as well as the theory of inducement liability, were developed in reliance upon analogous principles of the patent laws. Indeed, the Ninth Circuit has already adopted principles of limited liability, by strongly distinguishing in *Napster* between the architecture of the file-

14

sharing system, on the one hand, and specific acts or omissions taken with knowledge of specific infringing activity, on the other. *Napster*, 239 F.3d at 1020-22. Congress, in enacting the DMCA, has similarly explicitly recognized the negative social consequences of penalizing innovation even where such innovation may have a negative side-effect on copyrighted works. *See generally*, *RIAA v. Diamond Multimedia Sys., Inc.*, 180 F.3d 1072 (9th Cir. 1999). To permit a theory of tertiary copyright liability, which is all that this FAC alleges, would flout this balance embodied throughout our laws.

## CONCLUSION

For the foregoing reasons, and in light of the extensive opportunity for discovery prior to the filing of the FAC as well as the schedule in this action, the Investors Defendants should be dismissed with prejudice as to all claims against them.

October 16, 2008                    Respectfully submitted,

WILMER CUTLER HALE PICKERING &
DORR LLP

ORRICK HERRINGTON & SUTCLIFFE LLP


By */s/ Annette L. Hurst*
           ANNETTE L. HURST

Attorneys for Defendants
SHELTER CAPITAL PARTNERS, LLC and
SHELTER VENTURE FUND, L.P.

October 16, 2008                    Respectfully submitted,

                                   KULIK, GOTTESMAN, MOUTON & SIEGEL, LLP


                                   By */s/ Alisa S. Edelson*
                                           GLEN L. KULIK
                                           ALISA S. EDELSON

                                   Attorneys for Defendant
                                   THE TORNANTE COMPANY LLC

October 16, 2008                    Respectfully submitted,

                                   WILMER CUTLER HALE PICKERING AND DORR LLP


                                   By */s/ Maria Vento*
                                           MARIA VENTO

                                   Attorneys for Defendants
                                   SPARK CAPITAL PARTNERS, LLC AND
                                   SPARK CAPITAL, L.P.

16