1   IRELL & MANELLA LLP
    Steven A. Marenberg (101033) (smarenberg@irell.com)
2   Elliot Brown (150802) (ebrown@irell.com)
    Brian D. Ledahl (186579) (bledahl@irell.com)
3   Benjamin Glatstein (242034) (bglatstein@irell.com)
    1800 Avenue of the Stars, Suite 900
4   Los Angeles, California 90067-4276
    Telephone:   (310) 277-1010
5   Facsimile:    (310) 203-7199

6   Attorneys for Plaintiffs

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                       WESTERN DIVISION

11  UMG RECORDINGS, INC., *et al.*,        )   Case No. CV-07-05744 AHM (AJWx)
                                           )
12          Plaintiffs,                    )   **REPLY IN SUPPORT OF UMG'S**
                                           )   ***EX PARTE* APPLICATION FOR**
13      vs.                                )   **PROTECTIVE ORDER RE:**
                                           )   **DEPOSITIONS**
14  VEOH NETWORKS, INC., *et al.*,         )
                                           )   **Filed concurrently herewith:**
15          Defendants.                    )   **1.  Declaration of Benjamin Glatstein**
                                           )   **In Support of UMG's Reply In**
16                                         )   **Support Of *Ex Parte* Application for**
                                           )   **Protective Order re: Depositions**
17                                         )
                                           )   Magistrate: Hon. Andrew J. Wistrich
18                                         )
                                           )   Date:    TBD
19                                         )   Time:    TBD
                                           )   Ctrm:    690
20                                         )
                                           )   Discovery Cutoff: January 12, 2009
21                                         )   Pretrial Conference: April 6, 2009
                                           )   Trial Date: April 21, 2009
22  _____)

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949792

REPLY IN SUPPORT OF UMG'S EX PARTE
APPLICATION FOR PROTECTIVE ORDER RE:
DEPOSITIONS

Dockets.Justia.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Veoh's Opposition to UMG's *ex parte* application reveals an approach to discovery in this case that is relentlessly and unrepentantly cynical. Veoh apparently presumes that the Court cannot or will not take the time to sort out the underlying facts of this discovery dispute and the need for the protective orders requested by UMG. UMG is confident the Court is not so easily misled.

As explained in Section IV below, with respect to the deposition of Harvey Geller, UMG's in-house litigation attorney, Veoh's Opposition distorts both the facts of this case and the law governing such depositions. As director of litigation supervising this lawsuit, Mr. Geller falls well within the ambit of those protected from depositions. The issuance of a protective order against this deposition remains wholly necessary and justified, notwithstanding anything in Veoh's Opposition.

Also justified is UMG's request for a broader protective order concerning depositions so Veoh does not profit from its failure to provide discovery. As discussed below, nothing in Veoh's Opposition does, or can change the basic facts of discovery to date: to wit, that with respect to virtually all of its key executives and employees, the number of emails and communications that Veoh has produced thus far can be counted using only the fingers of two hands. In contrast, UMG did not delay in producing to Veoh, over 1.4 million pages of documents that included its production in the prior *MySpace* and *Grouper* cases presided over by this Court, as well as thousands of additional documents.[1] The consequence of this disclosure imbalance is that Veoh, by denying basic document discovery to UMG, has stymied UMG's ability to proceed with deposition discovery while Veoh suffers from no such disability regarding further discovery of UMG. Not surprisingly, despite Veoh's efforts, it cites no controlling case that sanctions this unfair state of affairs.

---

[1] Veoh's complaint that UMG had few additional documents to produce on September 30 is nothing more than a reflection of the fact that UMG had already made an extensive and good-faith production.

The Court might wonder, how can the actual scope of Veoh's production be squared with the apparent representations by Veoh that it has produced what it agreed to produce?  The answer is simple.  In derogation of the assumption of the Federal Rules of Civil Procedure that discovery will be largely self-executing, Veoh "voluntarily agreed" to produce almost nothing in this case.  This Court recognized as much at the hearing on UMG's Motion to Compel, when it commented that it was inclined to grant most of UMG's motion.  2008-08-25 Hearing Tr.  (Ledahl Decl. In Support Of UMG's *Ex Parte* Application ("Ledahl Decl."), Ex. F), at 35:7-8 ("I'm contemplating granting most of [UMG's Motion to Compel]").  However, because no order has yet been forthcoming, and Veoh has declined to reconsider the scope of what it would voluntarily produce even after hearing the Court's comments, no progress has been made.

Thus, Veoh continues to actively and willfully conceal basic evidence for which the relevance is beyond reasonable dispute.  At bottom, Veoh's Opposition only confirms that assistance from the Court in the form of a protective order is urgently needed.

## II.  <u>VEOH DOES NOT DISPUTE THE MATERIAL FACTS</u>

UMG's *ex parte* application and accompanying declarations set forth clear facts about Veoh's discovery failures.  Veoh does not dispute these facts – instead merely claiming that Veoh's refusal to produce numerous categories of centrally relevant material is perfectly fine.  As UMG set forth in its application and Veoh does not dispute:

1. Veoh has produced only <u>five</u> emails from its CEO  (and purported document custodian), Steve Mitgang.[2]  Ledahl Decl., ¶ 8.

_____

[2] Veoh repeatedly states that UMG has produced over 1,000 emails referencing Mr. Harvey Geller, UMG's senior in-house litigation counsel.  *See, e.g.*, Opp'n. at 5:28, 8:4-5.  While UMG denies that these emails are a basis to depose Mr. Geller, this statistic highlights the abject inadequacy of Veoh's production and the comprehensive nature of UMG's.

1    **2.**    Veoh has produced only <u>ten</u> emails or other documents from its

2  Founder and Chief Innovation Officer (and purported document custodian), Dmitry

3  Shapiro.  Ledahl Decl., ¶ 8.

4    **3.**    Veoh has produced only <u>three</u> emails or other documents from its

5  Senior Vice President, Finance and Operations (and purported document custodian),

6  Bruce Wiseman.  Ledahl Decl., ¶ 8.

7    **4.**    Veoh has produced only <u>six</u> emails or other documents from its

8  Director of Business Development (and purported document custodian), Lew Roth.

9  Ledahl Decl., ¶ 8.

10    **5.**    Veoh has produced only <u>sixteen</u> emails or other documents from its

11  Past Director of Channel Production (and purported document custodian), Sabine

12  Jourdan.  Ledahl Decl., ¶ 8.

13    **6.**    Veoh has only produced <u>twenty-two</u> emails or other documents from its

14  Vice President of Engineering (and purported document custodian), Joseph Papa.

15  Ledahl Decl., ¶ 8.

16    **7.**    Veoh pats itself on the back for producing 300,000 pages of documents,

17  and claims (hollowly) that its production "did include" internal emails.  Opp'n. at 3.

18  But UMG never claimed that Veoh did not produce <u>any</u> internal emails and Veoh

19  does <u>not</u> dispute that virtually its <u>entire</u> production consists of DMCA notices,

20  Veoh's copy-and-paste responses to DMCA notices, and Veoh's automatically-

21  generated emails to its users.  Ledahl Decl., ¶ 7.

22    **8.**    Veoh admits it has failed to produce its valuations and any summaries

23  of revenue – both categories of documents it explicitly agreed to produce and which

24  this Court explicitly directed Veoh to produce.  *See* Opp'n. at 4:14-16.  Indeed,

25  UMG received <u>this morning</u> several hundred pages of documents (Terms of Use,

26  FAQ pages, and valuation documents) that the Court unambiguously directed Veoh

27  to produce by September 30, 2008.  Many of these documents bear bates numbers

28  showing that Veoh produced them in its prior *Io Group* lawsuit, but deliberately

withheld them here, even weeks after a deadline the Court set for Veoh to get them produced.

**9.** Additionally, for the first time Veoh now claims that it has "searched for but not located" copies of a speech specifically sought by UMG. Opp'n. at 4:13-14. A Veoh executive delivered this speech on November 6, 2007, <u>after</u> this lawsuit was filed, and after UMG had already written to Veoh to request that it preserve various categories of evidence. Veoh's failure to preserve a copy of and the speech or any related material (requested explicitly by UMG) raises serious concerns regarding Veoh's document preservation. Given its new position, Veoh's representation in its letter of June 13, 2008 (repeated to the Court on August 25, 2008) that it would produce the speech is also extremely puzzling.

**10.** The above discovery is the total end result of Veoh's discovery efforts in response to document requests propounded by UMG on <u>January 17, 2008</u> – more than 10 months ago.

If these are "<u>manufactured</u> deficiencies" (Opp'n., at 5:18) to create an "illusion" (*id.*, at 4:21) that Veoh has failed to produce documents sufficient for UMG to proceed with discovery, then it is hard to imagine what Veoh would consider an <u>actual</u> deficiency. Veoh has adopted the untenable and unreasonable position that its discovery obligations extend only to documents it has "agreed" to produce, simply because this Court has not explicitly ordered Veoh to produce those documents. *See, e.g.*, Opp'n., at 3:18-19. Because it has not "agreed" to produce relevant documents, Veoh contends that its discovery conduct is entirely acceptable. This is a stonewall, pure and simple, and confirms that relief from this Court, including a ruling on UMG's pending motion to compel, is urgently needed to address Veoh's deliberate obstruction.

**III.** **VEOH'S COMPLAINTS ABOUT UMG ARE A CYNICAL ATTEMPT TO DEFLECT ATTENTION FROM ITS OWN DEFAULTS**

Veoh asserts that UMG has "refused to produce even the most basic discovery." Opp'n. at 1:6. This claim is absurd and unfounded: indeed, Veoh itself does not even bother to support it with argument or declaratory testimony.[3] Nor could Veoh support such an argument, given that UMG's production has been comprehensive, resulting in the production of more than 1.4 million pages of documents, including more than 1 million pages of internal emails and documents. Veoh's histrionic claims that UMG is acting in a tit-for-tat fashion are therefore unfounded. On August 25, 2008, the Court denied Veoh's motion to compel, noting that Veoh did not appear to have even reviewed UMG's production. The Court further directed that if Veoh believed further production was required, Veoh should file a new motion to compel. 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. F), at 21:22-22:1. Veoh has not done so – because it has no legitimate complaints to raise.[4]

Moreover, Veoh's principal complaints about UMG's production relate to UMG's identification of works at issue. Opp'n. at 1:6-8. As UMG has explained to Veoh and this Court, UMG cannot identify the works at issue (or produce documents relating to those works) until *Veoh* produces its videos and metadata so UMG can identify the scope of Veoh's infringement. Despite its representations to the Court at the August hearing, Veoh has failed to make the necessary production. Indeed, UMG has still not received access to much of Veoh's metadata, and, even

---

[3] Until Veoh produces its videos and metadata, UMG cannot comprehensively determination which rights Veoh has infringed, and UMG cannot produce corresponding documents (including, for example, financial information (if any) regarding those works).

[4] Instead, several days after UMG filed this application about imminently-noticed depositions, Veoh filed an improper *ex parte* application of its own, falsely claiming that UMG had somehow violated a Court order. Even if Veoh truly believes this claim (which is completely false) it is telling that Veoh did nothing about it until UMG filed the instant application.

more egregiously, Veoh unilaterally and without warning terminated UMG's access to its "online" production of videos because it decided that UMG was accessing the database too frequently. Despite Veoh's intransigence, UMG has proceeded with the remainder of its production, and will produce additional documents relating to specific works once Veoh produces the discovery it has already been ordered to produce.

In any event, UMG has not unilaterally terminated Veoh's ability to pursue discovery as Veoh suggests. Rather, consistent with the Court's procedures and the Federal Rules, UMG has sought this Court's intervention in an untenable situation.[5] UMG is prepared to pursue discovery on a reciprocal basis and only seeks to prevent Veoh from gaining a tactical advantage while UMG waits for Veoh to satisfy its basic, first-wave discovery obligations.

## IV.    THE GELLER DEPOSITION SHOULD NOT GO FORWARD

Veoh's argument that it should be allowed to depose Mr. Geller, UMG's senior in-house litigator, are unavailing.

**First,** Veoh's description of UMG's production is misleading to an alarming degree. Accordingly, UMG presents the Courts with the facts:

- Veoh asserts that "Plaintiffs have produced at least 1,413 documents containing Geller's name." Opp'n. at 5:28; *see also* Ranahan Decl., ¶ 2. What Veoh means, but does not tell the Court, is that UMG has produced 1,413 documents containing the word "Geller," including, for example, royalty and other financial information for the song "She's His Sweetheart" by the composing duo "Nolan & Geller." Glatstein Decl., ¶ 2. Veoh's total also includes copyright registration information for the song "Three Women," by composer "Laurie Geller." *Id.* Of course, these documents, and ones like them

---

[5] Veoh's repeated insistence that it must be able to defend itself miss the mark. Veoh cannot defend itself by concealing critical evidence or by depriving the plaintiff of the discovery to which it is entitled.

1949792

1  containing the word "Geller" have nothing to do with Harvey Geller –

2  the subject of this motion.  Veoh's decision to include such documents

3  in the facts it presents to the Court indicates that either Veoh did not

4  even look at the documents it claims to be so important, or seeks to

5  intentionally mislead the Court.

6  • Contrary to Veoh's suggestion that Mr. Geller's name shows up

7  throughout UMG's production, Mr. Geller is the author of only <u>seven</u>

8  unique emails produced by UMG in this litigation.  Glatstein Decl., ¶ 3.

9  None of these emails uses the word "Veoh," or for that matter relates in

10  any way to Veoh.  *Id.*  In contrast, Mr. Geller's name appears more

11  than 4,500 times on UMG's privilege log.  *Id.*, ¶ 5.  This confirms, once

12  again, that Veoh conflates "knowledge" with "discoverable testimony."

13  • The vast majority of remaining documents in UMG's production

14  actually directed to Mr. Geller are emails on which Mr. Geller is one of

15  numerous recipients and which typically include such communications

16  as the circulations of news articles or similar information.  Glatstein

17  Decl., ¶ 4.  An example of such an email is attached as Exhibit A to the

18  Glatstein Declaration In Support Of UMG's *Ex Parte* (filed

19  concurrently herewith).

20  **Second,** Veoh asserts that "contrary to [UMG's] assertion, Mr. Geller is not

21  'trial counsel' in this litigation."  Opp'n. at 1:24-25.  But, this is a "strawman"

22  argument;  UMG never stated that Mr. Geller is trial counsel in this litigation.  Nor

23  need UMG make such a showing to justify a protective order.  Mr. Geller is an in-

24  house litigation counsel entitled to protection.  *See* W. Schwarzer, et al., <u>Federal</u>

25  <u>Civil Procedure Before Trial</u> § 11:1142, p. 11-141 (2008).

26  **Third,** Veoh states that "[Mr.] Geller is charged as Vice President(s) [sic] of

27  Business Affairs."  Opp'n. at 8:18.  Yet, Mr. Geller's own declaration submitted in

28  connection with UMG's Application states that Mr. Geller is <u>Deputy General</u>

Counsel and Senior Vice President, Business <u>& Legal Affairs</u>, and that Mr. Geller's principal job responsibilities include managing and directing litigation. *See* Geller Decl. (Docket No. 167), ¶ 2. It is precisely because of this error that Veoh's reliance on cases allowing the deposition of in-house counsel is wrongheaded. Mr. Geller is not a generalist in-house counsel, he is UMG's senior in-house litigation counsel.

**Fourth,** Veoh suggests that Mr. Geller's testimony will relate to various issues in this case – mainly UMG's basis for pursuing suit and its purported failure to comply with the DMCA.[6] But Veoh provides no basis whatsoever for suggesting that Mr. Geller is the proper candidate for such an inquiry. While litigation counsel always know a great deal about the substance of a case, that does not mean that litigation counsel are the proper deponents to ask about facts in the litigation.

**Fifth,** Veoh's insistence that UMG has identified Mr. Geller as "knowledgeable" about this litigation and UMG's claims is another strawman claim. Veoh wrongly conflates "knowledge" with "discoverable testimony." Indeed, despite Veoh's insistence that Mr. Geller's name appears on over 1,000 documents in UMG's production, Veoh cannot cite to even <u>one</u> document in UMG's production which suggests that Mr. Geller is a necessary candidate for deposition or will have unique, non-privileged, relevant information that Veoh could not obtain without deposing litigation counsel.

---

[6] Veoh seems to suggest that UMG has some "compliance" obligation under the DMCA. It does not. When applicable (and it is not here) the DMCA provides a narrow limitation on liability for infringers. Veoh must prove that it qualifies for such a limitation. For numerous reasons (including those raised in UMG's pending motion for partial summary judgment), Veoh cannot make such a showing.

# V.  CONCLUSION

For the reasons set forth above and in its *Ex Parte* Application, UMG respectfully requests a protective order be issued.


Dated:  October 20, 2008                    IRELL & MANELLA LLP
                                            Steven A. Marenberg
                                            Elliot Brown
                                            Brian Ledahl
                                            Benjamin Glatstein


                                            By: _____/s_____
                                                   Brian Ledahl

                                            Attorneys for Plaintiffs

1949792