IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian D. Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC., *et al.*,<br><br>Defendants. | Case No. CV-07-05744 AHM (AJWx)<br><br>**UMG'S OPPOSITION TO VEOH'S *EX PARTE* APPLICATION REGARDING DISCOVERY**<br><br>**Filed concurrently herewith:**<br><br>**Declaration of Brian Ledahl in Support of UMG's Opposition to Veoh's *Ex Parte* Application Regarding Discovery**<br><br>Magistrate: Hon. Andrew J. Wistrich<br><br>Date: TBD<br>Time: TBD<br>Ctrm: 690<br><br>Discovery Cutoff: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949943

UMG'S OPPOSITION TO VEOH'S *EX PARTE*
APPLICATION REGARDING DISCOVERY

Dockets.Justia.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

Veoh's application is procedurally improper and substantively without merit. Veoh filed a motion to compel that the Court denied on August 25, 2008. The Court directed Veoh to file a new proper motion if it wished to renew its motion as to any of the issues raised. Veoh ignored the Court's direction and filed an improper *ex parte* application without any showing of need for emergency relief. Indeed, all that Veoh musters as a purported basis for its application is a deliberately false purported quotation of the Court's comments at the August 25, 2008 hearing.

Veoh's application also presents meritless arguments that UMG violated an order of this Court. It did not. UMG completed its core production of documents by September 30, 2008, just as directed by the Court. Indeed, the overwhelming majority of UMG's core production was complete before Veoh ever even filed the motion that was denied on August 25. Moreover, consistent with the Court's direction, UMG has already produced the types of documents ordered produced by the Court in the prior MySpace and Grouper actions. Veoh's arguments to the contrary seek to manufacture non-existent orders and make false (and unsupported) assertions about UMG's production. The only category of such documents UMG still has not produced is a result of Veoh's obstructionist discovery conduct. Veoh continues to prevent UMG from identifying the scope of works infringed by Veoh. Specifically, Veoh continues to obstruct adequate discovery of its media files of infringed works. As a consequence, UMG is unable to collect and produce certain categories of information linked to the particular works at issue. Any complaint Veoh might have about this missing material, however, is entirely a problem of Veoh's own creation.

Ultimately, Veoh's application is nothing more than a cynical attempt to distract from its own discovery misconduct. It is telling that Veoh only chose to pursue this application after UMG filed its own application for a protective order

regarding two depositions noticed by Veoh.  Just as with its previous reflexive motion to compel (which Veoh filed after UMG filed its own motion and even though Veoh had not even bothered to review UMG's production first), Veoh filed this application as a reaction to UMG's request for relief from the Court.  Presumably we can expect that every time UMG seeks some form of discovery relief, Veoh will trump up another set of false accusations to try to suggest some kind of equivalence of discovery conduct.

       UMG respectfully submits that the Court should not be fooled by such tactics.  Facts are facts.  UMG's complaints about Veoh's production are backed up by specific explanation of missing categories of information and facts.  Veoh's arguments are consistently supported by nothing but innuendo, misquotations of evidence, and hyperbole.  UMG is confident that the Court can tell the difference.  If situations were truly similar, UMG would be proceeding with depositions of Veoh witnesses, not asking the Court for assistance to get discovery of the most basic information.  Veoh's cynical tit for tat application should be denied.

## II.    THERE IS NO EMERGENCY WARRANTING *EX PARTE* RELIEF

       As the courts of this district have repeatedly held, "[e]*x parte* motions are rarely justified." *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Here, Veoh presents no emergency warranting ex parte relief.  Even if any of the premises of Veoh's motion were correct (they are not), they would not warrant *ex parte* relief.  Veoh complains about issues that were already raised in its prior motion to compel.  The Court denied that motion on the record during the hearing on October 25, 2008.  At that time, the Court indicated that if Veoh wished to pursue any of the issues presented in that motion, it could bring a new motion that could be properly briefed to address such issues.  "I think the best thing, although I do it with some reluctance, is to deny your motion to compel without prejudice to your renewing such parts of it as are necessary to renew after you've completed your review of their [UMG's] production." 2008-08-25

Hearing Tr. (Ledahl Decl., Ex. 1), at 21:22-22:1.  The Court did not invite Veoh to file an *ex parte* application claiming that certain additional documents should be produced.  Veoh is simply refusing to accept the Court's clear direction that if it wanted to present a motion to compel, "You can file a separate motion on that.  I want you to make this – this is an unmanageable package for me of this length of things grouped in these very broad, unhelpful categories.  I'm not trying to be unkind, but this is really poor in terms of presenting it to the Court.  So, please, if you're not satisfied with their interrogatory responses, file a motion, but do it in a sensible way next time.  Okay?"  2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 23:9-17.

      Veoh ignored this Court's direction and rushed ahead with this application.  If Veoh truly believes that UMG violated a Court order, it can bring a properly-noticed motion to address such allegations.  Instead, Veoh offers a deliberately misleading quotation of the Court's statements at the August 25 hearing to suggest that the Court somehow invited Veoh to proceed in this manner.  Veoh states in its application that "the Court also suggested that if there was an inability to resolve discovery issues, to 'let my clerk know, and that's probably something we could address on an expedited basis.'"  Veoh Application at 6.  Veoh very carefully excerpts the Court's statement to change its meaning entirely.  What the Court actually said was, "**And if there are concerns on UMG's part**, hopefully you'll be able to work them out, but if you can't, let my clerk know, and that's probably something we could address on an expedited basis."  2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 58:13-16.  The paragraph preceding this statement makes clear that the Court was speaking about Veoh's then-extant inadequate production of videos, not UMG's production, and specifically the Court's direction that Veoh produce a spreadsheet of metadata for its videos.  Veoh's attempt to rewrite the Court's statements in its application is frankly dishonest.

# III. UMG MADE ITS CORE PRODUCTION LONG AGO

Not only is Veoh's *Ex Parte* Application procedurally improper, it is also substantively incorrect. Veoh relies on purported orders this Court never issued to manufacture claims about violations by UMG. This Court directed both parties to complete their core production of documents by September 30. 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 57:15-16. Further, the Court clarified that Veoh should proceed with the production promised in its June 13, 2008 letter. *Id.* at 57:16-20. Finally, the Court indicated that UMG should "do as to issues in dispute on Veoh's motion essentially what I had ordered them to do in the previous cases." *Id.* at 57:21-23. The Court also stated that "For UMG's guidance, even though I've denied Veoh's motion to compel, I'm likely to make every effort to decide consistently in this case as I did in the previous cases. So, you should probably go ahead and do what I ordered you to do previously. If you don't, I'm going to be looking for a very, very good reason why this case is so different that you didn't do that." *Id.* at 56:18-25. UMG has done precisely as the Court directed.

## A. UMG Produced More Than 1.4 Million Pages Before Veoh Even Brought A Motion To Compel

UMG had already completed the overwhelming majority of its "core production" even before Veoh filed its motion to compel. Indeed, the Court cited Veoh's apparent failure to even review the production before filing its motion as one reason for denying Veoh's motion. 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 10:22-11:1 ("My first instinct when I looked through all of this and assumed that they had produced something was that really you should complete the process of going through their production first before you complain and seek relief."). Veoh's "complaint" that after the August 25 hearing UMG produced only an additional 1008 pages of documents simply reflects the fact that UMG's original core production was comprehensive, and left no need for any motion practice.

**B.     UMG Produced Additional Documents Compelled In Prior Actions**

UMG also followed the Court's directions about types of documents ordered in the prior cases. Indeed, there too, UMG did not wait for a Court order. For example, in the prior cases, the Court directed UMG to search the files of five additional document custodians and to include several additional search terms in its review of documents. UMG already implemented those additional searches and searched the files of the additional custodians. Those additional files were produced before Veoh ever filed its motion to compel. Ledahl Decl., ¶ 2.

Veoh complains broadly about "viral marketing" documents. Like its predecessors, Veoh seems unable to explain what documents it seeks, but it certainly cannot show that UMG violated some order. The Court never ruled on any "viral marketing" discovery in either this case or in the prior cases. The November 8, 2007 Order in the Grouper matter that Veoh cites is a stipulation between UMG and Grouper about additional production that UMG agreed to make. UMG made the production that it had agreed to make. Ledahl Decl., ¶ 3. Indeed, Veoh stretches so far as to rely upon a Grouper motion disputing whether additional documents should have been produced by UMG but fails to acknowledge the fact that this Court never ruled on that motion and certainly never ordered UMG to produce further "viral marketing" discovery beyond the extensive information UMG has already produced about both on-line and more traditional marketing activities.[1]

Veoh also complains broadly that UMG failed to produce documents about the "promotional value of websites." Once again, Veoh offers no evidence to suggest that UMG has actually withheld such information. While it is unclear how UMG could reasonably search for such material, it has searched the files of relevant executives and employees for documents referencing a number of websites offering "video sharing" capabilities, such as MySpace, YouTube, Veoh, Grouper, and

---

[1] For example, UMG has already used search terms like: ("Viral AND (Market* OR Promot! OR Blogs OR "File-Sharing")").

others. Certainly if any of those documents addressed the "promotional value" of such sites, they would be identified by UMG's search and UMG has produced any such documents it located. Ledahl Decl., ¶ 4. Veoh's claims of withholding are simply false and completely unsubstantiated.

UMG has also already produced extensive documents about its finances. Ledahl Decl., ¶ 5. There is, however, one type of financial information that UMG has not yet produced, but that is a function of Veoh's obstruction. In the MySpace action, the Court directed that UMG should produce certain summary financial information, to the extent available, about the individual works at issue in the lawsuit. While UMG does not have "profitability" analyses of the type specifically discussed by the Court, it maintains some limited financial information on a work-by-work basis for at least some works. UMG remains willing to produce such material, but it needs to be able to identify the works in issue to determine which information to collect. Veoh continues to obstruct that effort.

The Court directed Veoh to produce its video spreadsheet at the hearing on August 25, with some skepticism that producing the spreadsheet alone would be sufficient. 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 58:9-12 ("I'm not certain that the spreadsheet necessarily meets all of UMG's reasonable needs, but it seems like that can be done very quickly and relatively inexpensively."). Skepticism about the adequacy of Veoh's spreadsheet has proven well-founded. First, Veoh provided UMG incorrect information about how it might access the videos identified in the spreadsheet. Ledahl Decl., ¶ 6. After providing UMG with the corrected information, Veoh unilaterally terminated UMG's access to the videos because it contended that UMG was accessing its system too often. Ledahl Decl., ¶ 7.

Veoh also excluded from its video spreadsheet the substantive data about videos returned by the Audible Magic filtering software. Ledahl Decl., ¶ 8. Veoh contended that because it stores Audible Magic data in a separate location, it had no

intention of even producing that material until UMG threatened motion practice. Ledahl Decl., ¶ 8. Next, when Veoh finally produced Audible Magic information on October 14, UMG discovered that much of the data was missing, including basic information provided by Audible Magic like the song title and performing artist of works identified using the filter. Ledahl Decl., ¶ 9. When UMG raised this problem with Veoh, Veoh was finally forced to reveal that (even though Veoh did not implement Audible Magic filtering until after this lawsuit was already pending and thus unquestionably was under an obligation to preserve evidence), Veoh has deliberately failed to retain some of the key data returned to it by Audible Magic about each video that matches a fingerprint in the Audible Magic database. Ledahl Decl., ¶ 10. UMG will address Veoh's destruction of evidence (which UMG only learned of yesterday) separately. Suffice to say, however, that Veoh has done everything in its power to obstruct UMG's efforts to review videos and to prevent UMG from identifying the full scope of infringed works at issue. Given these facts, Veoh's complaints about the fact that UMG cannot yet produce documents about the individual works at issue are an entirely self-inflicted wound. If Veoh would stop actively obstructing UMG's discovery efforts, things would undoubtedly move forward more smoothly.

Finally, Veoh asserts that UMG has refused to provide supplemental written responses ordered by the Court. Veoh does not identify to which interrogatories it claims UMG has failed to provide an adequate response. Moreover, as ordered by the Court, UMG has provided a lengthy supplemental response to Veoh's Interrogatory No. 18, listing persons responsible for maintaining UMG's relationships with artists. Ledahl Decl., Ex. 2 (UMG Recordings, Inc.'s Supplemental Response to Veoh Networks, Inc.'s Interrogatory No. 18). When Veoh made a generalized (albeit more detailed than in this application) demand for supplemental interrogatory responses in its motion to compel, this Court denied Veoh's motion and instructed Veoh, "[P]lease, if you're not satisfied with their

interrogatory responses, file a motion. But do it in a sensible way next time. Okay?" 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 23:15-17. Veoh's *ex parte* application is neither a motion nor is it sensible.

## IV. VEOH'S APPLICATION IS ANOTHER EFFORT TO MASK ITS OWN DISCOVERY OBSTRUCTION

Veoh undoubtedly hopes that by raising false and unsubstantiated complaints about UMG, it will somehow distract the Court from the real problem of Veoh's refusal to produce relevant documents. Indeed, Veoh's application is so cynical that if Veoh were correct about UMG's conduct, Veoh itself would be guilty of comtempt. For example, Veoh contends in its application that the Court ordered the parties to serve supplemental document request responses by September 30, 2008. UMG understood the Court to order any supplemental interrogatory responses by that date (which UMG provided). If Veoh were correct, however, it violated that order by producing its own supplemental written responses to UMG's document requests on October 13, 2008 (only after writing on October 10 to complain that UMG had not provided such responses). Veoh's conduct belies its assertions to this Court.

Similarly, Veoh claims that UMG was ordered to produce various categories of documents from the MySpace and Grouper cases by September 30. While UMG shows above that it actually did what the Court was directing (without the need for an order), Veoh could not live by such a standard. The Court clearly indicated at the August 25 hearing that Veoh's "core production" due by September 30 should include "what they have promised to do in the June 13, 2008 letter." 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 57:15-20. Among other things, Veoh's June 13, 2008 letter promised production of 1) Veoh's terms of use, 2) summaries of Veoh revenues and 3) valuations of Veoh. On October 17, 2008, Veoh produced, for the first time, a collection of documents containing Veoh's terms of use, "Frequently Asked Questions," financial presentations, valuations of Veoh, and

other documents. Ledahl Decl., ¶ 11. Notably, many of these documents bear Bates-stamps indicating that they were produced by Veoh in its *Io Group* litigation. Ledahl Decl. ¶ 11. Thus, Veoh has had these documents available for production all along (even before UMG filed its motion to compel), but withheld them from discovery, continued to withhold them in the face of UMG's motion to compel, and refused to produce them even by the September 30, 2008 deadline set by the Court. Veoh's conduct goes far beyond the bounds of good faith. It is disingenuous for Veoh to criticize UMG's production while Veoh has not fully produced basic documents, including the media files at the heart of this litigation and the already-available documents Veoh produced in the *Io Group* case. UMG provided Veoh its extensive core production many months ago. Veoh has no legitimate complaint with this production. Veoh's application is nothing more than a cynical attempt to conceal its own misconduct.

## V. CONCLUSION

For the reasons set forth above, UMG respectfully requests that the Court deny Veoh's application for *ex parte* relief.

Dated: October 21, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein


By: _____/s Brian Ledahl_____
      Brian Ledahl

Attorneys for Plaintiffs