1  IRELL & MANELLA LLP
   Steven A. Marenberg (101033) (smarenberg@irell.com)
2  Elliot Brown (150802) (ebrown@irell.com)
   Brian D. Ledahl (186579) (bledahl@irell.com)
3  Benjamin Glatstein (242034) (bglatstein@irell.com)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile: (310) 203-7199

6  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., *et al*., <br><br> Defendants. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S *EX PARTE* APPLICATION FOR ORDER REQUIRING VEOH TO RETAIN EVIDENCE** <br><br> **Concurrently filed herewith:** <br> **(1) Declaration of Brian Ledahl in Support of *Ex Parte* Application** <br><br> Magistrate: Hon. Andrew J. Wistrich <br><br> Date: TBD <br> Time: TBD <br> Ctrm: 690 <br><br> Discovery Cutoff: January 12, 2009 <br> Pretrial Conference: April 6, 2009 <br> Trial Date: April 21, 2009 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Local Rule 7-19, Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, and Universal Music – MBG Music Publishing Ltd., (collectively "UMG") hereby apply to the Court *ex parte*, for an Order Requiring Veoh to Retain Evidence. Specifically, UMG seeks an order preventing Veoh from destroying, spoliating or otherwise failing to maintain video metadata generated by its acoustic filtering program, Audible Magic.

The basis for this *ex parte* is simple: *Veoh has confirmed that it is currently destroying or otherwise failing to preserve centrally relevant information about the copyrighted works at issue in this suit. An order preventing further destruction of evidence is necessary to preserve relevant evidence which Veoh refuses to preserve voluntarily.* After UMG filed this lawsuit, Veoh implemented filtering (or "fingerprinting") software – known as Audible Magic – whose purpose is to detect copyrighted videos based on their soundtrack. According to Veoh, Audible Magic generates "dozens" of metadata fields for any video whose soundtrack matches a known copyrighted sound recording, such as a UMG sound recording. Veoh has recently disclosed that it destroys the vast majority of this metadata and has refused UMG's request that it be retained. UMG seeks an order to stop the ongoing destruction of this evidence.

The name, address, and telephone number of Veoh's counsel are as follows:

| | |
|---|---|
| Jennifer Golinveaux | Rebecca Calkins |
| WINSTON & STRAWN LLP | Erin Ranahan |
| 101 California Street | WINSTON & STRAWN LLP |
| San Francisco, CA 94111-5894Fax: | 333 South Grand Avenue, 38th Floor |
| Telephone: (310) 586-7800 | Los Angeles, CA 90071-1543 |
| Facsimile: (310) 591-1400 | Telephone: 213-615-1700 |
| Email:  jgolinveaux@winston.com | Facsimile: 213-615-1750 |
| | Email: rcalkins@winston.com |

| | |
|---|---|
| | Email: eranahan@winston.com |

Michael S. Elkin
Thomas P. Lane
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: tlane@winston.com
Email: melkin@winston.com

Counsel for Veoh received notice of this *ex parte* application on October 20, 2007. Ledahl Decl. ¶ 12 & Ex. L. Veoh has responded to UMG's letter stating that it does not believe it is obligated to retain this evidence. *See* Ledahl Decl., Ex. M (2008-10-22 Golinveaux letter to Ledahl).

Dated: October 27, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein


By: _____/s_____
     Brian Ledahl

Attorneys for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

Veoh is destroying centrally relevant evidence relating to its unauthorized use of the copyrighted works which are the basis for this lawsuit. The evidence at issue is generated by software – called Audible Magic – installed by Veoh after UMG filed suit, which can determine whether videos uploaded to Veoh's website contain soundtracks with unauthorized uses of copyrighted works. When Audible Magic detects a match between an uploaded work and a copyrighted work, it alerts Veoh and automatically passes to Veoh "dozens" of pieces of information about the copyrighted work at issue, including the name of the work, the album on which the soundtrack can be found, the recording artist, the copyright holder, and other relevant information. This evidence is obviously relevant to UMG's identification of infringed works on Veoh's website, UMG's damages, and other issues, many of which UMG specifically identified during the August 25, 2008, hearing on UMG's Motion to Compel. This is why UMG specifically instructed Veoh to retain such metadata in a letter on September 4, 2007, which UMG sent to Veoh along with the Complaint in this action, and why UMG specifically requested Veoh's metadata in its first set of Requests for Production, served in January 2008.

On October 20, 2008, Veoh disclosed that it has been systematically deleting this metadata. UMG immediately requested that Veoh stop its destruction of this highly relevant evidence. Veoh refused, compelling UMG to bring this application to stop Veoh's ongoing destruction of evidence. Veoh's only basis for its systematic deletion of relevant evidence is that the evidence itself is stored briefly, and therefore Veoh is excused from any obligation to preserve the evidence. This is of a piece with Veoh's aggressively cynical view towards all discovery in this case. Veoh has engaged in a pattern of systematically withholding relevant evidence. Now it has become clear that Veoh is also destroying such evidence. Not only does Veoh's position that such destruction is acceptable find no support in Federal Rule

of Civil Procedure 34, but the case law unambiguously confirms that data stored – *even briefly* – must be retained if it is relevant.

In the most egregious and indefensible way possible, Veoh is thumbing its nose at its obligation to retain relevant evidence and at the Court's instructions to produce metadata at the August 25 hearing. Since Veoh will not voluntarily cease its destruction of evidence, UMG respectfully requests an immediate order prohibiting Veoh from further destruction.

## II. EX PARTE RELIEF IS APPROPRIATE AND NECESSARY

During the August 25 hearing on UMG's Motion to Compel, counsel for Veoh twice represented that Veoh would produce "all the metadata" relating to the videos uploaded by its users. Ledahl Decl., Ex. C (2008-08-25 Hearing Tr.), at 43:14-15 (the Veoh spreadsheet "would have all the metadata" for its videos); *id.* at 54:24 (Veoh would produce "all the metadata for each video").[1] Veoh did not comprehensively produce its metadata by September 5, the date set by the Court. Ledahl Decl., ¶ 5. UMG wrote to Veoh to request (again) that Veoh produce all its metadata, as it had agreed to do and as it had been ordered to do. Ledahl Decl., Ex. D (2008-09-26 Ledahl Letter to Golinveaux). In particular, UMG noted that Veoh's own designee for a Rule 30(b)(6) deposition had testified that Veoh received "dozens" of metadata fields from Audible Magic – yet Veoh's production contained only one (1) item of metadata relating to Audible Magic results. *Id.* Veoh eventually agreed to produce the remainder of the Audible Magic metadata. It made

---

[1] UMG had long-sought this information. On September 4, 2007, UMG sent Veoh a letter reminding it of its obligation to preserve "All documents concerning the removal of UMG videos from Veoh.com …" Ledahl Decl., Ex. A (2007-09-04 Marenberg Letter to Mitgang and Shapiro). On January 17, 2008, UMG served Veoh with Requests for Production seeking "All Video Files formerly, but no longer, Available on Veoh Software that may contain a UMG copyright," (Request No. 98), as well as "All Video Files Available at any time in the past or present on Veoh Software that may contain a UMG Copyrighted Work" (Request No. 99). Ledahl Decl., Ex. B (UMG's First Set of Requests for Production). UMG defined "Video File" to include "both the files themselves as well as any and all associated metadata …" *Id.*

a supplemental production on October 14, 2008. *Id.* Review of that production, however, revealed only a few select metadata fields: the internal Veoh identification number and what appears to be the name of company which registered the sound recording.[2] Examples of Veoh's purported Audible Magic metadata production are attached to the accompanying Declaration of Brian Ledahl as Exhibit I (Bates Nos. VN284066-VN284069). Once UMG reviewed Veoh's production, it wrote again to request immediate production of the rest of the Audible Magic data, consistent with Veoh's testimony that it received "dozens" of fields of metadata from Audible Magic. Ledahl Decl., Ex. J (2008-10-16 Ledahl Letter to Golinveaux).

Finally, on October 20 – <u>eight</u> weeks after Veoh represented in Court that it would produce "all the metadata" for its videos, and <u>six</u> weeks after the deadline set by the Court for Veoh to produce its metadata – *Veoh disclosed to UMG that it had been deleting the vast majority of the "dozens" of Audible Magic metadata fields it was receiving.* In Veoh's words, "[w]hile Audible Magic's system returns a variety of fields as it runs, the only fields logged by Veoh have been provided to you." Ledahl Decl., Ex. K (2008-10-20 Golinveaux letter to Ledahl). Put another way, while Veoh's Audible Magic filter generates "dozens" of metadata fields, Veoh has chosen to delete much of that metadata rather than "log" or save it. Again, UMG immediately wrote to Veoh explaining that it was obligated to retain this evidence. Ledahl Decl., Ex. L (2008-10-20 Ledahl letter to Golinveaux). Veoh responded, confirming that it received the metadata from Audible Magic, but denying any obligation to retain it and refusing to begin retaining the data. Ledahl Decl., Ex. M (2008-10-22 Golinveaux letter to Ledahl).[3] Because Veoh continues to generate and

---

[2] As discussed below, UMG has asserted rights in both copyrighted sound recordings *and* copyrighted musical compositions. Thus, the identity of the sound recording copyright owner in metadata is not the only piece of relevant information.

[3] This *ex parte* seeks only to stop Veoh's ongoing destruction of evidence. UMG reserves its rights regarding sanctions or other appropriate remedies relating to Veoh's past destruction of evidence. Those issues, however, do not require *ex parte* relief. Veoh's ongoing destruction of this evidence, in contrast, does.

then delete the metadata on an ongoing, daily basis, an immediate preservation order is needed. Each passing day results in additional destruction of evidence. Thus, immediate *ex parte* relief is needed to stop this ongoing destruction.

## III. THE AUDIBLE MAGIC METADATA IS CENTRALLY RELEVANT EVIDENCE THAT MUST BE RETAINED

The metadata that Veoh is currently destroying is centrally relevant to this case. That is why UMG advised Veoh of the need to retain such information from the outset of this case, why UMG has sought Veoh's metadata for more than 10 months, and why UMG specifically discussed this particular type of metadata with the Court at the August 25 hearing.

### A. Audible Magic Metadata Is Centrally Relevant

As the Court may recall, Audible Magic's software basically functions as follows: When Veoh uses the Audible Magic technology to examine a video, the Audible Magic software examines the soundtrack to the video and then compares it to a database of copyrighted works, including copyrighted works controlled by UMG. If the soundtrack to a video matches a sound recording in Audible Magic's database, Audible Magic flags the video and then sends Veoh a slew of information about the video. Indeed, according to Veoh's designee for a Rule 30(b)(6) deposition, Audible Magic sends Veoh "dozens" of metadata fields about the unauthorized video. Ledahl Decl., Ex. E (Papa Deposition), at 91. For example, if a Veoh user uploads to Veoh a copy of the UMG music video for the song "Fergalicious" by the artist Fergie, Audible Magic can alert Veoh of the unauthorized soundtrack in the user's video. It also gives Veoh "dozens" of pieces of information about the song in question, including its title ("Fergalicious"), artist name (Fergie), recording label (A&M Records), album name ("The Dutchess"), song length (4:52), and other metadata. Veoh first began to implement this technology well after this lawsuit had been filed. Ledahl Decl., Ex. E (Papa Deposition), at 103.

Veoh does not dispute the relevance of the Audible Magic metadata – nor could it.[4] Indeed, in the *Grouper* and *MySpace* litigations previously before this Court, neither defendant disputed the relevance of this data, let alone claimed the right to destroy it. This metadata is not just relevant, but is <u>central</u> to several issues in this suit, including:

- **Identification of infringing works** – Veoh's Audible Magic metadata includes identifying information for unauthorized videos on Veoh's website. This will be relevant both to identifying the videos containing sound recordings UMG owns *and* to identifying the videos containing songs in which UMG controls publishing copyrights, even where the sound recording copyright is owned or controlled by a third party. UMG's Complaint identifies both types of copyrights, and both are relevant to this lawsuit. Veoh's ongoing destruction of this evidence hampers UMG's ability to determine the scope of Veoh's infringement.
- **Knowledge of infringement** – Because the Audible Magic metadata includes information regarding the identity of works posted on Veoh's website, it is relevant to establishing Veoh's knowledge of infringement or the existence of "red flags" which should have alerted Veoh to the presence of infringement. *See* 17 U.S.C. § 512(c)(1)(A)(i), (ii). For example, if the Audible Magic metadata helps establish that videos by the artist Fergie have been by performed by Veoh tens of thousands of times, such evidence would be relevant to knowledge of infringing activity.
- **Inducement of infringement** – The Audible Magic metadata may show the percentage of unauthorized works on Veoh's website, which in turn is relevant to Veoh's liability for the inducement of

---

[4] "Relevance" itself is broadly defined. *See, e.g.*, *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).

UMG'S EX PARTE APPLICATION FOR AN ORDER
REQUIRING VEOH TO RETAIN EVIDENCE

1951379 - 5 -

infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd*, 545 U.S. 913, 922 (2005) (percentage of infringing works is evidence of inducement).

- **UMG's damages** – The Audible Magic metadata will assist in the identification of infringing works and the frequency with which they appeared on Veoh's system. Thus, this metadata is relevant to the extent of UMG's damages and the analysis of whether UMG's works were a "draw" to Veoh's website. *See Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004). The prevalence of infringing works is also relevant to establishing that Veoh's infringement was willful. *See* 17 U.S.C. § 504(c)(2) (statutory damage range for willful infringement).

Indeed, at the August 25 hearing on UMG's Motion to Compel, UMG took pains to explain why the Audible Magic metadata was so important:

"As the Court may recall from the prior litigation, it's our understanding that that filtering technology essentially spits out a report for each video of exactly what song it is, who the – sometimes it has very precise information about what recording company it comes from, who the artist is, … what record album it's on. That's obviously very helpful information. That can help move the process forward."

Ledahl Decl., Ex. C (2008-08-25 Hearing Tr.), at 51:10-17.

Moreover, whether Veoh agrees that this evidence is relevant is immaterial: *Veoh cannot unilaterally determine that evidence which UMG has explicitly sought is not relevant to UMG's case, and then destroy it.* Yet that is precisely what it has done and continues to do.

## B. The Audible Magic Metadata Is "Electronically Stored Information" Under Rule 34(a)

The Federal Rules of Civil Procedure explicitly authorize discovery into "electronically stored information … stored in any medium from which information can be obtained." Fed. R. Civ. Pro. 34(a). Veoh claims that the Audible Magic metadata at issue is does not fall under this Rule because it is stored temporarily in Veoh's computer memory. Veoh is wrong. Rule 34(a) applies to electronically stored information, "in any medium from which information can be obtained."

Here, Veoh admits that its metadata satisfies the Rule 34 test. As Veoh explains, it receives the metadata at issue from Audible Magic, places that data in its RAM (Random Access Memory[5]), then logs (or saves) some of the data and deletes the rest. Since Veoh itself "obtains" some Audible Magic metadata from its RAM, storage in Veoh's RAM is by definition storage in a medium "from which information can be obtained."

Moreover, Veoh's position has been soundly and squarely rejected by both the Ninth Circuit and by a recent opinion in this District. First, *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993), held that a computer program copied in RAM – like Veoh's metadata – was "'fixed' in a tangible medium of expression." *MAI Systems*, 991 F.2d at 518. The Court concluded that such a RAM-based copy is "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.*; *see also id.* at 519 ("the copy made in RAM is 'fixed' and qualifies as a copy under the Copyright Act"). Under *MAI Systems*, data "fixed" in RAM – and which can therefore be "perceived, reproduced, or otherwise communicated for a period of more than transitory duration" – is clearly information "stored in any medium from which information can be obtained."

---

[5] Wikipedia explains that "RAM" or "Random Access Memory" is "a computer data storage." *See* http://en.wikipedia.org/wiki/RAM.

Similarly, in *Columbia Pictures v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007), the Court dealt with a copyright infringer's failure to retain information stored in its computer RAM (just as Veoh is storing the data at issue here), and considered – in depth – the question whether data stored in RAM constitutes electronically stored information. The *Columbia Pictures* Court concluded that it did, explaining that "*data stored in RAM, however temporarily, is electronically stored information subject to discovery under the circumstances of this case.*" *Id.* at 446 (emphasis added). Thus, the court required that such data be retained when relevant. In reaching this conclusion, the Court rejected the view that Rule 34 excluded evidence stored, "however temporarily," in RAM. As the Court explains:

- First, the dictionary definition of "store" included electronic storage in RAM: "[A]ccording to the Merriam-Webster Collegiate Dictionary, to store means 'to lay away, to accumulate or to place or leave in a location (as a warehouse, library, or *computer memory*) for preservation or later use or disposal.' *Merriam-Webster's Collegiate Dictionary* (Frederick C. Mish et al. eds., 10th ed.1993) (emphasis added). It is undisputed that RAM is computer memory and that information held in RAM is held there for later use by the computer (e.g., to be used in tasks performed by software or written to a hard drive, flash drive, DVD, or other more permanent medium) or disposal …" *Id.* at 446 (emphasis in original).

- Second, RAM "itself is *defined* as a storage unit." *Id.* at 447 (citing and quoting National Comms. System, *Federal Standard 1037C: Telecommunications: Glossary of Telecommunications Terms* (Gen. Serv. Admin., 4th ed. 1996).

- Third, the Notes of the Advisory Committee to the 2006 Amendments to Rule 34 "make explicit that it authorized discovery of information stored electronically" also "indicate that the definition was intended to

be read expansively to include all current and future electronic storage mediums." *Id.* at 447 (citing and quoting Fed. R. Civ. Pro. 34(a)(1) (2006 Amendments, Advisory Committee Notes).

- Fourth, the "broad" scope of Rule 34(a), which was intended to cover "data stored 'in any medium from which information can be obtained.'" *Id.* at 447. The Court explained that this language "leaves no room to interpret the Rule to categorically exclude information written in a particular medium simply because that medium stores information only temporarily."
- Fifth, the argument that data stored temporarily in RAM is not "stored" was "foreclosed by the Ninth Circuit's decision in *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993)," which held that a computer program copied in RAM was "fixed in a tangible medium of expression." *Id.* at 447-448 (quoting *MAI Systems*). *MAI Systems* concluded that a software program temporarily copied in RAM is "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *MAI Systems*, 991 F.2d at 517-18.

Accordingly, under *Columbia Pictures* and under the Ninth Circuit's decision in *MAI Systems* (for the reasons articulated by *Columbia Pictures*), Veoh cannot argue that the metadata at issue is not subject to retention or discovery because it is allegedly only temporarily stored in RAM. That view is both contrary to the plain text of Rule 34 and has been directly rejected by a court in this district.

**C. Veoh Must Be Ordered To Cease Its Destruction Of Relevant Evidence**

In evaluating a request for a preservation order in the face of potential or actual destruction of evidence, Courts consider three factors, each of which heavily favors UMG and the preservation of evidence:

- **First,** "the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in the absence of an order directing preservation[.]" *Columbia Pictures v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) (citing *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 432-33 (W.D.Pa.2004)). Because Veoh freely concedes that it is actively deleting the evidence at issue, UMG easily establishes a substantial risk to integrity of the evidence in the absence of a preservation order. Indeed, absent an order from this Court, Veoh makes clear that destruction of this evidence is not merely a risk, but a certainty.
- **Second,** "any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation[.]" *Id.* As explained above, the evidence Veoh is deleting is directly relevant to a host of issues in this case; thus UMG is likely to suffer irreparable harm if Veoh continues its destruction of this evidence.
- **Third,** "the capability of the party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation." *Id.* This factor also weighs heavily in UMG's favor for several reasons: <u>First</u>, the metadata sought by UMG is simple text, which requires very little memory space. <u>Second</u>, since Veoh is already saving some of this metadata, it clearly has the technical infrastructure to retain the information. It merely chooses not to do so. <u>Third</u>, as the Court is aware from prior litigations, other websites, including the defendant in the *Grouper* case, routinely retain this sort of information. <u>Fourth</u>, the metadata information already produced by Veoh required only 401 pages to produce. Ledahl Decl., ¶ 9. Assuming that Veoh is only saving 1/10 of the metadata it receives

| | |
|---|---|
| 1 | from Audible Magic, that would still only constitute 4,010 pages of |
| 2 | metadata. Considering the scope of Veoh's infringement and the |
| 3 | damages at stake, this request is simply not burdensome. |

Accordingly, UMG easily satisfies the test for a preservation order relating to this relevant evidence which Veoh is obligated to preserve. *See, e.g.*, *State of Idaho Potato Comm. v. G&T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005) (noting a duty to avoid intentional spoliation of evidence).[6] UMG respectfully suggests that an order should issue preventing Veoh from deleting this evidence on a going-forward basis.

## IV. <u>CONCLUSION</u>

For the reasons provided above, an Order should issue preventing Veoh from further destroying the Audible Magic metadata.

Dated: October 27, 2008                    Respectfully submitted,

                                                        IRELL & MANELLA LLP
                                                        Steven A. Marenberg
                                                        Elliot Brown
                                                        Brian D. Ledahl
                                                        Benjamin Glatstein


                                                   By:     /s/
                                                         Brian D. Ledahl
                                                         Attorneys for Plaintiffs

---

[6] Veoh's obligation to preserve evidence began well before it actually installed the Audible Magic filter, and certainly extends to evidence which UMG warned Veoh not to delete in a September 4, 2007, letter, which UMG sought in Requests for Production propounded more than 10 months ago, and which UMG discussed with the Court at the August 25 hearing.