Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>VEOH NETWORKS, INC., *et al.*<br><br>            Defendants. | Case No. CV-07-05744 AHM (AJWx)<br><br>**OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. A. Howard Matz<br><br>Date:         November 10, 2008<br>Time:        10:00 a.m.<br>Courtroom:  14<br><br>Discovery Cutoff:     January 12, 2009<br>Pretrial Conference:  April 6, 2009<br>Trial Date:              April 21, 2009 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949898

**TABLE OF CONTENTS**

Page

I.      INTRODUCTORY STATEMENT ................................................................................... 1

II.     UMG'S FIRST AMENDED COMPLAINT ................................................................. 3

III.    THE OWNER DEFENDANTS FACE A HIGH BAR TO SUSTAIN A
        MOTION TO DISMISS ................................................................................................ 4

IV.     UMG'S FAC STATES VALID CLAIMS FOR SECONDARY LIABILITY ................. 5

        A.      The FAC States Claims for Contributory Copyright Infringement ..................... 5

                1.      UMG Has Alleged Knowledge of Infringing Activities ......................... 5

                2.      UMG Has Alleged Material Contribution to Infringement ..................... 7

        B.      The FAC States Claims for Vicarious Copyright Infringement ........................ 10

                1.      UMG Has Alleged Financial Interest in Veoh's Infringement ............... 11

                2.      UMG Has Alleged Right and Ability to Control the
                        Infringement ...................................................................................... 11

        C.      The FAC States Claims for Inducement of Copyright Infringement ................. 12

V.      PUBLIC POLICY FAVORS HOLDING THE OWNER DEFENDANTS
        LIABLE FOR COPYRIGHT INFRINGEMENT .......................................................... 14

VI.     CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ......................................................................... 5, 6

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955, 1974 (2007) ......................................................................... 4, 7

*Broadcast Music, Inc. v. Hartmarx Corp.*,
    1988 WL 128691 (N.D. Ill. Nov. 17, 1988) ..................................................... 10

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ........................................................................... 6

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ...................................................................... passim

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
    443 F.2d 1159 (2d Cir. 1971) ........................................................................... 8

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................................................ 4

*M. Lady, LLC v. Aji, Inc.*,
    2007 WL 2728711 (S.D.N.Y. Sept. 19, 2007) ............................................... 10

*Mendiondo v. Centinela Hosp. Medical Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ....................................................................... 4, 7

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...................................................................... 10, 12, 13

*Musical Prods., Inc. v. Roma's Record Corp.*,
    No. 05-CV-5903, 2007 WL 750319 (E.D.N.Y. Mar. 7, 2007) ......................... 9

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*,
    778 F.2d 89 (2d Cir. 1985) ............................................................................... 9

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ............................................................. passim

*Water Techs. Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988) ....................................................................... 13

*Weber v. Dep't of Veterans Affairs*,
    521 F.3d 1061 (9th Cir. 2008) ....................................................................... 4, 7

**Other Authorities**

M. Nimmer & D. Nimmer, *Copyright*, § 12.04[A][2] (2007) ...................................... 10

Page(s)

**<u>Rules</u>**

Federal Rule of Civil Procedure 8 ........................................................................... 4, 5, 7

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 4

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# I. INTRODUCTORY STATEMENT

On June 16, 2008, UMG moved for leave to amend its complaint to assert claims for contributory and vicarious copyright infringement, as well as inducement of copyright infringement, against several of Veoh's investor-owners: Shelter Capital Partners, LLC, Shelter Venture Fund, L.P. (collectively "Shelter Capital"), Spark Capital, LLC, Spark Capital, L.P. (collectively "Spark Capital"), and The Tornante Company, LLC ("Tornante") (hereinafter, the "Owner Defendants"). In opposition to that motion, Veoh vigorously argued that UMG's amendment would be futile because it asserted "nothing more than that [the investors] made investments in Veoh, and each chose an individual to sit on Veoh's Board of Directors." Veoh's Opp'n to UMG's Mot. for Leave to Amend at 8. The Court rejected Veoh's arguments and granted UMG's motion for leave to amend.

Now the Owner Defendants move to dismiss UMG's First Amended Complaint ("FAC") on identical grounds: because UMG purportedly alleges nothing more than (1) investment in Veoh and (2) seats on Veoh's board of directors. Mot. to Dismiss at 6. While the Court gave the Owner Defendants leave to file a motion to dismiss, it probably did not expect them to simply raise the same arguments that Veoh presented in opposing the amendment in the first place. But that is what the Owner Defendants have done. They have rehashed the same arguments that Veoh already unsuccessfully raised and in essence ask the Court to reconsider its decision to grant UMG's motion for leave to amend.

Just as Veoh did when opposing UMG's motion for leave to amend, the Owner Defendants try to rewrite UMG's allegations to attack a strawman, rather than UMG's real allegations. ***In fact, the Owner Defendants fail to quote a single passage from the FAC.*** The reason for this shortcoming is not surprising—the Owner Defendants have no valid argument to support dismissal of UMG's complaint, and must resort to creative "paraphrasing" to make UMG's allegations fit the arguments they want to make.

As the Court recognized in its order granting UMG's motion for leave to amend, UMG's FAC alleges far more than mere passive investment. UMG alleges that the Owner Defendants, through their seats on Veoh's board of directors and through the actions they have taken, exercise control over Veoh and make *all* material decisions regarding its operations, including (but by no means limited to) deciding on the types of content that Veoh makes available and deciding whether to implement filtering technology that could avoid or curtail infringement. The FAC alleges that the Owner Defendants knowingly chose to continue Veoh's infringing operations in order to draw users and advertising dollars, thereby increasing the value of their financial interests in Veoh.

The Owner Defendants urge the Court to believe that UMG alleges "tertiary" copyright liability, and that no court has ever recognized such a theory. Of course, this was the same argument made by Bertelsmann and the venture capital firm Hummer Winblad in the *Napster* litigation that was rejected by Judge Patel. What Bertelsmann, Hummer Winblad – and now the Owner Defendants – ignore is that where an infringer stands in the infringement line is really of no consequence and is not nearly as important as the conduct they engage in while they are in that line. Here, as set forth in the FAC, that conduct is extensive and extends to every aspect of Veoh's operations and the rampant infringement taking place on Veoh website.

In any event, the Owner Defendants' "tertiary" argument is grounded in the fundamentally false assumption that Veoh is not itself a *direct* copyright infringer. Veoh is, as UMG clearly alleges. FAC ¶ 34 (Veoh is liable for direct copyright infringement for reproducing, distributing, and publicly performing UMG's copyrighted works.).

Thus, whether the Owner Defendants are responsible for the direct infringement by Veoh's users or by Veoh itself, the FAC more than adequately pleads a claim. The Owner Defendants' argument that technological innovation would come to a screeching halt if liability was imposed on them is both untrue and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949898

hyperbolic. Ultimately, though, this argument (along with the Owner Defendants' other arguments) has no relevance whatsoever to UMG's actual allegations of secondary liability, which are similar to allegations that the Ninth Circuit and the Northern District of California have found sufficient to state claims for copyright infringement.

For these reasons, the Owner Defendants' motion to dismiss should be denied.

## II.  UMG'S FIRST AMENDED COMPLAINT

On August 22, 2008, the Court granted UMG's motion for leave to amend its complaint. The Court rejected Veoh's argument that UMG's proposed amendment would be futile because it was, in Veoh's words, "based upon the mere fact that they invested in Veoh and chose a person for its Board." August 22, 2008 Minute Order at 5 (quoting Veoh Opp'n to UMG's Motion to Amend at 10). The Court recognized that UMG had alleged far more in its proposed FAC than "mere" investment and seats on Veoh's board. As the Court noted, UMG alleged that

the investor defendants, by seeking and obtaining seats on Veoh's Board of Directors as a condition of their investments, exercised substantial control over Veoh's operations, with full knowledge of Veoh's alleged copyright infringement. FAC ¶¶ 30-32. UMG alleges that the investor defendants exercised control over "all critical decisions regarding the content available on Veoh" and whether and how Veoh would "implement any technology and filter copyrighted content to prevent infringement on Veoh's site." *Id.* ¶¶ 31-32. Rather than use their control to remove infringing content from Veoh, the investor defendants allegedly decided instead "to continue Veoh's infringing operations in order to continue to attract users and advertising dollars to Veoh, and increase the value of their financial interests in Veoh." *Id.* ¶ 31.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

August 22, 2008 Minute Order at 6. The Court rejected Veoh's arguments that these claims were futile and granted UMG's Motion for Leave to Amend. *Id.* UMG filed its FAC on August 26, 2008.

## III. THE OWNER DEFENDANTS FACE A HIGH BAR TO SUSTAIN A MOTION TO DISMISS

Under Rule 8(a), a plaintiff in federal court need only give a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 requires nothing more than fair notice of the claim and the grounds upon which it rests. *Mendiondo v. Centinela Hosp. Medical Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a motion to dismiss, the complaint need have "only enough facts to state a claim to relief that is plausible on its face," assuming that all factual allegations are true. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007). While "a formulaic recitation of the elements of a cause of action will not do," *id.* at 1964-65, "heightened fact pleading of specifics" is not required; "a complaint … does not need detailed factual allegations," *id.* at 1974; *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).

UMG's decision to take discovery before filing the complaint has no impact on this standard. The Owner Defendants make much of the fact that UMG subpoenaed documents from them before UMG filed its FAC. The Owner Defendants seem to assert that the Court should view UMG's allegations with more scrutiny because some discovery has already taken place. The Owner Defendants cite to no authority suggesting that this fact has any bearing on the standard UMG must meet under Rule 8 or Rule 12(b)(6).[1] In any event, the parties have not

---

[1] Indeed, in *UMG Recordings, Inc. v. Bertelsmann AG*, a case that the Court cited in its order granting UMG's motion to amend, the plaintiff subpoenaed documents from Hummer Winblad officials long before filing suit. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1063 (N.D. Cal. 2006) (noting subpoenas were served in 2000, and the complaint against Hummer Winblad was filed in 2003). That fact was so irrelevant to the Court's decision regarding Hummer Winblad's motion to dismiss that it was not even mentioned. *See* 222 F.R.D. 408 (N.D. Cal. 2004).

engaged in "extensive" discovery as the Owner Defendants suggest. Indeed, UMG has not received any discovery at all from Shelter Capital, as the Investor Defendants admit. *See* Sullivan Decl., ¶ 14.[2] As set forth in Section IV, *infra*, UMG has more than sufficiently alleged each of its causes of action against the Owner Defendants.

## IV. UMG'S FAC STATES VALID CLAIMS FOR SECONDARY LIABILITY

Contrary to the Owner Defendants' misleading arguments, UMG has alleged sufficient facts, indeed more than required under the notice pleading standard of Rule 8, to state claims for vicarious and contributory copyright infringement, and inducement of copyright infringement.

### A. The FAC States Claims for Contributory Copyright Infringement

Liability for contributory infringement of copyright lies where a party "knowingly contributes to the infringing conduct of another." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (holding plaintiff's allegation that defendant "actively [strove] to provide the environment and the market for counterfeit recording sales to thrive" was sufficient to state contributory infringement claim because "providing the site and facilities for known infringing activity is sufficient to establish contributory liability.").

#### 1. UMG Has Alleged Knowledge of Infringing Activities

Contrary to the Owner Defendants' assertions, UMG's allegations of knowledge, including constructive knowledge, are sufficient to state claims for contributory liability. Relying on *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), the Owner Defendants claim that, where the accused service is

---

[2] Furthermore, Veoh continues to withhold basic discovery in this case, including communications between Veoh and the various Owner Defendants. Veoh apparently continues to withhold such material (and numerous other categories of basic discovery) until ordered to provide it in response to a motion to compel (argued August 25, 2008) which is currently *sub judice* before Magistrate Judge Wistrich.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

"capable of substantial noninfringing uses," then the plaintiff must show actual knowledge and material assistance with respect to specific acts of direct infringement. In the *Napster* case, the direct infringement at issue was acts by end users of Napster's file sharing system. Thus the analysis in *Napster* examined whether the provider (Napster) would be liable for the direct infringement of its users as a contributory infringer. Indeed, the Ninth Circuit noted that it would "not impute the requisite level of knowledge to Napster merely because peer-to-peer file sharing technology *may* be used to infringe plaintiffs' copyrights." *Id.* at 1021 (emphasis added). Here, the case is quite different. The FAC alleges that Veoh itself reproduces, publicly performs, and distributes UMG's copyrighted works. FAC ¶ 34.

To make their arguments, the Owner Defendants ignore the fact that UMG has alleged that *Veoh* directly infringes UMG's copyrights, not just that Veoh's services have been used by Veoh's *users* to infringe. Regardless, however, the Owner Defendants' focus on labeling claims as "secondary" vs. "tertiary" liability is misplaced. Such distinctions are not applied in evaluating claims for contributory liability in this circuit. For example, in *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), the Court found triable questions of fact regarding whether AOL had the requisite knowledge and material contribution to infringement where an unauthorized copy of a book was uploaded to a USENET system by a remote user and then subsequently made available by AOL to its subscribers. *Id.* at 1077-78. The Ninth Circuit did not focus on whether the relationships were "secondary" or "tertiary," but rather whether the elements of knowledge and material contribution could be satisfied.[3] Thus, whether Veoh is a "dual-use technology," as the Owner

---

[3] Notably, in arguing the *Ellison* case on behalf of the plaintiff, counsel for The Tornante Company here argued to the Ninth Circuit: "That defendants had no control over those responsible for originally uploading the infringing images onto the Internet is not relevant to the issue of defendants' control over their infringing activity." Reply Brief of Plaintiff Appellant in *Ellison v. Robertson*, *available at* 2002 WL 32302139, at *27.

Defendants claim (which issue the FAC by no means concedes), is irrelevant because the Owner Defendants' liability does not solely arise from the fact that Veoh's services *may* be used for infringement, but also from the fact that Veoh has *directly* infringed UMG's copyrights.  The reasoning of *Fonovisa* applies here, and the Owner Defendants may be held liable for contributing to direct infringement, both by Veoh and by those who uploaded material, whether they had actual or constructive knowledge of the activities.

In any event, UMG has alleged that the Owner Defendants had knowledge of Veoh's infringing activities.  UMG alleges that they obtained control of Veoh "knowing full well that the site displayed and distributed copyrighted works without appropriate licenses," FAC ¶ 5, and that "these investors decided to continue Veoh's infringing operations in order to continue to attract users," *id*. ¶ 31.  Indeed, the Court recognized in its order granting UMG leave to amend that UMG alleged that the Owner Defendants acted "with full knowledge of Veoh's alleged copyright infringement."  August 22, 2008 Minute Order at 6.[4]

### 2. UMG Has Alleged Material Contribution to Infringement

While the Owner Defendants try to downplay its relevance, the Northern District of California's decision in *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004), is directly on point here.  In that case, the Court

---

[4] The Owner Defendants apparently believe that UMG's allegations of knowledge are merely "conclusory," and that UMG must allege specific facts showing how the Owner Defendants obtained that knowledge as to specific infringing acts under *Bell Atlantic Corp. v. Twombly*.  In that case, the Supreme Court warned that it was not "requir[ing] heightened fact pleading of specifics," and that "a complaint … does not need detailed factual allegations."  127 S. Ct.at 1974; *see Weber*, 521 F.3d at 1065.  Thus, the Owner Defendants' argument lacks legal authority and is inconsistent with the notice pleading standard under Rule 8, which *Twombly* did not overrule.  UMG need only give fair notice of the claim and the grounds upon which it rests.  *Mendiondo*, 521 F.3d at 1104.  UMG need not, as the Owner Defendants suggest, explain all of the details underlying its allegations or prove them up in its pleading.  UMG alleges numerous facts sufficient to state its claims and does not merely recite the elements of the claims – the type of practice rejected in *Twombly*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

refused to dismiss claims for contributory infringement against investors in the Napster online peer-to-peer network where the plaintiffs alleged the investors were directly responsible for the infringing activity. The plaintiffs had alleged that Bertelsmann and Hummer Winblad, "as entities exercising full control over Napster's operations--were directly responsible for the infringing activity perpetrated by Napster's online users; more than merely knowing of and contributing to the infringing activity, they are alleged to have specifically ordered that such activity take place." *Id.* at 413. The court ruled that, "[u]nder well-established Ninth Circuit law, such allegations state a viable claim for relief under the theories of contributory and vicarious liability." *Id.* at 414 (citing *Fonovisa*, 76 F.3d at 262; *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Indeed, given that Veoh directly infringes UMG's copyrights, the Owner Defendants' conduct is even more centrally related to the infringement than that alleged in the *Bertelsmann* case.

The Owner Defendants contend that, in *Bertelsmann*, the allegations were sufficient only because the plaintiffs alleged operational supervision on behalf of each investor on an individual, rather than collective basis. The Owner Defendants have misstated the case. While one plaintiff in that case had alleged that Bertelsmann was the sole source of funding for Napster, other plaintiffs made different allegations, and the court never suggested that this fact was either necessary or sufficient to support claims for vicarious and contributory liability. The court noted that the plaintiffs' allegations against Bertelsmann and Hummer Winblad "may be mutually exclusive, as plaintiffs variously claim that both Hummer Winblad and Bertelsmann were managing the same corporate enterprise at approximately the same time." 222 F.R.D. 408, 413 (N.D. Cal. 2004). The Owner Defendants contend that this language supports the dubious proposition that the FAC must allege that each Owner Defendant had individual majority control of Veoh. This argument puts form over substance. Notably, the Owner Defendants

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949898

omit the fact that the *Bertelsmann* court stressed that such questions of control "must be left for resolution upon motions for summary judgment or at trial." *Id*.

The Owner Defendants would have the Court hold that, if none of them had individual majority control over Veoh, then they should be shielded, as a matter of law, from copyright liability even if they knowingly encouraged Veoh to infringe copyrights and prevented Veoh from adopting filtering measures to stop the infringement. No court has so held, and for good reason.[5] The Owner Defendants' position is contrary to both the letter and spirit of copyright law. UMG need not allege that any one of the owners had majority or sole control over Veoh. What UMG does allege is that each of the Owner Defendants "used their sizable investments to obtain board seats and otherwise obtain and maintain operational control over all of Veoh's operations," including control over "all critical decisions regarding the content available on Veoh," and control of "decisions over how to monetize Veoh's business, including its substantial use of infringing content." See FAC ¶ 32. Thus, contrary to the Owner Defendants' arguments, the FAC does not simply "pool" together the voting rights of the Owner Defendants to find operational control on that basis alone.

Further, the Owner Defendants apparently contend that UMG must allege that they did something "sufficiently out of the ordinary to justify the imposition of copyright liability." Mot. at 9. Once again, the Owner Defendants cite no legal authority for this strange notion. The behavior of some hypothetical "ordinary" investor is irrelevant here. The Owner Defendants seek to create additional legal requirements out of whole cloth, without regard to the actual law of secondary

---

[5] Indeed, courts have held the opposite. Courts have recognized that "[a]ll persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers." *Musical Prods., Inc. v. Roma's Record Corp.*, No. 05-CV-5903, 2007 WL 750319, at *1 (E.D.N.Y. Mar. 7, 2007) (quoting *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985)).

liability. The authorities cited by UMG make clear that UMG's allegations are sufficient.

UMG has clearly alleged, in more detail than necessary, that the Owner Defendants exercised control over what content was available on Veoh, failed to use that control to prevent Veoh's infringement, and knowingly chose to facilitate Veoh's infringement in order to increase the value of their investment. The full extent of each Owner Defendants' control over Veoh is a factual issue that should be addressed during discovery and trial, not at the pleading stage.

**B.     The FAC States Claims for Vicarious Copyright Infringement**

Vicarious liability for copyright infringement may be imposed where the defendant (1) possesses the right and ability to supervise the infringing activity, and (2) has a direct financial interest in the exploitation of the copyrighted materials. *See* M. Nimmer & D. Nimmer, *Copyright*, § 12.04[A][2] (2007); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d at 262-63. Thus, courts have held corporate officers, members of boards of directors, and investors vicariously liable where the defendant has the ability to control the activities of the company committing the infringement. *See, e.g., UMG Recordings, Inc. v. Bertelsmann AG,* 222 F.R.D. 408 (N.D. Cal. 2004) (refusing to dismiss claims for vicarious infringement against investors in the Napster online peer-to-peer network); *M. Lady, LLC v. Aji, Inc.*, 2007 WL 2728711 (S.D.N.Y. Sept. 19, 2007) (holding a President and CEO, who was also the dominant shareholder and Chairman of the Board of Directors of the defendant company, vicariously liable for copyright infringement); *Broadcast Music, Inc. v. Hartmarx Corp.*, 1988 WL 128691, at *3 (N.D. Ill. Nov. 17, 1988) (holding that the right to control the Board of Directors constituted control of day-to-day activities and thus made investor vicariously liable for infringement).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949898

## 1. UMG Has Alleged Financial Interest in Veoh's Infringement

The Owner Defendants contend that UMG has failed to allege a direct financial interest. They claim that "[b]y definition, as investors they profit only indirectly through either distributions from the company or a sale of its business." Mot. at 10. The Owner Defendants ignore UMG's allegations that Veoh's infringement "attract[ed] users and advertising dollars to Veoh, and increase[d] the value of their financial interests in Veoh." FAC ¶ 31.

The Ninth Circuit has held that the customer "draw" of infringing materials is a sufficient financial benefit to establish vicarious liability. In *Fonovisa*, the plaintiff alleged that Cherry Auction, which operated a swap meet where vendors sold allegedly infringing copies of the plaintiff's copyrighted works, received various fees from vendors and customers. The court found that the plaintiff had sufficiently alleged a financial benefit because the "sale of pirated recordings at the Cherry Auction [acted as] a 'draw' for customers," who paid for entrance, parking, and food at the swap meet. 76 F.3d at 263.

Here, UMG has alleged that Veoh's infringing activities drew users to the site, thereby increasing the value of Defendants' investments in Veoh. UMG intends to show that the value of a website like Veoh is heavily influenced by the number of users that visit the site. If unauthorized copies of UMG's works on Veoh drew users to the site (as UMG alleges), that traffic increased the value of the Owner Defendants' stake in the company. Thus, the Owner Defendants obtained a direct financial benefit. If the Owner Defendants want to dispute the merits of this analysis, the proper place to do so is at trial, not in a motion to dismiss.

## 2. UMG Has Alleged Right and Ability to Control the Infringement

According to the Owner Defendants, the FAC asserts that "the statutory collective management power vested in a company's board of directors to manage its affairs under state law automatically satisfies the 'right and ability to supervise'

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949898

prong." Mot. at 10. Once again, the Owner Defendants set up a strawman version of what they wish UMG had alleged, and attack that illusion instead of addressing what the FAC actually states. UMG does not assert that the Owner Defendants' positions on the board of directors, without more, automatically creates a "right and ability to control." UMG has alleged that the Owner Defendants maintained "operational control over *all* of Veoh's operations," including control over "*all critical decisions* regarding the content available on Veoh," control of "decisions over how to monetize Veoh's business, including its substantial use of infringing content," and control over the decision whether to implement filtering technology. *See* FAC ¶ 32 (emphasis added).[6]

Clearly, UMG has alleged that the Owner Defendants were in a position to prevent Veoh's infringing activities, but they chose instead to benefit from Veoh's continuing infringement. UMG's allegations are more than sufficient under Ninth Circuit authority. *See Fonovisa*, 76 F.3d at 263 (holding that where defendant swap meet owner had right to expel vendors for any reason, the control element of vicarious liability was satisfied because defendant was in a position to police the infringing vendors). Once again, the nature and extent of each Owner Defendants' individual control over Veoh's activities is a factual issue better addressed at summary judgment and trial.

**C.     The FAC States Claims for Inducement of Copyright Infringement**

The Supreme Court stated in Grokster, 545 U.S. at 936-37, 125 S. Ct. 2764, that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." The Owner Defendants assert that they cannot be liable for inducement of infringement because UMG fails to allege they have distributed a device. According to the

---

[6] The fact that the Owner Defendants repeatedly resort to rewriting UMG's allegations is a tacit admission that they have no valid arguments about UMG's actual allegations.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Owner Defendants, UMG's "theory of inducement liability [is] premised upon an investment in the distributor of an accused device." Mot. at. 11.

The Owner Defendants overlook the fact that the Supreme Court itself suggested in *Grokster* that liability for inducing infringement can lie for other acts than distributing a device. The *Grokster* Court cited with approval *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988), which held that a defendant may be held liable for inducement of patent infringement where he "actively and knowingly aid[s] and abet[s] another's direct infringement." The court in *Water Techs*. found a defendant liable for inducing infringement for giving formulas to the direct infringer, helping the direct infringer make the infringing product, and preparing customer use instructions. *Id*. Thus, while *Grokster* specifically dealt with distribution of a device, that does not mean that the inducement doctrine is specifically limited to that factual situation. The FAC alleges that *Veoh*, in addition to Veoh's users, directly infringes UMG's copyrights. Thus, the relevant question is not just whether the Owner Defendants induced Veoh's users to infringe, but also whether they induced *Veoh* to infringe. UMG has alleged sufficient facts showing the Owner Defendants knowingly induced infringement.

Furthermore, UMG has alleged that the Owner Defendants "distribute" and have "made available technology and devices with the object and intent of promoting their use to infringe copyrighted materials." FAC ¶ 59. This contention is supported by numerous factual allegations, already discussed above, that the Owner Defendants had "operational control over *all* of Veoh's operations," including control over "*all critical decisions* regarding the content available on Veoh," control of "decisions over how to monetize Veoh's business, including its substantial use of infringing content," and control over the decision whether to implement filtering technology, all with full knowledge of Veoh's infringing activities. *See* FAC ¶ 32 (emphasis added). These allegations are sufficient to put

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1949898

the Owner Defendants on notice of UMG's claims, and further consideration of the merits of these allegations is not appropriate at the pleading stage.[7]

## V. PUBLIC POLICY FAVORS HOLDING THE OWNER DEFENDANTS LIABLE FOR COPYRIGHT INFRINGEMENT

Throughout their motion, the Owner Defendants lament the "negative societal consequences" of UMG's supposed allegations of "tertiary" liability. According to the Owner Defendants, "if an angel investor can be held liable solely because it believed in the promise of an inventor's technology … such inventions would never see the light of day." Mot. at 13. The Owner Defendants claim, without citing a single passage of the FAC, that "UMG proposes that a corporate investor shall be liable for all downstream consequences of lawful products sold by the company commercializing the invention." *Id.*

Leaving aside the fact that it is absurd for the Owner Defendants to refer to themselves as "angels," the FAC does no such thing. The Owner Defendants' hyperbolic arguments are based entirely on their intentional misreading of UMG's FAC. UMG does not allege "tertiary" copyright liability, but rather, the sort of secondary liability that the Ninth Circuit and Supreme Court have upheld time and again. UMG does not intend to hold the Owner Defendants liable solely as passive investors or shareholders. Indeed, UMG did not pursue claims against other investors in Veoh. Far from being mere passive investors, the Owner Defendants are alleged to have taken control of all of Veoh's operations and made all critical decisions, with full knowledge of Veoh's infringing activities. Indeed, in light of the true allegations of the FAC, the Owner Defendants are essentially arguing that investors should be permitted to control a business and wantonly encourage that business to engage in illegal activity, without any fear of civil liability. The Owner Defendants' arguments would not encourage innovation, but rather illegal

---

[7] The Owner Defendants remaining arguments that, under patent caselaw, UMG should have to establish they were the alter egos of Veoh are clearly misplaced. UMG has alleged far more than passive investment.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

enterprises. Simply stated, they run a business that is founded on, and supported by, illegal behavior, and they cannot escape liability by misnaming their activities and by mischaracterizing the FAC.

## VI.   CONCLUSION

For the foregoing reasons, UMG respectfully requests that the Court deny the Owner Defendants' motion to dismiss.

Dated:  October 27, 2008                    Respectfully Submitted,

IRELL & MANELLA LLP

By:       /s Brian Ledahl
          Brian Ledahl

          Attorneys for Plaintiffs
          UMG RECORDINGS, INC.;
          UNIVERSAL MUSIC CORP.;
          SONGS OF UNIVERSAL, INC.;
          UNIVERSAL-POLYGRAM
          INTERNATIONAL PUBLISHING,
          INC.; RONDOR MUSIC
          INTERNATIONAL, INC.;
          UNIVERSAL MUSIC – MGB NA
          LLC; UNIVERSAL MUSIC – Z
          TUNES LLC; and UNIVERSAL
          MUSIC – MBG MUSIC
          PUBLISHING LTD.