1   Rebecca Lawlor Calkins (SBN: 195593)
    Email: rcalkins@winston.com
2   Erin R. Ranahan (SBN: 235286)
    Email: eranahan@winston.com
3   **WINSTON & STRAWN LLP**
    333 South Grand Avenue, 38th Floor
4   Los Angeles, CA 90071-1543
    Telephone: 213-615-1700
5   Facsimile: 213-615-1750

6   Jennifer A. Golinveaux  (SBN 203056)
    Email: jgolinveaux@winston.com
7   **WINSTON & STRAWN LLP**
    101 California Street
8   San Francisco, CA  94111
    (415) 591-1506 (Telephone)
9   (415) 591-1400 (Facsimile)

10  Michael S. Elkin  (*pro hac vice*)
    Email: melkin@winston.com
11  Thomas P. Lane  (*pro hac vice*)
    Email: tlane@winston.com
12  **WINSTON & STRAWN LLP**
    200 Park Avenue
13  New York, New York  10166
    (212) 294-6700 (Telephone)
14  (212) 294-4700 (Facsimile)

15  Attorneys for Defendant
    VEOH NETWORKS, INC.

16

### UNITED STATES DISTRICT COURT

17

### CENTRAL DISTRICT OF CALIFORNIA

18

### WESTERN DIVISION

19

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | **Case No. CV 07 5744 – AHM (AJWx)** |
| Plaintiffs, | Discovery Matter |
| vs. | **VEOH'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE AND PRODUCE CHAIN OF TITLE/RIGHTS INFORMATION RE SAME; MEMORANDUM OF POINTS AND AUTHORITIES** |
| VEOH NETWORKS, INC. *et al.*, | |
| Defendants. | |
| | *Expedited* Hearing:  11/13/08  10:00 a.m. |
| | Discovery Cut off:  1/12/09 |

20
21
22
23
24
25
26
27
28

---

**VEOH NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE AND
PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S**
**Case No. CV 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the expedited hearing schedule set forth in the Court's October 28, 2008 Order (Docket 193), on November 13, 2008, at 10:00 a.m., or as soon thereafter as this matter can be heard before the Honorable Andrew J. Wistrich of the United States District Court for the Central District of California, at 255 E. Temple Street, Room 690, Los Angeles, California, 90012, Veoh Networks, Inc. ("Veoh") will and hereby does move for an order compelling plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, Universal Music – MBG Music Publishing Ltd. ("Plaintiffs" or "UMG") to identify works at issue in this lawsuit and produce chain of title/rights information about such works.

This Motion is brought on the grounds that more than a year after UMG filed this lawsuit--and just months from the January 12, 2009 discovery cut-off--Plaintiffs have yet to identify the allegedly infringing works upon which this entire lawsuit rests, or produce documents to substantiate their rights to such works. Such information is crucial to allow Veoh to adequately prepare its defense. Without this basic, and crucial, information, Veoh cannot investigate Plaintiffs' alleged claims, evaluate the scope of its potential exposure, or engage in meaningful settlement discussions.

The parties have met and conferred extensively in good faith in an attempt to resolve this dispute as required by Local Rule 37-1. Declaration of Rebecca Lawlor Calkins ¶ 2 ("Calkins Decl."). This Motion is based on this Motion and Notice of Motion, Calkins Decl., the exhibits thereto, Veoh's Summary of Discovery Orders in the *MySpace/Grouper* Actions Relevant to Current Discovery Disputes (Docket 110),

the supporting documents filed concurrently therewith, and upon such oral argument and submissions that may be presented at or before the hearing on this Motion.

Dated: October 29, 2008        **WINSTON & STRAWN LLP**


By     /s/ Erin R. Ranahan
               Michael S. Elkin
               Thomas P. Lane
               Jennifer A. Golinveaux
               Rebecca L. Calkins
               Erin R. Ranahan
               Attorneys for Defendant
               VEOH NETWORKS, INC.

ii

**VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S**
**Case No. CV 07 5744 – AHM (AJWx)**

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.     INTRODUCTION .................................................................................................. 1

II.    PLAINTIFFS MUST IDENTIFY THE ALLEGEDLY INFRINGING
       WORKS UPON WHICH THIS ACTION IS BASED .......................................... 3

       A.     Judge Matz Has Ordered UMG To Promptly Identify Works And
              Related Ownership Evidence In Similar Infringement Lawsuit ............... 4

III.   PLAINTIFFS SHOULD BE ORDERED TO PRODUCE DOCUMENTS
       RELATING TO THEIR RIGHTS IN THE WORKS AT ISSUE ....................... 8

       A.     Judge Matz Also Ordered UMG to Promptly Produce Ownership
              Evidence In Similar Infringement Lawsuit ............................................. 8

       B.     This Court Recognized the Relevance of Ownership Evidence ............... 9

       C.     Evidence Regarding Chain of Title and Rights Information Is
              Critical to Veoh's Defense ..................................................................... 11

              1.     The Presumption Should Not Be Irrebuttable ............................. 11

              2.     The Absence of Burden to UMG; the Compelling Harm to
                     Veoh ............................................................................................ 13

              3.     This Inquiry is Effective and Common ....................................... 15

              4.     The Scope of the Challenge ........................................................ 16

IV.    CONCLUSION ................................................................................................... 19

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cᴀsᴇs

*AMC Film Holdings LLC v. Rosenberg*,
   No. 03 Cv. 3835, 2005 WL 2105792, at *4-5 (E.D.N.Y. Aug. 31, 2005) .........17

*Big East Entm't, Inc. v. Zomba Enter., Inc.*,
   453 F. Supp. 2d 788 (S.D.N.Y. 2006) ................................................................12

*Coles v. Wonder*,
   283 F.3d 798 (6th Cir. 2002) ............................................................................17

*Durham Indus., Inc. v. Tomy Corp.*,
   630 F.2d 905 (2d Cir. 1980) ..............................................................................12

*EZ-TIXZ, Inc. v. HIT-TIX, Inc.*,
   919 F.Supp. 728 (S.D.N.Y. 1996) .....................................................................12

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991).............................................................................................11

*Hamil Am., Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) .................................................................................11

*In re Napster, Inc. Copyright Litig.*,
   191 F.Supp.2d 1087 (N.D. Cal. 2002)..........................................................passim

*Morris v. Bus Concepts, Inc.*,
   259 F.3d 65 (2d Cir. 2001) .................................................................................18

*Motta v. Samuel Weiser, Inc.*,
   768 F.2d 481 (1st Cir. 1985)...............................................................................17

*Silberman v. Innovation Luggage, Inc.*
   01 Civ. 7109 (GEL), 2003 WL 1787123 (S.D.N.Y April 3, 2003) ..................12

*Techniques, Inc., v. Rohn*,
   592 F. Supp. 1195 ...............................................................................................12

*Twin Peaks Prods., Inc. v. Publ'ns. Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) .............................................................................11

ii

VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE
AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S
Case No. CV 07 5744 – AHM (AJWx)

*UMG Recordings, Inc. v. MP3.com, Inc.*
    No. 00 Civ. 472, 2000 U.S. Dist. Lexis 13293, *18 (S.D.N.Y Sept. 6, 2000)...15

*Warran v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ...................................................................12


**STATUTES**

17 U.S.C. §204(a) ...........................................................................................17

17 U.S.C. § 410(c) ..........................................................................................11

17 U.S.C. §501(b) ...........................................................................................17

17 U.S.C. § 504(c)(2) ......................................................................................13


**OTHER AUTHORITIES**

5 *Patry on Copyright* § 17:89 (2008) ....................................................11, 18

6 *Patry on Copyright* § 21:7 ..........................................................................12

Local Rule 37-1 .................................................................................................i

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S**
**Case No. CV 07 5744 – AHM (AJWx)**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Although Plaintiffs filed this copyright infringement action over a year ago, they have refused to define the scope of this action by identifying the allegedly infringing works at issue. Plaintiffs continually refuse to provide this critical information even though Judge Matz recently ordered UMG to promptly produce exactly the same information in a similar action, *UMG Recordings, Inc. et al., v. Divx, Inc., et al.* Specifically, during the initial scheduling conference, Judge Matz ordered UMG to identify all allegedly infringing works it was currently aware of within 28 days, and identify any remaining allegedly infringing works discovered within 119 days. At the same time, Judge Matz ordered UMG to produce corresponding rights information about these same works in accordance with the same schedule.[1] Here, Plaintiffs should be ordered to immediately identify the infringing works upon which they base this lawsuit and promptly produce rights information relating to those works.

Plaintiffs have made excuse after excuse attempting to justify their failure to produce this most basic information.[2] Plaintiffs have always had access to the publicly available video files on Veoh, and should have been able to at least identify, from the outset of the lawsuit, any allegedly infringing works that were publicly accessible. With respect to videos to which Veoh had terminated access ("cancelled") for copyright or other reasons, Veoh provided Plaintiffs access to all of its video files

---

[1] Judge Matz set these deadlines in The *DivX* Action to "avoid avoidable" discovery disputes (like this) and "especially avoid motion practice before the Magistrate Judge" (like Veoh was forced to engage in here). (Calkins Decl. ¶ 3 and Exh. A, p.7:9-14).

[2] During the August 25, 2008 hearing, Plaintiffs' Counsel specifically stated that "to cover the breadth of what's infringing on [Veoh's] site, we need the videos . . . we need to be able to look at them." (Calkins Decl. ¶ 5 and Exh. C.)

**VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S**
**Case No. CV 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

including cancelled videos on September 5, 2008.  Plaintiffs have, however, still failed to identify a single allegedly infringing video.[3]

Plaintiffs' latest apparent excuse for refusing to identify the works at issue is that they lack certain information associated with Audible Magic filtering.  On October 27, 2008,  Plaintiffs filed an *ex parte* application seeking an order requiring Veoh to take the extraordinary step of capturing volumes of data that exists only momentarily in RAM on Veoh's system as Audible Magic's system processes videos, and has no clear relevance to this case.  The additional data Plaintiffs complain about should in no way prevent UMG from identifying its own allegedly infringing content, and can certainly provide no excuse for having failed to identify any infringing works.

Plaintiffs must also be ordered to produce corresponding chain of title and rights information relating to the allegedly infringed works.   As first addressed in Veoh's Summary of Discovery Orders in *MySpace/Grouper* Actions Relevant to Current Discovery Disputes (Docket 110),[4] and again herein, permitting Veoh to

---

[3] The only "identification" of any allegedly infringing works was in Plaintiffs' motion for partial summary judgment filed on September 5, 2008 (the same day Veoh provided access to all available video files) which identified only five works—all five of which were independently cancelled by Veoh in 2007, some for suspected copyright infringements.  (Stacie Simons Decl. filed in support of Veoh's opposition to Plaintiffs' mot. for partial summary judgment (Docket 148) ("Simons Decl."), ¶ 6).

[4] On August 25, 2008, the Court ordered the parties to file briefs within one week setting forth prior discovery rulings within the related cases *UMG Recordings, Inc., et al. v. MySpace, Inc.*, CV 06-07361 and *UMG Recordings, Inc., et al., v. Grouper Networks, Inc., et al.*, CV 06-06561 ("The *MySpace/Grouper* Actions"), and inviting the parties to present "very, very good" reasons for why any order should not continue in effect in this case.  Veoh's Supplemental Brief presented fourteen separate rulings from the *MySpace/Grouper* Actions—ten that related to Defendants' Motion to Compel and six that related to UMG's Motion to Compel (two related to both) (Docket No. 110).  Unlike Veoh, UMG was an actual party to the prior actions, but UMG's Supplemental Brief discussed only six total rulings—all six issues related to UMG's Motion.  (Docket No. 109).  UMG conveniently cherry-picked only those decisions and orders in its favor, failing to acknowledge a single ruling against it.  UMG argued that "most" of Court's orders in the *MySpace/Grouper* Actions "have little application here."  (UMG's Supplemental Brief (Docket 109) p. 6:3-5).

Of the fourteen orders that Veoh identified in its brief from the *MySpace/Grouper* Actions, Veoh only took issue with one such order, and provided "very, very good" reasons why the court should reconsider its rulings.  (Docket 110).  Veoh's chief issue

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

meaningfully investigate Plaintiffs' purported rights in the allegedly infringing works is essential to preparing Veoh's defense. The presumption of copyright ownership is not irrebuttable and any alleged burden upon Plaintiffs would be minor and outweighed by the compelling harm to Veoh if it is not allowed to investigate Plaintiffs' purported ownership. Such inquiries into copyright ownership are standard and commonplace in infringement actions.

For all of these reasons, the Court should order Plaintiffs to finally identify the works at issue in this case and to produce related chain of title and rights information relating to the same.

## II.   PLAINTIFFS MUST IDENTIFY THE ALLEGEDLY INFRINGING WORKS UPON WHICH THIS ACTION IS BASED

Plaintiffs have an affirmative obligation to both identify the works allegedly infringed in this lawsuit and produce the documents that purport to substantiate their rights in such works. Such information is also called for in Veoh's Interrogatory Nos. 1, 2, & 3 and Veoh's Request For Production Nos. 1-6, 26, 43-44, 47-51, 64-66, 67, 69, 179-180, & 234 (*See,* Joint Stip. in Support of Veoh's Motion to Compel, pp. 85-110 (Docket 81)).[5] Plaintiffs cannot reasonably dispute that they have an obligation to

---

with the Court's earlier rulings in the *MySpace/Grouper* Actions concerns limitations placed on discovery related to Plaintiffs' ownership of the copyrights in question. *Id.*

Plaintiffs purported to "object" to Veoh's discussion of this issue in this Summary of Discovery Orders in *MySpace/Grouper* Actions on procedural grounds, insisting that "the appropriate place to address such matters is in connection with a properly submitted motion, not in an after-the-fact 'supplemental' brief." (UMG's Objections (Docket 121), p. 2:25-26). Plaintiffs also stated that "should Veoh wish to brief the issues raised, it should do so through a properly noticed motion." (*Id.* at pp. 1:28-2:1). Veoh thus presents these arguments in this motion.

[5] On Oct. 24, 2008, Veoh requested through an interrogatory additional specific identifying information about the allegedly infringing works. UMG should not use this as an excuse to avoid producing the most specific identifying information now, however, including the name or other unique identifier of the allegedly infringed work and Veoh Video ID number. Indeed, it is clear from Judge Matz' comments at the 8/25 hearing that such information is expected as part of the identification of works in any event.

produce the information sought by this Motion.[6]  Plaintiffs cannot continue to hide behind excuses and procedural complaints in refusing to define the scope of their lawsuit.

## A. Judge Matz Has Ordered UMG To Promptly Identify Works And Related Ownership Evidence In Similar Infringement Lawsuit

In a similar lawsuit, *UMG Recordings, Inc. et al., v. Divx, Inc., et al.,* (Case No. CV07-6385-AHM (AJWx) ("The *Divx* Action"), Judge Matz recently ordered UMG to promptly identify allegedly infringing files with corresponding URL information to prevent unnecessary discovery disputes.  During the August 25, 2008 initial scheduling conference in The *Divx* Action*,* Judge Matz specifically described the significance of early production of the identity of the works in an infringement action like this one (calling it an "important" and "threshold" issue).  (Calkins Decl. ¶ 3 and Exh. A, p. 6:14-16).  Judge Matz recognized that the same information sought by this Motion would "set the contours for what the dispute is about" and well as define the "outside limit on potential issues of liability and corresponding damages." (*Id.* at p. 7:17-25).  Judge Matz also set forth concerns if such information was not promptly produced (including "sideshows" and unnecessary discovery disputes):

**Judge Matz**:          . . . let's address this threshold issue or at least this important issue of specification of infringed works.  I construe that in 30 days of today, you're prepared to identify the works that you claim to own the copyright in which you know have been infringed, right?

---

[6] Veoh filed a regularly noticed motion regarding this issue in accordance with the procedures of Local Rule 37, but this motion also covered Plaintiffs' numerous additional discovery deficiencies.  Due to the extensive discovery failures raised by Veoh within one motion, the Court denied Veoh's prior motion to compel without prejudice, inviting Veoh to renew its motion in a more discreet format.  Given the critical nature of the information sought by this motion, Veoh requested, and the Court granted, an expedited briefing schedule.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE
AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S
Case No. CV 07 5744 – AHM (AJWx)

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    **UMG's Counsel**:        Correct.

2

3    **Judge Matz:**        We'll make it 28 days from today . . . So I'm ordering

4    that as to the works that, regardless of whatever the discovery from DivX

5    may show, UMG currently or by 28 days from now knows or knows part

6    of the array of allegedly identified works, that those be identified and

7    fully identified.

8    . . .

9    Now, in other cases. . . there has been varying lengths of time before

10   which I've imposed a deadline for the specification of the infringed

11   works.  And the deadline specification contemplates that that will be the

12   outside limit on potential issues of liability and corresponding damages.

13   It . . . sets the contours for what the dispute is all about.

14   . . .

15   Because I definitely will impose that obligation on UMG.  I'm not going

16   to permit amendments.  I'm not going to permit specifications right up to

17   the date of trial.

18   . . .

19   it will be 17 weeks  --that's 119 days-- that UMG has to identify the

20   works that it alleges were infringed by the defendant and provide

21   available correspondence of proof of ownership as to those works. . .

22   (Calkins Decl. ¶ 3 and Exh. A, pp. 6:14-12:18).

23

24   The Court also made clear that UMG's identification should include URL

25   information:

26

27

28

5

**Defendants' Counsel:** . . . it's important from our perspective to know what it is on [the defendant's] service that the plaintiffs contend was infringing, the U-R-L or URL at which a supposedly infringing clip was located is important because if they just say, well, it's this work, we have no idea within the universe of hundreds of thousands or millions of clips on the service where it is they contend it appeared or why they contend it's infringing. So in the YouTube/Viacom case, what the plaintiffs have been doing—have been ordered to do is to identify the copyrighted work and then the URL at which the alleged infringement exists so that it's easy for us to compare and say, oh, yes, I see that you contend it's this song, and this song appears to show up in the video.

**Judge Matz:** I understand what you're saying, and I am sure [Plaintiffs' counsel] understand it as well. They're going to be giving you this information based upon what they have independent of what you've produced. It's undoubtedly going to be consistent with that ability and that requirement that they specify the URL because that's how they got it. Am I not right?

**UMG's Counsel:** That would be a fair assumption going forward. In terms of exactly –whether we have it all in that form today for those we're are aware of today, that, I can't represent one way or the other, but I understand what –

**Judge Matz:** Eventually, you're going to have to.

**UMG's Counsel:** . . . Yes, I understand.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**Judge Matz:** You're going to have to do that. And, in fact,

that would be an obligation in order to—I think. I'm not making a

definitive ruling on this—in order to carry out your DMCA obligations

anyway. So I think that's something that plaintiffs and entities in your

client's position are expecting to have to do no matter what, so. . . URL

identification will be in both sides' interests. Okay? You have a problem

with the material you get on this rolling basis, then pick up the phone . . .

I don't want this to disintegrate into the sideshow I've seen in too many of

these infringement case[s]. And I know that Judge Wistrich, who is the

Magistrate Judge who will have to resolve it at the first blush in

discovery disputes, is very busy, very hardworking. Some, I'm going to

take away from him.

(*Id.* at pp. 14:7-16:7).

Thus, not only did Judge Matz order UMG to identify all currently known

alleged infringements within 28 days of the initial scheduling conference in The *Divx*

Action, Judge Matz ordered UMG to identify the remaining discovered alleged

infringements within 119 days. Plaintiffs filed this action over a year ago and have

yet to identify any of the allegedly infringing works at issue with the exception of the

five purportedly representative works identified for the first time in Plaintiffs' pending

motion for partial summary judgment. [7] Plaintiffs have always had access to publicly

available videos on Veoh and have had access to all videos, including cancelled

videos, for nearly two months. Plaintiffs have no reasonable basis to further delay

---

[7] Notably, despite having received no notice from Plaintiffs, Veoh had independently
disabled access to all five examples cited in Plaintiffs' motion back in 2007. Simons
Decl.¶ 6 (Docket 148). Two of the videos were terminated in response to DMCA
notices Veoh received from a trade organization called the Recording Industry
Association of America. *Id.* The other three videos were also independently
terminated by Veoh. *Id.*

7

**VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE
AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S**
Case No. CV 07 5744 – AHM (AJWx)

identification of alleged infringements and no basis to condition identification on information associated with Audible Magic processing. Plaintiffs are engaging in nothing more than delay tactics and seek to have this "disintegrate" into precisely the type of "sideshow," Judge Matz specifically ordered UMG to avoid in The *DivX* Action.

Plaintiffs should be ordered to immediately identify all allegedly infringing works known from their own investigation(s) or discovered from access to Veoh's video files. So that Veoh can locate such works, such identification should include specifically: (i) the name or other unique identifier and Copyright Registration No. of the allegedly infringed work; and (ii) the Veoh Video and Permalink (analogous to the URL Judge Matz required in The *DivX* Action) for each video that allegedly infringes that work for which Plaintiffs claim Veoh bears liability.

## III. PLAINTIFFS SHOULD BE ORDERED TO PRODUCE DOCUMENTS RELATING TO THEIR RIGHTS IN THE WORKS AT ISSUE

### A. <u>Judge Matz Also Ordered UMG to Promptly Produce Ownership Evidence In Similar Infringement Lawsuit</u>

Also during the August 25, 2008 scheduling conference in The *DivX* Action, Judge Matz ordered UMG to produce all available documents relating to ownership rights of the allegedly infringing works, within the same timeframe as identifying such works. Judge Matz acknowledged that copyright registrations alone would be insufficient to establish ownership:

**Judge Matz:**     And since there's going to be clear and maybe understandable efforts on the part of DivX to challenge the legitimacy of ownership claims, attach not only the specification of the works but the ownership evidence as well.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Now, registration is presumptive.  Evidence of ownership, if you have
anything readily available that goes beyond that, to avoid avoidable
sideshows and disputes and especially to avoid motion practice before the
magistrate judge. . , include it in the 28 days from now.

(Calkins Decl. ¶ 3 and Exh. A, p. 7:5-14).

Judge Matz has recognized that a defendant in an action like this would have an
"understandable" right to discovery of UMG's alleged copyright ownership "beyond"
mere registrations,[8] and ordered production of such documents in an attempt to avoid
needless discovery disputes.  Despite this clear directive, UMG has forced the precise
discovery dispute in this action that Judge Matz sought to avoid in The *DivX* Action.

## B.    This Court Recognized the Relevance of Ownership Evidence

In The *MySpace/Grouper* Actions,[9] this Court recognized the importance of
these ownership documents from the very beginning, although it subsequently
narrowed the documents required for production.  During an October 29, 2007
hearing, the Court  noted its "surprise" that UMG had refused to identify copyrights at
issue, and recognized how "absolutely basic" UMG's obligations were to produce
"chain of title and ownership information:"

Another thing that I'm going to pick on UMG a little bit here because it's
. . . foremost on my mind.   But I was very surprised to see the Plaintiff in

---

[8] Plaintiffs' Counsel first sought to limit discovery relating to chain of title and
ownership information during the March 17, 2008 initial scheduling conference.  In
response, Judge Matz expressly refused to place any such limit on discovery. (Calkins
Decl. ¶ 4 and Exh. B).

[9] "The *MySpace/Groper* Actions" refer to *UMG Recordings, Inc., et al. v. MySpace,
Inc.*, CV 06-07361 and *UMG Recordings, Inc., et al., v. Grouper Networks, Inc., et
al.*, CV 06-06561.

---

**VEOH'S NOTICE OF MOT. AND MOT. TO COMPEL PLAINTIFFS TO IDENTIFY WORKS AT ISSUE
AND PRODUCE CHAIN OF TITLE/RIGHTS INFO RE SAME; MEMO OF P'S & A'S
Case No. CV 07 5744 – AHM (AJWx)**

this case balking at identifying the copyrights at issue, and balking at revealing all the information about chain of title and ownership, and right to sue them. . . . To me, that's absolutely basic . . . in an intellectual property infringement case. We have to know what we're talking about.

(Declaration of Erin R. Ranahan filed in support of Veoh's Summary of Discovery Orders in *MySpace/Grouper* Actions Relevant to Current Discovery Disputes (Docket 112)("Ranahan Decl."), ¶ 2 and Exh. A at p. 5: 13-22; (10/29/07 Transcript).

The Court, however, deferred issuing an order. On November 5, 2007, UMG represented to the Court that it had already produced "chain of title" documents with respect to the 25 works identified as infringing in its complaint, but not with respect to thousands of others identified by UMG as infringing. (Ranahan Decl. ¶ 3 and Exh. B at p. 107:18-108:7 (11/5/07 Transcript).)[10] On March 27, 2008, the Court ordered UMG in The *MySpace/Grouper* Actions to produce documents and interrogatory responses pertaining to chain of title in all the works for which they seek relief, but limited the production to "any disagreements or disputes regarding UMG's ownership of [the sound recordings at issue] which rose to a sufficiently serious level that inside or outside counsel became involved . . . " Such an order improperly limits a copyright defendant's standing to challenge copyright ownership to those registrations that have previously been litigated. That limitation finds no support in the case law, and is directly contrary to congressional intent and the interests of justice. Veoh respectfully requests that the Court reconsider the limitations it imposed upon the right to conduct discovery relating to UMG's purported ownership of the works at issue.

---

[10] Plaintiffs have not identified any works in its complaint in this action, let alone the 25 that UMG identified in its complaint in The *MySpace/Grouper* Actions or the thousands of others subsequently identified therein.

Here, Veoh seeks targeted, discrete discovery into the ownership of the copyrights at issue---an inquiry that will not be burdensome in time or expense, particularly as compared to the massive amount in damages that UMG is seeking from Veoh. The inquiry into copyright ownership is one that is necessary, productive, and commonplace. The discovery of copyright ownership documents should not be curtailed in any respect, and will readily demonstrate that many of UMG's copyrights are defective (whether as a rebuttable "work for hire" or otherwise as discussed below), and that those defective copyrights will materially impact the scope of the case and any alleged recovery.

### 1. The Presumption Should Not Be Irrebuttable

To establish copyright infringement, UMG must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent original elements of the work. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); see also *Twin Peaks Prods., Inc. v. Publ'ns. Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993) ("To make out a prima facie case of copyright liability, the copyright holder must prove ownership of a valid copyright, and ... copying of constituent elements of the work that are original.") (citations and quotations omitted). Issuance of a certificate of registration before or within five years of a work's initial publication creates a rebuttable presumption that the recipient is owner of a valid copyright. 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (presumption of ownership created by registration may be rebutted). The presumption is modest: "The prima facie status accorded by section 410(c) is slight, since the Copyright Office is merely an office of record. Of necessity, the Office's examination is limited." 5 Patry on Copyright § 17:109. "A certificate of registration creates no

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

irrebuttable presumption of copyright validity." *Durham Indus., Inc. v. Tomy Corp*., 630 F.2d 905, 908 (2d Cir. 1980).

There are three ways to become a copyright owner: (1) by being the author; (2) by obtaining a valid transfer of an exclusive right from the author; and (3) by operation of law, e.g. via bankruptcy, marital distribution, or corporate merger. Those claiming ownership by transfer bear the burden of proving a clear chain of title. If none of these methods of obtaining ownership apply, the plaintiff lacks standing. *Warran v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1142-43, 1145 (9th Cir. 2003). It should also be noted that the ownership must be in the copyright itself, and not in an entity that owns the copyright. 6 *Patry on Copyright* § 21:7.

Courts regularly dismiss claims of infringement where plaintiffs fail to sufficiently establish copyright ownership. See e.g., *Big East Entm't, Inc. v. Zomba Enter., Inc.,* 453 F. Supp. 2d 788, 800 (S.D.N.Y. 2006) (dismissing claim of copyright infringement where the plaintiff "failed to show undisputed evidence of its copyright ownership"); *Silberman v. Innovation Luggage, Inc.,* 01 Civ. 7109 (GEL), 2003 WL 1787123 (S.D.N.Y April 3, 2003) (dismissing claim for statutory damages where the plaintiff's copyright was registered after the infringing activity); *EZ-TIXZ, Inc. v. HIT-TIX, Inc.*, 919 F.Supp. 728 (S.D.N.Y. 1996) (same); *Techniques, Inc., v. Rohn,* 592 F. Supp. 1195, 1198 (dismissing claim for copyright infringement where the plaintiffs failed to show that they owned the copyright in question).

In earlier argument to this Court, and in their opposition to Veoh's motion to compel, UMG essentially argued that since a copyright registration establishes a presumption of ownership, and since UMG is allegedly going to produce all relevant copyright registrations, UMG need not provide any further documentation to demonstrate ownership, such as chain of title documents or recording agreements. For UMG, the presumption is apparently an irrebuttable assumption. This is preposterous, and contrary to common practice and to the law. Indeed, in the *Napster*

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

case, cited by UMG, Judge Patel, in allowing discovery of copyright ownership to proceed, stated that: "refusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrebuttable one." *In re Napster, Inc. Copyright Litig.*, 191 F.Supp.2d 1087, 1100 (N.D. Cal. 2002). In case after case, copyright ownership documents are regularly requested and produced. As the accompanying declaration of Thomas P. Lane sets forth, the production of these documents is not controversial, unexpected, or burdensome. Record companies, such as UMG, demand such documents when they are defendants and are required to produce them when they are plaintiffs. (Lane Decl. ¶¶ 2-4). To order otherwise is to turn a rebuttable presumption into one impossible to rebut.

### 2.     The Absence of Burden to UMG; the Compelling Harm to Veoh

In its opposition to Veoh's motion to compel the chain of title/ownership documents, UMG claims that the burden of production will outweigh its benefit. To support this conclusion, UMG offers the declaration of Michael Ostroff, who contends that since UMG owns over 100,000 copyrights in sound recordings and musical compositions, identifying related chain of title/ownership documents will somehow cost millions of dollars. This is baseless, particularly when, at the same time, Mr. Ostroff admits that: (1) UMG has only "specifically identified 32 copyrighted sound recordings and 29 copyrighted musical compositions in its Complaint against Veoh"; and (2) the total infringements may only be in the "hundreds," (although Mr. Ostroff unilaterally concludes it could "likely" be in the thousands). Whether the total infringements are the 61 UMG has identified, or hundreds, or thousands, the simple fact is that the alleged "burden" of production of a recording agreement, or of an assignment, or of chain of title documents does not outweigh the massive harm to Veoh by not allowing the production of these few documents.

Copyright infringement carries statutory penalties of up to $150,000 per work. 17 U.S.C. § 504(c)(2). Where plaintiffs, as here, allege the infringement of thousands

13

or even tens of thousands of works, and seek maximum recovery, the exposure for a defendant can quickly reach billions of dollars. See Joint Stip at 119. Given this enormous potential liability, courts regularly (and rightfully) hold copyright plaintiffs to their obligation to provide defendants with relevant discovery to rebut the thin presumption of validity that a copyright registration carries. See, e.g., *Napster,* 191 F.Supp.2d at 1100 (ordering plaintiffs, including UMG, "to produce all documentation relevant to their ownership of the works listed as 'works for hire'").

In *Arista Records et al v. Launch Media, Inc.,* 01 Civ. 4450 (S.D.N.Y.) ("*Launch*"), the defendant discovered that approximately 33% of the claimed copyrights were defective. (Lane Decl. ¶¶ 8-10). For example, 79 of the copyright registrations at issue (1) lacked a corresponding artist contract that contained terms necessary to convey rights to plaintiffs, namely a signed agreement containing terms necessary to convey rights to plaintiffs or (2) were supported only by contracts that were not signed by the artist. Included in those copyright registrations were artist contracts that had no language indicating a "work for hire" or otherwise transferring ownership at all. These 79 copyright registrations constituted nearly 10% of the 835 copyrights claimed by plaintiffs in that litigation and represented almost $12 million dollars of potential exposure. For 113 (13.5%) of plaintiffs' claimed copyrights, the works were registered after any possible infringement could have occurred; 13 (1.6%) of plaintiffs' claimed copyrights lacked supporting documentation transferring ownership to plaintiffs; for 30 (3.6%) of plaintiffs' claimed copyrights, all registered as works-for hire, the works were created prior to the date of the corresponding agreements; and for certain other of plaintiffs' claimed copyrights, the underlying agreements expressly reserved digital distribution rights to the artist.

Given that UMG has stated its intention to seek statutory damages for potentially thousands of copyrights, the potential reduction of exposure for Veoh here

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

would be even greater.  Veoh is doubtlessly entitled to discovery that could reduce its potential liability by tens of millions of dollars.

Although seeking what will amount to massive damages, UMG essentially asks Veoh--and this Court--to simply take UMG at its word that it owns the copyrights at issue, notwithstanding the fact that many of UMG's copyright registrations – including nearly half of the first four thousands documents in the production – do not list a Plaintiff in this action as either an author or a claimant.  (See Lane Decl. ¶ 11 and Exh. 3).  With $150,000 at stake per registration, Veoh has a right to rebut UMG's "word" and obtain the few pages of documentation per copyright that would do so.

### 3.    This Inquiry is Effective and Common

In past litigations, similar challenges have revealed deficiencies in ownership claims to thousands of copyrights.  UMG's protest that it "is simply not reasonable to suggest that UMG actually does not own these rights on some massive scale" (See Joint Stip re UMG's MTC at 120 (Docket 81)) is wholly disingenuous.  Past challenges have proven UMG's copyright ownership claims to be massively defective. (Lane Decl.  ¶¶ 5-7).

In *UMG Recordings, Inc. v. MP3.com, Inc.,* the defendant apparently successfully challenged 2,564 copyrights, more than half (55%) of the 4,700 copyrights claimed by UMG, thereby reducing liability by $65,000,000.  *Compare,* No. 00 Civ. 472, 2000 U.S. Dist. Lexis 13293, *18 (S.D.N.Y Sept. 6, 2000) (noting at least 4,700 copyrights claimed and setting statutory damages at $25,000 per work), *and*, 2000 U.S. Dist. Lexis 17907, *1 (S.D.N.Y. Nov. 14, 2000) (awarding damages for only 2,136 works).  *Id.*  (Lane Decl. ¶¶ 6-7 and Exhs. 1-2.)  Similar challenges in a recent litigation brought by another major record label, Sony/BMG, revealed deficiencies in 33% of its claimed copyrights.  (*Arista Records et al v. Launch Media*, *Inc.*, 01 Civ. 4450 (S.D.N.Y.); see Lane Decl., ¶¶ 8-9).

15

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Simply stated, the fact that a corporation, such as UMG, is "in the business of obtaining rights to copyrighted sound recordings and musical compositions" (See Joint Stip. re UMG's MTC at 120 (Docket 81)) does not mean that it always properly secures those rights. Nor does it relieve UMG of its evidentiary burdens. The enormous potential liability facing Defendant, and the proven capacity of past challenges to decrease such exposure by millions or even tens of millions of dollars, more than justifies any supposed burden on UMG in fulfilling its obligation to prove the most fundamental elements of its case.

### 4. The Scope of the Challenge

Although UMG repeatedly argues burden in having to produce documents, Veoh is not seeking a warehouse of documents, by any measure. Since UMG is not an artist and presumably did not create the works that are at issue in this case, its ownership is based either upon the "work for hire" doctrine or by way of assignment and purchase. To demonstrate proper chain of title/ownership, UMG need merely produce recording agreements in some cases (which UMG admits are vital to its ownership claims)[11] or acquisition or assignment agreements in others. In all, ownership documents usually cover multiple copyrights at a time, further reducing burden.

There are a variety of challenges to UMG's ownership that can be made, including copyrights for which the registration denotes a Plaintiff as the author but for which there is no signed document transferring ownership – either as a "work for hire" or via assignment – from the artist to the named author or claimant; or, copyrights for which the registration does not denote a Plaintiff as the author and for which there is no signed document transferring ownership from the author or claimant to a Plaintiff.

---

[11] Calkins Decl. ¶ 6 and Exh. D. (11/7 Hearing in *MySpace/Groper* Actions at p. 108: 18-20---UMG's Counsel, Mr. Marenberg acknowledged that "**the most important document in the chain of title is the recording agreement, which gives us rights to the copyright**.")

16

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Where, as here, the copyright claimants are record companies – and not the artists themselves - the Copyright Act requires a writing demonstrating that the claimant is in fact the owner of the work.  The Copyright Act specifies with regard to transfers of ownership:  "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. §204(a).

Further, under the Copyright Act, the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. §501(b). "The existence of a copyright certificate with someone else's name on it does not vest anyone other than the author with rights to the work.  In order to show ownership, plaintiffs need to produce chain of title from the listed author to themselves." *Napster,* 191 F.Supp.2d at 1101 (ordering plaintiffs, including UMG, to produce "chain of title to demonstrate ownership"); see also *Motta v. Samuel Weiser, Inc.,* 768 F.2d 481, 484 (1st Cir. 1985) ("If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright.").  "Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act." *Id.*  If a plaintiff claims ownership of a copyright through a transfer or series of transfers, the transfers are "not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a); see also *AMC Film Holdings LLC v. Rosenberg*, No. 03 Cv. 3835, 2005 WL 2105792, at *4-5 (E.D.N.Y. Aug. 31, 2005).

Documents relating to the registrations may also reveal a variety of defects. See e.g., *Coles v. Wonder*, 283 F.3d 798, 802 (6th Cir. 2002) (holding copyright registration invalid where the plaintiff did not submit the required "copy" but only

"reconstruction" of work); *Morris v. Bus Concepts, Inc.,* 259 F.3d 65, 72 (2d Cir.

2001) (holding exclusive licensee's copyright registrations invalid where registrations

failed to contain all requisite information); 5 *Patry on Copyright* § 17:89 (2008)

("[W]here the original work is unregistered and the derivative work is owned by a

different party, section 411(a) has not been satisfied since there is no full public record

on ownership.")

　　　For example, in the *Launch* litigation, the defendant discovered 13 copyright

registrations for which plaintiffs could not establish ownership through an unbroken

chain of title from the original author or artist. In some instances, the *Launch*

plaintiffs submitted registrations that did not designate plaintiffs as the author or

claimant (like UMG's very first copyright produced in this case, as well as their first

hundred overall produced copyrights (See Lane Decl. ¶ 11 and Exh. 3) and failed to

include all related transfer agreements evidencing a transfer of ownership from the

claimant to, ultimately, one of the plaintiffs. In other instances, the *Launch* plaintiffs

produced an agreement purporting to transfer ownership, but the agreement was not

signed by the purported transferee. These 13 copyrights represented almost $2 million

dollars of exposure for defendant. Again, because UMG is potentially claiming more

copyrights here, the number of potential defects is greater. This is especially true

given that of the first four thousand of copyright registrations produced in this action,

nearly half do not even list a plaintiff in this action as the author or claimant. (Lane

Decl. ¶ 11). This discovery is therefore worth at least several million dollars to Veoh;

this potential reduction in exposure alone outweighs any possible burden to UMG.

　　　In most circumstances, the only party with the pressing and immediate

incentive to challenge a copyright claimant's ownership stake will be the copyright

defendant facing millions or even billions of dollars of potential exposure. The case

law holds that copyright defendants must have standing to challenge every claim of

ownership – not just those that have previously been disputed or litigated. See

*Napster,* 192 F.Supp.2d at 1099, 1100 (expressly acknowledging defendants' standing to challenge all copyrights where the registration lists a plaintiff as the author and granting defendants' challenge to all copyrights where the registration lists a third party as the author).  Narrowing a copyright defendant's standing to challenge ownership claims to just those previously challenged by others frustrates Congress's intent that the presumption of ownership be rebuttable.  Lest that intent not be eviscerated, UMG should be ordered to produce documents sufficient to demonstrate ownership and chain of title information of all of the copyrights for which it seeks relief, and indicate to which allegedly infringed work such documents relate.

## IV.    CONCLUSION

Veoh respectfully requests that the Court order Plaintiffs to immediately identify the allegedly infringing works upon which this lawsuit is based, and produce corresponding chain of title/rights information regarding the same.


Dated:  October 29, 2008            **WINSTON & STRAWN LLP**


By     /s/ Erin R. Ranahan
       Michael S. Elkin
       Thomas P. Lane
       Jennifer A. Golinveaux
       Rebecca L. Calkins
       Erin R. Ranahan
       Attorneys for Defendant
       VEOH NETWORKS, INC.

19