1    Rebecca Lawlor Calkins (SBN: 195593)
     Email: rcalkins@winston.com
2    Erin R. Ranahan (SBN: 235286)
     Email: eranahan@winston.com
3    **WINSTON & STRAWN LLP**
     333 South Grand Avenue, 38th Floor
4    Los Angeles, CA 90071-1543
     Telephone: 213-615-1700
5    Facsimile: 213-615-1750

6    Jennifer A. Golinveaux (SBN 203056)
     Email: jgolinveaux@winston.com
7    **WINSTON & STRAWN LLP**
     101 California Street
8    San Francisco, CA 94111
     (415) 591-1506 (Telephone)
9    (415) 591-1400 (Facsimile)

10   Michael S. Elkin (*pro hac vice*)
     Email: melkin@winston.com
11   Thomas P. Lane (*pro hac vice*)
     Email: tlane@winston.com
12   **WINSTON & STRAWN LLP**
     200 Park Avenue
13   New York, New York 10166
     (212) 294-6700 (Telephone)
14   (212) 294-4700 (Facsimile)

15   Attorneys for Defendant
     VEOH NETWORKS, INC.
16

17                    **UNITED STATES DISTRICT COURT**

18                    **CENTRAL DISTRICT OF CALIFORNIA**

19                         **WESTERN DIVISION**

20
     UMG RECORDINGS, INC., *et al.*,        )    **Case No. CV 07 5744 – AHM (AJWx)**
21                                           )
                  Plaintiffs,                )    Discovery Matter
22                                           )
           vs.                               )    **DECLARATION OF REBECCA**
23                                           )    **LAWLOR CALKINS IN SUPPORT**
                                             )    **OF VEOH NETWORK INC.'S**
     VEOH NETWORKS, INC., *et al.*           )    **MOTION TO COMPEL**
24                                           )    **PLAINTIFFS TO IDENTIFY**
                  Defendants.                )    **WORKS AT ISSUE AND PRODUCE**
25                                           )    **CHAIN OF TITLE/RIGHTS**
                                             )    **INFORMATION RE SAME**
26                                           )

27   _____        *Expedited* Hearing: 11/13/08 10:00 a.m.
                                              Discovery Cut off: 1/12/09
28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

---

**DECLARATION OF REBECCA LAWLOR CALKINS IN SUPPORT OF VEOH'S MOT. TO COMPEL**
**Case No. CV 07 5744 – AHM (AJWx)**

## DECLARATION OF REBECCA LAWLOR CALKINS

I, Rebecca Lawlor Calkins, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am an attorney at the law firm of Winston & Strawn LLP, attorneys for Defendant Veoh Networks, Inc. ("Veoh") in this matter.  I am licensed to practice before the Courts of the State of California and this United States District Court.  I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify thereto.

2.      I have engaged in extensive meet and confer discussions with Plaintiffs' counsel in an effort to resolve the matters addressed in this Motion informally, to no avail.  On April 25 and 28, I had discussions with Plaintiffs' Counsel Brian Ledahl, who claimed that Plaintiffs could not identify allegedly infringing works because Veoh had not produced video files.  We also discussed Plaintiffs' refusal to produce chain of title/ownership documents, which Plaintiffs insisted was too burdensome and unnecessary.

3.      Attached hereto as Exhibit A is a true and correct copy of the transcript from an August 25, 2008 scheduling conference in *UMG Recordings, Inc. et al., v. Divx, Inc., et al.,* (Case No. CV07-6385-AHM (AJWx).

4.      Plaintiffs' Counsel originally sought to limit discovery to copyright registrations during the March 17, 2008 discovery conference in this action.  Judge Matz refused to limit discovery in such a manner.  Attached hereto as Exhibit B is a true and correct copy of the relevant portions of this transcript.

5.      During the August 25, 2008 hearing on the parties respective motions to compel, Plaintiffs' Counsel specifically stated that  "to cover the breadth of what's infringing on [Veoh's] site, we need the videos . . . we need to be able to look at them."  Attached hereto as Exhibit C are the relevant portions of the transcript from this hearing.

6.      During the November 5, 2008 hearing in *MySpace/Grouper* Actions (at p. 108: 18-20) UMG's Counsel, Mr. Marenberg, acknowledged that "**the most**

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**important document in the chain of title is the recording agreement, which gives us rights to the copyright**." A true and correct copy of the relevant portions of this transcript is attached hereto as Exhibit D.

I declare under penalty of perjury under the laws of the United States of America, the foregoing is true and correct. Executed on October 29, 2008, in Los Angeles, California.

/s/ Rebecca Lawlor Calkins
Rebecca Lawlor Calkins

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

EXHIBIT A

EXHIBIT __A__ PAGE __3__

1            UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                 - - -

5

# COPY

6

7                     )

    UMG RECORDING, INC. ET AL,    )

8                     )

              PLAINTIFFS,  )

9                     )

          vs.           ) No. CV07-6835-AHM(AJWx)

10                   )

    DIVX, INC., ET AL.,         )

11                   )

             DEFENDANTS.  )

12 _____)

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          LOS ANGELES, CALIFORNIA

17         MONDAY, AUGUST 25, 2008

18            1:38 P.M.

19

20

21

22    _____

23       CINDY L. NIRENBERG, CSR 5059
        U.S. Official Court Reporter

24      312 North Spring Street, #438
      Los Angeles, California 90012

25       www.cindynirenberg.com

EXHIBIT ___A___ PAGE ___4___

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFFS:
                          ARNOLD AND PORTER
 4                        BY: RONALD L. JOHNSTON, ATTORNEY AT LAW
                              MURAD HUSSAIN, ATTORNEY AT LAW
 5                        777 SOUTH FIGUEROA STREET
                          44TH FLOOR
 6                        LOS ANGELES, CA 90017
                          213-243-4000
 7

 8

 9   FOR THE DEFENDANTS:
                          WILSON SONSINI GOODRICH & ROSATI
10                        BY: DAVID H. KRAMER, ATTORNEY AT LAW
                          650 PAGE MILL ROAD
11                        PALO ALTO, CA 94304-1050
                          650-493-9300
12

13                        DIVX IN-HOUSE COUNSEL
                          BY: LEE C. MILSTEIN, ATTORNEY AT LAW
14                        4780 EASTGATE MALL
                          SAN DIEGO, CA 92121
15                        858-882-0681

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT ___A___ PAGE ___5___

1          LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 25, 2008

2                          1:38 P.M.

3                        - - - - -

4          THE CLERK:  Calling Item Number 2, CV07-6835, UMG

5   Recording, Inc., et al. versus DivX, Inc., et al.

6          Counsel, state your appearances, please.

7          MR. JOHNSTON:  Ronald Johnston and Murad Hussain for

8   plaintiff UMG.

9          THE COURT:  What's your name?

10         MR. HUSSAIN:  Murad Hussain.

11         THE COURT:  Okay.  H-U-S-A-N?

12         MR. HUSSAIN:  H-U-S-S-A-I-N.

13         THE COURT:  Okay.

14         MR. KRAMER:  I'm Dave Kramer from Wilson Sonsini for

15  DivX, Inc.  With me is Lee Milstein who is in-house counsel at

16  DivX.

17         THE COURT:  All right.  We're here for the scheduling

18  conference, as you know.

19         The first issue I want to raise is whether you've

20  received and read the order that I issued on Friday granting

21  the motion to dismiss the counterclaims.

22         MR. JOHNSTON:  Yes.

23         MR. KRAMER:  Yes, Your Honor.

24         THE COURT:  I don't think I need any further argument

25  on that, so that's going to stand as is.

EXHIBIT __A__ PAGE __6__

1    MR. KRAMER:  Okay.

2        THE COURT:  Unless there is something that you think
3    is factually erroneous in the analysis.

4        MR. KRAMER:  I think, Your Honor, I'd like to speak
5    to one point in particular.

6        THE COURT:  Go ahead.

7        MR. KRAMER:  The Court's order assumes that the
8    declaratory relief counterclaims were addressed to the concern
9    that UMG would dismiss the entire action.  That is not what the
10   counterclaims were directed to.

11       They were directed instead to a practice that we have
12   seen in other cases brought by content providers against online
13   service providers where the process by which alleged
14   infringements are added on an ad hoc basis and then dropped
15   from the case when the defendants demonstrate the particular
16   claims of infringement, specific works and specific
17   infringements are meritless.

18       So we prove, for example, that UMG doesn't own the
19   copyrights to a particular work that they've put at issue in
20   this case or we prove that they've uploaded a particular work
21   to the Stage 6 site and, therefore, can't complain that that's
22   unauthorized.

23       And what the plaintiffs in these cases tend to do is
24   to say, well, never mind, that one's not part of this case.

25       And so our concern is to insure that those specific

EXHIBIT  A   PAGE  7

1  claims of infringement are resolved on the merits. So that
2  there is a judgment in DivX's favor, we need the declaratory
3  relief counterclaims.

4       It's not directed to the entirety of the action, but
5  rather this ad hoc addition and removal of claims.

6       THE COURT: Well, at the end of this process -- and
7  it won't go on that long, as you'll hear -- of selective
8  pruning of the claims or the identified works that supposedly
9  were infringed, you could independently turn around and bring a
10 declaratory action.

11      Alternatively or in addition, at the end of the fray
12 when it comes time to determine prevailing parties and award
13 attorneys' fees, I would give you leave to include whatever it
14 took to demonstrate the invalidity or the absence of merit to
15 the claims on those specified works of art as part of your
16 array that would go into an award of attorneys' fees to your
17 firm.

18      So in both respects, both in terms of the merits and
19 the cost of litigation, I can't see how DivX would be
20 prejudiced by this ruling. So I don't think that your point
21 really causes me to change my view.

22      MR. KRAMER: Understood, Your Honor.

23      THE COURT: Now, in terms of the scheduling
24 conference matters that are typically at issue and that are
25 raised -- I'll get to the issue of specification of precise

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA



EXHIBIT _____ PAGE _____

1   allegedly infringed works and the conflict safeguards in a

2   moment -- let me just confirm some open issues.

3         Where do things stand with respect to the Protective

4   Order that is referred to at Page 11 of the 16(b) or 26(f)

5   report?

6         I'm referring to Page 11 in which I'm told that UMG

7   was going to propose a Protective Order.

8         MR. KRAMER:  They have not yet done so, Your Honor.

9         MR. JOHNSTON:  We will do so with haste.

10         THE COURT:  Okay.  And the parties don't anticipate

11   any sparring about that, right?

12         MR. KRAMER:  Hope not.

13         MR. JOHNSTON:  I do not.

14         THE COURT:  Okay.  Next question is -- well, let's

15   address this threshold issue or at least this important issue

16   of specification of infringed works.

17         I construe what I read in this report to mean that

18   within 30 days of today, you're prepared to identify the works

19   that you claim to own the copyright in that you know have been

20   infringed, right?

21         MR. JOHNSTON:  Correct.

22         THE COURT:  We'll make it 28 days from today, so --

23   because I function and my orders try to be based upon weekly

24   intervals that make for very efficient administration.

25         So I'm ordering that as to the works that, regardless

EXHIBIT A    PAGE 9

1   of whatever the discovery from DivX may show, UMG currently or
2   by 28 days from now knows or knows part of the array of
3   supposedly infringed works, that those be identified and fully
4   identified.

5          And since there's going to be a clear and maybe
6   understandable effort on the part of DivX to challenge the
7   legitimacy of ownership claims, attach not only the
8   specification of the works but the ownership evidence as well.

9          Now, registration is presumptive.  Evidence of
10  ownership, if you have anything readily available that goes
11  beyond that, to avoid avoidable sideshows and disputes and
12  especially avoid motion practice before the magistrate judge --
13  and I'll get back to that later -- include it in the 28 days
14  from now.

15         Just anticipate what you are going to have to deal
16  with anyway.  Get it all together and identify it.

17         Now, in other cases -- and I just had this issue
18  arise in the Perfect 10/Google/Amazon litigation, there has
19  been varying lengths of time before which I've imposed a
20  deadline for the specification of the infringed works.  And the
21  deadline specification contemplates that that will be the
22  outside limit on potential issues of liability and
23  corresponding damages.  It doesn't address issues of
24  willfulness, punitive damages and the like; just sets the
25  contours for what the dispute is about.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA



EXHIBIT A    PAGE 10

```
 1              There have been issues in that case which I don't
 2    think will arise here.  And I think this case may lend itself
 3    more readily to settlement.  Apparently, that's been the course
 4    that UMG has taken in parallel types of cases, but have you
 5    discussed with each other what the legitimate or reasonable
 6    time frame should be?  Because I definitely will impose that
 7    obligation on UMG.  I'm not going to permit amendments.  I'm
 8    not going to permit specifications right up to the date of
 9    trial.
10              MR. JOHNSTON:  We have not discussed the timetable.
11    It depends upon looking at their website that's been archived,
12    as I understand it, and doing tests on that.
13              THE COURT:  It's been archived because it's been
14    closed down, right?
15              MR. JOHNSTON:  Right.
16              THE COURT:  And what kind of tests are you referring
17    to?
18              MR. JOHNSTON:  We need to have somebody analyze the
19    history of the content on it and what content is ours.
20              THE COURT:  What does that take in terms of time and
21    cost and effort?
22              MR. JOHNSTON:  I would be speculating.  I'm not sure
23    what the timetable would be.  We're forming discovery requests
24    now -- formulating discovery requests now to serve to get the
25    information that would best allow us to do that.  I can
```

EXHIBIT ___ PAGE ___

1   certainly get back to the Court.

2         THE COURT: How long was the website up?

3         MR. JOHNSTON: The website was up for approximately

4   18 months.

5         THE COURT: And when was it closed down? How long

6   ago approximately?

7         MR. JOHNSTON: February of this year. January or

8   February of this year. It went up in August of 2006, I

9   believe.

10         THE COURT: Do you have a basis to give me with some

11   degree of reliability, if not precision, a guesstimate as to

12   the maximum number of infringing displays that you think you're

13   going to find? A ballpark number.

14         MR. JOHNSTON: The maximum number? I believe we'll

15   find several thousand. Under 5,000 would be a guess, but --

16         THE COURT: Yeah, I'm not going to hold you to it.

17         MR. JOHNSTON: Particularly if you look at the amount

18   of time it was up. But that's really a guess. I have reason

19   to believe we will show several thousand.

20         THE COURT: You haven't served the discovery yet on

21   DivX?

22         MR. JOHNSTON: Correct.

23         THE COURT: So just tell us orally -- just describe

24   what the discovery will demand, what the request will demand.

25         MR. JOHNSTON: The discovery that's being drafted

EXHIBIT A PAGE 12

1   would demand that they produce the archived website, as well as

2   other internal communications, so we -- we need to determine

3   the ownership of the content on the website, and then we need

4   to determine the conduct of the website in the sense of what

5   they knew, what they induced to have their users put on the

6   website.  So I guess it's two buckets.

7          THE COURT:  Those are two different issues.

8          MR. JOHNSTON:  Correct.

9          THE COURT:  I just want to address for the moment

10  what it was that was allegedly infringing.  I don't know what

11  you mean by requiring that the archived website be provided, if

12  that's what you just said.  Do you know what that would

13  encompass?

14         MR. KRAMER:  I have a fear that it is a request for

15  an entire functioning copy of the Stage 6 service as it existed

16  at the time it was shut down, which would be a massive

17  engineering undertaking and require a significant amount of

18  time and expense to generate.  But if UMG is willing to work

19  with us on the cost issues, I'm not suggesting that it's

20  infeasible.

21         MR. JOHNSTON:  What we're looking for is the content

22  on the website more specifically than other services and

23  whatnot that were on the website.

24         THE COURT:  I'll tell you what.  I'm not going to be

25  able to negotiate a demand, and that wouldn't be reasonable

EXHIBIT A  PAGE 13

1    even if it were feasible, so I don't want to spend too much

2    time trying to scope this out, but I got to tell you that I'm

3    going to be setting dates now.

4           I'm going to try to set dates on an informed basis,

5    which is why I'm asking these questions. I'll be very loathed

6    to change the dates. And I will add to the dates that I'm

7    imposing an outside date by which UMG will have to specify what

8    the allegedly infringed works were.

9           That's going to help the parties in settlement

10   anyway. It won't preclude demands and counteroffers and the

11   like. Just on the basis of that universe, people could

12   extrapolate and surmise and assume other facts, but at least it

13   will provide a focus.

14          Now, how much time do you want as time to respond to

15   that?

16          MR. JOHNSTON: 120 days.

17          THE COURT: Oh, that sounds pretty reasonable to me.

18          MR. KRAMER: Yes, Your Honor. I think that 120 days

19   is fine provided we have a sufficient amount of time thereafter

20   to take discovery with respect to works that are added at the

21   last minute. We may need to redepose witnesses. We may need

22   to reserve document requests. We may need to engage in motion

23   practice with respect to stuff that comes thereafter.

24          THE COURT: Say it again. Provided that what?

25          MR. KRAMER: Provided that DivX has a sufficient

EXHIBIT __A__ PAGE __14__

1   opportunity to take discovery with respect to works that are
2   identified thereafter.

3       By thereafter, I mean if their deadline is 120 days
4   from today, then after that point, we will need an opportunity
5   for discovery with respect to whatever has been identified. So
6   the last day, if we get a list of 50 more or 500 more
7   copyrighted works, that would --

8       THE COURT: That's just the day where you know what
9   you have to deal with.

10      MR. KRAMER: Understood.

11      THE COURT: It doesn't preclude you from engaging in
12  other discovery as to that. And that's going to be the last
13  day.

14      Okay. I will read off other dates shortly, but it
15  will be 17 weeks from today -- that's 119 days -- that UMG has
16  to identify the works that it alleges were infringed by the
17  defendant and provide available corresponding proof of
18  ownership as to those works, which will, by the way, make it
19  fair to accelerate the amount of time or narrow the amount of
20  time that you need to conduct follow-up discovery.

21      You are going to be allowed to, but you are going to
22  get a lot of this stuff to begin with.

23      MR. KRAMER: That would be my hope, Your Honor.

24      THE COURT: And that's the last day, that 17 weeks.
25  So by that, I mean it can be rolling -- and it should be

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT ___ PAGE ___

1   rolling discovery.

2           MR. JOHNSTON:  Understood.

3           THE COURT:  Don't wait and don't invite claims of bad

4   faith, discovery practice or need for further extension of

5   these dates.

6           You're the plaintiff.  You would benefit from an

7   efficient and enforceable deadline series that I impose today.

8   So you have this stuff next week, you have it tomorrow, or

9   whenever you have it, you provide it.

10          MR. JOHNSTON:  Can I offer one comment?

11          THE COURT:  Yes.

12          MR. JOHNSTON:  This is just -- candor requires this

13  comment.  I have a lot of experience with computers but not

14  this particular issue.  So when I say 120 days, I'm assuming

15  that we're going to do our best to get everything together

16  because that's in our interest, but in terms of the technical

17  requirements and what it will take for technicians to determine

18  this, I'm really speculating.

19          THE COURT:  Well, if you make a very concrete and

20  compelling showing that your good faith estimate -- and I

21  understand why you are providing this qualification.  You have

22  a right to do it -- turns out to be not feasible or not

23  informed or requires some change, then I'll consider it on the

24  merits.  But right now, 17 weeks.

25          The case has been pending for a while, in part

EXHIBIT ___ PAGE ___

1   because of my inability to turn to it faster and all these

2   issues about conflicts, but now it's ready to be moved.

3           MR. KRAMER:  Your Honor, two points with respect to

4   this process, and I think that this is a sensible way to

5   proceed.

6           One is that in addition to identifying the

7   copyrighted works that are at issue in this case, it's

8   important from our perspective to know what it is on the Stage

9   6 service that the plaintiffs contend was infringing, the U-R-L

10  or URL at which a supposedly infringing clip was located is

11  important because if they just say, well, it's this work, we

12  have no idea within the universe of hundreds of thousands or

13  millions of clips on the service where it is they contend it

14  appeared or why they contend it's infringing.

15          So in the You Tube/Viacom case, what the plaintiffs

16  have been doing -- have been ordered to do is to identify the

17  copyrighted work and then the URL at which the alleged

18  infringement exists so that it's easy for us to compare and

19  say, oh, yes, I see that you contend that it's this song, and

20  this song appears to show up in the video.

21          THE COURT:  I understand what you're saying, and I am

22  sure Mr. Johnston and Mr. Hussain understand it as well.

23          They're going to be giving you this information based

24  upon what they have independent of what you've produced.

25          It's undoubtedly going to be consistent with that

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  ability and that requirement that they specify the URL because

2  that's how they got it.

3        Am I not right?

4        MR. JOHNSTON:  That would be a fair assumption going

5  forward.

6        In terms of exactly -- whether we have it all in that

7  form today for those we are aware of today, that, I can't

8  represent one way or the other, but I understand what --

9        THE COURT:  Eventually, you're going to have to.

10        MR. JOHNSTON:  -- your expressed interest is.

11        Yes, I understand.

12        THE COURT:  You're going to have to do that.

13        And, in fact, that would be an obligation in order

14  to -- I think.  I'm not making a definitive ruling on this --

15  in order to carry out your DMCA obligations anyway.  So I think

16  that's something that plaintiffs and entities in your client's

17  position are expecting to have to do no matter what, so --

18        Okay.  You raised the point.  I don't want to make it

19  appear that I think it's been resolved, but I also don't want

20  it to linger as an ambiguous or unresolved issue.

21        URL identification will be in both sides' interests.

22  Okay?  You have a problem with the material you get on this

23  rolling basis, then pick up the phone.  All right?

24        MR. KRAMER:  To opposing counsel, not to the Court,

25  I'm gathering.

EXHIBIT __A__ PAGE __18__

1     THE COURT:  I don't want this to disintegrate in the

2  kind of sideshow I've seen in too many of these infringement

3  case.

4     And I know that Judge Wistrich, who is the magistrate

5  judge who will have to resolve it at first blush in discovery

6  disputes, is very busy, very hardworking.  Some, I'm going to

7  take away from him.

8     I will permit you -- and I'll tell you what I have in

9  mind in a minute to bring directly to me, but you really need

10  to avoid a wasteful and avoidable discovery practice and motion

11  practice.

12     MR. KRAMER:  Your Honor, on that same point -- and

13  this is relatively minor, but with respect to the

14  identification of the copyrighted works at issue, I think

15  consistent with the Copyright Act and Section 508, we'd like

16  the plaintiffs' lists of works that are identified --

17  infringements that are identified to constitute an amendment to

18  the complaint so that it's not just, "Here's a letter.  Here

19  are five things I'm talking about asserting today.  Tomorrow

20  I've decided to take two of those away."

21     THE COURT:  That's the whole premise of what I said

22  at the beginning of this conversation.

23     But I don't want 37 amendments -- if there are 37

24  productions -- on a rolling basis.

25     17 weeks from now, the complaint will be amended as a

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT _A_ PAGE _19_

1　right.　No motion practice is necessary.　No meet and confer is
2　necessary.

3　　　　All of the infringed works that plaintiff has
4　identified by then will be specified in the -- I don't know if
5　it's going to be the First Amended Complaint.　Whatever the
6　then-operative pleading will be -- and they will be part of the
7　pleading.

8　　　　But we're not going to have constant amendments the
9　way I have seen some judges have to deal with in other
10　contexts.

11　　　　So you deal with them when you get this information
12　as though they are going to be incorporated into the complaint,
13　and eventually they will -- into the amended complaint.

14　　　　MR. KRAMER:　Understood, Your Honor.　Thank you.

15　　　　THE COURT:　All right.　Now, one of the dates that I
16　always set at these scheduling conferences is the last day to
17　amend the pleadings, so that will be 17 weeks from today also.

18　　　　We're going to have dates set today, Steve, that are
19　not necessarily triggered by the presumptive schedule.　In
20　fact, they won't be.

21　　　　Now, in order to be reasonably informed before I do
22　set the remaining dates, let's talk about this issue of the
23　conflict because it could affect how discovery is provided.

24　　　　I've already told you what you should do on
25　identifying the works in the suit.　So that's one issue that's

EXHIBIT A  PAGE 20

1 been resolved.

2      It seems to me there is a tempest in the teapot about
3 this issue of the in-house counsel. Okay? The in-house
4 counsel doesn't have to be walled off in the sense that
5 somebody else has to replace her or him and start anew.

6      In order to comply with the spirit, if not the
7 precise little language of the order I issue, it should be
8 sufficient. And I doubt if it's going to be a problem if
9 whoever the in-house counsel is -- or are, if there's more than
10 one -- file a declaration that simply confirms that they will
11 not orally disclose or physically make available the work
12 product of Irell & Manella to the current lawyers from Arnold &
13 Porter. So they are not going to say, you know, "This is the
14 way we did it in that case. Irell said this is the best way we
15 should handle it, or this is the form and the format or the
16 template that I already developed for handling this kind of
17 discovery response."

18      That doesn't mean they can't make use of whatever
19 they previously experienced and previously done and the
20 information they acquired, the access to facts within UMG's
21 business and business structure. It's absolutely unnecessary
22 to replace them.

23      But if this kind of good faith compliance with the
24 spirit of the order is accepted by them and accepted by Arnold
25 & Porter, we got no problem. Everybody agree?

EXHIBIT  A  PAGE  21

```
 1          MR. KRAMER:  Agreed, Your Honor.  That's acceptable
 2    to us.
 3          MR. JOHNSTON:  Just to clarify.  Maybe this is to
 4    state the obvious.  If Irell in some other case prepared
 5    discovery, and it's been served -- I mean, it's a public
 6    document.  We could use --
 7          THE COURT:  Yes.
 8          MR. JOHNSTON:  So you are talking about confidential
 9    work product and whatnot?
10          THE COURT:  Yes.  If Irell -- I don't know what they
11    did, but -- and maybe you don't, but if they say, "In order to
12    comply with your discovery obligations, this is what you've got
13    to send out to the empire of officials in UMG," and they gave
14    UMG not only that oral advice, but the form to do it, to me, it
15    wouldn't really affect the ultimate concerns, but you can't use
16    it in the sense that the people that you're dealing with, who
17    were responsible for getting information or making a decision
18    and the like, can't simply tell you what they did as a result
19    of -- and explicitly tell you that this is the advice that
20    Irell gave.
21          If a form was developed to obtain information, it can
22    be used again.  If information was provided, it can be used
23    again.
24          MR. JOHNSTON:  Okay.
25          THE COURT:  But any of the product of the analysis or
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA



```
1   the experience of the Irell lawyers is where the curtain has to
2   be dropped.
3           MR. JOHNSTON:  I think I -- I certainly understand
4   the point the Court is addressing, and, in principle, that
5   sounds very reasonable to me.
6           THE COURT:  And, you know, you don't have to file
7   those declarations with me.  Get the declarations from the
8   individuals, whoever it was that Irell dealt with, and they're
9   not going to communicate to you their communications with
10  Irell, their -- the advice that they were given by Irell either
11  orally or in writing.
12          Send their declarations to Mr. Kramer and just
13  proceed on that basis.
14          You're dealing with reputable counsel here, both
15  in-house at UMG and at Arnold & Porter.  That should be your
16  presumption.  This stuff doesn't have to go public and get
17  filed in the court.  And then if you got a problem, see where
18  it takes you.  All right?
19          MR. JOHNSTON:  Thank you.
20          THE COURT:  Okay.  So we don't have to deal with that
21  as an open matter.
22          Now, you have competing dates that you're requesting.
23          For scheduling conferences that would be held today,
24  presumptively I would be setting -- and this really has little
25  significance given the different dimensions in this case, but I
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT __H__ PAGE __23__

1   would be setting a discovery cutoff of March 23rd. We're not

2   going to be able to do that here. The plaintiff wants

3   March 16th. The defendant wants August 17th.

4          What is 17 weeks from today?

5          THE CLERK: December 22nd.

6          THE COURT: December 22nd?

7          I have an idea, another way I think to proceed

8   sensibly here.

9          Suppose next week you get ten -- you get a letter or

10  some kind of document from Mr. Johnston and he says, "Here are

11  the first ten works that were identified," okay, that are

12  eventually going to be part of the amended complaint and

13  specifically alleged infringed works. So I already told you,

14  you are going to have to seek the discovery you want as to

15  those ten. Okay? It's going to be the same discovery the

16  following week when you get 20 new ones, right?

17         MR. KRAMER: To a large extent, yes. The basic

18  discovery will be the same.

19         THE COURT: Okay. So you send out your discovery the

20  minute you get this. Okay? There is going to be reciprocal or

21  at least parallel discovery. It's going to be ongoing for both

22  sides.

23         So you see whatever he tells you. You send out your

24  discovery demand in light of that. You propose a stipulation,

25  getting him to sign it, saying, "This is going to be deemed to

EXHIBIT __A__ PAGE __24__

1   be a discovery demand we make as to every ensuing disclosure

2   you make as to the infringed work." You don't have to send it

3   out the following week. Save your client money.

4        You just know what he wants in responses already.

5   You start getting together your response to the first discovery

6   demand on the first ten that I hypothesized, and you know

7   you're going to have to do it for the next week's disclosure of

8   the ensuing 20. Okay?

9        So everybody has a limited number of assaults on the

10   forest and everybody knows what kind of discovery is going to

11   be mounted, at least as to this issue of specified infringed

12   works.

13        I'm not in a position and I'm not going to attempt to

14   come up with any limitations or any suggestions on other kinds

15   of discovery, but that's going to be the core of it anyway or

16   at least a big part of it.

17        So with that in mind, you don't have to wait until --

18   what did you say? December what?

19        THE CLERK: 22nd.

20        THE COURT: You don't have to wait until then. You

21   will have most of your discovery as to that aspect of

22   discovery.

23        MR. KRAMER: We've already served it, Your Honor.

24   We've already gotten responses.

25        They suggest that it's going to be a long slog

1   through the motion to compel process, but we've already served
2   our discovery with respect to the works ensued.

3         Whatever it is that they have identified that they
4   intend to assert, we would expect them to give us those
5   documents, and, unfortunately, it looks like it's going to move
6   a little slower than we had hoped.  But, yes, I think that's a
7   very sensible approach.

8         THE COURT:  Okay.  The non-expert discovery cutoff
9   will be June 1st.

10        Now, the expert discovery that you want to have a
11  longer interval, usually I require opening disclosures a week
12  after the completion of non-expert discovery.  Both sides seem
13  to want more time.  I don't know how much more time.

14        How much more time after the completion of non-expert
15  fact discovery do you want?

16        MR. JOHNSTON:  I think we had estimated three weeks.
17  They had estimated some more, but three weeks was our estimate.

18        THE COURT:  Mr. Kramer?

19        MR. KRAMER:  Actually, I think we've estimated five,
20  so if you want to split the baby and --

21        THE COURT:  Yeah, that's what I'm going to do.

22        So the opening expert witness disclosure will be
23  June 29th.  And adjust the -- and the last day for hand serving
24  motions and filing it probably should be after you complete
25  expert discovery?



EXHIBIT A      PAGE 26

1          MR. KRAMER:  I think it has to be, Your Honor.

2          THE COURT:  I don't know why there is so much expert

3   discovery and why it's critical, but let's do it.  All right?

4   I just want to breeze through this.

5          So six weeks from June 29th will be August 10th.  The

6   expert discovery cutoff will be August 10th.

7          And that means the last day for serving motions will

8   be two weeks after that, which will be August 24th.

9          And then work up to the trial date using my

10  presumptive schedule, Steve.  Okay?

11         I don't know what that will land you to.

12         We will set this down for an eight-day jury trial.

13         I really am confident we can do it.  Maybe it would

14  take ten, but we'll set it for eight.  You'll see why I think

15  so.  I'm not blustering.  We can do a lot of things to make it

16  efficient.  It probably won't go that distance anyway, but we

17  will set it down for an eight-day jury trial.

18         You already have the last day to amend the pleadings.

19         The mechanism to comply with Local Rule 16-15 will be

20  outside mediation.

21         Have you talked about a mediator?  You told me in

22  your report that you talked about settlement, and I know there

23  is an incentive, business incentive, for both sides to settle,

24  so I'm confident there will be one, but have you talked about a

25  mediator?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT __A__ PAGE __27__

1        MR. JOHNSTON:  We haven't discussed a specific

2    mediator, no.

3        THE COURT:  Okay.  The last date to complete your

4    compliance with Local Rule 16-15 will be August 17th, a week

5    after the completion of expert discovery.

6        That's a last date.  You can settle the case in the

7    corridor if you want.

8        You can set a mediation at any time that the parties

9    think it's propitious and you have an available date from the

10   mediator you select.

11       You have the duty, Mr. Johnston, as counsel for the

12   plaintiff to notify me who the mediator is who has been

13   selected and what the date is that that person has set aside

14   for the mediation.

15       Just file a status report and then file a second

16   status report within a week after the mediation as to the

17   outcome, or if it's ongoing, that it's still ongoing.

18       Yes?

19       MR. KRAMER:  Your Honor, as you noted in your opening

20   remarks, this case is slightly -- not slightly, considerably

21   differently situated from some of the other cases that appear

22   on their face to involve the same legal issues in the sense

23   that the operation here has been shut down and was not in

24   operation very long and was a tiny operation.

25       The concern that I think we have is that the cost of

1   the litigation will exceed any possible recovery in this case

2   and that we'd like to have a forum for discussion whether it be

3   ENE or judicial mediation earlier than August of 2009.

4           THE COURT:  You can.  That's the last date.

5           MR. KRAMER:  Okay.  Okay.

6           THE COURT:  Now, are you talking about with me?

7           MR. KRAMER:  Well, no.  I don't think -- unless it's

8   the Court's practice to entertain settlement conferences,

9   but --

10          THE COURT:  Well, occasionally, but --

11          MR. KRAMER:  I'm actually thinking that there be some

12  form of early evaluation in this case before we undertake what

13  I think the parties have experienced already is going to be a

14  costly litigation.

15          THE COURT:  It makes a lot of sense, but why do I

16  have to get involved in that?

17          MR. KRAMER:  Well, our overtures have been -- have

18  not been accepted in that regard.  So if there is a process by

19  which the Court can direct the parties to a neutral evaluation

20  rather than simply leave it to the local rules to supply the

21  deadlines, I think we would both benefit by virtue of having

22  that earlier rather than later.

23          THE COURT:  Do you want to respond?

24          MR. JOHNSTON:  I have no -- time is not magic in this

25  except for the pressures of cost and the pressures of

1  proceedings in court.  I have no problem with having early

2  settlement discussions in a case where it makes sense.

3         The reason their overtures have not been very

4  acceptable is because in our view they were totally unrealistic

5  in terms of the amount of controversy here.

6         I suspect that maybe it will be more realistic after

7  we have determined how many infringing materials they have had

8  on their website.  But I think at this point --

9         THE COURT:  Well, look.  Will you make a good faith

10  representation right here that, since you are going to in 28

11  days provide your initial specification, that you will be

12  amenable to sitting down with somebody that both sides select?

13  It doesn't necessarily have to be the ultimate mediator, but

14  probably should be.  And if you want to do ENE within 28 days

15  after that?

16         MR. JOHNSTON:  I'll represent that I will act in good

17  faith to resolve this case, but I don't think we're going to

18  know the extent of the infringement, which is going to

19  dramatically affect the number, until we've seen their website.

20  That's my only pause in doing exactly what the Court suggests.

21         I think the more sensible --

22         THE COURT:  Well, but you see "before you see their

23  website" is going to prompt a statement probably from

24  Mr. Kramer that I don't want him to make, because we've got to

25  move it along, but I'll bet it's his thought that, you know,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT A PAGE 30

1   "If they want to see our website, that's going to cost us a

2   hell of a lot of money, and we're going to object to that

3   because it isn't necessary or it isn't fair or isn't reasonable

4   and they're going to have to pay for half of it," and then we

5   are off and running on the usual skirmishing.

6        So you, Mr. Johnston, and you, Mr. Kramer, and your

7   various colleagues figure out a way to meet -- to talk to each

8   other on a continuing basis and to figure out -- and it could

9   be staged and stepped and it may mean more than one person --

10   how you can bring an end to this dispute fairly and timely.

11   Okay?

12        You really -- it's going to happen anyway, so it

13   might as well happen -- and that doesn't mean that I'm just

14   putting the pressure on UMG to cave in and to meet when it

15   would be a waste of time and ultimately more costly to do so

16   before you have a basis or a framework, but I don't think

17   you're going to be functioning in a desert of information,

18   certainly not after you have gone through the drill of

19   specifying what you currently have. And you can extrapolate a

20   whole lot of things from what you've already learned, even if

21   you don't have the actual content of the website. I'll bet

22   your experts will tell you that.

23        So I'm just going to stop there. Okay? I'm not

24   going to set an earlier date than the one I set, but I am going

25   to be relying on the lawyers, and I trust the lawyers and

EXHIBIT __A__ PAGE __31__

```
 1   respect the lawyers in this case to figure out how to function

 2   both professionally and practically in the interest of their

 3   respective clients.

 4          Okay.  I think I've accomplished everything I really

 5   needed to.

 6          Is there anything else that I typically set?

 7          THE CLERK:  No.

 8          THE COURT:  Listen to the dates.  Mr. Montes will

 9   read off the dates and you'll take it from there.

10      (Proceedings concluded.)

11                        --oOo--

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT ___A___ PAGE _32_

CERTIFICATE

I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.

Date: SEPTEMBER 4, 2008

_____

Cindy L. Nirenberg, CSR No. 5059

EXHIBIT X____ PAGE 33

EXHIBIT B

EXHIBIT B PAGE 34

1     UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3   HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4        - - - -

5

6           **COPY**

7 UMG RECORDINGS, INC.,     )

8             )

        PLAINTIFF,   )

9             )

    vs.       ) No. CV07-5744-AHM(AJWx)

10            )

 VEOH NETWORKS, INC., ET AL,   )

11            )

       DEFENDANTS.  )

12 _____)

13

14    REPORTER'S TRANSCRIPT OF PROCEEDINGS

15       HELD IN CHAMBERS

16      LOS ANGELES, CALIFORNIA

17     MONDAY, MARCH 17, 2008

18

19

20

21

22   _____

23       CINDY L. NIRENBERG
      U.S. Official Court Reporter
24     312 North Spring Street, #438
     Los Angeles, California 90012
25     *www.cindynirenberg.com*

EXHIBIT __b__ PAGE __35__

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:
                         IRELL & MANELLA
 4                       BY: STEVEN A. MARENBERG, ATTORNEY AT LAW
                             BRIAN D. LEDAHL, ATTORNEY AT LAW
 5                       1800 AVENUE OF THE STARS
                         SUITE 900
 6                       LOS ANGELES, CA 90067
                         310-277-1010
 7

 8

 9    FOR THE DEFENDANTS:

10                       WINSTON & STRAWN
                         BY: MICHAEL S. ELKIN, ATTORNEY AT LAW
11                       200 PARK AVENUE
                         NEW YORK, NY 10022
12                       212-294-6700

13
                         WINSTON & STRAWN
14                       BY: ERIN R. RANAHAN, ATTORNEY AT LAW
                         333 SOUTH GRAND AVENUE
15                       38TH FLOOR
                         LOS ANGELES, CA 90071
16                       213-615-1700

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT B PAGE 36

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, MARCH 17, 2008

 2                              2:04 P.M.

 3                            - - - - -

 4         THE CLERK:  Calling Item Number 5, CV07-5744, UMG

 5    Recordings, Inc. versus Veoh Networks, Inc., et al.

 6         Counsel, state your appearances, please.

 7         MR. MARENBERG:  Good afternoon, Your Honor.  Steve

 8    Marenberg, and with me is my colleague, Brian Ledahl, from

 9    Irell & Manella for the plaintiffs.

10         THE COURT:  Good afternoon.

11         MR. ELKIN:  Your Honor, Michael Elkin, Winston &

12    Strawn, and with my colleague, Erin Ranahan, we represent the

13    defendant, Veoh Network.

14         THE COURT:  Okay.  We are here for the scheduling

15    conference, as you know.  I have looked at the 16(b) report,

16    and I have a couple of questions.  The case in the Northern

17    District, IO Group versus Veoh, who's the judge on that case?

18         MR. ELKIN:  Harold Lloyd, U.S. Magistrate.

19         THE COURT:  Wasn't there a district judge?

20         MR. ELKIN:  There was, but the parties waived.

21         THE COURT:  They did?

22         MR. ELKIN:  Yes.

23         THE COURT:  And which division is it in?

24         MR. ELKIN:  It's in the San Jose division.

25         THE COURT:  San Jose.  And what's the name of the
```

EXHIBIT _B_ PAGE _38_

```
 1   magistrate?

 2               MR. ELKIN:  Harold Lloyd.

 3               THE COURT:  Okay.  And has he issued any rulings that

 4   have any bearing on the management of this case or the issues

 5   that are revealed in this 16(b) report?

 6               MR. ELKIN:  No.  There were obviously different

 7   deadlines imposed in the scheduling conference, the Rule 16

 8   conference, but I --

 9               THE COURT:  Has he ruled on anything relating to the

10   DMCA?

11               MR. ELKIN:  No.  We argued the motions for summary

12   judgment on September 4, 2007, and the motions are sub judice.

13   There was additional briefing requested and submitted I believe

14   in late November of 2007.  We're awaiting the decision.

15               THE COURT:  And you were the moving party?

16               MR. ELKIN:  Both parties were.  We made a motion --

17   defense made a motion for a determination that Veoh was

18   entitled to rely on Section 512(c), and the plaintiffs made a

19   motion that their direct contributory vicarious liability

20   motions, the claims should be adjudicated under Rule 56, and to

21   save for trial the issues of damages.  So both of those motions

22   were argued and submitted, so cross motions, as it were.

23               THE COURT:  Okay.  But underlying those motions are

24   some of the same contentions relating to the requirements under

25   Section 512(c), correct?
```

1    MR. ELKIN:  Correct.

2         THE COURT:  Did you cite a lot of other rulings

3    relating to the application of 512(c) in the context of the

4    burden on the part of the plaintiff to identify the allegedly

5    copyrighted material?

6         MR. ELKIN:  If I understand Your Honor's question

7    correctly, I believe that every conceivable Section 512 case

8    that's been decided was briefed before the Court.

9         THE COURT:  All right.  Well, you lodge a copy of

10   your briefs and the opposing sides' briefs so I have it here --

11        MR. ELKIN:  Okay.

12        THE COURT:  -- in the event that I want to see what

13   the parties contended in that case, and I will just stop with

14   that.

15        Now, Mr. Marenberg, you say on Page 8 that this

16   approach of delaying discovery into ownership of the -- alleged

17   ownership of the copyrights and chain of title -- I'm not sure

18   exactly what that concept chain of title means, but I think I

19   know -- has been consistently employed by courts.  What courts?

20   I don't see any reference to any.

21        MR. MARENBERG:  We can supply you with the

22   transcripts.  First, Judge Patel in the Napster cases put off

23   discovery on the chain of title on the works until the end.

24   And second -- I'm just blanking on his name in the Southern

25   District of New York -- recently addressed just this issue, and

EXHIBIT __B__  PAGE __39__

1   we can get you a copy of the transcript or lodge it, where he

2   put off the chain of title issues until the end.

3           THE COURT:  Well, you tell me what you understand

4   that shorthand reference to mean --

5           MR. MARENBERG:  Sure.

6           THE COURT:  -- as opposed to -- well, just tell me.

7           MR. MARENBERG:  Let's posit that there are

8   ultimately -- when we finally get all of the discovery, we need

9   to identify every copyrighted work that was on the thousand

10  different copyrights at issue, be it the sound recording

11  copyright or the publishing copyright.  We have gotten

12  discovery in this case and others up front saying, "Give us

13  every document that relates to the chain of title -- to your

14  chain of title or the validity to your chain of title to every

15  one of those copyrights."

16          Discovery also includes --

17          THE COURT:  Well, wait a minute.  What does chain of

18  title encompass after you've established -- are these

19  copyrighted works registered?

20          MR. MARENBERG:  Yes.

21          THE COURT:  So if you were to give them certificates

22  of registration, what remains within the purview of the dispute

23  suggested by the phrase chain of title?  That you haven't

24  assigned it, is that it?

25          MR. MARENBERG:  The argument that we have been faced

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  with is that our copyright registrations are only prima facie

2  evidence of validity in ownership and that they are entitled to

3  go behind those registrations and see for themselves whether

4  there is any defect in those chain of titles.  And so, for

5  example, we get this document request for every contract, every

6  assignment that might be in that chain of title.

7          We also get document requests, "Tell us if anyone has

8  ever raised a claim in any case, whether it went to lawsuit or

9  not, as to the validity of your chain of title and produce

10 those to us."

11         And, obviously, when you are in a mass infringement

12 case, it's not like one work where you can say, "Here are the

13 chain of title documents.  Have at it if you want."

14         This is an enormous burden to produce and ultimately

15 for no good reason, because let's assume -- and we don't even

16 know that this is the case, but let's assume of the thousand

17 works, there is a problem with one or two.  That would not

18 materially affect the damage award in any of these cases, but

19 it does --

20         THE COURT:  What evidence of ownership are you

21 prepared to provide right now?

22         MR. MARENBERG:  Well, for those -- well, we will

23 provide them right now with the copyright of registrations,

24 which is a prima fascia ownership.  We have done that in

25 MySpace and Grouper, we'll do it for Veoh.  And we will also

EXHIBIT __6__ PAGE __41__

1  identify, as we go along when we identify the works, the

2  registration numbers so they can see that there is a

3  registration for every work that we are claiming is infringed.

4     THE COURT:  Is this contention on your part that

5  going beyond that should not be permitted, during at least the

6  first phase of discovery, something that has been addressed by

7  Judge Wistrich in any of these cases?

8     MR. MARENBERG:  It is before him.  He has not ruled.

9     But that is something that I raised in the first

10  round of motions that was filed and heard in October.  And we

11  are waiting for a ruling on that so that -- and depending on

12  what the ruling is, we may bring that to you.  And that's why

13  we averted to it here as an issue, but it's not really ready to

14  be teed up.

15     I suspect that it will get teed up before you in the

16  context of MySpace or Grouper, and then we obviously think that

17  however that comes out, we'd have to live with it in Veoh.

18     THE COURT:  Yeah, well, I'm not going to preclude the

19  initiation of discovery at this phase in this case.

20     I'm not familiar with the facts and the issues to the

21  extent that I assume that Judge Wistrich is.  And if the case

22  comes to me on review of any decision he makes, then it would

23  make sense to apply the same analysis and same conclusion to

24  this case, unless there are factors here that require something

25  materially different, and I doubt that.

EXHIBIT _B_ PAGE _42_

1    But right now, the dates that I am going to set

2  contemplate that discovery will be, for lack of a better term,

3  reciprocal and without any preconceived or preliminary

4  limitations and restrictions.  So we'll see what happens on the

5  other matter.

6    Now, before I recite the dates that I think should be

7  applied here, have you -- meaning both sides here -- discussed

8  coordinating any discovery in this case with the DivX matter?

9    MR. MARENBERG:  No.

10    THE COURT:  What's your preliminary view about that?

11  I'm just throwing it out on the table.

12    MR. MARENBERG:  I would not coordinate anything on

13  this case with the DivX matter.

14    THE COURT:  Because you are not going to be involved

15  with it?

16    MR. MARENBERG:  I'm not involved in the DivX matter.

17  I'm not coming close to it.

18    THE COURT:  Well, I have something under submission

19  on that, so I'll not go any further, but -- well, I'll stop

20  there.

21    What is this about suing the investors?

22    MR. MARENBERG:  I don't know if you are familiar with

23  this, but in the Napster case, ultimately the investors in

24  Napster, such as --

25    THE COURT:  Well, I'm familiar because of the --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT C

EXHIBIT ____C____ PAGE ____44____

```
 1

 2                    UNITED STATES DISTRICT COURT

 3                  CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION
 4

 5
     UMG RECORDINGS, INC., ET AL., )
 6                                 )
           PLAINTIFFS,             )
 7                                 )
           VS.                     )  CASE CV 07-5744-AHM(AJWX)
 8                                 )
                                   )
 9   VEOH NETWORKS, INC., ET AL.,  )  LOS ANGELES, CALIFORNIA
                                   )  AUGUST 25, 2008
10                                 )  (10:07 A.M. TO 11:17 A.M.)
           DEFENDANTS.             )
11   _____)

12                              HEARING
              BEFORE THE HONORABLE ANDREW J. WISTRICH
13                  UNITED STATES MAGISTRATE JUDGE

14

15

16
     APPEARANCES:              SEE NEXT PAGE
17
     COURT REPORTER:           RECORDED; COURT SMART
18
     COURTROOM DEPUTY:         YSELA BENAVIDES
19
     TRANSCRIBER:              DOROTHY BABYKIN
20                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
21                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
22

23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```



EXHIBIT ___ PAGE ___

```
 1    APPEARANCES:  (CONTINUED)
      FOR THE PLAINTIFF:      IRELL & MANELLA
 2                            BY:   BRIAN D. LEDAHL
                                    STEVEN A. MARENBERG
 3                                  ANJULI MC REYNOLDS
                                    ATTORNEYS AT LAW
 4                            1800 AVENUE OF THE STARS
                              SUITE 900
 5                            LOS ANGELES, CALIFORNIA  90067

 6
      FOR THE DEFENDANTS:     WINSTON & STRAWN
 7                            BY:   JENNIFER A. GOLINVEAUX
                                    ATTORNEY AT LAW
 8                            101 CALIFORNIA STREET
                              39TH FLOOR
 9                            SAN FRANCISCO, CALIFORNIA  94111

10                            WINSTON & STRAWN
                              BY:  REBECCA LAWLOR CALKINS
11                                  ATTORNEY AT LAW
                              333 SOUTH HOPE STREET
12                            38TH FLOOR
                              LOS ANGELES, CALIFORNIA  90071
13
                              WINSTON & STRAWN
14                            BY:   THOMAS P. LANE
                                    ATTORNEY AT LAW
15                            200 PARK AVENUE
                              NEW YORK, NEW YORK  10166
16

17

18

19

20

21

22

23

24

25
```

EXHIBIT ___C___ PAGE __46__

```
 1                          I N D E X
        CASE NO. CV 07-5744-AHM(AJWX)               AUGUST 25, 2008
 2
        PROCEEDINGS:  PLAINTIFF'S MOTION TO COMPEL DISCOVERY
 3                    RESPONSES FROM VEOH
                      DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES
 4                    AND FOR PRODUCTION OF DOCUMENTS FROM
                      PLAINTIFFS.
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT _____C_____ PAGE __47__

```
 1    LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 25, 2008; 10:07 A.M.
 2            THE CLERK:  THIS DISTRICT COURT IS NOW IN SESSION.
 3    THE HONORABLE ANDREW J. WISTRICH PRESIDING.
 4            PLEASE BE SEATED.
 5            CALLING CV 07-5744-AHM(AJWX), UMG RECORDINGS,
 6    INCORPORATED, ET AL. VERSUS VEOH NETWORKS, INCORPORATED.
 7            COUNSEL, PLEASE MAKE YOUR APPEARANCES.
 8            MR. LEDAHL:  GOOD MORNING, YOUR HONOR.
 9            BRIAN LEDAHL, STEVE MARENBERG AND ANJULI
10    MC REYNOLDS OF IRELL & MANELLA ON BEHALF OF THE PLAINTIFFS.
11            MR. LANE:  GOOD MORNING, YOUR HONOR.
12            THOMAS LANE, REBECCA CALKINS AND JENNIFER
13    GOLINVEAUX ON BEHALF OF THE DEFENDANT.
14            THE COURT:  GOOD MORNING.
15        SO, I WANT AN UPDATE, FIRST OF ALL, ON WHETHER
16    ANYTHING HAS HAPPENED WITH RESPECT TO THIS MOTION, JUST WHERE
17    THE CASE STANDS GENERALLY.
18        MAYBE I SHOULD ASK PLAINTIFF'S COUNSEL TO BEGIN
19    WITH THAT.
20            MR. LEDAHL:  THANK YOU, YOUR HONOR.
21        I THINK UNTIL FRIDAY I WOULD SAY THERE WERE NO
22    DEVELOPMENTS FURTHER.  ON FRIDAY WE RECEIVED THE FIRST
23    ADDITIONAL PRODUCTION OF ANY MATERIAL BEYOND WHAT'S
24    REFERENCED IN THE PAPERS THAT WERE SUBMITTED TO THE COURT.
25    WE RECEIVED APPROXIMATELY 23,000 ADDITIONAL PAGES OF
```



EXHIBIT C    PAGE 48

1    ME -- THE DEFENDANTS ARE UNDOUBTEDLY GOING TO TRY TO MAKE

2    VARIOUS ARGUMENTS ABOUT WHAT'S IN THIS VIDEO, ET CETERA.  WE

3    NEED THE VIDEOS TO ADDRESS THAT.

4         WE ALSO HAVE AN ISSUE ABOUT PLAINTIFFS -- EXCUSE ME

5    -- PLAINTIFFS NEED TO IDENTIFY WHAT INFRINGING VIDEOS THERE

6    ARE AND DEFENDANTS' REPEATED REQUESTS FOR THAT INFORMATION.

7         WELL, ONE OF THE THINGS WE NEED TO BE ABLE TO LOOK

8    FOR THE SCOPE OF THE BREADTH OF INFRINGEMENT -- WE'VE

9    OBVIOUSLY IDENTIFIED SPECIFIC EXAMPLES.  BUT TO COVER THE

10   FULL BREADTH OF WHAT'S INFRINGING ON THEIR SITE, WHICH IS

11   QUITE SUBSTANTIAL, WE NEED THE VIDEOS.  WE NEED TO BE ABLE TO

12   LOOK AT THEM.

13        WE THINK THAT IT WOULD BE PRACTICALLY SPEAKING VERY

14   BENEFICIAL, FOR EXAMPLE, TO BE ABLE TO RUN AUTOMATED

15   TECHNOLOGY THAT MIGHT BE ABLE TO REVIEW THEM, TO ANALYZE THE

16   VIDEOS, TO HELP US IDENTIFY VIDEOS THAT MIGHT BE OF INTEREST.

17        WE NEED THE VIDEOS TO DO THAT.  WE HAVEN'T -- I'VE

18   MADE THAT CLEAR TO COUNSEL.  I'VE MADE CLEAR THAT WE WOULD BE

19   HAPPY TO DISCUSS SOME OF THESE ISSUES, BUT WE NEED TO BE ABLE

20   TO DO THINGS LIKE THAT.  AND I'VE RECEIVED NO ASSURANCE THAT

21   ANY PROPOSAL THAT'S BEEN MADE WOULD ADDRESS THOSE.

22        THE COURT I'M SURE RECALLS THAT WE HAD SOME ISSUES

23   WITH ATTEMPTS TO OBTAIN ACCESS AS OPPOSED TO THE VIDEOS

24   THEMSELVES IN PRIOR CASES.  AS THE COURT MIGHT IMAGINE, WE'RE

25   UNDERSTANDABLY WARY AS A RESULT OF THAT EXPERIENCE BECAUSE IT

EXHIBIT ____ PAGE __49__

EXHIBIT D    EXHIBIT _D_ PAGE _50_

1             UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3

4   HONORABLE ANDREW J. WISTRICH, MAGISTRATE JUDGE PRESIDING

5

6   UMG RECORDINGS, INC.,    )
    ET AL.,                  )
7                            )
                PLAINTIFFS,  )
8                            ) CASE NO. CV 06-07361-AHM(AJWX)
            VS.              )
9                            )
    MYSPACE, INC.,           )
10  ET AL.                   )
                             )
11              DEFENDANTS.  )
    ─────────────────────────)
12

13

14              MOTION TO COMPEL

15           LOS ANGELES, CALIFORNIA

16             NOVEMBER 5, 2007

17

18

19

20  COURT DEPUTY/RECORDER:        YSELA BENAVIDES

21  TRANSCRIBED BY:               HUNTINGTON COURT REPORTERS
                                  & TRANSCRIPTION INC.
22                                1450 W. COLORADO BOULEVARD
                                  SUITE 100
23                                PASADENA, CALIFORNIA 91105
                                  (626) 792-7250
24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

        HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
    Court Reporting (626)792-6777 Transcription (626)792-7250

                                                              1

t

1             UNITED STATES DISTRICT COURT

EXHIBIT _D_ PAGE _51_

2  CENTRAL DISTRICT OF CALIFORNIA

3

4  HONORABLE ANDREW J. WISTRICH, MAGISTRATE JUDGE PRESIDING

5

6  UMG RECORDINGS, INC.,       )
   ET AL.,                      )
7                              )
              PLAINTIFFS, )
8                              )  CASE NO. CV 06-06561-AHM(AJWX)
        VS.                         )
9                              )
   GROUPER NETWORKS, INC.,     )
10  ET AL.                       )
                            )
11            DEFENDANTS. )
   _____)

12

13

14  MOTION TO COMPEL

15  LOS ANGELES, CALIFORNIA

16  NOVEMBER 5, 2007

17

18

19

20  COURT DEPUTY/RECORDER:          YSELA BENAVIDES

21  TRANSCRIBED BY:                 HUNTINGTON COURT REPORTERS
                                  & TRANSCRIPTION INC.
22                                 1450 W. COLORADO BOULEVARD
                                SUITE 100
23                                 PASADENA, CALIFORNIA 91105
                                (626) 792-7250

24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

      HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
      Court Reporting (626)792-6777 Transcription (626)792-7250

                                                    2

t

1  APPEARANCES:

2  ON BEHALF OF THE PLAINTIFFS:

3         LAW OFFICE OF IRELL & MANELLA
       BY:  STEVEN A MARENBERG, ATTORNEY AT LAW
4              BENJAMIN GLATSTEIN, ATTORNEY AT LAW

EXHIBIT ___D___ PAGE ___52___

```
                1800 AVENUE OF THE STARS, SUITE 900
    5           LOS ANGELES, CA 90067

    6
        ON BEHALF OF MYSPACE AND NEWS CORP.:
    7
                O'MELVENY & MYERS
    8           BY:  DIANA TORRES, ATTORNEY AT LAW
                     MARCUS QUINTANILLA, ATTORNEY AT LAW
    9                SHANNON KEAST, ATTORNEY AT LAW
                400 S. HOPE STREET, 15TH FLOOR
   10           LOS ANGELES, CA 90071

   11
        ON BEHALF OF CRACKLE INC., FORMERLY KNOWN AS GROUPER,
   12   INC., AND SONY PICTURES ENTERTAINMENT, INC.:

   13           GREENBERG & TRAURIG
                BY:  JEFF E. SCOTT, ATTORNEY AT LAW
   14                RICHARD K. WELSH, ATTORNEY AT LAW
                2450 COLORADO AVENUE, SUITE 400E
   15           SANTA MONICA, CA 90404

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25
```

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626)792-6777 Transcription (626)792-7250

3

t

```
    1    LOS ANGELES, CALIFORNIA, MONDAY, NOVEMBER 5, 2007

    2

    3           THE CLERK:  ALL RISE AND COME TO ORDER.  THIS

    4   UNITED STATES DISTRICT COURT IS NOW IN SESSION.  THE

    5   HONORABLE ANDREW J. WISTRICH PRESIDING.

    6           PLEASE BE SEATED.
```

EXHIBIT __D__ PAGE __53__

```
 7              CALLING CV 06-7361-AHM(AJWX), UMG RECORDINGS,

 8    INCORPORATED, ET AL. VERSUS MYSPACE, INCORPORATED, ET AL.

 9              CV 06-6561-AHM(AJWX), UMG VERSUS GROUPER.

10              COUNSEL, PLEASE MAKE YOUR APPEARANCES FOR THE

11    RECORD.

12              MR. MARENBERG:  GOOD AFTERNOON, YOUR HONOR.

13              STEVE MARENBERG FROM IRELL & MANELLA FOR THE

14    PLAINTIFFS.  WITH ME IS MY COLLEAGUE, BENJAMIN GLATSTEIN.

15              MS. TORRES:  GOOD AFTERNOON, YOUR HONOR.

16              DIANA TORRES, O'MELVENY & MYERS FOR MYSPACE,

17    INC. AND NEWS CORPORATION.

18              AND WITH ME ARE MARCUS QUINTANILLA AND SHANNON

19    KEAST.

20              MR. SCOTT:  GOOD AFTERNOON, YOUR HONOR.

21              JEFF SCOTT AND RICHARD WELSH ON BEHALF OF

22    GROUPER, NOW KNOWN AS CRACKLE, AND SONY PICTURES

23    ENTERTAINMENT.

24              THE COURT:  ALL RIGHT.  HOW SHOULD WE PROCEED?

25    WHAT DO YOU WANT TO START WITH?
```

4

t

```
 1              MR. MARENBERG:  I SUGGEST WE FIRST PROCEED BY

 2    INDICATING TO YOU WHERE WE ARE ON THE MYSPACE -- EXCUSE

 3    ME -- ON THE UMG VERSUS GROUPER/CRACKLE ACTION, AND WHERE

 4    WE STAND ON -- BOTH, WHAT WE'VE BEEN ABLE TO RESOLVE, AND

 5    WHAT WE --

 6              THE COURT:  OKAY.

 7              MR. MARENBERG:  -- ARE SUBMITTING TO YOU.

 8              AND THEN WE CAN MOVE ON TO MYSPACE.

 9              THE COURT:  OKAY.
```

EXHIBIT ___D___ PAGE ___54___

13          MR. MARENBERG:  FIRST OF ALL, WE'RE NOT

14    TALKING --

15          THE COURT:  I -- I JUST WANTED TO KNOW.

16          MR. MARENBERG:  RIGHT.  TWO SEPARATE ISSUES,

17    THOUGH.

18          THE COURT:  SO YOU HAVE IDENTIFIED SOME, BUT YOU

19    HAVEN'T PRODUCED EVEN AS TO THOSE?  OKAY.

20          MR. MARENBERG:  WELL, LET ME -- YOU NEED TO

21    BREAK IT UP.

22          WE HAVE PRODUCED -- THERE ARE 25 WORKS

23    IDENTIFIED IN THE COMPLAINT, WHICH WE'VE IDENTIFIED AS THE

24    BASIS FOR GOING FORWARD WITH THIS CASE.

25          WE HAVE OFFERED -- IN FACT, I THINK WE'VE

t

1    PRODUCED, THE "CHAIN OF TITLE DOCUMENTS" AS TO THOSE.

2    WE'RE -- THE BASIC CHAIN OF TITLE DOCUMENT AS TO THOSE IS

3    THE RECORDING AGREEMENTS, OR THE PUBLISHING AGREEMENTS.

4    AND THEY'VE GOT THEM.

5          ALL RIGHT.  THEN, THEIR --

6          THE COURT:  IS THAT COMPLETE, BY THE WAY?

7          MR. MARENBERG:  I THINK SO.

8          THE' COURT:  THE ONLY CHAIN OF TITLE DOCUMENTS AS

9    TO THOSE 25 WORKS --

10          MR. MARENBERG:  WELL, YOU KNOW, THE OTHER CHAIN

11    OF TITLE DOCUMENTS, I SUPPOSE, COULD BE, TO THE EXTENT

12    THAT THESE RECORDING AGREEMENTS WERE ASSIGNED -- SIGNED BY

13    A PREDECESSOR OF UMG.  IN OTHER WORDS, LET'S SAY POLYGRAM

14    RECORDS, WHICH WAS ACQUIRED BY SEAGRAM, WHICH THEN

15 COMBINED WITH UMG IN 2000.

16      THEN THERE'S PROBABLY AN ASSIGNMENT, OR SOME

17 SORT OF ACQUISITION DOCUMENT.

18      BUT THE MOST IMPORTANT DOCUMENT IN THE CHAIN OF

19 TITLE IS THE RECORDING AGREEMENT, WHICH GIVES US RIGHTS TO

20 THE COPYRIGHT.

21      NOW, THEN THERE WAS A -- WE TOOK A PERIOD OF

22 TIME WHERE WE ESSENTIALLY HAD HIRED PEOPLE -- NOT HIRED

23 PEOPLE -- WE ASKED PEOPLE TO SEARCH THE GROUPER SITE, OR

24 SEARCH THE MYSPACE SITE FOR THIS LIST OF ARTISTS.  IN

25 OTHER WORDS, TYPE IN U2, TYPE IN BLACK EYED PEAS, TYPE IN

t

1 STING, AND SEE WHAT VIDEOS YOU GET, AND COPY THE VIDEOS.

2      AND THAT'S WHERE WE GET THE 900, OR THE 9,000.

3 AND THAT WAS FOR A LIMITED PERIOD OF TIME.

4      BUT WE DON'T HAVE THE ABILITY OURSELVES, EVER,

5 TO FIGURE OUT HOW MANY THERE ARE.

6      THE COURT:  YEAH.  BUT YOU KNOW 9,000 --

7      MR. MARENBERG:  AND -- AND THAT'S WHY I'VE

8 SAID --

9      THE COURT:  -- OR IS THAT FOR --

10      MR. MARENBERG:  -- WE'VE AGREED --

11      THE COURT:  -- FOR EXAMPLE?

12      MR. MARENBERG:  AND THAT'S WHAT I'VE SAID WE ARE

13 AGREEING TO GIVE THEM TITLE OF WORK, ARTIST, THE URL,

14 BECAUSE WE -- WHERE WE HAVE THAT AVAILABLE TO US.  THE URL

15 OF THE -- OF THE -- YOU KNOW, ON THE SITE OF THE -- AT THE

16 VIDEO -- THAT PLAYED THE VIDEO.  AND WE'LL MATCH IT WITH

17 THE COPYRIGHT REGISTRATIONS.  WE NEED SOME TIME TO DO IT.
                        Page 100

