Robert G. Badal (Bar No. 81313)
Robert.Badal@WilmerHale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: +1 (213) 443-5300
Facsimile: +1 (213) 443-5400

Annette L. Hurst (Bar No. 148738)
ahurst@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: +1 (415) 773-5700
Facsimile: +1 (415) 773-5759

Attorneys for Defendants
SHELTER CAPITAL PARTNERS, LLC and
SHELTER VENTURE FUND, L.P.

[OTHER COUNSEL LISTED ON SIGNATURE PAGES]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC. et al., <br><br> Defendants. | Case No. CV07-5744 AHM (AJWx) <br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTION BY INVESTOR DEFENDANTS TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> [Fed. R. Civ. P. 12(b)(6)] <br><br> Date: November 10, 2008 <br> Time: 10:00 a.m. <br> Trial Date: April 21, 2009 <br><br> The Honorable A. Howard Matz |

Dockets.Justia.com

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION…………………………………………………………………1

ARGUMENT ................................................................................................ 2

I.    A CONCLUSORY ALLEGATION OF DIRECT INFRINGEMENT BY
      VEOH DOES NOT SUSTAIN THE SEPARATE CLAIMS AGAINST
      THE INVESTOR DEFENDANTS .................................................... 4

II.   THE CLAIMS OF SECONDARY LIABILITY AGAINST THE
      INVESTOR DEFENDANTS ARE DEFICIENT ............................................ 6

      A.    No Court Has Authorized The Imposition Of Derivative Liability
            For Copyright Infringement Based Upon Investment Or The
            Collective Power To Manage Inherent In A Board Of Directors............ 6

            1.    Count II Does Not State A Claim For Contributory
                  Copyright Infringement Against Any Of The Investor
                  Defendants ...................................................................... 6

            2.    Count III Does Not State A Claim For Vicarious Copyright
                  Infringement Against Any Of The Investor Defendants............. 10

                  a.    The FAC Fails To Allege Facts Sufficient To
                        Establish That Any Investor Defendant Had The
                        Right And Ability To Supervise The Purportedly
                        Infringing Conduct ........................................... 11

                  b.    The FAC Fails To Allege Facts Sufficient To
                        Establish That Any Investor Defendant Has A Direct
                        Financial Interest In The Purported Infringement ........... 13

            3.    Count IV Does Not State A Claim For Inducement To
                  Infringe Copyright Against Any Of The Investor
                  Defendants ...................................................................... 14

      B.    Plaintiffs' Public Policy Argument Strays Far From The
            Copyright Act And Offers No Reasonable Basis For
            Distinguishing Between Lawful And Unlawful Behavior ................... 17

-i-

III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS
WITHOUT LEAVE TO AMEND .................................................................. 17

    A. Plaintiffs Cannot Allege Additional Facts That Could Cure The
FAC's Deficiencies ............................................................................. 18

    B. The FAC Fails As A Matter Of Law ...................................................... 19

    C. Plaintiffs' Undue Delay, Prejudice to Investor Defendants, and
Acts of Bad Faith Counsel Strongly Against Permitting
Amendment ......................................................................................... 19

CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Albrecht v. Lund*,
   845 F.2d 193 (9th Cir. 1988) .......................................................................... 19

*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) .......................................................................... 18

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................. passim

*Cartoon Network L.P. v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ......................................................................... 4, 5

*Religious Technology Center v. Netcom On-Line Comms. Servs.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................ 5

*CoStar Group, Inc. v. Loopnet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ............................................................................ 5

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ............................................................... 7, 8, 14

*Foman v. Davis*,
   371 U.S. 178, 83 S.Ct. 227 (1962) ................................................................ 18

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ....................................................................... 13, 14

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*
   76 F.3d 259 (9th Cir. 1996) ....................................................................... 13, 14

*Hartman v. Hallmark Cards, Inc.*,
   639 F. Supp. 816 (W.D. Mo. 1986) ................................................................. 3

*In re Aimster Copyright Litig.*,
   334 F.3d 643 (7th Cir. 2003) ............................................................................ 9

*Interscope Records v. Rodriguez*,
   2007 Copr. L. Dec. ¶29 (S.D. Cal. Aug. 17, 2007) ........................................ 4

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ....................................................................... 3

*L.A. Gear, Inc. v. E.S. Originals, Inc.*,
   859 F. Supp. 1294 (C.D. Cal. 1994) .............................................................. 15

*Maxwell Café, Inc. v. Dept. of Alcoholic Beverage Control*,
   142 Cal. App. 2d 73, 298 P.2d 64 (1956) ...................................................... 12

*MGM, Inc. v. Grokster Ltd.*,
    545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ..................... 13, 14, 15, 16, 17

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................................................... 5

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ........................................................................... 5

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ................................................................. passim

*Water Technologies Corp. v. Calco, Ltd.*
    850 F.2d 660 (Fed. Cir. 1988) ......................................................................... 16

### STATUTES

35 U.S.C. §271(b) ............................................................................................... 15

Cal. Corp. Code §300 ......................................................................................... 12

Fed. R. Civ. P. 8 ................................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

As set forth in the Investors Defendants Motion to Dismiss First Amended Complaint ("Motion" or "Mot."), Plaintiffs' First Amended Complaint ("FAC") must be dismissed because it fails to allege facts sufficient to establish liability for copyright infringement on the part of any of the Investor Defendants. Specifically, the Motion established that: (1) the FAC fails to assert a claim for contributory infringement, as it does not (and cannot) allege any facts to support the conclusion that any Investor Defendant actually knew of and materially contributed to any act of copyright infringement; (2) the FAC fails to assert a claim for vicarious liability, because it does not (and cannot) allege that any Investor Defendant assumed operational control of Veoh or has profited directly from any alleged copyright infringement; and (3) the FAC fails to assert a claim for inducement to infringe, because it does not (and cannot) allege that the Investor Defendants either distributed the accused device or encouraged any infringement.

Instead, Plaintiffs' claims against the Investor Defendants are based upon nothing more than the allegations that the Investor Defendants invested in Veoh, obtained the right to designate members of Veoh's Board of Directors, and that Veoh's Board then acted in certain ways. Plaintiffs' Opposition elides the distinction amongst the shareholders and the board members, mischaracterizing the clear legal differences in status amongst these corporate constituents as an argument of "passive investment." Plaintiffs' argument fails in light of basic principles of corporate law holding that absent a reason (not alleged here) to disregard corporate form, shareholders are separate and distinct legal entities who generally bear no liability for the acts of a corporation. Moreover, Plaintiffs' Opposition ignores and distorts the relevant case law. Plaintiffs ask this Court to adopt a vastly expanded and unsustainable interpretation of the Copyright Act in order to save their ultimately unsupportable claims. None of the cases upon which Plaintiffs rely go so far in

creating copyright liability as would be required here in order to sustain any of the claims of the FAC against any of the Investor Defendants.

Plaintiffs fail meaningfully to grapple with the main contention of the Investor Defendants' Motion: that unless a business is engaged exclusively in unlawful activity (admittedly not the case here), its various corporate constituents cannot generally be held liable for investing in it, or for exercising their statutory powers as directors to manage such a business (or even for being employed there). Ignoring the factual distinctions between these allegations and *Bertelsmann*, Plaintiffs' only rejoinder to this significant and dispositive point is that it supposedly "puts form over substance." Opp. at 8:28. To the contrary, this is an extremely substantive and important issue, fatal to Plaintiffs' claims. The failure to respond to it in any meaningful way lies bare the fundamental problem with Plaintiffs' position: Plaintiffs' claims must fail because the FAC provides no distinction between lawful and unlawful behavior sufficient to guide reasonable people to conform their behavior to the law. Such vague allegations are fundamentally incompatible with the notions of fair play that govern our legal system and fail to satisfy even the most basic notice pleading requirements. Instead, under *Twombly*, Rule 8 requires Plaintiffs to set forth sufficient facts to explain how each Investor Defendant has purportedly caused harm to them under cognizable interpretations of the law. The FAC does not meet this requirement.

Finally, where as here, Plaintiffs (1) cannot alleged additional facts to cure the factual and legal deficiencies of the FAC, and (2) have engaged in undue delay and bad faith to the prejudice of the Investor Defendants, the Motion to Dismiss should be granted without leave to amend.

## ARGUMENT

In their Motion, the Investor Defendants set forth the numerous ways in which the FAC fails to state a claim as to each of the Investor Defendants. In particular, Plaintiffs' contributory infringement claim fails as they have not alleged that any of

the Investor Defendants knew of and materially contributed to any act of copyright infringement. Mot. at 8. Plaintiffs' vicarious infringement claim fails because they have not alleged that any individual Investor Defendant—or even the Investor Defendants collectively—in fact assumed operation control of Veoh, or has profited directly from, Veoh's alleged copyright infringement. Mot. at 10. Finally, Plaintiff's claim for inducement liability fails as they alleged neither that any Investor Defendant distributed a device nor that any Investor Defendant exhorted anyone to infringe using such a device. Mot. at 11.

Throughout their Opposition, Plaintiffs seek to excuse the tenuous legal nature of their claims and to deflect these dispositive arguments with the repeated incantation that their FAC nonetheless satisfies the notice pleading requirement and any further challenge must await summary judgment or trial. Opp. at 13-14. This is a misguided application of the standards required under the Federal Rules of Civil Procedure in light of *Twombly*. Even before *Twombly*, "[i]n applying Rule 8 to copyright infringement actions, courts have required that particular infringing acts be alleged with some specificity." *Hartman v. Hallmark Cards, Inc.*, 639 F. Supp. 816, 820 (W.D. Mo. 1986), *aff'd*, 833 F.2d 117 (8th Cir. 1987); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (In order to adequately state a claim for copyright infringement under Rule 8, a plaintiff must allege "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyright in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright").

After *Twombly*, it is even more important that Plaintiffs allege facts that actually show that they are entitled to relief from each of these Defendants. The line must be crossed both between the conclusory and the factual, and between the facially neutral and factually suggestive. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 n.5, 167 L. Ed. 2d 929 (2007). While Rule 8 provides for notice pleading, the notice must be sufficient factually to suggest unlawful conduct by each

-3-

defendant sued. *See Interscope Records v. Rodriguez*, 2007 Copr. L. Dec. ¶29,465 (S.D. Cal. Aug. 17, 2007) (Refusing to enter default, noting that "[t]he complaint is simply a boilerplate listing of the elements of copyright infringement without any facts pertaining specifically to the instant defendant"). Plaintiffs fail to overcome this hurdle.[1]

## I. A CONCLUSORY ALLEGATION OF DIRECT INFRINGEMENT BY VEOH DOES NOT SUSTAIN THE SEPARATE CLAIMS AGAINST THE INVESTOR DEFENDANTS .

In an ill-fated attempt to buttress their unsupported claims against the Investor Defendants, Plaintiffs attempt to refocus their direct infringement claims on the actions of Veoh—rather than the users. But their argument finds no support in either the factual allegations of the FAC or the law. Opp. at 2, 6, 7, 13.

Quite to the contrary, Plaintiffs' FAC focuses its allegations on the *users* who direct the allegedly unauthorized copies of Plaintiffs' works. For example, the FAC concedes that: "*members of the public* [] make, upload, download, 'share,' sell, rent and distribute" (FAC ¶ 19), "*Veoh Members* [] download permanent copies of videos" (FAC ¶ 20), "the *member* can then use the Veoh client software to upload the video to Veoh.com." Id. (emphasis added). The entire gravamen to the FAC is that Veoh has supplied software and services that permit end users to upload, view, download and share allegedly infringing videos. *See id*. ¶23.

Nor does the law support Plaintiffs' emphasis on Veoh's supposed direct infringement. Copies made by machines supplied by one party at the direction of third-party users—as Plaintiffs allege here—as a matter of law cannot satisfy the test for direct infringement. *See Cartoon Network L.P. v. CSC Holdings, Inc.*, 536 F.3d

---

[1] Plaintiffs mischaracterize the purpose of Defendants' evidence of prior opportunity to obtain discovery. It is not offered to alter the standard applicable to the Motion, but instead to explain why the FAC should be dismissed without leave to amend. *See* Part III, *infra*.

REPLY BY INVESTOR DEFENDANTS IN
SUPPORT OF MOTION TO DISMISS

CV07-5744 AHM (AJWX)

121, 131 (2d Cir. 2008) (copies made by Cablevision's DVR service at the behest of consumers and without human intervention by Cablevision do not support direct liability on its part); *CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (same); *Religious Technology Center v. Netcom On-Line Comms. Servs.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (same); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007) (infringement of distribution right requires "actual dissemination" of a copy, rejecting "making available" theory of infringement).

Instead, as the Second and Fourth Circuits, and district courts within this Circuit, have held, in order to engage in direct infringement, a defendant must engage in *volitional* conduct—that is, a human being must make a decision to do something that results in an infringing copy. *See Cartoon Network*, at 131. The locus of a claim of direct infringement must be centered upon human beings making the actual decisions to reproduce copyrighted works. *Id.* As the FAC fails to allege that some human being at Veoh, as opposed to the users of its internet-based service and software devices, engages in any *volitional* conduct directly resulting in any purportedly infringing copy, Plaintiffs' theory of Veoh's direct infringement must be rejected.

Moreover, even if the FAC could be read to allege that Veoh engaged in some kind of volitional conduct in order to itself make an infringing copy (and it cannot), there certainly is no allegation (nor could there be) that any one of the Board Members, nor any one of the Investor Defendant companies, let alone some majority or all of them, had anything to do with any such volitional conduct resulting in copies that allegedly infringed Plaintiffs' copyrights. Additionally, notwithstanding the fact that Plaintiffs had extensive opportunities to obtain discovery from the Investor Defendants prior to amending the complaint, there is no allegation of any kind or citation to any communication or relation between any Investor Defendant and a user of the service who supposedly infringed. This is not surprising, as there is no

evidence of any such communication or relationship.

Absent such allegations, the proper analysis of the FAC was the one posited by the Investor Defendants in their Motion—that the locus of control resides in the users, and that the Investors Defendants' conduct should be evaluated with reference to alleged direct infringement by the users and, at best, asserted secondary infringement by Veoh. When viewed from this proper legal perspective, as set out in the Motion and below, it is apparent not only that Plaintiffs have not, but that they cannot, state a viable legal claim against the Investor Defendants for secondary liability under the Copyright Act.

## II.     THE CLAIMS OF SECONDARY LIABILITY AGAINST THE INVESTOR DEFENDANTS ARE DEFICIENT.

As set forth above, the FAC does not plead facts sufficient to establish Veoh is a direct infringer under the volition test. Nonetheless, regardless of whether or not Veoh or the users are considered the alleged direct infringer for purposes of this Motion, the FAC fails to state claims against the Investor Defendants.

### A.     No Court Has Authorized The Imposition Of Derivative Liability For Copyright Infringement Based Upon Investment Or The Collective Power To Manage Inherent In A Board Of Directors.

#### 1.     Count II Does Not State A Claim For Contributory Copyright Infringement Against Any Of The Investor Defendants.

In the Motion, the Investor Defendants established that contributory liability was not pled (and does not lie) against them for having invested in and designated members to sit on Veoh's Board of Directors, particularly where such Board members—not the Investor Defendants themselves—have the statutory power to manage Veoh's affairs. Plaintiffs make two rejoinders to the argument. First, they argue that Veoh is a direct infringer. Second, they argue that the holding in *Bertelsmann* should now be expanded to these circumstances. Both of these arguments fail.

Notably absent from the opposition is any attempt to argue the Investor

-6-

Defendants knowingly contributed to and assisted any act by any end user of Veoh's service. Instead, Plaintiffs' first argument relies entirely upon their (unsupported) allegation that Veoh is an alleged direct infringer. Even if the direct infringement claim against Veoh had any merit (and it does not), Plaintiffs fail to provide any factual support for the conclusion that any of the Investor Defendants knowingly contributed to or assisted any act of direct infringement by Veoh. Instead, without pointing to *any* facts in the FAC to support an argument that any of the Investor Defendants had actual knowledge of any alleged infringement of their copyrights, Plaintiffs argue that the Investor Defendants *must have known* of infringing activity. *See* Opp. at 5-6.

But, this is a service that is concededly capable of substantial noninfringing uses, requiring application of the actual knowledge standard, not the constructive knowledge standard. *See* Motion to Dismiss at 6. Such speculation by Plaintiffs thus falls far short of the *Twombly* pleading requirement, especially when viewed through the lens of the applicable substantive legal standard. To the contrary, for the reasons set forth in Part I, *supra*, Investor Defendants' motion to dismiss the contributory infringement claim should be granted, as the FAC does not demonstrate that Veoh is a direct infringer, or even if Veoh was a direct infringer (which it is not), that any of the Investor Defendants had the requisite actual knowledge to knowingly contribute to or assist in any act of infringement.

Thus, the Opposition's reliance on *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) and *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) is misplaced. Neither supports Plaintiffs' argument.

*Ellison* simply is not relevant to the issue presented to this Court.[2] There, the

---

[2] Plaintiffs (Opp. at 6 n.3) mischaracterize and improperly rely upon an argument asserted by Tornante's legal counsel in an appellate brief in the *Ellison v. Robertson* action. Plaintiffs quote language from the *Ellison* appellate brief that is wholly inapposite as it pertained to analysis of a claim of vicarious infringement, not (continued on next page)

-7-

court analyzed AOL's potential liability with respect to its users under the doctrine of contributory liability. The principal issue was AOL's failure to maintain a proper working address for its copyright notice and takedown policy. The court did not analyze whether AOL's shareholders, who had the right to appoint members to its board, or its board, which had the power to manage its operations, were somehow liable for this failure—a failure which almost exclusively contributed to the Court's holding that summary judgment should not have been granted. While *Ellison* may be relevant to a determination whether Veoh may be contributorily liable for the conduct of the users of its service, it has nothing to do with the contributory liability issues presented in this Motion.

Plaintiffs' reliance upon *Bertelsmann* is similarly misplaced. *Bertelsmann's* holding that secondary liability can, in certain limited circumstances not present here, be imposed upon investors has not and should not be extended to the situation at bar. In reaching its conclusion, the *Bertelsmann* court clearly relied upon the individual control of particular investors. There are no such allegations here. Instead, in an ill-fated effort to supply the knowledge and material assistance prongs of contributory liability, the FAC relies exclusively upon allegations of the collective power of Veoh's board—and not any actions of an individual board member or the Investor Defendant companies who appointed board members. That is the only facts alleged in the complaint showing control all relate to the corporate status of Veoh's Board, collectively acting to manage its affairs. Contrary to Plaintiffs' assertions, this is a critical—and dispositive—distinction.

Plaintiffs also ignore the key factual distinctions between the posture of *Bertelsmann* and this case. In *Bertelsmann*, the investors continued to operate the

_____

(cont'd….) contributory infringement, by a single entity defendant—not its investors, shareholders or board members. *See* Appellant's Reply Brief in *Ellison v. Robertson*, No. 02-55797, 2002 WL 32303139, at \*27 (Nov. 5, 2002). Plaintiffs' citation is therefore inapplicable to the argument regarding contributory infringement.

-8-

service in the face of a preliminary injunction obtained at the behest of the entire recording and music publishing industries. Hummer Winblad, one investor, installed one of its employees as the CEO of Napster, and continued to inject capital while he ran the company on a daily basis, continuing to offer the service *after the injunction was in effect*. Eventually, the company ceased operations and declared bankruptcy. Thus, in *Bertelsmann*, the court was called upon to place the accused investors' conduct on a spectrum of illegality, and found it wanting based upon these plainly unique factual circumstances.

The FAC simply does not (and cannot) demonstrate that the Investor Defendants' conduct falls anywhere near that of Napster or its investors. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 649-50 (7th Cir. 2003) ("What is true is that when a supplier is offering a product or service that has noninfringing as well as infringing uses, some estimate of the respective magnitudes of these uses is necessary for a finding of contributory infringement"). And particularly given the law's respect for the corporate form, imposing secondary liability upon investors based upon a theory of secondary liability for the acts taken by the company in which they have invested, requires a showing, at a minimum, of a high degree of illegality. Indeed, that showing of either exclusively unlawful behavior by the company, or a high degree of knowledge of and participation in the company's specific unlawful behavior by an individual—neither of which is present here—has been present in all of the cases cited by Plaintiffs.[3] Indeed, if plaintiffs' theory of liability were the law,

---

[3] In *Gershwin*, there was direct involvement by the defendant in each individual act of infringement, where CAMI organized the concert season for each artist, printed the playbill of each copyrighted song to be performed without a public performance license, and took 25% of the take knowing that licenses were required for such performances but refusing to obtain them itself. *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1161 (2d Cir. 1971). In *Musical Prods., Inc. v. Roma's Record Corp.*, 2007 WL 750319 (E.D.N.Y. Mar. 7, 2007), a default was entered where the defendant sold pirated and counterfeit CDs—clearly (continued on next page)

there would be no need for the courts in any of the cited cases to have discussed the facts in detail, the mere allegation of investment and presence on the board of directors would have been sufficient.

The facts here are quite distinct from *Bertelsmann*. The entire industry has not sued Veoh, as it did Napster. Plaintiffs here have not obtained a preliminary injunction, as the plaintiffs did in Napster. In *Bertelsmann*, there were allegations that individual investors directly controlled the daily operations of the enterprise after the preliminary injunction was entered. In other words, in *Bertelsmann* there was clear notice of unlawful behavior prior to the continued investment and operation of the business by the shareholders. There are no such allegations here (nor could there be). The facts and holding of the *Bertelsmann* decision thus are properly distinguished from the allegations here. The Court should decline Plaintiffs' invitation to extend *Bertelsmann* on the sparse, conclusory and uncertain facts pled in the FAC.

### 2. Count III Does Not State A Claim For Vicarious Copyright Infringement Against Any Of The Investor Defendants.

In the Motion, Investor Defendants established that Count III should also be dismissed as Plaintiffs failed to allege that any Investor Defendant individually assumed operational control of and stands to profit directly from copyright infringement. Plaintiffs agree that the test for vicarious infringement is the right and ability to supervise the infringing conduct coupled with direct financial benefit in the infringement. Unable to rebut Investor Defendants' arguments, Plaintiffs instead advocate for an application of a new test that is so expansive it would effectively

---

(cont'd….) unlawful behavior—and the individual owner of the business was alleged to have directly participated in the creation and sale of the counterfeit CDs. Thus, the cases cited by Plaintiffs directly support the contention of Investor Defendants that secondary liability is proper only when there is direct participation in clearly unlawful behavior.

vitiate any meaningful limit on the concept of vicarious liability in a corporate enterprise. The Court should not countenance this legally unsound approach.

### a. The FAC Fails To Allege Facts Sufficient To Establish That Any Investor Defendant Had The Right And Ability To Supervise The Purportedly Infringing Conduct.

Investor Defendants' Motion explained why the conduct alleged in the FAC simply does not—and cannot—satisfy the right and ability to supervise prong of the test. Mot. at 10, 11. In response, Plaintiffs assert that they have satisfied this test because they allege that Veoh's Board

> "maintained 'operational control over *all* of Veoh's operations,' including control over '*all critical decisions* regarding the content available on Veoh,' control of 'decisions over how to monetize Veoh's business, including its substantial use of infringing content,' and control over the decision whether to implement filtering technology." (citing FAC ¶32 with added emphasis)

These allegations do not support the right and ability to supervise prong for two reasons: first, the allegations of control are wholly conclusory, and second, to the extent they are not purely conclusory they are legally inadequate.

As a threshold matter, merely stating the word "control" over and over again using different words is not sufficient to establish that a party actually had control. That is simply parroting a legal conclusion. This is precisely the practice held unsound in *Twombly*: a plaintiff must allege facts, not just conclusions. Additionally, this argument fails as it completely ignores the distinction between Veoh and the allegedly infringing conduct of its users. *See* Part I, *supra*.

Moreover, this argument improperly conflates the three Investor Defendant companies with one another, with their board designees, and with Veoh as a corporate entity. In particular, despite having made no allegations of alter ego in the FAC, Plaintiffs nonetheless continue to treat the Investor Defendants – three separate companies that each individually invested in Veoh – as if those three companies

-11-

themselves are members of Veoh's Board of Directors. Veoh's position runs contrary to both law and logic. Fundamental principles of corporate law require that—absent a reason to disregard Veoh's corporate form (which Plaintiffs have not and cannot provide)—the Investor Defendants must be considered separate and distinct legal entities from Veoh and cannot be considered one with the company simply because they are shareholders. *See Maxwell Café, Inc. v. Dept. of Alcoholic Beverage Control*, 142 Cal. App. 2d 73, 78, 298 P.2d 64 (1956) (absent "exceptional circumstances" in which corporate form should be disregarded, "a corporation is a distinct legal entity separate from its stockholders"). Plaintiffs have simply equated ordinary corporate powers with a prong of vicarious liability in a fashion that would result in investors being held liable in every tort case. This is not the law.

Additionally, even if Plaintiffs could offer evidence that the Investor Defendant companies were acting as the Board of Directors of Veoh—which they were not—Plaintiffs' allegations would still fail, as they stand for nothing more than the unremarkable proposition that Veoh's Board managed a company whose technology could be used for both lawful and allegedly unlawful purposes. With certain exceptions not relevant here, California Corporations Code Section 300 vests the Board of Directors with the statutory power to make all decisions for the company: "the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board." Cal. Corp. Code §300. In other words, *of course the Board of Directors made important decisions for the company* about its business. That is exactly what the law envisions that it would do. To adopt Plaintiffs' argument would lead to the untenable conclusion that every board member and every shareholder with a right to designate or elect a board member would always be subject to vicarious liability under Plaintiffs' formulation. This simply is not the law. Nor should it be, as extending liability this far would eviscerate the corporate form in every case where any kind of tortious behavior is alleged.

-12-

**b. The FAC Fails To Allege Facts Sufficient To Establish That Any Investor Defendant Has A Direct Financial Interest In The Purported Infringement.**

As set forth in the Investor Defendants' Motion, Plaintiffs have failed to allege that Investor Defendants have any direct financial interest in the purported infringement. Mot. at 10. In response, Plaintiffs point to their allegations that the "value of [Investor Defendants] financial interests in Veoh increased" as a result of infringement, and that "the traffic increased the value of the Owner Defendants' stake in the company." Opp. at 11 (citing FAC ¶31) These hypothetical and contingent assertions are simply not enough to support a claim of vicarious liability. No revenues are alleged to have come to the Investor Defendants from the infringement (nor could there be such an allegation). No money is alleged to have been paid by Veoh to the Investor Defendants in the form of a dividend, distribution, or otherwise. No shares are alleged to have been sold by any of the Investor Defendants, nor any gain of any kind realized on their respective investments. Plaintiffs' blanket and wholly conclusory assertions of some hypothetical advantage plainly fail to meet the Supreme Court's requirement in *Grokster* requiring that the "defendants profit directly from the infringement." *MGM, Inc. v. Grokster Ltd.,* 545 U.S. 913, 931 n.9, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).

Plaintiffs' argument that this case is just like *Fonovisa* because Veoh uses infringement to draw customers in the same fashion as did the flea market in that case fails for at least three reasons. Opp. at 11 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996)). First, in *Fonovisa* money was actually changing hands as a result of the infringement. The flea market customers purchased the counterfeit tapes from the booth owners, and the booth owners in turn paid rental fees to the flea market operator. *Id.* at 261. Thus, the flea market operator was actually receiving money as a result of the sale of infringing goods. Additionally, the flea market operator benefited because the same customers purchasing the infringing

-13-

goods also paid for entrance, parking and food. Similar facts are not, and could not

be, alleged here. *Fonovisa* does not stand for the proposition that "draw" alone,

without any money changing hands, is sufficient to meet the second prong of

vicarious liability.[4]

Second, in *Fonovisa*, the flea market operator had control of the directly

infringing booth operators and could expel them from the market. Here, as discussed

in greater detail in Part I, *supra*, the FAC does not demonstrate that the Investor

Defendants have direct control over the alleged direct infringement. Indeed,

Plaintiffs allege no relationship of any kind between the Investor Defendants and

Veoh's end users who are alleged to make the infringing copies using Veoh's

software and service.

Third, and equally important, the Court should not interpret *Fonovisa* so

broadly as Plaintiffs suggest because doing so would conflict with the Supreme

Court's decision in *Grokster*. In *Grokster*, the Court signaled its intention to employ

a more rigorous standard for vicarious liability by adopting the Second Circuit's

formulation. 545 U.S. at 931 n.9. A theory of "draw" alone simply does not meet

this test, or any other test for direct financial benefit. Plaintiffs' theory is that the

Investor Defendants benefited by an increased value (not yet realized), because Veoh

benefited by an increased audience (apparently not yet monetized), because when the

users infringed they increased the overall "draw" for the site. To label this chain of

events "direct" or "financial" is an absurdity that deprives those terms of all meaning.

---

[4] Nor does *Ellison* stand for the proposition that draw alone, without any money changing hands, is sufficient to meet the direct financial benefit prong of vicarious liability. AOL customers concededly were paying for access to USENET services that included the allegedly infringing copies—thus, money was changing hands between the subscribers and the service. 357 F.3d at 1079.

### 3. Count IV Does Not State A Claim For Inducement To Infringe Copyright Against Any Of The Investor Defendants.

As set forth in Investor Defendants' Motion, the FAC fails to establish that any of the Investor Defendants has induced anyone to infringe Plaintiffs copyrights because none of them has either distributed a device or encouraged anyone else to infringe using it. Mot. at 11, 12. In response, Plaintiffs ignore the standard for copyright infringement set forth by the Supreme Court in *Grokster*, instead positing an entirely new theory of liability not premised upon distribution of a device (as required by *Grokster*), but instead premised upon supposedly exhorting someone else to distribute a device, who apparently, in turn encourages others to use it to infringe. Opp. at 13. Plaintiffs argue that patent law provides for their new theory by analogy, and that it applies when a defendant "actively and knowingly aids and abets another's direct infringement." *Id.*

The Court should decline Plaintiffs' invitation to adopt yet another new theory of tertiary liability, as unlike the Copyright Act, the Patent Act has an express provision making inducement a violation of law. 35 U.S.C. §271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer"). The requirements of patent inducement include the specific intent to cause infringement: "[K]nowledge that the direct infringer was performing the acts which are later alleged to constitute infringement is not enough; there must also be a specific intent to encourage infringement of the patent." *L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1300 (C.D. Cal. 1994). Thus, even assuming patent law applies by analogy here, in order to sustain a claim for copyright infringement under Plaintiffs' theory, Plaintiffs would have been required to allege in the FAC facts sufficient to show that each Investor Defendant took one or more actions, with the specific intent of inducing someone to infringe the Plaintiffs' copyrights, and that those actions caused the infringement. *See id.* at 1300.

Even applying Plaintiffs' (incorrect) test, the FAC does not allege facts

-15-

necessary to save its claim.  The only acts identified are, as outlined above, fully consistent with the statutory power vested in Veoh's Board to manage the company.  There is no allegation in the FAC that any Investor Defendant exhorted or encouraged any user to upload or download any video allegedly infringing any of Plaintiffs' copyrights, and in fact caused such person to do so.  There is no allegation that any Investor Defendant exhorted and in fact caused Veoh to transcode any videos allegedly infringing Plaintiffs' copyrights (even assuming that could be a direct infringement, *but see* Part I, *supra*) with the desire, knowledge and result that such conduct infringed.  While Plaintiffs assert in their Opposition (*see* Opp. at 13) that sufficient facts were pled to show that the Investor Defendants induced Veoh's users and Veoh to infringe their copyrights, they offer no cite to the FAC.  This is not surprising, as the FAC contains no such allegations.

Moreover, *Water Technologies*, the case relied upon in the Opposition (*see id.*) stands in stark contrast to this case.  In that case, the plaintiff demonstrated that the individual defendant induced the corporation to infringe where he knew of the patents, gave the company the infringing formulas identified in the patents, helped make the infringing product, prepared customer use instructions, and controlled the manufacture of the infringing product by designing it to his specification.  *Water Technologies Corp. v. Calco, Ltd.* 850 F.2d 660 (Fed. Cir. 1988).  Plaintiffs have alleged nothing of this sort here, nor can they.

Finally, the authorities cited in the Motion make clear that corporate participation alone is not sufficient to establish liability under the Patent Act (Mot. at 11, 12), nor should it be sufficient under the Copyright Act, even if the analogy applies.  This entire theory of liability is one step removed from the Copyright Act, and the Supreme Court struggled in *Grokster* to tie it to the "authorizing" language in the statute.  To take it a step further divorces it from the Copyright Act entirely.  There is no such thing as inducing a secondary infringer, and Plaintiffs have not alleged – and cannot allege -- that any Investor Defendant knowingly encouraged any

-16-

person to directly infringe any one of their copyrights.

**B.    Plaintiffs' Public Policy Argument Strays Far From The Copyright Act And Offers No Reasonable Basis For Distinguishing Between Lawful And Unlawful Behavior.**

Plaintiffs concede that Veoh's technology has substantial noninfringing uses, thereby refuting any claim that the technology itself is unlawful. The claim of direct infringement against Veoh is legally defective, and the FAC fails to take account of important limitations in the prospect of Veoh's secondary liability, including the doctrine of substantial noninfringing uses and the DMCA safe harbor provisions. Nonetheless, Plaintiffs posit that these shareholders' relationship to Veoh subjects them to indirect liability under the Copyright Act.[5] Plaintiffs pile uncertainty upon uncertainty, and the ultimate effect of multiplying these uncertainties is that Plaintiffs' theory of liability provides no meaningful basis for distinguishing between lawful and unlawful behavior when investing in companies who purvey dual use technologies. At some level, due process requires that the law inform the business community of their risks, and neither the FAC nor the Opposition explains how Plaintiffs' version of the law would do that. Based upon these facts, and particularly in light of the multiplying uncertainties, the FAC does not meet *Twombly's* plausibility requirement.

---

[5] Plaintiffs' public policy rejoinder relies almost entirely upon the notion that the moving defendants are not "passive investors." This is a red herring, as those words were never used by the Investor Defendants in either substance or effect when making the Motion. True, the Motion notes (and moving defendants continue to point out) that Plaintiffs have done nothing to explain how they are justified in imputing all of Veoh's Board's collective power to manage the affairs of the company to each individual Investor Defendant. Mot. at 12-15; *see supra* pp. 8-10. But this is hardly the same as characterizing the Investor Defendants as "passive investors." By using the straw man of "passive investment," Plaintiffs fail to grapple with the real legal problems presented by the FAC.

## III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS WITHOUT LEAVE TO AMEND.

A court may grant a motion to dismiss without leave to amend where the allegation of additional facts could not cure the deficiency. *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). *See also Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (granting leave to amend would be futile); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (same). In addition, a court may also deny leave to amend for undue delay, bad faith, failure to cure deficiencies where previous amendments were allowed, or prejudice to defendants. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); *Allen*, 911 F.2d at 373. As further discussed below, this Court should exercise its discretion to dismiss without leave to amend for reasons of futility of the amendment, the FAC's failure to allege claims as a matter of law, undue delay caused by Plaintiffs, prejudice to the Investor Defendants, and bad faith.

### A. Plaintiffs Cannot Allege Additional Facts That Could Cure The FAC's Deficiencies.

Plaintiffs cannot allege any additional facts that would cure the FAC's deficiencies. Their theory of copyright liability against the Investor Defendants is dependent on three fundamental allegations: (1) Investor Defendants invested in Veoh, (2) these defendants each obtained the right to designate an individual to sit on Veoh's board of directors, and (3) these Board members (not the Investor Defendant companies) collectively, not individually, exercised their statutorily vested powers to manage Veoh's affairs. In the Opposition, Plaintiffs merely contend the FAC contains sufficient allegations without pointing to any specific facts—other than those related to these three basic allegations—to support any claim against the Investor Defendants. The reason for this is simple, Plaintiffs have failed to allege any additional or specific facts in the FAC. Moreover, Plaintiffs failed to identify

-18-

what additional facts, if given the opportunity to amend, they could allege to cure the FAC's deficiencies. Thus, even if Plaintiffs had an opportunity to allege additional facts, they apparently cannot allege any facts that would change their asserted basis for copyright liability against the Investor Defendants. As such, an amendment would be futile to cure the FAC's deficiencies.

## B. The FAC Fails As A Matter Of Law.

Furthermore, as discussed in the preceding sections and moving papers, no court has authorized the imposition of derivative liability for copyright infringement based upon an investment or the inherent power to appoint a board member. Thus, the FAC fails as a matter of law to allege any infringement by the Investor Defendants. No amendment can turn this into a viable theory of liability. *See Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988) (upheld denial of leave to amend where alleged misstatements could not constitute fraudulent misrepresentations as a matter of law).

## C. Plaintiffs' Undue Delay, Prejudice to Investor Defendants, and Acts of Bad Faith Counsel Strongly Against Permitting Amendment.

Finally, under the standard in *Foman* and *Allen*, denial of leave to amend would be well within the Court's discretion because of the prejudice to the Investor Defendants and the likelihood of undue delay. This action was commenced more than one year ago. Complaint (Docket #1). The Court has scheduled trial for April 12, 2009 and the discovery cut-off date for January 12, 2009, which is approximately two months away from the hearing date of this Motion. Order Setting Case Schedule (Docket #41). Yet, Plaintiffs waited until the last possible opportunity to seek leave to add the Investor Defendants to this action, filing its motion on June 16, 2008— more than three months after the Court had already set the trial date and discovery deadlines. Motion (Docket # 54). In addition, the FAC was not served upon the Investor Defendants until the last week of August 2008. Plaintiffs' Proofs of Service of Summons and Complaint (Docket # 127-129). Further, as discussed in the moving

-19-

papers (Mot. at 3-4), Plaintiffs delayed the filing and service of the FAC despite having conducted ample discovery as to the Investor Defendants prior to adding Investor Defendants to this litigation. Thus, Plaintiffs have caused significant and undue delay to involve Investor Defendants in this action.

Moreover, significant discovery has already taken place without the Investor Defendants. For example, Plaintiffs have taken at least one deposition,[6] and produced more than 1.4 million pages of documents.[7] Plaintiffs have refused to provide the Investor Defendants with copies of discovery and documents previously produced by them in this action, including documents produced as recently as September 30, 2008 when the Investor Defendants should have been served because they had already made an appearance. Plaintiffs have refused to include the Investor Defendants in ongoing discovery matters initiated by them (such as deposition scheduling), notwithstanding their insistence that discovery, and, in particular, depositions, should proceed despite the pendency of the motion to dismiss. Declaration of Robert Badal in Support of Motion to Dismiss (filed herewith), ¶¶ 2-6 & Exs. A-C.

Thus, if leave to amend is granted permitting Plaintiffs to file yet another amended complaint, and the Investor Defendants are not ultimately dismissed from this action, significant new discovery will be required. In light of Plaintiffs' delay

---

[6] The deposition of Joseph Papa, Veoh's Vice President, Engineering, and a Rule 30(b)(6) deposition, was taken by Plaintiffs on July 10, 2008. Declaration of Brian Ledahl in Support of UMG's Ex Parte Application for Order Requiring Veoh to Retain Evidence (Docket #196), ¶ 5 & Ex. E (filed under seal on or about October 27, 2008).

[7] Declaration of Rebecca Lawlor Calkins in Support of Veoh's Ex Parte Application for an Order Compelling Plaintiffs' Compliance with Prior Court Order to Provide Supplemental Responses and Production of Documents ("Calkins Declaration") (Docket #189-2), ¶¶ 2 (UMG has produced 1.4 million pages), 3 (UMG produced an additional 1008 pages on September 30, 2008) (Docket # 189-2).

and the fast approaching discovery cut-off date, leave to amend will cause extreme and undue burden on the Investor Defendants as Investor Defendants will have little time to conduct discovery and prepare for trial.  As result of Plaintiffs' undue delay in seeking to amend and serving the FAC, and subsequent acts of bad faith in refusing the Investor Defendants access to prior discovery materials and a reasonable opportunity to participate in ongoing discovery matters, Investor Defendants have already suffered and will continue to suffer further prejudice if leave to amend is permitted.

## CONCLUSION

The Motion to Dismiss should be granted and the FAC dismissed without leave to amend as to the Investor Defendants.

November 3, 2008                    Respectfully submitted,

                                   WILMER CUTLER HALE PICKERING &
                                   DORR LLP

                                   ORRICK HERRINGTON & SUTCLIFFE LLP


                                   By */s/ Annette L. Hurst*
                                         ANNETTE L. HURST

                                   Attorneys for Defendants
                                   SHELTER CAPITAL PARTNERS, LLC and
                                   SHELTER VENTURE FUND, L.P.

November 3, 2008                    Respectfully submitted,

                                   KULIK, GOTTESMAN, MOUTON & SIEGEL,
                                   LLP


                                   By */s/ Alisa S. Edelson*
                                         GLEN L. KULIK
                                         ALISA S. EDELSON

                                   Attorneys for Defendant

-21-

THE TORNANTE COMPANY LLC

November 3, 2008                    Respectfully submitted,

                                   WILMER CUTLER HALE PICKERING AND
                                   DORR LLP


                                   By /s/ Maria Vento
                                              MARIA VENTO

                                   Attorneys for Defendants
                                   SPARK CAPITAL PARTNERS, LLC AND
                                   SPARK CAPITAL, L.P.