**Re: Docket No. 194**

1   IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
2   Elliot Brown (150802) (ebrown@irell.com)
Brian D. Ledahl (186579) (bledahl@irell.com)
3   Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
4   Los Angeles, California 90067-4276
Telephone: (310) 277-1010
5   Facsimile: (310) 203-7199

6   Attorneys for Plaintiffs

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11  UMG RECORDINGS, INC., *et al.*,        ) Case No. CV-07-05744 AHM (AJWx)
                                           )
12           Plaintiffs,                   ) **UMG'S OPPOSITION TO VEOH'S**
                                           ) **MOTION TO COMPEL**
13       vs.                               ) **IDENTIFICATION AND CHAIN OF**
                                           ) **TITLE DISCOVERY**
14  VEOH NETWORKS, INC., *et al.*,         )
                                           ) **Concurrently filed herewith:**
15           Defendants.                   )   **(1) Declaration of Brian Ledahl**
                                           )       **(UNDER SEAL)**
16                                         )
                                           ) Magistrate: Hon. Andrew J. Wistrich
17                                         )
                                           ) Date:    November 13, 2008
18                                         ) Time:    10:00 AM
                                           ) Ctrm:    690
19                                         )
                                           ) Discovery Cutoff: January 12, 2009
20                                         ) Pretrial Conference: April 6, 2009
21  _____   ) Trial Date: April 21, 2009

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1957822

Dockets.Justia.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

While continuing to withhold basic relevant discovery, Veoh brings this improper motion asking the Court to reverse its prior rulings and to order unnecessary and burdensome discovery from UMG – requests the Court has already rejected. Veoh offers no basis for its demands, which should be rejected out of hand. Veoh purports to seek two categories of relief: 1) immediate identification of all copyrighted works infringed by Veoh and 2) production of extensive and unnecessary "chain of title" discovery. Both of these requests should be denied.

Veoh's request for immediate identification of infringed works improperly asks the Court to compel immediate response to an interrogatory Veoh propounded only five days before filing its motion. The Federal Rules of Civil Procedure do not provide for such peremptory advisory rulings on newly-propounded discovery requests. Moreover, Veoh seeks to compel UMG to identify Veoh's acts of infringement while Veoh has actively obstructed UMG's ability to perform such a comprehensive identification. Veoh has not produced its videos as requested from the outset of discovery by UMG. Veoh delayed even producing data about its videos until ordered to do so by the Court on August 25. When Veoh did produce data, it was incomplete. When Veoh purported to provide UMG "access" to its videos instead of actually producing them, Veoh engaged in various obstructions including unilaterally disabling UMG's access. Finally, UMG has only recently learned that Veoh destroyed highly relevant evidence it received from the operation of filtering technology to identify copyrighted music. The evidence Veoh destroyed included data identifying the name of the song, the performing artist who recorded the song, the record album on which the song was released and the record label that released the album. All of this is significant information that would greatly facilitate UMG's identification of specific acts of infringement. Veoh's demand that UMG speed up its identification in the face of Veoh's ongoing and deliberate obstruction

1  is patently ridiculous.

2      Veoh's request for extensive "chain of title" discovery pursues demands that

3  the Court already rejected. In the *MySpace* action, the Court specifically rejected

4  requests even narrower than those pursued by Veoh here and limited the necessary

5  production of so-called "chain of title" discovery. Veoh nonetheless pursued its

6  requests in its First Motion to Compel. At the hearing on that motion on August 25,

7  2008, the Court denied Veoh's motion and made clear that it intended to follow the

8  same rulings issued on this matter (and others) in the *MySpace* and *Grouper* actions.

9  The Court made clear that Veoh must show some important difference between the

10  facts of this case and the prior actions to justify a different result. Similarly, at the

11  initial status conference in this case, Judge Matz indicated that the issue of "chain of

12  title" discovery in this case should be resolved consistent with this Court's rulings

13  on the issue in the prior cases. Declaration of Brian Ledahl ("Ledahl Decl."),

14  Exhibit ("Ex.") A (3/17/2008 Hearing Tr.) (8:22-25). Veoh acknowledges that the

15  Court denied requests for the same discovery Veoh seeks here in the prior cases and

16  offers no evidence or argument that there is something different about this case that

17  merits a different result. Veoh's efforts to overturn this Court's careful

18  consideration of the issues are unavailing and should be rejected.

19      Finally, Veoh's motion is also procedurally improper. Veoh pursues this

20  motion on an expedited basis and not by joint stipulation consistent with Local Rule

21  37. Veoh applied to the Court for such expedited consideration without providing

22  UMG any notice of its application or even that Veoh intended to file the motion.

23  UMG first learned of the fact that Veoh was considering such a motion when it

24  received the Court's Order granting Veoh's request for expedited consideration.

25  Veoh's deliberate attempt to circumvent the Local Rules through inappropriate *ex*

26  *parte* contact with the Court is another independent reason why Veoh's motion

27  should be denied.

28

## II.     **VEOH IMPROPERLY SOUGHT EXPEDITED CONSIDERATION**

Veoh brings this motion on an expedited schedule. Veoh sought expedited hearing of its motion by contacting the Court on an *ex parte* basis with no notice to UMG or opportunity for UMG to be heard. Local Rule 7-19.1 requires that a party making an application for *ex parte* relief must provide notice of the application <u>before</u> going to the Court. Veoh provided no such notice to UMG. Indeed, UMG received no notice that Veoh intended to file the instant motion, much less that Veoh sought expedited consideration, until UMG received the Court's Order granting Veoh's request for expedited hearing. Veoh's improper *ex parte* application to the Court for expedited hearing violated the Local Rules of this Court and should not be rewarded.

Veoh bases its claim for expedited hearing on the Court's comments at the discovery hearing of August 25, 2008. At that hearing, this Court denied Veoh's Motion to Compel Discovery Responses from UMG ("Veoh's Motion to Compel") (Dkt. No. 73). The Court noted that Veoh's motion contained "hundreds of requests," that it "exceed[ed] 300-pages," that Veoh's grouping of requests was "so broad that [it] really [wasn't] meaningful," and that many "of [Veoh's requests] probably have been largely satisfied at this point." Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (19:16-18, 22:12-13) (Dkt. No. 107). The Court therefore "den[ied] Veoh's] motion to compel" without prejudice to Veoh's right to "file [another] motion"—after "complet[ing its] review of [UMG's] production" and provided that Veoh organized its subsequent motion "in a sensible way." *Id.* at 21:23, 21:25-22:1, 23:16-17.[1]

At the same time, the Court ordered Veoh to produce its "spreadsheet" of media files and metadata, though expressing skepticism that "the spreadsheet"

---

[1] Contrary to the revisionist history in Veoh's moving papers, the Court did not deny Veoh's prior motion "[d]ue to the extensive discovery failures raised by Veoh within one motion." Veoh's Mot. at 4 n.6. Veoh's shortcomings, not UMG's, account for the denial.

would "meet all of UMG's reasonable needs." *Id.* at 58:8-10. The Court stated further that, "**if there are concerns on UMG's part**, hopefully you'll be able to work them out, but if you can't, let my clerk know, and that's probably something we could address on an expedited basis." *Id.* at 58:13-16 (emphasis added). The Court's comment was not an invitation to bring any and all issues to the Court for expedited hearing, and it certainly was not an invitation to Veoh to bring this motion on an expedited basis. To the contrary, the Court directed Veoh to file a new motion if it wished to renew any of the issues it had raised. *Id.* at 23:16. The Court made no suggestion or ruling that Veoh need not comply with the Local Rules in bringing a new motion.

Veoh's improper, *ex parte* contact with the Court to seek expedited hearing of its motion, contrary to the Court's prior direction, by itself warrants denial of Veoh's motion. As set forth in greater detail below, Veoh's motion also fails on the merits.

## III.  VEOH'S REQUEST FOR IMMEDIATE IDENTIFICATION OF INFRINGMENTS LACKS MERIT

Veoh asks the Court to order UMG to immediately identify the infringing videos from Veoh's internet site and Veoh TV service. While UMG remains committed to doing exactly that, Veoh's request that such identification be immediately completed (Veoh's proposed order goes to the remarkable length of seeking production within 3 days) is inappropriate for several reasons. First, and most troubling, Veoh has actively obstructed UMG's ability to identify infringements through its failure to actually produce its videos and through its improper destruction of important metadata relating to those videos. Moreover, Veoh glosses over the fact that it did not even request the specific identification it now seeks until October 24, 2008 – less than one week before filing the instant motion. Presumably, this is one of the reasons Veoh chose not to notify UMG of its intent to file this motion or of its intent to seek expedited hearing. Indeed, Veoh

pursues this motion with exactly the same flaw that the Court directed Veoh to correct on August 25 – namely, Veoh continues to lump more than 20 document requests and three interrogatories together, this time without even bothering to inform the Court of the substance of the actual discovery requests. A review of those request would reveal that none of them even requests what Veoh now asks the Court to compel.

### A.     <u>Veoh Has Obstructed UMG's Efforts To Identify Veoh's Infringements</u>

As the Court will recall, at the discovery hearing on August 25, one key area of discovery UMG was seeking was production of Veoh's videos and associated metadata. Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (7:13-8:20, 30:9-32:9, 36:24-39:18, 49:20-51:18, 53:10-56:2, 58:8-12). Among other things, UMG pointed out that this discovery was critically important to identify the scope of infringement by Veoh. UMG noted specifically at the hearing that one category of important metadata was data derived from filtering technology provided by Audible Magic. As UMG explained, this data would include such information as the title of songs, identity of artists, and the identification of record labels associated with copyrighted music matching the Audible Magic database. *Id.* at 49:20-51:18. Though the Court took UMG's motion under submission, it ordered Veoh to promptly produce a spreadsheet containing the metadata for its videos by September 5, 2008. Veoh represented that this spreadsheet would have all of the metadata for its videos and that UMG would be able to access all of the videos using this material. *Id.* at 43:14-15, 53:20-25, 54:24. Neither of these representations proved to be true.

### 1.     <u>Veoh failed to provide meaningful access to its videos</u>

On September 5, 2008, Veoh produced DVDs containing a spreadsheet of information about its videos. UMG promptly began reviewing this information and evaluating its access to Veoh's videos. Two critical problems with Veoh's production became clear: 1) Veoh's metadata was missing the Audible Magic

filtering data that UMG had specifically raised as important information during the August 25 hearing; and 2) UMG could not actually access the videos using the material provided by Veoh as Veoh had represented to the Court would be possible. On September 26, UMG wrote to Veoh to raise these deficiencies. *See* Ledahl Decl., Ex. C (9/26/2008 Letter from B. Ledahl to J. Golinveaux).

Veoh responded, in early October, explaining that it had given UMG erroneous instructions for accessing the videos and providing corrected instructions. *See* Ledahl Decl., Ex. D (10/3/2008 Letter from J. Golinveaux to B. Ledahl). Veoh further claimed that it had not produced its Audible Magic data because it purportedly stored that information in a different place and thus chose to continue to withhold it, notwithstanding its representations to the Court about the spreadsheet it would produce containing all metadata. *Id.*

After receiving this response, UMG promptly began checking its access to Veoh's videos. UMG also demanded immediate production of Veoh's Audible Magic data, addressed further in subsection 2, below. *See* Ledahl Decl., Ex. C (9/26/2008 Letter from B. Ledahl to J. Golinveaux). UMG's efforts to check the access to the videos included running an automated software process to initially check for the presence of each video on the Veoh spreadsheet. Ledahl Decl., ¶ 6. On October 9, 2008, Veoh contacted UMG to state that UMG's automated checking of Veoh videos (already long delayed by Veoh's late production) was accessing Veoh's system too much, and so Veoh unilaterally terminated UMG's access to all of the videos. *See* Ledahl Decl., Ex. G (10/9/2008 Email from J. Golinveaux to B. Ledahl). Veoh insisted that UMG should limit its access to 1 video request/second – which would have stretched the time necessary to verify the presence of more than a million videos to weeks. UMG eventually agreed – without prejudice to its position that Veoh should produce all of its videos to avoid these types of interferences with UMG's ability to review the evidence – to limit its access Veoh's servers between the hours of 6:00 PM and 6:00 AM at a rate of 10 video requests/second and during

regular business hours at a rate of 1 video request/second. *See* Ledahl Decl., Ex. J (10/24/2008 Letter from B. Ledahl to J. Golinveaux). Obviously, Veoh's unilaterally imposed limitations dramatically impede UMG's ability to review Veoh's videos.

## 2. Veoh failed to provide Audible Magic data

The problem of Veoh's failure to provide adequate access to its videos (when they should simply be produced) has been compounded by Veoh's failure to produce data relating to the Audible Magic filtering of videos. During the August 25 hearing on UMG's Motion to Compel, counsel for Veoh twice represented that Veoh would produce "all the metadata" relating to the videos uploaded by its users. Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (43:14-15) (the Veoh spreadsheet "would have <u>all the metadata</u>" for its videos); *id.* at 54:24 (Veoh would produce "<u>all the metadata</u> for each video"). After UMG discovered that the spreadsheet Veoh produced on September 5 (as Ordered by the Court) did not contain relevant Audible Magic metadata, UMG sought production of this material. After resisting production of this material (without any real basis), Veoh ultimately agreed to produce its Audible Magic metadata by October 14, 2008. Ledahl Decl., Ex. F (10/8/2008 Letter from J. Golinveaux to B. Glatstein). On October 14, Veoh produced a print-out purporting to contain its Audible Magic data. Ledahl Decl., ¶ 10. After reviewing this data (a process made more difficult by Veoh's inexplicable decision not to produce the data in its native electronic form), UMG discovered that Veoh had not produced such highly relevant information as the song title, artist name, album name, and record label for videos that were identified by the Audible Magic filtering technology. *Id.*, ¶ 11. Instead, Veoh had produced only a few select metadata fields: the internal Veoh identification number and what appears to be the name of the company that registered the sound recording with Audible Magic. Examples of Veoh's purported Audible Magic metadata production are

attached to the accompanying Declaration of Brian Ledahl as Exhibit H (VN284066-VN284069).

Upon discovering this missing information, UMG immediately contacted Veoh to obtain a full production of Audible Magic data. Specifically, UMG sought immediate production of the rest of the Audible Magic data, consistent with Veoh's testimony that it received "dozens" of fields of metadata from Audible Magic. Ledahl Decl., Ex. I (10/16/2008 Letter from B. Ledahl to J. Golinveaux).

Finally, on October 20 – eight weeks after Veoh represented in Court that it would produce "all the metadata" for its videos, six weeks after the deadline set by the Court for Veoh to produce its metadata, and approximately one week before Veoh sought to bring this motion for expedited consideration – Veoh disclosed for the first time that it had been deleting the vast majority of the Audible Magic metadata it received.[2]

The metadata that Veoh has destroyed is centrally relevant to the identification of copyrighted works infringed by Veoh. Veoh has destroyed data showing the title of songs contained in videos that it has removed from its website, the artist performing those songs, the record album on which the song was released, the record label that released the album, and other important data. All of this data is directly related to the identification of infringing videos. Knowing the identity of a song contained in a video and the record album on which that song appears facilitates the identification of particular videos as infringing and associating them with the relevant copyrights. Veoh's inexplicable decision to destroy this data (a decision Veoh made during the pendency of this lawsuit – it did not implement the Audible Magic technology until this lawsuit was already pending) greatly interferes with UMG's ability to efficiently identify infringing videos. Veoh's long delay in

---

[2] UMG is separately pursuing remedies both to prevent further destruction of such evidence and to obtain relief for Veoh's past destruction of this highly relevant evidence.

even admitting that it had destroyed this data further impeded UMG's ability to complete a review of Veoh's videos.

## C. Veoh's Demand For Immediate Identification Of Infringements Is Improper and Unwarranted

In denying Veoh's prior motion to compel, this Court stated that "[y]ou can file a separate motion on that. I want you to make this – this is an unmanageable package for me of this length of things grouped in these very broad, unhelpful categories. I'm not trying to be unkind, but this is really poor in terms of presenting it to the Court. So, please, if you're not satisfied with their interrogatory responses, file a motion, but do it in a sensible way next time. Okay?" Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (23:9-17). In its previous motion, denied by the Court, Veoh moved to compel, as a single group, responses to 22 document requests and 3 interrogatories purportedly relating to "chain of title." In the instant motion, Veoh moves to compel responses to the same 22 document requests and the same 3 interrogatories. Veoh completely ignored the Court's direction not to submit such a motion again.

Veoh's request for immediate identification is also improper because it seeks to compel a response to an interrogatory it just propounded. On October 24, 2008 (less than one week before it filed the instant motion), Veoh propounded an interrogatory as follows:

"For each work for which you claim copyright law remedies against Veoh in this case, please provide information sufficient to identify each alleged infringement of such work, including (a) the name or other unique identifier of the infringed work, (b) the copyright registration number of every copyright registration pertaining to the infringed work, (c) the Veoh Video ID number and Permalink for each video allegedly infringing the work for which you claim Veoh bears

1  liability, and (d) each page of the documents you have produced that

2  identify each such allegedly infringing video."

3  Ledahl Decl., Ex. K (Veoh's Second Set of Interrogatories).  As the Court may

4  recognize, this interrogatory seeks precisely the information that Veoh claims to be

5  seeking by this motion.  Moreover, UMG's response to this interrogatory is not due

6  for several weeks (pursuant to Federal Rule of Civil Procedure 33).  Thus, Veoh

7  comes to Court asking for an Order compelling UMG to respond to an interrogatory

8  before UMG's time to respond to the interrogatory has even run.  Federal Rule of

9  Civil Procedure 37 and the Local Rules of this Court do not provide for parties to

10  seek advisory opinions about discovery requests before responses are even due.

11  Veoh suggests that the Court should simply ignore this fact, but offers no

12  explanation of why.  If Veoh believed the information requested by its new

13  interrogatory were so urgently important, it could have propounded it earlier.  It did

14  not and UMG should not be penalized for Veoh's decisions about when to pursue

15  discovery.

16      Finally, Veoh asserts that comments by Judge Matz during a scheduling

17  conference in a different case somehow bear on this motion.  Veoh is wrong.  Veoh

18  selectively cites Judge Matz's comments during the *DivX* Scheduling Conference

19  that simply do not support the relief Veoh seeks here.  Initially, of course, those

20  comments were made in a different case involving different counsel and different

21  facts.  Veoh carefully excerpts comments from the transcript of the conference with

22  Judge Matz in order to create a misleading impression.  A review of the full

23  transcript of that conference reveals that Judge Matz directed counsel for UMG to

24  first identify infringements of which they were already aware, and that UMG would

25  further identify additional infringements after receiving production of all of the

26  defendants' videos and having a fair opportunity to evaluate that production.  Here,

27  UMG has, contrary to Veoh's false assertions, identified specific infringed works in

28  its complaint.  UMG remains committed to identifying additional infringements as it

continues to review the evidence, but, as described above (and contrary to what Judge Matz clearly contemplates in the transcript submitted by Veoh), Veoh has obstructed this effort by not making a full production of its videos. The *DivX* scheduling conference transcript makes clear that the time frames contemplated by Judge Matz in that case turned on the defendant's agreement to make a prompt production of its videos – something Veoh continues to delay and obstruct. Calkins Decl., Ex. A (8/25/2008 Hearing Tr.) at 13.

UMG respectfully submits that Veoh's request for immediate identification of infringed works (essentially a response to its new interrogatory) should be denied. UMG will respond to the interrogatory in due course, reserving the right to supplement its response after it ultimately obtains an appropriate production of videos and related information and has a fair opportunity to evaluate that material.

## IV. VEOH ASKS THIS COURT TO REVERSE ITS RULINGS ON "CHAIN-OF-TITLE" DISCOVERY WITHOUT ANY BASIS

Veoh's motion marks its third attempt to challenge this Court's sensible, compromise ruling on the scope of permissible chain-of-title discovery. *See* Veoh's Motion To Compel Discovery From UMG (Dkt. No. 81); Veoh's Summary Of Discovery Orders In *MySpace/Grouper* Actions Relevant To Current Discovery Disputes (Dkt. No. 110). Veoh has never demonstrated any legitimate basis for this Court to depart from its prior ruling on this issue in the *MySpace* action for purposes of discovery in this case. Indeed, during the initial status conference in this case (as opposed to another case involving different facts and different counsel), Judge Matz discussed this specific issue with the parties and made his view clear that "it would make sense to apply the same analysis and same conclusion [regarding the production of chain-of-title documents in the *MySpace* action] to this case, unless there are factors here that require something materially different, and I doubt that."

Ledahl Decl., Ex. A (3/17/2008 Hearing Tr.) (8:22-25). Veoh has not and cannot

identify any such factors and the Court should stand by its prior ruling.[3]

### A. Copyright Registrations Are Prima Facie Evidence Of Copyright Ownership

Veoh concedes that UMG's copyright registrations constitute prima facie

evidence of copyright ownership. Veoh must make this concession. *See Perfect 10,*

*Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1166-67 (C.D. Cal. 2002);

*Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1174 (N.D. Tex.

1997); *Manufacturers Techs., Inc. v. Cams, Inc.*, 706 F. Supp. 984, 991 (D. Conn.

1989). *See also* 17 U.S.C. § 410(c) ("the certificate of a registration made before or

within five years after first publication of the work *shall constitute prima facie*

*evidence of the validity of the copyright and of the facts stated in the certificate*")

(emphasis added). UMG has already produced the registration records for

thousands of copyrighted works. It has also produced exemplar artist and recording

agreements as further background of UMG's ownership of certain copyrights at

issue. This production is necessarily preliminary, as Veoh had produced none of its

videos or metadata when UMG began its production. It has not completed its

production as to either. Once Veoh comprehensively produces its videos and

metadata, allowing UMG to identify copyrighted works infringed by Veoh, UMG

will supplement its production to include registration records missing for identified

works and certain additional corporate relationship documents tying UMG's

registrations to the UMG plaintiffs here.[4] Despite this, Veoh moves for the

production of more chain-of-title discovery concerning UMG's copyrighted works.

---

[3] It is notable that Veoh asks the Court to follow prior rulings whenever they require UMG to provide any discovery (though Veoh has repeatedly distorted such prior rulings) but suggests that any ruling narrowing UMG's discovery obligations in any way should be ignored.

[4] Veoh's claim that UMG's production is deficient because certain registrations do not list a plaintiff to this action is a red herring. As previously stated, UMG produced these registrations before Veoh produced its "video

**B.**     <u>Veoh's Requests Are Broader Than Those Rejected In The</u>

                           <u>*MySpace* Action</u>

Veoh's motion avoids transcribing its overbroad, so-called "chain-of-title" Requests for Production, of which there are twenty-two.  According to its moving papers, Veoh seeks an order requiring production of documents responsive to each and every request in this group – a group this Court previously labeled "so broad that [it] really [wasn't] meaningful."  Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (19:16-18).  Veoh's omission is unhelpful and leaves unclear whether Veoh thinks the "authority" it cites compels the production of documents responsive to each request.[5]  Regardless, this Court—in the *MySpace* litigation—previously considered and rejected requests for much of the same information.

The Court rejected MySpace's broad requests, requiring only that UMG provide "documents relating to any disagreements or disputes regarding UMG's ownership of, control over, right to administer, or other interest in any of the Copyrighted Sound Recordings . . . [or] Copyrighted Musical Compositions . . . which rose to a sufficiently serious level that inside or outside counsel for plaintiffs became involved."  March 27, 2008, Order (MySpace Dkt. #273) in *UMG Recordings, Inc., et al. v. MySpace, Inc., et al.*, Case No. CV 06-7361 AHM (AJWx).  UMG is willing to produce the same scope of materials here once it identifies works infringed by Veoh.

---

spreadsheet" and thus before UMG had an opportunity to identify works infringed by Veoh.  Consequently, not all registrations produced by UMG will be relevant to this action.  Once Veoh completes its production of videos and metadata, UMG will produce corporate relationship documents necessary to connect relevant registrations to the plaintiffs.  UMG should not be penalized because it made an extensive production even while Veoh continues to play games to avoid producing its own documents.

    [5] For example, Veoh seeks "All documents concerning claims of copyright infringement asserted against You."  (Veoh's Request for Production No. 51.)  Even Myspace never suggested that claims of infringement *against UMG* were relevant to UMG's claims against websites like MySpace or Veoh.  Veoh's motion offers no argument or explanation to justify such discovery.

Veoh misleadingly argues that Judge Matz's statements, made during the Rule 16 Status Conference in the *DivX* action, require a different outcome. They do not. Judge Matz did not direct UMG to produce all documents relating to ownership of the works at issue in that case, never stated "that copyright registrations alone would be insufficient to establish ownership," and never decided that Veoh has an "understandable right" to the massive swath of documents sought here. Simply put, Judge Matz anticipated that DivX would pursue chain-of-title discovery and asked that UMG provide information that was "<u>readily available</u>" regarding ownership of the works at issue. Calkins Decl., Ex. A at 10. Judge Matz made clear that the Status Conference was not a ruling on discovery issues because for any specific discovery dispute, "Judge Wistrich, who is the Magistrate Judge . . . will have to resolve it at first blush . . . ." *Id.* at 19. Consistent with Matz's comment, this Court has already resolved the chain-of-title dispute and made clear to Veoh on August 25 the Court's view that the same principles applied in the *MySpace* action should apply here. Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (56:3-25). Judge Matz also acknowledged what Veoh has already conceded: "registration is presumptive" evidence of copyright ownership. Calkins Decl., Ex. A at 10.

Moreover, this Court's prior ruling on this issue is consistent with the manner in which other Courts have addressed the issue in mass-infringement cases. *See, e.g., In re Napster*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002) ("[T]his court will not permit Napster to engage in a 'fishing expedition.' The advantage of the current statutory scheme is that plaintiffs need not produce mounds of documents in order to maintain an infringement action"); *Yash Raj Films (USA) v. Kumar*, 2006 WL 3257215 (E.D.N.Y. Nov. 9, 2006) (denying defendant's request chain-of-title for hundreds of copyrighted works because "[p]laintiff . . . is entitled to the presumption of validity" and the defendant had "not shown why the Court should compel the chain of title information for over one hundred works . . . given the significant burden that this would place on plaintiff").

In short, both Judge Matz and this Court have stated, in this case, that absent the unlikely possibility that circumstances here are so different from those present in the *MySpace* action as to warrant a different result, the Court's prior ruling on the issue of "chain of title" discovery from that case should apply here. Veoh does not show a single difference between this case and the *MySpace* action that would warrant a different result. Veoh's attempts to waste the Court's time and UMG's time with simply re-arguing such issues should be rejected. Indeed, as discussed below, even were the Court to consider the issue afresh, the same result would still be appropriate.

### C.   Veoh's Requests Would Impose Undue Burden On UMG

In its prior submissions, UMG explained that production of the overly broad scope of chain-of-title discovery sough by Veoh would impose an undue burden on UMG. To justify that burden, Veoh must show that the importance of this discovery outweighs the significant burden on UMG. The Court can and should limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see also Nicolas J. Murlas Living Trust v. Mobil Oil Corp.*, 1995 WL 124186, *5 (N.D. Ill. Mar. 20, 1995) (denying discovery because the burden of production outweighed the limited relevance of the requested material); *Wright v. AmSouth Bancorporation*, 320 F.3d 1198 (11th Cir. 2003); *Oxford House, Inc. v. City of Topeka, KS*, 2007 WL 124 6200 (D. Kan. Apr. 27, 2007). Veoh has not and cannot make this showing.

As detailed in the declaration of Michael Ostroff, previously submitted to this Court and attached to the Ledahl Declaration as Exhibit L, UMG controls copyrights to more than 100,000 sound recordings and musical compositions. Several thousand of these copyrights will likely be at issue in this case. *See* Ledahl Decl., Ex L (Declaration of Michael Ostroff In Support Of UMG's Opposition To Veoh's Motion To Compel ("Ostroff Decl.")) (¶¶ 3, 6, 10). Producing the records sought by Veoh would be a massive undertaking requiring the location and review of hundreds

of thousands of documents, thousands of hours of UMG employee time, and likely millions of dollars in costs. This process would require locating and reviewing records in many disparate locations across many different business units of UMG. *Id.* at ¶¶ 5-9 (sound recordings), 10-12 (musical compositions). For example, to provide the breadth of documents Veoh requests, UMG would have to locate, review and produce agreements and other licenses with artists and producers, licenses from samples that may appear in a song, and licenses for the underlying compositions. *Id.* at ¶ 7. The files containing such materials are not centrally located within UMG. They are located in the files of UMG's various labels and divisions, clearance companies, and others involved in any individual licensing situation. *Id.*

The massive burden Veoh's requested discovery would inflict on UMG cannot meaningfully be disputed. UMG has already provided thousands of pages of documents relating to its copyright ownership—to wit, actual copyright registrations and documents providing information that Veoh can use to view the copyright registrations on the Copyright Office website. Veoh concedes that these documents constitute *prima facie* evidence of copyright ownership. Veoh cannot demonstrate the need for the additional, extensive production it seeks.

As UMG pointed out in the *MySpace* litigation, UMG is in the business of obtaining rights to copyrighted sound recordings and musical compositions. It is unreasonable to suggest that UMG does not own these rights on a massive scale. Veoh suggests that it intends to spend vast resources sifting through a mountain of information trying to identify works, if any, for which UMG does not own rights. Even were such an effort to yield a handful of works (exceedingly doubtful, UMG submits), Veoh's costs in connection with searching and reviewing would outweigh any reduction in damages they might obtain. Veoh knows this—and presumably has no intention of actually reviewing the material it seeks. Given Veoh's repeated protestations about the costs of this lawsuit—advanced only when UMG seeks

discovery—it is insensible for Veoh to pursue unnecessary, voluminous information, unless Veoh is simply looking to inflict a burden on UMG. The Court has already struck the appropriate balance on this issue, and the same result should apply here.

### D. The Alleged Benefits Of Chain-Of-Title Discovery Do Not Outweigh Its Burden Of Production

Veoh fails to show that the "benefit" of chain-of-title discovery outweighs "the burden or expense of" its production. Fed. R. Civ. P. 26(b)(2)(C). Veoh argues that facially valid registration certificates for UMG's works are subject to challenge by *Veoh*—and thus warrant burdensome discovery—because UMG may have failed to observe statutory formalities, or because contracts assigning copyrights to UMG are defective. Veoh is wrong on both counts.

Where a plaintiff is the author of the works at issue or is the "assignee of the rights to the copyrighted works" and the "original registrant of the United States copyright certificates," the plaintiff "is entitled to the presumption of validity," and the Court may properly deny a defendant's motion to compel chain of title information. *See Yash Raj Films*, 2006 WL 3257215, at *1 (denying defendant's motion to compel "chain of title information for over one hundred works listed in Exhibit A of the Complaint"). Veoh lacks any evidence or reason to doubt UMG's satisfaction of registration formalities. Nonetheless, its demands would require a time-consuming and expensive fishing expedition for underlying ownership documents—on the unlikely chance that a minor, technical error exists on a registration certification.

Even assuming Veoh uncovered a minor, technical error, such an error is immaterial to UMG's claims against Veoh. "Inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the claimant intended to defraud the Copyright Office by making the misstatement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140,

1145 (9th Cir. 2003) (citations and ellipsis omitted); *see also* 17 U.S.C.
§ 411(b)(1)(A), (B) (amended Oct. 13, 2008 by PRO-IP Act of 2008, Pub. L. No.
110-403, 122 Stat. 4256, 4257-58) (inaccurate registration information will not bar a
plaintiff from enforcing a copyright unless the error was intentional and would have,
if known to the Copyright Office, caused the registration to be refused).

For example, "[s]uch mistakes as the erroneous identification of the author of
the work, and the failure to disclose that the work is derivative, have been found to
be insufficient to invalidate a copyright." *Lanard Toys Ltd. v. Novelty Inc.*, 511 F.
Supp. 2d 1020, 1034-35 (C.D. Cal. 2007) (plaintiff's failure to mention the
derivative nature of several works in copyright registrations "d[id] not invalidate the
copyrights").  In fact, when a party alleges such inaccuracies, courts must now seek
formal opinions from the Copyright Office as to whether those errors are material
and would have caused the Office to refuse registration.  *See* 17 U.S.C. § 411(b)(2)
(as amended Oct. 13, 2008); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d
477, 488-89 (9th Cir. 2000) (inadvertent inaccuracies in the deposit copy of the
work "do not bar the infringement action").

Nor can Veoh use chain-of-title discovery to challenge assignments between
UMG and its artists and/or composers.  Third parties lack standing to challenge the
absence of a written assignment where neither the transferor nor the transferee
disputes the assignment.  *See, e.g., Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d
586 (7th Cir. 2003); *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996);
*Imperial Residential Design v. Palms Dev. Group*, 70 F.3d 96 (11th Cir. 1995);
*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 72 (2d Cir. 1982); *see
also Hart v. Sampley*, 1992 WL 336496, at *1 (D.D.C. June 24, 1992) ("Even if, as
defendants suggest, the transfer was in some way defective, the defendants would
not have standing to challenge the validity of the transfer because they were not
parties to the agreement").

"The cases hold that a third party does not have standing to challenge the presumption of ownership when plaintiffs claim ownership by assignment." *In re Napster*, 191 F. Supp. 2d at 1097 (N.D. Cal. 2002). "Those cases centered on plaintiffs' claims to ownership by assignment where no dispute existed between assignor and assignee." *Id.* at 1099. Simply put, "any purported dispute over ownership by assignment is between the plaintiffs and the individual who created the works," *id.*, and an unrelated third party has no defensive-rights under 17 U.S.C. § 204(a)'s writing-requirement as to its infringing actions. *See, e.g., Billy-Bob Teeth*, 329 F.3d at 592-93; *In re Napster*, 191 F. Supp. 2d at 1099 ("where there is no argument between assignor and assignee, it would be anomalous to permit a third party infringer to invoke [the writing] against the licensee") (internal citations omitted).[6] Veoh cannot manufacture non-existent disputes between UMG and its artists to excuse its own unauthorized reproduction, public performance, and distribution of UMG's copyrighted works.

**E.** **Veoh Asks The Court To Rule Based On Attorney Speculation And *Ipse Dixit* Argument**

Veoh—or rather, Thomas Lane, Veoh's counsel—asserts that "the production of these documents is not controversial, unexpected, or burdensome." Veoh cites unsupported, speculative testimony by its counsel as support for this proposition. For example, Veoh argues that the *UMG Recordings, Inc. v. MP3.com, Inc.* court found certain copyrights owned by UMG invalid. Specifically, Veoh compares *UMG Recordings, Inc. v. MP3.com, Inc.*, 2000 U.S. Dist. LEXIS 13293, *18 (S.D.N.Y. Sept. 6, 200), with *UMG Recordings, Inc. v. MP3.com, Inc.*, 2000 U.S. Dist. LEXIS 17907, *1 (S.D.N.Y. Nov. 14, 2000) to suggest that a defendant

---

[6] This authority nicely dovetails with this Court's sensible, compromise ruling in the *MySpace* action, which required that UMG produce chain-of-title documents if an ownership dispute *had* arisen between UMG and one of its composers and/or artists (provided that dispute required the intervention of in-house or outside counsel).

"apparently successfully challenged 2,564 copyrights, more than half (55%) of the 4,700 copyrights claimed by UMG." Veoh's Mot. at 15:18-24; *see also* Declaration of Thomas Lane ("Lane Decl.") at ¶¶ 5-7. Veoh fabricated its calculations and the purported successful challenges to ownership out of whole cloth.

At the end of the first phase of the *MP3.com* litigation, the Court set the measure of damages at $25,000 per infringement—but the number of infringements was unknown. *See* 2000 U.S. Dist. LEXIS 13293, at *18 (noting that *defendant* alleged a *maximum* of 4,700 infringements). During the second phase, the defendant moved to lower its exposure by eliminating entire categories of recordings, including recordings that were never hosted on the defendant's system or never downloaded by users. *See* Ledahl Decl., Ex. M (*MP3.com* Litigation Docket) at PACER Dkt. No. 153. Veoh (and Mr. Lane) ignore these actual facts and findings by the *MP3.com* court, concluding, without any basis, that the substantial reduction in copyrights at issue was the result of copyright ownership challenges. It was not, and Mr. Lane's false conjecture is no basis to impose the significant burden of Veoh's requests on UMG.

The impropriety of Mr. Lane's declaration goes beyond his legal analysis of the *MP3.com* litigation. Mr. Lane claims to have been counsel in *Arista Records, et al. v. Launch Media, Inc.* and submits factual testimony regarding alleged challenges to copyright ownership in the course of that litigation. Mr. Lane neither cites nor attaches any order or opinion substantiating his testimony. Nor is there any order or opinion on Westlaw or PACER verifying these alleged ownership challenges. In fact, Mr. Lane appeared on behalf of the *Launch* defendant in late October 2006—more than five years after the filing of the initial complaint, and just five months before he ceased being the defendant's counsel. *See* Ledahl Decl., Ex. N (*Launch* Docket). Mr. Lane's unsubstantiated, self-interested testimony is insufficient to justify the enormous burden Veoh seeks to impose on UMG. This Court need not treat counsel's speculative and unsupported testimony about the

reasons for decisions of other courts as evidence or authority of anything. Indeed, Veoh's resort to this kind of unsubstantiated guessing confirms that it has no real authority – such as a published opinion of a court – to support its demands for unnecessary and burdensome discovery. Instead Veoh grasps at the straws of making up authority out of whole cloth. The Court should reject such efforts out of hand.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should deny Veoh's motion to compel.

Dated:  November 7, 2008

Respectfully submitted,

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian D. Ledahl
Benjamin Glatstein


By: _____
Brian D. Ledahl
Attorneys for Plaintiffs