Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>       Plaintiffs,<br><br>    vs.<br><br>VEOH NETWORKS, INC. *et al.*,<br><br>       Defendants. | **Case No. CV 07 5744 – AHM (AJWx)**<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 RE VEOH'S MOTION TO COMPEL THE ADDITION OF CUSTODIANS AND PRODUCTION OF DOCUMENTS**<br><br>Date: 12/15/08<br>Time: 10:00 a.m.<br>Crtrm: 690<br><br>Discovery Cut-Off: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTORY STATEMENTS ............................................................ 1

    A.    Veoh's Introductory Statement ............................................ 1

    B.    UMG'S Introductory Statement ........................................... 3

II.  ISSUE NO. 1--ADDITIONAL DOCUMENT CUSTODIANS ................ 5

    A.    Veoh's Contentions and Points of Authorities ....................... 5

        1.    Plaintiffs Should Be Orderd To Search The Files Of Custodians Geller, Kossowicz, Oliver, Urie, Roberts, Iovine and Holt ............................................................................ 5

        2.    Geller ........................................................................... 5

        3.    Kossowicz and Oliver ................................................ 7

        4.    Roberts ........................................................................ 8

        5.    Urie ............................................................................. 8

        6.    Iovine ......................................................................... 10

        7.    Holt ............................................................................ 11

    B.    UMG's Contentions and Points of Authorities .................... 12

        1.    The Addition of Seven Unnecessary, Duplicative Custodians Will Unduly Burden UMG ...................... 12

        2.    Harvey Geller ........................................................... 14

        3.    Jennifer Roberts ....................................................... 17

        4.    Tegan Kossowicz and Cindy Oliver .......................... 18

        5.    Jim Urie .................................................................... 19

        6.    Jimmy Iovine ............................................................ 22

        7.    Courtney Holt ........................................................... 24

III. ISSUE NO. 2—PLAINTIFFS' SEARCH FOR RESPONSIVE DOCUMENTS ............................................................................... 26

    A.    Statement of Disputed Requests For Production and Plaintiffs' Responses ...................................................................... 26

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

B. Veoh's Contentions of Points of Authorities ........................................... 28

    1. Plaintiffs' Refusal To Conduct A Diligent And Good-Faith Search for Responsive Documents .................................. 28

C. UMG's Contentions and Points of Authorities .......................... 30

IV. ISSUE NO. 3– DISCOVERY RELATING TO PLAINTIFFS' ORGANIZATIONAL STRUCTURE AND IDENTIFICATION OF WITNESSES ........................................................................... 33

A. Statement of Disputed Requests For Production and Plaintiffs' Responses ...................................................................... 33

B. Veoh's Contentions and Points of Authorities ......................... 34

C. UMG's Contentions and Points of Authorities ........................ 34

V. CONCLUSION ................................................................................ 35

A. Veoh's Conclusion ..................................................................... 35

B. UMG's Conclusion .................................................................... 35

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

Pursuant to Federal Rule of Civil Procedure 37(c) and Local Rule 37-2, Defendant Veoh Networks, Inc. ("Veoh"), and Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music—MGB NA LLC, Universal Music—Z Tunes LLC and Universal Music—MBG Music Publishing LTD ("Plaintiffs"), respectfully submit the following Joint Stipulation Regarding Veoh's Motion to Compel the Addition of Custodians and Production of Documents. The parties have met and conferred in good faith in an unsuccessful attempt to resolve this matter and now seek this Court's assistance.

## I.    INTRODUCTORY STATEMENTS

### A.    Veoh's Introductory Statement

This motion to compel ("Motion") arises from Plaintiffs' steadfast refusal to search the files of key custodians, refusal to conduct a diligent, good-faith search for responsive documents, and refusal to produce responsive, relevant documents critical to Veoh's defense. Plaintiffs are challenging all aspects of Veoh's business in this lawsuit. There should be no question that Veoh is be entitled to explore every potentially relevant avenue to defend itself.

Veoh provides a forum for, among other things, high quality, user generated video content on the Internet. From its inception, Veoh has remained committed to providing strong protections for intellectual property and works diligently with content owners to keep unauthorized works off of Veoh's service. As part of this effort, Veoh maintains a rigorous Digital Millennium Copyright Act ("DMCA") policy which includes promptly terminating access to allegedly infringing content upon proper notice, and promptly terminating any repeat infringers.[1] Indeed, Veoh was recently held to be protected by the safe harbor of Section 512(c) of the DMCA in

---

[1] Conversely, Plaintiffs have utterly refused to cooperate in DMCA procedures, refusing to provide notice of any infringing works to Veoh. Further, over a year after filing its lawsuit, Plaintiffs have yet to identify the infringing works at issue in this action.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

a similar lawsuit because of its strong DMCA policies, leaving the only available remedy to the plaintiff injunctive relief, though even that relief was moot as Veoh had already removed all allegedly infringing content at issue. *Io Group, Inc. v. Veoh Networks, Inc.*, 2008 U.S. Dist. LEXIS, 65915, No. 06-3926, slip op. at 20 (N.D. Cal. Aug. 27, 2008).

Rather than respond in good faith to Veoh's requests for production ("Requests"), Plaintiffs set forth boilerplate objections, refusing to provide documents responsive to even the most basic requests. Plaintiffs have also refused to include key custodians in their searches, even where Plaintiffs identified the same individuals in their interrogatory responses and initial disclosures as persons with knowledge that goes to the heart of this action. Plaintiffs' deficient production and inadequate search for documents falls far short of the obligation and diligence required under the Federal Rules and governing case law.

With this Motion, Veoh seeks to compel the addition of seven key custodians to Plaintiffs' search for responsive documents, and to compel Plaintiffs to conduct a good-faith search for responsive documents rather than continue to hide behind insufficient and overly narrow custodian lists and key word searches in an effort to shun their discovery obligations. This Motion seeks to compel the production of the following critical documents sufficient to demonstrate UMG's organizational structure so that Veoh may identify potential witnesses (Request Nos. 222 and 223).

To date, Plaintiffs' production, which Plaintiffs tout as a hefty 1.4 million pages, is filled largely with irrelevant data recycled from past productions irrelevant to Plaintiffs' claims in this action. For example, plaintiffs produced thousands upon thousands of pages of gratuitous news clippings and articles from sources including Digital Music News, Billboard bulletins and Bob Lefsetz. (Declaration of Erin R. Ranahan ("Ranahan Decl.") ¶ 5). Plaintiffs should not be permitted to hide behind a large volume of worthless pages produced as a means to avoid searching for and producing the considerable number of vital documents that Veoh needs to prepare its

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

defense. Because the discovery at issue in this Motion seeks information critical to Veoh's defense, Veoh respectfully requests that the Court grant Veoh's Motion.

### B. UMG'S Introductory Statement

Veoh's entire motion is based upon the faulty premise that UMG's substantial production of documents, in excess of 1.4 million pages culled from the files of more than three dozen key UMG executives and employees, is somehow inadequate. Veoh claims that UMG should have to radically revise its search methodology, not just by adding seven additional document custodians, but by completely changing its search methods in some unspecified way to meet Veoh's unique definition of a "reasonable and diligent search." After even brief consideration, however, the numerous logical fallacies and unsupportable conjectures behind Veoh's motion become evident. At its core, Veoh's motion seeks to force UMG to spend hundreds of thousands more dollars, in addition to the hundreds of thousands already spent by UMG during this discovery process, to search for phantom documents that Veoh fails to show even exist.

Veoh demands that UMG search the files of seven more UMG employees. UMG's production already includes, however, the substantial majority of all relevant, responsive documents that would be found in these seven individuals' files. Veoh claims that UMG should review the files of Tegan Kossowicz and Cindy Oliver, two individuals who maintain UMG's copyright registrations. Yet UMG has already produced the key documents that would be found in the files of Ms. Kossowicz and Ms. Oliver: the copyright registrations themselves.

Veoh also wants UMG to search the files of Jim Urie, Jimmy Iovine, and Courtney Holt in the hopes that these individuals' files will contain evidence of "viral marketing." First, Veoh apparently believes that any activity related to the Internet qualifies as "viral marketing." As this Court stated in the related *Grouper* case, if UMG posted a music video on unlicensed websites and made it generally available throughout the internet community for free, such evidence could be a factor bearing

upon statutory damages.[2]  Yet none of the supposed evidence cited by Veoh has anything to do with this sort of "viral marketing."  Veoh submits no evidence to suggest that the files of Mssrs. Urie, Iovine and Holt would contain any documents showing that UMG posted videos on unlicensed websites, thereby making them freely available throughout the internet.  Further, even if the e-mails cited by Veoh were relevant to alleged "viral marketing," *UMG has already searched the files of the individuals actually involved in the activities Veoh claims are relevant.*  Veoh fails to establish that the likelihood of finding any responsive, non-duplicative documents in the files of Mr. Urie, Iovine, and Holt outweighs the significant burden on UMG of capturing and reviewing their files.

Veoh also claims that UMG should be compelled to search the files of Harvey Geller, UMG's in-house litigation counsel, and Jennifer Roberts, a paralegal at Irell & Manella, UMG's outside litigation counsel.  Any non-privileged communications between Mr. Geller and the top UMG executives, including CEO Doug Morris, President Zach Horowitz, and General Counsel Michael Ostroff, would have been captured and produced when UMG searched those individuals' files.  Veoh has not shown that Mr. Geller's files would contain a single additional, non-privileged document.  More importantly, a search of Mr. Geller's and Ms. Roberts's files would require UMG to log nearly *every single privileged and work product document that has been created in this case by UMG's counsel,* not to mention other litigation.  The prejudice that such a log, containing a roadmap of UMG's entire litigation strategy, would cause UMG cannot be overstated.  Veoh has submitted no evidence that would justify placing this significant, prejudicial burden on UMG.

In addition to searching seven new custodians' files, Veoh apparently wants UMG to completely revamp its search methodology to find more documents that reference "Veoh."  But UMG employed the same methodology that this Court

---

[2] UMG respectfully disagrees that such evidence would be relevant to any claim or defense, as UMG has argued both in this case and in the related *Grouper* and *MySpace* cases.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

recognized is practical and appropriate: UMG searched the files of over three dozen employees most likely to have relevant documents, and applied broad search terms including the term "Veoh."  Veoh submits no evidence that would suggest UMG has more Veoh-related documents somewhere in its possession.  The Federal Rules obligate UMG to undertake a reasonable search, which it has done.

Veoh's motion is based upon the false assumption that, because UMG's ample production to date does not contain the documents that Veoh hopes to find, UMG's production is insufficient or unreasonable.  Yet Veoh fails to introduce any actual evidence to support its speculative expectations that more responsive documents exist somewhere in UMG's files.  UMG has already produced numerous responsive, non-privileged documents in each category sought by Veoh.  UMG carefully crafted a reasonable search for responsive documents, and spent significant resources to make that production.  Veoh's baseless motion does not come close to justifying that UMG undertake the expense of even more searching, and should therefore be denied.

## II.    ISSUE NO. 1--ADDITIONAL DOCUMENT CUSTODIANS

### A.    <u>Veoh's Contentions and Points of Authorities</u>

#### 1.    <u>Plaintiffs Should Be Orderd To Search The Files Of Custodians Geller, Kossowicz, Oliver, Urie, Roberts, Iovine and Holt</u>

Despite extensive meet and confer efforts, Plaintiffs have refused to search the files of the seven key custodians discussed below, insisting that notwithstanding the potential relevance of documents within the custodians' possession, it would be too burdensome for UMG to search for such relevant evidence.  In each case, the discovery benefit to Veoh would far outweigh any burden to UMG in having to search the documents of these custodians.

#### 2.    <u>Geller</u>

First, Plaintiffs have refused to search the documents of Harvey Geller.  Geller is Senior VP of Business & Legal Affairs of UMG, and listed by UMG as one of the

5

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel          Case No. CV 07-5744-AHM (AJWx)

persons "most knowledgeable about Veoh's infringement." (Ranahan Decl. ¶ 7 and Exh. E).   This Court has already recognized in its November 4, 2008 Order denying Plaintiffs' *ex parte* application for a protective order to prevent the deposition of Geller that "**considering all the circumstances, it seems plausible that Geller many posses some relevant information not shielded from discovery by the attorney-client privilege or work-product doctrine**." (Docket No. 201) (emphasis added). Despite this ruling, Plaintiffs refuse to search Mr. Geller's files.

Plaintiffs have produced at least 1,413 documents containing Geller's name. (Ranahan Decl. ¶ 5).   Plaintiffs identified Geller as one of seven "individuals" "most knowledgeable" of the "facts, allegations, and claims set forth in the complaint," as sought by Veoh's Interrogatory No. 6.  (*Id.* at ¶ 7 and Ex. E)  Yet despite producing over a thousand documents with his name on them, Plaintiffs don't think they should be required to search the files of Geller.  Plaintiffs refuse to search Geller's files despite the fact that Plaintiffs identified Geller as a witness most knowledgeable regarding the purported adverse impact of Veoh's copyright infringement on UMG, and most knowledgeable about the subject matter of Plaintiffs' own lawsuit.  Further, on at least one occasion in or about the Summer of 2007, Geller attended what was believed to be a business meeting with Veoh, and sought to discuss prior acts of "infringement" on Veoh.

There are several areas of factual inquiry for which Veoh is entitled to obtain discovery from Geller.  First, Plaintiffs have yet to identify a list of purportedly infringing works, identifying only five examples in their motion for summary judgment—*all five of which had been removed since 2007 for copyright violations or otherwise.*   (Simons Decl. filed ISO Veoh's Opp. to MSJ, ¶ 6 (Docket 148).)  Veoh is entitled to investigate the factual basis upon which Plaintiffs brought this action. Further, Plaintiffs' failure to provide Veoh with any notice under the DMCA is also a factual matter subject to discovery in this action.  For example, to support its DMCA affirmative defense under 17 U.S.C. § 512, Veoh will demonstrate that it did not have

knowledge or sufficient notice of the allegedly infringing works.  Veoh is thus entitled to investigate on what basis Plaintiffs believe Veoh should have had such notice.  Similarly, Geller's documents can be expected to confirm that UMG intentionally refused to cooperate with DMCA procedures.

In addition to investigating its DMCA defense, Geller's documents relating to pre-lawsuit discussions regarding UMG's failure to notify Veoh of any specific infringements are relevant to many of Veoh's affirmative defenses, including Veoh's:

- fifth affirmative defense for no volitional conduct;
- sixth affirmative defense for lack of knowledge;
- tenth affirmative defense for laches,
- eleventh affirmative defense for waiver;
- thirteenth affirmative defense for unclean hands; and
- fifteenth affirmative defense for license, consent and acquiescence.

Mr. Geller's files should not be immunized from Plaintiffs' search obligations when it is most certain that such files will contain significant non-privileged testimony about relevant, discoverable, factual matters.

### 3. <u>Kossowicz and Oliver</u>

Tegan Kossowicz, identified by Plaintiffs in their initial disclosures as someone "likely to have discoverable information" regarding Plaintiffs' ownership of copyrights, is the Senior Director of Business & Legal Affairs, Royalties & Copyright, for UMG.  (Ranahan Decl. ¶ 11 and Exh. G.)  Cindy Oliver is also identified by Plaintiffs in their initial disclosures as someone "likely to have discoverable information" regarding Plaintiffs' ownership of copyrights.  *Id.*  Kossowicz was identified by UMG as one of the individuals who are "most knowledgeable about Veoh's infringement" in Plaintiffs' interrogatory responses.  (Ranahan Decl. ¶ 7 and Exh. E).  Veoh expects Kossowicz and Oliver to have extensive information relating to royalties, financial information, plaintiffs' copyrights and chain of title establishing ownership.  This information is highly relevant to Veoh's investigation of Plaintiffs'

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

alleged damages (or lack thereof) and the copyrights upon which Plaintiffs filed this action.

### 4. **Roberts**

Jennifer Roberts, is listed by UMG as one of the persons "most knowledgeable about Veoh's infringement" in Plaintiffs' interrogatory responses and in Plaintiffs' initial disclosures as a person "likely to have discoverable information" about "the identification of files containing copyrighted works owned and/or controlled by UMG available through Veoh on or about the date of the filing of the complaint and subsequent thereto." (Ranahan Decl. ¶¶ 7 and 11 and Exhs. G and E.) While she is currently a Legal Assistant for Irell & Manella, the documents also suggest that Roberts was formerly employed by MusicMatch. MusicMatch is a website for music downloads. In any event, Plaintiffs concede that it was Roberts that conducted the factual investigation into Plaintiffs allegedly infringing works on Veoh, and thus Plaintiffs should undergo the burden of searching Roberts files for non-privileged documents. As Veoh is still waiting to learn of the allegedly "thousands" of infringing works, if there are documents to evidence such alleged infringements, Plaintiffs should undertake the minimal burden of searching Roberts' files relating to the investigation of Veoh and produce any such documents.

### 5. **Urie**

Jim Urie is the President and CEO of Universal Music Group Distribution. Veoh expects Mr. Urie to have information regarding Plaintiffs' viral marketing strategy, persons involved in executing viral marketing strategy, as viral marketing is done through NetReach, a division of UMGD. Mr. Urie is also expected to have information regarding UMGD's corporate relationships, divisions, internal structure and strategic objectives. All of this information is relevant to Veoh's investigation of Plaintiffs' alleged damages.

Veoh seeks information regarding the efforts by Plaintiffs or their artists to use Veoh and/or similar sites to upload the same works at issue in this action, through the

8

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel     Case No. CV 07-5744-AHM (AJWx)

internet at no charge, for their own marketing purposes. This Court has previously recognized the significance of UMG's viral marketing to discovery regarding UMG's alleged statutory damages in The *MySpace/Grouper* Actions. (Ranahan Decl. ¶¶ 2-3 and Exhs. A-B). In The *MySpace/Grouper* Actions, the defendant argued that if UMG's viral marketing efforts included leaking free links (e.g., through social networking sites) to the same recordings that UMG was claiming damages for, such would provide evidence that UMG has not actually been damaged. The Court agreed, noting that despite UMG's election of statutory damages, if the defendant could demonstrate that UMG did not lose any profits because it was already permitting the same recordings to be freely viewed on the internet, such evidence would be a "a factor the court can consider in determining what amount of statutory damages to award." (*Id.* at 62:24-63:4).

Such evidence not only bears on the legitimacy of Plaintiffs' alleged damages, Plaintiffs' viral marketing activities are highly relevant to Veoh's affirmative defenses, including estoppel, unclean hands, and implied license. "A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out … by silence or inaction." *Field v. Google*, 412 F. Supp.2d 1106, 1116 (D. Nev. 2006). Information evidencing Plaintiffs' own marketing of works with the intent that they be virally distributed to other sites is clearly relevant as evidence that Plaintiffs should be estopped from asserting the claims herein.

Obtaining information about viral marketing is also relevant to Veoh's unclean hands defense. Uploading music videos to internet sites for marketing and promotion, then suing those same sites for copyright infringement is plainly inequitable. Veoh is entitled to viral marketing discovery to develop this affirmative defense.

The requests at issue are additionally relevant to Veoh's implied license defense. A copyright owner may grant a nonexclusive license impliedly through conduct. See *Effects Assoc., Inc. v. Cohen*, 908 F. 2d 555, 558-59 (9th Cir. 1990).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it. Field v. Google, Inc., 412 F.Supp. 2d 1106, 1116 (D. Nev. 2006). Clearly, Plaintiffs' knowing, viral marketing of the works at issue by posting them on sites including Veoh is highly relevant here. Veoh is entitled to discovery from all key custodians on this issue.

The question of how any purportedly infringing content may have originated on Veoh is critical. If such content was placed there by Plaintiffs themselves, or at their direction, in an effort to promote Plaintiffs' own artists, Veoh is entitled to know about it. It is likely Plaintiffs' recognition of the devastating consequences of having their viral marketing activities exposed, not "vagueness" or "ambiguity," that lies at the heart of Plaintiffs' efforts to block Veoh's efforts to obtain this discovery. Plaintiffs should be compelled to provide further responses immediately.

### 6. **Iovine**

Mr. Iovine is the head of Interscope, and oversees the a large number of employees involved in viral marketing. From other custodians a total of 2,192 emails include Mr. Iovine's name, though in most instances Veoh is unable to determine the context of the communications without the critical missing link, Mr. Iovine's, communications. From the emails that have been produced, it strongly appears that it is Mr. Iovine that makes the final calls on viral marketing. Emails on which Iovine is copied on demonstrate his significant involvement with widespread internet marketing efforts:

- promoting artists like GreenDay/U2 on YouTube (*e.g.,* UMG 1,329,314);
- pitching an American Idol meets YouTube (*e.g.,* UMG 1,431,623);
- Google deals (*e.g.*, UMG 1,431,607);
- online joint ventures with Fox/NBC (*e.g*., UMG 1,358,436);
- conducting extensive meetings regarding online social networking (*e.g.,* UMG 1,229,599); and

10

- regularly tracks total video and audio streams and downloads (*e.g.*, UMG 1,229,599).

For all the reasons discussed in the foregoing section IV(A)(4), Plaintiffs should be compelled to include Iovine as a custodian in their search for responsive documents.

### 7.  <u>Holt</u>

From the documents Veoh has been provided, it appears that Courtney Holt, Executive Vice President of New Media, Creative and Strategic Marketing at Interscope, is also a central figure in Plaintiffs' efforts to get Plaintiffs' content online through viral marketing efforts, in addition to numerous additional internet-related activities.  From other custodians a total of 1,492 emails include Mr. Holt's name, though again, Veoh is unable to determine the context of the communications without Mr. Holt's communications.  Emails on which Holt is copied demonstrate that he has been involved with the following:

- encouraging individuals to spread certain music videos "everywhere" (e.g., UMG 1,336,092);
- Veoh's state of the art filtering technology Audible Magic (e.g., UMG 492, 094);
- managing general streaming and downloading issues (e.g., UMG 495,370; 511,935);
- communicating with MySpace regarding removing content and advertising (e.g., UMG 499, 067; 748,450; 1,336,508);
- dealings with Google (e.g., UMG 1,323,393);
- strategic marketing (e.g., UMG 1,328,408);
- dealings with NetReach viral marketing plans and UMG media plans (e.g., UMG 1,328,670); and
- reviews online status reports from Musictoday and Buzztone (e.g., UMG 1,335,927).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

It is clear from this sampling of documents that Holt is involved in areas crucial to Veoh's damages investigation. Plaintiffs cannot avoid searching the files of someone who has encouraged other internet sites to spread certain videos "everywhere" on the grounds that it would be burdensome. Veoh is defending its entire existence with this lawsuit and is entitled to this discovery. Accordingly, Plaintiffs should also be compelled to include Holt in their search for responsive documents.

## B. UMG's Contentions and Points of Authorities

### 1. The Addition of Seven Unnecessary, Duplicative Custodians Will Unduly Burden UMG

UMG has already extensively reviewed and produced the files of 38 relevant employees and executives at UMG. Its review of those files has required many thousands of hours of attorney time to review and has resulted in the production of more than 1.4 million pages of documents responsive to Veoh's requests. Nonetheless, Veoh maintains that UMG must exert the time and expense of searching the files of seven more UMG employees who will most likely have little to no discoverable information that UMG has not already produced. Veoh believes that it is entitled to force UMG to engage in a wasteful, cumulative, and prejudicial exercise based on little more than speculation.

It is, of course, well-established that the Federal Rules of Civil Procedure do not require UMG to conduct an exhaustive search for every document anywhere within the company that might somehow, arguably be responsive to a document request propounded by an opposing party. Instead, the Federal Rules contemplate that parties must make a "reasonable, diligent, good faith search" for materials. *See Paramount Pictures Corp. v. Replay TV, Inc.*, 2002 WL 1315811, *1 (C.D. Cal. April 29, 2002). Likewise, this Court has recognized that UMG need not sift through every paper in its possession looking for all possibly relevant documents. Yet Veoh asks the Court to

order UMG to waste thousands of dollars without any realistic hope or expectation that such burdens will yield additional relevant material.

Like many modern large companies, many, if not most, of UMG's files are stored electronically. To respond to discovery requests in this case, UMG has undertaken a massive collection effort to, among other things, capture the files of over three dozen UMG employees and executives involved in relevant areas of UMG's business. Ledahl Decl., ¶ 2. These employees and executives included many of the most senior executives within the company, including Chief Executive Officer Doug Morris, Chief Operating Officer Zach Horowitz, General Counsel Michael Ostroff, and many of those executives and employees responsible for online licensing and distribution of UMG's copyrighted works. *Id.*, Ex. A. In addition to electronic files, hard-copy (paper) documents have also been retrieved and searched and then converted into electronic files (through scanning) for production to Veoh. After collecting these massive volumes of information, a set of broad search terms, including "Veoh," "MySpace," "YouTube," and "Grouper" were applied to the documents to identify those that were potentially responsive to defendants' discovery requests. *See id.*, ¶ 3, Ex. A.

Each of the documents identified by this electronic sorting was then reviewed by attorneys to 1) identify those documents that are actually responsive to Defendants' discovery requests and 2) identify and remove any documents subject to claims of privilege. *Id.*, ¶ 4. To give some idea of the burden and cost this process imposes, UMG has reviewed the files of 38 of its employees and executives. *Id.*, ¶ 5 and Ex. A. To date, UMG has identified and produced more than 1.4 million pages of responsive documents from that collection. *Id.* The process of reviewing these documents has required many hundreds, if not thousands, of attorney hours and cost UMG hundreds of thousands of dollars. *Id.*

The cost and burden of searching files will be even higher with regard to Courtney Holt, who no longer works for UMG. Declaration of Gayle Moore ¶ 3. As

13

detailed in the Declaration of Clifton Lancaster ("Lancaster Decl."), as a general matter, the files of individuals who no longer work for UMG are preserved on back-up tapes, but not easily available for production.  Lancaster Decl., ¶ 3.  Because former employees' files are not retained in active computers, UMG would be required to retrieve the necessary data from computer back-up tapes and search for the former employees' stored electronic files.  *Id*.  This is a highly expensive, time-consuming, multi-step process specifically detailed in the Lancaster Declaration.  *Id*.[3]

Veoh's view of what constitutes a "reasonable" search of UMG's files stands in stark contrast to Veoh's approach to its own discovery obligations.[4]  While UMG has already produced well over 1.4 million pages of documents, Veoh has produced only a fraction thereof.  *Id*., ¶ 5.  Yet Veoh claims that UMG's production is insufficient, and that UMG should spend tens of thousands of dollars more to review the files of seven additional persons.  Veoh's motion is baseless and should be denied.

### 2.  **Harvey Geller**

Harvey Geller is the Deputy General Counsel and Senior Vice President, Business & Legal Affairs for UMG.  As part of his job duties, Mr. Geller heads the UMG litigation department.  Declaration of Harvey Geller ("Geller Decl.") ¶ 3.  The lawyers in UMG's litigation department supervise and manage UMG's litigation, including the instant case.  *Id*.  Among other things, Mr. Geller has had senior responsibility for all of UMG's significant copyright litigations in the United States, including planning strategy and implementing that strategy with outside counsel.  *Id*.,

---

[3] Typically, to retrieve files for a former employee, UMG reconstructs two different categories of information: server files (containing documents and other files stored on UMG computer servers by the employee), and email files.  Lancaster Decl., ¶¶ 3-4.  To capture all of an employees' server files over a two-year period typically would require the restoration of 480 individual backup tapes, and would typically cost between $120,000 and $240,000 to reconstruct the server files for one employee for a two-year period.  *Id*.  Email files for each employee must be separately reconstructed from backup tapes.  *Id*.

[4] UMG is optimistic that Veoh's production will be substantially improved after it completes its production of documents as ordered by the Court on November 21, 2008, granting UMG's motion to compel

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

¶ 4.  In the course of his duties as in-house litigation counsel, Mr. Geller has had tens of thousands of communications with UMG's outside counsel, including UMG's outside litigation counsel in this case.  *Id.*, ¶ 5.

Veoh contends that UMG should have to search Mr. Geller's files because Mr. Geller was named as a person knowledgeable about the allegations in UMG's complaint against Veoh.  Veoh's Interrogatory No. 6, however, did not ask for all persons with <u>non-privileged, discoverable information</u> about the allegations in the complaint.  Rather, Veoh's Interrogatory was phrased in very broad terms seeking persons knowledgeable about UMG's complaint, and UMG was obliged to provide a response.  Identifying Mr. Geller as knowledgeable does not waive the privilege as to documents in his files.

Veoh also contends that the Court's denial of UMG's application for a protective order regarding Mr. Geller's deposition justifies Veoh's demand for Mr. Geller's documents.  While the Court ruled that Mr. Geller could plausibly have some non-privileged information and could therefore be deposed, the Court did not rule that any and all of Mr. Geller's privileged communications and work product were therefore subject to discovery.  Yet Veoh apparently believes it is entitled to receive such privileged documents.  Veoh's motion regarding Mr. Geller misses a key logical step.  It is possible that the facts underlying some of Mr. Geller's privileged communications may not themselves be privileged.  *See Upjohn Co. v. United States*, 449 US 383, 395–396, 101 S.Ct. 677, 685–686 (1981) ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.").  But the actual attorney-client communications and work product remain privileged.  Veoh's right to take a deposition of Mr. Geller does not lay his entire file of privileged, litigation-related documents open to inspection.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Veoh describes certain categories of information it seeks from Mr. Geller. Unquestionably, his files on such subjects are made up of privileged and attorney work-product material. Veoh "expects," apparently on nothing more than speculation, that Mr. Geller's files will contain documents showing (1) a list of infringed works; (2) the factual basis upon which UMG brought this action; (3) UMG's alleged basis for sending, or choosing not to send, DMCA notices; (4) UMG's supposed intentional refusal to cooperate with "DMCA procedures"; and (5) UMG's alleged "failure to notify Veoh of any specific infringements." Setting aside the fact that UMG has no legal obligation to "cooperate" with whatever "DMCA procedures" Veoh might be referring to, any such documents in Mr. Geller's files would almost certainly be privileged. It is quite possible that Mr. Geller gave his client legal advice regarding the DMCA, or discussed the DMCA with outside counsel, but Veoh offers no reason to believe that any sort of exception to attorney-client privilege would apply to make those communications discoverable. Moreover, Veoh can hardly expect that UMG will turn over Mr. Geller's communications *about this case* with his client or with outside litigation counsel.

Veoh's assertion that UMG's production includes documents with Mr. Geller's name on them further supports UMG's position. UMG searched the files of its top executives, including President Zach Horowitz and General Counsel Michael Ostroff, as well as many others. Thus, UMG would have already reviewed and produced any non-privileged communications Mr. Geller might have had with the dozens of UMG executives most likely to have any relevant communications with Mr. Geller. The fact that Mr. Geller's files might include the same documents UMG has already produced does not warrant the expense of reviewing those files. More importantly, however, his files will also include thousands of communications with outside litigation counsel and work product relating to this and many other cases. Indeed, Mr. Geller's files likely contain all communications between UMG and outside counsel. A log of these files would provide a virtual roadmap of UMG's litigation strategy in this and many

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

other copyright cases.  The prejudice of such a log to UMG is so overwhelming it is obvious.

Even if Veoh could demonstrate that Mr. Geller would have some non-duplicative, responsive documents, it must further show that the relevance of such documents outweighs the burden on UMG of reviewing this material.  Fed. R. Civ. P. 26(b)(2)(C); s*ee also Nicolas J. Murlas Living Trust v. Mobil Oil Corp*., 1995 WL 124186, *5 (N.D, 111. March 20, 1995) (denying discovery because the burden of production outweighed the limited relevance of the requested material); *Wright v. AmSouth Bancorporation*, 320 F.3d 1198 (11th Cir. 2003); *Oxford House, Inc. v. City of Topeka, KS*, 2007 WL 1246200 (D. Kan. 2007).  It will cost UMG many thousands of dollars to review the thousands of documents regarding this and other cases in Mr. Geller's files.  Veoh has made no showing that would justify this additional burden on UMG, especially where no additional, non-privileged documents are likely to be found.  Veoh should not be permitted to require UMG to undergo the expense of reviewing and producing duplicative documents, while facing the prejudice of logging all of its litigation-related communications.  Veoh's motion should be denied.

### 3.    <u>Jennifer Roberts</u>

Jennifer Roberts is a Senior Paralegal employed by UMG's outside litigation counsel, Irell & Manella.  As a paralegal, Ms. Roberts maintains virtually all documents and communications regarding the instant case, and many other cases in which UMG has been involved.  Declaration of Jennifer Roberts ("Roberts Decl."), ¶¶ 2-3.  As with Mr. Geller, if UMG is forced to search Ms. Roberts's files, UMG would have to log almost every communication and document relating to this litigation.  UMG's search terms include "Veoh," "MySpace," and "Grouper," and therefore all documents regarding all three cases would be identified for review.  Such a roadmap of UMG's litigation strategy would be extremely prejudicial to UMG.  Furthermore, UMG should not be forced to undergo the expense of searching through thousands of privileged communications simply because some non-privileged

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

document might possibly exist somewhere in Ms. Roberts's files.

Veoh makes much of the fact that UMG listed Ms. Roberts in an interrogatory response and in UMG's initial disclosures. UMG listed Ms. Roberts because she supervised the collection of evidence regarding Veoh's infringement of UMG's copyrighted works. Through this evidence collection, UMG identified the infringed works listed in UMG's complaint. UMG's inclusion of Ms. Roberts as the person knowledgeable about this evidence collection did not waive UMG's privilege in the thousands of documents in Ms. Roberts's files.

Veoh also claims that some unidentified "document" shows that Ms. Roberts was once employed by MusicMatch. Veoh does not bother to include the alleged "document" at issue, or try to explain why that would be relevant. Ms. Roberts has never been employed by MusicMatch. Roberts Decl., ¶ 4. Veoh's resort to such unsupported conjecture exemplifies Veoh's strategy in this motion—to rely on speculation and innuendo instead of concrete facts, evidence, or legal authorities.

Once again, Veoh expects UMG to spend thousands of dollars, in addition to the hundreds of thousands already spent, to review Ms. Roberts's files without any realistic hope of obtaining any relevant, non-privileged document. Veoh's request is unduly burdensome and should be denied.

### 4. <u>Tegan Kossowicz and Cindy Oliver</u>

UMG listed Ms. Kossowicz and Ms. Oliver in its interrogatory response and initial disclosures because these individuals are responsible for maintaining UMG's copyright registrations for sound recordings and/or musical compositions. Accordingly, these individuals possess information about the allegations in UMG's complaint regarding its numerous copyrights, including those infringed by Veoh. During its initial collection of documents, UMG collected copyright registration information from the files of Ms. Kossowicz and Ms. Oliver. UMG has already produced that copyright registration information to Veoh. Thus, Veoh already has the information identified by UMG in its interrogatory responses and initial disclosures

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

that Ms. Kossowicz and Ms. Oliver possess. The fact that Ms. Kossowicz and Ms. Oliver had relevant copyright registration information in their files, which UMG has produced, by no means suggests that their e-mails are therefore otherwise relevant to this case. UMG explained this fact to Veoh's counsel, but Veoh continues to maintain that it "expects Kossowicz and Oliver to have extensive information relating to royalties, financial information, plaintiffs' copyrights and chain of title establishing ownership." Veoh does not provide a single shred of evidence to support this "expectation."

As this Court has recognized, UMG need not search out every single relevant document in its possession. UMG employs hundreds of persons whose job responsibilities relate to royalties. It cannot be expected to search all such employees' files. Rather, UMG has searched the files of several persons likely to have relevant financial and royalty documents, including Charles Ciongoli, Executive Vice President & CFO, North America, of UMG; Steve Drellishak, Senior Director of Digital Finance for UMG; and Anthony Saragueta, Vice President of Royalties for UMPG, among others. The files of Kossowicz and Oliver will add little if any additional relevant information that would justify the cost to UMG of searching and reviewing their files. As described above, Veoh's motion is based on nothing more than speculation based upon job titles, and should be denied.

### 5.   __Jim Urie__

As Veoh states, Jim Urie is the head of UMGD. Veoh claims that it "expects Mr. Urie to have information regarding Plaintiffs' viral marketing strategy."[5] Throughout this case, Veoh has lumped a huge number of activities under the moniker "viral marketing" as if that phrase should have a talismanic effect justifying any and all discovery requests. Veoh seems to believe that any of UMG's efforts to expand its business online should be considered "viral marketing" and therefore centrally

---

[5] Veoh likewise asserts that Jimmy Iovine and Courtney Holt, as further discussed below, will have documents relating to "viral marketing."

relevant to this case. Yet UMG has licenses with dozens of websites and online services who post authorized copies of UMG's music videos with full permission in exchange for royalties. UMG employees or agents have also posted on the internet comments praising artists, or links to licensed websites where a user can view an authorized copy of a UMG artist's work. Indeed, this is the activity that UMG usually refers to as "viral marketing." These activities have no relevance to Veoh's infringement, or to damages in this case.

Veoh relies heavily upon the April 22, 2008 hearing in the related *Grouper* case. At that hearing, the Court stated that, "if the plaintiffs took a video and posted it on unlicensed sites and made it generally available to the public for free – without compensation by the public, without compensation by a licensee so that it was available to everyone for free throughout the internet community," that could be a "factor the Court can consider in determining what amount of statutory damages to award." *See* Ranahan Decl., Ex. B (Hearing Transcript at 61:16-62:4).[6] Thus, the Court specifically said that if UMG actually posted a video *to unlicensed sites* and made it generally available for free throughout the internet community, that could be relevant to damages. UMG's activities with licensed online business partners are fundamentally different, as the Court recognized. Further, the Court agreed with UMG that these alleged viral marketing activities are probably not relevant to the defenses of implied license and estoppel which Grouper relied upon, and which Veoh asserts in this case. *See id.* at 66:14-16.

Veoh provides no evidence to suggest that Mr. Urie's files would reveal that UMG posted any music video on an unlicensed website such as Veoh. Rather, if anyone at UMGD posted music videos on Veoh (which, in any event, was against established UMG policy) that would have been reflected in the files of the UMGD employees involved with NetReach. Indeed, Veoh asserts that UMGD's NetReach

---

[6] UMG respectfully disagrees that posting content to websites other than Veoh could be relevant to any claim or defense, but because the Court is already aware of UMG's position on this point, UMG will not reiterate those arguments here.

20

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel          Case No. CV 07-5744-AHM (AJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

division justifies the search of Mr. Urie's files. But UMG has already searched the files of the five key individuals actually involved with NetReach: Angela Sanchez, Senior Director, Marketing Digital, UMGD (the head of NetReach); John Varesio, Senior Marketing Coordinator for NetReach, UMGD; Andie D'Avino, Manager, NetReach, UMGD; Matt Erman, Manager, Online Sales & Marketing, UMGD; and Arlene Garcia, Manager, Online Sales & Marketing, UMGD. UMG has produced numerous documents from these individuals' files. Veoh presents no evidence that would suggest Mr. Urie's files will contain any additional documents regarding NetReach that these individuals' files do not. Nor does Veoh explain why Mr. Urie, who is not a part of NetReach, would have better access to documents about NetReach than the actual members of that department. Veoh may be dissatisfied that these individuals' files did not provide the evidence Veoh was hoping to find. But UMG should not be required to continue searching endlessly for some proof to support Veoh's speculations.[7]

Finally, Veoh asserts, without any supporting evidence, that Mr. Urie's files will contain documents regarding UMGD's corporate relationships, divisions, internal structure, and strategic objectives. Veoh never explains the relevance of such information to any claims or defenses in this case, nor does Veoh explain why UMG should be required to undertake the burden of reviewing all of Mr. Urie's files in search of such nebulous categories of documents.

Even if Veoh could demonstrate that Mr. Urie would have some relevant documents, it must further show that the relevance of such documents outweighs the burden on UMG of reviewing this material. Fed. R. Civ. P. 26(b)(2)(C). As stated above, UMG has already provided Veoh with numerous documents from the

---

[7] Furthermore, UMG has searched the files of dozens of its employees, including top executives responsible for strategic business decisions, for the names of many websites, including "Veoh," "Grouper," "MySpace," and "YouTube." UMG has already undertaken significant efforts to search for documents relating to alleged "viral marketing," despite UMG's position that such documents are irrelevant to any claim or defense in this case.

individuals actually involved with NetReach.  Given the lack of any evidence to support Veoh's belief that Mr. Urie's files will contain non-duplicative documents regarding UMG's posting of music videos to unlicensed sites for free, Veoh's motion should be denied.

### 6.  Jimmy Iovine

Veoh claims that Jimmy Iovine "makes the final calls on viral marketing" and has "significant involvement with widespread internet marketing efforts."  Veoh does not even bother to include as exhibits the documents that supposedly support these assertions.  Surely, if Veoh believed that these documents actually demonstrate Mr. Iovine's involvement in any issue relevant to this case, Veoh would have included them for the Court's consideration.  Veoh presumably chose not to provide the Court with the "evidence" of its assertions because any examination of the documents Veoh cites puts the lie to its assertions.  Veoh relies instead only on its purported descriptions of these documents.  Veoh takes enormous liberties with the truth in making its arguments, however.  For example, the document at Bates number UMG01229599, which Veoh cites twice as evidence of Mr. Iovine's importance as a potential document custodian, is a page in the middle of a spreadsheet with no relevance to the topics Veoh claims it reflects.  *See* Ledahl Decl., Ex. C.  Veoh's fabricated characterizations of such documents certainly cannot support its demands for additional burdensome discovery.

None of the documents cited by Veoh involves the one narrow possible category of "viral marketing" information that the Court has previously identified as potentially relevant - UMG giving away its videos for free to unlicensed websites.  On the contrary, the documents show the unsurprising fact that UMG (including one of its record labels, Interscope) makes business deals that involve the internet.  But as the Court has recognized, UMG's dealings with licensed websites are not the sort of "viral marketing" that could be relevant to this case.  Veoh does not even attempt to explain how dealings with Google, an idea for an "American Idol meets YouTube" website, or

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

a meeting about social networking have anything to do with UMG's alleged "viral marketing" of videos to unlicensed websites like Veoh.

Veoh also misleadingly suggests that the document Bates numbered UMG01329314 shows unlicensed distribution of a music video on YouTube. Veoh apparently believes that this e-mail proves Mr. Iovine makes the "final calls on viral marketing." That document is an e-mail from Interscope employee Andrew Mains (whose files UMG has reviewed and produced) to Mr. Iovine referring to a video that YouTube and UMG agreed to feature on YouTube's website. *See* Ledahl Decl., Ex. D (UMG01329314); Ex. E (UMG01255410, an e-mail thread between YouTube and Interscope employee Luke Wood). Not only is the e-mail irrelevant to Veoh's theory of "viral marketing," as further discussed below, the e-mail does not even suggest that Mr. Iovine had any role in deciding to have YouTube feature the video. Indeed, Veoh's citation of this document reveals the central problem with Veoh's motion. Veoh assumes, without any evidence, that simply because Mr. Iovine was forwarded information about a video, Mr. Iovine must have been the mastermind behind the whole marketing plan. But the e-mail cited by Veoh, as well as an additional e-mail about the Green Day/U2 video in question (attached as Exhibit E to the Ledahl Declaration) shows that Interscope employees Luke Wood and Andrew Mains were directly involved with the YouTube promotion. *UMG has already searched the files of both Luke Wood and Andrew Mains and produced thousands of responsive documents from each*. UMG has already searched the files of the persons most likely to have documents about the alleged "viral marketing" that Veoh seeks.

Furthermore, the e-mail about the Green Day/U2 video, when put into its actual context, reveals that Veoh has absolutely no evidence that Mr. Iovine, much less any other Interscope employee, engaged in the posting of music videos to unlicensed websites in order to make the video freely available to the internet community. UMG expressly agreed to allow YouTube to display the music video in question in exchange for special placement on YouTube's website. Nothing about this interaction suggests

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

any intent by UMG that the video be freely distributed throughout the internet by an unauthorized site like Veoh. On the contrary, this exchange shows that, when UMG chooses to put a music video on a website like YouTube for promotional purposes, UMG explicitly negotiates with the website. Veoh simply has no evidence that UMG engaged in the sort of "viral marketing" that the Court suggested could be relevant to damages in this case.

The documents cited by Veoh relating to Mr. Iovine have nothing to do with even the limited form of "viral marketing" that the Court has previously suggested could be relevant here. Further, Veoh has submitted no evidence to support its claim that Mr. Iovine "makes the final calls on viral marketing" or has "significant involvement with widespread internet marketing efforts." Veoh's speculative, fabricated assertions are insufficient to justify the burden and expense of additional time and money that UMG would have to spend to search and review Mr. Iovine's files. Veoh's motion should be denied.

### 7. <u>Courtney Holt</u>

Veoh claims that Mr. Holt is "a central figure in Plaintiffs' efforts to get Plaintiffs' content online through viral marketing efforts, in addition to numerous additional internet-related activities." Apparently Veoh believes that, because Mr. Holt (like UMG in general) has worked on some projects that involve the internet, his documents must be critically important. Veoh cannot simply label anything related to the internet as "viral marketing" and expect that the label alone is sufficient to justify the request for discovery.

The documents Veoh cites have little if anything to do with even the loosest definition of "viral marketing." Most of the documents relate to UMG's dealings with licensed websites or potential business partners, or in the case of MySpace, efforts to keep infringing content <u>off</u> of websites. These documents have nothing to do with Veoh's allegation that UMG widely distributed music videos for free to unlicensed

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

websites, including Veoh itself.[8]  Nor does a document from 2004 that mentions

Audible Magic in the context of monitoring peer-to-peer networks for infringing

content have anything to do with Veoh; while Veoh now uses this filtering service, the

technology by no means belongs to Veoh.  *See* Ledahl Decl., Ex. F (UMG00492094).

Veoh fails to submit any evidence that would justify the cost of UMG's search

of Mr. Holt's files.  The disparity between Veoh's meager showing, on the one hand,

and the significant burden on UMG, on the other hand, is further amplified by the

additional costs of capturing and reconstructing the files of a former employee.  Mr.

Holt left the employ of UMG on July 1, 2006.  Moore Decl., ¶ 3.  Because former

employees' files are not retained in active computers, UMG would be required to

retrieve the necessary data from computer back-up tapes and search for the former

employees' stored electronic files.  Lancaster Decl., ¶ 3.  This is a time-consuming,

multi-step process that would cost hundreds of thousands of dollars before any

attorney reviewed a single document.  *See id.*, ¶¶ 3-5.

Moreover, Mr. Holt left UMG around the same time that Veoh launched a beta

version of its service.  Veoh did not even officially launch its public website until

February 2007 – long after Mr. Holt had left UMG.  Thus, it is unclear what

documents in Mr. Holt's files could have any bearing upon Veoh's claim that UMG

surreptitiously posted music videos on Veoh.com.

Veoh has submitted no evidence in support of its claim that Mr. Holt is a

"central figure" in UMG's "viral-marketing activities."  None of Veoh's so-called

evidence suggests that Mr. Holt, who left UMG long before Veoh officially launched

its site, would have any relevant documents.  Once again, Veoh relies on little more

---

[8] The video that Veoh claims Holt said to spread "everywhere" was a video by UMG artist Eminem, released just days before the 2004 Presidential election, encouraging the public to vote in the election.  Indeed, the e-mail cited by Veoh (which Veoh does not bother to attach as an exhibit) shows that the video was of interest to the "Rock the Vote" campaign which encourages young people to vote.  *See* Ledahl Decl., Ex. G (UMG01336092).  The video was therefore unusual, and in any event, UMG has never claimed that Veoh's liability arises from infringement of the underlying works in that video.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

than speculation and conjecture, which is grossly inadequate to warrant the substantial burden of reconstructing and searching Mr. Holt's files. Veoh's unsupported motion should be denied.

## III. ISSUE NO. 2—PLAINTIFFS' SEARCH FOR RESPONSIVE DOCUMENTS

Request Nos. 98-99, 101, 103, 105, 107, 109-111, 113, 115, 117, 119, 121, 123, 125-127, 129, 130-140, 142, 153, 161-162, 164-165, 175-178, 182, 183, 184-187, 190-198, 200-201, 212-214, 216, 218, 221, 227-229, 235, and 238

### A. <u>Statement of Disputed Requests For Production and Plaintiffs' Responses</u>

Below are two examples[9] of the response Plaintiffs' provide to the Requests at issue in this section. Not only do these responses provide no indication about what was produced, they in no way suggests that Plaintiffs made a good faith reasonable effort to search for responsive documents.


## REQUEST FOR PRODUCTION NO. 79:

All documents evidencing, referring or relating to the allegations in paragraph 21 of the Complaint, that "Veoh engages in direct infringement and indirect infringement of Plaintiffs' copyrights".

## RESPONSE TO REQUEST FOR PRODUCTION NO. 79:

UMG incorporates by reference each of its General Objections. UMG further objects on the grounds that the documents requested are already within Veoh's possession, custody, and control, and therefore equally or more readily available to Veoh than to UMG. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence,

---

[9] A complete list of the requests and responses at issue in this section are attached to the supporting Ranahan Declaration at ¶ 9 and Exhibit F.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

in that it seeks documents "referring or relating to" this allegation. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific copyrights for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

Subject to and without waiving the foregoing objections, UMG will produce non-privileged responsive documents, if any, to the extent identified by a search of the files of specific employees and executives that UMG will identify utilizing specific search terms that UMG will identify.

**REQUEST FOR PRODUCTION NO. 148:**

All documents concerning Veoh, including but not limited to, documents indicating your initial awareness of the existence of veoh.com.

**RESPONSE TO REQUEST FOR PRODUCTION NO 148:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request as vague and ambiguous as to what constitutes documents "concerning" Veoh. UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or control. UMG further objects that the request seeks information

27

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel    Case No. CV 07-5744-AHM (AJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

that is already in Veoh's possession, custody or control, or reasonably available to Veoh. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material. UMG further objects to this request as duplicative of Request for Production No. 7.

Subject to and without waiving the foregoing objections, UMG will produce non-privileged responsive documents, if any, to the extent identified by a search of the files of specific employees and executives that UMG will identify utilizing specific search terms that UMG will identify.

### B. Veoh's Contentions of Points of Authorities

#### 1. Plaintiffs' Refusal To Conduct A Diligent And Good-Faith Search for Responsive Documents

Veoh served discovery designed to uncover the existence of facts and evidence providing specificity or support, if any, for Plaintiffs' claims. Instead of conducting a diligent and good faith search for responsive documents, however, Plaintiffs opted for evasiveness and non-cooperation. For example, in response to Veoh's straightforward Request No. 79 seeking documents relating to the allegation that "Veoh engages in direct infringement and indirect infringement of Plaintiffs' copyrights," Plaintiffs provided their illusory response that Plaintiffs "will produce non-privileged responsive documents, if any, to the extent identified by a search of the files of specific employees and executives that UMG will identify utilizing specific search terms that UMG will identify." This response is insufficient in that Plaintiffs do not indicate that they are making a good faith, reasonable effort to produce responsive documents.

Indeed, a search of Plaintiffs' document production reveals that Veoh is scarcely mentioned at all aside from press and news clippings. (Ranahan Decl. ¶ 5). In fact, of the 1.4 million pages that Plaintiffs' tout as a complete production, Veoh is mentioned a grand total of 300 times. None of these documents actually relate to alleged infringements, but are instead gratuitous press clippings and newsfeeds that offer no

factual support for Plaintiffs' claims. *Id.*

As this Court has noted in its March 24, 2008 Order in The *MySpace/Grouper* Action, regardless of search terms and custodians agreed to, "the rules governing the disclosure and discovery process are designed to be self-executing. Primary responsibility for ensuring the completeness of responses and production is allocated to the responding party." (3/24/08 Order (Docket 270)). The parties are obligated to make a good faith effort to produce all responsive documents:

> The ruling does not provide a "safe harbor" to UMG which excuses it from searching the records of custodians other than those named [in the order], regardless of whether their addition was or was not requested by MySpace in this motion. Responsibility for taking reasonable steps to ensure the completeness of its production—including identifying all appropriate custodians and preserving and searching their records—remains with UMG.
>
> (*Id.* at p. 2).

Likewise, UMG's obligation to ensure a complete production should not be supplanted by UMG's use of certain self-selected search terms and custodians. UMG should be ordered to make a diligent effort to locate and a produce all responsive, non-privileged documents, regardless of whether they are within the possession of certain specified custodians, are discovered after applying certain search terms, or would have otherwise been revealed through exercising basic diligence to ensure its complying with its discovery obligations.

During meet and confer discussions, Plaintiffs' counsel repeatedly insisted that it had no obligation to search files even where Plaintiffs' counsel knew responsive,

relevant documents existed, such as in the files of Harvey Geller,[10] where it decided that its burden would be outweighed by the benefit. Plaintiffs also suggested that their own searches for responsive documents were limited to incredibly narrow electronic searches performed using their self-selected custodians and search terms. (Ranahan Decl. ¶ 6 and Exh. D.) UMG's approach falls fall short of its discovery obligations, and is in contravention to the directive provided by this Court in The *MySpace/Grouper* Actions. Plaintiffs should be ordered to conduct a good-faith search for responsive documents notwithstanding its decision to use certain search terms and custodians.

### C. UMG's Contentions and Points of Authorities

Once again, Veoh repeats its assertion that UMG's discovery responses are somehow deficient because UMG chose to respond with specificity, rather than making vague claims of a "reasonable" and "diligent" search. As the Court is by now well aware, UMG employed a search of over three dozen custodians, using a broad list of search terms including "Veoh*", in addition to other collection efforts where appropriate to particular document requests. *See* Ranahan Decl., Ex. D. UMG's search methodology is certainly a reasonable and diligent search for a group of companies with thousands of employees like UMG.

Indeed, the Court recognized that UMG could not be expected to search for every potentially relevant document at the hearing regarding the parties' motions to compel on August 25, 2008. The Court asked Veoh, "they don't really have to look at every piece of paper in the company, do they?" Ledahl Decl., Ex. B (August 25, 2008

---

[10] As this Court noted in its November 4 Order denying Plaintiffs' *ex parte* application for a protective order foreclosing Geller's deposition "considering all the circumstances, it seems plausible that Geller may possess some relevant information not shielded from discovery by the attorney-client privilege or the attorney work-product doctrine." (Docket No. 201). The Court also explicitly stated in its November 4 Order that "Veoh may take Geller's deposition." Nevertheless, Plaintiffs have utterly refused to search Geller's files for responsive, non-privileged documents.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Hearing Transcript at 11:16-18).[11]  At the hearing, counsel for Veoh responded, "I agree with your Honor on that.  So, that's why in the responses they agreed to produce certain documents from certain employees who they will identify using certain search terms that they will identify."  *Id*. at 11:20-23.  UMG produced its lists of custodians and search terms months ago.  Yet, despite its obvious understanding of the Court's point at the hearing, Veoh continues to insist that UMG engage in some sort of broad, undefined search for all documents relating to Veoh.

Veoh's principal complaint is this section of its motion is that UMG did not produce enough documents with the term "Veoh" referenced.  As stated above, UMG searched the files of thirty-eight employees for any document with the term "Veoh*."  These individuals are the UMG employees most likely to have documents relevant to this case.  UMG produced all non-privileged documents that were identified by the search term "Veoh."  UMG cannot control the fact that its employees (apart from its lawyers) apparently did not have many discussions regarding Veoh.

Veoh's use of Request No. 79, which seeks all documents evidencing Veoh's infringement, as an exemplar demonstrates the false premise behind Veoh's motion.  Veoh simply assumes that UMG should have a store of documents directly responsive to this request.  It is not surprising, however, that UMG has few non-privileged documents that evidence Veoh's infringement.  By definition, those documents are in Veoh's possession, and UMG has still not received an adequate production of such evidence from Veoh.  Indeed, it is ironic that Veoh complains about inadequate production of documents regarding Veoh's infringing activities.  UMG has the same complaint, but the problem is not UMG's failure, but Veoh's ongoing efforts to withhold relevant discovery.  UMG made an extensive production of well over one million pages while Veoh's production is approximately one quarter the size of

---

[11] The Court further recognized that "the strategy of identifying custodians and using search terms is a very practical way to do this quickly and less expensively."  Ledahl Decl., Ex. B (August 25, 2008 Hearing Transcript at 16:18-20).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

UMG's,[12] and Veoh has resisted making a good faith production of internal communications, including e-mail communications between its employees.[13]

Veoh apparently believes that, because UMG had numerous documents in its possession referencing MySpace, UMG should have an equal number regarding Veoh. But Veoh ignores the facts that UMG had a license agreement with MySpace years before the litigation between the parties commenced, many UMG artists have MySpace profile pages, and UMG's record label Interscope entered a joint venture with MySpace (known as MySpace Records). In stark contrast, Veoh never had a license with UMG to use UMG's content and only launched its public internet site in 2007. A more appropriate comparison is Grouper, regarding which UMG produced approximately 1000 documents. Another point of comparison is the website Dailymotion, which Veoh identified as a competitor in connection with the parties' negotiation of a protective order in this case. The term "dailymotion.com" was a part of several of UMG's search strings, and that term appears less than 100 times in UMG's production. Given the scope of UMG's production, it is obvious that UMG employees (apart from lawyers) simply did not often discuss unlicensed websites like Veoh.

Veoh utterly fails to introduce a shred of evidence suggesting that UMG has a store of untapped Veoh-related documents somewhere in its possession. Indeed, the large number of documents about MySpace show that UMG searched the files of those individuals most likely to discuss websites where music videos could be posted. Further, even if Veoh had voiced some legitimate concern about the number of documents referencing "Veoh" in UMG's production, Veoh makes no suggestion

---

[12] Veoh's repeated complaint that UMG's production contains some news articles that UMG employees circulated is disingenuous. Veoh served hundreds of extremely broad requests for production. Indeed, Veoh does not (and cannot) go so far as to say the documents it criticizes are not responsive to at least one of Veoh's more than 240 document requests.

[13] UMG is optimistic that, now that the Court has issued its November 21, 2008 order granting UMG's motion to compel, further necessary discovery from Veoh will be forthcoming.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

whatsoever regarding how UMG should go about a search for further documents. Veoh apparently wants UMG to scrap its search methodology, the same methodology that the Court acknowledged is practical, quick, and less expensive, and simply start over. Veoh cites no legal authority in support of this interpretation of a "reasonable" and "diligent" search. Veoh's position is the exact opposite of a practical approach to discovery. Veoh's motion wastes UMG's and the Court's time, and should be denied.

## IV. ISSUE NO. 3– DISCOVERY RELATING TO PLAINTIFFS' ORGANIZATIONAL STRUCTURE AND IDENTIFICATION OF WITNESSES

### A. Statement of Disputed Requests For Production and Plaintiffs' Responses

**VEOH REQUESTS NOS. 222, 223**

**REQUEST FOR PRODUCTION NO. 222:**

Documents sufficient to identify your organizational and/or management structure currently, and for the past ten (10) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 222:**

UMG incorporates by reference each of its General Objections. UMG further objects to this request as overbroad and unduly burdensome in that it seeks UMG's organization and management structure for the past ten years. UMG further objects to this request on the grounds that the phrase "organizational and/or management structure" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 223:**

Documents sufficient to identify any and all relationships between all persons and/or entities related to you in any way, including but not limited to corporate and joint venture relationships.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 223:**

UMG incorporates by reference each of its General Objections. UMG further objects to this request because it is overbroad and unduly burdensome in that it seeks

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

information unrelated to the claims or defenses of any parry and is not reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request on the grounds that the phrase "relationships between all persons and/or entities related to you in any way" is vague and ambiguous.

### B. Veoh's Contentions and Points of Authorities

Through Request nos. 222 and 223, Veoh seeks persons who might be potential witnesses and possess discoverable documents.  Veoh is entitled to obtain all of Plaintiffs' current and complete organizational charts to identify individuals who may possess discoverable documents based on their job titles and duties, and whose files should be searched for responsive documents.   Instead of operating in good faith, UMG has instead produced various deficient documents, including incomplete sections of various organizational charts from unknown time periods, portions of organizational charts for various departments irrelevant to this action (e.g. "Administration" [UMG 269626]), or company charts on a macro-level that do not identify any individuals whatsoever.  This discovery is fundamental and non-objectionable, and Plaintiffs should be compelled to provide responses and documents immediately.

### C. UMG's Contentions and Points of Authorities

Veoh admits that UMG has produced several organizational charts in response to Veoh's document requests.  The Federal Rules do not oblige UMG to embellish its allegedly "deficient" organizational charts, or to create new documents at Veoh's command.  *See* F.R.C.P 34(b)(2)(E) (stating that electronically stored documents must be produced as they are kept in the ordinary course of business).

Furthermore, Veoh's request for documents "sufficient to identify any and all relationships between all persons and/or entities related to you in any way" is so broad and incomprehensible that UMG could not begin to formulate an appropriate search methodology to locate responsive documents even if such a production were appropriate.  Veoh's request makes no sense and seems to ask UMG to provide

34

documents reflecting every business transaction it has ever conducted.  This is an absurd and wholly unwarranted scope of discovery.  Veoh has already obtained discovery about UMG's business structure.  Its additional pursuit of Request Number 223 only illustrates the absurd overbreadth of Veoh's discovery demands.  UMG has produced the documents it was able to identify, using numerous custodians and search terms.  UMG's discovery obligations have been satisfied, and Veoh's motion should therefore be denied.

## V.    CONCLUSION

### A.    Veoh's Conclusion

Plaintiffs have failed and refused to include key custodians in their search or even complete a reasonable, good-faith search for responsive documents.  Plaintiffs should be compelled to provide the documents sought by this Motion, conduct a good-faith search for responsive documents and add the seven custodians discussed herein within ten days of the Court's order so that Veoh may prepare its defense.

### B.    UMG's Conclusion

UMG has already conducted a reasonable, and as the Court has recognized, practical, search for relevant, responsive documents.  UMG has already produced the vast majority of responsive documents that could be located in the files of the seven additional document custodians requested by Veoh.  Likewise, UMG has already produced the documents about Veoh that UMG could locate using this reasonable search methodology.  Veoh submits no actual evidence that supports its request that UMG spend hundreds of thousands more dollars searching for documents.  Instead, it bases its motion on speculation, conjecture and outright fabrication.  Veoh's motion should be denied.

Dated:  November 24, 2008          **WINSTON & STRAWN LLP**


By  _/s/ Erin R. Ranahan_____
       Michael S. Elkin
       Thomas P. Lane

35

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.

Dated:  November 24, 2008                    **IRELL & MANELLA LLP**


By  /s/ Brian Ledahl
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein
Attorneys for Plaintiffs
UMG RECORDINGS, INC.,
UNIVERSAL MUSIC CORP., SONGS OF
UNIVERSAL, INC.; UNIVERSAL-
POLYGRAM INTERNATIONAL
PUBLISHING, INC.; RONDOR MUSIC
INTERNATIONAL, INC.; UNIVERSAL
MUSIC – MGB NA LLC; UNIVERSAL
MUSIC – Z TUNES LLC; and
UNIVERSAL – MBG MUSIC
PUBLISHING LTD.