1   Rebecca Lawlor Calkins (SBN: 195593)
    Email: rcalkins@winston.com
2   Erin R. Ranahan (SBN: 235286)
    Email: eranahan@winston.com
3   **WINSTON & STRAWN LLP**
    333 South Grand Avenue, 38th Floor
4   Los Angeles, CA 90071-1543
    Telephone: 213-615-1700
5   Facsimile: 213-615-1750

6   Jennifer A. Golinveaux (SBN 203056)
    Email: jgolinveaux@winston.com
7   **WINSTON & STRAWN LLP**
    101 California Street
8   San Francisco, CA 94111
    (415) 591-1506 (Telephone)
9   (415) 591-1400 (Facsimile)

10  Michael S. Elkin (*pro hac vice*)
    Email: melkin@winston.com
11  Thomas P. Lane (*pro hac vice*)
    Email: tlane@winston.com
12  **WINSTON & STRAWN LLP**
    200 Park Avenue
13  New York, New York 10166
    (212) 294-6700 (Telephone)
14  (212) 294-4700 (Facsimile)

15  Attorneys for Defendant
    VEOH NETWORKS, INC.
16

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19                    **WESTERN DIVISION**

20

21  UMG RECORDINGS, INC., *et al.*,          )   **Case No. CV 07 5744 – AHM (AJWx)**
                                             )
22                Plaintiffs,                )   **JOINT STIPULATION PURSUANT**
                                             )   **TO LOCAL RULE 37-2 RE VEOH'S**
23         vs.                               )   **RENEWED MOTION TO COMPEL**
                                             )   **PRODUCTION OF DOCUMENTS**
24  VEOH NETWORKS, INC. *et al.*,            )   **RELATING TO FINANCIAL**
                                             )   **INFORMATION AND DAMAGES**
                                             )
25                Defendants.                )
                                             )   Date: 12/15/08
26                                           )   Time: 10:00 a.m.
                                             )   Crtrm: 690
27                                           )
                                             )   Discovery Cut-Off:   January 12, 2009
28                                           )   Pretrial Conference: April 6, 2009
                                             )   Trial Date:          April 21, 2009

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTORY STATEMENTS ................................................................ 1

    A.    Veoh's Introduction ................................................ 1

    B.    UMG's Introduction ................................................ 2

II.   ISSUE NO. 1--DOCUMENTS AND INFORMATION RELATING TO VALUATIONS OF THE ALLEGEDLY INFRINGED WORKS ................. 5

    A.    Statement of Disputed Requests For Production and Plaintiffs' Responses .............................................. 5

    B.    Veoh's Contentions and Points and Authorities ........................ 15

          1.   Plaintiffs' Financial Documents and Information are Highly Relevant to Plaintiffs' Damages Claims ......... 16

          2.   The Discovery Is Relevant to Veoh's Affirmative Defense of Copyright Misuse ................................. 18

    C.    UMG's Contentions and Points and Authorities ....................... 18

          1.   The Vast Majority of Documents Requested By Veoh Are Not Relevant to UMG's Damages ................. 19

    D.    Veoh Ignores UMG's Already Extensive Production ............. 22

          1.   Veoh's Unsubstantiated Allegations of Copyright Misuse Do Not Justify Veoh's Overreaching Discovery ............... 25

III.  ISSUE NO. 2--REQUESTS SEEKING INFORMATION REGARDING DEALS WITH THIRD PARTIES RELATING TO THE ALLEGEDLY INFRINGING WORKS ............................................................. 26

    A.    Statement of Disputed Requests For Production and Plaintiffs' Responses .............................................. 26

    B.    Veoh's Contentions and Points and Authorities ........................ 32

    C.    UMG's Contentions and Points and Authorities ....................... 32

IV.  ISSUE NO. 3--REQUESTS SEEKING INFORMATION ABOUT THE VALUE OF PROMOTING THE ALLEGEDLY INFRINGING WORKS OVER THE INTERNET ............................................................. 33

    A.    Statement of Disputed Requests For Production and Plaintiffs' Responses .............................................. 33

    B.    Veoh's Contentions and Points and Authorities ........................ 37

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

i

C. UMG's Contentions and Points and Authorities ...................................... 39

    1. Veoh Fails To Explain What Materials It Seeks ........................... 40

    2. UMG Has Already Made An Extensive Production Of Online Marketing Information .............................. 42

    3. Veoh's Requests for Production Seek Irrelevant Discovery ......... 43

    4. Veoh Fails To Show The Need For More Discovery ................... 48

V. ISSUE NO. 4--REQUESTS SEEKING INFORMATION REGARDINGPLAINTIFFS' EFFORTS TO PROTECT THE ALLEGEDLY INFRINGING WORKS ............................................ 49

A. Statement of Disputed Requests For Production and Plaintiffs' Responses ..................................................... 49

B. Veoh's Contentions and Points and Authorities ..................................... 55

    1. The Discovery Is Relevant to Plaintiffs' Efforts, If Any, To Mitigate ........................................... 55

C. UMG's Contentions and Points and Authorities ...................................... 56

VI. CONCLUSION ................................................... 58

A. Veoh's Conclusion ........................................... 58

B. UMG's Conclusion ........................................... 58

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Pursuant to Federal Rule of Civil Procedure 37(c) and Local Rule 37-2, Defendant Veoh Networks, Inc. ("Veoh"), and Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music—MGB NA LLC, Universal Music—Z Tunes LLC and Universal Music—MBG Music Publishing LTD ("Plaintiffs"), respectfully submit the following Joint Stipulation Regarding Veoh's Motion to Compel Production of Documents relating to Financial Information and Damages. The parties have met and conferred in good faith in an unsuccessful attempt to resolve this matter and now seek this Court's assistance.

## I.    INTRODUCTORY STATEMENTS

### A.    <u>Veoh's Introduction</u>

This motion to compel ("Motion") arises from Plaintiffs' steadfast refusal to produce responsive, relevant documents regarding the value of the works at issue in this action and any harm or damages allegedly suffered ((or lack thereof) as it relates to statutory damages.) Plaintiffs are challenging all aspects of Veoh's business in this lawsuit. There should be no question that Veoh is be entitled to explore every potentially relevant avenue to defend itself.[1]

This Motion seeks to compel the production of the following critical documents relating to Plaintiffs' alleged damages:

- valuations and analyses regarding the allegedly infringed works (Request Nos. 142, 190-191, 193-194, 196-197, 198, 200, 212-213, 227-229);

---

[1] Veoh provides a forum for, among other things, high quality, user generated video content on the Internet. From its inception, Veoh has remained committed to providing strong protections for intellectual property and works diligently with content owners to keep unauthorized works off of Veoh's service. As part of this effort, Veoh maintains a rigorous Digital Millennium Copyright Act ("DMCA") policy which includes promptly terminating access to allegedly infringing content upon proper notice, and promptly terminating any repeat infringers. Indeed, Veoh was recently held to be protected by the safe harbor of Section 512(c) of the DMCA in a similar lawsuit because of its strong DMCA policies, leaving the only available remedy to the plaintiff injunctive relief, though even that relief was moot as Veoh had already removed all allegedly infringing content at issue. *Io Group, Inc. v. Veoh Networks, Inc.*, 2008 U.S. Dist. LEXIS, 65915, No. 06-3926, slip op. at 20 (N.D. Cal. Aug. 27, 2008).

---

1

- documents relating to deals with third parties with respect to the allegedly infringed works (Request Nos. 98, 110, 126-127, 129, 130-132, 135-138);

- documents specifically relating to the value of the allegedly infringing works with respect to distribution over the internet, including on veoh.com (Request Nos. 161-162, 164-165, 167-168, 192, 201); and

- documents regarding Plaintiffs' efforts to protect the allegedly infringing works (Request Nos. 175, 177-178, 182, 184-187, 216, 218, 221, 235).

The documents sought by these Requests are critical so that Veoh may investigate Plaintiffs' alleged damages. To date, Plaintiffs' production, which Plaintiffs tout as a hefty 1.4 million pages, is filled largely with irrelevant data recycled from past productions irrelevant to Plaintiffs' claims in this action. For example, Plaintiffs produced thousands upon thousands of pages of gratuitous news clippings and articles from sources including Digital Music News, Billboard bulletins and Bob Lefsetz. (Declaration of Erin R. Ranahan ("Ranahan Decl.") ¶ 5). Plaintiffs should not be permitted to hide behind a large volume of worthless pages produced as a means to avoid searching for and producing the considerable number of vital documents that Veoh needs to prepare its defense. Because the discovery at issue in this Motion seeks information critical to Veoh's defense, Veoh respectfully requests that the Court grant Veoh's Motion.

## B. UMG's Introduction

Veoh's Renewed Motion to Compel is not merely renewed, but recycled. Veoh demands production of the same categories of documents that it demanded in its earlier Motion to Compel, which this Court denied. In denying Veoh's earlier Motion to Compel, this Court criticized Veoh's groupings of large categories of documents with incredibly scant argument supporting the production of those documents. In addition, the Court directed Veoh to consider the documents UMG had already produced before seeking to renew any portions of its motion. Veoh ignored the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Court's clear instructions.

Veoh's Renewed Motion still groups its requests into broad categories with scant argument to support or explain the need for further production. Indeed, Veoh reiterates, often literally, the same threadbare arguments that were rejected in its prior motion. Likewise, Veoh fails to explain how the extensive documents UMG has already produced are insufficient.[2] Despite this Court's admonitions, Veoh still makes no attempt to explain why those documents UMG has already produced are inadequate. Indeed, large segments of Veoh's motion are copied verbatim, or nearly verbatim, from Veoh's previous Motion to Compel.[3] For example, the final *four* paragraphs from Section IV(B) of this Joint Stipulation appear to be cut and pasted from Section IV(B)(2-3) of Veoh's previous Motion to Compel, with only a few words altered. Even typographical errors (such as missing and extra spaces in the citations to *Field v. Google* and *Effects Associates v. Cohen*) are copied from one brief to the next. UMG doubts that the Court expected it would simply resubmit the same brief after being admonished that its prior motion was not well taken.

Veoh's resubmission of the same arguments does not make them any more persuasive. The same facts still warrant denial of Veoh's motion. UMG has conducted a diligent search of the files of numerous employees and executives, using carefully-chosen, broad search terms, and has produced the responsive, non-privileged documents located in that search.[4] UMG has also produced various other categories

[2] Veoh's sole discussion of UMG's production consists of the complaint that UMG's 1.4 million pages include "gratuitous news clippings and articles." The presence of one category of documents that Veoh claims are unnecessary (though it cannot meaningfully demonstrate that such documents are not responsive to at least one of its more than 240 document requests) does nothing to prove the absence of other categories of documents Veoh contends are relevant. To analogize, simply because a deck of cards contains a three of diamonds does not prove the deck does not contain face cards. Regardless of the presence of some documents that Veoh now claims to be unnecessary, UMG has undisputedly produced numerous documents in the various categories at issue in this motion. Veoh completely ignores this production.
[3] UMG regrets that the Court is forced to review many of the same arguments UMG presented in response to Veoh's first motion to compel. Because Veoh has simply repackaged the same insufficient arguments it made before, the same responses that UMG provided previously still apply.
[4] The only exception to this approach is in connection with licensing negotiations. While UMG has produced license agreements, due to the sensitivity and irrelevance of

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

of responsive documents, including, for example, license agreements with third parties that licensed UMG's audiovisual content, and copyright registration information. Veoh still does not attempt to explain how UMG's production is insufficient, even though this Court cautioned in August, "[R]eally you should complete the process of going through their production first before you complain and seek relief." 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 10:24-11:1.

The documents Veoh purports to seek beyond what UMG has already produced are not relevant to the claims and defenses at issue in this case. Veoh repeats its assertions that additional discovery is necessary to evidence issues of damages and Veoh's affirmative defenses. However, Veoh makes no account of UMG's responses to these contentions in Veoh's previous Motion to Compel. Veoh's requested discovery is still not relevant to damages and Veoh's affirmative defenses; Veoh's repetition of the same arguments three months later is no more convincing than it was when the Court stated that Veoh's categories of "50, 60 pages of requests and then one page of argument" were "really poor in terms of presenting them to the Court." 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1), at 22:12-14, 23:13-14. Although Veoh's categories of requests are now slightly smaller, Veoh has simply split its already paltry sections of corresponding argument into smaller pieces. Such broad groupings of Requests for Production make no attempt to resolve the ambiguities of Requests such as "All documents … relating to all royalty statements…." (Veoh's Request for Production No. 212) This is hardly the "sensible" renewed motion the Court stated was necessary. Veoh's inability, after months of opportunity to review UMG's production, to explain why UMG's production is insufficient confirms that Veoh's demands for additional discovery are without merit and should be denied – this time with prejudice to prevent further resubmission of the same insufficient arguments.

negotiation documents – as discussed herein, UMG has not produced such documents located in its searches.

## II.    ISSUE NO. 1--DOCUMENTS AND INFORMATION RELATING TO VALUATIONS OF THE ALLEGEDLY INFRINGED WORKS

### A.    Statement of Disputed Requests For Production and Plaintiffs' Responses

*VEOH REQUEST NOS. 142, 190, 191, 193, 194, 196, 197, 198, 200, 212, 213, 227, 228, 229*

## REQUEST FOR PRODUCTION NO. 142:

All documents constituting, referring, or relating to any business analyses, including analyses regarding sales and profitability, conducted by or for you in connection with all agreements between you and all licensees of works owned or controlled by you.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 142:

UMG incorporates by reference each of its General Objections. UMG incorporates by reference each of its General Objections. UMG further objects to this request on the grounds that it is overbroad and unduly burdensome. UMG further objects to the extent that this request seeks information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request as vague and ambiguous as to the terms "business analyses" and "documents constituting, referring or relating to any business analyses." UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or control. UMG further objects to the extent that this request calls for information 12 that is subject to confidentiality agreements between UMG and third parties.

## REQUEST FOR PRODUCTION NO. 190:

All documents evidencing, referring or relating to any and all financial analyses you have performed or maintain relating to all artists who perform any allegedly infringed work.

5

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Renewed Motion To Compel      Case No. CV 07-5744-AHM (AJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**RESPONSE TO REQUEST FOR PRODUCTION NO. 190:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. The burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. Additionally, given that UMG has not definitively elected to pursue its actual damages, Veoh's requests for documents relating to UMG's finances are premature. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific works for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the ground that the term "financial analyses," as defined by Veoh, is overbroad and unduly burdensome. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 191:**

All documents evidencing, referring or relating to any and all financial analyses you have performed or maintain regarding distribution of compact discs containing any allegedly infringed work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 191:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to

6

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

lead to the discovery of admissible evidence. The burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. Additionally, given that UMG has not definitively elected to pursue its actual damages, Veoh's requests for documents relating to UMG's finances are premature. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific works for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the ground that the term "financial analyses," as the term is defined by Veoh, is overbroad and unduly burdensome. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 193:**

All documents evidencing, referring or relating to any and all financial analyses you have performed or maintain regarding advertising or other revenues paid by any third party to you or to any artist in connection with the performance of any allegedly infringed work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 193:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. The burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. Additionally, given that UMG has not definitively elected to pursue its actual

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

damages, Veoh's requests for documents relating to UMG's finances are premature.
UMG further objects to this request on the grounds that it is premature insofar as
UMG has not yet been able to identify all of the specific works for which UMG
alleges infringement in this action as the information to do so is possessed by Veoh
and not UMG. As a result, the nonprivileged documents UMG produces in response to
this request, if any, should not be construed as a representation by UMG that the
works referred to in such documents constitutes a complete list of UMG's copyrighted
works that have appeared on Veoh or as a representation that further factual
investigation and discovery will not reveal more of UMG`s copyrighted works that
have appeared on Veoh. UMG further objects to this request on the ground that the
term "financial analyses," as the term is defined by Veoh, is overbroad and unduly
burdensome. UMG further objects to this request on the grounds that the phrase
"evidencing, referring or relating to" is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 194:

All documents evidencing, referring or relating to any and all financial analyses
you have performed or maintain regarding sales of merchandise associated with any
allegedly infringed work or with any artist who performs or has performed any such
allegedly infringed work.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 194:

UMG incorporates by reference each of its General Objections. UMG further
objects that this request is overbroad, unduly burdensome, and seeks documents that
are neither relevant to the claims or defenses of any party nor reasonably calculated to
lead to the discovery of admissible evidence. The burden of production in response to
these requests greatly outweighs the potential relevance, if any, of the requested
material. Additionally, given that UMG has not definitively elected to pursue its actual
damages, Veoh's requests for documents relating to UMG's finances are premature.
UMG further objects to this request on the grounds that it is premature insofar as
UMG has not yet been able to identify all of the specific works for which for which

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the ground that the terms "financial analyses," as the term is defined by Veoh, is overbroad and unduly burdensome. UMG further objects to this request on the grounds that the phrases "merchandise associated with any allegedly infringed work" and "evidencing, referring or relating to" are vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 196:

All documents evidencing, referring or relating to any and all financial analyses you have performed or maintain regarding concert tours in which any allegedly infringed work is or has been performed.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 196:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. The burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. Additionally, given that UMG has not definitively elected to pursue its actual damages, Veoh's requests for documents relating to UMG's finances are premature. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific works for which for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG

9

that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the ground that the term "financial analyses," as the term is defined by Veoh, is overbroad and unduly burdensome. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 197:

All documents evidencing, referring or relating to any and all financial analyses you have performed or maintain regarding royalties paid to you or to any artist for the right to perform any allegedly infringed work on the radio.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 197:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. The burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. Additionally, given that UMG has not definitively elected to pursue its actual damages, Veoh's requests for documents relating to UMG's finances are premature. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific works for which for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the ground that

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

the term "financial analyses," as the term is defined by Veoh, is overbroad and unduly

burdensome. UMG further objects to this request on the grounds that the phrase

"evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 198:**

All documents evidencing, referring or relating to any and all financial analyses

you have performed or maintain regarding royalties paid to you or to any artist for the

right to perform any allegedly infringed work on television.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 198:**

UMG incorporates by reference each of its General Objections. UMG further

objects that this request is overbroad, unduly burdensome, and seeks documents that

are neither relevant to the claims or defenses of any party nor reasonably calculated to

lead to the discovery of admissible evidence. The burden of production in response to

these requests greatly outweighs the potential relevance, if any, of the requested

material. Additionally, given that UMG has not definitively elected to pursue its actual

damages, Veoh's requests for documents relating to UMG's finances are premature.

UMG further objects to this request on the grounds that it is premature insofar as

UMG has not yet been able to identify all of the specific works for which for which

UMG alleges infringement in this action as the information to do so is possessed by

Veoh and not UMG. As a result, the nonprivileged documents UMG produces in

response to this request, if any, should not be construed as a representation by UMG

that the works referred to in such documents constitutes a complete list of UMG's

copyrighted works that have appeared on Veoh or as a representation that further

factual investigation and discovery will not reveal more of UMG's copyrighted works

that have appeared on Veoh. UMG further objects to this request on the ground that

the term "financial analyses," as the term is defined by Veoh, is overbroad and unduly

burdensome. UMG further objects to this request on the grounds that the phrase

"evidencing, referring or relating to" is vague and ambiguous.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## REQUEST FOR PRODUCTION NO. 200:

All documents evidencing, referring or relating to any and all financial analyses you have performed or maintain regarding royalties paid to you or to any artist for the right to perform any allegedly infringed work in movies or films of any kind.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 200:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. The burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. Additionally, given that UMG has not definitively elected to pursue its actual damages, Veoh's requests for documents relating to UMG's finances are premature. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific works for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the ground that the term "financial analyses," as the term is defined by Veoh, is overbroad and unduly burdensome. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 212:

All documents evidencing, referring or relating to all royalty statements of any kind relating to the allegedly infringed works.

12

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Renewed Motion To Compel          Case No. CV 07-5744-AHM (AJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**RESPONSE TO REQUEST FOR PRODUCTION NO. 212:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. This request appears to call for an unreasonably large scope of documents which would be highly burdensome to locate, review, and produce, and which are of little, if any, relevance to the claims and defenses in this action. UMG further objects to the extent that this request calls for information that may be subject to confidentiality agreements between UMG and third parties. UMG further objects to this request on the grounds that it is premature insofar as UMG has not yet been able to identify all of the specific works for which for which UMG alleges infringement in this action as the information to do so is possessed by Veoh and not UMG. As a result, the nonprivileged documents UMG produces in response to this request, if any, should not be construed as a representation by UMG that the works referred to in such documents constitutes a complete list of UMG's copyrighted works that have appeared on Veoh or as a representation that further factual investigation and discovery will not reveal more of UMG's copyrighted works that have appeared on Veoh. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 213:**

All documents evidencing, referring or relating to any analysis or study by you or any third party acting at your direction and/or on your behalf, discussing the cause or causes of any change to your profits in connection with copyrighted music and/or music videos for any period within the past ten (10) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 213:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to

lead to the discovery of admissible evidence. Moreover, UMG objects that the phrases "evidencing, referring or relating to" and "profits in connection with copyrighted music and/or music videos" are vague and ambiguous and/or unintelligible. Additionally, the burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. UMG further objects to this request as it appears to request documents that are not in UMG's possession, custody or control. Given that UMG has not definitively elected to pursue its actual damages, Veoh's requests for documents relating to UMG's profits are premature. UMG further objects that this request seeks documents from a time period not relevant to this case.

**REQUEST FOR PRODUCTION NO. 227:**

All documents evidencing, referring or relating to any and all valuations of you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 227:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG objects to this request on the grounds that the terms "valuations" and "evidencing, referring or relating to" are vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 228:**

All documents evidencing, referring or relating to any and all analyses of your 15, actual or projected revenues, costs and profits for the past ten (10) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 228:**

UMG incorporates by reference each of its General Objections. UMG further objects to this request as being overbroad and unduly burdensome, in that, among other things, it seeks financial information for the past 10 years, and that it seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

14

objects to this request to the extent it requests documents that are not in UMG's possession, custody or control. Additionally, the burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 229:**

All documents evidencing, referring or relating to any and all revenues you have earned from advertising and/or marketing (including viral marketing) on the internet for the past ten (10) years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 229:**

UMG incorporates by reference each of its General Objections. UMG further objects to this request as being overbroad and unduly burdensome, in that, among other things, it seeks financial information for the past 10 years, and that it seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody or control. Additionally, the, burden of production in response to these requests greatly outweighs the potential relevance, if any, of the requested material UMG further objects to this request on the grounds that the terms "viral marketing" and "evidencing, referring or relating to" are vague and ambiguous.

**B.    Veoh's Contentions and Points and Authorities**

Plaintiffs improperly refuse to produce non-privileged documents on the subject of damages, including documents relating to Plaintiffs' exploitation of the purportedly infringing works, the value of Plaintiffs' copyrights, Plaintiffs' business plans and analyses.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## 1. **Plaintiffs' Financial Documents and Information are Highly Relevant to Plaintiffs' Damages Claims**

Financial documents and information relating to Plaintiffs' revenues from the works at issue, Plaintiffs' promotion and exploitation of the purportedly infringing works, and the value of Plaintiffs' copyrights are directly relevant to Plaintiffs' purported damages and mitigation of damages. During meet and confer conferences, Plaintiffs' counsel conceded the relevance of this information to a claim for actual damages, but justified Plaintiffs' refusal to produce such documents and information arguing that Plaintiffs had not yet definitively elected to pursue actual damages and as such, Veoh's requests were "premature." While Plaintiffs have now elected statutory damages, discovery regarding damages information is relevant regardless of this election.

The relevance of financial information to a claim for statutory damages has been repeatedly recognized by courts, including this Court. (Ranahan Decl. ¶ 3 and Exh. C (3/17/08 Order).) In its March 17, 2008 Order Re MySpace, Inc.'s Fourth Motion to Compel, the Court granted the defendant's motion to provide documents "reflecting the profitability of the allegedly infringed works." (3/17/08 Order, p.1).

As the court noted, even where Plaintiffs ultimately decide to seek statutory damages instead of actual damages, "[a] district court has wide discretion in awarding statutory damages for copyright infringement and is constrained only by the specified maxima and minima." *Id.* (citing *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir. 1990), cert denied, 498 U.S. 1109 (1991). As this Court also noted in its March 17 Order in The MySpace/Grouper Actions (Docket 112-6) ("March 17, 2008 Order"), statutory damages still must "bear some relationship to actual damages suffered." *Id.* (citing *Yurman Design, Inc. v. PAJ, Inc.* 262 F.3d 101, 113-114 (2d Cir. 2001); *Van Der Zee v. Greenidge*, 2006 WL 44020, *2 (S.D.N.Y. 2006).) Among the factors a court may consider are the revenues lost by the plaintiffs [and] the value of the copyright." *Van Der Zee, supra,* 2006 WL 44020, at *2; *see* 4

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   *Nimmer on Copyright* § 14.04 [B][1][a] (2005) ("the determination of statutory

2   damages within the applicable limits may turn upon such factors as … the revenues

3   lost by the plaintiffs as a result of the defendant's conduct and the infringers' state of

4   mind – whether willful, knowing or innocent."). As this Court also recognized in its

5   March 17, 2008 Order, "there is nothing in Section 504 to prevent a court from taking

6   account of evidence concerning actual damages and profits in making an award of

7   statutory damages within the range set out in subsection (c)." *Id.* at p. 2 (emphasis in

8   original). The financial information sought is therefore undeniably relevant, and like

9   in The *MySpace/ Grouper* Actions, should be provided by UMG here.

10      Plaintiffs additionally argue that such discovery is burdensome. The Court

11   rejected this argument in its March 17, 2007 Order, explaining that "on balance any

12   burden imposed on UMG in having to produce" the discovery sought was

13   "outweighed by the importance" of such discovery. As the court explained:

14      UMG apparently seeks the statutory maximum of $150.000 for each of

15      what UMG asserts are thousands of copyrighted works allegedly

16      infringed by MySpace. Evidence of the value of the copyrighted works

17      and UMG's lost profits, if any, is potentially vital to MySpace's ability to

18      properly defend itself against UMG's damages claims.

19      *Id.* at p. 3.

20      Like in The *MySpace/Grouper* Actions, Plaintiffs filed this action seeking the

21   statutory maximum of $150,000 for each of "thousands" of copyrighted works

22   allegedly infringed. Given the staggering amount of damages sought by Plaintiffs,

23   and the enormously burdensome discovery Veoh, a much smaller opponent, has been

24   required to undertake, there should be no debate that Plaintiffs must provide the

25   information sought regarding the value of the allegedly infringing works. As this

26   Court recognized in the *MySpace/Groupe* Actions, information evidencing of the

27   value of the copyrighted works at issue and Plaintiffs' lost revenues or lost profits is

28

17

"vital to" Veoh's "ability to properly defend itself against UMG's claims." *Id.* Veoh is
entitled to this discovery immediately.

### 2. The Discovery Is Relevant to Veoh's Affirmative Defense of Copyright Misuse

As Plaintiffs are aware, misuse of copyright, if found, would preclude Plaintiffs'
enforcement of certain copyrights during the period of misuse. *Practice Management
Information Corporation v. American Medical Association,* 121 F.3d 516 (9th Cir.),
cert denied, 522 U.S. 933 (1997). Copyright misuse occurs when a copyright holder
employs copyrights to engage in anti-competitive activity, including price-fixing,
unduly restrictive licensing, and other behavior that violates public policy. *In re
Napster, Inc. Copyright Litig.*, 191 F. Supp.2d 1087, 1109-1110 (N.D. Cal. 2002).

The discovery sought by Request Nos. . 142, 190, 191, 193, 194, 196, 197, 198,
200, 212, 213, 227, 228 and 229 includes documents and information relating to
Plaintiffs' deals and negotiations with third parties and is therefore directly relevant to
Veoh's copyright misuse defense. As Plaintiffs repeatedly remind this Court and
Veoh, Plaintiffs are a dominant worldwide force in the music industry, which also
makes Plaintiffs uniquely situated to engage in copyright misuse. Veoh is entitled to
discovery relating to its affirmative defenses and Plaintiffs should be compelled to
respond to this discovery.

### C. UMG's Contentions and Points and Authorities

Veoh seeks broad categories of documents, including documents "related to"
financial analyses of UMG's business, royalties, and UMG's revenues "earned from"
advertising or marketing on the internet.[5] Veoh asserts, with little if any explanation,
that these disparate financial documents are somehow relevant to determining UMG's
actual damages. UMG is not, however, seeking to recover its actual damages in this

---

[5] The latter Request, Veoh's Request for Production No. 229, is nonsensical. It is
unclear how UMG "earns" revenues from advertising or marketing on the internet,
which are typically services which UMG pays for, and would hence constitute costs,
not revenues. This sort of ambiguity illustrates the folly of Veoh's broad groupings of
Requests, with minimal explanation regarding that discovery's relevance and no
discussion of particular Requests.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

action.  Rather, UMG seeks statutory damages under the Copyright Act.  Veoh makes no meaningful effort to even explain the relevance of the discovery it seeks even to actual damages, much less the statutory damages UMG seeks here.  Rather than explain the relevance of the materials it seeks, Veoh falsely asserts that "Plaintiffs' counsel conceded the relevance of this information to a claim for actual damages."  Plaintiffs' counsel did no such thing.  Veoh requests a universe of UMG's financial records which reaches large swaths of documents wholly unrelated to the actual damages from Veoh's infringement, much less the statutory damages sought by UMG.

Moreover, UMG has already produced many financial documents responsive to these Requests.  Despite this Court's clear instruction to explain the particular areas where it contends UMG's production is deficient, Veoh makes no mention of UMG's already-extensive production.  Rather, Veoh contends, incorrectly, that "Plaintiffs improperly refuse to produce non-privileged documents on the subject of damages."

UMG has already produced documents more than sufficient for Veoh to analyze issues of damages in this case.  These documents include, among others, summaries of UMG's revenues from the download and streaming of music videos, and licenses that evidence UMG's licensing and royalty terms.  Ledahl Decl., ¶ 2.  Nonetheless, Veoh reiterates its demand that UMG produce documents in response to a host of Requests so vague and sweeping, that they could encompass every document tangentially related to UMG's finances.  In attempting to justify this broad-ranging discovery, Veoh never even mentions its actual discovery requests, nor explains the relevance of the materials sought.  This enormous, unsupported demand for discovery cannot be countenanced when UMG has already produced voluminous documents responsive to the very issues with respect to which Veoh seeks discovery.

### 1. The Vast Majority of Documents Requested By Veoh Are Not Relevant to UMG's Damages

Veoh posits that any documents even tangentially related to UMG's finances are "undeniably relevant."  Not surprisingly, Veoh cites no authority for its "give us every

19

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

document in your company" discovery strategy. This requested discovery includes *all documents relating to* "business analyses" in connection with UMG's licensing agreements,[6] *all documents relating to* any royalty statements relating to the works at issue,[7] *all documents relating to* valuations of UMG,[8] and *all documents relating to* any and all "financial analyses" of revenue sources from copyrighted works at issue, including such irrelevant revenue sources as merchandise sales or concert tours.[9] Veoh even requests the vague, and nearly unlimited, category of documents consisting of *all documents relating to* any and all analyses of revenues, costs, and profits,[10] a category, which read on its face, could include *any document* relating to *any* of UMG's revenues, costs, and profits. All told, Veoh's requested discovery would encompass the entire universe of UMG's financial documents. No court in a copyright case has compelled such broad discovery from a copyright holder.

First, Veoh's motion makes the false assumption that all such documents would even be relevant to a determination of actual damages. Veoh offers nothing to support such a sweeping assertion.[11] Certainly, Veoh cites no authority for the proposition that every document relating to the finances of a copyright plaintiff is necessarily relevant to a determination of actual damages.

Second, Veoh extends its misguided arguments by ignoring the fact that UMG is not pursuing its actual damages. Under the Copyright Act, UMG has the right to elect either actual or statutory damages. *See* 17 U.S.C. § 504(b-c) (2000). UMG has elected to pursue statutory damages in this case. Even if the broad discovery Veoh seeks were relevant to actual damages (it is not), compelling such discovery where UMG has elected statutory damages would even further inflict unnecessary burdens. Indeed, ordering discovery related to actual damages would obviate one of the

---

[6] Veoh's Request for Production No. 142.
[7] Veoh's Request for Production No. 212.
[8] Veoh's Request for Production No. 227.
[9] *See* Veoh's Requests for Production Nos. 190-91, 193-94, 196-98, 200, 228-29.
[10] Veoh's Request for Production No. 228.
[11] As noted above, Veoh falsely asserts that UMG somehow conceded that all of the discovery sought by Veoh's numerous listed requests would be relevant even to actual damages. UMG made no such concession. Ledahl Decl., ¶ 4.

primary purposes of electing statutory damages: avoiding the discovery burdens related to producing evidence of actual damages.[12]

Maximum statutory damages may be granted without any evidence of actual damages. *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) ("It is clear … that a plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiffs or of the profits reaped by the defendant.'") (*quoting Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)); *Microsoft Corp. v. PC Express*, 183 F. Supp. 2d 448 (D.P.R. 2001) (upholding award of maximum statutory damages with no mention of lost profits or revenues). In a possibly garbled, transcription of its argument from its earlier motion, Veoh suggests that the Second Circuit has held that statutory damages must "bear some relationship to actual damages suffered." Veoh states that this Court cited to the Second Circuit's decision in *Yurman Design*, *Inc. v. PAJ, Inc.* for this proposition, despite *Yurman Design* never appearing in the Court's order. Moreover, the contention for which Veoh purports to cite to *Yurman Design* never appears in that decision. *See Yurman Design v. PAJ, Inc.*, 262 F.3d 101, 113-114 (2d Cir. 2001). In fact, the *Yurman Design* decision holds 180 degrees the opposite. Specifically, in that case, the defendant challenged an award of statutory damages of $68,750 per work because defendant claimed that the damage amount "bears little relationship to the $19,000 in profits PAJ claimed to have earned on the jewelry at issue in [the] case." *Id.* at 113. Far from supporting Veoh's arguments here, the Second Circuit <u>rejected</u> the very argument Veoh tries to advance in citing the case. Specifically, the Court held that the statutory damage award need not be "merely compensatory or restitutionary." Thus, far from supporting Veoh, the *Yurman Design* case confirms that Veoh is overreaching and seeks unnecessary and wasteful discovery.

---

[12] For purposes of discussing the lack of legal merit of Veoh's argument, UMG assumes for purposes of argument that some of the discovery Veoh seeks might be relevant to actual damages. UMG does not, however, concede that such an assumption is correct.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

At most, actual damages are a factor a court *may* consider in setting statutory damages. In such an analysis, actual damages are only one, optional factor in determining statutory damages. *See* 4 Nelville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 14:04[A] (LexisNexis 2007) (noting that statutory damages are available "even under circumstances in which plaintiff's damages or defendant's profits are susceptible to precise evaluation"). As a result, a court should strike a different balance when considering the relevance and burden of discovery related to actual damages where a plaintiff has elected statutory damages, and those actual damages are a single, optional factor in damages. These principles do not contemplate allowing the tail to wag the dog as Veoh seeks here. Veoh would transform this single optional factor (among other much more important factors focused on Veoh's conduct) into the basis for massive and sweeping discovery of potentially millions of additional documents. The Court should not permit such an approach here.

### D.  **Veoh Ignores UMG's Already Extensive Production**

As noted above, when the Court denied Veoh's previous motion (demanding production of the same documents at issue here), the Court stated that "[R]eally you should complete the process of going through their production first before you complain and seek relief." 2008-08-25 Hearing Tr. (Ledahl Decl., Ex. 1) at 10:24-11:1. In responding to Veoh's prior motion, UMG pointed out that it had already made an extensive production that included many of the documents purportedly sought by Veoh. Veoh's current motion, however, reflects a complete refusal to follow the Court's direction. Veoh makes no attempt to explain what documents it has or has not received, nor even an attempt to show that it bothered to look at the documents produced. Veoh simply waited three months, then sought to resubmit the exact same arguments it had presented before. This is hardly a good faith effort to comply with the Court's directives.

As UMG explained when Veoh previously brought this same motion, regardless of the relevance of UMG's financial records or of evidence of actual damages, UMG

22

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  has already produced a very large number of financial documents, including

2  documents more than sufficient to establish UMG's *actual* damages, let alone

3  evidence sufficient to contest an actual damages factor in setting statutory damages.

4  For example, UMG has already produced detailed accountings of its digital revenues

5  and overall corporate finances.  Included in UMG's production to Veoh are monthly

6  reports listing UMG's digital revenues by revenue source (e.g., music video

7  downloads), and within each revenue source, by licensing partner (e.g., Yahoo!).  *See*

8  Ledahl Decl., Ex. 2.  UMG has also produced lists of revenues from the licensing of

9  music videos for online streaming, subdivided *by the individual music video*.  *See id.*,

10 Ex. 3 (2006 list of video streaming revenues by video).  Finally, UMG has produced

11 myriad information about its overall corporate finances, including quarterly profits

12 and losses.  *See, e.g.*, *id.*, Ex. 4 (UMG Operating Results, First Quarter 2006).

13      Crucially, UMG has also produced over 50 license agreements, which are the

14 best evidence of its actual damages.  *Id.* at ¶ 2.  These licenses contain UMG's terms

15 for the online streaming of its videos or for the sale by download of its videos.  Thus,

16 from these licenses, Veoh could readily calculate UMG's lost license fees by

17 multiplying these licensing rates by the number of times UMG's works have been

18 displayed and distributed by Veoh.  These lost license fees are the most readily

19 calculable component of actual damages.

20      Producing further, more detailed financial accountings – as Veoh's extremely

21 broad requests contemplate – would be incredibly burdensome and would not afford a

22 better estimation of UMG's actual damages.  In such circumstances, the Federal Rules

23 instruct that "the court must limit the frequency or extent of discovery … if it

24 determines that: the burden or expense of the proposed discovery outweighs its likely

25 benefit…."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  As noted above, Veoh's discovery

26 requests seek picayune financial records, such as revenues, profits and expenses by

27 copyrighted work and all documents *relating to* financial analyses of revenues from

28 particular income sources of individual copyrighted works.

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

23

Producing such individualized accountings would be an enormous undertaking. There will likely be hundreds, if not thousands, of copyrighted works at issue in this litigation. Ledahl Decl., ¶ 5. For each of these copyrighted works, UMG employees would need to collect tens of thousands of pages of financial documents reporting expenses and revenues. Ledahl Decl., Ex. 5 (Declaration Of Charles Ciongoli In Support Of UMG's Opposition To Veoh's Motion To Compel ("Ciongoli Decl."), ¶ 8.) Moreover, as most revenues and expenses are not allocated to individual copyrighted works, but are allocated by artist or album, accountings of revenues and expenses would need to be analyzed by employees for such allocation. *Id.* at ¶ 12. The thousands of hours of work by UMG employees and outside counsel that would be required to produce such documents, in addition to the great financial cost this would impose, would severely disrupt UMG's ongoing business. *Id.* at ¶ 6.[13]

Yet this extensive discovery would provide no better information as to UMG's actual damages than the documents UMG has *already produced*. Evidence of the revenues or profits UMG received from selling a particular compact disc, or UMG's costs pursuant to a record contract have little, if any, relation to the damages from an infringing performance of UMG music videos by Veoh. General revenues and costs from UMG's copyrighted works do not reflect the lost video license fees due to Veoh's infringement, and any effort to intuit the indirect harm to UMG's business from individualized accountings of revenues and profits would be incredibly difficult. Veoh already has the best evidence of UMG's actual damages in UMG's license

---

[13] Reading Veoh's requests literally, collecting all documents relating to revenues and expenses for even one copyrighted work is a monumental task. *See* Ledahl Decl., Ex. 5 (Ciongoli Decl., ¶ 8). There are numerous categories of cost information maintained at many locations, and these documents are, in most cases, not organized or maintained based on the particular copyrighted work to which they pertain. *Id.* at ¶ 9. Likewise, there are many different categories of revenue information, stored in different ways at different locations. *Id.* Collecting all of this information for one copyrighted work would require weeks of time from UMG employees in addition to the substantial effort required for counsel to review the material. *Id.* at ¶ 6. For the hundreds or thousands of works that will likely be at issue in this case, the task of collecting and reviewing the information Veoh seeks would require thousands of hours of UMG employee time and impose dramatic costs, likely in the millions of dollars. *Id.*

24

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    agreements, along with a host of other financial documents. The Court should reject

2    Veoh's efforts – unsupported by any showing of the insufficiency of UMG's existing

3    production – to compel further discovery of financial records that are marginally

4    relevant at best.

5          **1.**    **Veoh's Unsubstantiated Allegations of Copyright Misuse Do**

6                  **Not Justify Veoh's Overreaching Discovery**

7        Veoh also tries to justify its overreaching discovery by claiming that it is

8    relevant to Veoh's copyright misuse defense. Veoh offers no support for its allegation

9    of copyright misuse other than the unevidenced suggestion that, because UMG is a

10    "dominant" force in the music industry, it has the power to potentially misuse its

11    copyrights.[14] Veoh then tries to transform this empty assertion into a demand for

12    massive discovery regarding all of UMG's business activities. Once again, Veoh's

13    arguments fall flat.

14        The mere capacity to misuse copyrights – which Veoh has not even established

15    – is insufficient to establish any suggestion of a viable affirmative defense.[15] Nor are

16    the documents sought by Veoh relevant to establishing copyright misuse. As the

17    Ninth Circuit has held, copyright misuse arises from unduly restrictive licensing

18    provisions. *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.,* 121 F.3d 516, 520-21

19    (9th Cir. 1997). More recently, another court in this district examined the issue of

20    copyright misuse and concluded that "restrictive licensing provision[s]" are the basis

21    for a misuse defense, in the Ninth Circuit and elsewhere. *Metro-Goldwyn-Mayer*

---

22   [14] It is unclear what Veoh hopes to accomplish by its unsupported allegation of

23   "dominan[ce]." As Veoh knows, UMG is one of several large players in the music industry, and dominance alone is not enough to establish market power. *Forro*

24   *Precision, Inc. v. Int'l Business Mach. Corp.*, 673 F.2d 1045, 1058-59 (9th Cir. 1982) (holding that a 35% market share "provides little or no support to a claim of market

25   power."); *Morgenstern v. Wilson*, 29 F.3d 1291, 1296 n.3 (8th Cir. 1994) ("[A]s a matter of law, absent other relevant factors, a 30% market share will not prove the

26   existence of monopoly power.").
[15] Per the very case Veoh cites, anti-competitive activity alone is insufficient to

27   establish copyright misuse. "[G]eneralized antitrust violations will not suffice. … [A defendant] must establish a 'nexus between … alleged anti-competitive actions and

28   [plaintiffs'] power over copyrighted material." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1108 (N.D. Cal. 2002) (*quoting Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672, 686 (S.D.N.Y. 1979)).

*Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 996 (C.D. Cal. 2006). Thus, the only documents even potentially relevant to Veoh's purported misuse defense are license agreements, such as those UMG has already produced.[16] Veoh's mere invocation of an irrelevant defense cannot support its broad and overreaching discovery efforts.

## III. ISSUE NO. 2--REQUESTS SEEKING INFORMATION REGARDING DEALS WITH THIRD PARTIES RELATING TO THE ALLEGEDLY INFRINGING WORKS

### A. Statement of Disputed Requests For Production and Plaintiffs' Responses

*VEOH REQUEST NOS. 98, 110, 126-127, 129, 130-132, 135-138*

### REQUEST FOR PRODUCTION NO. 98:

All documents, including all documents constituting, referring, or relating to all proposals, negotiations and agreements, between you and SendMe, Inc.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 98:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

### REQUEST FOR PRODUCTION NO. 110:

All documents, including all documents constituting, referring, or relating to all proposals, negotiations and agreements, between you and Best Buy.

---

[16] Veoh also cannot meaningfully invoke this defense because it never had nor sought any license from UMG. Veoh cannot complain of restrictive licensing when it never ever tried to license, but resorted directly to infringement.

26

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## RESPONSE TO REQUEST FOR PRODUCTION NO. 110:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

## REQUEST FOR PRODUCTION NO. 126:

All documents, including all documents constituting, referring, or relating to all proposals, negotiations and agreements, between you and any and all wireless service providers, including but not limited to documents relating to the licensing, delivery and/or distribution of works owned or controlled by you.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 126:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request as vague and ambiguous as to the term "wireless service providers." UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

## REQUEST FOR PRODUCTION NO. 127:

All documents, including all documents evidencing, referring or relating to all proposals, negotiations and agreements between you and any and all persons, relating to the licensing, delivery and/or distribution of works owned or controlled by you.

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 129:**

All documents, including but not limited to all documents constituting, referring, or relating to all proposals, including but not limited to licensing proposals, negotiations and agreements, between you and any and all persons, including but not limited to Sony BMG Music Entertainment, EMT Group, Ltd., Warner Music Group Corp., and any wireless service providers, regarding Total Music.

**RESPONSE TO REQUEST FOR PRODUCTION NO 129:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

**REQUEST FOR PRODUCTION NO. 130:**

All documents, including but not limited to letters of inquiry, between the DOJ and you, referring or relating to Total Music.

**RESPONSE TO REQUEST FOR PRODUCTION NO 130:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request seeks information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. The request is therefore overbroad and unduly burdensome as well. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material.

**REQUEST FOR PRODUCTION NO. 131:**

All documents referring or relating to Total Music, including but not limited to any and all business and strategic plans, analyses, and financial and performance forecasts.

**RESPONSE TO REQUEST FOR PRODUCTION NO 131:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material

**REQUEST FOR PRODUCTION NO. 132:**

Documents sufficient to identify all forms of digital music distribution offered, or to be offered, by Total Music.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request as vague and ambiguous as to the phrase "all forms of digital music distribution offered." UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

## REQUEST FOR PRODUCTION NO. 135:

All documents, including but not limited to all documents constituting, referring, or relating to all proposals, including but not limited to licensing proposals, negotiations and agreements, between you and any person, regarding Pressplay.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 135:

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

## REQUEST FOR PRODUCTION NO. 136:

All documents, including but not limited to letters of inquiry, between the DOJ and you, referring or relating to Pressplay.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 136:

UMG incorporates by reference each of its General Objections. UMG further objects that this request seeks information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. The request is therefore overbroad and unduly burdensome as well. UMG further objects to the extent that this request calls for information that is subject to

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

confidentiality agreements between UMG and third parties.

**REQUEST FOR PRODUCTION NO. 137:**

All documents referring or relating to Pressplay, including but not limited to any and all business and strategic plans, and financial and performance forecasts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

**REQUEST FOR PRODUCTION NO. 138:**

All documents, including but not limited to all internal communications, "communication guidelines," emails, and memoranda evidencing, referring or relating to Pressplay.

**RESPONSE TO REQUEST FOR PRODUCTION NO 138:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody, or control. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material. UMG further objects to the extent that this request

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

31

calls for information that is subject to confidentiality agreements between UMG and third parties. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

## B.    <u>Veoh's Contentions and Points and Authorities</u>

Veoh's hereby incorporates its arguments in the foregoing Section II(B), which sets forth the reasons why the information sought by these Requests is "vital" to Veoh's investigation.  Plaintiffs have refused to produce documents relating to proposals and negotiations with third parties, which would, among other things, demonstrate what Plaintiffs themselves view as a reasonably royalty for Plaintiffs' allegedly infringed works.  The value which Plaintiffs ascribe to the allegedly infringing works is best determined by investigating the various arrangements in which UMG has entered deals with third parties regarding the same works.  Likewise, the manner in which UMG structures its online ventures is directly relevant to the alleged damage UMG has suffered for the same works allegedly appearing on Veoh. Thus, Plaintiffs should be compelled to produce the documents sought by Request Nos. *98, 107, 110, 119, 126-127, 129, 130-132, 135-138*.

## C.    <u>UMG's Contentions and Points and Authorities</u>

Veoh's single paragraph of argument is woefully insufficient to justify the production of documents in response to the fourteen Requests for Production covered in this section.  These Requests include, among other documents, *all documents relating to* proposals, negotiations, and agreements between UMG and wireless device providers,[17] and *all documents relating to* proposals, negotiations, and agreements between UMG and third parties *relating to* the licensing, delivery, or distribution of works.[18]  The production of all such negotiation documents would be incredibly burdensome, would implicate third party confidentiality interests, and would not provide additional relevant information beyond that included in the licensing agreements UMG has already produced.

---

[17] Veoh's Request for Production No. 126.
[18] Veoh's Request for Production No. 127.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Veoh contends that the "arrangements in which UMG has entered deals with third parties" and "the manner in which UMG structures its online ventures" are relevant to the amount of damages in this case. Even assuming this is true, the information Veoh seeks is already contained in the more than 50 license agreements UMG has already produced. Ledahl Decl. ¶ 2. Again, and in derogation of this Court's clear direction, Veoh makes no effort to explain how UMG's existing production of license agreements is insufficient to evidence reasonable royalties for the licensing of UMG's works. Requiring UMG to produce the negotiations that led up to these licensing agreements would impose a heavy burden on Plaintiffs while affording Veoh markedly inferior evidence to that UMG has already produced.[19]

## IV. ISSUE NO. 3--REQUESTS SEEKING INFORMATION ABOUT THE VALUE OF PROMOTING THE ALLEGEDLY INFRINGING WORKS OVER THE INTERNET

### A.    Statement of Disputed Requests For Production and Plaintiffs' Responses

*VEOH REQUEST NOS. 161-162, 164-165, 167-168, 192, 201*

**REQUEST FOR PRODUCTION NO. 161:**

All documents concerning the benefit or value to Plaintiffs of having works owned or controlled by you available, exploited or included, on any website, including any video streaming website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 161:**

UMG incorporates by reference each of its General Objections. UMG also objects that the request for "documents concerning the benefit or value" of posting works controlled by UMG is vague and ambiguous. UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or

---

[19] Veoh makes no mention of the possible relevance of documents relating to license negotiations to its supposed defense of copyright misuse. For reasons articulated in Section II(C)(3), evidence of UMG's negotiations with third parties cannot form the basis of a defense of copyright misuse by Veoh. Veoh would need to show misconduct in negotiations between UMG and Veoh itself, which has nothing to do with UMG's dealings with third parties.

33

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

control. UMG further objects that the request is overbroad, unduly burdensome, and that it seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 162:**

All documents concerning the benefit or value to any artist of having the artist's works exploited or included, on any video streaming website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 162:**

UMG incorporates by reference each of its General Objections. UMG further objects that the request is overbroad, unduly burdensome, and that it seeks documents that are neither relevant to the claims or defenses of any parry nor reasonably calculated to lead to the discovery of admissible evidence in that, among other things, "artists," as that term is defined by Veoh, may not be the owners of the copyrights at issue in this case. UMG also objects that the request for "documents concerning the benefit or value" is vague and ambiguous. UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or control.

**REQUEST FOR PRODUCTION NO. 164:**

All documents concerning your actual or proposed efforts to promote your business, artists, and works, including the copyrighted sound recordings and copyrighted musical compositions, on veoh.com or any other internet site including video streaming websites or file sharing websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO 164:**

UMG incorporates by reference each of its General Objections. UMG further objects that the request is overbroad, unduly burdensome, and that it seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG objects to this request on the grounds that the terms "promote," "video streaming websites," and "file sharing websites," are vague and ambiguous.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## REQUEST FOR PRODUCTION NO. 165:

All documents concerning your revenues and/or profits derived by your exploitation, sale, or licensing of music videos.

## RESPONSE TO REQUEST FOR PRODUCTION NO 165:

UMG incorporates by reference each of its General Objections. UMG further objects that the request is overbroad, unduly burdensome, and that it seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence, in that, among other things, it is not limited as to time or scope.

## REQUEST FOR PRODUCTION NO. 167:

Documents sufficient to show your revenues generated from copyrighted sound recordings and copyrighted musical compositions that you uploaded to veoh.com.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 167:

UMG incorporates by reference each of its General Objections. UMG further objects that the request is vague and ambiguous, overbroad, unduly burdensome, and that it seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request as vague, ambiguous, unintelligible, and/or argumentative to the extent it suggests that UMG posts its works to Veoh, authorizes its works to be posted to Veoh, or receives revenue from the uploading of its copyrighted works to Veoh.

## REQUEST FOR PRODUCTION NO. 168:

Documents sufficient to show the revenues generated from copyrighted sound recordings and copyrighted musical compositions that you did not upload to veoh.com.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 168:

UMG incorporates by reference each of its General Objections. UMG further objects that the request is overbroad, unduly burdensome, and that it seeks documents

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

that are neither relevant to the claims or defenses of any party nor reasonably

calculated to lead to the discovery of admissible evidence. UMG further objects to the

extent that this request calls for information that is subject to confidentiality

agreements between UMG and third parties.

**REQUEST FOR PRODUCTION NO. 192:**

All documents evidencing, referring or relating to any and all financial analyses

you have performed or maintain regarding digital downloads, distribution, or other

digital exploitation, either of any allegedly infringed work or of any compilation

containing any such allegedly infringed work.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 192:**

UMG incorporates by reference each of its General Objections. UMG further

objects that this request is overbroad, unduly burdensome, and seeks documents that

are neither relevant to the claims or defenses of any party nor reasonably calculated to

lead to the discovery of admissible evidence. The burden of production in response to

these requests greatly outweighs the potential relevance, if any, of the requested

material. Additionally, given that UMG has not definitively elected to pursue its actual

damages, Veoh's requests for documents relating to UMG's finances are premature.

UMG further objects to this request on the grounds that it is premature insofar as

UMG has not yet been able to identify all of the specific works for which UMG

alleges infringement in this action as the information to do so is possessed by Veoh

and not UMG. As a result, the nonprivileged documents UMG produces in response to

this request, if any, should not be construed as a representation by UMG that the

works referred to in such documents constitutes a complete list of UMG's copyrighted

works that have appeared on Veoh or as a representation that further factual

investigation and discovery will not reveal more of UMG's copyrighted works that

have appeared on Veoh. UMG further objects to this request on the ground that the

term "financial analyses," as the term is defined by Veoh, is overbroad and unduly

burdensome. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 201:**

All documents evidencing, referring or relating to any and all business plans or marketing plans that reference or reflect efforts by you to promote any of your copyrighted works or any artists under contract with you using the internet and/or any internet site.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 201:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request on the grounds that the terms "reflect" and "evidencing, referring or relating to" are vague and ambiguous and render the request overbroad and unduly burdensome. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

### B. Veoh's Contentions and Points and Authorities

Veoh's hereby incorporates its arguments in the foregoing Section II(B), which sets forth the reasons why the information sought by these Requests is "vital" to Veoh's investigation. Veoh likewise is entitled to information regarding Plaintiffs' specific efforts to promote its works over the internet, to determine what type of value is gained from the allegedly infringing works appearing on Veoh and other internet sites.

Veoh seeks information regarding the efforts by Plaintiffs or their artists to use Veoh and/or similar sites to upload the same works at issue in this action, through the internet at no charge, for their own marketing purposes. This Court has previously recognized the significance of UMG's viral marketing to discovery regarding UMG's alleged statutory damages in The *MySpace/Grouper* Actions. (Ranahan Decl. ¶¶ 2-3

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

and Exhs. A-B).  In The *MySpace/Grouper* Actions, the defendant argued that if UMG's viral marketing efforts included leaking free links (e.g., through social networking sites) to the same recordings that UMG was claiming damages for, such would provide evidence that UMG has not actually been damaged.  The Court agreed, noting that despite UMG's election of statutory damages, if the defendant could demonstrate that UMG did not lose any profits because it was already permitting the same recordings to be freely viewed on the internet, such evidence would be a "a factor the court can consider in determining what amount of statutory damages to award." (*Id.* at 62:24-63:4).

Such evidence not only bears on the legitimacy of Plaintiffs' alleged damages, Plaintiffs' viral marketing activities are highly relevant to Veoh's affirmative defenses, including estoppel, unclean hands, and implied license.  "A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out … by silence or inaction." *Field v. Google*, 412 F. Supp.2d 1106, 1116 (D. Nev. 2006). Information evidencing Plaintiffs' own marketing of works with the intent that they be virally distributed to other sites is clearly relevant as evidence that Plaintiffs should be estopped from asserting the claims herein.

Obtaining information about viral marketing is also relevant to Veoh's unclean hands defense.  Uploading music videos to internet sites for marketing and promotion, then suing those same sites for copyright infringement is plainly inequitable.  Veoh is entitled to viral marketing discovery to develop this affirmative defense.

The requests at issue are additionally relevant to Veoh's implied license defense.  A copyright owner may grant a nonexclusive license impliedly through conduct. *See Effects Assoc., Inc. v. Cohen*, 908 F. 2d 555, 558-59 (9th Cir. 1990).  Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it.  Field v. Google, Inc., 412 F.Supp. 2d 1106, 1116 (D. Nev. 2006).  Clearly,

38

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Plaintiffs' knowing, viral marketing of the works at issue by posting them on sites including Veoh is highly relevant here. Veoh is entitled to discovery from all key custodians on this issue.

The question of what value was added as a result of any purportedly infringing content appearing on Veoh or other internet sites is critical. If such content was placed there by Plaintiffs themselves, or at their direction, in an effort to promote Plaintiffs' own artists, which added value to UMG, Veoh is entitled to know about it. It is likely Plaintiffs' recognition of the devastating consequences of having their viral marketing activities exposed, not "vagueness" or "ambiguity," that lies at the heart of Plaintiffs' efforts to block Veoh's efforts to obtain this discovery. Plaintiffs should be compelled to provide further responses immediately.

## C.     UMG's Contentions and Points and Authorities

Like MySpace and Grouper, Veoh tries to cobble together a defense theory in this case based upon UMG's purported "viral marketing" activities. In reality, just as was the case in the *MySpace* and *Grouper* actions, this "theory" is far more a vehicle to demand massive amounts of costly discovery than a legitimate defense in this case. First, like MySpace and Grouper, Veoh groups together a broad array of activity and calls it "viral marketing." It appears that what Veoh really seeks is all documents about any online marketing of any kind. For example, Veoh's request number 161 seeks "All documents concerning the benefit or value to Plaintiffs of having works owned or controlled by you available, exploited or included, on any website, including any video streaming website."[20] In support of its broad discovery demands, Veoh puts forth the same tired theories of relevance that MySpace and Grouper relied upon, trying to suggest that evidence relating to UMG's so-called "viral marketing" activities could somehow support defenses of estoppel, unclean hands or implied license, or could somehow be relevant to the damages inquiry. As explained in detail

---

[20] Likewise, Veoh's Request for Production No. 168 seeks the dubious, and possibly limitless category of "Documents sufficient to show the revenues generated from copyrighted sound recordings and copyrighted musical compositions you did *not* upload to veoh.com."

39

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Renewed Motion To Compel     Case No. CV 07-5744-AHM (AJWx)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

below, UMG's purported viral marketing activities – even if Veoh's theories about UMG's activities were proven – could not support Veoh's defenses and thus are not relevant for purposes of discovery here. This is particularly true in light of UMG's already extensive production regarding its on-line marketing activities, summarized in part below, but which included a search for documents containing the word "Veoh." (UMG undertook a similar search in the *MySpace* and *Grouper* actions for documents containing the names of those websites, among others, all of which has also been produced to Veoh.) Veoh cannot demonstrate any need for further production. Indeed, as with the other Sections of this Motion, Veoh does not even attempt to explain why UMG's existing production is inadequate, ignoring the Court's express instructions.

### 1.    <u>Veoh Fails To Explain What Materials It Seeks</u>

Throughout its cursory argument, Veoh simply refers generally to "viral marketing" as though that term had some precise meaning that could properly define the scope of its requests consistent with Veoh's obligations under Federal Rule 34. In fact, Veoh seems to lump together a wide variety of concepts. The Court has previously encountered similar issues in the *MySpace* and *Grouper* matters, but UMG offers this brief discussion for purposes of clarifying the nature of the issues. UMG respectfully submits that, although it has already produced extensive materials regarding its online marketing activities (as discussed further below), none of the categories of material categorized by Veoh as "viral marketing" is relevant for purposes of discovery.

### ● <u>Posting Of Content Vs. Posting Of Comments</u>

As the Court recognized in connection with the *MySpace* and *Grouper* actions, the term "viral marketing" is often loosely used by defendants to refer to any number of different possible activities. One key distinction that the Court recognized previously is the difference between posting a copy of a particular video on a web site and merely posting some text or a link to another web site. For example, as the Court

Winston & Strawn LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-1543

recognized, "viral marketing" might include individuals going onto a particular web site and posting laudatory comments about a newly released album, such as "You should check out this great new album from [performer]. I think it's fantastic." Similarly, a marketer could post a link on a website suggesting that users click the link to, for example, obtain more information and possibly listen to a sample of music at UMG's own website. As the Court recognized in the *MySpace* and *Grouper* actions, such postings are far from any relevant issues in this case. Nonetheless, Veoh pursues all such information here.

As the Court knows, UMG has an express written policy against the posting of actual content onto websites except under certain circumstances (which will be discussed in greater detail below). *See* Ledahl Decl., Ex. 6 (UMG's Video policy). This policy has been in effect since before Veoh even operated a web site. *Id.* The Court recognized in the *Grouper* matter that only the actual posting of content itself (not comments or links) could possibly be relevant to the issues in a case such as this involving UMG's claims against an infringing site. We discuss the specific legal arguments Veoh cursorily presents below. However, as the Court has previously recognized, UMG's activities to market its content through posting of comments or other information other than the content itself cannot support any of Veoh's theories.

● **Postings On Veoh Vs. Other Sites**

An additional issue that the Court previously recognized is the important distinction between possible interactions between UMG and Veoh and possible interactions between UMG and other internet sites. As the Court recognized, to the extent that any of UMG's online marketing activities might be relevant, only those directly involving Veoh are likely to have any meaningful impact on this case. Indeed, as discussed in greater detail below, the theories that Veoh relies upon to support this discovery turn on direct interactions between UMG and Veoh, not on interactions between UMG and some third party. Thus, while Veoh might be able to construct arguments about a particular work if UMG had actually posted that work

41

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

onto Veoh's site, the same cannot be said about potential postings of UMG content onto other, third-party sites.

### ● <u>Postings On Licensed Sites Vs. Unlicensed Sites</u>

Even with respect to alleged postings of UMG content onto other, third-party websites, Veoh fails to address the important distinction between licensed and unlicensed sites. As the Court will recall, UMG has license agreements with many web sites that permit display of UMG content under certain circumstances. UMG has already produced numerous license agreements detailing such arrangements. Ledahl Decl., ¶ 4. As the Court is aware, UMG is compensated for the display of its content on these licensed sites, typically at a set rate for each viewing. The Court previously acknowledged that UMG's posting of content onto such sites would not be relevant to defenses like those asserted by Veoh here. As the Court knows, copyright law imposes no "fairness doctrine" requiring that if UMG licenses content to one site, it must do so for all others. Moreover, Veoh does not even suggest that it ever sought such a license. Indeed, Veoh contends it has no need for any such license. As discussed in greater detail below, Veoh offers no authority for the proposition that UMG's provision of content pursuant to a license agreement could somehow immunize Veoh's unauthorized use of the same content. Similarly, Veoh cannot explain how such activity pursuant to license agreements could be relevant to damages issues here.

### 2. <u>UMG Has Already Made An Extensive Production Of Online Marketing Information</u>

Once again, Veoh's argument presumes that UMG has categorically refused to produce any information in response to the Requests at issue. As with most of the issues presented in this motion, had Veoh reviewed UMG's extensive production, it would have discovered that UMG has in fact produced thousands of documents relating to its online marketing efforts. Indeed, as a result of its diligent search for relevant information, UMG has already produced documents relating to its online

42

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

distribution efforts, *see, e.g.,* Ledahl Decl., Ex. 7 (document reflecting UMG's online distribution of videos); online marketing summaries, *see, e.g.*, *id.*, Ex. 8 (example online marketing summary); documents from the NetReach division of UMGD (which handles online marketing activities for many of UMG's record labels), *see, e.g.*, *id.*, Ex. 9 (document relating to NetReach); and documents regarding UMG's policies for online distribution of its content, *see, e.g.*, *id.*, Ex. 6 (UMG's Video Policy). Veoh never explains why this extensive production is incomplete or what relevant materials Veoh believes have been excluded from UMG's production. As with its other arguments, Veoh simply repeats its requests.

UMG has also already searched for documents relating to Veoh, for example, across a broad range of appropriate employees and executives. *Id.* at ¶ 3. These would include (if they existed) documents about uploading videos onto Veoh. Moreover, as was the case with Grouper, Veoh already has the email address of every user who has ever posted a video onto Veoh – that information is a required part of Veoh's sign-up process before a user can upload any videos. *Id.* at ¶ 6. Thus, Veoh can already search its own files for any postings by users with UMG email addresses to look for postings on Veoh's site by UMG employees. Veoh does not suggest that it lacks such information. Veoh apparently seeks extensive additional documentation about any of UMG's interactions with web sites other than Veoh. UMG has already produced extensive records reflecting its interactions with a number of websites, including MySpace and Grouper. *Id.* at ¶ 3. As set forth in greater detail below, further discovery into UMG's interactions with websites other than Veoh is irrelevant and unnecessary.

### 3. Veoh's Requests for Production Seek Irrelevant Discovery

Veoh purports to seek a broad range of discovery regarding UMG's alleged "viral marketing" activities. Veoh makes no effort to discuss the specific merits of any of the actual requests, nor of UMG's objections thereto. Instead, Veoh simply claims broadly that "viral marketing" or online promotion is relevant to various

43

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

defenses.  Though its moving papers are sorely lacking in clarity, UMG expects that, like MySpace and Grouper, Veoh hopes to find some evidence that UMG posted copies of its videos on internet sites where others might be able to obtain copies of them.  As discussed above, UMG has already searched for information regarding its interactions with Veoh.  Thus, Veoh's requests are either moot, or Veoh is seeking information about UMG's interactions with other sites.  Veoh apparently believes that such interactions by UMG would somehow immunize Veoh's infringing conduct. Veoh asserts (in only the most cursory fashion) four separate theories in support of the relevance of online marketing discovery: implied license, estoppel, unclean hands, and damages.  In fact, any meaningful analysis of these issues reveals that so-called "viral marketing" activities in dealing with other websites could not be relevant to any of these four theories.

### a.  Online Marketing Discovery Is Irrelevant To An Implied License Defense

Implied licenses arise only when (1) a copyright holder creates a copyrighted work at the request of another and (2) provides that work with the intention that the requestor will copy and distribute the work. *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (noting that an implied license will arise where: "'(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work'") (quoting *Lulirama Ltd, Inc. v. Axcess Broad Sews.*, 128 F.3d 872, 879 (5th Cir. 1997)).  Veoh does not suggest that this circumstance applies here or that the online marketing discovery it seeks can support such a claim.  Obviously, Veoh does not suggest UMG creates its works at Veoh's request.  Moreover, as discussed above, UMG has already searched for evidence of its interactions with Veoh.  Veoh fails to explain how UMG's interactions with sites other than Veoh could possibly give rise to any defense of implied license.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Even if Veoh's "best case" hypothesis were true – a UMG employee posted a video on some unlicensed internet site – Veoh never explains how such a posting could create an implied license upon which Veoh may rely. Unsurprisingly, Veoh cites no case that finds an implied license under such circumstances. Where Veoh has no involvement with UMG, it has no legal ground to suggest that an implied license arises. Thus, this defense provides no basis for Veoh to seek discovery of UMG's interactions with other web sites.[21]

### b. <u>Online Marketing Discovery Is Irrelevant To Estoppel</u>

Veoh additionally argues that online marketing discovery is "highly relevant to Veoh's … [affirmative defense of] estoppel." The four elements necessary to an estoppel defense are: "(1) the party to be estopped [UMG] must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 105 (9th Cir. 1960)). Veoh does not and cannot explain how online marketing about which Veoh has—and had—no knowledge supports a defense grounded on reasonable reliance. Veoh cannot suggest that it relied on any conduct by UMG. Instead, Veoh is fishing after-the-fact for conduct about which it had no knowledge. No discovery sought by Veoh will evidence an estoppel defense because Veoh cannot identify any conduct upon which it relied so as to create an estoppel. Additional discovery will not cure this failing; Veoh simply cannot allege or contend that UMG ever indicated approval of Veoh's mass infringement.

---

[21] Even if Veoh could show the necessary interactions with a UMG employee, Veoh would also have to show that any UMG employee posting a video was actually acting as an agent for UMG and that, through their agency, could somehow provide Veoh with an implied license. Veoh could not make such a showing. UMG's employees and others working with UMG have no authorization to post UMG music videos on unlicensed internet sites. UMG has a video policy that disallows such postings. *See* Ledahl Decl., Ex. 6 (UMG's Video Policy). Thus, any employee who posted a video contrary to the policy would be acting outside the scope of his or her employment.

Veoh attempts to rely upon *Field v. Google, Inc.* to support its position, but that reliance is misplaced. *Field* involved a very unique set of facts in which the plaintiff admittedly set out to manufacture an infringement claim against Google by utilizing certain technical features of Google's system to deliberately cause Google to make a copy of Field's work. *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1113 (D. Nev. 2006). Specifically, Field communicated directly with Google by setting certain features of his web site to expressly permit Google to scan the site and create a cached copy of the page, then Field claimed that this copying and display of the copied material by Google was infringement. *Id.* These unique facts have no application here. Veoh cannot claim that it somehow relied on some as-yet undiscovered instance in which UMG allegedly posted a video on some web site other than Veoh. Indeed, Veoh cannot credibly claim that it was even aware of such an interaction with another web site (and if it was it has no need for discovery about the interactions). In *Field*, the Court found that Google relied directly on the conduct by Field which was knowingly communicated by Field to Google through the settings on his web site. *Id.* at 1117. Here, Veoh can make no similar arguments.

### c. <u>Online Marketing Discovery Is Irrelevant To Unclean Hands</u>

Veoh states that evidence of online marketing also bolsters Veoh's affirmative defense of unclean hands. Beyond this *ipse dixit*, Veoh never explains this argument except to offer the conclusory assertion that "[u]ploading music videos to internet sites for marketing and promotion, then suing those same sites for copyright infringement is plainly inequitable." To establish unclean hands, "a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiffs' conduct injured the defendant." *Grokster*, 518 F. Supp. 2d at 1223 (citing *Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)). Veoh never bothers to explain how online marketing supports any of these. At best, Veoh's theory of unclean hands could only relate to videos uploaded

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

by UMG to Veoh's site. Veoh never explains or suggests how UMG's online marketing efforts generally could constitute "inequitable conduct" by UMG, how such marketing relates to claims against Veoh, or how such conduct injured Veoh. Simply put, Veoh's theory lacks any support. Veoh must proffer more than the name of a defense to support its discovery requests.

### d. Online Marketing Is Irrelevant To Damages

Veoh suggests that UMG's online marketing activities could somehow affect UMG's actual damages in this action. First, UMG's actual damages are not a necessary element of statutory damages. Indeed, as a case relied upon by Veoh (Veoh misrepresents the case's holding) states, "statutory damages are not meant to be merely compensatory or restitutionary." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001). Even if actual damages were a proper consideration for assessing statutory damages, however, here, UMG's online marketing activities with respect to other websites have no bearing on UMG's actual damages. UMG's actual damages (were it actually seeking them) would be primarily measured based upon the licensing revenue that Veoh did not pay for its unauthorized exploitation of UMG's copyrighted works. Moreover, any effect of online marketing on the royalties UMG receives to license its works is already accounted for in the real-world licenses UMG has negotiated. These license agreements are better evidence of actual damages than evidence of tangential factors that might have affected the ultimate terms of the license agreements. And per these agreements, licensed web sites pay licensing fees whether or not UMG also posts copies of the content on other web sites. Veoh can evaluate this issue for itself – it already has the license agreements. Given these basic and indisputable facts, UMG's actual damages from Veoh's infringement do not change regardless of whether UMG posted a particular work on some other third-party internet site. Thus, Veoh's claim that so-called "viral marketing" discovery is relevant to damages is false.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### 4. <u>Veoh Fails To Show The Need For More Discovery</u>

As discussed above, Veoh's requests for online marketing discovery seek irrelevant information. Notwithstanding this fact, UMG has already produced thousands and thousands of pages of discovery regarding its online marketing efforts. Indeed, UMG has already produced the more than 1,000,000 pages of documents it produced in the *Grouper* and *MySpace* actions in response to document requests largely identical to those propounded by Veoh. And UMG did not stop there: In order to ensure that it had undertaken a good faith search compliant with its obligations under the Federal Rules, UMG undertook additional searches—including searches of additional custodians within UMG's marketing department whose documents presumably respond to Veoh's vague requests—and produced hundreds of thousands of additional pages of documents responsive to Veoh's requests. Veoh brought the exact same motion it pursues now before it had even reviewed UMG's documents. The Court denied Veoh's motion and directed it to review the documents before bringing complaints to the Court. Veoh completely ignored the Court's direction and simply re-submitted the same arguments. Without in any way discussing the adequacy of any of UMG's extensive production, Veoh demands that UMG produce still more. Veoh must do more than simply request more documents. Veoh must show that additional discovery beyond that already produced is needed. *See Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167-68 (S.D.N.Y. 2004) (denying request for additional discovery even though it was relevant because requesting party had not shown that the additional discovery was needed in light of the discovery already provided). Here, Veoh asks for some unspecified category of materials that could potentially require UMG to search the files of all of its thousands of employees to try to find needles in the haystack. Veoh has already received a massive production. It fails to show the need even for the discovery UMG has already provided, much less for UMG to pursue even more discovery at significant expense. Just as the Court instructed in August, Veoh should first review the discovery it has

48

already received. Then, if it believes it can make a good faith showing of the need for even more, it can present actual evidence and argument to the Court instead of merely repeating its document requests. Veoh's present motion makes no such showing and should be denied.

## V. ISSUE NO. 4--REQUESTS SEEKING INFORMATION REGARDING PLAINTIFFS' EFFORTS TO PROTECT THE ALLEGEDLY INFRINGING WORKS

### A. Statement of Disputed Requests For Production and Plaintiffs' Responses

*VEOH REQUEST NOS. 175, 177-178, 182, 184-187, 216, 218, 221, 235*

**REQUEST FOR PRODUCTION NO. 175:**

All documents concerning your efforts to identify, monitor, or block content on any website, including but not limited to veoh.com, for the presence of copyrighted works owned or controlled by you, including but not limited to your efforts through the use of a third party vendor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 175:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, UMG objects to this request on the grounds that the phrase "identify, monitor, or block content .. for the presence of copyrighted works" is vague and ambiguous and/or is unintelligible. UMG further objects to this request as vague and ambiguous as to what constitutes "documents "concerning" UMG's efforts. UMG further objects to the extent that this request seeks documents that are not in UMG's possession, custody or control. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**REQUEST FOR PRODUCTION NO. 177:**

All documents with artists, including with artists' agents or representatives, pertaining to attempts by Plaintiffs to block or remove works that were posted, reproduced, distributed, performed, displayed or adapted online or in digital media with the implicit or explicit authorization of artists or their representatives. For purposes of this Request, "attempt by Plaintiffs to remove" includes the use of DMCA Notices, cease and desist letters, communications with a hosting site, or otherwise, and "attempts by Plaintiffs to block" includes the inclusion of data (including, but not limited to digital fingerprint files) in a database that provides electronic media identification, content recognition, and/or copyright management services, including but not limited to, Audible Magic.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 177:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence in that, among other things, "artists;" as that term is defined by Veoh, may not be the owners of the copyrights at issue in this case. UMG further objects that the term "DMCA Notices" is vague and ambiguous, and that it calls for a legal conclusion. UMG objects that the term "documents with artists" is vague, ambiguous, and/or unintelligible and that this request as a whole is vague, ambiguous, and/or unintelligible.

**REQUEST FOR PRODUCTION NO. 178:**

All documents pertaining to the rights of artists, including but not limited to, documents that grant, deny, reflect, or relate to permission to artists, to upload or IS approve the uploading of, or otherwise not object to the uploading of, copyrighted works owned or controlled by you online or to otherwise allow or authorize their copyrighted works to be included in user-generated videos or to be reproduced, distributed, performed, displayed, posted, or adapted online or in digital media.

50

**RESPONSE TO REQUEST FOR PRODUCTION NO. 178:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence, in that, among other things, this request seeks "All documents pertaining to the rights of artists." UMG objects that this request calls for a legal conclusion. UMG objects to the term "user-generated videos," "copyrighted works owned or controlled by you online," and "digital media" are vague, ambiguous, unintelligible, and/or overbroad and unduly burdensome and that this request as a whole is vague, ambiguous, and/or unintelligible.

**REQUEST FOR PRODUCTION NO. 182:**

All documents constituting or memorializing the terms of Plaintiffs' settlement of the action in the Central District of California entitled *UMG Recordings, Inc. et al, v. Bolt, Inc. et al.*, Case No. CV 06-06577.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 182:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, UMG responds that *UMG Recordings, Inc., et al, v. Bolt, Inc. et al.,* Case No. CV 06-06577 is an active case.[22]

**REQUEST FOR PRODUCTION NO. 184:**

All documents between you and SoundExchange, Inc. pertaining to license fees and copyright royalties related to the online distribution or digital public performance of sound recordings, including but not limited to, communications and documents provided to SoundExchange in connection with the case In the Matter of Digital

WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

---

[22] According to Pacer, The Bolt case was closed as of 11/6/08.

Performance Right in Sound Recordings and Ephemeral Recordings, Docket No. 205-1 CRB DTRA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 184:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to the phrase "documents between you and SoundExchange, Inc." as vague and ambiguous. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

**REQUEST FOR PRODUCTION NO. 185:**

All documents in your possession submitted by third parties to the Copyright Royalty Board in the case *In the Matter of Digital Performance Right in Sound Recordings and Ephemeral Recordings*, Docket No. 205-1 CRB DTRA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 185:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to the extent that this request calls for information that is subject to confidentiality agreements between UMG and third parties.

**REQUEST FOR PRODUCTION NO. 186:**

All documents pertaining to disbursements to artists of any proceeds you received from copyright infringement litigation settlements or resulting from claims or litigation of copyright infringement by you against others.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 186:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that

are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects that this request violates the privacy rights of third parties and/or any confidentiality obligations to third parties.

**REQUEST FOR PRODUCTION NO. 187:**

All documents, including but not limited to, budgets, financial reports, financial projections and analyses, pertaining to proceeds you received and/or anticipate, expect, plan, or hope to receive from copyright infringement settlements or resulting from claims or litigation of copyright infringement by you against others.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 187:**

UMG incorporates by reference each of its General Objections. UMG objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material.

**REQUEST FOR PRODUCTION NO. 216:**

All documents evidencing, referring or relating to your policies and practices for ensuring that music and music videos created by your artists do not infringe the copyright of any other party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 216:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Any purported infringement by UMG, UMG Artists, and/or UMG's actions to prevent such infringement are not the subject of this litigation. UMG further objects to this request on the grounds that the phrases "evidencing, referring or relating to" and "music and music videos created by your

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1    artists" are vague and ambiguous.

2    **REQUEST FOR PRODUCTION NO. 218:**

3    All documents produced in *In Re Napster, Inc. Copyright Litigation*

4    *multidistrict litigation*, Case No. C MDL-00-1369 MHP (including *UMG Recordings,*

5    *Inc. et al. v. Hummer Windblad Venture Partners et al.*, Case No. C 04-1166 MHP;

6    *UMG Recordings, Inc. et al. v. Bertelsmann AG et al.*, Case No. C 04-1351 MHP;

7    *Jerry Lieber et al. v. Bertelsmann AG et al.*, Case No. C 04-1671 MHP; *Capitol*

8    *Records, Inc. et al. v. Bertelsmann AG et al.*, Case No. C 04-2121 MHP).

9    **RESPONSE TO REQUEST FOR PRODUCTION NO 218:**

10   UMG incorporates by reference each of its General Objections. UMG further

11   objects that this request is overbroad, unduly burdensome, and seeks documents that

12   are neither relevant to the claims or defenses of any party nor reasonably calculated to

13   lead to the discovery of admissible evidence.

14   **REQUEST FOR PRODUCTION NO. 221:**

15   All documents produced in *UMG Recordings, Inc., et al. v. Grouper Networks,*

16   *Inc., d/b/a Grouper.com et al.*, Case No. CV 06-06561.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 221:**

18   UMG incorporates by reference each of its General Objections. UMG further

19   objects that this request seeks information that is not relevant to the claims or defenses

20   of any party and is not reasonably calculated to lead to the discovery of admissible

21   evidence. The request is therefore overbroad and unduly burdensome as well.

22   Subject to and without waiving the foregoing objections, UMG will produce non-

23   privileged responsive documents, if any, to the extent identified by a search of the

24   files of specific employees and executives that UMG will identify utilizing specific

25   search terms that UMG will identify.

26   **REQUEST FOR PRODUCTION NO. 235:**

27   All documents evidencing, referring or relating to actual or threatened litigation

28   by you concerning alleged copyright infringement of another person, including

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

54

without limitation any cease and desist letters, take down notices or other correspondence relating to such threatened or actual litigation, and all pleadings, briefs, discovery responses, declarations and affidavits filed or served by you in any such legal proceeding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 235:**

UMG incorporates by reference each of its General Objections. UMG further objects that this request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to this request to the extent it requests documents that are not in UMG's possession, custody or control, and/or are publicly available to Veoh. UMG further objects to this request to the extent it calls for the production of privileged attorney-client communications, attorney work product, or otherwise privileged or protected material. UMG further objects to this request on the grounds that the phrase "evidencing, referring or relating to" is vague and ambiguous.

**B.      Veoh's Contentions and Points and Authorities**

Veoh's hereby incorporates its arguments in the foregoing Section II(B), which sets forth the reasons why the information sought by these Requests is "vital" to Veoh's investigation.  Further, as explained below, Veoh has a right to documents regarding Plaintiffs' efforts to protect their allegedly infringing works through mitigation.

**1.      The Discovery Is Relevant to Plaintiffs' Efforts, If Any, To Mitigate**

Plaintiffs have a duty to mitigate.  *See Express, LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 973-74 (C.D. Cal. 2006) (recognizing duty to mitigate in copyright infringement action); *Goldenberg v. Doe*, 731 F. Supp. 1155, 1160 (E.D.N.Y. 1990) (same); *TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc.*, 142 P.3d 209, 212 (Wash. Ct. App. 2006) ("The doctrine of mitigation of damages . . . prevents

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   an injured party from recovering damages that the injured party could have avoided if

2   it had taken reasonable efforts after the wrong was committed.").

3        Veoh's Request Nos. 175, 177-178, 182, 184-187, 216, 218, 221, 235 seek

4   documents that would demonstrate Plaintiffs' efforts to protect their works in various

5   litigations and other circumstances.  Plaintiffs, however, refuse to respond to Requests

6   that would require Plaintiffs to demonstrate their efforts, if any, to protect the works at

7   issue or prevent or reduce any alleged damages by utilizing the DMCA notification

8   procedures.  If Plaintiffs had simply sent a DMCA Notice to Veoh, such works would

9   have been promptly removed.  Instead, Plaintiffs elected to forego this route, seeking

10  to run-up any alleged damages.

11       Indeed, what is likely Plaintiffs' complete failure to mitigate goes hand in hand

12  with Plaintiffs' viral marketing strategy, and would also operate to provide leverage in

13  a strategy by Plaintiffs to extract inflated license fees from alleged infringers, and

14  running up damages for mass-infringement suits like this one.  Clearly, such discovery

15  is relevant and necessary.

16      **C.**    **UMG's Contentions and Points and Authorities**

17       Veoh claims that discovery regarding UMG's efforts to identify, monitor, or

18  block content,[23] in addition to discovery regarding UMG's copyright litigations,[24] is

19  relevant to a purported duty to mitigate damages.  First, Veoh falsely equates a

20  supposed duty to mitigate damages with a duty to prevent the infringement of

21  copyrights.  No case creates such a requirement.  Veoh's suggestion to the contrary

22  attempts to turn copyright law on its head; rather, Veoh itself has a duty not to infringe

23  others' copyrights.  Veoh attempts to muddle this basic principle by conflating a

24  plaintiff's duty to mitigate *damages* with a supposed duty to prevent the infringement

25  of its copyrights – a duty which does not exist.

26       Veoh contends that, because a general duty to mitigate damages exists, UMG

27  should have prevented Veoh's infringement of its copyrights, by somehow

28

---

[23] *See* Veoh's Request for Production No. 175.
[24] *See* Veoh's Requests for Production Nos. 182, 184-87, 218, 221, 235.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   "protecting" its content.  And consequently, per Veoh's confused logic, evidence of

2   UMG's efforts to protect its content is an appropriate subject for discovery.  But Veoh

3   can cite no authority for the proposition that it is a copyright holder's obligation to

4   prevent the infringement of its copyright or that such information is relevant discovery

5   that would support any defense asserted by Veoh in this action or otherwise limit

6   UMG's recovery.

7          The duty to mitigate refers to a plaintiff's obligation to avoid needless damages

8   from a harm imposed by the defendant, not a duty to avoid the harm in the first place.

9   Indeed, as a leading text on remedies notes, "[t]he rule that defendant is not liable for

10  avoidable consequences of his wrongdoing … is often discussed in terms of plaintiff's

11  duty to mitigate *damages*."  Douglas Laycock, *Modern American Remedies* 96 (Aspen

12  2002) (emphasis added).  That is, while a defendant may not be liable for *damages* a

13  plaintiff could have avoided, there is no obligation for a plaintiff to have worked to

14  prevent defendant's wrongdoing in the first place.  Here, UMG had no obligation to

15  prevent Veoh from infringing its copyrights, by searching its website for infringing

16  videos, or otherwise.  This principle is especially clear, where, as in this case, the

17  "protection" of UMG's content that Veoh suggests UMG had an obligation to

18  implement would have likely been burdensome and costly.

19         Further, Veoh makes no meaningful allegation that UMG failed to mitigate its

20  *damages* from Veoh's infringement.  There is no explanation offered – nor could there

21  be – for how "efforts to protect [Plaintiffs'] works" or "utilizing the DMCA

22  notification procedures" could have mitigated even UMG's *actual* damages, such as

23  by allowing UMG to recoup its lost licensing fees from Veoh's performance of UMG

24  videos.  The possible relevance of such information is even more remote in this case

25  because UMG has elected to pursue statutory damages.  Veoh's attempt to invoke this

26  legal theory provides no support for its vast, overreaching discovery demands.

27

28

# VI. CONCLUSION

## A. <u>Veoh's Conclusion</u>

Plaintiffs have failed and refused to provide discovery sufficient to allow Veoh to investigate Plaintiffs' alleged damages. Plaintiffs should be compelled to provide the documents sought by this Motion within ten days of the Court's order so that Veoh may prepare its defense.

## B. <u>UMG's Conclusion</u>

Veoh's Renewed Motion to Compel rests on the same, conclusory, arguments offered in the Motion this Court denied in August. Despite the three months that have passed since, Veoh still fails to show that it has reviewed the documents UMG has already produced, or to explain how UMG's production is deficient. The blatant recycling of Veoh's Motion to Compel, in contravention of this Court's directions, is wholly inappropriate. UMG respectfully requests that the Court deny Veoh's Renewed Motion to Compel with prejudice and, pursuant to Federal Rule of Civil Procedure 37, award UMG its costs and attorney's fees incurred in responding to the instant Motion – for the second time.


Dated: November 24, 2008          **WINSTON & STRAWN LLP**


By /s/ Erin R. Ranahan_____
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.


Dated: November 25, 2008          **IRELL & MANELLA LLP**


By /s/ Brian Ledahl_____
Steven A. Marenberg
58

Elliot Brown
Brian Ledahl
Benjamin Glatstein
Attorneys for Plaintiffs
UMG RECORDINGS, INC.,
UNIVERSAL MUSIC CORP., SONGS OF
UNIVERSAL, INC.; UNIVERSAL-
POLYGRAM INTERNATIONAL
PUBLISHING, INC.; RONDOR MUSIC
INTERNATIONAL, INC.; UNIVERSAL
MUSIC – MGB NA LLC; UNIVERSAL
MUSIC – Z TUNES LLC; and
UNIVERSAL – MBG MUSIC
PUBLISHING LTD.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

59