Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    vs.<br><br>VEOH NETWORKS, INC., *et al.*,<br><br>    Defendants. | **Case No. CV 07 5744 – AHM (AJWx)**<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 RE VEOH'S RENEWED MOTION TO COMPEL VERIFIED INTERROGATORY RESPONSES**<br><br>Date: 12/15/08<br>Time: 10:00 a.m.<br>Crtrm: 690<br><br>Discovery Cut-Off: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

**Page**

**I.** INTRODUCTORY STATEMENTS .......................................................1

    **A.** Veoh's Introductory Statement ............................................1

    **B.** UMG's Introductory Statement ...........................................3

**II.** ISSUE NO. 1 – INTERROGATORIES REGARDING PLAINTIFFS' VIRAL MARKETING ...................................................................**6**

    **A.** Statement of Disputed Interrogatories and Plaintiffs' Responses .............6

    **B.** Veoh's Contentions and Points of Authorities .......................10

    **C.** UMG's Contentions and Points of Authorities .......................12

**III.** ISSUE NO. 2– DISCOVERY RELATING TO PLAINTIFFS' DAMAGES, PROMOTION, PROTECTION, AND VALUE OF THE ALLEGEDLY INFRINGED WORKS ........................................**20**

    **A.** Statement of Disputed Interrogatories and Plaintiffs' Responses ...........20

    **B.** Veoh's Contentions and Points of Authorities .......................23

    **C.** UMG's Contentions and Points of Authorities .......................26

**IV.** ISSUE NO. 3– DISCOVERY RELATING TO NOTICE TO VEOH .............**32**

    **A.** Statement of Disputed Interrogatories and Plaintiffs' Responses ...........32

    **B.** Veoh's Contentions and Points of Authorities .......................33

    **C.** UMG's Contentions and Points of Authorities .......................35

**V.** ISSUE NO. 4– INTERROGATORY NO. 17 REGARDING "STANDARD TECHNICAL MEASURES" ....................................**38**

    **A.** Statement of Disputed Interrogatories and Plaintiffs' Responses ...........38

    **B.** Veoh's Contentions and Points of Authorities .......................38

    **C.** UMG's Contentions and Points of Authorities .......................39

**VI.** ISSUE NO. 5 – INTERROGATORY REGARDING PREVIOUS OWNERSHIP DISPUTES REGARDING COPYRIGHTS AT ISSUE..........**41**

    **A.** Statement of Disputed Interrogatory......................................41

    **B.** Veoh's Contentions and Points of Authorities .......................42

    **C.** UMG's Contentions and Points of Authorities .......................43

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

i

# TABLE OF CONTENTS

Page

**VII. CONCLUSION** ....................................................................**44**

    **A.** Veoh's Conclusion ...................................................44

    **B.** UMG's Conclusion ..................................................45

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

Pursuant to Federal Rule of Civil Procedure 37(c) and Local Rule 37-2, Defendant Veoh Networks, Inc. ("Veoh"), and Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music—MGB NA LLC, Universal Music—Z Tunes LLC and Universal Music—MBG Music Publishing LTD ("UMG" or "Plaintiffs"), respectfully submit the following Joint Stipulation Regarding Veoh's Motion to Compel Verified Interrogatory Responses ("Motion"). The parties have met and conferred in good faith in an unsuccessful attempt to resolve this matter and now seek this Court's assistance.

## I.    INTRODUCTORY STATEMENTS

### A.    Veoh's Introductory Statement

This Motion arises from UMG's refusal to provide verified, proper written responses to Veoh's first set of Interrogatories. [1] Rather than respond in good faith and comply with its discovery obligations, UMG provided sweeping, meritless objections, refusing to respond to the vast majority of Veoh's interrogatory responses and providing deficient responses for the remainder.

Plaintiffs are challenging all aspects of Veoh's business in this lawsuit. Veoh provides a forum for, among other things, high quality, user generated video content on the Internet. From its inception, Veoh has remained committed to providing strong protections for intellectual property and works diligently with content owners to keep unauthorized works off of Veoh's service. As part of this effort, Veoh maintains a rigorous Digital Millennium Copyright Act ("DMCA") policy which includes promptly terminating access to allegedly infringing content upon proper notice, and promptly terminating repeat infringers. Indeed, Veoh was recently held to be

---

[1] Veoh filed a regularly noticed motion regarding some of the issues presented herein, which covered Plaintiffs' numerous additional discovery deficiencies. Due to the extensive discovery failures raised by Veoh within one motion, the Court denied Veoh's prior motion to compel without prejudice, inviting Veoh to renew its motion in a more limited format.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

protected by the safe harbor of Section 512(c) of the DMCA in a similar lawsuit because of its strong DMCA policies, leaving the only available remedy to the plaintiff injunctive, though even that relief was moot given that Veoh had already removed all allegedly infringing content at issue. *Io Group, Inc. v. Veoh Networks, Inc.*, 2008 U.S. Dist. LEXIS, 65915, No. 06-3926, slip op. at 20 (N.D. Cal. Aug. 27, 2008).

Despite Veoh's strict enforcement of its policies prohibiting infringing content, and over a year after Plaintiffs filed their action alleging infringement of "thousands" of unidentified sound recordings and musical compositions, Plaintiffs have yet to identify the "thousands" of recordings and compositions purportedly being infringed,[2] or provide sufficient information in response to interrogatories at issue in this Motion, including information relating to:

- viral marketing (Interrogatory Nos. 9, 10, 11, 13, 15, 16, 19, 24);
- damages (Interrogatory Nos. 4, 12, 14);
- Veoh's DMCA defense (Interrogatory Nos. 17, 20, 21); and
- previous ownership disputes regarding the copyrights at issue in this action (Interrogatory No. 23).

UMG has also failed to provide verifications to its responses, which were served well over six months ago, on April 9, 2008. Because the interrogatories at issue in this Motion seek information critical to Veoh's defense, Veoh respectfully requests that the Court grant Veoh's Motion.

---

[2] Veoh was also forced to resort to motion practice so that Plaintiffs would be required to finally identify the works at issue in this action. *See,* Veoh's Motion to Compel Plaintiffs to Identify Works at Issue and Produce Chain of Title/Ownership Information Re Same, filed on October 29, 2008 (Docket 194) ("Mot. to Compel Plaintiffs to Identify Works")

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## B.    UMG's Introductory Statement

On August 25, 2008**,** this Court heard argument on UMG's and Veoh's First Motions to Compel.  At the hearing, the Court denied Veoh's Motion to Compel Discovery Responses from UMG ("Veoh's Motion to Compel") (Dkt. No. 73).  The Court noted that Veoh's motion contained "hundreds of requests," that it "exceed[ed] 300-pages," that Veoh's grouping of requests was "so broad that [it] really [wasn't] meaningful," and that many "of [Veoh's requests] probably have been largely satisfied at this point."  Declaration of Brian Ledahl ("Ledahl Decl."), Exhibit ("Ex.") A (8/25/2008 Hearing Tr.) (19:16-18, 22:12-13) (Dkt. No. 107).  The Court therefore "den[ied Veoh's] motion to compel" without prejudice to Veoh's right to "file [another] motion"—after "complet[ing its] review of [UMG's] production" and provided that Veoh organized its subsequent motion "in a sensible way."  *Id.* at 21:23, 21:25-22:1, 23:16-17.  The Court also noted that it was "contemplating granting most of" UMG's first motion to compel, *id.* at 35:5-11, and ultimately did.  *See* November 21, 2008, Order (Dkt. No. 220).[3]

Veoh ignored the Court's instructions: instead, it recycled its prior motion (so much so that when Veoh provided its portion of the joint stipulation, it still had a "June 2008" date next to the signature lines), only lowering the number of requests at issue.  Whole sections of Veoh's previously-denied motion are repeated nearly verbatim.  For example, below is argument excerpted from Veoh's prior motion:

> Plaintiffs' viral marketing activities are also highly relevant to Veoh's affirmative defenses, including estoppel, unclean hands, and implied license. "A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." . . . Documents and information evidencing Plaintiffs' own marketing of works with the intent that they be virally distributed to other

---

[3] Notwithstanding the Court's comments and subsequent order, Veoh continues to refuse to produce discovery sought by UMG's motion.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

sites is clearly relevant as evidence that Plaintiffs should be estopped from asserting the claims herein.

The discovery sought is also relevant to Veoh's unclean hands defense. Uploading music videos to internet sites for marketing and promotion, then suing those same sites for copyright infringement is plainly inequitable. Veoh is entitled to viral marketing discovery to develop this affirmative defense.

*See* Veoh's Motion to Compel (Dkt. No. 81) (132:19-133:4). The same text appears almost verbatim in Veoh's current motion in Section II.B., below. The Court rejected Veoh's motion when it presented these arguments in its first motion. Veoh has simply copied the same rejected arguments into a new document and resubmitted them, hoping to obtain a different result.[4] Veoh offers no basis for the Court to depart from its August 2008 denial of Veoh's initial motion to compel. On that basis alone, its requests should be denied. Nevertheless, UMG details below why Veoh's requests remain meritless.

Veoh fails to support its demand that UMG be compelled to respond to Veoh's interrogatories concerning online marketing for a host of reasons. Veoh's interrogatories explore a theory (namely, that UMG surreptitiously seeds the internet with copies of its music videos, thereby excusing Veoh's infringement) that: (1) discovery has proved has no basis; (2) even if true, would be no defense to *Veoh's* copyright infringement; and (3) would impose significant and undue discovery burdens on UMG. UMG has produced ample online marketing discovery to Veoh; that discovery does not support Veoh's theories. That is no cause, as Veoh suggests, to compel further online marketing discovery. Rather, enough is enough.

As to its "damages" interrogatories, Veoh improperly asks UMG to prepare *Veoh's* case—specifically, that UMG calculate its actual damages even though UMG is not seeking to recover its actual damages. UMG has elected to pursue statutory, not

---

[4] Regrettably, because Veoh presents the same incorrect arguments here that it presented to the Court previously, UMG is forced to repeat and resubmit the same arguments that it presented to the Court previously in many instances.

actual, damages. That election alone makes discovery into UMG's actual damages irrelevant and improper. But even assuming actual damages are relevant to the statutory damages analysis, that is no basis to compel responses to Veoh's *interrogatories*. "[A] party cannot ordinarily be forced to prepare its opponent's case." 8A Wright & Miller, Federal Practice & Procedure § 2174. Consequently, interrogatories that require UMG to make extensive investigations, research, or compilation or evaluation of data for the opposing party are improper. *Id*. Veoh's damages interrogatories would require just this sort of extensive compilation, investigation, and evaluation.

As to Veoh's interrogatories concerning license agreements and notices of infringement, UMG has already produced to Veoh both its relevant license agreements and notices of infringement sent on UMG's behalf. With respect to Veoh's interrogatory concerning standard technical measures, nothing has changed since Veoh's prior motion: Veoh's Interrogatory No. 17 remains vague and ambiguous, overbroad and unduly burdensome, and seeks information that is irrelevant to this litigation. Veoh has offered no additional argument in this motion indicating otherwise.

Finally, Veoh's Interrogatory No. 23—concerning "chain of title" discovery—pursues information this Court has already denied. This motion marks Veoh's **fourth** attempt to challenge that denial. The Court has previously directed Veoh to show some important difference between the facts of this case and the prior actions to justify a different result. It has not, and Veoh's efforts to overturn this Court's balanced consideration of ownership issues are unavailing and should be rejected.

For the foregoing reasons, this Court should deny Veoh's recycled motion and the interrogatories contained therein.

## II.   ISSUE NO. 1 – INTERROGATORIES REGARDING PLAINTIFFS' VIRAL MARKETING

**A.**   **Statement of Disputed Interrogatories and Plaintiffs' Responses**

**VEOH INTERROGATORIES**: **9, 10, 11, 13, 15, 16, 19, 24**

**INTERROGATORY NO. 9:**

Identify all persons, including but not limited to persons who have been employed by, retained by, or who have consulted with you, directly or through representatives or agents, who have accessed the veoh.com website or used the Veoh Player and/or Veoh TV, stating for each the nature and reason of such access or use.

**RESPONSE TO INTERROGATORY NO. 9:**

UMG incorporates by reference each of its General Objections.  UMG further objects that this interrogatory is overly broad and unduly burdensome.  UMG also objects that this interrogatory seeks information not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.  UMG further objects that this interrogatory seeks information protected by the attorney-client and/or work-product privilege.  Such information will not be produced.

**INTERROGATORY NO. 10:**

Identify all persons with knowledge of the uploading, by you or by a person or system acting on your behalf, of digital files of any type to Veoh.

**RESPONSE TO INTERROGATORY NO. 10:**

UMG incorporates by reference each of its General Objections.  UMG further objects that this interrogatory seeks information not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.  UMG further objects that this interrogatory is overly broad and unduly burdensome.  UMG further objects to this interrogatory as unduly burdensome on the grounds that the information sought is equally accessible to Veoh or more accessible to Veoh than to UMG.  UMG further objects to the definition of persons" as overly

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

6

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel        Case No. CV 07-5744-AHM (AJWx)

broad and unduly burdensome.  UMG further objects to this interrogatory as vague and ambiguous in its reference to "digital files of any type."  UMG further objects that this interrogatory seeks information protected by the attorney-client and/or work-product privilege.  Such information will not be produced.

## INTERROGATORY NO. 11:

For each person identified in response to Interrogatory No. 9, identify the IP address for the computer or device used by that person to access veoh.com.

## RESPONSE TO INTERROGATORY NO. 11:

UMG incorporates by reference each of its General Objections, as we 11 as the specific objections lodged in response to Veoh's Interrogatory No. 9.  UMG further objects that this interrogatory seeks information protected by the attorney-client and/or work-product privilege.  Such information will not be produced.  UMG further objects to the definition of "persons" as overly broad and unduly burdensome.

## INTERROGATORY NO. 13:

Identify each veoh.com account that you or any artist have registered by providing the user name associated with the account, the name of the individual who registered the account, and the date of registration.

## RESPONSE TO INTERROGATORY NO. 13:

UMG incorporates by reference each of its General Objections.  UMG further objects that this discovery is premature, and that much of the discovery necessary to respond to this interrogatory is within Veoh's possession, custody, or control.  UMG objects to the definition of the term "artist," which is overly broad, unduly burdensome, and vague and ambiguous.  Moreover, UMG objects that the identification of "artists" who have registered an account with Veoh would not be within UMG's possession, custody, or control. UMG further objects that this interrogatory seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence since "artists," as that term is defined by Veoh, may not be the owners of the copyrights at

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

issue in this case.  UMG further objects that this interrogatory seeks information protected by the attorney-client and/or work-product privilege.  Such information will not be produced.

**INTERROGATORY NO. 15:**

Identify each instance in which you and/or any artist, uploaded a file to any internet site, including veoh.com, containing a copy of any work, or any portion of any work, for which you allege infringement in this action, and for each instance provide: (i) the internet site to which the file was uploaded; (ii) the date the file was uploaded; (iii) the file that was uploaded (including the file name and any other identifying information, including Veoh permalink if available); and (iv) the title of the work.

**RESPONSE TO INTERROGATORY NO. 15:**

UMG incorporates by reference each of its General Objections.  UMG further objects that the interrogatory is overly broad and unduly burdensome in that it seeks the identification of videos "uploaded ... to any internet site."  UMG objects that this interrogatory seeks information not in UMG's possession, custody, or control, to the extent it seeks the identification of "artists" who have registered an account with Veoh. UMG further objects that this interrogatory seeks information that is neither relevant to the parties' claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence, in that, among other things, "artists," as that term is defined by Veoh, may not be the owners of the copyrights at issue in this case. Finally, UMG objects that the definition of the term "artist" would require UMG to canvass thousands of individuals or entities in order to respond to this interrogatory and, as such, is grossly overbroad and unduly burdensome.

**INTERROGATORY NO. 16:**

Identify each instance in which you have given away at no charge any of the works alleged by you in this action, including (i) the date the work was distributed; (ii) the manner of distribution; (iii) the media on which the work was distributed; and

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  (iv) the title of the work distributed.

2  **RESPONSE TO INTERROGATORY NO. 16:**

3  UMG incorporates by reference each of its General Objections.  UMG further

4  objects to the term "given away at no charge" as vague, ambiguous, and

5  argumentative.  UMG further objects that this interrogatory seeks information not

6  relevant to the parties' claims or defenses and is not reasonably calculated to lead to

7  the discovery of admissible evidence, in that, among other things, this interrogatory

8  seeks the identification of works which were allegedly exploited "at no charge."

9  UMG further objects that the interrogatory is overly broad and unduly burdensome in

10  that, for example, a full response would require UMG to identify any individual CD

11  given away as promotional goods or contributed to charity.

12  **INTERROGATORY NO. 19:**

13  Identify all persons, including but not limited to, current and former employees,

14  and current and former consultants and independent contractors, who are or have been

15  employed by, retained by, or who have consulted with you, directly or through

16  representatives or agents, who are or have been involved in any efforts by you to

17  promote your copyrighted works or any artists under contract with you via any

18  internet site, including social networking sites.

19  **RESPONSE TO INTERROGATORY NO. 19:**

20  UMG incorporates by reference each of its General Objections. UMG further

21  objects to this interrogatory on the grounds that it is overbroad, unduly burdensome,

22  and seeks information neither relevant to the subject matter of this action nor

23  reasonably calculated to lead to the discovery of admissible evidence. UMG further

24  objects to this interrogatory as vague and ambiguous in its use of the terms "promote

25  your copyrighted works or any artists under contract with you," "via any internet site,"

26  and "any social networking sites-" UMG further objects to the definition of "persons"

27  as overly broad and unduly burdensome.

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**INTERROGATORY NO. 24:**

Identify all persons and entities that are responsible for and/or conduct viral marketing of works owned or controlled by you, and for each provide: (i) a detailed description of the manner and strategy by which each person and/or entity conducts said viral marketing activities; (ii) the works each person or entity markets or has marketed, virally; (iii) the date(s) said viral marketing activities began for each work; (iv) the dates(s) said viral marketing activities ceased, if they have ceased, for each work; (v) a detailed description of any and all reports prepared regarding said viral marketing activities.

**RESPONSE TO INTERROGATORY NO. 24:**

UMG incorporates by reference each of its General Objections. LMG further objects to this interrogatory on the grounds that it is overbroad and unduly burdensome insofar as it calls for UMG to identify all persons or entities who are "made responsible for ... works owned or controlled" by UMG. Additionally, this interrogatory purports to seek information relating to activities not involving Veoh. UMG further objects to this interrogatory as vague and ambiguous in its use of the terms "viral marketing," "viral marketing activities," "virally" marketing, and "reports prepared regarding said viral marketing activities." UMG further objects that this interrogatory seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to the definition of "persons" as overly broad and unduly burdensome.

### B. Veoh's Contentions and Points of Authorities

With interrogatory nos. 9, 10, 11, 13, 15, 16, 19, 24, Veoh seeks information regarding the efforts by Plaintiffs to use Veoh and/or similar sites to upload the same works at issue in this action, through the internet, for their own marketing purposes. This Court has previously recognized the significance of UMG's viral marketing to discovery regarding UMG's alleged statutory damages in The *MySpace/Grouper*

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Actions.[5]  (Declaration of Erin R. Ranahan ("Ranahan Decl.") ¶¶ 2-3 and Exh. A-B.) In The *MySpace/Grouper* Actions, the defendants argued that if UMG's viral marketing efforts included leaking free links (e.g., through social networking sites) to the same recordings that UMG was claiming damages for, that would provide evidence that UMG has not actually been damaged.  The Court noted that despite UMG's election of statutory damages, if the defendant could demonstrate that UMG did not suffer any damages because it was already permitting the same recordings to be freely viewed on the internet, such evidence would be a "a factor the court can consider in determining what amount of statutory damages to award."  (*Id.* at Exh. B. 62:24-63:4).

The viral marketing evidence not only bears on the veracity of Plaintiffs' alleged damages, but the viral marketing activities are also highly relevant to Veoh's affirmative defenses, including estoppel, unclean hands, and implied license.  "A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out … by silence or inaction."  *Field v. Google,* 412 F. Supp.2d 1106, 1116 (D. Nev. 2006).  Information showing Plaintiffs' own marketing of works with the intent that they be virally distributed to other sites is clearly relevant as evidence that Plaintiffs should be estopped from asserting the claims herein.

The interrogatories at issue are also relevant to Veoh's unclean hands defense. Uploading music videos to internet sites for marketing and promotion, then suing those same sites for copyright infringement is plainly inequitable.  Veoh is entitled to viral marketing discovery to develop this affirmative defense.

Finally, the interrogatories at issue are additionally relevant to Veoh's implied license defense.  A copyright owner may grant a nonexclusive license impliedly

---

[5]  "The *MySpace/Grouper* Actions" refers *UMG Recordings, Inc., et al. v. MySpace, Inc.*, CV 06-07361 and *UMG Recordings, Inc., et al., v. Grouper Networks, Inc.*, et al., CV 06-06561.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

through conduct.  *See Effects Assoc., Inc. v. Cohen,* 908 F. 2d 555, 558-59 (9th Cir. 1990).  Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it.  *Field v. Google, Inc., 412 F.Supp. 2d 1106, 1116* (D. Nev. 2006). Clearly, Plaintiffs' knowing and viral marketing of the works at issue by posting them on sites including Veoh is highly relevant here.  Veoh is entitled to discovery on this issue.

In sum, the question of how any purportedly infringing content may have originated on Veoh is critical.  If the content was placed there by Plaintiffs themselves, or at their direction, Veoh is entitled to know about it.  Plaintiffs should be compelled to provide further responses immediately.

## C.    UMG's Contentions and Points of Authorities

Veoh spends less than two pages justifying its purported "need" for online marketing discovery.  In doing so, Veoh makes no effort to discuss the merits of its actual requests or UMG's objections thereto.  It cites just two cases in support of eight interrogatories and never bothers to detail the actual elements of an estoppel, implied license, or unclean hands defense—the defenses that purportedly justify these interrogatories.  In that respect, Veoh's current motion is identical to its last: it asserts the same arguments (almost verbatim) and never addresses the ample online marketing discovery already produced by UMG.  Despite this ample discovery— which included documents drawn from five additional marketing and artist relation executives and employees, executives and employees whose documents UMG did not produce in the *Grouper* and *MySpace* actions[6]—Veoh cites **no** document reflecting

---

[6] These five additional custodians bring the total number of UMG marketing and artist relation document custodians to twelve.  Thus, the number of UMG marketing and artist relation document custodians equals the **total** number of Veoh employee custodians.

UMG's posting music videos to Veoh.com.[7]  Nonetheless, Veoh contentedly recycles its prior motion to compel, demanding that UMG generate more marketing discovery until Veoh uncovers what it simply assumes, without basis, exists: evidence of foul-play by UMG.  Until Veoh comes forward with actual evidence of such foul-play, its overbroad, irrelevant interrogatories should be denied.

> **1.** **Veoh's Interrogatories Would Impose Significant Burdens on UMG And The Information Sought Is More Easily Obtainable By Veoh**

Veoh has advanced **no** evidence supporting its theory that UMG surreptitiously posted music videos to its internet site.  Nonetheless, Veoh contends that UMG should canvas all of its current and former employees; its purported agents, representatives, and consultants; and its artists to determine whether any has ever used Veoh's website.  The burden of Veoh's interrogatories cannot meaningfully be disputed.  Briefly:

- Interrogatory No. 9 demands that UMG identify "persons who have been employed by, retained by, or who have consulted with you, directly or through representatives or agents, who have *accessed* the veoh.com website or used the Veoh Player and/or VeohTV, stating for each the nature and reason of such access or use" (emphasis added);[8]

- Interrogatory No. 11 demands the IP address for persons identified in response to Interrogatory No. 9;

- Interrogatory No. 10 demands that UMG identify current and former employees, representatives, or agents "with knowledge" of UMG's alleged uploading of "digital files" to Veoh;

---

[7] In fact, UMG has an express policy *against* such posting.  Ledahl Decl., Ex. D (UMG's Video Policy).
[8] A UMG employee's "accessing" Veoh.com is not marketing, and Veoh never explains how "accessing" Veoh.com relates to the subject of its arguments, namely, marketing activities.  More importantly, such "access" is not remotely relevant to the issues of this case, which concern the performance, reproduction, and distribution of infringing content by *Veoh*.

13

- Interrogatory No. 13 demands alleged Veoh.com account information for UMG's current and former employees, representatives, agents, or artists; and

- Interrogatory Nos. 19 and 24 demand that UMG identify **anyone** who has ever engaged in **any** online marketing[9] on behalf of UMG and describe in detail the nature of their marketing.[10]

Responding to these demands would impose significant burden on UMG—not because so many UMG employees, representatives, or artists have Veoh accounts, but because there are numerous employees and representatives that are or have been employed or engaged by UMG. UMG has over 5,000 employees worldwide and over 2,600 in North America. *See* Ledahl Decl., Ex. B (Declaration of Gayle Moore) (¶ 2). These numbers exclude former employees, consultants, "representatives," and artists. Complying with Veoh's demand would require UMG to interview all current and former employees, purported representatives, and "artists" to determine whether any recall using Veoh's website or creating a Veoh account while working on behalf of UMG. The burden associated with these demands is enormous, and Veoh offers no evidence from UMG's extensive production to suggest that its fishing expedition would produce any relevant evidence.

Further, that burden is particularly inappropriate here where *Veoh* can readily identify the alleged user accounts of UMG employees by searching its database for

---

[9] As to "online marketing" generally, Veoh never explains why all marketing activity, rather than just the posting of music videos, is relevant to this action. For example, so-called "viral marketing" might include a marketing employee visiting a particular web site and posting laudatory comments about a newly released album. Or it might include the same employee posting a link to a music video offered on YouTube, which pays UMG for "plays" of its videos. These sorts of posting have no relevance to this action; that they fall within the reach of Veoh's interrogatories suggests the overbreadth of Veoh's requests.

[10] Interrogatories Nos. 15 and 16 largely duplicate Interrogatories Nos. 9, 10, 11, 13, and 19 as to information regarding UMG's alleged—but never supported—marketing activities on Veoh, and are therefore defective for all the reasons cited in this Section. They reach further, however, in seeking irrelevant information concerning UMG's interactions with *other* websites, and are thus defective for additional reasons, more fully described below.

14

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel     Case No. CV 07-5744-AHM (AJWx)

accounts created using emails ending in "@umusic.com." *See* Fed. R. Civ. P.

26(b)(2)(C)(i) (the "court must limit the frequency or extent of discovery" where the

"discovery sought . . . can be obtained from some other source that is more

convenient"). This search would capture postings performed by UMG employees in

their professional capacity. As to the IP addresses sought by Interrogatory No. 11,

Veoh itself "associate[s]" user accounts with the "user's IP address[es]" Ledahl Decl.,

Ex. C (July 10, 2008, Fed. R. Civ. P. 30(b)(6) Deposition of Veoh) (126:6-24). Veoh,

then, can pair IP addresses to "@umusic.com" email addresses, if any. *See Id.* As to

the artist information demanded by Interrogatory Nos. 13 and 15, Veoh nowhere

explains how UMG has "possession, custody, or control" of its artist's Veoh.com

accounts (assuming its artists even have Veoh.com accounts), how UMG could survey

each and every past and present recording artist, or why an artist's decision to upload a

music video for which the artist is not the copyright owner is relevant to this case.

### 2. <u>Veoh Fails To Show The Relevance Of Its Overbroad Requests</u>

Veoh advances four relevance arguments in support of its online marketing

interrogatories. None supports its requests.

Preliminarily, it is important to distinguish between alleged interactions

between UMG and Veoh and alleged interactions between UMG and other internet

sites. As this Court previously recognized, to the extent UMG's online marketing

activities are arguably relevant, only those directly involving Veoh are likely to have

some, if any, meaningful impact on this case. In fact—as discussed in greater detail

below—the theories on which Veoh relies turn on direct interactions between UMG

and *Veoh*, not on interactions between UMG and a third-party. Copyright law has no

"fairness doctrine" requiring UMG to license content to Veoh if it licenses content to

another site.

### a. <u>Online Marketing Discovery Is Irrelevant To Estoppel</u>

Veoh claims that "viral marketing activities are . . . highly relevant to Veoh's

affirmative defense[] [of] . . . estoppel." Four elements comprise an estoppel defense:

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

"(1) the party to be estopped [UMG] must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 105 (9th Cir. 1960)). Veoh never explains—nor could—how online marketing about which Veoh has—and had—no knowledge supports a defense grounded on reasonable reliance. Veoh cannot suggest that it relied on any conduct by UMG. No answer to Veoh's interrogatories will evidence an estoppel defense because Veoh cannot identify any conduct upon which it relied so as to create an estoppel.

Veoh's dependence on *Field v. Google, Inc.* is misplaced. *Field* involved a plaintiff seeking to manufacture an infringement claim against Google. The plaintiff had manipulated technical features of Google's system to induce Google to copy the plaintiff's work. *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1113 (D. Nev. 2006). Specifically, Field communicated with Google by setting certain features of his web site to permit Google to scan the site and create a cached copy of the page. Field then claimed that Google's copying and display of his material was infringement. *Id.* These unique facts make clear why *Field* has no application here: Veoh has not and cannot claim to have relied on undiscovered instances of alleged video postings on web sites other than Veoh. Google relied on Field's direct communications via his web site settings; Veoh has no similar argument.

### b. Online Marketing Discovery Is Irrelevant To Unclean Hands

Veoh argues that evidence of online marketing supports its affirmative defense of unclean hands. It cites no case law in support of this argument. An unclean hands defense requires that a defendant "demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Grokster*, 518 F.

16

Supp. 2d at 1223 (citing *Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)).  Veoh never explains how online marketing supports any of these elements, *e.g.*, how online marketing constitutes "inequitable conduct," or how such marketing relates to claims against Veoh, or how such conduct injures Veoh.  Put simply, Veoh's two-sentence theory is entirely lacking in support.

### c.   <u>Online Marketing Discovery Is Irrelevant To Implied License</u>

Implied licenses arise only when (1) a copyright holder creates a copyrighted work at the request of another and (2) provides that work with the intention that the requestor will copy and distribute the work.  *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (noting that an implied license arises where: "'(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work'") (quoting *Lulirama Ltd., Inc. v. Axcess Broad Sews.*, 128 F.3d 872, 879 (5th Cir. 1997)).  These circumstances are clearly inapplicable here, and thus responses to Veoh's interrogatories could not support such a claim.  There is no suggestion by Veoh that UMG creates its works at Veoh's request, and Veoh offers no explanation as to how UMG's interactions with other web sites could satisfy these elements.

Even presuming Veoh's unsupported allegations were true—that a UMG employee posted a music video to an unlicensed internet site—Veoh never explains how that posting could impliedly license Veoh's use.  Because Veoh has no involvement with UMG, it lacks any legal basis to suggest the existence of an implied license.  Thus, this defense offers no support for the answers Veoh seeks to compel.[11]

---

[11] Even assuming Veoh could show the necessary interactions with a UMG employee, Veoh must additionally prove that this hypothetical employee was acting as an agent for UMG and that, through their agency, impliedly licensed Veoh's infringement. Veoh could make no such showing.  UMG employees and others working with UMG have no authorization to post UMG music videos on unlicensed internet sites.  UMG has a video policy that disallows such postings.  *See* Ledahl Decl., Ex. D (UMG's

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### d.   Online Marketing Discovery Is Irrelevant To Damages

Veoh argues that online marketing is relevant to damages.  It supports that argument with reference to cherry-picked comments this Court made during a hearing in the *Grouper* action.  It cites no order on this issue, nor could it: this Court has not ruled on the issue, in the *Veoh* action or otherwise.[12]  UMG's online marketing activities are not directly relevant to statutory damages, sought by UMG.  Moreover, UMG's online marketing activities are not even relevant to UMG's actual damages, even if Veoh were correct that UMG's actual damages were an appropriate subject for inquiry.

### i.   Online Marketing Has No Relevance To Statutory Damages

Regardless, UMG has elected to pursue statutory damages in this action.  The purpose of statutory damages is to penalize the infringer and deter future infringement.  *See* Ninth Circuit Manual of Model Jury Instructions, Instruction 17.25 ("If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. . . . Its purpose is to penalize the infringer and deter future violations of the copyright laws"); *Yurman Design, Inc., v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001) ("statutory damages are not meant to be merely compensatory or restitutionary.  The statutory award is also meant to 'discourage wrongful conduct'").  Thus, the focus of the statutory damages inquiry is on the accused infringer, not on the conduct of the copyright holder.  Any alleged interactions UMG might have had with other websites, even if they involved allegedly

---

Video Policy).  Thus, any employee who posted a video contrary to the policy would necessarily be acting outside the scope of his employment.

[12] If Veoh contends that excerpted, on-the-record comments of the Court, without an accompanying order, warrant immediate compliance with discovery requests, Veoh should explain why it ignored the Court's statement that it was "contemplating granting most of" UMG's first motion to compel.  Ledahl Decl., Ex. A (8/25/2008 Hearing Transcript) (35:5-11).  Veoh has not produced the materials sought by UMG's motion, notwithstanding the Court's comments and subsequent ruling in UMG's favor. *See* November 21, 2008, Order (Dkt. No. 220).

posting videos onto those websites, are irrelevant to the inquiry of how to penalize Veoh and deter future infringement.

### ii. Online Marketing Has No Relevance To Actual Damages

Further, even if actual damages were somehow relevant to statutory damages, evidence of UMG's interactions with other websites, such as through online marketing activities, are not evidence of actual damages. Veoh hypothesizes that UMG provides free and unrestricted copies of its works to other websites as part of a "viral marketing" effort. Veoh argues that this alleged distribution reduces the value of UMG's copyrighted works and should therefore reduce statutory damages owed by Veoh. This theory is flawed in several key respects. Most importantly, it ignores the fact that UMG licenses many websites (like YouTube, Yahoo and others) to display its music videos. Indeed, UMG has produced to Veoh more than 50 of its license agreements with other websites. These sites pay UMG compensation for the authorized use of UMG's content as set forth in the agreements. Veoh engages in highly similar conduct without a license, and without paying any compensation to UMG. As a practical matter, UMG's actual damages would be measured by the lost licensing revenue attributable to Veoh's unlicensed activity, *i.e.*, the monies Veoh would have had to pay for its activities had it obtained authorization.

Thus, contrary to Veoh's assertions, information pertaining to UMG's interactions with other websites (such as through purported "viral marketing") is irrelevant even to actual damages, much less statutory damages. Lost licensing revenues that would have been paid by Veoh had it sought and obtained a license would not be affected by UMG's interactions with other sites. UMG's relevant license agreements **do not provide** for a lower payment if UMG posts its videos on other internet sites. If, for example, UMG posted a video on an unlicensed website, as Veoh alleges, licensees such as YouTube still pay the same amount under their licenses to display the video on their sites as they would if UMG did not post the video on an unlicensed website. To the extent any measure of actual damages is relevant to

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

statutory damages, such actual damages would be based on UMG's similar licenses, not its purported online marketing activities. Indeed, Courts hold that evidence of lost license fees standing alone is a sufficient basis for a court to enter a statutory damage judgment—even a judgment that exceeds the lost license fees. *See Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir. 1983). Thus, even if UMG's actual damages were relevant, license agreements, not purported marketing interactions would be the evidence appropriate for such considerations.

For the foregoing reasons, Veoh's motion to compel as to Interrogatory Nos. 9, 10, 11, 13, 15, 16, 19, and 24 should be denied.

**III. ISSUE NO. 2– DISCOVERY RELATING TO PLAINTIFFS' DAMAGES, PROMOTION, PROTECTION, AND VALUE OF THE ALLEGEDLY INFRINGED WORKS**

**A.    Statement of Disputed Interrogatories and Plaintiffs' Responses**

VEOH INTERROGATORIES: 4, 12, & 14,

**INTERROGATORY NO. 4:**

For each work identified in response to Interrogatory No. 1, state on an annual basis for the past ten (10) years (1) your gross revenues generated from sales of the work; and (2) your gross and net profit generated from sales of the work and how such profit was calculated.

**RESPONSE TO INTERROGATORY NO. 4:**

UMG incorporates by reference each of its General Objections, as well as its objections to Veoh's Interrogatory No. 1. UMG objects that the discovery sought is overly broad and unduly burdensome in that, among other things, it seeks financial information for the past 10 years. UMG further objects that the discovery sought is overly broad, unduly burdensome, and vague and ambiguous. UMG objects that this interrogatory is vague and ambiguous with respect to the phrases "each work," "the work," "gross revenues generated from sales of the work," and "gross and net profits generated from sales of the work." UMG further objects that this interrogatory seeks

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

information not relevant to the parties' claims or defenses and is not reasonably

calculated to lead to the discovery of admissible evidence. UMG further objects to the

extent that this interrogatory calls for information subject to confidentiality

agreements between UMG and third parties. Nothing contained herein shall be

considered a waiver of such confidentiality obligations.

**INTERROGATORY NO. 12:**

Describe in detail, including a quantification, all actual damages you claim to

have suffered as a result of the infringement you allege in this case.

**RESPONSE TO INTERROGATORY NO. 12:**

UMG incorporates by reference each of its General Objections. UMG further

objects that much of the discovery necessary to respond to this interrogatory is within

Veoh's possession, custody, or control, and has not yet been produced. UMG objects

to this interrogatory on the grounds that it is premature in that it calls for UMG to

produce information regarding the factual basis of its claims before UMG has had the

opportunity to complete its investigation of the facts. Giving an accurate and full

response to this interrogatory would be impossible at this time given that much of the

information called for by the interrogatory is within Veoh's own possession, custody,

or control. UMG further objects to this interrogatory as premature to the extent it

seeks expert testimony. UMG further objects to the extent that this interrogatory calls

for information subject to confidentiality agreements between UMG and third parties.

Nothing contained herein shall be considered a waiver of such confidentiality

obligations. UMG will produce neither confidential documents nor confidential

financial information until a productive order is in place, and even then will only

produce such discovery in a manner consistent with its confidentiality obligations.

UMG further objects that this interrogatory seeks information that is not relevant to

the claims and defenses of any party, nor reasonably calculated to lead to the

discovery of admissible evidence inasmuch as UMG elects to pursue statutory

damages in this action.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

**INTERROGATORY NO. 14:**

Identify all licensees of your copyrighted works, including but not limited to the copyrighted works you allege were infringed in this action,[13] and for each provide: (i) the person(s) responsible for negotiating the license on your behalf; (ii) the person(s) responsible for negotiating the license on behalf of the licensee; (iii) the date on which you entered into each license agreement; (iv) the expiration date of each of the license agreements.

**RESPONSE TO INTERROGATORY NO. 14:**

UMG incorporates by reference each of its General Objections. UMG objects that this interrogatory is overly broad and unduly burdensome in that it seeks the identification of "all licensees" of UMG's works. UMG further objects that this interrogatory seeks information not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence, in that, among other things, this interrogatory seeks the identification of "all licensees" and the person(s) responsible for negotiating each license. UMG objects to the interrogatory for the identification of "person(s) responsible for negotiating the license on behalf of the licensee," to the extent this calls for information not with UMG's possession, custody, or control. UMG further objects to the extent that this interrogatory calls for information that is subject to confidentiality agreements between UMG and third parties. Nothing contained herein shall be considered a waiver of such confidentiality obligations. Moreover, without waiving the foregoing objections, UMG will not produce confidential documents until a protective order is in place. UMG further objects to the definition of "persons" as overly broad and unduly burdensome.

Subject to and without waiving the foregoing objections, UMG responds as follows: Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, UMG will

---

[13] Veoh agrees to narrow this interrogatory only to works that Plaintiffs allege were infringed in this action.

produce executed licenses for online video streaming and online video downloads to Veoh, subject to the entry of a protective order and consistent with the confidentiality obligations UMG has to third parties.

## B. Veoh's Contentions and Points of Authorities

### 1. Plaintiffs' Financial Information is Highly Relevant to Plaintiffs' Damages Claims

Interrogatory nos. 4, 12, and 14 seek information about the value of the works at issue in this action. Financial information relating to Plaintiffs' revenues from the works at issue, Plaintiffs' promotion and exploitation of the purportedly infringing works, and the value of Plaintiffs' copyrights is directly relevant to Plaintiffs' purported damages and mitigation of damages.

During meet and confer conferences, Plaintiffs' counsel conceded the relevance of this information to a claim for actual damages, but justified Plaintiffs' refusal to produce such information arguing that Plaintiffs had not yet definitively elected to pursue actual damages and as such, Veoh's requests were "premature." While Plaintiffs have now elected statutory damages, discovery regarding damages information is relevant regardless of this election.

The relevance of financial information to a claim for statutory damages has been repeatedly recognized by courts, including this Court. (Ranahan Decl. ¶ 3 and Exh. C (3/17/08 Order).) In its March 17, 2008 Order Re MySpace, Inc.'s Fourth Motion to Compel, the Court granted the defendant's motion to provide documents "reflecting the profitability of the allegedly infringed works." (3/17/08 Order, p.1).

As the Court noted, even where Plaintiffs ultimately decide to seek statutory damages instead of actual damages, "[a] district court has wide discretion in awarding statutory damages for copyright infringement and is constrained only by the specified maxima and minima." *Id.* (citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990), cert denied, 498 U.S. 1109 (1991). As this Court also noted in its March 17 Order in The *MySpace/Grouper* Actions (Docket 112-6)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

("March 17, 2008 Order"), statutory damages still must "bear some relationship to actual damages suffered." *Id.* (citing *Yurman Design, Inc. v. PAJ, Inc.* 262 F.3d 101, 113-114 (2d Cir. 2001); *Van Der Zee v. Greenidge*, 2006 WL 44020, *2 (S.D.N.Y. 2006).)  Among the factors a court may consider are the revenues lost by the plaintiffs [and] the value of the copyright." *Van Der Zee*, *supra*, 2006 WL 44020, at *2; see 4 *Nimmer on Copyright* § 14.04 [B][1][a] (2005) ("the determination of statutory damages within the applicable limits may turn upon such factors as … the revenues lost by the plaintiffs as a result of the defendant's conduct and the infringers' state of mind – whether willful, knowing or innocent.").  As this Court also recognized in its March 17, 2008 Order, "<u>there is nothing in Section 504 to prevent a court from taking account of evidence concerning actual damages and profits in making an award of statutory damages within the range set out in subsection (c)</u>." *Id.* at p. 2 (emphasis in original).  The financial information sought is therefore undeniably relevant, and like in the *MySpace Grouper/Crackle* Actions, should be provided by UMG here.

Plaintiffs have additionally argued that such discovery is burdensome.  The Court rejected this argument in its March 17, 2007 Order, explaining that "on balance any burden imposed on UMG in having to produce" the discovery sought was "outweighed by the importance" of such discovery.  As the court explained:

> UMG apparently seeks the statutory maximum of $150.000 for each of what UMG asserts are thousands of copyrighted works allegedly infringed by MySpace.  Evidence of the value of the copyrighted works and UMG's lost profits, if any, is potentially vital to MySpace's ability to properly defend itself against UMG's damages claims.
>
> *Id.* at p. 3.

Like in The *MySpace/Grouper* Actions, Plaintiffs filed this action seeking the statutory maximum of $150,000 for each of "thousands" of copyrighted works allegedly infringed.  Given the staggering amount of damages sought by Plaintiffs, and the enormously burdensome discovery Veoh, a much smaller opponent, has been

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

required to undertake, there should be no debate that Plaintiffs must provide the information sought. Information evidencing of the value of the copyrighted works at issue and Plaintiffs' lost revenues or lost profits (if any) is vital to Veoh's ability to properly defend itself against Plaintiffs' claims. Veoh is entitled to this discovery immediately.

### 2. The Discovery Is Relevant to Veoh's Affirmative Defense of Copyright Misuse

As Plaintiffs are aware, misuse of copyright, if found, would preclude Plaintiffs' enforcement of certain copyrights during the period of misuse. *Practice Management Information Corporation v. American Medical Association,* 121 F.3d 516 (9th Cir.), cert denied, 522 U.S. 933 (1997). Copyright misuse occurs when a copyright holder employs copyrights to engage in anti-competitive activity, including price-fixing, unduly restrictive licensing, and other behavior that violates public policy. *In re Napster, Inc. Copyright Litig.*, 191 F. Supp.2d 1087, 1109-1110 (N.D. Cal. 2002).

Interrogatory no. 14 relates to Plaintiffs' proposals and negotiations with third parties and is therefore directly relevant to Veoh's copyright misuse defense. As Plaintiffs repeatedly remind this Court and Veoh, Plaintiffs are a dominant worldwide force in the music industry, which also makes Plaintiffs uniquely situated to engage in copyright misuse. Veoh is entitled to discovery relating to its affirmative defenses and Plaintiffs should be compelled to respond to this discovery.

### 3. Interrogatory No. 14 Is Also Relevant To Determining Whether The Alleged Infringers on Veoh Were Authorized

The licensing deals Plaintiffs have are also relevant so that Veoh may determine whether the users who uploaded the alleged infringing files to Veoh were authorized to do so by Plaintiffs. Obviously, if the users were authorized to upload videos to Veoh, this information is crucial to Veoh's defense.

## C.    <u>UMG's Contentions and Points of Authorities</u>

UMG has elected to pursue statutory damages in this case. Despite this election, Veoh's interrogatories would have UMG make *Veoh's* case for the relevance of *actual* damages. Quite simply, there is no authority, under the Copyright Act or the Federal Rules, for such demands.

### 1.    <u>UMG Has Elected To Pursue Statutory, Not Actual, Damages</u>

"Under the current Act, the copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits. He may, moreover, make such an election regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits, *and even if he has intentionally declined to offer such evidence, although it was available*." 4 Nimmer on Copyright § 14.04[A] (emphasis added) (citing *Berg v. Symons*, 393 F. Supp. 2d 525, 546, 548 (S.D. Tex. 2005)).

Even if the broad discovery Veoh seeks were relevant to actual damages (it is not), compelling such discovery where UMG has elected statutory damages would inflict an unnecessary burden. Indeed, ordering discovery related to actual damages would obviate one of the primary purposes of electing statutory damages: avoiding the discovery burdens related to collecting and producing evidence of actual damages.

Maximum statutory damages may be granted without any evidence of actual damages. *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) ("it is clear . . . that a plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiffs or of the profits reaped by the defendant'") (citing *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)); *Microsoft Corp. v. PC Express*, 183 F. Supp. 2d 448 (D.P.R. 2001) (upholding award of maximum statutory damages with no mention of lost profits or revenues). Veoh miscites *Yurman Design, Inc. v. PAJ, Inc.* for the proposition that statutory damages must "bear some

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

relationship to actual damages suffered."[14]  *Yurman Design* holds the opposite: there, the defendant challenged an award of statutory damages of $68,750 per work because defendant claimed that the damage amount "bears little relationship to the $19,000 in profits PAJ claimed to have earned on the jewelry at issue in [the] case."  *Id.* at 113. The Second Circuit rejected the argument advanced by Veoh here.  It held that the statutory damage award need not be 'merely compensatory or restitutionary.'  *Yurman* does not support Veoh's motion but rather confirms its overreaching.

Further, even assuming *documents* reflecting actual damages (if they exist) are properly the subject of document requests—a point UMG does not concede— compelling such information through interrogatories is prohibited by the Federal Rules.  Veoh's Interrogatory Nos. 4 and 12 demand that UMG engage in laborious financial calculations that UMG does not perform in the ordinary course of business. The Federal Rules prohibit Veoh from demanding such discovery through interrogatories: A responding party "should not be required to enter upon extensive independent research in order to acquire . . . information" sought through interrogatories.  *La Chemise Lacoste v. Alligator Co. Inc.*, 60 F.R.D. 164, 171 (D. Del. 1973).  "[A] party cannot ordinarily be forced to prepare its opponent's case."  8A Wright & Miller, Federal Practice & Procedure § 2174.  Consequently, "interrogatories that require a party to make extensive investigations, research, or compilation or evaluation of data for the opposing party are in many circumstances improper."  *Id*.

As Veoh well knows—this being the second time Veoh has brought this motion—such is the case here.  Generating individualized accountings responsive to Veoh's Interrogatory No. 4—or a comprehensive accounting responsive to Interrogatory No. 12—would be an enormous undertaking.  There will likely be

---

[14] Rather, Veoh misquotes this Court as citing *Yurman Design* for this proposition. This Court did not cite *Yurman Design* in its March 17, 2008, Order.  *See* Ranahan Decl., Ex. C (3/17/2008 Order).

27

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel          Case No. CV 07-5744-AHM (AJWx)

hundreds, if not thousands, of copyrighted works at issue in this litigation. Ledahl Decl., ¶ 6. For each of these copyrighted works, UMG employees would need to collect tens of thousands of pages of financial documents reporting expenses and revenues. Ledahl Decl., Ex. E (Declaration of Charles Ciongoli In Support Of UMG's Opposition to Veoh's Motion To Compel) (¶ 8). Moreover, as most revenue and expenses are not allocated to individual copyrighted works, but are allocated by artist or album, accountings of revenue and expenses would need to be analyzed by employees for such allocation. *Id.* at ¶ 12. The thousands of hours of work by UMG employees and outside counsel that would be required to collect, compile, and analyze these documents, not to mention the great financial cost this would impose, would severely disrupt UMG's ongoing business. *Id.* at ¶ 6. The Federal Rules do not allow Veoh to force UMG to prepare *Veoh's* case, particularly where, as here, the case Veoh seeks to force UMG to prepare is entirely irrelevant.

### 3. Veoh's Interrogatories Are Premature

Veoh's interrogatories are also premature. UMG has not completed its identification of works infringed by Veoh. Veoh only recently made its purported "production" of 2.5 million videos and significantly hampered UMG's ability to review that material due to technical glitches in the information provided, Veoh's unilateral temporary termination of UMG's access to video files, and Veoh's withholding (and destruction) of critical metadata. *See* UMG's Opposition to Veoh's Motion to Compel Identification and Chain of Title Discovery (Dkt. No. 202) (5:7-9:2). Even assuming Veoh's interrogatories were proper—they are not—UMG has not had an opportunity to survey the scope of Veoh's infringement and identify all of the works for which UMG seeks statutory damages.

### 4. Veoh's Interrogatory Nos. 4 And 14 Are Grossly Overbroad

Veoh's Interrogatory No. 4 seeks financial information untethered to any specific channel of distribution. The request would equally cover UMG's sale of compact discs to Wal-Mart, revenue from motion picture licensing, and money tied to

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

licensing a particular song for use in a compilation album. These businesses are not Veoh's business. Further, Veoh nowhere justifies why ten-years of financial information is necessary to calculate damages, particularly where Veoh Networks was not founded until late 2004 and only launched its public internet site in 2007.

This overbreadth is particularly inappropriate here where a response would provide no better information as to UMG's actual damages than document discovery Veoh already has. Evidence of the revenues or profits UMG received from selling a particular compact disc, or UMG's costs in connection with a record contract, have little, if any, relation to the damages from infringing performances of UMG music videos by Veoh. General revenues and costs from UMG's copyrighted works do not reflect the lost video license fees due to Veoh's infringement, and any effort to intuit the indirect harm to UMG's business from individualized accountings of revenues and profits would be incredibly difficult. Veoh already has the best evidence of UMG's actual damages in UMG's license agreements, along with a host of other financial documents.

A related point is that Veoh's Interrogatory No. 14 seeks identification of "all licensees of [UMG's] copyrighted works." Put differently, Veoh demands information regarding each and every license agreement for which UMG is a licensor—no matter that the license may be for a Thursday-evening television program, the latest blockbuster film, a newly released video game, or a "greatest hits" album. As Veoh knows, UMG has already produced license agreements—over fifty—for online services or websites that engage in activity similar to Veoh. These license agreements include the information sought by Interrogatory No. 14: the executive responsible for executing the agreement on behalf of UMG, the executive responsible for executing the agreement on behalf of the licensee, the date of the license, and the expiration (if any) of the license. Veoh's Interrogatory No. 14, then, is nothing more than an effort to inflict costly, unnecessary discovery burdens on UMG.

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

### 5. **Veoh's Interrogatory 14 Has No Relevance To Copyright Misuse**

Veoh argues that information responsive to Interrogatory No. 14 is relevant to Veoh's defense of copyright misuse. Veoh is wrong.

Like Veoh's other attempts to make evidence of UMG's interactions with other websites relevant, its arguments regarding copyright misuse fall short. Indeed, Veoh's arguments regarding copyright misuse are essentially the same as its arguments regarding unclean hands. A copyright misuse defense turns on the copyright holder's alleged misuse vis-à-vis the defendant. Yet Veoh argues that UMG's interactions with other licensees will reveal the extent to which UMG has misused its copyrights vis-à-vis **other** websites. Veoh then suggests that such conduct would somehow forfeit UMG's rights to enforce its rights against **Veoh**.

Veoh is treading in the well-worn path of other mass infringers, arguing that alleged "global misuse" is an excuse for their infringement. Courts consistently reject this contention. UMG certainly does not concede that its activities with respect to other websites could constitute misuse with respect to those sites. But even if UMG's dealings with other websites could constitute misuse as to those sites, such purported misuse would have no bearing on UMG's case against Veoh. Courts clearly recognize that such alleged misuse with respect to others cannot support a defense to copyright infringement:

> There are a few allegations here of misuse that aren't directed at [Defendant]. . . . . Even assuming that there is some misconduct that's occurred somewhere by some of the plaintiffs in dealing with somebody who has nothing to do with this dispute, the notion that the consequence of that is that the copyrights are effectively invalidated would allow, for example, that very same defense to be asserted if I set up a little factory across the street, went to J&R down the block, bought a bunch of CD's, and started mass-producing the CD's. I could make the same defense that [Defendant] is making here, that once upon a time, if we search all their records, we'll find something they did wrong and whammo, now we've effectively put them out of business by saying everybody can violate their copyrights with impunity. That doesn't seem to me to be the law,

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

and that seems to me to go far beyond the rulings in the cases on which [Defendant] relies.

Ledahl Decl., Ex. F (*Arista Records v. Limewire LLC*, 06-CV-5936, March 12, 2008, Hearing Transcript (S.D.N.Y.)) (rejecting the relevance of—and discovery into—interactions with third-parties on the basis of a copyright misuse defense) (8:4-21).

Moreover, courts recognize that copyright misuse is a limited defense which arises in the narrow context of licensing arrangements in which the copyright holder seeks to extend the copyright monopoly to restrain the creative activity of the licensee.[15] *See generally Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 998 (C.D. Cal. 2006) (surveying misuse precedent and rejecting defense of copyright misuse asserted against major record companies and music publishers – including UMG). For example, in *Practice Mgmt. Info. Corp. v. American Med. Assoc.*, 121 F.3d 516 (9th Cir. 1997), the misuse involved a license to a coding system in which the copyright holder restricted the licensee from using any other competing coding system. The Ninth Circuit held that such licensing terms violated the policy of copyright to encourage the generation and dissemination of ideas. *Id.* at 521. UMG has already produced its license agreements with other online services and websites, the only arguably relevant evidence of misuse, yet Veoh nowhere identifies prohibited restrictions in UMG's license agreements. Veoh's additional fishing expedition should therefore be denied.

### 6. Veoh's Interrogatory 14 Has No Relevance To "Authorization"

Finally, Veoh argues that UMG's "licensing deals" are relevant in allowing Veoh to "determine whether the users who uploaded the alleged infringing files to Veoh were authorized to do so by Plaintiffs." Veoh nowhere explains how UMG's licensing deal with YouTube, for example, authorizes a Veoh user to upload UMG's

---

[15] Of course, Veoh has no license from UMG, so it has no grounds to complain about restrictive licensing.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

copyrighted content to Veoh. UMG's licensing deals with other sites provide for no such authorization. But more importantly, Veoh *has* UMG's "licensing deals" with other web sites and online services. Veoh does not and cannot explain why how the information sought by Interrogatory No. 14, over and above the licensing agreements themselves, could speak to any purported authorization.

For the foregoing reasons, the Court should deny Veoh's motion to compel responses to Interrogatory Nos. 4, 12, and 14.

## IV.   ISSUE NO. 3– DISCOVERY RELATING TO NOTICE TO VEOH

### A.   <u>Statement of Disputed Interrogatories and Plaintiffs' Responses</u>

### VEOH INTERROGATORIES 20, 21

## INTERROGATORY NO. 20:

For each work identified in your response to Interrogatory No. 1, describe in detail each instance in which you stated or otherwise gave notice (in writing, orally, pursuant to a DMCA Notice or otherwise), to Veoh prior to the commencement of this litigation, that you objected to the inclusion, exploitation or availability of the work on veoh.com.

## RESPONSE TO INTERROGATORY NO.20:

UMG incorporates by reference each of its General Objections, as well as its objections to Interrogatory No. 1. UMG further objects that the term "DMCA Notice" is vague or ambiguous in this context. UMG also objects to this interrogatory on the ground that it is overbroad and unduly burdensome as the information is within the possession, custody, and control of Veoh. UMG further objects that this interrogatory seeks information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence to the extent, among other things, it assumes or implies that UMG is in any respect obligated to provide written or oral notice, under the DMCA or otherwise, of the infringement of UMG's works through Veoh. UMG further objects to this interrogatory as argumentative and seeking information neither relevant to the subject matter of this action nor reasonably

32

Joint Stip. Pursuant To Local Rule 37-2 Re Veoh's Motion To Compel          Case No. CV 07-5744-AHM (AJWx)

calculated to lead to the discovery of admissible evidence to the extent it assumes that UMG is obligated to send notices of copyright infringement (pursuant to the DMCA or otherwise), or that such notices would be efficacious in light of the ongoing mass infringement of UMG's rights by Veoh.

Subject to and without waiving the foregoing, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, UMG will produce relevant, non-privileged communications, if any, relating to the infringement of UMG's works by Veoh.

**INTERROGATORY NO. 21:**

Describe in detail each instance in which Veoh failed to comply with a DMCA Notice submitted by you or any other entity, to Veoh.

**RESPONSE TO INTERROGATORY NO. 21:**

UMG incorporates by reference each of its General Objections, as well as its objections to Interrogatory No. 1. UMG further objects that the term "DMCA Notice" is vague or ambiguous in this context, and moreover calls for a legal conclusion. UMG also objects to this interrogatory on the ground that it is overbroad and unduly burdensome. Information relating to Veoh's responses to notices of copyright infringement are within Veoh's possession, custody, or control, and have not yet been produced. UMG further objects to this interrogatory as argumentative and seeking information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence to the extent it assumes that UMG is obligated to send notices of copyright infringement (pursuant to the DMCA or otherwise).


**B.    Veoh's Contentions and Points of Authorities**

Conspicuously absent from Plaintiffs' complaint is any allegation regarding notice to Veoh of any infringing work.  This is because Plaintiffs never identified any allegedly infringing work on Veoh prior to the filing of this action, and have identified

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

only five examples[16] since filing of this action. When asked, Plaintiffs maintain that Veoh's very inquiry is "unduly burdensome" and that it is Veoh, not Plaintiffs, that "possesses the most complete and accurate listing of [Plaintiffs'] copyrighted works" purportedly infringed. This is simply an improper attempt to shift the burden of identifying the works at the heart of Plaintiffs' own complaint, to Veoh. *See Hendrickson v. Amazon.com, Inc. 298 F. Supp.2d 914, 916* (C.D. Cal. 2003).

Plaintiffs' failure to provide Veoh with any notice under the DMCA is a factual matter subject to discovery in this action. For example, to support its DMCA affirmative defense under 17 U.S.C. § 512, Veoh will demonstrate that it did not have knowledge or sufficient notice of the allegedly infringing works. Veoh is thus entitled to investigate on what basis Plaintiffs believe Veoh should have had such notice.

Whether Veoh was put on notice of the alleged infringements is also relevant to the knowledge prong of contributory infringement. *See e.g., Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1171 (9th Cir. 2007); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 795 (9th Cir. 2007). Consequently, Veoh is also entitled to investigate such notice to defend itself against Plaintiffs' claim for contributory infringement.

Accordingly, Plaintiffs should be ordered to immediately respond to Interrogatory Nos. 20 and 21.

## 1. The Discovery Is Relevant to Plaintiffs' Efforts, If Any, To Mitigate

Plaintiffs have a duty to mitigate. *See Express, LLC v. Fetish Group, Inc.,* 464 F. Supp. 2d 965, 973-74 (C.D. Cal. 2006) (recognizing duty to mitigate in copyright infringement action); *Goldenberg v. Doe,* 731 F. Supp. 1155, 1160 (E.D.N.Y. 1990)

---

[16] Notably, despite having received no notice from Plaintiffs, Veoh had independently disabled access to all five examples cited in Plaintiffs' motion back in 2007. Simons Decl.¶ 6 (Docket 148). Two of the videos were terminated in response to DMCA notices Veoh received from a trade organization called the Recording Industry Association of America. *Id.* The other three videos were also independently terminated by Veoh. *Id.*

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

(same); *TransAlta Centralia Generation LLC v. Sicklesteel Cranes*, *Inc.*, 142 P.3d 209, 212 (Wash. Ct. App. 2006) ("The doctrine of mitigation of damages . . . prevents an injured party from recovering damages that the injured party could have avoided if it had taken reasonable efforts after the wrong was committed.").  Plaintiffs, however, refuse to respond to interrogatory nos. 20 and 21 which would require Plaintiffs to describe their efforts, if any, to protect the works at issue or prevent or reduce any alleged damages by utilizing the DMCA notification procedures.  If Plaintiffs had simply sent a DMCA Notice to Veoh, such works would have been promptly removed.  Instead, Plaintiffs elected to forego this route, seeking to run-up any alleged damages.

Indeed, what is likely Plaintiffs' complete failure to mitigate goes hand in hand with Plaintiffs' viral marketing strategy, and would also operate to provide leverage in a strategy by Plaintiffs to extract inflated license fees from alleged infringers, and running up damages for mass-infringement suits like this one.  Clearly, such discovery is relevant and necessary.

### C.    <u>UMG's Contentions and Points of Authorities</u>

#### 1.    <u>Veoh Already Has The Information Responsive To Its Interrogatories Nos. 20-21</u>

Veoh's Interrogatories Nos. 20-21 relate to notices of infringement from UMG to Veoh.  Veoh argues that UMG must respond to these interrogatories because (according to Veoh), under the DMCA, UMG is required to give notice of infringement to Veoh.  These arguments put the cart before the horse, starting from the assumption that Veoh has already prevailed on its affirmative defenses in this case.  Veoh asserts that it is entitled to protection under provisions of the DMCA.  Veoh bears the burden of proving its entitlement to such protections.  *See generally Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1099 (W.D. Wash. 2004). The DMCA is not, however, a discovery statute. Veoh cannot simply assume that it will

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

win its defense, and then use that assumption as the basis to demand discovery from UMG.

Regardless, the Recording Industry Association of America (the "RIAA"), a trade association of which UMG is a member, has produced notices of infringement that the RIAA sent to Veoh on UMG's behalf (though Veoh presumably already had such documents). Consequently, Veoh already has the information responsive to Interrogatory No. 20, namely, documents capturing "instance[s] in which [UMG] stated or otherwise gave note . . . to Veoh prior to the commencement of this litigation, that [UMG] objected to the inclusion, exploitation or availability of the work on veoh.com." *See, e.g.,* Ledahl Decl., Ex. G (12/6/2006 Notice of Infringement from the RIAA to Veoh) (RIAA0000151-157).

Further, Veoh, not UMG, maintains information responsive to Interrogatory No. 21, namely, the details concerning "each instance in which *Veoh* failed to comply with a DMCA Notice submitted by [UMG]" (emphasis added). To the extent UMG now has those details, it is because UMG only recently received (from Veoh) such information, namely, Veoh's purported production of videos and metadata. This information allows UMG to track how quickly Veoh responded to the RIAA's notices of infringement, if at all. Consequently, Veoh's Interrogatory No. 21 is premature: UMG has not completed its review of Veoh's purported production of videos and metadata and has had insufficient time to review Veoh's 2.5 million videos.

## 2. Notices Of Infringement Are Not Relevant To Mitigation Of Damages

Veoh mistakenly conflates a duty to mitigate damages with a duty to prevent Veoh's infringement of copyright. There is no such requirement—rather, *Veoh* has a responsibility to not infringe UMG's copyrights.

Simply put, Veoh argues that the existence of a general duty to mitigate damages obligates UMG to put Veoh on notice of its infringing activity. That is mistaken. The duty to mitigate refers to a plaintiff's obligation to avoid needless

36

damages from harm inflicted by the defendant, not a duty to avoid the harm in the first place. "The rule that defendant is not liable for avoidable consequences of his wrongdoing . . . is often discussed in terms of plaintiff's duty to mitigate *damages*." Douglas Laycock, *Modern American Remedies* 96 (Aspen 2002) (emphasis added). That is, though a defendant may have liability for *damages* the plaintiff could have avoided, there is no obligation for a plaintiff to prevent the defendant's wrongdoing.

Veoh cites **no** authority to the contrary. It claims that *Express, LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 973-74 (C.D. Cal. 2006), "recognizes a duty to mitigate in [a] copyright infringement action." That is plainly false: *Express, LLC* addresses state claims for fraud and unfair business practices, not copyright infringement. *Id.* at 969. The Court held that if Express could have mitigated its losses but for the defendant's fraudulent representation, it would have suffered damages attributable to the defendant's fraud. *Id.* at 973-74. That is not a holding that "recognizes a duty to mitigate in [the] copyright infringement" context. Likewise, *Goldenberg v. Doe*, 731 F. Supp. 1155, 1160 (E.D.N.Y. 1990), has no application here. There, the Court simply noted that the plaintiff's failure to exercise his contractual rights against a third-party—i.e., his failure to "mitigate" damages—strained his credulity as to the damages purportedly incurred as a result of the infringement. *Id.* at 1160. In fact, the Court suggested that the plaintiff's failure to exercise those rights suggested that the plaintiff and the third-party were in cahoots, and "that [the] lawsuit [may] represent nothing more than an effort by joint copyright owners to establish a means to recover for the loss of their hoped-for joint profits from sales in the U.S. market." In other words, the plaintiff was under no duty to mitigate his damages, but his failure to exercise a contractual right against a breaching third-party suggested that he had no damages in the first place.

For the foregoing reasons, the Court should deny Veoh's motion as to Interrogatory Nos. 20 and 21.

**V.     ISSUE NO. 4– INTERROGATORY NO. 17 REGARDING "STANDARD TECHNICAL MEASURES"**

**A.     <u>Statement of Disputed Interrogatories and Plaintiffs' Responses</u>**

**VEOH INTERROGATORY NO. 17**

**INTERROGATORY NO. 17:**

Describe all "standard technical measures," as defined in 17 U.S.C. § 512(1)(2), that you employed prior to filing this action.

**RESPONSE TO INTERROGATORY NO. 17:**

UMG incorporates by reference each of its General Objections.  UMG further objects that the interrogatory is overly broad and unduly burdensome in that it seeks a description of "all `standard technical measures."'  UMG objects that the response to this interrogatory depends on, among other things, discovery within Veoh's possession, custody, or control. UMG objects that the discovery sought is premature and seeks information concerning UMG's legal theories and contentions in this lawsuit.  UMG has not completed its investigation or analysis of the facts, its discovery, or its analysis of the legal issues in this lawsuit.  UMG objects that this interrogatory is vague and ambiguous as to the meaning of the term "standard technical measures," and the context in which it is used.  For the same reasons, the interrogatory seeks information not relevant to the claims or defenses of the parties or likely to lead to the discovery of admissible evidence.

**B.     Veoh's Contentions and Points of Authorities**

This Interrogatory merely asks Plaintiffs to "describe all 'standard technical measures,' as defined in 17 U.S.C. § 512(i)(2) that [Plaintiffs] employed prior to filing this action."  Standard technological measures is defined by Section 512(i)(2) as follows:

(2) Definition.--As used in this subsection, the term "standard technical measures" means technical measures that are used by copyright owners to identify or protect copyrighted works and--

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

(A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

(B) are available to any person on reasonable and nondiscriminatory terms; and

(C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

Veoh has asserted a defense based on 17 U.S.C. § 512, and one condition of that defense is that Veoh "does not interfere with standard technical measures" employed by copyright owners. Thus, to establish its defense Veoh needs to know what, if any, standard technological measures Plaintiffs employ, so that Veoh can prove that it has not interfered with any such measures. If Plaintiffs did not employ any such measures, they should say so. Plaintiffs' objections that this interrogatory is "overly broad and unduly burdensome" are meritless, as are Plaintiffs' objections that Veoh controls the information, that the Interrogatory is premature, that the Interrogatory is vague and ambiguous, and that the Interrogatory seeks information not relevant to the claims or defenses of the parties. Plaintiffs should be compelled to provide a complete response to this Interrogatory.

## C.    UMG's Contentions and points of Authorities

Veoh mischaracterizes Interrogatory No. 17 as "straightforward" when it is no such thing. This interrogatory is vague and ambiguous, overbroad and unduly burdensome, and seeks information that is irrelevant to this litigation. When asked to clarify the information sought by this interrogatory, Veoh refused. The interrogatory asks about "standard technical measures" and suggests that a definition of such measures may be found in the Copyright Act. The definition to which Veoh refers, however, provides no clarity for purposes of answering this interrogatory. UMG inquired of Veoh about what it meant or what information it sought by this

39

interrogatory, but Veoh refused to provide any clarification. Veoh does no better in the fifteen lines it devotes to this issue in its portion of this Joint Stipulation. Under such circumstances, UMG has provided the best answer it could and no further response should be compelled.

### 1. <u>Interrogatory No. 17 Seeks Irrelevant Information</u>

The "standard technical measures" UMG may have employed to protect its content have little relevance to this litigation. The provision to which Veoh points addresses one of many eligibility requirements for Veoh to invoke its defense under the DMCA. Specifically, under 17 U.S.C. § 512(i), a service provider can only claim the limitations on liability of Section 512 if it "accommodates and does not interfere with standard technical measures." 17 U.S.C. § 512(i)(1)(B). Thus, the focus of the "standard technical measures" in the statute is what Veoh does regarding such measures, not UMG. Pursuant to this provision, an otherwise qualifying service provider would lose its ability to claim any protection under the DMCA if it did not accommodate standard technical measures, regardless of whether the copyright owner employed any such measures to protect its works. Similarly here, this provision is relevant to Veoh's conduct. Veoh cites no authority suggesting that UMG must show that it employed any "standard technical measures" as an element of its case. As such, Veoh's interrogatory seeks irrelevant information.

### 2. <u>Veoh Cannot Explain What Information UMG Should Provide</u>

Interrogatory No. 17 seeks a description of "all standard technical measures" UMG employed prior to filing this action. Even if this information about UMG's use of standard technical measures were relevant, Veoh cannot explain what information UMG should provide. UMG objected that this interrogatory is vague and ambiguous because it is unclear what qualifies as "standard technical measures." In its interrogatory—and in its argument above—Veoh points to the definition in 17 U.S.C. § 512(i)(2). This offers no additional assistance. Veoh was unable to identify any

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

measures that "have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process." If Veoh has some particular standard in mind, UMG invited it repeatedly to disclose it. Veoh has yet to provide any answer. Ledahl Decl. ¶ 10. Indeed, even after UMG pointed out this failing when Veoh previously presented the same motion to the Court, Veoh has done nothing to explain itself or offer any further argument to the Court. Once again it simply represented the same arguments the Court already rejected. Where even Veoh cannot explain what information UMG should be providing, it cannot support a motion to compel further response.

## VI. ISSUE NO. 5 – INTERROGATORY REGARDING PREVIOUS OWNERSHIP DISPUTES REGARDING COPYRIGHTS AT ISSUE

### A. <u>Statement of Disputed Interrogatory</u>

**<u>INTERROGATORY NO. 23</u>:**

Describe in detail each instance in which any person has questioned or disputed your rights, ownership, co-ownership, administration or control of any of the allegedly infringed works for which you seek relief in this action.

**<u>RESPONSE TO INTERROGATORY NO. 23</u>:**

UMG incorporates by reference each of its General Objections. UMG objects to this interrogatory which requires UMG to identify which of these works has been infringed, and for which UMG seeks relief in this action, on the grounds that such request is unduly burdensome and that this information is within the possession, custody, and control of Veoh. UMG has not yet identified every copyrighted work for which it will seek relief in this lawsuit. Indeed, it is Veoh and not UMG, that possesses the most complete and accurate listing of copyrighted works that have been infringed by Veoh. UMG expects that Veoh will take appropriate efforts to identify and retain this information. UMG further objects to this interrogatory on the grounds that it is unduly burdensome, overbroad, and seeks information neither relevant to the

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence insofar as whether or not any "person" (a term which is also so broad that it renders this interrogatory independently unreasonable) has in the past disputed UMG's ownership, co-ownership, administration or control of, or other rights to, any copyrighted work for which UMG seeks relief in this lawsuit is irrelevant to the claims or defenses of the parties in this action. UMG further objects to the definition of "persons" as overly broad and unduly burdensome.

## B.    Veoh's Contentions and Points of Authorities

### 1.    Plaintiffs Must Respond Regarding Previous Ownership Disputes Regarding the Works At Issue

It is fundamental that in order to establish copyright infringement, a plaintiff has the burden of establishing ownership of a valid copyright. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1144 (9th Cir. 2003). As discussed extensively in Veoh's Motion to Compel Plaintiffs to Identify Works at Issue and Produce Chain of Title/Ownership Information Re Same, filed on October 29, 2008 (Docket 194) ("Mot. to Compel Plaintiffs to Identify Works"), the presumption of copyright ownership is not irrebuttable and any alleged burden upon Plaintiffs would be minor and outweighed by the compelling harm to Veoh if it is not allowed to investigate Plaintiffs' purported ownership. *Id.* Such inquiries into copyright ownership are standard and commonplace in infringement actions. *Id.* Given the incredibly high stakes of Plaintiffs' lawsuit, Veoh's investigation of prior disputes about ownership to the very works at issue in this lawsuit is crucial—and could significantly reduce any statutory damages award in this action. (Mot. to Compel Plaintiffs to Identify Works at pp. 13-15; Declaration of Thomas P. Lane (Docket 194-3)).

This Court has previously recognized the significance of this type of information in The *MySpace/Grouper* Actions. On March 27, 2008, the Court ordered UMG to produce documents and interrogatory responses pertaining to chain of title in

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

42

all the works for which they seek relief, but limited the production to "any disagreements or disputes regarding UMG's ownership of [the sound recordings at issue] which rose to a sufficiently serious level that inside or outside counsel became involved . . . "  *All* ownership issues, however, are critical to Veoh's investigation of Plaintiffs' alleged ownership in the subject works--whether raised by outside counsel, a recording artist, another representative, or any other person or entity claiming to own the works that Plaintiffs are claiming to own in this lawsuit.

For all these and the reasons discussed in Plaintiffs' Mot. to Compel Plaintiffs to Identify Works, Veoh respectfully requests that the Court order Plaintiffs to provide the critical information sought by Interrogatory No. 23 so that Veoh may prepare its defense.

## C.     UMG's Contentions and Points of Authorities

This portion of Veoh's motion marks Veoh's <u>fourth</u> attempt to challenge the Court's sensible, compromise ruling on so-called "chain-of-title" discovery.  *See* Veoh's Motion to Compel Discovery from UMG (Dkt. No. 81); Veoh's Summary of Discovery Orders in *MySpace/Grouper* Actions Relevant to Current Discovery Disputes (Dkt. No. 110); Veoh's Motion to Compel Plaintiffs to Identify Works at Issue and Produce Chain of Title/Rights Information (Dkt. No. 194).  The Court denied Veoh's most recent motion on the issue (Dkt. No. 194), calling it "defective." *See* November 21, 2008, Order (Dkt. No. 219).  In response to each of Veoh's challenges, UMG has noted that the Court's ruling on "chain-of-title" discovery is consistent with the manner in which other Courts have addressed the issue in mass-infringement cases.  *See, e.g., In re Napster*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002) ("[T]his court will not permit Napster to engage in a 'fishing expedition.'  The advantage of the current statutory scheme is that plaintiffs need not produce mounds of documents in order to maintain an infringement action"); *Yash Raj Films (USA) v. Kumar*, 2006 WL 3257215 (E.D.N.Y. Nov. 9, 2006) (denying defendant's request

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

chain-of-title for hundreds of copyrighted works because "[p]laintiff . . . is entitled to the presumption of validity" and the defendant had "not shown why the Court should compel the chain of title information for over one hundred works . . . given the significant burden that this would place on plaintiff").  And in each opposition, UMG has noted that, at the parties' initial status conference, Judge Matz said "it would make sense to apply the same analysis and same conclusion [regarding the production of chain-of-title documents in the *MySpace* action] to this case, unless there are factors here that require something materially different, and I doubt that."  Ledahl Decl., Ex. H (3/17/2008 Hearing Tr.) (8:22-25).  As UMG made clear in its Opposition to Veoh's Motion to Compel Identification and Chain of Title Discovery (Dkt. No. 202), Veoh has come forward with no such factors.

UMG can and will abide by this Court's prior "chain-of-title" ruling in the *MySpace* action.  But it should not have to perpetually respond to Veoh's resubmission of the same motion on the same issue over and over again.  Veoh's conduct in repeatedly submitting the same motion is nothing more than wasteful, vexatious conduct and UMG respectfully submits that the Court should enter an appropriate sanction to prevent continued abuses.

## VII.   CONCLUSION

### A.   Veoh's Conclusion

Plaintiffs have failed and refused to provide crucial interrogatory responses about viral marketing, damages, Veoh's DMCA defense including Plaintiffs' notice (or decision not to give notice) to Veoh of the allegedly infringing works, and copyright ownership disputes over the works at issue in this action.  Plaintiffs should be compelled to provide proper, complete, verified responses to Interrogatory Nos. 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 23 and 24 within 10 days of this Court's order, to permit Veoh to prepare its defense in this action.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**B.**   <u>**UMG's Conclusion**</u>

Veoh's recycled motion to compel offers no basis for the Court to depart from its August 25, 2008, ruling, denying Veoh's prior motion.  The Court should deny Veoh's motion in full.

Dated:  November 24, 2008                    **WINSTON & STRAWN LLP**


                                             By  /s/ Erin R. Ranahan_____
                                                  Michael S. Elkin
                                                  Thomas P. Lane
                                                  Jennifer A. Golinveaux
                                                  Rebecca L. Calkins
                                                  Erin R. Ranahan
                                                  Attorneys for Defendant
                                                  VEOH NETWORKS, INC.


Dated:  November 25, 2008                    **IRELL & MANELLA LLP**


                                             By  /s/ Brian Ledahl_____
                                                  Steven A. Marenberg
                                                  Elliot Brown
                                                  Brian Ledahl
                                                  Benjamin Glatstein
                                                  Attorneys for Plaintiffs
                                                  UMG RECORDINGS, INC.,
                                                  UNIVERSAL MUSIC CORP., SONGS OF
                                                  UNIVERSAL, INC.; UNIVERSAL-
                                                  POLYGRAM INTERNATIONAL
                                                  PUBLISHING, INC.; RONDOR MUSIC
                                                  INTERNATIONAL, INC.; UNIVERSAL
                                                  MUSIC – MGB NA LLC; UNIVERSAL
                                                  MUSIC – Z TUNES LLC; and
                                                  UNIVERSAL – MBG MUSIC
                                                  PUBLISHING LTD.