**Re: Docket No. 222**

IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian D. Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., *et al.*, <br><br> Defendants. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S OPPOSITION TO VEOH'S RENEWED MOTION TO COMPEL CHAIN OF TITLE DISCOVERY (DOCKET #222)** <br><br> **Concurrently filed herewith:** <br> **(1) Declaration of Brian Ledahl** <br><br> Magistrate: Hon. Andrew J. Wistrich <br><br> Date: December 15, 2008 <br> Time: 10:00 AM <br> Ctrm: 690 <br><br> Discovery Cutoff: January 12, 2009 <br> Pretrial Conference: April 6, 2009 <br> Trial Date: April 21, 2009 |

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1977614

UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
TO COMPEL CHAIN OF TITLE DISCOVERY
(DOCKET #222)

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

Veoh once again requests extensive "chain of title" discovery that the Court already rejected. In the *MySpace* action, the Court specifically rejected requests even narrower than those pursued by Veoh here and limited the necessary production of so-called "chain of title" discovery. Veoh nonetheless pursued its requests in its First Motion to Compel. At the hearing on that motion on August 25, 2008, the Court denied Veoh's motion and made clear that it intended to follow the same rulings issued on this matter (and others) in the *MySpace* and *Grouper* actions. The Court made clear that Veoh must show some important difference between the facts of this case and the prior actions to justify a different result. Similarly, at the initial status conference in this case, Judge Matz indicated that the issue of "chain of title" discovery in this case should be resolved consistent with this Court's rulings on the issue in the prior cases. Declaration of Brian Ledahl ("Ledahl Decl."), Exhibit ("Ex.") A (3/17/2008 Hearing Tr.) (8:22-25). In denying the same motion when Veoh brought it again on October 29, the Court ruled that the relief Veoh sought was "too broad and has not been shown to be tethered to the scope of any particular discovery requests it has served." Nov. 21, 2008 Order. Veoh returns again asking for exactly the same overbroad discovery that the Court has continually rejected. Veoh acknowledges that the Court denied requests for the same discovery Veoh seeks here in the prior cases and offers no evidence or argument that there is something different about this case that merits a different result. Veoh's efforts to overturn this Court's careful consideration of the issues are unavailing and should be rejected.

Further, Veoh's motion is also procedurally improper. Veoh ignored the substance of the Court's November 21 Order and re-filed this motion only one business day later. Veoh also violated the Court's Local Rules. Veoh filed this motion without joint stipulation consistent with Local Rule 37. Veoh neither sought

nor obtained permission to deviate from the procedures set forth in the Local Rules. Veoh's approach seems calculated to increase the cost of this case for UMG and to waste both the Court's and UMG's time and resources in dealing with yet another re-iteration of the same non-meritorious motion. Veoh's conduct is particularly egregious here as it filed its "renewed" motion in a manner calculated to force UMG to respond over the Thanksgiving holiday. Local Rule 37-4 expressly provides that sanctions are available where a party fails to comply with the procedures set forth in Local Rule 37. UMG respectfully submits that not only should Veoh's motion be denied, but sanctions are appropriate and necessary here to prevent further vexatious conduct of this type by Veoh.

## II. VEOH'S MOTION IS PROCEDURALLY IMPROPER

This is at least the third time that Veoh has filed the same motion. The Court has already denied it twice. Indeed, the Court denied this same motion on Friday, November 21, 2008 (Dkt. #219), only to see Veoh re-file the same motion on the next business day – Monday, November 24, 2008. While Veoh's motion is still substantively deficient, it is also procedurally improper for at least two independent reasons.[1] First, Veoh ignores this Court's prior orders in re-filing its motion. The Court did not merely rule, as Veoh falsely suggests, that Veoh could simply re-file its motion the next day with additional text and exhibits and somehow cure its deficiencies. Second, Veoh improperly ignored the Court's Local Rules regarding the filing of discovery motions without permission and indeed without even seeking permission. Veoh simply asserts that Local Rule 37 should not apply to Veoh in this case. Both of these procedural issues warrant denial of Veoh's motion regardless of the merits (which also warrant denial). Moreover, the timing and circumstances of

---

[1] Veoh filed two renewed motions on November 24, 2008, which essentially divided the motion that the Court denied on November 21, 2008 into two motions. UMG has similar objections to the procedural impropriety of both motions. Because Veoh chose to file two separate "renewed" motions, UMG is forced to present the same procedural arguments in response to both.

Veoh's filing of the instant motion warrant sanctions for abuse of the discovery process and vexatious litigation conduct.

### A. <u>Veoh Ignores The Court's Prior Orders</u>

This Court has now denied this motion twice. First, on August 25, 2008, the Court denied Veoh's first motion to compel on the record at the hearing on that motion. At that hearing, this Court denied Veoh's Motion to Compel Discovery Responses from UMG ("Veoh's Motion to Compel") (Dkt. No. 73). The Court noted that Veoh's motion contained "hundreds of requests," that it "exceed[ed] 300-pages," that Veoh's grouping of requests was "so broad that [it] really [wasn't] meaningful," and that many "of [Veoh's requests] probably have been largely satisfied at this point." Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (19:16-18, 22:12-13) (Dkt. No. 107). The Court therefore "den[ied Veoh's] motion to compel" without prejudice to Veoh's right to "file [another] motion"—after "complet[ing its] review of [UMG's] production" and provided that Veoh organized its subsequent motion "in a sensible way." *Id.* at 21:23, 21:25-22:1, 23:16-17.[2]

Veoh then sought to renew its motion on October 29, 2008. In bringing that renewed motion, Veoh sought, through an improper *ex parte* communication with the Court, an expedited consideration of its new motion. Though Veoh had provided UMG no notice of its intention to file a renewed motion, nor of its request for expedited consideration, the Court granted the request for expedited consideration in an Order of October 28, 2008 (Dkt. # 193). Veoh's renewed motion largely repeated the assertions of its previously-denied motion, despite the Court's prior instructions. On November 21, 2008, the Court denied Veoh's motion for the second time (Dkt. # 219). The Court set forth three specific bases for denying Veoh's motion:

---

[2] Contrary to the revisionist history in Veoh's moving papers, the Court did not deny Veoh's prior motion "[d]ue to the extensive discovery failures raised by Veoh within one motion." Veoh's Mot. at 4 n.6. Veoh's shortcomings, not UMG's, account for the denial.

"First, the court previously denied a motion to compel filed by Veoh because that motion was presented in an unmanageable manner. Rather than file a new motion including copies of the discovery requests and responses thereto that are at issue, Veoh merely refers the court to a portion of the 314 page joint stipulation filed in support of the previously denied motion. Second, the relief Veoh seeks in its proposed order is too broad and has not been shown to be tethered to the scope of any particular discovery requests it has served. Third, it is unclear whether Veoh is essentially attempting to compel a response to the interrogatory it served on October 24, 2008. [See Veoh's Motion at 3 n.5]. Obviously, any such attempt would be premature."

Veoh chooses to construe the November 21 ruling as merely requiring Veoh to re-file its motion to include the text of the discovery requests and responses at issue. Obviously, that minor correction at most would address one of the three reasons the Court denied the motion. Veoh completely ignores the other bases for denying the motion identified by the Court. In particular with respect to this motion, Veoh still fails to tether the relief it seeks to the requests at issue, and it has not narrowed the relief it seeks in any meaningful way – instead merely reciting various vague and ill-defined requests in its proposed order, but otherwise copying it identically from the proposed relief the Court previously rejected as overbroad. Veoh fails to address or even acknowledge the Court's prior rulings. Veoh's insistence on immediately re-filing its motion without even acknowledging the substance of the Court's Orders is grounds for denying the motion – again.

### B. Veoh Ignores The Court's Local Rules

Local Rule 37 provides that discovery motions are to be brought via a joint stipulation of the parties, prepared in accordance with the Local Rule. Veoh's motion was not filed pursuant to that Rule. While the Court may grant permission

for parties to deviate from this practice, Veoh did not obtain such permission, and indeed did not even seek it. Veoh simply filed its motion in contravention of the Court's Local Rules and claims that it should be allowed to do so because the Court's hearing calendar was inconvenient for Veoh. Veoh did not seek UMG's agreement to an adjustment of schedule and Veoh did not file an *ex parte* application seeking leave to present its motion on some expedited basis or otherwise in a manner different than that provided under the Local Rules. Veoh simply chose to ignore the Local Rules.

In this particular instance, Veoh's refusal to follow the Local Rules is particularly prejudicial to UMG. Veoh filed its motion on Monday, November 24, 2008, the Monday preceding the Thanksgiving holiday. Had Veoh sent UMG a joint stipulation on that date, UMG would have had five court days in which to prepare its response – thus requiring UMG to return its responsive portion by Wednesday, December 3. While this would unquestionably have been a tight schedule, Veoh's decision to ignore the Local Rules imposes a far more onerous schedule, ostensibly requiring UMG to submit its responsive brief by Monday, December 1, the first business day after the Thanksgiving holiday, and only the third court day after Veoh's filing.

Local Rule 37-2.4 provides that "The Court will not consider any discovery motion in the absence of a joint stipulation or a declaration from counsel for the moving party" establishing opposing counsel's failure to cooperate in preparation of such a joint stipulation. Veoh submitted no such declaration (nor could it as such assertions would be completely false). Veoh's refusal to follow the procedures set forth in this Court's Local Rules – and the resulting prejudice and expense to UMG – provides another, independent reason to deny Veoh's motion.

C. **Veoh's Tactics Warrant Sanctions**

As discussed above, Veoh filed the present motion one business day after the Court denied the same motion. As discussed in greater detail below, Veoh's

UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
TO COMPEL CHAIN OF TITLE DISCOVERY
(DOCKET #222)

renewed motion completely fails to address or correct the failures the Court identified as a basis for denying Veoh's prior motion. Additionally, Veoh refused to comply with the Local Rules of this Court in filing its motion. Veoh's conduct inflicts significant prejudice on UMG and its counsel. UMG is forced to, once again, prepare a response to Veoh's flawed motion and once again spend the time and money to brief a deficient motion. Moreover, Veoh's tactics in renewing this motion constitute particularly vexatious conduct. As noted above, Veoh filed its motion on the Monday preceding the Thanksgiving holiday and purported to schedule it so as to require UMG to file its response on the Monday immediately following Thanksgiving. In addition to the excessive cost of responding to yet another non-meritorious renewal of the same motion, UMG and its counsel were forced to accept the additional imposition of responding to Veoh's frivolous motion over the holiday.

Local Rule 37-4 provides that "[t]he failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions." Here, as set forth above, Veoh failed to comply with the procedures of Local Rule 37. Its failure was particularly egregious in that it acted in a manner calculated to inflict the maximum unnecessary imposition on UMG. Moreover, Veoh's apparent refusal to even read the Court's prior orders results in a further waste of the Court's time. Veoh has merely re-filed the same motion that the Court has twice denied. Addressing the motion again is an unnecessary burden on both the Court and on UMG. UMG respectfully submits that such conduct has become a pattern in Veoh's litigation of this case and that sanctions are needed at this stage to address such conduct. As set forth in the Ledahl Declaration, UMG has expended more than $2,000 in responding to this renewed motion, in addition to the many thousands of dollars UMG already spent addressing the same motion twice before. *See* Ledahl Decl., ¶ 7. UMG respectfully requests that the Court enter an award of sanctions

against Veoh in an amount of at least $_2,000 to address the significant hardship to UMG resulting from Veoh's conduct and to deter such conduct in the future.

## III. VEOH ASKS THIS COURT TO REVERSE ITS RULINGS ON "CHAIN-OF-TITLE" DISCOVERY WITHOUT ANY BASIS

Veoh's renewed motion marks its fourth attempt to challenge this Court's sensible, compromise ruling on the scope of permissible chain-of-title discovery. *See* Veoh's Motion To Compel Discovery From UMG (Dkt. No. 81); Veoh's Summary Of Discovery Orders In *MySpace/Grouper* Actions Relevant To Current Discovery Disputes (Dkt. No. 110), and Veoh's prior motion – denied by the Court's Order of November 21, 2008. Veoh has never demonstrated any legitimate basis for this Court to depart from its prior ruling on this issue in the *MySpace* action for purposes of discovery in this case. Indeed, during the initial status conference in this case (as opposed to another case involving different facts and different counsel), Judge Matz discussed this specific issue with the parties and made his view clear that "it would make sense to apply the same analysis and same conclusion [regarding the production of chain-of-title documents in the *MySpace* action] to this case, unless there are factors here that require something materially different, and I doubt that." Ledahl Decl., Ex. A (3/17/2008 Hearing Tr.) (8:22-25). Veoh has not and cannot identify any such factors and the Court should stand by its prior ruling.[3] Instead, Veoh argues that in relying on this Court's rulings in the *MySpace* and *Grouper* cases, UMG asserts that the presumption of ownership flowing from UMG's copyright registrations is irrebutable. UMG respectfully submits that this Court never ruled in the prior cases that the presumption was irrebutable. Rather, the Court appropriately balanced the interests and burdens associated with the discovery sought and entered an order based upon that balancing. For all of its

---

[3] It is notable that Veoh asks the Court to follow prior rulings whenever they require UMG to provide any discovery (though Veoh has repeatedly distorted such prior rulings) but suggests that any ruling narrowing UMG's discovery obligations in any way should be ignored.

1977614 - 7 - UMG'S OPPOSITION TO VEOH'S RENEWED MOTION TO COMPEL CHAIN OF TITLE DISCOVERY (DOCKET #222)

vitriol (and repetition), Veoh fails to show that the Court's prior balancing of these issues was in any way incorrect.

### A. Copyright Registrations Are Prima Facie Evidence Of Copyright Ownership

Veoh concedes that UMG's copyright registrations constitute prima facie evidence of copyright ownership. Veoh must make this concession. *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1166-67 (C.D. Cal. 2002); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1174 (N.D. Tex. 1997); *Manufacturers Techs., Inc. v. Cams, Inc.*, 706 F. Supp. 984, 991 (D. Conn. 1989). *See also* 17 U.S.C. § 410(c) ("the certificate of a registration made before or within five years after first publication of the work *shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate*") (emphasis added). UMG has already produced the registration records for thousands of copyrighted works. It has also produced exemplar artist and recording agreements as further background of UMG's ownership of certain copyrights at issue. This production is necessarily preliminary, as Veoh had produced none of its videos or metadata when UMG began its production. It has not completed its production as to either. Once Veoh comprehensively produces its videos and metadata, allowing UMG to identify copyrighted works infringed by Veoh, UMG will supplement its production to include registration records missing for identified works and certain additional corporate relationship documents tying UMG's registrations to the UMG plaintiffs here.[4] Concurrent with this Opposition, UMG

---

[4] Veoh's claim that UMG's production is deficient because certain registrations do not list a plaintiff to this action is a red herring. As previously stated, UMG produced these registrations before Veoh produced its "video spreadsheet" and thus before UMG had an opportunity to identify works infringed by Veoh. Consequently, not all registrations produced by UMG will be relevant to this action. Once Veoh completes its production of videos and metadata, UMG will produce corporate relationship documents necessary to connect relevant registrations to the plaintiffs. UMG should not be penalized because it made an extensive production even while Veoh continues to play games to avoid producing its own documents.

has served Veoh with a response to its interrogatory number 25 seeking identification of infringing videos. While this identification is necessarily incomplete due to Veoh's various failures to adequately produce its videos (as detailed in UMG's opposition to Veoh's Motion to Compel Identification of Works), UMG has already identified more than 1500 infringing videos. Many of these videos implicate UMG's copyrights both in a sound recording and separately in a musical composition. UMG remains willing to produce the materials the Court contemplated in the *MySpace* and *Grouper* cases, and has begun collecting any such additional documents in light of the identification made to date.

### B. Veoh's Requests Are Broader Than Those Rejected In The *MySpace* Action

The major change between Veoh's current motion and the one the Court denied on November 21 is that Veoh now transcribes the so-called "chain-of-title" Requests for Production in the text of its motion papers. While Veoh has narrowed its list to some degree from its prior motion, it still seeks incredibly broad and overreaching categories of information. For example, Veoh continues to pursue its Request number 6, seeking "All documents concerning assignments or licenses of copyrights claimed by you in this action." Veoh offers no explanation of how the incredibly broad category of material sought by such a request (which would include, for example, all licenses ever granted for a song to be used in a motion picture) could possibly inform the question of whether UMG owns the copyrights at issue. Veoh continues to base its motion on nothing more than *ipse dixit* argument that such overbroad discovery is necessary.

The Court rejected MySpace's broad requests, requiring only that UMG provide "documents relating to any disagreements or disputes regarding UMG's ownership of, control over, right to administer, or other interest in any of the Copyrighted Sound Recordings . . . [or] Copyrighted Musical Compositions . . . which rose to a sufficiently serious level that inside or outside counsel for plaintiffs

became involved." March 27, 2008, Order (MySpace Dkt. #273) in *UMG Recordings, Inc., et al. v. MySpace, Inc., et al.*, Case No. CV 06-7361 AHM (AJWx). UMG is willing to produce the same scope of materials here as it identifies works infringed by Veoh. Veoh fails to explain why the balance struck by this Court (which was rendered after considering precisely the arguments Veoh offers here) was somehow incorrect or unfair.

Veoh misleadingly argues that Judge Matz's statements, made during the Rule 16 Status Conference in the *DivX* action, require a different outcome. They do not. Judge Matz did not direct UMG to produce all documents relating to ownership of the works at issue in that case, never stated "that copyright registrations alone would be insufficient to establish ownership," and never decided that Veoh has an "understandable right" to the massive swath of documents sought here. Veoh presented the exact same misleading and false arguments in its prior motion – which the Court denied. Veoh's willingness to repeat these demonstrably false assertions yet again confirms the lack of merit to Veoh's motion.

Judge Matz anticipated that DivX would pursue chain-of-title discovery and asked that UMG provide information that was "<u>readily available</u>" regarding ownership of the works at issue. Calkins Decl., Ex. A at 10. Judge Matz made clear that the Status Conference was not a ruling on discovery issues because for any specific discovery dispute, "Judge Wistrich, who is the Magistrate Judge . . . will have to resolve it at first blush . . . ." *Id.* at 19. Consistent with Matz's comment, this Court has already resolved the chain-of-title dispute and made clear to Veoh on August 25 the Court's view that the same principles applied in the *MySpace* action should apply here. Ledahl Decl., Ex. B (8/25/2008 Hearing Tr.) (56:3-25). Judge Matz also acknowledged what Veoh has already conceded: "registration is presumptive" evidence of copyright ownership. Calkins Decl., Ex. A at 10.

Moreover, this Court's prior ruling on this issue is consistent with the manner in which other Courts have addressed the issue in mass-infringement cases. *See,*

UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
TO COMPEL CHAIN OF TITLE DISCOVERY
(DOCKET #222)

*e.g., In re Napster*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002) ("[T]his court will not permit Napster to engage in a 'fishing expedition.' The advantage of the current statutory scheme is that plaintiffs need not produce mounds of documents in order to maintain an infringement action"); *Yash Raj Films (USA) v. Kumar*, 2006 WL 3257215 (E.D.N.Y. Nov. 9, 2006) (denying defendant's request chain-of-title for hundreds of copyrighted works because "[p]laintiff . . . is entitled to the presumption of validity" and the defendant had "not shown why the Court should compel the chain of title information for over one hundred works . . . given the significant burden that this would place on plaintiff"). These cases do not state that the presumption of ownership from copyright registrations is irrebutable as Veoh tries vainly to suggest. Rather they strike a sensible balance between the potential relevance of extensive additional discovery and the burdens associated with such discovery. This Court did the same in the *MySpace* and *Grouper* actions. Veoh fails to even acknowledge such balancing by this Court.

In short, both Judge Matz and this Court have stated, in this case, that absent the unlikely possibility that circumstances here are so different from those present in the *MySpace* action as to warrant a different result, the Court's prior ruling on the issue of "chain of title" discovery from that case should apply here. Veoh does not show a single difference between this case and the *MySpace* action that would warrant a different result. Veoh's attempts to waste the Court's time and UMG's time with simply re-arguing such issues should be rejected. Indeed, as discussed below, even were the Court to consider the issue afresh, the same result would still be appropriate.

### C. Veoh's Requests Would Impose Undue Burden On UMG

In its prior submissions, UMG explained that production of the overly broad scope of chain-of-title discovery sough by Veoh would impose an undue burden on UMG. To justify that burden, Veoh must show that the importance of this discovery outweighs the significant burden on UMG. The Court can and should limit

discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see also Nicolas J. Murlas Living Trust v. Mobil Oil Corp.*, 1995 WL 124186, *5 (N.D. Ill. Mar. 20, 1995) (denying discovery because the burden of production outweighed the limited relevance of the requested material); *Wright v. AmSouth Bancorporation*, 320 F.3d 1198 (11th Cir. 2003); *Oxford House, Inc. v. City of Topeka, KS*, 2007 WL 124 6200 (D. Kan. Apr. 27, 2007). Veoh has not and cannot make this showing.

As detailed in the declaration of Michael Ostroff, previously submitted to this Court and attached to the Ledahl Declaration as Exhibit L, UMG controls copyrights to more than 100,000 sound recordings and musical compositions. Several thousand of these copyrights will likely be at issue in this case. *See* Ledahl Decl., Ex C (Declaration of Michael Ostroff In Support Of UMG's Opposition To Veoh's Motion To Compel ("Ostroff Decl.")) (¶¶ 3, 6, 10). Veoh challenges this assertion in its latest motion by saying that UMG has not yet identified many infringed works.[5] As noted above, UMG has now identified more than 1500 infringing videos, many implicating more than one UMG copyright (both sound recording and separate musical composition rights are implicated by many of the infringing videos). Thus, Veoh's assertions about the lack of burden are nothing more than unsupported argument directly contradicted by the actual evidence submitted by UMG.

Producing the records sought by Veoh would be a massive undertaking requiring the location and review of hundreds of thousands of documents, thousands of hours of UMG employee time, and likely millions of dollars in costs. This process would require locating and reviewing records in many disparate locations across many different business units of UMG. *Id.* at ¶¶ 5-9 (sound recordings), 10-

---

[5] Veoh's motion is notably inconsistent. In one place it claims that UMG's Complaint in this action does not identify any works at issue (Motion at 12, n. 4). Elsewhere, Veoh concedes that UMG's Complaint identified 61 copyrighted works (Motion at 14:10-15).

12 (musical compositions). For example, to provide the breadth of documents Veoh requests, UMG would have to locate, review and produce agreements and other licenses with artists and producers, licenses from samples that may appear in a song, and licenses for the underlying compositions. *Id.* at ¶ 7. The files containing such materials are not centrally located within UMG. They are located in the files of UMG's various labels and divisions, clearance companies, and others involved in any individual licensing situation. *Id.*

The massive burden Veoh's requested discovery would inflict on UMG cannot meaningfully be disputed. UMG has already provided thousands of pages of documents relating to its copyright ownership—to wit, actual copyright registrations and documents providing information that Veoh can use to view the copyright registrations on the Copyright Office website. Veoh concedes that these documents constitute *prima facie* evidence of copyright ownership. Veoh cannot demonstrate the need for the additional, extensive production it seeks.

As UMG pointed out in the *MySpace* litigation, UMG is in the business of obtaining rights to copyrighted sound recordings and musical compositions. It is unreasonable to suggest that UMG does not own these rights on a massive scale. Veoh suggests that it intends to spend vast resources sifting through a mountain of information trying to identify works, if any, for which UMG does not own rights. Even were such an effort to yield a handful of works (exceedingly doubtful, UMG submits), Veoh's costs in connection with searching and reviewing would outweigh any reduction in damages they might obtain. Veoh knows this—and presumably has no intention of actually reviewing the material it seeks. Given Veoh's repeated protestations about the costs of this lawsuit—advanced only when UMG seeks discovery—it is insensible for Veoh to pursue unnecessary, voluminous information, unless Veoh is simply looking to inflict a burden on UMG. The Court has already struck the appropriate balance on this issue, and the same result should apply here.

### D. The Alleged Benefits Of Chain-Of-Title Discovery Do Not Outweigh Its Burden Of Production

Veoh fails to show that the "benefit" of chain-of-title discovery outweighs "the burden or expense of" its production. Fed. R. Civ. P. 26(b)(2)(C). Veoh argues that facially valid registration certificates for UMG's works are subject to challenge by *Veoh*—and thus warrant burdensome discovery—because UMG may have failed to observe statutory formalities, or because contracts assigning copyrights to UMG are defective. Veoh is wrong on both counts.

Where a plaintiff is the author of the works at issue or is the "assignee of the rights to the copyrighted works" and the "original registrant of the United States copyright certificates," the plaintiff "is entitled to the presumption of validity," and the Court may properly deny a defendant's motion to compel chain of title information. *See Yash Raj Films*, 2006 WL 3257215, at *1 (denying defendant's motion to compel "chain of title information for over one hundred works listed in Exhibit A of the Complaint"). Veoh lacks any evidence or reason to doubt UMG's satisfaction of registration formalities. Nonetheless, its demands would require a time-consuming and expensive fishing expedition for underlying ownership documents—on the unlikely chance that a minor, technical error exists on a registration certification.

Even assuming Veoh uncovered a minor, technical error, such an error is immaterial to UMG's claims against Veoh. "Inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the claimant intended to defraud the Copyright Office by making the misstatement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (citations and ellipsis omitted); *see also* 17 U.S.C. § 411(b)(1)(A), (B) (amended Oct. 13, 2008 by PRO-IP Act of 2008, Pub. L. No. 110-403, 122 Stat. 4256, 4257-58) (inaccurate registration information will not bar a plaintiff from enforcing a copyright unless the error was intentional and would have,

if known to the Copyright Office, caused the registration to be refused).  Notably, though Veoh claims to respond to the authorities cited by UMG in its latest reiteration of its motion, it completely ignores the *Lamps Plus* case and the provisions of section 411 discussed herein.  Instead of addressing this binding statutory and Ninth Circuit authority, Veoh relies on cases from other circuits or district courts in other circuits, often long out of date.  Veoh simply asks this Court to ignore binding precedent and its failure to address such precedent is fatal to its motion.

For example, "[s]uch mistakes as the erroneous identification of the author of the work, and the failure to disclose that the work is derivative, have been found to be insufficient to invalidate a copyright." *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1034-35 (C.D. Cal. 2007) (plaintiff's failure to mention the derivative nature of several works in copyright registrations "d[id] not invalidate the copyrights").  In fact, when a party alleges such inaccuracies, courts must now seek formal opinions from the Copyright Office as to whether those errors are material and would have caused the Office to refuse registration.  *See* 17 U.S.C. § 411(b)(2) (as amended Oct. 13, 2008); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488-89 (9th Cir. 2000) (inadvertent inaccuracies in the deposit copy of the work "do not bar the infringement action").

Nor can Veoh use chain-of-title discovery to challenge assignments between UMG and its artists and/or composers.  Third parties lack standing to challenge the absence of a written assignment where neither the transferor nor the transferee disputes the assignment.  *See, e.g., Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003); *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996); *Imperial Residential Design v. Palms Dev. Group*, 70 F.3d 96 (11th Cir. 1995); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 72 (2d Cir. 1982); *see also Hart v. Sampley*, 1992 WL 336496, at *1 (D.D.C. June 24, 1992) ("Even if, as defendants suggest, the transfer was in some way defective, the defendants would

not have standing to challenge the validity of the transfer because they were not parties to the agreement").

"The cases hold that a third party does not have standing to challenge the presumption of ownership when plaintiffs claim ownership by assignment." *In re Napster*, 191 F. Supp. 2d at 1097 (N.D. Cal. 2002). "Those cases centered on plaintiffs' claims to ownership by assignment where no dispute existed between assignor and assignee." *Id.* at 1099. Simply put, "any purported dispute over ownership by assignment is between the plaintiffs and the individual who created the works," *id.*, and an unrelated third party has no defensive-rights under 17 U.S.C. § 204(a)'s writing-requirement as to its infringing actions. *See, e.g., Billy-Bob Teeth*, 329 F.3d at 592-93; *In re Napster*, 191 F. Supp. 2d at 1099 ("where there is no argument between assignor and assignee, it would be anomalous to permit a third party infringer to invoke [the writing] against the licensee") (internal citations omitted).[6] Veoh cannot manufacture non-existent disputes between UMG and its artists to excuse its own unauthorized reproduction, public performance, and distribution of UMG's copyrighted works. Veoh's attempts to raise the specter of "work for hire" issues is simply a red herring attempted – unsuccessfully – by every mass copyright infringer. Essentially, Veoh is suggesting to the Court that it should be excused from stealing copyrighted material even if there is no dispute between the two potential registrants of the work and even where it is undisputed that Veoh certainly has no rights in the works at issue. None of the cases relied upon by Veoh so holds. Veoh's selective citations to the *Napster* decision to suggest otherwise are incomplete and highly misleading. For example, the lengthy passage quoted by Veoh on page 22 of its moving papers does not (as Veoh suggests) recite the holding

---

[6] This authority nicely dovetails with this Court's sensible, compromise ruling in the *MySpace* action, which required that UMG produce chain-of-title documents if an ownership dispute *had* arisen between UMG and one of its composers and/or artists (provided that dispute required the intervention of in-house or outside counsel).

of the court, but rather the argument put forward by Napster – an argument the *Napster* Court rejected. Instead, after reviewing the Napster argument quoted by Veoh, the court stated that "this court will not permit Napster to engage in a 'fishing expedition.' The advantage of the current statutory scheme is that plaintiffs need not produce mounds of documents in order to maintain an infringement action." *In re Napster*, 191 F. Supp.2d at 1100. Veoh's demands for the type of fishing expedition rejected in *Napster* should be rejected here as well, just as the Court ruled in the *MySpace* and *Grouper* matters.

### E. Veoh Asks The Court To Rule Based On Attorney Speculation And *Ipse Dixit* Argument

Veoh—or rather, Thomas Lane, Veoh's counsel—asserts that "the production of these documents is not controversial, unexpected, or burdensome." Veoh continues to cite unsupported, speculative testimony by its counsel as support for this proposition. For example, Veoh argues that the *UMG Recordings, Inc. v. MP3.com, Inc.* court found certain copyrights owned by UMG invalid. Specifically, Veoh compares *UMG Recordings, Inc. v. MP3.com, Inc.*, 2000 U.S. Dist. LEXIS 13293, *18 (S.D.N.Y. Sept. 6, 200), with *UMG Recordings, Inc. v. MP3.com, Inc.*, 2000 U.S. Dist. LEXIS 17907, *1 (S.D.N.Y. Nov. 14, 2000) to suggest that a defendant "apparently successfully challenged 2,564 copyrights, more than half (55%) of the 4,700 copyrights claimed by UMG." Veoh's Mot. at 15:18-24; *see also* Declaration of Thomas Lane ("Lane Decl.") at ¶¶ 5-7. Veoh fabricated its calculations and the purported successful challenges to ownership out of whole cloth. Notably, there is no Order cited by Veoh reflecting this purportedly successful challenge – Mr. Lane simply made it up. His further attempts to support this false assertion in his latest declaration are no more supported or accurate than those in his prior declaration.

At the end of the first phase of the *MP3.com* litigation, the Court set the measure of damages at $25,000 per infringement—but the number of infringements

was unknown. *See* 2000 U.S. Dist. LEXIS 13293, at *18 (noting that *defendant* alleged a *maximum* of 4,700 infringements). During the second phase, the defendant moved to lower its exposure by eliminating entire categories of recordings, including recordings that were never hosted on the defendant's system or never downloaded by users. *See* Ledahl Decl., Ex. D (*MP3.com* Litigation Docket) at PACER Dkt. No. 153. Veoh (and Mr. Lane) ignored these actual facts and findings by the *MP3.com* court in their prior motion papers and continue to do so again, concluding, without any basis, that the substantial reduction in copyrights at issue was the result of copyright ownership challenges. It was not, and Mr. Lane's false conjecture is no basis to impose the significant burden of Veoh's requests on UMG. Indeed, Veoh and its counsel now resort to pointing to motions that were filed by MP3.com but never granted by the Court as some purported basis to demonstrate that the motions would have been granted. *See* Lane Decl., ¶ 13 (citing a notice of motion rather than a decision of the court).

The impropriety of Mr. Lane's declaration goes beyond his legal analysis of the *MP3.com* litigation. Mr. Lane claims to have been counsel in *Arista Records, et al. v. Launch Media, Inc.* and submits factual testimony regarding alleged challenges to copyright ownership in the course of that litigation. Mr. Lane neither cites nor attaches any order or opinion substantiating his testimony. Nor is there any order or opinion on Westlaw or PACER verifying these alleged ownership challenges. Mr. Lane concedes that he first appeared on behalf of the *Launch* defendant in late October 2006—more than five years after the filing of the initial complaint. *See* Ledahl Decl., Ex. E (*Launch* Docket). Further, Mr. Lane concedes that there is no written order (objective evidence that this Court could consult) regarding the rulings Mr. Lane claims were entered in that case. Certainly, this Court need not treat such attorney testimony about purported decisions that were never reduced to writing as precedent that should be relied upon. Indeed, Veoh's resort to this kind of unsubstantiated attorney testimony confirms that it has no real

authority – such as a published opinion of a court – to support its demands for unnecessary and burdensome discovery. Instead Veoh seeks to manufacture nonexistent authority to support its arguments. The Court should reject such arguments just as it has multiple times already, both in this case and in the prior *MySpace* and *Grouper* actions.

## V. CONCLUSION

Even in its latest attempt, Veoh still fails to demonstrate that this Court made some grievous error in the prior *MySpace* and *Grouper* actions regarding the appropriate balancing of relevance and burden regarding the requested discovery. The Court did not, as Veoh suggests, rule that the presumption of ownership flowing from copyright registrations is irrebutable. Instead, the Court struck an appropriate balance, which Veoh simply seeks to overturn without any basis.

Dated: December 1, 2008　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　IRELL & MANELLA LLP
　　　　　　　　　　　　　　　　　　Steven A. Marenberg
　　　　　　　　　　　　　　　　　　Elliot Brown
　　　　　　　　　　　　　　　　　　Brian D. Ledahl
　　　　　　　　　　　　　　　　　　Benjamin Glatstein


　　　　　　　　　　　　　　　　　　By:　　　/s/
　　　　　　　　　　　　　　　　　　　　　Brian D. Ledahl
　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

1977614　　　　　　　　　　　　　　- 19 -　　　　　　　UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　TO COMPEL CHAIN OF TITLE DISCOVERY
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(DOCKET #222)