**Re: Docket No. 221**

1  IRELL & MANELLA LLP
   Steven A. Marenberg (101033) (smarenberg@irell.com)
2  Elliot Brown (150802) (ebrown@irell.com)
   Brian D. Ledahl (186579) (bledahl@irell.com)
3  Benjamin Glatstein (242034) (bglatstein@irell.com)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile: (310) 203-7199

6  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                   WESTERN DIVISION

11 UMG RECORDINGS, INC., *et al.*,    ) Case No. CV-07-05744 AHM (AJWx)
                                       )
12         Plaintiffs,                 ) **UMG'S OPPOSITION TO VEOH'S**
                                       ) **RENEWED MOTION TO COMPEL**
13    vs.                              ) **PLAINTIFF UMG TO IDENTIFY**
                                       ) **WORKS AT ISSUE (DOCKET #221)**
14 VEOH NETWORKS, INC., *et al.*,      )
                                       ) **Concurrently filed herewith:**
15         Defendants.                 )   **(1) Declaration of Brian Ledahl**
                                       )       **(UNDER SEAL)**
                                       )
                                       ) Magistrate: Hon. Andrew J. Wistrich
                                       )
                                       ) Date: Dec. 15, 2008
                                       ) Time: 10:00 AM
                                       ) Ctrm: 690
                                       )
                                       ) Discovery Cutoff: January 12, 2009
                                       ) Pretrial Conference: April 6, 2009
                                       ) Trial Date: April 21, 2009

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1977586

UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
TO COMPEL IDENTIFICATION OF WORKS AT ISSUE
(DOCKET #221)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Veoh brings the present motion before the Court for at least the third time. Most recently, the Court denied the exact relief Veoh seeks here in an Order issued on Friday, November 21, 2008 (Dkt. #219). The Court identified at least three flaws in Veoh's request for relief, but denied Veoh's motion without prejudice. Presumably, the Court did not expect that Veoh would simply re-file the same motion on the very next business day, with mere cosmetic adjustments to its papers. Notably, Veoh seems to have interpreted the Court's denial of its prior motion to require nothing more than a resubmission of the motion with the text of several discovery requests reproduced in the text of the motion. Veoh ignores the fact that the Court also ruled that "the relief Veoh seeks in its proposed order is too broad and has not been shown to be tethered to the scope of any particular discovery requests it has served," and "it is unclear whether Veoh is essentially attempting to compel a response to the interrogatory it served on October 24, 2008 . . . Obviously, any such attempt would be premature." Veoh seeks the same overbroad relief, and still seeks to compel a response to its October 24, 2008 interrogatory – notwithstanding its cosmetic attempts to suggest otherwise.

If anything, Veoh's motion has even less merit now than it did when the Court denied it on November 21. While none of the facts the Court identified in its November 21 Order changed before Veoh re-filed its motion on the next business day (Monday, November 24), one fact has changed since then – in conformity with the Federal Rules, UMG will as of the date of this Opposition provide its response to Veoh's October 24 Interrogatory. That response will identify more than 1500 infringing videos. This fact alone should render Veoh's motion moot. UMG reserves the right to supplement the response once it has had a fair opportunity to review the evidence from Veoh (which should have been provided long ago – but has not yet been produced). Nonetheless, as of the date of this Opposition, UMG

has identified for Veoh those infringing videos it has identified thus far.

Veoh's request for immediate identification of infringed works still improperly asks the Court to compel an immediate response to an interrogatory Veoh propounded on October 24, 2008. As has become a pattern with Veoh, it moved to compel further response before even receiving, much less reviewing, the response UMG is timely providing. Moreover, as UMG explained previously, Veoh seeks to compel UMG to identify Veoh's acts of infringement while Veoh has actively obstructed UMG's ability to perform such a comprehensive identification. Veoh has not produced its videos as requested from the outset of discovery by UMG. Veoh delayed even producing data about its videos until ordered to do so by the Court on August 25. When Veoh did produce data, it was incomplete. When Veoh purported to provide UMG "access" to its videos instead of actually producing them, Veoh engaged in various obstructions, including unilaterally disabling UMG's access to Veoh's video database. Finally, UMG has only recently learned that Veoh destroyed highly relevant evidence it received from the operation of filtering technology to identify copyrighted music. The evidence Veoh destroyed included data identifying the name of the song, the performing artist who recorded the song, the record album on which the song was released and the record label that released the album. All of this is significant information that would greatly facilitate UMG's identification of specific acts of infringement. Veoh's demand that UMG speed up its identification in the face of Veoh's ongoing and deliberate obstruction is patently ridiculous.

Finally, Veoh's motion is also procedurally improper. Not only did Veoh ignore the substance of the Court's November 21 Order in re-filing this motion only one business day later, Veoh also violated the Court's Local Rules. Veoh takes it upon itself to file this motion without preparing a joint stipulation consistent with Local Rule 37. Veoh neither sought nor obtained permission to deviate from the procedures set forth in the Local Rules. Veoh's approach seems calculated to

increase the cost of this case for UMG and to waste both the Court's and UMG's time and resources in dealing with yet another re-iteration of the same non-meritorious motion. Veoh's conduct is particularly egregious here as it filed its "renewed" motion in a manner calculated to force UMG to respond over the Thanksgiving holiday. Local Rule 37-4 expressly provides that sanctions are available where a party fails to comply with the procedures set forth in Local Rule 37. UMG respectfully submits that not only should Veoh's motion be denied, but sanctions are appropriate and necessary here to prevent further vexatious conduct of this type by Veoh.

## II. VEOH'S MOTION IS PROCEDURALLY IMPROPER

This is at least the third time that Veoh has filed the same motion. The Court has already denied it twice. Indeed, the Court denied this same motion on Friday, November 21, 2008 (Dkt. #219), only to see Veoh re-file the same motion on the next business day – Monday, November 24, 2008. While Veoh's motion is still substantively deficient, it is also procedurally improper for at least two independent reasons.[1] First, Veoh ignores this Court's prior orders in re-filing its motion. The Court did not merely rule, as Veoh falsely suggests, that Veoh could simply re-file its motion the next day with additional text and exhibits and somehow cure its deficiencies. Second, Veoh improperly ignored the Court's Local Rules regarding the filing of discovery motions without permission and indeed without even seeking permission. Veoh simply asserts that Local Rule 37 should not apply to Veoh in this case. Both of these procedural issues warrant denial of Veoh's motion regardless of the merits (which also warrant denial). Moreover, the timing and circumstances of

---

[1] Veoh filed two renewed motions on November 24, 2008, which essentially divided the motion that the Court denied on November 21, 2008 into two motions. UMG has similar objections to the procedural impropriety of both motions. Because Veoh chose to file two separate "renewed" motions, UMG is forced to present the same procedural arguments in response to both.

Veoh's filing of the instant motion warrant sanctions for abuse of the discovery process and vexatious litigation conduct.

### A. <u>Veoh Ignores The Court's Prior Orders</u>

This Court has now denied this motion twice. First, on August 25, 2008, the Court denied Veoh's first motion to compel on the record at the hearing on that motion. At that hearing, this Court denied Veoh's Motion to Compel Discovery Responses from UMG ("Veoh's Motion to Compel") (Dkt. No. 73). The Court noted that Veoh's motion contained "hundreds of requests," that it "exceed[ed] 300-pages," that Veoh's grouping of requests was "so broad that [it] really [wasn't] meaningful," and that many "of [Veoh's requests] probably have been largely satisfied at this point." Ledahl Decl., Ex. A (8/25/2008 Hearing Tr.) (19:16-18, 22:12-13) (Dkt. No. 107). The Court therefore "den[ied Veoh's] motion to compel" without prejudice to Veoh's right to "file [another] motion"—after "complet[ing its] review of [UMG's] production" and provided that Veoh organized its subsequent motion "in a sensible way." *Id.* at 21:23, 21:25-22:1, 23:16-17.[2]

Veoh then sought to renew its motion on October 29, 2008. In bringing that renewed motion, Veoh sought, through an improper *ex parte* communication with the Court, an expedited consideration of its new motion. Though Veoh had provided UMG no notice of its intention to file a renewed motion, nor of its request for expedited consideration, the Court granted the request for expedited consideration in an Order of October 28, 2008 (Dkt. # 193). Veoh's renewed motion largely repeated the assertions of its previously-denied motion, despite the Court's prior instructions. On November 21, 2008, the Court denied Veoh's motion for the second time (Dkt. # 219). The Court set forth three specific bases for denying Veoh's motion:

---

[2] Contrary to the revisionist history in Veoh's moving papers, the Court did not deny Veoh's prior motion "[d]ue to the extensive discovery failures raised by Veoh within one motion." Veoh's Mot. at 4 n.6. Veoh's shortcomings, not UMG's, account for the denial.

UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
TO COMPEL IDENTIFICATION OF WORKS AT ISSUE
(DOCKET #221)

1977586 - 4 -

"First, the court previously denied a motion to compel filed by Veoh because that motion was presented in an unmanageable manner. Rather than file a new motion including copies of the discovery requests and responses thereto that are at issue, Veoh merely refers the court to a portion of the 314 page joint stipulation filed in support of the previously denied motion. Second, the relief Veoh seeks in its proposed order is too broad and has not been shown to be tethered to the scope of any particular discovery requests it has served. Third, it is unclear whether Veoh is essentially attempting to compel a response to the interrogatory it served on October 24, 2008. [See Veoh's Motion at 3 n.5]. Obviously, any such attempt would be premature."

Veoh chooses to construe the November 21 ruling as merely requiring Veoh to re-file its motion to include the text of the discovery requests and responses at issue. Obviously, that minor correction at most would address one of the three reasons the Court denied the motion. Veoh completely ignores the other two bases for denying the motion identified by the Court. Veoh still fails to tether the relief it seeks to the requests at issue, and it still purports to compel a response to the interrogatory it served on October 24, 2008. Indeed, Veoh chose to refile its motion without even waiting the one additional week to obtain UMG's response to its Interrogatory No. 25. That interrogatory response (which is due under the Federal Rules the same day that UMG's response to the present motion is due) will identify more than 1500 infringing videos on Veoh's site. Ledahl Decl., Ex. B. As discussed below, that identification remains incomplete due to Veoh's obstruction of UMG's ability to review the videos and associated data from Veoh's site through discovery – an issue that UMG will separately raise consistent with the Court's direction in the November 21 Order. Veoh's insistence on immediately refiling its motion without

1 even acknowledging the substance of the Court's Orders is grounds for denying the
2 motion – again.

### B. <u>Veoh Ignores The Court's Local Rules</u>

Local Rule 37 provides that discovery motions are to be brought via a joint stipulation of the parties, prepared in accordance with the Local Rule. Veoh's motion was not filed pursuant to that Rule. While the Court may grant permission for parties to deviate from this practice, Veoh did not obtain such permission, and indeed did not even seek it. Veoh simply filed its motion in contravention of the Court's Local Rules and claims that it should be allowed to do so because the Court's hearing calendar was inconvenient for Veoh. Veoh did not seek UMG's agreement to an adjustment of schedule and Veoh did not file an *ex parte* application seeking leave to present its motion on some expedited basis or otherwise in a manner different than that provided under the Local Rules. Veoh simply chose to ignore the Local Rules.

In this particular instance, Veoh's refusal to follow the Local Rules is particularly prejudicial to UMG. Veoh filed its motion on Monday, November 24, 2008, the Monday preceding the Thanksgiving holiday. Had Veoh sent UMG a joint stipulation on that date, UMG would have had five court days in which to prepare its response – thus requiring UMG to return its responsive portion by Wednesday, December 3. While this would unquestionably have been a tight schedule, Veoh's decision to ignore the Local Rules imposes a far more onerous schedule, ostensibly requiring UMG to submit its responsive brief by Monday, December 1, the first business day after the Thanksgiving holiday, and only the third court day following Veoh's filing.

Local Rule 37-2.4 provides that "The Court will not consider any discovery motion in the absence of a joint stipulation or a declaration from counsel for the moving party" establishing opposing counsel's failure to cooperate in preparation of such a joint stipulation. Veoh submitted no such declaration (nor could it as such

assertions would be completely false). Veoh's refusal to follow the procedures set forth in this Court's Local Rules – and the resulting prejudice and expense to UMG – provides another, independent reason to deny Veoh's motion.

### C. Veoh's Tactics Warrant Sanctions

As discussed above, Veoh filed the present motion one business day after the Court denied the same motion. As discussed in greater detail below, Veoh's renewed motion completely fails to address or correct the failures the Court identified as a basis for denying Veoh's prior motion. Additionally, Veoh refused to comply with the Local Rules of this Court in filing its motion. Veoh's conduct inflicts significant prejudice on UMG and its counsel. UMG is forced to, once again, prepare a response to Veoh's flawed motion and once again spend the time and money to brief a deficient motion. Moreover, Veoh's tactics in renewing this motion constitute particularly vexatious conduct. As noted above, Veoh filed its motion on the Monday preceding the Thanksgiving holiday and purported to schedule it so as to require UMG to file its response on the Monday immediately following Thanksgiving. In addition to the excessive cost of responding to yet another non-meritorious renewal of the same motion, UMG and its counsel were forced to accept the additional imposition of responding to Veoh's frivolous motion over the holiday.

Local Rule 37-4 provides that "[t]he failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions." Here, as set forth above, Veoh failed to comply with the procedures of Local Rule 37. Its failure was particularly egregious in that it acted in a manner calculated to inflict the maximum unnecessary imposition on UMG. Moreover, Veoh's apparent refusal to even read the Court's prior orders results in a further waste of the Court's time. Veoh has merely re-filed the same motion that the Court has twice denied. Addressing the motion again is an unnecessary burden on both the Court and on UMG. UMG respectfully submits that such conduct has become a pattern in Veoh's

litigation of this case and that sanctions are needed at this stage to address such conduct. As set forth in the Ledahl Declaration, UMG has expended more than $2,000 in responding to this renewed motion, in addition to the many thousands of dollars UMG already spent addressing the same motion twice before. *See* Ledahl Decl., ¶ 14. UMG respectfully requests that the Court enter an award of sanctions against Veoh in an amount of at least $2,000 to address the significant hardship to UMG resulting from Veoh's conduct and to deter such conduct in the future.

## III. VEOH'S REQUEST FOR IMMEDIATE IDENTIFICATION OF INFRINGMENTS LACKS MERIT

Veoh asks the Court to order UMG to immediately identify the infringing videos from Veoh's internet site and Veoh TV service. This is the same request Veoh put forward in the motion denied on November 21. Indeed, Veoh's proposed Order on this issue is virtually identical to that rejected in the Court's Order of November 21. *Compare* Dkt. # 221-4 (proposed order accompanying the instant motion) with Dkt. # 194-2 (proposed order accompanying Veoh's previously-denied motion). The Court rejected Veoh's prior request for relief as too broad and apparently seeking to compel a response to an interrogatory that was not yet due. Veoh's new proposed order suffers from the exact same flaws.

While UMG remains committed to identifying Veoh's acts of infringement, Veoh's request that such identification be immediately completed (Veoh's proposed order still goes to the remarkable length of seeking the identification of works within 3 days) remains inappropriate for the same reasons recognized by the Court in denying Veoh's prior motion. The facts did not change in the one business day between the Court's denial of Veoh's prior motion and Veoh's filing of its renewed motion. First, and most troubling, Veoh has actively obstructed UMG's ability to identify infringements through its failure to actually produce its videos and through its improper destruction of important metadata relating to those videos. Moreover, Veoh still glosses over the fact that it did not even request the specific identification

it now seeks until October 24, 2008. A response to that interrogatory was still not due when Veoh filed its renewed motion. In compliance with the timetables set by the Federal Rules, UMG is providing (on the date of the filing of this Opposition) its response to Veoh's Interrogatory No. 25 – the real discovery that Veoh apparently seeks to compel in the instant motion. That response will identify more than 1500 infringing videos on Veoh's service that UMG has already identified. Ledahl Decl., Ex. B. As set forth in UMG's response, UMG reserves the right to supplement the response as it identifies additional infringements from its review of Veoh's video files – a review that has been obstructed by Veoh. *Id.* Nevertheless, given the nature of the response, UMG respectfully submits that Veoh's motion is moot and should be denied.

### A. Veoh Has Obstructed UMG's Efforts To Identify Veoh's Infringements

As the Court will recall, at the discovery hearing on August 25, one key area of discovery UMG was seeking was production of Veoh's videos and associated metadata. Ledahl Decl., Ex. A (8/25/2008 Hearing Tr.) (7:13-8:20, 30:9-32:9, 36:24-39:18, 49:20-51:18, 53:10-56:2, 58:8-12). Among other things, UMG pointed out that this discovery was critically important to identify the scope of infringement by Veoh. UMG noted specifically at the hearing that one category of important metadata was data derived from filtering technology provided by Audible Magic. As UMG explained, this data would include such information as the title of songs, identity of artists, and the identification of record labels associated with copyrighted music matching the Audible Magic database. *Id.* at 49:20-51:18. Though the Court took UMG's motion under submission, it ordered Veoh to promptly produce a spreadsheet containing the metadata for its videos by September 5, 2008. Veoh represented that this spreadsheet would have all of the metadata for its videos and that UMG would be able to access all of the videos using this material. *Id.* at 43:14-15, 53:20-25, 54:24. Neither of these representations proved to be true.

### 1. <u>Veoh failed to provide meaningful access to its videos</u>

While Veoh tries in its latest motion to recharacterize the circumstances of its lack of production of videos, the facts themselves remain exactly as UMG has set forth previously. Specifically, on September 5, 2008, Veoh produced DVDs containing a spreadsheet of information about its videos. UMG promptly began reviewing this information and evaluating its access to Veoh's videos. Two critical problems with Veoh's production became clear: 1) Veoh's metadata was missing the Audible Magic filtering data that UMG had specifically raised as important information during the August 25 hearing; and 2) UMG could not actually access the videos using the material provided by Veoh as Veoh had represented to the Court would be possible. On September 26, UMG wrote to Veoh to raise these deficiencies. *See* Ledahl Decl., Ex. C (9/26/2008 Letter from B. Ledahl to J. Golinveaux).

Veoh responded, in early October, explaining that it had given UMG erroneous instructions for accessing the videos and providing corrected instructions. *See* Ledahl Decl., Ex. D (10/3/2008 Letter from J. Golinveaux to B. Ledahl). Veoh further claimed that it had not produced its Audible Magic data because it purportedly stored that information in a different place and thus chose to continue to withhold it, notwithstanding its representations to the Court about the spreadsheet it would produce containing all metadata. *Id*.

After receiving this response, UMG promptly began checking its access to Veoh's videos. UMG also demanded immediate production of Veoh's Audible Magic data, addressed further in subsection 2, below. *See* Ledahl Decl., Ex. C (9/26/2008 Letter from B. Ledahl to J. Golinveaux). UMG's efforts to check the access to the videos included running an automated software process to initially check for the presence of each video on the Veoh spreadsheet. Ledahl Decl., ¶ 6. On October 9, 2008, Veoh contacted UMG to state that UMG's automated checking of Veoh videos (already long delayed by Veoh's late production) was accessing

1  Veoh's system too much, and so Veoh unilaterally terminated UMG's access to all
2  of the videos.  *See* Ledahl Decl., Ex. E (10/9/2008 Email from J. Golinveaux to B.
3  Ledahl).  Veoh insisted that UMG should limit its access to 1 video request/second –
4  which would have stretched the time necessary to verify the presence of more than a
5  million videos to weeks.  UMG eventually agreed – without prejudice to its position
6  that Veoh should produce all of its videos to avoid these types of interferences with
7  UMG's ability to review the evidence – to limit its access Veoh's servers between
8  the hours of 6:00 PM and 6:00 AM at a rate of 10 video requests/second and during
9  regular business hours at a rate of 1 video request/second.  *See* Ledahl Decl., Ex. F
10 (10/24/2008 Letter from B. Ledahl to J. Golinveaux).  Obviously, Veoh's
11 unilaterally imposed limitations dramatically impede UMG's ability to review
12 Veoh's videos.

### 2. Veoh failed to provide Audible Magic data

14 The problem of Veoh's failure to provide adequate access to its videos (when
15 they should simply be produced) has been compounded by Veoh's failure to
16 produce data relating to the Audible Magic filtering of videos.  During the August
17 25 hearing on UMG's Motion to Compel, counsel for Veoh twice represented that
18 Veoh would produce "all the metadata" relating to the videos uploaded by its users.
19 Ledahl Decl., Ex. A (8/25/2008 Hearing Tr.) (43:14-15) (the Veoh spreadsheet
20 "would have <u>all the metadata</u>" for its videos); *id.* at 54:24 (Veoh would produce "<u>all</u>
21 <u>the metadata</u> for each video").  After UMG discovered that the spreadsheet Veoh
22 produced on September 5 (as Ordered by the Court) did not contain relevant
23 Audible Magic metadata, UMG sought production of this material.  After resisting
24 production of this material (without any real basis), Veoh ultimately agreed to
25 produce its Audible Magic metadata by October 14, 2008.  Ledahl Decl., Ex. G
26 (10/8/2008 Letter from J. Golinveaux to B. Glatstein).  On October 14, Veoh
27 produced a print-out purporting to contain its Audible Magic data.  Ledahl Decl.,
28 ¶ 10.  After reviewing this data (a process made more difficult by Veoh's

inexplicable decision not to produce the data in its native electronic form), UMG discovered that Veoh had not produced such highly relevant information as the song title, artist name, album name, and record label for videos that were identified by the Audible Magic filtering technology. *Id.*, ¶ 11. Instead, Veoh had produced only a few select metadata fields: the internal Veoh identification number and what appears to be the name of the company that registered the sound recording with Audible Magic. Examples of Veoh's purported Audible Magic metadata production are attached to the accompanying Declaration of Brian Ledahl as Exhibit H (VN284066-VN284069).

Upon discovering this missing information, UMG immediately contacted Veoh to obtain a full production of Audible Magic data. Specifically, UMG sought immediate production of the rest of the Audible Magic data, consistent with Veoh's testimony that it received "dozens" of fields of metadata from Audible Magic. Ledahl Decl., Ex. I (10/16/2008 Letter from B. Ledahl to J. Golinveaux).

Finally, on October 20 – eight weeks after Veoh represented in Court that it would produce "all the metadata" for its videos, six weeks after the deadline set by the Court for Veoh to produce its metadata, and approximately one week before Veoh sought to bring this motion for expedited consideration – Veoh disclosed for the first time that it had been deleting the vast majority of the Audible Magic metadata it received.

The metadata that Veoh has destroyed is centrally relevant to the identification of copyrighted works infringed by Veoh. The Court has already ruled that such data is relevant and ordered Veoh to preserve such data going forward. Nov. 18, 2008 Court Order (Dkt. # 217). Veoh has destroyed data showing the title of songs contained in videos that it has removed from its website, the artist performing those songs, the record album on which the song was released, the record label that released the album, and other important data. All of this data is directly related to the identification of infringing videos. Knowing the identity of a

song contained in a video and the record album on which that song appears facilitates the identification of particular videos as infringing and associating them with the relevant copyrights.  Veoh's inexplicable decision to destroy this data (a decision Veoh made during the pendency of this lawsuit – it did not implement the Audible Magic technology until this lawsuit was already pending) greatly interferes with UMG's ability to efficiently identify infringing videos.  Veoh's long delay in even admitting that it had destroyed this data further impeded UMG's ability to complete a review of Veoh's videos.

After the Court granted UMG's application to require Veoh to preserve such data, Veoh indicated that it might undertake to re-create the destroyed data for all videos previously identified by the Audible Magic technology.  While Veoh tries to argue that such information is somehow irrelevant, this argument was already rejected by the Court in its prior order.  Moreover, Veoh's argument is nonsensical.  As discussed above, this data identifies the song title, artist, record label, and other information associated with individual videos removed from Veoh's internet site after having previously been made available.  Such information is centrally relevant and important in identifying infringing videos.  Veoh's long delay in providing such information has greatly impeded UMG's ability to identify infringing videos.  Unlike Veoh, UMG has sought to resolve this issue cooperatively before coming to the Court.  If Veoh will not cooperate, however, UMG will seek expedited relief regarding the inadequate production of videos as the Court suggested in its November 21 Order.**³**

---

**³** And that is not Veoh's only failure to produce its metadata – it also has not produced metadata identifying the Veoh users who posted videos, despite agreeing to produce that information months ago. Specifically, in July 2008, UMG moved to compel Veoh to produce its videos and associated metadata. *See* Joint Stip. re: UMG Motion to Compel (Dkt. #78), at pp. 47-66. The requests at issue explicitly sought Veoh's video files and "any and all associated metadata relating to, for example, the identity of the person who made the work available on Veoh Software[.]" *See id*. at pp. 48-49, n. 30 (defining "Video File"). In opposition to UMG's Motion to Compel, Veoh offered to produce a spreadsheet, which Veoh explicitly promised would "provide[] UMG with all of the requested data." *Id*. at 58

UMG'S OPPOSITION TO VEOH'S RENEWED MOTION
TO COMPEL IDENTIFICATION OF WORKS AT ISSUE
(DOCKET #221)

### C. **Veoh's Demand For Immediate Identification Of Infringements Is Improper and Unwarranted**

In denying Veoh's prior motion to compel, this Court stated that "it is unclear whether Veoh is essentially attempting to compel a response to the interrogatory it served on October 24, 2008. [See Veoh's Motion at 3 n.5]. Obviously, any such attempt would be premature." Nov. 21, 2008 Court Order (Dkt. # 219). Veoh's renewed motion seeks exactly the same relief that it's denied motion sought in this regard: a response to the interrogatory it propounded on October 24, 2008. That interrogatory sought:

> "For each work for which you claim copyright law remedies against Veoh in this case, please provide information sufficient to identify each alleged infringement of such work, including (a) the name or other unique identifier of the infringed work, (b) the copyright registration number of every copyright registration pertaining to the infringed work, (c) the Veoh Video ID number and Permalink for each video allegedly infringing the work for which you claim Veoh bears liability, and (d) each page of the documents you have produced that identify each such allegedly infringing video."

Ledahl Decl., Ex. B (Veoh's Second Set of Interrogatories to UMG Recordings).

As the Court recognized in denying Veoh's prior motion, this interrogatory seeks precisely the information that Veoh claimed to be seeking by that motion and is still seeking by this motion. Veoh has merely dressed up its proposed order to seek the same substantive relief while referencing earlier interrogatories that did not seek this same information. UMG's response to this interrogatory was not due when

---

(capitalization and emphasis altered). It did not, and still refuses to do so. Veoh has not produced its users' email addresses, even though that information is stored in its metadata spreadsheet as part of its regular course of business, and despite the fact that it has previously agreed to produce that information. There is no excuse for Veoh's obstruction.

Veoh filed its previously-denied motion, and it was still not due when Veoh filed its renewed motion. Thus, Veoh comes to Court asking for an Order compelling UMG to respond to an interrogatory before UMG's time to respond to the interrogatory has even run. Federal Rule of Civil Procedure 37 and the Local Rules of this Court do not provide for parties to seek advisory opinions about discovery requests before responses are even due. Veoh suggests that the Court should simply ignore this fact, but offers no explanation of why. If Veoh believed the information requested by its new interrogatory were so urgently important, it could have propounded it earlier. It did not and UMG should not be penalized for Veoh's decisions about when to pursue discovery.

### D. Veoh's Motion Is Moot

In fact, UMG's response to Veoh's interrogatory 25 is due as of the date of UMG's Opposition to the present motion. UMG is serving Veoh with a response to that interrogatory in accordance with the timeframe set by the Federal Rules. While Veoh's obstruction, described above, necessarily requires that UMG later supplement its response after having a fair opportunity to review information that Veoh should have produced long ago, UMG's response lists those infringements that it has identified thus far. In its response, UMG will identify more than 1500 infringing videos. Thus, to the extent Veoh claims that UMG should immediately identify those infringing videos that it has been able to identify to date, UMG is doing so consistent the the Federal Rules, and Veoh's motion is moot.

Veoh's reliance on comments by Judge Matz during a scheduling conference in a different case similarly confirm that Veoh's motion is moot. Veoh selectively cites Judge Matz's comments during the *DivX* Scheduling Conference that simply do not support the relief Veoh seeks here. Initially, as UMG has explained previously, those comments were made in a different case involving different counsel and different facts. Veoh continues to carefully excerpt comments from the transcript of the conference with Judge Matz in order to create a misleading

1 impression.  A review of the full transcript of that conference reveals that Judge
2 Matz directed counsel for UMG to first identify infringements of which they were
3 already aware, and that UMG would further identify additional infringements after
4 receiving production of all of the defendants' videos and having a fair opportunity to
5 evaluate that production.  Here, UMG has, contrary to Veoh's false assertions,
6 identified specific infringed works in its complaint.  UMG is also now providing an
7 identification of more than 1500 infringing videos it has already identified.  UMG
8 remains committed to identifying additional infringements as it continues to review
9 the evidence, but, as described above (and contrary to what Judge Matz clearly
10 contemplates in the transcript submitted by Veoh), Veoh has obstructed this effort
11 by not making a full production of its videos and metadata.  The *DivX* scheduling
12 conference transcript makes clear that the time frames contemplated by Judge Matz
13 in that case turned on the defendant's agreement to make a prompt production of its
14 videos – something Veoh continues to delay and obstruct.  Calkins Decl., Ex. A
15 (8/25/2008 Hearing Tr.) at 13.

      UMG respectfully submits that Veoh's request for immediate identification of infringed works (essentially a response to its new interrogatory) should be denied as moot.  UMG has responded to the interrogatory in due course, reserving the right to supplement its response after it ultimately obtains an appropriate production of videos and related information and has a fair opportunity to evaluate that material. Veoh has no basis to seek any further relief and its motion should be denied.

22 //
23 //
24 //
25 //
26 //
27 //
28 //

## IV. CONCLUSION

Veoh improperly pursues the same relief the Court has already denied. Veoh pursues such relief by ignoring this Court's Orders and the Local Rules. Moreover, the relief Veoh seeks is unwarranted, and moot. Veoh's motion should be denied and sanctions awarded to UMG.

Dated: December 1, 2008

Respectfully submitted,

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian D. Ledahl
Benjamin Glatstein


By: _____/s_____
    Brian D. Ledahl
    Attorneys for Plaintiffs