Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC. *et al.*,<br><br>Defendants. | Case No. CV 07 5744 – AHM (AJWx)<br><br>**SUPPLEMENTAL MEMORANDUM PURSUANT TO LOCAL RULE 37-2.3 IN SUPPORT OF VEOH'S MOTION TO COMPEL THE ADDITION OF CUSTODIANS AND PRODUCTION OF DOCUMENTS**<br><br>Date: 12/15/08<br>Time: 10:00 a.m.<br>Crtrm: 690<br><br>Discovery Cut-Off: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |

## I. INTRODUCTION

One month before the discovery cut-off, Plaintiffs continue their "hide the ball" tactics by refusing to search the files of specified custodians who undoubtedly possess documents relevant to the issues in this action, and steadfastly refuse to agree to conduct a "diligent" and "good-faith" search. Indeed, a review of Plaintiffs' production confirms that Plaintiffs favor quantity over quality, as Plaintiffs continue to refuse to provide even the most basic discovery.[1] Plaintiffs have also failed to search for responsive documents outside of their incredibly narrow search term list,[2] or search beyond their recycled and outdated production. Of the 1.4 million pages that Plaintiffs tout as a complete production, only a small percentage of these documents bear any apparent relevance to this action. The vast majority are gratuitous press clippings and newsfeeds that offer no factual support for Plaintiffs' claims. *Id.*

Though Veoh has identified seven individuals who are likely to actually have documents that are relevant to this action, Plaintiffs insist that Veoh has no "evidence" to warrant searching these individuals' files for responsive documents. Not only were most of these individuals identified by *Plaintiffs themselves* in their initial disclosures and/or interrogatory responses as individuals likely to have discoverable information, but Veoh is entitled to discover documents that may lead to the discovery of admissible evidence. To impose an evidentiary requirement on Veoh as a barrier to discovery improperly shifts UMG's discovery obligations to Veoh. Plaintiffs cannot flatly refuse to search the files of key custodians or for documents, and then justify their refusal upon an assertion that Veoh has presented no "evidence" that such discovery exists. Veoh must be provided the opportunity to review responsive

---

[1] On November 24, 2008, after the Court denied Veoh's second attempt to have this critical issue resolved (November 21, 2008 Order, Docket 219), Veoh filed renewed motion(s) to compel plaintiffs' to identify works and produce chain of title/rights information re the allegedly infringed works. (Docket 221-222). The motions are scheduled to be heard before this Court on December 15.

[2] In contrast to Veoh's search term approach in searching terms broadly (e.g., authorize, infring*, DMCA), UMG's approach is to water down search terms with "ands" and "ors" and other boolean qualifiers such that searches are sure to omit scores of relevant, responsive documents. Ranahan Decl. ¶ 6 and Exh. D.

1

documents reasonably calculated to lead to the discovery of admissible evidence.

Veoh is not asking UMG to "sift through every paper in its possession looking for all possibly relevant documents." Instead, Veoh is asking UMG to do what it should have done all along—formulate reasonable custodian lists and search strategies designed to yield documents that are relevant to this action. Under no reasonable interpretation does Plaintiffs' recycled production from the *MySpace/Grouper* actions satisfy Plaintiffs' obligation to conduct a diligent and good faith search for responsive documents in this case. The Court should grant Veoh's Motion.

## II. THE ADDITION OF CUSTODIANS IS REASONABLE AND NECESSARY

Plaintiffs, eight corporations that comprise a part of one of the world's largest music empires, have searched collectively a total of only 38 employees' files, which averages fewer than five employees per plaintiff. Plaintiffs provide no reason why Geller, Kossowicz, Oliver, Roberts, Holt, Urie, and Iovine, which amounts to the addition of less than one custodian per Plaintiff, should not be searched. Instead, Plaintiffs stand-behind their deficient production, refusing to search custodians who surely have discussed the alleged infringements in this action (e.g., Geller and Roberts); the copyrights of the works at issue in this action (e.g., Kossowicz and Oliver); or UMG's exploitation of the works at issue through online arrangements, which would allow Veoh may collect discovery relating to damages (e.g., Holt, Urie and Iovine.)

The fact that Harvey Geller has "emails with outside counsel that total in the tens of thousands" across the many cases that he supervises is not an excuse to avoid the search obligation for documents relating to this action, especially considering that Geller has been identified as a knowledgeable witness pursuant to F.R.C.P. 30(b)(6). UMG states that it could cost "many thousands" of dollars to review, which given the hundreds of millions of dollars UMG seeks is hardly a burden at all.[3] At the very

---

[3] UMG complains that searching Mr. Geller's files would "require UMG to log nearly every single privileged and work product document that has been created in this case

2

SUPPLEMENTAL MEMO ISO VEOH'S MOTION TO COMPEL (CUSTODIANS)        Case No. CV 07-5744-AHM (AJWx)
LA:230034.2

least, Plaintiffs should make a good-faith, diligent search for non-privileged documents relating to this action and responsive to Veoh's discovery requests, including all documents that contain the word "Veoh," relating to the Digital Millennium Copyright Act ("DMCA"), and the RIAA.[4] Veoh is entitled to discover the factual differences between situations in which Mr. Geller decided to utilize DMCA procedures with respect to other websites, while foregoing DMCA procedures with respect to Veoh. Plaintiffs make no showing that such a reasonably tailored search would be overly burdensome.

With respect to Tegan Kossowicz and Cindy Oliver, Plaintiffs again refuse to search the files of their own copyright custodians, who they identified as individuals "likely to have discoverable information" in their initial disclosures. Of course, as is subject to a separate motion to compel,[5] it is not just the bare copyright registrations that are crucial to Veoh's investigation, but documents *about* those copyright registrations, including communications regarding challenges, defects, assignment(s).

UMG concedes that Jennifer Roberts "**supervised the collection of evidence regarding Veoh's infringement. . .** " UMG has not produced a single document relating to such "evidence" or alleged infringement. While of course Veoh is not seeking privileged communications, *Plaintiffs named Roberts as "likely to have discoverable information" and have designated her as a F.R.C.P. 30(b)(6) witness--* obviously Roberts has access to certain non-privileged items.[6] Rather than agree to

---

by UMG's counsel," though UMG could exclude all documents from production that contain an email address with "@irell" to avoid this concern.
[4] With respect to the RIAA, as Veoh has received and responded to DMCA notices sent by the RIAA on UMG's behalf, Veoh is entitled to discover information about this relationship, and to what extent the RIAA is authorized to act on UMG's behalf.
[5] See *infra* note 1.
[6] For instance, if Ms. Roberts was the paralegal who searched for alleged infringements to include in the summary judgment pleadings, Veoh was able to ascertain from its own investigation of those works that all five works had been removed since 2007, two as a result of DMCA notices sent from the RIAA on UMG's behalf. Veoh should have the chance to refute any other alleged infringements. If Ms. Roberts collected evidence to include in the complaint, there are no alleged infringements identified in the complaint, and it would thus be appropriate to determine whether Plaintiffs had any basis to bring its action for alleged infringements, or whether the complaint violated Rule 11.

3

search Roberts files for such information, UMG continues to conceal such relevant documents. UMG should be ordered to produce all documents and "evidence" it purports to have collected about Veoh's "infringement."

Urie, Iovine and Holt admittedly have documents relating to "licenses with dozens of other websites and online services who post authorized copies with of UMG's music with full permission in exchange for royalties." Whether or not these documents fall under "viral marketing," this Court has recognized such information is relevant to the investigation of appropriate statutory damages.[7] Veoh is entitled to investigate Plaintiffs' lost revenues claims through internet licensing agreements showing the values attributed to such works. Indeed, Plaintiffs made this precise argument in seeking to compel *all* licensing, advertising and content agreements Veoh has entered.[8] This Court agreed that such agreements were relevant, and granted UMG's motion to compel these documents on November 21, 2008. (Docket 220).

Finally, the fact that Courtney Holt is no longer employed is not an excuse to refuse to search relevant files in UMG's possession. Veoh searched the files of two custodians no longer employed by Veoh, Sabine Jourdan and Francis Costello. Veoh never made an excuse that these individuals no longer worked for Veoh, because such would be inconsistent with Veoh's discovery obligations.

---

[7] See Ranahan Decl. ¶ 4 anf Exh. C, p. 33 ("**there is nothing in Section 504 to prevent a Court from taking account of evidence concerning actual damages and profits in making an award of statutory damages within the range set out in subsection (b)**") (emphasis in Order); ¶ 3 and Exh. B., pp. 15-18 (Court: "The caselaw suggests to me, and the legislative history, that the defendant may offer evidence that the profits the plaintiff lost were small or the work wasn't as valuable as part of the court's determination of what level of statutory damages is appropriate"). *Id.* at p. 18:11-16; *See also* 11/26/08 Order (Docket 217) (Court "it does not appear that UMG is relying on the argument previously rejected by the court in March 17, 2008 order in the *MySpace* case, namely, that such material is irrelevant because UMG is seeking only statutory damages"). This is exactly what UMG does here.

[8] Plaintiffs argued, in seeking to compel all licensing agreements from Veoh, that "[a] court determining the proper level of damages may consider 'revenues lost' by the plaintiff" and "Veoh's licenses are relevant to negating its affirmative that its use was de minimus and damages are excessive" and to show that UMG's works have "substantial value." (UMG's Joint Stip (Docket 71) pp. 123-124). If Plaintiffs need such information to "negate" Veoh's assertions, Veoh is entitled to licensing agreements to establish that Veoh's use *was* de minimus; UMG's "damages *are* excessive;" and show the works *do not* have "substantial value."

4

## III. PLAINTIFFS' SEARCH FOR RESPONSIVE DOCUMENTS IN THIS ACTION HAS PROVEN LARGELY WORTHLESS

As this Court has previously reminded UMG, the parties are obligated to make a good faith effort to produce all responsive documents "regardless of whether their addition was or was not requested... Responsibility for taking reasonable steps to ensure the completeness of its production—including identifying all appropriate custodians and preserving and searching their records—remains with UMG." (Docket 112, ¶ 7 and Exh. F). UMG has ignored its discovery obligations and the clear directive of this Court. Instead of employing a search methodology geared towards locating documents relating to the issues in this action, Plaintiffs have employed a search methodology that is largely illusory and consistent with their hide the ball strategy. UMG is obligated to make a good-faith diligent search. *Paramount Pictures Corp. v. ReplayTV, Inc.*, 2002 WL 1315811, *1 (C.D.Cal. 2002). UMG should not avoid such obligations by feigning confusion over what diligent and good-faith means.

## IV. DISCOVERY RELATING TO PLAINTIFFS' ORGANIZATIONAL STRUCTURE AND IDENTIFICATION OF WITNESSES

The organizational charts produced by Plaintiffs thus far constitute undated, incomplete pieces of Plaintiffs' massive organizational structure. Veoh is not asking that UMG create anything new, but simply produce all responsive organizational charts (which Plaintiffs surely have) including dates of such charts. Veoh is entitled to understand who holds what position in Plaintiffs' companies. A more basic approach to discovering potential witnesses is hard to imagine.

## V. CONCLUSION

Plaintiffs have failed and refused to include key custodians in their search or complete a reasonable, good-faith search for responsive documents. UMG should be compelled to add the seven custodians discussed herein and conduct a good-faith search for responsive documents.

| | |
|---|---|
| Dated: December 1, 2008 | **WINSTON & STRAWN LLP** |
| | By /s/ Erin R. Ranahan |
| | Michael S. Elkin |
| | Thomas P. Lane |
| | Jennifer A. Golinveaux |
| | Rebecca L. Calkins |
| | Erin R. Ranahan |
| | Attorneys for Defendant |
| | VEOH NETWORKS, INC. |