Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., *et al.*, <br><br> Defendants. | Case No. CV 07 5744 – AHM (AJWx) <br><br> **SUPPLEMENTAL MEMORANDUM PURSUANT TO LOCAL RULE 37-2.3 IN SUPPORT OF RE VEOH'S RENEWED MOTION TO COMPEL VERIFIED INTERROGATORY RESPONSES** <br><br> Date: 12/15/08 <br> Time: 10:00 a.m. <br> Crtrm: 690 <br><br> Discovery Cut-Off: January 12, 2009 <br> Pretrial Conference: April 6, 2009 <br> Trial Date: April 21, 2009 |

SUPP. MEMO ISO VEOH'S MOTION TO COMPEL (INTERROG. RESPONSES)     Case No. CV 07-5744-AHM (AJWx)
LA:230036.2

# I. INTRODUCTION

Plaintiffs' chief argument for having refused to provide adequate (or any) responses to the specific interrogatories at issue in this motion, is that the Court "heard argument" on Veoh's prior motion to compel on August 25, 2008; "Veoh has simply recopied the same rejected arguments into a new document and resubmitted them, hoping to obtain a different result;" and "Veoh offers no basis for the Court to depart from its August 2008 denial of Veoh's initial motion to compel." Of course, this Court never excused Plaintiffs from complying with the Federal Rules of Civil Procedure which require verification of interrogatory responses, and explicitly invited Veoh to renew its motion regarding UMG's discovery deficiencies. Because UMG's responses to Interrogatory Nos. 4, 9-17, 19-21 & 23-24 are deficient for reasons including UMG's failure to provide verifications, Veoh's motion should be granted.[1]

# II. PROCEDURAL HISTORY

During the August 25, 2008 hearing, this Court specifically stated that Veoh could bring a separate motion with respect to the portion of Veoh's motion regarding the deficiencies UMG's interrogatory responses:

> **Veoh's Counsel**: We have interrogatories that are part of the motion to compel. . . . Plaintiffs refused to answer. . 18 of our 24 interrogatories . . . and the remaining six contained responses that in our view are extremely deficient.
>
> **Court:** You can file a separate motion on that. . . So please, if you're not satisfied with their interrogatory responses, file a motion . . .
>
> (8-25-08 Transcript, p. 23:1-17).

Before renewing any aspect of its motion, Veoh conducted a careful review of Plaintiffs' massive regurgitation of its MySpace production. In renewing certain parts of the motion, Veoh has focused only on what was most crucial to its defense and as

---

[1] UMG does not bother to excuse its failure to verify a single interrogatory response in this action. Thus, this Court should immediately order Plaintiffs to provide verifications to its interrogatory responses.

1

such, moves on only the most pressing 15 interrogatories. Plaintiffs' argument that Veoh somehow "ignored" this Court's instruction by raising defects in its present motion that Plaintiffs failed to cure previously is frivolous at best and only underscores Plaintiffs' utter inability to find any legitimate justification for their present discovery failures.

## III. UMG MUST PROVIDE COMPLETE, VERIFIED RESPONSES TO IINTERROGATORY NOS. 4, 9-17, 19-21, & 23-24

### A. Veoh's Online Marketing Interrogatories Are Proper

In refusing to respond to Interrogatories 9-11, 13, 15-16, 19 and 24, Plaintiffs argue that Veoh has to demonstrate "evidence" of "foul-play" before UMG will undertake a good faith effort to provide the requested information. For instance, with respect to Interrogatory Nos. 10 and 15, UMG could at the very least conduct a survey of its employees, or employ other investigative measures to determine which of Plaintiffs' employees have used Veoh or other online websites to distribute Plaintiffs' works. Based upon such findings, Plaintiffs will have a more narrow pool of whose files should be searched for additional information. UMG cannot just throw up its hands without even taking such basic steps to determine where any of the allegedly infringing works originated. Such evidence would clearly be relevant to Veoh's affirmative defenses of estoppel, unclean hands and implied license, and UMG's premature efforts to litigate these claims on the merits fall short of offering grounds to foreclose this crucial discovery. Indeed, Veoh sets forth specific factual grounds explaining precisely how its affirmative defenses are implicated by the information sought by these interrogatories.[2]

---

[2] UMG would be estopped from asserting a copyright claim if it has aided in the posting of allegedly infringing on Veoh without Veoh's knowledge, which Veoh relied upon to its injury. If UMG encouraged or enabled the posting of allegedly infringing content to Veoh, any such evidence is squarely relevant to this action. Plaintiffs' attempt to parse the facts set forth in *Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) in such a narrow and confusing manner ignores the generally applicable holding that a plaintiff is estopped from asserting a copyright claim "if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." *Id*. at 1116. Veoh is simply

2

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

UMG's claims that "*Veoh* can readily identify the alleged user accounts of UMG employees by searching its database by applying the email @umusic.com" are squarely contradicted by documents produced by that Plaintiffs utilize *other, third party email addresses for such marketing*. (e.g., UMG01305071). Plaintiffs nonetheless cling to this meritless argument to avoid their discovery obligations.[3]

Finally, this Court has already ruled that online marketing is relevant to an inquiry of statutory damages. Ranahan Decl. ¶ 2 and Exh. A; ¶ 3 and Exh. B; p.19 ("If plaintiffs took a video and posted it on unlicensed sites and made it generally available to the public for free . . . why can't the defendant say there were no profits lost?"); *See also* 11/26/08 Order (Docket 217) ("it does not appear that UMG is relying on the argument previously rejected by the court in March 17, 2008 order in the MySpace case, namely, that such material is irrelevant because UMG is seeking only statutory damages"). Yet Plaintiffs have unequivocally taken that position here. The Court should (again) reject Plaintiffs' insistence that an investigation into actual damages is not warranted because Plaintiffs have elected statutory damages.

### B. Damages Interrogatories Nos. 4, 12 and 14 Are Relevant To Veoh's Investigation of Statutory Damages

---

seeking information to investigate whether UMG or its agents have aided in the alleged infringement. Likewise, UMG would have unclean hands if it posted allegedly infringing works onto Veoh because as Veoh has explained "uploading music videos to internet sites for marketing, promotion" and investigation, and then suing for infringement "is plainly inequitable." Finally, such discovery is squarely relevant to Veoh's implied license affirmative defense, because if a UMG employee uploaded the infringing work, UMG has clearly impliedly licensed such work, especially considering that, in Veoh's case, the terms of use clearly require the user to certify that it has authorization to post such content. UMG can argue the merits later, but has presented no grounds to prevent this basic inquiry at the discovery stage.
[3] Plaintiffs' footnote 7 states that because UMG has a policy against certain conduct, Veoh is not allowed to investigate whether UMG employees have complied with such policies. This is especially ironic considering that Plaintiffs' entire lawsuit is based upon UMG's speculation that Veoh is conducting activities in contrast to the manner in which Veoh has conducted its business with respect to infringing content since its inception. Indeed, Veoh was held to be protected by the safe harbor of Section 512(c) of the DMCA in a similar lawsuit because of its strong DMCA policies. *Io Group, Inc. v. Veoh Networks, Inc*., 2008 U.S. Dist. LEXIS, 65915, No. 06-3926, slip op. at 20 (N.D. Cal. Aug. 27, 2008).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Once again, UMG refuses to respond to interrogatories regarding damages arguing such discovery is irrelevant because it is seeking statutory damages. But as discussed above, this argument has been repeatedly rejected by this Court. (*Id.*) Plaintiffs also make the stunning claim that with just a month left before the close of discovery "Veoh's interrogatories are premature." Plainly, this is not the case.

To the extent that Plaintiffs claim that Interrogatory No. 4 would also encompass compact discs does not excuse Plaintiffs' failure to produce *any* information regarding channels of distribution, such as online distribution. Moreover, UMG can be expected to claim that videos appearing on Veoh have *displaced* compact disc sales in justifying its exorbitant statutory damages demand. Veoh is entitled to investigate such claims to demonstrate that such displacement has not occurred. Thus, Plaintiffs should be ordered to provide this information for all revenues that relate to internet/online sales or that are based upon revenues that UMG alleges have been displaced by Veoh's alleged infringement.

With respect to Interrogatory No. 14, Plaintiffs' claim that it has produced "over fifty" license agreements for online services or websites indicates that it not only considers such information relevant--it should provide information about license agreements for all online services or websites regarding any of the allegedly infringing works in this action (not simply the fifty it apparently randomly selected, none or all of which could relate to alleged infringements in this action).

### C. Interrogatory Nos. 20 and 21 Are Crucial To Veoh's Investigation

UMG continues to avoid providing information to confirm that it failed to cooperate in DMCA procedures. Notably, the RIAA sent DMCA notices on UMG's behalf, for which Veoh removed the allegedly infringing content the same day notice was received. UMG attempts to justify its refusal to provide this information, just one month before discovery closes, on the grounds that Veoh seeks to "put the cart before the horse" by presuming Veoh has already prevailed on its DMCA defense. Discovery in this action is not bifurcated, and UMG cannot explain how Veoh could

4

SUPP. MEMO ISO VEOH'S MOTION TO COMPEL (INTERROG. RESPONSES)   Case No. CV 07-5744-AHM (AJWx)
LA:230036.2

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

manage to prevail on its DMCA defense and then subsequently obtain this critical discovery under the current discovery schedule. UMG's argument that its sending DMCA notices is not relevant to mitigation of any alleged damage is ridiculous. While UMG can argue, at an appropriate time, that its duty to mitigate should not extend to cooperating in DMCA procedures, its attempt to litigate on the merits this issue prematurely should not foreclose Veoh from obtaining this key discovery.

### D. If UMG Will Not Seek To Assert That Veoh Has Interfered With Any Standard Technological Measure, it Should So State

With respect to standard technological measures information sought by Interrogatory No. 17, if UMG is not clear about what "standard technological measures" means within the context of the statute as applied to its own protections, it should simply provide a verified response that "UMG has employed no standard technological measures that it claims Veoh has interfered with," so that Veoh may have one less statutory element for which to seek additional information.

### E. The Court Has Yet To Decide Substantively Regarding Interrogatories Relating to Ownership Disputes, and Instead Has Indicated That Such Information is Properly Subject to Discovery

While Veoh has asked this Court to resolve the critical issue of providing documents regarding ownership of the allegedly infringing works,[4] Plaintiffs are misleading in failing to present the Court's most recent comment on the merits of the dispute. In fact, the Court explicitly stated that Plaintiffs do have to provide information that would allow Veoh to "meaningfully" rebut Plaintiffs' ownership claims. (11/21/08 Order, Docket 219). UMG's avoidance of this issue on various procedural grounds, where the substance has been explicitly deferred, does not warrant imposition of any "appropriate sanction" to prevent UMG from ever having to provide such information.

---

[4] On November 24, 2008, after the Court denied Veoh's second attempt to have this critical issue resolved (November 21, 2008 Order, Docket 219), Veoh filed renewed motion(s) to compel plaintiffs' to identify works and produce chain of title/rights information re the allegedly infringed works. (Docket 221-222). The motions are scheduled to be heard before this Court on December 15.

## IV. CONCLUSION

Veoh's motion to compel verified interrogatories should be granted.

Dated: December 1, 2008

**WINSTON & STRAWN LLP**

By /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.

6

Supp. Memo ISO Veoh's Motion To Compel (Interrog. responses)　　　Case No. CV 07-5744-AHM (AJWx)

LA:230036.2