Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC. *et al.*,<br><br>Defendants. | **Case No. CV 07 5744 – AHM (AJWx)**<br><br>**SUPPLEMENTAL MEMORANDUM PURSUANT TO LOCAL RULE 37-2.3 IN SUPPORT OF VEOH'S RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO FINANCIAL INFORMATION AND DAMAGES**<br><br>Date: 12/15/08<br>Time: 10:00 a.m.<br>Crtrm: 690<br>Discovery Cut-Off: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |

## I. INTRODUCTION

Plaintiffs' chief argument for having refused to produce documents sought by this motion is that the issues raised in Veoh's motion were previously before the Court. But that is not a basis for denial, and Plaintiffs ignore the fact that the Court *explicitly invited* Veoh to renew its motion upon completing review of Plaintiffs' (eleventh hour) production. Before renewing any aspect of its motion, Veoh conducted a careful review of Plaintiffs' production, a production which is not tailored to the issues in this action and appears to largely be a data dump of documents UMG produced in prior lawsuits. In renewing certain parts of its prior motion to compel, Veoh has focused on information crucial to Veoh's defense relating to damages and financial information—and is moving on only the most pressing 46 requests (thereby eliminating more than half of the requests on which Veoh previously moved). Further, Veoh has broken its motion into four discrete sections, each discussing the necessity of such documents to Veoh's investigation of damages. Plaintiffs' argument that Veoh somehow "ignored" this Court's instructions only exposes the lack of any legitimate response in opposition to Veoh's motion. Plaintiffs have simply failed to produce critical information relating to damages, and as such, Veoh's motion should be granted.

## II. PLAINTIFFS CANNOT CONTINUE TO HIDE BEHIND THEIR CLAIM OF STATUTORY DAMAGES AND MANUFACTURED PROCEDURAL DEFECTS TO AVOID PRODUCING RELEVANT FINANCIAL INFORMATION

### A. Plaintiffs' Valuations and Analysis of the Allegedly Infringed Works

Plaintiffs argue that "Veoh makes no effort to explain the relevance of the discovery it seeks" to statutory damages, though this Court has repeatedly recognized that financial information about the value of the allegedly infringed works are relevant to an investigation of statutory damages. Ranahan Decl. ¶ 4 and Exh. C, p. 33 (**"there is nothing in Section 504 to prevent a Court from taking account of evidence concerning actual damages and profits in making an award of statutory damages**

1

**within the range set out in subsection (b)")** (emphasis in Order); *Id.* at ¶ 3 and Exh. B., pp. 15-18 ("The caselaw suggests to me, and the legislative history, that the defendant may offer evidence that the profits the plaintiff lost were small or the work wasn't as valuable as part of the court's determination of what level of statutory damages is appropriate"). *Id.* at p. 18:11-16; See also 11/26/08 Order, note 1 (Docket 217) ("it does not appear that UMG is relying on the argument previously rejected by the court in March 17, 2008 order in the MySpace case, namely, that such material is irrelevant because UMG is seeking only statutory damages"). Yet Plaintiffs have unequivocally taken that position here.

Plaintiffs also claim that "UMG has already produced documents more than sufficient for Veoh to analyze issues of damages in this case." The fact is that Plaintiffs have not produced any meaningful financial documents[1] and the documents Plaintiffs claim are "summaries of UMG's revenues from the download and streaming of music videos, and licenses that evidence UMG's licensing and royalty terms" are meaningless, particularly given that UMG has delayed indicating allegedly infringing works are at issue, and whether any of such licenses actually relate to such works. Veoh is not seeking to "encompass every document tangentially related to UMG's finances." Veoh is seeking financial documents including those that relate to the valuations and royalties and other income of the infringements at issue in this. UMG should be ordered to produce such documents.

### B. Plaintiffs' Deals With Third Parties Regarding The Allegedly Infringed Works

Veoh is entitled to investigate Plaintiffs' lost revenues claims by examining licensing agreements showing the values attributed to such works. This Court has recognized information relating to third party deals, and negotiations of those deals is relevant to the investigation of appropriate statutory damages. Indeed, Plaintiffs made this precise argument in seeking to compel *all* licensing, advertising and content

---

[1] For example, Plaintiffs have not produced a single profit and loss statement for any entity.

2

agreements Veoh has entered. Specifically, Plaintiffs argued, in seeking to compel all licensing and content agreements from Veoh, that "[a] court determining the proper level of damages may consider 'revenues lost' by the plaintiff." (UMG's Joint Stip (Docket 71) pp. 123-124). Plaintiffs further argued that "Veoh's licenses are relevant to negating its affirmative that its use was de minimus and damages are excessive" and to show that UMG's works have "substantial value." (*Id.*). Clearly, if Plaintiffs need such information to "negate" Veoh's assertions, Veoh is entitled to the corresponding licensing documents to establish that any use by Veoh *was* de minimus; that UMG's "damages *are* excessive;" and that UMG's works *do not* have "substantial value."

This Court agreed that such agreements and negotiations were relevant, and granted Plaintiffs' motion to compel Veoh to produce these licensing documents and negotiations on November 21, 2008. (Docket 220). Plaintiffs also argued in seeking to compel the corresponding documents from Veoh that "Veoh's license agreements with third parties will reflect on Veoh's motivation for refusing to enter into a license agreement with UMG and may also reflect Veoh's benefit financially. . . " ((Docket 71) UMG's Joint Stip, p. 124). Likewise, UMG's licensing agreements with third parties will reflect on UMG's motivation for refusing to enter into a mutually agreeable arrangement with Veoh.

Negotiations about these same agreements offer the various motivations for including certain provisions. In other words, the ultimate product of the licensing agreement can only be fully investigated by understanding the context under which relevant provisions were decided. The "more than 50 license agreements" UMG has already produced may have no clear relevance to this action, because the works for which the license agreements relate may not even be at issue in this action. UMG should be required to produce all licensing agreements and negotiations of those agreements, for all of the allegedly infringing works at issue in this action.

3

### C. The Value of Allegedly Infringed Works With Respect to Distribution Over the Internet

Though the Court *granted* the defendants' motions to compel viral marketing documents in the *MySpace/Grouper* actions, like those documents sought by this section, UMG maintains that these documents are not relevant. Plaintiffs completely ignore that this Court has previously determined and repeatedly noted that these documents are relevant. Similarly, the Court has indicated in this action that it does "not appear" that UMG is denying such relevance in this context. (11/26/08 Order, note 1 (Docket 217)). Thus, Plaintiffs' opposition confirms that it is Plaintiffs that continue to cling to "tired" theories of irrelevance—with full knowledge that this Court has undeniably rejected such a position.[2]

Plaintiffs' reliance on its own internal policies as reason not to search for responsive documents fails. Whether or not UMG has a policy against certain conduct does not foreclose Veoh's opportunity to investigate whether UMG employees have complied with such policies.[3] Plaintiffs' piecemeal, haphazard and incomplete

---

[2] Such evidence would clearly be relevant to Veoh's affirmative defenses of estoppel, unclean hands and implied license, and UMG's premature efforts to litigate these claims on the merits fall short of offering grounds to foreclose this crucial discovery. UMG would be estopped from asserting a copyright claim if it has aided in the posting of allegedly infringing material on Veoh without Veoh's knowledge. If UMG encouraged or enabled the posting of allegedly infringing content to Veoh, any such evidence is squarely relevant to this action. Plaintiffs' attempt to parse the facts set forth in *Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) in such a narrow and confusing manner ignores the generally applicable holding that a plaintiff is estopped from asserting a copyright claim "if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." *Id*. at 1116. Veoh is simply seeking information to investigate whether UMG or its agents have aided in the alleged infringement. Likewise, UMG would have unclean hands if it posted allegedly infringing works onto Veoh because as Veoh has explained "uploading music videos to internet sites for marketing, promotion" and investigation, and then suing for infringement "is plainly inequitable." It is unclear how UMG has trouble deciphering how such conduct would be inequitable. Finally, such discovery is squarely relevant to Veoh's implied license affirmative defense, because it is not a stretch to assume that where a UMG employee has uploaded the infringing work, that UMG has impliedly licensed such work to Veoh, especially considering that Veoh's terms of use require the user to certify that it has authorization to post such content. Plaintiffs can argue the merits when such discussion is ripe, but has presented no grounds to prevent this basic inquiry.

[3] This is especially ironic considering Plaintiffs' entire lawsuit is based upon UMG's speculation that Veoh is conducting activities in contrast to the manner in which Veoh

4

1 production of certain viral marketing documents is a far cry from complying with its
2 discovery obligations and producing all responsive documents relating to viral
3 marketing of the allegedly infringing works in this action.

### D. Plaintiffs' Efforts to Protect the Allegedly Infringed Works

UMG's argument that its sending DMCA notices or taking other steps to protect UMG's content from infringement is irrelevant to mitigation of any alleged damage is ludicrous. In a case where Veoh employs swift procedures to remove allegedly infringing content, the protections UMG has taken in other contexts to notify third parties of similar allegations (or more likely, UMG's widespread refusal to cooperate) is directly relevant to this action. Even though UMG is challenging Veoh's right to invoke the DMCA procedures, that is no excuse for UMG's failure to minimize any alleged damages by enabling Veoh to remove any allegedly infringing works (unless, of course, UMG's goal was to run-up alleged damages by hiding the ball regarding alleged infringements, and running up litigation costs before such issues could be resolved.) The steps UMG has taken in similar litigations are relevant to this same inquiry. UMG can argue that its duty to mitigate should not extend to its obligation to cooperate in DMCA procedures or other conduct, but its attempt to prematurely litigate on the merits this issue should not foreclose Veoh from obtaining discovery about the means by which UMG protects its works.

### III. CONCLUSION

For all the foregoing reasons, the Court should grant Veoh's motion.

---

has conducted its business with respect to infringing content since its inception. Veoh devotes considerable efforts and resources to keep infringing content off Veoh and ensuring compliance with DMCA procedures, which is confirmed by the extensive discovery produced to Plaintiffs. Indeed, Veoh was held to be protected by the safe harbor of Section 512(c) of the DMCA in a similar lawsuit because of its strong DMCA policies. Io Group, Inc. v. Veoh Networks, Inc., 2008 U.S. Dist. LEXIS, 65915, No. 06-3926, slip op. at 20 (N.D. Cal. Aug. 27, 2008).

5

Dated: December 1, 2008                    **WINSTON & STRAWN LLP**

By /s/ Erin R. Ranahan
   Michael S. Elkin
   Thomas P. Lane
   Jennifer A. Golinveaux
   Rebecca L. Calkins
   Erin R. Ranahan
   Attorneys for Defendant
   VEOH NETWORKS, INC.