**Re: Docket #257**

Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | Case No. CV-07-05744 AHM (AJWx) |
| Plaintiffs, | **UMG'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL RE: (1) SEARCH TERMS, (2) CUSTODIANS, AND (3) "SKYPE" ACCOUNTS (DOCKET #257)** |
| v. | |
| VEOH NETWORKS, INC., *et al.*, | Magistrate: Hon. Andrew J. Wistrich |
| Defendant. | Date: December 17, 2008<br>Time: 10:00 a.m.<br>Courtroom: 690 |
| | Discovery Cutoff: January 12, 2009<br>Pretrial Conference: April 6, 2009<br>Trial Date: April 21, 2009 |

1981434

UMG'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO COMPEL RE: (1) SEARCH TERMS, (2)
CUSTODIANS, AND (3) "SKYPE" ACCOUNTS
(DOCKET #257)

1    Pursuant to Local Rule 37-2.3, and the Court's December 5, 2008, Minute
2 Order (Docket #272), plaintiffs UMG Recordings, Inc., *et al.* (collectively "UMG")
3 submit this Supplemental Brief regarding UMG's Motion to Compel re: (1) Search
4 Terms, (2) Custodians, and (3) "Skype" Accounts (Docket #257), in order to address
5 contentions and evidence set forth by Veoh in its portion of the Joint Stipulation
6 ("J.S.") (*see* Docket #264).

## I. VEOH SHOULD SEARCH ITS "SKYPE" ACCOUNTS

Veoh does not dispute that its employees' Skype messaging accounts are likely to contain responsive documents. Nor could it, since the evidence unambiguously confirms that Veoh employees use Skype accounts just like they use email to discuss, among other things, infringement on Veoh's website. *See, e.g.*, Ledahl Decl. (Dkt. #266), at Exs. KK, LL, MM, & NN. Indeed, Veoh's employees apparently use Skype messaging interchangeably with traditional email – the only difference is the account (*e.g.*, Microsoft Outlook, Skype, Google Gmail) which stores the communications. There is no dispute that these are electronically-stored documents within the meaning of Rule 34(a), and "are not less subject to disclosure [under Rule 26] than paper records." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003); FED.R.CIV.P. 34(a)(1), 2006 Adv. Comm't. Notes ("Rule 34(a)(1) … includes any type of information that is stored electronically."); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 447 (C.D. Cal. 2007) (same). Veoh essentially refuses to search for an entire category of electronic communications based only on the software used to generate or store the message. There is no valid or logical principle behind this distinction, nor would any distinction be valid under Rule 34(a).

Veoh seeks to excuse its refusal to search its Skype accounts because "Plaintiffs' counsel … refused to tell Veoh's counsel whether he had or would inquire [sic] of Plaintiffs' custodians as to whether they use IM at work on work computers." J.S., 40:13-17. This is not true. UMG clearly told Veoh that it does

not provide its employees with Skype accounts. In contrast, Veoh's own testimony confirms that Veoh employees are provided with Skype accounts <u>by</u> Veoh expressly for work purposes. UMG is not obligated to search its employees' personal Skype accounts – and is not asking Veoh to search its employees' personal Skype (or, for that matter, personal email) accounts.

## II. **VEOH SHOULD EXPAND ITS SEARCH TERMS**

### A. **Veoh's production remains incomplete.**

Even after the Court's Order of November 21, ordering production by Veoh in response to many of the requests propounded by UMG, Veoh's production remains seriously inadequate. As one example, Veoh has produced only 53 documents from its Chief Financial Officer, <u>despite</u> being ordered to produce, among other things "all documents relating" to "any valuation of [Veoh]," "analyses of actual or projected revenues, costs and profits associated with Veoh," and "all communications relating to potential investment in and/or acquisition of Veoh." Nov. 21 Order (Dkt. #220) (UMG § XIII). Similarly, in a case where Veoh's knowledge of infringement is at issue (*see* 17 U.S.C. § 512(c)(1)(A)(i)), Veoh has produced 22 documents from its CEO, and 19 documents from its former CEO and current Chief Innovation Officer, <u>despite</u> being ordered to produce "all documents relating to" steps taken to "examine, screen, filter or remove Content" and "all documents relating to" Veoh's features (RFP Nos. 22-33). *See* Nov. 21 Order (Dkt. #22) (§§ VIII, IX).

The vast majority of Veoh's production (as described by Veoh) comes from three custodians who received and sent copy-and-paste responses to notices of copyright infringement – these custodians' documents constitute <u>98.5%</u> of Veoh's production. *See* J.S., at 34 (Costello, Simons, and Talebizadeh comprise <u>177,257</u> of the <u>179,813</u> documents). Veoh refuses to undertake a reasonable search for internal communications – even after having been ordered to produce documents relating to filtering (*see* Nov. 21 Order (Dkt. #220), at § VIII), finances (*id.*, at § XIII), Veoh's

features (*id.*, at § IX), searches on Veoh's website (*id.*, at § X), and Veoh's traffic (*id.*, at § X). Indeed, despite being ordered to produce documents responsive to more than 100 document requests, Veoh's production contains, in total, fewer than 500 emails.[1]

### B. Veoh should search for the terms "music" and "youtube".

Veoh contends that it should not have to search for the terms "music" and "YouTube" because "Plaintiffs have already been provided with more than adequate discovery with respect to music, product analysis and YouTube." J.S., 35:7-8. Veoh's assertion is not consistent with the facts. As it did during the August 22 hearing, Veoh conflates documents reflecting, for example, features of its website with documents reflecting the reasons for those features. *See, e.g.*, J.S., at 36:18-20. The Court rejected Veoh's attempts to limit its production, and ordered Veoh to produce, among other things, all documents relating to: posting links on other websites (RFP No. 22), emailing links to Veoh content (RFP No. 23), adding "tags" or keywords to Veoh content, and many others (RFP Nos. 24-33). *See* Nov. 21 Order (Dkt. #220) (§ IX). Veoh's production pursuant to the Court's November 21 Order fails to live up to the requirements of that Order.

### C. Veoh fails to demonstrate undue burden.

Veoh recites the numbers of documents in its un-produced files that contain the words "music" and "youtube," and then asserts that reviewing such documents would be an undue burden. Veoh fails to demonstrate that its un-produced documents are not relevant. The fact that some documents containing these terms are irrelevant does not mean that the search is burdensome or improper. Rather, that depends on the proportion of relevant documents to irrelevant ones, something Veoh does not address. Veoh's additional contentions that UMG has somehow improperly limited its own production are both incorrect and irrelevant. UMG

---

[1] Indeed, Veoh's December 8 production consisted of 2,647 documents – of which more than 1,700 (more than 66%) were nothing more than junk documents which contained no text or other information whatsoever.

UMG'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO COMPEL RE: (1) SEARCH TERMS, (2)
CUSTODIANS, AND (3) "SKYPE" ACCOUNTS
(DOCKET #257)

1981434 - 3 -

searched for such terms as "youtube," "veoh," "myspace," and a host of others, yielding more than one million pages of internal UMG correspondence. Veoh's production still omits basic relevant categories of material and Veoh's arguments fail to demonstrate any undue burden.

### III. VEOH SHOULD ADD THE CUSTODIANS IDENTIFIED BY UMG

Veoh's entire argument against searching the files of additional employees boils down to the assertion that it need not search additional custodians' files because it has already searched the files of the individuals to whom Veoh employees report infringing videos (Stacie Simons and Anita Talebizadeh). While the identification of infringing videos by Veoh's own employees is relevant, it is far from the only issue in this case. Veoh's argument ignores the numerous other matters at issue in this case (many placed at issue by Veoh's affirmative defenses). Veoh ignores the issues as to which the Court has already ordered Veoh to produce responsive documents, such the marketing of Veoh, licensing of content by Veoh, efforts to filter content, efforts to monetize Veoh, and numerous others. Veoh's arguments suggests that it has only searched for internal communications if they relate to identifying a potentially infringing video. While this would explain why Veoh's production remains so far from complete, it is not a proper limitation on production.

#### A. Veoh should search its interns' files.

Veoh argues that because its interns identify infringing videos to other Veoh custodians, any searching of the interns' files would "be duplicative of" the searches it has already undertaken. Not so. The fact that some videos may ultimately be identified to Ms. Simons does not excuse Veoh from searching its interns' files. Veoh's interns' emails with Ms. Simons indicate that they are constantly viewing and are aware of the content on Veoh's site. *See* Ledahl Declaration In Support Of UMG's Motion (Docket #266), Exs. P, Q, R, S, T, U, & V. Considering that Veoh's knowledge of infringing works is a central issue in the case (*see* 17 U.S.C.

UMG'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO COMPEL RE: (1) SEARCH TERMS, (2)
CUSTODIANS, AND (3) "SKYPE" ACCOUNTS
(DOCKET #257)

1981434 - 4 -

§ 512(c)(1)(A)(i), (ii)), Veoh's interns are a likely to have many relevant documents describing, questioning, analyzing, or relating to Veoh's content. These documents have not been produced.

### B. Veoh should search the files of marketing executives Eric Rosado and Rita Zahir.

UMG's review of Veoh's other marketing employees' files suggest that Veoh's marketing department is familiar with and was constantly reviewing videos on Veoh's website, analyzing videos to determine if they were infringing, and determining how to market Veoh's website to the public and how to best monetize Veoh's content. *See* Ledahl Decl. (Docket #266), Exs. W, X, Y, Z, AA & BB. Veoh does not dispute that its marketing department is a source of relevant files, but asserts that "any key communications would be within Ms. Betka's documents" J.S., 17:22-23. This assertion is unreasonable considering that Veoh has not produced even a single email from either of these employees to Ms. Betka.

### C. Veoh should search the files of its analytics custodians, Jeff Rosenfeld and John Dimm.

Veoh contends that it need not search the files of Mr. Rosenfeld because he reports to Mr. Wiseman, whose files have been produced. But Veoh has not produced a single email from Mr. Rosenfeld to Mr. Wiseman. Indeed, Veoh identified only <u>two</u> documents from Mr. Wiseman's files in the Joint Stipulation. *See* J.S., at 34:24. If Mr. Rosenfeld's documents are within Mr. Wiseman's files, Veoh still hasn't produced them. The same is true for Mr. Dimm, who Veoh asserts reports to Mr. Papa. *See* J.S., 18:9-10. Veoh has produced a grand total of <u>three</u> emails from Mr. Dimm to Mr. Papa. Thus, Veoh's contention that UMG will get all "<u>significant</u> reports" (as opposed to <u>relevant</u> reports) from Mr. Papa's documents is belied by the reality of Veoh's production. In short, Veoh does not dispute that these two individuals are likely custodians of relevant documents, but their documents are not in Veoh's production. Thus, their files should be searched.

Dated: December 11, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: /s
 Brian Ledahl

Attorneys for Plaintiffs