1  IRELL & MANELLA LLP
   Steven A. Marenberg (101033) smarenberg@irell.com
2  Elliot Brown (150802) ebrown@irell.com
   Brian D. Ledahl (186579) bledahl@irell.com
3  Benjamin Glatstein (242034) bglatstein@irell.com
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone:  (310) 277-1010
5  Facsimile:  (310) 203-7199

6  Attorneys for Plaintiffs

7  ADDITIONAL COUNSEL LISTED
   ON SIGNATURE PAGE
8
              UNITED STATES DISTRICT COURT
9
            CENTRAL DISTRICT OF CALIFORNIA
10

11
   UMG RECORDINGS, INC., et al.,      )  Case No. CV 07-5744 AHM (AJWx)
12                                     )
              Plaintiffs,              )  FURTHER JOINT STATUS REPORT
13                                     )  PURSUANT TO DECEMBER 4, 2008
        vs.                            )  ORDER
14                                     )
   VEOH NETWORKS, INC., et al.,        )  Date:
15                                     )  Time:
              Defendants.              )  Ctrm:   14
16 _____)  Judge:  Hon. A. Howard Matz

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

1    Pursuant to the Court's Minute Order of December 4, 2008, and the Status
2  Conference conducted by the parties and the Court on that date, the parties
3  previously submitted a joint report on December 10, 2008, requesting leave to file a
4  further report on December 15, 2008 regarding the subjects raised during the
5  December 4 conference.  The Court granted the parties' request to submit a further
6  report in a Minute Order dated December 12, 2008.  The parties hereby submit this
7  further joint status report regarding the Court's proposal relating to administration of
8  the case with respect to Defendants Shelter Capital Partners, LLC, Shelter Venture
9  Fund, L.P. (collectively "Shelter Capital"), Spark Capital, LLC, Spark Capital, L.P.
10  (collectively "Spark Capital"), and The Tornante Company ("Tornante"), and with
11  respect to revisions to the previously-entered scheduling order.

12    Pursuant to the Court's Order, the parties have collectively met and conferred
13  regarding these issues through discussions on December 8, December 9, December
14  10 and December 11.  The parties report on the status of the two issues raised by the
15  Court respectively below.

## I.    THE COURT'S PROPOSAL

17    With respect to the Court's proposal regarding administration of the case with
18  respect to Shelter Capital, Spark Capital and Tornante, the parties have discussed the
19  issues at length and exchanged proposals for a possible stipulation to stay
20  proceedings against these defendants as discussed with the Court at the December 4,
21  2008 Status Conference.  In connection with the parties' December 10, 2008 status
22  report, the parties provided the Court with copies of their initial proposals regarding
23  these issues.  The parties further discussed the issues raised by their proposals and
24  possible resolutions to those issues.  Notwithstanding extensive discussions, the
25  parties have been unable to reach agreement regarding a possible stay.  Plaintiffs
26  (collectively "UMG") on the one hand, and defendants Shelter Capital, Spark
27  Capital and Tornante on the other hand each present their respective positions
28  regarding these issues below.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 1 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

## A.     UMG's Position

Fundamentally, any stipulation to implement the Court's proposal to stay UMG's claims against Shelter, Spark and Tornante ("Defendants") must be structured so as (1) not to affect the merits of any parties' claims and defenses (other than by accepted notions of collateral estoppel); and (2) promote efficiency in the prosecution of the overall case.  Composing a stay that achieves these goals is quite difficult and, as explained below, Defendants' proposal achieves neither.  Rather, the stay proposed by Defendants compromises both UMG's claims against these Defendants, and potentially its ability to proceed against Veoh.  Here are some reasons why:

- Defendants' initial proposal, framed in terms of claim preclusion (i.e., if Veoh prevails on UMG's claims against it, then judgment would be entered for all Defendants) ignores differences in the claims against Defendants and Veoh.  For example, were Veoh to establish that it was shielded from liability under the DMCA, Defendants' proposal would result in a judgment, not only for Veoh, but for Defendants as well.  However, because the DMCA does not excuse liability for infringement, and only limits remedies available against "service providers" which Spark, Shelter and Tornante are not (assuming that the other elements of the defense are established) it does not follow as a matter of law that a verdict in favor of Veoh would preclude establishing claims against Defendants.  Yet, Defendants' proposal would result in just that and would thus improperly affect UMG's case on the merits against Spark, Shelter and Tornante.

- To remedy this (and other potentially unwarranted results) UMG proposed that the preclusive effects of any case against Veoh be framed in terms of issue preclusion, not claim preclusion, and that all parties would be subject to collateral estoppel on issues actually and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 2 -

necessarily litigated in the UMG v. Veoh phase of the case.  In response, although Defendants have recognized that the concept of issue preclusion rather than claim preclusion is preferable, defendants would reserve the right to litigate all issues of the scope of any preclusion (e.g., whether a given finding was necessary, whether Veoh had a comparable incentive to litigate the issue, etc.).  This, of course, eviscerates the benefits of any stay, from UMG's perspective and only creates additional, collateral issues that would not otherwise be present were the case against all defendants to proceed in one phase.

- In addition to these potential substantive issues, a stay of discovery against Shelter, Spark and Tornante, if not structured correctly, threatens to impact UMG's ability to prove its case against Veoh. Spark, Shelter and Tornante have actively participated in key decisions giving rise to Veoh's liability including the decision to display copyrighted content, the decision not to filter for copyrighted content, and the decision to take down certain content, but not others.  Acts and omissions undertaken by Defendants *are* acts of Veoh and properly bear directly on Veoh's liability and its eligibility for certain defenses under the DMCA (e.g., whether Veoh had actual knowledge of infringements, whether was aware of facts or circumstance of apparent infringing activity, whether Veoh acted expeditiously to disable infringing content, etc.) *See 17 U.S.C. § 512(c)(1)(A)(i)-(iii).*  Thus, although certain discovery of Spark, Shelter and Tornante is unnecessary to the prosecution of UMG's claims against Veoh, some discovery of these defendants is unarguably proper in the first phase of any bifurcated proceeding.  UMG's proposed stay sought to accommodate this; Defendants' does not.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 3 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- Defendants' stay proposal also prejudices UMG in another respect. Because Defendants would not permit a judgment to be entered against Veoh until the conclusion of the second phase of the case against them, UMG's ability to enforce any decision against Veoh would be prejudiced. This is a serious concern in mass infringement cases where following adverse rulings, infringers have dissipated their assets or otherwise have taken steps to undermine the effect of a judicial decision.

These and other important issues presented by Defendants' proposed stipulation to implement the Court's suggestion of a stay are discussed below. As we noted, structuring a proper stay is difficult. Indeed, the difficulties in constructing a stipulation that is fair to both sides suggest that although the concept of a stay has appeal on first blush, the problems it raises may outweigh the benefits of the more simple alternative of simply extending the discovery period (obviously, as the plaintiff, UMG would like to get to trial as expeditiously as possible) to permit discovery by all parties to be completed and a unified trial on the merits.

To address the concerns briefly outlined above, UMG proposed a stipulation to address these three basic concepts: 1) an agreed scope of collateral estoppel that would avoid relitigation of issues resolved during UMG's case against Veoh; 2) the right of UMG to take limited discovery relevant to its claims against Veoh during the phase of the case applicable to Veoh and not to have discovery repeated in the second phase; and 3) a mechanism to protect UMG's ability to collect any judgment or award and not to have that ability prejudiced by the entry of a stay.

## 1. Scope of Collateral Estoppel

UMG submits that any fair and effective stipulation should limit the duplication of effort associated with a stay and also ensure that no party's position on the merits is inappropriately resolved against it merely by way of the stipulation without the opportunity to litigate the claim or defense. A critical element, as the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

1985765

Court recognized, is defining the scope that a party would be precluded from relitigating, in the second phase of this case between UMG and Defendants, those matters resolved in the first phase between UMG and Veoh. To that end, UMG proposed that any findings of fact or conclusions of law rendered (either explicitly or necessarily) in connection with UMG's claims against Veoh would be binding (in either direction) in a subsequent phase of this case against Shelter, Spark and Tornante. Defendants rejected this approach.

Initially, defendants offered a proposal grounded in claim (as opposed to issue) preclusion. Specifically, defendants proposed that a resolution of any individual cause of action in Veoh's favor (regardless of the basis) would result in a judgment in favor of Shelter, Spark and Tornante with respect to the same cause of action. Defendants also proposed that if UMG prevailed on its claim of direct infringement (Claim I) against Veoh, UMG's affirmative prima facie showing of infringement would not be retried, but defendants would preserve all defenses, whether or not litigated by Veoh. Further, Defendants' proposal contemplated no scenario (even where UMG prevailed against Veoh) by which UMG could pursue Counts II-IV of UMG's Complaint against Defendants, further rendering the proposal unworkable.

Defendants' claim-based approach would require UMG to stipulate away the merits of various issues. A resolution of a particular cause of action in Veoh's favor does not necessarily dictate a resolution of the same cause of action against Shelter, Spark and Tornante. For example, Veoh invokes, as a defense, the provisions of the Digital Millennium Copyright Act ("DMCA"). Shelter, Spark and Tornante, however, cannot claim the same limitation on their liability. The relevant provisions of the DMCA (17 U.S.C. § 512) limit remedies available for copyright infringement, but do not negate infringement. For example, the limitations on remedies provided by the DMCA, however, are only available to "service providers" as expressly defined in the statute. *See* 17 U.S.C. § 512(k). Shelter, Spark and Tornante are not

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 5 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

"service providers" within the meaning of this section and thus, they are not entitled to invoke the limitations on liability provided by the DMCA – even if Veoh were so entitled. Any secondary liability from Veoh's direct infringement is thus not negated by the application of the DMCA.

Though defendants agreed that an issue (rather than claim) preclusion was appropriate, they would reserve the right to litigate all issues of the scope of any preclusion, including, for example, whether a given finding was necessary, whether Veoh had a comparable incentive to litigate the issue, and the scope of any resolution of a particular issue in connection with UMG's claims against Veoh. Thus, Shelter, Spark and Tornante would stipulate to some general state of privity with Veoh, but nothing more.

Defendants' approach is insufficient to limit the negative implications of a stay. First, defendants' proposed compromise is no concession at all. Given the applicable facts, Shelter, Spark and Tornante could not meaningfully contest their privity with Veoh regarding the claims at issue even without a stipulation. More importantly, defendants' approach would not reduce the duplication of effort that a stay would cause. Defendants' proposal contemplates extensive collateral dispute about the applicability of any of this Court's findings in connection with a subsequent phase of this case.

## 2. Discovery Issues

The second major issue raised by a possible stay relates to discovery. Defendants' proposals would not avoid the unworkable discovery burdens and complications inherent in a stay. First, some discovery from Shelter, Spark and Tornante is required by UMG to prosecute its claims against Veoh itself even if a stay is entered on the claims against Shelter, Spark and Tornante. Shelter, Spark and Tornante are, through their representatives, directors of Veoh. As Board members, they have made decisions for Veoh about its operations and policies. Such decisions are directly relevant to UMG's claims against Veoh. For example, as

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 6 -

noted above, decisions made about how Veoh would seek to avoid copyright infringement, what content should be filtered on the Veoh site, what content should be removed, and similar decisions are highly relevant to UMG's claims for willful infringement, the application of the DMCA, and other issues. UMG should not be prohibited from pursuing such necessary discovery regarding its claims against Veoh as part of any stay.

Additionally, a stay should not result in repetitive discovery of UMG. The Court raised this issue at the December 4 conference and suggested that it was unlikely that Shelter, Spark and Tornante would require additional discovery from UMG that was not already pursued by Veoh. UMG proposed that while defendants would be able to take discovery after the lifting of a stay, they would not be able to repeat discovery already pursued by Veoh. This approach is needed both to prevent undue burden on UMG and its witnesses, and to prevent the relitigation of discovery issues that were already addressed through motion practice in the first phase of the case. Defendants' proposals did not address this issue directly.

### 3. UMG's Ability to Obtain and Execute a Judgment

Finally, a stay should not operate to prejudice UMG's ability to obtain and execute a judgment in this action. Defendants propose that a stay operate to prevent entry of judgment against any defendant until all claims against all defendants are resolved through separate phases. Under this approach, if UMG obtains a favorable ruling against Veoh in the first phase, under defendants' approach, no judgment would be entered until the completion of the second phase. Thus, under defendants' proposal, any ruling in UMG's favor could become illusory because it would be followed by a substantial delay before judgment could be entered – during which all defendants could seek to liquidate their assets. Not only would UMG be unable to execute on any judgment during the second phase, but the lack of a judgment would seriously impair UMG's ability to even obtain adequate surety to protect its interest (such as a bond or other security to secure a judgment). Moreover, after any adverse

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 7 -

finding against Veoh, Shelter, Spark and Tornante could disperse their own assets to render themselves effectively judgment proof as well. UMG proposed a stipulation to address these issues. Defendants refused to agree to any provision that would do so.

### 4. An Extension of the Schedule Resolves These Issues

In response to the Court's suggestion of a stay, UMG made a proposal for a stay that addresses and resolves each of the issues discussed above. The parties have diligently conferred in an effort to seek common ground on their competing proposals, without agreement. In a real sense, this is unsurprising. The parties' discussions have revealed to UMG that the difficulties and complications inherent in implementing such a stay, without creating undue burdens or prejudicing any party, may well outweigh its potential benefits as a practical matter. Thus, UMG respectfully submits that the Court reconsider whether, in the final analysis, the better approach is the simpler one: that is, to appropriately adjust the case schedule to permit Shelter, Spark and Tornante (and UMG) to each have the full and fair opportunity to take discovery and resolve the issues in one phase.

### B. Shelter Capital, Spark Capital and Tornante's Position

Following the December 4, 2008 status conference, the Shelter Capital, Spark Capital and Tornante (collectively, the "Investor Defendants") prepared a straightforward draft stipulation (attached hereto as Exhibit B) that the Investor Defendants believed in good faith genuinely implemented the Court's proposal. Namely, the Investor Defendants proposed a stipulation that, in sum, (1) would stay the case against the Investor Defendants pending resolution of the claims against Veoh; (2) in the event that Veoh was found not liable for copyright infringement, the corresponding claims (differentiated count-by-count) against the Investor Defendants would be dismissed, with prejudice; and (3) in the event that Veoh was found liable for copyright infringement, the Investor Defendants would not relitigate

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 8 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

the factual findings that were fully and fairly litigated against Veoh and which constituted Plaintiffs' case-in-chief. That is, under the Investor Defendants' proposed stipulation, Investor Defendants would concede to the application of collateral estoppel principles and Plaintiffs would not have to relitigate any underlying finding that Veoh directly infringed, a finding that would be a necessary predicate to any finding of indirect liability by the Investor Defendant.[1] Of course, in the event that the stay was lifted and the case proceeded against the Investor Defendants, the Investor Defendants would maintain the right to answer Plaintiffs' First Amended Complaint and to assert any affirmative defenses and counterclaims.[2] In each of these respects, the Investor Defendants felt their proposal was balanced and consistent with the objectives the Court set out on December 4, 2008.

Counsel for Plaintiffs summarily rejected the Investor Defendants' proposal, asserting that a claim-by-claim approach was inappropriate. Instead, Plaintiffs proposed the parties agree to be bound by any and all findings of fact and conclusions of law decided in the UMG/Veoh phase of the case, irrespective of whether the underlying issue was adjudicated on the merits. (Plaintiffs' proposal is attached hereto as Exhibit A). Plaintiffs further insisted that the stipulation include several unnecessary collateral provisions, specifically that (1) notwithstanding the stay, Plaintiffs should nonetheless be permitted to take discovery of the Investor Defendants while the Investor Defendants may not take discovery until after the stay is lifted and (2) in the event any judgment is entered against Veoh and is appealed, such judgment would be immediately executable against the Investor Defendants, unless the Investor Defendants post a bond or other adequate security pending resolution of an appeal. While expressing concern with the framework of Plaintiffs'

---

[1] Plaintiffs have not alleged – nor could they – that the Investor Defendants have engaged in direct copyright infringement.

[2] Because of the pending motion to dismiss, the time has not yet come for the Investor Defendants to answer and assert counterclaims.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

1985765

- 9 -

proposal as well as the extraneous provisions Plaintiffs wished to include, the Investor Defendants nonetheless reviewed Plaintiffs' written proposal and provided proposed revisions (attached hereto as Exhibit **C**). In particular, the Investor Defendants attempted to revise Plaintiffs' proposal to address lack of clarity regarding what effect a final order, decision, or verdict resolving the claims against Veoh would have in the second phase between Plaintiffs and the Investor Defendants.[3] During subsequent meet and confer calls and correspondence, however, Plaintiffs rejected the Investor Defendants' proposed revisions to Plaintiffs' proposed stipulation, as well as again rejecting the Investor Defendants' initial proposed stipulation.

The Investor Defendants respectfully submit that their initial proposal more clearly delineates what the parties would be agreeing to and is consistent with the objectives of the proposal set forth by the Court. Plaintiffs' proposal, on the other hand, is ambiguous as to what effect any final order, decision or verdict in the first phase would have on the second phase and adds unnecessary and inappropriate collateral provisions to the stipulation. In particular, the Investor Defendants had three principle objections to Plaintiffs' proposal.

*First*, the Investor Defendants proposed stipulation makes clear exactly what the effect of a final order, decision, or verdict resolving each of the claims as to Veoh in the first phase of the litigation would be on the Investor Defendants and Plaintiffs in the second phase of the litigation. Plaintiffs' counterproposal, on the other hand, provides little, if any, clarity as to what effect the first phase of the litigation would have on the second phase. Indeed, Plaintiffs have made it quite clear that under their proposal even if Veoh is found not liable as to any claim of

---

[3] Additionally, as they represented to the Court in the status conference, the Investor Defendants made clear – in both meet and confer calls and their revisions to Plaintiffs' proposal – that, should the stay be lifted, they will make best efforts not to repeat discovery taken during the Plaintiffs/Veoh portion of the case.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

1985765

- 10 -

copyright infringement, Plaintiffs would still proceed with their case against the Investor Defendants, arguing that the Investor Defendants could somehow be secondarily liable for copyright infringement notwithstanding the absence of a direct infringer. Moreover, Plaintiffs' proposal could result in the Investor Defendants effectively waiving the right to pursue yet unasserted affirmative defenses. For example, if for any reason, Veoh decided not to pursue an affirmative defense, under Plaintiffs' proposal, the Investor Defendants could be precluded from pursuing that same affirmative defense, notwithstanding the fact that the Investor Defendants have not yet even had to answer the First Amended Complaint. Plaintiffs' proposal would also bind the Investor Defendants regardless of whether the issue was fully and fairly litigated and a finding was made on the merits. Such a result is contrary to the basic principles of collateral estoppel. Finally, under Plaintiffs' proposal, Investor Defendants could be bound by findings and a special verdict form which they would have had no right to participate drafting.

*Second*, Plaintiffs insisted that any stipulation must permit them to take discovery from the Investor Defendants, notwithstanding the stay. That is, the stay would effectively only prohibit the Investor Defendants from taking discovery while Plaintiffs' discovery of the Investor Defendants could continue unabated. Indeed, notwithstanding the then ongoing efforts to reach a stipulation on the scope of a stay, on the afternoon of Friday, December 12th, Plaintiffs surprisingly served each of the Investor Defendants with requests for production of documents.[4]

But Plaintiffs insistence that they require discovery from the Investor Defendants in order to support their claims against Veoh is belied by Plaintiffs' actions throughout the history of the case. In particular, Plaintiffs served each of the

---

[4]  Absent a stay as to the Investor Defendants, the Investor Defendants expect to file a motion for a protective order as to these requests for production, which are largely duplicative of the subpoenas Plaintiffs served on the Investor Defendants ten months ago.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 11 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

Investor Defendants with third party subpoenas ten months ago – in February 2008. (*See* Dkt. No. 62, Declaration of Anjuli McReynolds in Support of Motion for Leave to Amend ¶ 3 and Ex. 2 ("McReynolds Decl.").) Each of the Investor Defendants served a timely response to the subpoenas in April 2008. (*See* Dkt. No. 64, Declaration of Jennifer Golinveaux in Support of Veoh's Opposition to the Motion for Leave to Amend ("Golinveaux Decl."), Ex. B.) The Investor Defendants produced or offered to produce non-confidential documents, and further agreed to produce confidential documents pursuant to the entry of a protective order. Within days of the Court's entry of the Interim Protective Order on May 20, 2008, several of the Investor Defendants made substantial productions of confidential documents responsive to the subpoenas. (*See* Dkt. No. 62, Gollinveaux Decl., ¶ 7.) Other Investor Defendants offered to make further productions, but Plaintiffs did not bother to take them up on it. (*See* Dkt. No. 177, Declaration of Sean Sullivan in Support of Motion to Dismiss ("Sullivan Decl."), ¶¶ 10-13.) Plaintiffs did, however, at that point serve non-party deposition subpoenas. But when the Investor Defendants' counsel attempted to work with Plaintiffs' counsel to schedule depositions last spring, Plaintiffs voluntarily withdrew the deposition notices, choosing not to take the depositions. (*See* Dkt. No. 62, Gollinveaux Decl., ¶ 8; Dkt. No. 177, Sullivan Decl., ¶¶ 10-13.) If the discovery from the Investor Defendants was as necessary and critical as the Plaintiffs now assert, then surely they would have met and conferred regarding any concerns they had with the document productions made last spring, and would have taken the depositions at that point. Having waited until ten months after they served the third party document subpoenas and more than six months after serving – and then withdrawing – the third party deposition notices, Plaintiffs' insistence that they must be permitted to take discovery from the Investor Defendants notwithstanding the stay just does not ring true.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 12 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

**Third**, Plaintiffs insisted that any stipulation must include language allowing Plaintiffs to use any judgment against Veoh as a device to execute upon the Investor Defendants. In the alternative, Plaintiffs suggested placing a freeze on the Investor Defendants' assets. In essence, without offering any legal support for the inclusion of such a proposition, Plaintiffs effectively seek to hold shareholders provisionally responsible for a judgment issued against the company in which they invested. Notwithstanding the fact that such a provision is not relevant, necessary or appropriate in the context of the proposed stipulation regarding a stay as to the Investor Defendants, Plaintiffs refused to enter into a stipulation absent such a provision.

Thus, while the Investor Defendants made good faith efforts to reach agreement with the Plaintiffs regarding a stipulation to stay the case as to them, Plaintiffs insistence on vague terms and the inclusion of unnecessary and inappropriate supplemental provisions have, regrettably, left the parties unable to reach an agreement.

In light of the procedural posture of the current case, and particularly the fact UMG has now served discovery upon the Investor Defendants the response to which will be due January 12, 2008, the Investor Defendants respectfully request that the Court set an expedited briefing schedule on the motion to stay (and sever) and enter an order staying the above-captioned case as to them, until entry of a final order, decision, or verdict resolving each of Counts I-IV against Veoh.

## II. CASE SCHEDULE

UMG and Veoh have also discussed adjustments to the case schedule in this matter, but have not been able to reach agreement on an appropriate adjustment. The parties set forth their respective positions below:

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 13 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

### A.    UMG's Position

UMG continues to believe that an extension of approximately 120 days is needed to allow for completion of necessary discovery in this action.[5]  After initially opposing any extension, Veoh now proposes a 4 week extension.

To permit the Court to evaluate the competing proposals, UMG has set forth below certain facts regarding the present status of the parties' discovery efforts.  We do so not because we desire to entangle this Court in discovery issues or seek the Court's help in resolving them.  To that end, we have eschewed, to the maximum extent possible, editorializing on the parties' conduct; we prefer to let the facts speak for themselves.  We believe they demonstrate that Veoh's proposed 4 week extension is impracticable and unreasonable given the task yet to be completed and reflects Veoh's apparent strategy of attempting to "run out the clock" on a discovery deadline, which would unfairly prejudice UMG.  The facts are as follows:

**1**. **Identification of Infringing Works:**  To date, UMG has identified approximately 1500 infringing works from Veoh's site that UMG was able to identify from its own internal investigation.[6]  UMG has provided Veoh with the uniform resource locator ("URL's") and copyright registration numbers and registrations for these works.  Veoh has been ordered to provide full access to its media files and produce related information (i.e. metadata) to permit UMG to identify additional infringing works from Veoh's own records.  Veoh has not yet completed its production.

Perhaps most importantly, UMG has not yet obtained from Veoh certain critical data generated by the "Audible Magic" filtering technology which Veoh

_____

[5] A specific scheduling implementing this proposed adjustment to the dates previously set by the Court in the table below.  For reasons discussed herein, we remain concerned that unless the present pace of discovery is increased, something UMG is committed to do, the state of discovery is such that even UMG's proposed extension may be insufficient.

[6] This number may shrink, but not materially, due to the elimination of duplicative works.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 14 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

began to use during the pendency of this case. This technology identifies files, particularly files containing recorded music, based upon a "fingerprint" of the soundtrack of the video or music file. The Audible Magic technology identifies matching files by providing its user (Veoh) with the song name, recording artist, record label releasing the song, and various other identifying information. Although Veoh began using the Audible Magic technology during the pendency of this case, it did not retain much of the information provided by Audible Magic about video files filtered from Veoh's Internet site – it deleted that data. In light of the fact that Veoh refused to preserve such evidence without a court order, Judge Wistrich has now ordered Veoh to preserve all such information on a going forward basis. Notably, the parties have learned that notwithstanding Veoh's failure to retain this material, the vender of the filtering technology, Audible Magic, retained the same data itself. The parties have been working to obtain that data from Audible Magic, but to date, UMG has not received it. Once UMG has received this data UMG will be in a position to identify additional infringed works on the Veoh service. (UMG employed the Audible Magic filtering data to great effect in the prior *MySpace* and *Grouper* cases to identify infringing works.) If Audible Magic delivers its data replacing that destroyed by Veoh by year-end, UMG believes it will be in a position to identify additional infringing works by the end of January 2009.[7]

   **2. Document Discovery:** Document discovery from Veoh remains substantially incomplete. UMG served its First Request for Production of Documents on January 17, 2008.[8] Veoh interposed numerous objections to that request. As a result, UMG filed a motion to compel on July 21, 2008 which came on for hearing on August 25, 2008. At the hearing, Judge Wistrich indicated he was

---

[7] It appears from the limited data that Veoh has produced that more than 250,000 videos returned some result from Audible Magic – suggesting that each contained copyrighted content.

[8] Veoh objected that it had not yet agreed to schedule the parties' Rule 26(f) meeting at that time. Subsequently, the parties agreed to deem the requests served as of the date of that conference, February 11, 2008.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 15 -

inclined to grant most of UMG's motion and ordered Veoh to produce those documents which it had agreed to produce (but had not yet done so) by September 30, 2008. On November 21, 2008, Judge Wistrich issued an order granting much of UMG's motion to compel and ordered Veoh to produce its documents by December 8, 2008.

Veoh made a supplemental production on December 8 of approximately 30,000 pages of additional material. UMG's review of that material indicates that Veoh's production remains incomplete in significant respects.[9] Specifically, UMG's review of Veoh's production reveals that various important categories of documents remain unproduced. For example, Veoh's production of internal communications among Veoh employees and executives remains incomplete. Even after its recent supplemental production pursuant to Magistrate Judge Wistrich's November 21 Order, Veoh has produced only 22 documents of any kind (including email communications) from its chief executive, Steve Mitgang (only 2 such emails were contained in Veoh's recent supplemental production). Veoh has produced similarly minimal communications from other key employees whose files have been searched. Veoh has still not produced its internal communications regarding the adoption of filtering technology (*e.g.*, the Audible Magic technology discussed above), notwithstanding Magistrate Judge Wistrich's ordering of production of "[a]ll documents relating to steps that You [Veoh] take, have taken, or have considered taking to examine, screen, filter or remove Content that users upload to or download from Veoh Software." Additionally, Veoh has refused to search the Skype messaging accounts of any of its employees for responsive communications. Skype messaging is an electronic messaging system used by Veoh employees for many of

---

[9] Veoh's total production now amounts to less than 400,000 pages of material. While absolute numbers are by no means a perfect indicator of adequacy, UMG notes that in the prior litigation with Grouper Networks, by contrast, Grouper (a smaller business than Veoh) produced more than 1 million pages of material. This differential provides a point of reference that suggests Veoh has not yet made a comprehensive production.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 16 -

their business communications (much like an additional email account). Veoh's designated witness (for an early Rule 30(b)(6) deposition) confirmed that a Skype messaging account is created for all Veoh employees to use for business communications.[10] Veoh's counsel has confirmed that Veoh continues to withhold internal communications regarding Veoh's decision to adopt the so-called "UGC Principles." The Court may recall that Veoh itself cited its adoption of these principles as a relevant fact in its opposition to UMG's pending motion for partial summary judgment. *See* Dkt. # 145 (Veoh Opposition) at 8:6-14.

UMG took a different approach to document discovery. Given that discovery issues were heavily litigated in the prior *MySpace* and *Grouper* actions and that the potential discovery required from UMG would be substantially identical, UMG produced, with one very narrow exception, all of the materials produced in the prior actions at the outset of discovery in this case.[11] UMG further produced additional materials that it had agreed to produce in the prior actions but that had not been produced prior to the resolution of those cases. Thus, UMG made a prompt production of more than 1.4 million pages of material in this case.

Regrettably, Veoh's continued resistance to production of materials indicates that further motion practice before Judge Wistrich will likely be required. As the Court is likely aware, Magistrate Judge Wistrich has made himself available to hear various discovery motions on December 17, 2008. To the extent additional production is ordered from either party, such production is unlikely to be complete before the current discovery cut-off of January 12, 2009. To the extent additional discovery matters require Magistrate Judge Wistrich's attention, the next available

---

[10] Veoh's refusal to produce Skype messages is akin to arbitrarily agreeing to produce emails sent by Microsoft Outlook, but not by Google Mail, although both types of messaging systems undoubtedly far within the scope of materials discoverable under the Federal Rules of Civil Procedure.

[11] The only category of material UMG produced in the prior actions that was not produced to Veoh were the set of materials relating specifically to evidence collected of the specific infringing works on the MySpace or Grouper services.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 17 -

date on his calendar is January 12, 2009.[12]  Given these facts regarding the state of document discovery, UMG respectfully submits that the approximately 4-week extension proposed by Veoh is inadequate and the longer extension proposed by UMG is necessary.

   **3.  <u>Deposition Discovery</u>:**  Deposition discovery in this case also remains largely incomplete.  To date, UMG has been able to take only 1 deposition in this case – that deposition was of a technical Veoh employee pursuant to Rule 30(b)(6) and was taken prior to Veoh's document production in order to establish the basis for UMG's pending motion for summary judgment.  In September 2008, UMG served a more comprehensive Rule 30(b)(6) deposition notice to Veoh asking Veoh to designate witnesses responsive to a number of topics that were geared to the liability issues in this case.  As of today's date, despite the lapse of 2 months, no depositions in response to any topic listed in the Notice have occurred.  Veoh initially objected to the notice, and then withdrew its objections after UMG filed a motion to compel.  Judge Wistrich recently granted UMG's motion to compel and ordered Veoh to appear for that deposition, but none of the witnesses to be designated have yet been scheduled.  Once UMG completes its 30(b)(6) deposition of Veoh, UMG intends to notice the depositions of appropriate Veoh employees and executives in their individual capacities.  It has been UMG's preference to take individual depositions only once, after documents have been produced, thereby avoiding the need to reopen depositions to account for late-produced documents.  UMG has also attempted to schedule (by subpoena) the deposition of Time Warner, one of the investors in Veoh, but as the Court is aware, scheduling difficulties involving the coordination of dates with the witness and counsel for Veoh and Spark, Shelter and Tornante have required that this deposition be delayed.

---

[12] As the Court may be aware, Magistrate Judge Wistrich recently entered *sua sponte* an Order finding that Veoh has "overused" the *ex parte* application mechanism "to the point that it is unduly burdening both the Court and UMG's counsel" and barred Veoh from employing that procedure again without his prior permission.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Veoh has taken two depositions to date in the case. Depositions of other UMG executives or designees pursuant to Veoh's Rule 30(b)(6) notice to UMG were tentatively scheduled in December, but upon agreement of the parties, were postponed until January 2009. UMG expects that Veoh will notice additional depositions as well.

In light of all these facts, UMG respectfully submits that the approximately 4-week extension that Veoh proposes is inadequate to allow for the discovery that remains. UMG does not lightly seek an extension of the schedule, and would prefer to have its claims adjudicated promptly. However, the extension UMG proposes is necessary to provide an opportunity for fair discovery.

The specifics of UMG's proposed schedule are as follows:

| **Event** | **Current Date** | **Proposed Date** |
|---|---|---|
| Non-Expert discovery cut-off | January 12, 2009 | May 11, 2009 |
| Last day to conduct settlement conference | January 20, 2009 | May 19, 2009 |
| Opening expert witness disclosures | January 20, 2009 | May 19, 2009 |
| Last day to hand-serve and file motions (other than *In Limine*) | January 26, 2009 | May 25, 2009 |
| Rebuttal expert witness disclosures | February 16, 2009 | June 15, 2009 |
| Last day for hearing motions | February 23, 2009 | June 22, 2009 |
| Last day to meet before pretrial conference | February 23, 2009 | June 22, 2009 |
| Expert discovery cut-off | March 9, 2009 | July 6, 2009 |
| Last day to hand serve motions *In Limine* | March 9, 2009 | July 6, 2009 |
| Lodge Pretrial conference order | March 23, 2009 | July 20, 2009 |
| Final pretrial conference | April 6, 2009 11:00 a.m. | August 3, 2009 11:00 a.m. |
| Trial | April 21, 2009 8:00 a.m. | August 18, 2009 8:00 a.m. |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

1985765

- 19 -

## B.   **Veoh's Position**

As the Court knows from the parties' conference on December 4, 2008, Veoh was opposed to any extension of the deadlines in this case.[13] Veoh has, at great expense and financial cost, devoted countless business resources toward complying with all court deadlines.  As a start-up company, this litigation, which Veoh believes to be completely baseless, continues to drain assets and capital.

That said, and reflecting upon the Court's instruction to attempt to resolve scheduling difficulties, Veoh offered to agree to extend all deadlines by 30 days. Unfortunately, UMG refused to alter its own original 120 day demand, and submitted no counter-response.  Indeed, but for whatever UMG inserts into this status report, it has offered to Veoh no greater explanation of its need for an additional 120 days than it offered to this Court over a week ago.  In fact, Veoh has been attempting to exchange and submit this portion of the joint status report since December 10, 2008 when UMG's obstinacy became clear.  Instead, UMG provided its portion to Veoh's New York counsel, who has been negotiating this section, at 8:03 p.m. e.s.t. today.

Veoh believes that while no extension is necessary, a 30 day extension will satisfy UMG's concerns while also ensuring that the needless financial and operational drain has an end in sight for Veoh.  Notwithstanding UMG's repeated protestations about either the pace or quality of discovery, UMG itself has repeatedly dragged its feet on certain productions and issued blanket discovery refusals, going so far as to refuse to produce a list of the allegedly infringing works at issue until well over a year after this case began.  In fact, despite multiple and repeated discovery requests and demands, UMG did not provide a list of allegedly infringed works until December 1, 2008.  As a result of UMG's own discovery failures and delays, Veoh has its own multiple motions to compel pending against

---

[13] UMG has not filed a formal motion to extend the court-ordered deadlines herein.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

- 20 -

UMG -- but firmly believes that a quick set of deadlines in this matter is essential to obtaining an appropriate and effective resolution.[14]

The specifics of Veoh's proposed schedule is as follows:

| Event | Current Deadline | Veoh's Proposed Deadline |
|---|---|---|
| Non-expert discovery cut-off | January 12, 2009 | February 9, 2009 |
| Last day to conduct settlement conference | January 20, 2009 | February 20, 2009 |
| Opening expert witness disclosures | January 20, 2009 | February 20, 2009 |
| Last day to hand serve and file motions (other than *In Limine*) | January 26, 2009 | February 26, 2009 |
| Rebuttal expert witness disclosures | February 16, 2009 | March 16, 2009 |
| Last day for hearing motions | February 23, 2009 | March 23, 2009 |
| Last day to meet before final pretrial conference | February 23, 2009 | March 23, 2009 |
| Expert discovery cut-off | March 9, 2009 | April 9, 2009 |
| Last day to hand serve motions *In Limine* | March 9, 2009 | April 9, 2009 |
| Lodge pretrial conference order | March 23, 2009 | April 23, 2009 |
| Final pretrial conference | April 6, 2009 at 11:00 a.m. | May 6, 2009 |
| Trial | April 21, 2009 at 9:00 a.m. | May 21, 2009 |

---

[14] Notably, Magistrate Judge Wistrich has currently scheduled for hearing on December 17, 2008 the following motions: (1) Veoh's Renewed Motion to Compel Verified Interrogatory Reponses; (2) Veoh's Renewed Motion to Compel Plaintiff UMG to Identify Works at Issue; (3) Veoh's Renewed Motion to Produce Chain of Title/Rights Information Allegedly Infringed Works; (4) Veoh's Renewed Motion to Compel Production of Documents Relating to Financial Information and Damages; (5) Veoh's Motion to Compel the Addition of Custodians and Production of Documents; and (6) UMG's Motion to Compel Re (1) Search Terms, (2) Custodians, and (3) "Skype" Accounts.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 21 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

1    Respectfully submitted,

2

3    Dated:  December 15, 2008          IRELL & MANELLA LLP

4

5

6                                      By:   /s Steven A. Marenberg
                                          _____
7                                         Steven A. Marenberg
                                          Attorneys for Plaintiffs
8

9    Dated:  December 15, 2008          WINSTON & STRAWN LLP

10

11

12                                     By:   /s Thomas Lane (w/ permission)
                                          _____
13                                        Thomas Lane
                                          Attorneys for Defendant Veoh
14                                        Networks, Inc.

15

16   Dated:  December 15, 2008          WILMER CUTLER PICKERING HALE
                                         AND DORR LLP
17
                                         ORRICK HERRINGTON & SUTCLIFFE
18                                       LLP

19

20

21                                     By:   /s Robert G. Badal (w/ permission)
                                          _____
22                                        Robert G. Badal
                                          Attorneys for Defendants Shelter
                                          Capital Partners, LLC, and Shelter
23                                        Venture Fund, L.P.

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 22 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER

1  Dated:  December 15, 2008        KULIK, GOTTESMAN, MOUTON &
                                    SIEGEL, LLP
2

3

4

5                                   By:  /s Alisa S. Edelson (w/ permission)
                                         Alisa S. Edelson
6                                        Attorneys for Defendant The Tornante
                                         Company LLC
7

8  Dated:  December 15, 2008        WILMER CUTLER PICKERING HALE
                                    AND DORR LLP
9

10

11                                  By:  /s Maria Vento (w/ permission)
                                         Maria Vento
12                                       Attorneys for Defendants Spark
                                         Capital, LLC, and Spark Capital, L.P.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1985765

- 23 -

FURTHER JOINT STATUS REPORT PURSUANT TO
DECEMBER 4, 2008 ORDER