O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| S. Eagle | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | | |

**Proceedings:** IN CHAMBERS (No Proceedings Held)

On September 4, 2007, Plaintiffs sued Veoh, a privately held California corporation, for direct, contributory, and vicarious copyright infringement, and for inducement of copyright infringement. On August 26, 2008, Plaintiffs filed a First Amended Complaint ("FAC") that named three of Veoh's investors as defendants on the three theories of secondary liability. These include Shelter Capital LLC, Spark Capital LLC, and The Tornante Company, LLC (referred to collectively as "the Investor Defendants"). The FAC alleges that the Investor Defendants are liable for contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement. On October 16, 2008, the Investor Defendants filed a motion to dismiss the First Amended Complaint. For the reasons explained below, the Court GRANTS the motion.

## I.   BACKGROUND

The FAC alleges in relevant part that in addition to supporting Veoh financially, the Investor Defendants "comprise a majority of Veoh's Board of Directors and, through those directorships, control Veoh and make all important operational decisions for Veoh." FAC ¶ 4. Evidently anticipating this motion, the FAC alleges that the Investor Defendants "are not — and have never been — passive investors in Veoh. They sought and obtained control far in excess of the degree of involvement and control that shareholders would typically obtain . . . ." FAC ¶ 5. To buttress these conclusory allegations, the FAC later goes into some detail about how the Investor Defendants allegedly exercised this operational control. Given that this motion is about the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

sufficiency of a pleading, the Court quotes these allegations at length:

> 30. . . . Starting in 2005, Veoh obtained a substantial investment from Shelter Capital, which allowed it to fund its basic operations . . . . To protect its investment and ensure that Veoh operated in the manner it desired, Shelter Capital sought and obtained two seats on Veoh's Board of Directors as a condition of its investment. Through its seats . . . Shelter Capital obtained and exercised substantial control over Veoh's operations, including decisions regarding key staffing and senior executive employment and decisions about content to be offered by Veoh and whether or not Veoh would employ the necessary filters to block copyrighted content from being uploaded to the Veoh site.
>
> 31. Subsequently, in early 2006, Veoh required a substantial infusion of cash in order to allow it to continue as a business. Much of this capital was provided through an additional investment by Shelter Capital, as well as new investments by Spark Capital and Tornante. As with Shelter Capital's initial investment, this further investment by Shelter Capital, Spark Capital and Tornante provided critical funding necessary for Veoh to continue its infringing operations. All three of these investors sought and obtained seats on Veoh's Board of Directors as a condition of their investments. Indeed, these three investors obtained three of the five seats on Veoh's Board of Directors, thus obtaining full control of Veoh's Board and of Veoh's operations. These investors used this control to make decisions regarding the selection and hiring of employees, including the CEO of Veoh, as well as decisions about which content would continue to be offered on Veoh and which would not. For example, these investors exercised their control to remove adult content but did not use their control over Veoh to remove copyrighted content, including Plaintiffs [sic] Copyrighted Sound Recordings and Copyrighted Musical Compositions. Instead, these investors decided to continue Veoh's infringing operations in order to attract users and advertising dollars to Veoh, and increase the value of their financial interests in Veoh.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

> 32. In 2007, Veoh still again required a sizable infusion of capital to continue its operations. More than $25 million was collectively provided by Shelter Capital, Spark Capital, [sic] Tornante, among other investors. Once again, Shelter Capital, Spark Capital, and Tornante used their sizable investments to obtain board seats and otherwise obtain and maintain operational control over all of Veoh's operations. These investors controlled all critical decisions regarding the content available on Veoh, including whether and how Veoh might implement any technology to identify and filter copyrighted content to prevent infringement on Veoh's site. Further, these investors evaluated and approved Veoh's launch of its VeohTV software client which facilitated further infringement. The investors, in using their control over Veoh's activities to protect and enhance the value of their investment, controlled decisions over how to monetize Veoh's business, including its substantial use of infringing content. The investors' control over Veoh was so pervasive and dominant that the in person meetings of the Board of Directors were not even held at Veoh's corporate offices, they were held at the offices of Shelter Capital.

FAC ¶¶ 30-32. In sum, the FAC alleges that the Investor Defendants used their seats on Veoh's Board to control, or substantially control, decisions about the content available on Veoh, the methods used to filter content, and the launch of software allegedly used for infringement.

## II.    LEGAL STANDARDS

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Thus, if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory, the complaint should not be dismissed. *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

Federal Rule of Civil Procedure 8(a)(2) requires

> only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" . . . While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

## III. ANALYSIS

All of the alleged causes of action against the Investor Defendants are theories of secondary liability that are premised on the allegations that Veoh and its users have directly infringed Plaintiffs' copyrighted works.[1]

### A. Contributory Copyright Infringement

---

[1] The Court is perplexed and disappointed that in their motion papers the Investor Defendants mischaracterized the allegations in the FAC about Veoh itself. The FAC unquestionably alleges — and adequately alleges — that Veoh is directly liable for copyright infringement. The Investor Defendants argue otherwise, but they are plainly wrong in this respect.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

The first allegation against the Investor Defendants is that they are liable for contributory copyright infringement. To be liable for contributory copyright, the defendant must have knowledge or reason to have knowledge of direct infringement and must provide material assistance to the infringer. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-22 (9th Cir. 2001) ("Traditionally, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'" (citation omitted)). The FAC alleges that the Investor Defendants had actual knowledge of direct infringement, but does not sufficiently allege that they gave material assistance in achieving it.

The FAC alleges that the Investor Defendants sought and obtained control of Veoh "knowing full well that the site displayed and distributed copyrighted works without appropriate licenses, and knowing full well that Veoh's users used Veoh to engage in massive copyright infringement." FAC ¶ 5.

As to whether the Investor Defendants gave material or substantial assistance in achieving the alleged infringement, the Court is mindful of its obligation to construe the pleadings in the light most favorable to UMG, the nonmoving party. But the following analysis demonstrates how deficient are the specific allegations that UMG relies on for pleading significant involvement of the Investor Defendants in Veoh's alleged infringement.[2]

As to paragraph 30, Shelter's two seats did not constitute actual control . . . hence the qualifier "substantial." Moreover, membership on a Board of Directors necessarily and inherently entails making almost all these "decisions." To allow for derivative copyright liability merely because of such membership could invite expansion of potential shareholder liability for corporate conduct, without meaningful limitation.

---

[2] That the Court allowed the FAC to be filed does not, of course, mean that the Court found that these allegations passed muster. The Court's August 22, 2008 order construed and applied the standards of Federal Rule of Civil Procedure 15. The Court specifically alerted the parties that "[t]o test the validity of these claims in a more appropriate manner, the investor defendants may file a motion under Fed. R. Civ. P. 12(b)(6)" — which is what they have done.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

As to paragraph 31, the same concerns as to paragraph 30 apply here. Merely exercising ownership power to select members for a Board of Directors cannot invite derivative liability for infringement. Nor is there a common law duty for investors (even ones who collectively control the Board) "to remove copyrighted content," in light of the DMCA. Similarly, the mere objective of increasing the value of ownership is neither invidious nor a sufficiently "direct" benefit within the meaning or context of derivative liability for infringement.

As to paragraph 32, these descriptions of how the Investor Defendants exercised control are the equivalent of "plain vanilla" characterizations of what directors ordinarily do . . . and are expected to do. That meetings allegedly were held at one shareholder's offices reveals absolutely nothing about either control (given that the meetings were held at Shelter's offices, would that demonstrate that Tornante and Spark *lacked* control?) or culpable conduct.

Plaintiff relies on *UMG Recordings, Inc. v. Bertelsmann AG, et al.*, 222 F.R.D. 408 (N.D. Cal. 2004) as precedential support for the adequacy of the FAC. That case is distinguishable in several important respects. There, Plaintiff Lieber's complaint contained the following concrete allegations, absent here:

- Bertelsmann was Napster's "only available source of funding . . ."

- Napster had already been found to engage in infringing conduct and Bertelsmann "deliberat[ed] whether to shut the Napster service until it could be operated in a non-infringing manner" but decided "to keep the *infringing* Napster service in operation to preserve the Napster customer base."

- Senior Bertelsmann management (not merely any Bertelsmann-designated director[s]) directed Napster to proceeding accordingly.

*Id.* at 412-13 (emphasis in original). In addition, UMG's complaint stated that Napster had already been found to engage in infringing conduct, unlike Veoh, which thus far has avoided a finding of liability.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

In *Bertelsmann*, Judge Patel noted that UMG's complaint against Hummer Winblad not only echoed the other plaintiffs' allegations that Napster was under Bertelsmann's "firm control" and that Napster had been infringing for almost two years, but that "Hummer Winblad had full knowledge of . . . all [these] facts . . . when it made its decision to acquire and control Napster, and during its operation of Napster." *Id.* at 413.

Moreover, as the Investor Defendants point out, Judge Patel recognized another feature of the complaints in *Bertelsmann* that is absent here: the corporate owners of Napster were alleged to have caused Napster to engage in infringing conduct independently of each other (albeit, evidently in parallel ways). *Id.* Here, in contrast, UMG's allegations of "control" are based on the implied (but not sufficiently alleged) premise that the Investor Defendants agreed with each other to "operate" Veoh jointly, that their three director-designees were mere puppets who always voted pursuant to a master plan that the investors had devised, and that these director-puppets actually administered Veoh, bypassing whoever constituted "management."

Finally, Judge Patel upheld the complaints in *Bertelsmann* because she was able to conclude that the plaintiffs had stated more than a conclusory allegation that the corporate investors had allowed directly infringing conduct to take place: "more than merely *knowing of* and *contributing to* the infringing activity, they are alleged to have specifically *ordered* that such activity take place." *Id.* (emphasis in original). For the foregoing reasons, then, *Bertelsmann* does not warrant denying this motion.

Plaintiff also cites *Broadcast Music, Inc. v. Hartmarx Corp.*, No. 88-C-2856, 1988 WL 128691 (N.D. Ill. Nov. 17, 1988). That case also is weak precedent. To start with, the court there treated the motion to dismiss as a summary judgment motion and thereupon took into account a range of "facts" reflected in affidavits that had been filed. Moreover, that case preceded the meaningful advent of the Internet; its twenty-plus year old analysis has precious little bearing here, and this court finds it unpersuasive.

### B. Vicarious Copyright Infringement

A party may be vicariously liable if it has the right and ability to supervise the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

infringing activity, and has a direct financial interest in the infringing activities. *Napster*, 239 F.3d at 1022.

The Court will not address whether the FAC sufficiently alleges that the Investor Defendants have the right and ability to supervise Veoh's directly infringing conduct, because the Court finds that the FAC's allegations do not establish that the Investor Defendants have a direct financial interest in these allegedly infringing activities. The only binding authority Plaintiffs cite in support of this element of their vicarious liability claim is the Ninth Circuit case *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996). *Fonovisa* is of little support to UMG. In that case, the defendant operated a flea market attended by vendors who sold infringing goods. The Ninth Circuit found that,

> The plaintiff's allegations encompass many substantive benefits to Cherry Auction from the infringing sales. These include the payment of a daily rental fee by each of the infringing vendors; a direct payment to Cherry Auction by each customer in the form of an admission fee, and incidental payments for parking, food and other services by customers seeking to purchase infringing recordings.

*Id.* at 263. The Ninth Circuit concluded that all of this revenue "flow[s] directly from customers who want to buy the counterfeit recordings at bargain basement prices." *Id.* Its conclusion was supported by the fact that "[i]n this case, the sale of pirated recordings at the . . . swap meet is a 'draw' for customers" who paid the above-described fees and incidental payments. *Id*.

In other cases where the Ninth Circuit considered whether defendants received a direct financial benefit because of the "draw" of infringing content, the defendant allegedly enjoyed a financial benefit that consumers paid to the defendant. For example, in *Ellison v. Robertson* the Ninth Circuit suggested that if the plaintiff had presented evidence that an internet service provider attracted users who subscribed to its service in order to access infringing content (or that the service lost subscribers because it obstructed infringement), the court may have found a direct financial benefit from infringement. 357 F.3d 1072, 1078-79 (9th Cir. 2004). Similarly, in *A & M Records v. Napster*, the Ninth Circuit's holding depended on the finding that "[a]mple evidence

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

supports the district court's finding that Napster's future revenue is directly dependent upon 'increases in userbase.' More users register with the Napster system as the 'quality and quantity of available music increases.'" 239 F.3d at 1023. Although the Ninth Circuit did not specify which of the district court's findings were relevant, the district court had found that Napster's "potential revenue sources included targeted email; advertising; commissions from links to commercial websites; direct marketing of CDs, Napster products, and CD burners and rippers. . . . Defendant may also begin to charge fees for a premium or commercial version of its software." *A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 902 (N.D. Cal. 2000), *overruled on other grounds by* 239 F.3d 1004 (9th Cir. 2001).

In this case, unlike *Fonovisa, Ellison,* and *Napster*, the alleged financial benefit that the Investor Defendants might some day enjoy will not come directly from Veoh's users or from Veoh's advertisers. Rather, the FAC alleges that the alleged infringement "continue[d] to attract users and advertising dollars to Veoh, and increase[d] the value of [the Investors Defendants'] financial interests in Veoh." FAC ¶ 31. The FAC does not allege that the investors received, or will receive, fees paid by customers or even by advertisers. Nor does the FAC allege that Veoh has paid or will pay any dividend or distribution to the Investor Defendants. It only alleges that "each will profit from their investments through the sale of Veoh to a potential acquiring company or through a public offering." FAC ¶ 16. That financial benefit is too far removed from the alleged infringement to be considered a "direct" financial interest.

### C. Inducement to Infringe Copyright

Inducement to infringe copyright requires distribution of a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement. *Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 936-37 (2005).

The Court finds that the FAC does not contain allegations that the Investor Defendants encouraged infringement by Veoh or by Veoh's users in connection with the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

use or "distribution" of Veoh's service.[3] For example, the FAC does not allege that the Investor Defendants encouraged any users to infringe, thereby distinguishing this case from *Grokster*. Nor does the FAC specifically allege that the Investor Defendants encouraged Veoh to infringe directly; whether transcoding, "chunking," or allowing downloads and uploads of infringing videos actually is infringing conduct has yet to be determined.

## IV. CONCLUSION

For the reasons explained above the Court GRANTS the Investor Defendants' motion to dismiss.[4] The Court does so "without prejudice" — with this caveat: Although Plaintiffs may file a Second Amended Complaint, they should reflect carefully what is likely to result if they do so. The Court's existing scheduling requirements and the near-certain additional costs and complications that will flow from attempting to go after deep pockets whose potential liability could entail vexing issues of corporate governance caution that "less may be more."

If Plaintiffs wish to file a Second Amended Complaint they must do so on or before February 23, 2009.

This order is not intended for publication.

:
Initials of Preparer     se

---

[3] The parties dispute whether the Investor Defendants can be liable given that they did not "distribute" a device. The Court need not resolve this dispute because it finds that the Investor Defendants did not promote the use of Veoh's services to infringe copyrights.

[4] Docket No. 174.