Re: Docket No. 324

1  Steven A. Marenberg (101033) (smarenberg@irell.com)
   Elliot Brown (150802) (ebrown@irell.com)
2  Brian Ledahl (186579) (bledahl@irell.com)
   Benjamin Glatstein (242034) (bglatstein@irell.com)
3  IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile: (310) 203-7199

6  Attorneys for Plaintiffs

7  ADDITIONAL COUNSEL LISTED
   ON SIGNATURE PAGE
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12 UMG RECORDINGS, INC., *et al.*,      ) **Case No. CV-07-05744 AHM (AJWx)**
                                         )
13              Plaintiffs,              ) **JOINT STIPULATION UNDER**
                                         ) **LOCAL RULE 37-2 REGARDING**
14                                       ) **UMG RECORDINGS, INC.'S**
                                         ) **MOTION FOR SANCTIONS AND**
15      v.                               ) **TO COMPEL VEOH TO PRODUCE**
                                         ) **ITS AUDIBLE MAGIC METADATA**
16                                       )
   VEOH NETWORKS, INC., *et al.*,        ) **Filed Concurrently Herewith:**
17                                       )    1. **Notice of Motion;**
              Defendant.                 )    2. **Declaration of Brian Ledahl**
18                                       )       **(UNDER SEAL);**
                                         )    3. **[Proposed] Order;**
19                                       )
                                         ) Magistrate: Hon. Andrew J. Wistrich
20                                       )
                                         ) Date:        March 30, 2009
21                                       ) Time:        10:00 a.m.
                                         ) Courtroom:   690
22                                       )
                                         ) Discovery Cutoff: April 13, 2009
23                                       ) Pretrial Conference: July 13, 2009
                                         ) Trial Date: July 29, 2009
24
25
26
27
28

1989520

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I. INTRODUCTORY STATEMENTS .............................................................. 2

   A. UMG's Introductory Statement .................................................. 2

   B. Veoh's Introductory Statement .................................................. 5

II. VEOH MUST PRODUCE ITS AUDIBLE MAGIC METADATA ............................................................................... 6

   A. UMG's Contentions and Points of Authorities .................................... 6

      1. Background .............................................................. 6

      2. Veoh Was Obligated to Retain the Audible Magic Metadata ............................................................... 13

      3. Sanctions Are Appropriate Under the Circumstances .............. 16

      4. Conclusion .............................................................. 26

   B. Veoh's Contentions and Points of Authorities ................................... 26

      1. Background .............................................................. 26

      2. There Is No Obligation To Retain All Data Processed in RAM Absent a Court Order ............................... 33

      3. Sanctions (Against Veoh) Are Not Warranted ....................... 34

      4. UMG Is Attempting to Unilaterally and Unreasonably Extend Its Deadline To Identify Alleged Infringements ................................................. 35

      5. Conclusion .............................................................. 36

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37-2 of the Local Rules of this Court, Plaintiffs (collectively "UMG") and Defendant Veoh Networks, Inc. ("Veoh") respectfully submit the following Joint Stipulation Regarding UMG's Motion for Sanctions and to Compel Veoh To Produce Its Audible Magic Metadata. The parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court.

## I. INTRODUCTORY STATEMENTS

### A. UMG's Introductory Statement

After this lawsuit was already underway, Veoh began using a software program called Audible Magic which examines the soundtrack of videos and then identifies videos whose soundtracks contain copyrighted works, such as the copyrighted works owned or controlled by UMG. For any soundtrack to a video which Audible Magic recognizes as containing a copyrighted work, Audible Magic provides a variety of information about the copyrighted work at issue, such as the name of the copyrighted work (*e.g.*, a song title), the associated album name, and the associated artist name. For example, if a Veoh user uploads a video containing the sound recording for the work "Fergalicious" by the artist "Fergie," Audible Magic will flag the video as containing the song "Fergalicious," from the album "The Duchess," by the performing artist Fergie, as well as other information.

As the Court is well aware, one of the issues in this case is the identification of the infringing videos displayed, reproduced, performed, and distributed through Veoh. As Veoh has stated previously, its system has more than 1 million videos. And as Veoh has asserted repeatedly, it expects UMG to identify all videos on its system that are claimed to infringe a UMG copyright. UMG has already identified more than 1,500 infringing videos on Veoh's system, but anticipates that there are many, many more. The copyrights at issue are for sound recordings and musical compositions – i.e., copyrighted songs. As discussed above, the Audible Magic technology provided Veoh with the actual identification of copyrighted songs found

in videos on the Veoh system. Instead of having to watch each video, this data specifically identifies the copyrighted works found in specific videos. This data is obviously a critical tool in identifying the infringing videos.

Because of its obvious relevance, UMG began seeking data about Veoh's videos – including any Audible Magic data – since it commenced suit. Indeed, when UMG served its Complaint in this action to Veoh, it put Veoh on notice that it should retain "[a]ll documents concerning the removal of UMG videos from Veoh.com[.]" Approximately one month after UMG filed suit, Veoh began using the Audible Magic filter on its system. Veoh did not reveal this fact to UMG until some months later when a witness testified about it in deposition. Veoh chose to structure its system to delete the vast majority of the data Audible Magic sent to Veoh about potentially infringing works on Veoh's system.

Unaware that Veoh had been deleting its Audible Magic metadata, UMG sought Veoh's Audible Magic metadata through formal Requests for Production, met and conferred with Veoh about this metadata (and other discovery issues) in April and May 2008, and moved to compel its production in July 2008. UMG explained the importance of this information to the Court during the August 25 hearing on UMG's Motion to Compel, to wit, that the data would be relevant to identifying infringing works on Veoh's site, among other things. The Court then ordered Veoh to produce its video data. Despite agreeing three times (once in writing and twice in open Court) to produce "all" the metadata associated with its videos, Veoh did not. Indeed, it did not do so even after it was ordered to produce its metadata.

Finally, more than a year after UMG initiated suit and approximately one year after it installed the Audible Magic filter, Veoh disclosed in October 2008 that it was neither retaining the Audible Magic metadata, nor did it have any intention of doing so in the future. The Court has already ruled that Veoh cannot continue to delete this information and issued a Preservation Order on November 18. *See* Nov.

18, 2008 Order (Dkt. #217) ("The obligation to retain and produce the additional metadata fields begins immediately and ends with the dismissal or entry of final judgment in this case…").

Veoh's failure to retain this information despite being on notice that UMG was seeking it constitutes "spoliation of documents as a matter of law." *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002). Accordingly, a sanction is appropriate. Here, UMG seeks a simple and equitable remedy: Veoh should re-submit its videos to Audible Magic to recreate the data which Veoh has destroyed. Doing so would put UMG in the position it would have been in but for Veoh's wrongful spoliation.

In fact, Veoh already once agreed to recreate the data it destroyed. In early January, UMG served Veoh with a version of the present Joint Stipulation seeking sanctions against Veoh for its willful destruction of evidence. To avert UMG's Motion for Sanctions, Veoh agreed to recreate (at Veoh's cost) the Audible Magic evidence it had destroyed and to stipulate that UMG could amend its list of infringed works-in-suit after having a reasonable opportunity for review. Veoh's promises proved empty. Veoh both failed to recreate the Audible Magic metadata and then reneged on its agreement to stipulate to allow UMG to amend its list of infringed works-in-suit.

Veoh should be ordered to recreate the evidence it destroyed, and UMG should be allowed a reasonable opportunity after production of the Audible Magic data to supplement its list of infringing videos. To the extent that such data cannot be recreated for any videos, UMG requests an evidentiary sanction of a rebuttable presumption that the Audible Magic metadata for each such video identified the video as a copyrighted work owned or controlled by UMG. Finally, Veoh should be ordered to pay UMG's costs and attorneys' fees associated with UMG's efforts to remedy Veoh's spoliation as an appropriate sanction for Veoh's improper spoliation of evidence.

## B.     Veoh's Introductory Statement

Veoh provides a brief opposition to this motion because the key issue raised by UMG has already been resolved.  In an effort to resolve this dispute, Veoh paid Audible Magic to re-process the videos that were initially identified by the Audible Magic database, and provided UMG with all of the data it seeks with this motion on February 26, 2009.  UMG does not dispute this fact, but nonetheless chose to proceed with this motion because it refused to negotiate with Veoh a reasonable time within which to supplement its identification of allegedly infringing works.[1]

As to UMG's contention that Veoh "chose to structure its system to delete the vast majority of Audible Magic data," and its premise that Veoh had a legal obligation to log the Audible Magic data from the beginning, both are simply false.

Veoh has made every effort to resolve this dispute, incurring significant cost to re-create the Audible Magic data requested by UMG, and offering a reasonable extension for UMG to identify additional alleged infringements.  UMG, on the other hand, has taken unreasonable positions and made no effort to reach compromise. Veoh respectfully requests that the Court deny UMG's motion.

---

[1] In this motion, UMG (repeatedly) falsely states that Veoh agreed to extend this Court's January 16, 2009 deadline for UMG to identify infringing works.  UMG cites to no correspondence, or even any specific conversation, during which such agreement was purportedly made, because there was no such agreement.  In an effort to resolve this dispute without the further delay created by motion practice, Veoh offered to stipulate to allow UMG another week to identify alleged infringements once the data at issue in this motion was received by UMG.  UMG rejected this offer, insisting that it needed thirty additional days, despite the fact that fact discovery closes in just over a month, on April 13, 2009.

## II. VEOH MUST PRODUCE ITS AUDIBLE MAGIC METADATA

### A. UMG's Contentions and Points of Authorities

#### 1. Background

##### a. <u>Veoh installed the Audible Magic filter after the parties commenced litigation.</u>

Veoh filed suit against UMG in the Southern District of California on August 9, 2007.[2] UMG filed the current suit against Veoh on September 4, 2007. When UMG served Veoh with its Complaint, it also hand-delivered a letter reminding Veoh of its obligation to retain, among other things, "All documents concerning the removal of UMG videos from Veoh.com[.]" Ledahl Decl. Ex. G (Sept. 4, 2007 Letter from S. Marenberg to S. Mitgang and D. Shapiro).

In October 2007 – *after* Veoh had sued UMG, *after* UMG had sued Veoh, and *after* UMG had requested that Veoh retain "All documents concerning the removal of UMG videos from Veoh.com" – Veoh signed a contract with Audible Magic, a company which provides digital fingerprinting services. *See* Ledahl Decl. Ex. H (VN000094133) (Contract between Veoh and Audible Magic). As UMG has explained, the Audible Magic filter examines the soundtrack to a video to determine whether that soundtrack incorporates certain copyrighted works. *See generally* UMG *Ex Parte* App. For Order Requiring Veoh To Retain Evidence (Dkt. #190).

According to Veoh's Rule 30(b)(6) deposition testimony, Audible Magic returns "dozens" of metadata fields to Veoh whenever a Veoh video is a positive "hit" against a known copyrighted work in Audible's database. Specifically, Veoh's designee, Mr. Joseph Papa, testified that if a video matches against the Audible Magic database, Audible will "return a variety of metadata from their database." Ledahl Decl. Ex. I (July 10, 2008 Papa Depo.) at 90:6-7. Mr. Papa further explained

---

[2] Judge Whelan of the Southern District of California dismissed Veoh's Declaratory Judgment Complaint, concluding that it was "tactical," and was likely "more a bargaining chip than a sincere prayer for relief." *Veoh Networks, Inc. v. UMG Recordings, Inc., et al.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007).

that the data generated by Audible Magic "is recorded in [Veoh's] database associated with the video," *id.* at 90:12-14, and that when a video matches (or "hits") against a copyrighted work in Audible Magic's database, Audible returns "a variety of metadata fields, you know, probably dozens," *id.* at 91:18-19. Indeed, UMG later discovered that under the agreement between Veoh and Audible Magic, Audible was obligated to provide various metadata to Veoh if Audible's filter identified a video containing a copyrighted work. *See* Ledahl Decl. Ex. H (VN000094133) (Contract between Veoh and Audible Magic) at p. 23 (Exhibit C to Audible Magic agreement). Specifically, Audible had agreed to provide, the "Track title," "Artist name," "Album title," "Track title," "Releasing Label," "International Standard Recording Code," and "Source catalog number," among others. *See id.* at p. 23 (Exhibit C to Agreement).

Examples of the metadata generated by Audible Magic are attached to the Ledahl Declaration as Exhibit 8. *See also* Ledahl Decl. ¶ 8. For example, the Audible Magic metadata shows that a video uploaded to Veoh contained the sound recording for the work "You're Crashing, But You're No Wave," by the artist Fall Out Boy, on the album "Infinity on High." *See id.* (Excel spreadsheet entry 153). Unbeknownst to UMG (and as is discussed below), Veoh did not retain significant portions of the information received from Audible Magic, including information identifying the song title, artist, and album for works flagged by the Audible Magic software. *See also* Ledahl Decl. Ex. H (VN000094133) (Contract between Veoh and Audible Magic) at p. 23 (Exhibit C to Audible Magic agreement) (listing metadata Audible would provide to Veoh).

1989520

1     **b.**  <u>UMG requested Veoh's Audible Magic metadata and then</u>

2     <u>moved to compel its production.</u>

3   On January 17, 2008, UMG served Veoh with its First Set of Requests for

4 Production of Documents and Things.[3] Ledahl Decl. Ex. L (UMG's First Set of

5 RFPs). Among the documents sought were "All Video Files formerly, but no

6 longer, Available on Veoh Software that may contain a UMG copyright." *See id.* at

7 RFP No. 98. UMG explicitly defined "Video Files" to include both a video and its

8 associated metadata. *See id.* at Definition O. UMG also sought "All documents

9 relating to any use by Veoh Software of any 'filter' or 'media identification service,'

10 including but not limited to Audible Magic…" *See id.* at RFP No. 16.

11   UMG met and conferred with Veoh regarding its First Set of Requests for

12 Production in April and May 2008, and the parties discussed (in the words of

13 opposing counsel) the "production of metadata and video files." Ledahl Decl. ¶ 16

14 & Ex. S (June 13, 2008 Letter from J. Golinveaux to B. Ledahl). Veoh resisted

15 production of its videos and metadata, and UMG moved to compel Veoh to produce

16 its videos and metadata, including the metadata associated with videos "formerly,

17 but no longer," available through Veoh. *See* UMG Motion to Compel (Dkt. #87) at

18 Section VI ("Video Files and Related Data"). In opposition to UMG's Motion to

19 Compel, Veoh offered to produce a metadata spreadsheet, which it represented in

20 writing to the Court would "provide[] UMG with all of the requested data." *Id.* at p.

21 58 (capitalization altered). Again, unbeknownst to UMG, at the time Veoh agreed

22 to "provide UMG with all of the requested data," it was actively deleting almost all

23 video metadata generated by the Audible Magic filter.

24   During the August 25, 2008, hearing on UMG's Motion to Compel, UMG

25 explained the importance of Veoh's metadata (specifically including its Audible

26

27      [3] At that time, Veoh objected that the requests were premature because Veoh

28 had not yet agreed to schedule a Rule 26(f) conference of counsel. The parties later
agreed that the requests would be deemed served as of the date of the conference.

Magic metadata) in identifying the works at issue in this suit.  For example, in the context of a discussion about the identification of infringing works on Veoh's website, counsel for UMG stated that:

> [M]ore recently defendants [i.e., Veoh] have begun … using a filtering technology [i.e., Audible Magic].  I don't know enough yet about how they've applied that. … That may help if they have all the data from that process.  I know in prior cases that was very helpful data to us. We still need to be able to access the videos but that at least starts us down the road.

Ledahl Decl. Ex. M (Aug. 25, 2008 Hearing Tr.) at 50:23-51:7.

During that same hearing, Veoh reiterated its position that it need not produce its videos because it could instead produce a spreadsheet "that would have <u>all the metadata</u>" for its videos.  Ledahl Decl. Ex. M (Aug. 25, 2008 Hearing Tr.) at 43:14-15 (emphasis added); *see also id.* at 54:24 (representing that it would produce  "<u>all the metadata</u> for each video") (emphasis added).  Again, unbeknownst to UMG, Veoh had not been retaining the "data from that [filtering] process" that UMG explicitly mentioned; Veoh was instead deleting it.

### c. <u>Despite agreeing to produce its metadata, Veoh did not do so.</u>

The Court ordered Veoh to produce its metadata spreadsheet by September 5. *See* Ledahl Decl. Ex. M (Aug. 25, 2008 Hearing Tr.) at 58:8-12.  On the September 5 deadline, Veoh produced only part of the metadata it represented it would produce.  Most notably, Veoh did not produce *any* of its Audible Magic metadata. *See* Ledahl Decl. Ex. N (Oct. 3, 2008 Letter from J. Golinveaux to B. Ledahl) (explaining that Veoh had not produced its Audible Magic metadata spreadsheet). Veoh claimed that it was not obligated to produce that metadata because it stored that information in a different place on its computer system from other video metadata.  *See id.*  Although UMG specifically requested all Audible Magic data

once again, Veoh maintained silence about the fact that much of this data had been deleted and that Veoh continued to delete that information on an ongoing basis. Veoh engaged in these acts with the apparent involvement of Veoh's outside counsel (Winston & Strawn) in setting up the Audible Magic system. Veoh's privilege log lists a number of communications with Veoh's outside counsel "discussing Audible Magic" as early as September 2007 – before Veoh even signed its contract with Audible Magic, let alone before Veoh implemented the filter. Ledahl Decl. Ex. O (Veoh privilege log showing document number 2392). Veoh's privilege log lists many further communications between Veoh and its outside counsel "discussing Audible Magic" during the time when Veoh was implementing the Audible Magic system in October 2007 (*e.g.*, *id.* at Nos. 4563 (Oct. 4, 2007), 370 (Oct. 12, 2007)) and November 2007 (*e.g.*, *id.* at Nos. 337 (Nov. 20, 2007), 355-64 (Nov. 29, 2007), 440-447 (Nov. 20, 2007), 1815-16 (Nov. 30, 2007)).

After repeated requests, Veoh agreed to produce its Audible Magic metadata. Ledahl Decl. Ex. C (Oct. 7, 2008 Letter from B. Glatstein to J. Golinveaux); Ex. P (Oct. 8, 2008 Letter from J. Golinveaux to B. Glatstein). What Veoh actually produced, however, was only a portion of the metadata actually received from Audible Magic. Examples of the metadata Veoh produced are attached to the Ledahl Declaration as Exhibit J. *See also* Ledahl Decl. Ex. J. They lack the vast majority of the relevant information included in Audible Magic's production of the metadata. For example, the Veoh production lacks information on the song title, recording artist, album, and similar information that is generated by Audible Magic. *Compare* Ledahl Decl. Ex. J (Veoh's production of Audible Magic metadata), *with* Ex. K (Audible Magic's production of metadata).[4]

---

[4] While Audible Magic retained – and produced – metadata relating to Veoh, it was unable to produce metadata which identified the specific Veoh video to which it pertained (such as by a Veoh identification number). For example, UMG knows that the Audible Magic filter discovered an unauthorized copy of Fall Out Boy's "You're Crashing, But You're No Wave," but UMG has no way of knowing which of Veoh's million-plus videos contains that sound recording. Thus, UMG has no

Finally, after having sought this data *for more than a year*, UMG discovered that Veoh was destroying the majority of the metadata that it received from Audible Magic, and that Veoh would not agree to save that metadata. Ledahl Decl. Ex. Q (Oct. 22, 2008 Letter from J. Golinveaux to B. Ledahl). Counsel for Veoh expressed the view that the opinion in *Columbia Pictures v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007), excused Veoh's deletion of evidence. *Id.* at pp. 1-2 (citing *Columbia Pictures*). As the Court may recall, *Columbia Pictures* (which the Court cited in its November 18 Preservation Order) held that "data stored in RAM, however temporarily, is electronically stored information subject to discovery." *Id.* at 446.

        d.    <u>UMG sought and received a protective order relating to the Audible Magic metadata.</u>

UMG promptly moved *ex parte* for an Order Requiring Veoh to Retain Evidence. *See* Dkt. #190. The Court granted UMG's *ex parte* application on November 18. The Court explained that:

> Information - such as the metadata fields sought by UMG in this case - is not necessarily immunized from discovery merely because it is transitorily stored in RAM. <u>See California Pictures, Inc. v. Bunnell</u>, 245 F.R.D. 443, 446-448 (C.D. Cal. 2007). The additional metadata fields sought by UMG are relevant for purposes of Fed. R. Civ. P. 26(b)(1), and since Veoh is already selectively retaining and producing some of the metadata fields, requiring Veoh to retain and produce the additional metadata fields as well would not impose an undue burden.

Nov. 18, 2008 Court Order (Dkt. #217).

---

way of identifying this video within Veoh's system. In short, the evidence produced by Audible Magic containing the metadata generated with respect to Veoh is of limited utility.

In sum, the Court concluded (1) that Veoh's metadata was electronically-stored information subject to traditional rules of discovery; (2) that the metadata fields were relevant and discoverable information under Federal Rule 26(b)(1), and (3) there was no burden to Veoh in maintaining the additional metadata fields.

        e.    <u>On January 9, 2009, UMG served Veoh with a Motion To Compel The Production Of Audible Magic Metadata And For Sanctions.</u>

UMG provided Veoh with its portion of a Joint Stipulation re: Motion for Sanctions and to Compel Veoh to Produce Its Audible Magic Metadata, on January 9, 2009.[5]  Ledahl Decl. ¶ 17 & Ex. T.  After receiving UMG's portion of the Joint Stipulation, Veoh contacted UMG to request that UMG not file its Motion.  Ledahl Decl. ¶ 17.  Instead, Veoh agreed that it would recreate and produce – at its own expense – the evidence UMG sought, and that it would stipulate that UMG could supplement its list of infringing works after having a reasonable opportunity to review the metadata that Veoh had destroyed.   Ledahl Decl. ¶ 17.  Based on the representations from Veoh's counsel, UMG agreed to withdraw its Motion.  Ledahl Decl. ¶ 17.

Approximately one month later, Veoh still had not produced its metadata.  Counsel for UMG wrote to counsel for Veoh on February 4, approximately one month after it had originally served Veoh with UMG's portion of the Joint Stipulation.  Ledahl Decl. ¶ 18.  UMG explained that it could not tolerate further delay, and requested that by February 9, Veoh should "produce either the metadata or provide Veoh's portion of the Joint Stipulation regarding UMG's Motion for Sanctions."  Ledahl Decl. Ex. U.  Counsel for UMG conferred with counsel for

---

[5] Like this present Motion, that Motion sought sanctions for Veoh's failure to retain its Audible Magic metadata.  However, that version of the Motion also dispensed with Veoh's contention that UMG should pay to recreate the evidence Veoh had spoliated.  Veoh has subsequently agreed to pay to recreate the evidence it destroyed (though it has not actually done so).

Veoh on February 10, and counsel for Veoh again requested that UMG not proceed with its filing. Counsel for Veoh represented that UMG would receive the Audible Magic metadata by February 16. Ledahl Decl. ¶ 18.

Veoh did not produce the metadata by February 16 as its counsel represented. Ledahl Decl. ¶ 18. Instead, two days later, Veoh filed a Notice of Lodging of [Proposed] Order (Dkt. #305), in which Veoh stated that "[a]s the April 13, 2009 fact discovery deadline is nearing a close, Plaintiffs alleged infringements should be deemed complete once and for all." Dkt. #305 at 2:14–15. As UMG noted in its responsive Notice of Lodging (Dkt. #306), Veoh "now seeks to take advantage of its own misconduct [in destroying the Audible Magic metadata] by claiming to renege on its agreement that UMG would be permitted to supplement its identification of videos." Accordingly, UMG had no choice but to proceed with the present Motion for Sanctions in order to ensure (i) that it receives the Audible Magic metadata Veoh spoliated and then promised it would recreate, and (ii) that UMG is permitted to supplement its list of infringing works-in-suit so that it is not prejudiced by Veoh's willful destruction of evidence.

        2.     **Veoh Was Obligated to Retain the Audible Magic Metadata**

A party "engage[s] in spoliation *as a matter of law*" when it has "'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)) (emphasis added); *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed.") (internal quotation omitted). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001);

1 *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998) (upholding

2 sanction after disposal of evidence where a suit might be anticipated). Once a party

3 is on notice of the relevance of evidence – or even if it only "should have known"

4 that the evidence was relevant – the party has an affirmative preservation obligation.

5 S*tate of Idaho Potato Comm. v. G&T Terminal Packaging, Inc.*, 425 F.3d 708 (9th

6 Cir. 2005) (noting a duty to avoid intentional spoliation of evidence); *W.T.*

7 *Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal.

8 1984) (The duty to preserve extends to what the party "knows, or reasonably should

9 know, is relevant in the action, is reasonably calculated to lead to the discovery of

10 admissible evidence, is reasonably likely to be requested during discovery, and/or is

11 the subject of a pending discovery request.").

12     There is no dispute that the metadata provided by Audible Magic is relevant

13 evidence. It provides specific identifying information for the specific copyrighted

14 works contained in specific videos on Veoh's system. This information – i.e., the

15 artist name and song title – is precisely what Veoh argues UMG should provide in

16 order to identify the videos at issue in this case. And this is precisely the

17 information contained in the Audible Magic data Veoh destroyed. Veoh purportedly

18 ran the Audible Magic filter over all videos that had ever been displayed on its

19 system. This filter returned to Veoh an identification of each video that contained a

20 soundtrack incorporating a copyrighted sound recording registered with Audible

21 Magic. It also identified to Veoh such information as the title of the song contained

22 in each video and the artist who performed the song – that is, Audible provided to

23 Veoh (and Veoh promptly deleted) precisely the information Veoh contends UMG

24 is obligated to provide.

25     Even to the extent Veoh sought to dispute the relevance of this data, the

26 Court's November 18 Preservation Order resolved that dispute.[6] *See* Dkt. #217

27

28     [6] "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Federal Rule of

("The additional metadata fields sought by UMG are relevant for purposes of Fed. R. Civ. P. 26(b)(1)"). Nor can Veoh dispute that it was on notice of the need to retain this information. As discussed in Section 1, above, UMG repeatedly notified Veoh that this information was called for and sought it through formal discovery. *See* Ledahl Decl. Ex. G (Sept. 4, 2007 letter from S. Marenberg to S. Mitgang and D. Shapiro); Ex. L at No. 98 (UMG's First Set of Requests for Production); Ex. S (reflecting meet and confer discussions); Dkt. #87 (UMG's first Motion to Compel); Ex. M at 50:23-51:7 (Aug. 25, 2008 Hearing Tr.).

Veoh has no excuse for its failure to retain this evidence. The Court's November 18 Preservation Order makes clear that this evidence was relevant electronically-stored data the preservation of which entailed virtually no burden to Veoh. *See* Dkt. #217 ("The additional metadata fields sought by UMG are relevant for purposes of Fed. R. Civ. P. 26(b)(1)."). Indeed, Veoh essentially admitted fault in January when it agreed to recreate the metadata it destroyed in order to avert UMG's Motion for Sanctions. *See* Ledahl Decl. ¶ 17.

Veoh also cannot claim that its deletion of this information was merely some sort of standard business practice. Veoh adopted its practice of destroying Audible Magic's metadata *after* it sued UMG, *after* UMG sued Veoh, and *after* UMG put Veoh on notice that it should retain "All documents concerning the removal of UMG videos from Veoh.com[.]" Ledahl Decl. Ex. G (Sept. 4, 2007 Letter from S. Marenberg to S. Mitgang and D. Shapiro). *Cf. Kitsap Physicians Serv.*, 314 F.3d at 1001 (records destroyed in accordance with State and Federal regulations, as well as a document destruction policy established *before* litigation commenced). The Court need not even consider whether Veoh "should have known" that this evidence was relevant, since Veoh several times received *actual notice* that UMG was seeking this

Evidence 401; *see also Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (Federal Rule of Evidence 401 defines "relevant evidence," and noting that "[t]he Federal Rules of Evidence take a liberal approach in the admission of evidence" (citation omitted)).

1989520

evidence.  Moreover, counsel for Veoh was aware of the case *Columbia Pictures v. Bunnell*, which squarely held that data temporarily stored in RAM was discoverable electronic information (again, as recognized by the Court in its November 18 Preservation Order).  *See* Ledahl Decl. Ex. Q (Oct. 22, 2008 Letter from J. Golinveaux to B. Ledahl) (citing *Columbia Pictures v. Bunnell*).  Veoh therefore had knowledge that it was under a discovery obligation to save this data, but deliberately set up a system that – in the Court's words – only "selectively" saved certain data and deleted the rest.

### 3.    Sanctions Are Appropriate Under the Circumstances

Courts "apply a panoply of sanctions against spoliators, including those who prior to litigation or to discovery requests discard evidence they know or should know will be relevant or discoverable."[7] *Welsh v. U.S.*, 844 F.2d 1239, 1246 (6th Cir. 1988) (approving of evidentiary sanction) (citing, *inter alia*, *Struthers Patent Corp. v. Nestle Co.*, 558 F. Supp. 747, 763-66 (D. N. J. 1981)); *see e.g.*, *Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363 (9th Cir. 1992) (excluding testimony relating to destroyed evidence); *Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006) (upholding monetary sanction and dismissal of case with prejudice for spoliation of evidence); *Byrnie v. town of Cromwell, Bd. Of Ed.*, 243 F.3d 93, 107-111 (2d Cir. 2001) (evidentiary sanction); Robert E. Jones, *et al.*, California Practice Guide: Federal Civil Trials and Evidence, at § 8:400 (discussing sanctions for spoliation of evidence).[8] For

---

[7] Here, Veoh discarded the evidence *after* receiving discovery requests, making its conduct more improper.

[8] As above, this Court is "invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Unigard*, 982 F.2d at 368 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  Thus, the Ninth Circuit "has recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Id.* (quoting *Campbell Indus. V. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)).  Thus sanctions require only a finding of "willfulness or fault." *Id.* at n. 2 (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376,

example, in *Columbia Pictures v. Bunnell*, cited by the Court in its November 18 Preservation Order, the Court ultimately entered a terminating sanction due to the failure to retain relevant electronic data. *See Columbia Pictures v. Bunnell*, 2007 WL 4877701 (C.D. Cal. Dec. 13, 2007).

Here UMG seeks a narrow remedy for Veoh's spoliation. *First*, UMG seeks the re-creation of the evidence Veoh has destroyed. As noted above, Veoh has indicated that the Audible Magic metadata Veoh failed to retain can be recaptured. Veoh has asserted that UMG should pay to recreate the data Veoh improperly destroyed. UMG seeks to have that data recreated, at Veoh's expense. *Second*, to the extent that for any reason the Audible Magic data cannot be recreated for any given video, UMG seeks an evidentiary presumption that each such video contained a UMG copyrighted work. *Third*, UMG seeks leave to supplement its list of infringed works to include videos identified from the Audible Magic metadata. *Fourth*, UMG seeks a monetary sanction for the costs incurred by UMG in obtaining information that Veoh should never have destroyed.

a.    <u>Veoh has spoliated evidence.</u>

Veoh has not *just* failed to preserve evidence. Rather, it engaged in the willful and intentional spoliation of evidence. A party engages in "spoliation *as a matter of law*" where it has "'some notice that the documents [sought] were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d at 1001 (citing *Akiona*, 938 F.2d at 161). Put another way, "A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (emphasis in original; internal quotation removed).

---

380 (9th Cir. 1988)). *See also Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 824 (9th Cir.2002) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.").

Veoh had notice (many times over[9]) that UMG was seeking the Audible Magic metadata. Despite having received notice that this data was relevant, Veoh deliberately and intentionally implemented a system which only "selectively" retained certain data fields and destroyed others. Worse still, Veoh implemented this system *during the pendency of suit*. *Compare Kitsap Physicians Serv.*, 314 F.3d at 1001 (evidence destroyed pursuant to State and Federal regulations as well as *pre-existing* document retention policy), *with Leon*, 464 F.3d at 959 ("The district court concluded that Leon's behavior amounted to willful spoliation because he knew he was under a duty to preserve all data on the laptop, but intentionally deleted many files…"). Moreover, Veoh's privilege log suggests that its outside counsel was involved with setting up and implementing the Audible Magic system, yet apparently did nothing to see that the data which UMG had specifically and repeatedly requested was retained. *See, e.g.*, Ledahl Decl. Ex. O (Veoh privilege log) at Document Nos. Nos. 2932 (Sept. 26, 2007 communication with outside counsel "discussing Audible Magic"); 4563 (same, dated Oct. 4, 2007), 370 (same, dated Oct. 12, 2007), 337 (same, dated Nov. 20, 2007), 355-64 (same, dated Nov. 29, 2007), 440-447 (same dated Nov. 20, 2007), 1815-16 (same, dated Nov. 30, 2007)). Even after receiving additional notice that UMG was seeking this data, Veoh not only failed to take any steps to retain the data UMG was seeking, but kept

_____

[9] Veoh received written notice on September 4, 2007. Ledahl Decl. Ex. G. Veoh had further written notice on January 17, 2008, with the service of UMG's first set of Requests for production and it had further written notice in July 2008, when UMG filed its Motion to Compel (Dkt. #71). It had oral notice in April and May 2008, when UMG discussed the "production of metadata and video files" with Veoh in connection with UMG's First Set of Requests for Production, and again on August 25, 2008, when UMG discussed Veoh's filtering metadata at the hearing on UMG's Motion to Compel. It had further notice on September 26, 2008 (Ledahl Letter to Golinveaux, Ledahl Decl. Ex. B), and on October 7, 2008 (Glatstein Letter to Golinveaux, *id.* at Ex. C), and on October 16, 2008 (Ledahl Letter to Golinveaux, *id.* at Ex. D). Yet Veoh only admitted to its destruction of this material on October 20, 2008 (Golinveaux Letter to Ledahl).

1   silent about its ongoing deletion, causing the loss of more than a year's worth of

2   data.

3              b.      Veoh should be ordered recreate the data it destroyed or

4                      willfully failed to preserve.

5          Because Veoh has engaged in the willful and deliberate spoliation of data, a

6   sanction is appropriate. "The district courts' inherent power to sanction may be

7   invoked in response to destruction of evidence. If a party breaches its duty to

8   preserve evidence, the opposing party may move the court to sanction the party

9   destroying evidence." *UMG Recordings, Inc. v. Hummer Winblad Venture*

10  *Partners*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). As noted above, Courts

11  "apply a panoply of sanctions against spoliators, including those who prior to

12  litigation or to discovery requests discard evidence they know or should know will

13  be relevant or discoverable." *Welsh*, 844 F.2d at 1246 (approving of evidentiary

14  sanction) (citation omitted). *National Ass'n of Radiation Survivors*, 115 F.R.D. at

15  558-61 (imposing wide range of sanctions, including monetary sanctions,

16  evidentiary sanctions, appointment of special master, and requirement that discovery

17  responses by signed by General Counsel); *Cyntegra, Inc. v. Idexx Laboratories, Inc.*,

18  2007 WL 5193736, *1 (C.D. Cal. Sept. 21, 2007) ("The court has broad discretion

19  to fashion, on a case-by-case basis, an appropriate sanction for spoliation.") (citing

20  *Unigard*, 982 F.2d at 367).

21         Veoh agrees that it can recreate the data it has deleted by re-submitting its

22  video database to the Audible Magic software. By this process, the Audible Magic

23  software should return the same data that was initially returned when Veoh ran it,

24  but Veoh could now retain and produce the data, rather than destroying it. Veoh

25  previously agreed to recreate this data to avert UMG's Motion for Sanctions. But it

26  has not done so. Veoh's continuing failure to recreate this data is unreasonable for

27  several reasons.

28

First, it is *Veoh's* failure to retain the information which has prejudiced UMG and led to the destruction of relevant evidence. Thus, whether or not it is viewed as a sanction for its spoliation of evidence, Veoh should be ordered to produce the evidence at issue immediately and at its own expense. The fact that Veoh's own spoliation necessitated this motion underscores that Veoh, not UMG should bear the cost of recreating this evidence. It would be unreasonable to force UMG to shoulder the cost to put it back in the position it would have been in but for *Veoh's* wrongful deletion of evidence.

Second, *Veoh's* long delay in even revealing its ongoing destruction of evidence increased the damage and the cost to repairing it. This is a self-inflicted wound. Because it did not inform UMG that it was deleting Audible Magic metadata for more than a year, Veoh managed to destroy more than a year's worth of Audible Magic metadata that now needs to be recreated. Veoh said nothing about its destruction of evidence despite having received a preservation letter in September 2007, *see* Ledahl Decl. Ex. G, formal document requests in January 2008, Ex. L, a motion to compel the production of the data at issue in July 2008, Dkt. ##71, 87, and UMG's comments at the August 2008 discovery hearing, Ex. M (at 50:23-51:7). Had Veoh disclosed its failure to save this evidence sooner, the scope of evidence destroyed would have been significantly less. *See UMG Recordings, Inc. v. Hummer Winblad*, 462 F. Supp. 2d at 1078 (spoliating party "could have forestalled a great deal of time and effort by simply acknowledging early on that it was not preserving its internally generated [relevant] communications"). Veoh's role in driving up the cost of recreating the lost evidence is particularly significant given the direct involvement of Veoh's outside counsel in the implementation of the Audible Magic system. Quite simply, Veoh and its lawyers should have known better. Both the fact of and the extent of this problem

1989520

1  are Veoh's own making.  UMG should not be forced to foot the bill for Veoh's

2  mistakes.[10]

3          c.      An evidentiary sanction is appropriate for any data which

4                  cannot be recovered.

5          To the extent data cannot be recreated about any given video, this failure

6  should not be permitted to prejudice UMG.  Veoh is responsible for the destruction

7  of this information.  If, as Veoh suggests, all of the data can be recreated, then no

8  evidentiary sanction will be necessary.  If, however, some data is permanently lost,

9  evidentiary sanctions are appropriate.  "Where one party wrongfully denies another

10 the evidence necessary to establish a fact in dispute, the court must draw the

11 strongest allowable inferences in favor of the aggrieved party."  *National Ass'n of*

12 *Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987); *see also*

13 *Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1390 n. 9 (9th Cir. 1986)

14 ("[evidentiary] presumptions and sanctions available to punish those who alter or

15 destroy evidence").

16         Here, an appropriate evidentiary sanction would set a rebuttable presumption

17 that any video for which Audible Magic metadata could not be recreated contained a

18 UMG-owned copyrighted work.  Veoh has "precluded [UMG] from any opportunity

19 to inspect the evidence."  *Unigard*, 982 F.2d at 368-69 (upholding evidentiary

20 sanction against party that spoliated evidence as part of inherent powers of the

21 Court).  A rebuttable presumption that any missing metadata identified the video as

22

23         [10] UMG also requests that the Court order Veoh to designate the Audible
   Magic evidence as "Confidential" under the Protective Order (*see* Dkt. #150), rather
24 than using a higher tier of confidentiality.  The assistance of UMG's in-house legal
   staff (including in-house paralegals) will increase the speed and efficiency of
25 UMG's review of this data – and will therefore also allow UMG to more quickly
   complete its identification of infringing works.  Because Veoh has previously
26 designated its limited Audible Magic metadata as "Confidential," it should have no
   objection to this request.  But in an excess of caution, and to avoid taking still more
27 of the Court's time with this issue, UMG requests that Veoh be ordered to produce
   the Audible Magic data as "Confidential," as it has done previously.
28

containing a UMG–copyrighted work is an appropriate, narrow remedy which will prevent any unfair prejudice to UMG from Veoh's destruction of evidence relating to the infringing works at issue, and is in line with evidentiary sanctions in other cases following the spoliation of evidence. *See, e.g.*, *National Ass'n of Radiation Survivors*, 115 F.R.D. at 558-61 (imposing wide range of sanctions, including monetary sanctions, evidentiary sanctions, appointment of special master, and requirement that discovery responses by signed by General Counsel); *UMG Recordings, Inc. v. Hummer Winblad Venture Partners, et al.*, 462 F. Supp. 2d at 1066 (imposing evidentiary and monetary sanctions for failure to preserve evidence).

><ins>d.</ins>   <ins>UMG should be allowed to amend its list of infringed works-in-suit.</ins>

UMG sought Veoh's Audible Magic metadata since the beginning of this lawsuit. Had it been promptly produced, UMG could have included videos discovered through that metadata in its original list of infringed works. Instead, Veoh misrepresented its preservation of this data, necessitating several rounds of motion practice and repeated conferences of counsel. Finally, to avert UMG's Motion for Sanctions, Veoh agreed to stipulate that UMG should be allowed to amend its list of infringed works so that UMG would be not prejudiced by Veoh's failure to preserve and produce this evidence. Indeed, in the context of setting the deadline for UMG to identify the works-in-suit, the Court noted already that Veoh's failure to produce its metadata would be a reasonable basis to allow UMG to amend its list of infringed works-in-suit:

| **Mr. Marenberg**: | Once we get – we don't know when we'll be getting that data [i.e., the Audible Magic metadata]. We hope it will be quick but that's not something within our control. |
|---|---|
| **The Court**: | That might be a good reason for giving you additional time. … [M]aybe Veoh's counsel will see that there is a |

1   good reason, and they'll agree to extend the deadline.

2   That's fine with me.

3   Ledahl Decl. Ex. R (12/17/2008 Hearing Tr.) at 10:13–13:6.

4   But Veoh is apparently not amenable to allowing UMG to supplement its list

5   of infringed works, despite the Court's suggestion and Veoh's prior agreements.

6   Accordingly UMG requests that relief be ordered. It is Veoh's repeated delays,

7   Veoh's misrepresentations, Veoh's hollow promises, and Veoh's destruction of

8   evidence which have delayed UMG's ability to complete its identification of

9   infringed works. UMG should be not be prejudiced because of Veoh's improper

10  conduct.

11      e.      A monetary sanction is appropriate.

12  As noted above, monetary sanctions are frequently awarded following the

13  spoliation of evidence, especially where that spoliation is due to one party's willful,

14  bad faith conduct. "Under its 'inherent powers,' a district court may also award

15  sanctions in the form of attorneys' fees against a party or counsel who acts 'in bad

16  faith, vexatiously, wantonly, or for oppressive reasons.'" *IDX Systems Corp.*, 464

17  F.3d at 961 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648

18  (9th Cir. 1997) (awarding $65,000 in fees). *See also UMG Recordings v. Hummer*

19  *Winblad*, 462 F. Supp. 2d at 1078 (explaining that "Monetary sanctions may be

20  imposed where one party has wrongfully destroyed evidence," and awarding

21  attorneys' fees because the spoliating party "could have forestalled a great deal of

22  time and effort by simply acknowledging early on that it was not preserving its

23  internally generated [relevant] communications"); *National Ass'n of Radition*

24  *Survivors*, 115 F.R.D. at 558-59 (awarding monetary sanction equal to "all fees and

25  costs incurred in depositions, discovery, preparation, the hearing, and other matters

26  related to the bringing on of this motion for sanctions and of the plaintiffs' earlier

27  motions for temporary and permanent protective orders").

28

A similar sanction is appropriate here. Veoh received notice many times over that UMG was seeking (or would seek) its metadata, yet *during the pendency of litigation* created a system which deliberately deleted the very evidence UMG was seeking. Moreover, Veoh said nothing in the face of UMG's repeated requests for this data, and instead continued its improper deletion for more than a year. Veoh's spoliation has also resulted in a significant imposition on UMG (and, of course, on this Court's scarce resources), resulting in numerous letters and conferences of counsel,[11] three motions before this Court,[12] and has been the subject of discussion at oral argument twice before this Court.[13] To consider the expense to which UMG has been put in chasing down the data which Veoh destroyed, consider the following:

- UMG served formal document requests relating to this data in January 2008. Ledahl Decl. Ex. L.
- UMG met and conferred with Veoh about its "production of metadata and video files" in April and May 2008. <u>Ledahl Decl. ¶ 16 & Ex. S.</u>
- UMG moved to compel Veoh to produce its video files and metadata in July 2008. *See* Dkt. #71.
- UMG attended a discovery hearing in August 2008 where it discussed the production of Veoh's Audible Magic metadata.
- UMG reviewed and analyzed Veoh's production of "all" its metadata in September 2008 following the Court's Order that Veoh produce its metadata. *See* Ledahl Decl. Ex. B.

_____

[11] *See* Ledahl Decl. Exs. B, C, D, E, F, N, P, Q, & S.

[12] Specifically, UMG's first Motion to Compel (Dkt. #71), UMG's Motion for Preservation Order (Dkt. #190), and the present motion.

[13] Specifically, on August 25 and December 17. *See* Ledahl Decl. Ex. M (Aug. 25 Hearing Tr.) at 50:23-51:7; Ledahl Decl. Ex. R (Dec. 17 Hearing Tr.) at 10-12.

- UMG wrote additional letters to Veoh regarding Veoh's Audible Magic metadata. *See* Ledahl Decl. Exs. B, C, and D.
- UMG met and conferred multiple times with Veoh before Veoh admitted that it had been destroyed the Audible metadata. *See id.*
- UMG moved for a preservation order relating to this data in October 2008. *See* Dkt. #190.
- UMG met and conferred further with Veoh (and third-party Audible Magic) in the hopes of obtaining Veoh's metadata without Court intervention. *See* Ledahl Decl. Ex. F.
- UMG finally moved to compel Veoh to reproduce its metadata in early January. *See* Ledahl Decl. ¶ 19 & Ex. T.
- UMG then moved to compel again in the present motion after Veoh failed to live up to its representations.

Much, if not all of this effort, could have been avoided had Veoh either retained the documents UMG requested it retain (and which it was obligated to retain), had it disclosed its ongoing destruction when it commenced more than a year ago, or simply lived up to the agreement it made to avert UMG's first Motion for Sanctions. Veoh's continued concealment of its destruction of this evidence in the face of requests for the material and orders from the Court evidences its bad faith in this matter. As noted in the Ledahl Declaration, UMG's expenses relating to obtaining this evidence – through multiple meet and confer discussions, multiple rounds of motion practice, etc. – far exceed $20,000. Ledahl Decl. ¶ 19. A meaningful sanction is required to deter Veoh (and other litigants) from such improper conduct in the future. While UMG leaves the precise amount of an appropriate sanction for the Court's determination, UMG respectfully submits that it should receive some recompense for its costly pursuit of this highly relevant data which was wrongfully destroyed. As set forth in the Ledahl Declaration, UMG has

incurred significant costs that would have been largely, if not entirely, avoided had Veoh properly complied with its discovery obligations. *See* Ledahl Decl. ¶¶ 19-20.

### 4. Conclusion

Knowing that UMG was seeking a category of evidence, Veoh deliberately constructed a system which deleted that very evidence. This is a fundamental violation of Veoh's most basic discovery obligations. Accordingly, UMG requests that the Court (1) order Veoh to recreate the Audible Magic metadata it destroyed, (2) order Veoh to capture *all* the data generated by Audible Magic, and can produce it to UMG, (3) to the extent Veoh cannot recreate that data, UMG seeks an appropriate evidentiary sanction setting a rebuttable presumption that any missing data relates to a video in which UMG owns or controls a copyright, (4) considering that this motion is necessitated by Veoh's willful and intentional spoliation of evidence and its own delays in producing the evidence it agreed to produce, UMG seeks leave to amend its list of infringed works, and (5) UMG respectfully requests that in light of Veoh's gross misconduct, the Court award an appropriate monetary sanction.

### B. Veoh's Contentions and Points of Authorities

Although Veoh has already produced to UMG the Audible Magic data at issue in this motion, because UMG opted to pursue this motion, Veoh is obligated to respond to UMG's many highly misleading and factually and legally inaccurate contentions.

### 1. Background

#### a. Veoh's Use of The Audible Magic Filter

Veoh has been on the vanguard of inter-industry efforts to prevent copyright infringement, and utilizes cutting edge technologies to do so. As part of this effort, Veoh implemented Audible Magic—a filtering service that works by taking a fingerprint from videos files uploaded to Veoh, and matching it against Audible

Magic's database of copyrighted content, provided to Audible Magic by participating copyright owners. With Audible Magic's filtering system, if a user attempts to upload a video that matches against Audible Magic's database of copyrighted content, Veoh disables access to the video so that it is never available on Veoh's site. This filtering occurs even if Veoh has never received a DMCA notice regarding the video.

UMG's unsupported claim that "Veoh chose to structure its system to delete the vast majority of Audible Magic data" (Joint Stipulation at 3), is entirely false, and but one example of the many misrepresentations and highly inappropriate hyperbole with which UMG's portion of this joint stipulation is replete.

As the Court may recall from earlier briefing on this issue,[14] Audible Magic's filtering system works by returning certain bits of data, which fleetingly reside in the RAM of Veoh's computer systems. RAM is a form of temporary storage that every computer uses to process data. Declaration of Erin R. Ranahan ("Ranahan Decl.") ¶ 12 and Exh. 12 (Declaration of Joseph Papa in Opposition to UMG's *Ex Parte* Application for An Order Requiring Veoh to Retain Evidence, Docket 209 ("Papa Decl.") ¶ 5.) Audible Magic's system processes each new video that users attempt to upload to and make available on Veoh. When a new video is uploaded, a packet of data referred to as an "ID request package," is sent over the Internet from Veoh's servers to Audible Magic's content identification servers in the form of an encrypted XML[15] string. Veoh's servers then receive a response from Audible Magic's servers in the form of an XML Response package, which indicates whether the sample content was matched against Audible Magic's library of copyrighted content (in

---

[14] *See* Ranahan Decl., ¶ 11 and Exh. 11 (Veoh's Opposition to UMG's *Ex Parte* Application for an Order Requiring Veoh to retain evidence, Docket 207, pp. 2-3.)

[15] XML is a computer language in which data can be transmitted between applications and between organizations. *See* http://www.webopedia.com/TERM/X/XML.html; Ranahan Decl., ¶ 12 and Exh. 12 (Papa Decl., ¶ 3.)

which case Veoh does not allow the video to be published), and if it is matched, includes additional bits of data about the content. Veoh's servers receive the XML Response package and interpret and process that data, while it is stored in RAM. Ranahan Decl. ¶ 12 and Exh. 12 (Papa Decl., ¶ 4 and Exh. A (Excerpt from Audible Magic API Programmer's Overview).) The XML Response package exists only in RAM on Veoh's servers for the length of the time it takes for Veoh's servers to process that particular request, and until the next XML Response package is received, which may be a matter of seconds or less. Ranahan Decl. ¶ 12 and Exh. 12 (Papa Decl., ¶ 5).

When it implemented Audible Magic, Veoh did log certain of the data provided by Audible Magic, and produced that data to UMG months ago. Ranahan Decl. ¶ 13 and Exh. 13 (Declaration of Jennifer Golinveaux "Golinveaux Decl." filed in Support of Veoh's Opposition to UMG's *Ex Parte* Application for An Order Requiring Veoh to Retain Evidence, Docket 208, ¶ 3). Veoh made the decision to log these fields so that it could record in its video database whether a particular video was blocked by Audible Magic processing, the date that it was blocked, and the copyright claimant who had registered the work with Audible Magic. This last piece of information was logged so that Veoh could potentially contact the copyright claimant in the event that Veoh received a "counter-notice" from a user, claiming that the content was blocked in error. Veoh has historically not logged the rest of the various information that runs through its RAM as Audible Magic processes videos because such logging is not necessary to or part of Veoh's business operations. Ranahan Decl. ¶ 12 and Exh. 12 (Papa Decl., ¶ 6.) Veoh began logging additional Audible Magic data when the Court ordered Veoh to do so on November 18, 2008.[16] (Docket 217).

---

[16] *Columbia Pictures v. Bunnell*, 245 F.R.D. 443, 448 (C.D. Cal. 2007) (holding that obligation to preserve data stored in RAM does not begin until a court orders such preservation). *See also* Ranahan Decl., ¶ 11 and Exh. 11 (Veoh's Opposition to UMG's *Ex Parte* Application for an Order Requiring Veoh to retain evidence, Docket 207, pp. 7-9).

1989520

b. UMG Never Requested That Veoh Capture And Preserve
Audible Magic Server Data Processed in Veoh's RAM

Contrary to UMG's repeated assertion, UMG never requested that Veoh
capture and preserve Audible Magic data as it is processed in Veoh's RAM. The
first time Veoh UMG specifically requested Audible Magic logs at all was in a
request for production issued on September 26, 2008, which was followed shortly
by UMG's *Ex Parte* Application for An Order Requiring Veoh to Retain Evidence.
Ranahan Decl., ¶ 13 and Exh. 13 (Golinveaux Decl., ¶ 3 and Exh. B, Docket 208).

UMG's September 4, 2007 preservation request did not specifically request
that Veoh preserve data as it was processed in RAM. Ledahl Declaration, Exh. G.
That letter simply referenced Veoh's obligation to preserve documents "concerning
the removal of UMG videos from Veoh.com and the addition of UMG videos to
Veoh.com." UMG fails to point to any other preservation request which specifically
addresses data processed in RAM, because there was no such request.

UMG also claims that their document requests no. 98 addressed data
processed in RAM because it sought "All Video Files formerly, but no longer,
Available on Veoh Software that may contain a UMG copyright." Ledahl Decl.,
Exh. L (UMG's First Set of Requests for Production). UMG claims this request
called for Veoh to capture the XML Response package data from RAM as Audible
Magic processes a particular video, because UMG defined "Video File" to include
"both the files themselves as well as any and all associated metadata…" *Id.* at
Definition O. The full definition of "Video File" set forth in their document
requests, it reads in its entirety as follows:

The term "Video File" refers both to files themselves as well as any and all
associated metadata relating to, for example, the identity of the person who
made the work available on Veoh Software, the number of times the work
was played, the number of times the work was downloaded, the date the work

1 was removed, the reason the work was removed, and the identity of the party

2 who removed the work.

3 Ledahl Decl., Exh. L, p. 63.

4 Nowhere in this defined term (or anywhere else in UMG's document requests)

5 does UMG call for data processed in RAM. Moreover, the only portion of the

6 Audible Magic XML Response package data that contained *any* of the example

7 categories of data set forth in UMG's definition of "Video File," namely, the date the

8 work was removed, *was* logged by Veoh and provided to UMG.

9 UMG also claims that RFP 16 called for such data, which sought "All

10 documents relating to any use by Veoh Software of any "filter" or "media

11 identification service," including but not limited to Audible Magic, Auditude,

12 SNOCAP, or Gracenote." Such request makes no request for the superfluous RAM

13 data that Veoh had never used at all for any purpose.

14 UMG also misleadingly asserts that counsel for Veoh represented that Veoh

15 would produce the Audible Magic XML Response package data at the August 25,

16 2008 discovery hearing. That is of course not the case. Veoh's counsel never

17 represented that Veoh would begin capturing all data from Audible Magic

18 processing that existed fleetingly in Veoh's RAM. At the hearing, Veoh's counsel

19 explained to the Court that in response to UMG's document requests nos. 98 and 99

20 seeking all video files uploaded to Veoh, Veoh was prepared to produce a

21 spreadsheet that "would be organized by video with metadata for each video, which

22 would include, for example, the title that the user provided, any key words that the

23 user provided associated with that video so that they could do those kind of

24 electronic searches within the spreadsheet for whatever titles they might have

25 concern about. . . ." Ledahl Decl., Exh. M, at 54:10-16 (hearing transcript). Veoh

26 maintains a video database that included more than 100 fields of metadata that may

27 be populated for each video uploaded to Veoh. Ranahan Decl., ¶ 13 and Exh. 13

28 (Golinveaux Decl. filed in Support of Veoh's Opposition to UMG's *Ex Parte,*

Docket 208, ¶ 2 and Exh. A.)  Veoh has always been explicit that the spreadsheets it planned to produce to UMG would contain the video metadata maintained in that video database.  *See, e.g.,* Joint Stipulation Re UMG' Recordings, Inc.'s Motion to Compel Responses to Discovery Against Veoh Networks, Inc. at 59, Docket No. 78, filed July 21, 2008 ("Veoh offered to produce to UMG copies of spreadsheets populated from Veoh's video databases that would contain metadata regarding each video uploaded to Veoh (such as title, date of upload, current status of video, etc.)".)  Veoh produced the spreadsheets populated from the video database to UMG on September 5, 2008 in accordance with this Court's instructions at the August 25, 2008 hearing.  Neither Veoh nor its counsel has ever represented that Veoh would also began capturing data processed in RAM, UMG has never requested that Veoh capture data in RAM, and the Court had never ordered Veoh to do so until November 18, 2008.

UMG also tries to create the impression that Veoh did not comply with the Court's instructions at the August 25, 2008 hearing to produce its spreadsheet of videos and associated metadata by September 5, 2008, because Veoh produced its Audible Magic logs on October 14, 2008.  What UMG neglects to mention is that they only served a document request seeking the Audible Magic logs on September 26, 2008, and that in fact, Veoh produced the Audible Magic logs more than two weeks before its responses to that document request were due.  Ranahan Decl. ¶ 13 and Exh. 13 (Golinveaux Decl., ¶ 3 and Exh. B (UMG's Second Set of Requests for Production of Documents, including Req. No. 160 for "All of Your past and present Audible Magic Logs, in their native form.")).

           c.     <u>Veoh Produced to UMG The Data UMG Seeks With This Motion</u>

Veoh has undergone significant expense to recreate and provide to UMG the Audible Magic data sought by this motion.  Indeed, UMG knew before sending Veoh this joint stipulation that Veoh was providing all of the data sought by this

motion, and received all of the information sought by this motion before filing this motion. Nonetheless, UMG proceeded with this motion in an attempt to unilaterally obtain additional time to identify alleged infringements and delay this action.

With respect to recreating the data, Veoh requested that Audible Magic provide the data by February 17, 2009.[17] At UMG's request, Veoh asked Audible Magic to re-run the videos against both Audible Magic's "music" and its "submitted content" database for Veoh, a custom database that Audible Magic maintains for Veoh of videos to which Veoh has disabled access. When Veoh received the data from Audible Magic on February 16, 2009, however, Veoh noticed that many of the fields of metadata that UMG sought were blank for videos that were positive hits against the "submitted content" database. Veoh's counsel wrote to UMG's counsel explaining that certain of the fields received from Audible Magic were incomplete, and that Veoh was working with Audible Magic to resolve this issue.[18] UMG's counsel responded to that email only by filing this motion later that afternoon.

Veoh resolved the issue with Audible Magic, and the following Wednesday produced the data that UMG had requested.[19] Veoh wrote to UMG's counsel explaining that the new data was forthcoming, and that Veoh would stipulate to UMG having an additional week to supplement its identification of alleged infringing videos (identified using the new Audible Magic data) once it received the Audible Magic data.[20] UMG refused, first claiming that the new metadata was incomplete.[21] When Veoh's counsel pointed out the data that UMG claimed was missing was all provided, UMG backed off of that claim, but still insisted that it would need at least an additional month to supplement, despite the fact that the

---

[17] Ranahan Decl., ¶ 3 and Exh. 2.
[18] Ranahan Decl., ¶ 4 and Exh. 3.
[19] Ranahan Decl., ¶ 5 and Exh. 4.
[20] Ranahan Decl., ¶ 6 and Exh. 5.
[21] Ranahan Decl., ¶ 7 and Exh. 6.

analysis of the data is an automated process.[22]  Veoh responded to UMG, explaining

that a month was too long given the current case schedule and asked how quickly

UMG could provide its supplement.[23]  UMG responded only by saying it would

proceed with this motion.[24]

2.      **There Is No Obligation To Retain All Data Processed in
RAM Absent a Court Order**

In dealing with the issue of data processed only in RAM, a Court in the

Central District of California held, as a matter of first impression, that a Magistrate

Judge did not err in holding that information in RAM should be included in the

broad definition of "electronically stored information" set forth in Fed. R. Civ. Proc.

34(a)(1).  *Columbia Pictures v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007).

The *Bunnell* court specifically noted, however, in response to concerns over the

potentially devastating impact of the court's decision on the record-keeping

obligations of businesses and individuals, that:

> this decision does not impose an additional burden on any website
> operator or party outside of this case.  It simply requires that the
> defendants in this case, as part of this litigation, *after* the issuance of a
> court order, and following a careful evaluation of the burden to these
> defendants of preserving and producing the specific information requested
> in light of its relevance and the lack of other available means to obtain it,
> begin preserving and subsequently produce a particular subset of data in
> RAM under Defendants' control.

*Columbia Pictures v. Bunnell*, 245 F.R.D. 443, 448 (C.D. Cal. 2007)

(emphasis in original).  Ranahan Decl. ¶ 11 and Exh. 11 (Veoh's Opposition to

---

[22] Ranahan Decl., ¶ 8 and Exhs. 7-8.
[23] Ranahan Decl., ¶ 9 and Exh. 9.
[24] Ranahan Decl., ¶ 10 and Exh. 10.

JOINT STIPULATION RE: UMG'S MOTION FOR
SANCTIONS AND TO COMPEL VEOH TO PRODUCE
ITS AUDIBLE MAGIC METADATA

1989520

UMG's *Ex Parte* Application for an Order Requiring Veoh to Retain Evidence, Docket 207, pp. 7-9).

Accordingly, Veoh was not obligated to retain the additional fields of metadata that UMG claims it needs (and which UMG now has) until the Court ordered Veoh to do so on November 18, 2008. (Docket 217). In fact, the Court explicitly declined to retroactively impose such an obligation in the November 18, 2008 Order, and instead stated that "the obligation to retain and produce the additional metadata fields begins immediately." *Id.*

### 3. Sanctions (Against Veoh) Are Not Warranted

Even though Veoh did not have an obligation to preserve additional fields of metadata until November 18, 2008, Veoh had Audible Magic recreate the data at significant cost. UMG's hyperbolic claims that Veoh has engaged in "spoliation" and "destruction" of evidence, and citation to cases where courts imposed evidentiary or terminating sanctions are wholly inapplicable. Veoh has gone above and beyond its obligations and recreated the data at issue in UMG's motion. Not surprisingly, none of the of the cases cited by UMG involve a situation where the moving party was provided by the opposing party all of the allegedly "destroyed" "evidence" before filing the motion. *See, Welsh v. U.S.*, 844 F.2d 1239, 1246 (6th Cir. 1988); *Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363 (9th Cir. 1992); *Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006); *Byrnie v. town of Cromwell, Bd. Of Ed.*, 243 F.3d 93, 107-111 (2d Cir. 2001). Particularly in light of the fact that UMG was aware that Veoh was in the process of having Audible Magic recreate the data at the time it sent Veoh this joint stipulation, and had all of the data at issue in this motion at the time it was filed, none of the sanctions sought by UMG are appropriate here. To the contrary, UMG's refusal to negotiate in good faith a reasonable period of time after it received the re-run Audible Magic data to supplement its identification of works in suit has improperly wasted both Veoh's and the Court's time and resources.

Likewise, monetary sanctions against Veoh would be inappropriate here where, again, UMG had the data it was complaining about before filing this motion and was well aware that Veoh was working with Audible Magic to recreate the data. Once again, UMG cites a host of cases where monetary sanctions were imposed when evidence was willfully destroyed, which was never the case here; and not surprisingly, none of these cases involves a situation where the opposing party has gone to great lengths to recreate the data. Monetary sanctions are particularly inappropriate here considering that Veoh had no obligation to preserve the data in the first place, and UMG had all of the data is sought by the time it filed this motion.[25]

4. **UMG Is Attempting to Unilaterally and Unreasonably Extend Its Deadline To Identify Alleged Infringements**

In an attempt to resolve the issue regarding Audible Magic data that was never logged, Veoh undertook significant costs for Audible Magic to re-process the videos that were initially positive hits against the Audible Magic database.[26] Now that Veoh has produced the additional Audible Magic data, UMG continues to prop-up the manufactured Audible Magic dispute as a means to further delay identification of alleged infringements. After receiving from Veoh all data sought by this motion, UMG sought thirty additional days to identify additional alleged infringements (infringements that UMG was apparently unable to otherwise identify), with no explanation as to why it required so long in light of the fast approaching close of fact discovery. Setting aside the fact that this data relates to works that were filtered out by Veoh and thus hardly evidences "infringement," as

---

[25] In an attempt to create the false impression of wrongdoing, UMG goes so far as to falsely accuse Veoh's outside counsel with "apparent involvement" in setting up a system to deliberately delete evidence based upon nothing more than entries on a privilege log showing that Veoh discussed Audible Magic with counsel. (Joint Stipulation at 11.) Veoh certainly never considered or discussed devising a system to delete data with counsel, and the suggestion to the contrary is highly inappropriate.

[26] Ranahan Decl., ¶ 2 and Exh. 1.

Veoh's counsel explained to UMG, such a lengthy extension is untenable given the April 13, 2009 discovery cut-off, and would foreclose any opportunity for Veoh to obtain and review documents relating to the these alleged infringements, such as chain of title information,[27] without an extended discovery period.[28]

UMG did not provide notice to Veoh of a single infringing work until well over a year into this lawsuit. Now that UMG has had the additional Audible Magic data, it has failed to explain why it needs an additional month to identify any additional alleged infringements based upon such data, particularly given that the analysis of the data is an automated process. UMG appears to be using this motion merely to seek an unwarranted extension of its deadline to identify allegedly infringing works—a deadline that expired nearly two months ago. This Court should deny UMG's request.

### 5. **Conclusion**

Veoh has produced to UMG the Audible Magic data at issue in this motion. Veoh also tried to work with UMG to stipulate to a reasonable period of time within which UMG would supplement its identification of works in suit, but UMG refused. UMG has failed to demonstrate why it needs weeks to supplement its identification

//
//
//
//
//
//

---

[27] Veoh is awaiting the Court's ruling on the [proposed] order it submitted regarding Veoh's Motion to Compel Chain of Title/Ownership Information Re Allegedly Infringed Works (Docket 300), in addition to several other pending motions (*See* Docket 285).

[28] As UMG is using discovery to avoid reaching the merits and driving up costs against Veoh, like the last discovery extension in this action, Veoh seeks to avoid any such extension.

of works based on the new Audible Magic data, and this motion appears to be nothing more than a delay tactic.  It should be denied in its entirety.

Dated:  March 9, 2009                    IRELL & MANELLA LLP
                                         Steven A. Marenberg
                                         Elliot Brown
                                         Brian Ledahl
                                         Benjamin Glatstein


                                         By:_____/s_____
                                                Brian Ledahl

                                         Attorneys for Plaintiffs

Dated:  March 9, 2009                    WINSTON & STRAWN LLP


                                         By:_____/s (with permission)_____

                                         Thomas P. Lane
                                         Jennifer A. Golinveaux
                                         Rebecca L. Calkins
                                         Erin R. Ranahan
                                         Attorneys for Defendant
                                         VEOH NETWORKS, INC.

1989520