Rebecca Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin Ranahan (SBN: 235286)
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware corporation, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC. a California Corporation, et al., <br><br> Defendants. | Case No. CV 07 5744 – AHM (AJWx) <br><br> **VEOH'S LOCAL RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT VEOH NETWORKS, INC.'S MOTION FOR SUMMARY JUDGMENT RE ENTITLEMENT TO SECTION 512(c) SAFE HARBOR** <br><br> Date: April 13, 2009 <br> Time: 10:00 AM <br> Courtroom: 14 <br> Judge: Hon. A. Howard Matz |

Defendant Veoh Networks, Inc. ("Veoh") respectfully submits the following Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1 in support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor.

**I.     STATEMENT OF UNCONTROVERTED FACTS**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1.     Veoh provides a website (veoh.com) and a client software application (hereinafter, the "Veoh Client").  Through both, users can upload and view video content. | Papa Decl., ¶¶ 2-3. |
| 2.     Veoh consists of two principal components: (i) the veoh.com website where, among other things, users can share, view, and browse videos available through Veoh, create a user account and profile, and interact with other users; and (ii) an optional software application, which allows uploading and delivery of videos. | Papa Decl., ¶ 3. |
| 3.     Users can upload and view videos either through the veoh.com website, or through the Veoh Client. | Papa Decl., ¶ 3. |
| 4.     Veoh first offered a beta (test) version of the Veoh Client in September 2005. | Papa Decl., ¶ 3. |
| 5.     User's could first upload videos to Veoh's website in February 2006. | Papa Decl., ¶ 3. |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| 6. Veoh's system receives users' video submissions and processes them to be available on Veoh's website or through the Veoh Client. | Papa Decl., ¶ 3. |
| 7. When Veoh's system processes users' video submissions, the content of the videos is unchanged. | Papa Decl., ¶ 3. |
| 8. To upload videos to Veoh, a user must first register with Veoh at veoh.com by providing a user name, email address, and password. | Papa Decl., ¶ 4 and Exhibit A (registration page). |
| 9. When a user uploads a video, the user provides information about the video to help other users locate it, such as a title of the user's choosing and tags (keywords) to describe the video. | Papa Decl., ¶ 5 and Exhibit B (Veoh's upload and categories pages). |
| 10. When a user uploads a video, the user also selects pre-set categories that describe the video. | Papa Decl., ¶ 5 and Exhibit B (Veoh's upload and categories pages). |
| 11. Veoh computers automatically receive users' video submissions, extract certain metadata, and assign each video a "permalink," a locator that accompanies the display of each video and uniquely identifies each video on Veoh. | Papa Decl., ¶ 6. |
| 12. Veoh utilizes third party software to convert user-submitted videos into Flash | Papa Decl., ¶ 6. |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| format. | |
| 13. The conversion to Flash is an automated process. | Papa Decl., ¶ 6. |
| 14. Veoh currently has well over a million videos available for viewing. | Papa Decl., ¶ 3. |
| 15. Users have uploaded more than four million videos to Veoh. | Papa Decl., ¶ 3. |
| 16. Since July 2007, only three to four percent of Veoh's video views have been in the music category. | Wiseman Dep. at 173:24-174:11, February 2, 2009, attached as Ex. A to the Declaration of Jennifer Golinveaux In Support of Veoh's Motion for Summary Judgment Re Defendant Veoh Networks, Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("Golinveaux Decl.") ¶ 2. |
| 17. Veoh employees do not review user submitted content before it is available on Veoh. | Declaration of Stacie Simons In Support of Veoh's Motion for Summary Judgment Re Defendant Veoh Networks, Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("Simons Decl.") ¶ 9. |
| 18. It would not be feasible for Veoh to review every user submission, and determine whether it may infringe a copyright. | Simons Decl., ¶ 9. |

| | |
|---|---|
| 19. Veoh employees spot check some videos after publication for compliance with Veoh's terms of use and for proper categorization. | Simons Decl., ¶ 9. |
| 20. Employees use a "porn tool" to assist in the review of certain areas of the site to take down content that violates Veoh's policy prohibiting pornographic or obscene material. | Simons Decl., ¶ 2. |
| 21. The porn tool allows employees to view thumbnails of videos, and disable access to pornographic or obscene material. | Simons Decl., ¶ 2. |
| 22. If other employees encounter potentially infringing videos, they will forward them to Ms. Simons for determination. | Simons Dep. at 86 and 93, January 29, 2009, attached as Ex. B to the Golinveaux Decl., ¶ 3; Simons Decl., ¶ 2. |
| 23. Veoh does not charge users for using its website or software. | Papa Decl., ¶ 7. |
| 24. Veoh began offering advertising on its site in mid-2007. Advertising is Veoh's primary source of revenue. | Papa Decl., ¶ 8; Wiseman Dep., 27:12-19, attached as Ex. A to Golinveaux Decl., ¶ 2. |
| 25. Veoh has never made a profit. | Wiseman Dep., 27:12-19, February 2, 2009, attached as Ex. A to Golinveaux Decl., ¶ 2. |
| 26. Veoh disables access to videos when it receives notice that specific | Papa Decl., ¶ 9; Simons Decl., ¶ 4. |

| | |
|---|---|
| videos are alleged to be infringing. | |
| 27. Veoh terminates repeat infringers. | Papa Decl., ¶ 9; Simons Decl., ¶¶ 4, 6. |
| 28. Veoh's system allows Veoh to disable access to inappropriate content once it received notice of such content. | Declaration of Dmitry Shapiro In Support of Veoh's Motion for Summary Judgment Re Defendant Veoh Networks, Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor, ("Shapiro Decl.") ¶ 2.) |
| 29. Veoh's current Terms of Use ("TOU") states that: You agree to abide by all applicable local, state, national and international laws and regulations, including, without limitation, all intellectual property laws (such as U.S. copyright laws). Any unauthorized use of the Veoh Service is expressly prohibited. | TOU, attached to Simons Decl., ¶ 2 & Ex. A. |
| 30. Veoh's current Copyright Policy states that: Veoh takes copyright and other intellectual property rights very | Copyright Policy, attached to Simons Decl., ¶ 3 & Ex. B. |

| | |
|---|---|
| seriously. It is Veoh's policy to (1) expeditiously block access to or remove content that it believes in good faith may contain material that infringes the copyrights of third parties and (2) remove and discontinue service to repeat offenders. | |
| 31. Prior versions of Veoh's TOU and incorporated documents have contained similar language. | Papa Decl., ¶ 9. |
| 32. Veoh's Copyright Policy sets forth its DMCA policy. | Copyright Policy, attached to Simons Decl., ¶ 3 & Ex. B. |
| 33. Veoh's Copyright Policy describes how to send Veoh notices of claimed infringement. | Copyright Policy, attached to Simons Decl., ¶ 3 & Ex. B. |
| 34. Each time a user begins to upload a video to the veoh.com website, the user receives a message stating "Do not upload videos that infringe copyright, are pornographic, obscene, violent, or any other videos that violate Veoh's Terms of Use." | Papa Decl., ¶ 10 and Ex. C (current upload screen). |
| 35. Before using the Veoh Client software, users must first consent to Veoh's software license, and agree to "not use the Software or Service to infringe the | Papa Decl., ¶ 10 and Ex. D (screenshot of the software license printed from Veoh's website.) |

| | |
|---|---|
| copyrights or other intellectual property rights of others in any way." | |
| 36. Veoh responds to DMCA notices often the same day that Veoh receives the notice, or within a day or two of receiving the notice. | Simons Decl., ¶ 4. |
| 37. Veoh has a flag feature, which allows users to flag video content as inappropriate or for other reasons. | Simons Decl., ¶ 5 and Ex. C (screenshot of this flag feature). |
| 38. On August 15, 2005, Veoh designated an agent with the U.S. Copyright Office to receive notifications of claimed infringement. | Papa Decl., ¶ 11 & Ex. E (Interim Designation).) |
| 39. Veoh makes available on its website and has provided the Copyright Office with the name, address, phone number, and electronic mail address of its designated agent to receive notices of claimed infringement. | Simons Decl., ¶ 3 & Ex. B (Copyright Policy).) |
| 40. On its website Veoh informs users of its policy providing for the termination of Veoh users who are repeat infringers. | Papa Decl., ¶ 9; Simons Decl., ¶ 3 & Ex. B (Copyright Policy).) |
| 41. If Veoh receives notice that a user has uploaded infringing content after the user has already received a first warning, the user's account is promptly terminated and all videos published with that account | Simons Decl., ¶ 6. |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| are disabled. | |
| 42. After a user that has received a first warning has been terminated and all videos published with that account are disabled, the user's email address is added to a black list and cannot be used to register a new account. | Simons Decl., ¶ 6. |
| 43. Veoh has terminated thousands of user accounts for repeat copyright violations. | Simons Decl., ¶ 6. |
| 44. Veoh does nothing to prevent content owners from finding the information needed to identify infringing videos. | Simons Decl., ¶ 7 |
| 45. Veoh provides and displays a unique locater called a "permalink" for each video. | Simons Decl., ¶ 7. |
| 46. In October 2007, Veoh, along with Disney, Viacom, Fox, CBS, and NBC Universal signed on to "The UGC Principles," available at www.ugcprinciples.com. | Papa Decl., ¶ 12 and Ex. F. |
| 47. Veoh utilizes a means of generating a unique fingerprint (called a "hash") of a video file. Once Veoh disables access to a video for any reason including copyright infringement, Veoh's system | Papa Dep. at 132, Jan. 30, 2008, attached as Ex. C to the Golinveaux Decl., ¶ 4; Papa Decl., ¶ 13. |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| automatically disables access to any other duplicate videos with the identical hash, and also blocks any subsequently submitted videos that are duplicates of disabled videos. | |
| 48. In 2006, Veoh began developing its own technology for filtering potentially infringing content from ever being uploaded to its site, and has filed for a patent relating to this technology. | Papa Decl., ¶ 14. |
| 49. Audible Magic's service works by taking an audio fingerprint from video files, and matching it against Audible Magic's database of content. | Papa Decl., ¶ 15 |
| 50. In the summer of 2007, Veoh began working with Audible Magic and testing its filtering technology. | Papa Dep., 81, January 30, 2009, attached as Ex. C to the Golinveaux Decl., ¶ 4; Papa Decl., ¶ 15. |
| 51. After a period of testing, Veoh put Audible Magic's filtering system into production in October of 2007. | Papa Dep., 81, January 30, 2009, attached as Ex. C to the Golinveaux Decl., ¶ 4; Papa Decl., ¶ 15. |
| 52. Beginning in October of 2007, if a user attempted to upload any video that matched against Audible Magic's database, the video was cancelled before publication so that it was never available for viewing on Veoh. | Papa Dep., 83, January 30, 2009, attached as Ex. C to the Golinveaux Decl., ¶ 4; Papa Decl., ¶ 15. |
| 53. Audible Magic filtering occurs on Veoh even if Veoh has never received a | Papa Dep., 159, January 30, 2009, attached as Ex. C to the Golinveaux |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| DMCA notice regarding the video. | Decl., ¶ 4; Papa Decl., ¶ 15. |
| 54. By mid-2008, Veoh had also run its entire existing database of videos against Audible Magic's filter and disabled access to all videos that matched against Audible Magic's database that were not submitted by Veoh partners. | Papa Dep., 159, January 30, 2009, attached as Ex. C to the Golinveaux Decl., ¶ 4; Papa Decl., ¶ 15. |
| 55. UMG never sent Veoh a notice requesting that a specific video file be removed before September 4, 2007. | Simons Decl. ¶ 8; Golinveaux Decl., ¶ 5 & Ex. D (Sept. 24, 2007 Letter); Papa Decl. ¶ 16. |
| 56. UMG never sent a notice pursuant to Section 512(c) of the DMCA before filing suit on September 4, 2007. | Simons Decl. ¶ 8; Golinveaux Decl., ¶ 5 & Ex. D (Sept. 24, 2007 Letter); Papa Decl. ¶ 16. |
| 57. On September 24, 2007, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos. | Golinveaux Decl., ¶ 5 & Ex. D (Sept. 24, 2007 Letter). |
| 58. UMG first identified a total of 1,591 allegedly infringing videos in interrogatory responses dated December 1, 2008. | Golinveaux Decl., ¶ 8 & Ex. G (UMG's Response to Veoh's Interrog. No. 25). |
| 59. On January 6, 2009, UMG supplemented its response to identify an additional 854 allegedly infringing videos. | Golinveaux Decl., ¶ 9 & Ex. H. (Jan. 16, 2009 Supp. to Ex. A to UMG's Resp. to Veoh's Interrog. No. 25). |
| 60. UMG claimed these 2,445 videos | Golinveaux Decl., ¶¶ 8-9 & Exs. G-H. |

| | |
|---|---|
| infringed a total of 1,344 of UMG's federally registered copyrights, and 111 unregistered copyrights or for which federal registrations are pending. | (UMG's Response to Veoh's Interrog. No. 25 and Jan. 16, 2009 Supp. to Ex. A to UMG's Resp. to Veoh's Interrog. No. 25). |
| 61. Of the first batch of 1,591 videos identified by UMG as infringing in response to interrogatory responses, twelve were duplicates. | Papa Decl., ¶ 16. |
| 62. Of the 1,579 videos remaining that were identified by UMG as infringing, 1,268 had already been independently disabled by Veoh. | Papa Decl., ¶ 16. |
| 63. The remaining 311 videos identified by UMG as infringing had already been independently run through the Audible Magic filter, but had not matched and were still available on Veoh. | Papa Decl., ¶ 16. |
| 64. Veoh immediately disabled access to those 311 videos and informed UMG. | Papa Decl., ¶ 16; Golinveaux Decl., ¶ 11 & Ex. J (Dec. 15, 2008 Letter). |
| 65. Of the second batch of 854 videos identified by UMG on January 16, 2009, two videos were duplicates. | Papa Decl., ¶ 17. |
| 66. Of the remaining 852 videos in the second batch of videos identified by UMG as infringing, all had already been independently disabled by Veoh. | Papa Decl., ¶ 17. |
| 67. Veoh has received emails from | Golinveaux Decl., ¶ 13 and Ex. L |

| | |
|---|---|
| UMG's employees and agents regarding videos they uploaded to Veoh's website. | (Veoh's Supp. Responses to UMG's Second Interrogatories); Simons Decl., ¶¶ 10-11 and Exs. D-E). |

## II. CONCLUSIONS OF LAW

1. A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986

2. The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "A mere scintilla of evidence supporting the non-moving party's position is insufficient:" the moving party will win summary judgment unless there is "evidence on which a jury could reasonably find for the non-moving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

3. Veoh meets the definition of a service provider applicable to Section 512(c) because it is "a provider of online services or network access, or the operator of facilities therefor . . . ." pursuant to 17 U.S.C. § 512(k)(1)(B).

4. Veoh meets the requirements of Subsection 512(i)(1)(A) because it has (1) adopted a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implements its repeat infringer policy in a reasonable manner; and (3) informs its subscribers of its repeat infringer policy. 17 U.S.C. § 512(i)(1)(A); *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004).

5. Veoh meets the requirement of subsection 512(i)(1)(B), as UMG has not identified any "standard technological measures" as defined in 17 U.S.C. § 512(i)(2).

6. Veoh meets the condition of Section 512(c) requiring it to designate an agent to receive notice of infringements under subsection 512(c)(2).

7. Veoh does not fail the three conditions of subsection 512(c)(1).

First, Veoh meets the requirements of 512(c)(1)(A)(i) because Veoh did not have actual knowledge of any of the infringements alleged by UMG. It is UMG's burden to show that Veoh had actual knowledge of the alleged infringement within the meaning of Section 512(c). *See Perfect 10, Inc. v. Amazon.com, Inc., et al.*, CV 05-4753 AHM (SHx), Order Granting in Part and Denying in Part A9's Summary Judgment Motion at 8 (C.D. Cal., Nov. 4, 2008)(citing *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1111 (9th Cir. 2007)). Veoh did not have actual knowledge of any of the infringements alleged by UMG and UMG never provided Veoh with notice of any allegedly infringing videos on Veoh's system until more than a year into this lawsuit. As stated in *Corbis*, "[Plaintiff's] decision to forego the DMCA notice . . . stripped it of its most powerful evidence of a service provider's knowledge." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004).

Second, Veoh was not "aware of facts or circumstances from which infringing activity is apparent," and thus meets the condition of 512(c)(1)(A)(ii). "In determining whether a service provider has such awareness, 'the question is not what a reasonable person would have deduced given all the circumstances. Instead the question is whether the service provider deliberately proceeded in the face of blatant factors of which it was aware. In other words, apparent knowledge requires evidence a service provider turned a blind eye to red flags of obvious infringement.'" *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1148 (N.D. Cal. Aug. 27, 2008) (quoting *Corbis Corp,* 351 F.Supp.2d at 1108). There are no facts to indicate any such "red flags" of infringement here.

Finally, Veoh also meets the requirements of 512(c)(1)(A)(iii), because "upon obtaining such knowledge or awareness," Veoh acted "expeditiously to remove, or disable access to, the material."

8. Veoh meets the conditions of Section 512(c)(1)(B) because Veoh does not have the right and ability to control the alleged infringing activity. *Corbis Corp.*, 351 F. Supp. 2d at 1110 (no right and ability to control when Amazon did not "pick" the content to appear on its site or preview them). Veoh's implementation of filtering technology and any voluntary monitoring efforts do not impart disqualifying control. *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp.2d 914, 1094 (C.D. Cal. 2003) ("Congress did not intend for companies such as eBay to be penalized when they engage in voluntary efforts to combat piracy over the Internet: This legislation is not intended to discourage the service provider from monitoring its service for infringing material. Courts should not conclude that the service provider loses eligibility for limitations on liability under section 512 solely because it engaged in a monitoring program."). Further, Veoh's ability to remove works once notified of infringement does not create a right and ability to control. *Id.* at 1093-94 ("the 'right and ability to control' the infringing activity, as the concept is used in the DMCA, cannot simply mean the ability of a service provider to remove or block access to materials posted on its website or stored in its system. . . . The DMCA specifically requires a service provider to remove or block access to materials posted on its system when it receives notice of claimed infringement. . . . Congress could not have intended for courts to hold that a service provider loses immunity under the safe harbor provision of the DMCA because it engages in acts that are specifically required by the DMCA").

9. The Court need not reach the financial benefit inquiry of Section 512(c)(1)(B) because Veoh does not have the right and ability to control the alleged infringing activity. *Corbis*, 351 F. Supp. 2d. at 1110 (noting no need to consider the issue of direct financial benefit when claimant of safe harbor did not have right and ability to control infringing conduct). Nevertheless, Veoh also did not receive a

financial benefit directly attributable to the alleged infringing activity. There can be no direct financial benefit "where the infringer makes the same kind of payment as non-infringing users" for use of the service provider's service. *CoStar Group, Inc. v. LoopNet, Inc.*, 164 F. Supp. 2d at 705 (quoting H.R. Rep. No. 105-551 (II), at 54). Veoh operates a service with non-infringing content and does not promote infringing content to draw users to its site. No financial benefit exists where, like here, there is no "causal relationship between the infringing activity and any financial benefit." *Ellison*, 357 F.3d at 1077, 1079.

10. Because Veoh promptly responds to infringement notices (and promptly disabled any video UMG has claimed to be infringing) and promptly terminates repeat infringers, any injunctive relief allowed by Section 512(j) is moot in this case. *Io*, 586 F.Supp.2d at 1155-56 (holding that because Veoh independently removed all of Io's claimed works, any injunctive relief to which it would be entitled is moot); *Corbis Corp,* 351 F. Supp. 2d at 1111 (denying injunctive relief under 512(j) as moot: "considering that Amazon has asserted that it has terminated the accounts of the defendant vendors, it is not certain how the limited injunctive relief would apply in the context of this litigation.")

Dated: March 11, 2009  WINSTON & STRAWN, LLP

By: /s/ Jennifer A. Golinveaux
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Calkins
Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.

LA:238388.4

15
STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)