Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br>  Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC. *et al.*, <br><br>  Defendants. | **Case No. CV 07 5744 – AHM (AJWx)** <br><br> **SUPPLEMENTAL MEMORANDUM PURSUANT TO LOCAL RULE 37-2.3 IN OPPOSITION TO UMG RECORDINGS, INC.'S MOTION FOR SANCTIONS AND TO COMPEL COMPLIANCE WITH PRIOR COURT ORDERS (Re Docket 317)** <br><br> Date: March 30, 2009 <br> Time: 10:00 a.m. <br> Crtrm: 690 <br> Discovery Cut-Off: April 13, 2009 |

Veoh Networks, Inc. ("Veoh") provides this Supplemental Memorandum in support of its Opposition to UMG's Motion for Sanctions and to Compel Compliance with Prior Court Orders ("Motion").

## I. UMG'S SUPPLEMENTAL BRIEF CONFIRMS THAT ITS MOTION IS NOTHING MORE THAN A SMOKESCREEN

UMG's supplemental memorandum confirms the lengths that UMG will go to manufacture a discovery dispute. UMG's efforts in its Motion to present a "systematic and deliberate withholding of evidence" by presenting ten emails proved empty once Veoh was able to explain that these or similar documents were either produced by Veoh (Exhibits L, M,[1] O & J), withheld as privileged (Exhibits H & K), not-responsive (Exhibits F-G, I), or were from 2006 and did not appear in Veoh's database[2] (Exhibit N).[3] Thus, UMG's Supplemental Brief presents four new "examples" of documents it claims "Veoh failed to produce." UMG's brief fails to mention that *three of these four purported "examples" were indeed produced by Veoh to UMG.[4] The fourth and final example, produced by Dan Klores Communications*

---

[1] While UMG makes much of the different versions of Exhibit M in its Supplemental Brief, it makes no mention or acknowledgement that in exchange for Veoh producing all of its Board of Directors Minutes, UMG agreed not to seek production of any further power point presentations relating to such board meetings. Ranahan Declaration in Opposition to UMG's Motion (Docket 319) ("Ranahan Decl."), ¶ 9.

[2] Contrary to UMG's misleading suggestion, Veoh has never taken the position that it is only required to produce documents that post-date the litigation, but in cases such as this 2006 presentation, such explains why such document was not located in Veoh's review database. Further, UMG itself acknowledges in its brief that the duty to preserve evidence does not begin until "in or around the time of the lawsuit" (see Joint Stipulation Re UMG's Motion, Docket 322, p. 15 footnote 4). Accordingly, UMG cannot concoct a misleading tale of "improper withholding of evidence" with respect to documents that Veoh indisputably had no duty to preserve.

[3] Of course UMG fails to address the fact that the Exhibits cited in its Motion were nearly all produced *before* any Veoh productions, many by the same Veoh attorneys, and thus could hardly have been part of any deliberate scheme to withhold evidence.

[4] Indeed, the Supplemental Declaration of Brian Ledahl In Support of UMG's Motion *acknowledges* that Veoh produced Exhibits C, D and E, and does not bother to set forth any argument as to why Exhibit B would have been expected to show up in Veoh's review database. Exhibits C, D and E were produced as part of Veoh's production of its custodian, Jennifer Betka. *See* Ranahan Decl. ¶ 10 (Docket 319).

1

*(by the same attorneys representing Veoh in this action) did not contain any of the key words used by Veoh, and thus would not have been expected to be part of Veoh's review database.*

UMG's footnote 1 regarding Exhibit H (p. 3) is misleading at best. UMG claims that "Veoh's claim that one of these documents was included on Veoh's privilege log is simply false." *Id*. UMG fails to mention that the header email it cites to support this claim refers to an internal email amongst Time Warner employees. *See* UMG's Exhibit H. The lower portion of the email chain that included Veoh custodians—the part of the email that Veoh understood UMG to have been expecting to be within Veoh's database—was logged onto Veoh's privilege log several times. *See* Ranahan Decl., ¶ 4 (Docket 319). Indeed, Exhibit A to the Supplemental Declaration of Brian Ledahl shows these July 27, 2007 entries regarding this exact chain.[5]

In an effort to justify extreme and unwarranted relief, UMG has also set forth gross mischaracterizations about how many documents have been produced with respect to custodians Betka, Shapiro, Mitgang and Wiseman.[6] When considering documents related to these four custodians, including documents where the custodians are not just authors, but recipients of the emails, the counts are dramatically higher, and a far more accurate reflection of Veoh's production. The actual numbers of documents produced that relate to these four custodians are as follows:

---

[5] Though UMG has challenged some emails on Veoh's privilege logs in the past, and Veoh has investigated and in some cases produced documents from its privilege log, UMG has never taken issue with these entries.

[6] As a means to further mislead the Court regarding the extent of Veoh's production, UMG has limited its count to documents "authored" by the named custodians. But even UMG's counts regarding documents "authored" by the custodians are distorted, as there were actually 55 documents (and 230 pages) authored by Betka (UMG falsely claims 23), 45 documents (and 143 pages) authored by Shapiro (UMG falsely claims 26); 73 documents (and 846 pages) authored by Mitgang (UMG falsely claims 37); and 81 documents (and 481 pages) authored by Wiseman (UMG falsely claims 65).

Veoh has produced 11,798 pages and 345 documents relating to[7] Betka; 3,137 pages and 176 documents where Betka is the custodian; and 3,522 pages and 311 documents where Betka is a recipient of the email.

Veoh has produced 40,295 pages and 10,778 documents relating to Shapiro; 2,493 pages and 727 documents where Shapiro is the custodian; and 319 pages and 84 documents where Shapiro is a recipient of the email. Veoh has produced thousands upon thousands of emails from Shapiro that demonstrate Veoh's adherence to its DMCA policy--emails that UMG routinely discounts in an attempt to low-ball Veoh's production. *See* p. 10 (Docket 318), footnote 3 of Joint Stipulation re Motion (Docket 322); *See also,* UMG's Motion to Compel Search Terms, Custodians and Skype Accounts (Docket 259) pp. 33-34.

Veoh has produced 4,494 pages and 395 documents relating to Mitgang; 384 pages and 58 documents where Mitgang is the custodian; and 1,342 pages and 234 documents where Mitgang is a recipient of the email.

Veoh has produced 4,306 pages and 257 documents relating to Wiseman; 481 pages and 81 documents where Wiseman is the custodian; and 903 pages and 185 documents where Wiseman is the recipient of an email.

## II. UMG'S HYPOCRITICAL POSITION WITH RESPECT TO RETAINING INSTANT MESSAGES

UMG's position is contrary to how UMG has approached investigating its own instant messages. UMG's recently filed Opposition to Veoh's Motion to Compel UMG's Digital Blog and Instant Messages demonstrates that to date, despite repeated requests by Veoh, UMG has refused to even inquire of its custodians whether they have used instant messaging for work-purposes (let alone its custodians that are former employees).[8] It is impossible to evaluate whether evidence has been preserved without taking the basic step of determining what types of instant messaging systems

---

[7] This count includes documents where the custodians name appeared anywhere on the document.
[8] Docket 348.

3

are involved and whether instant messages were even retained by employees without inquiring of the custodians.

## III. THE PRODUCTION OF VEOH'S LICENSING AGREEMENTS IS COMPLETE

As explained in Veoh's portion of the Joint Stipulation regarding UMG's Motion for Sanctions and to Compel Compliance with Prior Orders (pp. 6-7; 43), additional licensing agreements were identified during the February 18, 2009 deposition of Joshua Metzger, several of which were executed after Veoh's original documents collection(s) (including Wind-Up, PetTube and SESAC). Veoh has also taken additional steps to confirm that all licensing agreements (including any executed subsequent to previous document collections) have been located and produced. Since identifying these additional licensing agreements in late February 2009, Veoh has worked diligently to collect, review, and clear any confidentiality provisions relating to these agreements. All such licensing agreements have now been produced to UMG. (Supplemental Declaration of Erin R. Ranahan in Opposition to Motion ("Supp. Ranahan Decl.") ¶ 2.)

## IV. CONCLUSION

For all the reasons addressed herein and in Veoh's portion of the joint stipulation re UMG's Motion, UMG's Motion should be denied in its entirety.

Dated: March 16, 2009     **WINSTON & STRAWN LLP**

By /s/ Erin R. Ranahan
　　Michael S. Elkin
　　Thomas P. Lane
　　Jennifer A. Golinveaux
　　Rebecca L. Calkins
　　Erin R. Ranahan
　　Attorneys for Defendant
　　VEOH NETWORKS, INC.

4

VEOH'S SUPP. MEMO IN OPP. TO UMG'S MOT. FOR SANCTIONS AND TO COMPEL COMPLIANCE    Case No. CV 07-5744-AHM (AJWx)
LA:239131.1