Rebecca Lawlor Calkins (SBN: 195593)
Email:  rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email:  eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:  213-615-1700
Facsimile:   213-615-1750

Jennifer A. Golinveaux  (SBN 203056)
Email:  jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin  (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane  (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC. *et al.*, <br><br> Defendants. | **Case No. CV 07 5744 – AHM (AJWx)** <br> Discovery Matter <br><br> **VEOH'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL UMG'S DIGITAL BLOG AND INSTANT MESSAGES** <br><br> Hearing: 3/30/09  10:00 a.m. <br> Discovery Cut off:   4/13/09 |

i

**VEOH'S REPLY IN SUPPORT OF ITS MOT. TO COMPEL UMG'S DIGITAL BLOG
AND INSTANT MESSAGES     Case No. CV 07 5744-AHM (AJWx)**

Dockets.Justia.com

## I. INTRODUCTION

Veoh raised two issues in the instant motion: UMG's refusal to produce blog communications devoted to news, thoughts, and other info on UMG's digital business (its "Digital Blog"); and UMG's refusal to produce instant messages from its document custodians in this case, or even to confirm whether it had inquired of its custodians as to whether they used instant messages or had retained them in response to discovery requests in this litigation.

UMG did finally produce its Digital Blog on March 12, 2009—*after* UMG refused to timely meet and confer on the issue and forced Veoh to file this motion.[1] UMG should be required to pay Veoh's costs associated with preparing this motion, for requiring Veoh to bring this motion to obtain the Digital Blog (almost a year after Veoh issued discovery requests that called for it).

With respect to UMG's instant messages, contrary to UMG's representations to this Court, it is clear that at least certain of UMG's custodians do use instant messaging for business communications. Although Veoh has long sought to have UMG simply confirm that it has investigated whether its custodians use instant messages for work purposes, and if so, confirm that they are being retained and will be produced, UMG has refused. Incredibly, UMG appears still not to have taken this basic step, even in response to this motion. Instead it has submitted declarations that, as demonstrated below, merely confirm that UMG's collection practices were unlikely to capture instant messages.

Finally, Veoh followed Local Rule 37 precisely in bringing this motion. UMG does not dispute that it refused to meet and confer with Veoh within the ten days required by Local Rule 37-1, despite Veoh's multiple attempts to schedule such a conference. Instead, UMG argues that Veoh should have conducted the meet and

---

[1] Based upon Veoh's initial review of UMG's Digital Blog produced last week, UMG's Digital Blog contains highly relevant and directly responsive information regarding, for example, UMG's viral marketing (e.g., UMG01611621); licensing deals (e.g., UMG1611594); and UMG's comparing "music consumption" websites like Veoh (e.g., UMG01611629).

1

**VEOH'S REPLY IN SUPPORT OF ITS MOT. TO COMPEL UMG'S DIGITAL BLOG AND INSTANT MESSAGES    Case No. CV 07 5744-AHM (AJWx)**

confer after the deadline, even though doing so would have prevented Veoh from raising these issues with the Court prior to the April 13, 2009 discovery cut-off. Moreover, Veoh offered to hold the meet and confer *after* the deadline if UMG would simply agree to an expedited briefing schedule if the parties were unable to resolve the issues informally. UMG refused.

For these reasons and all those discussed in Veoh's motion, Veoh respectfully requests that the Court grant its motion.

## II. UMG'S DIGITAL BLOG

As explained in Veoh's opening brief, during the pendency of this litigation, UMG created a blog for UMG's employees to share news, thoughts, and other info on UMG's digital business and the digital music and entertainment marketplace in general. Veoh only became aware of the blog because of an email buried in UMG's 1,612,404 page document production. The Digital Blog quite clearly contained all manner of documents relevant to this lawsuit and responsive to Veoh's document requests, for example Veoh's Requests for Production Nos. 39-41, which sought all documents regarding UMG's "distribution of the copyrighted sound recordings, or any portion of the copyrighted sound recordings, on the internet;" UMG's "distribution of material containing the copyrighted musical compositions, or any portion of the copyrighted musical compositions, on the internet;" and UMG's "use of the internet to promote and/or exploit the copyrighted sound recordings and the copyrighted musical compositions." (Declaration of Erin Ranahan in support of Veoh's Motion to Compel UMG's Digital Blog and Instant Messages, Docket 354, ("Ranahan Decl.") at ¶ 4 and Exh. 3.). Accordingly, UMG's Digital Blog should have been produced long ago.

UMG does not even attempt to argue that the Digital Blog need not be produced, and in response to this motion, finally produced it on March 12, 2009, nearly a year after receiving Veoh's document requests. If UMG was truly unable to find any time to meet and confer within the ten day period prescribed by Local Rule 37-1, it surely could have notified Veoh in writing if it had decided to produce the

2

Digital Blog (which UMG at some point apparently recognized should have produced). Instead, UMG waited until *after* Veoh was forced to proceed with filing this motion, before producing its Digital Blog. UMG's Digital Blog should have been produced long ago, and UMG should be required to pay Veoh's costs for having to resort to motion practice to obtain it. F.R.C.P. 37(a)(5)(A) ("if the disclosure of the requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless certain circumstances, not present here, are met.)

## III. UMG'S INSTANT MESSAGES

Contrary to representations made to this Court, it is now clear that at least certain of UMG's custodians utilized instant messaging for work communications. Though Veoh has sought for months to have UMG simply confirm whether its custodians use instant messages for work communications on work computing devices, UMG apparently has still failed to undertake this basic step.[2] Even worse, UMG's opposition confirms that not only did UMG fail to take adequate measures to investigate where instant messages of its custodians may be located and in what format, even assuming UMG managed to collect responsive instant messages, its vendor is "not capable" of processing the file types that would be expected for many instant message programs.

---

[2] UMG apparently thinks that it has no obligation to investigate whether instant messages even exist because it does not issue company instant message accounts. Whether such instant messaging occurs through a company issued instant message account or through instant message programs selected by employees for use for work related communications, does not make the communications any less relevant. Otherwise, companies could insulate themselves from producing relevant information contained in instant messages by simply having employees select their own instant message programs.

3

**VEOH'S REPLY IN SUPPORT OF ITS MOT. TO COMPEL UMG'S DIGITAL BLOG
AND INSTANT MESSAGES    Case No. CV 07 5744-AHM (AJWx)**

### A. <u>UMG's Collection Methods Were Insufficient To Capture Instant Messages</u>

Because UMG has not even bothered to ask its limited list of document custodians whether they have used instant messaging for work communications, UMG cannot know whether it managed to collect such information, or whether such communications were properly retained after UMG was put on notice that Veoh sought them in discovery.

While UMG claims in its opposition that if "one of UMG's document custodians uses an instant messaging system that stores any communications on that employee's computer, UMG has captured that data…", UMG's own declarants on this topic confirm that such collection steps were insufficient to have captured instant messages, and of course, would not have included instant messages if the user had chosen not to retain the messages.

UMG's Supporting Declaration of Clifton Lancaster ("Lancaster Decl.") explains that UMG copied *only text files*, such as Microsoft Word, Microsoft Excel or Microsoft PowerPoint. *Id.* at ¶ 5. But as explained in Veoh's Supporting Declaration of Richard Cheng ("Cheng Decl."), instant messages are found in files that "vary substantially"--and are not just text files--but also include executable (*.exe) files. Cheng. Decl. ¶ 5. Thus, Lancaster's collection of only text files is insufficient to ensure the collection of the custodians' instant messages. UMG must first investigate which types of instant messages its custodians used for work before it can know whether it has in fact collected such information.

Moreover, as explained by UMG's supporting Lancaster Decl., the process of copying computer files for UMG's custodians is "roughly" that he created a "copy of all files on the custodian's computer," as well as the custodians shared files. *Id.* at ¶ 4. According to Lancaster, the "process copies any and all files *stored on each custodian's computer . . .*" *Id.* (emphasis added).

4

VEOH'S REPLY IN SUPPORT OF ITS MOT. TO COMPEL UMG'S DIGITAL BLOG
AND INSTANT MESSAGES   Case No. CV 07 5744-AHM (AJWx)

As explained in the Cheng Decl., there are a variety of programs that provide instant messaging functionality" including "ICQ, Yahoo!, Messenger, Trillian, Skype, Hello, Miranda, and AOL Instant Messenger" which are readily available. Whether the instant message chats are logged (or stored on the custodian's computer) depends on various factors:

> [I]nstant messaging programs have several options and features. Some offer the option of either activating or deactivating the logging of any instant messaging conversations which provides a history of such conversations. Some instant messages always maintain such a history while others do not provide any such storage functionality at all. In some cases, the logging behavior can be modified by the presence of an add-in program. For example, such add-ins can provide such conversational logging for instance messaging applications that do not.
>
> In many cases, for those instant messaging programs that do provide the ability to log the history of [] instant messaging conversations, the location of the files where these logs are kept can be set. Thus, where these log files are found will depend both on the instant messaging application employed as well as how the program has been set-up by the user.

*Id.* at ¶¶ 3-4.

Thus, UMG's custodians may have deactivated the logging option, or have copied instant message files to locations other than their computer. UMG should be ordered to inquire of its custodians these questions to ensure that it has made a reasonable effort to collect any such communications, and determine whether any such responsive communications were or were not logged.

5

**VEOH'S REPLY IN SUPPORT OF ITS MOT. TO COMPEL UMG'S DIGITAL BLOG AND INSTANT MESSAGES** Case No. CV 07 5744-AHM (AJWx)

### B. UMG's Vendor Is Admittedly Not Capable of Processing Many Types of Instant Messaging Files

Moreover, even if UMG managed by luck to have initially collected instant messages, its vendor's method of processing such files is admittedly inadequate for many file formats in which instant messages are retained. As explained in Veoh's Supporting Cheng Decl.:

> Just as the location of where these log files are stored vary depending on the instant messaging program used, each instant messaging program also stores this conversational history in files with different structures. These differing file types are likewise denoted with the different extensions of: ICQ-MDB, Yahoo! Messenger-DAT; Windows Live/MSN Messenger-XML, Trillian-LOG, Skype-DBB, Hello-CHATLOG, Miranda-DAT, AOL IM-LOG. The internal structure and format of these log files vary substantially. On one end, some of these files are encoded similarly to basic text files . . . [h]owever, other such log files are encoded into a binary format akin to executable (EXE) files. In order to be processed, such files require processing tools that can understand their unique format or tools that can covert the file into a form that is understandable by the existing processing tools.

Cheng Decl. ¶ 5.

As Cheng notes, specific tools are required to process these *exe files; and by his own admission, UMG's vendor is incapable of processing the files. UMG's Supporting Declaration of Patrick Lin ("Lin Decl."), who works for the vendor that has processed UMG's documents in this action, states that it is only "capable of processing" certain file types. When processing its own instant messaging files for production in this case, Veoh had to locate a special vendor capable of processing its Skype instant messages because its other vendor was incapable of processing the files. (Ranahan Declaration filed in Opposition to UMG's Motion for Sanctions and to

6

Compel Compliance With Prior Orders (Docket 357) ¶ 18). Lin explicitly notes in the that UMG's vendor *does not* process "executable or *.exe" files because "such a file would not have comprehensible text." *Id.* at ¶ 3. Thus, UMG admittedly did not use a vendor with the requisite processing tools to process *.exe files, a type of file in which instant messages are stored. Cheng Decl. ¶ 5. In other words, even assuming UMG had collected certain instant messages, because UMG's vendor was not capable of processing the instant messages, UMG could not have produced them to Veoh.

### C. UMG's Counsel's Statements During the December 17, 2008 Hearing Were Demonstrably False

With respect to UMG's counsel's comments during the December 17, 2008 discovery hearing before Judge Wistrich relating to instant messages, the transcript speaks for itself. (Ranahan Decl. ¶ 12 and Exh. 11) (denying that UMG used instant messages by stating "[a]t UMG we don't. Maybe we shout at each other down the hall, or maybe we're content with Microsoft Outlook or whatever the email system is. But that's what they're using.") (*Id.* (Hearing Tr. at 42).) The fact that another of UMG's attorneys, Mr. Ledahl, further commented with respect to instant messaging, does not undue what UMG's counsel, Mr. Marenberg, plainly (and falsely) represented on the record. Moreover, Mr. Ledahl's comments (1) attempt to distinguish between relevant communications set-up pursuant to company instant message accounts, and relevant communications set up pursuant to instant message account selected by employees; and (2) speculate about the extent of UMG's instant message collection (which based upon the above discussion, overstated the completeness of UMG's instant message production). Neither of these statements addresses or otherwise counters Mr. Marenberg's statement that UMG's employees do not use instant message accounts for work purposes at all.

## IV. VEOH FOLLOWED LOCAL RULE 37 PRECISELY IN BRINGING THIS MOTION

Local Rule 37-2.4 sets forth three instances in which a party may bring a discovery motion without a joint stipulation, which include where the opposing party "(a) fails to confer in a timely manner in accordance with L. R. 37-1." UMG refused to confer with Veoh, on two straightforward issues (the instant messaging portion of which the parties had been discussing for months) within the "ten calendar days" explicitly required by Local Rule 37-1. This is particularly egregious considering that UMG's refusal to timely meet and confer appeared to be designed to foreclose Veoh's opportunity to have these issues heard at all.

In an attempt to justify its refusal to meet and confer within the time allotted, UMG claims that Veoh's February 19, 2009 meet and confer letter ("February 19 Letter") "failed to comply with Local Rule 37" because it did not list the requests for which Veoh expected UMG's Digital Blog to contain responsive information. (Ranahan Decl. ¶ 5, Exh. 4).[3] Local Rule 37 states the "letter shall identify each issue *and/or* discovery request in dispute. . . " (emphasis added). Veoh's February 19 Letter was not addressed at any particular disputed discovery request, or the "substance" of any specific discovery response. Instead, Veoh was seeking to confer about whether UMG had reviewed certain *sources* of material to determine whether they contained information responsive to any of Veoh's requests. In fact, when UMG sent a meet and confer letter to Veoh regarding Veoh's "search strategy," UMG likewise did not cite to a single discovery request. (Declaration of Erin Ranahan in Support of Reply in Support of Veoh's Motion to Compel UMG's Digital Blog and Instant Messages ("Ranahan Decl. ISO Reply"), ¶ 2 and Exh. A (September 26, 2008 meet and confer letter from UMG's counsel, Brian Ledahl.). Moreover, UMG did not

---

[3] UMG also claims, disingenuously, that Veoh's February 19 Letter did not "explain [Veoh's] position" or "specify terms of the discovery order to be sought." But it is quite clear from the letter that Veoh's position was to obtain an order for UMG to produce responsive information from UMG's Digital Blog and instant messages. (*Id.*)

8

**VEOH'S REPLY IN SUPPORT OF ITS MOT. TO COMPEL UMG'S DIGITAL BLOG AND INSTANT MESSAGES**  Case No. CV 07 5744-AHM (AJWx)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1 send a meet and confer letter pursuant to Local Rule 37-1 at all before it filed its
2 motion to compel Veoh's Skype instant messages, as the letter on the same motion
3 only addressed custodians and search terms. (*Id.*; *See also,* Declaration of Brian
4 Ledahl In Support of UMG's Motion to Compel Re (1) Search Terms; (2) Custodians;
5 and (3) Skype Accounts (Docket 266) ¶ 3 and Exh. B) (citing to meet and confer letter
6 re search terms and custodians, but no letter regarding Skype).)

Given the subject matter of the February 19 Letter, Veoh's listing of the requests at issue was not required by Veoh's original meet and confer letter. Indeed, Veoh cannot be expected know every type of responsive information contained within UMG's Digital Blog or instant messages—that is for UMG to determine. Nevertheless, Veoh responded the day after it received UMG's request for clarification (sent four days after Veoh's initial meet and confer letter) which undoubtedly should have provided more than enough information to allow UMG to proceed with timely scheduling the meet and confer. Instead, UMG used the apparent request for clarification as a means by which to avoid holding the meet and confer within the ten days, seeking to dodge its discovery obligations, and to foreclose Veoh's chance to seek this Court's assistance.

Moreover, as a policy matter, it would set a dangerous precedent to accept that UMG's letter, which sought "clarification" about what types of information are expected to be found within UMG's own sources of information, somehow extended UMG's obligations to meet and confer "within ten (10) calendar days" set forth in Local Rule 37-1. Under this scheme, parties could simply wait until the last day to hold the meet and confer, send a request for clarification, and continue to avoid holding the conference within the already generous ten day period contemplated by Local Rule 37-1.

UMG also suggests that Veoh should have consulted Magistrate Judge Nakazato's form sample meet and confer letter, in addition to adhering to his "TIPS," before opting to follow the procedures of Local Rule 37 in bringing this motion. Even

9

1  assuming that Veoh was expected to adhere to Judge Nakazato's specific procedures, unlike Judge Nakazato's form letter, once again, the present dispute is *not* limited to specific requests or responses. Instead, Veoh's meet and confer letter sought to determine whether UMG had searched certain sources *at all* for information responsive *to any* of Veoh's requests.

Moreover, with respect to following Judge Nakazato's tip that "if the opposing counsel has a reasonable, good-faith excuse for failing to respond by the time requested" Veoh should seek to accommodate such requests—Veoh has still not heard any reasonable, good-faith excuse from UMG about why UMG was unable to meet and confer within the requisite ten days. While flexibility in scheduling meet and confers is preferred in some circumstances, where UMG's delay beyond the ten day period would effectively foreclose Veoh's discovery issue from being heard at all, Judge Nakazato is not likely to suggest that Veoh should hold a belated meet and confer to accommodate a party that not only refuses to timely meet and confer, but also then refuses to agree to a workable briefing schedule when Veoh offered to hold the meet and confer beyond the ten day period.

## V. CONCLUSION

Veoh respectfully requests that the Court order UMG to immediately investigate and produce responsive instant messages, and provide an accounting of any that have been not been retained. Further, UMG should be ordered to pay costs and attorneys' fees in connection with this motion, which was necessitated by UMG's refusal to timely meet and confer, refusal to communicate with Veoh regarding the production of its Digital Blog until after Veoh filed its motion, and refusal to even investigate whether additional responsive instant messages exist.

Dated: March 23, 2009 **WINSTON & STRAWN LLP**

By /s/ Erin R. Ranahan_____

10

Rebecca Lawlor Calkins
Erin R. Ranahan
333 S. Grand Avenue
Los Angeles, California 90071-1543
(213) 615-1700 (Telephone)
(213) 615-1750 (Facsimile)

Jennifer A. Golinveaux
101 California Street
San Francisco, California 94111-5894
(415) 591-1000 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Thomas P. Lane (*pro hac vice*)
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant