1  Rebecca Lawlor Calkins (SBN: 195593)
   Email: rcalkins@winston.com
2  Erin R. Ranahan (SBN: 235286)
   Email: eranahan@winston.com
3  **WINSTON & STRAWN LLP**
   333 South Grand Avenue, 38th Floor
4  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
5  Facsimile:  (213) 615-1750

6  Jennifer A. Golinveaux (SBN 203056)
   Email: jgolinveaux@winston.com
7  **WINSTON & STRAWN LLP**
   101 California Street
8  San Francisco, CA 94111
   Tel: (415) 591-1506/Fax: (415) 591-1400

10 Michael S. Elkin  (*pro hac vice*)
   Email: melkin@winston.com
   Thomas P. Lane  (*pro hac vice*)
11 Email: tlane@winston.com
   **WINSTON & STRAWN LLP**
12 200 Park Avenue
   New York, New York 10166
13 Tel: (212) 294-6700/Fax: (212) 294-4700

14 Attorneys for Defendant VEOH NETWORKS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., a California Corporation, et al., <br><br> Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)** <br><br> **VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE SUBMITTED BY DEFENDANT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** <br><br> Date: April 13, 2009 <br> Time: 10:00 AM <br> Courtroom: 14 <br> Judge: Hon. A. Howard Matz |

# I. INTRODUCTION

Because Plaintiffs ("UMG') cannot refute the undisputed evidence regarding Veoh's proven adherence to its copyright policies, UMG resorts to raising a host of improper evidentiary objections, such as attacking the personal knowledge of Veoh's own employees and complaining that Veoh had not produced a publicly available document from 2005. As set forth below, each of UMG's evidentiary objections are without merit and should be overruled.

# II. UMG'S OBJECTIONS TO VEOH'S EVIDENCE ARE WITHOUT MERIT AND SHOULD BE OVERRULED

### A. Simons' Declaration Statements Are Based on Personal Knowledge, And in Any Event, Papa Declares To Statements Regarding Veoh's DMCA Policy Prior To Simons' Employment

Lacking any substantive evidence to create a genuine issue regarding Veoh's proven adherence to its DMCA policy, UMG objects that statements by Veoh's Senior Management of Copyright Compliance, Stacie Simons, "lack foundation." Ms. Simons declares as follows with respect to her job at Veoh:

> my responsibilities include overseeing Veoh's adherence to its copyright policies, including Veoh's response to take down notices sent pursuant to the DMCA. I have been employed by Veoh since April 16, 2007. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would competently testify thereto.
>
> Declaration of Stacie Simons In Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Docket 336-4) ("Simons Decl.")).

Accordingly, Simons is well equipped to testify about Veoh's policies and practices. UMG also objects to Ms. Simons' statements on the grounds that they don't speak to Veoh's policies and practices prior to her employment at Veoh, which began on April 16, 2007. But as shown in the chart below, Joseph Papa—who has worked at

1

Veoh since its inception—has declared to Veoh's policies and practices from its inception. *Compare,* Simons Decl. with the Declaration of Joseph Papa In Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Docket 336-10) ("Papa Decl.") and Supplemental Declaration of Joseph Papa in Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("Papa Supp. Decl."):

| Simons' Decl. Statement | Papa's Decl. Statement |
| --- | --- |
| Simons Decl. ¶ 2:<br>"[d]uring this review for pornographic or obscene content, if employees encounter videos they suspect infringe copyright or otherwise violate Veoh's Terms of Use, they report them to me for determination and I disable access as appropriate. If other employees encounter potentially infringing videos, they will also forward them to me for determination and I disable access as appropriate." | Papa Supp. Decl. ¶ 6:<br>"It has been Veoh's policy since its inception to promptly take down suspected infringing content. Veoh has always acts promptly to disable such content, often within the same day or within a day or two. Though responding requires judgment calls, Veoh has always erred on the side of caution in disabling suspected infringing content." |
| Simons Decl. ¶ 3:<br>"Since August 15, 2005, Veoh has prominently made available on its website at Veoh.com and provided the Copyright Office the name, address, phone number, and electronic mail address of its designated agent to receive notices of claimed infringement. Attached hereto as Exhibit B is a true and correct copy of Veoh's current Copyright Policy, that is | Though of course Simons, as Senior Manager of Copyright Compliance, would be well aware of this fact, Papa testifies to the same:<br>Papa Decl. ¶ 11:<br>"From the beginning of its service, Veoh has had a designated agent to receive notices of alleged infringement. On August 15, 2005, Veoh designated an agent with the U.S. Copyright Office to |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| publicly available on Veoh's website." | receive notifications of claimed infringement. Attached hereto as Exhibit E is a true and correct copy of Veoh's Interim Designation of Agent to Receive Notification of Claimed Infringement that was provided to the U.S. Copyright Office." |
| Simons Decl. ¶ 4:<br>"Veoh has responded to thousands of DMCA notices since its inception. When Veoh receives DMCA-compliant notices, we act promptly to disable access to the video, often on the same day we received the notice, or within a day or two of receiving the notice. Veoh processes DMCA notices, removes noticed content, and responds to the complainant often on the same day it receives the complaint. As appropriate, we also act to terminate the associated user account if the account has previously been subject to a copyright removal. Veoh errs on the side of disabling videos if they might be infringing." | Papa Supp. Decl. ¶ 6:<br>"It has been Veoh's policy since its inception to promptly take down suspected infringing content. Veoh has always acts promptly to disable such content, often within the same day or within a day or two. Though responding requires judgment calls, Veoh has always erred on the side of caution in disabling suspected infringing content." |
| Simons Decl. ¶ 9:<br>"Employees may spot check some videos after publication, on an ad hoc basis, for compliance with Veoh's terms of use and | Papa Decl. ¶ 9:<br>"From the beginning of its service, Veoh has had a strong DMCA policy and zero tolerance for infringing content. Veoh |

| | |
|---|---|
| for proper categorization.  For example, employees may spot check videos that appear in prominent places on the website such as the home page, or that are identified in a infringement notice." | promptly disables access to allegedly infringing content upon notice, and has always had a policy to terminate repeat infringers.  Veoh's policies have always strictly prohibited the use of its website or software in connection with infringing content.  Veoh's website has always stated that Veoh does not permit infringing videos and that Veoh reserves the right to terminate repeat infringers.  All prior versions of Veoh's TOU and incorporated documents have contained such language.  From the beginning of its service, Veoh has adopted, implemented, and informed users of its policy providing for the termination of Veoh's users who are repeat infringers."<br><br>Papa Supp. Decl. ¶ 6:<br>"It has been Veoh's policy since its inception to promptly take down suspected infringing content.  Veoh has always acts promptly to disable such content, often within the same day or within a day or two.  Though responding requires judgment calls, Veoh has always erred on the side of caution in disabling suspected infringing content." |

| Simons Decl. ¶ 6: | Papa Decl. ¶ 9: |
|---|---|
| "If Veoh receives notice that a user has uploaded infringing content after the user has already received a first warning, the user's account is promptly terminated and all videos published with that account are disabled. The user's email address is added to a black list and cannot be used to register a new account. Veoh has terminated thousands of user accounts pursuant to its repeat infringer policy." | "From the beginning of its service, Veoh has had a strong DMCA policy and zero tolerance for infringing content. Veoh promptly disables access to allegedly infringing content upon notice, and has always had a policy to terminate repeat infringers. Veoh's policies have always strictly prohibited the use of its website or software in connection with infringing content. Veoh's website has always stated that Veoh does not permit infringing videos and that Veoh reserves the right to terminate repeat infringers. All prior versions of Veoh's TOU and incorporated documents have contained such language. From the beginning of its service, Veoh has adopted, implemented, and informed users of its policy providing for the termination of Veoh's users who are repeat infringers." |
| Simons Decl. ¶ 8: "UMG never provided Veoh with permalinks of allegedly infringing videos, or with any other information identifying specific allegedly infringing videos on Veoh's system until more than a year into this lawsuit. Prior to that time, Veoh was | Papa Decl. ¶ 16: "As to the works alleged in this case, UMG never identified allegedly infringing videos to Veoh until more than a year into this lawsuit. Veoh promptly analyzed the videos identified by UMG as infringing to determine whether any were |

| not aware of any of the specific infringements alleged by UMG." | still available on Veoh." |

Accordingly, while Simons has personal knowledge of all the facts she testifies to in her declaration, Papa has testified to the same regarding Veoh's policies for the periods before Ms. Simons arrived at Veoh. Thus, such objections should be overruled.

### B. UMG's Additional Objections to the Simons Decl. Fail

UMG objects to Simons Dep. at 86:9-86:22, and Simons Decl. ¶ 2 which states:

> [d]uring this review for pornographic or obscene content, if employees encounter videos they suspect infringe copyright or otherwise violate Veoh's Terms of Use, they report them to me for determination and I disable access as appropriate. If other employees encounter potentially infringing videos, they will also forward them to me for determination and I disable access as appropriate.

Though UMG objects that this paragraph does "not lay any foundation for statements" prior to April 16, 2007, this paragraph is based on Ms. Simons' own experience with respect to this policy—and does not purport to testify about Veoh's policy prior to her start date. Moreover, though UMG claims that what other employees do is "hearsay," Ms. Simons has actually received such communications from Veoh's employees (which have been produced to UMG) so such is hardly hearsay.

Likewise, UMG's "improper lay opinions" and "hearsay" objections to the following statement in Simons Decl. ¶ 4 are not well-taken:

> Veoh has responded to thousands of DMCA notices since its inception. When Veoh receives DMCA-compliant notices, we act promptly to disable access to the video, often on the same day we received the notice, or within a day or two of receiving the notice. Veoh processes DMCA notices, removes noticed content, and responds to the complainant often

**VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE– CASE NO. 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

on the same day it receives the complaint. As appropriate, we also act to terminate the associated user account if the account has previously been subject to a copyright removal. Veoh errs on the side of disabling videos if they might be infringing.

UMG is well aware through Veoh's production that Ms. Simons has processed thousands of notices since arriving at Veoh, which makes the first sentence indisputably true. Similarly, UMG is well aware that the remaining statements about Veoh's promptly processing DMCA notices is overwhelming confirmed by the documents produced in this action, and UMG offers no evidence to dispute this fact. UMG's objections to this undisputed testimony should be overruled.

Finally, with respect to UMG's objections that Simons Decl. ¶ 9 is improper lay testimony, there is no one better or more qualified to testify regarding the feasibility of reviewing every single video uploaded to Veoh to determine whether it is infringing than Ms. Simons. Ms. Simons is Veoh's dedicated full time employee for overseeing adherence to Veoh's copyright policy, which includes managing takedowns and review of suspected infringement. Far from constituting "conclusory" or "improper lay testimony," Ms. Simons offers this testimony based on her personal knowledge, and day-to-day experience as Senior Manager of Copyright Compliance. UMG cites *United States v. Henke,* 222 F.3d 633, 641-2 (9th Cir. 2000) in support of its argument that Ms. Simons is offering improper lay testimony on the grounds that "[i]f the jury already has all the information upon which the witness's opinion is based, the opinion is not admissible." But the trier of fact does not have "all the information" upon which the opinion is based without hearing first hand from Ms. Simons, Veoh's employee who is tasked with ensuring Veoh's compliance with its copyright/DMCA policy.

### C. Joseph Papa's Declaration Statements Are Based on His Personal Knowledge

UMG also objects to Papa's testimony about Veoh's DMCA policy at Papa Decl. ¶ 9, ¶ 11, ¶ 12, and ¶ 16. Papa is the Vice President of Engineering at Veoh. As stated in his declaration, Mr. Papa has:

> responsibility for the architecture, technical design and implementation of the systems and product engineering for Veoh.com and the Veoh client software. I have been employed by Veoh since its inception. I have personal knowledge of the facts stated herein, and if called as a witness, could and would competently testify thereto.

UMG attempts to question Papa's knowledge about Veoh's DMCA policies, though as VP of Engineering responsible for Veoh's "architecture, technical design and implementation of the systems and product engineering for Veoh.com and the Veoh client software", and such architecture, design and implementation are naturally intertwined with the implementation of Veoh's DMCA/copyright policies. With respect to Papa's testimony regarding the above and regarding the "strength" and "tolerance," such is based on Papa's personal knowledge of Veoh's policies since its inception, which is supported by ample additional evidence rendering such objections wholly immaterial. Thus, the statements in Papa's Decl. regarding Veoh's copyright policy are proper and should stand.

With respect to Papa Decl. ¶ 12 regarding the "UGC Principles," UMG's objections have no bearing on this action and UMG has not disputed that Veoh has signed onto the UGC Principles. RSGI 46. UMG's objections to Papa Decl. ¶ 14, though irrelevant and immaterial to this action, are based on misrepresentations, because Veoh has indeed produced documents regarding the development of its own filtering technology. *See* Ranahan Decl. ¶ 8. UMG's objection to Papa Decl. ¶ 15 with respect to Papa's use of the word "nascent" to describe the field of video

VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE– CASE NO. 07 5744 – AHM (AJWx)

fingerprinting is entirely irrelevant to the issues in this motion, and Papa is well qualified to testify on this topic.

Finally, UMG objects to Papa Decl. ¶ 14 on the grounds that Papa has not "established any foundation" for his statement that "implementing filtering technology was an extension of Veoh's commitment to prevent copyright infringement, and something Veoh had always contemplated." Papa has been with Veoh since its inception and is Veoh's VP of Engineering. It is hard to imagine how Mr. Papa could lay a stronger foundation for such statements.

### D. UMG's Attempt To Strike A Publicly Available 2005 Document Should Be Rejected

UMG also claims that Veoh should not be able to introduce Exhibit E to the Papa Decl. ¶ 11, which is Veoh's "Interim Designation of Agent to Receive Notification of Claimed Infringement," (a document filed with the U.S. Copyright Office in 2005) because Veoh has not yet produced the document in discovery. This document, which is from 2005, predates the litigation by years, and was not located within Veoh's review database because it was not within the possession of Veoh's custodians in this action. Veoh obtained the document from a public filing in a prior litigation---Exhibit D to the Declaration of Ted Dunning in Support of Veoh's Motion for Summary Judgment, *Io Group, Inc. v. Veoh Networks, Inc.,* Case No. 06-3926 HRL, Docket 77-2.

The request for which UMG claims this document in responsive is to UMG's request for documents regarding Veoh's "copyright policy." Even assuming this publicly available document was related to Veoh's copyright policy, UMG now has the document in advance of the discovery cut-off in this action, and it is unclear what prejudice UMG claims, especially considering that Veoh has always maintained that it has had a designated agent to received notices of claimed infringement since its inception, and UMG has never specifically requested this document. In support of its objection, UMG relies on *Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 842-844 (9th

VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE– CASE NO. 07 5744 – AHM (AJWx)

Cir. 1976), which involves a patent action where a party waited until *trial* before seeking to introduce an agreement and related documents regarding title purporting to transfer the rights to the patent at issue. *Id.* at 842-43. Such circumstances do not come close to the present situation, which involves a pre-litigation document not within Veoh's review database, that is publicly available and contains contents that are undisputed. UMG does not dispute that the document was actually filed with the Copyright Office in 2005, or that Veoh has had an agent designated to receive notices of claimed infringement since February 8, 2005. UMG is merely seeking to avoid adjudication on the merits by relying on a tenuous technicality. Thus, UMG's objections should be overruled.

## III. CONCLUSION

UMG's evidentiary objections are baseless and should be overruled in their entirety.

Dated: April 6, 2009

WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Calkins
Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.