| | |
|---|---|
| 1 | Rebecca Lawlor Calkins (SBN: 195593) |
| | Email: rcalkins@winston.com |
| 2 | Erin R. Ranahan (SBN: 235286) |
| | Email: eranahan@winston.com |
| 3 | **WINSTON & STRAWN LLP** |
| | 333 South Grand Avenue, 38th Floor |
| 4 | Los Angeles, CA 90071-1543 |
| | Telephone: (213) 615-1700 |
| 5 | Facsimile: (213) 615-1750 |
| 6 | Jennifer A. Golinveaux (SBN 203056) |
| | Email: jgolinveaux@winston.com |
| 7 | **WINSTON & STRAWN LLP** |
| | 101 California Street |
| 8 | San Francisco, CA 94111 |
| | Tel: (415) 591-1506/Fax: (415) 591-1400 |
| 9 | |
| | Michael S. Elkin (*pro hac vice*) |
| 10 | Email: melkin@winston.com |
| | Thomas P. Lane (*pro hac vice*) |
| 11 | Email: tlane@winston.com |
| | **WINSTON & STRAWN LLP** |
| 12 | 200 Park Avenue |
| | New York, New York 10166 |
| 13 | Tel: (212) 294-6700/Fax: (212) 294-4700 |
| 14 | Attorneys for Defendant VEOH NETWORKS, INC. |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.* | ) | Case No. CV 07 5744 – AHM (AJWx) |
| Plaintiffs, | ) | **VEOH NETWORKS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCUMENTS FOR THE REMAINING 80% OF IDENTIFIED COPYRIGHTS BASED ON DEFECTS ADMITTED BY UMG, OR ALTERNATIVELY, EXTENDING VEOH'S DEADLINE TO COMPLETE ITS ANALYSIS OF THE 20% SAMPLE OF CHAIN OF TITLE DOCUMENTS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | ) | |
| VEOH NETWORKS, INC, *et al.* | ) | |
| Defendants. | ) | |
| | ) | Judge: Andrew J. Wistrich |
| | ) | Discovery Cut-off: May 11, 2009 |
| | ) | Pretrial Conference: August 8, 2009 |
| | ) | Trial Date: August 18, 2009 |
| | ) | Complaint Filed: September 4, 2007 |

LA:243742.1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Court's March 5, 2009 Order Re: Veoh's Renewed Motion to Compel Plaintiffs to Produce Chain of Title/Rights Information Re Same 4(b) (Docket No. 321), and the oral instructions from the Court received on April 30, 2009, as soon as this matter can be heard before the Honorable Andrew J. Wistrich of the United States District Court for the Central District of California, at 255 E. Temple Street, Room 690, Los Angeles, California, 90012, Veoh Networks, Inc. ("Veoh") hereby does move for an order compelling plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, Universal Music – MBG Music Publishing Ltd. ("Plaintiffs" or "UMG") to produce chain of title documents for the remaining 80% of UMG's alleged infringements due to the significant defects admitted by UMG in the sample 20%.

Alternatively, if this Court does not determine that production of the 80% is warranted based on UMG's own concessions of significant defects and errors within the sample 20%, Veoh seeks immediate production of chain of title documents for twenty-six additional works to be identified by Veoh (to replace the alleged infringements withdrawn by UMG) and thirty additional days to complete its review and analysis of UMG's chain of title documents for the sample 20%.

This motion is brought on the grounds that, after UMG refused to allow Veoh the necessary time to complete its review and analysis of UMG's chain of title documents for the sample 20% identified by Veoh (despite the fact that UMG literally dumped 100,000 pages of documents in no conceivable or legitimate order), and after Veoh devoted significant resources to reviewing the chain of title documents for the 241 works representing the 20% sample, UMG notified Veoh that at least twenty-six of the alleged infringements within the 20% sample of 241 works were somehow

i

defective, and withdrew those infringements from the action for such reasons as "changes in rights due to the passage of time." (Docket 429, p. 2:12-13). UMG further identified numerous additional errors in identifying copyright registration numbers. UMG's actions caused a significant waste of Veoh's resources in attempting to locate and organize the documents based on how UMG elected to provide the documents and the erroneous information provided by UMG.[1] Given the reduction in millions of dollars in potential damages as a result of alleged infringements already withdrawn by UMG's own admissions, there is no question that UMG's production of chain of title documents for the remaining 80% works is warranted and necessary.

Relief is necessary to compel UMG to promptly collect and produce remaining chain of title documents so that Veoh may adequately prepare its defense. Alternatively, relief is necessary to permit Veoh needed time to complete this critical review and analysis of the 20% sample works, and further demonstrate the need for complete production of UMG's chain of title documents so that Veoh may adequately prepare its defense. On April 29, 2009, Veoh's counsel met and conferred pursuant to the procedures set forth in the Court's March 5, 2009 Order Re: Veoh's Renewed

//
//
//
//
//
//
//

---

[1] In its April 22, 2009 letter identifying such defects, UMG has acknowledged defects in at least 10% of the 20% sample infringements, in addition to numerous additional alleged infringements, resulting in a reduction in potential statutory damages of up to $6,000,000. 60% of the defects noted by UMG in its April 22, 2009 letter were from the 20% sample infringements, suggesting that UMG conducted additional diligence of the works for which it was ordered to produce chain of title documents.

ii
VEOH'S RENEWED MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS, ETC.
Case No. CV 07 5744 – AHM (AJWx)

Motion to Compel Plaintiffs to Produce Chain of Title/Rights Information Re Same 4(b) (Docket No. 321) to attempt to resolve the issues raised herein, to no avail.

Dated: May 4, 2009

**WINSTON & STRAWN LLP**

By   /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC

## I. INTRODUCTION

Allowing Veoh the opportunity to investigate whether UMG actually has the rights to the alleged infringements in this action is critical to Veoh's ability to prepare its defense and critical to understanding the true scope of potential liability here. On March 5, 2009, this Court recognized that production of chain of title documents was warranted, ordering UMG to produce chain of title information for 20% of the allegedly infringing works to determine whether there were sufficient defects that would warrant production of chain of title information for the remaining works.[2] On April 22, 2009, nine business days after UMG purportedly provided chain of title documents for the 20% sample works identified by Veoh, and before Veoh had completed its analysis of the 20% sample, UMG withdrew twenty-six of the works within the 20% sample from the action entirely, and identified numerous additional errors and inaccuracies in its list of alleged infringements. UMG withdrew a total of forty works, amounting to a reduction in $6,000,000 in potential statutory damages. With this *ex parte* application, Veoh seeks the production of the remaining 80% chain of title documents as a result of the significant defects identified by UMG itself within the 20% sample works.

Though Veoh believes that the defects identified by UMG alone warrant complete production of UMG's chain of title documents, alternatively, Veoh requests that UMG produce chain of title/rights information for twenty-six new works to be identified by Veoh, and that Veoh be provided, in light of the random and completely disorganized nature of UMG's nearly 100,000 page production, thirty additional days to review the 20% sample works to identify further defects.

---

[2] A similar ruling was challenged by UMG in *DivX*, but on March 13, 2009, Judge Matz upheld the ruling, stating that "it is not clearly erroneous or unlawful to conclude that the . . . chain-of-title documents are necessary for Defendant to mount a defense in this lawsuit." (*UMG Recordings, Inc. v. DivX Inc. et al.*, Case No.CV-07 06835, Docket 161).

1
VEOH'S RENEWED MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS, ETC.
Case No. CV 07 5744 – AHM (AJWx)

## II. FACTUAL BACKGROUND

On March 5, 2009, the Court entered its Order granting, in part, Veoh's Renewed Motion to Compel Plaintiffs to Produce Chain of Title/Rights Information Re Allegedly Infringing Works (Docket 321) ("March 5 Order"). Prior to entering the March 5 Order, the Court asked the parties to submit proposed orders substantially similar to a similar order entered in *UMG Recordings, Inc. v. DivX Inc. et al.,* Case No.CV-07 06835 on February 11, 2009. (Docket 304). **The *DivX* Order entered on February 11, 2009 provided thirty (30) days for the defendant *DivX* to review the chain of title documents for defects.** (*DivX,* Docket 135, (4)(b)). The proposed order submitted by UMG did not impose any deadline whatsoever regarding how quickly Veoh must complete its analysis. (Docket 301-2). Veoh (seeking to condense the deadlines to fit within the prior April 13, 2009 discovery cut-off) included the ten-day review period in its proposed order,[3] along with a provision that the documents be produced in a manner that indicated "to which allegedly infringed work such documents relate." (Docket 305-2). The Court did not include the later, organizational provision in the final order, which made the ten-day review period infeasible, especially given the manner in which UMG produced the documents, the electronic errors that were not resolved until a week after production, and numerous additional errors regarding copyright certificate numbers identified the *day before* the analysis was due under the March 5 Order.

Pursuant to the March 5 Order, on March 9, 2009, Veoh identified a 20% sample of works to UMG. (Declaration of Erin R. Ranahan in Support of Veoh's Motion to Compel UMG to Produce Chain of Title Documents for the Remaining 80% of Identified Copyrights Based on Defects Admitted by UMG, or Alternatively, Extending Veoh's Deadline to Complete Its Analysis ("Ranahan Decl.") ¶ 2 and Exh.

---

[3] Veoh also sought production of such documents within fifteen (15) days instead of the thirty (30) days allowed by the *DivX* order in attempt to fit this production within the prior discovery cut-off, but the Court allowed thirty (30) days for UMG's production, which was consistent with the *DivX* Order.

2
VEOH'S RENEWED MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS, ETC.
Case No. CV 07 5744 – AHM (AJWx)

A.) On April 9, 2009, UMG produced approximately 100,000 pages in a disorganized and haphazard manner. (*Id.* at ¶ 3). The production also contained numerous electronic production errors and deficiencies, including image load file containing lines referencing files that were not produced and duplicate images not found in the "IMAGES185" folder. These issues were not resolved until Tuesday, April 14, 2009. (*Id.* at ¶ 3 and Exh. B).

On April 17, 2009, Veoh contacted UMG to seek an extension of the ten days provided by the Order due to both the volume and manner in which the documents were produced. (*Id.* at ¶ 4 and Exh. C.) During discussions on April 20, 2009 regarding Veoh's proposed extension, UMG's counsel indicated that he would do his best to get back to Veoh the same day about whether UMG would agree to Veoh's requested extension. (*Id.*) Veoh's counsel did not hear back from UMG's counsel on April 20, 2009, or the following day. (*Id.*) On April 21, 2009, Veoh's counsel sent a follow-up email to UMG's counsel stating:

> It is not feasible for Veoh to complete its chain of title analysis of the initial 20% under the current schedule due to the volume and manner in which these documents were produced (nearly 100,000 pages of documents not organized in a manner that would indicate which documents relate to which alleged infringement) and the electronic production deficiencies that were just resolved Tuesday, April 14 (including image load file containing lines referencing files that were not produced and duplicate images not found in the "IMAGES185" folder).
>
> The *DivX* order that Judge Wistrich asked that our proposed order model provides (30) days for the review of the sample works to be completed, and even the proposed order submitted by UMG did not impose any deadline whatsoever regarding how quickly Veoh must complete its

analysis (Docket 301-2). Thus, it is unclear why UMG would now be opposed to allowing Veoh this additional needed time.

> We would like to conserve the resources of the Court and the parties with respect to this matter, so please let us know as soon as possible whether UMG will agree to this extension. Otherwise, Veoh will have no choice but to move for ex parte relief for an order granting Veoh an extension to complete the chain of title review of the initial 20%.

(*Id.* at ¶ 5 and Exh. D.)

On April 22, 2009, at 8:30 a.m., UMG responded by indicating that it would allow Veoh only four additional days to complete its review. (*Id.* at ¶ 6 and Exh. E.) Later that same day, at 6:44 p.m, UMG's counsel provided a letter to Veoh's counsel conceding that at least twenty-six of the alleged infringements identified by Veoh in its 20% sample works were somehow defective, including rows 122, 135, 246, 247, 252, 260, 464, 582, 797, 798, 837, 1116, 1119, 1120, 1236, 1240, 1255, 1335, 1343, 1439, 1440, 1514, 1525, and 1560. (*Id.* at ¶ 7 and Exh. F.) This means that at least 10% of the 20% sample of works identified by Veoh, and for which UMG was supposed to produce chain of title documents, contain some defect or other error. In fact, UMG's April 22, 2009 letter identified defects in forty copyrights that UMG has now withdrawn from its list of alleged infringements--a reduction in potential statutory damages of up to $6,000,000. Though UMG's letter did not state the specific reasons that it was withdrawing such works, in a recent submission to the Court, UMG explained that withdrawals were made due to "changes in rights due to the passage of time." (Docket No. 429, p. 2:12-13).

UMG's April 22, 2009 letter also identified dozens of additional errors in listing copyright registration information, which caused Veoh to waste significant resources searching for copyright registrations that were apparently erroneous. (Ranahan Decl.

4

VEOH'S RENEWED MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS, ETC.
Case No. CV 07 5744 – AHM (AJWx)

¶ 7 and Exh. F). In addition to the electronic production errors, and the volume and manner in which the documents were produced, these recently-identified errors have delayed Veoh's ability to review the chain of title information within the ten days contemplated by the March 5, 2009 Order. In short, UMG waited over four months from the time it finally identified its alleged infringements (in December 2008 and January 2009 after extensive motion practice), and one day before Veoh's analysis was due under the March 5, 2009 Order, to inform Veoh that at least forty of those alleged infringements were improper and several others had been misidentified.

Pursuant to the March 5 Order, the parties met and conferred on April 27, 2009 to discuss production of chain of title documents for the remaining 80%. UMG refused to agree to make the additional production, and also refused to agree to produce chain of title/ownership documents for twenty-six additional works to replace the twenty-six works that UMG had withdrawn for alleged defects. Therefore, UMG's position is that Veoh should not be able to treat the twenty-six withdrawals within the 20% as defects sufficient to warrant further production, but at the same time UMG would not supplement such production so that Veoh was permitted to actually review a full 20%.

### III. UMG SHOULD BE ORDERED TO PRODUCE CHAIN OF TITLE DOCUMENTS FOR THE REMAINING ALLEGED INFRINGEMENTS

Based on UMG's own acknowledgement of significant defects in the sample 20%, it is clear that UMG's list of alleged infringements contains sufficient defects such that production of the remaining chain of title/rights information is warranted and necessary. Indeed, 60% of the deficiencies identified in UMG's April 22, 2009 letter are within the 20% sample infringements identified by Veoh. Thus, the defects in the works withdrawn voluntarily by UMG appear to be just the tip of the iceberg. It is likely that UMG has undertaken some additional diligence in reviewing the 20% sample infringements (diligence that UMG should have taken before identifying such works in December 2008 and January 2009). Had Veoh not pressed for the review

and the production of the chain of title/ownership documents, it is unlikely UMG would have ever undertaken this additional diligence and Veoh would not have had the opportunity to discover such defects.

UMG delayed more than a year into this lawsuit, requiring extensive motion practice, before identifying any infringements. Now, UMG has waited over four months from the time it finally identified its alleged infringements to inform Veoh that at least forty of those alleged infringements were improper and several others had been misidentified. As the production of the chain of title/rights information for the sample 20% resulted in UMG's own withdrawal of infringements—withdrawal that reduced potential damages against Veoh up to $6,000,000, it is likely that production of the remaining 80% will lead to the discovery of even more significant defects and the reduction of millions more dollars in potential damages. For example, if the same percentage of defects already identified by UMG with respect to the 20% runs across the remaining 80%, that amounts to a further reduction in potential damages of nearly $20,000,000. Accordingly, the benefit of producing such documents outweighs the burden on UMG, and this Court should order UMG's prompt production of the remaining 80% of chain of title/rights information documents.

## IV. ALTERNATIVELY, UMG SHOULD BE ORDERED TO IMMEDIATELY PRODUCE CHAIN OF TITLE DOCUMENTS FOR TWENTY-SIX REPLACEMENT WORKS AND VEOH SHOULD BE PROVIDED ADDITIONAL TIME TO COMPLETE ITS REVIEW

If the Court does not consider the significant defects UMG identified as sufficient to warrant the production of UMG's chain of title/rights information for the remainder of UMG's allegedly infringing works, UMG should at the very least be ordered to immediately produce chain of title/rights information for twenty-six new works upon selection by Veoh. Otherwise, UMG's suspect timing (coming as it did four months after the works were identified but one day before Veoh's analysis of the chain of title documents were due) in disclosing these significant defects prevented

Veoh from identifying such defects as part of the sample 20% and allowed UMG to avoid producing chain of title documents for 20% works (because UMG has withdrawn 10% of the sample 20%).

In light of the manner and volume in which the documents were produced to Veoh prior to UMG's disclosure of significant defects, and upon production of such additional chain of title/rights information, Veoh respectfully requests thirty days to review and complete its analysis of the 20% sample works. Veoh had requested thirty additional days to review the chain of title information but UMG refused this extension. UMG's position is remarkable considering that it took UMG (at least) four months to identify its own errors in its list of alleged infringements, and the numerous errors in identifying the correct registration numbers, UMG refused to allow Veoh thirty days to complete its review of the 20%, instead insisting that Veoh should be able to identify defects within two weeks. This is especially true considering that the *DivX* order that the Court asked that the parties proposed order to model provides (30) days for the review of the sample works to be completed, and even the proposed order submitted by UMG did not impose any deadline whatsoever regarding how quickly Veoh must complete its analysis (Docket 301-2).

Not only did UMG's April 22, 2009 withdrawal of twenty-six of such works result in wasted time and organization spent by Veoh in reviewing what it had understood to be UMG's chain of title information for its 20% sample works, UMG's identification of dozens of additional errors in properly identifying its copyright registrations caused even more delay in Veoh's ability to complete its review, such as Veoh expending significant time searching for copyright registrations that were apparently erroneous. Veoh should not be prevented from completing its analysis as a result of UMG's suspect timing in revealing defects within the 20%. Accordingly, as various factors outside of Veoh's control have prevented Veoh's ability to complete its review within the ten days included in the March 5, 2009 Order, if this Court is not

7

satisfied that production of all of UMG's chain of title/rights information is warranted, Veoh requests additional time to complete its review.

## V. CONCLUSION

Veoh respectfully requests that as a result of the significant defects UMG has acknowledged exist within the 20% sample works, UMG be ordered to produce chain of title/rights information for the remaining 80% alleged infringements in this action. Alternatively, UMG should be ordered to produce chain of title/rights information for twenty-six additional works selected by Veoh, and Veoh should be provided thirty additional days to review the 20% sample infringements to complete its review/analysis.

Dated: May 4, 2009            **WINSTON & STRAWN LLP**

By   /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.