IRELL & MANELLA LLP
Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

UMG RECORDINGS, INC., *et al.*,

Plaintiffs,

vs.

VEOH NETWORKS, INC., *et al.*,

Defendants.

Case No. CV-07-05744 AHM (AJWx)

**UMG'S OPPOSITION TO VEOH'S MOTION TO COMPEL THE PRODUCTION OF ADDITIONAL CHAIN-OF-TITLE DOCUMENTS, OR ALTERNATIVELY TO EXTEND VEOH'S DEADLINE TO COMPLETE ITS REVIEW OF UMG'S CHAIN-OF-TITLE DOCUMENTS**

**Filed Concurrently Herewith: Declaration of Carter Batsell in Support of UMG's Opposition**

Judge: Hon. Andrew J. Wistrich

Discovery Cutoff: May 4, 2009
Pretrial Conference: August 3, 2009
Trial Date: August 18, 2009

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

2059169.1 02

UMG'S OPPOSITION TO VEOH'S MOTION TO COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-TITLE DOCUMENTS, OR TO EXTEND VEOH'S DEADLINE TO COMPLETE ITS REVIEW

Dockets.Justia.com

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | VEOH OFFERS NO BASIS FOR ORDERING A MASSIVELY BURDENSOME PRODUCTION | 7 |
| | A. Production Of All "Chain-Of-Title" Documents Would Impose Undue Burden On UMG | 7 |
| | B. Veoh Offers No Basis For Further Production | 8 |
| | C. Veoh's Request Appears Calculated Solely To Inflict Burdens | 9 |
| IV. | VEOH HAS ALREADY HAD MORE THAN 30-DAYS TO REVIEW UMG'S PRODUCTION | 10 |
| V. | CONCLUSION | 11 |

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2059169.1 02

- i -

UMG'S OPPOSITION TO VEOH'S MOTION TO
COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-
TITLE DOCUMENTS, OR TO EXTEND VEOH'S
DEADLINE TO COMPLETE ITS REVIEW

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Nicolas J. Murlas Living Trust v. Mobil Oil Corp.*,
　1995 WL 124186, *5 (N.D. Ill. Mar. 20, 1995) ............................................... 8

*Oxford House, Inc. v. City of Topeka, KS*,
　2007 WL 1246200 (D. Kan. Apr. 27, 2007) ..................................................... 8

*Wright v. AmSouth Bancorporation*,
　320 F.3d 1198 (11th Cir. 2003) ......................................................................... 8

**Statutes**

17 U.S.C. § 411 ............................................................................................................ 3

Fed R. Civ. P. 26(b)(2)(C) ............................................................................................ 8

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2059169.1 02

- ii -

UMG'S OPPOSITION TO VEOH'S MOTION TO
COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-
TITLE DOCUMENTS, OR TO EXTEND VEOH'S
DEADLINE TO COMPLETE ITS REVIEW

## I. INTRODUCTION

Veoh previously sought so-called "chain-of-title documents" for all of the copyrighted works at issue in this matter. Veoh claimed that if only UMG produced its documents, Veoh would uncover vast troves of evidence that UMG lacked standing to assert rights in many of the works at issue in this case. The Court granted Veoh's request in part, but limited UMG's obligations to a sample (albeit a sizable sample) of works to be chosen by Veoh. UMG made this very burdensome production. Now Veoh seeks to inflict the far greater burden of producing such documents for all of the works at issue. In support of its request, Veoh fails to identify a single document produced by UMG that purportedly supports Veoh's defenses. Instead, Veoh's sole basis for its request is the fact that UMG independently revised its list of more than 2,400 infringing videos to remove a small number of videos (some of which were part of Veoh's selected sample and some of which were not) and to correct certain other errors (such as typographical errors in the entry of copyright registration numbers as to several songs). Veoh claims that because UMG made these corrections (of its own accord and without any prompting by Veoh), UMG should be compelled to make a massive, undisputedly burdensome production. Veoh's "justification" for its request is completely without substance, and Veoh's request should be denied.

First, the production demanded by Veoh would massively burden UMG. Veoh's widespread infringement resulted in the theft of thousands of UMG's copyrighted works. The so-called chain-of-title documents associated with those works comprise hundreds of thousands if not millions of pages of material. Veoh does not dispute that gathering and producing these documents will inflict an enormous burden on UMG. Nor can Veoh dispute that UMG's production of these documents – and Veoh's review of these documents, if it reviews them at all – is incompatible with the current case schedule. Producing and reviewing the universe of chain-of-title documents will require considerably more time, just as the parties'

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2059169.1 02

- 1 -

UMG'S OPPOSITION TO VEOH'S MOTION TO
COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-
TITLE DOCUMENTS, OR TO EXTEND VEOH'S
DEADLINE TO COMPLETE ITS REVIEW

edge closer to a summer trial. Simply put, Veoh's demand is unduly burdensome and inconsistent with the current case schedule and should therefore be rejected.

Further, Veoh's demand would effectively punish UMG for diligently correcting a small portion of its infringement list. On April 9th, UMG produced chain-of-title documents for a sampling of works selected by Veoh. Veoh has not identified a single defect in the chain-of-title for the sample works. During the parties' meet and confer, UMG pressed Veoh to identify *any* chain-of-title defect for the sample works. It could identify none. Veoh must come forward with something more than *UMG's* good faith and diligence to justify the massively burdensome production it now seeks.

Finally, as an alternative, Veoh seeks thirty-days to complete its review of the chain-of-title documents for the sample works (despite the fact that Veoh itself proposed the ten-day limitation found in the Court's Order). Veoh has already had more than thirty-days to review UMG's documents, and the Court should therefore reject its alternative request for additional time as moot.

For all of these reasons, the Court should deny Veoh's Motion.

## II. <u>FACTUAL BACKGROUND</u>

Veoh's recounting of the facts relating to this issue contains multiple false and misleading statements. UMG corrects those errors below.

Veoh moved to compel UMG to produce all so-called chain-of-title documents for all of the works at issue in this case on multiple occasions. The Court denied Veoh's motions without prejudice multiple times. Veoh re-presented this issue in a motion heard by the Court on December 17, 2008. In connection with that motion, UMG submitted (again) evidence of the massive burden that such a production would inflict on UMG. *See generally* Declaration of Michael Ostroff (attached as Exhibit C to the Declaration of Brian Ledahl in Support of UMG's Opposition to Veoh's Renewed Motion to Compel Chain of Title Discovery (Dkt.

2059169.1 02

- 2 -

UMG'S OPPOSITION TO VEOH'S MOTION TO COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-TITLE DOCUMENTS, OR TO EXTEND VEOH'S DEADLINE TO COMPLETE ITS REVIEW

# 247)).[1]  UMG offered undisputed evidence that the production Veoh sought would cost potentially millions of dollars. *Id.* UMG questioned the degree to which, even if produced, the documents sought would be used for anything.  Veoh was unable to offer any principled argument to support its requests.  Among other things, in responding to Veoh's motion, UMG noted that the Copyright Act had recently been amended to render unavailable precisely the kind of challenges Veoh claimed it hoped to make using the material it sought.  *See* 17 U.S.C. § 411(b).  When asked by the Court how this statute (amended in October 2008) affected its position, Veoh was unable to offer any response.  Batsell Decl., Ex. B (12/17/2008 Hearing Transcript at 115:9-20).

On March 5, 2009, the Court ultimately entered an Order requiring UMG to produce chain-of-title documents for a portion of the works infringed by Veoh.  *See* March 5, 2009 Order re: Veoh's Renewed Motion to Compel Plaintiffs to Produce Chain of Title/Rights Information (Docket No. 321) ("March 5, 2009 Order" or the "Order").  The Court struck a balance between the alleged benefit or relevance of the documents sought by Veoh and the burden to UMG of producing such material.  Specifically, the Court ordered UMG to produce categories of documents with respect to a portion of the works at issue.  The Court gave Veoh the opportunity to select the sample works for which UMG would produce documents. *Id.* at ¶ 2.

The Order contemplated that if, in its review of the documents produced, Veoh "identif[ied] any deficiencies in Plaintiffs' claimed ownership of the sample works-in-suit," Veoh could identify those alleged deficiencies to UMG within ten days after UMG's production. *Id.* at 4.(b).  Veoh – not UMG – proposed the ten-day time frame, which the Court ultimately ordered. *See* Batsell Decl., Ex. C (2/18/2009 email from R. Calkins to B. Glatstein attaching Veoh's proposed order).

---

[1] For the Court's convenience, UMG has attached a copy of Mr. Ostroff's Declaration to the Declaration of Carter Batsell in Support of UMG's Opposition to Veoh's Motion to Compel Additional Chain-of-Title Documents or to Extend Veoh's Deadline to Complete Its Review ("Batsell Decl.") as Exhibit ("Ex.") A

2059169.1 02                          - 3 -

UMG'S OPPOSITION TO VEOH'S MOTION TO COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-TITLE DOCUMENTS, OR TO EXTEND VEOH'S DEADLINE TO COMPLETE ITS REVIEW

On March 9th, Veoh identified works for which UMG would produce "chain-of-title" documents. On April 9th, UMG produced documents relating to the identified works. Batsell Decl. at ¶ 2. Compiling and producing these documents was extremely burdensome. UMG's production even as to the sample of works for which the Court compelled production was almost 100,000 pages of material. *Id*. Veoh now complains that "UMG produced approximately 100,000 pages in a disorganized and haphazard manner." Mot. at 3:1-2. This complaint is completely false. UMG's production was neither disorganized nor "haphazard." To the contrary, UMG's production is far more helpfully organized than required by the Federal Rules of Civil Procedure. For example, the first document in UMG's chain-of-title production is an administrative agreement between plaintiff Songs of Universal, Inc. ("SOU") and Dave Grohl; the second, an exclusive songwriter and co-Publishing agreement between SOU and Mr. Grohl; and the third, a copyright registration for "Times Like These," authored by Mr. Grohl. Batsell Decl. at ¶ 3. Veoh identified "Times Like These" in its list of sample works. Declaration of Erin Ranahan in Support of Veoh's Motion ("Ranahan Decl."), Ex. A (3/9/2009 letter from R. Calkins to B. Ledahl). Likewise, in the second group of documents: the first document is a copyright registration for "Just Lose It," authored by Marshall Mathers (p/k/a, Eminem); the second, an administration agreement between SOU and Mr. Mathers; and the third, an agreement between SOU, Plaintiff Universal Music Corp. ("UMC"), and Shady Music Publishing LLC (an entity affiliated with Mr. Mathers) with respect to co-publishing and/or administration of musical compositions acquired from third parties. Batsell Decl. at ¶ 4. Veoh identified "Just Lose It" in its list of sample works. Ranahan Decl., Ex. A (3/9/2009 letter from R. Calkins to B. Ledahl). This organization is neither "disorganized" nor "haphazard" – it permits Veoh to easily review the materials and to easily connect them to the identified infringing videos. Veoh offers no explanation of how this organization allegedly hindered its review of the material – nor could it.

Veoh also falsely complains that UMG's production "contained numerous electronic production errors and deficiencies." In point of fact, Veoh identifies a single error in the electronic data provided along with UMG's document production. Mot. at 3:2-6. Though UMG produced its documents on April 9th, Veoh did not identify this minor glitch until April 14. Ranahan Decl., Ex. B. UMG addressed this "problem" *within one hour* of Veoh's raising it. *Id*. Moreover, even before this correction, all of the documents were in Veoh's possession, properly organized as discussed above. Batsell Decl. at ¶ 5. The issue related only to the associated data provided along with the documents – specifically, the data included additional entries that did not correspond to the documents produced. *Id*. Veoh does not explain how this small, temporary technical glitch impeded its review. In short, Veoh's arguments about the form of production are simply a distraction.

On April 22, 2009 – after Veoh should have completed it review, pursuant to the Court's Order – UMG agreed to extend Veoh's time to conduct such review by four days. Ranahan Decl., Ex. E.

UMG also took affirmative steps on its own to ensure that its list of infringed works was accurate. Specifically, on its own initiative, UMG amended its list of infringements, removing a total of twenty-nine videos (out of more than 2,400) (*i.e.*, about 1%), for various reasons including simple data entry errors, changes in rights due to the passage of time, and other inadvertent inclusions on the list. These 29 videos were spread throughout the list of videos previously identified as infringing and were not limited to the smaller number of sample works identified by Veoh pursuant to the Court's March 5 Order.[2]

---

[2] Veoh alleges that UMG's correcting a limited number of typographical errors "caused [it] to waste significant resources searching for copyright registrations that were apparently erroneous." Mot. at 4:27-28. This cannot be true. UMG's April 22nd letter identified only <u>two</u> works from Veoh's list of sample works (Akon's "Smack That" and 50 Cent's "In Da Club") for which the registration numbers were incorrect. Batsell Decl. at ¶ 9. UMG, however, correctly identified these registration numbers for other videos featuring the same works. *Id*.

1         Now, however, having had ample opportunity to review UMG's "chain-of-title" production for more than thirty-days, *Veoh has not identified a single document produced by UMG that somehow shows that UMG does not own or control the copyright to one of the works at issue*. Veoh has also not identified a single copyright as to which it contends UMG's claim of ownership or control is defective. Instead, Veoh asserts that because UMG, of its own accord, corrected a few, isolated errors on its very long list of infringing videos, Veoh should now be able to force UMG to incur the even greater burden of producing "chain-of title documents" for all of the videos identified as infringing.

        When the parties conferred (pursuant to the March 5 Order) on April 27, 2009, UMG pressed Veoh to explain why this production was necessary, and more specifically, what defects Veoh found that might warrant forcing UMG to undertake this burdensome production. Batsell Decl. at ¶ 10. *Veoh admitted that it had not identified a single defect in UMG's ownership over any of the copyrights identified from its review of UMG's production. Id.* Veoh further conceded that its sole basis for seeking further production was the fact that UMG had voluntarily removed the small number of works (again, 1%) that were originally included on its list of more than 2,400 infringing videos.[3] On May 4, 2009, Veoh brought the present motion.

---

Veoh nowhere explains how these minor typographical errors – as to just two works – "caused Veoh to waste significant resources."

[3] It bears emphasizing that not all of the 1% of the works included in UMG's original list were put there in error. Since UMG's rights to works may change over time, works that were originally correctly included for which UMG no longer controls rights were properly included in the first instance.

# III. VEOH OFFERS NO BASIS FOR ORDERING A MASSIVELY BURDENSOME PRODUCTION

## A. Production Of All "Chain-Of-Title" Documents Would Impose Undue Burden On UMG

Veoh nowhere disputes that production of chain-of-title documents for all works at issue would heavily burden UMG. Many works are at issue in this case because *Veoh's* infringement was pervasive and widespread. That fact should not, however, permit Veoh to wield its own unlawful conduct as a club to inflict massive discovery burdens on UMG – the victim of Veoh's massive infringement. As detailed in the Declaration of Michael Ostroff, previously submitted to this Court and attached to the Batsell Declaration as Exhibit A, UMG controls copyrights to more than 100,000 sound recordings and musical compositions. UMG has already identified more than 2,400 videos,[4] available through Veoh, that infringe UMG's copyrights. *See* Batsell Decl., Ex. D. Many implicate more than one UMG copyright (*i.e.*, both a sound recording and a publishing copyright). *Id.* Producing records associated with these thousands of copyrights would be a vast undertaking, requiring the location and review of hundreds of thousands of documents, thousands of hours of UMG employee time, and likely millions of dollars in costs. As confirmed by UMG's recent production, this process requires locating and reviewing records in disparate locations and across different UMG-business units. *Id.*, Ex. A (¶¶ 5-9 (sound recordings), ¶¶ 10-12 (musical compositions)). It requires, for example, that UMG locate, review, and produce administration and exclusive songwriter agreements, other licenses with artists and producers, and licenses for the underlying composition. *Id.* (¶ 7). The files containing these materials are not centrally located within UMG. They are located in the files of UMG's various labels and divisions and others involved in any individual licensing situation. *Id.*

---

[4] On May 11, 2009, and pursuant to the Court's April 6, 2009 Order, UMG identified thousands of additional videos available through Veoh that infringed UMG's copyrights. Batsell Decl. at ¶ 11.

2059169.1 02 - 7 -

UMG'S OPPOSITION TO VEOH'S MOTION TO
COMPEL PRODUCTION OF ADDITIONAL CHAIN-OF-
TITLE DOCUMENTS, OR TO EXTEND VEOH'S
DEADLINE TO COMPLETE ITS REVIEW

More fundamentally, requiring production of these documents might well necessitate further alteration of the case schedule. The parties have reached the end of fact discovery, and trial in this matter begins this summer. UMG's production of "chain-of-title" documents for the sample works identified by Veoh took more than one month and generated almost 100,000 pages of documents. Producing chain-of-title documents for *all* works in suit will take considerably more time and generate considerably more paper, electronic or otherwise. Such a production simply is not compatible with the current case schedule.

### B. Veoh Offers No Basis For Further Production

To justify burdensome discovery, Veoh must show that the importance of the discovery sought outweighs the significant burden on UMG. The Court can and should limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed R. Civ. P. 26(b)(2)(C); *see also Nicolas J. Murlas Living Trust v. Mobil Oil Corp.*, 1995 WL 124186, *5 (N.D. Ill. Mar. 20, 1995) (denying discovery because the burden of production outweighed the limited relevance of the requested material); *Wright v. AmSouth Bancorporation*, 320 F.3d 1198 (11th Cir. 2003); *Oxford House, Inc. v. City of Topeka, KS*, 2007 WL 1246200 (D. Kan. Apr. 27, 2007).

The Court already weighed the purported benefit of such discovery against the burden to UMG and ordered only a partial production. While even that partial production was incredibly burdensome to UMG, producing such documents for the remaining works at issue would be dramatically more burdensome. In seeking the documents the Court ordered produced, Veoh claimed it would find extensive evidence that UMG lacked standing to assert its claims of infringement. The Court left open the possibility that if, after a sample production, Veoh could substantiate such claims, then the Court would consider whether further production was necessary. Having now had the documents for more than 30-days, Veoh has not identified a single document produced by UMG that it can claim somehow supports

its standing arguments.  All that Veoh can say is that UMG voluntarily corrected certain errors on its list of infringements.

Veoh's argument gets it backward: Veoh asks the Court to punish UMG for diligently reviewing its list of infringing videos and correcting a small number of errors identified therein while Veoh itself has failed to identify a single chain-of-title defect in the sample works (including even those that UMG removed), despite having had UMG's production for more than thirty-days.  This makes absolutely no sense and is manifestly unfair.

Veoh falsely suggests that "[h]ad Veoh not pressed for the review and the production of chain of title/ownership documents, it is unlikely UMG would have ever undertaken this additional diligence." Mot. at 5:28-6:2.  UMG's conduct wholly belies this argument.  UMG removed works from its list of infringements not included in Veoh's sample list of works – indeed, approximately forty-percent of the works removed by UMG were not in Veoh's sample – and hence Veoh's "pressing for production" is not the source of UMG's diligence.  Veoh must come forward with something more than UMG's good faith correction of errors to justify the massively burdensome production it demands.

### C. Veoh's Request Appears Calculated Solely To Inflict Burdens

Veoh suggests that it intends to spend considerable resources reviewing these documents, all in an effort to identify works, if any, for which UMG seeks damages, but does not own rights.  To date, the count of such works Veoh has identified is zero.  Veoh suggests that further production of chain-of-title documents will yield far more works for which UMG does not own rights.  Obviously, it could not yield fewer, since Veoh has yet to identify a single defect in UMG's ownership of works based on the documents already produced.

Given that Veoh presumably created its list of sample works with the intent of uncovering the most rights-related issues possible, its inability to identify any such issues after having an opportunity to do so confirms what UMG has said from the

outset – Veoh's claims of widespread ownership problems are speculative and unsubstantiated. Indeed, Veoh fails to offer any evidence that it has even made a basic attempt to review the documents already produced by UMG. Given the schedule of this case, which Veoh has repeatedly advocated against extending, Veoh cannot meaningfully argue that it will undertake to review the massive amount of material it seeks before any trial of this matter is already over.[5]

## IV. VEOH HAS ALREADY HAD MORE THAN 30-DAYS TO REVIEW UMG'S PRODUCTION

As an alternative to immediately compelling UMG to make a massively burdensome and unjustified additional production, Veoh "requests thirty days to review and complete its analysis of the 20% sample works." Presumably, Veoh hopes that after more time it could make another try at seeking to inflict a burdensome production on UMG. Veoh's alternative "remedy," however is unnecessary. Veoh has already had more than thirty days to review UMG's production. UMG produced its "chain-of-title" documents on April 9th. Veoh's request for additional time is therefore moot and Veoh has shown no justification for taking up still more of this Court's time with unsupported requests for burdensome

---

[5] Only Veoh is to blame for this scheduling conflict. Veoh first moved to compel production of chain-of-title documents in August 2008. The Court denied Veoh's motion, noting that it contained "hundreds of requests," that it "exceed[ed] 300-pages," and that Veoh's grouping of requests was "so broad that [it] really [wasn't] meaningful." Batsell Decl., Ex. E (8/25/2008 Hearing Transcript at 19:16-17, 22:10-14). Veoh then brought a second motion to compel production of chain-of-title documents on October 29, 2008, which again the Court rejected. The Court ruled that the relief requested by Veoh was "too broad and has not been shown to be tethered to the scope of any particular discovery requests it has served." *Id.*, Ex. F (11/21/2008 Order). Not until Veoh brought its third motion to compel – on precisely the same issue – did the Court grant Veoh's request. Veoh's imprudent discovery conduct and motion practice is therefore responsible for this scheduling impasse.

production.[6]  Because Veoh's demand for additional time is moot, the Court should deny Veoh's alternate request for further time.

## V. CONCLUSION

For all of the foregoing reasons, UMG requests that the Court deny Veoh's Motion to Compel.

Dated:  May 12, 2009

Respectfully submitted,

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By:  /s
      Brian Ledahl

Attorneys for Plaintiffs

---

[6] Further, as discussed previously, Veoh's arguments about the purported "disorganized" nature of UMG's production are completely false.  Veoh had more than a fair opportunity to review the materials Veoh claimed were critical when seeking them before this Court.  Having failed to identify a single "critical" document after obtaining them, Veoh's complaints are nothing more than empty excuses.