Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| UMG RECORDINGS, INC., *et al.* | Case No. CV 07 5744 – AHM (AJWx) |
|---|---|
| Plaintiffs, | **VEOH'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCUMENTS FOR THE REMAINING 80% OF IDENTIFIED COPYRIGHTS BASED ON DEFECTS ADMITTED BY UMG, OR ALTERNATIVELY, EXTENDING VEOH'S DEADLINE TO COMPLETE ITS ANALYSIS OF THE 20% SAMPLE OF CHAIN OF TITLE DOCUMENTS** |
| v. | |
| VEOH NETWORKS, INC, *et al.* | |
| Defendants. | |
| | Judge: Andrew J. Wistrich<br>Discovery Cut-off: May 11, 2009<br>Pretrial Conference: August 8, 2009<br>Trial Date: August 18, 2009 |
| | Complaint Filed: September 4, 2007 |

LA:244905.2

**VEOH'S REPLY ISO OF ITS MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS**
**Case No. CV 07 5744 – AHM (AJWx)**

## I. INTRODUCTION

The purpose of UMG producing the 20% sample chain of title documents was to discover whether there were enough ownership defects within the 20% sample of allegedly infringing works to warrant full production. UMG does not dispute that the 20% sample included ownership defects reducing potential statutory damages against Veoh by <u>millions and millions</u> of dollars. In fact, these defects were conceded by UMG. Remarkably, even though the production of the 20% sample has resulted in the significant reduction of potential statutory damages, UMG now asks this Court to ignore and somehow immunize from consideration UMG's own admitted defects—which to date demonstrate that at least 13% of the sample 20% is defective—though it is apparent from the specific withdrawals UMG has made that it was the 20% sample collection and production that brought such defects to light.

Since Veoh filed its motion, UMG has continued to withdraw works within the 20% sample. Specifically, on May 11, 2009, UMG "amended" its list of infringements. Though UMG did not provide a cover letter to specifically notify Veoh of any withdrawals like it did on April 22, 2009, UMG's further amended list of alleged infringements demonstrates that UMG has now withdrawn eight additional works from the 20% sample. With these eight additional withdrawals from the 20%, UMG has now identified defects in at least 32 of the 241 works. In other words, before Veoh had the opportunity to complete its analysis of the 20% sample, UMG admitted that at least 13% of those 20% sample works are defective. UMG's own admitted defects have reduced Veoh's potential damages to a staggering degree, by more than ten million dollars. Veoh should have the opportunity to review all of the chain of title documents to locate additional defects that will likely result in the reduction of millions and millions more in potential statutory damages.

UMG does not dispute that the withdrawals it has made result in the reduction of potential statutory damages by millions and millions of dollars. UMG does not bother to explain why over 60% of the deficiencies identified in its April 22, 2009

1

**VEOH'S REPLY ISO OF ITS MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS**
**Case No. CV 07 5744 – AHM (AJWx)**

letter are works within the 20% sample identified by Veoh. UMG does not bother to explain the suspect timing of such disclosure, coming four months from the time UMG identified the infringements, and the night before Veoh's analysis was due under the prior order, to inform Veoh of these defects. UMG does not bother to mention that on May 11, 2009, the day prior to filing its opposition, UMG withdrew additional works from the 20% sample. UMG's opposition fails to explain any of this for good reason—such explanations would simply confirm that the serious defects and errors in UMG's own identification of defects within the 20% sample warrant complete production of UMG's chain of title documents for alleged infringements in this action.

If the Court is not already inclined to order production of the remaining chain of title documents based on the significant defects identified by UMG, Veoh should be entitled to a full 20% sample from UMG based on UMG's amended list of infringements, and thirty days to complete such review based on the numerous amendments, errors, a belated productions that have prevented Veoh from completing its review. Veoh recently learned that UMG produced certain chain of title documents for the sample 20% two weeks after its deadline and a day before Veoh's analysis was due.[1] Further, on May 11, 2009, UMG added 321 new copyrights to this action (and thousands and thousands of additional instances of alleged infringements). Thus, a larger sample is now needed to constitute a full 20% sample. As the March 5, 2009 Order allowed Veoh to analyze a full 20%, and UMG has taken it upon itself to preempt Veoh's discovery of the defects within at least 32 of the 241 sample works, UMG must at the very least be ordered to provide a full 20% sample of the alleged infringements in this case, as contemplated by the Court's March 5, 2009 Order, and

---

[1] Notably, UMG does not even respond in its opposition to Veoh's request (in its motion) that if the Court requires further analysis by Veoh before deciding whether to order complete production of the chain of title documents, UMG at least be required to produce chain of title documents to replace the withdrawals. UMG also has refused to provide sample works for a complete 20% now that the number of alleged infringements has expanded.

2

**VEOH'S REPLY ISO OF ITS MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS**
**Case No. CV 07 5744 – AHM (AJWx)**

1  an adequate opportunity to complete such production.

## II. COMPLETE PRODUCTION OF CHAIN OF TITLE DOCUMENTS SHOULD BE ORDERED

UMG has brought a massive infringement action against Veoh seeking tens of millions of dollars in statutory damages. Veoh has gone through extensive motion practice to compel production of UMG's ownership documents. (*See* Docket Nos. 194, 222, 321). The Court found a 20% sample production warranted so that the parties and/or the Court (if necessary) could determine whether there were enough errors within the 20% sample to indicate that the remainder of the production should be made. (Docket 321). The 20% sample has revealed sufficient defects that the remainder of the production is undoubtedly warranted. Accordingly, any burden[2] encountered by UMG through its producing documents to demonstrate that it actually owns the rights to the alleged infringements for which it seeks to collect massive statutory damages from Veoh, is outweighed by the benefit to Veoh, which is likely to result in an even greater reduction in potential statutory damages.

The act of UMG searching for and collecting documents to produce for the sample 20% resulted in UMG locating such significant defects in 13% of those works that UMG withdrew such works without challenge. While there may be further defects within the 20% – *indisputably*, *through UMG's own admissions, 32 of the 241 works within the sample 20% are defective.* Based on the outcome of production of the 20% sample, Veoh expects that UMG will itself withdraw additional infringements if it is ordered to provide documents to prove its rights to the remainder of the works, which alone is enough to justify the additional production.[3] Regardless

---

[2] While UMG continues to complain of a "massive" burden, this burden now has to be weighed against prism of the over ten million dollar reduction in statutory damages though the 20% sample, before Veoh has even completed its analysis.

[3] UMG's suggestion that a 2008 amendment to Section 17 U.S.C. § 411(b)(1)(A) somehow is relevant to this motion is a red herring. As UMG has admitted, this amendment impacts a situation where an "inaccurate registration information will not bar a plaintiff from enforcing a copyright unless the error was intentional and would have, . . . caused the registration to be refused.") (Docket 246, p. 14:25-15:1).

**VEOH'S REPLY ISO OF ITS MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS**
**Case No. CV 07 5744 – AHM (AJWx)**

of whether UMG or Veoh was the first to locate the defects, the disproportionate number of defects located within the 20% warrants the complete production.[4]

There will be no impact on the current case schedule if UMG is simply ordered to promptly make a complete production of its chain of title documents. UMG's suggestion that Veoh is to blame for any scheduling issues relating to this production ignores that UMG delayed more than a year into this lawsuit before identifying any infringements, requiring Veoh to engage in extensive motion practice.[5] Then, UMG waited over four months from the time it finally identified its alleged infringements to inform Veoh that at least forty of those alleged infringements were improper and several others had been misidentified. UMG continued to withdraw additional alleged infringements on May 11, 2009. Finally, though Veoh provided Audible Magic metadata on February 24, 2009 (which was UMG's latest excuse for failing to complete its identifications of alleged infringements), UMG did not identify a single additional alleged infringement until nearly three months later, on May 11, 2009.

---

Whether there were inadvertent errors made to the Copyright Office with respect to such registrations is not the type of defect this chain of title production is designed to locate—which thus far has turned up errors within 13% of the 20% that even UMG concedes no longer permits it to claim such alleged infringements in this action, regardless of what is stated on the copyright registration certificates.

[4] Offering even further confirmation that UMG's withdrawals were due to the collection and review of the 20% sample, beyond the over 60% coming directly from the sample 20%, related works withdrawn outside the 20% were also withdrawn by UMG, most likely as a result of the defects identified in the process of collecting and producing chain of title documents for the 20%. For example, Veoh has recently discovered that within the sixteen withdrawals made by UMG on April 22, 2009 that fell outside the 20% sample, four were by the same artists (R. Kelly and Frankie Goes to Hollywood) for which UMG withdrew works within the 20%. In other words, four out of the sixteen withdrawals outside the 20% sample were likely discovered by locating defects within the works identified by Veoh in the 20% sample. UMG only located such defects by conducting whatever additional diligence was done with respect to the 20% – not because UMG has conducted complete diligence across all of the alleged infringements.

[5] Further, Veoh moved to compel this information in October 2008. (Docket 194). Veoh's renewed motion to compel chain of title information from Plaintiffs was heard on December 17, 2008 (*See* Docket 285), but the Court did not enter its Order on this matter until March 5, 2009. (Docket 321). Pursuant to this Order, UMG's production was due on April 9, 2009, though UMG continued to supplement such production through at least April 22, 2009. Such delays can hardly be attributed to Veoh.

4

**VEOH'S REPLY ISO OF ITS MOT. TO COMPEL UMG TO PRODUCE CHAIN OF TITLE DOCS**
**Case No. CV 07 5744 – AHM (AJWx)**

Now, UMG would like this Court and Veoh to take UMG at its word that it has the rights it claims, when UMG's past admissions have shown that UMG's system for identifying its alleged infringements is seriously flawed. For all the foregoing reasons, this Court should order complete production of the chain of title documents for the works at issue in this action.

## III. ALTERNATIVELY, GIVEN UMG'S WITHDRAWALS AND AMENDMENTS, VEOH SHOULD BE ENTITLED THIRTY DAYS TO REVIEW A FULL 20% SAMPLE

If the Court does not consider the significant defects UMG identified as sufficient to warrant the production of UMG's chain of title/rights information for the remainder of UMG's allegedly infringing works, UMG should at the very least be ordered to immediately produce chain of title/rights information for a full 20% based on the number of the alleged infringements identified by UMG's amended list of infringements on May 11, 2009, including thirty-two new replacement works for the withdrawals made by UMG within the 20%, upon selection by Veoh. Clearly with UMG having already identified defects of at least 13% of the 20% sample, the most obvious defects within the 20% have most likely been identified by UMG. If Veoh had the opportunity to complete its review before UMG withdrew any works, Veoh would have inevitably located such defects and used such defects to justify complete chain of title production. Veoh must either be able to use such defects to confirm that further production is warranted, or be entitled to review a full 20% sample to be identified by Veoh before such determination is made.

## IV. DESPITE UMG'S NUMEROUS AND BELATED AMENDMENTS, CORRECTIONS, AND OTHER DELAYS, VEOH HAS DEVOTED CONSIDERABLE RESOURCES AND CONTINUES TO WORK DILIGENTLY TO REVIEW THE CHAIN OF TITLE DOCUMENTS

UMG's numerous amendments, withdrawals, corrections, electronic errors, and belated supplemental productions have made the review of the sample 20% not only

5

challenging and expensive, but impossible to complete within the deadline contemplated by the March 5, 2009 Order. Veoh just recently discovered that UMG produced chain of title documents for some of the works within the 20% on April 22, 2009, the day before Veoh's analysis was due, despite the fact that such documents were due on April 9, 2009 per the Court's March 5, 2009 Order. (Supp. Ranahan Decl. ¶ 2).

UMG's April 9, 2009 production constituted approximately 100,000 pages in a disorganized and haphazard manner, and Veoh has been forced to devote considerable resources over the past thirty days organizing, and reorganizing the documents so that they are in an efficient and manageable order before the actual analysis takes place. UMG's baseless assertions that Veoh has not undertaken review of (what's left of) the 20% sample are in direct contravention to what Veoh's counsel has explained to UMG's counsel during meet and confer discussions and related correspondence— Veoh has devoted and continues to devote extensive resources to organizing and reviewing the 100,000 pages, in addition to locating additional relevant pieces of evidence buried within UMG's over 1.6 million page production, and preparing for analysis of what is left of the 20% sample. *Id.* at ¶ 3. Veoh would likewise do the same for the remaining documents if complete production was ordered, as the potential reduction in statutory damages makes such review and analysis worth the considerable effort.

UMG has not explained any rationale reason why Veoh should not be afforded thirty days to complete its analysis considering the many roadblocks to completing its analysis sooner, especially considering how long it took UMG to notice its own defects, and the contributions UMG has made to the delay. Veoh should be provided this additional, reasonable time. Unlike Plaintiffs, Veoh has never sought any extension to the case schedule, and production of chain of title will not interfere with other case deadlines.

## V. CONCLUSION

Veoh respectfully requests that, as a result of the significant defects UMG has acknowledged exist within what once was 20% of the sample works, UMG be ordered to produce chain of title/rights information for the remaining 80% alleged infringements in this action. Alternatively, UMG should be ordered to produce chain of title/rights information for a *full* 20% sample after UMG's recent additional alleged infringements and withdrawals. Upon such production, Veoh should be provided thirty additional days to review a full 20% sample in order to complete its review/analysis, which is necessitated as a result of UMG's numerous amendments, withdrawals and corrections to its disorganized and belated production.

Dated: May 15, 2009          **WINSTON & STRAWN LLP**

By   /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca L. Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.