Rebecca Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1506
Facsimile: (415) 591-1400

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>VEOH NETWORKS, INC, *et al.*<br><br>Defendants. | Case No. CV 07 5744 – AHM (AJWx)<br><br>**JOINT STIPULATION RE VEOH NETWORKS, INC.'S MOTION FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES**<br><br>[NOTICE OF MOTION AND MOTION, DECLARATIONS OF JOSEPH PAPA AND JENNIFER GOLINVEAUX IN SUPPORT THEREOF, AND PROPOSED ORDER FILED CONCURRENTLY HEREWITH]<br><br>[DECLARATION OF BRIAN LEDAHL FILED SEPARATELY—UNDER SEAL]<br><br>Hearing: June 15, 2009<br>Time: 10:00 a.m.<br>Judge: Andrew J. Wistrich<br>Discovery Cut-off: May 11, 2009<br>Pretrial Conference: August 8, 2009<br>Trial Date: August 18, 2009<br><br>Complaint Filed: September 4, 2007 |

# TABLE OF CONTENTS

|     |     |     |     | Page |
| --- | --- | --- | --- | --- |
| I.  | VEOH'S INTRODUCTION | | | 1 |
| II. | UMG'S INTRODUCTION | | | 2 |
| III. | VEOH'S CONTENTIONS AND AUTHORITIES | | | 3 |
|     | A. | Factual and Procedural Background | | 3 |
|     | B. | Veoh's Legal Argument | | 4 |
|     |     | 1. | The Harm to Veoh If It Is Required to Continue to Retain All Video Files. | 4 |
| IV. | UMG'S CONTENTIONS AND AUTHORITIES | | | 6 |
|     | A. | Factual and Procedural Background | | 6 |
|     | B. | UMG's Legal Argument | | 10 |
|     |     | 1. | Veoh Cannot Support Its Request For Destruction | 10 |
|     |     | 2. | Veoh's Video Files Are Relevant Past May 11, 2009 | 12 |
|     |     |     | A. Veoh's Videos Are Relevant Evidence In This Case | 12 |
|     |     |     | B. Veoh's Videos Are Relevant To A Future Claim | 13 |
| V.  | VEOH'S CONCLUSION | | | 13 |
| VI. | UMG'S CONCLUSION | | | 14 |

i

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)

## I. VEOH'S INTRODUCTION

Veoh brings this motion seeking a protective order to allow it to cease storing copies of video files after May 11, 2009, the deadline for Plaintiffs to identify claimed infringements in this case, and also the deadline for fact discovery.[1] For close to two years Veoh has been retaining copies of all videos uploaded by users, including those that it has cancelled from public access ("Cancelled Video Files"), in order to meet its obligations in this lawsuit. After May 11, 2009, there is simply no reason for Veoh to continue to pay the substantial costs to maintain copies of the video files on its servers.

The situation has become quite dire for Veoh. If it is required to continue to maintain copies of all video files, including the Cancelled Video Files, it will have to buy additional server space that it simply cannot currently afford. This will require Veoh to terminate at least two, and possibly more, employees to cover the expense of the server space. Veoh's counsel explained to Plaintiffs the substantial cost Veoh was incurring to maintain video files, and asked Plaintiffs to work with Veoh to set up a reasonable timeline within which Plaintiffs could complete their review of the video files, and Veoh could then cease paying to store them. Plaintiffs refused, stating that Veoh should continue to maintain all video files until "final judgment."

Veoh has provided Plaintiffs with private access to Veoh's Cancelled Video Files for more than eight months, and presumably Plaintiffs have made copies of any file that they consider to be relevant evidence in this lawsuit. As discovery is set to close in this action on May 11, 2009, and UMG's deadline for amending its list of alleged infringements is the same day, there is no practical reason that Veoh should be required to continue to pay the substantial costs required to store this very large quantity of data. Veoh asks the Court to enter an order permitting Veoh to no longer

---

[1] *See* April 29, 2009 Order, Docket 431, extending discovery cut-off until May 11, 2009.

1

**JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)**

retain copies of video files—other than those UMG has identified as allegedly infringing—after May 11, 2009.

## II. UMG's INTRODUCTION

Veoh seeks permission to destroy evidence. Specifically, it asks permission to destroy the direct evidence of its mass infringement of UMG's copyrighted works. No precedent supports such a request, and Veoh provides no proper basis for it here. Instead, Veoh misrepresents the factual record in an effort to further obstruct UMG's efforts to hold Veoh to account for its massive, illegal activity.

Veoh suggests that the evidence it seeks to destroy is not needed after May 11, 2009. This suggestion is false. This case does not conclude on May 11, 2009. In fact, because Veoh was dilatory in providing the Audible Magic metadata for its videos, and because of the magnitude of copyright infringement on Veoh, UMG will not be able to proffer a complete list of infringing videos by the May 11 deadline. Rather, UMG may need to bring a second action to recover for additional acts of infringement that UMG identifies after this deadline – as this Court has already stated UMG has a right to do. Further, these videos remain highly relevant evidence in this ongoing case.

Veoh's request should also be denied because Veoh complains of a problem entirely of its own making. First, Veoh infringed thousands of UMG's copyrighted works by building its business through the exploitation of content it did not own. Then, Veoh commenced litigation with UMG by filing a declaratory judgment complaint in August 2007. Later, when UMG sought production of Veoh's video files, Veoh refused to produce them, and instead insisted that it should be permitted to retain the video files on its servers instead of copying them onto hard drives and producing them to UMG as UMG requested. In response to UMG's July 2008 motion to compel, which among other things sought an order compelling Veoh to produce its video files, Veoh complained that copying all of its video files would cost "hundreds of thousands of dollars." Now Veoh complains that providing access to the videos, in

2

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES Case No. CV 07-5744 – AHM (AJWx)

the manner requested by Veoh, is too costly and that Veoh should be allowed to avoid any further cost by simply destroying evidence. All of these purported hardships are a consequence of Veoh's decisions, not UMG's. Veoh should not be permitted to destroy the evidence of its wrongdoing. Its motion should be denied.

## III. VEOH'S CONTENTIONS AND AUTHORITIES

### A. Factual and Procedural Background

Plaintiffs have always had access to the publicly available video files on Veoh, and have always had the ability to copy any suspected infringing video files as evidence in this case. The video files uploaded to Veoh are publicly available to any user, including Plaintiffs. With respect to videos to which Veoh had terminated access ("Cancelled Video Files") for copyright or other reasons, Veoh provided Plaintiffs with secure access to the Cancelled Video Files on September 5, 2008. Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), ¶ 2.

On December 1, 2008, in response to Veoh's Interrogatory No. 25, Plaintiffs finally identified the alleged infringing videos for which they seek damages in this case, although they purported to reserve the right to further supplement their identification. On December 17, 2008, the Court set January 16, 2009 as the deadline for UMG to identify remaining alleged infringements. (Docket 285). UMG thus amended its response to Interrogatory No. 25 on January 16, 2009.[2] UMG requested additional time to identify works claiming that it was unable to complete its identifications, and on April 6, 2009, the Court set May 11, 2009 as the deadline for Plaintiffs to supplement its list of alleged infringements. (Docket 400).

In December 2008, Veoh brought an *Ex Parte* Application seeking the relief sought herein, but the Court denied the application without prejudice to bring this issue on a regular noticed motion. (Docket 270). Veoh has waited until the close of

---

[2] On April 22, 2009, UMG amended its response to Interrogatory No. 25 to withdraw forty videos it had previously identified as infringing, and to correct various other inaccuracies on its previously identified infringements.

3

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)

fact discovery, and the deadline for Plaintiffs to identify any remaining alleged infringements to seek such relief, and renews its request in accordance with Local Rule 37.

**B. Veoh's Legal Argument**

"[A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The order may forbid certain discovery or specify terms on which discovery can be had. *Id.* Within Rule 26's framework, courts have broad discretion to fashion appropriate protective orders. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion" to the court to decide what degree of protection is required, and a court has "substantial latitude" to decide the proper scope of a protective order).

**1. The Harm to Veoh If It Is Required to Continue to Retain All Video Files.**

Veoh has been maintaining copies of video files uploaded by users, even after Veoh cancels public access to those files ("Cancelled Video Files"), in order to provide Plaintiffs access to those video files. Declaration of Joseph Papa ("Papa Decl."), ¶ 2. Veoh is currently running out of server space. *Id.* Deleting the Cancelled Video files would free up the needed server space. *Id.* Veoh has no business purpose to maintain the Cancelled Video Files. *Id.* The Cancelled Video Files currently account for more than 725,000 gigabytes of data, and require maintenance of significant server space to maintain. *Id.* The files alleged by Plaintiffs to be infringing to date amount to less than 0.045% of the Cancelled Video Files. *Id.*

On an ongoing basis, Veoh will continue to pay on average $30,000 per month in hardware and datacenter costs to continue to maintain the video files. *Id.*, ¶ 3. Deleting the Cancelled Video Files would free up approximately fifty percent of Veoh's available server space. *Id.* The server space required to continue to store the Cancelled Video Files will cost Veoh approximately $30,000 dollars a month. Veoh

4
JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING
VIDEO FILES Case No. CV 07-5744 – AHM (AJWx)

cannot continue to afford to store the Cancelled Video Files, and if Veoh is required to continue to store the Cancelled Video Files, as a result of this $30,000 dollar a month expense, Veoh will be most likely be forced to lay off two or three additional full time employees in order to purchase the additional required server space. *Id.* Three employees is nearly 10% of Veoh's current employees. *Id.*

While these amounts may seem like a trifle to Plaintiffs, they are very significant sums for a small start-up company. Numerous other courts have granted necessary relief for parties faced with similar or even lower discovery expenses. *See, e.g., Graebner v. James River Corp.*, 130 F.R.D. 440, 441-42 (N.D. Cal. 1989) (granting a protective order pursuant to "court's broad discretion" upon finding that the requested discovery, a single deposition, was "unfair and uneconomical" and would subject the movant to "undue burden and expense"); *Jones v. Goord*, 2002 U.S. Dist. LEXIS 8707, *32 (S.D.N.Y. May 15, 2002) (denying motion to compel production of databases where "costs of the efforts required by plaintiffs' requests would," as here, "be in excess of $100,000"); *Echostar Communs. Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (denying motion to compel where affidavits proved that "the costs for the requested discovery 'could easily run into the tens (or hundreds) of thousands of dollars.'") (citing affidavit).

There is no good reason to require Veoh to continue to pay these storage costs. Plaintiffs have had access to all of Veoh's video files for months, and the deadline for fact discovery, and for Plaintiffs to identify any alleged infringements is May 11, 2009. In addition, on December 1, 2008, Plaintiffs identified the alleged infringing videos for which they seek damages in this case, although they purported to reserve the right to further supplement their identification. Golinveaux Decl., Paragraph 7 (UMG's Response to Veoh's Interrogatory No. 25.) Since that time, UMG has amended its response, and has been given a final deadline of May 11, 2009 to identify any remaining alleged infringements. There is no reason to require Veoh to continue to retain video files. Veoh respectfully requests that the Court issue an order allowing

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)

Veoh to no longer retain copies of video files—other than those UMG has identified as allegedly infringing—after May 11, 2009.

## IV. UMG's CONTENTIONS AND AUTHORITIES

### A. Factual and Procedural Background

Veoh's Factual and Procedural Background glosses over the history of this dispute in an attempt to obscure its own misconduct and its own representations to the Court that keeping its videos on its servers would be exactly the same as providing hard drives of its videos to UMG. Now, having persuaded the Court to allow this form of disclosure rather than actually producing the files, Veoh asks permission to pull the rug out from under UMG by destroying the very evidence it refused to produce. Veoh's motion is an attempt to renege on the representations and promises Veoh made to this Court and to unfairly prejudice UMG. UMG has been diligent in trying to secure access to the evidence of Veoh's infringement, and Veoh has stymied and obstructed UMG's efforts at every turn:

- On January 17, 2008, UMG served Veoh with requests for production which sought Veoh's video files. Ledahl Decl. Ex. 1 (UMG's First Set of Requests for Production), at Requests Nos. 98-100.
- Veoh objected to UMG's requests, leading to a Motion to Compel Veoh to produce, among other things, its video files. *See* UMG Motion to Compel (Docket #78), at pp. 47-68. In its opposition to UMG's Motion to Compel, Veoh offered to "provide UMG's counsel with secure access to Veoh's video servers, so that UMG could click on a link to any file from the spreadsheet, and access copies of the file in both the original format in which the user had uploaded it, and in Flash format." *Id.* at 59:16-19. Veoh never provided any such spreadsheet.
- Eight months after UMG served its requests seeking Veoh's video files, at the August 25 hearing on UMG's Motion to Compel, Veoh represented to the Court that the spreadsheet would "provide the metadata as well as links

6

to the copies of all the cancelled videos on Veoh servers." Ledahl Decl. Ex. 2 (Aug. 25, 2008 Hearing Tr.), at 8:7-8.[3] The Court specifically asked whether Veoh's spreadsheet would be a production "just as convenient[] as if you had reproduced it for them on a hard drive." *Id.* at 39:8-9. Veoh's counsel unambiguously responded, "Exactly, Your Honor." *Id.* at 39:10.

- The Court then inquired whether Veoh's spreadsheet would be the "practical equivalent of having all the videos on a hard drive," *id.* at 54:17-19, and Veoh's counsel confirmed that it was, *id.* at 54:21-22. The Court ordered Veoh to produce its spreadsheet by September 5.

- What Veoh finally produced on September 5, 2008 was not at all what it had represented to the Court. First, Veoh's spreadsheet contained no "links" that UMG could simply click to access a particular video. Instead, it contained fields of data in a spreadsheet. If UMG individually copied a particular entry from the spreadsheet into a separate internet browser, it could access videos one by one. Ledahl Decl., ¶ 4.

- Despite these problems, after finally receiving this spreadsheet, UMG promptly began its review of Veoh's files and discovered two significant problems. First, Veoh had failed to provide metadata generated by Audible Magic, a filtering software used by Veoh. Second, many of Veoh's videos were simply inaccessible. UMG wrote to Veoh to inquire about these issues. Ledahl Decl., Ex. 3 (9/26/2008 Letter from B. Ledahl to J. Golinveaux). Veoh responded in October, explaining that the instructions it had provided to UMG for accessing the videos were erroneous, and providing corrected instructions. Ledahl Decl., Ex. 4 (10/3/2008 Letter from J. Golinveaux to B. Ledahl).

---

[3] Regarding expense, the Court asked counsel for Veoh "What's the expense of setting up the spreadsheet?" and Veoh's counsel responded that "It's a matter of engineering for the most part." *Id.* at 37:20-23.

7

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)

- Veoh still refused to produce its Audible Magic metadata, claiming that it had no obligation to do so since it was stored in a different database. Ledahl Decl., Ex. 4 (10/3/2008 Letter from J. Golinveaux to B. Ledahl). Veoh refused to produce the Audible Magic metadata notwithstanding its representation before the Court that it would produce "all the metadata" relating to the videos uploaded by its users. Ledahl Decl., Ex. 2 (Aug. 25, 2008 Hearing Tr.), at 43:14-15 (the Veoh spreadsheet "would have <u>all the metadata</u>" for its videos); *id.* at 54:24 (Veoh would produce "<u>all the metadata</u> for each video").
- On October 8, Veoh agreed to produce its Audible Magic metadata. Ledahl Decl., Ex. 5 (10/8/2008 Letter from J. Golinveaux to B. Glatstein). What it actually produced, however, was only a small fraction of the metadata generated by Audible Magic – Veoh did not produce relevant information such as song title, artist name, and album name for videos identified by the Audible Magic system. Examples of Veoh's purported Audible Magic metadata production are attached to the accompanying Declaration of Brian Ledahl as Exhibit 6 (VN0000284066-VN0000284069).
- To compound the problems created by its failure to produce metadata, on October 9, 2008, Veoh unilaterally terminated UMG's access to its video database, claiming that UMG was accessing Veoh's system too frequently to review videos. Golinveaux Decl., Ex. A (10/9/2008 Email from J. Golinveaux to B. Ledahl). Veoh did not restore UMG's access until October 24 and demanded that UMG limit its access to the videos. Ledahl Decl., Ex. 7 (10/24/2008 Letter from B. Ledahl to J. Golinveaux).
- UMG continued to seek all of the "dozens" of metadata fields of data Veoh testified that it received from Audible Magic. Finally, on October 20 – eight weeks after Veoh produced its spreadsheet – Veoh disclosed, for the first time, that it was actively deleting the vast majority of the Audible

8

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Magic metadata on an ongoing basis. Ledahl Decl., Ex. 8 (10/20/2008 Letter from J. Golinveaux to B. Ledahl).

- After Veoh refused to retain its Audible Magic metadata, UMG sought a preservation order relating to this data on October 27. *See* UMG *Ex Parte* Application for Order Requiring Veoh to Retain Evidence (Docket #190). The Court granted UMG's *ex parte*, ordering that "[t]he obligation to retain and produce the additional metadata fields begins immediately and ends with the dismissal or entry of final judgment in this case unless the court subsequently orders otherwise." Nov. 18, 2008 Order (Docket #217).
- In light of the Court's November 18 Order that Veoh must preserve its evidence, UMG wrote to Veoh to request that it recreate the Audible Magic metadata it had destroyed. Ledahl Decl., Ex. 9 (11/20/2008 Letter from B. Glatstein to J. Golinveaux). Veoh finally agreed to produce that data from Audible Magic. Ledahl Decl., Ex. 10 (12/4/2008 Letter from J. Golinveaux to W. Bly).
- Veoh did not actually provide the data, however, for nearly three more months. Veoh finally produced the Audible Magic metadata on February 25, 2009. Ledahl Decl., ¶ 12.
- In light of this late production, UMG sought additional time to supplement its identification of infringing videos, noting that the Audible Magic data had flagged tens of thousands of videos and that UMG would need to review the lists of works involved to identify those that infringed UMG copyrights. *See* UMG Recordings, Inc.'s Motion for Sanctions and to Compel Veoh to Produce Its Audible Magic Metadata (Docket # 325). During the April 6, 2009 hearing on UMG's motion, UMG pointed out that the volume of material would likely prevent UMG from completing its analysis prior to applicable deadlines and that even with an extended deadline, it would not likely be possible to complete the process and UMG

might need to file a second action regarding additional infringements. The Court acknowledged that UMG would have the right to file such an action. Ledahl Decl., ¶ 13.

### B. UMG's Legal Argument

#### 1. Veoh Cannot Support Its Request For Destruction

Veoh styles its motion as seeking a protective order pursuant to Federal Rule 26(c). Veoh is not, however, seeking protection from unnecessary or burdensome discovery. Veoh seeks permission to destroy the unquestionably relevant evidence of its infringement. Veoh has an obligation to preserve, not destroy such evidence. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also W.T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (The duty to preserve extends to what the party "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."). Veoh fails to identify a single instance in which any court ever granted such a request for permission to destroy.

Veoh argues that it incurs costs from retaining evidence of its infringement and that such costs justify destroying the evidence. Veoh cites no authority for the proposition that cost of retention warrants the destruction of relevant evidence. Further, as set forth in detail already, the costs Veoh incurs are a product of Veoh's refusal to produce the video files in the manner requested from the outset. Thus any burden is a burden of Veoh's own creation. It is undisputed (and indisputable) that Veoh chose to make its video files available from its own servers rather than producing them as UMG requested. Veoh cannot now try to use the manner of

"production" it selected and to which UMG objected as a means to prejudice UMG or an excuse to destroy evidence of its own wrongdoing.

      Veoh represented to the Court that making its videos accessible over the internet would be "just as convenient" as producing them on a hard drive and would be "the practical equivalent" of producing its files on a hard drive. That is inarguably not the case. Had Veoh produced its filed on hard drives, UMG would have had "unfettered access" to the files, rather than facing Veoh's unilateral termination of UMG's access, cf. Golinveaux Decl., Ex. A (10/9/2008 Email from J. Golinveaux to B. Ledahl), or being forced to deal with Veoh's threats and requests to destroy the evidence. Moreover, had Veoh produced its files as UMG requested, it would not be facing the monthly storage costs it now claims are burdensome. Veoh created its own burden, and it cannot now use this burden to overcome the well-demonstrated relevance of Veoh's video files and the obligation to retain such evidence.[4]

      The three cases Veoh cites to support its request fail to provide any basis for its motion. Veoh cites no case authorizing the destruction of evidence. Instead, Veoh merely cites cases where some discovery was not permitted because the burden of responding outweighed the benefit. An order denying unnecessary or irrelevant discovery is not in any way equivalent to an order permitting destruction of relevant evidence. Veoh has not identified a single court that ever granted such a request. In *Graebner*, the Court entered a protective order barring a second deposition of the plaintiff in an ERISA suit after concluding that an additional deposition was unnecessary. 130 F.R.D. at 442. In *Jones v. Goord,* while the Court refused to order

---

[4] Veoh could still produce its video files instead of bringing this motion. Veoh claims that its video files consume about 725 terabytes of data. Amazon.com currently sells 1 terabyte hard drives for just over $100 each with free shipping. Ledahl Decl., Ex. 11 (Amazon.com search results for "terabyte external hard drive."). Thus, even if Veoh cannot obtain a bulk discount, it would cost approximately $72,500 dollars to purchase enough hard drives for its video collection. Then all Veoh has to do is copy the information to these hard drives and deliver them to UMG.

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES Case No. CV 07-5744 – AHM (AJWx)

additional costly production of an electronic database that had already been produced in hard copy due to various security and technical issues, it did not issue any order permitting the destruction of the database. *Jones*, 2002 U.S. Dist. LEXIS 8707 (S.D.N.Y. May 15, 2002). Finally, in *Echostar Communications Corp.*, the court denied Echostar's request to compel production of trade secret materials by third parties. The court noted it was not satisfied that the materials were relevant. 180 F.R.D. 391, 395 (D. Colo. 1998). Again, nothing in the *Echostar* decision authorized the destruction of relevant evidence. None of these cases provide any support for Veoh's unprecedented request to destroy evidence.[5]

### 2. Veoh's Video Files Are Relevant Past May 11, 2009

#### a. Veoh's Videos Are Relevant Evidence In This Case

Veoh is wrong when it says that its video files are no longer relevant after May 11. These videos remain relevant as trial evidence in this ongoing litigation.[6] Veoh has not, for example, stipulated that the videos UMG has already identified contain the copyrighted works UMG has identified. Nor has Veoh stipulated that it will waive all objections to the authenticity of videos UMG introduces at a trial of this matter. Given that the very materials Veoh seeks to destroy are the evidence of infringement, Veoh must retain its videos. Given these issues, the videos Veoh seeks to destroy remain relevant evidence in this ongoing litigation.

---

[5] UMG also takes issue with Veoh's attempt to characterize this litigation as a David v. Goliath affair. *See* Section III.B.1 ("[w]hile these amounts may seem like a trifle to Plaintiffs, they are very significant sums for a small start-up company."). First, as mentioned above, it was Veoh who initiated litigation with UMG. Moreover, there is no statute excusing copyright infringement based on the infringer's financial status. Even so, Veoh has raised almost $70 million dollars to date from venture capitalists and other investors. Ledahl Decl. Ex. 12(http://www.crunchbase.com/company/veoh).

[6] Veoh makes a vague suggestion of its willingness to retain certain videos identified as infringing, but provided UMG with no proposed order clarifying such provisions and offers no explanation of what it will actually retain.

12

JOINT STIP RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)

### b. Veoh's Videos Are Relevant To A Future Claim

While May 11 is the deadline for UMG to amend its list of alleged infringements in this litigation, it is not the deadline for UMG to allege any and all infringement of its copyrights by Veoh for all time. As discussed previously, UMG requested Veoh's metadata, including that generated by Audible Magic, beginning in January 2008. Veoh only produced this metadata on February 25, 2009 – more than a year after it was requested. This data identified tens of thousands of potentially infringing videos. There has not been sufficient time for UMG to review this information and complete its identification of infringements by Veoh. While UMG will not be able to add additional videos to the list of alleged infringements in this case after May 11, it has the right to pursue a separate action against Veoh for additional acts of infringement. The Court previously acknowledged that UMG has the right to pursue a second action against Veoh to seek damages for additional infringements it identifies after May 11. Veoh cannot simply destroy this evidence in an effort to avoid such liability. Such destruction would be spoliation of evidence, and Veoh cites no order by any court ever endorsing a party's right to spoliate unquestionably relevant evidence.

## V. VEOH'S CONCLUSION

Because there is no justifiable reason to require Veoh to continue to go to the considerable expense of continuing to retain video files, Veoh respectfully requests that the Court grant its motion for a protective order and issue an order allowing permitting Veoh to no longer retain copies of video files—other than those UMG has identified as allegedly infringing—after May 11, 2009.

## VI. UMG's CONCLUSION

Veoh seeks an unprecedented order permitting the destruction of evidence of its copyright infringement. Veoh claims a burden to hosting those videos that is entirely a problem of its own making. Veoh chose to maintain its video files on its servers instead of producing the files on hard drives. It has not demonstrated good cause why it should be permitted to destroy this evidence and its motion should be denied.

Dated May 22, 2009:	WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Erin R. Ranahan
Jennifer A. Golinveaux
Attorneys for Defendant
VEOH NETWORKS, INC.

Dated May 22, 2009:	IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl
Brian Ledahl
Attorneys for Plaintiffs