Rebecca Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin Ranahan (SBN: 235286)
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
(415) 591-1506 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware corporation, et al.,<br><br>      Plaintiffs,<br><br>  vs.<br><br>VEOH NETWORKS, INC. a California Corporation,<br><br>      Defendant. | **Case No. CV 07 5744 – AHM (AJWx)**<br><br>**VEOH'S LOCAL RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT VEOH NETWORKS, INC.'S MOTION FOR SUMMARY JUDGMENT RE ENTITLEMENT TO SECTION 512(c) SAFE HARBOR**<br><br>Date:         June 15, 2009<br>Time:        10:00 AM<br>Courtroom:  14<br>Judge:       Hon. A. Howard Matz |

Defendant Veoh Networks, Inc. ("Veoh") respectfully submits the following Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1 in support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor.

## I. STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1. Veoh provides a website (veoh.com) and a client software application (hereinafter, the "Veoh Client"). Through both, users can upload and view video content. | Declaration of Joseph Papa in Support of Defendant Veoh Networks Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Docket 336-10) ("Papa Decl."), ¶¶ 2-3. |
| 2. Veoh consists of two principal components: (i) the veoh.com website where, among other things, users can share, view, and browse videos available through Veoh, create a user account and profile, and interact with other users; and (ii) an optional software application, which allows uploading and delivery of videos. | Papa Decl., (Docket 336-10) ¶ 3. |
| 3. Users can upload and view videos either through the veoh.com website, or through the Veoh Client. | Papa Decl. (Docket 336-10), ¶ 3. |
| 4. Veoh first offered a beta (test) version of the Veoh Client in September 2005. | Papa Decl. (Docket 336-10), ¶ 3. |
| 5. User's could first upload videos to | Papa Decl. (Docket 336-10), ¶ 3. |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | | |
|---|---|---|
| | Veoh's website in February 2006. | |
| 6. | Veoh's system receives users' video submissions and processes them to be available on Veoh's website or through the Veoh Client. | Papa Decl. (Docket 336-10), ¶ 3. |
| 7. | When Veoh's system processes users' video submissions, the content of the videos is unchanged. | Papa Decl. (Docket 336-10), ¶ 3. |
| 8. | To upload videos to Veoh, a user must first register with Veoh at veoh.com by providing a user name, email address, and password. | Papa Decl. (Docket 336-10) ¶ 4 and Exhibit A (registration page). |
| 9. | When a user uploads a video, the user provides information about the video to help other users locate it, such as a title of the user's choosing and tags (keywords) to describe the video. | Papa Decl. (Docket 336-10), ¶ 5 and Exhibit B (Veoh's upload and categories pages). |
| 10. | When a user uploads a video, the user also selects pre-set categories that describe the video. | Papa Decl. (Docket 336-10), ¶ 5 and Exhibit B (Veoh's upload and categories pages). |
| 11. | Veoh computers automatically receive users' video submissions, extract certain metadata, and assign each video a "permalink," a locator that accompanies the display of each video and uniquely identifies each video on Veoh. | Papa Decl. (Docket 336-10), ¶ 6. |
| 12. | Veoh utilizes third party software to | Papa Decl. (Docket 336-10), ¶ 6. |

| | | |
|---|---|---|
| | convert user-submitted videos into Flash format. | |
| | 13. The conversion to Flash is an automated process. | Papa Decl. (Docket 336-10), ¶ 6. |
| | 14. Veoh currently has well over a million videos available for viewing. | Papa Decl. (Docket 336-10), ¶ 3. |
| | 15. Users have uploaded more than four million videos to Veoh. That number does not include non-hosted partner content and videos obtained from Veoh crawling other websites. | Papa Decl. (Docket 336-10), ¶ 3; Supplemental Declaration of Joseph Papa in Support of Defendant Veoh Networks Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("Supp. Papa Decl.") (Docket 396-4) ¶ 4. |
| | 16. Since July 2007, only three to four percent of Veoh's video views have been in the music category. | Wiseman Dep. at 173:24-174:11, February 2, 2009, attached as Ex. A to the Declaration of Jennifer Golinveaux In Support of Veoh's Motion for Summary Judgment Re Defendant Veoh Networks, Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Docket 338) ("Golinveaux Decl.") ¶ 2. |
| | 17. Veoh employees do not review user submitted content before it is available on Veoh. | Declaration of Stacie Simons In Support of Veoh's Motion for Summary Judgment Re Defendant Veoh Networks, Inc.'s Motion for Summary Judgment Re Entitlement to Section |

| | |
|---|---|
| | 512(c) Safe Harbor (Docket 336-4) ("Simons Decl.") ¶ 9. |
| 18. It would not be feasible for Veoh to review every user submission, and determine whether it may infringe a copyright. | Simons Decl. (Docket 336-4), ¶ 9. |
| 19. Veoh employees spot check some videos after publication for compliance with Veoh's terms of use and for proper categorization. | Simons Decl. (Docket 336-4), ¶ 9; Supp. Papa Decl. (Docket 396-4) ¶ 6. |
| 20. Employees use a "porn tool" to assist in the review of certain areas of the site to take down content that violates Veoh's policy prohibiting pornographic or obscene material. | Simons Decl. (Docket 336-4), ¶ 2. |
| 21. The porn tool allows employees to view thumbnails of videos, and disable access to pornographic or obscene material. | Simons Decl. (Docket 336-4), ¶ 2. |
| 22. If other employees encounter potentially infringing videos, they will forward them to Ms. Simons for determination. | Simons Dep. at 86 and 93, January 29, 2009, attached as Ex. B to the Golinveaux Decl. (Docket 338), ¶ 3; Simons Decl., ¶ 2; Supp. Papa Decl. (Docket 396-4) ¶ 6. |
| 23. Veoh does not charge users for using its website or software. | Papa Decl. (Docket 336-10), ¶ 7. |
| 24. Veoh began offering advertising on its site in mid-2007. Advertising is | Papa Decl. (Docket 336-10), ¶ 8; Wiseman Dep., 27:12-19, attached as |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| Veoh's primary source of revenue. For example, Veoh offers banner advertisements that show on the top or side of a web page, and a limited amount of pre-roll advertising, where advertisements run before a video starts. | Ex. A to Golinveaux Decl. (Docket 338), ¶ 2. |
| 25. Veoh has never made a profit. | Wiseman Dep., 27:12-19, February 2, 2009, attached as Ex. A to Golinveaux Decl. (Docket 338), ¶ 2. |
| 26. Veoh disables access to videos when it receives notice that specific videos are alleged to be infringing. | Papa Decl. (Docket 336-10), ¶ 9; Simons Decl. (Docket 336-4), ¶ 4. |
| 27. Veoh terminates repeat infringers. | Papa Decl. (Docket 336-10), ¶ 9; Simons Decl. (Docket 336-4), ¶¶ 4, 6. |
| 28. Veoh's system allows Veoh to disable access to inappropriate content once it received notice of such content. | Declaration of Dmitry Shapiro In Support of Veoh's Motion for Summary Judgment Re Defendant Veoh Networks, Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Docket 336-3), ("Shapiro Decl.") ¶ 2.) |
| 29. Veoh's current Terms of Use ("TOU") states that:<br><br>You agree to abide by all applicable local, state, national and | TOU, attached to Simons Decl. (Docket 336-4), ¶ 2 & Ex. A. |

| | |
|---|---|
| international laws and regulations, including, without limitation, all intellectual property laws (such as U.S. copyright laws). Any unauthorized use of the Veoh Service is expressly prohibited. | |
| 30. Veoh's current Copyright Policy states that:<br><br>Veoh takes copyright and other intellectual property rights very seriously. It is Veoh's policy to (1) expeditiously block access to or remove content that it believes in good faith may contain material that infringes the copyrights of third parties and (2) remove and discontinue service to repeat offenders. | Copyright Policy, attached to Simons Decl. (Docket 336-4), ¶ 3 & Ex. B. |
| 31. All prior versions of Veoh's TOU and incorporated documents have contained similar language prohibiting infringing videos and reserving the right to terminate repeat infringers. | Papa Decl. (Docket 336-10), ¶ 9. |
| 32. Veoh's Copyright Policy sets forth | Copyright Policy, attached to Simons |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| its DMCA policy. | Decl. (Docket 336-4), ¶ 3 & Ex. B. |
| 33. Veoh's Copyright Policy describes how to send Veoh notices of claimed infringement. | Copyright Policy, attached to Simons Decl. (Docket 336-4), ¶ 3 & Ex. B. |
| 34. Each time a user begins to upload a video to the veoh.com website, the user receives a message stating "Do not upload videos that infringe copyright, are pornographic, obscene, violent, or any other videos that violate Veoh's Terms of Use." | Papa Decl. (Docket 336-10), ¶ 10 and Ex. C (current upload screen). |
| 35. Before using the Veoh Client software, users must first consent to Veoh's software license, and agree to "not use the Software or Service to infringe the copyrights or other intellectual property rights of others in any way." | Papa Decl. (Docket 336-10), ¶ 10 and Ex. D (screenshot of the software license printed from Veoh's website.) |
| 36. Veoh responds to DMCA notices often the same day that Veoh receives the notice, or within a day or two of receiving the notice. | Simons Decl. (Docket 336-4), ¶ 4; Supp. Papa Decl. (Docket 396-4) ¶ 6. |
| 37. Veoh has a flag feature, which allows users to flag video content as inappropriate or for other reasons. | Simons Decl. (Docket 336-4), ¶ 5 and Ex. C (screenshot of this flag feature). |
| 38. On August 15, 2005, Veoh designated an agent with the U.S. Copyright Office to receive notifications of claimed infringement. | Papa Decl. (Docket 336-10), ¶ 11 & Ex. E (Interim Designation).) |

| | |
|---|---|
| 39. Veoh makes available on its website and has provided the Copyright Office with the name, address, phone number, and electronic mail address of its designated agent to receive notices of claimed infringement. | Simons Decl. (Docket 336-4), ¶ 3 & Ex. B (Copyright Policy); Papa Decl. (Docket 336-10), ¶ 11; Second Supp. Papa Decl. , ¶ 3. |
| 40. On its website Veoh informs users of its policy providing for the termination of Veoh users who are repeat infringers. Veoh's website has always stated that Veoh does not permit infringing videos and that Veoh reserves the right to terminate repeat infringers. | Papa Decl. (Docket 336-10), ¶ 9; Simons Decl. (Docket 336-4), ¶ 3 & Ex. B (Copyright Policy).) |
| 41. If Veoh receives notice that a user has uploaded infringing content after the user has already received a first warning, the user's account is promptly terminated and all videos published with that account are disabled. | Simons Decl. (Docket 336-4), ¶ 6; Papa Decl. (Docket 336-10) ¶ 9. |
| 42. After a user that has received a first warning has been terminated and all videos published with that account are disabled, the user's email address is added to a black list and cannot be used to register a new account. | Simons Decl. (Docket 336-4), ¶ 6. |
| 43. Veoh has terminated thousands of | Simons Decl. (Docket 336-4), ¶ 6; Supp. |

| | |
|---|---|
| user accounts for repeat copyright violations. | Papa Decl. (Docket 396-4) ¶ 6. |
| 44. Veoh does nothing to prevent content owners from finding the information needed to identify infringing videos. | Simons Decl. (Docket 336-4), ¶ 7 |
| 45. Veoh provides and displays a unique locater called a "permalink" for each video. | Simons Decl. (Docket 336-4), ¶ 7. |
| 46. In October 2007, Veoh, along with Disney, Viacom, Fox, CBS, and NBC Universal signed on to "The UGC Principles," available at www.ugcprinciples.com. | Papa Decl. (Docket 336-10), ¶ 12 and Ex. F. |
| 47. Veoh utilizes a means of generating a unique fingerprint (called a "hash") of a video file. Once Veoh disables access to a video for any reason including copyright infringement, Veoh's system automatically disables access to any other duplicate videos with the identical hash, and also blocks any subsequently submitted videos that are duplicates of disabled videos. | Papa Dep. at 132, Jan. 30, 2008, attached as Ex. C to the Golinveaux Decl. (Docket 338), ¶ 4; Papa Decl. (Docket 336-10), ¶ 13. |
| 48. In 2006, Veoh began developing its own technology for filtering potentially infringing content from ever being uploaded to its site, and has filed for a | Papa Decl. (Docket 336-10), ¶ 14; Golinveaux Decl. (Docket 338) ¶ 4 & Ex. C, 133:19-24, 134:23-135 |

10

**RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)**

| | |
|---|---|
| patent relating to this technology. | |
| 49. Audible Magic's service works by taking an audio fingerprint from video files, and matching it against Audible Magic's database of content. | Papa Decl. (Docket 336-10), ¶ 15 |
| 50. In the summer of 2007, Veoh began working with Audible Magic and testing its filtering technology. | Papa Dep., 81, January 30, 2009, attached as Ex. C to the Golinveaux Decl. (Docket 338), ¶ 4; Papa Decl. (Docket 336-10), ¶ 15. |
| 51. After a period of testing, Veoh put Audible Magic's filtering system into production in October of 2007. | Papa Dep., 81, January 30, 2009, attached as Ex. C to the Golinveaux Decl. (Docket 338), ¶ 4; Papa Decl. (Docket 336-10), ¶ 15. |
| 52. Beginning in October of 2007, if a user attempted to upload any video that matched against Audible Magic's database, the video was cancelled before publication so that it was never available for viewing on Veoh. | Papa Dep., 83, January 30, 2009, attached as Ex. C to the Golinveaux Decl. (Docket 338), ¶ 4; Papa Decl., ¶ 15 (Docket 336-10). |
| 53. Audible Magic filtering occurs on Veoh even if Veoh has never received a DMCA notice regarding the video. | Papa Dep., 159, January 30, 2009, attached as Ex. C to the Golinveaux Decl. (Docket 338), ¶ 4; Papa Decl., ¶ 15 (Docket 336-10). |
| 54. By mid-2008, Veoh had also run its entire existing database of videos against Audible Magic's filter and disabled access to all videos that matched against Audible Magic's database that were not | Papa Dep., 159, January 30, 2009, attached as Ex. C to the Golinveaux Decl. (Docket 338), ¶ 4; Papa Decl. (Docket 336-10), ¶ 15. |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)**

| | |
|---|---|
| submitted by Veoh partners. | |
| 55. UMG never sent Veoh a notice requesting that a specific video file be removed before September 4, 2007, as the only notices received by Veoh regarding any of the alleged infringements asserted by UMG in this case, were sent by an industry group called the Recording Industry Association of America ("RIAA"). | Simons Decl. (Docket 336-4), ¶ 8; Golinveaux Decl. (Docket 338), ¶ 5 & Ex. D (Sept. 24, 2007 Letter); Papa Decl. (Docket 336-10), ¶ 16. |
| 56. UMG never sent a notice pursuant to Section 512(c) of the DMCA before filing suit on September 4, 2007, as the only notices received by Veoh regarding any of the alleged infringements asserted by UMG in this case, were sent by the RIAA. | Simons Decl. (Docket 336-4), ¶ 8; Golinveaux Decl. (Docket 338), ¶ 5 & Ex. D (Sept. 24, 2007 Letter); Papa Decl. (Docket 336-10), ¶ 16. |
| 57. On September 24, 2007, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos. | Golinveaux Decl. (Docket 338) ¶ 5 & Ex. D (Sept. 24, 2007 Letter). |
| 58. UMG responded on October 1, 2007, noting that UMG was not obligated "to identify each instance in which Veoh is displaying unauthorized content." | Golinveaux Decl. (Docket 338) ¶ 6 & Ex. E (Oct. 1, 2007 Letter). |
| 59. On October 19, 2007, Veoh again | Golinveaux Decl. (Docket 338) ¶ 7 & |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| asked UMG to identify any allegedly infringing videos, but UMG did not respond. | Ex. F (Oct. 19, 2007 Letter). |
| 60. UMG first identified a total of 1,591 allegedly infringing videos in interrogatory responses dated December 1, 2008. | Golinveaux Decl. (Docket 338), ¶ 8 & Ex. G (UMG's Response to Veoh's Interrog. No. 25). |
| 61. On January 6, 2009, UMG supplemented its response to identify an additional 854 allegedly infringing videos. | Golinveaux Decl. (Docket 338), ¶ 9 & Ex. H. (Jan. 16, 2009 Supp. to Ex. A to UMG's Resp. to Veoh's Interrog. No. 25). |
| 62. UMG claimed these 2,445 videos infringed a total of 1,344 of UMG's federally registered copyrights, and 111 unregistered copyrights or for which federal registrations are pending. | Golinveaux Decl. (Docket 338), ¶¶ 8-9 & Exs. G-H. (UMG's Response to Veoh's Interrog. No. 25 and Jan. 16, 2009 Supp. to Ex. A to UMG's Resp. to Veoh's Interrog. No. 25). |
| 63. Of the first batch of 1,591 videos identified by UMG as infringing in response to interrogatory responses, twelve were duplicates. | Papa Decl. (Docket 336-10), ¶ 16. |
| 64. Of the 1,579 videos remaining that were identified by UMG as infringing, 1,268 had already been disabled by Veoh. | Papa Decl. (Docket 336-10), ¶ 16. |
| 65. The remaining 311 videos identified by UMG as infringing had already been independently run through the Audible Magic filter, but had not matched and were still available on Veoh. | Papa Decl. (Docket 336-10), ¶ 16. |

| | |
|---|---|
| 66. Veoh immediately disabled access to those 311 videos and informed UMG. | Papa Decl. (Docket 336-10), ¶ 16; Golinveaux Decl. (Docket 338), ¶ 11 & Ex. J (Dec. 15, 2008 Letter). |
| 67. Of the second batch of 854 videos identified by UMG on January 16, 2009, two videos were duplicates. | Papa Decl. (Docket 336-10), ¶ 17. |
| 68. Of the remaining 852 videos in the second batch of videos identified by UMG as infringing, all had already been disabled by Veoh. | Papa Decl. (Docket 336-10), ¶ 17. |
| 69. Veoh has received emails from UMG's employees and agents regarding videos they uploaded to Veoh's website. | Golinveaux Decl. (Docket 338), ¶ 13 and Ex. L (Veoh's Supp. Responses to UMG's Second Interrogatories); Simons Decl. (Docket 336-4), ¶¶ 10-11 and Exs. D-E). |
| 70. Many of the videos in this second batch were identified in infringement notices sent to Veoh by the RIAA. | *See,* UMG's Statement of Genuine Issues of Material Fact, filed 3/30/09 (Docket 382) at ¶ 66; Supplemental Declaration of Stacie Simons in Support of Defendant Veoh Networks Inc.'s Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Docket No. 396-2) ¶¶ 4-13 (noting that for each of the works identified in the RIAA notices that UMG submitted with its opposition as Exhibits 23 through 32 of the Batsell |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | | |
|---|---|---|
| | | Decl. (Docket 388) such works were removed within 24 hours.) |
| | 71. All of the allegedly infringing videos at issue in this action that were identified by RIAA notices sent to Veoh and submitted by UMG with its prior opposition (Docket 388, exhibits 23-32), were promptly terminated by Veoh. None of the RIAA notices mention UMG or assert all rights to works of any the artists they did identify. *See* Batsell Decl. (Docket 388), Exs. 23-32. | Declaration of Rebecca Calkins in Support of Defendant Veoh Networks Inc.'s Renewed Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("Calkins Decl.") ¶ 2 and Exh. A (UMG's Supp. Interrogatory Response No. 21, p. 18:26-27 ("…it appears that Veoh removed the material located at the specific URLs identified in the notices it received…."); Supp. Decl. of Stacie Simons (Docket No. 396-2) ¶¶ 4-13 (noting that for each of the works identified in the RIAA notices that UMG submitted with its opposition, such works were removed within 24 hours). |
| | 72. On April 22, 2009, UMG notified Veoh that its prior identifications of alleged infringements contained numerous errors and that UMG was withdrawing its allegations of infringement with respect to at least forty videos. | Declaration of Erin R. Ranahan in Support of Veoh Network Inc.'s *Ex Parte* Application For Permission to Supplement the Record in Support of Its Motion for Summary Judgment to Incorporate UMG's Recent Withdrawal of Alleged Infringements (Docket 452-2) ¶ 2 and Exh. A. |
| | 73. On May 11, 2009, the deadline for | Calkins Decl. ¶ 3 and Exh. B. |

15

**RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| fact discovery in this case and more than a year and a half after filing suit, UMG further amended its list of alleged infringements, identifying a new total of 7,756 videos as allegedly infringing. | |
| 74. Of the 7,756 videos identified by UMG on May 11, 2009, fourteen were duplicates. | Second Supplemental Papa Declaration in Support of Defendant Veoh Networks Inc.'s Renewed Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("Second Supp. Papa Decl.") ¶ 2. |
| 75. Of the remaining 7,742 videos, all had already been disabled by Veoh. | Second Supp. Papa Decl. ¶ 3. |
| 76. Veoh also features partner content from prominent content owners such as ABC, CBS, ESPN, Viacom, and Warner Television, which UMG has not alleged is infringing. | Papa Decl. (Docket 336-10), ¶ 2. |

## II. <u>CONCLUSIONS OF LAW</u>

1. A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986

2. The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If

the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "A mere scintilla of evidence supporting the non-moving party's position is insufficient:" the moving party will win summary judgment unless there is "evidence on which a jury could reasonably find for the non-moving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

3. Veoh meets the definition of a service provider applicable to Section 512(c) because it is "a provider of online services or network access, or the operator of facilities therefor . . . ." pursuant to 17 U.S.C. § 512(k)(1)(B).

4. Veoh meets the requirements of Subsection 512(i)(1)(A) because it has (1) adopted a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implements its repeat infringer policy in a reasonable manner; and (3) informs its subscribers of its repeat infringer policy. 17 U.S.C. § 512(i)(1)(A); *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004).

5. Veoh meets the requirement of subsection 512(i)(1)(B), as UMG has not identified any "standard technological measures" as defined in 17 U.S.C. § 512(i)(2).

6. Veoh meets the condition of Section 512(c) requiring it to designate an agent to receive notice of infringements under subsection 512(c)(2).

7. Veoh does not fail the three conditions of subsection 512(c)(1).

First, Veoh meets the requirements of 512(c)(1)(A)(i) because Veoh did not have actual knowledge of any of the infringements alleged by UMG. It is UMG's burden to show that Veoh had actual knowledge of the alleged infringement within the meaning of Section 512(c). *See Perfect 10, Inc. v. Amazon.com, Inc., et al.*, CV 05-4753 AHM (SHx), Order Granting in Part and Denying in Part A9's Summary Judgment Motion at 8 (C.D. Cal., Nov. 4, 2008)(citing *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1111 (9th Cir. 2007)). Veoh did not have actual knowledge of any of the infringements alleged by UMG and UMG never provided Veoh with notice of any

17
**RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)**

allegedly infringing videos on Veoh's system until more than a year into this lawsuit. As stated in *Corbis*, "[Plaintiff's] decision to forego the DMCA notice . . . stripped it of its most powerful evidence of a service provider's knowledge." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004).

Second, Veoh was not "aware of facts or circumstances from which infringing activity is apparent," and thus meets the condition of 512(c)(1)(A)(ii). "In determining whether a service provider has such awareness, 'the question is not what a reasonable person would have deduced given all the circumstances. Instead the question is whether the service provider deliberately proceeded in the face of blatant factors of which it was aware. In other words, apparent knowledge requires evidence a service provider turned a blind eye to red flags of obvious infringement.'" *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1148 (N.D. Cal. Aug. 27, 2008) (quoting *Corbis Corp,* 351 F.Supp.2d at 1108). There are no facts to indicate any such "red flags" of infringement here.

Finally, Veoh also meets the requirements of 512(c)(1)(A)(iii), because "upon obtaining such knowledge or awareness," Veoh acted "expeditiously to remove, or disable access to, the material."

8. Veoh meets the conditions of Section 512(c)(1)(B) because Veoh does not have the right and ability to control the alleged infringing activity. *Corbis Corp.,* 351 F. Supp. 2d at 1110 (no right and ability to control when Amazon did not "pick" the content to appear on its site or preview them). Veoh's implementation of filtering technology and any voluntary monitoring efforts do not impart disqualifying control. *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp.2d 914, 1094 (C.D. Cal. 2003) ("Congress did not intend for companies such as eBay to be penalized when they engage in voluntary efforts to combat piracy over the Internet: This legislation is not intended to discourage the service provider from monitoring its service for infringing material. Courts should not conclude that the service provider loses eligibility for limitations on liability under section 512 solely because it engaged in a monitoring

**RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)**

program."). Further, Veoh's ability to remove works once notified of infringement does not create a right and ability to control. *Id.* at 1093-94 ("the 'right and ability to control' the infringing activity, as the concept is used in the DMCA, cannot simply mean the ability of a service provider to remove or block access to materials posted on its website or stored in its system. . . . The DMCA specifically requires a service provider to remove or block access to materials posted on its system when it receives notice of claimed infringement. . . . Congress could not have intended for courts to hold that a service provider loses immunity under the safe harbor provision of the DMCA because it engages in acts that are specifically required by the DMCA").

9. The Court need not reach the financial benefit inquiry of Section 512(c)(1)(B) because Veoh does not have the right and ability to control the alleged infringing activity. *Corbis*, 351 F. Supp. 2d. at 1110 (noting no need to consider the issue of direct financial benefit when claimant of safe harbor did not have right and ability to control infringing conduct). Nevertheless, Veoh also did not receive a financial benefit directly attributable to the alleged infringing activity. There can be no direct financial benefit "where the infringer makes the same kind of payment as non-infringing users" for use of the service provider's service. *CoStar Group, Inc. v. LoopNet, Inc.*, 164 F. Supp. 2d at 705 (quoting H.R. Rep. No. 105-551 (II), at 54). Veoh operates a service with non-infringing content and does not promote infringing content to draw users to its site. No financial benefit exists where, like here, there is no "causal relationship between the infringing activity and any financial benefit." *Ellison*, 357 F.3d at 1077, 1079.

10. Because Veoh promptly responds to infringement notices (and promptly disabled any video UMG has claimed to be infringing) and promptly terminates repeat infringers, any injunctive relief allowed by Section 512(j) is moot in this case. *Io*, 586 F.Supp.2d at 1155-56 (holding that because Veoh independently removed all of Io's claimed works, any injunctive relief to which it would be entitled is moot); *Corbis Corp,* 351 F. Supp. 2d at 1111 (denying injunctive relief under 512(j) as moot:

**RULE 56-1 STATEMENT OF UNCONTROVERTED FACTS - Case No. CV 07 5744 – AHM (AJWx)**

"considering that Amazon has asserted that it has terminated the accounts of the defendant vendors, it is not certain how the limited injunctive relief would apply in the context of this litigation.")

Dated: May 22, 2009            WINSTON & STRAWN, LLP

By:   /s/  Jennifer A. Golinveaux
        Michael S. Elkin
        Thomas P. Lane
        Jennifer A. Golinveaux
        Rebecca Calkins
        Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.