Rebecca Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1506
Facsimile: (415) 591-1400

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>VEOH NETWORKS, INC.<br><br>Defendant. | **Case No. CV 07 5744 – AHM (AJWx)**<br><br>**SUPPLEMENTAL MEMORANDUM RE VEOH NETWORKS, INC.'S MOTION FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES**<br><br>Original Hearing: June 15, 2009<br>NEW HEARING DATE [per Court Order]…………....…June 3, 2009<br>Time: 10:00 a.m.<br>Judge: Andrew J. Wistrich<br>Discovery Cut-off: May 11, 2009<br>Pretrial Conference: August 8, 2009<br>Trial Date: August 18, 2009<br><br>Complaint Filed: September 4, 2007 |

**SUPP. MEMO. RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES** Case No. CV 07-5744 – AHM (AJWx)

## I. INTRODUCTION

UMG's efforts to needlessly drive up litigation costs in this action continue even after the May 11, 2009 discovery cut-off. Veoh has agreed to maintain copies of files identified by UMG as allegedly infringing. (Joint Stip. Re Veoh's Mot. ("Joint Stip.") (Docket 448) at p. 1:25-2:2; 5:28-6:2). UMG insists, however, that Veoh retain copies of <u>all</u> video files indefinitely regardless of whether UMG alleges they are infringing.

UMG admits that it received the final requested data relating to its ability to identify alleged infringements—metadata from Audible Magic—in February 2009. UMG has not explained how or why nearly four months since production of this Audible Magic metadata, nearly one year after Veoh produced links to its video files, and nearly two years into this lawsuit, UMG has "not found sufficient time to review this information and complete its identification of infringements by Veoh." UMG has not described what additional steps it needs to take considering that to date, and following the expiration of the discovery cut-off and UMG's deadline to identify alleged infringements on May 11, 2009, UMG and its team of lawyers have not yet managed to identify additional videos as infringing.

The relief sought by Veoh is entirely proper; courts may grant necessary relief where the burden of discovery outweighs its benefit. Veoh only seeks permission to cease retaining those videos that UMG has not alleged to be infringing. Veoh has provided UMG with all video files and UMG is (and has been) free to make its own copies of any videos it chooses. UMG concedes it would require at least 725 hard-drives to copy all of the videos Veoh has cancelled from public access ("Cancelled Video Files") at a cost of $72,500 (*See* Joint Stip. (Docket 448) note 4). This substantial cost does not take into account the two to three months of employee time required to manage the copying. (Supp. Decl. of Joseph Papa ("Supp. Papa Decl.") ¶ 2).[1] There is no legitimate reason for Veoh to retain copies of *all* Cancelled Video

---

[1] Veoh has recently been forced to lay-off half its work-force, and currently has only 26 employees left. *Id.* Thus, Veoh has no full-time employee to spare on this project,

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Files for an indefinite period of time, and the Court should grant Veoh's motion. In the alternative, if UMG insists on copies of all Cancelled Video Files irrespective of whether they are alleged to be infringing, UMG should pay the associated costs.

## II. The Burden of Retaining Irrelevant Video Files Outweighs The Benefit

UMG continues to insist that Veoh retain copies of all videos indefinitely. While UMG argues that no authority supports Veoh's request, Fed. R. Civ. Proc. 26(b)(2)(B) specifically authorizes a court to make "specific limitations" regarding discovery of "electronically stored information." A Court in this District has properly granted a motion for protective order pursuant to Rule 26 allowing a party to cease retaining electronic data. (Declaration of Erin R. Ranahan ("Ranahan Decl.") ¶ 3 (attaching 12/16/08) Order *Perfect 10 Inc. v. Microsoft, Corp.,* Case No. 2:07-cv-05156-AHM-SH (Docket 56) (granting motion for protective order allowing Microsoft to delete IP addresses and other electronic data from its search logs where retention of such data would conflict with Microsoft's privacy policies, and Plaintiff was unlikely to justify production of such data). Courts routinely grant orders limiting discovery where the burden outweighs any benefit of such information. For example, in *Petcou, et al. v. C.H. Robinson Worldwide, Inc.*, 2008 U.S. Dist. LEXIS 13723, (N.D. Ga. 2008), it was unclear how the responding party would determine whether electronic data related to or evidenced certain information. Thus, the court found that because such production would provide little, if any relevant information that had not already been provided, the "burden and expense of the proposed discovery as a whole outweighs its likely benefit." *Id.* at *5. In *Equal Opportunity Commission v. The Boeing Co.*, No. CV-05-03034, 2007 U.S. Dist. LEXIS 29107, *8 (D. Ariz.), the court cited a prior order in which it determined that based on the costs and burden to the defendant certain documents were properly considered "inaccessible," as there was no reason to doubt the defendant's estimate of $55,000 for producing such documents.

---

and will likely have to lay off additional employees if it is forced to undertake these prohibitive copying costs. (Papa Decl. filed May 22, 2009 (Docket 447-3) ¶ 3.)

**SUPP MEMO. RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)**

*Id. See also Best Buy Stores, L.P. v. Developers Diversified Realty Corp., et al.*, 247 F.R.D. 567, 570 (holding where data restoration would cost at least $124,000 plus a monthly storage fee of $27,823, such "high costs" rendered information "inaccessible" under Rule 26(b)(2).)

Beyond driving up litigation costs, it is unclear why UMG insists that Veoh retain videos that UMG has *not* identified as infringing.[2] As the discovery cut-off in this action has expired, Veoh should not be forced to incur devastating costs for no apparent purpose. It is not clear what additional tests UMG would have to run on videos produced to UMG in September 2008, and additional filtering metadata produced in February 2009, to justify requiring Veoh to continue to incur these substantial costs. As the "burden and expense" of continuing to preserve the videos "outweigh its likely benefit," the Court should deny Plaintiffs' request for Veoh to continue to undergo these needless costs. While UMG claims that Veoh could simply purchase 725 hard-drives, incurring at least $72,500, these are very significant costs. Moreover, the $72,500 fails to account for the full time employee that would have to spend two to three months copying such files. Supp Papa Decl. ¶¶ 2-3. As Veoh has already been forced to issue lay-offs, it simply has no employees to allocate to this project. *Id.* at ¶ 3.

### III. The Court Never Acknowledged UMG's "Right" To File Another Lawsuit

UMG suggests that no matter what happens in this lawsuit, UMG can simply sue Veoh again alleging the same claims, and thus Veoh should have to retain evidence for such threatened future litigation indefinitely. To support this, UMG misleadingly claims that the Court has determined that UMG has a "right" to bring another lawsuit. Whether UMG has a "right" to bring a subsequent lawsuit against Veoh, however, has *not* been determined; rather, during a discovery hearing on UMG's motion to compel audible magic metadata (that was found to be moot) the

---

[2] Moreover, UMG's counsel acknowledged that it intended to copy relevant files. (Ranahan Decl. ¶ 2 and Exh. 1, note 1.)

3

**SUPP MEMO. RE VEOH'S MOT. FOR PROTECTIVE ORDER ALLOWING IT TO CEASE STORING VIDEO FILES   Case No. CV 07-5744 – AHM (AJWx)**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Court stated that given that UMG was unable to offer a proposed timeframe (two months after the allegedly missing data had been indisputably produced) as to when UMG could complete its identification of alleged infringements, there would be no time in the current action to include such alleged infringements. This statement did *not* consider any substantive basis that could preclude UMG from proceeding with another action. For instance, Veoh does not expect to be found liable for any alleged infringements in this action because Veoh is afforded protection by the DMCA safe harbor, currently the subject of a pending summary judgment motion. If the motion is granted, a ruling could halt subsequent infringement lawsuits filed by UMG.

### IV. Contrary to UMG's Claim, Veoh Does Not Seek To Delete Relevant Videos

While UMG claims that Veoh's motion seeks to delete "evidence in this ongoing litigation," Veoh said it would retain videos identified as infringing by UMG. UMG's feigned confusion over what this means (*see* Joint Stip. (Docket 448) p. 12. note 6) is not well taken. To further clarify, Veoh would retain copies of all videos identified on UMG's latest list of alleged infringements, served on May 11, 2009.[3]

### V. UMG Should Pay For Any Continued Retention or Copies

If UMG insists that Veoh continue to store all videos, or to make copies of all Cancelled Video Files, UMG should be required to pay the associated costs. Cost shifting is authorized by Fed. R. Civ. Proc. 26(b)(2) and 26(c), which allow courts to impose limits or conditions on discovery and to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The trend in the law is strongly toward finding an "undue burden" that justifies cost shifting where the requesting party seeks electronic data from inactive or inaccessible sources. *See Zubulake v. UBS Warburg*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("Zubulake I") (dealing with inaccessible backup tapes); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 476-477 (N.D. Cal. 2003).

---

[3] Thus, UMG's complaint that Veoh has not "stipulated that the videos UMG has already identified contain the copyrighted works UMG has identified" is a red herring.

The *Zubulake II* court set forth the following factors to be considered in order to determine whether cost-shifting is appropriate for the discovery of inaccessible data, which the court said should be weighted in more or less the following order: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. *Zubulake v. UBS Warburg*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) ("*Zubulake II*") (citing *Zubulake I*, 217 F.R.D. at 321); *see OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 476, 479 (N.D. Cal. 2003) (ordering parties to split equally costs of extracting source code from defendant's database where only two factors weighed in favor of cost shifting) (citing *Zubulake II*). These factors are equally relevant to requiring a party to retain data for production as to production of electronic data. Here, considering that Veoh has proposed a reasonable alternative that has provided UMG all the information it seeks, factors one, two, five, six and seven weigh heavily in favor of shifting the costs to UMG. Factor four also weighs in favor of shifting costs to UMG, indisputably Veoh's financial superior, as Veoh is a small company yet to turn a profit. Regarding factor three, UMG's having sought excessive damages should not prevent cost-shifting where the equities mandate shifting such costs to UMG. Given that Veoh has provided UMG with access to all and retained copies of all allegedly infringing videos, any costs arising out of UMG's efforts to obtain the same information in a more burdensome fashion, should be allocated to UMG.

## VI. CONCLUSION

Veoh respectfully requests that the Court grant its motion for a protective order permitting Veoh to cease retaining copies of video files, other than those UMG has identified as allegedly infringing, beginning June 3, 2009.

Dated May 22, 2009:                        WINSTON & STRAWN LLP

                                           By:  /s/ Erin R. Ranahan
                                                Erin R. Ranahan
                                                Jennifer A. Golinveaux
                                                Attorneys for Defendant
                                                VEOH NETWORKS, INC.