Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC., a California Corporation, et al.,<br><br>Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)**<br><br>**VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE SUBMITTED BY DEFENDANT IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 15, 2009<br>Time: 10:00 AM<br>Courtroom: 14<br>Judge: Hon. A. Howard Matz |

## I. INTRODUCTION

Because Plaintiffs ("UMG") cannot refute the undisputed evidence regarding Veoh's proven adherence to its copyright policies, UMG resorts to raising a host of improper evidentiary objections, such as attacking the personal knowledge of Veoh's own employees. As set forth below, each of UMG's evidentiary objections are without merit and should be overruled.

## II. UMG'S OBJECTIONS TO VEOH'S EVIDENCE ARE WITHOUT MERIT AND SHOULD BE OVERRULED

### A. Simons' Declaration Statements Are Based on Personal Knowledge, And in Any Event, Papa Declares To Statements Regarding Veoh's DMCA Policy Prior To Simons' Employment

Lacking any substantive evidence to create a genuine issue regarding Veoh's proven adherence to its DMCA policy, UMG objects that statements by Veoh's Senior Management of Copyright Compliance, Stacie Simons, "lack foundation." Ms. Simons declares as follows with respect to her job at Veoh:

> my responsibilities include overseeing Veoh's adherence to its copyright policies, including Veoh's response to take down notices sent pursuant to the DMCA. I have been employed by Veoh since April 16, 2007. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would competently testify thereto.
> Declaration of Stacie Simons In Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Dkt. 336-4) ("Simons Decl.").

Accordingly, Simons is well equipped to testify about Veoh's policies and practices. UMG also objects to Ms. Simons' statements on the grounds that they don't speak to Veoh's policies and practices prior to her employment at Veoh, which began on April 16, 2007. But as shown in the chart below, Joseph Papa—who has worked at Veoh since its inception—has declared to Veoh's policies and practices from its

1

inception. *Compare,* Simons Decl. with the Declaration of Joseph Papa In Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Dkt. No. 336-10) ("Papa Decl.") and Supplemental Declaration of Joseph Papa in Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Dkt. No. 336-10) ("Papa Supp. Decl."):

| **Simons' Decl. Statement (Dkt. No. 336-4)** | **Papa's Decl. Statement (Dkt No. 336-10) and/or Papa Supp. Decl. Statement (Dkt. No. 396-4).** |
|---|---|
| Simons Decl. (Dkt. No. 336-4) ¶ 2: "[d]uring this review for pornographic or obscene content, if employees encounter videos they suspect infringe copyright or otherwise violate Veoh's Terms of Use, they report them to me for determination and I disable access as appropriate. If other employees encounter potentially infringing videos, they will also forward them to me for determination and I disable access as appropriate." | Papa Supp. Decl. (Dkt. No. 396-4) ¶ 6: "It has been Veoh's policy since its inception to promptly take down suspected infringing content. Veoh has always acts promptly to disable such content, often within the same day or within a day or two. Though responding requires judgment calls, Veoh has always erred on the side of caution in disabling suspected infringing content." |
| Simons Decl. (Dkt. No. 336-4) ¶ 3: "Since August 15, 2005, Veoh has prominently made available on its website at Veoh.com and provided the Copyright Office the name, address, phone number, and electronic mail address of its designated agent to receive notices of claimed infringement. Attached hereto as Exhibit B is a true and correct copy of | Though of course Simons, as Senior Manager of Copyright Compliance, would be well aware of this fact, Papa testifies to the same: Papa Decl. (Dkt. No. 336-10) ¶ 11: "From the beginning of its service, Veoh has had a designated agent to receive notices of alleged infringement. On August 15, 2005, Veoh designated an |

**VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE– CASE NO. 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| Veoh's current Copyright Policy, that is publicly available on Veoh's website." | agent with the U.S. Copyright Office to receive notifications of claimed infringement. Attached hereto as Exhibit E is a true and correct copy of Veoh's Interim Designation of Agent to Receive Notification of Claimed Infringement that was provided to the U.S. Copyright Office." |
| Simons Decl. (Dkt. No. 336-4) ¶ 4: "Veoh has responded to thousands of DMCA notices since its inception. When Veoh receives DMCA-compliant notices, we act promptly to disable access to the video, often on the same day we received the notice, or within a day or two of receiving the notice. Veoh processes DMCA notices, removes noticed content, and responds to the complainant often on the same day it receives the complaint. As appropriate, we also act to terminate the associated user account if the account has previously been subject to a copyright removal. Veoh errs on the side of disabling videos if they might be infringing." | Papa Supp. Decl. (Dkt. No. 396-4) ¶ 6: "It has been Veoh's policy since its inception to promptly take down suspected infringing content. Veoh has always acts promptly to disable such content, often within the same day or within a day or two. Though responding requires judgment calls, Veoh has always erred on the side of caution in disabling suspected infringing content." |
| Simons Decl. (Dkt. No. 336-4) ¶ 9: "Employees may spot check some videos after publication, on an ad hoc basis, for | Papa Decl. (Dkt. No. 336-10) ¶ 9: "From the beginning of its service, Veoh has had a strong DMCA policy and zero |

| | |
|---|---|
| compliance with Veoh's terms of use and for proper categorization. For example, employees may spot check videos that appear in prominent places on the website such as the home page, or that are identified in a infringement notice." | tolerance for infringing content. Veoh promptly disables access to allegedly infringing content upon notice, and has always had a policy to terminate repeat infringers. Veoh's policies have always strictly prohibited the use of its website or software in connection with infringing content. Veoh's website has always stated that Veoh does not permit infringing videos and that Veoh reserves the right to terminate repeat infringers. All prior versions of Veoh's TOU and incorporated documents have contained such language. From the beginning of its service, Veoh has adopted, implemented, and informed users of its policy providing for the termination of Veoh's users who are repeat infringers."<br><br>Papa Supp. Decl. (Dkt. No. 396-4) ¶ 6: "It has been Veoh's policy since its inception to promptly take down suspected infringing content. Veoh has always acts promptly to disable such content, often within the same day or within a day or two. Though responding requires judgment calls, Veoh has always erred on the side of caution in disabling |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

| | |
|---|---|
| | suspected infringing content." |
| Simons Decl. (Dkt. No. 336-4) ¶ 6: "If Veoh receives notice that a user has uploaded infringing content after the user has already received a first warning, the user's account is promptly terminated and all videos published with that account are disabled. The user's email address is added to a black list and cannot be used to register a new account. Veoh has terminated thousands of user accounts pursuant to its repeat infringer policy." | Papa Decl. (Dkt. No. 336-10) ¶ 9: "From the beginning of its service, Veoh has had a strong DMCA policy and zero tolerance for infringing content. Veoh promptly disables access to allegedly infringing content upon notice, and has always had a policy to terminate repeat infringers. Veoh's policies have always strictly prohibited the use of its website or software in connection with infringing content. Veoh's website has always stated that Veoh does not permit infringing videos and that Veoh reserves the right to terminate repeat infringers. All prior versions of Veoh's TOU and incorporated documents have contained such language. From the beginning of its service, Veoh has adopted, implemented, and informed users of its policy providing for the termination of Veoh's users who are repeat infringers." |
| Simons Decl. (Dkt. No. 336-4) ¶ 8: "UMG never provided Veoh with permalinks of allegedly infringing videos, or with any other information identifying specific allegedly infringing videos on Veoh's system until more than a year into | Papa Decl. (Dkt. No. 336-10) ¶ 16: "As to the works alleged in this case, UMG never identified allegedly infringing videos to Veoh until more than a year into this lawsuit. Veoh promptly analyzed the videos identified by UMG as |

| this lawsuit. Prior to that time, Veoh was not aware of any of the specific infringements alleged by UMG." | infringing to determine whether any were still available on Veoh." |
|---|---|

Accordingly, while Simons has personal knowledge of the facts she testifies to in her declaration, Papa has testified to the same regarding Veoh's policies for the periods before Ms. Simons arrived at Veoh. Thus, such objections should be overruled.

Finally, though UMG concedes that "Veoh removed the material located at the specific URLs identified in the [RIAA] notices it received," UMG objects to Ms. Simons having testified about such prompt takedowns prior to her start date. *See,* UMG's Statement of Genuine Issues (Dkt. No. 468) ¶ 71. It falls within Ms. Simons' responsibilities to verify takedowns upon request, even those that occurred prior to her start date, in order to ensure compliance with Veoh's copyright policies and communicate internally and third parties regarding the same. Such takedown time is consistent with the Declarations of both Papa (who has been at Veoh since its inception) and Simons regarding Veoh's prompt response time. Papa Supp. Decl. (Dkt. No. 396-4) ¶ 6; Simons Decl. (Dkt. No. 336-4) ¶ 4. Here, Ms. Simons was able to verify prior takedowns of the RIAA notices using the same steps she would use to confirm any prior takedowns, and UMG has presented no evidence to suggest that such takedowns were not promptly processed. Instead, UMG has admitted that such takedowns occurred. *See,* UMG's Statement of Genuine Issues (Dkt. No. 468) ¶ 71. Thus, UMG's objections to the undisputed facts are not well founded and should be overruled.

### B. UMG's Additional Objections to the Simons Decl. Fail

UMG objects to Simons Dep. at 86:9-86:22, and Simons Decl. (Dkt. No. 336-4) ¶ 2 which states:

[d]uring this review for pornographic or obscene content, if employees encounter videos they suspect infringe copyright or otherwise violate

6

**VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE– CASE NO. 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  Veoh's Terms of Use, they report them to me for determination and I
2  disable access as appropriate. If other employees encounter potentially
3  infringing videos, they will also forward them to me for determination
4  and I disable access as appropriate.

5  Though UMG objects that this paragraph does "not lay any foundation for
6  statements" prior to April 16, 2007, this paragraph is based on Ms. Simons' own
7  experience with respect to this policy—and does not purport to testify about Veoh's
8  policy prior to her start date. Moreover, though UMG claims that what other
9  employees do is "hearsay," Ms. Simons has actually received such communications
10 from Veoh's employees (which have been produced to UMG) so such is hardly
11 hearsay.

12 Likewise, UMG's "improper lay opinions" and "hearsay" objections to the
13 following statement in Simons Decl. (Dkt. No. 336-4) ¶ 4 are not well-taken:
14  Veoh has responded to thousands of DMCA notices since its inception.
15  When Veoh receives DMCA-compliant notices, we act promptly to
16  disable access to the video, often on the same day we received the notice,
17  or within a day or two of receiving the notice. Veoh processes DMCA
18  notices, removes noticed content, and responds to the complainant often
19  on the same day it receives the complaint. As appropriate, we also act to
20  terminate the associated user account if the account has previously been
21  subject to a copyright removal. Veoh errs on the side of disabling videos
22  if they might be infringing.

23 UMG is well aware through Veoh's production that Ms. Simons has processed
24 thousands of notices since arriving at Veoh, which makes the first sentence
25 indisputably true. Similarly, UMG is well aware that the remaining statements about
26 Veoh's promptly processing DMCA notices is overwhelming confirmed by the
27 documents produced in this action, and UMG offers no evidence to dispute this fact.
28 UMG's objections to this undisputed testimony should be overruled.

Finally, with respect to UMG's objections that Simons Decl. (Dkt. No. 336-4) ¶ 9 is improper lay testimony and Ms. Simons has not established any foundation for such statements, there is no one better or more qualified to testify regarding the feasibility of reviewing every single video uploaded to Veoh to determine whether it is infringing than Ms. Simons. Ms. Simons is Veoh's dedicated full time employee for overseeing adherence to Veoh's copyright policy, which includes managing takedowns and review of suspected infringement. Far from constituting "conclusory" or "improper lay testimony," Ms. Simons offers this testimony based on her personal knowledge, and day-to-day experience as Senior Manager of Copyright Compliance.

UMG cites *United States v. Henke,* 222 F.3d 633, 641-2 (9th Cir. 2000) in support of its argument that Ms. Simons is offering improper lay testimony on the grounds that "[i]f the jury already has all the information upon which the witness's opinion is based, the opinion is not admissible." But the trier of fact does not have "all the information" upon which the opinion is based without hearing first hand from Ms. Simons, Veoh's employee who is tasked with ensuring Veoh's compliance with its copyright/DMCA policy.

### C. Joseph Papa's Declaration Statements Are Based on His Personal Knowledge

UMG also objects to Papa's testimony about Veoh's DMCA policy at Papa Decl. (Dkt. No. 336-10) ¶ 9, ¶ 11, ¶ 12, and ¶ 16. Papa is the Vice President of Engineering at Veoh. As stated in his declaration, Mr. Papa has:

> responsibility for the architecture, technical design and implementation of the systems and product engineering for Veoh.com and the Veoh client software. I have been employed by Veoh since its inception. I am also familiar with Veoh's current and past Digital Millennium Copyright Act ("DMCA") and copyright policies and procedures, and have managed the technical implementation of such policies since Veoh's inception.

Second Supplemental Papa Declaration ("Second Supp. Papa Decl.")
(Dkt. No. 449-2) at ¶ 1.

Regurgitating its last set of objections to Papa's DMCA-related testimony, UMG's objections fail to even mention the above foundation provided by Papa in his Second Supplemental Declaration. As Papa is Veoh's VP of Engineering, responsible for Veoh's "architecture, technical design and implementation of the systems and product engineering for Veoh.com and the Veoh client software," such architecture, design and implementation are naturally intertwined with the implementation of Veoh's DMCA/copyright policies. With respect to Papa's testimony regarding the above and regarding the "strength" and "tolerance," such is based on Papa's personal knowledge of Veoh's policies since its inception, which is supported by ample additional evidence rendering such objections wholly immaterial. Thus, the statements in Papa's Decl. regarding Veoh's copyright policy are proper and should stand.

With respect to Papa Decl. (Dkt. No. 336-10) ¶ 12 regarding the "UGC Principles," UMG's objections have no bearing on this action and UMG has not disputed that Veoh has signed onto the UGC Principles. RSGI 46. UMG's objections to Papa Decl. (Dkt. No. 336-10) ¶ 14 are irrelevant and immaterial to this action, and in contravention the documents produced to UMG which demonstrate Veoh's efforts with respect to developing its own filtering technology and the undisputed fact that Veoh has implemented Audible Magic. UMG's objection to Papa Decl. (Dkt. No. 336-10) ¶ 15 with respect to Papa's use of the word "nascent" to describe the field of video fingerprinting is entirely irrelevant to the issues in this motion, and Papa is well qualified to testify on this topic.

Finally, UMG objects to Papa Decl. (Dkt. No. 336-10) ¶ 14 on the grounds that Papa has not "established any foundation" for his statement that "implementing filtering technology was an extension of Veoh's commitment to prevent copyright infringement, and something Veoh had always contemplated." Papa has been with

VEOH'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO EVIDENCE– CASE NO. 07 5744 – AHM (AJWx)

Veoh since its inception and is Veoh's VP of Engineering. It is hard to imagine how Mr. Papa could lay a stronger foundation for such statements.

## III. CONCLUSION

UMG's evidentiary objections are baseless and should be overruled in their entirety.

Dated: June 8, 2009             WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Calkins
Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.