Steven A. Marenberg (101033) (smarenberg@irell.com)
Elliot Brown (150802) (ebrown@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC., *et al.*, <br><br> Defendants. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S RESPONSE TO VEOH'S OBJECTIONS TO EVIDENCE SUBMITTED BY UMG IN SUPPORT OF ITS OPPOSITION TO VEOH'S MOTION FOR SUMMARY JUDGMENT RE: ENTITLEMENT TO SECTION 512(c) SAFE HARBOR** <br><br> Date: June 15, 2009 <br> Time: 10:00 AM <br> Judge: Hon. A. Howard Matz <br> Ctrm: 14 |

## I. INTRODUCTION

Defendant Veoh Networks, Inc. ("Veoh") objects to various evidence submitted by plaintiffs (collectively "UMG") in responding to Veoh's renewed motion for summary judgment ("Objections"). In particular, Veoh objects to nearly all of the declarations of Drs. Edelman and Horowitz, two experts who opined on (*i*) the direct financial benefit that Veoh obtained from infringement and (*ii*) Veoh's ability to control infringing activity through the use of technology, respectively. Each of these declarations speaks directly to an issue implicated by Veoh's claim to "safe harbor" under section 512(c) of the Digital Millennium Copyright Act ("DMCA").

Veoh contends that these opinions are irrelevant. In making this assertion, Veoh reveals the faulty notion underlying its Section 512(c) defense. Veoh argues that internet businesses are never liable for their direct copyright infringement so long as they do one thing: take down specific items of content, specifically identified in a written notice of infringement sent from the copyright holder. This cannot be so. The DMCA authorizes a copyright holder to identify a "representative list" of infringing material when "a single online site" offers "multiple copyrighted works." 17 U.S.C. 512(c)(3)(A)(ii). But Veoh argues that it has no obligation to remove infringing material unless the copyright holder specifically identifies each instance of such material in a notice of infringement. The DMCA expressly requires an internet business to disable or remove infringing material upon obtaining knowledge of the infringement or more general awareness of such activity. But Veoh argues – contrary to language of the statute – that those provisions are a nullity because no internet provider could ever obtain such knowledge or awareness except through specific written notice from the copyright holder. The DMCA expressly states that internet businesses that derive a direct financial benefit from infringing activity that they have the right and ability to control receive no safe harbor. But Veoh argues that collecting advertising revenue for *each and every*

display of infringing material is not a direct financial benefit. Further, Veoh argues that no internet business ever has the ability to control infringing activity, no matter the reasonable filtering measures (for example) at their fingertips. In sum, Veoh argues that despite Congress' drafting extensive, specific limitations to the DMCA's safe harbor, no internet business will touch those limits – they are a nullity. Veoh bases its objections to UMG's evidence almost exclusively on this false argument. Congress did not intend the majority of Section 512(c)'s language to be meaningless and to thereby pardon all direct infringement not specifically identified in a notice of infringement. Thus Veoh's objections are without merit, as more fully set forth below.

## II. VEOH'S OBJECTIONS TO DR. EDELMAN'S TESTIMONY ARE MERITLESS

Veoh's objections to Dr. Edelman's testimony do not support its exclusion:

- Veoh objects that Dr. Edelman's testimony regarding Veoh's advertising income is immaterial to its Section 512(c) defense and thus excludable. Objections at 1:25-2:5. More specifically, Veoh argues that its earning advertising income each and every time it displays videos infringing UMG's copyrights has no bearing on its claim to Section 512(c)'s safe harbor. Veoh cites no authority for this position—nor could it. This "financial benefit," attributable to Veoh's display of infringing material, could hardly be more direct. *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Coupled with Veoh's right and ability to control infringement of UMG's copyrights, this benefit bars Veoh's invocation of Section 512(c)'s safe harbor. *See* 17 U.S.C. 512(c)(1)(B).
- Veoh denies that Dr. Edelman's testimony regarding the draw of music content on Veoh – including UMG's music content – bears on Veoh's Section 512(c) defense, and hence Dr. Edelman's testimony is excludable. Objections at 2:7-16, 14:27-20:12. Veoh offers no case law in support of its contention, presumably because controlling Ninth Circuit authority is contrary to Veoh's position. *See*

| | |
|---|---|
| 1 | *Ellison*, 357 F.3d at 1078 (direct financial benefit "exists where the availability |
| 2 | of infringing material 'acts as a "draw" for customers'") (quoting *A&M Records,* |
| 3 | *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) and *Fonovisa, Inc. v.* |
| 4 | *Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)).  In fact, Veoh's |
| 5 | arguments for exclusion rest on the "draw" of infringing music videos being a |
| 6 | disputed issue of fact.  Specifically, Veoh claims that Dr. Edelman's opinions are |
| 7 | irrelevant and thus excludable "in light of the undisputed facts concerning the |
| 8 | extraordinarily small percentage of videos on Veoh that are categorized as music, |
| 9 | and the even smaller percentage of those videos that were identified by the |
| 10 | Audible Magic filter as potentially infringing."  Objections at 2:8-11.  Veoh's |
| 11 | allegations *are* in dispute, and Veoh misunderstands what does and does not |
| 12 | make evidence "admissible."  Dr. Edelman's testimony is not excludable because |
| 13 | Veoh has evidence that is purportedly inconsistent with his opinions.  These |
| 14 | inconsistencies – including Veoh's claim in 2006 that its "number one category |
| 15 | of searched and viewed content is Music," (Declaration of Jim Urie (Dkt. No. |
| 16 | 385), Ex. A) – create issues of material fact.  They do not render UMG's |
| 17 | evidence inadmissible. |

- Veoh argues that each paragraph of the Edelman Declaration cited in its Evidentiary Objections "lacks foundation."  These objections are frivolous.  For example, Veoh objects that the following testimony lacks foundation: "By reviewing Veoh.com, I also confirmed that the site's structure and video offerings indicate Veoh's interest in music video content. . . . Scrolling down the homepage, Veoh further highlights is "Music" offering, listing ten popular musical artists for which Veoh has associated videos."  Objections at 19:21-20:12.  This testimony does not "lack foundation."  It specifically sets forth its foundation, as does the remainder of Dr. Edelman's testimony.  Meritless "foundation" objections like this one appear throughout Veoh's submission.

- Veoh's remaining objections (such as to Dr. Edelman's qualifications) are similarly without merit and unsupported.

## III. VEOH'S OBJECTIONS TO DR. HOROWITZ'S TESTIMONY ARE BASELESS

Like its objections to Dr. Edelman's testimony, Veoh's objections to the Horowitz Declaration fail:

- Veoh argues that Dr. Horowitz's opinions regarding the efficacy of different types of filtering are "not relevant or useful to a determination of Veoh's motion [sic] summary judgment, and should be stricken pursuant to FRE 401/402." Objections at 22:2-4. Veoh's position ignores the plain language of Section 512(c)(1)(B), which denies safe harbor to service providers who directly benefit from infringement and have the "right and ability to control" infringing activity. Content filters enable Veoh to control infringing activity. Hence the availability of efficacious forms of content filtering and Veoh's belated use of them – the subjects of Dr. Horowitz's declaration testimony – are highly relevant to Veoh's claim to Section 512(c)'s safe harbor.
- As with Dr. Edelman, Veoh's other objections to Dr. Horowitz's testimony, including the unsubstantiated attack on his credentials, are without merit.

## IV. VEOH'S OBJECTIONS TO OTHER EXHIBITS ARE MERITLESS

Finally, Veoh objects to multiple exhibits – largely news articles and emails from Veoh's users – on foundation, hearsay, and relevance grounds. These objections are baseless, given the use to which UMG put these exhibits. For example, UMG did not cite Batsell Declaration Exhibit 49, a *New York Times* news article noting the wealth of infringing content available through Veoh, or Exhibit 45, an email to Veoh from one if its users similarly describing Veoh's wide offering of infringing material, for the truth of the matters asserted therein. Nor did UMG allege that the authors of these writings were fully familiar with Veoh's library of content. UMG cited these materials and others for their effect on Veoh, namely, to

make Veoh aware that multiple, varied individuals could easily locate infringing content on its system. Citing these materials for their effect on Veoh is not hearsay. *See* Fed. R. Evid. 801(c). Further, these materials are highly relevant to Veoh's "awareness of facts and circumstances from which infringing activity is apparent." *See* Section 512(c)(1)(A)(ii). Such awareness, coupled with Veoh's inaction, bars it from Section 512(c)'s protections.

For the foregoing reasons, Veoh's objections are meritless, and the Court should overrule them.

Dated: June 11, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: _____
Carter Batsell

Attorneys for Plaintiffs