

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL: | DISTRICT: C.D. Cal. | JUDGE: A. Howard Matz |
|---|---|---|

**DISTRICT COURT NUMBER:** CV-07-05744 AHM (AJWx)

| See Attachment 1 | DATE NOTICE OF APPEAL FILED:<br>Jun 11, 2009 | IS THIS A CROSS APPEAL?<br>☐ YES |
|---|---|---|

IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):

BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:

See Attachment 2

PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:

Plaintiffs appeal the District Court's dismissal, by final judgment pursuant to Fed. R. Civ. P. 54(b), of its claims for contributory and vicarious copyright infringement, and for inducement of copyright infringement against the following owners/investors of Defendant Veoh Networks, Inc.: Shelter Capital Partners, LLC, Shelter Venture Fund, L.P., Spark Capital Partners, LLC, Spark Capital, L.P. and The Tornante Company, LLC.

PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):

Proceedings in the District Court against Veoh Networks, Inc. are ongoing. Trial is set for August 18, 2009.

DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:

☐   Possibility of Settlement
☐   Likelihood that intervening precedent will control outcome of appeal
☐   Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify)

☐   Any other information relevant to the inclusion of this case in the Mediation Program

☐   Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| **FEDERAL** | **APPELLATE** | **TYPE OF JUDGMENT/ORDER APPEALED** | **RELIEF** |

**FEDERAL** — JURISDICTION:
- ☒ FEDERAL QUESTION
- ☐ DIVERSITY
- ☐ OTHER (SPECIFY):

**APPELLATE:**
- ☒ FINAL DECISION OF DISTRICT COURT
- ☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT
- ☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):
- ☐ OTHER (SPECIFY):

**TYPE OF JUDGMENT/ORDER APPEALED:**
- ☐ DEFAULT JUDGMENT
- ☐ DISMISSAL/JURISDICTION
- ☒ DISMISSAL/MERITS
- ☐ SUMMARY JUDGMENT
- ☐ JUDGMENT/COURT DECISION
- ☐ JUDGMENT/JURY VERDICT
- ☐ DECLARATORY JUDGMENT
- ☐ JUDGMENT AS A MATTER OF LAW
- ☐ OTHER (SPECIFY):

**RELIEF:**
- ☐ DAMAGES:
  - SOUGHT $
  - AWARDED $
- ☐ INJUNCTIONS:
  - ☐ PRELIMINARY
  - ☐ PERMANENT
  - ☐ GRANTED
  - ☐ DENIED
- ☐ ATTORNEY FEES:
  - SOUGHT $
  - AWARDED $
- ☐ PENDING
- ☐ COSTS: $

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.

2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).

3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.

4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

| Signature | Date |
|---|---|
| *(signature)* | Jun 11, 2009 |

## COUNSEL WHO COMPLETED THIS FORM

| | |
|---|---|
| NAME | Brian Ledahl |
| FIRM | Irell & Manella LLP |
| ADDRESS | 1800 Avenue of the Stars, Suite 900 |

| CITY | Los Angeles | STATE | CA | ZIP CODE | 90067 |
|---|---|---|---|---|---|
| E-MAIL | bledahl@irell.com | TELEPHONE | (310) 277-1010 | | |
| FAX | (310) 203-7199 | | | | |

**\*\*THIS DOCUMENT SHOULD BE FILED IN DISTRICT COURT WITH THE NOTICE OF APPEAL. \*\***
**\*\*IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS.\*\***

**CIVIL APPEALS DOCKETING STATEMENT**

**ATTACHMENT 1: TITLE IN FULL**

UMG RECORDINGS, INC., a Delaware corporation; UNIVERSAL MUSIC CORP., a New York corporation; SONGS OF UNIVERSAL, INC., a California corporation; UNIVERSAL-POLYGRAM INTERNATIONAL PUBLISHING, INC., a Delaware corporation; RONDOR MUSIC INTERNATIONAL, INC., a California corporation; UNIVERSAL MUSIC – MGB NA LLC, a California Limited Liability company; UNIVERSAL MUSIC – Z TUNES LLC, a New York Limited Liability company; and UNIVERSAL MUSIC – MBG MUSIC PUBLISHING LTD., a UK company,

      Plaintiffs,

v.

VEOH NETWORKS, INC., a California corporation; SHELTER CAPITAL PARTNERS, LLC, a Delaware limited liability company; SHELTER VENTURE FUND, L.P., a Delaware limited partnership; SPARK CAPITAL, LLC, a Delaware limited liability company; SPARK CAPITAL, L.P., a Delaware limited partnership; THE TORNANTE COMPANY, LLC, a Delaware limited liability company,

      Defendants.

**CIVIL APPEALS DOCKETING STATEMENT**

**ATTACHMENT 2: BRIEF DESCRIPTION OF NATURE OF ACTION AND**

**RESULT BELOW**

Plaintiffs brought an action for direct, contributory and vicarious copyright infringement and for inducement of copyright infringement against Defendant Veoh Networks, Inc. ("Veoh"). Plaintiffs' claims arise out of the unauthorized exploitation of Plaintiffs' copyrighted works on the website, www.veoh.com and through the use of Veoh's software application. Veoh attracted tens of millions of dollars of financial support from various investors, including the Shelter Capital defendants, the Spark Capital defendants, and The Tornante Company. Each of these entities contributed to the infringement by Veoh and by its users, induced such infringement, and bear vicarious liability for such infringement.

In August 2008, Plaintiffs amended their complaint to allege claims for contributory and vicarious copyright infringement, and for inducement of copyright infringement against the Shelter Capital defendants, the Spark Capital defendants, and The Tornante Company. These defendants moved to dismiss the claims against them. The district court granted their motion without prejudice. Plaintiffs filed a Second Amended Complaint in February 2009, and the same defendants again moved to dismiss. On May 5, 2009, the district court granted their motion with prejudice. The district court entered an order certifying the dismissal for entry of final judgment pursuant to Fed. R. Civ. P. 54(b) as to these defendants on June 1, 2009.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS INC. et al.,<br><br>                          Plaintiffs,<br><br>      v.<br><br>VEOH NETWORKS, INC. et al.,<br><br>                          Defendants. | Case No. CV07-5744 AHM (AJWx)<br><br>**ORDER FOR ENTRY OF FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)**<br><br>The Honorable A. Howard Matz<br>Courtroom: 14 |

1

US1DOCS 7173110V1

The Court, having considered the Joint Stipulation Regarding Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b) filed by Plaintiffs UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music International, Inc., Universal Music-MGB NA LLC, Universal Music-Z Tunes LLC, and Universal Music-MBG Music Publishing Ltd. (hereinafter, "Plaintiffs") and Defendants Shelter Capital Partners, LLC, Shelter Venture Fund, L.P., Spark Capital Partners, LLC, Spark Capital, L.P. and The Tornante Company, LLC (hereinafter, "Investor Defendants"), finds that:

1.    The Court, by its May 5, 2009 Order, granted the Investor Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint;

2.    The Court's May 5, 2009 Order dismissed all of Plaintiffs' claims pending against the Investor Defendants and did so with prejudice and without leave to amend; and

3.    There is no just reason to delay entry of separate and final judgment with respect to the dismissed claims against the Investor Defendants.

Based upon these findings, the Court directs the Clerk to enter final judgment pursuant to Rule 54(b) as to all claims by Plaintiffs against the Investor Defendants as alleged in the Second Amended Complaint.

IT IS SO ORDERED.

Dated: June 01, 2009

_____
The Honorable A. Howard Matz
United States District Court Judge
Central District of California

2

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| S. Eagle | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

On September 4, 2007, Plaintiffs (referred to herein as "UMG") sued Veoh, a privately held California corporation, for direct, contributory, and vicarious copyright infringement, and for inducement of copyright infringement. On August 26, 2008, the last date to amend the complaint, Plaintiffs filed a First Amended Complaint ("FAC") that named three investors in Veoh as defendants on the theories of secondary liability referred to above (*i.e.*, all but direct infringement). These "Investor Defendants" include Shelter Capital LLC, Spark Capital LLC, and The Tornante Company, LLC. On February 2, 2009, the Court granted the Investor Defendants' motion to dismiss the First Amended Complaint ("FAC").[1] On February 23, 2009, the last date to file an amended complaint, UMG filed under seal a Second Amended Complaint ("SAC") adding factual allegations against the Investor Defendants.[2] On March 2, 2009, the Investor Defendants filed a Motion to Dismiss the SAC, which the Court took under submission on March 20, 2009. The Court **GRANTS** the motion and dismisses the claims against the Investor Defendants with prejudice, for the reasons stated below.

---

[1] The Court cautioned that "Although Plaintiffs may file a Second Amended Complaint, they should reflect carefully what is likely to result if they do so. The Court's existing scheduling requirements and the near certain additional costs and complications that will flow from attempting to go after deep pockets whose potential liability could entail vexing issues of corporate governance caution that 'less may be more.'"

[2] The parties have not notified the Court of any specific information that is confidential and the Court therefore reviews the SAC with no redactions.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

## I.   SUMMARY OF NEW ALLEGATIONS AGAINST INVESTOR DEFENDANTS

Because the Court has reviewed UMG's basic allegations in previous orders, it will review here only the allegations against the Investor Defendants.  It is helpful to briefly review the allegations in the FAC, because the underlying similarities between the FAC and the SAC support the application of the Court's earlier reasoning to this motion to dismiss.  In the FAC, UMG alleged that the Investor Defendants gained a majority of seats on Veoh's board of directors as a result of investments they made in the company. The investors allegedly used those seats to, among other things, make decisions about whether and when to use filtering technology to block copyrighted content from being uploaded to the Veoh site; whether to manually remove copyrighted content from the site; and whether to continue site operations that allegedly constitute direct infringement.  The FAC alleged that the Investor Defendants made these decisions to increase the value of their investments in the company.  In its February 2, 2009 Order, the Court found that these allegations amounted to little more than what is legally and customarily required of corporate board members and that they were insufficient to establish claims of contributory infringement, vicarious infringement, or inducement to infringe.

In the SAC, UMG re-alleged the allegations in the FAC and supplemented them with details that the Court summarizes below.

### A.   Control Over Veoh

• The financial leverage the Investor Defendants attained allegedly gave them extensive control over Veoh and its operations.  SAC ¶ 30.

• For example, Michael Eisner, Tornante's principal and its designee to Veoh's Board of Directors, instructed Veoh to remove certain videos in February 2007 after he received a complaint from the chairman of the Walt Disney Company that Veoh was hosting "hundreds of disney [sic]-owned videos."  The videos were removed one hour after the investor's request.  SAC ¶ 37.

• Time Warner allegedly used the leverage of a potential investment in Veoh to force

8

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

Veoh to implement filtering technology to weed out copyrighted material. "Time Warner's smaller investment in Veoh was sufficient to force Veoh to undertake specific measures to reduce infringing content [and] Time Warner did not even seat a representative on Veoh's Board of Directors." SAC ¶ 41.

### B.    Role as the "Public Face" of Veoh

• The Investor Defendants allegedly "played an active role as the public face of Veoh. Spark Capital's principal, and designee to Veoh's Board, Todd Dagres, gave press statements about Veoh's policies and explained why Veoh was removing pornographic content from its service." SAC ¶ 32.

• "Tornante personnel were responsible for reaching out to third parties for possible content relationships with Veoh. Indeed, Tornante made such overtures to plaintiffs. Such actions and involvement go far beyond the role of mere passive investors." SAC ¶ 32.

### C.    Consideration of Copyright Matters

• "Shelter Capital's principal and designee to Veoh's Board, Arthur Bilger, confirmed that the subject of 'copyright matters' was to be considered by the Board (controlled by Shelter Capital, Spark Capital, and Tornante) and that after a presentation by outside counsel, these owners could 'discuss strategy.'" SAC ¶ 33.

• When Veoh sought to raise additional capital in March 2007, the Investor Defendants "set out to implement a plan to give the appearance of being respectful of copyright. Among other things, Spark Capital's principal and designee to Veoh's Board of Directors directed that 'we must delay the introduction of any features that might be threatening to the copyright holders before we are financed.'" SAC ¶ 33.

### D.    Decisions Concerning Filtering Technology

• Press accounts in fall 2006 and February 2007 reported that two of Veoh's competitors had implemented a commercially available filtering technology. The

9

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

Investor Defendants "recognized that implementation of a filtering technology would remove popular content from Veoh. Indeed, an investor's notes from one Board of Director's meeting reveal that 'Other video sharing sites have a 10-15% drop in traffic when fingerprinting is implemented. Veoh expects to have . . . more of a drop-off.' Thus, although others in the industry were adopting filtering technologies, Veoh, under the direction of Shelter Capital, Spark Capital, and Tornante, continued to eschew such technology." SAC ¶ 34.

• In February 2007, the chairman of the Walt Disney Company told Eisner, Tornante's principal and designee to Veoh's Board, that "Disney wanted sites like Veoh to utilize filtering technology and to take further steps to insure that content removed for copyright reasons was not simply reposted." But "neither Tornante nor Shelter nor Spark took any steps to ensure that Veoh implemented any of these readily available methods." SAC ¶ 37.

• "Because Veoh required additional funds to continue its operations . . . Time Warner was able to force Veoh to begin (for the first time) implementing commercially available filtering technology to remove copyrighted content as a condition of Time Warner's further investment in July 2007. . . . Time Warner demanded and obtained a specific contractual guarantee from Veoh that it would begin filtering within 90 days. . . . [The Investor Defendants] all made larger investments than Time Warner in Veoh's operations and all had the power to leverage their own financial backing to demand that Veoh employ technologies to screen for copyrighted material. None of them did anything to actually implement such filtering until Time Warner insisted."

### E. Decisions Concerning Manual Filtering

• A note about one Board of Directors' meeting stated that Veoh had hired individuals to remove adult content. "Yet Veoh's Board did nothing to require Veoh to take similar steps regarding copyrighted content *even though* it knew that such manual review would be effective at removing additional copyrighted works. Indeed, Veoh's March 2006 Board of Directors minutes explain that Veoh had received a take down notice from . . . NBC, and removed both the items listed in the notice 'as well as other items the Company found that were similar to the noticed items." SAC ¶ 38.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|----------|------------------------|------|-------------|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

### F.    Knowledge of Infringement

- The Investor Defendants allegedly ignored evidence of copyright infringement while operating Veoh "in a manner calculated to allow widespread copyright infringement to continue."  SAC ¶ 35.

- "[I]n October 2006, Eisner, the principal of Tornante and its designee to Veoh's Board, corresponded with Mark Cuban, owner of Landmark Theaters and the Dallas Mavericks basketball franchise, about Veoh.  Cuban pointed out . . . in an email that the site had '[l]ots of potential, but you got a bunch of full length movies up there. Im [sic] watching Tokyo Drift right now from there....You saved me 20 bucks, but be careful.'"  SAC ¶ 35.

- "[I]n April 2007, Todd Dagres, principal of Spark Capital and its designee to Veoh's Board [sic] received an email newsletter from the popular website TechCrunch entitled 'Forget YouTube: Go To These Sites If You Want Hard Core Copyright Infringing Content.'  The article specifically pointed to the presence of full-length episodes of the television program South Park available on Veoh's service."  SAC ¶ 35.

- "[I]n July 2007, Bilger, the principal of Shelter Capital and its designee to Veoh's Board, was told that 'NBC legal raised a big red flag' as to Veoh's infringement of copyrights.  Bilger was told that 'NBC legal' thought 'Veoh . . . among the [w]orst in violating copyrights and abetting piracy.'"  SAC ¶ 35.

### G.    Decisions to Attract Users

- The Investor Defendants allegedly "actively encouraged and sought the use of Veoh's services for infringing purposes.  Veoh explained its business model to its investors early on: 'We will use content to aggregate viewers on the Veoh Network' and 'We will use that audience to derive revenues for Veoh[.]'  Recognizing that infringing content would draw additional traffic to Veoh's site and increase the value of their stake in the business, Veoh's financiers implemented policies at Veoh that actually

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

facilitated more infringement (such as through the approval of Veoh's VeohTV software product that facilitated additional infringement)." SAC ¶ 39.

• The Investor Defendants "made a deliberate choice to provide the financial resources needed to operate Veoh's infringing services and took control of the company to operate it in a manner calculated to yield financial reward. These owners recognized that Veoh's business plan contemplated developing the company for ultimate sale to some third party. . . . They recognized that Veoh was unlikely to succeed in the long term as a private company. [They] needed to operate Veoh to maximize the sale price of the company and they knew that the traffic to the Veoh service would be the key metric to define Veoh's revenue potential and its value to a buyer. . . . Thus, even as they became increasingly aware of Veoh's infringing conduct, these owners failed to take action to limit or control Veoh's infringing acts, which dramatically grew Veoh's traffic. Instead, Veoh's owner-operators funneled more money into the business to insure that it could continue to operate a service they knew to be infringing. These actions were calculated to directly increase the financial return for Shelter Capital, Spark Capital and Tornante." SAC ¶ 40.

• The Investor Defendants "also manifested a desire that infringement occur on the Veoh service. For example, in June 2006, [a] Tornante employee . . . notified Eisner of the posting to Veoh of content that he described as 'clearly pirated content from CNN' by a website called 'Defamer.' The subject of Redman's e-mail message was 'Veoh – Good/Bad/Unclear News.' Another Tornante employee . . . commented to Eisner that 'It's driving traffic and getting the Veoh name out there. I would say good.' [She] further suggested in the exchange that 'Shouldn't somebody call Defamer to thank [sic], to get them to do this over and over again." SAC ¶ 39.

Although these details are titillating insofar as they offer a glimpse into the inner workings of Veoh and its Board of Directors, they boil down to allegations that overlap almost entirely with the allegations of the FAC: the Investor Defendants knew that infringing activity was occurring on Veoh's site; as board members and financial supporters of Veoh the Investor Defendants could have done more to prevent this activity, such as implementing filtering software or hiring employees to ferret out infringing content; and the Investor Defendants hoped to eventually profit from their

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|----------|----------------------|------|-------------|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

investment in Veoh, and thus sought to attract more users to Veoh by providing funding and by implementing policies that "facilitated more infringement."

The only allegations that are arguably new are that the Investor Defendants' principals sometimes acted as the "public face" of Veoh, and that the Board considered copyright matters. But these allegations do not support UMG's infringement claims. The "public face" allegations simply claim that the investors (a) explained Veoh's policies to the public, and (b) sought relationships with content providers. Neither of these allegations suggests anything unlawful. In fact, the allegations concerning relationship-building, including an attempt to form an agreement with UMG, actually suggest that the investors were actively seeking to ensure that copyrights were not violated. In addition, the fact that the Board considered copyright matters at its meetings is neither surprising nor damning. If the Board had not considered copyright matters, UMG would likely claim that it had been derelict in its duties.

Thus, for the reasons stated in this Court's February 2, 2009 Order, and reiterated below, these allegations are not sufficient to establish claims of secondary liability against the Investor Defendants.

## II.    LEGAL STANDARDS ON A MOTION TO DISMISS

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Thus, if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory, the complaint should not be dismissed. *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985).

Federal Rule of Civil Procedure 8(a)(2) requires

> only "a short and plain statement of the claim showing that the
> pleader is entitled to relief," in order to "give the defendant fair

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

> notice of what the . . . claim is and the grounds upon which it
> rests[.]" . . .  While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual allegations . . .,
> a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a
> cause of action will not do . . . .  Factual allegations must be
> enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

## III.   ANALYSIS

The Court incorporates by reference into this Order the analysis it set forth in its February 2, 2009 Order dismissing the FAC.  UMG has made some new arguments in the most recent round of briefing, but for the most part its theories are the same ones the Court already rejected.

### A.   Contributory Copyright Infringement

The first claim alleged by UMG against the Investor Defendants is that they are liable for contributory copyright infringement.  To be liable for contributory copyright, a defendant must have knowledge or reason to have knowledge of direct infringement, and must provide material assistance to the infringer.  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-22 (9th Cir. 2001) ("*Napster*") ("Traditionally, 'one who, with knowledge of the infringing activity, *induces, causes or materially contributes* to the infringing conduct of another, may be held liable as a 'contributory' infringer.'" (citation omitted, emphasis added)).  "One infringes contributorily by intentionally *inducing* or

14

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | | Date | May 5, 2009 |
|----------|----------------------|--|------|-------------|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | | |

*encouraging* direct infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (emphasis added) (citing *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). The Court need not reach the question of whether SAC sufficiently alleges that the Investor Defendants had actual knowledge of direct infringement, because the SAC does not allege sufficiently that they gave material assistance in helping Veoh or its users accomplish infringement.

UMG's primary argument this time around is that the Investor Defendants materially assisted in the alleged infringement because they provided the "site and facilities" for direct infringement.[3] This "site and facilities" test was established in the Ninth Circuit by *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), and recently applied in *Napster*. In *Fonovisa*, the defendant operated a swap meet attended by vendors who sold infringing goods. The Ninth Circuit noted that "[c]ontributory infringement originates in tort law and stems from the notion that one who *directly contributes* to another's infringement should be held accountable." *Id.* at 264 (emphasis added, citation omitted). It held that the swap meet operator was contributorily liable because "it would be difficult for the infringing activity to take place in the massive quantities alleged without the support services provided by the swap meet. These services include, *inter alia*, the provision of space, utilities, parking, advertising, plumbing, and customers." *Id. Fonovisa* held that "providing the site and facilities for known infringing activity is sufficient to establish contributory liability." *Id.* In addition, the Ninth Circuit noted that the defendant operator "actively strive[d] to provide the environment and the market for counterfeit recording sales to thrive." *Id.*

In *Napster*, the Ninth Circuit held that the defendant provided the "site and facilities" for direct infringement because it operated "an integrated service designed to enable users to locate and download MP3 music files." *Napster*, 239 F.3d at 1022. The district court in that case had found that "[w]ithout the support services defendant provides, Napster users could not find and download the music they want with the ease of which defendant boasts." *Id.* (citation and internal quotation marks omitted).

---

[3] This theory is different from the one UMG advanced in its opposition to the motion to dismiss the FAC. There it relied almost exclusively on *UMG Recordings, Inc. v. Bertelsmann AG, et al.*, 222 F.R.D. 408 (N.D. Cal. 2004).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

UMG contends that the Investor Defendants provided the "site and facilities" for Veoh's alleged acts of infringement because they provided *funding* without which Veoh could not have continued its operations, and they provided such funds after learning of infringing activities. But simply providing funds is not equivalent to providing the "space, utilities, parking, advertising, plumbing, and customers" that triggered liability in *Fonovisa* or providing the "integrated [software] service" that established liability in *Napster*. In those cases, the defendants directly provided the mechanisms and instruments by which the alleged infringement was achieved. The Investment Defendants are not alleged to have done any such thing.

Moreover, UMG's argument proves too much. If liability could attach to a defendant who provided *any* essential element of a business — from electricity to courier service — there would be no limits to secondary copyright liability. The Ninth Circuit recognized this principle in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007). There it rejected an allegation of contributory liability for a credit card company that provided payment processing services to alleged infringers, because "[a]ny conception of 'site and facilities' that encompasses [such companies] would also include a number of peripherally-involved third parties, such as computer display companies, storage device companies, and software companies that make the software necessary to alter and view the pictures and even utility companies that provide electricity to the Internet." *Id.* at 800. As the Ninth Circuit noted, "that Defendants have the power to undermine the commercial viability of infringement does not demonstrate that the Defendants materially contribute to that infringement." *Id.* This reasoning applies to the Investor Defendants' contributions of capital to Veoh.

UMG's renewed attempt to apply *UMG Recordings, Inc. v. Bertelsmann AG, et al.*, 222 F.R.D. 408 (N.D. Cal. 2004) is also unpersuasive. As this Court discussed in its February 2, 2009 Order, in *Bertelsmann* the plaintiff alleged that Bertelsmann was Napster's only available source of funding; that Bertelsmann decided to keep the Napster service in operation even after Napster had been found to be engaging in infringing conduct;[4] that Napster's investors caused Napster to engage in infringing conduct

---

[4] It bears repeating that thus far Veoh has not been found liable for direct or secondary infringement.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

independently of each other; and that the investors *ordered* infringing activity to take place.  No such allegations are made by UMG in this case.  Instead, aside from the Investor Defendants' financial support, UMG rests its theory of contributory liability on the following assertions:

1.   The Investor Defendants made "decisions to implement features that would be 'threatening to copyright holders.'"  Opp. at 11:13.

UMG makes this assertion in its Opposition brief, but it is inconsistent with the SAC, which alleges that "Among other things, Spark Capital's principal and designee to Veoh's Board of Directors directed that 'we must *delay* the introduction of any features that might be threatening to the copyright holders before we are financed.'" SAC ¶ 33 (emphasis added).  And even if that Board member had made decisions to implement features "that *might* be *threatening*," the allegation does not establish that he or the other Investor Defendants' designees made decisions to implement policies that actually threatened, let alone violated, any copyrights.

2.   The Investor Defendants made "decisions not to implement various filtering means that could have eliminated much of Veoh's infringing activity."  Opp. at 11:14.

UMG's argument is essentially "the investors could have done more to protect UMG's copyrights."  As this Court stated in its February 2, 2009 Order, UMG has shown no common law or statutory duty for investors to preempt the possibility of infringement by requiring the operating company they are funding to implement automatic or manual filtering systems that reject or remove copyrighted content.  Failing to take every proactive step to protect copyright holders' interests is not equivalent to "induc[ing], caus[ing] or materially contribut[ing] to the infringing conduct of another."  *See Napster*, 239 F.3d at 1019.[5]

--------

[5] Under the Digital Millennium Copyright Act's "safe harbor" provision, the liability of a service provider is generally limited to failure to remove specific works which have been identified by copyright holders via the "notice and takedown" procedure.  *See* 17 U.S.C. § 512.  The logic of UMG's argument, which lacks support in

17

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | | Date | May 5, 2009 |
|---|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | | |

3.      Each of the Investor Defendants individually had the ability to deter Veoh's
        infringement, but chose not to.  Opp. at 12:17.

        This alleged ability to deter infringement arises out of the Investor Defendants'
investments in Veoh, but, as discussed above, the potential leverage gained from such
investments does not compel or even permit the conclusion that investors are
contributorily liable.

        For these reasons, the new allegations in the SAC do not establish that the Investor
Defendants materially assisted the allegedly infringing activities.  The Court therefore
dismisses UMG's claim of contributory liability against the Investor Defendants.

## B.    Vicarious Copyright Infringement

        UMG's second alleged claim against the Investor Defendants is for vicarious
copyright infringement.  A party may be vicariously liable if it has the right and ability to
supervise the infringing activity, and has a direct financial interest in the infringing
activities.  *Napster*, 239 F.3d at 1022.

        This Court held in its February 2, 2009 Order that it would not reach the question
of the Investor Defendants' right and ability to supervise because the FAC failed to allege
that the Investor Defendants had a direct financial interest in the infringing activities.  It
found that unlike in *Fonovisa, Napster,* and *Ellison v. Robertson*, 357 F.3d 1072, 1078-79
(9th Cir. 2004) (the only binding authorities cited by UMG then and now),

        the alleged financial benefit that the Investor Defendants might some day enjoy
        will not come directly from Veoh's users or from Veoh's advertisers. . . .  Nor does
        the FAC allege that Veoh has paid or will pay any dividend or distribution to the
        Investor Defendants.  It only alleges that "each will profit from their investments
        through the sale of Veoh to a potential acquiring company or through a public
        offering."  FAC ¶ 16.  That financial benefit is too far removed from the alleged

existing case law, would thus impose potentially greater liability on the Investor
Defendants than on a service provider that qualified for the safe harbor.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

infringement [and, the Court now adds, too highly speculative] to be considered a "direct" financial interest.

Feb. 2, 2009 Order at 9.[6]

The SAC does little to supplement or strengthen the previous core allegations of the FAC. UMG now alleges that Veoh explained to its investors that its business model was to "use content to aggregate viewers on the Veoh Network" and "use that audience to derive revenues for Veoh[.]" SAC ¶ 39. The investors allegedly then implemented policies that facilitated more infringement — such as approving the VeohTV software that is used to share videos — in recognition that infringing content would increase the value of their stake. SAC ¶ 39. UMG also alleges that the investors "manifested a desire that infringement occur on the Veoh service," supposedly evidenced by an e-mail from a Tornante employee who suggested that "pirated content" was "driving traffic and getting the Veoh name out there. I would say good." SAC ¶ 39. The SAC further alleges that the Investor Defendants knew that Veoh's business plan contemplated developing the company for sale to a third party, that they needed to operate Veoh to maximize the sale price, and that they knew that user traffic would be a key metric to define Veoh's value to

---

[6] *Cf. Softel, Inc. v. Dragon Med. & Scientific Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997) (finding that the fact that the defendant was president and shareholder of allegedly infringing company was "too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials"). UMG relies on two unpublished cases from other district courts that have no persuasive force. In *M. Lady, LLC v. Aji, Inc.*, 2007 WL 2728711 (S.D.N.Y. Sept. 19, 2007), the plaintiff sought summary judgment against a defendant who even UMG characterizes as "the dominant shareholder and Chairman of the Board" of a jewelry importer. The defendant, who was found to have the ability to control and supervise the importer's infringing activities, did not even oppose summary judgment. None of the Investor Defendants here is alleged to be a dominant shareholder and all have mounted persuasive oppositions to the theories underlying UMG's claims. As to *Broadcast Music, Inc. v. Hartmarx Corp.*, 1998 WL 128691 (N.D. Ill. Nov. 17, 1988), this Court distinguished that decision in its earlier Order, and adds here that in that case the defendant company was also a *majority* shareholder in the allegedly infringing companies.

19

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | | Date | May 5, 2009 |
|---|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | | |

a buyer.  SAC ¶ 40.

These allegations still boil down to the contention that the Investor Defendants had a financial interest in the allegedly infringing conduct because they believed that users were attracted to infringing material, and the more users the greater the sale price of the company in the future.  As the Court found in its previous Order, the prospect that investors might some day earn a return on their investment from the sale of a company is too remote to constitute a "direct" benefit from the allegedly infringing activities of that company.  The Court therefore dismisses this claim against the Investor Defendants.

### C.    Inducement to Infringe Copyright

UMG's final claim against the Investor Defendants is that they induced copyright infringement.  Inducement to infringe copyright requires "[distribution of] a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement."  *Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 936-37 (2005).  This claim fails because UMG does not allege that the Investor Defendants, as either investors or board members, "distributed" any device.

Notwithstanding UMG's citation to paragraph 59 of the SAC, it cannot fairly construe that provision or the SAC generally to allege the distribution element.  It hardly tries to do so.  Instead, it argues that in *Grokster* the Supreme Court cited with approval *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988), a patent case in which the Federal Circuit found liability for inducement where the defendant gave formulas to the direct infringer, helped the direct infringer make the infringing product, and prepared customer use instructions.  But in *Grokster* the Supreme Court did not adopt this formulation.  It held only "that one who *distributes* a device" can be liable under an inducement theory.  *Grokster*, 545 U.S. at 937.  Expanding *Grokster* beyond this holding is neither prudent nor justified by existing precedent.  For the reasons discussed above, the fact that the Investor Defendants gained leverage over Veoh's operations by virtue of their investments, including the right to designate Board members, does not establish that they "distributed" Veoh's software and services.  The Court thus dismisses this claim against the Investor Defendants.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | May 5, 2009 |
|---|---|---|---|
| Title | UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al. | | |

## IV.    CONCLUSION

In the absence of clear precedent, this Court is not willing to expand the scope of copyright liability in a manner that presents a substantial risk of upending well-established concepts of corporate governance. Although the judicially-fashioned principles of secondary copyright liability serve an important purpose, UMG's proposed extension of these principles would likely invite a wholesale weakening of the no less important principle that the corporate form is meant to protect shareholders, directors, and officers from ordinary liability. To allow for derivative copyright liability to be imposed on these Investor Defendants would be particularly problematical. The vast and rapid expansion of software technology in telecommunications is generally beneficial to our economy and society, and we should not erect obstacles to that growth in the absence of sound legal and policy-based reasons.

Having allowed UMG ample opportunity to frame viable claims, the Court GRANTS the Investor Defendants' motion to dismiss with prejudice.[7]

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

|  | : |
|---|---|
| Initials of Preparer | SMO |

---

[7] Docket No. 320.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5744 AHM (AJWx) | | Date | February 2, 2009 |
|---|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| S. Eagle | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**       IN CHAMBERS (No Proceedings Held)


On September 4, 2007, Plaintiffs sued Veoh, a privately held California corporation, for direct, contributory, and vicarious copyright infringement, and for inducement of copyright infringement.  On August 26, 2008, Plaintiffs filed a First Amended Complaint ("FAC") that named three of Veoh's investors as defendants on the three theories of secondary liability.  These include Shelter Capital LLC, Spark Capital LLC, and The Tornante Company, LLC (referred to collectively as "the Investor Defendants").  The FAC alleges that the Investor Defendants are liable for contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement.  On October 16, 2008, the Investor Defendants filed a motion to dismiss the First Amended Complaint.  For the reasons explained below, the Court GRANTS the motion.

## I.    BACKGROUND

The FAC alleges in relevant part that in addition to supporting Veoh financially, the Investor Defendants "comprise a majority of Veoh's Board of Directors and, through those directorships, control Veoh and make all important operational decisions for Veoh."  FAC ¶ 4.  Evidently anticipating this motion, the FAC alleges that the Investor Defendants "are not — and have never been — passive investors in Veoh.  They sought and obtained control far in excess of the degree of involvement and control that shareholders would typically obtain . . . ."  FAC ¶ 5.  To buttress these conclusory allegations, the FAC later goes into some detail about how the Investor Defendants allegedly exercised this operational control.  Given that this motion is about the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | | Date | February 2, 2009 |
|---|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | | |

sufficiency of a pleading, the Court quotes these allegations at length:

> 30.    . . . Starting in 2005, Veoh obtained a substantial investment from Shelter Capital, which allowed it to fund its basic operations . . . .  To protect its investment and ensure that Veoh operated in the manner it desired, Shelter Capital sought and obtained two seats on Veoh's Board of Directors as a condition of its investment.  Through its seats . . . Shelter Capital obtained and exercised substantial control over Veoh's operations, including decisions regarding key staffing and senior executive employment and decisions about content to be offered by Veoh and whether or not Veoh would employ the necessary filters to block copyrighted content from being uploaded to the Veoh site.

> 31.    Subsequently, in early 2006, Veoh required a substantial infusion of cash in order to allow it to continue as a business.  Much of this capital was provided through an additional investment by Shelter Capital, as well as new investments by Spark Capital and Tornante.  As with Shelter Capital's initial investment, this further investment by Shelter Capital, Spark Capital and Tornante provided critical funding necessary for Veoh to continue its infringing operations.  All three of these investors sought and obtained seats on Veoh's Board of Directors as a condition of their investments.  Indeed, these three investors obtained three of the five seats on Veoh's Board of Directors, thus obtaining full control of Veoh's Board and of Veoh's operations.  These investors used this control to make decisions regarding the selection and hiring of employees, including the CEO of Veoh, as well as decisions about which content would continue to be offered on Veoh and which would not.  For example, these investors exercised their control to remove adult content but did not use their control over Veoh to remove copyrighted content, including Plaintiffs [sic] Copyrighted Sound Recordings and Copyrighted Musical Compositions.  Instead, these investors decided to continue Veoh's infringing operations in order to attract users and advertising dollars to Veoh, and increase the value of their financial interests in Veoh.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

32.     In 2007, Veoh still again required a sizable infusion of capital to continue its operations.  More than $25 million was collectively provided by Shelter Capital, Spark Capital, [sic] Tornante, among other investors.  Once again, Shelter Capital, Spark Capital, and Tornante used their sizable investments to obtain board seats and otherwise obtain and maintain operational control over all of Veoh's operations.  These investors controlled all critical decisions regarding the content available on Veoh, including whether and how Veoh might implement any technology to identify and filter copyrighted content to prevent infringement on Veoh's site.  Further, these investors evaluated and approved Veoh's launch of its VeohTV software client which facilitated further infringement.  The investors, in using their control over Veoh's activities to protect and enhance the value of their investment, controlled decisions over how to monetize Veoh's business, including its substantial use of infringing content.  The investors' control over Veoh was so pervasive and dominant that the in person meetings of the Board of Directors were not even held at Veoh's corporate offices, they were held at the offices of Shelter Capital.

FAC ¶¶ 30-32.  In sum, the FAC alleges that the Investor Defendants used their seats on Veoh's Board to control, or substantially control, decisions about the content available on Veoh, the methods used to filter content, and the launch of software allegedly used for infringement.

## II.    LEGAL STANDARDS

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  Thus, if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory, the complaint should not be dismissed.  *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|----------|----------------------|------|-----------------|

| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* |
|-------|------------------------------------------------------------|

Federal Rule of Civil Procedure 8(a)(2) requires

> only "a short and plain statement of the claim showing that the
> pleader is entitled to relief," in order to "give the defendant fair
> notice of what the . . . claim is and the grounds upon which it
> rests[.]" . . .  While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual allegations . . .,
> a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a
> cause of action will not do . . . .  Factual allegations must be
> enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations
omitted).

Where a motion to dismiss is granted, a district court should provide leave to
amend unless it is clear that the complaint could not be saved by any amendment.
*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)
(citation omitted).

## III.  ANALYSIS

All of the alleged causes of action against the Investor Defendants are theories of
secondary liability that are premised on the allegations that Veoh and its users have
directly infringed Plaintiffs' copyrighted works.[1]

### A.    Contributory Copyright Infringement

---

[1] The Court is perplexed and disappointed that in their motion papers the Investor
Defendants mischaracterized the allegations in the FAC about Veoh itself.  The FAC
unquestionably alleges — and adequately alleges — that Veoh is directly liable for
copyright infringement.  The Investor Defendants argue otherwise, but they are plainly
wrong in this respect.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

The first allegation against the Investor Defendants is that they are liable for contributory copyright infringement. To be liable for contributory copyright, the defendant must have knowledge or reason to have knowledge of direct infringement and must provide material assistance to the infringer. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-22 (9th Cir. 2001) ("Traditionally, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'" (citation omitted)). The FAC alleges that the Investor Defendants had actual knowledge of direct infringement, but does not sufficiently allege that they gave material assistance in achieving it.

The FAC alleges that the Investor Defendants sought and obtained control of Veoh "knowing full well that the site displayed and distributed copyrighted works without appropriate licenses, and knowing full well that Veoh's users used Veoh to engage in massive copyright infringement." FAC ¶ 5.

As to whether the Investor Defendants gave material or substantial assistance in achieving the alleged infringement, the Court is mindful of its obligation to construe the pleadings in the light most favorable to UMG, the nonmoving party. But the following analysis demonstrates how deficient are the specific allegations that UMG relies on for pleading significant involvement of the Investor Defendants in Veoh's alleged infringement.[2]

As to paragraph 30, Shelter's two seats did not constitute actual control . . . hence the qualifier "substantial." Moreover, membership on a Board of Directors necessarily and inherently entails making almost all these "decisions." To allow for derivative copyright liability merely because of such membership could invite expansion of potential shareholder liability for corporate conduct, without meaningful limitation.

---

[2] That the Court allowed the FAC to be filed does not, of course, mean that the Court found that these allegations passed muster. The Court's August 22, 2008 order construed and applied the standards of Federal Rule of Civil Procedure 15. The Court specifically alerted the parties that "[t]o test the validity of these claims in a more appropriate manner, the investor defendants may file a motion under Fed. R. Civ. P. 12(b)(6)" — which is what they have done.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

As to paragraph 31, the same concerns as to paragraph 30 apply here. Merely exercising ownership power to select members for a Board of Directors cannot invite derivative liability for infringement. Nor is there a common law duty for investors (even ones who collectively control the Board) "to remove copyrighted content," in light of the DMCA. Similarly, the mere objective of increasing the value of ownership is neither invidious nor a sufficiently "direct" benefit within the meaning or context of derivative liability for infringement.

As to paragraph 32, these descriptions of how the Investor Defendants exercised control are the equivalent of "plain vanilla" characterizations of what directors ordinarily do . . . and are expected to do. That meetings allegedly were held at one shareholder's offices reveals absolutely nothing about either control (given that the meetings were held at Shelter's offices, would that demonstrate that Tornante and Spark *lacked* control?) or culpable conduct.

Plaintiff relies on *UMG Recordings, Inc. v. Bertelsmann AG, et al.*, 222 F.R.D. 408 (N.D. Cal. 2004) as precedential support for the adequacy of the FAC. That case is distinguishable in several important respects. There, Plaintiff Lieber's complaint contained the following concrete allegations, absent here:

- Bertelsmann was Napster's "only available source of funding . . ."

- Napster had already been found to engage in infringing conduct and Bertelsmann "deliberat[ed] whether to shut the Napster service until it could be operated in a non-infringing manner" but decided "to keep the *infringing* Napster service in operation to preserve the Napster customer base."

- Senior Bertelsmann management (not merely any Bertelsmann-designated director[s]) directed Napster to proceeding accordingly.

*Id.* at 412-13 (emphasis in original). In addition, UMG's complaint stated that Napster had already been found to engage in infringing conduct, unlike Veoh, which thus far has avoided a finding of liability.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

In *Bertelsmann*, Judge Patel noted that UMG's complaint against Hummer Winblad not only echoed the other plaintiffs' allegations that Napster was under Bertelsmann's "firm control" and that Napster had been infringing for almost two years, but that "Hummer Winblad had full knowledge of . . . all [these] facts . . . when it made its decision to acquire and control Napster, and during its operation of Napster." *Id.* at 413.

Moreover, as the Investor Defendants point out, Judge Patel recognized another feature of the complaints in *Bertelsmann* that is absent here: the corporate owners of Napster were alleged to have caused Napster to engage in infringing conduct independently of each other (albeit, evidently in parallel ways). *Id.* Here, in contrast, UMG's allegations of "control" are based on the implied (but not sufficiently alleged) premise that the Investor Defendants agreed with each other to "operate" Veoh jointly, that their three director-designees were mere puppets who always voted pursuant to a master plan that the investors had devised, and that these director-puppets actually administered Veoh, bypassing whoever constituted "management."

Finally, Judge Patel upheld the complaints in *Bertelsmann* because she was able to conclude that the plaintiffs had stated more than a conclusory allegation that the corporate investors had allowed directly infringing conduct to take place: "more than merely *knowing of* and *contributing to* the infringing activity, they are alleged to have specifically *ordered* that such activity take place." *Id.* (emphasis in original). For the foregoing reasons, then, *Bertelsmann* does not warrant denying this motion.

Plaintiff also cites *Broadcast Music, Inc. v. Hartmarx Corp.*, No. 88-C-2856, 1988 WL 128691 (N.D. Ill. Nov. 17, 1988). That case also is weak precedent. To start with, the court there treated the motion to dismiss as a summary judgment motion and thereupon took into account a range of "facts" reflected in affidavits that had been filed. Moreover, that case preceded the meaningful advent of the Internet; its twenty-plus year old analysis has precious little bearing here, and this court finds it unpersuasive.

### B. Vicarious Copyright Infringement

A party may be vicariously liable if it has the right and ability to supervise the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

infringing activity, and has a direct financial interest in the infringing activities.  *Napster*, 239 F.3d at 1022.

The Court will not address whether the FAC sufficiently alleges that the Investor Defendants have the right and ability to supervise Veoh's directly infringing conduct, because the Court finds that the FAC's allegations do not establish that the Investor Defendants have a direct financial interest in these allegedly infringing activities.  The only binding authority Plaintiffs cite in support of this element of their vicarious liability claim is the Ninth Circuit case *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996).  *Fonovisa* is of little support to UMG.  In that case, the defendant operated a flea market attended by vendors who sold infringing goods.  The Ninth Circuit found that,

> The plaintiff's allegations encompass many substantive benefits to Cherry Auction from the infringing sales.  These include the payment of a daily rental fee by each of the infringing vendors; a direct payment to Cherry Auction by each customer in the form of an admission fee, and incidental payments for parking, food and other services by customers seeking to purchase infringing recordings.

*Id.* at 263.  The Ninth Circuit concluded that all of this revenue "flow[s] directly from customers who want to buy the counterfeit recordings at bargain basement prices."  *Id.* Its conclusion was supported by the fact that "[i]n this case, the sale of pirated recordings at the . . . swap meet is a 'draw' for customers" who paid the above-described fees and incidental payments.  *Id.*

In other cases where the Ninth Circuit considered whether defendants received a direct financial benefit because of the "draw" of infringing content, the defendant allegedly enjoyed a financial benefit that consumers paid to the defendant.  For example, in *Ellison v. Robertson* the Ninth Circuit suggested that if the plaintiff had presented evidence that an internet service provider attracted users who subscribed to its service in order to access infringing content (or that the service lost subscribers because it obstructed infringement), the court may have found a direct financial benefit from infringement.  357 F.3d 1072, 1078-79 (9th Cir. 2004).  Similarly, in *A & M Records v. Napster*, the Ninth Circuit's holding depended on the finding that "[a]mple evidence

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

supports the district court's finding that Napster's future revenue is directly dependent upon 'increases in userbase.'  More users register with the Napster system as the 'quality and quantity of available music increases.'"  239 F.3d at 1023.  Although the Ninth Circuit did not specify which of the district court's findings were relevant, the district court had found that Napster's "potential revenue sources included targeted email; advertising; commissions from links to commercial websites; direct marketing of CDs, Napster products, and CD burners and rippers. . . .  Defendant may also begin to charge fees for a premium or commercial version of its software."  *A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 902 (N.D. Cal. 2000), *overruled on other grounds by* 239 F.3d 1004 (9th Cir. 2001).

In this case, unlike *Fonovisa, Ellison,* and *Napster*, the alleged financial benefit that the Investor Defendants might some day enjoy will not come directly from Veoh's users or from Veoh's advertisers.  Rather, the FAC alleges that the alleged infringement "continue[d] to attract users and advertising dollars to Veoh, and increase[d] the value of [the Investors Defendants'] financial interests in Veoh."  FAC ¶ 31.  The FAC does not allege that the investors received, or will receive, fees paid by customers or even by advertisers.  Nor does the FAC allege that Veoh has paid or will pay any dividend or distribution to the Investor Defendants.  It only alleges that "each will profit from their investments through the sale of Veoh to a potential acquiring company or through a public offering."  FAC ¶ 16.  That financial benefit is too far removed from the alleged infringement to be considered a "direct" financial interest.

### C. Inducement to Infringe Copyright

Inducement to infringe copyright requires distribution of a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.  *Metro-Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 936-37 (2005).

The Court finds that the FAC does not contain allegations that the Investor Defendants encouraged infringement by Veoh or by Veoh's users in connection with the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5744 AHM (AJWx) | Date | February 2, 2009 |
|---|---|---|---|
| Title | *UMG RECORDINGS, INC., et al. v. VEOH NETWORKS INC., et al.* | | |

use or "distribution" of Veoh's service.[3]  For example, the FAC does not allege that the Investor Defendants encouraged any users to infringe, thereby distinguishing this case from *Grokster*.  Nor does the FAC specifically allege that the Investor Defendants encouraged Veoh to infringe directly; whether transcoding, "chunking," or allowing downloads and uploads of infringing videos actually is infringing conduct has yet to be determined.

## IV.    CONCLUSION

For the reasons explained above the Court GRANTS the Investor Defendants' motion to dismiss.[4]  The Court does so "without prejudice" — with this caveat:  Although Plaintiffs may file a Second Amended Complaint, they should reflect carefully what is likely to result if they do so.  The Court's existing scheduling requirements and the near-certain additional costs and complications that will flow from attempting to go after deep pockets whose potential liability could entail vexing issues of corporate governance caution that "less may be more."

If Plaintiffs wish to file a Second Amended Complaint they must do so on or before February 23, 2009.

This order is not intended for publication.

|  | : |
|---|---|
| Initials of Preparer | se |

---

[3]  The parties dispute whether the Investor Defendants can be liable given that they did not "distribute" a device.  The Court need not resolve this dispute because it finds that the Investor Defendants did not promote the use of Veoh's services to infringe copyrights.

[4]  Docket No. 174.

## Representation Statement

Pursuant to Circuit Rules 3-2(b) and 12-2, Plaintiffs hereby submit the following Representation Statement, identifying all parties to the action along with the names, addresses and telephone numbers of their respective counsel:

**Counsel for Plaintiffs/Appellants UMG Recordings, Inc.; Universal Music Corp.; Songs of Universal, Inc.; Universal-Polygram International Publishing, Inc.; Rondor Music International, Inc.; Universal Music – MGB NA LLC; Universal Music – Z Tunes LLC; and Universal Music – MGB Music Publishing Ltd.**

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

**Counsel for Defendants/Appellees Shelter Capital Partners and Shelter Venture Fund L.P.**

WILMER CUTLER PICKERING HALE AND DOOR LLP
Robert G. Badal
350 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

ORRICK, HERRINGTON & SUTCLIFFE LLP
Annette L. Hurst
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-4585
Facsimile: (415) 773-5759

1   **Counsel for Defendants/Appellees Spark Capital, LLC and Spark**
2   **Capital, L.P.**

3   WILMER CUTLER PICKERING HALE AND DOOR LLP
4   Maria K. Vento
    1117 California Avenue
5   Palo Alto, CA 94304
6   Telephone:   (650) 858-6000
    Facsimile:    (650) 858-6100
7
8   WILMER CUTLER PICKERING HALE AND DOOR LLP
    Joel Cavanaugh
9   Donald R. Steinberg
10  Mark G. Matuschak
    60 State Street
11  Boston, MA 02109
12  Telephone:   (617) 526-6000
    Facsimile:    (617) 526-5000
13
14  **Counsel for Defendant/Appellee The Tornante Company, LLC**

15  KULIK, GOTTESMAN, MOUTON & SIEGEL, LLP
16  Glen L. Kulik
    Alisa S. Edelson
17  15303 Ventura Boulevard, Suite 1400
18  Sherman Oaks, CA 91403
    Telephone:   (310) 557-9200
19  Facsimile:    (310) 557-0224
20
    **Counsel for Defendant Veoh Networks, Inc.**
21
22  WINSTON & STRAWN LLP
    Rebecca Calkins
23  Erin Ranahan
24  333 South Grand Avenue, 38th Floor
    Los Angeles, CA 90071-1543
25  Telephone:   (213) 615-1700
26  Facsimile:    (213) 615-1750

27

28

WINSTON & STRAWN LLP
Michael S. Elkin
Thomas P. Lane
200 Park Avenue
New York, NY 10166
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

WINSTON & STRAWN LLP
Jennifer A. Golinveaux, Esq.
101 California Street
San Francisco, CA 94111-5894
Telephone:   (310) 586-7800
Facsimile:   (310) 591-1400


Dated:  June 11, 2009                          Respectfully submitted,

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein


By: _____
     Brian Ledahl
Attorneys for Plaintiffs