1  Steven A. Marenberg (101033) (smarenberg@irell.com)
2  Brian Ledahl (186579) (bledahl@irell.com)
   Benjamin Glatstein (242034) (bglatstein@irell.com)
3  IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile: (310) 203-7199

6  Attorneys for Plaintiffs

7

8

9                     UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                          WESTERN DIVISION

12  UMG RECORDINGS, INC., *et al.*,      )  Case No. CV-07-05744 AHM (AJWx)
                                         )
13                  Plaintiffs,          )  **UMG'S OPPOSITION TO MOTION BY**
                                         )  **OWNER DEFENDANTS FOR**
14                                       )  **ATTORNEYS' FEES AND COSTS [17**
                                         )  **U.S.C. § 505]**
15        v.                             )
                                         )  **Filed Concurrently Herewith:**
16                                       )   1. **Declaration of Steven Marenberg in**
                                         )      **Support Thereof;**
17  VEOH NETWORKS, INC., *et al.*,       )   2. **Declaration of Carter Batsell in**
                                         )      **Support Thereof**
18                  Defendant.           )
                                         )  Judge: Hon. A. Howard Matz
19                                       )  Date:        July 20, 2009
                                         )  Time:        10:00 a.m.
20                                       )
                                         )  Discovery Cutoff:   May 11, 2009
21                                       )  Pretrial Conference: August 8, 2009
                                         )  Trial Date:         August 18, 2009
22
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   THE OWNER DEFENDANTS FAIL TO ESTABLISH THEY
      ARE ENTITLED TO ATTORNEYS' FEES UNDER THE
      COPYRIGHT ACT ...................................................................................... 2

      A.    The Owner Defendants Are Not Entitled To Attorneys'
            Fees As A Part Of Costs Pursuant To 17 U.S.C. § 505 ...................... 2

            1.    UMG's Claims Against the Owner Defendants Were
                  Reasonable, Not Baseless or Frivolous ..................................... 4

            2.    Awarding Attorneys' Fees Would Deter Future
                  Plaintiffs from Bringing Reasonable Claims ............................. 7

            3.    UMG's Motivation in Bringing Claims Against the
                  Owner Defendants Was Proper and Appropriate ...................... 8

            4.    The Purposes of the Copyright Act Do Not Weigh
                  in Favor of Awarding Attorneys' Fees ...................................... 9

      B.    The Owner Defendants' Request For Over $1 Million In
            Attorneys' Fees And Costs Is Not Reasonable ................................. 10

            1.    The Owner Defendants Seek Fees for Discovery
                  And Other Activities Wholly Unrelated to the
                  Motions to Dismiss .................................................................. 11

            2.    The Owner Defendants' Attorneys' Overstaffed this
                  Case, Leading to the Accumulation of Excessive
                  Hours ........................................................................................ 15

            3.    The Owner Defendants Have Not Met the Burden of
                  Showing that the Hours They Incurred and the
                  Hourly Rates are Reasonable ................................................... 16

      C.    If The Court Will Not Deny The Motion, It Should
            Postpone Deciding The Issue Until The Ninth Circuit
            Rules On The Merits of UMG's Claims ............................................. 18

III.  CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Assessment Technologies, LLC v. WIREData, Inc.*,
    361 F.3d 434 (7th Cir. 2004)..........................................................................4

*Berkla v. Corel Corp.*,
    302 F.3d 909 (9th Cir. 2002)..........................................................................4

*Blanch v. Koons*,
    485 F. Supp. 2d 516 (S.D.N.Y. 2007) ...........................................................9

*Blum v. Stenson*,
    465 U.S. 886 (1984) .............................................................................17, 18

*Bordanaro v. McLeod*,
    871 F.2d 1151 (1st Cir. 1989) ......................................................................18

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of
    Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001).......................................................................11

*Data General Corp. v. Grumman Systems Support Corp.*,
    825 F. Supp. 361 (D. Mass. 1993) ................................................................16

*Dean v. Burrows*,
    732 F. Supp. 816 (E.D. Tenn. 1989) ..............................................................5

*Donald Frederick Evans and Associates, Inc. v. Continental Homes,
    Inc.*,
    785 F.2d 897 (11th Cir. 1986).........................................................................5

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ............................................................................passim

*Franklin Machine Products v. Heritage Food Service Equipment, Inc.*,
    2008 WL 687300 (N.D. Ind. Mar. 11, 2008) ...............................................14

*Garnier v. Andin Intern., Inc.*,
    884 F. Supp. 58 (D.R.I. 1995) ........................................................................5

*Lieb v. Topstone Industries, Inc.*,
    788 F.2d 151 (3d Cir. 1986)..........................................................................11

*Lifshitz v. Walter Drake & Sons, Inc.*,
    806 F.2d 1426 (9th Cir. 1986).........................................................................5

*Luken v. Int'l Yacht Council, Ltd.*,
    581 F. Supp. 2d 1226 (S.D. Fla. 2008) ....................................................7, 8, 9

*Maljack Productions, Inc. v. Palisades Entertainment*, 1995 WL
    779154 (C.D. Cal. Jun. 23, 1995)..............................................................8, 17

|  | Page(s) |
|---|---|

*Mallery v. NBC Universal, Inc.*,
    2008 WL 719218 (S.D.N.Y. Mar. 18, 2008) ..........................................14, 17

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
    240 F.3d 116 (2d Cir. 2001) ...................................................................... 19

*NLFC, Inc. v. Devcom Mid-America, Inc.*,
    916 F. Supp. 751 (N.D. Ill. 1996) ............................................................. 10

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) .................................................................................. 16

*Perfect 10, Inc. v. CWIE, LLC*,
    2005 WL 5957973 (C.D. Cal. Feb. 10, 2005)..........................................8, 11

*Pinkham v. Camex, Inc.*,
    84 F.2d 292 (8th Cir. 1996) ...................................................................... 15

*Plunket v. Estate of Doyle*,
    2009 WL 73146 (S.D.N.Y. Jan. 12, 2009) ................................................ 14

*Queenie, Ltd. v. Nygard Int'l*,
    204 F. Supp. 2d 601 (S.D.N.Y. 2002) ...................................................... 17

*UMG Recordings, Inc. v. Bertelsmann, AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ............................................................... 6

*Universal Studio Productions LLLP v. Bigwood*,
    441 F. Supp. 2d 185 (D. Me. 2006)........................................................... 18

**Statutes**

17 U.S.C. § 505.........................................................................................3, 16

**Other Authorities**

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright
    § 12.04 (Matthew Bender, Rev. Ed.)............................................................ 6

# I.    INTRODUCTION

Controlling copyright precedents have established a rigorous standard for recovering attorneys' fees as the prevailing party under the Copyright Act. In this instance, Defendants Shelter Capital, Spark Capital, and The Tornante Company (collectively the "Owner Defendants") do not come remotely close to meeting it.

Specifically, the Owner Defendants' motion fails on either or both of two discrete grounds. First, the Owner Defendants fail to meet the substantive standard for recovering fees (*i.e.*, that the claims were baseless, frivolous, objectively unreasonable, or improperly motivated). Any fair reading of the applicable copyright precedents, UMG's actual pleadings (including the detailed facts set forth therein), and this court's subsequent opinions on the motions to dismiss, confirms that there certainly was a good faith and reasonable basis (both objectively and subjectively) for UMG claims. Indeed, this Court expressly ruled that UMG's claims would not be baseless, frivolous, or objectively unreasonable when it granted UMG's motion to amend its complaint holding that UMG's claims "would not 'clearly be subject to dismissal.'" August 22, 2008 Minute Order (Dkt. No. 103) at 6.

Second, and in any event, the Owner Defendants' request for over $1 million in attorneys' fees is utterly and facially unreasonable. Here, the Owner Defendants are seeking to recover more than $1 million dollars in attorneys' fees and costs, representing the efforts of approximately *30* attorneys, paralegals, and other billable professionals, who supposedly spent more than *2,200* hours defending a case that was resolved on a motion to dismiss. (Defendant Shelter alone employed *twenty* different attorneys and legal professionals on this case.) Plainly, this is not reasonable and the motion ought to be denied on this basis as well.

The Owner Defendants might argue that this small army of timekeepers was working on tasks other than a pleading motion. If so, this only confirms that their request is unreasonable. A review of the billing records suggests that a substantial

share of the fees sought here were incurred either: (*i*) in unsuccessful attempts during suit to block UMG's access to discovery, which was appropriate *regardless* of whether the Owner Defendants responded as defendants or as third parties, and (*ii*) in responding (as third-parties) to post-suit requests for relevant discovery. Seeking payment of these fees is wholly inappropriate. This Court acknowledged the discoverability of this evidence – and its relevance to UMG's claims against *Veoh*, as distinct from its claims against the Owner Defendants – when it denied the Owner Defendants' *ex parte* application for a protective order to stay discovery pending resolution of their first motion to dismiss. Minute Order Denying Owner Defendants' *Ex Parte* Application for Protective Order (Dkt. No. 404). Shifting the burden of responding to discovery is not what § 505 of the Copyright Act envisions, nor would it further the purposes of the Copyright Act. To the contrary, it would reward obstructive behavior in seeking to prevent relevant discovery in cases of mass copyright infringement.

On any and all of these grounds, the motion for fees should be denied.[1]

## II. THE OWNER DEFENDANTS FAIL TO ESTABLISH THEY ARE ENTITLED TO ATTORNEYS' FEES UNDER THE COPYRIGHT ACT

### A. The Owner Defendants Are Not Entitled To Attorneys' Fees As A Part Of Costs Pursuant To 17 U.S.C. § 505

The mere fact that the Owner Defendants prevailed on their motion to dismiss does not necessarily entitle them to attorneys' fees. Rather, it is well settled that the Court has "discretion" to award or not award attorneys' fees as part of costs. 17 U.S.C. § 505. As construed by the United States Supreme Court in *Fogerty*, fees should only be awarded upon a showing that various factors – specifically,

---

[1] If the Court is inclined at all to award any fees, then UMG submits that, given that an appeal of this Court's dismissal of UMG's claims is pending, this Court should defer awarding any attorneys' fees until that appeal is resolved as it may confirm – even if the Court's ruling is ultimately affirmed – that an attorneys' fee award is in appropriate in this case.

"frivolousness, motivation, objective unreasonableness (both factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" – warrant such an award.  *See generally Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

Here, the Owner Defendants fail to demonstrate that any of the factors warrant an award of attorneys' fees.  UMG's claims against the Owner Defendants for contributory and vicarious copyright infringement, and for inducement of copyright infringement, were non-frivolous, objectively reasonable, and consistent with the purposes of the Copyright Act.  Moreover, there is no evidence, nor could there be, that UMG had anything but a proper motive in asserting its claims against the Owner Defendants – to wit, the vindication of its exclusive rights in thousands of infringed copyrights.  As such, future copyright plaintiffs need not be deterred from filing similar, reasonable suits.[2]  To the contrary, an award of fees in this

---

[2] The Owner Defendants quote *Assessment Technologies, LLC v. WIREData, Inc.*, 361 F.3d 434, 439 (7th Cir. 2004), for the proposition that when a prevailing party is a defendant there is a strong presumption in favor of attorneys' fees.  Motion at 10:10-17.  The decision cited does not support this assertion and in any event this is not the law of this Circuit.  Judge Posner explicitly states that he is breaking from Supreme Court and other Circuit's precedent, including the Ninth Circuit's.  *Id.* at 436 ("[t]he courts have not said . . . that the symmetry of plaintiff and defendant in copyright cases requires a presumption that the prevailing party, whichever it is, is entitled to an award of attorneys fees.  They have instead left it to judicial discretion by setting forth a laundry list of factors, all relevant but none determinative.")  Posner then cites a string of cases, including *Fogerty v. Fantasy* and *Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002).  And even with this break from precedent, Posner believes that the strength of each party's case is still one of the most important factors in determining whether to award attorneys' fees.  *Assessment Technologies*, 361 F.3d at 436-37.

Here, an award of attorneys' fees was not needed to incentivize the Owner Defendants to press their defense.  *Id.* at 437 ("an award of attorneys fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party.").  Thus, there is neither the need nor legal justification for a "presumption" that the Owner Defendants are entitled to fees.  The application of the *Fogerty* factors, set forth by the Supreme Court, is the appropriate analysis here.

instance would encourage potential infringement and deter copyright owners from asserting their rights in an era when new uses of the internet threaten copyrights.

### 1. UMG's Claims Against the Owner Defendants Were Reasonable, Not Baseless or Frivolous

Attorneys' fees should not be awarded if the losing party brought claims that were novel, complex, colorable, or are at least a "reasonable stand on an unsettled principle of law." *Garnier v. Andin Intern., Inc.*, 884 F. Supp. 58, 62 (D.R.I. 1995) (denying attorneys' fees where resolution of plaintiff's claims required appellate court to engage in "careful factual and legal analysis"); *see also Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1435 (9th Cir. 1986) (denying attorneys' fees where issues presented were "substantial questions of first impression in this circuit"); *Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 916-17 (11th Cir. 1986) (affirming denial of attorney's fees where plaintiff asserted "colorable copyright claims"); *Dean v. Burrows*, 732 F. Supp. 816, 827 (E.D. Tenn. 1989) (denying attorneys' fees where plaintiff presented "genuine issue for the Court to resolve"). That is precisely the situation here.

That UMG's complaint against the Owner Defendants presented legitimate and genuinely unsettled issues for the Court to resolve cannot fairly be disputed. As noted above, Veoh opposed UMG's motion to amend its complaint to add the claims at issue against the Owner Defendants. This Court granted the motion to amend, holding that "what is clear is that based on this record the claims against the investor defendants would not 'clearly be subject to dismissal.'" August 22, 2008 Minute Order (Dkt. No. 103) at 6. Further, in ruling on the motion to dismiss the Second Amended Complaint, the Court concluded its order by stating: "[i]n the absence of clear precedent, this Court is not willing to expand the scope of copyright liability in a manner that presents a substantial risk of upending well-established concepts of corporate governance." May 5, 2009 Order at 15 (Dkt. No. 434). Far from suggesting that UMG pursued a baseless or frivolous theory that was clearly rejected

in this Circuit, the Court expressly held that the issues presented lack clear precedent. As set forth in a leading treatise on copyright law, the contours of secondary copyright liability in the internet space are not well defined. *See, e.g.*, 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.04[A][3][a] (Matthew Bender, Rev. Ed.) (stating the current law on contributory copyright infringement involving the internet is "in disarray"). In reaching its conclusions, the Court was required to analyze UMG's claims. UMG cited numerous cases supporting its positions, including cases where, UMG contends, similar claims were upheld by other courts in the Ninth Circuit. *See, e.g., UMG Recordings, Inc. v. Bertelsmann, AG*, 222 F.R.D. 408 (N.D. Cal. 2004). While the Court ultimately distinguished the cases UMG cited, the mere fact of an adverse decision does not render UMG's pursuit of the claims unreasonable, baseless, or frivolous. As the Owner Defendants concede, the Court granted the motion to dismiss the First Amended Complaint without prejudice. Far from holding that the claims were unreasonable, baseless, or frivolous, the Court granted UMG leave to amend the complaint.

The Owner Defendants place significant emphasis on the court's "caveat" to its dismissal without prejudice in arguing that UMG's claims were objectively unreasonable. They misread the Order. The court wrote:

> Although Plaintiffs may file a Second Amended Complaint, they should reflect carefully what is likely to result if they do so. The Court's existing scheduling requirements and the near-certain additional costs and complications that will flow from attempting to go after deep pockets whose potential liability could entail vexing issues of corporate governance caution that "less may be more."

February 2, 2009 Order at 10 (Dkt. No. 298). This is far from an admonition to not file a Second Amended Complaint because it would be unreasonable, baseless, or frivolous. Rather, UMG was entitled to attempt to convince the Court, by adding additional and specific facts in its Second Amended Complaint, that the Court's

1  analysis on the original motion to dismiss was in error (a position UMG will

2  respectfully assert on appeal).

3      Indeed, in the Court's second order, which dismissed UMG's Second

4  Amended Complaint, the Court still did not indicate that UMG's claims were

5  baseless or frivolous.  To the contrary, the opinion acknowledged that UMG "made

6  some new arguments," Order at 8, and "supplemented," *id.* at 2, its factual

7  allegations.  Although the Court ultimately concluded again that UMG's arguments

8  were "unpersuasive," it did not characterize them as baseless or meritless.  Nor did

9  the Court suggest that UMG acted improperly in filing a Second Amended

10  Complaint.  Instead, as noted above, the Court acknowledged the lack of clear

11  precedent.  Such circumstances cannot support an award of attorneys' fees.  If the

12  Owner Defendants' position were accepted, every case resolved against one party

13  would be "unreasonable" or "baseless" in hindsight.  No authority has ever

14  suggested that such a standard should be applied.[3]

15      Moreover, the fact that the Court dismissed UMG's claims twice is not an

16  indicia of frivolousness.  *See Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d

17  1226, 1240 (S.D. Fla. 2008) ("[a]lthough a frivolous and objectively unreasonable

18  defense will certainly fail if presented repeatedly . . . the converse is not always true.

19  . . . Courts regularly reject reasonable legal positions in favor of other reasonable

20  legal arguments. . . . [A] court must consider not how many times in the litigation at

21  issue the presiding court rejected a non-prevailing party's legal position, but rather,

22  the clarity of the law with respect to the losing party's position at the time that the

23  losing party pressed its argument.")  In fact, to preserve issues for appeal, parties

24

25  _____

26      [3] The Owner Defendants argue that the Court did not consider certain
elements of contributory and vicarious infringement when granting their motions to
dismiss.  Motion at 10:25-27 & 12:8-9.  The Court's refusal to decide issues

27  unnecessary to its holdings is not even an indication that the Owner Defendants
would have prevailed on those issues.  It certainly does not indicate that UMG's

28  claims were unreasonable or frivolous.

1  frequently repeat arguments before the district court that has already rejected them.

2  *Id*. at 1240 n.6.

3        Ultimately, the Owner Defendants' motion reduces to the claim that simply

4  because the Court granted their motion to dismiss, UMG's pursuit of these claims

5  was unreasonable, baseless, and frivolous.  This assertion is without legal or factual

6  support.[4]  We submit that the Court knows frivolous, objectively unreasonable

7  copyright complaints when it sees them, and perhaps it has seen plenty.  Neither the

8  First or Second Amended Complaints (*i.e.*, the two pleadings asserting claims

9  against the Owner Defendants) are among them.

10  **2.    Awarding Attorneys' Fees Would Deter Future Plaintiffs from Bringing**

11  **Reasonable Claims**

12       An award of attorneys' fees to the Owner Defendants here would ill serve the

13  interests of the Copyright Act nor serve any proper deterrent purpose.  To the

14  contrary, awarding fees to the Investors would deter future reasonable lawsuits

15  insofar as it would raise fears that the mere failure to prevail on objectively

16  reasonable, good-faith claims would lead to an award of exorbitant attorneys' fees.

17  This is the exact opposite of what Section 505 was designed to achieve: economic

18  incentive to litigate meritorious copyright claims and defenses.  *See Luken*, 581 F.

19  Supp. 2d at 1246 ("a party that advances a reasonable position should not be

20  deterred from doing so for fear that it will have to pay attorney's fees if it loses");

21  *Perfect 10, Inc. v. CWIE, LLC*, 2005 WL 5957973 at *3 (C.D. Cal. Feb. 10, 2005)

22  (finding no reason to award attorneys' fees for deterrent purposes; "[a]warding

23

24        [4] The Owner Defendants also argue that UMG's removal of certain videos
     from its infringing video list is evidence that its claims are unreasonable.  Motion at
25   13 n.4.  The mere fact that UMG has removed a small number of videos that had
     inadvertently been included on its list incorrectly (without prompting by any party)
26   from its ultimate list of over 7,000 infringing videos that appeared on Veoh does not
     bear on the reasonableness of UMG's claims.  Even without these few videos, UMG
27   still asserted thousands of infringements against the Owner Defendants.  Their
     citation to *Maljack Productions* is thus wholly inapposite.
28

attorney's fees would . . . punish the Plaintiff for advancing a theory in an unclear area of copyright law"); *Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007) (finding no need to award attorneys' fees for deterrent purposes; claims were not frivolous and plaintiff's motivation was reasonable, among other factors); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement").[5] This Court should not deter future reasonable copyright claims by awarding attorneys' fees to the Owner Defendants here.

**3.      UMG's Motivation in Bringing Claims Against the Owner Defendants Was Proper and Appropriate**

UMG sued the Owner Defendants to protect and vindicate its copyrights. UMG asserted, and continues to assert in the Court of Appeals, that these defendants are liable for contributory and vicarious copyright infringement, and for inducement of copyright infringement, of thousands of UMG copyrights.  Pursuant to the Copyright Act, UMG is entitled to damages for such infringements, and it sought damages from the parties whom it believes are liable for such infringement, including the Owner Defendants.  This is clearly a permissible motivation in bringing a copyright suit. *Luken*, 581 F. Supp. 2d at 1245 ("[i]t goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case against one whom the copyright holder believes in good faith to have infringed the copyright").  Once again, the Court has already ruled on

---

[5] The Owner Defendants should also recognize that owning a stake in a massive copyright infringer like Veoh can attract lawsuits. *See Blanch*, 485 F. Supp. 2d at 518 (noting that defendant, an "appropriation" artist (one who makes other artists' work and incorporates it into his own product) "can expect that [his] work may attract lawsuits.  [He] must accept the risks of defense, including the time, effort, and expenses involved.  While that does not remove the . . . artist from the protection of the [fair use] statute, litigation is a risk he knowingly incurs when he copies the other's work").

this issue in granting UMG leave to amend its complaint. Specifically, this Court ruled "[t]here is no evidence that UMG seeks to add the new defendants for any improper purpose . . . ." August 22, 2008 Minute Order (Dkt. # 103) at 4.

UMG sought discovery before asserting its claims, and brought such claims *only* against those entities it concluded had engaged in culpable conduct. UMG did not assert claims against all investors in Veoh. Those "investors" in Veoh who did not participate affirmatively in decisions intrinsically tied to Veoh's infringing activity (*e.g.*, Time Warner and others) were *not* sued by UMG. UMG specifically brought suit only against entities that UMG concluded had engaged in conduct giving rise to copyright liability.[6]

**4.      The Purposes of the Copyright Act Do Not Weigh in Favor of Awarding Attorneys' Fees**

Because UMG's claims are objectively reasonable, the purposes of the Copyright Act are not furthered by awarding attorneys' fees. As discussed above, UMG acted with proper motivation, and there is no reason to deter the filing of reasonable infringement claims.

The Owner Defendants are incorrect when they state that in determining whether to award attorneys' fees, the district court "first determines whether the successful defense furthered the purposes of the Copyright Act." Motion at 13:10-12. The list of nonexclusive factors in *Fogerty*, also listed above, are "frivolousness, motivation, objective unreasonableness (both factual and in the legal components of

---

[6] The Owner Defendants try to suggest that UMG's choice to conduct discovery before asserting claims somehow evidences bad faith. Unsurprisingly, the Owner Defendants cite no case where a court finds improper motivation because a party conducted some, but "not enough," discovery. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F. Supp. 751, 759 (N.D. Ill. 1996) (finding bad faith by plaintiff who "*never initiated any discovery whatsoever*," and only had "a third person's 'belief' and its own 'information and belief' to rely upon to substantiate its case") (emphasis added). The fact that UMG conducted some discovery prior to initiating its claims evidences UMG's caution and good faith, contrary to the Owner Defendants' assertions.

the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). The purposes of the Copyright Act are not one of these factors. *See also Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (listing the factors in *Fogerty* as those to be considered in deciding whether to award fees; the Court adds "degree of success obtained" to *Fogerty*'s list, but does not include the purposes of the Copyright Act).

Rather, the *Fogerty* factors are to be "considered in light of the primary objective of the Copyright Act: to encourage the production of original literary, artistic, and music expression for the good of the public." *Perfect 10,* 2005 WL 5957973 at *3. In *Perfect 10*, the court engaged in such consideration and denied a request for attorneys' fees by the defendant. The court reasoned that because plaintiffs brought a legitimate claim and both parties diligently advocated their positions and brought further analysis to copyright law, fees were not warranted. *Id*. Likewise, here UMG brought legitimate claims against the Owner Defendants; both parties advocated their positions; and thus both parties contributed to further demarcation of the contours of secondary copyright liability. The "purposes of the Copyright Act" provide no reason to award fees to the Owner Defendants.

**B.     The Owner Defendants' Request For Over $1 Million In Attorneys' Fees And Costs Is Not Reasonable**

Even if the Court were to determine that some fee award to the Owner Defendants was warranted, the amounts they seek here (more than $1 million in aggregate) are grossly unreasonable. The Owner Defendants do not even attempt to suggest that these amounts were all devoted to the preparation of a motion to dismiss. Indeed, in the Declaration of Annette Hurst, one of Shelter's more than 20 legal professionals, she attests that she was *primarily responsible* for the preparation of the initial motion to dismiss, which was prepared during October and November

2008 (emphasis added). During that time, Ms. Hurst billed a total of only 50.8 hours. Hurst Decl., ¶ 20. Nonetheless, the Owner Defendants collectively seek recovery for more than 2,200 hours of time expended by approximately 30 other professionals. These amounts bear no reasonable relation to the costs of preparing the motion to dismiss and instead reflect time devoted to responding to discovery requests that were appropriate regardless of whether the Owner Defendants' were parties to this action to this action or not. The Court confirmed this point when it held that the Owner Defendants deserved no stay from discovery in the *Veoh* action during the pendency of their motion to dismiss. *See* Minute Order Denying Owner Defendants' *Ex Parte* Application for Protective Order (Dkt. No. 404). Even the Owner Defendants impliedly acknowledged the appropriateness of this discovery by responding (as third-parties) to subpoenas issued after the dismissal of UMG's suit against them. *See, e.g.,* Edelson Decl., Ex. A at 78 (billing hours spent preparing for and attending UMG's deposition of Tornante's Michael Eisner, which took place on May 21st and 22nd, after the Court's May 5th dismissal of UMG's suit). Hence many of the expenses for which the Owner Defendants seek recovery would have been incurred regardless of whether UMG ever named them as defendants. No authority justifies awarding such amounts.

1.      **The Owner Defendants Seek Fees for Discovery And Other Activities Wholly Unrelated to the Motions to Dismiss**

The Owner Defendants seek to recover all attorneys' fees, all costs, and all non-attorney fees that they incurred for the entire time from September 2008 through the present. They make no effort to differentiate fees associated with vindicating their position that the claims should be dismissed from fees associated with other tasks. (Their frequent block-billing also prevents UMG from making this differentiation. *See, e.g.,* Badal Decl., Ex. A at 13 (block billing for time spent (*i*) revising motion papers relating to UMG's motion for summary judgment against Veoh and (*ii*) discussing the Owner Defendants' first motion to dismiss).) As UMG

has noted in various motion practice before this Court, these defendants were members of Veoh's board of directors and possessed information that was relevant and discoverable whether they were parties to the case or not. As just one example, in a number of instances, these entities produced relevant communications with Veoh executives that were mysteriously absent from Veoh's own document production. Additionally, the Owner Defendants seek to recover extensive fees and costs that, due to the times at which they were incurred, could not possibly be related to their efforts to obtain dismissal of the claims against them.

UMG filed its First Amended Complaint on August 26, 2008. The Owner Defendants filed their motion to dismiss that complaint on October 16, 2008. The reply in support of the motion was fully submitted by November 3, 2008. The Court took the motion under submission without a hearing and issued a decision on February 2, 2009. Thus, during November and December of 2008 and January of 2009, the Owner Defendants were not doing anything to advance the cause of prevailing on their motion to dismiss; they were instead fighting relevant discovery requests. Despite that fact, the Owner Defendants seek recovery of more than $338,000 for that time period – roughly 1/3 of their total request.[7]

The Second Amended Complaint was filed February 23, 2009. The Owner Defendants filed their motion to dismiss that complaint on March 3, 2009, and the reply in support of the motion was fully submitted on March 16, 2009. Once again, the Court took the motion under submission without a hearing and issued its decision on May 5, 2009. Thus, by mid-March, 2009, the Owner Defendants should have expended no further efforts to obtain dismissal of UMG's claims. Despite this fact, the Owner Defendants seek recovery of more than $265,000 for the time period

_____

[7] Specifically, the Owner Defendants seek a total of $144,768.71 for Shelter Capital, $125,453.44 for Spark Capital, and $68,621.67 for the Tornante Company for the period from November 2008 through January 2009. (Because one of the invoices for the two different law firms representing Shelter Capital aggregates October and November 2008, this amount does not even include the amount sought for the Orrick Herrington firm for November 2008.)

after their motion to dismiss the Second Amended Complaint was fully submitted.[8] Notably, much of this time (May and June 2009) was after the Court had already **granted** the motion to dismiss with prejudice.  The suggestion that such expenses were incurred to vindicate the Owner Defendants' position that they should not have been sued is patently absurd; rather, these billings reflect time spent responding to discovery as a third-party, time the Owner Defendants' would have spent whether they were parties to the suit or not.

As set forth above, more than $600,000 of the total amount that the Owner Defendants seek was expended during time periods when they could not have been working on their motions to dismiss.  The Owner Defendants cite no authority to suggest any entitlement to such an enormous windfall, and multiple recent cases confirm that the Owner Defendants' request is exorbitantly high.  *See, e.g., Plunket v. Estate of Doyle*, 2009 WL 73146, *1 (S.D.N.Y. Jan. 12, 2009) (awarding $135,521.04 in attorneys' fees spent on successful motion to dismiss); *Mallery v. NBC Universal, Inc.*, 2008 WL 719218, *1-2 (S.D.N.Y. Mar. 18, 2008) (awarding defendant $99,106.45 spent drafting motion to dismiss, which court converted into a motion for summary judgment and granted); *Franklin Machine Products v. Heritage Food Service Equipment, Inc.*, 2008 WL 687300, *4 (N.D. Ind. Mar. 11, 2008) (awarding defendant attorneys' fees of $29,172.25 spent on successful motion to dismiss).  Indeed, this amount represents the substantial majority of the amount requested.

Further, even during the time periods in which the Owner Defendants could have been working on obtaining a dismissal of the claims against them (September and October 2008 and February and March 2009), the billing records submitted confirm that they were working on other matters.  For example, Shelter's records

---

[8] Specifically, the Owner Defendants seek a total of $121,374.81 for Shelter Capital, $109,008.62 for Spark Capital, and $35,057.36 for the Tornante Company for the period from April 2009 through June 2009.

confirm that in September and October 2008, various attorneys billed time to reviewing summary judgment papers (involving a motion brought against Veoh, not the Owner Defendants), filing an *ex parte* application to prevent that summary judgment motion from being considered, analyzing what submissions would be required to notify the Court of Mr. Badal's transfer from one law firm to another, and other similar activities. Badal Decl., Ex. B. Similarly in February and March 2009, Shelter seeks recovery for time spent inventorying discovery materials, preparing documents for production (which were requested long before Shelter was ever named as a defendant), editing Veoh's motion for summary judgment, converting databases at the WilmerHale firm, and other similar activities. Badal Decl., Ex. A. The same is true for Spark and Tornante. *See* Matuschak Decl., Ex. A, and Edelson Decl, Ex. A. The Owner Defendants would have incurred these costs even if UMG had never brought claims against them, since UMG would have served subpoenas requesting the same documents and similar depositions. *See Pinkham v. Camex, Inc.*, 84 F.2d 292, 294 (8th Cir. 1996) (affirming an award of only 90% of requested attorneys' fees because 10% of attorneys' time was allocable to separate matter). Unfortunately, it is difficult, if not impossible, to calculate how much of the Owner Defendants' fee request is attributable to such activities because many of the billing entries are redacted in such a manner as to make it unclear how much time was expended on various tasks. None of these costs should be the subject of any recovery for the Owner Defendants.[9]

_____

[9] Additionally, UMG learned only after the filing of Owner Defendants' motion that Shelter Capital seeks recovery for time spent by a legal assistant who should never have been working on this matter at all. Shelter seeks recovery for $1,687.50 for the time of Vikki Gonzalez in December 2008 and January 2009. Ms. Gonzalez worked at plaintiffs' firm, Irell & Manella LLP, until approximately September 2008, where she was staffed on this very matter on behalf of UMG. Counsel for Shelter Capital has represented that they did not know of this issue until UMG's counsel brought it to their attention after this motion was filed and immediately put an ethical wall into place. Obviously, such a wall should have been in place long before. While UMG reserves its rights regarding this situation for the present, it certainly should not be expected to pay for Ms. Gonzalez's time.

**2.      The Owner Defendants' Attorneys' Overstaffed this Case, Leading to the Accumulation of Excessive Hours**

At most, the Owner Defendants may only recover "reasonable" attorneys' fees, not actual attorneys' fees. 17 U.S.C. § 505. Thus, a court can downwardly adjust the amount of attorneys' fees awarded "to account for unnecessary, unreasonable, or unproductive hours." *Data General Corp. v. Grumman Systems Support Corp.*, 825 F. Supp. 361, 365 (D. Mass. 1993) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-66 (1986)).

The Owner Defendants' requested attorneys' fees should likewise be reduced due to inefficiencies, which were myriad:

- Both motions to dismiss were filed jointly. Thus, the three defendants only filed one set of motion papers in each instance. In total, the Owner Defendants utilized *thirty* professionals, and five of these are attorneys with billing rates of more than $500 per hour.

- The fact that professional staffing for each of the Owner Defendants varies wildly indicates inefficiency. Shelter utilized twenty professionals; Spark engaged eight; and Tornante engaged two.

- Of its twenty legal professionals, Shelter paid fees for two attorneys who bill more than $600 per hour, while of the eight professionals working for Spark, three of them have billing rates of more than $500 per hour. Both of Tornante's attorneys, meanwhile, have billing rates of under $400 an hour. At least one member of Spark's attorneys' support staff billed out at $325 per hour. *See, e.g.,* Matushak Decl., ¶ 29 (billing out Patrick Gillespie at $325 per hour).

- WilmerHale, counsel for Spark and Shelter, staffed a total of five partners – Robert Badal, George Schuster, Mark Matuschak, Donald Steinberg, and Maria Vento – to this case; Shelter added a sixth partner, Annette Hurst. UMG has never staffed more than the same two partners on this matter and the related *UMG v. MySpace* and *UMG v. Grouper* copyright litigations, which themselves

1  implicated an additional four defendants.  Declaration of Steven Marenberg in
2  Support of UMG's Opposition ("Marenberg Decl."), ¶ 2.
3  • The Owner Defendants had attorneys working in four different cities across the
4  country – Los Angeles, San Francisco, Palo Alto, and Boston – on this action.
5  • In total, the Owner Defendants' legal professionals billed over 2,300 hours
6  between September 2008 and the middle of June 2009.  It is unfathomable that
7  these hours are not excessive or duplicative.  *See, e.g., NBC Universal*, 2008 WL
8  719218 at *2 (145.5 hours spent drafting motion to dismiss papers).
9  • Finally, the Owner Defendants submit no evidence that they actually paid these
10  amounts.  Counsel declares that the amounts were incurred but offers no
11  testimony that they were actually paid by the parties seeking recovery.

12  **3.     The Owner Defendants Have Not Met the Burden of Showing that the**
13  **         Hours They Incurred and the Hourly Rates are Reasonable**

14          The Owner Defendants are not entitled to any fee recovery because they have
15  not met their required burdens.  As the prevailing parties, the burden is on the
16  Owner Defendants to "demonstrat[e] the time spent and that it was reasonably
17  necessary."  *Maljack Productions, Inc. v. Palisades Entertainment*, 1995 WL
18  779154 at *3 (C.D. Cal. Jun. 23, 1995); *see also Queenie, Ltd. v. Nygard Int'l*, 204
19  F. Supp. 2d 601, 608 (S.D.N.Y. 2002) ("[w]hile a party to a litigation may choose its
20  own level of litigation expense, it may not impose its own approach on a losing
21  adversary.")  The Owner Defendants have not met this burden.  One element of
22  assessing the reasonableness of the requested attorneys' fees is whether the
23  attorneys' hourly rates are reasonable.  Again, as the prevailing parties, the Owner
24  Defendants have the burden of proving that their attorneys' hourly rates are
25  reasonable, and they fail to carry their burden.  The only evidence put forward on
26  this subject is their own attorneys' declarations, which are insufficient to fulfill this
27  requirement.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("the burden is on
28  the fee applicant to produce satisfactory evidence – *in addition to the attorney's own*

*affidavits* – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation") (emphasis added); *Bordanaro v. McLeod*, 871 F.2d 1151, 1168 (1st Cir. 1989) (holding that plaintiffs failed to meet their burden of proving the prevailing market rate when the only evidence they produced to establish this rate was their own attorneys' affidavits). Because the Owner Defendants have failed to show that their billing rates are reasonable, this Court cannot award attorneys' fees. *See Universal Studio Productions LLLP v. Bigwood*, 441 F. Supp. 2d 185, 192-93 (D. Me. 2006) (quoting *Blum* and denying attorneys' fees motion due to the absence of supporting materials).

The absence of anything but interested party declarations here is important because certain aspects of the fee request are highly questionable. To give but two examples, first, the Owner Defendants seek recovery for large and exceptional rate increases for calendar year 2009 – a time when virtually all law firms imposed minimal rate increases on their clients (if any) and heavily discounted their prevailing rates, all due to the extraordinary economic circumstances. *See* Declaration of Carter Batsell in Support of UMG's Opposition, Exhibit A (3/17/2009 *National Law Journal* article noting that "'[u]nlike past years, when you have seen across-the-board billable rate increases, that clearly didn't happen this year;'" "[s]ome firms have even touted their rate freeze;" and, at most, firms are generally instituting modest "3 percent to 5 percent" rate increases), Exhibit B (12/8/2008 *Law360* article noting that "firms are far more likely to apply small increases [averaging 4.3% in 2008] limited to particular practices, and provide discounts to certain clients in 2009"). The Owner Defendants' fee requests are inconsistent with this widespread practice in the legal community. For example, two of the WilmerHale partners representing Spark Capital (Mark Matuschak and Donald Steinberg) increased their rates 11.5% and 13% respectively. Another WilmerHale attorney, Joel Cavanaugh's rate increased more than 22% between

2008 and 2009.  *See* Declaration of Mark Matuschak.  Such increases (over already significant rates) in the current economic climate go far beyond reasonable attorneys' fees.  UMG's attorneys' rates are substantially below those charged by the Owner Defendants' attorneys.  Marenberg Decl., ¶ 3.

Likewise, it appears that each of the firms are billing their clients (although there is no evidence that the clients are paying) at undiscounted "rack" rates.  There is no evidence that this is consistent with prevailing practice – and indeed it is not.  It is customary in copyright cases such as this that clients receive discounts off standard or book rates.[10]

## C. If The Court Will Not Deny The Motion, It Should Postpone Deciding The Issue Until The Ninth Circuit Rules On The Merits of UMG's Claims

While this court has jurisdiction to award attorneys' fees despite UMG's appeal, UMG respectfully submits that if the Court is presently inclined to grant any recovery of attorneys' fees, it should defer ruling on the issue until the Ninth Circuit determines the merits of the motions to dismiss.  If the Ninth Circuit reverses this Court, then UMG's claims would clearly be objectively reasonable and attorneys' fees would be inappropriate.  In fact, even if the Court of Appeals affirms this Court's order, a vigorous dissent could indicate that UMG's claims were reasonable. *See Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 122-23 (2d Cir. 2001) (holding that plaintiff's copyright claims were objectively reasonable because, among other things, the merits appeals "provoked vigorous dissenting opinions agreeing with [plaintiff's] positions").  Considering the impact the Ninth Circuit's opinion could have on this Motion's merits, now is not the time to award the Owner Defendants attorneys' fees.

---

[10] Accordingly, to the extent the Court was inclined to award any fees, UMG respectfully submits that limited discovery of the reasonableness of the fees and rates should be permitted.

# III.  CONCLUSION

For the foregoing reasons, the Owner Defendants' motion for attorneys' fees should be denied.

Dated:  June 29, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Brian Ledahl
Benjamin Glatstein

By: _____
Steven A. Marenberg

Attorneys for Plaintiffs

2082515