1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4        HONORABLE ANDREW J. WISTRICH, U.S. MAGISTRATE JUDGE

5                              PRESIDING

6

7    UMG RECORDINGS, INC.,     )
     et al.,                   )
8                              )
                  Plaintiffs,  )
9                              ) CASE NO. CV 07-05744-AHM(AJWx)
              VS.              )
10                             ) (10:08 A.M.)
     VEOH NETWORKS, INC.,      )
11   et al.,                   )
                               )
12                Defendants.  )
     _____)

13

14

15    VEOH'S MOTION TO COMPEL AND VEOH'S MOTION FOR PROTECTIVE

16                              ORDER

17                    LOS ANGELES, CALIFORNIA

18                        JUNE 3, 2009

19

20   COURT DEPUTY/RECORDER:        YSELA BENAVIDES

21   TRANSCRIBED BY:               HUNTINGTON COURT REPORTERS
                                   & TRANSCRIPTION INC.
22                                 1450 W. COLORADO BOULEVARD
                                   SUITE 100
23                                 PASADENA, CALIFORNIA 91105
                                   (626) 792-7250

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.          1

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF THE PLAINTIFFS:

 4           IRELL AND MANELLA LLP
             BY:  BRIAN D. LEDAHL, ATTORNEY AT LAW
 5                  - AND -
                 STEVEN A. MARENBERG, ATTORNEY AT LAW
 6           1800 AVENUE OF THE STARS, SUITE 900
             LOS ANGELES, CA 90067
 7

 8   ON BEHALF OF DEFENDANT VEOH NETWORKS, INC.:

 9           WINSTON AND STRAWN
             BY:  JENNIFER A. GOLINVEAUX, ATTORNEY AT LAW
10           101 CALIFORNIA STREET, 39TH FLOOR
             SAN FRANCISCO, CA 94111
11
                     - AND -
12
             WINSTON AND STRAWN
13           BY:  ERIN R. RANAHAN, ATTORNEY AT LAW
             333 SOUTH GRAND AVENUE, 38TH FLOOR
14           LOS ANGELES, CA 90071

15

16

17

18

19

20

21

22

23

24

25
```

      1          LOS ANGELES, CALIFORNIA, WEDNESDAY, JUNE 3, 2009

      2                              -o0o-

      3          THE CLERK:  THIS UNITED STATES DISTRICT COURT IS

      4   NOW IN SESSION.  THE HONORABLE ANDREW J. WISTRICH PRESIDING.

      5   PLEASE BE SEATED.  CALLING CV 07-5744-AHM(AJWx), UMG

      6   RECORDINGS V. VEOH NETWORKS, INCORPORATED, ET AL.

      7          COUNSEL, PLEASE MAKE YOUR APPEARANCES FOR THE

      8   RECORD.

      9          MR. LEDAHL:  GOOD MORNING, YOUR HONOR.  BRIAN

     10   LEDAHL AND STEVE MARENBERG FROM IRELL AND MANELLA ON BEHALF

     11   OF PLAINTIFFS.

     12          MS. GOLINVEAUX:  GOOD MORNING, YOUR HONOR.

     13   JENNIFER GOLINVEAUX AND ERIN RANAHAN FROM WINSTON AND STRAWN

     14   ON BEHALF OF DEFENDANT.

     15          THE COURT:  ALL RIGHT.  LET'S START WITH THE

     16   PROTECTIVE ORDER MOTION.  AT THIS POINT WHY DO WE REALLY

     17   NEED TO BE KEEPING ALL THIS MATERIAL?

     18          MR. LEDAHL:  YOUR HONOR, I THINK, AS WE'VE

     19   DISCUSSED PREVIOUSLY, PART OF THE ISSUE THAT WE'VE HAD IN

     20   THIS CASE IS A DIFFICULTY IN -- WITHIN THE TIME FRAMES AND

     21   THE TIME CONSTRAINTS THAT ARE APPLICABLE TO THIS CASE BEING

     22   ABLE TO GET THROUGH ALL OF THE MATERIAL THAT WAS VERY

     23   BELATEDLY PROVIDED TO US.  AND I WON'T BELABOR THE RECORD ON

     24   THAT ISSUE, BUT I THINK THE COURT MAY RECALL THAT WE'VE HAD

     25   A NUMBER OF INSTANCES WHERE WE'VE BEEN HERE TALKING ABOUT

                                                                    3

1   THE DIFFICULTIES WE'VE HAD IN OBTAINING SOME OF THEM.

2           THE COURT:  I DO REMEMBER THAT, YES.

3           MR. LEDAHL:  AS A CONSEQUENCE, THAT HAS IMPEDED

4   PRACTICALLY SOME OF OUR ABILITY, AS WE'VE DISCUSSED BEFORE,

5   TO REVIEW THE MATERIAL, TO ACCESS IT.  AND AS THE COURT WILL

6   ALSO RECALL, WHEN WE WERE HERE FROM THE VERY BEGINNING, IN

7   THE FIRST SET OF MOTION PRACTICE IN THIS CASE, ONE OF THE

8   CORE ISSUES WAS VEOH'S PRODUCTION OF THE VIDEOS.  AS THE

9   COURT RECALLS, THIS IS OBVIOUSLY CORE RELEVANT EVIDENCE.

10          THE COURT:  SO YOU'RE STILL NOT DONE WITH THAT IS

11  WHAT YOU'RE SAYING.  YOU ARE STILL DOING IT.

12          MR. LEDAHL:  WELL, THAT'S CORRECT, YOUR HONOR.

13  AND WE'VE PROVIDED AN IDENTIFICATION OF INFRINGING VIDEOS

14  FOR PURPOSES OF THIS ACTION IN LIGHT OF WHAT WE'VE BEEN ABLE

15  TO IDENTIFY WITHIN THE TIME CONSTRAINTS OF THIS CASE.  WE DO

16  NOT, HOWEVER, BELIEVE THAT THAT FULLY COMPRISES EVERYTHING

17  AS WE'VE SAID BEFORE THAT VEOH HAS INFRINGED UPON.  WE

18  BELIEVE THAT THE APPROPRIATE MECHANISM GIVEN THE RULINGS THE

19  COURT HAS ISSUED IS THAT WE RESERVE THE RIGHT TO PURSUE

20  ADDITIONAL INFRINGEMENTS IN A SEPARATE ACTION, AND THAT THE

21  FACT THAT WE'VE IDENTIFIED WORKS FOR PURPOSES OF THIS CASE

22  DOES NOT PRECLUDE US, AND INDEED WE DISCUSSED THAT WITH THE

23  COURT WHEN WE WERE HERE ON MARCH 6TH, THAT THAT DOES NOT

24  PRECLUDE US FROM BRINGING A SUBSEQUENT LAWSUIT, AND THAT

25  REALLY WHAT WE ARE TALKING ABOUT HERE IS NOT A PROTECTIVE

                                                            4

ORDER AT ALL.  WHAT WE ARE TALKING ABOUT IS ESSENTIALLY A
REQUEST FOR AN ADVISORY OPINION THAT DESTROYING EVIDENCE OF
THAT INFRINGEMENT THAT IS POTENTIALLY THE SUBJECT OF THIS
ACTION WOULD SOMEHOW NOT CONSTITUTE SPOLIATION, CONTRARY TO
ALL THE NORMAL RULES THAT GOVERN SUCH THINGS.

THE COURT:  SO YOU WOULD ARGUE, I GUESS, THAT
YOU'VE ESSENTIALLY PUT VEOH ON NOTICE THAT YOU MAY BE FILING
A SEPARATE LAWSUIT, MAY NOT BE, BUT MAY BE, AND THEY NEED TO
PRESERVE THIS MATERIAL.

MR. LEDAHL:  THAT'S CORRECT, YOUR HONOR.  AND THIS
IS SOMETHING -- CERTAINLY UMG HAS A LOT OF MATERIAL THAT
WE'D PREFER NOT TO SPEND THE MONEY TO RETAIN AND PRESERVE IN
CONNECTION WITH LOTS OF DIFFERENT ISSUES.  ESSENTIALLY, IT'S
A COST OF DOING BUSINESS AND THAT'S THE WAY THINGS GO, BUT
THIS IS CLEARLY RELEVANT MATERIAL.  THE CASES VEOH CITES ARE
CASES WHERE COURTS LOOK AT, WELL, WE ARE TALKING ABOUT
COMPLETELY IRRELEVANT INFORMATION THAT DOESN'T HAVE TO
NECESSARILY BE PRODUCED.  VEOH DOESN'T CITE A SINGLE CASE
WHERE A COURT CONCLUDES HERE'S EVIDENCE THAT'S RELEVANT TO A
POTENTIAL CLAIM AND YOU CAN GO AHEAD AND DESTROY IT.

AND, FRANKLY, YOUR HONOR, FROM OUR PERSPECTIVE, IF
VEOH WERE ALLOWED TO DO THIS, THEY WOULD ESSENTIALLY BE
OBTAINING THE SUBSTANTIVE BENEFIT OF HAVING DESTROYED AND
DELAYED THE EVIDENCE ABOUT THE SUBSTANCE OF WHAT WAS ON
THEIR SYSTEM THAT WE'VE WORKED SO HARD TO GET IN THIS CASE,

5

1 BECAUSE ESSENTIALLY IT WOULD ALLOW THEM TO TRY TO ESCAPE

2 LIABILITY FOR SOME OF THAT INFRINGEMENT.  AND FUNDAMENTALLY

3 THAT SEEMS UNFAIR THAT THE DELAY AND DIFFICULTY THAT HAS

4 BEEN THROWN UP --

5              THE COURT:  AS FAR AS THIS CASE IS CONCERNED,

6 WOULD YOUR CLIENT BE WILLING TO PAY FOR THE COST OF STORAGE?

7              MR. LEDAHL:  WELL, I THINK, YOUR HONOR, THAT

8 RAISES THE QUESTION OF WHETHER VEOH IS WILLING TO PAY FOR

9 THE COST OF OUR STORAGE OF VARIOUS MATERIALS.  IT SEEMS TO

10 ME THAT THIS IS A COST OF DOING BUSINESS FOR ANY COMPANY

11 THAT'S SUBJECT TO LIABILITY, AND THE FACT THAT VEOH HAS

12 ENGAGED IN WIDESPREAD COPYRIGHT INFRINGEMENT SHOULD NOT BE

13 USED AS A MECHANISM TO ESSENTIALLY INFLICT FURTHER DETRIMENT

14 TO OUR CLIENT WHICH IS ESSENTIALLY THE VICTIM OF THAT

15 INFRINGEMENT.

16              THE COURT:  WELL, I MEAN, THE COST IS NOT THAT

17 HIGH.  I GUESS IT'S, WHAT, 30,000 A MONTH THEY'VE ESTIMATED

18 OR MAYBE 50,000 FOR AN OUTSIDE CONSULTANT TO DUPLICATE THIS.

19 IT DOESN'T SEEM LIKE A WHOLE LOT OF MONEY TO ME.  HOW

20 IMPORTANT IS IT TO YOU TO HAVE THIS MATERIAL AVAILABLE FOR

21 THIS CASE?

22              MR. LEDAHL:  WELL, YOUR HONOR, I THINK IT'S

23 IMPORTANT IN THE SENSE THAT -- THERE'S A NUMBER OF ISSUES.

24 FIRST OF ALL, IT REMAINS IMPORTANT IN THE SENSE THAT THIS IS

25 EVIDENCE OF WHAT THEY WERE DOING THAT IS STILL THE SUBJECT

6

1  OF THIS LAWSUIT.  AS THE COURT MAY RECALL, WHEN WE WERE HERE

2  TALKING ABOUT PRODUCTION OF THESE VIDEOS AT THE VERY

3  BEGINNING OF THE CASE, WE URGED THAT THEY SHOULD BE

4  PRODUCED, THAT WE SHOULD BE PROVIDED WITH COPIES OF THE

5  VIDEOS.  VEOH SAID NO.  THEY SAID WE DON'T WANT TO DO THAT.

6  WE WANT TO MAKE THEM AVAILABLE IN THIS MECHANISM THAT THE

7  CONTENTION AND THE REPRESENTATION MADE TO US AND TO THIS

8  COURT WAS --

9          THE COURT:  WAS THE FUNCTIONAL EQUIVALENT.

10          MR. LEDAHL:  EXACTLY.  CLEARLY THAT'S NOT BEEN THE

11  CASE.  AND IF THEY ARE ALLOWED TO GET RID OF THE MATERIAL

12  AND EFFECTIVELY DESTROY IT, THAT'S EVEN MORE SO.  AND SO THE

13  SUGGESTION THAT NOW HAVING SORT OF LED US DOWN THIS GARDEN

14  PATH VEOH SHOULD BE PERMITTED TO PULL THE RUG OUT FROM

15  EVERYONE AND SAY NOW WE ARE GOING TO GET RID OF EVERYTHING,

16  CLEARLY THAT'S NOT THE FUNCTIONAL EQUIVALENT OF HAVING

17  PRODUCED THE MATERIAL AS WAS REPRESENTED TO US AND TO THIS

18  COURT AND WE SUBMIT WOULD HAVE BEEN THE BASIS FOR THIS

19  COURT'S ALLOWING THAT TO BE THE MECHANISM.

20          THE COURT:  SO THE ANSWER TO MY QUESTION IS?

21          MR. LEDAHL:  THE ANSWER TO YOUR QUESTION IS, IT

22  REMAINS IMPORTANT FROM AN EVIDENTIARY PERSPECTIVE FOR THIS

23  CASE AND IT REMAINS IMPORTANT IN THE SENSE THAT WE ARE

24  TALKING ABOUT POTENTIALLY THOUSANDS OF ADDITIONAL

25  INFRINGEMENTS THAT ARE THE POTENTIAL SUBJECT OF AN

7

1 ADDITIONAL LAWSUIT WHICH WOULD HAVE AGAIN POTENTIALLY

2 MILLIONS AND MILLIONS OF DOLLARS IN DAMAGES.

3       THE COURT:  ALL RIGHT.  SO MY QUESTION TO YOU

4 REALLY IS, IS YOUR CLIENT WILLING TO PAY FOR THE COST OF

5 STORING THIS MATERIAL OR PRESERVING IT?

6       MR. LEDAHL:  WELL, I THINK, YOUR HONOR --

7       THE COURT:  IF IT COMES TO THAT.

8       MR. LEDAHL:  IF WE ARE TALKING ABOUT THE COST OF

9 OUR COPY -- IF WE WERE TALKING ABOUT PAPER DOCUMENTS, FOR

10 EXAMPLE, THIS WOULD BE A RELATIVELY STRAIGHTFORWARD ANALYSIS

11 IN THE SENSE THAT WITH -- UNDER RULE 34 A PARTY CAN PROVIDE

12 ACCESS TO PAPER MATERIALS THAT CAN THEN BE REPRODUCED

13 USUALLY THROUGH SOME KIND OF PHOTOCOPYING SERVICE AND THE

14 PARTY REQUESTING THEM CAN OBTAIN PAYMENT FOR THE COPIES.

15 YOU DON'T PAY FOR THE COST OF SOMEONE TO GO AND FIND THE

16 DOCUMENTS.  YOU DON'T PAY FOR THE COST OF CONSULTANTS TO GO

17 AND SEARCH.  YOU MAYBE PAY FOR THE ACTUAL PHYSICAL COPIES.

18 NOW, HERE WE'RE TALKING ABOUT ELECTRONIC FILES.  I THINK IF

19 ALL WE'RE TALKING ABOUT IS PROVIDING A PHYSICAL MEDIUM, THEN

20 THAT'S PROBABLY SOMETHING WE COULD ADDRESS OURSELVES TO.

21 WHAT'S BEEN SUGGESTED, HOWEVER, IS VERY DIFFERENT AND IS NOT

22 SOMETHING THAT I THINK RULE 34 CONTEMPLATES WHEN WE ARE

23 TALKING ABOUT PRODUCTION OF MATERIALS.

24       THE COURT:  WELL, THE SITUATION IS A LITTLE BIT

25 UNUSUAL AND I'M JUST TRYING TO GET A SENSE OF -- I'M NOT

8

1 SURE THAT THIS WOULD BE APPROPRIATE, BUT WHETHER YOUR CLIENT

2 WOULD BE WILLING TO PAY WHATEVER COST IS REQUIRED TO ENSURE

3 THAT YOU HAVE CONTINUED ACCESS TO THIS.  AND I'M GETTING AN

4 EQUIVOCAL RESPONSE, SO I GUESS THE ANSWER IS NO.

5         MR. LEDAHL:  I'M BEING EQUIVOCAL IN PART BECAUSE

6 IT CREATES A PERVERSE INCENTIVE.  WHEN YOU SPEAK OF PAY

7 WHATEVER COST IS REQUIRED, VEOH HAS LITTLE INCENTIVE TO DO

8 THIS IN A WAY THAT'S EITHER EFFICIENT OR SIGNIFICANTLY COST

9 AVOIDING.  AND SO IF THEY'VE GOT A RIGHT TO SORT OF A BLANK

10 CHECK FROM MY CLIENT FOR THE COST OF PRESERVING THIS, I

11 DON'T THINK THAT'S --

12         THE COURT:  WELL, WE CAN TALK ABOUT THE DETAILS OF

13 IT.  ONE POSSIBILITY WOULD BE, YOU KNOW, YOU DO IT HOWEVER

14 YOU WANT AT YOUR EXPENSE AND THEN YOU WILL HAVE WHATEVER

15 SORT OF ACCESS TO IT YOU WANT TO HAVE FOREVER.

16         MR. LEDAHL:  I THINK, YOUR HONOR, THE ANSWER TO

17 YOUR QUESTION IS THAT THE DEVIL IS IN THE DETAILS HERE AND

18 THAT WE ARE OPEN TO A DISCUSSION.  WHAT WE'VE BEEN PRESENTED

19 WITH ARE NOT THOSE KINDS OF DISCUSSIONS AND CERTAINLY WE ARE

20 NOT OPEN TO THE SUGGESTION THAT IT'S OKAY TO JUST -- AS I

21 SAID, TO USE THE EXAMPLE OF DOCUMENTS, I DON'T THINK MOST

22 PEOPLE WOULD SUGGEST THAT IT WOULD BE OKAY TO BURN DOWN A

23 WAREHOUSE FULL OF RELEVANT DOCUMENTS BECAUSE IT WAS COSTLY

24 TO PAY THE RENT ON THE WAREHOUSE, AND THAT'S ESSENTIALLY

25 WHAT WE ARE TALKING ABOUT HERE.  AND WE DON'T THINK THAT'S

9

1  AN APPROPRIATE REMEDY OR AN APPROPRIATE MECHANISM.

2          THE COURT:  OKAY.

3          MS. GOLINVEAUX:  GOOD MORNING, YOUR HONOR.  FIRST

4  TO ADDRESS THE ISSUE OF COST FOR A MOMENT.  MR. LEDAHL IS

5  SAYING IT WOULD BE -- WHO KNOWS WHAT THE COST MIGHT BE.  WE

6  HAVEN'T PUT ANYTHING IN THE RECORD ON THAT.  WE'VE ACTUALLY

7  BEEN VERY SPECIFIC IN THE RECORD ON THAT POINT.  UMG

8  ESTIMATES COSTS FOR THE HARDWARE ITSELF TO COPY THE FILES

9  ONTO AT ABOUT $75,000.  AND AS WE EXPLAIN IN A SUPPLEMENTAL

10  DECLARATION FROM MR. PAPPA (PHONETIC), THE TIME FOR AN

11  INDEPENDENT CONTRACTOR TO COME IN AND MANAGE THAT PROJECT

12  WHICH WOULD TAKE ROUGHLY TWO TO THREE MONTHS WOULD BE ABOUT

13  $50,000.  SO IT'S A MUCH MORE CONCRETE-TYPE NUMBER I THINK

14  THAN YOU WERE JUST HEARING FROM MR. LEDAHL.

15          THE COURT:  SO THE NUMBER AGAIN WAS 150 DID YOU

16  SAY?

17          MS. GOLINVEAUX:  BETWEEN 125 AND 150 I THINK IS A

18  FAIR ESTIMATE.

19          THE COURT:  OKAY.  NOW, I TAKE IT THAT IF I WERE

20  TO REQUIRE UMG TO PAY FOR THIS, YOU'D LET THEM DO IT HOWEVER

21  THEY WANTED TO.

22          MS. GOLINVEAUX:  IN TERMS OF -- SO LONG AS IT

23  DIDN'T IMPEDE VEOH'S BUSINESS.  IF THEY ARE TALKING ABOUT --

24  WHAT THEY'VE PROPOSED IS, FOR EXAMPLE, PROVIDING --

25          THE COURT:  I MEAN, IF I WERE TO DO THAT STEP, AND

                                                    10

1  I'M NOT SUGGESTING THAT THAT'S THE DIRECTION I'M HEADED

2  NECESSARILY, I WOULD WANT THEM TO BE ABLE TO DO IT HOWEVER

3  THEY WANTED TO IN THE MOST EFFICIENT AND INEXPENSIVE WAY FOR

4  THEM.  WOULD YOU HAVE A PROBLEM WITH THAT?

5          MS. GOLINVEAUX:  I THINK THAT'S REASONABLE, YOUR

6  HONOR, SO LONG AS MY CLIENT DOESN'T COME BACK AND SAY

7  TECHNICALLY WHAT THEY ARE PROPOSING IS NOT POSSIBLE OR

8  SOMETHING LIKE THAT.

9          THE COURT:  THEN IT WOULD BE THEIR PROBLEM,

10 WOULDN'T IT, IF THEY CHOSE THAT METHOD?  THEY COULDN'T COPY

11 IT THAT WAY, THEN IT WOULD BE THEIR PROBLEM, NOT YOURS OR

12 YOUR CLIENT'S.

13         MS. GOLINVEAUX:  WELL, THAT MAY BE, YOUR HONOR,

14 BUT UNFORTUNATELY I THINK WE'D PROBABLY BE BACK IN COURT AND

15 IT WOULD BE THE COURT'S PROBLEM AGAIN BECAUSE WE'D BE

16 FIGHTING OVER THE DETAILS OF IT.  BUT WHAT THEY'VE PROPOSED

17 IS 75 ONE-TERABYTE HARD DRIVES AND COPYING THE FILES ONTO

18 THOSE HARD DRIVES.  AND MY CLIENT HAS SAID THAT'S FEASIBLE.

19 I HAVE TO -- WE'RE TALKING ABOUT A VERY LARGE QUANTITY OF

20 DATA WHICH IS WHY THE COPIES WEREN'T MADE IN THE FIRST PLACE

21 WHILE WE PROVIDED ACCESS, BECAUSE IT WAS PROHIBITIVELY

22 EXPENSIVE TO COPY --

23         THE COURT:  WELL, I THINK MR. LEDAHL MADE A VERY

24 GOOD POINT EARLIER WHEN HE SAID, YOU KNOW, THIS WAS

25 BASICALLY THE METHOD OF MAKING THESE MATERIALS AVAILABLE

11

1  THAT YOU CHOSE, THAT YOU ARGUED FOR, THAT YOU PREFERRED, AND

2  NOW YOU ARE SORT OF PULLING THE RUG OUT FROM UNDER ALL OF

3  US, AREN'T YOU?

4          MS. GOLINVEAUX:  YOUR HONOR, IT WAS

5  PROHIBITIVELY -- WELL, TO TALK ABOUT THE VOLUME OF DATA AT

6  ISSUE HERE, WE ARE TALKING ABOUT 725,000 GIGABYTES FOR THE

7  CANCELLED VIDEOS THAT VEOH HAS BEEN MAINTAINING FOR ALMOST

8  TWO YEARS NOW ONLY FOR PURPOSES OF THIS LITIGATION.  TO PUT

9  IT IN CONTEXT, THAT -- A HIGH-END PERSONAL COMPUTER HOLDS

10  ABOUT 30 TO 50 GIGABYTES.  SO WE ARE TALKING ABOUT THE

11  EQUIVALENT OF COPYING ALL DATA FROM 15,000 PERSONAL

12  COMPUTERS.  THIS IS NOT A SMALL TASK TO EFFECTIVELY TRY

13  TO --

14          THE COURT:  WELL, I'M NOT SUGGESTING IT IS.  BUT,

15  YOU KNOW, WE COULD HAVE COPIED IT WAY BACK WHEN AND THAT WAS

16  WHAT UMG WANTED.  YOU SAID NO, LET'S MAKE IT AVAILABLE THIS

17  OTHER WAY.  NOW YOU'RE SAYING NO, WE DON'T EVEN WANT TO MAKE

18  IT AVAILABLE THAT WAY ANYMORE.

19          MS. GOLINVEAUX:  WELL, YOUR HONOR, WE'VE PROVIDED

20  THEM ACCESS, THE SAME ACCESS TO THE FILES THAT VEOH HAD, AND

21  UMG HAS BEEN ABLE TO MAKE COPIES OF ANY FILES THEY'VE WANTED

22  TO FOR CLOSE TO A YEAR NOW AND THEY'VE TOLD US THAT THEY IN

23  FACT HAVE MADE COPIES OF FILES THAT THEY WERE INTERESTED IN.

24  WE PUT THAT INTO THE RECORD AS WELL.  SO THEY'VE BEEN FREE

25  TO MAKE AS MANY COPIES AS THEY'VE WANTED SINCE LAST

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626) 792-6777 Transcription (626) 792-7250

1   SEPTEMBER.  THEY'VE HAD ALL OF THE AUDIBLE MAGIC DATA THAT

2   THEY SAID WOULD MAKE IT EASY FOR THEM TO IDENTIFY

3   INFRINGEMENTS FOR MORE THAN THREE MONTHS.  WHAT WE ARE

4   TALKING ABOUT -- OF THE 725,000 GIGABYTES OF DATA THAT VEOH

5   IS MAINTAINING, THEY'VE IDENTIFIED A -- THE FILES THAT

6   THEY'VE IDENTIFIED AMOUNT TO LESS THAN ONE HALF OF ONE

7   PERCENT OF THAT DATA.  SO WE ARE TALKING ABOUT A VERY LARGE

8   VOLUME OF DATA AND A VERY SMALL FOCUSED SET OF POTENTIALLY

9   RELEVANT DATA AND VEOH IS WILLING TO RETAIN THOSE FILES.  I

10  THINK THEY'VE IDENTIFIED NOW SOMETHING AROUND 7700 VIDEO

11  FILES THAT THEY CLAIM MAY BE INFRINGING.  VEOH WOULD NOT

12  DELETE THOSE.  IT WOULD CONTINUE TO RETAIN THEM, ALTHOUGH WE

13  UNDERSTAND THAT PLAINTIFFS HAVE ALREADY MADE THEMSELVES

14  COPIES OF THOSE FILES AND COULD HAVE MADE THEMSELVES COPIES

15  OF ANY OTHER FILES THEY WANTED.

16          THE COURT:  I THINK THERE WAS AN ISSUE RAISED

17  ABOUT AUTHENTICATION, FOUNDATION FOR DOCUMENTS THAT MIGHT

18  NEED TO BE USED AT TRIAL AND THE NEED TO PROTECT THE

19  INTEGRITY OF THE DATA FOR THAT REASON.  WHAT ABOUT THAT

20  ARGUMENT?

21          MS. GOLINVEAUX:  WELL, YOUR HONOR, THE DEADLINE

22  FOR THEM TO IDENTIFY INFRINGEMENTS IN THIS CASE HAS COME AND

23  GONE, AND VEOH IS WILLING TO RETAIN THE 7700-ODD FILES AND

24  THEY WILL CONTINUE TO STORE THOSE THROUGH THIS CASE SO THAT

25  THAT'S NOT AN ISSUE.

13

1          IF I COULD ADDRESS ONE OTHER ISSUE.  MR. LEDAHL

2    SAID THAT WE HAVEN'T POINTED TO ANY AUTHORITY WHERE A JUDGE

3    HAS GRANTED A PROTECTIVE ORDER IN THESE CIRCUMSTANCES.  IN

4    FACT, WE DID CITE AN ORDER THAT JUDGE HILLMAN ENTERED IN THE

5    MICROSOFT/PERFECT 10 LITIGATION.  AND MICROSOFT SOUGHT A

6    PROTECTIVE ORDER ALLOWING IT TO DELETE CERTAIN TYPES OF

7    DATA.  IN THAT CASE IT WASN'T A BURDEN ISSUE FOR MICROSOFT.

8    IT WAS BECAUSE ITS PRIVACY POLICY REQUIRED IT TO DELETE THIS

9    TYPES OF DATA AFTER A CERTAIN PERIOD OF TIME.  AND JUDGE

10   HILLMAN SAID ALTHOUGH IT WAS AN UNUSUAL WAY TO FOCUS A

11   PROTECTIVE ORDER, HE THOUGHT IT WAS LEGITIMATE AND HE

12   GRANTED THAT PROTECTIVE ORDER.  AND HE SAID OTHERWISE IT

13   WOULD REALLY BE EQUIVALENT TO ALLOWING PERFECT 10 TO LEAVE

14   MICROSOFT TWISTING IN THE WIND MAINTAINING THIS DATA AT

15   PERFECT 10'S --

16          THE COURT:  ALL RIGHT.  SO WHAT SORT OF MATERIAL

17   DID HE SAY COULD BE DISCARDED?

18          MS. GOLINVEAUX:  IN THAT CASE IT WAS IP ADDRESSES

19   AND WHAT ARE REFERRED TO AS CROSS-SESSION IDENTIFIERS.  SO

20   IT WAS INFORMATION THAT MIGHT POSSIBLY HAVE IDENTIFIED USERS

21   OF MICROSOFT, SO MICROSOFT WAS CONCERNED ABOUT ITS PRIVACY

22   POLICY.

23          THE COURT:  YEAH.

24          MS. GOLINVEAUX:  BUT JUDGE HILLMAN ALSO CITED TO

25   ANOTHER CASE, THE GULFSTREAM WORLDWIDE CASE FROM THE

                                                        14

DISTRICT OF NEW MEXICO, AND THAT CASE IS VERY SIMILAR TO
THIS CASE.  THERE THE PARTY WAS SEEKING TO DELETE BACKUP
TAPES BASICALLY AND THEY EXPLAINED TO THE COURT THAT TO
MAINTAIN THE BACKUP TAPES WOULD COST ABOUT $60,000, SO MUCH
LESS THAN IS AT ISSUE TO RETAIN THE DATA HERE.

THE COURT:  WELL, HERE IT'S, WHAT, $30,000 A MONTH
YOU'VE ESTIMATED?

MS. GOLINVEAUX:  THIRTY THOUSAND A MONTH.
SOMETHING LIKE 125 TO 150 TO COPY IT ONTO HARD DRIVES FOR
PLAINTIFFS IF THAT'S WHAT THEY CHOSE TO DO.  SO IN THE
GULFSTREAM CASE, WE'RE LOOKING AT A SMALLER AMOUNT OF MONEY.
THE JUDGE SAID CONSIDERING THAT THESE -- THESE BACKUP TAPES
MAY POSSIBLY HAVE RELEVANT INFORMATION, BUT WEIGHING THAT
AGAINST THE BURDEN OF REQUIRING THIS COMPANY TO PAY
SUBSTANTIALLY SUMS TO RETAIN -- AND THEY WANTED TO RECYCLE
THE BACKUP TAPES TO CONTINUE TO USE THEM AND THE JUDGE
INDICATED THAT HE WOULD GRANT THE PROTECTIVE ORDER AND ALLOW
THEM TO DO THAT BECAUSE OF THE BURDEN OF RETAINING THEM AND
THE SMALL POSSIBILITY THAT THEY MIGHT POSSIBLY CONTAIN
RELEVANT.  SO THERE IS AUTHORITY DIRECTLY ON THIS POINT.

THE COURT:  ALL RIGHT.  WHAT ABOUT THE ISSUE
THAT'S BEEN RAISED OF WHETHER VEOH SIMPLY HAS AN OBLIGATION
TO KEEP THIS MATERIAL BECAUSE IT MAY BE RELEVANT TO FUTURE
CLAIMS?

MS. GOLINVEAUX:  WELL, YOUR HONOR, I THINK THAT'S
15

WHY WE'RE SEEKING THIS PROTECTIVE ORDER RATHER THAN
CONTINUING WITH ITS -- WHAT WOULD BE ITS NORMAL CUSTOM OF
BUSINESS AND RECYCLING THIS DATA BECAUSE IT HAS NO BUSINESS
USE.  WE'VE PROVIDED PLAINTIFFS WITH QUITE A LONG AMOUNT OF
TIME TO MAKE COPIES OF ANY THAT THEY FIND ARE RELEVANT, BUT
IT'S SIMPLY NOT FAIR TO LEAVE VEOH TWISTING IN THE WIND
INDEFINITELY.  THEY'RE NOT ASKING FOR TWO MORE WEEKS OR
ANOTHER MONTH OR SOMETHING LIKE THAT.  THEY'RE SAYING THAT
VEOH SHOULD RETAIN THIS ENORMOUS AMOUNT OF DATA AT GREAT
EXPENSE INDEFINITELY AND THAT'S WHY WE'RE SEEKING A
PROTECTIVE ORDER.

THE COURT:  WELL, DIDN'T THEY REALLY SAY UNTIL
ENTRY OF JUDGMENT?

MS. GOLINVEAUX:  AT ONE POINT THEY HAVE, BUT I
THINK THAT THEY BACKED OFF OF THAT SINCE, YOUR HONOR,
BECAUSE THEY ARE SAYING THEY MAY NEED IT FOR FUTURE POSSIBLE
CASES.

THE COURT:  WELL, I MEAN, AT LEAST THAT'S A
STARTING POINT.  YOU KNOW, THE TRIAL DATE IS AUGUST 18?

MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO WE ARE LOOKING AT MAYBE
THREE TO FOUR MONTHS?

MS. GOLINVEAUX:  SO SOMEWHERE AGAIN BETWEEN 100-
AND $150,000.

THE COURT:  WOULD IT BE APPROPRIATE TO RETAIN THE

16

MATERIAL THAT LONG AND REVISIT THE ISSUE THEN IF NECESSARY?

MS. GOLINVEAUX: YOUR HONOR, GIVEN THAT THE DEADLINE FOR PLAINTIFFS TO IDENTIFY INFRINGEMENTS IN THIS CASE HAS COME AND GONE, THAT THEY'VE HAD MONTHS AND MONTHS TO DO SO, IF THEY FOR SOME REASON FEEL LIKE IT'S NECESSARY FOR THIS DATA TO BE RETAINED -- AND AGAIN, WE WILL RETAIN THE FILES THAT THEY'VE IDENTIFIED, THAT'S NOT AN ISSUE. THOSE WILL BE RETAINED BY VEOH. BUT IF FOR SOME REASON THEY WANT VEOH TO RETAIN THE OTHER 99 AND A HALF PERCENT OF THESE CANCELLED VIDEO FILES --

THE COURT: WELL, HERE'S THE PROBLEM I HAVE. YOU KNOW, WE'VE HEARD FROM THEM THAT THEY MAY CONTEMPLATE FILING A SEPARATE LAWSUIT. AND IF THEY SENT YOU A LETTER TODAY AND SAID, YOU KNOW, WE REALLY THINK WE ARE GOING TO BE FILING A SEPARATE LAWSUIT, YOU HAVE AN OBLIGATION TO KEEP THESE CANCELLED VIDEO FILES BECAUSE THEY MAY BE RELEVANT TO THAT SEPARATE LAWSUIT, WOULDN'T YOU HAVE TO KEEP THEM?

MS. GOLINVEAUX: I THINK, YOUR HONOR, WHAT WE WOULD SAY IS YOU'VE IDENTIFIED ALL FILES THAT YOU CONSIDER RELEVANT. IF YOU FOR SOME REASON WANT THE REST OF THESE CANCELLED VIDEO FILES, WE MIGHT AGREE TO MAKE COPIES BUT IT WOULD HAVE TO BE AT YOUR COST. VEOH CANNOT PAY --

THE COURT: BUT, I MEAN, HOW COULD YOU JUST DESTROY THE MATERIAL FACED WITH A LETTER LIKE THAT? I DON'T THINK YOU COULD, COULD YOU?

17

1          MS. GOLINVEAUX:  WELL, AND I THINK THAT WOULD BE

2    THE RESPONSE AND THAT'S WHY WE'RE HERE IN THE CONTEXT OF

3    THIS LITIGATION SEEKING A PROTECTIVE ORDER.

4          THE COURT:  ALL RIGHT.  WHAT ABOUT THE POSSIBILITY

5    OF OTHER COPYRIGHT HOLDERS FILING CLAIMS?  HAVE THERE BEEN

6    OTHER CLAIMS FILED FOR COPYRIGHT INFRINGEMENT AGAINST VEOH?

7          MS. GOLINVEAUX:  NOT THAT I'M AWARE OF, YOUR

8    HONOR.

9          THE COURT:  ARE THERE ANY THAT ARE CONTEMPLATED?

10          MS. GOLINVEAUX:  NOT THAT I'M AWARE OF, YOUR

11    HONOR.

12          THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WANTED

13    TO TELL ME ABOUT THIS?

14          MS. GOLINVEAUX:  NO.  I JUST WANTED TO STRESS THAT

15    THIS COMPANY HAS LAID OFF MORE THAN HALF OF ITS EMPLOYEES.

16    IT REALLY CANNOT AFFORD THE $30,000 A MONTH TO RETAIN THESE.

17    IT WOULD MEAN LITERALLY LAYING OFF ADDITIONAL EMPLOYEES TO

18    BE ABLE TO PAY FOR THAT IF THE COURT REQUIRED IT.  IF

19    PLAINTIFFS TRULY BELIEVE THAT THEY NEED THIS DATA WHICH IS

20    HIGHLY UNLIKELY TO HAVE RELEVANT INFORMATION GIVEN THAT

21    THEY'VE IDENTIFIED EVERYTHING THEY CONSIDER RELEVANT, THEY

22    SHOULD BE REQUIRED TO PAY THE COST OF EITHER MAINTAINING IT

23    OR GETTING COPIES OF THE DATA.

24          THANK YOU, YOUR HONOR.

25          MR. LEDAHL:  YOUR HONOR, IF I MAY, TWO VERY BRIEF

POINTS.  FIRST, I THINK THE COURT'S HYPOTHETICAL QUESTION IS
ABSOLUTELY CORRECT IN THE SENSE THAT FACED WITH A THREAT OF
A CLAIM, THE OBLIGATION TYPICALLY IS TO PRESERVE EVIDENCE
RELEVANT TO THAT CLAIM.  THAT'S WHAT WE ARE TALKING ABOUT
HERE.  AND PRESERVING SUCH EVIDENCE IS A COST OF DOING
BUSINESS FOR ANY COMPANY WHEN YOU ARE FACED WITH THOSE
ISSUES.

THE SECOND POINT I WOULD RAISE, YOUR HONOR, IS I
THINK IT'S OBVIOUS THAT, AS WE'VE STATED, IF UMG PREVAILS ON
THE SUBSTANTIVE MERITS OF THIS CASE AND VEOH IS HELD LIABLE
FOR COPYRIGHT INFRINGEMENT, IT'S QUITE LIKELY THAT NOT ONLY
UMG BUT OTHER COPYRIGHT CLAIMANTS WILL BE IN THE WINGS.
OBVIOUSLY WE CAN'T SPEAK ON THEIR BEHALF, BUT CERTAINLY, AS
WE'VE SAID, UMG ALREADY BELIEVES THERE'S ADDITIONAL
INFRINGEMENT THAT IS LIKELY TO BE THE SUBJECT OF A FUTURE
ACTION.

THE COURT:  ALL RIGHT.  COULD YOU ELABORATE ON ONE
POINT FOR ME, PLEASE, AND THAT IS, WHAT NEED THERE MIGHT BE
FOR THE CANCELLED VIDEO FILES IN TERMS OF FOUNDATION OR
AUTHENTICATION THAT YOU HAVE NOT ALREADY BEEN ABLE TO
SATISFY.

MR. LEDAHL:  WELL, YOUR HONOR, I THINK, FIRST OF
ALL, IF I UNDERSTAND THE REPRESENTATION WHICH IS PERHAPS
MORE CLEAR TODAY THAN IT WAS IN THE PAPERS.  THE
REPRESENTATION IS, AS I UNDERSTAND IT, THAT EVERY VIDEO
19

1    THAT'S THE SUBJECT OF AN ACTUAL CLAIM IN THE CASE WILL BE

2    PRESERVED AS SUCH.  THAT MAY ADDRESS MANY OF THOSE ISSUES.

3    I THINK AS TO THE OTHERS THERE ARE POTENTIAL FOUNDATION

4    ISSUES TO THE EXTENT WE HAVE DISPUTES ABOUT WHETHER SOME

5    OTHER MATERIAL WAS PRESENT ON THE SITE.  AS AN EXAMPLE, SOME

6    OF THE ISSUES THAT ARE RELEVANT TO THIS CASE TURN ON, UNDER

7    THE DMCA, THINGS LIKE THE EXTENT TO WHICH VEOH PROMPTLY

8    RESPONDS TO NOTICES OF INFRINGEMENT, NOT JUST FROM UMG, BUT

9    FROM ANYONE; THE EXTENT TO WHICH VEOH PROMPTLY REMOVES FILES

10   THAT ARE IDENTIFIED BY OTHERS, NOT JUST UMG; THE EXTENT TO

11   WHICH VEOH HAS NOTICE OF RED FLAGS OF INFRINGEMENT, AND WE

12   SUBMIT THAT MEANS NOT JUST NOTICES OF INFRINGING OUR

13   COPYRIGHTS, BUT OF OTHERS.

14        AS A CONSEQUENCE OF THAT, EVEN VIDEOS THAT ARE NOT

15   THE SUBJECT OF OUR INFRINGEMENT CLAIM ARE RELEVANT EVIDENCE

16   THAT PERTAIN TO WHETHER OR NOT VEOH CAN ESTABLISH ITS BASIS

17   UNDER THOSE THEORIES OF LIABILITY AND AS SUCH THEY REMAIN

18   IMPORTANT SUBJECTS FOR AUTHENTICATION, POTENTIAL EVIDENCE IF

19   THERE IS A DISPUTE ABOUT WAS THIS REALLY THAT VIDEO.  THERE

20   ARE LOTS OF POTENTIAL ISSUES THAT CAN ARISE IN THAT CONTEXT

21   AT A TRIAL THAT WOULD ALSO RAISE AUTHENTICATION CONCERNS.

22        THE COURT:  ALL RIGHT.  LET'S TURN TO THE OTHER

23   MOTION.  WOULD YOU LIKE TO BEGIN?

24        MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.  SO, YOUR

25   HONOR, THIS MOTION ADDRESSES THE CHAIN OF TITLE PRODUCTION

                                                           20

1  BY UMG.  PURSUANT TO YOUR MARCH 5 ORDER, VEOH PROMPTLY

2  IDENTIFIED 20 PERCENT OF THE WORKS AT ISSUE IN THE CASE AT

3  THAT POINT WHICH CAME TO 241 WORKS.  UMG PRODUCED ABOUT

4  100,000 PAGES IN RESPONSE AND THEN TWO WEEKS AFTER THE

5  PRODUCTION, IN LATE APRIL, UMG SENT VEOH A LETTER

6  WITHDRAWING ITS CLAIMS WITH RESPECT TO 40 OF THE WORKS, 26

7  OF WHICH WERE IN THAT 20 PERCENT THAT VEOH HAD ASKED FOR.

8  THEN ON MAY 11TH, UMG SUPPLEMENTED ITS LIST OF INFRINGEMENTS

9  IN THIS CASE AND IT WITHDREW AN ADDITIONAL EIGHT WORKS FROM

10 THE 20 PERCENT.  SO NOW UMG HAS WITHDRAWN 32 OF THE WORKS

11 FROM THE INITIAL 20 PERCENT THAT VEOH HAD REQUESTED.

12          THE COURT:  YOU SAID 32?

13          MS. GOLINVEAUX:  YES, YOUR HONOR, 32.

14          THE COURT:  SO 26 THE FIRST TIME AND?

15          MS. GOLINVEAUX:  AND AN ADDITIONAL EIGHT.

16          THE COURT:  ALL RIGHT.  THIRTY-FOUR THEN.

17          MS. GOLINVEAUX:  SORRY, 34.

18          THE COURT:  OKAY.

19          MS. GOLINVEAUX:  VEOH ASKED FOR 32 REPLACEMENT --

20 FOR UMG TO PRODUCE CHAIN OF TITLE DOCUMENTATION FOR 32

21 REPLACEMENT WORKS AND UMG REFUSED.  WHEN UMG SUPPLEMENTED

22 ITS LIST OF INFRINGEMENTS ON MAY 11, IT MOVED -- THE TOTAL

23 LIST OF THEIR CLAIMED INFRINGING VIDEOS IS NOW AROUND 7700

24 AND VEOH ASKED FOR 20 PERCENT OF THOSE WORKS-IN-SUIT BECAUSE

25 THAT'S WHAT YOUR ORDER HAD CONTEMPLATED.  AND UMG REFUSED

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626) 792-6777 Transcription (626) 792-7250

1  AND SAID THAT IN EFFECT THAT YOUR ORDER WAS FOR A SPECIFIC

2  POINT IN TIME AND THEY HAD NO OBLIGATION TO PRODUCE

3  20 PERCENT OF THE WORKS-IN-SUIT.

4          WHAT WE WOULD ARGUE, YOUR HONOR, IS THAT GIVEN THE

5  DEFECTS THAT UMG HAS ITSELF IDENTIFIED IN THE 20 PERCENT

6  THAT LED IT TO WITHDRAW 13 PERCENT OF THOSE, VEOH SHOULD BE

7  ENTITLED TO RECEIVE CHAIN OF TITLE DOCUMENTATION FOR ALL OF

8  THE WORKS, BECAUSE WE ARE TALKING ABOUT JUST THE ONES THAT

9  THEY'VE WITHDRAWN ALREADY REPRESENT A REDUCTION IN POTENTIAL

10 STATUTORY DAMAGES OF NEARLY $5 MILLION.  VEOH HAS NOT HAD AN

11 OPPORTUNITY TO YET COMPLETE ITS REVIEW OF THE CHAIN OF TITLE

12 DOCUMENTS UMG HAS PRODUCED, BUT WE HAVE GONE THROUGH AND

13 ORGANIZED THE DOCUMENTS AND REVIEWED A GOOD NUMBER OF THEM.

14 THE DOCUMENTS THEY ORIGINALLY PRODUCED WHICH AMOUNTED TO

15 ABOUT 26 BOXES, ONCE WE WENT THROUGH AND SPENT QUITE A BIT

16 OF TIME ORGANIZING THOSE AND SIMPLY REMOVING DUPLICATE

17 DOCUMENTS AND REMOVING THOSE THAT UMG WITHDREW FROM THE CASE

18 AFTER PRODUCING, REDUCED DOWN TO ABOUT SEVEN BOXES OF

19 DOCUMENTS WHICH VEOH HAS BEEN REVIEWING.  AND WE PROVIDED A

20 SUPPLEMENTAL BRIEF TO THE COURT ON MONDAY DESCRIBING SOME

21 MORE OF THE DEFICIENCIES THAT WE'VE ALREADY FOUND IN OUR

22 REVIEW OF THOSE DOCUMENTS.  AND WE THINK THAT COMBINED WITH

23 THE DEFICIENCIES UMG ITSELF OBVIOUSLY HAS IDENTIFIED

24 JUSTIFIES PRODUCTION OF THE REMAINDER OF THE CHAIN OF TITLE

25 DOCUMENTS.

22

1    THE COURT:  WELL, SUPPOSE I WERE TO RULE THAT WAY.

2  YOU HAVEN'T BEEN ABLE TO COMPLETE YOUR REVIEW OF 20 PERCENT.

3  HOW COULD YOU POSSIBLY REVIEW THE CHAIN OF TITLE DOCUMENTS

4  FOR ALL OF THE WORKS?

5    MS. GOLINVEAUX:  WELL, YOUR HONOR, WE HAVE -- WE

6  ARE CLOSE TO COMPLETING THE REVIEW NOW THAT THEY'RE ALL

7  ORGANIZED AND ALL THE IRRELEVANT DOCUMENTS AND DUPLICATE

8  DOCUMENTS THAT UMG HAS PRODUCED HAVE BEEN CULLED OUT.  IT

9  WILL NOT TAKE MUCH LONGER TO PRODUCE IT.  AND VEOH HAS A

10  GREAT INCENTIVE TO REVIEW THOSE DOCUMENTS PRIOR TO TRIAL

11  GIVEN THAT EACH WORK THAT COMES OUT OF --

12    THE COURT:  SO YOU ARE TELLING ME THAT IF I

13  ORDERED UMG TO PRODUCE THE CHAIN OF TITLE DOCUMENTS FOR 7700

14  WORKS THAT YOU WOULD REVIEW ALL OF THOSE BEFORE TRIAL?

15    MS. GOLINVEAUX:  YOUR HONOR, IT ACTUALLY WOULD NOT

16  BE 7700 WORKS.  THEY'VE IDENTIFIED ABOUT 7700 VIDEOS.

17    THE COURT:  OKAY.

18    MS. GOLINVEAUX:  BASED ON OUR CALCULATIONS, THAT

19  TRANSLATES TO ABOUT APPROXIMATELY 1500 WORKS-IN-SUIT AT THIS

20  POINT.

21    THE COURT:  ALL RIGHT.  SO THAT'S, WHAT, SIX TIMES

22  AS MANY AS YOU'VE REVIEWED ALREADY, SEVEN TIMES AS MANY?

23    MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR, BUT A

24  GOOD AMOUNT OF OUR TIME SPENT ON THIS FIRST BATCH WAS

25  WEEDING OUT THE ONES THAT AFTER THEY PRODUCED THE DOCUMENTS

23

1  THEY WITHDREW.  SO WE HAD TO WEED OUT THOSE 30-SOME-ODD

2  DOCUMENTS, ORGANIZE THE DOCUMENTS.  THE DOCUMENTS -- UMG

3  SAYS THEY WERE PRODUCED IN AN ORGANIZED MANNER AND THEY'D

4  PICK OUT A COUPLE OF EXAMPLES OF ONES, BUT THEY WEREN'T.

5  AND --

6        THE COURT:  ALL RIGHT.  WELL, I DON'T WANT TO

7  NECESSARILY GET INTO THE QUALITY OF THEIR PRODUCTION, BUT DO

8  YOU HAVE A REASON TO THINK THAT THE QUALITY OF THEIR NEXT

9  PRODUCTION IS REALLY GOING TO BE ANY DIFFERENT THAN WHAT

10  THEY PRODUCED BEFORE?  I MEAN, YOU KNOW, ONE OF MY CONCERNS

11  HERE IS, AND I HAVE A NUMBER OF CONCERNS ABOUT THIS MOTION,

12  BUT ONE IS ARE YOU ACTUALLY GOING TO BE ABLE TO REVIEW THIS

13  MATERIAL?  BECAUSE IF YOU'RE NOT ACTUALLY GOING TO BE ABLE

14  TO DO THAT BEFORE TRIAL, THEN I HAVE TO QUESTION THE VALUE

15  OF IT.

16        MS. GOLINVEAUX:  AND, YOUR HONOR, SO LONG AS WE

17  GOT IT IN TIME TO REVIEW IT BEFORE TRIAL, SO WE DIDN'T GET

18  IT DUMPED ON US JUST BEFORE TRIAL, THE ANSWER IS ABSOLUTELY

19  YES, BECAUSE THE DOCUMENTS ARE JUST TOO IMPORTANT TO VEOH IN

20  TERMS OF THE POTENTIAL REDUCTION OF DAMAGES.

21        THE COURT:  ALL RIGHT.  WELL, WE'D HAVE TO ALLOW

22  THEM -- THIS IS A LOT MORE MATERIAL THAN THEY HAVE PRODUCED

23  PREVIOUSLY.  WE WOULD HAVE TO ALLOW THEM SOME TIME TO DO

24  THAT.  WHAT DO YOU THINK WOULD BE A REASONABLE TIME FRAME?

25        MS. GOLINVEAUX:  YOUR HONOR, I THINK UMG WOULD BE

24

1 IN A BETTER POSITION TO TELL US WHAT THEY THINK IS

2 REASONABLE.  I THINK WITHIN TWO OR THREE WEEKS WE WOULD

3 REALLY NEED TO RECEIVE THESE DOCUMENTS GIVEN THAT WE HAVE

4 TRIAL SCHEDULED IN AUGUST.

5          THE COURT:  ALL RIGHT.  WELL, LET'S SAY YOU GOT

6 THE MATERIAL BY THE END OF JUNE.  YOU THEN HAVE SIX WEEKS TO

7 REVIEW SIX OR SEVEN TIMES AS MUCH AS YOU'VE REVIEWED

8 ALREADY.

9          MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR.

10         THE COURT:  AND HOW MUCH TIME HAVE YOU SPENT ON

11 THE REVIEW SO FAR?

12         MS. GOLINVEAUX:  IT'S, I BELIEVE, FIVE OR SIX

13 WEEKS.

14         THE COURT:  I MEAN, I GUESS YOU ARE TELLING ME YOU

15 WOULD STAFF UP AND YOU WOULD GET IT DONE.  IT JUST SEEMS

16 LIKE A VERY CHALLENGING TASK.

17         MS. GOLINVEAUX:  YOUR HONOR, ANOTHER THING WE ARE

18 SEEING IS PATTERNS IN TERMS OF THE DEFICIENCIES.  SO IT

19 WON'T TAKE THE SAME AMOUNT OF TIME TO REVIEW, SAY, DOCUMENTS

20 FOR 1500 WORKS AS IT DID FOR THE FIRST CLOSE TO 250 WORKS.

21         THE COURT:  ALL RIGHT.  OTHER THAN THE ONES THAT

22 THEY HAVE WITHDRAWN, TELL ME ABOUT THE DEFICIENCIES THAT

23 YOU'VE FOUND THAT WILL ALLOW YOU TO, IN YOUR VIEW, DEFEAT

24 THEIR ABILITY TO RECOVER ON PARTICULAR ALLEGEDLY INFRINGED

25 WORKS.

1          MS. GOLINVEAUX:  YES, YOUR HONOR, AND THE BRIEF WE

2    FILED MONDAY EVENING WAS INTENDED TO DO THAT IN PART.  IT

3    IDENTIFIED -- IT LISTED KIND OF BY CATEGORY THE TYPES OF

4    DEFICIENCIES WE'RE SEEING.  BUT WE'RE SEEING THAT, FIRST OF

5    ALL, ON A LARGE NUMBER OF THESE WORKS THERE IS NO PLAINTIFF

6    IN THIS ACTION THAT'S LISTED ON THE ACTUAL COPYRIGHT

7    REGISTRATION.  AND WHAT WE ARE SEEING IS THAT FOR THE WORKS

8    THAT WE'VE IDENTIFIED, THERE'S BEEN A FAILURE TO PRODUCE THE

9    NECESSARY ASSIGNMENTS.  IN OTHER DOCUMENTS, LIKE RECORDING

10   AND SONGWRITER AGREEMENTS, TO ACTUALLY TRANSFER THE WORKS TO

11   ANY PLAINTIFF IN THIS CASE.  SO WE HAVE INCOMPLETE CHAIN OF

12   TITLE, WHICH UMG IS GOING TO HAVE TO PROVE UP AT TRIAL

13   ANYWAY IF THEY WANT TO RECOVER WHAT THEY -- THEY ARE ASKING

14   FOR $150,000 PER WORK IN STATUTORY DAMAGES.  SO THAT'S

15   ONE --

16          THE COURT:  IF UMG ISN'T LISTED ON THE

17   CERTIFICATE.

18          MS. GOLINVEAUX:  WELL, EVEN IF THEY ARE --

19          THE COURT:  YOU MEAN THEY COULD RELY ON THE

20   PRESUMPTION, I GUESS.

21          MS. GOLINVEAUX:  WHICH WOULD BE A REBUTTABLE

22   (INAUDIBLE), YOUR HONOR.

23          THE COURT:  RIGHT.  AND THEN YOUR ARGUMENT WOULD

24   BE YOU'RE ENTITLED TO THE MATERIAL THAT MIGHT ENABLE YOU TO

25   TRY TO REBUT IT.

26

1          MS. GOLINVEAUX:  THAT'S RIGHT, YOUR HONOR.  FOR A

2    NUMBER OF THE WORKS THEY HAVEN'T PRODUCED ANY CHAIN OF TITLE

3    DOCUMENTS AT ALL, NOT JUST DOCUMENTS INSUFFICIENT TO

4    COMPLETE THE TRANSFER OF TITLE.  SO FOR THE FIRST CATEGORY,

5    WE ARE SEEING SOME ASSIGNMENTS AND SOME AGREEMENTS BUT NOT

6    SUFFICIENT TO TRANSFER TO ANY PLAINTIFF IN THE ACTION.  FOR

7    OTHER WORKS THERE'S NO CHAIN OF TITLE DOCUMENTS SHOWING

8    TRANSFER AT ALL TO ANY OF THE PLAINTIFFS IN THE ACTION.

9          OTHERS OF THE DOCUMENTS AT BEST WOULD ONLY

10   TRANSFER A NONEXCLUSIVE LICENSE TO UMG THAT WOULD NOT BE

11   SUFFICIENT TO GIVE THEM STANDING TO PURSUE THE WORK -- TO

12   PURSUE DAMAGES FOR THE WORK IN THIS ACTION.  THOSE ARE SOME

13   OF THE KEY CATEGORIES OF DOCUMENTS WE SUMMARIZED.

14          THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WANT TO

15   RAISE AT THIS POINT?

16          MS. GOLINVEAUX:  THE OTHER THING, YOUR HONOR, IS

17   THAT UMG IS PRIMARILY ARGUING BURDEN HERE AND I THINK IT'S

18   NOTABLE IN THE PAPERS THAT THEY'VE RELIED FOR THEIR BURDEN

19   ARGUMENT ENTIRELY ON A DECLARATION THAT'S ALMOST A YEAR OLD

20   NOW FROM MR. OSTROFF AND HE'S TALKING ABOUT THE FACT THAT

21   UMG OWNS 100,000 PLUS WORKS.  WELL, WE ARE NOT TALKING

22   ABOUT GETTING THIS KIND OF DOCUMENTATION FOR 100,000-PLUS

23   WORKS.  WE ARE TALKING ABOUT SOMETHING LIKE 1500 WORKS.  SO

24   IT'S VERY DIFFERENT.  WE DON'T SEE ANYTHING IN THE RECORD

25   ABOUT THE BURDEN, FOR EXAMPLE, IT TOOK UMG TO ACTUALLY PULL

27

1 TOGETHER THE 20 PERCENT THAT THEY ALREADY HAVE.

2       THE COURT:  WELL, I MEAN, IF IT'S TAKEN YOU FIVE

3 OR SIX WEEKS JUST TO READ THEM, I THINK WE CAN INFER

4 SOMETHING ABOUT THE BURDEN THAT MAY HAVE BEEN REQUIRED TO

5 PRODUCE THEM.

6       MS. GOLINVEAUX:  WELL, YOUR HONOR, THERE IS

7 SPECIAL CIRCUMSTANCES ON OUR SIDE AS WELL IN TERMS OF COST

8 LIMITATIONS THAT OUR CLIENT IS EXPERIENCING RIGHT NOW.  WE

9 IN FACT HAD TO FIND ATTORNEYS AT LOWER COSTS TO DO SOME OF

10 THE REVIEW AND OUTSIDE OUR FIRM AND IT TOOK SOME TIME TO

11 ORGANIZE THAT BECAUSE THE CLIENT SIMPLY COULDN'T PAY FULL

12 FEES TO HAVE SOME OF THIS STUFF ORGANIZED.  SO I THINK THAT

13 IT WOULD HAVE BEEN DONE MUCH MORE QUICKLY IF WE HAD THE

14 RESOURCES THAT THE PLAINTIFFS IN THIS CASE HAS.

15       THE COURT:  AND I GUESS YOU'RE SAYING NOW YOU HAVE

16 A SYSTEM IN PLACE SO YOUR REVIEW WILL GO MUCH MORE QUICKLY

17 IF YOU GET ADDITIONAL MATERIAL?

18       MS. GOLINVEAUX:  WELL, THAT'S IN PART CORRECT,

19 YOUR HONOR.  AND AGAIN, WE ARE SEEING PATTERNS IN TERMS OF

20 THE DEFICIENCIES, SO THE REVIEW IS FASTER FOR SUBSEQUENT

21 WORKS THAN IT WAS FOR THE FIRST BATCH.

22       THE COURT:  ALL RIGHT.

23       MR. LEDAHL:  YOUR HONOR, I THINK OUR CONCERN IS

24 NOT THAT DIFFERENT FROM THE COURT'S EXPRESSED CONCERN THAT

25 THIS IS MATERIAL THAT'S BEING SOUGHT FOR VERY LITTLE

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626) 792-6777 Transcription (626) 792-7250

PRACTICAL PURPOSE.  AS A GENERAL MATTER, AS THE COURT

UNDOUBTEDLY RECALLS, THIS WAS THE SUBJECT OF A LENGTHY

DISPUTE WHICH THE COURT ENTERED WHAT I WILL CHARACTERIZE AS

A COMPROMISE ORDER REQUIRING US TO PRODUCE CERTAIN MATERIALS

FOR A SUBSET OF THE WORKS AT ISSUE AND THEN CONTEMPLATING

THAT THE PARTIES WOULD MEET AND CONFER TO THE EXTENT VEOH

IDENTIFIED ANY DEFECTS AFTER A SET TIME PERIOD, AND THAT

WOULD PROVIDE WE PRESUMED A MECHANISM THAT IF THESE PRESUMED

DEFECTS WERE IN FACT MISUNDERSTANDINGS AS OPPOSED TO TRUE

DEFECTS, THAT COULD BE RESOLVED RATHER THAN MOVING FORWARD

TO SOME OTHER PRACTICE BEFORE THIS COURT.

        THAT'S NOT WHAT HAPPENED HERE.  AND IN FACT,

FRANKLY, VEOH HAS FROM THE BEGINNING AND INDEED IT SEEMS TO

US FROM THE DAY THE COURT ISSUED ITS MARCH 5TH ORDER SOUGHT

THE BASIS TO COME IN AND ASK FOR THE REST BEFORE ANYTHING

ELSE COULD HAPPEN.  AS WE PRODUCED THE MATERIALS CONSISTENT

WITH THE COURT'S ORDER ON APRIL 9TH, THEY'VE HAD THEM FOR

NOW ALMOST TWO MONTHS.  UNTIL THE BRIEF THAT WAS FILED ABOUT

24 HOURS AGO, VEOH NEVER IDENTIFIED A SINGLE DEFECT THAT

THEY CONTENDED THEY HAD FOUND TO US.  THE ONLY BASIS THEY

EVER CAME BACK TO US WITH WAS, WELL, IN CLEANING UP YOUR

LIST, REMOVING SOME TYPOGRAPHICAL ERRORS FOR ONE THING,

REMOVING SOME THINGS THAT HAD INADVERTENTLY BEEN LISTED,

THAT SOMEHOW PROVIDED THE BASIS AND THE EXCUSE NOW WE NEED

ALL THE OTHER DOCUMENTS.

1    THE COURT:  WELL, I MEAN, ONE THING THAT DID OCCUR

2  TO ME IS THAT GOING THROUGH THIS PROCESS OF PRODUCTION SEEMS

3  TO HAVE HAD A DISCIPLINING EFFECT AND A HARD LOOK WAS TAKEN

4  AND SOME MISTAKES WERE ELIMINATED.

5    MR. LEDAHL:  WELL, YOUR HONOR, AND I GUESS TO THE

6  EXTENT THAT THAT'S WHAT WE ARE TALKING ABOUT HERE, THAT HARD

7  LOOK WAS NOT LIMITED TO THESE 20 PERCENT.  AS MS. GOLINVEAUX

8  CONCEDES, THAT'S NOT THE ONLY PLACE WHERE SOME CORRECTIONS

9  WERE MADE.  WE DIDN'T JUST GO THROUGH A LITTLE PIECE OF THE

10  LIST AND LEAVE EVERYTHING ELSE ON THE REST.  INDEED, COUNSEL

11  IDENTIFIED AND POINTED OUT THE FACT THAT SOME ENTRIES WERE

12  REMOVED.  NOT ALL OF THEM WERE IN THE 20 PERCENT SAMPLE THAT

13  THEY CAME UP WITH.  WE IDENTIFIED PLACES ELSEWHERE WHERE

14  CERTAIN THINGS WERE CLEANED UP.

15    BUT WHAT WE ARE REALLY TALKING ABOUT HERE IS

16  PUNISHING THAT DILIGENCE BY SUGGESTING, WELL, BECAUSE YOU

17  WERE CAREFUL AND DID THIS AS A PRACTICAL MATTER, CLEAN-UP OF

18  THE LIST, SOMEHOW NOW YOU SHOULD BE IMPOSED -- HAVE THIS

19  MASSIVE ADDITIONAL BURDEN IMPOSED ON YOU.

20    THE COURT:  WELL, ARE YOU TELLING ME NOW THAT

21  THERE ARE NO ALLEGEDLY INFRINGED WORKS THAT YOU DON'T HAVE

22  THE RIGHTS TO SUE ON, THAT EVERY MISTAKE HAS BEEN

23  ELIMINATED, THAT GOING THROUGH THE PROCESS OF PRODUCING

24  WOULD NOT RESULT IN YOUR VERY CONSCIENTIOUSLY AND

25  APPROPRIATELY KNOCKING SOME OF THE ADDITIONAL WORKS OFF THE

                                                    30

LIST BECAUSE YOU FIND, YES, THERE IS A GAP HERE OR WE DON'T
HAVE THE RIGHT TO SUE ON THIS?

MR. LEDAHL:  BY DEFINITION, OF COURSE, I CAN'T
REPRESENT THAT MISTAKES HAVE ALL BEEN ELIMINATED BECAUSE
THEY WOULDN'T BE MISTAKES OTHERWISE.  THAT SAID, WE CONTINUE
TO ENGAGE IN A CAREFUL AND CONSCIENTIOUS ANALYSIS.  I ALSO,
THOUGH, WANT TO REALLY HIGHLIGHT THAT THE BREAKDOWN IN THE
PROCESS THAT WE'VE HAD HERE IS REALLY PROBLEMATIC AND THE
REASON WE ARE HERE IN MANY RESPECTS IS VEOH'S PURSUIT OF
THIS MATERIAL WITHOUT HAVING A BASIS FOR IT.

MS. GOLINVEAUX POINTS TO SOME ALLEGED DEFECTS THAT
WERE IDENTIFIED IN THE BRIEF THAT WAS FILED A LITTLE OVER 24
HOURS AGO.  OBVIOUSLY, WE HAVE OBJECTIONS TO THE SUBMISSION
OF THAT BRIEF GIVEN THAT IT WAS NOT AUTHORIZED BY THE COURT.
IT WAS INAPPROPRIATE FROM OUR PERSPECTIVE IN THAT RESPECT.
IT'S ALSO SUBSTANTIVELY COMPLETELY WRONG.  AND I WANT TO --
I'M HAPPY TO GO THROUGH EVERY SINGLE WORK THAT'S IDENTIFIED
IN THAT BRIEF BECAUSE WE OWN THE RIGHTS TO EVERY ONE OF
THEM.  EVERY ASSERTION THEY MAKE IS WRONG.  AND I'M HAPPY TO
GO THROUGH THEM.  AS AN EXAMPLE, MS. GOLINVEAUX --

THE COURT:  WELL, RATHER THAN HAVE YOU DO THAT
THIS MORNING, MAYBE I SHOULD GIVE YOU A FEW DAYS TO FILE A
RESPONSE.

MR. LEDAHL:  AND WE WOULD BE HAPPY TO, YOUR HONOR.
I THINK THE POINT I'M MAKING IS WE PERCEIVE THIS TO BE THE

1  REASON THE COURT CONTEMPLATED A MEET AND CONFER IN THE FIRST

2  PLACE.  NOW, VEOH HAS HAD THESE --

3       THE COURT:  WELL, I GUESS MY HOPE WAS THAT THERE

4  MIGHT NOT BE ANY PROBLEMS, THAT WE WOULD FIND, YOU KNOW, A

5  PERFECT CHAIN OF TITLE FOR ALL THE WORKS, AND THAT EVEN VEOH

6  WOULD CONCEDE THERE'S NO -- WE PICKED THIS 20 PERCENT,

7  THERE'S NO POINT IN CONTINUING ON WITH THIS.  THIS IS A

8  FUTILE EXERCISE.  THEY DON'T SEEM TO HAVE BEEN PERSUADED OF

9  THAT.  AND IN FACT, SOME INSTANCES OF MISTAKES TURNED OUT

10  WHICH IS NOT SURPRISING, I GUESS.

11       MR. LEDAHL:  AND, YOUR HONOR, I WANT TO HIGHLIGHT,

12  FOR EXAMPLE, SOME OF THE MISTAKES THAT WE ARE TALKING ABOUT.

13  IN PREPARING THIS LIST OF SEVERAL THOUSAND VIDEOS, SOMEONE

14  INADVERTENTLY MISTYPED THE REGISTRATION NUMBER FOR A SONG

15  THAT APPEARED SEVERAL TIMES ON THE LIST IN A COUPLE OF THE

16  ENTRIES SO THAT WE HAD TO CORRECT TO CONFORM THEM.  THIS

17  ISN'T SOMETHING THAT PREVENTED THEM FROM KNOWING THAT WE

18  OWNED THIS SONG.  IT WAS A TYPOGRAPHICAL ERROR.  WE ARE NOT

19  TALKING ABOUT SOME, YOU KNOW, OVERREACHING CLAIM WHERE WE

20  SAID, OH, WELL, WE OWN THIS SONG AND WE REALLY DON'T OR WE

21  THOUGHT WE OWNED IT AND WE REALLY DIDN'T.  THERE ARE SOME

22  THINGS THAT THROUGH HUMAN ERROR WERE INCLUDED THAT NEEDED TO

23  BE PULLED BACK OFF JUST INADVERTENTLY.

24       I THINK SOME OF THE REPRESENTATIONS THAT HAVE BEEN

25  MADE TODAY, THOUGH -- AS JUST ONE EXAMPLE, THERE'S A LIST OF

1    SONGS THAT MS. GOLINVEAUX SUGGESTS NONE OF THE NAMED

2    PLAINTIFFS IS PART OF THE COPYRIGHT CHAIN OF TITLE.  THAT'S

3    JUST NOT TRUE.  NOW, IT IS TRUE THAT CERTAIN OF THE NAMED

4    PLAINTIFFS HAVE OPERATED UNDER DIFFERENT NAMES IN THE PAST

5    AND THAT SOME OF THESE ASSIGNMENT AGREEMENTS ASSIGN THE WORK

6    TO A PRIOR NAME OF A NAMED PLAINTIFF, SUCH AS UNIVERSAL

7    MUSIC Z TUNES USED TO BE KNOWN AS ZOMBA MUSIC INTERNATIONAL,

8    I BELIEVE.  THAT'S THE PARTY THAT'S NAMED ON THE ASSIGNMENT

9    AGREEMENT.  IT'S THE SAME COMPANY, AND IT'S A NAMED

10   PLAINTIFF.  SO THESE ARE NOT SUBSTANTIVE ASSERTIONS THAT

11   HAVE A BASIS IN FACT.

12           THE COURT:  AND YOU ARE SAYING IF THEY HAD RAISED

13   THAT ISSUE WITH YOU, YOU COULD HAVE DEMONSTRATED TO THEM?

14           MR. LEDAHL:  ABSOLUTELY, YOUR HONOR.  AND THAT'S

15   TRUE FOR EVERY SINGLE ONE OF THE THINGS IDENTIFIED IN THIS

16   LATE SUPPLEMENTAL BRIEF.  IT'S NOT AN ISOLATED CIRCUMSTANCE.

17   IT'S EVERY ONE OF THEM.  WE HAD TO SPEND SUBSTANTIAL

18   RESOURCES IN THE LAST 24 HOURS GOING THROUGH THAT LIST,

19   BUT -- AND INDEED, THESE ARE NOT DOCUMENTS THAT WE'VE

20   SOMEHOW WITHHELD EITHER.  THESE ARE DOCUMENTS THAT WERE

21   PRODUCED.

22           AND I KNOW THE COURT DOESN'T WANT TO HEAR A LOT

23   ABOUT THE QUALITY OF THE PRODUCTION OR THE NATURE THEREOF,

24   BUT THE ASSERTION THAT IT WAS SOMEHOW DONE IN AN IMPROPER

25   MANNER, VEOH HAS REALLY ARGUED TWO FUNDAMENTALLY

                                                              33

INCONSISTENT POSITIONS HERE.  FIRST, THEY COMPLAINED THAT IT

WASN'T ORGANIZED IN SOME MANNER, WHICH WAS FALSE, AND NOW

THEY ARE COMPLAINING THAT THERE WERE DUPLICATES.  WELL, LET

ME TRY TO EXPLAIN VERY BRIEFLY WHAT WE ARE TALKING ABOUT

HERE.  FOR EACH COPYRIGHT THERE WAS A GROUP OF MATERIALS

THAT INCLUDED THE REGISTRATION AND RELATED AGREEMENTS.  SOME

AGREEMENTS PRACTICALLY RELATE TO MORE THAN ONE COPYRIGHT ON

THEIR LIST.  AS A CONSEQUENCE, WE KEPT THEM ORGANIZED IN

SUCH A WAY SO THAT THE AGREEMENT WOULD REPEAT ITSELF WHEN IT

WAS WITH EACH RELEVANT COPYRIGHT.  AS ONE EXAMPLE, AND THIS

IS ONE THAT THEY IDENTIFIED IN THE BRIEF --

THE COURT:  SO IF THEY WERE INTERESTED IN A

PARTICULAR WORK, ALL OF THE MATERIAL RELATING TO THAT WORK

WOULD BE TOGETHER.

MR. LEDAHL:  THAT IS CORRECT, YOUR HONOR.

THE COURT:  OKAY.

MR. LEDAHL:  SO AS ONE EXAMPLE, THEY IDENTIFIED --

THE COURT:  I THINK I UNDERSTAND THAT.

MR. LEDAHL:  THEY IDENTIFY A SONG CALLED *SMACK*

*THAT* RECORDED BY THE MUSICAL ARTIST AKON.  THAT SONG HAS TWO

SONGWRITERS.  ONE OF THEM IS AN ARTIST WHO GOES BY THE

POPULAR NAME EMINEM.  HIS SONGWRITER AGREEMENT WITH THE

COMPANY IS PRODUCED A COUPLE TIMES BECAUSE THERE ARE A

COUPLE OF HIS -- A COUPLE SONGS ON WHICH HE IS THE

SONGWRITER.  I SUSPECT THAT PERHAPS IN THE ORGANIZATION THAT

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626) 792-6777 Transcription (626) 792-7250

1 VEOH SAYS IT PERFORMED THEY MAY HAVE TOSSED THAT OUT FROM
2 THE RIGHT SPOT AND THEN COME TO THE CONCLUSION THAT WE
3 DIDN'T PRODUCE THE RIGHT AGREEMENTS. NOW, HE'S LISTED ON
4 THE COPYRIGHT REGISTRATION AS THE SONGWRITER AND IMMEDIATELY
5 AFTER THAT REGISTRATION OR IMMEDIATELY BEFORE IT WE PRODUCED
6 HIS SONGWRITER AGREEMENT WITH THE COMPANY. SO THESE
7 SUGGESTIONS THAT THERE ARE THESE MASSIVE DEFECTS ARE
8 COMPLETELY FALSE.
9         INDEED, WHAT WE ARE TALKING ABOUT HERE AND TO THE
10 COURT'S EARLIER POINT, THEY'VE HAD NEARLY TWO MONTHS WITH
11 THIS MATERIAL AND HAVE YET TO IDENTIFY A SINGLE INCORRECT
12 CLAIM OF COPYRIGHT INFRINGEMENT. WE'VE CLEANED UP SOME
13 THINGS ON OUR LIST THAT WE NEEDED TO CLEAN UP. VEOH HASN'T
14 USED THESE DOCUMENTS TO FIND A SINGLE ONE. AND THE
15 PRODUCTION OF THIS MASSIVE ADDITIONAL PILE WHICH I SUSPECT
16 FRANKLY WOULD TAKE MY CLIENT LONGER TO PRODUCE THAN THE
17 TRIAL DATE THAT'S APPROACHING WILL NOT CHANGE THAT IN ANY
18 MEANINGFUL WAY.
19         THE COURT: ALL RIGHT. NOW, HERE'S A CONCERN THAT
20 I HAVE. ALL RIGHT. LET'S SAY THAT WE'RE AT TRIAL AND YOU
21 WANT TO PROVE OWNERSHIP OF ONE OF THE WORKS THAT'S NOT IN
22 THESE 20 PERCENT AND YOU INTRODUCE THE CERTIFICATE AND THEY
23 SAY WE WANT AN OPPORTUNITY TO TRY TO REBUT THIS, HOW DO THEY
24 DO IT?
25         MR. LEDAHL: WELL, YOUR HONOR, I THINK -- FIRST

35

1 LET ME SUGGEST THAT IF THAT'S THE TRIAL WE ARE GOING TO

2 HAVE, THEN IT'S GOING TO BE A VERY LONG TRIAL.  AND

3 OBVIOUSLY I KNOW THAT'S A QUESTION FOR JUDGE MATZ, BUT WHEN

4 WE ARE TALKING ABOUT -- I DON'T ACCEPT COUNSEL'S

5 REPRESENTATION AS TO THE NUMBER OF WORKS.  I THINK IT'S

6 ACTUALLY A LITTLE HIGHER THAN WHAT SHE STATED, BUT

7 REGARDLESS --

8          THE COURT:  YOU MEAN HIGHER THAN 1500?

9          MR. LEDAHL:  CORRECT.  BUT REGARDLESS, IF WE HAVE

10 A TRIAL IN WHICH WE ARE SEPARATELY INTRODUCING AND TALKING

11 ABOUT EACH OF 1500 OR 2000 DIFFERENT COPYRIGHTS --

12          THE COURT:  WELL, I MEAN, ISN'T THERE GOING TO

13 BE -- LET'S ASSUME FOR A MOMENT THAT YOU PREVAIL, OKAY,

14 HYPOTHETICALLY I WANT TO EMPHASIZE, ISN'T THERE GOING TO BE

15 A TIME AT WHICH YOU ARE GOING TO HAVE TO PROVE THAT YOU OWN

16 THE WORKS THAT ARE AT ISSUE?

17          MR. LEDAHL:  YES, YOUR HONOR.

18          THE COURT:  AND NOW, WHETHER THAT'S DONE BY

19 STIPULATION BECAUSE THERE'S NO REASONABLE BASIS TO OPPOSE IT

20 OR, YOU KNOW, WHETHER IT'S DONE IN SOME SPECIAL PROCEEDING

21 THAT'S ORGANIZED IN A VERY EFFICIENT WAY, BUT AT SOME POINT

22 YOU ARE GOING TO HAVE TO DO THAT, AREN'T YOU?

23          MR. LEDAHL:  YOUR HONOR, AND I THINK THERE ARE A

24 NUMBER OF -- THAT'S CORRECT.  I THINK THERE ARE A NUMBER OF

25 MEANS BY WHICH WE CAN DO THAT, INCLUDING THROUGH TESTIMONY

                                                      36

1  OF WITNESSES, INCLUDING THROUGH, YOU KNOW, THE REGISTRATIONS
2  THEMSELVES.  IT'S NOT -- OUR BURDEN IS NOT TO COME FORWARD
3  WITH ALL OF THE EVIDENCE RELATING TO EACH WORK AND ALL OF
4  THE ASSIGNMENTS.  IF WE OFFER EVIDENCE THAT WE ARE IN FACT
5  THE PROPER OWNERS WITH RIGHTS TO ASSERT ALL OF THESE
6  COPYRIGHTS, THEN THAT'S A SUFFICIENT BASIS.  NOW, WHAT WE
7  ARE REALLY DEALING WITH HERE IS THE QUESTION OF WHETHER
8  THERE IS A PRODUCTIVE BASIS TO REQUIRE THIS MASSIVE
9  ADDITIONAL BURDEN OF DISCOVERY.
10          THE COURT:  WELL, BEFORE WE GET TO THAT POINT, YOU
11  PUT ON SOME EVIDENCE AND WHAT DO THEY DO NOW FOR THESE WORKS
12  OTHER THAN THE 20 PERCENT?  THEY HAVE NO INFORMATION.
13          MR. LEDAHL:  WELL, YOUR HONOR --
14          THE COURT:  HOW CAN THEY RESPOND TO THAT?  THIS IS
15  WHAT HAS TROUBLED ME ABOUT THIS ISSUE ALL LONG.  AND I'D
16  HOPED THROUGH THIS SAMPLING PROCEDURE WE WOULD FIND A WAY TO
17  GET BEYOND THAT.  THAT DOESN'T SEEM TO HAVE HAPPENED.  SO
18  WHAT I'M LEFT WITH, AND I REALLY WANT TO ARTICULATE THIS
19  BECAUSE IT CONCERNS ME AND I WANT TO GET YOUR RESPONSE, IS I
20  FEEL LIKE I MUST LET THEM HAVE ACCESS TO THIS, OTHERWISE I'M
21  DEPRIVING THEM OF THE ABILITY TO RESPOND TO YOUR PROOF.  WHY
22  SHOULDN'T I BE CONCERNED ABOUT THAT?
23          MR. MARENBERG:  YOUR HONOR, MAY I SPEAK TO THAT --
24          THE COURT:  YES.
25          MR. MARENBERG:  -- BECAUSE I THINK THAT THIS IS --

                                                              37

IT'S AN IMPORTANT QUESTION.  OBVIOUSLY, WE CONTEND THAT WE
ARE ENTITLED TO RELY ON THE PRESUMPTION FROM THE COPYRIGHT
REGISTRATION, BUT LET'S ASSUME THAT THERE ARE ISOLATED
INSTANCES IN WHICH THEY WANT TO ATTACH THEM.  I THINK THIS
IS ACTUALLY SOMETHING THAT YOU NEED TO DISCUSS WITH JUDGE
MATZ.  CASES OF MASS COPYRIGHT INFRINGEMENT LIKE THIS POSE
DIFFERENT PROBLEMS THAN WE'VE GOT ONE OR TWO WORKS, WE CAN
PUT IN IN OUR DIRECT CASE EVIDENCE OF CHAIN OF TITLE VERY
EFFICIENTLY.  IT WOULD TAKE AN HOUR OR TWO TO DO THAT, AND
THEN WE CAN MOVE ON TO WHAT REALLY THE BATTLE GROUND IS IN
OUR COPYRIGHT INFRINGEMENT CASE, SUBSTANTIAL SIMILARITY OR
SOME OTHER ISSUE.  IN THIS CASE IT WOULD BE ENTITLEMENT TO A
SAFE HARBOR UNDER THE DMCA.

IT SEEMS TO ME -- AND THERE HAVE BEEN OTHER
MASSIVE INFRINGEMENT CASES WHERE THERE IN A SENSE HAS BEEN
SOME POST-VERDICT TRUE-UP OF WHERE INDIVIDUAL WORKS CAN BE
WEEDED OUT IF THAT IS SOMETHING THAT THEY WANT TO TAKE THE
EXPENSE OF DOING TO DO THAT.  THE DOCUMENTS THAT WE'VE GIVEN
THEM THUS FAR AND PARTICULARLY WHEN YOU'VE ASKED FOR
20 PERCENT, WHICH UNDER ANY SAMPLING REGIME IS FAR MORE THAN
IS NECESSARY TO HAVE AN ACCURATE SAMPLE, HAS REVEALED THAT
THERE ARE NO SUBSTANTIVE DEFECTS IN OUR ASSERTIONS OF
COPYRIGHT.  YES, THERE WERE TYPOGRAPHICAL ERRORS AND WE TOOK
IT UPON OURSELVES TO CLEAN UP OUR LIST BEFORE WE GOT
(INAUDIBLE), BUT THEY'VE COME FORWARD WITH NO EVIDENCE NOT

```
1  ONLY THAT THERE IS A SYSTEMIC PROBLEM WITH WHAT WE'VE DONE
2  HERE, BUT THAT THERE IS A (INAUDIBLE) PROBLEM WITH WHAT
3  WE'VE DONE HERE.  AND SO IT SEEMS TO ME THAT THERE IS A
4  BASIS -- AND MAYBE YOU SHOULD HAVE A CONVERSATION WITH JUDGE
5  MATZ AS TO HOW HE WANTS TO RUN THE TRIAL, BECAUSE I DOUBT HE
6  WANTS US TO TAKE THE TIME IN HIS COURTROOM TO PUT ON THE
7  CHAIN OF TITLE --
8          THE COURT:  WHY WOULD ANYONE WANT THAT?
9          MR. MARENBERG:  TO PUT ON 1700 OR 2000 OR WHATEVER
10 THE NUMBER IS CHAINS OF TITLE IN THESE DOCUMENTS RATHER --
11 YOU KNOW, WHEN I WAS A LAW CLERK AND WE HAD EMPLOYMENT
12 DISCRIMINATION CLAIMS ON THE BASIS OF CLASSES -- I STILL
13 REMEMBER THE UNITED AIRLINES FLIGHT ATTENDANTS WHO ALL GOT
14 FIRED BECAUSE THEY GOT MARRIED.  THAT'S HOW LONG AGO I WAS A
15 CLERK.  THERE WERE HEARINGS AFTERWARDS AS TO WHETHER ANY
16 INDIVIDUAL CLAIMANT WAS ENTITLED TO BACK PAY, REINSTATEMENT,
17 ET CETERA.  IT SEEMS TO ME THAT THAT'S THE WAY IT WOULD
18 PROBABLY EFFICIENTLY BE HANDLED IN THIS CASE.  AND IF IT'S
19 GOING TO BE DONE IN THAT WAY BY JUDGE MATZ, THEN CERTAINLY
20 THE PRODUCTION THAT'S BEEN HAD SO FAR IS SUFFICIENT TO GO
21 FORWARD WITH THE TRIAL AND HAVE THAT TRIAL, AND IF AFTER
22 POST -- IF THEY WIN, I DON'T THINK THAT WILL HAPPEN, WELL,
23 THEN WE DON'T NEED TO DO THIS.
24          THE COURT:  RIGHT.
25          MR. MARENBERG:  AND IF THEY LOSE AND THEY WANT TO
```

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporting (626) 792-6777 Transcription (626) 792-7250

PAY OR WANT TO GO THROUGH THE EXPENSE, AND THERE WILL BE

EXPENSE FOR BOTH PARTIES POST-VERDICT, THEN WE CAN PUT OFF

ANY SUBSEQUENT PRODUCTION THAT MIGHT BE NECESSARY UNTIL THAT

POINT.  IT SEEMS TO ME THAT'S REALLY THE MOST EFFICIENT,

COST EFFECTIVE WAY TO DO THIS, BUT I DO ACKNOWLEDGE THAT

THAT REQUIRES SOME CONSULTATION BETWEEN YOU AND JUDGE MATZ.

I KNOW THAT JUDGE MATZ HAS BEEN VERY BUSY OVER THE LAST SIX

MONTHS AND I DON'T KNOW WHETHER HE'S HAD THE CHANCE TO FOCUS

ON HOW HE PLANS TO STRUCTURE THE HEARING, THE TRIAL IN THIS

CASE.

        BUT CERTAINLY I THINK THERE IS NO BASIS FOR

IMPOSING THE MASSIVE EXPENSE OF PRODUCING ALL THESE CHAIN OF

TITLE DOCUMENTS NOW WHICH WOULD, ONE -- WELL, ONE, IT WOULD

BE EXPENSIVE.  TWO, IT WOULD PROBABLY PUSH OFF THE TRIAL

JUST FOR US TO DO IT.  AND THREE, THEY WOULD NEVER REVIEW

IT.  I MEAN, YOU KNOW, WHAT YOU'VE HEARD AND READING BETWEEN

THE LINES TODAY IS THAT THEY DON'T HAVE THE RESOURCES TO

REVIEW IT ANYMORE.

        MR. LEDAHL:  AND, YOUR HONOR, I THINK ONE OTHER

POINT.

        THE COURT:  BEFORE YOU GET TO THAT, I WOULD LIKE

TO HAVE VEOH'S COUNSEL RESPOND TO WHAT MR. MARENBERG JUST

SAID.

        MR. LEDAHL:  CERTAINLY, YOUR HONOR.

        THE COURT:  BECAUSE I HAVE TO SAY I THINK THAT

MAKES A LOT OF SENSE.  THERE MUST BE SOME WAY TO HANDLE THIS

MORE EFFICIENTLY THAN WHAT YOU ARE PROPOSING.

MS. GOLINVEAUX:  YOUR HONOR, I THINK IT CERTAINLY

MAKES SENSE FOR YOU TO CONSULT WITH JUDGE MATZ ABOUT THIS.

IT IS A VERY -- WE ARE TALKING ABOUT A VERY LARGE NUMBER OF

WORKS.  WE CALCULATED IT SOMETHING LIKE 1500.  IT SEEMS

SURPRISING THAT PLAINTIFFS DON'T KNOW HOW MANY THEY'VE

IDENTIFIED YET, BUT IT DOESN'T SOUND LIKE THEY ARE FAR NORTH

OF 1500.  WE ARE SOMEWHERE IN THAT AREA.  BUT I DON'T THINK

VEOH WOULD HAVE A PROBLEM WITH TRYING TO APPROACH THIS IN A

MANNER, PARTICULARLY WITH VEOH'S SUMMARY JUDGMENT MOTION

PENDING, THAT WOULD MAKE SENSE FOR BOTH PARTIES.

IF I COULD JUST ADDRESS A COUPLE OF POINTS THAT

MR. LEDAHL MADE, THOUGH.  IT'S -- VEOH IDENTIFIED 20 PERCENT

OF THE WORKS FOR THE CHAIN OF TITLE DOCUMENTS.  UMG ITSELF

WITHDREW 34 OF THOSE WORKS.  NOW, IT WOULD BE IRONIC TO SAY

BECAUSE UMG IDENTIFIED THE DEFICIENCIES RATHER THAN VEOH

IDENTIFYING THE DEFICIENCIES IT DOESN'T JUSTIFY PRODUCTION

OF MORE WORKS.  IT'S NOT COINCIDENTAL EITHER, WE THINK, THAT

60 PERCENT --

THE COURT:  WELL, OKAY, THAT'S ABOUT ONE-EIGHTH OF

THE 20 PERCENT; CORRECT?

MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR.

BUT --

THE COURT:  AND IS IT TRUE AS I UNDERSTOOD

MR. LEDAHL TO SAY THAT THE REASONS FOR DELETING WORKS FROM

THE LIST WAS AT LEAST IN MOST INSTANCES NOT THAT THEY DIDN'T

HAVE THE RIGHT TO SUE ON THAT WORK, IT WAS BECAUSE THERE WAS

A CLERICAL ERROR OR SOMETHING OF THAT SORT?

MS. GOLINVEAUX: WELL, IT'S INTERESTING, YOUR

HONOR, COUNSEL TODAY HAS REPEATEDLY SAID THEY WERE

TYPOGRAPHICAL ERRORS, BUT IN THE BRIEFING, AND I'M QUOTING,

THEY SAY THEY WERE DUE TO, QUOTE, TYPOGRAPHICAL ERRORS AND,

QUOTE, CHANGES IN RIGHTS DUE TO PASSAGE OF TIME. SO THAT'S

NOT A TYPOGRAPHICAL ERROR. THAT MEANS THEY PULLED TOGETHER

THE CHAIN OF TITLE DOCUMENTS AND REALIZED THEY DIDN'T HAVE

THE RIGHT TO SUE ON THESE DOCUMENTS ANYMORE -- ON THESE

WORKS ANYMORE. AND WITH 34 WITHDRAWALS, WE ARE TALKING

ABOUT A REDUCTION OF DAMAGES CLOSE TO $5 MILLION.

THE COURT: WELL, I UNDERSTAND THAT, BUT, I MEAN,

SEVEN-EIGHTHS OF THE 20 PERCENT APPEAR TO BE FINE.

MS. GOLINVEAUX: BUT, YOUR HONOR, ONE-EIGHTH IS A

SIGNIFICANT PERCENT.

THE COURT: WELL, I'M NOT SAYING THAT'S NOT

IMPORTANT GIVEN THE POTENTIAL STATUTORY DAMAGES THAT COULD

BE ATTACHED TO THAT. BUT, OF COURSE, ONLY A PORTION OF

THOSE ARE ONES WHERE EVEN YOU WERE SUGGESTING THEY MAY NOT

HAVE THE RIGHT TO SUE ON. OTHERS WERE JUST MISTAKES OF ONE

KIND OR ANOTHER. SO ISN'T -- YOU KNOW, WOULD THIS SAMPLE

THAT YOU HAVE NOW BE ENOUGH TO PROCEED ON, YOU KNOW, AS FAR

42

1   AS THE MAIN PORTION OF THE TRIAL IS CONCERNED?

2            MS. GOLINVEAUX:  YOUR HONOR, ABSOLUTELY NOT.  IF

3   WE HAD A ONE-EIGHTH REDUCTION IN THE 1500 WORKS THAT THEY

4   ARE NOW ALLEGING, THAT WOULD BE HUGELY SIGNIFICANT AND WE

5   ABSOLUTELY HAVE TO HAVE THE CHAIN OF TITLE DOCUMENTS IN

6   ORDER TO DETERMINE THAT.

7            THE COURT:  WELL, OKAY.  I GUESS I WASN'T CLEAR ON

8   MY QUESTION.  WHAT MR. MARENBERG WAS SUGGESTING, WHICH IS

9   SOMETHING THAT I THINK WE'VE ALL CONTEMPLATED AT ONE POINT

10  OR ANOTHER, IS, YOU KNOW, A TRIAL THAT DEALS WITH, AT LEAST

11  ON THIS CHAIN OF TITLE ISSUE, PROOF AS TO SOME OF THE WORKS

12  WITH THE BULK OF IT BEING LEFT, AT LEAST ON THAT ISSUE,

13  UNTIL LATER IF IT'S NECESSARY TO GET TO THAT POINT AND

14  HANDLED IN A MORE EFFICIENT MANNER THAN ONE WOULD NORMALLY

15  CONTEMPLATE DURING A TRIAL, IF YOU WANT TO CONTEST

16  PARTICULAR WORKS, DOESN'T THAT KIND OF STRUCTURE MAKE SENSE

17  AND WOULDN'T YOU HAVE ENOUGH NOW WITH THIS 20 PERCENT LESS

18  ONE-EIGHTH OF THAT 20 PERCENT TO PROCEED WITH THE MAIN

19  PORTION OF THE TRIAL?

20           MS. GOLINVEAUX:  SO LONG AS WE HAD THE ABILITY TO

21  RECEIVE THE REST OF THE DOCUMENTS AT THE RIGHT TIME IF THAT

22  WASN'T A STAGED -- IF JUDGE MATZ THINKS THAT THE MOST

23  EFFICIENT WAY TO DO THAT WOULD BE IN SOME KIND OF STAGED

24  TRIAL, THAT MIGHT MAKE SENSE, YOUR HONOR.

25           THE COURT:  ALL RIGHT.  HERE'S WHAT I WOULD LIKE

                                                    43

1   YOU TO DO, AND I KNOW MR. LEDAHL WANTED TO RAISE SOMETHING

2   WITH ME SO I WANT TO HEAR THAT, BUT I WOULD LIKE TO TAKE A

3   RECESS IN A FEW MINUTES AND I WOULD LIKE TO HAVE YOU THINK

4   ABOUT THIS TOGETHER A LITTLE BIT AND SEE IF YOU CAN AT LEAST

5   SKETCH OUT AN APPROACH TO TRYING THIS CASE EFFICIENTLY

6   WITHOUT PRODUCING EVERYTHING NOW BUT PRESERVING VEOH'S RIGHT

7   TO HAVE ADDITIONAL MATERIAL PRODUCED LATER IF TRULY

8   NECESSARY AND APPROPRIATE.  YOU KNOW, I THINK BETTER FOR ME

9   AND JUDGE MATZ TO HAVE THE BENEFIT OF YOUR THINKING THAN FOR

10  HE AND I TO TRY TO HAVE AN UNFOCUSED DISCUSSION ABOUT THIS

11  AS BEST WE CAN OURSELVES.

12          MS. GOLINVEAUX:  I THINK THAT MAKES SENSE, YOUR

13  HONOR.

14          THE COURT:  OKAY.  MR. LEDAHL, DID YOU WANT TO

15  ADDRESS ANYTHING?

16          MR. LEDAHL:  ONLY, YOUR HONOR, I WAS GOING TO

17  POINT OUT THAT, AS THE COURT MIGHT PREDICT, WE HAVE EVERY

18  REASON TO BELIEVE THAT IN CHOOSING THE 20 PERCENT SAMPLE

19  VEOH UNDOUBTEDLY LOOKED FOR THE WORKS THEY THOUGHT THEY HAD

20  THE BEST CHANCE OF MAKING AN ARGUMENT ABOUT AND I THINK IT'S

21  TELLING WHAT WE SEE FROM THAT.

22          THE COURT:  OKAY.  ALL RIGHT.  SO WE WILL TAKE A

23  RECESS.  LET MY CLERK KNOW WHEN YOU ARE READY TO HAVE ME

24  COME BACK.

25          THE CLERK:  THE COURT IS IN RECESS.

                                                            44

```
 1                        (RECESS.)

 2          THE CLERK:  THIS COURT IS AGAIN IN SESSION.

 3          MS. GOLINVEAUX:  YOUR HONOR, WE UNDERSTAND THE

 4   COURT'S DESIRE TO TRY TO COME UP WITH A CREATIVE SOLUTION

 5   HERE GIVEN THE NUMBER OF WORKS AT ISSUE.  WE HAVEN'T BEEN

 6   ABLE TO REACH OUR CLIENT.  SO WHAT I WOULD LIKE TO PROPOSE

 7   AND WHAT I PROPOSED TO MR. MARENBERG IS THAT WE ADJOURN THE

 8   HEARING FOR A DAY OR TWO WITH THE COURT'S PERMISSION, HAVE

 9   THE OPPORTUNITY TO DISCUSS WITH OUR CLIENT AND FURTHER MEET

10   AND CONFER WITH PLAINTIFFS AND THEN RE-ADJOURN WITH YOUR

11   HONOR PERHAPS TELEPHONICALLY IF THAT WOULD WORK.

12          THE COURT:  WELL, I THINK THAT MAKES A LOT OF

13   SENSE.  I WANT YOU TO HAVE PLENTY OF TIME TO THINK ABOUT

14   THIS BECAUSE THIS IS IMPORTANT AND I THINK IT'S TO

15   EVERYONE'S BENEFIT TO COME UP WITH A GOOD PRACTICAL SOLUTION

16   HERE.  SO JUST LET MY CLERK KNOW HOW THINGS ARE GOING AND

17   WHEN YOU NEED SOME INVOLVEMENT FROM ME.

18          MS. GOLINVEAUX:  OKAY.

19          THE COURT:  OKAY.

20          MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

21          MR. MARENBERG:  JUST SO THE COURT HAS THE BENEFIT

22   OF WHAT WE'VE DISCUSSED.

23          THE COURT:  SURE.

24          MR. MARENBERG:  WE WERE ABLE TO REACH OUR CLIENT.

25   OBVIOUSLY, IT WILL ALL BE SUBJECT TO FURTHER DISCUSSIONS,
```

45

1  BUT THE IDEA THAT WE HAD IS BASED ON OUR REVIEW SO FAR, WE

2  HAVE -- THEY SAID WE SHOULD KNOW THE EXACT NUMBER OF

3  INFRINGED WORKS.  WE DO.  IT'S 1990.

4          THE COURT:  OKAY.

5          MR. MARENBERG:  THAT'S THE REASON WHY I SAID 2000.

6  AND WHAT WE PROPOSED IS THAT FOR PURPOSES -- IS THAT WE

7  BIFURCATE THE PROCEEDINGS IN THE FOLLOWING WAY.  FOR

8  PURPOSES OF LIABILITY AND DETERMINING AN AMOUNT PER WORK OF

9  STATUTORY DAMAGES THAT WE WOULD HAVE A STIPULATION THAT SAID

10 AT LEAST 1500 DIFFERENT WORKS WERE INFRINGED.  THAT'S -- WE

11 PICKED THAT NUMBER PLAYING OFF OF THE -- WELL, THE BEST CASE

12 IN OUR VIEW THEY'VE GOT ONE-EIGHTH, BUT NOT SO RANDOM

13 SAMPLE, IN OUR VIEW CHERRY PICKED WORKS, AND THAT DISCOUNT

14 OF THE NUMBER OF WORKS WOULD BE FAR GREATER THAN ONE-EIGHTH.

15 IT'S ALMOST ONE-QUARTER.  AND SO THAT'S WHY WE THOUGHT AT

16 LEAST 1500 WAS THE RIGHT NUMBER OR A FAIR NUMBER BASED ON

17 WHAT WE'VE SEEN SO FAR IN THE RANDOM SAMPLE, OR THE NOT SO

18 RANDOM SAMPLE BUT THE DISCOVERY TO DATE, BUT THAT WAS A FAIR

19 NUMBER FOR BOTH SIDES TO USE FOR PURPOSES OF TRIAL.

20          AND THEN THERE WOULD BE A PROCEEDING POST-VERDICT

21 ONCE THE AMOUNT PER WORK WERE DETERMINED BY THE TRIER OF

22 FACT AS TO COMING UP WITH THE FINAL NUMBER AND AS TO WHETHER

23 ANY INDIVIDUAL WORK WAS ENTITLED TO GET THAT PER WORK

24 STATUTORY FEE.  THEY WOULD HAVE THE OPPORTUNITY IN A

25 POST-VERDICT PROCEEDING TO CHALLENGE ANY PARTICULAR WORK,

46

1  AND THE DISCOVERY THAT WOULD BE PERMITTED IN ORDER TO DO

2  THAT AT THAT POINT IN TIME WOULD BE SUBJECT TO DETERMINATION

3  EITHER BY YOU, OR IF THERE WAS A SPECIAL MASTER APPOINTED TO

4  DO THAT REVIEW, BY THAT SPECIAL MASTER.  THAT'S THE KIND OF

5  THING THAT WE WERE ENVISIONING, THAT WE WOULDN'T PUT ON 1990

6  DIFFERENT CHAIN OF TITLES.

7          THE COURT:  ALL RIGHT.  WELL, GOOD.  I MEAN, I

8  THINK THAT'S EXACTLY THE KIND OF DISCUSSION THAT YOU SHOULD

9  BE HAVING.  LET ME WHILE YOU'RE HERE JUST MENTION SOMETHING

10 TO YOU.  I CAME ACROSS -- I'VE BEEN FRUSTRATED A LITTLE BIT

11 AT HOW LITTLE HAS BEEN WRITTEN ABOUT STATUTORY DAMAGES, AND

12 I CAME ACROSS A FORTHCOMING LAW REVIEW ARTICLE ABOUT IT BY

13 PAMELA SAMUELSON AND TARA WHEATLAND.  IF YOU'D LIKE, I CAN

14 HAVE MY CLERK GIVE YOU A COPY.  WOULD YOU LIKE THAT?  I'M

15 NOT ENDORSING THIS.  IT JUST IS A PRETTY THOROUGH ANALYSIS

16 AND I THOUGHT IT MIGHT SAVE YOU SOME TIME AND HELP EVERYBODY

17 IN THINKING ABOUT SOME OF THOSE ISSUES.  SO IF YOU WAIT A

18 FEW MINUTES, SHE'LL BRING YOU OUT EACH A COPY.

19          ANYTHING ELSE WE NEED TO TAKE UP?  I'M GOING TO

20 SUBMIT BOTH OF THESE MATTERS.  ONE I WILL AWAIT HEARING FROM

21 YOU AS TO HOW YOUR DISCUSSIONS ARE GOING.  THE OTHER I WILL

22 RULE ON IN A FEW DAYS.  ALL RIGHT?

23          MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

24          MS. RANAHAN:  THANK YOU, YOUR HONOR.

25          THE COURT:  OKAY.

                                                    47

1          MR. MARENBERG:  ONE QUESTION.

2          THE COURT:  YES.

3          MR. MARENBERG:  SHOULD WE DEFER -- OBVIOUSLY,

4    DURING YOUR COLLOQUY WITH MR. LEDAHL YOU MENTIONED THAT WE

5    HAVE AN ANSWER TO EVERY ONE OF THE THINGS --

6          THE COURT:  RIGHT.

7          MR. MARENBERG:  -- THAT THEY MENTIONED IN THEIR

8    SUPPLEMENTAL BRIEF.  SHOULD WE DEFER FILING THAT BRIEF UNTIL

9    WE RESOLVE THIS --

10         THE COURT:  ALL RIGHT.  IS THAT GOING TO HELP YOUR

11   DISCUSSIONS OR CAN WE DEFER THAT?  I WOULD LIKE -- IF I'M

12   GOING TO HAVE TO RULE ON THIS, I WOULD LIKE TO HAVE THE

13   RECORD COMPLETED IN THAT RESPECT, BUT I'D LIKE NOT TO PUT

14   PEOPLE TO UNNECESSARY WORK IF WE CAN AVOID IT.

15         MS. GOLINVEAUX:  I THINK WE COULD HAVE THE

16   DISCUSSION FIRST, YOUR HONOR.

17         THE COURT:  OKAY.  SO WHAT WE WILL DO THEN IS WE

18   WILL JUST WAIT AND SEE WHAT HAPPENS AND WE'LL ADDRESS IT

19   THEN.  OKAY.  THANK YOU.

20         MR. LEDAHL:  THANK YOU, YOUR HONOR.

21              (CONCLUSION OF RECORDED MATERIAL.)

22

23

24

25
                                                              48

| | |
|---|---|
| 1 | <u>TRANSCRIPTIONIST CERTIFICATE</u> |
| 2 | |
| 3 | I, DINA L. HARAND, DO HEREBY CERTIFY: |
| 4 | THAT THE FOREGOING AUDIOTAPED PROCEEDING WAS |
| 5 | RECEIVED AND TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION |
| 6 | AND SUPERVISION; |
| 7 | AND I HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT |
| 8 | IS A FULL, TRUE AND CORRECT TRANSCRIPT OF THE AUDIOTAPED |
| 9 | RECORDING GIVEN TO ME. |
| 10 | I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR |
| 11 | NOR RELATED TO ANY PARTY TO SAID ACTION, NOR ANYWISE |
| 12 | INTERESTED IN THE OUTCOME THEREOF. |
| 13 | IN WITNESS THEREOF, I HAVE HEREUNTO SUBSCRIBED MY |
| 14 | NAME THIS 1ST DAY OF JULY, 2009. |
| 15 | |
| 16 | |
| 17 | <u>DINA L. HARAND, CSR #10152</u> |
| 18 | TRANSCRIPTIONIST |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

49