UMG Recordings, Inc. et al v. Veoh Networks, Inc. et al — Doc. 505

Steven A. Marenberg (101033) (smarenberg@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC., *et al.*, <br><br> Defendants. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO PRECLUDE REFERENCE TO UMG'S UPLOADING MATERIALS TO OTHER WEBSITES (MOTION *IN LIMINE* NO. 5)** <br><br> **Filed Concurrently Herewith: Declaration of Brian Ledahl in Support of UMG's Motions *in Limine* Nos. 1-8; [Proposed] Order Granting UMG's Motion** <br><br> Date: August 3, 2009 <br> Time: 10:00 AM <br> Judge: Hon. A. Howard Matz <br> Ctrm: 14 <br><br> Discovery Cutoff: May 11, 2009 <br> Pretrial Conference: August 8, 2009 <br> Trial Date: August 18, 2009 |

2074996

UMG'S NOTICE OF MOTION AND MOTION IN LIMINE TO PRECLUDE REFERENCE TO UMG'S UPLOADING CERTAIN OF ITS COPYRIGHTED MATERIALS

Dockets.Justia.com

| | |
|---|---|
| 1 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** |
| 2 |     **PLEASE TAKE NOTICE THAT** on August 3, 2009, at 10:00 a.m., or as |
| 3 | soon thereafter as the matter may be heard by the Honorable A. Howard Matz of the |
| 4 | United States District Court for the Central District of California, at 312 N. Spring |
| 5 | Street, Courtroom 14, Los Angeles, CA, 90012, Plaintiffs UMG Recordings, Inc., *et* |
| 6 | *al.* (collectively "UMG") will move and hereby do move for an order excluding |
| 7 | evidence and argument regarding evidence of UMG's uploading materials to any |
| 8 | website other than Veoh.com. UMG respectfully submits that Defendant Veoh |
| 9 | Networks, Inc. ("Veoh"), its counsel, and its witnesses should be prohibited from |
| 10 | making any argument concerning, introducing evidence of, or referring to these |
| 11 | matters. The evidence is irrelevant (and thus inadmissible under Fed. R. Evid. 402) |
| 12 | and poses a threat of confusion to the jury and undue delay (and is thus further |
| 13 | inadmissible under Fed. R. Evid. 403). |
| 14 |     This motion is made following the conference of counsel conducted pursuant |
| 15 | to Central District Local Rule 7-3, which took place on June 16, 2009. |
| 16 |     This motion is based upon this Notice, the accompanying Memorandum of |
| 17 | Points and Authorities, the Declaration of Brian Ledahl In Support of UMG's |
| 18 | Motions *In Limine* ("Ledahl Declaration") (filed concurrently herewith), all |
| 19 | pleadings, papers, and records on file in this action, all matters of which the Court |
| 20 | may take judicial notice, and such further written and oral argument as may be |
| 21 | presented to the Court. |
| 22 | Dated: July 6, 2009                     IRELL & MANELLA LLP |
| 23 |                                         Steven A. Marenberg<br>Brian Ledahl |
| 24 |                                         Benjamin Glatstein |
| 25 | |
| 26 |                                         By: _____<br>                                             Brian Ledahl |
| 27 |                                         Attorneys for Plaintiffs |
| 28 | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs UMG Recordings, Inc. *et al.* ("UMG") hereby move for an order *in limine* to exclude from trial evidence of UMG's uploading materials to any website other than Veoh.com. This evidence is irrelevant to any issue before the Court. Further, even assuming such evidence is marginally relevant, the confusion of issues, undue delay, and waste of time associated with its introduction substantially outweighs its probative value.

Veoh Networks, Inc. ("Veoh") has infringed thousands of UMG's copyrighted works. Veoh claims that the so-called "safe harbor" provisions of the Digital Millennium Copyright Act ("DMCA") immunize this infringement. Hence Veoh's infringement and its alleged DMCA defense are the crux of this action. Veoh seeks to shift this action's focus away from these central issues and onto UMG's alleged uploading materials to websites *other* than Veoh. Such evidence is irrelevant to Veoh's affirmative defenses or UMG's damages, and it would unnecessarily distract from the real issues in this case.

Veoh's alleged affirmative defenses – including implied license, unclean hands, and waiver – can only arise from direct interactions between the copyright holder (UMG) and the alleged infringer (Veoh). They do not arise from interactions between UMG and third parties, and thus evidence of UMG's uploading materials to *other* websites is irrelevant to Veoh's affirmative defenses. Nor does this evidence bear on damages issues. Even Veoh's own damages expert makes no reference to such evidence bearing on damages. Finally, even assuming such evidence is marginally relevant, its introduction will create unnecessary delay and time wasting, forcing the parties to litigate myriad collateral issues unconnected with the focus of this case: Veoh's infringement and its alleged DMCA defense.

## II. UMG'S UPLOADING MATERIALS TO OTHER WEBSITES IS IRRELEVANT TO ANY ISSUE IN THIS ACTION

Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Evidence of UMG uploading materials to other websites is irrelevant to any issue in this action – including Veoh's affirmative defenses[1] and UMG's damages – and thus excludable under Rule 402.

### A. This Evidence Has No Relevance To An Implied License Defense

An implied license arises only where "'(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.'" *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (quoting *Lulirama Ltd., Inc. v. Axcess Broad Sews.*, 128 F.3d 872, 879 (5th Cir. 1997)). Courts narrowly draw this defense because implying a license where no express one exists runs the substantial risk of misinterpreting the intentions of the parties. *Effects Associates v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). These cases make clear that an implied license only arises from direct interaction between the copyright holder (UMG) and the purported licensee (Veoh). Hence evidence that UMG posted materials to websites other than Veoh could never

---

[1] Veoh essentially confirmed this fact when responding to Universal Music Corp.'s ("UMC") Interrogatories Nos. 9, 11, and 13, which asked that Veoh set forth the basis for its "waiver," "unclean hands," and "implied license" defenses. Veoh's alleged basis for these defenses rests on UMG's alleged failure to comply with "DMCA procedures," not its uploading materials to other websites. Declaration of Brian Ledahl in Support of UMG's Motions *In Limine*, Ex. E (Veoh's Responses to UMC's Interrogatories Nos. 9, 11, and 13). Veoh's failure to allege the relevance of this evidence in its response to UMC's interrogatories is a separate, independent basis for excluding such evidence as supportive of its affirmative defenses.

give rise to an implied license to Veoh – there is no attendant interaction between UMG and Veoh.

Veoh may argue that users who obtain UMG's copyrighted materials from other websites and subsequently upload those materials to Veoh's website have an implied license to do so. This argument is contrary to Ninth Circuit authority. For example, in *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), Napster argued that "plaintiffs granted the company an implied license by encouraging MP3 file exchange over the Internet." The Ninth Circuit rejected this argument and found that such conduct did not give rise to any implied license, noting that "the [Recording Industry Association of American ("RIAA")] gave defendant express notice that it objected to the availability of its members' copyrighted music on Napster."[2] *Id.* at 1026. The *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* court held the same: "This Court cannot agree that Plaintiffs' decision . . . to allow other networks to distribute their copyrighted works permits StreamCast . . . to do so as well." 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007).

Thus an anonymous user of a separate website has no implied license to copy UMG materials available through that website and distribute copies of those materials to Veoh. Nor does Veoh acquire a license from the anonymous user to copy, perform, and distribute UMG's copyrighted materials. This argument fails because none of the putative licensees satisfies the first element an implied license – a request by the licensee for creation of a work. Additionally, evidence of postings by UMG to other websites, even if proven, cannot show that UMG intended that *Veoh* be permitted to copy, perform, and distribute the work. Because UMG's uploading materials to other websites is irrelevant to Veoh's implied license defense, that defense provides no basis for the admission of such evidence.

---

[2] The same is true here, where Veoh received notices of infringement from the RIAA, who was acting on UMG's behalf.

### B. UMG's Uploading Materials To Other Websites Is Irrelevant To Veoh's Unclean Hands Defense

Like implied license, Veoh's unclean hands defense requires direct interactions between the content owner and the infringer (*i.e.*, the former's inequitable conduct vis-à-vis the latter), not interactions between the content owner and a third-party. More specifically, Veoh must show "(1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiffs' conduct injured the defendant." *Grokster*, 518 F. Supp. 2d at 1223 (citing *Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A][7] (2007) (noting that the unclean hands defense "is recognized only rarely," such as "when the plaintiff misused the process of the courts, by falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and opposing party"). UMG's interactions with other websites, including any alleged posting of videos on those sites, would not make any of these elements more likely to be true.

First, UMG's decision to post materials to sites other than Veoh does not amount to inequitable conduct. UMG is free to license and market its copyrighted content in any manner it sees fit. Copyright law does not include a "fairness doctrine" requiring equal licensing or distribution by a copyright holder. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026-27 (9th Cir. 2001) ("There is no misuse where 'plaintiffs seek to control reproduction and distribution of their copyrighted works, exclusive rights of copyright holders'"); *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 342 F.3d 191, 206 (3d Cir. 2003) ("[C]opyright law. . . should not be interpreted to require Disney, if it licenses its trailer for display on any web sites but its own, to do so willy-nilly regardless of the content displayed with its copyrighted works"); *see also* Ledahl Decl., Ex. G (*Arista*

*Records v. Limewire LLC*, 06-CV-5936, March 12, 2008, Hearing Transcript (S.D.N.Y.)) ("The copyright holder has a right to deal with who[m] they want to deal with and not deal with who[m] they don't want to deal with. They can do that, it seems to me, legitimately. They can do that by refusing to deal with people who are, in their view, assisting in or conducting the infringement of their products") (6:18-23). Whether or not UMG fostered business relationships with other websites is irrelevant to Veoh's massive infringement. Veoh cannot show that distributing content to other websites qualifies as "inequitable conduct," a necessary element to an unclean hands defense.

Veoh contends that: 1) piracy is a predictable consequence of UMG's uploading materials to other websites and 2) UMG's decision to do so, coupled with its copyright infringement claims against Veoh, amounts to unclean hands. *See, e.g.,* Joint Stip. re: Veoh's Renewed Motion to Compel Verified Interrogatory Responses at 11:20-23 (Dkt. No. 230). This argument fails. Veoh suggests that because piracy and theft can occur, UMG has given up any right to seek relief for Veoh's infringing conduct. But a content owner's decision to distribute her work in a reproducible form – whether magazine or book or painting or CD or MP3 – does not destroy her copyright. The Copyright Act forbids infringement, regardless the format and distribution of the content. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 346 (S.D.N.Y. 2000), *aff'd sub nom*, *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001). The content owner's rights do not vanish once he stops hiding his work under a bushel. If copyright extended only to un-reproducible works, a prohibition on copying would be unnecessary. Thus, UMG's uploading materials to other websites cannot support Veoh's defense of unclean hands, and is therefore irrelevant to it.

### C. UMG's Uploading Materials To Other Websites Is Irrelevant To Veoh's Defense Of Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *U.S. v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). A plaintiff's "actions with respect to other companies . . . are irrelevant" to the question of waiver. *Grokster*, 518 F. Supp. 2d at 1225. The *Grokster* court expressly rejected a mass infringer's waiver defense grounded in the plaintiffs' interactions with third parties: "The Court knows of no rule in copyright . . . that a copyright holder is bound to pursue either all infringers or none at all. The waiver analysis should ordinarily be limited to evaluating the conduct and/or communications that occur between a plaintiff and a defendant claiming the waiver defense." *Id*. UMG's uploading materials to websites other than Veoh are – by definition – not "conduct and/or communications that occur[red] between" UMG and Veoh. Under settled Ninth Circuit authority such evidence is therefore irrelevant to Veoh's waiver defense.

### D. UMG's Uploading Materials To Other Websites Has No Relevance To UMG's Damages[3]

Veoh argues that UMG's uploading materials to other websites is relevant to damages. More specifically, Veoh contends that UMG's uploading its copyrighted materials to other websites reduces the value of UMG's copyrighted materials, which reduces the royalty rate owed by Veoh as a consequence of displaying and

---

[3] UMG does not believe Veoh can argue to the contrary at trial. Veoh's damages expert, Roy Weinstein, submitted two expert reports in this action—an opening report dated May 11, 2009 and a rebuttal report dated June 8, 2009. In neither report did Mr. Weinstein suggest that UMG's uploading copyrighted materials to other websites supplies a basis for reducing damages owed by Veoh. Thus Veoh has no witness capable of presenting this damages theory at trial.

distributing those materials, and thus the statutory damages owed by Veoh.[4]  Veoh's argument ignores the express terms of UMG's license and sales arrangements with other websites and online services – such as YouTube and iTunes, for example – which compensate UMG for their use of its copyrighted materials.  The rates and wholesale prices under those agreements do not change in the event UMG uploads its copyrighted materials to other websites.  For the purpose of this motion, UMG assumes that one could approximate UMG's lost royalty revenue as the monies Veoh would have paid – under an agreement resembling UMG's agreements with entities like YouTube and iTunes – for its use of UMG's copyrighted materials had it obtained authorization to display and distribute those materials.[5]  Even taking that assumption as true, UMG's uploading its copyrighted materials to other websites is irrelevant to this approximation of lost royalty revenue.  UMG's relevant agreements do not provide for lower "per stream" or "per download" payments in the event UMG uploads its copyrighted materials to other internet sites.  If UMG posts a music video to www.NotVeoh.com, for example, licensees like YouTube pay their same "per stream" royalty rate as if UMG had never posted the video elsewhere.  This evidence is therefore irrelevant to damages.

## III. EVIDENCE OF UMG'S UPLOADING MATERIALS TO OTHER WEBSITES IS INADMISSIBLE UNDER RULE 403

UMG's uploading its copyrighted materials to other websites is irrelevant to Veoh's liability defenses and statutory damages.  But assuming such evidence were of limited relevance, Federal Rule of Evidence 403 provides an independent basis on which to exclude such evidence.  Rule 403 excludes relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice,

---

[4]  Veoh's argument wrongly assumes that UMG's harm is limited to royalty revenue lost as a consequence of Veoh's infringement.  Veoh's assumption is mistaken (as further detailed in UMG's expert reports) but immaterial to this motion.

[5] UMG disputes the validity of this assumption, but this dispute is immaterial to the current motion.

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, any alleged probative value of UMG's uploading copyrighted materials to other websites is substantially outweighed by the confusion of issues, undue delay, and waste of time that such evidence would entail.

### A. This Evidence Will Result In Juror Confusion

This case fundamentally concerns Veoh's infringement of UMG's copyrights and its claim to the DMCA's "safe harbor" provisions. Veoh's infringement turns on whether its activities violated UMG's exclusive rights under 17 U.S.C. § 106. Veoh's DMCA defense turns on the operation of Veoh's client and website. 17 U.S.C. § 512(c). Hence the primary focus of this action is Veoh's conduct. Any limited relevance of evidence UMG's uploading copyrighted materials to other websites will confuse these issues. Jurors may improperly infer that UMG uploaded the same videos to Veoh, despite there being no evidence of such conduct. Alternatively, jurors may infer that such evidence is sufficient to establish an implied license defense, though it certainly is not, for the reasons identified above. These real possibilities of confusion justify exclusion of this evidence.

### B. This Evidence Will Waste The Court's Time

Evidence of UMG's posting copyrighted materials to other websites would also result in a substantial waste of time and litigation of collateral issues. *In re Agent Orange Prods. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) ("The waste-of-time ground for exclusion [under Rule 403] is particularly persuasive when detailed rebuttal testimony would be necessary to establish that the proffered evidence lacks probative worth"). For example, Veoh argues that UMG's posting a copyrighted video to a website with which UMG does not have a license agreement provides Veoh with an implied license to perform and distribute that video. Under Veoh's theory – not consistent with the law of implied license of copyright – (*i*) it must first provide evidence that UMG posted the particular video onto a given

website, *i.e.,* that the person posting the video had authority to do so. (*ii*) Veoh must then demonstrate that, at the time of posting, the website had no license from UMG. (*iii*) Veoh must then prove that the website's terms of use at the time of the posting provided that other users could freely copy the video from the website. (*iv*) Further, Veoh must establish that UMG intended with its posting that users further copy the video and upload it to other websites. (*v*) Finally, Veoh must demonstrate that the copy of the video in question – available through Veoh – was copied by a Veoh user from the site to which UMG posted the video.[6]

Presentation of this evidence – or demonstration of the lack thereof by UMG – would consume an enormous amount of time. Veoh's alleged defense would require evidence for each of the above elements, as to each copyrighted work for which it argued that it had an implied license. And at the close of this lengthy presentation, Veoh would still not have made out a defense. Rule 403 bars burdensome proceedings so lacking in probative value.

///
///
///
///
///
///
///
///

---

[6] Veoh's ability to prove each element is unlikely. For example, Veoh has yet to identify a single website with terms of use that permit users to freely copy videos and upload them to other websites. (Veoh's own terms of use forbid such conduct. Ledahl Decl., Ex. H at "User Behavior" ("You may not . . . copy, rent, lease, distribute, or otherwise transfer any of the rights that You receive hereunder").) That any website would permit this activity is counterintuitive. Doing so would encourage the website's users to distribute content to competing sites, thereby pushing profitable views to competitor websites.

## IV. CONCLUSION

For the foregoing reasons, UMG requests that the Court exclude evidence or argument relating to UMG's uploading materials to other websites.

Dated: July 6, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl
Brian Ledahl

Attorneys for Plaintiffs

2074996

- 10 -

UMG'S NOTICE OF MOTION AND MOTION IN LIMINE
TO PRECLUDE REFERENCE TO UMG'S UPLOADING
CERTAIN OF ITS COPYRIGHTED MATERIALS