Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>VEOH NETWORKS, INC. *et al.*,<br><br>        Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Case No. CV 07 5744 – AHM (AJWx)**

**VEOH'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* NOS. 1-7; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date:        8/3/09
Time:                    10:00 a.m.
Hon. A. Howard Matz

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 3, 2009, or as soon thereafter as this matter can be heard before the Honorable A. Howard Matz of the United States District Court for the Central District of California, at 312 North Spring Street, Room 170, Los Angeles, California, 90012, Veoh Networks, Inc. ("Veoh") will and hereby does move for an order restricting the parties, all counsel and witnesses from mentioning, directly or indirectly, before jurors and prospective jurors, certain evidence and matters articulated below. These items should not be permitted for any purpose because even assuming there were some limited relevance, the probative values of the evidence is outweighed by potential prejudice to the jury, waste of time, and/or unnecessary confusion of the issues. Fed. R. Evid. 401-403.[1] Due to these and the other evidentiary infirmities described herein, the Court should grant Veoh's Motions *in Limine* Nos. 1-7 ("Motion").[2]

The seven matters that are subject to this Motion are as follows:

(1)     Allegedly infringing videos that are not UMG's music videos;

(2)     Copies of screenshots that omit certain items that would appear for a Veoh user;

(3)     Any documents or argument specifying any of Veoh's investors or documents constituting or relating to communications to and from Veoh's investors regarding allegedly infringing videos;

(4)     Any evidence regarding the timing of Veoh's implementation of filtering through Audible Magic;

(5)     Evidence constituting and relating to press articles, blogs and communications from Veoh's users (other than relating to the users' own alleged infringement) regarding alleged infringement on Veoh;

---

[1] All further statutory references are to the Federal Rules of Evidence unless otherwise noted.
[2] For the convenience of the Court, in the interest of efficiency and to avoid unnecessary duplication, Veoh consolidates these seven separate motions herein.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(6)    Evidence and arguments that support a claim that statutory damages should be assessed by any other means other than per Compact Disc ("CD"); and

(7)    Evidence constituting Veoh's power point presentations and other internal materials that discuss or refer to general music strategy.

This Motion is based on this Motion and Notice of Motions, the Declaration of Erin R. Ranahan ("Ranahan Decl."), the exhibits attached thereto, the supporting documents filed concurrently herewith, previously filed documents incorporated by reference herein, and upon such oral argument and submissions that may be presented at or before the hearing on this Motion.  Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel that took place on June 16, 2009.

Dated:  July 6, 2009                     **WINSTON & STRAWN LLP**


By /s/ Erin R. Ranahan
   Michael S. Elkin
   Thomas P. Lane
   Jennifer A. Golinveaux
   Rebecca L. Calkins
   Erin R. Ranahan
   Attorneys for Defendant
   VEOH NETWORKS, INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT ............................................................................................ 1

    A.    Where Evidence Is More Prejudicial than Probative, or a Waste of Time, The Court May Exclude Such Evidence ........................................ 1

    B.    The Court Should Grant Veoh's Motions *In Limine* To Exclude The Following Evidence From Trial ...................................................... 2

        1.    UMG Should Be Precluded From Including Allegedly Infringing Videos That Are Not UMG's Music Videos ................. 3

        2.    UMG Should Be Precluded From Introducing Copies of Screenshots that Omit Certain Items that Would Appear to a Veoh User ..................................................................................... 4

        3.    UMG Should Be Precluded From Introducing Any Documents or Argument Specifying Any of Veoh's Investors .................................................................................... 5

        4.    UMG Should Be Precluded From Introducing Any Evidence Regarding the Timing of Veoh's Implementation of Filtering Through Audible Magic ................................................................... 6

        5.    Evidence Constituting and Relating to Press Articles, Blogs and Communications From Veoh's Users (Other Than With Respect to the User's Own Alleged Infringement) Regarding Alleged Infringement on Veoh ...................................................... 9

        6.    Evidence and Arguments that Support a Claim that Statutory Damages Should be Assessed by Any Means Other Than Per Compact Disc ("CD") ................................................................ 12

        7.    Evidence Constituting Veoh's Power Point Presentations and Other Internal Materials that Discuss or Refer to Music ........ 16

III. CONCLUSION ..................................................................................... 16

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

Campbell Indus. v. M/V Gemini,
　　619 F.2d 24 (9th Cir. 1980) ................................................................. 1

*Country Road Music. Inc. v. MP3.com, Inc.*,
　　No. 02 Civ. 8006 (JSR),
　　2003 WL 22038295 (S.D.N.Y. Aug. 27, 2003) (Rakoff, J.) ............ 15, 16

*Dream Games of Arizona, Inc. v. PC Onsite*,
　　561 F.3d 983 (9th Cir. 2009) ................................................................. 2

*E.E.O.C. v. GLC Rests., Inc.*,
　　No., CV05-618 PCT-DGC, 2007 WL 30269 (D. Ariz. Jan. 4, 2007) ...................... 2

*Eastern Am. Trio Prods., Inc. v. Tang Elec. Corp.*,
　　97 F. Supp. 2d 395 (S.D.+N.Y. 2000) ................................................ 14

*Fish v. Georgia-Pacific Corp.*,
　　779 F.2d 836 (2nd Cir. 1985) ................................................................. 9

*Gametech Int'l Inc. v. Trend Gaming Sys., LLC.*,
　　Nos., 05-15626, 05-16026, 05-16542,
　　2007 WL 1454934 (9th Cir. May 16, 2007) ........................................ 1

*Gray v. Hoffman-La Roche, Inc.*,
　　82 Fed. Appx. 639 (10th Cir. 2003) ...................................................... 9

*Heyman v. Salle*,
　　743 F. Supp. 190 (S.D.N.Y. 1989) ...................................................... 14

*Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*,
　　866 F. Supp. 780 (S.D.N.Y. 1994) ...................................................... 13

*Lindsay v. Ortho Pharmaceutical Corp.*,
　　637 F.2d 87 (2nd Cir. 1980) ................................................................. 9

*Mills v. Beech Aircraft Corp.*,
　　886 F.2d 758 (5th Cir. 1989) ................................................................. 9

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

*Stoke Seeds Ltd. v. Ceo. W. Park Seed Co., Inc.*,
    783 F. Supp. 104 (W.D.N.Y. 1991) ......................................................... 15

*TeeVee Toons v. MP3.com, Inc.*,
    134 F. Supp. 2d 546 (S.D.N.Y. 2001) (Rakoff, J.) .................................. 15

*Twin Peaks Prods., Inc. v. Publ. Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) ............................................................... 13

*U.S. v. Ellis*,
    147 F.3d 1131 (9th Cir. 1998) ................................................................ 2

*UMG Recordings, Inc., et al. v. MP3.com, Inc.*,
    109 F. Supp. 2d 223 (S.D.N.Y. 2000) ....................................... 12, 13, 14, 15

*United States v. W.R. Grace*,
    504 F.3d 745 (9th Cir. 2008) .................................................................. 2

*Wicker v. Oregon ex rel. Bureau of Labor*,
    543 F.3d 1168 (9th Cir. 2008) ................................................................. 1

*Xoom, Inc. v. Imagineline, Inc.*,
    94 F. Supp. 2d 688 (E.D. Va. 1999) ...................................................... 15

**STATUTES**

17 U.S.C. § 101 ................................................................................... 14

17 U.S.C. § 504(c)(1).................................................................... 12, 13, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c)(1) ............................................................................ 9

Fed. R. Evid. 401 .................................................................................... 1

Fed. R. Evid. 402 ............................................................................ passim

Fed. R. Evid. 403 ............................................................................ passim

Fed. R. Evid. 407 ................................................................................... 8

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Fed. R. Evid. 602 ............................................................................... 9, 10, 11

Fed. R. Evid. 901 ............................................................................... 9, 10, 11

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rules of Evidence 401-403, 602 and/or 901, Defendant Veoh Networks, Inc. ("Veoh") moves for an *in limine* order precluding Plaintiffs ("UMG") from introducing at trial any testimony or evidence regarding the seven matters set forth herein.[3] Though the underlying issues in this case are straightforward, there is a series of potential distractions that could sidetrack the jury. These seven potential areas of distraction constitute evidence that not only provide little, if any, probative value, but the introduction of this evidence would waste the Court's and the jury's time, make issues appear to be more confusing than they are, and could prejudice the jury. Fed. R. Evid. 403. For these and all the foregoing reasons, Veoh respectfully requests that the Court grant Veoh's Motions *in limine*.

## II. ARGUMENT

### A. Where Evidence Is More Prejudicial than Probative, or a Waste of Time, The Court May Exclude Such Evidence

Rulings on motions *in limine* are committed to the discretion of the trial court. *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980) (district court has "broad discretion to make . . . evidentiary rulings conducive to a fair and orderly trial"); *Gametech Int'l Inc. v. Trend Gaming Sys., LLC.,* Nos., 05-15626, 05-16026, 05-16542, 2007 WL 1454934 (9th Cir. May 16, 2007). District courts can exercise their discretion to exclude evidence where the evidence is not relevant, or where the probative value is outweighed by other considerations. Fed. R. Evid. 401-403; *Wicker v. Oregon ex rel. Bureau of Labor,* 543 F.3d 1168, 1177-78 (9th Cir. 2008) (district court did not abuse discretion in excluding conclusive, speculative evidence). Even if evidence is considered relevant, "evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice,

---

[3] All further statutory references are to the Federal Rules of Evidence unless otherwise noted.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *U.S. v. Ellis,* 147 F.3d 1131, 1135 (9th Cir. 1998) (evidence should be excluded if probative value is outweighed by unfair prejudice); *United States v. W.R. Grace,* 504 F.3d 745, 760 (9th Cir. 2008) (affirming district court's exclusion of evidence that was low in probative value and could have confused the jury as more prejudicial than probative under Rule 403); *E.E.O.C. v. GLC Rests., Inc.,* No., CV05-618 PCT-DGC, 2007 WL 30269, at *1 (D. Ariz. Jan. 4, 2007); *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009) (holding district court did not abuse its discretion in granting plaintiff's motion *in limine* to exclude evidence based on concerns that it might improperly influence the jury on the amount of statutory damages to assess under 504(c)(1) of the Copyright Act of 1976, because the evidence did not provide sufficiently probative information.)

Evidence has probative value only if it has any tendency to make the existence of any legally necessary proposition in the case more or less likely. Fed. R. Evid. 401-402. Evidence is unfairly prejudicial if it has an "undue tendency to suggest decision on an improper basis." Advisory Comm. Notes, 1972 Proposed Rules; Fed. R. Evid. 403. Rule 403 explicitly states that evidence may also be excluded if the waste of time caused by its introduction outweighs its probative value.

## B. The Court Should Grant Veoh's Motions *In Limine* To Exclude The Following Evidence From Trial

As discussed herein, the probative value of the evidence at issue in this Motion is substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusing the jury. The probative value is also outweighed by the tremendous waste of time that would be incurred by the parties, the Court and the jury if the evidence were allowed. Due to the low probative value and the serious risk of prejudicing the jury, and/or to avoid a needless waste of time, for each of the matters set forth below, the Court should exclude the evidence.

### 1. UMG Should Be Precluded From Including Allegedly Infringing Videos That Are Not UMG's Music Videos

Throughout this litigation, UMG has suggested that its entire list of what now amounts to over 7,000 allegedly infringing videos constitute actual music videos, recognizable as UMG's copyrighted content. Though UMG *never notified* Veoh of a single alleged infringement into well over a year into this case, UMG suggests that Veoh should have somehow proactively recognized these alleged infringements as UMG's content. *See* UMG's Opp. to Veoh's Renewed Mot. for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor (Dkt. No. 465) ("UMG's Opp to MSJ") p. 1:6-16, 23; pp. 8:7- 9:26; pp. 11:15-12:7; p. 14:26- p. 15:16; pp. 17:15-17.

Remarkably, it turns out that thousands upon thousands of the alleged infringing videos are not music videos at all, let alone identifiable UMG music videos. For example, many of the videos are home videos set to music or are videos of people filming themselves playing video games set to music. And, in fact, approximately a full third of the videos are Anime (Japanese cartoons) set to music. As a result, none of these large categories of the videos put in issue by UMG would be reasonably identifiable as UMG music videos, much less actually be UMG music videos. (Ranahan Decl. ¶ 2).

UMG's entire premise that Veoh was somehow capable of identifying works without cooperation from UMG cannot possibly apply to these videos. Because UMG did not notify Veoh of any of these videos until over a year into the case,[4] the inclusion of these videos does not serve to make any fact of consequence more or less likely. Accordingly, these videos fail to meet the relevance test, and should be excluded under Rules 401-402.

---

[4] The only notices received by Veoh regarding any of the alleged infringements asserted by UMG, were sent by an industry group the Recording Industry Association of America ("RIAA"), and it is undisputed that Veoh promptly responded to the RIAA notices and took down the identified videos.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Further, even if these non-music videos have some probative value because snippets of UMG's music may have been included at some point in the videos, Veoh has a viable fair use defense with respect to many of these videos. Litigating these fair use defense(s) would require decisions on a per video basis. This exercise would take a considerable amount of time and require significant resources of both the Court and the jury. Requiring the Court, the jury and the parties to devote resources to individual fair use analysis with respect to so many individual videos (when given UMG's lack of notice, such videos have little if any bearing on this case) militates in favor of excluding the evidence to avoid a colossal waste of time under Rule 403.

Finally, if UMG is entitled to continually refer to the alleged infringements in this case as exceeding 7,000 videos, this will mislead the jury into believing there are a greatly exaggerated number of "music videos" at issue and that Veoh could have somehow managed to proactively identify such videos.

Because the probative value of these thousands of non-music videos offer virtually nothing to advance UMG's arguments in this case, and there is a serious risk that introduction of this evidence will waste time and prejudice the jury, this Court should preclude UMG from alleging or introducing as examples of alleged infringement any videos other than actual UMG music videos. Further, the Court should order UMG to produce a revised list of alleged infringements to comport with any Court order granting Motion No. 1, so that Veoh has the opportunity to rebut any excerpted list against its own findings.

**2. UMG Should Be Precluded From Introducing Copies of Screenshots that Omit Certain Items that Would Appear to a Veoh User**

During depositions, UMG has introduced screenshots as exhibits that do not appear as they would to a Veoh user. For example, during the deposition of Joseph Papa in July 2008, UMG introduced screenshots as Exhibits 3 and 4. (Ranahan Decl. ¶ 3 and Exhs. 1 and 2) These screenshots did not appear as they would to a Veoh user because they failed to identify the permalink of the video, which would normally

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

have appeared at the top of the page, in the URL of the web page. There is no probative value to introducing incomplete screenshots that a Veoh user would not have actually viewed, especially when UMG could simply adjust its evidence appropriately. Presenting screenshots in an inaccurate manner by omitting identifying information has the potential to mislead the jury into making it seem more difficult than it actually is for users to identify and notify Veoh of suspected infringing works. Fed. R. Evid. 403. Accordingly, the Court should preclude UMG from introducing any screenshots that do not appear as they would to a Veoh user because the evidence is irrelevant under Rules 402-402, and more prejudicial than probative under Rule 403.

### 3. UMG Should Be Precluded From Introducing Any Documents or Argument Specifying Any of Veoh's Investors

As this Court well knows, UMG has repeatedly attempted to drag Veoh's various investors into this case, and has failed. (*See* UMG's First Amended Complaint (Dkt. No. 104); UMG's Second Amended Complaint (Dkt. No. 308); Order Granting Investor Defendants' Motion to Dismiss with Prejudice, Dkt. No. 434.) It should not now be allowed to mention or refer to Veoh's investors, many of which are well known companies and individuals. Indeed, specifying the names of Veoh's investors should not be admissible in evidence for any purpose because the identity of Veoh's investors has no bearing on the issues or the rights of the parties in this case. Fed. R. Evid. 401 and 402. The investor defendants have been dismissed with prejudice from this action. (*See* Order Granting Investor Defendants' Motion to Dismiss with Prejudice, Dkt. No. 434.) It is therefore not relevant which investors have invested in Veoh.

Nevertheless, as UMG has done throughout this action, it can be expected to attempt to exploit the identity of Veoh's investors to sway the jury into believing that Veoh must have more resources than it actually does, and thus must be a "deep pocket" that could withstand a massive infringement award. This prejudice could

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

cause a juror to decide differently, to award damages higher than he or she ordinarily would, or spend less time deliberating if the juror believes Veoh to have considerable resources. UMG has also repeatedly used the stature of Veoh's investors when seeking to distract from the fact that when compared to UMG, Veoh is a considerably smaller company with far less resources. Thus, the Court should restrict any reference to Veoh's investors because it would be unnecessary and inflammatory. The potential prejudice to the jury outweighs any probative value. Fed. R. Evid. 403.

Similarly, UMG should be precluded from introducing documents constituting communications with the investor defendants. In its opposition to Veoh's motion for summary judgment and in its complaint, UMG has cited to a few instances where Veoh's investors were notified of suspected infringement on Veoh. (*See e.g.,* Veoh's Response to UMG's Statement of Genuine Issues (Dkt. No. 473) ("RSGI") ¶¶ 126, 141 and 147). These communications have nothing to do with any of the alleged infringements at issue in this case, and in fact have nothing to do with music videos at all. *Id.* The knowledge of the investors—who have been dismissed as parties from this case with prejudice—of a few sporadic suspected instances of infringement, none of which are UMG alleged infringements, are entirely irrelevant and have no bearing on the issues or the rights of the parties in this case. Fed. R. Evid. 401 and 402.

Additionally, and importantly, when these communications are shown in their full context, they demonstrate Veoh's commitment to its DMCA and copyright policies. *See, e.g.,* RSGI (Dkt. No. 473) ¶ 141. The risk of confusion and misleading the jury given the manner that UMG has chosen to misleadingly excerpt such documents in the past, demonstrate a need to preclude the introduction of this evidence. Fed. R. Evid. 403. UMG's efforts to mislead the jury with this evidence should be rejected.

**4.  UMG Should Be Precluded From Introducing Any Evidence Regarding the Timing of Veoh's Implementation of Filtering Through Audible Magic**

Veoh strictly enforces its policies prohibiting infringing content.[5]  In accordance with its DMCA policy, Veoh has always promptly terminated access to allegedly infringing content when it receives notice of such content.[6]  Veoh has also implemented additional technological safeguards to prevent infringing material.  For example, beginning in 2006, Veoh has identified duplicate file submissions by means of a unique fingerprint (called a "hash") of a video file.[7]

Veoh has also introduced a state of the art filtering system, Audible Magic.  Audible Magic's service works by taking an audio fingerprint from videos files and matching it against Audible Magic's database of content.  *Id.*  In the summer of 2007, months before this lawsuit was filed, Veoh began working with Audible Magic and testing its filtering technology.  (Golinveaux Decl. (Dkt. No. 338) ¶ 4 & Ex. C, 81; Papa Decl. (Dkt. No. 336-10) ¶ 15.)  After a period of testing, Veoh put Audible Magic's filtering system into production in October 2007.  *Id.*  Beginning at that time, if a user attempted to upload a video that matched against Audible Magic's database

---

[5] Veoh has been adjudicated to be both eligible for and entitled to Section 512(c) safe harbor. Earlier in this case, this Court denied UMG's motion for partial summary judgment seeking a ruling that Veoh was ineligible for Section 512(c) safe harbor. (12/29/08 Order Denying UMG's Mot. for Partial Summary Judgment, Dkt. No. 293) Last year, a court granted Veoh's motion for summary judgment regarding its entitlement to Section 512(c) safe harbor in a copyright infringement suit, holding that the record demonstrated that "far from encouraging copyright infringement, Veoh has a strong DMCA policy, takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website." *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1155 (N.D. Cal. Aug. 27, 2008).

[6] In addition to its DMCA policy, Veoh has been at the forefront of collaborative inter-industry efforts alongside content owners to prevent infringing materials from appearing on its service. In October 2007, Veoh, along with major content owners Disney, Viacom, Fox, CBS, and NBC Universal, signed on to "The UGC Principles," available at www.ugcprinciples.com. Papa Decl. (Dkt. No. 336-10) ¶ 12 & Ex. F. The UGC Principles serve as a comprehensive set of guidelines to help services like Veoh and content creators work together toward their collective goal of "foster[ing] an online environment that promotes the promises and benefits of UGC Services and protects the rights of Copyright Owners." *Id.*

[7] Once Veoh disables access to a video for any reason, including alleged copyright infringement, Veoh's system automatically disables access to any other duplicate videos with the identical hash, and also blocks any subsequently submitted videos that are duplicates of disabled videos. *See* Papa Decl. (Dkt. No. 336-10) ¶ 13; Golinveaux Decl. (Dkt No. 338) Ex. C, 132.

7

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

of copyrighted content, the video was cancelled before publication so that it was never available for viewing on Veoh.  (Golinveaux Decl. (Dkt. No. 338) ¶ 4 & Ex. C, 83; Papa Decl. (Dkt. No. 336-10) ¶ 15.)  This filtering occurs even if Veoh has never received a DMCA notice regarding the video.  By mid-2008, Veoh had also run its entire existing database of videos against Audible Magic's filter and disabled access to any video that matched against Audible Magic's database that were not submitted by Veoh partners.  Golinveaux Decl. (Dkt. No. 338) ¶ 4 & Ex. C, 159; Papa Decl. (Dkt. No. 336-10) ¶ 15.  Veoh has invested significant resources licensing and continuing to employ Audible Magic's services.  *Id.*

UMG has argued that Veoh should have implemented Audible Magic when it first launched its service, based on the speculative conclusions of UMG's expert, Ellis Horowitz.  Horowitz (who opined in his report that Veoh could have introduced Audible Magic filtering when it launched), admitted in a deposition on July 3, 2009, that he was not aware of any company that had implemented Audible Magic at an earlier time.  (Ranahan Decl. ¶ 4 and Exh. 3 (Rough Transcript of Horowitz at 120:23-121).)  Horowitz also testified that he had no experience in implementing a content filtering system like Audible Magic, but acknowledged that there would be a fair bit of mathematics and a fair bit of software that would have to be developed in order to do so.[8]  *Id.* (Rough Transcript of Horowitz at 122:1-14.)  Allowing the introduction of this speculative evidence from Horowitz and UMG's counsel, without any consideration for what is involved in implementing Audible Magic, creates a real risk that the jury will be confused and mislead about the feasibility of Veoh introducing filtering at an earlier time.  Thus, UMG should be precluded from presenting evidence regarding the timing of Veoh's implementation of Audible Magic; any probative value

---

[8] Horowitz instead based his suggestion that Veoh could have introduced Audible Magic at an earlier phase based on testimony from the deposition of Audible Magic, which indicated that Audible Magic had certain technology available at an earlier date, but did not address whether it would have been feasible to have implementation of Audible Magic complete.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

is greatly outweighed by considerations of misleading the jury and wasting time.  Fed. R. Evid. 403.

Moreover, this Court should exercise its discretion to exclude this evidence for public policy reasons.  Courts applying Rule 407 have routinely held that it is reversible error to allow the introduction of a subsequent remedial measure that unfairly prejudices the opposing party.  *See, e.g., Lindsay v. Ortho Pharmaceutical Corp.,* 637 F.2d 87, 94 (2nd Cir. 1980); *Gray v. Hoffman-La Roche, Inc.,* 82 Fed. Appx. 639, 647 (10th Cir. 2003); *Mills v. Beech Aircraft Corp.,* 886 F.2d 758, 763 (5th Cir. 1989); *Fish v. Georgia-Pacific Corp.,* 779 F.2d 836, 840 (2nd Cir. 1985). Similar to the policy reasons for excluding subsequent remedial measures to implicate liability, permitting UMG to introduce evidence about Veoh's implementation of Audible Magic to be used against Veoh could create a disincentive to companies who are considering whether to expand the means by which to prevent suspected infringement.  If taking additional preventative steps to combat suspected copyright infringement subjects the company that implements added measures to stricter scrutiny about whether the implementation could have occurred earlier, companies may think twice about implementing such measures in the first place.

**5.    Evidence Constituting and Relating to Press Articles, Blogs and Communications From Veoh's Users (Other Than With Respect to the User's Own Alleged Infringement) Regarding Alleged Infringement on Veoh**

At various times, including throughout the complaint in this matter, UMG has cited to uncorroborated third party statements about alleged infringement on Veoh that have nothing to do with the alleged infringements in this case.  Not only is this evidence irrelevant and more prejudicial than probative, it also suffers from other evidentiary infirmities including that UMG will be unable to authenticate these documents under Rule 901 or properly lay a foundation pursuant to Rule 602.  None of the authors of these articles or communications have been disclosed as witnesses in

9

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

this action in accordance with Rule 26 or in interrogatory responses, and Veoh has not had the opportunity to depose these witnesses or pursue alternate forms of discovery. *See, e.g.,* Fed. R. Civ. P. 37(c)(1). Without such witnesses, UMG cannot authenticate or lay a proper foundation for these documents.

<ol type="a" start="1">
<li>Correspondence Between Veoh and its Users Regarding</li>
</ol>

a.  Correspondence Between Veoh and its Users Regarding
    Suspected Alleged Infringements By Other Veoh Users
    Should Be Excluded

In opposition to Veoh's pending motion for summary judgment, UMG cited to four exhibits that constitute correspondence between Veoh and its users, *after* the users had videos taken down for suspected infringement pursuant to Veoh's policies. These users cite vaguely and generally to other infringing works because they were angry that their own videos were removed in accordance with Veoh's policies. UMG cites these exhibits as examples of "notice" of infringement and to show that Veoh users "regularly wrote to Veoh to report" on a "huge range of infringing content." (*See* UMG's Statement of Genuine Issues, Dkt. No. 468 ("SGI") 142-145, and Batsell Decl. (Dkt. No. 388) and Exs. 45-48).

First, these and similar communications are not relevant to the alleged infringements in this action. This alone is reason enough to exclude this evidence as not relevant pursuant to Rule 402. Further, under FRE 901, UMG has not (and cannot) authenticate or lay any foundation regarding any of the users' vague and unsubstantiated assertions of other alleged infringements. Because there can be no foundation with respect to the knowledge of these users and the extent to which they have reviewed Veoh's site for infringement (or would even know which videos might be potentially infringing), any such evidence should be precluded. Further, as this evidence purports to describe the conduct of Veoh, it also constitutes inadmissible hearsay in violation of FRE 602, which is yet another reason to disallow this evidence. Finally, any limited relevance would be outweighed by the prejudice

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    caused when considering that UMG has not established the credibility of such

2    statements.  Thus, the Court should preclude these and similar communications.

3               b.    Press Articles or Blogs Regarding Alleged Infringement on

4               Veoh Should Be Excluded

5         Similarly, without authenticating pursuant to Rule 901 or laying any foundation

6    whatsoever to the statements pursuant to Rule 602, UMG's opposition to Veoh's

7    pending motion for summary judgment (and its second amended complaint) also

8    improperly relied heavily on statements in various news articles and third party

9    websites—SGI 17, Batsell Decl. (Docket No. 388) Ex. 5 (Revver's Copyright

10   Information); SGI 110, Batsell Decl. (Docket No. 388) Ex. 36 (MySpace and

11   Gracenote Press release); SGI 112, Batsell Decl. (Docket No. 388) Ex. 38 (AM Pres

12   Release); SGI 146, Batsell Decl. (Docket No. 388) Ex. 49 (New York Times Article);

13   SGI 149, Batsell Decl. (Docket No. 388)  Ex. 51 (article titles "Forget YouTube . .

14   ."); SGI 149, (Valleywag's article); SGI 150, Batsell Decl. (Docket No. 388) Ex. 53

15   (article titled "Veoh v. Copyright Holders…").  None of these articles discuss any

16   specific alleged infringements at issue in this action, and offer little, if any, probative

17   value.  Accordingly, this evidence should be precluded as not relevant under Rules

18   401-402.

19        Not only is this evidence irrelevant, such articles also suffer from other

20   evidentiary infirmities because UMG will be unable to authenticate these documents

21   under Rule 901 or properly lay a foundation pursuant to Rule 602.  None of these

22   articles were or could be properly introduced (as none of the authors have been

23   disclosed or deposed in this action), and therefore these exhibits should not be

24   allowed into evidence pursuant to Rule 901.  These exhibits also constitute

25   inadmissible hearsay in violation of Rule 602.  As this evidence has not and cannot be

26   properly introduced, allowing the evidence would unnecessarily prejudice the jury

27   into believing the veracity of these unsubstantiated press statements.  Rule 403.

28   Accordingly, the Court should also preclude from introduction these and similar

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

articles or blogs regarding suspected infringement on Veoh as more prejudicial than probative under Rule 403.

### 6. Evidence and Arguments that Support a Claim that Statutory Damages Should be Assessed by Any Means Other Than Per Compact Disc ("CD")

UMG alleges that Veoh infringed hundreds of its alleged sound recording copyrights, and seeks statutory damages under 17 U.S.C. § 504(c)(1). UMG has indicated its intention to argue that statutory damages should be assessed per individual "song," rather than per individual "CD," thereby dramatically increasing its potential statutory damages award. It does so despite knowing that courts have repeatedly calculated statutory damages per "CD." *See UMG Recordings, Inc., et al. v. MP3.com, Inc.*, 109 F. Supp. 2d 223, 225 (S.D.N.Y. 2000) (finding statutory damages should be assessed per CD and not per "song;" UMG was a plaintiff in the action); *TeeVee Toons v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 (S.D.N.Y. 2001); *Country Road Music. Inc. v. MP3.com, Inc.*, No. 02 Civ. 8006 (JSR), 2003 WL 22038295, at *5 (S.D.N.Y. Aug. 27, 2003).

The Copyright Act expressly states that the trier of fact must calculate statutory damages according to the number of "works" infringed. It further specifies that compilations must be treated as single works for the purpose of calculating statutory damages. As UMG admits, and as the *UMG Recordings* court found, CDs are compilations of sound recordings. This is in accordance with the manner in which UMG registered such works with the Copyright Office. Therefore, the relevant "work" for the purpose of calculating statutory damages is the "CD." Thus, this Court should exclude evidence and arguments that statutory damages should be assessed by any means other than per the relevant compilation, or "CD."

### a. UMG Is Bound By Its Election of Statutory Damages

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    Under the Copyright Act, a copyright holder may elect to forego actual

2   damages in favor of statutory damages. See 17 V.S.c. § 504(a)-(c).  Specifically,

3   Section 504(c)(l) states that:

4         [T]he copyright owner may elect, at any time before final judgment is rendered,

5         to recover, instead of actual damages and profits, an award of statutory damages

6         for all infringements involved in the action, with respect to any one work, for

7         which any one infringer is liable individually, or for which any two or more

8         infringers are liable jointly and severally, in a sum of not less than $750 or more

9         than $30,000 as the court considers just. For the purposes of this subsection, all

10        the parts of a compilation or derivative work constitute one work.

11        17 U.S.C. § 504(c)(1).[9]

12   A plaintiff may elect statutory damages at any time before final judgment is

13   rendered, but once a plaintiff elects statutory damages, it may no longer seek actual

14   damages.  *See Twin Peaks Prods., Inc. v. Publ. Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d

15   Cir. 1993); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 866 F. Supp. 780, 782

16   (S.D.N.Y. 1994).  UMG has repeatedly informed the Court and Veoh that it is electing

17   statutory damages.  (*See e.g.,* 11/26/08 Order, note 1 (Dkt. No. 217) (noting that

18   "UMG is seeking only statutory damages").)  Thus, UMG is now precluded from

19   seeking actual damages in this case.  *See Twin Peaks, 996 F.2d at 1380; Latin Am*

20   *Music*, 866 F. Supp. at 782.

21            b.    Any Statutory Damages Should Be Calculated Per

22                  Compilation or CD

23   Further, UMG has informed Veoh that it intends to argue that statutory damages

24   should be assessed on a per "song" basis.  Such an assessment would directly violate

25   the Copyright Act, would be contrary to Congressional intent, and "would be nothing

26   less than an unconstitutional arrogation of power by the judiciary."  *UMG Recordings*,

27   109 F. Supp. 2d at 225.

28   _____

[9] This section allows a maximum recovery of $150,000 per work.  *Id.*

The Copyright Act clearly states that statutory damages are to be calculated according to the number of works infringed. Specifically, the statute provides that the copyright owner may elect "an award of statutory damages for all infringements involved in the action, with respect to any one work...." 17 U.S.C. § 504(c)(1) (emphasis added). The Copyright Act also states that for the purpose of calculating damages, "all the parts of a compilation or derivative work constitute one work...." *Id.* As stated in the applicable House Report, section 504(c)(l) "makes it clear ... that, although they are regarded as independent works for other purposes, 'all the parts of a compilation or derivative work constitute one work,'" for the purposes of determining an award of statutory damages. *See* H.R. Rep. No. 1476, at 162(1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5778.

The Act defines a "compilation" as, "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The statute further states that the:

> "term 'compilation' includes collective works," which the statute defines as "work[s], such as ... periodical[s], antholog[ies] or encyclopedia[s], in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."

*Id. See also Heyman v. Salle*, 743 F. Supp. 190, 192 (S.D.N.Y. 1989) (stating that those compilations that "consist of contributions which themselves constitute 'works' capable of copyright are called 'collective works'"). As a CD is a work that assembles into a collective whole separate and independent sound recordings, each capable of obtaining their own copyright, a CD is a collective work, and thus a type of compilation. UMG has acknowledged by virtue of registering its works on a per CD basis as "works for hire" that the CDs it registers under its sound recording copyrights

are compilations.  17 U.S.C. sec 101.[10]  Moreover, in a previous litigation, UMG conceded that the CDs it registers under sound recording copyrights are compilations under section 504(c)(1) *See UMG Recordings*, 109 F. Supp. 2d at 225 ("Plaintiffs concede that each CD that [the] defendant copied is a 'compilation' under § 504(c)(1)").

Thus, because a CD is a compilation of sound recordings, and compilations must be treated as single works for the purpose of calculating statutory damages, any statutory damages awarded in this case may only be awarded on a per-CD basis.  *See* 17 U.S.C. § 504(c)(1).  *See generally, Eastern Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 420 (S.D.N.Y. 2000) (finding two sales catalogs containing additional individual photos were compilations and therefore plaintiff is only eligible for two awards of statutory damages for copyright infringement); *Xoom, Inc. v. Imageline, Inc.*, 94 F. Supp. 2d 688, 693 (E.D. Va. 1999), aff'd, 323 F.3d 279 (4th Cir.), cert. denied, 540 U.S. 879 (2003) (finding two computer programs containing individual clip-art images were compilations and therefore plaintiff is only eligible for two awards of statutory damages for copyright infringement); *Stoke Seeds Ltd. v. Ceo. W. Park Seed Co., Inc.*, 783 F. Supp. 104, 107 08 (W.D.N.Y. 1991) (finding all photos appearing in one book constitute compilation and therefore plaintiff is only eligible for one award of statutory damages for copyright infringement).

In accordance with the foregoing principles, courts have repeatedly found that a CD is a compilation of sound recordings, and therefore that the CD was the work by which to assess statutory damages.  *See UMG Recordings*, 109 F. Supp. 2d at 225; *TeeVee Toons v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 (S.D.N.Y. 2001) (Rakoff, J.); *Country Road Music. Inc. v. MP3.com, Inc.*, No. 02 Civ. 8006 (JSR), 2003 WL 22038295, at *5 (S.D.N.Y. Aug. 27, 2003).  It certainly should come as no surprise to

---

[10] Indeed, the works at issue in this case were registered as "works for hire;" and the only possible work for hire category enumerated in 17 U.S.C. sec 101 that would apply to the sound recordings are compilations.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

UMG, as it was a plaintiff in the UMG Recordings case. In that case, Judge Rakoff explicitly told Plaintiffs that statutory damages should be assessed per CD and that to find otherwise would be to disregard Congress' "express mandate that all parts of a compilations must be treated as a single 'work' for purposes of computing statutory damages." *Id.*

Thus, because a CD is a compilation of sound recordings, and compilations must be treated as single works for the purpose of calculating statutory damages, any statutory damages awarded in this case may only be awarded on a per-CD basis. Any evidence or argument to the contrary is irrelevant and impermissible as a matter of law, and should be excluded.

### 7. Evidence Constituting Veoh's Power Point Presentations and Other Internal Materials that Discuss or Refer to Music

UMG has repeatedly suggested that Veoh should somehow be found culpable for specific alleged infringements at issue in this action because on a few, isolated occasions, internal Veoh documents discuss general strategies regarding music content on Veoh. (RSGI (Docket No. 473) ¶¶ 177-178). UMG makes this argument knowing full well that Veoh has authorized music content on Veoh. (*Id.* at ¶ 135). Further, this evidence is wholly irrelevant to the issues in this case given that none of this evidence makes reference to UMG or any of UMG's alleged infringements, and does not discuss any effort to feature or allow any allegedly infringing content. Based on the limited probative value of these documents (especially considering that Veoh has authorized music content on Veoh) these power points and other documents relating to Veoh's plans with respect to music, which were never even implemented, are far more prejudicial than probative, and should be excluded under Rule 403.

## III. CONCLUSION

For all the foregoing reasons, Veoh respectfully requests that the Court grant its Motions *in Limine* Nos. 1-7.

Dated: July 6, 2009                    **WINSTON & STRAWN LLP**


By /s/ Erin R. Ranahan
    Rebecca Lawlor Calkins
    Erin R. Ranahan
    333 S. Grand Avenue
    Los Angeles, California 90071-1543
    (213) 615-1700 (Telephone)
    (213) 615-1750 (Facsimile)

    Jennifer A. Golinveaux
    101 California Street
    San Francisco, California 94111-5894
    (415) 591-1000 (Telephone)
    (415) 591-1400 (Facsimile)

    Michael S. Elkin (*pro hac vice*)
    Thomas P. Lane (*pro hac vice*)
    200 Park Avenue
    New York, New York 10166-4193
    (212) 294-6700 (Telephone)
    (212) 294-4700 (Facsimile)

    Attorneys for Defendant

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543