1   Robert G. Badal (Bar No. 81313)
    Robert.Badal@WilmerHale.com
2   WILMER CUTLER PICKERING HALE AND DORR LLP
    350 South Grand Avenue, Suite 2100
3   Los Angeles, CA 90071
    Telephone: +1 (213) 443-5300
4   Facsimile: +1 (213) 443-5400

5   Annette L. Hurst (Bar No. 148738)
    ahurst@orrick.com
6   ORRICK HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
7   San Francisco, CA 94105
    Telephone: +1 (415) 773-5700
8   Facsimile: +1 (415) 773-5759

9   Attorneys for Defendants
    SHELTER CAPITAL PARTNERS, LLC and
10  SHELTER VENTURE FUND, L.P.

11  [OTHER COUNSEL LISTED ON SIGNATURE PAGES]

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   WESTERN DIVISION

16  UMG RECORDINGS INC. ET AL.,      )   CASE NO. CV07-5744 AHM (AJWX)
                                     )
17                                   )
                   PLAINTIFFS,       )   REPLY TO OPPOSITION TO
18                                   )   MOTION BY INVESTOR
                                     )   DEFENDANTS FOR ATTORNEYS'
19      V.                           )   FEES AND COSTS
                                     )
20  VEOH NETWORKS, INC. ET AL.,      )   [17 U.S.C. § 505]
                                     )
21                                   )   [Filed Concurrently with the Request to
                   DEFENDANTS.       )   Strike Hearsay Evidence]
22                                   )
                                     )   Courtroom:    14
23                                   )   Date:         July 20, 2009
                                     )   Time:         10:00 a.m.
24                                   )
                                     )   The Honorable A. Howard Matz
25  _____ )

26

27

28
    {00121366.DOC}

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

ARGUMENT ............................................................................................................ 2

I.    THE INVESTOR DEFENDANTS ARE ENTITLED
TO COSTS, INCLUDING REASONABLE ATTORNEYS'
FEES, AS PREVAILING PARTIES IN AN ACTION
BROUGHT UNDER THE COPYRIGHT ACT .................................................. 2

    A.   The Investor Defendants Are Undeniably The Prevailing Parties
Under 17 U.S.C. § 505 Of The Copyright Act ............................................. 4

    B.   Awarding Attorneys Fees Here Would Promote The Policies of
the Copyright Act, Including The Policies Of Compensation
and Deterrence ............................................................................................. 4

    C.   UMG's Claims Against The Investor Defendants Were Frivolous
and Brought for Improper Purposes ......................................................... 6

II.   THE INVESTOR DEFENDANTS' REQUEST FOR
ATTORNEYS' FEES AND COSTS IS FULLY
SUBSTANTIATED AND REASONABLE ......................................................... 10

    A.   The Investor Defendants Are Entitled To "Full Costs,"
Including Reasonable Attorneys' Fees, For All Tasks Related
To The Defense Of This Action ................................................................. 10

    B.   UMG's Litigation Tactics Contributed Significantly To The
Amount Of Fees Incurred By The Investor Defendants ......................... 12

    C.   The Investor Defendants Were Efficient In Their Defense
Of This Case, And The Resulting Fees Are Reasonable ......................... 14

    D.   The Investor Defendants Attorneys' Hourly Rates Are Reasonable ........ 16

III. THIS COURT SHOULD NOT POSTPONE ITS
RULING ON THE MOTION UNTIL THE NINTH
CIRCUIT RULES ON THE MERITS OF UMG'S APPEAL ........................ 18

IV. SUPPLEMENTAL FEE REQUEST ................................................................ 19

CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Assessant Technologies of WI, LLC v. Wiredata, Inc.,*
361 F.d 434 (7th Cir. 2004) .................................................. 5

*Blanch v. Koons,*
485 F.Supp.2d 516 (S.D.N.Y. 2007) ............................................ 10

*Blum v. Stenson,*
465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)......................... 17

*Bordanaro v. McLeod,*
871 F.2d 1151 (1st Cir. 1989)................................................ 17

*Compaq Computer Corp. v. Ergonome, Inc.,*
196 F.Supp.2d 471 (S.D. Tex. 2002) .......................................... 11

*Cruz v. Hauck,*
762 F.2d 1230 (5th Cir. 1985) ............................................... 19

*Florentine Art Studio, Inc. v. Vedet K. Corp.,*
891 F. Supp. 532 (C.D. Cal. 1995) ............................................ 4

*Klein v. Central States, Southeast and Southwest Areas Health and Welfare Plan,*
--- F.Supp.2d ---, No. 3:08-cv-2268, 2009 WL 1416048,
(N.D. Ohio May 19, 2009) .................................................... 18

*Identity Arts v. Best Buy Enterprise Services, Inc.,*
No. C 05-4656 PHJ, 2008 WL 820674, (N.D. Cal. Mar. 26, 2008)................. 12

*Mallery v. NBC Universal, Inc.,*
No. 07 CIV 2250, 2008 WL 719218, (S.D.N.Y. Mar. 18, 2008) .................. 11

*Matthew Bender & Co., Inc. v. West Pub. Co.,*
240 F.3d 116 (2d Cir. 2001)................................................. 18

*Micromanipulator Co., Inc. v. Bough,*
779 F.2d 255 (5th Cir. 1985) ................................................. 3

*Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC,*
No. CV-05-7686, 2007 WL 4898365, (E.D. Cal. Dec. 20, 2007)........... passim

*Perfect 10, Inc. v. CWIE, LLC,*
No. 02-7624, 2005 WL 5957973, (C.D. Cal. Feb. 10, 2005)..................... 5, 8

*Slip 'N Slide Records, Inc. v. TVT Records, LLC,*
No. 05-21113, 2007 WL 1098751, (S.D. Fla. Apr. 8, 2007).................... 19

*Turley v. New York City Police Dept.,*
No. 93 Civ. 8748, 1998 WL 760243, (S.D.N.Y. Oct. 30, 1998)................ 18

*Unisys Corp. Retiree Medical Benefits ERISA Litigation,*
   No. 03-3924, 2007 WL 4287393, (E.D. Pa. Dec. 4, 2007) ............................. 18

*Universal Studios Production LLP v. Bigwood,*
   441 F. Supp. 2d 185, 192-93 (D. Me. 2006)................................................ 17, 18

*Wall Data, Inc. v. Los Angeles County Sheriff's Dept.,*
   47 F.3d 769 (9th Cir. 2006) ........................................................................... 3

**STATUTES**

17 U.S.C § 505 ...................................................................................... passim

Copyright Act of 1976 .........................................................................passim

Fed. R. Civ. P.12(b)(6).................................................................................. 9

Federal Rule of Civil Procedure 54(d)(2)(B)........................................ 19

INVESTOR DEFENDANTS' REPLY TO OPPOSITION                CASE NO. 07 5744 – AHM (AJWx)
TO ITS MOTION FOR ATTORNEYS' FEES AND COSTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

When Congress enacted Section 505 of the Copyright Act of 1976 ("Copyright Act"), it provided for an award of costs, including fees, to the prevailing party to help further the policies and purposes of the Copyright Act. And, in *Fogerty v. Fantasy*, the Supreme Court articulated a list of nonexclusive factors to guide district courts in exercising their discretion in awarding the amount of attorneys' fees, including "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence." *See Fogerty*, 510 U.S. 517, 534-35, 114 S.Ct. 1023, 127 L.E.2d 455 (1994). While a party need not demonstrate each of these factors to establish that an award of fees is appropriate, as set forth in their opening brief and below, the Investor Defendants have established that they are the prevailing parties and that each of the factors set forth in *Fogerty* is present in this case and counsels strongly in favor of an award of fees here. UMG does not genuinely dispute that the Investor Defendants were the prevailing party. Tellingly, UMG's opposition brief largely ignores the relevant case law discussed in the Investor Defendants' opening brief. Instead, as discussed herein, UMG attempts to rebuff the Investor Defendants' fee motion by relying heavily upon cases that are factually and/or legally inapposite.

Moreover, the Investor Defendants' opening brief and supporting declarations set forth in detail the standard hourly rates of each professional involved in the defense of the case, the fees incurred, and an explanation as to why those fees were both necessary and reasonable. In attempting to rebut the facts set forth therein, UMG ignores the procedural history of this case, including, for example, that UMG waited until the last possible moment to add the Investor Defendants to the case, purposely attempted to thwart their abilities to participate in discovery, refused to agree to stay discovery as to the Investor Defendants, and then

engaged in further tactics apparently intended to prolong discovery and increase the expenses to be incurred by the Investor Defendants. Equally misplaced are UMG's misleading arguments regarding the Investor Defendants' rates and staffing of the case. In particular, contrary to the implications in UMG's brief, a small group of attorneys (five) performed the majority of work on behalf of the three separate Investor Defendants, with the most work done by the lowest billing timekeepers for each of the three parties. Moreover, UMG offers no evidence that the rates charged were not the prevailing rates or even that they were materially different than the equivalent rates charged by UMG's own counsel.

In sum, the Investor Defendants have established that pursuant to the Copyright Act and subsequent jurisprudence they are entitled to the costs, including fees, set forth in the declarations accompanying their opening brief. And, when the wheat is separated from the chaff, it is clear that UMG has offered no substantive basis upon which to reject the Investor Defendants' fee petitions.

## ARGUMENT

**I.   THE INVESTOR DEFENDANTS ARE ENTITLED TO COSTS, INCLUDING REASONABLE ATTORNEYS' FEES, AS PREVAILING PARTIES IN AN ACTION BROUGHT UNDER THE COPYRIGHT ACT.**

The Copyright Act provides, in pertinent part, that in any copyright action, the court in its discretion "may allow the recovery of full costs by or against any party. . . [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court held that courts are empowered by the Copyright Act with discretion to award attorneys' fees, and that discretion should be exercised to forward the policies of the Act. *Id.* at 534-35. Subsequent case law has established that Section 505 applies equally to plaintiffs and

defendants. That is, where, as here, a party who successfully defends against an infringement claim, that party is a "prevailing party" under Section 505. *Wall Data, Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006); *Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*, No. CV-05-7686, 2007 WL 4898365, at *4 (E.D. Cal. Dec. 20, 2007) (Matz, J.). As the Supreme Court noted in *Fogerty*, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them," in part because such defenses ultimately encourage the promotion of "broad public availability of literature, music and the other arts." *Id.* at 526-27.

In *Fogerty,* the Supreme Court highlighted a list of nonexclusive factors to guide a district court's exercise of discretion in awarding attorneys' fees, including "frivolousness, motivation, objective unreasonableness (in both the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19. *See also Milton H. Greene Archives*, 2007 WL 4898365, at *1 (citing factors to determine award of attorney's fees, including degree of success obtained, frivolousness, motivation, reasonableness of losing party's legal and factual arguments, and the need to advance considerations of compensation and deterrence). Not all factors must be met to support an award of attorneys' fees, and each factor need not be weighed identically when courts exercise their discretion. Nor should courts use these factors to restrict awards of attorneys' fees to only those cases where the losing party was somehow culpable or acted in bad faith, as "blameworthiness is not a prerequisite to awarding fees to a prevailing defendant." *Fogerty*, 510 U.S. at 538. Moreover, courts have held that "[a]lthough attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985).

**A.    The Investor Defendants Are Undeniably The Prevailing Parties Under 17 U.S.C. § 505 Of The Copyright Act.**

As set forth in great detail in the moving papers (pp. 8-12), the Investor Defendants are the prevailing parties because the Court dismissed all of UMG's claims against the Investor Defendants (not once but twice).   As this Court held in *Milton H. Greene Archives*, to be the "prevailing party" the Investor Defendants need only show that they "'clearly succeeded in a substantial part of this litigation, and achieved substantially the benefits [they] hoped to achieve in defending the suit.'"  2007 WL 4898365, at *4 (quoting *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532, 541 (C.D. Cal. 1995)).  *See also Wall Data*, 447 F.3d at 787.  They need not – as UMG suggests – win every motion at every stage.  Here, the Investor Defendants' success is indisputable – all claims against them were dismissed with prejudice – and UMG does not genuinely dispute that the Investor Defendants are the prevailing parties here.

**B.    Awarding Attorneys Fees Here Would Promote The Policies of the Copyright Act, Including The Policies Of Compensation and Deterrence.**

The defenses put forth by the Investor Defendants promoted the policy purposes of the Copyright Act, and, therefore, strongly suggest that an award of fees is appropriate.  In particular, here the Investor Defendants stood up to a claim by a well-heeled plaintiff who sought to extend the boundaries of secondary liability well beyond their existing borders and in a fashion that would have had a severe chilling effect on venture capital investment and innovation in the Internet space.   In doing so, the Investor Defendants reconfirmed the parameters of secondary liability, permitting even greater certainty for future investors and board members facing copyright concerns.  Contrary to UMG's contention, the Ninth Circuit in the *Fogerty* decision specifically stated that "[f]aithfulness to the purposes of the Copyright Act is ... *the pivotal criterion*." *Fantasy, Inc. v. Fogerty*,

94 F.3d 553, 558 (9th Cir. 1996) (affirming the district court's decision as to the proper cost and fee award after the Supreme Court remanded in *Fogerty v. Fantasy*). And "[w]hen the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Milton H. Greene Archives*, 2007 WL 4898365, at *3 (citing *Assessant Technologies of WI, LLC v. Wiredata, Inc.*, 361 F.d 434, 437 (7th Cir. 2004)).

Tellingly, UMG offers no response to – indeed, wholly ignores – the two Ninth Circuit decisions cited in the moving papers in which the court determined that fees should be awarded. (*See* Motion, pp. 13-14 (citing *Mattel* and *MGM Studios* decisions). Instead, in a feeble attempt to offer some response to the Investor Defendants arguments, UMG urges the court to rely on *Perfect 10, Inc. v. CWIE, LLC*, No. 02-7624, 2005 WL 5957973, at *3 (C.D. Cal. Feb. 10, 2005), where the prevailing defendant's motion for attorneys' fees was denied because the "plaintiffs brought a legitimate claim and both parties diligently advocated their positions and brought further analysis to copyright law." But the facts of *Perfect 10* are easily distinguishable from those present here. In denying fees in *Perfect 10*, the Court noted that it involved the DMCA safe harbor provision "at a time when the Act was largely untested" and at the time "involv[ed] new law with little or no legal precedent." *Id.* That is no longer the case. Moreover, UMG has repeatedly asserted to the Court here that its claims against the Investor Defendants fell easily within the four corners of existing law and were not an extension into uncharted territory. Thus, *Perfect 10* provides little – if any – guidance here. An award of fees is appropriate here for the Investor Defendants' successful defense, which stopped an aggressive, over-reaching plaintiff and will promote greater certainty in drawing lines for secondary liability, help deter future plaintiffs from overreaching and compensate defendants for their diligence in mounting a successful defense.

## C. UMG's Claims Against The Investor Defendants Were Frivolous and Brought for Improper Purposes.

As discussed in more detail in the Investor Defendants' opening brief (pp. 12-18) and below, an award of fees is appropriate here because (1) UMG's claims against the Investor Defendants run contrary to the purposes of the Copyright Act; (2) the claims set forth in UMG's Amended and Second Amended Complaint were objectively unreasonable; and (3) an award of fees is necessary to deter future baseless claims.

*First,* UMG's motivation to bring suit against the Investor Defendants runs contrary to the purposes of the Copyright Act, which was instituted to "serve[] the purpose of enriching the general public through access to creative works." *Fogerty,* 510 U.S. at 527. As further set forth in the moving papers (pp. 18-19) and below, UMG improperly attempted to gain leverage by suing Veoh's "deep pockets," which is made abundantly clear from both UMG's failure to substantively address this issue in its Opposition as well as the uncontested history of this case.

Indeed, the only response UMG offers in its Opposition is that its claims were justified because the Investor Defendants possess an ownership interest in Veoh and "participate[d] affirmatively in decisions intrinsically tied to Veoh's infringing activity." (Opp., p. 9.) Yet, just as it did when it failed to offer anything convincing in response to the Investor Defendants' motions to dismiss, UMG does not identify anywhere in its Opposition what decisions were made by the Investor Defendants and how such decisions were "intrinsically tied" to the infringement of UMG's copyrights.

Moreover, UMG's actions prior to adding the Investor Defendants to the case make clear that UMG was not primarily motivated by any meritorious legal or factual basis to sue the Investor Defendants. In particular, approximately six months before UMG filed its FAC in August 2008, UMG served subpoenas upon

the Investor Defendants seeking both documents and depositions. In response, Spark and Tornante produced documents in May 2008 and offered to make witnesses available for deposition. UMG, however, prior to adding the Investor Defendants to the case, never followed up on the document production and summarily decided not to pursue the depositions. Thus, having failed to receive any new documents from Spark or Tornante or to have pursued and taken the depositions of any of the Investor Defendants, UMG's contention that the SAC, which was filed in February 2009, contained "new" allegations, falls flat.[1] Moreover, UMG offers no explanation (presumably because there is none) for why these "new allegations" were not alleged in the FAC. Furthermore, even after adding the Investor Defendants to the case, UMG did not even pursue the taking of their depositions until late March 2009 – almost a year after they were first sought and decided not to take these depositions. Thus, UMG's conduct in taking discovery either before or after adding the Investor Defendants to the case further evidences the fact that its actions were not motivated by the merits, but instead intended to harass and drive up litigation expenses so as to pressure Veoh into either settlement or financial ruin.

*Second,* as discussed in the moving papers (pp. 15-17), UMG's claims, like its decision to file the first and second amended complaints, were objectively unreasonable. Again, rather than addressing these arguments, UMG cites to inapposite case law and misconstrues the Court's orders.

Notably, notwithstanding the fact that UMG spent much of the litigation telling the Court that its claims fell well within the mainstream of established secondary liability principles, UMG now contends that this case presents some "novel" or "unsettled principles of law." (Opp, p. 4 (citing *Garnier, Lifshitz, Donal*

---

[1]  Notably, UMG's purported "new" allegations in the SAC were based on discovery produced in May 2008 (prior to the filings of the FAC).

{00121366.DOC}                                    7

*Frederick Evans and Assocs.*, and *Dean* decisions).) Not surprisingly, in light of its previous representations to the Court, UMG's opposing papers never identify what is purportedly novel or unsettled about its claims against the Investor Defendants.[2]

In addition, to deflect attention from the issues raised in the moving papers, UMG misconstrues the Court's prior orders in a vain effort to find some support for its position. Specifically, UMG attempts to salvage its argument by stating that the Court in its Order permitting UMG to amend the complaint to add the Investor Defendants "expressly rule[d]," that "UMG's claims would not be baseless, frivolous, or objectively unreasonable." (Docket #103.) But, the Court already rejected this very argument in dismissing the FAC:

> That the Court allowed the FAC to be filed does not, of course, mean that the Court found that these allegations passed muster. The Court's August 22, 2008 order construed and applied the standards of Federal Rule of Civil Procedure 15. The Court specifically alerted the parties that "[t]o test the validity of these claims in a more appropriate manner, the investor defendants may file a motion under Fed. R. Civ. P.12(b)(6)" — which is what they have done."

---

[2] UMG quotes a statement from the *Nimmer* on Copyright treatise that the current law on contributory copyright infringement "involving the Internet" is in "disarray." (Opp., p. 5.) This statement from *Nimmer*, however, is inapplicable here, as it refers to *Perfect 10, Inc. v. Visa Int'l Service Assoc.*, 494 F.3d 788, 793 (9th Cir. 2007), in which the Ninth Circuit affirmed the district court's dismissal of plaintiff's claims against credit card companies in connection with their processing of credit card payments on websites that sold copies of plaintiff's copyrighted images. Thus, the statement from *Nimmer* refers to situations in which defendants accused of contributory infringement were *directly involved, via the Internet*, in the completion of the infringing transactions. *See id.* at 793. Here, as the Court has recognized, there is no such involvement by the Investor Defendants in any activities directly pertaining to UMG's copyrights. (*See* Docket #434, Order Dismissing SAC, p. 10.) In addition, the mere fact that Veoh, the purported direct infringer, is an Internet company does not somehow render UMG's unfounded claims against the Investor Defendants into cutting-edge issues of Internet law.

{00121366.DOC}

1   (Docket #298 at 5, n.2.)

2       With regard to the issue of whether the Investor Defendants should be

3   entitled to fees for discovery-related work, UMG also misconstrues the Court's

4   order denying the Investor Defendant's *ex parte* application for a protective order.

5   (Docket #404.) UMG argues that the Court "acknowledged the discoverability of

6   this evidence – and its relevance to UMG's claims against Veoh, as distinct from its

7   claims against the Owner Defendants – when it denied the Owner Defendants' ex

8   parte application for a protective order to stay discovery pending resolution of their

9   first motion to dismiss." (Opp., p. 11.) But the Court's Order was silent as to the

10  discoverability of evidence; instead, the Court simply denied the application with

11  an instruction to the parties to meet and confer to discuss an alternate schedule.

12      ***Finally,*** as discussed in greater detail in the moving papers (pp. 17-18), an

13  award of fees is also appropriate where, as here, such an award would deter future

14  similarly unreasonable and frivolous claims. *See Fogerty,* 515 U.S. at 533, n.19

15  (stating deterrence is an additional factor district courts should consider in deciding

16  whether to award fees under the Copyright Act); *Maljack,* 81 F.3d at 890 (noting

17  that a fee award in case where defendant obtained total success in defending against

18  baseless copyright claims may deter baseless suits.) UMG does not cite any

19  relevant legal authorities to establish otherwise. Indeed, the case upon which UMG

20  relies – *Blanch* – for the proposition that the Investor Defendants "should also

21  recognize that owning a stake in a massive copyright infringer like Veoh can attract

22  lawsuits" addresses direct infringement (*i.e.,* whether the artist defendant, not the

23  artist's investors, infringed the plaintiff's copyrights and that the artist should

24  expect his work may attract lawsuits and must accepts the risks) not the issue of

25  secondary infringement as in this case. *Blanch v. Koons,* 485 F.Supp.2d 516

26  (S.D.N.Y. 2007); (Opp., p. 8 & n.5). Thus, *Blanch* provides no support for UMG's

27  arguments here.

28

INVESTOR DEFENDANTS' REPLY TO OPPOSITION                    CASE NO. 07 5744 – AHM (AJWx)
TO ITS MOTION FOR ATTORNEYS' FEES AND COSTS

**II.** **THE INVESTOR DEFENDANTS' REQUEST FOR ATTORNEYS'**
**FEES AND COSTS IS FULLY SUBSTANTIATED AND**
**REASONABLE.**

**A.** **The Investor Defendants Are Entitled To "Full Costs," Including**
**Reasonable Attorneys' Fees, For All Tasks Related To The Defense Of**
**This Action.**

It is well settled that a "prevailing party" is entitled to fees for work beyond that one motion or event that lead to the ultimate determination of the case. In *Fantasy Inc. v. Fogerty*, (the district court's decision on the defendants' attorneys' fees motion on remand from the Supreme Court's decision in *Fogerty v. Fantasy*, 510 U.S. 517, 535 (1994)), the court determined that the defendants, having prevailed against plaintiff's copyright infringement claims on summary judgment, were entitled to attorneys' fees not for only the work performed on that particular motion, but for virtually all work performed in defense of the action, including discovery:

> Fogerty had to prepare to defend all issues at trial
> including possible damages. Extensive discovery
> was conducted by Fantasy, including twelve
> depositions, multiple sets of interrogatories,
> requests for admissions and requests to produce all
> parties. Fogerty and the Warner defendants also
> served discovery on Fantasy, including depositions
> necessary to the defense of this action. In addition,
> numerous motions were filed, including a motion
> to dismiss and two summary judgment motions.

No. C 85-4929-SC, 1995 WL 261504, at *3 (N.D. Cal. May 2, 1995). *See also Compaq Computer Corp. v. Ergonome, Inc.*, 196 F.Supp.2d 471, 476 (S.D. Tex.

2002) (awarding fees and costs of more than $2.7 million to single prevailing defendant in copyright infringement case), *aff'd*, 387 F.3d 403, 412 (5th Cir. 2004); *Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*, No. CV-05-7686, 2007 WL 4898365, at *3 (E.D. Cal. Dec. 20, 2007) (Matz, J.) (awarding attorneys' fees under 17 U.S.C. § 505 to defendant that ultimately prevailed at trial).[3]

While UMG argues that the recoverable fees should be limited to those incurred in preparing the motion to dismiss, it cites to no authority for this proposition (and the Investor Defendants are aware of none). Tellingly, none of the three cases UMG cites in this section of its brief address the question of whether when a case is ultimately decided on a motion to dismiss, a defendant is entitled to fees incurred as the result of other litigation activities. To the contrary, in one of the cases UMG cites, *Mallery v. NBC Universal, Inc.*, No. 07 CIV 2250, 2008 WL 719218, at *2 (S.D.N.Y. Mar. 18, 2008), the court noted that its fee award was supported by the prevailing defendant's submission of "detailed billing reports stating the rates charged by defense counsel and the hours spent *on each litigation task.*" *Id.* (emphasis added).

As set forth in its opening brief (pp. 19-22) and above, the Investor Defendants are entitled to "full" costs, including reasonable attorneys' fees, associated with all aspects of the defense of this action, including discovery.[4] *See* 17 U.S.C. § 505 ("the court in its discretion may allow the recovery of **full costs** by

---

[3] Should the Court determine that its assessment of an appropriate fee award requires the Investor Defendants' fees or costs to be broken down by subject matter, motions, time period or otherwise, the Investor Defendants will submit supplemental materials providing that information if the Court so requests.

[4] UMG incorrectly argues that "many of the expenses for which the Owner Defendants seek recovery would have been incurred regardless of whether UMG ever named them as defendants." (Opp., p. 11.) The discovery-related fees sought by the Investor Defendants include those fees incurred in responding to UMG's interrogatories, requests for admission, and Rule 30(b)(6) deposition notices, as well as in propounding interrogatories, document requests and Rule 30(b)(6) notices on UMG, which were reasonable and necessary to their defense against UMG's claims. These fees relating to *party* discovery were incurred precisely because UMG made the decision to add the Investor Defendants as parties.

{00121366.DOC} 11

or against any party …. [T]he court may also award **a reasonable attorney's fee to the prevailing party as part of the costs.**"); *Identity Arts v. Best Buy Enterprise Services, Inc.*, No. C 05-4656 PHJ, 2008 WL 820674, at *3 (N.D. Cal. Mar. 26, 2008) (granting defendant's motion for attorney's fees under Section 505 where "the amount of time spent *litigating* the case" was reasonable and requested fees related to "investigation and discovery" and numerous motions).

**B.      UMG's Litigation Tactics Contributed Significantly To The Amount Of Fees Incurred By The Investor Defendants.**

The reasonableness of the Investor Defendants' fees request is further evidenced by the procedural history of this case. As the Court is aware, UMG added the Investor Defendants to the case late in the discovery process and then refused all attempts to mitigate the expense to be incurred by the Investor Defendants while the motion to dismiss was pending, instead engaging in litigation tactics clearly designed to run up the costs of litigation. *See Milton H. Greene Archives*, 2007 WL 4898365, at *4 (awarding attorneys fees to prevailing defendant based on, *inter alia*, plaintiff's "litigation tactics"). As discussed in great detail in the Investor Defendants' Motion and Section I.C., *supra*, UMG's efforts to obstruct and stall were numerous:

- UMG waited until the last day possible, June 16, 2008, to move to add the Investor Defendants to the case, and by the time the FAC was filed on August 28, 2008, the fact discovery cutoff was just four months away and trial was scheduled to commence in less than a year.

- For the first four months after the Investor Defendants were added as parties, UMG refused to provide the Investor Defendants with the discovery UMG had previously obtained from Veoh, nor did UMG include the Investor Defendants in discussions as to the scheduling of depositions.

- Furthermore, UMG refused to agree to the Investor Defendants' reasonable request that activity in the case be put on hold until the Investor Defendants' motion to dismiss the FAC was decided. With no choice but to seek relief from the Court, the Investor Defendants filed a motion to sever and stay the action as to the Investor Defendants until the case against Veoh was resolved, or, in the alternative, for a status conference. (*See* Mot., p. 4.)

- Upon dismissing UMG's FAC on February 2, 2009, the Court cautioned UMG against filing yet another amended complaint, warning that "the near-certain additional costs and complications that will flow from attempting to go after deep pockets whose potential liability could entail vexing issues of corporate governance caution that 'less may be more.'" Ignoring the Court's admonition, UMG filed its SAC on the last possible date, February 23, 2009. (*See* Mot., p. 5.)

- With the SAC on file and discovery deadlines fast approaching, the Investor Defendants were forced to propound discovery on UMG. UMG failed to meaningfully respond to any of the Investor Defendants' discovery requests, instead engaging in tactics again intended to prolong discovery and run up the litigation expenses. For example, in its responses to the Investor Defendants' contention interrogatories, UMG improperly referred to paragraphs in the FAC rather than stating actual facts in support of its claims. In addition, in response to the Investor Defendants' document requests, UMG merely stated it had previously produced documents to Veoh which *might* contain documents responsive to the Investor Defendants' requests. Finally, UMG refused to make any witness available for 30(b)(6) depositions noticed by the Investor Defendants. Of course, immediately upon receiving the Court's May 5, 2009 dismissal order, the Investor Defendants ceased pursuing this discovery from UMG. (*See* Mot. pp. 6-7.)

Simply put, having waited until the last possible opportunity to add the Investor Defendants to the case, refusing to agree to a stay of discovery as to the Investor Defendants, and then pursuing a strategy intended to prolong discovery and increase the costs to the Investor Defendants, UMG is hardly in a position to complain about the expenses incurred as a result of its own strategic choices. Clearly, at UMG's insistence, the Investor Defendants were compelled to participate in all aspects of the litigation, and not just the motions practice that resulted in the dismissal, with prejudice, of UMG's claims against them.

**C.      The Investor Defendants Were Efficient In Their Defense Of This Case, And The Resulting Fees Are Reasonable.**

The fees incurred by the Investor Defendants are reasonable in light of the status of the litigation when they were added as defendants and the tactics employed by UMG. In particular, on a per-defendant basis, the attorney and professional staff hours billed for the period from September 1, 2008 through June 12, 2009 are as follows: Tornante is requesting fees for a total of 560.5 hours; Shelter a total of 959.3 hours; and Spark a total of 867.1 hours. In light of the circumstances in which the Investor Defendants were brought into this case and UMG's tactics throughout the case (discussed above), these amounts are reasonable. UMG's attempt to lump together the costs and fees of all three defendants · ignores the fact that each of the three Investor Defendants is a "prevailing party," and each is appropriately seeking costs and fees for *all* tasks necessary to their successful defense against UMG's baseless claims. In short, UMG chose to add three separate parties to this litigation. It is reasonable for each of those parties to have independent counsel.

Equally illusory is UMG's argument that over 30 professionals worked on this litigation and that the attorney staffing for the Investor Defendants was inefficient or partner-heavy. A review of the declarations and bills submitted shows

that this argument is simply a red-herring:

- Contrary to UMG's assertion that the matter was overstaffed, the fact is that the vast majority of the fees requested by each of the Investor Defendants are for the work of just one or two attorneys per client: (i) Alisa Edelson's work accounts for 97% of the attorneys' fees requested by Tornante; (ii) Maria Vento's[5] and Joel Cavanaugh's work accounts for 85% of the attorneys' fees requested by Spark; and (iii) Robert Badal's and Amanda Walker's work accounts for 74% of the attorneys' fees requested by Shelter.[6]

- Thus, these three defendants between them had five attorneys who performed the lion's share of the work under tight deadlines. Notably, these three defendants have, in total, deployed fewer attorneys than UMG has in its prosecution of the case.

- For all three Investor Defendants, the work performed by the attorneys with the lowest rates accounts for the largest percentage of the requested fees: (i) Alisa Edelson's work accounts for 97% of the fees for Tornante; (ii) Joel Cavanaugh's work accounts for 54% of the work performed for Spark; (iii) Amanda Walker's work accounts for 61% of the work performed by WilmerHale on behalf of Shelter; and (iv) Amanda Walker and Sean Sullivan's work accounts for 53% of the work performed by WilmerHale, Heller Ehrman, and Orrick for Shelter.

- UMG asserts that it only had two partners from Irell working on the case and asserts that the Investor Defendants had many more partners involved. The

---

[5] UMG incorrectly includes Ms. Vento in its list of partners who represented Spark. As indicated in the Declaration of Mark G. Matuschak filed in support of the Investor Defendants' Motion, Ms. Vento is Counsel at WilmerHale.

[6] In addition, even though three firms ultimately performed work on behalf of Shelter due to the dissolution of Heller Ehrman, still only four attorneys (Robert Badal, Annette Hurst, Amanda Walker, and Sean Sullivan), and not more than three of them working at any one time, accounted for 88% of the work across the three firms for Shelter.

{00121366.DOC}                                        15

fact is that of the partners actively working on this case on behalf of all three Investor Defendants and across all firms, 82% of all the partner level work was done by only two partners – Robert Badal and Annette Hurst. In essence, the Investor Defendants, like UMG, had two partners actively working on this litigation.

- The efficient staffing of this matter helped reduce the fees incurred by the Investor Defendants. The average weighted hourly rates incurred by each Investor Defendant (based on billing rates and total hours of the attorneys listed) are as follows: $300 for Tornante (Alisa Edelson); $489.15 for Spark (Maria Vento and Joel Cavanaugh); and $520.70 for Shelter (Robert Badal, Annette Hurst, Amanda Walker, and Sean Sullivan). Furthermore, the combined average weighted hourly rate across all three Investor Defendants for these attorneys is $454.48.

In light of the actual data, it is clear that this matter was neither overstaffed nor overbilled. Five attorneys did the bulk of the work for three separate clients and did so on a net-effective hourly rate that was reasonable.

**D.  The Investor Defendants Have Submitted Sufficient Evidence To Establish That Their Attorneys' Hourly Rates Are Reasonable.**

As demonstrated by the attorney declarations submitted in support of the Investor Defendants' motion, the Investor Defendants were each billed the standard hourly rate in effect at each law firm, and UMG has offered nothing to controvert the reasonableness of these rates. All UMG could muster in support of its opposition, is the declaration of an Irell & Manella LLP partner, Steven Marenberg, which states that (i) no more than two Irell partners have been assigned to this matter or two other matters in which Irell represents UMG, and (ii) that those

partners' rates are lower than the rates billed by some of the WilmerHale partners.[7] (*See* Marenberg Decl., ¶¶ 2-3.)

Notably, the Marenberg declaration is silent as to (i) the actual respective rates charged by the two Irell partners billing to UMG, (ii) how the experience level of those partners line-up with the defendants' partners, and (iii) how many Irell non-partners worked on this matter or their respective rates. Also, as indicated above, just two partners, Robert Badal, and Annette Hurst, , billed 82% of the total partner hours requested by the three Investor Defendants combined.

Further, UMG is incorrect in its implication that the Investor Defendants have an obligation to submit a "community survey" of billing rates to demonstrate the reasonableness of their attorneys' rates. In support of its position, UMG cites dicta from three cases in which the courts, exercising their discretion, determined that the information provided by the party requesting fees was insufficient to establish the reasonableness of the fees requested. None of the cases UMG cites, however, established a rule as to the necessity of conducting community surveys.

Two of the cases UMG cites (*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989)), involve attorneys' fees requests under 42 U.S.C. § 1988, a civil rights fee-shifting statute. In the third case, *Universal Studios Production LLP v. Bigwood*, 441 F. Supp. 2d 185, 192-93 (D. Me. 2006), the court determined that the prevailing plaintiffs failed to make the necessary showing for an award of attorneys' fees because "[i]n order to properly support the reasonableness of the hourly rates, Plaintiffs should have provided the Court with information regarding their attorneys' experience in this area of the law as well as some support, by an attorney with personal knowledge, for the reasonableness of the hourly rates charged." *Id.*

---

[7] UMG also submitted the declaration of Carter Batsell in support of its opposition as to the hourly rates submitted by defense counsel. The Investor Defendants have moved to strike the Batsell Declaration for the reasons stated in the accompanying motion.

{00121366.DOC}

17

The attorney declarations submitted by the Investor Defendants provide, in detail and based upon the attorneys' personal knowledge, precisely the types of information the court deemed to be missing from the attorney declarations in the *Universal Studios* case. (*See* Declarations of Robert G. Badal, Mark G. Matuschak, Alisa Edelson, and Annette Hurst.) Thus, UMG simply has offered no evidence to rebut the showing that the rates charged by attorneys with the credentials and experience outlined in the supporting declarations were reasonable.

## III. THIS COURT SHOULD NOT POSTPONE ITS RULING ON THE MOTION UNTIL THE NINTH CIRCUIT RULES ON THE MERITS OF UMG'S APPEAL.

It is well established that an appeal does not justify postponing a decision on attorneys' fees. *See, e.g., Klein v. Central States, Southeast and Southwest Areas Health and Welfare Plan*, --- F.Supp.2d ---, No. 3:08-cv-2268, 2009 WL 1416048, at *2 (N.D. Ohio May 19, 2009) (declining to defer plaintiff's motion for attorneys' fees and costs pending defendant's appeal because "efficiency favors ruling on the motion for fees and costs now"); *In re Unisys Corp. Retiree Medical Benefits ERISA Litigation*, No. 03-3924, 2007 WL 4287393, at *1-2 (E.D. Pa. Dec. 4, 2007) ("[T]he usual course is for the Court to consider attorneys' fees promptly after the merits decision rather than stay the Fee Petition until resolution of the appeal."); *Turley v. New York City Police Dept.*, No. 93 Civ. 8748, 1998 WL 760243, at *1 (S.D.N.Y. Oct. 30, 1998) (declining to defer ruling of plaintiff's motion for fees pending defendants' appeal to the Second Circuit). UMG's half-hearted attempt to argue otherwise is not even supported by the one case to which it cites. *See Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116 (2d Cir. 2001) (no finding that the attorneys' fees motion should be postponed). Moreover, in *Matthew Bender*, the court of appeals noted that its holding, which found plaintiff's positions were objectively reasonable, "does not necessarily require a reversal" of

the District Court's award of attorneys' fees because "other factors may support a fee award despite a finding of objective reasonableness." *Id.* at 123.

Furthermore, given that Federal Rule of Civil Procedure 54(d)(2)(B) requires that a fees motion "be filed no later than 14 days after entry of judgment," it follows logically that the Court would decide a fees motion shortly after judgment is entered. Such a timely decision ensures that issues in the fees motion will be resolved while they are still fresh and also gives the appellate court the opportunity to review potential disputes that might arise from the Court's ruling on the fees motion in conjunction with the underlying appeal. *See* 1993 Advisory Committee Note to Fed. R. Civ. Pro. 54(d)(2)(B) ("In many nonjury cases the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case. . . . Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case."); *Slip 'N Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113, 2007 WL 1098751, at *3 (S.D. Fla. Apr. 8, 2007) (declining to defer plaintiff's motion for attorneys' fees pending defendant's appeal, finding such a delay "not tenable" and noting that "the Court of Appeals may want to consider" the award of attorney's fees "in conjunction with an appeal of the ultimate judgment rendered in the case").

## IV. SUPPLEMENTAL FEE REQUEST.

The case law permits as recoverable fees under Section 505 the fees incurred in making the Section 505 request. *See Cruz v. Hauck*, 762 F.2d 1230, 1236-38 (5th Cir. 1985) (a prevailing party is entitled to fees for time preparing the fee application.). As such, should the Court award fees, the Investor Defendants respectfully request the opportunity to file a supplemental fee petition that includes

the fees associated with this reply brief and any oral argument on this motion. *See id.; see also, Milton H. Greene Archives*, 2007 WL 4898365, at *6, 7 (including in the final fees award an amount for additional fees incurred in seeking the award).

## CONCLUSION

For the foregoing reasons, the Investor Defendants respectfully request that the Court award the Investor Defendants their reasonable attorneys' fees and costs in the total sum of $1,078,677.05 to be paid in the amounts of $479,289.51, $426,802.91, and $172,584.63 to Shelter, Spark and Tornante, respectively. The Investor Defendants also respectfully request that they be permitted to supplement their fee requests to account for fees and costs incurred in preparing this Reply brief and in participating in any oral argument on the motion.

Dated: July 13, 2009

Respectfully submitted,

WILMER CUTLER HALE PICKERING & DORR LLP

ORRICK HERRINGTON & SUTCLIFFE LLP

By */s/ Robert G. Badal*
    ROBERT G. BADAL

Attorneys for Defendants
SHELTER CAPITAL PARTNERS, LLC and
SHELTER VENTURE FUND, L.P.

Dated: July 13, 2009

Respectfully submitted,

KULIK, GOTTESMAN, MOUTON & SIEGEL, LLP

By */s/ Alisa S. Edelson*
    GLEN L. KULIK
    ALISA S. EDELSON

Attorneys for Defendant
THE TORNANTE COMPANY LLC

{00121366.DOC}    20
INVESTOR DEFENDANTS' REPLY TO OPPOSITION
TO ITS MOTION FOR ATTORNEYS' FEES AND COSTS    CASE NO. 07 5744 – AHM (AJWx)

Dated: July 13, 2009                    Respectfully submitted,

WILMER CUTLER HALE PICKERING AND
DORR LLP

By */s/ Maria Vento*
                          MARIA VENTO

Attorneys for Defendants
SPARK CAPITAL PARTNERS, LLC AND
SPARK CAPITAL, L.P.