Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., a California Corporation, et al., <br><br> Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)** <br><br> **VEOH'S OPPOSITION TO UMG'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE REFERENCE TO EVIDENCE OF VEOH'S CURRENT FINANCIAL POSITION, POTENTIAL BANKRUPTCY, AND LAYOFFS** <br><br> Hearing Date: 8/3/09 <br> Time: 10:00 a.m. <br><br> Hon. A. Howard Matz |

LA:250060.1

**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 6 – CASE NO. 07 5744 – AHM (AJWx)**

## I. INTRODUCTION

Plaintiffs UMG Recordings, Inc., et al. ("UMG") seek to exclude from trial all evidence and argument relating to Veoh Networks, Inc.'s ("Veoh") current financial position, potential bankruptcy, and any past or anticipated layoffs. In other words, UMG would prefer that there be no evidence regarding the financial devastation that Veoh suffered as a result of UMG's baseless lawsuit.

Veoh's financial position is relevant to UMG's claim for vicarious liability, for which UMG must show that Veoh obtained a direct financial benefit from the alleged infringement. Veoh's financial condition is also relevant to show that Veoh did not profit from the alleged infringement, and thus did not lose protection of the Section 512(c) safe harbor. Veoh's financial position should also be considered when deciding what level of statutory damages are appropriate. Indeed, UMG itself has listed multiple proposed trial exhibits concerning Veoh's actual and projected financial performance, including Veoh's audited and unaudited financial statements, projections going forward through 2009, and calculations conducted by Veoh. See UMG's Proposed Exhibits 80, 81, 366, 367, 369, 372, 373, 384, 385 and 488. At the same time, UMG's experts "conclude[] that there was [a link between the use of UMG content and Veoh revenues]." Deposition of Benjamin Edelman at 02:58:44-59:02; *see also* Deposition of David Blackburn at 09:26:48-26:55 ("I have seen sufficient evidence to conclude that they have earned some revenue as a result [of the alleged infringement].).

The entire point of this lawsuit has not been to punish an "widescale copyright pirate" as UMG would have it; instead, it has been to bankrupt a small yet innovative and copyright-compliant business and replace it with a UMG entity of virtually the same name – UMG's recently, and highly touted, Vevo.[1] Regardless of UMG's motive, evidence of Veoh's current and past financial performance is relevant to the

---

[1] Dawn Chmielewski, <u>Universal Music, YouTube Forge Partnership</u>, Los Angeles Times, Apr. 10, 2009, <u>available at</u> http://articles.latimes.com/2009/apr/10/business/fi-ct-youtube10.

LA:250060.1          1

**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 6– CASE NO. 07 5744 – AHM (AJWx)**

1 Court's consideration of UMG's copyright claims. Furthermore, any alleged
2 prejudice would be minor and can be easily addressed at trial or altogether avoided by
3 giving the jury a limiting instruction. Accordingly, UMG's motion should be denied.

## II. ARGUMENT

### A. **Evidence of Veoh's Financial Condition Is Relevant to UMG's Claims and Veoh's Defenses**

"Disputes as to the relevance of certain evidence" are "especially ill-suited to resolution on a motion *in limine.*" *Evers v. Regents of the University of Colorado*, No. 04-cv-02028, 2008 WL 2856449, at *229 (D. Colo. July 23, 2008). Here, evidence of Veoh's financial condition has a direct bearing on key disputed issues, and plainly meets the broad standard for relevance set by Rule 401. UMG now claims that Veoh's financial state is irrelevant to any issue before the Court, yet, at the same time, attempts to introduce evidence of Veoh's historical financial condition and performance. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The rules adopt a "very expansive definition" of relevance. *United States v. Curtis*, 568 F.2d 643, 645 (9th Cir. 1978).

Veoh's financial condition is directly relevant to UMG's alleged copyright infringement claims. In order to establish its claim for vicarious liability, UMG must show that Veoh directly benefited from the alleged infringement. *See* Ninth Circuit Manual of Model Civil Jury Instruction ("MJI") § 17.20.. Indeed, UMG has repeatedly asserted links between Veoh's financial state and its alleged copyright infringement. In UMG's complaint, for instance, it claims that Veoh "directly profits from its mass infringement." Second Amended Complaint (Dkt. No. 308) at 10. Further, in its opposition to Veoh's motion for summary judgment, UMG declares without any support that "the more Veoh infringes, the more money it earns." UMG's Opposition to Veoh's Renewed Motion for Summary Judgment Re: Entitlement to

Section 512(c) Safe Harbor (Dkt. No. 150) at 19. Moreover, in its proposed exhibit list for trial, UMG lists multiple documents concerning both Veoh's historical financial performance and future projections; it also seeks to introduce formal valuations of UMG's business as well as the opinions of profit of two experts, Messrs. Blackburn and Edelman. UMG should not be able to paint this alleged picture of profitability without allowing Veoh to counter it with the truth: not only has Veoh not profited from any alleged liability, it has consistently (and constantly) lost millions upon millions of dollars resulting in a current dire financial condition. Veoh disputes UMG's "facts" of profitability and challenges the alleged connection UMG draws between Veoh's allegedly infringing activities and its financial condition.

Further, a service provider otherwise eligible for safe harbor protection may lose that protection under subsection 512(c)(1)(B) if the copyright plaintiff can show, *inter alia*, a financial benefit directly attributable to the particular infringement alleged. 17 U.S.C. § 512(c)(1)(B). Direct financial benefit exists only where there is a "causal relationship between the infringing activity and any financial benefit." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Thus, in *Ellison*, payment to AOL for generalized internet services did not constitute a financial benefit because the plaintiff had failed to establish a causal nexus between the allegedly infringing activity and the financial benefit AOL received. *Id.* at 1079. In *CoStar,* the court held that since no users made any payments for use of the service provider's site (as here), there could be no direct financial benefit as a result of the infringing conduct. *CoStar Group Inc. v. Loopnet Inc.*, 164 F. Supp. 2d 688, 705 (D. Md. 2001).

As in *Ellison*, there is no evidence that Veoh ever attempted to capitalize on providing infringing material, and Veoh does not use UMG material as a "draw" and does not derive a financial benefit directly attributable to infringing conduct. Veoh's financial position directly supports this lack of financial benefit to Veoh.

In addition, to the extent that Veoh is liable for any infringement, evidence of Veoh's financial state is also relevant to damages. Even though UMG seeks statutory

LA:250060.1

3

VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 6 – CASE NO. 07 5744 – AHM (AJWx)

damages, such damages "should bear some relation to actual damages suffered." *RSO Records, Inc. v. Peri*, 596 F.Supp. 849, 862 (S.D.N.Y. 1984). "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). Here, evidence of Veoh's financial condition—particularly its lack of profitability—is relevant and probative to UMG's actual or statutory damages.

The evidence is also relevant to Veoh's argument that UMG's motive for filing suit was not to stop the alleged infringements but really to cripple a burgeoning technology company—either by extracting an extortionist settlement from Veoh or by draining Veoh's resources with a massive infringement suit (which unfortunately, UMG has largely managed to do).

B.  **The Probative Value of Evidence About Veoh's Financial Conditions Outweighs Any Prejudicial Value**

UMG also claims that even if evidence of Veoh's financial situation is relevant, the evidence should be excluded under FRE 403 because of a threat of unfair prejudice to UMG. UMG speculates that evidence of Veoh's lack of profitability may cause the jury to "sympathize" with the company, because the jury will worry that a verdict against Veoh may cause employee layoffs. UMG's Motion *in Limine* No. 6 (Dkt. No. 506), at 2. Evidently, according to UMG, the jury will be particularly sensitive to the consequences of its verdict "in today's economic climate." *Id.*

Like Rule 401's broad definition of relevance, Rule 403 "favors admissibility." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). As discussed above, evidence of Veoh's financial condition is highly probative. It is directly relevant to issues raised in UMG's claims and indispensable to Veoh's ability to lodge a proper defense. In contrast, the prejudice engendered by admitting the evidence, if any, is minor. UMG does nothing but speculate that the jury will draw some attenuated link between its own findings of fact and the subsequent well-being of Veoh's employees.

LA:250060.1

4

VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 6 – CASE NO. 07 5744 – AHM (AJWx)

More bizarre is UMG's suggestion that the jury's ostensible sympathy for Veoh—a corporate defendant—will be particularly acute "in today's economic climate" and somehow infect their verdict. "Today's economic climate" does not create a bar against admitting patently relevant evidence simply because it concerns a company's finances. To the extent that there is *any* danger of unfair prejudice, this danger certainly does not "substantially outweigh" the probative value of the evidence. Fed. R. Evid. 403.

If UMG is concerned that the jury will draw improper inferences from the realities of Veoh's financial situation, then it can move to have a limiting instruction read. What UMG cannot do, however, is use a motion *in limine* to keep the jury from hearing an entire class of plainly relevant evidence disputed by both parties. The weight of the evidence is for the jury to decide.

## III. CONCLUSION

UMG's Motion No. 6 is unnecessary. If granted, it would exclude a broad category of relevant evidence before the trial has even begun. In contrast, a denial of UMG's motion *in limine* will neither prevent UMG from objecting to particular items of Veoh's evidence, nor countering Veoh's arguments with its own evidence. It will simply require UMG to do so in the proper context of the trial. Based on the foregoing, the Court should deny UMG's Motion No. 6 to preclude evidence or argument relating to Veoh's current financial position, potential bankruptcy, and past or anticipated layoffs.

Dated: July 20, 2009

WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Calkins
Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.