Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC., a California Corporation, et al.,<br><br>    Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)**<br><br>**VEOH'S OPPOSITION TO UMG'S MOTION *IN LIMINE* RE: COPYRIGHTED WORKS WITHDRAWN FROM UMG'S LIST OF INFRINGING WORKS (MOTION *IN LIMINE* NO. 2)**<br><br>Hearing Date: 8/3/09<br>Time: 10:00 a.m.<br><br>Hon. A. Howard Matz |

LA:250106.2

**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 2– CASE NO. 07 5744 – AHM (AJWx)**

## I. INTRODUCTION

After waiting more than a year to identify any alleged infringements in this action, it took UMG (which would be expected to have devoted considerable resources to properly locating and identifying claimed infringements) over four months to figure out that it had misidentified numerous works at issue.[1] As a result, UMG withdrew nearly fifty works entirely from the case, amounting to a reduction of seven million dollars in potential statutory damages. In fact, just three days ago, on July 17, 2009, UMG again withdrew numerous alleged infringing videos from this action, in one case explaining that it had asserted claims for "Poison" by the artist Bel Biv Devoe, when such videos were actually "Respect" by Aretha Franklin.[2]

UMG now claims, in its Motion, that no evidence of its withdrawals should be adduced. Yet, many of UMG's claims -- and Veoh's defenses -- depend upon whether Veoh had notice or knowledge of the alleged infringements. Indeed, UMG has argued that Veoh should be on notice of UMG's alleged infringements simply by viewing the videos. Obviously this position becomes exponentially less reasonable when considering the admitted errors UMG has experienced in itself identifying alleged infringements on Veoh. If UMG and its team of lawyers, who have been litigating this action for nearly two years, are unable to properly identify UMG's alleged infringements, Veoh's employees cannot reasonably be expected to do so in the absence of notices by the claimed content owners. This is especially true considering that UMG's own agents have uploaded videos to Veoh.

UMG's attempt to force Veoh to shoulder the entire burden of policing and accurately identifying infringements, with no assistance or cooperation from UMG, is unreasonable and unworkable; UMG itself cannot figure out what it owns and what it

---

[1] UMG explains these removals as "data entry errors in including the works, changes in rights due to passage of time, and similar corrections." (*See* Dkt. No. 429, p.2:12-13.)

[2] Because these songs and artists have virtually nothing in common, it is unclear how UMG could have made such mistake, and not recognized such mistake until the eve of trial.

1
**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 2– CASE NO. 07 5744 – AHM (AJWx)**

doesn't. Thus, this evidence is highly probative, and outweighs any concerns of jury confusion or waste of time. UMG's Motion to exclude this evidence should be denied.

## II. UMG'S WITHDRAWALS OF INFRINGEMENTS

Though UMG filed this action in September 2007, it did not specifically identify any allegedly infringing videos in its Complaint. Not until December 1, 2008 (after Veoh was forced to engage in extensive motion practice) did UMG finally identify alleged infringements. On April 22, 2009, nine business days after UMG purportedly provided chain of title documents for the 20% sample works the Court ordered UMG to produce, UMG withdrew dozens of works (from within the 20% sample) from the action entirely. (Ranahan Declaration in Support of Veoh's Mot. to Compel, Dkt. No. 432-2, ¶ 6 and Exh. E). The withdrawals were not from what UMG represents in its motion to be scattered evenly throughout the 7000 videos, but came disproportionately from the 20% sample for which UMG was ordered to produce ownership documents. (Veoh's Mot. to Compel (Dkt. No. 432) at pp. 4-5.)

UMG withdrew a total of 49 works, and at the time the 20% sample was identified, a 20% sample was 241 works.[3] On May 11, 2009, the deadline for fact discovery in this case and more than a year and a half after filing suit, UMG further amended its list of alleged infringements, withdrawing at least eight more videos that UMG had previously identified as infringing. (*See* Reply ISO Veoh's Mot. Compel, Dkt. No. 441). Just three days ago, on July 17, 2009, UMG again withdrew numerous alleged infringing videos from this action. (*See* UMG's Exhibit 708.).

In short, after waiting more than a year to identify any alleged infringements in this action, it took UMG (which would be expected to know about what it owned and to have devoted considerable resources to properly locating and identifying its alleged infringements) more than four months to figure out that it had misidentified numerous

---

[3] UMG also identified numerous additional errors and inaccuracies in its list of alleged infringements. Thus after UMG was ordered to produce chain of title documents, it appears that UMG took greater diligence into whether the works were actually UMG's works to sue upon. These withdrawals reduced potential statutory damages by over $7,000,000.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

works; indeed, it continues to alter those works it believes to have been infringed. How Veoh can be accused of having knowledge of infringing works when even UMG cannot determine is anyone's guess, and it remains a relevant and probative inquiry.

## III. UMG'S WITHDRAWALS ARE SUFFICIENTLY PROBATIVE

### A. UMG'S Withdrawal Of Videos From its List Of Alleged Infringements Is Directly Relevant To The Claims and Defenses in this Lawsuit

Whether Veoh had knowledge of the alleged infringements at issue in this action is highly relevant to UMG's copyright infringement claims and Veoh's defense. With respect to UMG's claim for Contributory Copyright Infringement, UMG has the burden of proving that *Veoh knew or had reason to known of the direct infringing activity.* Ninth Circuit Manual of Model Jury Instructions Civil § 17.21 (2007). With respect to UMG's claim for Inducing Copyright Infringement, UMG also has the burden of proving that *Veoh knew or had reason to know of the direct infringing activity*. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd*., 545 U.S. 913, 935 (2005); Ninth Circuit Manual of Model Jury Instructions: Civil § 17.21 (2007). UMG itself has argued in its Pre-Trial Conference Order UMG committed "willful blindness" in failing to ferret out all of UMG's alleged infringements without any cooperation from Veoh. (citing *In re Aimster Copyright Litig*, 334 F.3d 643 (7th Cir. 2003) ("Willful blindness is knowledge[] in copyright law")).

UMG has suggested that Veoh should have been able to recognize the alleged infringements at issue. UMG has argued this despite its never having sent Veoh a single DMCA notice, Veoh should have had "awareness of apparent infringements" because the allegedly infringing videos contained "red flags" that provided Veoh knowledge of the alleged infringements. *See* UMG's Opposition to Veoh's Motion for Summary Judgment Re Section 512(c) Safe Harbor (Docket No. 380) at pp. 2:9-13, 7:23-8:5, 10:6-11:9. Yet UMG's inability to itself accurately identify infringements of its own works—even in the context of providing verified

1 interrogatory responses in the midst of high stakes litigation—only highlights that
2 there were no such "red flags," and moreover, that Veoh lacked the ability to make
3 such determinations without cooperation or notification from UMG.

4 Veoh, a site with millions of user posted videos and with a variety of content
5 arrangements with, for example, a music video content owner like Sony BMG, cannot
6 be expected to have knowledge of infringements if the actual content owner UMG
7 does not. This is particularly true where, as here, UMG itself posted videos to Veoh.

### B. The Probative Value of the Evidence Outweighs Any Risk of Delay or Confusion

10 While UMG may have been confused about its own copyrights, the very
11 evidence of this confusion demonstrates the difficulty Veoh would have attempting to
12 make ownership decisions on its own. Consequently, the probative nature of the
13 evidence outweighs concerns of juror confusion or waste of time.

14 UMG argues that evidence of these withdrawals should not be allowed since the
15 works that were withdrawn are not owned by Veoh, but other unidentified third
16 parties. Thus, apparently UMG now considers that it does not matter if it actually
17 owns the works at issue and considers itself free to assert infringements against Veoh
18 for works owned by other copyright owners. In other words, UMG argues that the
19 difficulties in recognizing its works should somehow be ignored because alleged
20 infringements that UMG has indisputably withdrawn may have been infringing videos
21 owned by some unknown, unspecified third party, who has *not* sued Veoh for any
22 infringement whatsoever. Yet, Veoh has legitimate arrangements with major record
23 labels like Sony BMG. As a result, UMG's argument that if UMG doesn't own it
24 Veoh still has no right to display it is fatally flawed.

25 UMG's withdrawals are also highly probative to demonstrate why UMG's
26 cooperation in identifying its alleged infringements is essential, and why UMG's
27 refusal to identify works until well after this litigation was filed is so important. It
28 outweighs UMG's specious theories and unsupported claim that the jury will be

4

confused or that such evidence will waste time; indeed, UMG does not bother to quantify how much time this evidence will take, no doubt because it will be brief. The Court should reject UMG's argument and allow the evidence.

## IV. CONCLUSION

For all the foregoing reasons, UMG's Motion *In Limine* No. 2 should be denied.

Dated: July 20, 2009				WINSTON & STRAWN LLP


				By:	/s/ Erin R. Ranahan
					Michael S. Elkin
					Thomas P. Lane
					Jennifer A. Golinveaux
					Rebecca Calkins
					Erin Ranahan

					Attorneys for Defendant
					VEOH NETWORKS, INC.