| | |
|---|---|
| 1 | Rebecca Lawlor Calkins (SBN: 195593) |
| | Email: rcalkins@winston.com |
| 2 | Erin R. Ranahan (SBN: 235286) |
| | Email: eranahan@winston.com |
| 3 | **WINSTON & STRAWN LLP** |
| | 333 South Grand Avenue, 38th Floor |
| 4 | Los Angeles, CA 90071-1543 |
| | Telephone: (213) 615-1700 |
| 5 | Facsimile: (213) 615-1750 |
| 6 | Jennifer A. Golinveaux (SBN 203056) |
| | Email: jgolinveaux@winston.com |
| 7 | **WINSTON & STRAWN LLP** |
| | 101 California Street |
| 8 | San Francisco, CA 94111 |
| | Tel: (415) 591-1506/Fax: (415) 591-1400 |
| 9 | |
| 10 | Michael S. Elkin (admitted *pro hac vice*) |
| | Email: melkin@winston.com |
| 11 | Thomas P. Lane (admitted *pro hac vice*) |
| | Email: tlane@winston.com |
| 12 | **WINSTON & STRAWN LLP** |
| | 200 Park Avenue |
| 13 | New York, New York 10166 |
| | Tel: (212) 294-6700/Fax: (212) 294-4700 |
| 14 | Attorneys for Defendant VEOH NETWORKS, INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> VEOH NETWORKS, INC., a California Corporation, et al., <br><br> Defendants. | Case No. CV 07 5744 -- AHM (AJWx) <br><br> **VEOH'S OPPOSITION TO UMG'S MOTION *IN LIMINE* RE: EVIDENCE RELATING TO VEOH'S BELIEF IN THE LEGALITY OF ITS CONDUCT (MOTION *IN LIMINE* NO. 4)** <br><br> Hearing Date: 8/3/09 <br> Time: 10:00 a.m. <br><br> Hon. A. Howard Matz |

LA:250014.2

**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 4– CASE NO. 07 5744 – AHM (AJWx)**

# I. INTRODUCTION

With its Motion, UMG asks the Court to exclude any and all evidence that Veoh believed in the legality of its conduct simply because Veoh has elected not to pursue the affirmative defense of advice of counsel. UMG's Motion fails to recognize the distinction between Veoh's right to rebut elements on which UMG has the burden, such as willfulness, and Veoh's election not to pursue an affirmative defense that would require the introduction of specific privileged communications.

There are countless public, non-privileged forms of evidence that demonstrate why Veoh would rightfully believe in the legality of its conduct. None of these depend on the specific substance of any privileged communications. For example, Veoh has adopted and implemented a strong DMCA Policy. Indeed, last year, a court granted Veoh's motion for summary judgment regarding its entitlement to Section 512(c) safe harbor in a copyright infringement suit, holding that the record demonstrated that "far from encouraging copyright infringement, Veoh has a strong DMCA policy, takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website." *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132, 1155 (N.D. Cal. Aug. 27, 2008). Earlier in this case, this Court denied UMG's motion for summary judgment that sought a ruling that Veoh was ineligible for Section 512(c) safe harbor. *See* Order Denying UMG's Mot. For Partial Sum. J, Docket No. 293.

Further, Veoh has signed onto the UGC Principles—a public testament to its efforts to cooperate with content owners when it comes to concerns about copyright infringement. Thus, Veoh's belief about the legality of its conduct comes from numerous sources that do not depend upon the disclosure of privileged communications. Veoh's belief is admittedly relevant to refute elements that UMG has the burden of proving, namely, whether Veoh willfully infringed UMG's copyrights, which alone has the potential to increase potential statutory damages to a staggering degree, or, in determining Veoh's affirmative defense of innocent intent,

which can justify the lowering of statutory damages to $200 per infringed work. 17 U.S.C. §504(c)(2).

Moreover, contrary to UMG's suggestion, Veoh has never sought to introduce any privileged communication as a "shield," and beyond UMG's mere conjecture, there is no evidence of "equivocal opinions suggesting that no clear precedent held Veoh's conduct lawful." In fact, leaving aside clear precedent that did hold Veoh's conduct to be lawful, Veoh has not sought to introduce the substance of any privileged communication for any purpose.

The probative value of evidence surrounding Veoh's belief in the legality of its conduct extends far beyond privileged communications; all sorts of publicly available evidence supports Veoh's belief of legality. Assuming an unlikely finding of infringement, this evidence is relevant to willfulness, as well as to a determination of whether Veoh was an innocent infringer, and the probative value outweighs any prejudice to UMG. Thus, UMG's Motion *In Limine* No. 4 should be denied.

## II. THERE ARE COMPELLING NON-PRIVILEGED REASONS WHY VEOH BELIEVES IN THE LEGALITY OF ITS CONDUCT

### A. Prior Rulings That Veoh's Policies and Implementation of Those Policies Are Lawful Under the DMCA

Section 512 of the DMCA establishes four safe harbors that "protect qualifying service providers from liability for all monetary relief for direct, vicarious and contributory infringement," H. Rep. No. 105-796, at 73 (1998), as reprinted in 1998 U.S.C.C.A.N. 639, 649; *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 732 (9th Cir. 2007); *Ellison*, 357 F.3d at 1076. Section 512 shields qualifying service providers from "all monetary relief," and "most equitable relief." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp.2d 1090, 1098-99 (W.D. Wash. 2004).

Veoh has been adjudicated to be both eligible for and entitled to Section 512(c) safe harbor. Earlier in this case, this Court denied UMG's motion for partial summary judgment seeking a ruling that Veoh was ineligible for Section 512(c) safe harbor.

*See* Order Denying UMG's Mot. For Partial Sum. J, Dkt. No. 293. Last year, a court granted Veoh's motion for summary judgment regarding its entitlement to Section 512(c) safe harbor in a copyright infringement suit, holding that the record demonstrated that "far from encouraging copyright infringement, Veoh has a strong DMCA policy, takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website." *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1155 (N.D. Cal. Aug. 27, 2008). This Court and the *Io* court have already confirmed that certain automated functions of Veoh's technology do not make Veoh ineligible for Section 512(c) safe harbor. *See* Dkt. No. 293; *Io,* 586 F.Supp.2d at 1146-49. These rulings have reinforced Veoh's belief in the legality of its conduct, thus offering a compelling non-privileged basis for such beliefs.

Because Veoh is a model citizen under the DMCA and complies with all of its requirements, as in the *Io* action, Veoh has filed a motion for summary judgment in this action under the third DMCA safe harbor, Section 512(c) (Dkt. No. 449), which protects service providers from liability for "the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c).

Veoh was able to obtain prior rulings in its favor because its track record in responding to third party notices is exemplary. Veoh has zero tolerance for infringing content. Statement of Undisputed Facts in Support of Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c) Safe Harbor ("SUF"), Dkt. No. 450. Veoh promptly disables access to allegedly infringing content upon notice, and has always had a policy to terminate repeat infringers. SUF ¶¶ 26-27. In fact, Veoh's system was designed to allow Veoh to disable access to inappropriate content once it received notice of such content. *Id.,* ¶ 28. Unlike a so-called "peer-to-peer" network that allows users to exchange files directly, Veoh designed a system where users would upload videos to Veoh's servers, and Veoh would have the ability to disable

access to any identified as infringing. *Id.* Veoh's policies have always strictly prohibited the use of its website or software in connection with infringing content. Veoh's website has always stated that Veoh does not permit infringing videos and that Veoh reserves the right to terminate repeat infringers. All prior versions of Veoh's TOU and incorporated documents have contained similar language. *Id.,* ¶ 31. Veoh sets forth its DMCA policy in detail and describes how to send Veoh notices of claimed infringement. *Id.,* ¶¶ 32-33. Veoh also reminds users of its policies each time a user begins to upload a video to the veoh.com website, with a message stating "Do not upload videos that infringe copyright, are pornographic, obscene, violent, or any other videos that violate Veoh's Terms of Use." *Id.,* ¶ 34. Veoh provides additional warnings to users of its Veoh Client software. Before using the software, users must first consent to Veoh's software license, and agree to "not use the Software or Service to infringe the copyrights or other intellectual property rights of others in any way." *Id.,* ¶ 35. The software license has always contained the same or a similar condition of use. *Id.* Veoh strictly enforces its policies prohibiting infringing content. In accordance with its DMCA policy, Veoh has always promptly terminated access to allegedly infringing content when it receives notice of such content. Id., ¶ 26.

Veoh has responded to thousands of DMCA notices since its inception. It responds to these notices promptly, often the very same day that it receives the notice, or within a day or two of notice. *Id.,* ¶ 36. Veoh goes far beyond what is required by law, even investigating informal complaints when it can determine which specific videos are referenced in those complaints. Veoh errs on the side of disabling videos if they might be infringing. From the beginning of its service to the present, Veoh has had a designated agent to receive notices of alleged infringement. On August 15, 2005, Veoh designated an agent with the U.S. Copyright Office to receive notifications.

Veoh's open and public DMCA policies contribute further to Veoh's belief that such policies qualify for the Section 512(c) safe harbor, which has been confirmed by

multiple courts. Veoh's strong DMCA policy also provides a non-privileged basis for Veoh belief in the legality of its conduct.

**B.     The UGC Principles**

In addition to its strong DMCA policy and prior court rulings in favor of Veoh regarding its DMCA policy, Veoh has been at the forefront of collaborative inter-industry efforts alongside content owners to prevent infringing materials from appearing on its service. In October 2007, Veoh, along with major content owners Disney, Viacom, Fox, CBS, and NBC Universal, signed on to "The UGC Principles," available at www.ugcprinciples.com. Papa Decl. (Dkt. No. 336-10). ¶ 12 & Ex. F. The UGC Principles serve as a comprehensive set of guidelines to help services like Veoh and content creators work together toward their collective goal of "foster[ing] an online environment that promotes the promises and benefits of UGC Services and protects the rights of Copyright Owners." *Id.* UMG explicitly refused to sign onto the UGC Principles. Veoh's ascension to the UGC Principles offers another basis for Veoh's belief in the legality of its conduct.

**III.    EVIDENCE RELATING TO VEOH'S BELIEF IN THE LEGALITY OF ITS CONDUCT SHOULD NOT BE EXCLUDED**

The burden of proof is on UMG to prove the "willful" element of copyright infringement. *UMG v Disco Azteca Distributions Inc.* 446 F.Supp.2d 1164, 1173 (E.D. Cal. 2006). In *Disco Azteca,* the defendants in a copyright infringement action sought to offer evidence of their business practices to negate the plaintiff's accusation that the copyright infringement was "willful." The court allowed the defendant to introduce various forms of evidence to rebut plaintiff's evidence of "willful" infringement that related to the defendants' normal course of business, including the pricing of the infringing works as evidence that defendants believed the works to have been legally procured; the defendants' inventory collection of legitimate copyrighted works; the limitations on defendants tracking system; the lack of copyright

infringement accusations or cases in the past; and the fact that defendant stopped selling the infringing materials once they were notified of the infringement. *Id.*

The court in *Disco Azteca* ruled that the evidence described above went to defendant's state of mind and created a genuine issue of material fact, and denied plaintiff summary judgment on the "willful" element of the cause of action. There was no argument made or ruling that in presenting the above evidence defendant implicitly waived attorney client privilege.

Other courts similarly consider facts surrounding an infringement other than privileged advice of counsel, in finding the infringement did not occur willfully. In *IO Group, Inc. v. Adkins*, No. 04-4819, 2005 WL 1492381, at *6 (N.D. Cal. June 23, 2005), the court found the infringement was not willful when the defendant removed infringing material from its website upon notice. In *Broadcast Music, Inc. v. Fox Amusement Co., Inc.* 551 F. Supp. 104, 108 (N.D. Ill. 1982), the court denied enhanced statutory damages on summary judgment because the conduct giving rise to infringement did not allow the court to find willfulness.

Likewise, Veoh should be permitted to offer various forms of evidence relating to its business practices and other non-privileged evidence to show that Veoh rightfully believes its conduct is lawful in order to rebut the willful element of UMG's infringement claims. This evidence includes Veoh's DMCA procedures, prior court rulings, and Veoh's entering the UGC Principles. Veoh's statements that it believed its conduct was lawful is simply a proper denial of UMG's claims, and are properly made without destroying privilege, as a defendant has a constitutional right to deny any element of a case against him without waiving the attorney client privilege. *See e.g., US v. White* 887 F.2d 267, 271 (D.C. Circ. 1987) (merely denying an element of the action against the defendant and stating that such a belief was in part based on advice of counsel, a defendant still must be allowed to assert attorney client privilege. As noted by the court, "a contrary rule would ill-serve the policies underlying the doctrine of implied waiver.")

Here, Veoh has merely asserted, for multiple non-privileged reasons, that Veoh believed in the legality of its conduct. This belief, based on the non-privileged facts above, serves to rebut the willfulness element that UMG must prove and support Veoh's innocent intent. Veoh has not presented or relied on the substance of any privileged assertion that would waive the attorney client privilege. Veoh's employees and officers have stated their belief that Veoh's actions were legal and did not amount to willful infringement; the statements serve as denials of an element of the cause of action that UMG must prove.

Veoh has held to a uniform policy that has resulted in an opinion (endorsed by the *Io* court) that Veoh's acts were legal. UMG suggests that because Mr. Shapiro stated during his deposition that he "consulted with counsel about what protections DMCA provides" (Shapiro Depo. At 244:22-246:8) this necessarily means that his belief in the legality of Veoh's conduct should be excluded, and was solely based on advice of counsel. Having consulted with counsel before a course of action, however, does not necessitate that a party reveal the substance of that conversation before arguing about his own state of mind. This very idea cuts directly against the notion of attorney client privilege. *See e.g., US v. White* 887 F.2d 267, 271 (D.C. Circ. 1987).

Moreover, the Federal Circuit recently held that even a defendant *actually relying* on an advice-of-counsel defense (unlike Veoh), does *not* waive the attorney-client or work-product privileges with trial counsel, *In re Seagate Tech., LLC*, 497 F.3d 1360, 1373, 1379 (Fed. Cir. 2007), and also reaffirmed that a defendant who invokes one of those privileges will not suffer any adverse inference, including one related to willfulness, *id.* at 1370. Thus, in this case, in which Veoh does not raise an advice of counsel defense, Veoh is entitled to present all forms of evidence rebutting willfulness aside from advice of counsel, and it would be inequitable to require Veoh to disclose the mental impressions of trial counsel when (1) those impressions are not relevant to one of Veoh's defenses, (2) would be protected by privilege even if Veoh

had raised the advice-of-counsel defense, and (3) no adverse inference on willfulness may result from Veoh's proper invocation of privilege.

While Federal Rule of Civil Procedure 37(c)(1) may allow the court to exclude evidence unduly withheld during discovery, this is only when Rule 26(a) or (c) of the Federal Rules Civil Procedure requires such disclosure. Rule 26 expressly provides, however, that privileged materials need not be disclosed, as long as the party asserts such privilege expressly. There is no dispute that Veoh expressly asserted the privilege with respect to communications that UMG sought to inquire about here. Accordingly, the conversations between Veoh employees and counsel requested in UMG Interrogatory No. 2 only requests the basis for any contention by Veoh that its actions were taken in reliance on legal advice. Veoh does not attempt to assert an affirmative advice of counsel defense, Veoh merely requests that it be free to introduce evidence rebutting UMG's contention that Veoh "willfully" infringed UMG's copyrights. Interrogatory No. 2 calls for privileged communications, and such privilege has not been waived implicitly by any affirmative assertions by Veoh. Veoh therefore has not failed to disclose any discoverable information within the meaning of Federal Rule of Civil Procedure 37, and UMG has no grounds to move for exclusion of any other evidence.

Thus, Veoh should be permitted to introduce evidence that Veoh has formed an independent basis of knowledge that Veoh's website was legal. Such evidence by its nature would be used in response to UMG's arguments alleging a "willful" mental state as well as Veoh's innocent intent. Veoh must be allowed in fairness to present evidence responding to a central element in UMG's accusations that if not refuted, would result in an exponential increase in potential statutory damages, and likewise to provide evidence of its innocent intent that would justify a lowering of any statutory damages. A premature exclusion of all evidence Veoh would offer in response to the "willful" element of plaintiffs case and Veoh's innocent intent would be equivalent to ruling that because Veoh did not disclose all privileged communications, Veoh should

be precluded from presenting any evidence refuting willfulness or supporting innocent intent. Such a ruling would eviscerate the effectiveness and spirit of the attorney client privilege. *See e.g., US v. White* 887 F.2d 267, 271 (D.C. Cir. 1987); *UMG v Disco Azteca Distributions Inc.* 446 F.Supp.2d 1164, 1173 (E.D. Cal. 2006); *Seagate Tech.*, 497 F.3d at 1373, 1379).

### A. Even if Veoh Sought to Use Privileged Communications (Which It Has Not) Waiver Is The Proper Remedy, Not Exclusion

Even assuming Veoh sought to rely on the substance of privileged communications, UMG offers no authority for the *exclusion* of such evidence, as a finding of *waiver* would be the proper remedy if Veoh improperly sought to invoke privileged communications. UMG cites *US v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir 1991) in support of its Motion. In *Bilzerian*, the court refused to preemptively rule that testimony by defendant would not implicitly waive attorney client privilege. The defendant asked the court to rule that defendant's testimony regarding his belief in the legality of his actions would not waive attorney client privilege. The court refused and the defendant chose not testify, reasoning that until actual evidence was presented the unfairness to the defendant would not be paramount. *Id.* at 1292. At no time did the *Bilzerian* court consider excluding any evidence as to defendant's state of mind. The court instead ruled that if the defendant opened the door he might thereby waive attorney client privilege, and more, not less evidence would be admissible, including any privileged communications that were waived by way of the testimony. *Bilzerian* thus provides no support for UMG's request for the exclusion of all evidence relating to Veoh officers and employees belief in the legality of Veoh's website. *Bilzerian* merely stands for the proposition that at some time in the future the introduction of evidence by Veoh may or may not waive privilege depending on the circumstances.

## IV. CONCLUSION

For all the foregoing reasons, UMG's Motion *In Limine* No. 4 should be denied.

Dated: July 20, 2009                WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Calkins
Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.