Rebecca Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN: 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1506
Facsimile: (415) 591-1400

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Attorneys for Defendant
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al.,<br><br>        Plaintiffs,<br><br>        vs.<br><br>VEOH NETWORKS, INC., a California Corporation, et al.,<br><br>        Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)**<br><br>**DEFENDANT VEOH NETWORKS INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO CIVIL LOCAL RULE 16-4**<br><br>Pretrial Conference: August 8, 2009<br>Trial Date: August 18. 2009 |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1        Pursuant to Local Rule 16-4, Defendant Veoh Networks, Inc. submits this

2 Memorandum of Contentions of Fact and Law.

## I.    INTRODUCTION

4        UMG brought this action seeking to hold Veoh liable for certain alleged

5 infringing videos uploaded to Veoh by its users. UMG seeks maximum statutory

6 damages of up to $150,000 per infringed work, although UMG's own expert on the

7 issue of damages concedes that any actual damages suffered by UMG are merely

8 speculative.

9        UMG now claims that nearly 8,000 videos uploaded to Veoh by its users

10 infringed nearly 2,000 of its alleged works. UMG does so despite the fact that a

11 number of the alleged infringing videos were identified to Veoh in notices sent by a

12 trade organization, the Recording Industry Association of America, *and it is*

13 *undisputed that Veoh promptly disabled the videos.* For the remainder of the alleged

14 infringing videos, it is undisputed that neither UMG nor anyone acting on its behalf

15 ever notified Veoh of any of them, until more than a year into this lawsuit at which

16 time Veoh promptly terminated any that were still available. These facts as well as

17 the relevant facts concerning how Veoh's software and service operate, Veoh's Terms

18 of Use and copyright policies, and Veoh's implementation of state of the art filtering

19 to help identify potentially infringing works, are largely undisputed. What is disputed

20 is whether Veoh should be held liable to UMG under these circumstances. Under

21 these facts, it is clear that UMG cannot prove the essential elements of its claims.

22        Veoh also has a strong basis for entitlement to safe harbor pursuant to Section

23 512(c) of the DMCA. Veoh's motion for summary judgment on that issue is currently

24 pending before the Court.

## II.    CLAIMS AND DEFENSES

26     **A.**    **Summary of UMG's Claims**

27        UMG has stated that it intends to pursue each of its pleaded claims, which are

28 as follows:

Claim 1: Direct Copyright Infringement; UMG alleges that Veoh has directly infringed its copyrights in violation of 17 U.S.C. 106, 115, and 501.

Claim 2: Contributory Copyright Infringement; UMG alleges that Veoh has contributorily infringed its copyrights.

Claim 3: Vicarious Copyright Infringement; UMG alleges that Veoh has vicariously infringed its copyrights.

Claim 4: Inducing Copyright Infringement; UMG alleges that Veoh has induced infringement of its copyrights.

## B. Elements Required to Establish UMG's Claims

### 1. Direct Copyright Infringement

To succeed on its claim for direct copyright infringement, UMG must prove:

   a. UMG is the owner of valid copyrights; and

   b. Veoh copied original elements from the alleged copyrighted works. Copying includes (1) reproducing the work in copies, (2) preparing derivative works based upon the copyrighted work, (3) distributing copies of the copyrighted work to the public by sale or other transfer of ownership or by rental or lease or lending, (4) performing publicly a copyrighted musical work or audiovisual work, (5) displaying publicly a copyrighted musical work or audiovisual work, and (6) performing a sounds recording by means of a digital audio transmission. *See* Ninth Circuit Manual of Model Civil Jury Instruction ("MJI"), §§ 17.1, 17.4.

### 2. Contributory Liability for Copyright Infringement

To succeed on its claim for contributory copyright infringement, UMG must prove:

   a. Copyright infringement by another; and

   b. Veoh knew or had reason to know of the infringing activity; and

   c. Veoh materially contributed to the activity.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### 3. Vicarious Liability for Copyright Infringement

To succeed on its claim for vicarious copyright infringement, UMG must prove:

        a. Direct copyright infringement by another; and

        b. Veoh profited directly from the infringing activity; and

        c. Veoh had and the right and ability to supervise the infringing activity; and

        d. Veoh failed to exercise that right and ability.

*See* MJI § 17.20.

### 4. "Inducement" Liability for Copyright Infringement

Inducement liability is a species of contributory liability. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007). To succeed on its claim for vicarious copyright infringement, UMG must prove:

        a. Copyright infringement by another; and

        b. Veoh knew or had reason to know of the infringing activity; and

        c. Veoh intentionally induced the activity.

*See* MJI § 17.21.

### C. Brief Description of Key Evidence in Opposition to Each of UMG's Claims.

#### 1. Evidence in Opposition to Claim of Direct Copyright Infringement

There is no evidence to support a claim of direct infringement against Veoh. UMG has sued Veoh because Veoh allowed users to upload videos, some of which UMG alleges infringed its copyrighted works. While the relevant facts of how Veoh's system processed user uploaded videos is undisputed, even apart from Veoh's entitlement to Section 512(c) safe harbor, any copying of those videos on to Veoh's servers lacked the volition required to support a claim of direct infringement against

3

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

Veoh.  The key evidence Veoh will rely on in opposition to UMG's claim of direct

infringement is as follows: As to element (1), copyright registrations certificates and

other purported chain of title documents that fail to establish that UMG owns each of

the alleged copyrights, as well as the alleged infringing videos themselves, which

establish that many of the alleged infringements constitute fair use by the user or do

not otherwise infringe any work alleged by UMG. As to element (2), testimony from

Veoh witnesses, Veoh's terms of use, copyright policies, screenshots from Veoh's

website and documentation regarding the functionality of Veoh's software and

services.

### 2. Evidence in Opposition to Claim of Contributory Liability for Copyright Infringement

There is no evidence to support a claim of contributory infringement against

Veoh.  UMG has sued to recover statutory damages for infringement for videos that

Veoh immediately took down once it received infringement notices from the trade

group the RIAA, and for other videos that neither UMG nor any of its representatives

ever sent notices.  These facts are undisputed.  (RSGI ¶ 71).  The key evidence Veoh

will rely on in opposition to UMG's claim for contributory infringement is as follows:

As to element (1), copyright registrations certificates and other purported chain of title

documents that fail to establish that UMG owns each of the alleged copyrights, as well

as the alleged infringing videos themselves, which establish that many of the alleged

infringements constitute fair use by the user or do not otherwise infringe any work

alleged by UMG. As to element (2), testimony from Veoh witnesses, Veoh's terms of

use, evidence of Veoh's DMCA policy and procedures and compliance therewith,

UMG's own inability to identify alleged infringements in this case, screenshots from

Veoh's website and documentation regarding the functionality of Veoh's software and

services.  As to elements (2) and (3), whenever Veoh became aware of any allegedly

infringing video, it immediately terminated access to the video.  There is no evidence

that Veoh ever acquired knowledge of specific infringing videos and failed to act or

that Veoh materially contributed to the alleged infringements.  To the contrary, Veoh's terms of use strictly prohibit infringing material.

### 3. Evidence in Opposition to Claim of Vicarious Liability for Copyright Infringement

There is no evidence to support a claim of vicarious liability for copyright infringement against Veoh.  The key evidence Veoh will rely on in opposition to UMG's claim for vicarious liability for copyright infringement is as follows:  As to element (1), copyright registrations certificates and other purported chain of title documents that fail to establish that UMG owns each of the alleged copyrights, as well as the alleged infringing videos themselves, which establish that many of the alleged infringements constitute fair use by the user or do not otherwise infringe any work alleged by UMG. As to element (2), testimony from Veoh witnesses, financial documents, and the undisputed fact that Veoh has not made a profit since its inception. (RSGI ¶ 25 (Wiseman Depo., 27:19, February 2, 2009, attached as Ex. A to Golinveaux Decl. (Dkt. No. 338), ¶ 2)  As to elements (3) and (4), testimony from Veoh witnesses, evidence of Veoh's DMCA policy and procedures and compliance therewith, and UMG's own inability to identify alleged infringements in this case. There is no evidence that Veoh had and the right and ability to supervise the infringing activity or that Veoh failed to exercise the right and ability to remove suspected infringing works when it was made aware of such suspected infringement. Whenever Veoh became aware of a suspected infringing video, it immediately terminated access to the video.  Further, UMG has, on multiple occasions, withdrawn numerous alleged infringing videos from this action that it had previously identified as infringing, demonstrating how unreasonable it would be to expect Veoh to police UMG's copyrights without cooperation from UMG, when UMG is unable to itself properly identify alleged infringements of its own works.

### 4. Evidence in Opposition to Claim "Inducement" Liability for Copyright Infringement

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   There is no evidence to support a claim of inducement liability against Veoh.

2   The key evidence Veoh will rely on in opposition to UMG's claim for inducement

3   liability for copyright infringement is as follows:  As to element (1), copyright

4   registrations certificates and other purported chain of title documents that fail to

5   establish that UMG owns each of the alleged copyrights, as well as the alleged

6   infringing videos themselves, which establish that many of the alleged infringements

7   constitute fair use by the user or do not otherwise infringe any work alleged by UMG.

8   As to elements (2) and (3), testimony from Veoh witnesses and the undisputed fact

9   that Veoh immediately took down any allegedly infringing videos once it received

10  infringement notices from the trade group the RIAA, and for other videos that neither

11  UMG nor any of its representatives ever sent notices.  Whenever Veoh became aware

12  of any allegedly infringing video, it immediately terminated access to the video.

13  Further, there is no evidence that Veoh intentionally induced infringing activity.

14  Conversely, the evidence shows that Veoh has strong copyright policies, is a model

15  citizen under the DMCA, and goes to great lengths to detect, remove and prevent

16  suspected infringement on Veoh.

17  **D.     Summary of the Affirmative Defenses Veoh Plans to Pursue.**

18      Veoh intends to pursue the following affirmative defenses at trial, and also

19  indicates below those pleaded affirmative defenses it does not intend to pursue:

20  ▪ First Affirmative Defense (Failure to State a Claim for Relief):  Plaintiffs'

21      Complaint fails to state a claim upon which relief may be granted.

22  ▪ Second Affirmative Defense (17 U.S.C. § 512):  Plaintiffs' claims are barred

23      by the statutory immunity granted to service providers under 17 U.S.C. §

24      512.

25  ▪ Third Affirmative Defense (No Primary Liability):  Plaintiffs' claims based

26      upon secondary liability are barred because Plaintiffs cannot establish the

27      primary liability of Veoh's users, including because such users' alleged

28

6

conduct constitutes fair use, de minimus use and/or is otherwise not actionable.

- Fourth Affirmative Defense (Staple Articles of Commerce): Plaintiffs' claims based upon secondary liability are barred because Veoh's products and/or services are staple articles of commerce.

- Fifth Affirmative Defense (No Volitional Act): Plaintiffs' claims are barred because the alleged infringement was not caused by a volitional act attributable to Veoh.

- Sixth Affirmative Defense (Lack of Knowledge): Plaintiffs' claims based upon contributory liability are barred because Veoh did not have requisite knowledge of the alleged primary infringement and did not encourage or induce the alleged primary infringement.

- Seventh Affirmative Defense: (No Direct Financial Benefit) Plaintiffs' claims based upon vicarious liability are barred because Veoh did not obtain a direct financial benefit from the alleged primary infringement.

- Eighth Affirmative Defense (No Right or Ability to Control) Plaintiffs' claims based upon vicarious liability are barred because Veoh does not have the right or ability to control the alleged primary infringement.

- Ninth Affirmative Defense (Fair Use): Veoh's alleged conduct constitutes fair use.

- Tenth Affirmative Defense (Laches): Plaintiffs' claims are barred by laches.

- Eleventh Affirmative Defense (Waiver): Plaintiffs' claims are barred by waiver.

- Twelfth Affirmative Defense (Estoppel): Veoh does not intend to pursue this affirmative defense at this time.

- Thirteenth Affirmative Defense (Unclean Hands): Plaintiffs' claims are barred by unclean hands.

- Fourteenth Affirmative Defense (Invalidity and Unenforceability of Copyright): Plaintiffs' copyrights are invalid and/or unenforceable.

- Fifteenth Affirmative Defense (License, Consent and Acquiescence): Plaintiffs' claims are barred by Plaintiffs' license, consent and acquiescence to Veoh's use.

- Sixteenth Affirmative Defense (Lack of Subject Matter Jurisdiction): Plaintiffs' claims are barred for lack of subject matter jurisdiction because they lack valid registrations for the intellectual property rights asserted.

- Seventeenth Affirmative Defense (Abandonment and Forfeiture): Plaintiffs' claims are barred to the extent that they have forfeited or abandoned their intellectual property.

- Eighteenth Affirmative Defense (Standing): Plaintiffs' claims are barred to the extent that the Plaintiffs lack standing.

- Nineteenth Affirmative Defense (Misuse of Copyright): Veoh does not intend to pursue this affirmative defense at this time.

- Twentieth Affirmative Defense (Non-Infringing Use): Plaintiffs' claims are barred because Veoh's products and/or services are capable of substantial non-infringing uses.

- Twenty-First Affirmative Defense (Failure to Mitigate Damages): Plaintiffs' claims are barred due to Plaintiffs' failure to mitigate damages.

- Twenty-Second Affirmative Defense (Innocent Intent): Plaintiffs' claims are barred, in whole or in part, because Veoh's conduct was in good faith and with non-willful intent, at all times.

- Twenty-Third Affirmative Defense (Unconstitutionality): The statutory damages sought by Plaintiffs are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained, in violation of the Due Process Clause.

- Twenty-Fourth Affirmative Defense (Statutes of Limitations): Plaintiffs' claims are barred by the applicable statutes of limitations.

- Twenty-Fifth Affirmative Defense (First Amendment): Veoh does not intend to pursue this affirmative defense at this time.

- Twenty-Sixth Affirmative Defense (Preemption): Veoh does not intend to pursue this affirmative defense at this time.

- Twenty-Seventh Affirmative Defense (Failure to Register): Plaintiffs' claims are barred in whole or part to the extent that Plaintiffs have not properly or timely registered their works with the U.S. Copyright Office.

### E. Elements Required to Establish Veoh's Affirmative Defenses.

#### 1. Elements of First Affirmative Defense (Failure to State a Claim for Relief):

This defense does not have specific elements of its own, but rather turns on the failure of UMG' Complaint to state the elements of its own claims, which are outlined above.

#### 2. Elements of Second Affirmative Defense (17 U.S.C. § 512):

The Digital Millennium Copyright Act, 17 U.S.C. § 512(c) provides safe harbor when the following elements have been met:

1) Defendant is a service provider;

2) Defendant engages in storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider;

3) Defendant has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers;

4) Defendant accommodates and does not interfere with standard technical measures;

9

5) Defendant has designated an agent to receive notifications of claimed infringement;

6) Defendant

    a. does not have actual knowledge that the specific material or activity using the material on the system or network is infringing;

    b. in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

    c. upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

7) Defendant does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity;

8) Upon notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Defendant responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity

17 U.S.C. §§ 512(c), (i), (k); *Perfect 10 v. Amazon.com*, Inc., CV 05-4753 AHM (SHx), Order Granting A9.com's Motion for Summary Judgment on Contributory Infringement, slip op. at 7 (C.D. Cal., May 12, 2009).

**3. Elements of Third Affirmative Defense (No Primary Liability):**

This defense does not have specific elements of its own, but rather hinges on the fact that UMG cannot establish the elements of direct infringement by others required to make out claims for Veoh's secondary liability, as outlined in Section II. B. above.

**4. Elements of Fourth Affirmative Defense (Staple Articles of Commerce):**

Because Veoh's software and services have substantial non-infringing uses it cannot be held secondarily liable for alleged infringement of its users. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**5.      Elements of Fifth Affirmative Defense (No Volitional Act):**

Veoh's alleged direct infringement lacked the necessary volition.  *Cartoon Network v. CSC Holdings*, 536 F.3d 121, 132 (2d Cir. 2008); *Religious Tech. Ctr v. Netcom On-Line Commc'n Servs.*, Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995).

**6.      Elements of Sixth Affirmative Defense (Lack of Knowledge):**

This defense does not have specific elements of its own, but rather hinges on the fact that UMG cannot establish Defendant's requisite knowledge of others' direct infringement, an element of contributory liability for infringement as outlined in Section II.B above.

**7.      Elements of Seventh Affirmative Defense  (No Direct Financial Benefit):**

This defense does not have specific elements of its own, but rather hinges on the fact that UMG cannot show Veoh's requisite direct financial benefit from others' alleged direct infringement, an element of vicarious liability for infringement, as outlined in Section II.B above.

**8.      Elements of Eighth Affirmative Defense (No Right or Ability to Control):**

This defense does not have specific elements of its own, but rather hinges on the fact that UMG cannot show Veoh's requisite right and ability to control others' alleged direct infringement, an element of vicarious liability for infringement, as outlined in Section II.B above.

**9.      Elements of Ninth Affirmative Defense (Fair Use):**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way without the consent of the copyright owner if it would advance the public interest.

Factors bearing on whether a use is a fair use include:

1.      The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2.      The nature of the copyrighted work;

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

3.      The amount and substantiality of the portion used in relation to the copyrighted work as a whole;

4.      The effect of the use upon the potential market

5.      Any other factors that bear on whether the use is fair.

*See* 17 U.S.C. §107; MJI § 17.18.

**10.     Elements of Tenth Affirmative Defense (Laches):**

1)   Plaintiffs' unreasonable delay in asserting its claims;

2)   Resulting prejudice to Defendant.

*See Couveau v. Am. Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000).

**11.     Elements of Eleventh Affirmative Defense (Waiver):**

Plaintiff's intentional relinquishment of a right with knowledge of its existence and the intent to relinquish it. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).

**12.     Twelfth Affirmative Defense (Estoppel).**

Veoh does not intend to pursue this affirmative defense at this time.

**13.     Elements of Thirteenth Affirmative Defense (Unclean Hands):**

1)      Plaintiff violated conscience, good faith or other equitable principles in prior conduct or dirtied its hands in acquiring the right presently asserted.

2)      The alleged misconduct by Plaintiff relates directly to the transaction concerning which the complaint is made.

*See Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

**14.     Elements of Fourteenth Affirmative Defense (Invalidity and Unenforceability of Copyright):**

UMG cannot prove their case if:

1)      Plaintiff's work is not original; or

2)      Plaintiffs is not the author of the work, did not receive a transfer of the work, or did not receive a transfer of rights in the work that would allow Plaintiffs to bring this suit.

*See* MJI § 17.5.

### 15.      Elements of Fifteenth Affirmative Defense (License, Consent and Acquiescence):

Plaintiffs have given a license or their consent or acquiescence, express or implied, to Defendant to use Plaintiffs' works.  *See Elvis Presley Enter., Inc., v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)

### 16.      Sixteenth Affirmative Defense (Lack of Subject Matter Jurisdiction):

Plaintiffs lack valid copyright registrations for certain of its alleged works.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007).

### 17.      Elements of Seventeenth Affirmative Defense (Abandonment and Forfeiture):

1)      Plaintiff intended to surrender rights in the work; and

2)      An act by the plaintiff evidencing that intent.

MJI § 17.19.

### 18.      Elements of Eighteenth Affirmative Defense (Standing):

Plaintiffs were not the owners or exclusive licensees of the works they assert at the time of the infringements they assert.  *See Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007).

### 19.      Nineteenth Affirmative Defense (Misuse of Copyright):

Veoh does not intend to pursue this affirmative defense at this time.

### 20.      Elements of Twentieth Affirmative Defense (Non-Infringing Use):

Because Veoh's software and services have substantial non-infringing uses it cannot be held secondarily liable for alleged infringement of its users.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).

### 21.      Elements of Twenty-First Affirmative Defense (Failure to Mitigate Damages):

13

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

Veoh bears the burden to establish (1) that the damages suffered by UMG could have been avoided, and (2) that UMG failed to use reasonable care and diligence in avoiding the damages. *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978).

### 22. Elements of Twenty-Second Affirmative Defense (Innocent Intent):

1) The defendant was not aware that its acts constituted infringement of the copyright; and

2) The defendant had no reason to believe that its acts constituted an infringement of the copyright.

MJI § 17.26.

### 23. Elements of Twenty-Third Affirmative Defense (Unconstitutionality):

Plaintiffs seek excessive statutory damages. *Cf. Philip Morris USA v. Williams*, 549 U.S. 346 (2007) (regarding excessive punitive damages).

### 24. Elements of Twenty-Fourth Affirmative Defense (Statutes of Limitations):

Plaintiffs did not bring claims within three years of them accruing. *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

### 25. Twenty-Fifth Affirmative Defense (First Amendment):

Veoh does not intend to pursue this affirmative defense at this time.

### 26. Twenty-Sixth Affirmative Defense (Preemption):

Veoh does not intend to pursue this affirmative defense at this time.

### 27. Elements of Twenty-Seventh Affirmative Defense (Failure to Register):

Plaintiffs lack valid copyright registrations. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007); *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484-AHM(SHx), 2008 WL 4217837, at *1 (C.D. Cal. Jul 16, 2008) (noting damages may be precluded on any unregistered works).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**F.** **Brief Description of the Key Evidence Relied on in Support of Each Affirmative Defense**

**1.** **Evidence in Support of First Affirmative Defense (Failure to State a Claim for Relief):**

The key evidence Veoh will rely on to support this defense is as follows: Evidence in support of this affirmative defense is largely the same as the lack of evidence UMG has to establish the elements of its own claims, as set forth in the preceding section II(C)(1-4). Veoh will rely on the same key evidence as set forth in these preceding sections to establish this claim.

**2.** **Evidence in Support of Second Affirmative Defense (17 U.S.C. § 512):**

The key evidence Veoh will rely on to support this defense is as follows:

As to element (1), there is no dispute that Veoh is a service provider.

As to element (2), testimony from Veoh witnesses, Veoh's terms of use, screenshots from Veoh's website and documentation regarding the functionality of Veoh's software and services. This Court has already ruled that even with Veoh's automated functions that make videos accessible, Veoh is still engaging in storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider. (December 29, 2008 Order Denying UMG's Motion for Partial Summary Judgment at 10, Dkt. No. 293) ("It is undisputed that all of these software functions are directed toward facilitating access to materials stored at the direction of users . . . The question is therefore whether the § 512(c) limitation on liability applies to service providers whose software performs these functions for the purpose of facilitating access to user-stored material. As already noted, the Court finds that it does. ").

As to element (3), testimony from Veoh witnesses, Veoh's terms of use and copyright policies, screenshots from Veoh's website and documentation regarding the functionality of Veoh's software and services. If Veoh receives a takedown notice that a user has uploaded allegedly infringing content after that user has already received a

**VEOH'S MEM. OF CONTENTIONS OF FACT AND LAW – CASE NO. 07 5744 -- AHM (AJWx)**

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

first warning, that user's account is promptly automatically terminated. Pursuant to this policy, Veoh has terminated thousands of user accounts. Veoh has always promptly removed content and terminated users under reasonable circumstances.

As to element (4), testimony from Veoh witnesses and UMG's interrogatory response. Veoh accommodates and does not interfere with standard technical measures. Veoh is aware of no standard technical measures at issue here and UMG has identified none. Plaintiff bears the burden of challenging a defendant's assertion that it accommodates or does not interfere with standard technical measures. UMG has not identified any such technical measure. Veoh served an interrogatory early in this case asking UMG to "[d]escribe all 'standard technical measures' as defined in 17 U.S.C. § 512(i)(2), that you employed prior to filing this action." UMG objected to the interrogatory as irrelevant and identified none.

As to element (5), testimony from Veoh witnesses and Veoh's designation of an agent to receive notifications of claimed infringement, and screenshots. From the beginning of its service, Veoh has had an agent to receive notices of alleged infringement, and has made that information available on its website and with the Copyright Office.

As to element (6), testimony from Veoh witnesses. There is no evidence that Veoh has actual knowledge that the specific material or activity using the material on the system or network is infringing or was aware of facts or circumstances from which infringing activity is apparent.

As to element (7), testimony from Veoh witnesses. There is no evidence that upon obtaining such knowledge or awareness, Veoh failed to expeditiously to remove, or disable access to, the material. Instead, Veoh immediately took down allegedly infringing videos once it received infringement notices from the trade group the RIAA, and for other videos that neither UMG nor any of its representatives ever sent notices. These facts are undisputed. (RSGI ¶ 71). Whenever Veoh became aware of any allegedly infringing video, it immediately terminated access to the video. There is

16

no evidence that Veoh ever acquired knowledge of specific infringing videos and failed to act or that Veoh materially contributed to the alleged infringements. To the contrary, Veoh's terms of use strictly prohibited infringing material.

As to element 7, testimony from Veoh witnesses and financial statements. There is no dispute that Veoh has not been profitable since its inception. (RSGI ¶ 25). There is no evidence that Veoh has otherwise obtained a financial benefit directly attributable to the infringing activity where Veoh has the right and ability to control such activity.

As to element (8), testimony from Veoh witnesses that upon notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded expeditiously to remove, or disable access to, all allegedly infringing works in this action. Indeed, Veoh immediately took down once it received infringement notices from the trade group the RIAA, and for other videos that neither UMG nor any of its representatives ever sent notices. These facts are undisputed. Whenever Veoh became aware of any allegedly infringing video, it immediately terminated access to the video.

### 3. Evidence in Support of Third Affirmative Defense (No Primary Liability):

The key evidence Veoh will rely on to support this defense is as follows: UMG has no evidence to establish the elements of direct infringement by others required to make out claims for Veoh's secondary liability, as outlined in Section II. B. above. Thus, Veoh will rely on the same evidence as set forth in these preceding sections to establish this claim.

### 4. Evidence in Support of Fourth Affirmative Defense (Staple Articles of Commerce):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and agreements that show Veoh features partner content from prominent content owners such as ABC, CBS, ESPN, Viacom, and Warner Television, which UMG has not alleged is infringing. Users have uploaded

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

more than four million videos to Veoh.  There are many music related videos that are authorized on Veoh, from partner content to videos published by Veoh's users. SonyBMG music videos have been permitted on Veoh since mid-2008.

### 5. Evidence in Support of Fifth Affirmative Defense (No Volitional Act):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses, Veoh's terms of use, screenshots from Veoh's website and documentation regarding the functionality of Veoh's software and services.  This Court has already ruled that even with Veoh's automated functions that make videos accessible, Veoh is still engaging in storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider. (December 29, 2008 Order Denying UMG's Motion for Partial Summary Judgment at 10, Dkt. No. 293) ("It is undisputed that all of these software functions are directed toward facilitating access to materials stored at the direction of users . . . The question is therefore whether the § 512(c) limitation on liability applies to service providers whose software performs these functions for the purpose of facilitating access to user-stored material. As already noted, the Court finds that it does. ").   In addition, testimony from Veoh witnesses that upon notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded expeditiously to remove, or disable access to, all allegedly infringing works in this action.  Indeed, Veoh immediately took down once it received infringement notices from the trade group the RIAA, and for other videos that neither UMG nor any of its representatives ever sent notices.  These facts are undisputed.  RSGI ¶ 71 (UMG does not dispute that Veoh removed the material located at the specific URLs identified in the RIAA notices). Whenever Veoh became aware of any allegedly infringing video, it immediately terminated access to the video.

### 6. Evidence in Support of Sixth Affirmative Defense (Lack of Knowledge):

UMG has no evidence to establish Veoh's requisite knowledge of others' direct infringement, an element of contributory liability for infringement as outlined in Section II.B above. The key evidence Veoh will rely on to support this defense is as follows: evidence of Veoh's DMCA policy and procedures and compliance therewith, UMG's own inability to identify alleged infringements in this case, testimony from Veoh witnesses that upon notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded expeditiously to remove, or disable access to, all allegedly infringing works in this action. Indeed, Veoh immediately took down once it received infringement notices from the trade group the RIAA, and for other videos that neither UMG nor any of its representatives ever sent notices. These facts are undisputed. Whenever Veoh became aware of any allegedly infringing video, it immediately terminated access to the video.

### 7. Evidence in Support of Seventh Affirmative Defense (No Direct Financial Benefit):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and financial statements. UMG cannot show Veoh's requisite direct financial benefit from others' alleged direct infringement. It is undisputed that Veoh has never made a profit.

### 8. Evidence in Support of Eighth Affirmative Defense (No Right or Ability to Control):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses. UMG has no evidence to show Veoh's requisite right and ability to control others' alleged direct infringement, an element of vicarious liability for infringement, as outlined in Section II.B above.

### 9. Evidence in Support of Ninth Affirmative Defense (Fair Use):

The key evidence Veoh will rely on to support this defense is as follows: the underlying videos themselves, subject to Veoh's Motion *In Limine* No. 1. to exclude introduction of these videos into the case at all. Thousands upon thousands of the alleged infringing videos are not music videos at all, let alone identifiable UMG music

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

videos. For example, many of the videos are home videos set to music or are videos of people filming themselves playing video games set to music. The purpose and character of the use of these videos are generally not commercial in nature, use only a portion of the allegedly infringing work, and there is no discernible negative impact by the use upon the potential market (as shown through the expert testimony of Roy Weinstein and documents UMG produced that are cited to in the Weinstein report(s).). The videos themselves demonstrate that many are classic examples of fair use.

### 10. Evidence in Support of Tenth Affirmative Defense (Laches):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses, and correspondence between the parties' counsel and the complaint, that demonstrate that UMG never notified Veoh of a single infringement before filing suit on Sept. 4, 2007, and did not identify a single infringing video in its Complaint. Promptly after UMG filed suit, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos. In response, UMG refused to identify any allegedly infringing videos and instead insisted that Veoh should be able to figure out on its own which UMG "content" was on its site, and that UMG was not obligated "to identify each instance in which Veoh is displaying unauthorized content." Though Veoh again asked UMG to identify any infringing videos, UMG refused. On December 1, 2008, more than a year after filing suit (and only after Veoh filed a motion to compel the information), UMG finally identified the videos it claims were infringing.

### 11. Evidence in Support of Eleventh Affirmative Defense (Waiver):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and documents produced that demonstrate that Veoh has received emails from UMG's witnesses and agents regarding videos they uploaded to Veoh's website. UMG waived its claims with respect to any of the works uploaded to Veoh by UMG's agents/employees, and waived its remaining claims by

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

refusing to notify Veoh of any allegedly infringing works until over a year into the lawsuit.

## 12. Evidence in Support of Thirteenth Affirmative Defense (Unclean Hands):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and emails received by Veoh from UMG's witnesses and agents regarding videos they uploaded to Veoh's website. In addition, evidence of UMG uploading videos to other websites.

## 13. Evidence in Support of Fourteenth Affirmative Defense (Invalidity and Unenforceability of Copyright):

The key evidence Veoh will rely on to support this defense is as follows: UMG's failure to produce valid copyright registrations for certain of its works and failure to produce chain of title documents for the alleged works.

## 14. Evidence in Support of Fifteenth Affirmative Defense (License, Consent and Acquiescence):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and emails received by Veoh from UMG's witnesses and agents regarding videos they uploaded to Veoh's website. RSGI., at ¶ 69. Golinveaux Decl. (Dkt. No. 338), ¶ 13 and Ex. L (Veoh's Supp. Responses to UMG's Second Interrogatories); Simons Decl. (Dkt. No. 336-4), ¶¶ 10-11 and Exs. D-E.

## 15. Evidence in Support of Sixteenth Affirmative Defense (Lack of Subject Matter Jurisdiction):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses: UMG's has failure to produce valid copyright registrations for certain of its works.

## 16. Evidence in Support of Seventeenth Affirmative Defense (Abandonment and Forfeiture):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and emails received by Veoh from UMG's employees and agents regarding videos they uploaded to Veoh's website.

## 17. Evidence in Support of Affirmative Defense (Standing):

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

The key evidence Veoh will rely on to support this defense is as follows: UMG's lack of registrations for each of the alleged works. UMG has also failed to produce chain of title documents for the alleged infringements in this action, which is still subject to a pending motion before Judge Wistrich. (*See* Notice of Lodging Parties' Competing Stipulations (Dkt. No. 518).)

### 18. Evidence in Support of Twentieth Affirmative Defense (Non-Infringing Use):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses that show Veoh's software and services have substantial non-infringing uses. For example, Veoh features partner content from prominent content owners such as ABC, CBS, ESPN, Viacom, and Warner Television, which UMG has not alleged is infringing. Papa Decl. (Dkt. No. 336-10), ¶ 2. Users have uploaded more than four million videos to Veoh, the vast majority of which have never been identified as infringing. SonyBMG music videos have been permitted on Veoh since mid-2008.

### 19. Evidence in Support of Twenty-First Affirmative Defense (Failure to Mitigate Damages):

The key evidence Veoh will rely on to support this defense is as follows: Plaintiffs failed to mitigate damages by failing to notify Veoh of a single infringement before filing suit on Sept. 4, 2007, and did not identify a single infringing video in its Complaint. Promptly after UMG filed suit, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos. In response, UMG refused to identify any allegedly infringing videos and instead insisted that Veoh should be able to figure out on its own which UMG "content" was on its site, and that UMG was not obligated "to identify each instance in which Veoh is displaying unauthorized content." Though Veoh again asked UMG to identify any infringing videos, UMG refused. On December 1, 2008, more than a year after filing suit (and only after Veoh

filed a motion to compel the information), UMG finally identified the videos it claims

were infringing.

### 20. Evidence in Support of Twenty-Second Affirmative Defense (Innocent Intent):

The key evidence Veoh will rely on to support this defense is as follows:

testimony from Veoh witnesses and correspondence showing that UMG never notified

Veoh of a single infringement before filing suit on Sept. 4, 2007, and did not identify

a single infringing video in its Complaint. Promptly after UMG filed suit, Veoh's

counsel wrote to UMG's counsel and explained that if UMG would identify the videos

it contended were infringing, Veoh would promptly disable access to the videos.  In

response, UMG refused to identify any allegedly infringing videos and instead

insisted that Veoh should be able to figure out on its own which UMG "content" was

on its site, and that UMG was not obligated "to identify each instance in which Veoh

is displaying unauthorized content."  . Though Veoh again asked UMG to identify any

infringing videos, UMG refused.  On December 1, 2008, more than a year after filing

suit (and only after Veoh filed a motion to compel the information), UMG finally

identified the videos it claims were infringing.  Upon notification of claimed

infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded expeditiously to

remove, or disable access to, all allegedly infringing works in this action.  Indeed,

Veoh immediately took down once it received infringement notices from the trade

group the RIAA, and for other videos that neither UMG nor any of its representatives

ever sent notices.  These facts are undisputed.  (RSGI ¶ 71).  Whenever Veoh became

aware of any allegedly infringing video, it immediately terminated access to the video.

### 21. Evidence in Support of Twenty-Third Affirmative Defense (Unconstitutionality):

The key evidence Veoh will rely on to support this defense is as follows:

testimony from Veoh witnesses and the expert report(s) of Roy Weinstein and exhibits

cited therein to show why the damages sought by UMG are excessive, especially

considering that the expert report of Blackburn and discovery responses confirm that

UMG is unable to quantify actual damages to a reasonable degree of certainty. UMG is seeking maximum statutory damages of $150,000 per alleged work, exponentially more per work than in any license agreement the parties (either side) would justify and more than any possible actual harm, which as UMG's own damages expert, Blackburn, repeatedly testified cannot be quantified.

### 22. Evidence in Support of Twenty-Fourth Affirmative Defense (Statutes of Limitations):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and correspondence showing UMG never notified Veoh of a single infringement before filing suit on Sept. 4, 2007, and did not identify a single infringing video in its Complaint. Promptly after UMG filed suit, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos. In response, UMG refused to identify any allegedly infringing videos and instead insisted that Veoh should be able to figure out on its own which UMG "content" was on its site, and that UMG was not obligated "to identify each instance in which Veoh is displaying unauthorized content." Though Veoh again asked UMG to identify any infringing videos, UMG refused.

### 23. Evidence in Support of Twenty-Seventh Affirmative Defense (Failure to Register):

UMG has failed to produce valid copyright registrations for certain of its works.

### G. Anticipated Evidentiary Issues

Months ago, Veoh filed a motion to compel UMG to produce chain of title documents sufficient to establish UMG's ownership of the nearly two thousand copyrights it alleges Veoh has infringed. On March 5, 2009, Judge Wistrich entered an order requiring UMG to produce a chain of title documents for 20% of the alleged works, the 20% to be chosen by Veoh, and further stated that if the production for the 20% indicated potential issues with respect to UMG's ownership, he may order production as to the remaining works. *See* March 5, 2009 Order Re: Veoh's Renewed

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Motion to Compel Plaintiffs to Produce Chain of Title/Rights Information re Same (Dkt. No. 321). After Veoh selected the 20%, however, UMG voluntarily withdrew forty-nine of the copyrights asserted. On May 4, 2009 Veoh filed its Motion to Compel UMG to Produce Chain of Title Documents for the Remaining 80% of Identified Copyrights Based on Defects admitted by UMG (Dkt. No. 432). During a June 3, 2009 hearing on that motion, Judge Wistrich ordered the parties to further meet and confer regarding possible strategies to put off production of the remaining ownership documents until after this Court had determined whether Veoh was liable for infringement of such works. On June 13, 2009, the parties filed a joint stipulation with their separate proposals. (Dkt. No. 522). The issues to be resolved include to the extent that the stipulation would require UMG to produce chain of title documents post-trial, or within a period of time following trial whereby Veoh was found liable to UMG. Veoh has proposed that UMG produce any remaining chain of title documents within thirty days from the date trial has concluded. (See Exh. A, ¶ 4.) UMG has also sought to preclude Veoh from introducing defects relating to UMG's copyright registration certificates at trial (including failure to produce a copyright certificate at all), though Veoh believes such challenges are appropriate and should not be deferred with the underlying ownership challenges. During a July 20, 2009 hearing in front of Judge Wistrich on this issue, the parties agreed to submit a further joint stipulation on this issue to Judge Wistrich no later than July 27, 2009.

In addition to the issue regarding UMG's ownership of the alleged copyrights, the parties have each filed the following motions *in limine* seeking evidentiary rulings: Veoh has filed Motion(s) *In Limine* to preclude evidence regarding the nine matters below:

(1)    Allegedly infringing videos that are not UMG's music videos;

(2)    Copies of screenshots that omit certain items that would appear for a Veoh user;

(3)     Any documents or argument specifying any of Veoh's investors or documents constituting or relating to communications to and from Veoh's investors regarding allegedly infringing videos;

(4)     Any evidence regarding the timing of Veoh's implementation of filtering through Audible Magic;

(5)     Evidence constituting and relating to press articles, blogs and communications from Veoh's users (other than relating to the users' own alleged infringement) regarding alleged infringement on Veoh;

(6)     Evidence and arguments that support a claim that statutory damages should be assessed by any other means other than per Compact Disc ("CD"); and

(7)     Evidence constituting Veoh's power point presentations and other internal materials that discuss or refer to general music strategy;

(8)     Expert opinions of Blackburn and Horowitz.


UMG has filed Motion(s) *In Limine* Regarding the Following:

(1)     Expert opinions of Weinstein;

(2)     Evidence of UMG's withdrawals of numerous alleged infringements;

(3)     Reference to the UGC Principles;

(4)     Evidence that Veoh relief upon the or believed in the alleged legality of its conduct;

(5)     References to UMG's uploading videos to other websites;

(6)     Reference to Veoh's current financial position;

(7)     Evidence of prior lawsuits

(8)     To exclude evidence regarding UMG's chain of title defects.


**H.     Issues of Law**

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Veoh has filed a motion for summary judgment concerning its entitlement to safe harbor pursuant to 17 U.S.C. §512(c) (Dkt. No. 449), which is fully briefed and has been taken under consideration by the Court.

## II. BIFURCATION

The parties have discussed bifurcating the trial as follows: During a first phase of the trial, Plaintiffs would come forward with *prima facie* evidence of ownership of the copyrights alleged in this action, and the trier of fact would determine liability and the per work level of statutory damages. During a second phase the parties would litigate any chain of title or other ownership issues regarding Plaintiffs alleged works. The parties have not, however, agreed on a few details regarding this proposed bifurcation, and hence they submitted the matter, along with their individual proposals for bifurcation, to Judge Wistrich for resolution. *See* Dkt. No. 522. During a July 20, 2009 hearing with Judge Wistrich, the parties agreed to submit a joint stipulation with Judge Wistrich concerning this issue no later than July 27, 2009.

## III. JURY TRIAL

Veoh timely demanded a jury trial on March 12, 2009 in its answer to Plaintiffs' Second Amended Complaint. The copyright claims at issue in this case are triable to a jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

## IV. ATTORNEYS' FEES

Veoh intends, as indicated in its pleadings, to seek attorneys' fees from UMG if it prevails in this action. The Copyright Act provides that in any copyright action, the court "may allow the recovery of full costs by or against any party…[and] the court may award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. To determine whether to grant a prevailing defendant attorneys' fees, the district court determines whether the successful defense of the action furthered the purposes of the Copyright Act. *Mattel Inc., v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir.2003) (remanding for the district court to reconsider its denial of fees under the proper standard). To this end, the Court may consider several

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

nonexclusive factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness; and (5) the need in particular circumstances to advance considerations of compensation and deterrence. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (citing *Fogarty*, 510 U.S. at 534). Judge Posner of the Seventh Circuit Court of Appeals has emphasized that "[w]hen the prevailing party is the defendant . . . the presumption in favor of awarding fees is very strong." *Assessment Technologies, LLC v. WIREData, Inc.*, 361 F.3d 434, 439 (7th Cir. 2004) (citing *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994)); *see also Milton H. Greene Archives, Inc. v. Julien's Auction House, LLC*, No. 05-7686, 2007 WL 4898365, at *5 (C.D. Cal. Dec. 20, 2007). "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Assessment Technologies*, 361 F.3d at 439.

Veoh intends to seek costs and fees if it prevails in this litigation given the unique circumstances presented, including that UMG has sued to recover statutory damages for infringement based upon videos that Veoh promptly took down once it received infringement notices from the trade group the RIAA, as well as for videos that neither UMG nor any of its representatives ever sent notices. UMG also continued to pursue this litigation despite the ruling in *Io Group, Inc. v. Veoh Networks, Inc.* in the Northern District and repeatedly attempted to sue Veoh's investors.

## V. ABANDONMENT OF ISSUES

As indicated in Section II.D above, Veoh does not intend to pursue certain of its pleaded affirmative defenses.

Dated: July 20, 2009        **WINSTON & STRAWN LLP**

By <u>Erin R. Ranahan /s/</u>
Michael S. Elkin
Thomas P. Lane

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Jennifer A. Golinveaux
Rebecca Calkins
Erin R. Ranahan
Attorneys for Defendant
VEOH NETWORKS, INC.

LA:250110.3

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

VEOH'S MEM. OF CONTENTIONS OF FACT AND LAW – CASE NO. 07 5744 -- AHM (AJWx)