Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>VEOH NETWORKS, INC., a California Corporation, et al.,<br><br>  Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)**<br><br>**VEOH'S OPPOSITION TO UMG'S MOTION *IN LIMINE* RE: EVIDENCE RELATING TO REFERENCE TO EVIDENCE OF LAWSUITS BROUGHT BY UMG OR THE RIAA AGAINST PERSONS OR ENTITIES OTHER THAN VEOH (MOTION *IN LIMINE* NO. 7)**<br><br>Hearing Date:  8/3/09<br>Time:  10:00 a.m.<br><br>Hon. A. Howard Matz |

LA:247050.2

**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 7– CASE NO. 07 5744 – AHM (AJWx)**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## I. INTRODUCTION

Evidence of prior lawsuits brought by UMG or its agents is admissible because it demonstrates UMG's pattern of litigating in a manner that not only thwarts the goals of the DMCA, but ultimately stifles innovation by forcing young start-up companies out of business if they cannot defend massively expensive lawsuits or pay antiquated balloon payments to avoid continuing litigation. Agreements that have been disclosed in this action and discussed during depositions were indeed entered into following UMG's kick starting negotiations with massive infringement lawsuits. Likewise, UMG's goal in bringing this lawsuit was *not* to prevent suspected copyright infringement, or to punish a "widescale copyright pirate" as UMG would have it; instead, it has been to bankrupt a young innovative and copyright-compliant business and replace it with a UMG entity of virtually the same name – UMG's recently announced new online video venture, which it has named "Vevo."

Evidence of these prior lawsuits is thus relevant to show UMG's plan of strategically filing this and similar lawsuits either to force service providers out of business or into extortionist settlements with balloon payments, largely to further UMG's goals of starting competing websites or entering business arrangements with maximum, unjustifiable leverage. Truth be told, if UMG was to negotiate with Veoh without such litigation underway, balloon payments like those UMG has managed to secure after similar litigations would not be expected to be a part of the deal, as these arrangements are not the standard means by which copyright owners enter agreements with companies like Veoh. Instead, companies like UMG have shifted to entering into deals with service providers under an ad-supported revenue sharing model, where payments only comes due once money is earned from advertising. Indeed, UMG has itself shifted to an ad-supported model following an initial agreement with a former defendant who was forced to pay the original balloon payment just to put an end to the unjustified litigation.

These prior lawsuits are directly relevant to Veoh's affirmative defense of unclean hands. Because the probative value of UMG's improper litigation plan outweighs any prejudicial effect, UMG's Motion No. 7 should be denied.

## II. CONTRARY TO UMG'S LITIGATION STRATEGY, THE DMCA PLACES THE BURDEN OF POLICING INFRINGEMENT ON COPYRIGHT OWNERS

The principal responsibility for policing infringement rests with the copyright owner. The DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on copyright owners. *See Perfect 10, Inc. v. CCBill* LLC, 488 F.3d 1102, 1111-13 (9th Cir. 2007), cert. denied, 128 S. Ct. 709 (2007). The purpose behind the DMCA's notice requirement is to provide internet service providers with adequate information to find and examine allegedly infringing material expeditiously. *Id.* In enacting the DMCA, Congress noted that the "provisions in the bill balance the need for rapid response to potential infringement with the end-users['] legitimate interests in not having material removed without recourse." Sen. Rep. No. 105-190 at 21 (1998).

At the moment a service provider becomes aware that a user is using its system to infringe, the DMCA shifts responsibility to the service provider to disable the allegedly infringing material, thus, preserving strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements. *See Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132 (N.D. Cal. 2008) (citing S. Rep. 105-190, at 20 (1998); H.R. Rep. 105-551(II), at 49 (1998)). "Congress hoped to provide 'greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities.'" *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) (quoting S. Rep. 105-190, at 20 (1998); H.R. Rep. 105-551(II), at 49-50 (1998)). By refusing to provide Veoh notice of infringements before filing this lawsuit, and failing to even identify

infringements until well over a year into this case, UMG managed to drag this litigation out and drive up litigation costs through massive alleged statutory damages—all to inflict maximum pressure on Veoh and further UMG's improper business goal of promoting its own "Vevo".

## III. EVIDENCE OF OTHER LAWSUITS SHOULD BE ALLOWED

### A. The Evidence of UMG's Litigation Plan Is Relevant

Although Rule 404(b) prohibits the admission of evidence of "other . . . wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," it does allow for the admission of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. Evid. Rule 404(b). "Showing plaintiff's plan, scheme or modus operandi through admission of prior lawsuits can undoubtedly be a proper purpose under Rule 404(b)." *Van Deelen v. Johnson*, No. 05-4039-SAC, 2008 WL 4683022, at *3 (D. Kan. 2008) (citing *Batiste-Davis v. Lincare, Inc*., 526 F.3d 377 (8th Cir. 2008); *Mathis v. Phillips Chevrolet, Inc*., 269 F.3d 771, 776 (7th Cir. 2001); *Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490 (7th Cir. 1998)). Here, evidence of other, similar lawsuits should be permitted to show UMG's strategy to bring these lawsuits to extort balloon settlement payments from the defendants, which stands in contravention to the cooperation envisioned by the DMCA.

Evidence of other lawsuits is relevant under Rule 402. UMG incorrectly argues that lawsuits against persons or entities other than Veoh concern their conduct—not Veoh's, and are therefore immaterial to issues in this action. This explanation is overly simplistic. UMG's litigation plan—to avoid providing takedown notices, delay identifying infringement at all, and then still sue service providers properly protected by safe harbor provisions—is to cause massive unnecessary litigation costs to a fledgling start-up industry. Evidence in the form of other lawsuits brought by UMG and the resulting business arrangements that former defendants entered before UMG

would dismiss the litigation serves to illustrate Plaintiffs' plan in this suit to do the same to Veoh. This evidence is directly relevant to show that UMG's actions are contrary to the design of the DMCA "to facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age." *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1141 (N.D. Cal. 2008) (citing S. Rep. No. 105-190, at 1-2 (1998)).

### B. The Evidence Is Relevant to Veoh's Affirmative Defense of Unclean Hands

The unclean hands defense essentially turns on the defendant's demonstrating "inequitable conduct by the plaintiff." *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1223 (C.D. Cal. 2007). UMG's motive and refusal to cooperate with the DMCA in order to further its improper business goals shows "inequitable conduct" by UMG. Thus, Veoh should be permitted to introduce such evidence in support of its affirmative defense for unclean hands.

### C. The Evidence Would Not Waste Time

UMG also argues that it would be forced to spend time explaining how the other parties infringed UMG's copyrights, and why copyright law forbids such conduct. But the evidentiary value of these lawsuits is that they demonstrate UMG's plan to drag out expensive lawsuits for improper purposes, resulting in agreements that are not typical in today's business climate between content owners and service providers, which has instead shifted to agreements with an ad-supported (pay as you earn revenue) model. Thus, UMG, rather than complying with the DMCA, intends to 'take out' service providers by demanding balloon payments to which it is not entitled as the only means by which service providers can avoid the massively expensive burdens of litigating against UMG; burdens that Veoh knows all too well. If these suits are allowed into evidence, there will be no reason to go into the specifics of the alleged copyright infringements. No judicial time or resources need be wasted. The key importance is the resulting business arrangements as a result of such lawsuits.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Further, there is no reason that UMG would suffer meaningful prejudice from the introduction of evidence that has probative value to Veoh's defense. A trial court has broad discretion under Rule 404(b) to examine whether the probative value of evidence substantially outweighs the danger of unfair prejudice. *Van Deelen v. Johnson*, No. 05-4039-SAC, 2008 WL 4683022, at *3 (D. Kan. 2008). Evidence is not unfairly prejudicial simply because it is detrimental to a party's case. *Id.* at *4 (citing *United States v. Martinez*, 938 F .2d 1078, 1082 (10th Cir. 1991)).

To illustrate, in *Van Deelen*, a court determined that evidence of prior lawsuits involving the same plaintiff were sufficiently similar to the instant case in their allegations, claims and/or substance, that they could in fact reveal that plaintiff had a motive, plan or scheme to bring similar kinds of claims against others. No. 05-4039-SAC, 2008 WL 4683022, at *3 (D. Kan. 2008) ("Because of their similarity to the present case, plaintiff's prior civil lawsuits show more than a generic pattern of litigiousness meant to show bad character."). In addition, the other suits were "sufficiently similar in kind to the present suit as to be facially relevant to the limited purposes found to be proper above." *Id.* "The court is aware of the potentially prejudicial nature of the challenged evidence [the inference of litigiousness], but not all detrimental evidence is 'unfairly prejudicial.'" *Id.*

## IV. ALTERNATIVELY, THE COURT SHOULD CONSIDER THE POSSIBILITY OF A LIMITING INSTRUCTION

Even if there is some risk of prejudicial effect, that risk can be minimized by a limiting instruction to the jury. *See United States v. Allen*, 341 F.3d 870, 886 n.24 (9th Cir. 2003); *Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995). Returning to *Van Deelen*, where a court admitted plaintiff's other lawsuits based on an offering for a proper purpose, proof of relevance, and probative value, the court also offered limiting instructions to the jury "to curtail their use, both to prevent unfair prejudice and to preclude a series of mini-trials on the merits of each of plaintiff's prior civil

pleadings." *Van Deelen v. Johnson,* WL 4683022, at *6. The Court could alternatively enter an appropriate limiting instruction here.

## V. ALTERNATIVELY, ANY RULING SHOULD BE DEFERRED UNTIL LATER

If the Court still has reservations about whether to let allow evidence regarding UMG's past similar lawsuits, it should defer ruling until during the trial, rather than rule to exclude this whole category of evidence now. For example, in *Knudsen v. City of Tacoma*, a defendant tried to exclude evidence of its prior lawsuits on the grounds that they were irrelevant and unduly prejudicial. *Knudsen v. City of Tacoma*, No. C04-5850BHS, 2008 WL 163667, at *3 (W.D. Wash. Jan. 15, 2008). Plaintiff opposed, but the court ruled that the "full extent of Plaintiff's proposed use of evidence of prior lawsuits [was] not yet clear to the Court." *Id*. While the court was concerned that the jury may use the evidence to merely infer defendant's liability, the court decided it could not yet rule as a matter of law whether this evidence should be excluded and it denied the motion *in limine*. *Id*.

Evidence of prior lawsuits can prove a plaintiff's large-scale plan. In one recent case, the parties disputed admissibility of evidence related to Manufacturers' (a party) coordinated litigation strategy. *Hynix Semiconductor Inc. v. Rambus Inc.*, Nos. C-00-20905 RMW, 2008 WL 2951341, at *12 (N.D. Cal. 2008). Although a motion *in limine* had been filed to exclude evidence of this "coordinated litigation strategy" early in the case, the court repeatedly dismissed it until the trial when it finally "had the chance to comprehend the scope" and prejudicial value of the evidence. *Id.* The court did not perceive that defendant's argument unfairly tainted the jury's reasoning. *Id.*

## VI. CONCLUSION

Veoh should be allowed to pursue and refer to evidence regarding UMG's other lawsuits in order to establish that UMG had a large-scale plan to delay and force expensive litigation for its own improper business goals. This evidence is directly

6
**VEOH'S OPP. TO UMG'S MOT. *IN LIMINE* NO. 7 – CASE NO. 07 5744 – AHM (AJWx)**

relevant to Veoh's affirmative defense of unclean hands.  Because the probative value of UMG's similar litigations outweighs any competing concerns, UMG's Motion *In Limine* No. 7 should be denied.

Dated:  July 20, 2009                                WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
Michael S. Elkin
Thomas P. Lane
Jennifer A. Golinveaux
Rebecca Calkins
Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.