1  Steven A. Marenberg (101033) (smarenberg@irell.com)
   Elliot Brown (150802) (ebrown@irell.com)
2  Brian Ledahl (186579) (bledahl@irell.com)
   Benjamin Glatstein (242034) (bglatstein@irell.com)
3  IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone:  (310) 277-1010
5  Facsimile:  (310) 203-7199

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         WESTERN DIVISION

11  UMG RECORDINGS, INC., *et al.*,        )  **Case No. CV-07-05744 AHM (AJWx)**
                                           )
12                Plaintiffs,              )  **UMG'S LOCAL RULE 16.4**
                                           )  **MEMORANDUM OF**
13                                         )  **CONTENTIONS OF FACT AND**
                                           )  **LAW**
14        v.                               )
                                           )
15                                         )  Hon. A. Howard Matz
   VEOH NETWORKS, INC., *et al.*,          )
16                                         )
                                           )
17                Defendant.               )
                                           )  Discovery Cutoff:    May 4, 2009
18                                         )  Pretrial Conference: August 3, 2009
                                           )  Trial Date:          August 18, 2009
19                                         )
                                           )
20  _____ )

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2080769

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

Page

I.      INTRODUCTION ..................................................................................1

II.     THE PARTIES' CLAIMS AND DEFENSES [L.R. 16-4.1].........................2

        A.      UMG's CLAIMS AND ELEMENTS........................................2

                1.      Summary of UMG's Claims [L.R. 16-4.1(a), (b)] ...........2

                2.      Key Evidence in Support of UMG's Claims [L.R. 16-4.1(c)] ...................................................................................4

                3.      Summary of Veoh's Affirmative Defenses [L.R. 16-4.1(d), (e)] ...............................................................................8

                4.      Key Evidence in Opposition to Veoh's Affirmative Defenses [L.R. 16-4.1(f)].........................................................14

                5.      Anticipated Evidentiary Issues [L.R. 16-4.1(h)] ...............18

                6.      Identification of Issues of Law [L.R. 16-4.1(i)] ...............20

III.    BIFURCATION OF ISSUES [L.R. 16-4.3] ...........................................21

IV.     JURY TRIAL [L.R. 16-4.4] ................................................................21

        A.      ISSUES TRIABLE TO THE JURY ..........................................21

        B.      ISSUES TRIABLE TO THE COURT.........................................23

V.      ATTORNEYS' FEES [L.R. 16-4.5] ......................................................23

VI.     ABANDONMENT OF ISSUES [L.R. 16-4.6] ..........................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Napster,*
239 F.3d 1004 (9th Cir. 2001) ................................................................. 10, 13

*Atkins v. Fischer,*
331 F.3d 988 (D.C. Cir. 2003) ................................................................. 12

*Danjaq LLC v. Sony Corp.,*
263 F.3d 942 (9th Cir. 2001) ................................................................. 23

*Ellison v. Robertson,*
357 F.3d 1072 (9th Cir. 2004) ................................................................. 10

*Granite State Ins. Co. v. Smart Modular Techs., Inc.,*
76 F.3d 1023 (9th Cir. 1996) ................................................................. 23

*In re Aimster Copyright Litig,*
334 F.3d 643 (7th Cir. 2003) ................................................................. 6

*Lowry's Reports, Inc. v. Legg Mason, Inc.,*
302 F. Supp. 2d 455 (D. Md. 2004) ................................................................. 14

*Lulirama Ltd., Inc. v. Axcess Broad Sews.,*
128 F.3d 872 (5th Cir. 1997) ................................................................. 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
545 U.S. 913 (2005) ................................................................. 4, 10, 12, 13

*S.O.S., Inc., v. Payday, Inc.,*
886 F.2d 1081 (9th Cir.1989) ................................................................. 3

*Sias v. City Demonstration Agency,*
588 F.2d 692 (9th Cir. 1978) ................................................................. 13

*Survivor Productions LLC v. Fox Broadcasting Co.,*
2001 WL 35829270 (C.D. Cal. June 12, 2001) ................................................................. 12

*U.S. v. Kaczynski,*
551 F.3d 1120 (9th Cir. 2009) ................................................................. 23

*U.S. v. King Features Entm't, Inc.,*
843 F.2d 394 (9th Cir. 1988) ................................................................. 11

*Westinghouse Elect. v. Gen. Circuit Breaker,*
106 F.3d 894 (9th Cir. 1997) ................................................................. 23

**Statutes**

17 U.S.C. § 106 ................................................................. 2, 3, 22

| | Page(s) |
|---|---|

17 U.S.C. § 115 ........................................................................... 2

17 U.S.C. § 411 ........................................................................... 8

17 U.S.C. § 501 ........................................................................... 2

17 U.S.C. § 505 ......................................................................... 23

17 U.S.C. § 507 ........................................................... 14, 16, 18

17 U.S.C. § 510 ........................................................................... 2

17 U.S.C. § 512 ................................................... 8, 9, 14, 22

28 U.S.C. § 1331 ......................................................................... 2

28 U.S.C. § 1338 ......................................................................... 2

**<u>Other Authorities</u>**

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*
    §§ 12B.06[B][2][c][i] (2007) ............................................... 10, 11

Holbrook & Harris, eds., *Model Jury Instructions: Copyright,*
    *Trademark, and Trade Dress Litigation* 75 ................................ 14

Ninth Circuit Manual of Model Jury Instructions, Civil § 17.25 (2007) ............... 22

Ninth Circuit Manual of Model Jury Instructions, Civil § 17.26 (2007) ............... 22

Ninth Circuit Manual of Model Jury Instructions, Civil § 17.27 (2007) ............... 22

Ninth Circuit Manual of Model Jury Instructions: Civil § 1.2 (2007) .................... 22

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.0 (2007) ............ 22, 23

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.1 (2007) ............ 22, 23

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.18 (2009) ............... 11

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.19 (2009) ............... 12

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.20 (2009) ................. 3

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.21(2009) ................. 3

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.4 (2007) ............ 22, 23

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.4 (2009) ................. 3

Page(s)

**<u>Rules</u>**

Local Rule 16-4 ...............................................................................passim

2080769

Pursuant to Local Rule 16-4 and the Court's Orders, Plaintiffs UMG Recordings, Inc., *et al.* (collectively, "UMG") respectfully submit the following Memorandum of Contentions of Fact and Law, addressing the contentions of the parties as regards the trial scheduled to commence August 18, 2009.[1]

## I.  INTRODUCTION

This is an action for direct, contributory, and vicarious copyright infringement and for inducement of copyright infringement, brought by UMG against Veoh Networks, Inc. ("Veoh").  Veoh is a so-called "video sharing website," which in layman's terms means a marketplace for viewing and downloading permanent copies of a wide range of copyrighted video content, including videos containing UMG's copyrighted materials (both sound recordings and musical compositions).  Through its website and companion software (called VeohTV), Veoh reproduces UMG's copyrighted works (in the process creating derivative works), performs UMG's copyrighted works through streaming to the public, and distributes permanent copies of UMG's copyrighted works through its "Download" button.

As is described below and will be proven at trial, Veoh knew that it had no right to use *any* music content – let alone UMG's.  Moreover, Veoh could have prevented infringement on its website, but chose not to.  Instead, Veoh eschewed available filtering solutions, adopted policies that turned a blind eye to obvious infringement, and provided users with mechanisms to download copyrighted works

---

[1] This memorandum, while based on diligent inquiry and investigation by UMG, necessarily reflects only the current state of UMG's knowledge, understanding, and belief based upon the information made available to UMG. UMG reserves the right to modify, supplement, revise or amend this Memorandum and to correct any inadvertent errors or omissions that may be contained herein. Furthermore, this Memorandum is provided without prejudice to UMG's right to amend as a result of mistake, error, or oversight, and without prejudice to UMG's using, or relying on, at trial, hearing, or otherwise, deposition testimony omitted from this response as a result of mistake, error, or oversight. Finally, UMG notes that the filing of this memorandum is complicated by Veoh's reliance on more than twenty affirmative defenses, many of which are not affirmative defenses at all, but which must still be addressed under Local Rule 16-4.

at the click of a button.  It is no surprise that UMG identified more than 7,000 videos embodying its sound recording and musical composition copyrights. Collectively, these videos (and necessarily, the copyrighted works contained in them) were viewed and downloaded millions of times – all while providing advertising revenue, market share, and (as a result) venture capital to Veoh.  Veoh's mass infringement of UMG's copyrights is egregious and willful.

## II.  THE PARTIES' CLAIMS AND DEFENSES [L.R. 16-4.1]

This is a civil action concerning copyright infringement on Veoh's website relating to UMG's sound recordings and musical compositions.  Jurisdiction is asserted under 17 U.S.C. § 510 and 28 U.S.C. §§ 1331 and 1338(a).

### A.  UMG's CLAIMS AND ELEMENTS

#### 1.  Summary of UMG's Claims [L.R. 16-4.1(a), (b)]

The Complaint alleges four counts for relief.  UMG seeks statutory damages.

**Claim 1: Direct copyright infringement**.

<u>Summary</u>:  UMG alleges violations of 17 U.S.C. §§ 106, 115, and 501 due to Veoh's unauthorized reproduction, adaptation, distribution, and/or public performance of audiovisual works embodying UMG's copyrighted material.  Specifically, through Veoh's system, Veoh reproduces, distributes, and performs UMG's copyrighted works by (*i*) making multiple copies of UMG's copyrighted works (for internal use and to aid in the further display and distribution of the works), (*ii*) transcoding those works into various formats, (*iii*) preparing those works for distribution by creating additional copies of the work, (*iv*) performing those works publicly by streaming the works from its servers; and (*v*) distributing those works through a "Download" button.

<u>Elements</u>:  UMG has the burden of proving: (1) UMG is the owner of a valid copyright; and (2) Veoh copied[2] original elements from the copyrighted work.

---

[2] The Manual of Model Jury Instructions explains: "The Ninth Circuit considers the word 'copying' as 'shorthand' for the various activities that may infringe 'any of the copyright owner's . . . exclusive rights described at 17 U.S.C.

1
2
Source:  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.4 (2009).

3
**Claim 2: Contributory copyright infringement.**

4
5
6
Summary:  Through its system and operations, Veoh knowingly and systematically materially contributed to, intentionally induced, and/or caused unauthorized use of UMG's copyrighted works.

7
8
9
Elements:  UMG has the burden of proving: (1) Veoh knew or had reason to know of the direct infringing activity of its users; and (2) Veoh intentionally induced or materially contributed to the direct infringing activity.

10
11
Source:  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.21 (2009).

12
**Claim 3: Vicarious copyright infringement.**

13
14
15
16
17
18
19
Summary:  Veoh has the right and ability to supervise and/or control the infringing conduct of its users.  Veoh refused to exercise such supervision and/or control over Veoh's users to the extent required by law.  Veoh derived a direct financial benefit, including but not limited to, from advertising revenue and from the increased user traffic and increase in value of Veoh's business arising from the "draw" of infringing copyrighted sound recordings and copyrighted musical compositions.

20
21
22
Elements:  UMG has the burden of proving: (1) Veoh profited directly from direct infringing activity; (2) Veoh had the right and ability to supervise or control the direct infringing activity; and (3) Veoh failed to exercise that right and ability.

23
24
Source:  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.20 (2009).

25
26
27
28
§ 106.'"  (citing *S.O.S., Inc., v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir.1989)).

UMG'S LOCAL RULE 16.4
MEMORANDUM OF CONTENTIONS OF
FACT AND LAW
2080769

**Claim 4: Inducement of copyright infringement.**

Summary: Veoh designed, distributed, and made available technology with the object and intent of promoting their use to infringe copyrighted materials. As a direct and proximate result of such conduct, Veoh and its users infringed UMG's copyrights in UMG's copyrighted works.

Elements: UMG has the burden of proving: (1) that Veoh knew or had reason to know of the infringing activity of its users; and (2) that Veoh intentionally induced its users' infringing activity.

Source: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction No. 17.21; *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 (2005).

**Prayer for Relief – Statutory damages:**

Summary: UMG elected to seek statutory damages for Veoh's infringement. UMG is entitled to statutory damages between $750 and $30,000 per infringed work, unless the jury concludes that Veoh's infringement is willful (in which case UMG is entitled to statutory damages of up to $150,000 per work) or if the jury concludes that Veoh's conduct was innocent (in which case UMG is entitled to statutory damages of no less than $200 per work).

Source: 17 U.S.C. §§ 504(c)(1), (2); Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction No. 17.25.

**2.    Key Evidence in Support of UMG's Claims [L.R. 16-4.1(c)]**

**Claim 1: Direct copyright infringement.**[3]    UMG will introduce the following categories of evidence establishing that Veoh willfully reproduced, adapted, performed, and distributed UMG's copyrighted works embodied in the videos at issue in suit:

---

[3] UMG also incorporates by reference the evidence cited below in conjunction with Claims 2, 3, 4, and statutory damages.

- Evidence showing the videos in suit themselves, and showing those videos being made publicly available on Veoh's website;

- Veoh's production of so-called "metadata" showing (among other things) that Veoh's users viewed and downloaded the videos embodying UMG's copyrighted works collectively millions of times, and that Veoh itself tagged thousands of videos as "music videos";

- Testimony from Veoh employees regarding the functionality of Veoh's system and operations. Such testimony will establish that Veoh (*i*) makes multiple copies of UMG's copyrighted works, (*ii*) transcodes those works into various formats, (*iii*) prepares those works for distribution by creating additional copies of those works, (*iv*) performs those works publicly by streaming the works from its servers; and (*v*) distributes those works through a "Download" button.

- Other documentary and testimonial evidence establishing that Veoh's infringement was knowing and willful, including testimony showing that: Veoh adopted head-in-the-sand policies toward infringing content; Veoh knew it had no rights to any music content on its site, but encouraged users to upload, view, and download music content regardless; Veoh knew its users were searching for and finding copyrighted content on its site; filtering solutions were available to Veoh at its founding, but Veoh chose not to implement these solutions; and Veoh itself designed a system for detecting improper content, but chose not to use that system to detect copyrighted materials.

**Claim 2: Contributory copyright infringement**.[4] UMG will introduce the following categories of evidence establishing that Veoh is contributorily liable for its users' infringement of the copyrights at issue:

---

[4] UMG also incorporates by reference the evidence cited above and below in conjunction with Claims 1, 3, and 4, and statutory damages.

- Evidence showing Veoh's system and operations; in particular, showing that the system Veoh designed, implemented, and maintained made multiple copies of, performed, and distributed copyrighted works.

- Evidence establishing that Veoh knew its system would be, and was, used for copyright infringement. For example, and without limitation, Veoh personally tagged thousands of videos (including many of the videos identified by UMG) as "music videos" in order to allow those videos to show up in Google searches. Veoh's own employees were aware of rampant infringement on Veoh's site, and press coverage and communications with investors and users confirm the same. Similarly, Veoh displayed willful blindness – which is equivalent to knowledge; *e.g. In re Aimster Copyright Litig*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge[] in copyright law") – by choosing not to implement any of a variety of available filtering solutions.

**Claim 3: Vicarious copyright infringement.**[5] UMG will introduce the following categories of evidence establishing that Veoh is vicariously liable for its users' infringement of the copyrights at issue:

- Evidence that Veoh had the right to remove infringing content from its website as shown by, among other things, Veoh's Terms of Use, which gave it the right to remove any content it chooses. Testimony of Veoh employees, among others, confirms the same.

- Evidence (including testimony of Veoh and a third-party filtering company, called Audible Magic) that commercial filtering solutions were available, but that Veoh did not avail itself of those solutions.

- Evidence that Veoh itself developed the means to filter infringing content, but instead expended resources removing content that advertisers and investors found objectionable.

---

[5] UMG also incorporates by reference the evidence cited above and below in conjunction with Claims 1, 2, and 4, and statutory damages.

- Evidence that Veoh received a direct financial benefited from UMG's copyrighted content, including by, among other things, collecting advertising revenue for ads placed alongside UMG's copyrighted content. Veoh also used UMG's copyrighted content as a "draw" to encourage others to come to Veoh's website, for example, by tagging videos as "music videos" so that they would show up in Google searches for music videos by UMG's artists. Moreover, the millions of views and downloads of these copyrighted works confirms that they were a significant draw to Veoh's site.

**Claim 4: Inducement of copyright infringement**. The above- and below-referenced evidence will also establish that Veoh is liable for inducing its users' infringement of the copyrights at issue.

**Statutory Damages.**[6] UMG will introduce the following categories of evidence establishing that Veoh's infringement is willful (entitling UMG to statutory damages of up to $150,000 per work) or, that if it is not willful, that UMG is entitled to the statutory maximum damages for non-willful infringement ($30,000 per work):

- Evidence that Veoh designed and operated its system without any basis for believing that its infringement was legal, thereby resulting in millions of infringing acts, and resulting in significant financial benefit to Veoh (in the form of tens of millions of dollars of venture capital cash infusions).
- Evidence from UMG employees and experts that Veoh offers for free to users, and without compensation to UMG, content that UMG otherwise sells or licenses.
- Testimony from UMG employees and experts explaining the need to deter infringement in the online video market.

---

[6] UMG also incorporates by reference the evidence cited above in conjunction with Claims 1, 2, 3, and 4.

2080769

- • Evidence establishing that Veoh knew that its use of UMG's copyrighted works required licenses, including but not limited to Veoh's license agreements with other content providers.
- • Evidence that Veoh is owned and operated by sophisticated businesspeople, including those with significant media and copyright experience.
- • Evidence showing that Veoh could have, but chose not to, implement systems or procedures which would have reduced the incidence of infringement.

    **3.    Summary of Veoh's Affirmative Defenses [L.R. 16-4.1(d), (e)]**

    **Improper "Affirmative Defenses":**

    Veoh asserts more than twenty so-called "affirmative defenses," many of which are not affirmative defenses at all. Some of these improper "affirmative defenses" simply purport to negate elements of UMG's claims for relief, or which are otherwise encompassed by Veoh's other affirmative defenses. *See* Third Affirmative Defense ("No Primary Liability") (encompassed in UMG's case for liability); Sixth Affirmative Defense ("Lack of Knowledge") (encompassed by UMG's case for contributory infringement and by Veoh's purported affirmative defense under 17 U.S.C. § 512(c)); Seventh Affirmative Defense ("No Direct Financial Benefit") (encompassed by UMG's case for vicarious infringement and by Veoh's purported affirmative defense under 17 U.S.C. § 512(c)); Eighth Affirmative Defense ("No Right or Ability to Control") (encompassed by UMG's case for vicarious infringement and by Veoh's purported affirmative defense under 17 U.S.C. § 512(c)). Several of Veoh's affirmative defenses simply relate to UMG's purported failure to register its copyrights, or to establish ownership or control over its copyrights. *See* Fourteenth Affirmative Defense ("Invalidity and Unenforceability of Copyright"); Eighteenth Affirmative Defense ("Standing"); Twenty-Seventh Affirmative Defense ("Failure to Register"). Again, because UMG must establish valid copyrights in order to proceed with suit (*see* 17 U.S.C. § 411), these are not proper affirmative defenses. Similarly, Veoh's First Affirmative

Defense ("Failure to State a Claim for Relief") is not an affirmative defense at all, and, in any event, Veoh has not articulated any way in which UMG's complaint fails to state a claim for relief.

**Second Affirmative Defense ("17 U.S.C. § 512"):**

Summary:  Veoh contends that UMG's "claims are barred by the statutory immunity granted to service providers under 17 U.S.C. § 512."

Elements:  To sustain a defense under 17 U.S.C. § 512(c), Veoh has the burden of showing the following: (1)Veoh designated an agent to receive notifications of claimed infringement by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, the name, address, phone number, and electronic mail address of the agent; (2) Veoh did not receive a financial benefit directly attributable to the infringing activity; (3) Veoh did not have the right and ability to control the infringing activity; *and* (4) Veoh accommodated and did not interfere with standard technical measures.  If Veoh satisfies its burden in showing (1) through (4), then the burden is on UMG to show that: (5) Veoh had actual knowledge that the material on its system or network infringed UMG's copyrights; *or* (6) Veoh was aware of facts or circumstances from which infringing activity was apparent.  If UMG shows either (5) or (6), then Veoh has the burden of showing that: (7) upon notification of claimed infringement Veoh responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

Additionally, 17 U.S.C. § 512 offers limitations on liability for "Transitory Digital Network Communications" (§ 512(a)), "Systems Caching," (§ 512(b)), and "Information Location Tools" (§ 512(d)).  In response to an interrogatory asking about this affirmative defense, Veoh did not articulate any basis for a defense under subsections (a), (b) or (d).

Source:  17 U.S.C. § 512.

**Fourth Affirmative Defense ("Staple Articles of Commerce"):**

Summary: Veoh contends that UMG's "claims based upon secondary liability are barred because Veoh's products and/or services are staple articles of commerce."

Elements: This is not an affirmative defense in itself, but a partial response to a showing of knowledge with respect to UMG's claim for contributory infringement. Veoh has the burden of showing that its product is capable of commercially significant non-infringing uses. UMG denies that Veoh "cannot be held secondarily liable for the alleged infringement of its users" upon making this showing. One cannot infer knowledge or constructive knowledge of infringement based solely on the distribution of a product where the defendant has shown the product to be capable of commercially significant noninfringing uses. But other evidence of actual or constructive knowledge can warrant the imposition of secondary liability.

Source: *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931-935 (2005); *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1020 (9th Cir. 2001).

**Fifth Affirmative Defense ("No Volitional Act"):**

Summary: Veoh contends that UMG's "claims are barred because the alleged infringement was not caused by a volitional act attributable to Veoh."

Elements: This defense does not exist in the Ninth Circuit. *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004). Moreover, scholars and commentators have criticized any attempt to import an "volitional" element into the Copyright Act where none exists. *See, e.g.*, 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.06[B][2][c][i] (2007) ("requirement [of] 'some element of violation' should not be viewed as a free-standing feature of copyright law"); *see id.* (praising *Ellison* for rejecting volition argument).

Source: *Ellison*, 357 F.3d at 1077; *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.06[B][2][c][i] (2007) ("requirement [of]

'some element of violation' should not be viewed as a free-standing feature of copyright law").

**Ninth Affirmative Defense ("Fair Use"):**

<u>Summary</u>:  Veoh contends that its "alleged conduct constitutes fair use."

<u>Elements</u>:  Veoh has the burden to establish fair use based on the following: (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

<u>Source</u>:  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.18 (2009).

**Tenth Affirmative Defense ("Laches"):**

<u>Summary</u>:  Veoh contends that UMG's "claims are barred by laches."

<u>Elements</u>:  Veoh has the burden to establish: (1) Delay in filing suit; (2) that the delay in filing suit was for an unreasonable period; and (3) that the unreasonable delay was prejudicial to defendant.

<u>Source</u>: 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 12.06[B][1–3] (2007).

**Eleventh Affirmative Defense ("Waiver"):**

<u>Summary</u>:  Veoh contends that UMG's "claims are barred by waiver."

<u>Elements</u>:  Veoh must establish by a preponderance of the evidence: (1) The intentional relinquishment of a known right with knowledge of its existence; and (2) the intent to relinquish that right.

<u>Source</u>:  *U.S. v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).

**Thirteenth Affirmative Defense ("Unclean Hands"):**

<u>Summary</u>:  Veoh contends that UMG's "claims are barred by unclean hands."

Elements: Veoh must show by a preponderance of the evidence: (1) inequitable conduct by UMG; (2) that UMG's conduct directly relates to the claim which it has asserted against Veoh; and (3) that UMG's conduct injured Veoh.

Source: *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (citing *Survivor Productions LLC v. Fox Broad. Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)).

**Fifteenth Affirmative Defense ("License, Consent and Acquiescence"):**

Summary: Veoh contends that UMG's "claims are barred by [UMG's] license, consent and acquiescence to Veoh's use." Veoh has limited this defense to specific "videos that UMG or its agents or artists etc. uploaded to Veoh, or to the internet without restricting distribution."

Elements: Veoh has the burden of showing that an implied license arose where (1) Veoh requested the creation of a work; (2) UMG made the particular work and delivered it to Veoh who requested it; and (3) UMG intends that Veoh copy and distribute this work.

Source: *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (quoting *Lulirama Ltd., Inc. v. Axcess Broad. Servs.*, 128 F.3d 872, 879 (5th Cir. 1997)).

**Seventeenth Affirmative Defense ("Abandonment and Forfeiture"):**

Summary: Veoh contends that UMG's "claims are barred to the extent that they have forfeited or abandoned their intellectual property."

Elements: Veoh has the burden of showing: (1) UMG intended to surrender ownership rights in the work; and (2) an act by UMG evidencing that intent.

Source: Ninth Circuit Manual of Model Jury Instructions: Civil § 17.19 (2009).

**Twentieth Affirmative Defense ("Non-Infringing Use"):**

Summary: Veoh contends that UMG's "claims are barred because Veoh's products and/or services are capable of substantial non-infringing uses."

Elements:  This is not an affirmative defense in itself, but a partial response to a showing of knowledge with respect to UMG's claim for contributory infringement. Veoh has the burden of showing that its product is capable of commercially significant non-infringing uses.  UMG denies that Veoh "cannot be held secondarily liable for the alleged infringement of its users" upon making this showing.  One cannot infer knowledge or constructive knowledge of infringement based solely on the distribution of a product where the defendant has shown the product to be capable of commercially significant noninfringing uses.  But other evidence of actual or constructive knowledge can warrant the imposition of secondary liability.

Source:  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931-935 (2005); *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1020 (9th Cir. 2001).

**Twenty-First Affirmative Defense ("Failure to Mitigate Damages"):**

Summary:  Veoh contends that UMG's "claims are barred due to [UMG's] failure to mitigate damages."

Elements:  UMG is unaware of the failure to mitigate damages ever being applied in the context of statutory damages.  In other contexts, the failure to mitigate would require Veoh to establish (1) that the damages suffered by UMG could have been avoided, and (2) that UMG failed to use reasonable care and diligence in avoiding the damages.

Source:  *Sias v. City Demonstration Agency*, 588 F.2d 692, 696-97 (9th Cir. 1978).

**Twenty-Second Affirmative Defense ("Innocent Intent"):**

Summary:  Veoh contends that UMG's "claims are barred, in whole or in part, because Veoh's conduct was in good faith and with non-willful intent, at all times."

Elements:  This is not an affirmative defense.  Innocence and non-willful intent are relevant to the range of statutory damages under 17 U.S.C. § 504(c).

Source:  17 U.S.C. § 504(c); Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction No. 17.25.

**Twenty-Third Affirmative Defense ("Unconstitutionality"):**

Summary:  Veoh contends that "[t]he statutory damages sought by [UMG] are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained, in violation of the Due Process Clause."

Elements:  The Due Process Clause does not apply to statutory (as opposed to punitive) damages.  Accordingly, this is not an affirmative defense.

Source:  *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 459-60 (D. Md. 2004) (no Due Process defense to statutory damages because "[s]tatutory damages exist in part because of the difficulties in proving—and providing compensation for—actual harm in copyright infringement actions").

**Twenty-Fourth Affirmative Defense ("Statutes of Limitations"):**

Summary:  Veoh contends that UMG's "claims are barred by the applicable statutes of limitations."

Elements:  Veoh must show by a preponderance of the evidence: (1) that UMG learned, or should have learned, of Veoh's alleged infringement more than three years before UMG filed suit.

Source:  Holbrook & Harris, eds., *Model Jury Instructions: Copyright, Trademark, and Trade Dress Litigation* 75; 17 U.S.C. § 507.

## 4. Key Evidence in Opposition to Veoh's Affirmative Defenses [L.R. 16-4.1(f)]

Evidence in Opposition to Second Affirmative Defense ("17 U.S.C. § 512"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh's service induces, allows, and contributes to infringement, that Veoh has the right and ability to control infringement, and that Veoh has knowledge of and a direct financial benefit from infringing activity.

Evidence in Opposition to Third Affirmative Defense ("No Primary Liability"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that UMG is the owner of the works in suit, and that Veoh and its users engaged in the mass infringement of the works embodied in the videos in suit.

Fourth Affirmative Defense ("Staple Articles of Commerce"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh's service induces, allows, and contributes to infringement, that Veoh has the right and ability to control infringement, and that Veoh has knowledge of infringing conduct.

Fifth Affirmative Defense ("No Volitional Act"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh engaged in the mass infringement of the works embodied in the videos in suit, including by constructing and operating a system that reproduced, performed, and distributed the works in suit and induced, allowed, and contributed to further infringement, and by failing to take measures that could have prevented that infringement.

Sixth Affirmative Defense ("Lack of Knowledge"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh engaged in the mass infringement of the works embodied in the videos in suit with knowledge of infringement, and with knowledge that Veoh had no right to use UMG's copyrighted works.

Seventh Affirmative Defense ("No Direct Financial Benefit"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh received a direct financial benefit from the infringement of UMG's copyrighted works in that Veoh placed advertisements alongside UMG's copyrighted works, and used UMG's copyrighted works as a "draw" to its website.

Eighth Affirmative Defense ("No Right or Ability to Control"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that

Veoh had the right to control infringement, as established by its website and service Terms of Use, as well as the ability to control as admitted in deposition testimony, and as reflected in the fact that Veoh could have (but chose not to) timely install a variety of filters to prevent or reduce infringement.

Ninth Affirmative Defense ("Fair Use"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh's use of these works was entirely commercial.  Moreover, Veoh has produced no evidence whatsoever regarding the effect of its (and its users') use of UMG's copyrighted works on the potential market for and value of the copyrighted work.  Thus, UMG is entitled to judgment as a matter of law on this defense.

Tenth Affirmative Defense ("Laches"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that UMG filed suit within the limitations period set by 17 U.S.C. § 507, and in any event without any unreasonable delay or delay causing prejudice to Veoh.  Thus, UMG is entitled to judgment as a matter of law on this defense.

Eleventh Affirmative Defense ("Waiver"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that UMG treats its copyrights as its valuable intellectual property, and has not relinquished its rights, much less intentionally.  Thus, UMG is entitled to judgment as a matter of law on this defense.

Thirteenth Affirmative Defense ("Unclean Hands"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that UMG has not engaged in any inequitable conduct.  Thus, UMG is entitled to judgment as a matter of law on this defense.

Fourteenth Affirmative Defense ("Invalidity and Unenforceability of Copyright"):  UMG incorporates by reference the evidence described in Section II.A.2, which shows that UMG is the owner of the copyrights associated with the asserted copyrights embodied in the videos in suit.

Fifteenth Affirmative Defense ("License, Consent and Acquiescence"): UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh has no evidence showing that it requested UMG's copyrighted works, that UMG delivered those copyrighted works to Veoh, or that UMG intended Veoh to distribute its copyrighted works. Thus, UMG is entitled to judgment as a matter of law on this defense.

Seventeenth Affirmative Defense ("Abandonment and Forfeiture"): UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh has no evidence suggesting that UMG intended to surrender ownership rights in its copyrighted works, or that Veoh has evidence of an act by UMG surrendering ownership rights in its copyrighted works. Thus, UMG is entitled to judgment as a matter of law on this defense.

Eighteenth Affirmative Defense ("Standing"): UMG incorporates by reference the evidence described in Section II.A.2, which shows that UMG owns or controls the rights in the asserted copyrights embodied in the videos in suit.

Twentieth Affirmative Defense ("Non-Infringing Use"): UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh's service induces, allows, and contributes to infringement, that Veoh has the right and ability to control infringement, and that Veoh has knowledge of infringement.

Twenty-First Affirmative Defense ("Failure to Mitigate Damages"): To the extent the failure to mitigate damages is a defense to statutory damages, UMG incorporates by reference the evidence described in Section II.A.2, which shows that it acted expeditiously in brining suit when it learned of Veoh's infringement.

Twenty-Second Affirmative Defense ("Innocent Intent"): To the extent innocent intent is an affirmative defense separate from the analysis of willfulness for the purposes of statutory damages, UMG incorporates by reference the evidence described in Section II.A.2, which shows that Veoh intentionally infringed UMG's copyrights.

Twenty-Third Affirmative Defense ("Unconstitutionality"):  To the extent the

2  unconstitutionality of damages is applicable to statutory damages, UMG

3  incorporates by reference the evidence described in Section II.A.2, which shows that

4  Veoh's infringement was willful and rampant, and included millions of acts of

5  infringement that caused UMG certain (but unquantifiable) damages.

6    Twenty-Fourth Affirmative Defense ("Statutes of Limitations"):  UMG

7  incorporates by reference the evidence described in Section II.A.2, which shows that

8  UMG filed suit within the three year statute of limitations set by 17 U.S.C. § 507(b).

9  Indeed, Veoh did not even exist as an entity three years before UMG filed suit.

10  UMG is entitled to judgment as a matter of law on this defense.

11    Twenty-Seventh Affirmative Defense ("Failure to Register"):  UMG

12  incorporates by reference the evidence described in Section II.A.2, which shows that

13  UMG owns or controls – and properly registered – the asserted copyrights

14  associated with the videos in suit.

15         **5.    Anticipated Evidentiary Issues [L.R. 16-4.1(h)]**

16    As reflected in its Motions *in Limine*, UMG believes the following evidence

17  is inadmissible:

18  • Testimony of Veoh's purported expert on the "promotional value" of Veoh's

19    infringing conduct (Docket #515);

20  • Testimony regarding Veoh's belief in the legality of its conduct given its

21    assertion of privilege and waiver of any advice of counsel defense (Docket

22    #516);

23  • Veoh's reference to works withdrawn from UMG's list of videos embodying the

24    copyrighted works in suit (Docket #503);

25  • Evidence relating to Veoh's being a "signatory" to a set of voluntary, non-

26    binding "guidelines" known as the UGC Principles (Docket #504);

27  • Evidence relating to UMG's purported uploading of its copyrighted works to

28    websites other than Veoh (Docket #505);

- Evidence relating to Veoh's current financial position, potential bankruptcy, and layoffs (Docket #506);

- Evidence relating to evidence of lawsuits brought by UMG or the RIAA against persons other than Veoh (Docket #507); and

- Evidence relating to alleged defects in UMG's rights to own or control the copyrighted works at suit (except as already identified by Veoh) (Docket #508).

Additionally, Veoh contends that the following categories of evidence are inadmissible; as to each, UMG disagrees:

- Allegedly infringing videos that are not official UMG music videos. *See* Docket #509. UMG contends that this evidence is admissible to show infringements of UMG's copyrighted works, and that Veoh's Motion *In Limine* is essentially an improper motion for summary judgment as to videos that Veoh does not even identify.

- Copies of screenshots that omit certain items that would appear for a Veoh user. *See* Docket #509. UMG contends this evidence is admissible in that it accurately captures Veoh's website, and presents no risk of confusion.

- Evidence specifying any of Veoh's investors or documents constituting or relating to communications to and from Veoh's investors. *See* Docket #509. UMG contends this evidence is admissible to show knowledge, red flags of infringement, and to show Veoh's business sophistication (which is relevant to statutory damages).

- Evidence regarding the timing of Veoh's implementation of filtering through Audible Magic. *See* Docket #509. UMG contends that this evidence is admissible to show Veoh's right and ability to control infringement.

- Evidence constituting and relating to press articles, blogs and communications from Veoh's users (other than relating to the users' own alleged infringement) regarding alleged infringement on Veoh. *See* Docket #509. UMG contends this

1  evidence is admissible to show knowledge, red flags of infringement, and Veoh's
2  willful conduct.
3  • Evidence and arguments that support a claim that statutory damages should be
4  assessed by any other means other than "per Compact Disc". *See* Docket #509.
5  UMG contends that this is an improper motion for summary judgment on a pure
6  legal question, not a question of evidentiary law.
7  • Veoh's power point presentations and other internal materials that discuss or
8  refer to general music strategy. *See* Docket #509. UMG contends that this
9  evidence is admissible to show Veoh's direct financial benefit from music
10 content on its site, as well as Veoh's knowledge of music content and red flags
11 relating to infringement.
12 • Testimony of UMG experts Dr. Ellis Horowitz and Dr. David Blackburn. *See*
13 Docket #511. UMG contends that the testimony of Drs. Horowitz and Blackburn
14 is proper and will assist the jury in understanding the various technical and
15 damages issues in suit.

16      **6.    Identification of Issues of Law [L.R. 16-4.1(i)]**

17      Other than the issues identified in Veoh's pending Motion for Summary
18 Judgment, there remain two related, disputed issues as to the proper methodology
19 for counting copyrighted works. *First*, any particular video on UMG's list of
20 infringements may infringe a UMG sound recording copyright, a UMG musical
21 composition copyright, or both. Where the video infringes both, UMG contends
22 that this constitutes an infringement of two separate copyrights, and should be
23 counted as such. Veoh, however, has instructed its expert witness on damages to
24 count such videos as infringing only one copyright. UMG maintains that this does
25 not comport with either the text of the Copyright Act or this Circuit's case law.
26 *Second*, UMG contends that the number of infringed *sound recordings* should be
27 measured by the number of separate infringed songs, regardless of whether they
28 happen to be included in a single sound recording registration (in keeping with,

among other things, the way UMG's individual sound recordings generate independent economic value). Veoh contends that separate copyrighted sound recordings should be treated as a single infringed work so long as they relate to one sound recording registration certificate. Again, UMG maintains that this does not comport with either the text of the Copyright Act or this Circuit's case law.

## III. BIFURCATION OF ISSUES [L.R. 16-4.3]

The parties agree that the Court should bifurcate proceedings in this case to try issues of liability and the proper amount of statutory damages to be assessed per infringed copyrighted work during an initial phase. The parties would then litigate any issues of ownership of specific copyrights (to determine the overall total damages award) in a second phase. Veoh does not dispute that UMG owns or controls the rights to the vast majority of works at issue in the litigation – the only question is the precise number. Given that UMG has alleged infringement of nearly 2000 of its copyrighted works, embodied in more than 7000 videos on the Veoh system, UMG respectfully submits that such bifurcation will avoid unnecessary mini-trials on the issue of ownership of particular works before the jury. The parties have not agreed on the precise terms of such bifurcated proceedings. In particular, Veoh appears to contend that UMG must present evidence of ownership in both phases, which UMG respectfully submits is not an efficient process. The parties have addressed these issues with Magistrate Judge Wistrich, including in a hearing conducted on July 20, 2009. Magistrate Judge Wistrich directed the parties to submit a stipulation setting forth that upon which they could agree on this issue by July 27, 2009, in advance of the Pretrial Conference.

## IV. JURY TRIAL [L.R. 16-4.4]

### A. ISSUES TRIABLE TO THE JURY

A timely demand for jury trial has been made. The following issues are triable to the jury:

**1.** Copyright infringement under the four theories asserted by UMG: (1) Direct infringement of copyright under 17 U.S.C. § 106;[7] (2) contributory copyright infringement;[8] (3) vicarious copyright infringement;[9] and (4) inducement of copyright infringement[10].

**2.** The following affirmative defenses: Second Affirmative Defense ("17 U.S.C. § 512");[11] Ninth Affirmative Defense ("Fair Use");[12] Twenty-Fourth Affirmative Defense ("Statutes of Limitations")[13].

**3.** Statutory damages per work.[14]

---

[7] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions Nos. 1.2; 17.0; 17.1; 17.4. This also subsumes Veoh's Third Affirmative Defense ("No Primary Liability"); Fifth Affirmative Defense ("No Volitional Act"); Fourteenth Affirmative Defense ("Invalidity and Unenforceability of Copyright"); Seventeenth Affirmative Defense ("Abandonment and Forfeiture"); Eighteenth Affirmative Defense ("Standing"); and Twenty-Seventh Affirmative Defense ("Failure to Register").

[8] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions No. 17.21. This also subsumes Veoh's Fourth Affirmative Defense ("Staple Articles of Commerce"); Sixth Affirmative Defense ("Lack of Knowledge"); and Twentieth Affirmative Defense ("Non-Infringing Use").

[9] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions No. 17.20. This also subsumes Veoh's Seventh Affirmative Defense ("No Direct Financial Benefit") and its Eighth Affirmative Defense ("No Right or Ability to Control").

[10] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions No. 17.21. This also subsumes Veoh's Fourth Affirmative Defense ("Staple Articles of Commerce") and Sixth Affirmative Defense ("Lack of Knowledge").

[11] Authority: 17 U.S.C. § 512.

[12] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction No. 17.18.

[13] Authority: Holbrook & Harris, eds., *Model Jury Instructions: Copyright, Trademark, and Trade Dress Litigation* 75.

[14] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction Nos. 17.25; 17.26; 17.27. This subsumes Veoh's Twenty-First Affirmative Defense ("Failure to Mitigate"), Twenty-Second Affirmative Defense ("Innocent Intent"), and Twenty-Third Affirmative Defense ("Unconstitutionality").

**4.** The total number of infringed works (if not bifurcated; *see* Section III).[15]

## B. ISSUES TRIABLE TO THE COURT

The following issues are triable to the Court:

**1.** Veoh's equitable affirmative defenses: Tenth Affirmative Defense ("Laches"); Eleventh Affirmative Defense ("Waiver"); Thirteenth Affirmative Defense ("Unclean Hands"); and Fifteenth Affirmative Defense ("License, Consent and Acquiescence").[16]

**2.** Veoh's remaining defenses would also be triable to the Court.

## V. ATTORNEYS' FEES [L.R. 16-4.5]

UMG may be entitled to its attorneys' fees under the Copyright Act. *See* 17 U.S.C. § 505.

## VI. ABANDONMENT OF ISSUES [L.R. 16-4.6]

Veoh elected to abandon its affirmative defenses of estoppel (Veoh's Twelfth Affirmative Defense), misuse of copyright (Veoh's Nineteenth Affirmative Defense), and first amendment (Veoh's Twenty-Fifth Affirmative Defense). Additionally, during the parties' Rule 16 conference, Veoh confirmed that it would not pursue its affirmative defense of "Lack of Subject Matter Jurisdiction" (Veoh's Sixteenth Affirmative Defense). Veoh subsequently also abandoned its affirmative defense of "Preemption" (Twenty-Sixth Affirmative Defense). Additionally, Veoh has abandoned its defense of fair use (Ninth Affirmative Defense) except as to

---

[15] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions Nos. 1.2; 17.0; 17.1; 17.4.

[16] Authority: *See generally Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("there is no right to a jury on the equitable defense of laches"); *U.S. v. Kaczynski*, 551 F.3d 1120, 1129 (9th Cir. 2009) ("The doctrine of unclean hands is an equitable doctrine…"); *Westinghouse Elect. v. Gen. Circuit Breaker*, 106 F.3d 894, 899 (9th Cir. 1997) (acquiescence is an "equitable defense[]").

certain videos which it has represented it will identify, but has not yet identified.
Veoh has also abandoned its defense of license, consent, and acquiescence
(Fifteenth Affirmative Defense) except as to relates to "those videos that UMG or its
agents or artists etc. uploaded to Veoh, or to the internet without restricting
distribution."

Dated:  July 20, 2009                    IRELL & MANELLA LLP
                                         Steven A. Marenberg
                                         Brian Ledahl
                                         Benjamin Glatstein


                                         By:_____/s_____
                                                 Brian Ledahl
                                         Attorneys for Plaintiffs