

1

2

3

4

5

6

7

8

9       UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA

11      WESTERN DIVISION

12  UMG RECORDINGS, INC., *et al.*,      ) Case No. CV-07-05744 AHM (AJWx)
                                         )
13              Plaintiffs,              )
                                         ) **FINAL PRETRIAL**
14                                       ) **CONFERENCE ORDER**
                                         )
15          v.                           )
                                         )
16  VEOH NETWORKS, INC.,                 )
                                         )
17                                       )
                                         )
18              Defendant.               )
                                         )
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

**SECTION 1.**      THE PARTIES: ..................................................................... 1

**SECTION 2.**      FEDERAL JURISDICTION AND VENUE ARE INVOKED UPON THE GROUNDS:.......................................... 1

**SECTION 3.**      THE TRIAL IS ESTIMATED TO TAKE: ................................. 1

**SECTION 4.**      THE TRIAL IS TO BE A JURY TRIAL.................................... 1

**SECTION 5.**      THE FOLLOWING FACTS ARE ADMITTED AND REQUIRE NO PROOF: ............................................... 2

**SECTION 6.**      THE FOLLOWING FACTS, THOUGH STIPULATED, SHALL BE WITHOUT PREJUDICE TO ANY EVIDENTIARY OBJECTIONS: ................................................ 2

**SECTION 7.**      BELOW ARE THE CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL: ........................................... 4

**Plaintiffs:**

(a)      UMG plans to pursue the following claims against Veoh: ...............................................................4

(b)      The elements required to establish UMG's claims are:....................................................................5

(c)      In brief, the key evidence UMG relies on for each of the claims is: ..........................................6

**Defendant:**

(a)      Veoh intends to pursue the following affirmative defenses at trial: ...............................9

(b)      The elements required to establish Veoh's affirmative defenses are:..................................12

(c)      In brief, the key evidence Veoh relies on for each affirmative defense is: .............................22

**SECTION 8.**      IN VIEW OF THE ADMITTED FACTS AND THE ELEMENTS REQUIRED TO ESTABLISH THE CLAIMS AND AFFIRMATIVE DEFENSES, THE FOLLOWING ISSUES REMAIN TO BE TRIED:.................. 33

**SECTION 9.**      ALL DISCOVERY IS COMPLETE........................................ 34

**SECTION 10.**     ALL DISCLOSURES UNDER FED. R. CIV. P. 26(a)(3) HAVE BEEN MADE.................................................. 35

Page

**SECTION 11.**  WITNESS LISTS OF THE PARTIES HAVE BEEN
FILED WITH THE COURT. ...................................... 35

**SECTION 12.**  THE FOLLOWING LAW AND MOTION MATTERS
AND MOTIONS IN LIMINE, AND NO OTHERS,
ARE PENDING OR CONTEMPLATED:................................. 36

**SECTION 13.**  BIFURCATION OF THE FOLLOWING ISSUES IS
ORDERED: ............................................... 36

**SECTION 14.**  THE FOREGOING ADMISSIONS HAVING BEEN
MADE BY THE PARTIES, AND THE PARTIES
HAVING SPECIFIED THE FOREGOING ISSUES
REMAINING TO BE LITIGATED, THIS FINAL
PRETRIAL CONFERENCE ORDER SHALL
SUPERSEDE THE PLEADINGS AND GOVERN THE
COURSE OF THE TRIAL OF THIS CASE, UNLESS
MODIFIED TO PREVENT MANIFEST INJUSTICE. ........... 37

1 Following pretrial proceedings, pursuant to Rule 16, Fed. R. Civ. P. and L.R.
2 16, **IT IS ORDERED**:

3 **1.     THE PARTIES:**

4 The plaintiffs are UMG Recordings, Inc., Universal Music Corp., Songs of
5 Universal, Inc., Universal-Polygram International Publishing, Inc., Rondor Music
6 International, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes
7 LLC, and Universal Music – MGB Music Publishing Ltd. (collectively, "UMG").
8 The defendant is Veoh Networks, Inc. ("Veoh").

9 Each of these parties has been served and has appeared.  All other parties
10 named in the pleadings and not identified in the preceding paragraph are now
11 dismissed.

12 The pleadings which raise the issues are: UMG's Second Amended Complaint
13 for Direct, Contributory, and Vicarious Copyright Infringement, and for Inducement
14 of Copyright Infringement, and Answer of Veoh to UMG's Second Amended
15 Complaint.

16 **2.     FEDERAL JURISDICTION AND VENUE ARE INVOKED**
17 **UPON THE GROUNDS:**

18 This is a civil action concerning alleged copyright infringement on Veoh's
19 client software and website relating to UMG's sound recordings and musical
20 compositions.  Jurisdiction is asserted under 17 U.S.C. § 510 and 28 U.S.C. §§ 1331
21 and 1338(a).  The facts requisite to federal jurisdiction are admitted.

22 **3.     THE TRIAL IS ESTIMATED TO TAKE:**
23 10-15 trial days.

24 **4.     THE TRIAL IS TO BE A JURY TRIAL.**

25 At least five (5) court days prior to the trial date each party shall file and serve
26 by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by
27 L.R. 51-1 and (b) any special questions requested to be asked on *voir dire*.

28

1    Veoh has also asserted equitable defenses to be resolved by the Court.  At
2  least five (5) court days prior to the trial date each party shall lodge and serve by e-
3  mail, fax, or personal delivery the findings of fact and conclusions of law the party
4  expects the Court to make upon proof at the time of trial as required by L.R. 52-1.
5  Veoh's position is that Local Rule 52-1 is only applicable to non-jury trials, and
6  because this is a jury trial, Local Rule 52-1 is inapplicable here.

7    **5.**    **THE FOLLOWING FACTS ARE ADMITTED AND REQUIRE**
8  **NO PROOF:**

9    None.

10    **6.**    **THE FOLLOWING FACTS, THOUGH STIPULATED, SHALL**
11  **BE WITHOUT PREJUDICE TO ANY EVIDENTIARY OBJECTIONS:**

12    The following facts, though stipulated, shall be without prejudice to any
13  evidentiary objections:

14    (a)    Veoh provides a website (veoh.com) and a client software application
15  (the "Veoh Client").  Through both, users can upload and view video content.

16    (b)    Veoh consists of two principal components (i) the veoh.com website
17  where, among other things, users can share, view, and browse videos available
18  through Veoh, create a user account and profile, and interact with other users; and
19  (ii) an optional software application, which allows uploading and downloading of
20  videos.

21    (c)    Users can upload and view videos either through the veoh.com website
22  or through the Veoh Client.

23    (d)    Veoh utilizes third party software to convert user-submitted videos into
24  Flash format.

25    (e)    Audible Magic's service works by taking an audio fingerprint from
26  video files and matching it against Audible Magic's database of content.

27    (f)    In the summer of 2007, Veoh began working with Audible Magic and
28  testing its filtering technology.

1      (g)     After a period of testing, Veoh put Audible Magic's filtering system

2  into production in October of 2007.

3      (h)     Veoh offered a beta version of the Veoh Client in September 2005.

4      (i)     The Veoh Client was a software product that one could download over

5  the Internet to his computer.

6      (j)     Veoh users could upload videos to Veoh's system through the Veoh

7  Client.

8      (k)     Persons uploading a video through the Veoh Client could provide

9  various data about the video, such as a title or a description, and place the video in a

10  category, such as drama, comedy, or music.

11      (l)     Veoh made videos available for viewing on its Internet website in

12  February or March 2006.

13      (m)     Viewers could search for videos through Veoh's website.

14      (n)     Veoh does not terminate a user solely based upon identification of two

15  videos by Audible Magic.

16      (o)     Veoh's current Terms of use state: "Veoh may, without notice to You,

17  remove or block any Video Content from the Veoh Service."

18      (p)     Veoh's Terms of Use dated February 27, 2006 state: "Veoh may,

19  without notice to You, remove or block content of any User Material from the Veoh

20  Service, including disabling access to such User Material that you have downloaded

21  through the Veoh Service."

22      (q)     Veoh's Terms of Use dated April 25, 2006 state: "Veoh may, without

23  notice to You, remove or block content of any User Material from the Veoh Service,

24  including disabling access to such User Material that you have downloaded through

25  the Veoh Service."

26      (r)     Veoh's Terms of Use dated June 23, 2006 state: "Veoh may, without

27  notice to You, remove or block content of any User Material from the Veoh Service,

28

1  including disabling access to such User Material that you have downloaded through
2  the Veoh Service."

3       (s)     Veoh's current Terms of Use state that: "You agree to abide by all
4  applicable local, state, national and international laws and regulations, including,
5  without limitation, all intellectual property laws (such as U.S. copyright laws).  Any
6  unauthorized use of the Veoh Service is expressly prohibited."

7       (t)     Veoh's current Copyright Policy states that "Veoh takes copyright and
8  other intellectual property rights very seriously.  It is Veoh's policy to (1)
9  expeditiously block access to or remove content that it believes in good faith may
10 contain material that infringes the copyrights of third parties and (2) remove and
11 discontinue service to repeat offenders."

12      (u)     Veoh's current "Copyright Policy" sets forth Veoh's procedures for
13 "Notifications" regarding copyrighted works.

14      (v)     Veoh provides and displays a unique locater called a "permalink" for
15 each video.

16      **7.      <u>BELOW ARE THE CLAIMS AND DEFENSES TO BE</u>**
17 **<u>PRESENTED AT TRIAL:</u>**

18      **<u>PLAINTIFFS:</u>**

19           **(a)     UMG plans to pursue the following claims against Veoh:**

20      Claim 1:     Veoh directly infringed UMG's copyrights in violation of the
21 Copyright Act, 17 U.S.C. § 101 et seq.

22      Claim 2:     Veoh contributorily infringed UMG's copyrights in violation of
23 the Copyright Act, 17 U.S.C. § 101 et seq.

24      Claim 3:     Veoh vicariously infringed UMG's copyrights in violation of the
25 Copyright Act, 17 U.S.C. § 101 et seq.

26      Claim 4:     Veoh induced infringement of UMG's copyrights in violation of
27 the Copyright Act, 17 U.S.C. § 101 et seq.

28

1    Prayer for Relief:   The Copyright Act, 17 U.S.C. § 101 et seq., entitles UMG

2  to statutory damages for Veoh's infringement.

3        **(b)     The elements required to establish UMG's claims are:**

4    Claim 1:     Direct Copyright Infringement.  UMG has the burden of proving:

5  (1) UMG is the owner of valid copyrights; and (2) Veoh copied original elements

6  from the copyrighted works.  Ninth Circuit Manual of Model Jury Instructions: Civil

7  §§ 17.1, 17.4 (2007).

8    Claim 2:     Contributory Copyright Infringement.  UMG has the burden of

9  proving: (1) direct copyright infringement by Veoh's users; (2) Veoh knew or had

10 reason to know of the infringing activity; and (3) Veoh materially contributed to the

11 infringing activity.  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.21

12 (2007).

13   Claim 3:     Vicarious Copyright Infringement.  UMG has the burden of

14 proving: (1) direct copyright infringement by Veoh's users; (2) Veoh profited

15 directly from the infringing activity; (3) Veoh had the right and ability to supervise

16 or control the direct infringing activity; and (4) Veoh failed to exercise that right and

17 ability.  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.20 (2007).

18   Claim 4:     Inducing Copyright Infringement.  UMG has the burden of

19 proving: (1) direct copyright infringement by Veoh's users; (2) that Veoh knew or

20 had reason to know of the direct infringing activity; and (3) Veoh intentionally

21 induced the activity.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545

22 U.S. 913, 935 (2005); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th

23 Cir. 2007); Ninth Circuit Manual of Model Jury Instructions: Civil § 17.21 (2007).

24   Prayer for Relief:   Statutory Damages.  UMG is entitled to statutory damages

25 between $750 and $30,000 per infringed work, unless the jury concludes that

26 Veoh's infringement is willful (in which case UMG is entitled to statutory damages

27 of up to $150,000 per work) or if the jury concludes that Veoh's conduct was

28

1  innocent (in which case UMG is entitled to statutory damages of no less than $200

2  per work).  Ninth Circuit Manual of Model Jury Instructions: Civil § 17.25 (2007).

3  **(c)    In brief, the key evidence UMG relies on for each of the**

4  **claims is:**

5  Claim 1:    Direct Copyright Infringement.[1]  UMG will introduce the

6  following categories of evidence establishing that Veoh willfully reproduced,

7  adapted, performed, and distributed the videos at issue in suit.  As to element (1),

8  UMG will introduce:

9  • Evidence of copyright registrations for the works embodied in the videos at issue

10  in suit.

11  As to element (2), UMG will introduce:

12  • Evidence showing the videos in suit themselves, and showing those videos being

13  made publicly available on Veoh's website;

14  • Veoh's production of so-called "metadata" showing (among other things) that

15  Veoh's users viewed and downloaded the videos-in-suit collectively millions of

16  times, and that Veoh itself tagged thousands of videos as "music videos;"

17  • Testimony from Veoh employees regarding the functionality of Veoh's system

18  and operations.  Such testimony will establish that Veoh (*i*) makes multiple

19  copies of UMG's copyrighted works, (*ii*) transcodes those works into various

20  formats, (*iii*) prepares those works for distribution by creating additional copies

21  of those work, (*iv*) performs those works publicly by streaming the works from

22  its servers; and (*v*) distributes those works through a "download" button.

23  • Other documentary and testimonial evidence establishing that Veoh's

24  infringement was knowing and willful, including the testimony showing that:

25  Veoh adopted head-in-the-sand policies toward infringing content; Veoh knew it

26  had no rights to any music content on its site but encouraged users to upload,

27

28  _____

[1] UMG also incorporates by reference the evidence cited below in conjunction with Claims 2, 3, 4, and statutory damages.

Exhibit A Page 10

1  view, and download music content regardless; Veoh knew its users were

2  searching for and finding copyrighted content on its site; filtering solutions were

3  available to Veoh at its founding, but Veoh chose not to implement these

4  solutions; and Veoh itself designed a system for detecting improper content, but

5  chose not to use that system to detect copyrighted materials.

6       Claim 2:    Contributory Copyright Infringement.[2]  UMG will introduce the

7  following categories of evidence establishing that Veoh is contributorily liable for

8  its users' infringement of the copyrighted works embodied in the videos in suit.  As

9  to element (1), UMG will introduce:

10  •  Evidence establishing that Veoh knew its system would be, and was, used for

11     copyright infringement.  For example, and without limitation, Veoh personally

12     tagged thousands of videos (including many of the videos identified by UMG) as

13     "music videos" in order to allow those videos to show up in Google searches.

14     Veoh's own employees were aware of rampant infringement on Veoh's site, and

15     press coverage and communications with investors and users confirm the same.

16     Similarly, Veoh displayed willful blindness – which is equivalent to knowledge;

17     *e.g. In re Aimster Copyright Litig*, 334 F.3d 643 (7th Cir. 2003) ("Willful

18     blindness is knowledge[] in copyright law") – by choosing not to implement any

19     of a variety of available filtering solutions.

20  As to element (2), UMG will introduce:

21  •  Evidence showing Veoh's system and operations, in particular, showing that the

22     system Veoh designed, implemented, and maintained, made multiple copies of,

23     performed, and distributed copyrighted works.

24       Claim 3:    Vicarious Copyright Infringement.[3]  UMG will introduce the

25  following categories of evidence establishing that Veoh is vicariously liable for its

26         [2] UMG also incorporates by reference the evidence cited above and below in

27  conjunction with Claims 1, 3, and 4, and statutory damages.

28         [3] UMG also incorporates by reference the evidence cited above and below in
conjunction with Claims 1, 2, and 4, and statutory damages.

users' infringement of the copyrights embodied in the videos in suit.  As to element (1), UMG will introduce:

- Evidence that Veoh received a direct financial benefit from UMG's copyrighted content, including by, among other things, collecting advertising revenue for ads placed alongside UMG's copyrighted content.  Veoh also used UMG's copyrighted content as a "draw" to encourage others to come to Veoh's website, for example, by tagging videos as "music videos" so that they would show up in Google searches for music videos by UMG's artists.  Moreover, the millions of views and downloads of these copyrighted works confirms that they were a significant draw to Veoh's site.

As to element (2), UMG will introduce:

- Evidence that Veoh had the right to remove infringing content from its website as shown by, among other things, Veoh's Terms of Use, which gave it the right to remove any content it chooses.  Testimony of Veoh employees, among others, confirms the same.

As to both elements (2) and (3), UMG will introduce:

- Evidence (including testimony of Veoh and a third-party filtering company, called Audible Magic) that commercial filtering solutions were available, but that Veoh did not avail itself of those solutions.
- Evidence that Veoh itself developed the means to filter infringing content, but instead expended resources removing content that advertisers and investors found objectionable.

Claim 4:     Inducing Copyright Infringement.  The above- and below-referenced evidence will also establish that Veoh is liable for inducing its users' infringement of the copyrights embodied in the videos in suit.

Prayer for Relief:   Statutory Damages.  UMG will introduce the following categories of evidence establishing that Veoh's infringement is willful (entitling UMG to statutory damages of up to $150,000 per work) or, that if it is not willful,

that UMG is entitled to statutory damages for non-willful infringement (up to $30,000 per work):

- Evidence that Veoh designed and operated its system without any basis for believing that its infringement was legal, thereby resulting in millions of infringing acts, and resulting in significant financial benefit to Veoh (in the form of tens of millions of dollars of venture capital cash infusions).

- Evidence from UMG employees and experts that Veoh offers for free to users and without compensation to UMG, content that UMG otherwise sells or licenses.

- Testimony from UMG employees and experts explaining the need to deter infringement in the online video market.

- Evidence establishing that Veoh knew that its use of UMG's copyrighted works required UMG's authorization, including but not limited to Veoh's license agreements with other content providers.

- Evidence that Veoh is owned and operated by sophisticated businesspeople, including those with significant media and copyright experience.

- Evidence showing that Veoh could have, but chose not to, implement systems or procedures which would have reduced the incidence of infringement.

**DEFENDANT**:

    (a)    **Veoh intends to pursue the following affirmative defenses at trial:**

- First Affirmative Defense (Failure to State a Claim for Relief):  Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

- Second Affirmative Defense (17 U.S.C. § 512):  Plaintiffs' claims are barred by the statutory immunity granted to service providers under 17 U.S.C. § 512.

- Third Affirmative Defense (No Primary Liability):  Plaintiffs' claims based upon secondary liability are barred because Plaintiffs cannot

2096530      - 9 -      FINAL PRETRIAL CONFERENCE ORDER

1     establish the primary liability of Veoh's users, including because such

2     users' alleged conduct constitutes fair use, de minimus use and/or is

3     otherwise not actionable.

4     ▪ Fourth Affirmative Defense (Staple Articles of Commerce):  Plaintiffs'

5     claims based upon secondary liability are barred because Veoh's products

6     and/or services are staple articles of commerce.

7     ▪ Fifth Affirmative Defense (No Volitional Act):  Plaintiffs' claims are

8     barred because the alleged infringement was not caused by a volitional act

9     attributable to Veoh.

10     ▪ Sixth Affirmative Defense (Lack of Knowledge): Plaintiffs' claims based

11     upon contributory liability are barred because Veoh did not have requisite

12     knowledge of the alleged primary infringement and did not encourage or

13     induce the alleged primary infringement.

14     ▪ Seventh Affirmative Defense:  (No Direct Financial Benefit) Plaintiffs'

15     claims based upon vicarious liability are barred because Veoh did not

16     obtain a direct financial benefit from the alleged primary infringement.

17     ▪ Eighth Affirmative Defense (No Right or Ability to Control) Plaintiffs'

18     claims based upon vicarious liability are barred because Veoh does not

19     have the right or ability to control the alleged primary infringement.

20     ▪ Ninth Affirmative Defense (Fair Use): Veoh's alleged conduct constitutes

21     fair use.

22     ▪ Tenth Affirmative Defense (Laches): Plaintiffs' claims are barred by

23     laches.

24     ▪ Eleventh Affirmative Defense (Waiver): Plaintiffs' claims are barred by

25     waiver.

26     ▪ Thirteenth Affirmative Defense (Unclean Hands): Plaintiffs' claims are

27     barred by unclean hands.

28

1    ▪   Fourteenth Affirmative Defense (Invalidity and Unenforceability of
2        Copyright): Plaintiffs' copyrights are invalid and/or unenforceable.
3    ▪   Fifteenth Affirmative Defense (License, Consent and Acquiescence):
4        Plaintiffs' claims are barred by Plaintiffs' license, consent and
5        acquiescence to Veoh's use.
6    ▪   Sixteenth Affirmative Defense (Lack of Subject Matter Jurisdiction):
7        Plaintiffs' claims are barred for lack of subject matter jurisdiction because
8        they lack valid registrations for the intellectual property rights asserted.
9    ▪   Seventeenth Affirmative Defense (Abandonment and Forfeiture):
10       Plaintiffs' claims are barred to the extent that they have forfeited or
11       abandoned their intellectual property.
12   ▪   Eighteenth Affirmative Defense (Standing): Plaintiffs' claims are barred to
13       the extent that the Plaintiffs lack standing.
14   ▪   Twentieth Affirmative Defense (Non-Infringing Use): Plaintiffs' claims
15       are barred because Veoh's products and/or services are capable of
16       substantial non-infringing uses.
17   ▪   Twenty-First Affirmative Defense (Failure to Mitigate Damages):
18       Plaintiffs' claims are barred due to Plaintiffs' failure to mitigate damages.
19   ▪   Twenty-Second Affirmative Defense (Innocent Intent):  Plaintiffs' claims
20       are barred, in whole or in part, because Veoh's conduct was in good faith
21       and with non-willful intent, at all times.
22   ▪   Twenty-Third Affirmative Defense (Unconstitutionality): The statutory
23       damages sought by Plaintiffs are unconstitutionally excessive and
24       disproportionate to any actual damages that may have been sustained, in
25       violation of the Due Process Clause.
26   ▪   Twenty-Fourth Affirmative Defense (Statutes of Limitations): Plaintiffs'
27       claims are barred by the applicable statutes of limitations.
28

- Twenty-Seventh Affirmative Defense (Failure to Register): Plaintiffs' claims are barred in whole or part to the extent that Plaintiffs have not properly or timely registered their works with the U.S. Copyright Office.

**(b)** **The elements required to establish Veoh's affirmative defenses are:**

**(a)** **Elements of First Affirmative Defense (Failure to State a Claim for Relief):**

This defense does not have specific elements of its own, but rather turns on the failure of UMG' Complaint to state the elements of its own claims, which are outlined above.

UMG's Response:  UMG denies that "Failure to State a Claim for Relief" is an affirmative defense.  "Failure to State a Claim for Relief" is instead a denial that UMG has stated proper claims for relief.

**(b)** **Elements of Second Affirmative Defense (17 U.S.C. § 512):**

The Digitial Millennium Copyright Act, 17 U.S.C. § 512(c) provides safe harbor when the following elements have been met:

1) Defendant is a service provider;

2) Defendant engages in storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider;

3) Defendant has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers

4)  Defendant accommodates and does not interfere with standard technical
    measures;

5)  Defendant designated an agent to receive notifications of claimed
    infringement described in 17 U.S.C. Section 512(c)(3), by making
    available through its service, including on its website in a location
    accessible to the public, and by providing to the Copyright Office,
    substantially the following information: the name, address, phone number,
    and electronic mail address of the agent; other contact information which
    the Register of Copyrights may deem appropriate.

6)  Defendant

    a.  does not have actual knowledge that the specific material or activity
        using the material on the system or network is infringing;

    b.  in the absence of such actual knowledge, is not aware of facts or
        circumstances from which infringing activity is apparent; or

    c.  upon obtaining such knowledge or awareness, acts expeditiously to
        remove, or disable access to, the material;

7)  Defendant does not receive a financial benefit directly attributable to the
    infringing activity, in a case in which the service provider has the right and
    ability to control such activity;

8)  Upon notification of claimed infringement as described in 17 U.S.C. §
    512(c)(3), Defendant responds expeditiously to remove, or disable access
    to, the material that is claimed to be infringing or to be the subject of
    infringing activity

17 U.S.C. §§ 512(c), (i), (k); *Perfect 10 v. Amazon.com*, Inc., CV 05-4753 AHM
(SHx), Order Granting A9.com's Motion for Summary Judgment on Contributory
Infringement, slip op. at 7 (C.D. Cal., May 12, 2009).

Exhibit A Page 17

1  UMG's Response:  UMG contends that element (6)(a) should read: "does not

2  have actual knowledge that the material or activity using the material on the system

3  or network is infringing."  *See* 17 U.S.C. § 512(c)(1)(A)(i).

4

5  **(c)    Elements of Third Affirmative Defense (No Primary Liability):**

6

7  This defense does not have specific elements of its own, but rather hinges on

   the fact that UMG cannot establish the elements of direct infringement by others

8  required to make out claims for Veoh's secondary liability, as outlined in Section II.

9  B. above.

10  UMG's Response:  UMG denies that "No Primary Liability" is an affirmative

11  defense.  "No Primary Liability" is instead a denial that UMG can prove its claims.

12
    **(d)    Elements of Fourth Affirmative Defense (Staple Articles of Commerce):**
13

14

15  Because Veoh's software and services have substantial non-infringing uses it

16  cannot be held secondarily liable for alleged infringement of its users.  *See Sony*

17  *Corp. of Am. v. Universal City Studious, Inc.*, 464 U.S. 417 (1984).

18  UMG's Response:  Veoh has the burden of showing that its product is capable

19  of commercially significant non-infringing uses.  UMG denies that Veoh "cannot be

20  held secondarily liable for the alleged infringement of its users" upon making this

21  showing.  One cannot infer knowledge or constructive knowledge of infringement

22  based solely on the distribution of a product where the defendant has shown the

23  product to be capable of commercially significant noninfringing uses.  But other

24  evidence of actual or constructive knowledge can warrant the imposition of

25  secondary liability.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S.

26  913, 931-935 (2005); *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1020 (9th Cir.

27  2001).

28

(e)      **Elements of Fifth Affirmative Defense (No Volitional
Act):**

Veoh's alleged direct infringement lacked the necessary volition.  *Cartoon
Network v. CSC Holdings*, 536 F.3d 121, 132 (2d Cir. 2008); *Religious Tech. Ctr v.
Netcom On-Line Commc'n Servs.*, Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal.
1995).

UMG's Response:  This defense does not exist in the Ninth Circuit, *see
Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004), and scholars and
commentators have roundly criticized it, *see, e.g.*, Melville B. Nimmer & David
Nimmer, Nimmer on Copyright §§ 12B.06[B][2][c][i] (2007) ("requirement [of]
'some element of volition' should not be viewed as a free-standing feature of
copyright law"); *see id.* (praising Ellison for rejecting volition argument).
Regardless, Veoh has not stated the elements of the purported defense.

(f)      **Elements of Sixth Affirmative Defense (Lack of
Knowledge):**

This defense does not have specific elements of its own, but rather hinges on
the fact that UMG cannot establish Defendant's requisite knowledge of others'
direct infringement, an element of contributory liability for infringement as outlined
in Section II.B above.

UMG's Response:  UMG denies that "Lack of Knowledge" is an affirmative
defense.  "Lack of Knowledge" is instead a denial that UMG can prove its claims.

(g)      **Elements of Seventh Affirmative Defense  (No Direct
Financial Benefit):**

This defense does not have specific elements of its own, but rather hinges on
the fact that Plaintiffs cannot show Defendant's requisite direct financial benefit
from others' alleged direct infringement, an element of vicarious liability for
infringement, as outlined in Section II.B above.

UMG's Response:  UMG denies that "No Direct Financial Benefit" is an affirmative defense.  "No Direct Financial Benefit" is instead a denial that UMG can prove its claims.

**(h)** **Elements of Eighth Affirmative Defense (No Right or Ability to Control):**

This defense does not have specific elements of its own, but rather hinges on the fact that Plaintiffs cannot show Defendant's requisite right and ability to control others' alleged direct infringement, an element of vicarious liability for infringement, as outlined in Section II.B above.

UMG's Response:  UMG denies that "No Right or Ability to Control" is an affirmative defense.  "No Right or Ability to Control" is instead a denial that UMG can prove its claims.

**(i)** **Elements of Ninth Affirmative Defense (Fair Use):**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way without the consent of the copyright owner if it would advance the public interest.

Factors bearing on whether a use is a fair use include:

1.     The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2.     The nature of the copyrighted work;

3.     The amount and substantiality of the portion used in relation to the copyrighted work as a whole;

4.     The effect of the use upon the potential market for or value of the copyrighted work;

5.     Any other factors that bear on whether the use is fair.

*See* 17 U.S.C. §107; MJI § 17.18.

2096530                          - 16 -                  FINAL PRETRIAL CONFERENCE ORDER

Exhibit A Page 20

1    UMG's Response:  UMG denies that "[a]ny other factors that bear on whether
2 the use is fair" is itself an element of fair use.  Veoh must state what these factors
3 are.

### (j)    Elements of Tenth Affirmative Defense (Laches):

1)  Plaintiffs' unreasonable delay in asserting its claims;

2)  Resulting prejudice to Defendant.

*See Couveau v. Am. Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000).

UMG's Response:  UMG proposes breaking this affirmative defense into three elements rather than two: (1) that Plaintiffs delayed in filing suit; (2) that the delay was for an unreasonable period; and (3) that the unreasonable delay was prejudicial to the defendant.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-956 (9th Cir. 2001) (dividing laches defense into three elements).

### (k)    Elements of Eleventh Affirmative Defense (Waiver):

Plaintiff's intentional relinquishment of a right with knowledge of its existence and the intent to relinquish it.  *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).

### (l)    Twelfth Affirmative Defense (Estoppel).

Veoh does not intend to pursue this affirmative defense at this time.

### (m)    Elements of Thirteenth Affirmative Defense (Unclean Hands):

The elements for unclean hands in the copyright context are: (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) that the plaintiff's conduct injured the defendant.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (citing *Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)).

**(n)    Elements of Fourteenth Affirmative Defense (Invalidity and Unenforceability of Copyright):**

Plaintiffs cannot prove their case if:

1)    Plaintiff's work is not original; or

2)    Plaintiffs is not the author of the work, did not receive a transfer of the work, or did not receive a transfer of rights in the work that would allow Plaintiffs to bring this suit.

*See* MJI § 17.5.

UMG's Response:  UMG denies that "Invalidity and Unenforceability of Copyright" is an affirmative defense.  "Invalidity and Unenforceability of Copyright" is instead a denial that UMG can prove its claims.

**(o)    Elements of Fifteenth Affirmative Defense (License, Consent and Acquiescence):**

Plaintiffs have given a license or their consent or acquiescence, express or implied, to Defendant to use Plaintiffs' works.  *See Elvis Presley Enter., Inc., v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)

UMG's Response:  Veoh has not set forth the elements of this affirmative defense.  Veoh has the burden of showing that an implied license arose where (1) Veoh requested the creation of a work; (2) UMG made the particular work and delivered it to Veoh; and (3) UMG intended that Veoh copy and distribute this work.  *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (quoting *Lulirama Ltd., Inc. v. Axcess Broad Sews.*, 128 F.3d 872, 879 (5th Cir. 1997)).

**(p)    Sixteenth Affirmative Defense (Lack of Subject Matter Jurisdiction):**

Plaintiffs lack valid copyright registrations for certain of its works.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007).

1   UMG's Response:  UMG denies that "Lack of Subject Matter Jurisdiction" is
2   an affirmative defense.  "Lack of Subject Matter Jurisdiction" is instead a denial that
3   UMG can prove its claims.

4               **(q)     Elements of Seventeenth Affirmative Defense**
5                         **(Abandonment and Forfeiture):**

6       1)      Plaintiff intended to surrender rights in the work; and
7       2)      An act by the plaintiff evidencing that intent.
8   MJI § 17.19.

9       UMG's Response:  As to element (1), UMG proposes:  "Plaintiff intended to
10  surrender ownership rights in the work."  *See* Ninth Circuit Manual of Model Jury
11  Instructions: Civil § 17.19 (2007).

12              **(r)     Elements of Eighteenth Affirmative Defense**
13                        **(Standing):**

14
15      Plaintiffs were not the owners or exclusive licensees of the works they assert
16  at the time of the infringements they assert.  *See Lanard Toys Ltd. v. Novelty Inc.*,
17  511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007).

18      UMG's Response:  UMG denies that "Standing" is an affirmative defense.
19  "Standing" is instead a denial that UMG can prove its claims.

20              **(s)     Nineteenth Affirmative Defense (Misuse of Copyright):**

21      Veoh does not intend to pursue this affirmative defense at this time.

22              **(t)     Elements of Twentieth Affirmative Defense (Non-**
23                        **Infringing Use):**

24
25      Because Veoh's software and services have substantial non-infringing uses it
26  cannot be held secondarily liable for alleged infringement of its users.  *See Sony*
27  *Corp. of Am. v. Universal City Studious, Inc.*, 464 U.S. 417 (1984).

28

1  UMG's Response:  Veoh's "Twentieth Affirmative Defense" mirrors its

2  "Fourth Affirmative Defense."  UMG therefore incorporates by reference its dispute

3  with Veoh's "Fourth Affirmative Defense."

4        **(u)**    **Elements of Twenty-First Affirmative Defense (Failure**

5            **to Mitigate Damages):**

6  Veoh must establish (1) that the damages suffered by UMG could have been

7  avoided, and (2) that UMG failed to use reasonable care and diligence in avoiding

8  the damages. *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978).

9  UMG's Response:  UMG is unaware of the failure to mitigate damages ever

10  being applied in the context of statutory damages.

11

12        **(v)**    **Elements of Twenty-Second Affirmative Defense**

13            **(Innocent Intent):**

14        1)    The defendant was not aware that its acts constituted

15        infringement of the copyright; and

16        2)    The defendant had no reason to believe that its acts constituted

17        an infringement of the copyright.

18  MJI § 17.26.

19  UMG's Response:  UMG denies that "Innocent Intent" is an affirmative

20  defense.  Innocent and non-willful intent are simply relevant to the range of

21  statutory damages under 17 U.S.C. § 504(c).  UMG does not dispute that Veoh has

22  set forth the elements Veoh must prove by a preponderance of the evidence to

23  establish its alleged "innocent infringement."

24        **(w)**    **Elements of Twenty-Third Affirmative Defense**

25            **(Unconstitutionality):**

26  Plaintiffs seek excessive statutory damages.  *Cf. Philip Morris USA v.*

27  *Williams*, 549 U.S. 346 (2007) (regarding excessive punitive damages).

28

2096530         - 20 -        FINAL PRETRIAL CONFERENCE ORDER

1   UMG's Response:  The Due Process Clause does not apply to statutory (as
2   opposed to punitive) damages.  *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F.
3   Supp. 2d 455, 459-60 (D. Md. 2004) (no Due Process defense to statutory damages
4   because "[s]tatutory damages exist in part because of the difficulties in proving—
5   and providing compensation for—actual harm in copyright infringement actions").
6   Accordingly, this is not an affirmative defense.  Regardless, Veoh has not set forth
7   the elements of this "affirmative defense."

8
9   **(x)   Elements of Twenty-Fourth Affirmative Defense
(Statutes of Limitations):**

10
11   Plaintiffs did not bring claims within three years of them accruing.  *See Polar
Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004); *Roley v.
12   New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

13
14   UMG's Response:  Veoh has not forth the elements of this affirmative
15   defense.  Veoh must show by a preponderance of the evidence: (1) That UMG
16   learned, or should have learned of Veoh's alleged infringement more than three
17   years before UMG filed suit.  Holbrook & Harris, eds., Model Jury Instructions:
Copyright, Trademark, and Trade Dress Litigation 75; 17 U.S.C. § 507.

18
19   **(y)   Twenty-Fifth Affirmative Defense (First Amendment):**

20   Veoh does not intend to pursue this affirmative defense at this time.

21
22   **(z)   Twenty-Sixth Affirmative Defense (Preemption):**

23   Veoh does not intend to pursue this affirmative defense at this time.

24
25   **(aa)   Elements of Twenty-Seventh Affirmative Defense
(Failure to Register):**

26   Plaintiffs lack valid copyright registrations.  *See Perfect 10, Inc. v.
27   Amazon.com, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007); *Perfect 10, Inc. v.*

28

*Google, Inc.*, No. CV 04-9484-AHM(SHx), 2008 WL 4217837, at *1 (C.D. Cal. Jul 16, 2008) (noting damages may be precluded on any unregistered works).

UMG's Response:  UMG denies that "Failure to Register" is an affirmative defense.  "Failure to Register" is instead a denial that UMG can prove its claims.

**(c)      In brief, the key evidence Veoh relies on for each affirmative defense is:**

1.      Evidence in Support of First Affirmative Defense (Failure to State a Claim for Relief):

The key evidence Veoh will rely on to support this defense is as follows:  Evidence in support of this affirmative defense is largely the same as the lack of evidence UMG has to establish the elements of  its own claims, as set forth in the preceding section II(C)(1-4).  Thus, Veoh will rely on the same key evidence as set forth in these preceding sections to establish this claim.

2.      Evidence in Support of Second Affirmative Defense (17 U.S.C. § 512):

The key evidence Veoh will rely on to support this defense is as follows:

As to element (1), there is no dispute that Veoh is a service provider.

As to element (2), testimony from Veoh witnesses, Veoh's terms of use, screenshots from Veoh's website and documentation regarding the functionality of Veoh's software and services.  This Court has already ruled that even with Veoh's automated functions that make videos accessible, Veoh is still engaging in storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider.  (December 29, 2008 Order Denying UMG's Motion for Partial Summary Judgment, Dkt. No. 293) ("It is undisputed that all of these software functions are directed toward facilitating access to materials stored at the direction of users . . . The question is therefore whether the § 512(c) limitation on liability applies to service providers whose software performs these functions for the purpose of facilitating access to user-stored material. As already noted, the Court finds that it does. ").

Exhibit A Page 26

As to element (3), testimony from Veoh witnesses, Veoh's terms of use, screenshots from Veoh's website and documentation regarding the functionality of Veoh's software and services.  If Veoh receives a takedown notice that a user has uploaded allegedly infringing content after that user has already received a first warning, that user's account is promptly automatically terminated. Pursuant to this policy, Veoh has terminated thousands of user accounts.  Veoh has always promptly removed content and terminated users under reasonable circumstances.

As to element (4), testimony from Veoh witnesses and UMG's interrogatory response.  Veoh accommodates and does not interfere with standard technical measures.  Veoh is aware of no standard technical measures at issue here and UMG has identified none.  Plaintiff bears the burden of challenging a defendant's assertion that it accommodates or does not interfere with standard technical measures.  UMG has not identified any such technical measure.  Veoh served an interrogatory early in this case asking UMG to "[d]escribe all 'standard technical measures' as defined in 17 U.S.C. § 512(i)(2), that you employed prior to filing this action." UMG objected to the interrogatory as irrelevant and identified none.

As to element (5), testimony from Veoh witnesses and Veoh's designation of an agent to receive notifications of claimed infringement, and screenshots.  From the beginning of its service, Veoh has had an agent to receive notices of alleged infringement, and has made that information available on its website and with the Copyright Office.

As to element (6), testimony from Veoh witnesses.  There is no evidence that Veoh has actual knowledge that the specific material or activity using the material on the system or network is infringing or was aware of facts or circumstances from which infringing activity is apparent.

As to element (7), testimony from Veoh witnesses.  There is no evidence that upon obtaining such knowledge or awareness, Veoh failed to expeditiously to remove, or disable access to, the material.  Instead, Veoh immediately took down

once it received infringement notices from the trade group the RIAA, and for other
videos that neither UMG nor any of its representatives ever sent notices.  These
facts are undisputed.  (RSGI ¶ 71).  Whenever Veoh became aware of any allegedly
infringing video, it immediately terminated access to the video.  There is no
evidence that Veoh ever acquired knowledge of specific infringing videos and failed
to act or that Veoh materially contributed to the alleged infringements.  To the
contrary, Veoh's terms of use strictly prohibited infringing material.

As to element 7, testimony from Veoh witnesses and financial statements.
There is no dispute that Veoh has not been profitable since its inception.  (RSGI ¶
25). There is no evidence that Veoh has otherwise obtained a financial benefit
directly attributable to the infringing activity where Veoh has the right and ability to
control such activity.

As to element (8), testimony from Veoh witnesses that upon notification of
claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded
expeditiously to remove, or disable access to, all allegedly infringing works in this
action.  Indeed, Veoh immediately took down once it received infringement notices
from the trade group the RIAA, and for other videos that neither UMG nor any of its
representatives ever sent notices.  These facts are undisputed.  Whenever Veoh
became aware of any allegedly infringing video, it immediately terminated access to
the video.

3.    Evidence in Support of Third Affirmative Defense (No Primary
Liability):

The key evidence Veoh will rely on to support this defense is as follows:
UMG has no evidence to establish the elements of direct infringement by others
required to make out claims for Veoh's secondary liability, as outlined in Section II.
B. above.  Thus, Veoh will rely on the same evidence as set forth in these preceding
sections to establish this claim.

4.      Evidence in Support of Fourth Affirmative Defense (Staple Articles of Commerce):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and agreements that show Veoh features partner content from prominent content owners such as ABC, CBS, ESPN, Viacom, and Warner Television, which UMG has not alleged is infringing.  Users have uploaded more than four million videos to Veoh.  There are many music videos that are authorized on Veoh, from partner content to videos published by Veoh's users. SonyBMG music videos have been permitted on Veoh since mid-2008.

5.      Evidence in Support of Fifth Affirmative Defense (No Volitional Act):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses, Veoh's terms of use, screenshots from Veoh's website and documentation regarding the functionality of Veoh's software and services.  This Court has already ruled that even with Veoh's automated functions that make videos accessible, Veoh is still engaging in storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider.  (December 29, 2008 Order Denying UMG's Motion for Partial Summary Judgment, Dkt. No. 293) ("It is undisputed that all of these software functions are directed toward facilitating access to materials stored at the direction of users . . . The question is therefore whether the § 512(c) limitation on liability applies to service providers whose software performs these functions for the purpose of facilitating access to user-stored material. As already noted, the Court finds that it does. ").  In addition, testimony from Veoh witnesses that upon notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded expeditiously to remove, or disable access to, all allegedly infringing works in this action.  Indeed, Veoh immediately took down once it received infringement notices from the trade group the RIAA, and for other videos that neither UMG nor any of its representatives ever sent notices.  These facts are undisputed.  RSGI ¶ 71 (UMG

does not dispute that Veoh removed the material located at the specific URLs identified in the RIAA notices).  Whenever Veoh became aware of any allegedly infringing video, it immediately terminated access to the video.

6.      Evidence in Support of Sixth Affirmative Defense (Lack of Knowledge):

UMG has no evidence to establish Veoh's requisite knowledge of others' direct infringement, an element of contributory liability for infringement as outlined in Section II.B above.  The key evidence Veoh will rely on to support this defense is as follows:  evidence of Veoh's DMCA policy and procedures and compliance therewith, UMG's own inability to identify alleged infringements in this case, testimony from Veoh witnesses that upon notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh responded expeditiously to remove, or disable access to, all allegedly infringing works in this action.  Indeed, Veoh immediately took down once it received infringement notices from the trade group the RIAA, and for other videos that neither UMG nor any of its representatives ever sent notices.  These facts are undisputed.  Whenever Veoh became aware of any allegedly infringing video, it immediately terminated access to the video.

7.      Evidence in Support of Seventh Affirmative Defense  (No Direct Financial Benefit):

The key evidence Veoh will rely on to support this defense is as follows:  testimony from Veoh witnesses and financial statements.  UMG cannot show Veoh's requisite direct financial benefit from others' alleged direct infringement.  It is undisputed that Veoh has never made a profit.

8.      Evidence in Support of Eighth Affirmative Defense (No Right or Ability to Control):

The key evidence Veoh will rely on to support this defense is as follows:  testimony from Veoh witnesses.  UMG has no evidence to show Veoh's requisite

Exhibit A Page 30

1  right and ability to control others' alleged direct infringement, an element of

2  vicarious liability for infringement, as outlined in Section II.B above.

3      9.      Evidence in Support of Ninth Affirmative Defense (Fair Use):

4      The key evidence Veoh will rely on to support this defense is as follows:  the

5  underlying videos themselves, subject to Veoh's Motion In Limine No. 1. to exclude

6  introduction of these videos into the case at all.  Thousands upon thousands of the

7  alleged infringing videos are not music videos at all, let alone identifiable UMG

8  music videos.  For example, many of the videos are home videos set to music or are

9  videos of people filming themselves playing video games set to music.  And, in fact,

10  approximately a full third of the videos are Anime (Japanese cartoons) set to music.

11  As a result, none of these large categories of the videos put in issue by UMG would

12  be reasonably identifiable as UMG music videos, much less actually be UMG music

13  videos.  The purpose and character of the use of these videos are generally not

14  commercial in nature, use only a portion of the allegedly infringing work, and there

15  is no discernible  negative impact by the use upon the potential market (as shown

16  through the expert testimony of Roy Weinstein and documents UMG produced that

17  are cited to in the Weinstein report(s).).  The videos themselves demonstrate that

18  many are classic examples of fair use.

19      10.      Evidence in Support of Tenth Affirmative Defense (Laches):

20      The key evidence Veoh will rely on to support this defense is as follows:

21  testimony from Veoh witnesses, correspondence between the parties' counsel and

22  the complaint, that demonstrate that UMG never notified Veoh of a single

23  infringement before filing suit on Sept. 4, 2007, and did not identify a single

24  infringing video in its Complaint.  Promptly after UMG filed suit, Veoh's counsel

25  wrote to UMG's counsel and explained that if UMG would identify the videos it

26  contended were infringing, Veoh would promptly disable access to the videos.  In

27  response, UMG refused to identify any allegedly infringing videos and instead

28  insisted that Veoh should be able to figure out on its own which UMG "content"

1   was on its site, and that UMG was not obligated "to identify each instance in which

2   Veoh is displaying unauthorized content."  Though Veoh again asked UMG to

3   identify any infringing videos, UMG refused.  On December 1, 2008, more than a

4   year after filing suit (and only after Veoh filed a motion to compel the information),

5   UMG finally identified the videos it claims were infringing.

6          11.     Evidence in Support of Eleventh Affirmative Defense (Waiver):

7          The key evidence Veoh will rely on to support this defense is as follows:

8   testimony from Veoh witnesses:  testimony from Veoh witnesses and documents

9   produced that demonstrate that Veoh has received emails from UMG's employees

10  and agents regarding videos they uploaded to Veoh's website.  *Id.* at ¶ 69.

11  Golinveaux Decl. (Dkt. No. 338), ¶ 13 and Ex. L (Veoh's Supp. Responses to

12  UMG's Second Interrogatories); Simons Decl. (Dkt. No. 336-4), ¶¶ 10-11 and Exs.

13  D-E).  UMG waived its claims with respect to any of the works uploaded to Veoh

14  by UMG's agents/employees, and waived its remaining claims by refusing to notify

15  Veoh of any allegedly infringing works until over a year into the lawsuit. Id. ¶¶ 58-

16  60.

17         12.     Evidence in Support of Thirteenth Affirmative Defense (Unclean

18  Hands):

19         The key evidence Veoh will rely on to support this defense is as follows:

20  testimony from Veoh witnesses and emails received by Veoh from UMG's

21  employees and agents regarding videos they uploaded to Veoh's website.  *Id.* at ¶

22  69.  Golinveaux Decl. (Dkt. No. 338), ¶ 13 and Ex. L (Veoh's Supp. Responses to

23  UMG's Second Interrogatories); Simons Decl. (Dkt. No. 336-4), ¶¶ 10-11 and Exs.

24  D-E).  There is also evidence of UMG uploading videos to other websites.

25         13.     Evidence in Support of Fourteenth Affirmative Defense (Invalidity and

26  Unenforceability of Copyright):

27         The key evidence Veoh will rely on to support this defense is as follows:

28  UMG's failure to produce valid copyright registrations for certain of its works.  In

addition, the fact that UMG has failed to produce chain of title documents for the alleged infringements in this action, which is still subject to a pending motion before Judge Wistrich.  (*See* Notice of Lodging Parties' Competing Stipulations (Dkt. No. 518).)  Thus, Veoh has not yet obtained access to all of the evidence needed to establish this affirmative defense.

14.     Evidence in Support of Fifteenth Affirmative Defense (License, Consent and Acquiescence):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and emails received by Veoh from UMG's employees and agents regarding videos they uploaded to Veoh's website.  RSGI., at ¶ 69.  Golinveaux Decl. (Dkt. No. 338), ¶ 13 and Ex. L (Veoh's Supp. Responses to UMG's Second Interrogatories); Simons Decl. (Dkt. No. 336-4), ¶¶ 10-11 and Exs. D-E).

15.     Evidence in Support of Sixteenth Affirmative Defense (Lack of Subject Matter Jurisdiction):

The key evidence Veoh will rely on to support this defense is as follows: UMG's failure to produce valid copyright registrations for certain of its works.

16.     Evidence in Support of Seventeenth Affirmative Defense (Abandonment and Forfeiture):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and emails received by Veoh from UMG's employees and agents regarding videos they uploaded to Veoh's website.  RSGI., at ¶ 69.  Golinveaux Decl. (Dkt. No. 338), ¶ 13 and Ex. L (Veoh's Supp. Responses to UMG's Second Interrogatories); Simons Decl. (Dkt. No. 336-4), ¶¶ 10-11 and Exs. D-E).

17.     Evidence in Support of Affirmative Defense (Standing):

The key evidence Veoh will rely on to support this defense is as follows: UMG's failure to produce valid copyright registrations for certain of its works.  In

1  addition, the fact that UMG has failed to produce chain of title documents for the

2  alleged infringements in this action, which is still subject to a pending motion before

3  Judge Wistrich.  (*See* Notice of Lodging Parties' Competing Stipulations (Dkt. No.

4  518).)  Thus, Veoh has not yet obtained access to all of the evidence needed to

5  establish this affirmative defense.

6       18.    Evidence in Support of Twentieth Affirmative Defense (Non-Infringing

7  Use):

8       The key evidence Veoh will rely on to support this defense is as follows:

9  testimony from Veoh witnesses that show Veoh's software and services have

10 substantial non-infringing uses.  For example, Veoh features partner content from

11 prominent content owners such as ABC, CBS, ESPN, Viacom, and Warner

12 Television, which UMG has not alleged is infringing.  Papa Decl. (Dkt. No. 336-

13 10), ¶ 2.  Users have uploaded more than four million videos to Veoh.  Papa Decl.

14 (Dkt. No. 336-10), ¶ 3; Supplemental Declaration of Joseph Papa in Support of

15 Defendant Veoh Networks, Inc.'s Motion for Summary Judgment re Entitlement to

16 Section 512(c) Safe Harbor ("Supp. Papa Decl.") (Dkt. No. 396-4), ¶ 4.  SonyBMG

17 music videos have been permitted on Veoh since mid-2008.  Metzger Decl. (Dkt.

18 417) ¶ 2.

19      19.    Evidence in Support of Twenty-First Affirmative Defense (Failure to

20 Mitigate Damages):

21      The key evidence Veoh will rely on to support this defense is as follows:

22 Plaintiffs failed to mitigate damages by failing to notify Veoh of a single

23 infringement before filing suit on Sept. 4, 2007, and did not identify a single

24 infringing video in its Complaint.  Promptly after UMG filed suit, Veoh's counsel

25 wrote to UMG's counsel and explained that if UMG would identify the videos it

26 contended were infringing, Veoh would promptly disable access to the videos.  In

27 response, UMG refused to identify any allegedly infringing videos and instead

28 insisted that Veoh should be able to figure out on its own which UMG "content"

1   was on its site, and that UMG was not obligated "to identify each instance in which

2   Veoh is displaying unauthorized content." Though Veoh again asked UMG to

3   identify any infringing videos, UMG refused. On December 1, 2008, more than a

4   year after filing suit (and only after Veoh filed a motion to compel the information),

5   UMG finally identified the videos it claims were infringing.

6        20.   Evidence in Support of Twenty-Second Affirmative Defense (Innocent

7   Intent):

8        The key evidence Veoh will rely on to support this defense is as follows:

9   Veoh's Terms of Use and Copyright Policy prohibiting infringement, and testimony

10  from Veoh witnesses and correspondence showing that UMG never notified Veoh

11  of a single infringement before filing suit on Sept. 4, 2007, and did not identify a

12  single infringing video in its Complaint. Promptly after UMG filed suit, Veoh's

13  counsel wrote to UMG's counsel and explained that if UMG would identify the

14  videos it contended were infringing, Veoh would promptly disable access to the

15  videos.  In response, UMG refused to identify any allegedly infringing videos and

16  instead insisted that Veoh should be able to figure out on its own which UMG

17  "content" was on its site, and that UMG was not obligated "to identify each instance

18  in which Veoh is displaying unauthorized content." . Though Veoh again asked

19  UMG to identify any infringing videos, UMG refused. On December 1, 2008, more

20  than a year after filing suit (and only after Veoh filed a motion to compel the

21  information), UMG finally identified the videos it claims were infringing. Upon

22  notification of claimed infringement as described in 17 U.S.C. § 512(c)(3), Veoh

23  responded expeditiously to remove, or disable access to, all allegedly infringing

24  works in this action. Indeed, Veoh immediately took down once it received

25  infringement notices from the trade group the RIAA, and for other videos that

26  neither UMG nor any of its representatives ever sent notices. These facts are

27  undisputed. (RSGI ¶ 71). Whenever Veoh became aware of any allegedly

28  infringing video, it immediately terminated access to the video.

21.    Evidence in Support of Twenty-Third Affirmative Defense (Unconstitutionality):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and the expert report(s) of Roy Weinstein and exhibits cited therein to show why the damages sought by UMG are excessive, especially considering that the expert report of Blackburn and discovery responses confirm that UMG is unable to quantify actual damages to a reasonable degree of certainty.  UMG is seeking maximum statutory damages of $150,000 per alleged work, exponentially more per work than in any license agreement the parties (either side) would justify and more than any possible actual harm, which as UMG's own damages expert, Blackburn, repeatedly testified cannot be quantified.

22.    Evidence in Support of Twenty-Fourth Affirmative Defense (Statutes of Limitations):

The key evidence Veoh will rely on to support this defense is as follows: testimony from Veoh witnesses and correspondence showing UMG never notified Veoh of a single infringement before filing suit on Sept. 4, 2007, and did not identify a single infringing video in its Complaint. Promptly after UMG filed suit, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos.  In response, UMG refused to identify any allegedly infringing videos and instead insisted that Veoh should be able to figure out on its own which UMG "content" was on its site, and that UMG was not obligated "to identify each instance in which Veoh is displaying unauthorized content."  Though Veoh again asked UMG to identify any infringing videos, UMG refused.

23.    Evidence in Support of Twenty-Seventh Affirmative Defense (Failure to Register):

UMG has failed to produce valid copyright registrations for certain of its works.  .

**8.     IN VIEW OF THE ADMITTED FACTS AND THE ELEMENTS REQUIRED TO ESTABLISH THE CLAIMS AND AFFIRMATIVE DEFENSES, THE FOLLOWING ISSUES REMAIN TO BE TRIED:**

(a)     Copyright infringement under the four theories asserted by UMG: (1) direct infringement of copyright under 17 U.S.C. § 106;[4] (2) contributory copyright infringement;[5] (3) vicarious copyright infringement;[6] and (4) inducement of copyright infringement.[7]

(b)     The following affirmative defenses: Second Affirmative Defense ("17 U.S.C. § 512");[8] Ninth Affirmative Defense ("Fair Use");[9] Twenty-Fourth Affirmative Defense ("Statutes of Limitations").[10]

(c)     Statutory damages per work.[11]

---

[4] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions Nos. 1.2, 17.0, 17.1, 17.4.  This also subsumes Veoh's Third Affirmative Defense ("No Primary Liability"), Fifth Affirmative Defense ("No Volitional Act"), Fourteenth Affirmative Defense ("Invalidity and Unenforceability of Copyright"), Seventeenth Affirmative Defense ("Abandonment and Forfeiture"), Eighteenth Affirmative Defense ("Standing"), and Twenty-Seventh Affirmative Defense ("Failure to Register").

[5] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions Nos. 17.21.  This also subsumes Veoh's affirmative defenses of Staple Articles of Commerce (Fourth Affirmative Defense); Lack of Knowledge (Sixth Affirmative Defense); and Twentieth Affirmative Defense ("Non-Infringing Use").

[6] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions Nos. 17.20.  This also subsumes Veoh's affirmative defenses of Seventh Affirmative Defense ("No Direct Financial Benefit ") and its Eighth Affirmative Defense ("No Right or Ability to Control").

[7] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instructions Nos. 17.21.  This also subsumes Veoh's affirmative defense of Lack of Knowledge (Sixth Affirmative Defense).

[8] Authority: 17 U.S.C. § 512.

[9] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction No. 17.18.

[10] Authority: Holbrook & Harris, eds., *Model Jury Instructions: Copyright, Trademark, and Trade Dress Litigation* 75.

[11] Authority: Ninth Circuit Manual of Model Jury Instructions (2007 ed.), Instruction No. 17.25, 17.26, 17.27.  This subsumes Veoh's Twenty-First

1        (d)    The total number of infringed works, including whether UMG is

2    entitled to separate statutory damage awards for separate works appearing on a

3    single album, where the copyright registration for the latter covers all sound

4    recordings appearing on that album; and whether UMG owns or is an exclusive

5    licensee of all copyrights asserted in this action (if the Court does not bifurcate this

6    issue, *see* Section 13).**12**

7        (e)    Veoh's equitable affirmative defenses: Tenth Affirmative Defense

8    ("Laches"); Eleventh Affirmative Defense ("Waiver"); Thirteenth Affirmative

9    Defense ("Unclean Hands"); and Fifteenth Affirmative Defense ("License, Consent

10   and Acquiescence").**13**

11       (f)    Veoh's remaining defense: Failure to State a Claim (First Affirmative

12   Defense).

13       **9.    ALL DISCOVERY IS COMPLETE.**

14       However, Magistrate Judge Wistrich has not yet resolved Veoh's motion to

15   compel chain of title documents.  *See* Section 13.  Further, Veoh contends that it

16   should be allowed to depose certain UMG witnesses – Jeffrey Harleston, Ed Arrow,

17   Jennifer Roberts, and Tegan Kossowicz – identified on UMG's witness list; UMG

18   denies Veoh's contention.  *See* Section 11.

19

20

---

21   Affirmative Defense ("Failure to Mitigate"), Twenty-Second Affirmative Defense
22   ("Innocent Intent"), and Twenty-Third Affirmative Defense ("Unconstitutionality").

23       **12** <u>Authority</u>: Ninth Circuit Manual of Model Jury Instructions (2007 ed.),
     Instructions Nos. 1.2, 17.0, 17.1, 17.4.

24       **13** <u>Authority</u>:  *See generally Granite State Ins. Co. v. Smart Modular Techs.,*
25   *Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury
     resolve a disputed affirmative defense if the defense is equitable in nature.");
26   *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("there is no right to a
     jury on the equitable defense of laches"); *U.S. v. Kaczynski*, 551 F.3d 1120, 1129
27   ("The doctrine of unclean hands is an equitable doctrine . . . "); *Westinghouse Elect.*
     *v. Gen. Circuit Breaker*, 106 F.3d 894, 899 (9th Cir. 1997) (acquiescence is an
28   "equitable defense[]").

**10.     ALL DISCLOSURES UNDER FED. R. CIV. P. 26(a)(3) HAVE
BEEN MADE.**

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-5.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Filed concurrently herewith is the parties' Pretrial Exhibit Stipulation, which sets forth UMG's and Veoh's objections to certain exhibits and the grounds therefor.

**11.     WITNESS LISTS OF THE PARTIES HAVE BEEN FILED WITH
THE COURT.**

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

    (a)     David Benjamin

    (b)     Rio Caraeff

    (c)     Todd Dagres

    (d)     Harvey Geller

    (e)     Rachel Lam

    (f)     Wendy Nussbaum

    (g)     David Ring

    (h)     Margot Stephenson

Veoh is determining whether its former Senior Vice President of Finance and Operations, Bruce Wiseman, will be unavailable for trial.  If he is, UMG reserves the right to designate his deposition testimony in accordance with L.R. 16-2.7.

Veoh objects to each of UMG's witnesses for which UMG has not produced for deposition on the grounds that Veoh has not been provided the opportunity to

1   depose such witnesses.  These witnesses include Jeffrey Harleston, Ed Arrow,

2   Jennifer Roberts and Tegan Kossowicz.

3       UMG denies Veoh's contention.  Veoh had and waived the opportunity to

4   depose these individuals during the applicable discovery period.

5       **12.**    **THE FOLLOWING LAW AND MOTION MATTERS AND**

6   **MOTIONS IN LIMINE, AND NO OTHERS, ARE PENDING OR**

7   **CONTEMPLATED:**

8       (a)    Veoh's Motion for Summary Judgment re: Entitlement to Section

9   512(c) Safe Harbor;

10      (b)    UMG's Motions *in Limine* Nos. 1-8;

11      (c)    Veoh's Motions *in Limine* Nos. 1-7;

12      (d)    Veoh's Motions *in Limine* to Exclude UMG's Experts Drs. David

13   Blackburn and Ellis Horowitz; and

14      (e)    Veoh's Motion to Compel UMG to Produce Chain-of-Title Documents,

15   including the parties' recently filed Joint Stipulation regarding the same matter (Dkt.

16   No. 522).

17       **13.**    **BIFURCATION OF THE FOLLOWING ISSUES IS ORDERED:**

18       The parties have discussed bifurcating the trial as between certain liability and

19   copyright ownership issues.  The parties have not, however, agreed on several

20   details regarding this proposed bifurcation, and hence they submitted the matter,

21   along with their individual proposals for bifurcation, to Judge Wistrich for

22   resolution.  *See* Dkt. No. 522.  During a July 20, 2009 hearing before Judge

23   Wistrich, the parties agreed to submit a joint stipulation to Judge Wistrich

24   concerning this issue no later than July 27, 2009.

25

26

27

28

**14.   THE FOREGOING ADMISSIONS HAVING BEEN MADE BY THE PARTIES, AND THE PARTIES HAVING SPECIFIED THE FOREGOING ISSUES REMAINING TO BE LITIGATED, THIS FINAL PRETRIAL CONFERENCE ORDER SHALL SUPERSEDE THE PLEADINGS AND GOVERN THE COURSE OF THE TRIAL OF THIS CASE, UNLESS MODIFIED TO PREVENT MANIFEST INJUSTICE.**

Dated: _____, 2009                    _____
                                             Hon. A. Howard Matz
                                             United States District Court Judge
                                             Central District of California

Approved as to form and content.

Dated:  July 20, 2009                        IRELL & MANELLA LLP
                                             Steven A. Marenberg
                                             Brian Ledahl
                                             Benjamin Glatstein

                                             By: _____/s_____
                                                    Brian Ledahl
                                             Attorneys for Plaintiffs

Dated:  July 20, 2009                        WINSTON & STRAWN LLP

                                             By: _____/s (with permission)_____

                                             Michael S. Elkin
                                             Thomas P. Lane
                                             Jennifer A. Golinveaux
                                             Rebecca Calkins
                                             Erin Ranahan

                                             Attorneys for Defendant

2096530                      - 37 -          FINAL PRETRIAL CONFERENCE ORDER