Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (admitted *pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (admitted *pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>VEOH NETWORKS, INC., a California Corporation, et al.,<br><br>Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)**<br><br>**VEOH'S OPPOSITION TO UMG'S MOTION *IN LIMINE* NO. 5 TO PRECLUDE REFERENCE TO UMG'S UPLOADING MATERIALS TO OTHER WEBSITES**<br><br>Hearing Date: 8/3/09<br>Time: 10:00 a.m.<br><br>Hon. A. Howard Matz |

LA:250061.2

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Defendant Veoh Networks, Inc., ("Veoh") respectfully submits this opposition to Plaintiffs' Motion *in Limine* No. 5 to preclude reference at trial to evidence of UMG's uploading materials to any third-party websites other than Veoh.com. For the reasons stated below, UMG's motion should be denied in its entirety.

## I. INTRODUCTION

UMG's online marketing strategy in uploading materials to websites other than Veoh.com is relevant to determine the appropriate level of statutory damages. In its Motion to exclude this evidence, UMG contends that such evidence is irrelevant and would shift the focus away from the central issues of the case. UMG's argument ignores that this Court has ruled that online marketing is relevant to assessing statutory damages. *See* Declaration of Erin R. Ranahan filed September 2, 2009 (Dkt. No. 112) ("Ranahan Decl.") ¶ 2 and Exh. A; ¶ 3 and Exh. B.

UMG's uploading to other websites is also squarely relevant to Veoh's affirmative defenses—unclean hands, waiver and implied license. UMG's Motion narrowly misconstrues the general application of these defenses. UMG's uploading to other websites is also probative of UMG's role in facilitating Veoh's alleged infringement. Finally, the probative value of the evidence substantially outweighs the danger, if any, of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste of time. For all these reasons, the Court should deny UMG's Motion in Limine No. 5.

## II. UMG AND ITS AGENTS UPLOAD VIDEOS TO OTHER WEBSITES

UMG has produced internal documents in this action that directly support that once a work is released on the internet, there is no stopping the work from being massively released online, and that the promotional benefit outweighs the damage. *See e.g.,* Declaration of Brian Ledahl filed July 6, 2009 (Dkt. No. 517 ¶ 10 and Exh. I, p. 134). Veoh's damages expert, Roy Weinstein's conclusion incorporates this key document to support his conclusion that statutory damages in this action belong on the low end. *Id.* at Exh. I. UMG's damages expert has provided testimony that supports

LA:250061.2   1

the theory that as a work is circulated freely on the internet without charge, UMG suffers increasing damage. Ranahan Decl. (Dkt. No. 514) ¶ 7 and Exh. 6. Obviously, if UMG is the one who is leaking these works to be freely distributed onto the internet for promotional benefit, UMG cannot then seek to claim damage for the work being freely available on the internet when it caused the disbursement. Further evidence has shown than UMG uses "street marketing" teams to distribute works onto the internet at no charge; indeed, Veoh received a notice from a third party asserting that a video was in fact legitimate and authorized by UMG. (Supp. Simons Decl. (Dkt. No. 396-2) ¶ 14 and Exh. A). As a result, UMG's activities in relation to the release of these works on the internet is highly relevant to the issues in this action.

## III. LEGAL ARGUMENT

### A. Evidence of UMG's Uploading To Other Websites Is Relevant To Assessing UMG's Statutory Damages

The court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc*., 909 F.2d 1332, 1336 (9th Cir. 1990) *quoting Harris v. Emus Records Corp*., 734 F.2d 1329, 1335 (9th Cir. 1984). In measuring the damages, the jury is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . ." *Id*. at 1336.

This Court has recognized that evidence of online marketing would be "a factor the court can consider in determining what amount of statutory damages to award." *See* Ranahan Decl. at Exh. B 62:24–63:4. Evidence of UMG's uploading to other websites, a crucial aspect of its online marketing, is relevant in determining statutory damages because: (1) the evidence demonstrates the widespread availability of the product on the internet, which ultimately benefits UMG by increasing product exposure without the expense of funding the channel themselves; and (2) if UMG

uploaded copyrighted material to other websites free of charge for promotional or marketing purposes, this would support that UMG did not in fact suffer damages.

Evidence of UMG's uploading to other websites is necessary to approximate the full extent of the products' availability on the internet space. As UMG's own executives have stated, greater availability of UMG products, regardless of how it came to be available, may be ultimately beneficial to UMG because its music reaches a larger audience. *See* Horowitz-Benjamin E-mail ("I don't think this necessarily has any negative impact on the sale of our CDs. In fact, it may help the sale. . . . Why should we fund these if someone else will. [sic] AOL is doing this to bring people to AOL and monetize the eyeballs in a host of ways that we can't."); Expert Report of Roy Weinstein ("Weinstein Report") ¶ 19, ¶ 26 . Furthermore, once a UMG product is widely available on the internet, it becomes nearly impossible to control or stop the number of digital copies made. (*See e.g.,* Declaration of Brian Ledahl filed July 6, 2009 (Dkt. No. 517 ¶ 10 and Exh. I, p. 134).) As this material was actually placed on Veoh.com by third parties at UMG's direction, any actual damages become more and more diluted. Thus, the evidence of UMG's uploading to other websites, increasing product availability, is relevant to determine how much, if any, of UMG's damages are actually attributable to Veoh's purported infringements.

Furthermore, evidence of UMG's uploading copyrighted material, free of charge, to other websites is squarely relevant to the damages inquiry. Such evidence would demonstrate that UMG has not actually suffered any damages because UMG's purpose in uploading to other unlicensed websites was to make its products generally available to the public for free. UMG seeks to exclude this evidence because UMG erroneously believes Veoh should be liable for alleged lost profits on UMG products, while ignoring the fact that UMG personally distributed these same products for free.

**B.  Evidence of UMG'S Uploading Materials To Other Websites Is Relevant To Veoh's Affirmative Defenses**

As set forth below, UMG's uploading to other websites is relevant several to of Veoh's affirmative defenses, including unclean hands, implied license and waiver . Evidence of UMG's uploading to other websites demonstrates that UMG has a strategic online marketing strategy that involves putting material into the internet space through 'street marketing' teams and other third parties whose goal is to release the works to as broad a base as possible.

### 1. UMG's Uploading Materials To Other Websites Is Relevant To Veoh's Unclean Hands Affirmative Defense

The unclean hands defense essentially turns on the first factor of the test: the defendant must demonstrate "inequitable conduct by the plaintiff." See *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1223 (C.D. Cal. 2007). Evidence of UMG's uploading materials to other websites is relevant to show how UMG's conduct satisfies this test. Uploading music videos to internet sites for marketing, promotion and investigation, and then suing later for infringement is clearly inequitable conduct.

UMG fails to grasp Veoh's inequitable conduct argument, insisting that UMG's decision to post materials to sites other than Veoh does not amount to inequitable conduct. Veoh's claim of inequitable conduct here is distinct from that made in Grokster. In Grokster, the defendant argued that plaintiffs acted inequitably by refusing to share the artist-title pairs of their copyrighted material. *See Grokster*, 518 F.Supp.2d at 1223. UMG's response to the inequitable conduct factor is to point out that there is no such thing as a "fairness doctrine" in copyright law and to cite numerous cases rejecting the idea that copyright holders must license to everyone equally. The argument Veoh makes is not that it is inequitable that UMG posted material on other websites instead of on Veoh.com. Rather, Veoh is asserting that it is inequitable behavior for UMG, as part of its marketing strategy, to upload materials to other websites for the express purpose that they be virally distributed on the internet,

1 and then sue later for copyright infringement related distribution on the internet of the
2 same works.

### 2. UMG's Uploading Materials To Other Websites Is Relevant To Veoh's Implied License Affirmative Defense

"A copyright owner may grant a nonexclusive license expressly or impliedly through conduct." *Field v. Google Inc.*, 412 F.Supp.2d at 1115. "Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Id.* at 1116. "Consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license." *Id. quoting Keane Dealer Servs., Inc. v. Harts,* 968 F.Supp. 944, 947 (S.D.N.Y. 1997).

UMG's knowing and viral marketing of its copyrighted materials by uploading them onto other websites is highly relevant to Veoh's implied license defense. UMG is aware of the specific copyrighted material that UMG itself has distributed on the internet, including the works at issue here. UMG is also aware of high levels of piracy that occurs once UMG's copyrighted material has been uploaded to other websites. See generally Horowitz-Benjamin e-mail. The Digital Millennium Copyright Act ("DMCA") notification procedures "place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 1113 (9th Cir. 2007). Despite UMG's awareness that there may be potentially infringing material posted to Veoh.com, UMG's failure to provide Veoh with any type of notice as to purportedly infringing content demonstrates UMG's consent to a nonexclusive license.

Evidence of UMG's uploading to other websites is vital to the implied license defense to demonstrate that UMG, at all times, had knowledge of uploaded content and had the capacity to stop and notify Veoh at anytime. Such evidence is also relevant because it illustrates UMG's subsequent silence and inaction with regards to

the purportedly infringing activity on Veoh.com, despite their knowledge of such activity.

### 3. UMG's Uploading Materials To Other Websites Is Relevant To Veoh's Waiver Affirmative Defense

Evidence that UMG uploaded its copyrighted works to other unlicensed websites is relevant to Veoh's waiver defense. Although "waiver analysis should ordinarily be limited to evaluating the conduct and/or communications that occur between a plaintiff and a defendant claiming the waiver defense," here, UMG's conduct with regard to third party websites was so intimately linked with Veoh's own conduct, that it affected UMG's direct conduct and communication with Veoh. *MGM v. Grokster*, 518 F.Supp.2d at 1225. Given the unique and unrestrained nature of internet piracy, evidence of UMG giving away its copyrighted products by uploading them for free is tantamount to an intentional relinquishment of its rights with regard to those particular products. This again is relevant to Veoh's waiver defense because UMG now claims infringement against Veoh on those same products that UMG has already waived its rights to.

## IV. EVIDENCE OF UMG'S UPLOADING MATERIAL TO OTHER WEBSITES IS NOT INADMISSIBLE UNDER RULE 403

UMG's uploading its copyrighted materials to other websites is relevant and has great probative value to Veoh's statutory damages assessment and affirmative defenses. UMG argues that this relevant evidence should nonetheless be excluded under Federal Rules of Evidence Rule 403.

### A. The Probative Value Of The Evidence Far Outweighs Any Danger of Unfair Prejudice

UMG is mistaken in its assertion that the primary focus of this case concerns Veoh's allegedly infringing conduct. In fact, one of the main issues in this case is UMG's refusal to follow proper DMCA notification procedures. Further, evidence of

1  UMG's conduct with its music videos has great probative value because it directly
2  relates to the amount of damages that should be awarded UMG.

### B. This Evidence Will Not Result in Juror Confusion And Will Not Waste the Court's Time

This evidence will not result in juror confusion. As stated above, UMG has improperly defined the scope of the issues to those questions only involving Veoh's alleged wrongful conduct. However, excluding evidence of UMG's uploading would actually have the contrary effect of actually confusing the jury. By precluding reference to this particular evidence, the jury will be forced to consider the remaining evidence out of context and without any way to understand UMG's own wrongful conduct with regards to Veoh's DMCA defense. Evidence of UMG's uploading to other websites is highly probative because the evidence is relevant to properly asserting Veoh's affirmative defenses of estoppel, unclean hands, waiver and implied license.

Moreover, this evidence would not result in a substantial waste of time and litigation of collateral issues because this evidence is directly related to proving the required elements of Veoh's affirmative defenses. UMG cites *In re Agent Orange Prods. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) that this evidence should be excluded on waste of time grounds, analogizing that UMG would need to provide detailed rebuttal testimony to establish that the evidence has no probative worth. UMG fails to note however that *In re Agent Orange* also stands for the proposition that "[a]ny decision to allow or to exclude evidence under Rule 403 must be based on a detailed analysis of the specific facts of the case at hand-precedent is of little value." *Id*. at 1255. Admission of evidence of UMG's uploading to other websites would not waste time because and has significant probative value in determining the amount of UMG's statutory damages and for asserting Veoh's defenses which outweighs any competing concerns.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## V. CONCLUSION

For the foregoing reasons, Veoh requests that the Court deny in its entirety UMG's Motion No. 5 concerning exclusion of evidence or argument relating to UMG's uploading materials to other websites. .

Dated: July 20, 2009

WINSTON & STRAWN LLP

By: /s/ Erin R. Ranahan
    Michael S. Elkin
    Thomas P. Lane
    Jennifer A. Golinveaux
    Rebecca Calkins
    Erin Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.