Steven A. Marenberg (101033) (smarenberg@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC., <br><br>  Defendant. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* RE: COPYRIGHTED WORKS WITHDRAWN FROM UMG'S LIST OF INFRINGING WORKS (MOTION *IN LIMINE* NO. 2)** <br><br> **Filed Concurrently Herewith: Supplemental Declaration of Brian Ledahl in Support of UMG's Motions *in Limine*** <br><br> Date: August 3, 2009 <br> Time: 10:00 AM <br> Judge: Hon. A. Howard Matz <br> Ctrm: 14 <br><br> Discovery Cutoff: May 11, 2009 <br> Pretrial Conference: August 3, 2009 <br> Trial Date: August 18, 2009 |

2098833

UMG'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE RE: COPYRIGHTED WORKS WITHDRAWN FROM UMG'S LIST OF INFRINGING WORKS

# I. INTRODUCTION

UMG's motion *in limine* explained why evidence of its withdrawing copyrighted works was irrelevant to any issue before the Court. It further explained the confusion of issues and waste of time such evidence would engender. At best, this evidence shows that UMG no longer owns or controls certain rights in the copyrighted works removed from its list. Nothing more. This point is irrelevant to either UMG's claims or Veoh's defenses. Because Veoh's opposition fails to show otherwise, the Court should grant UMG's motion.

# II. FACTUAL BACKGROUND

Veoh sets forth several misrepresentations in its background section. UMG briefly corrects those statements here.

In its motion, UMG noted that Veoh propounded its interrogatory requesting that UMG identify infringing works in October 2008. Mot. at 1:7-8. Veoh does not dispute this fact. UMG timely responded to that interrogatory, and it supplemented this response throughout the discovery period.[1] Neither the interrogatory nor the response was the subject of "extensive motion practice." Opp'n at 2:6. In fact, Judge Wistrich admonished Veoh for its effort to compel prematurely a response to this interrogatory. *See* Order Regarding Veoh's Motion to Compel Plaintiffs to Idnetify Works at Issue (Dkt. No. 219) ("it is unclear whether Veoh is essentially attempting to compel a response to the interrogatory it served on October 24, 2008. Obviously, any such attempt would be premature"). Veoh's representation to the contrary is a deliberate falsehood.

---

[1] Veoh made UMG's efforts to supplement its list more difficult by destroying relevant metadata (*e.g.,* title and artist information) regarding UMG's music videos. Veoh did not regenerate and produce that metadata until February 26, 2009, "well after this litigation was filed," Opp'n at 4:27. Thus Judge Wistrich extended the time for UMG to identify videos available through Veoh that infringed its copyrights. *See* Order Regarding UMG's Motion for Sanctions and to Compel Veoh to Produce Audible Magic Metadata (Dkt. No. 400).

| | |
|---|---|
| 1 | Since responding to Veoh's interrogatory, UMG has diligently reviewed its |
| 2 | list of infringing videos. During the course of that review, UMG removed just 49 |
| 3 | works and even fewer videos—from a list that numbers over 7,000 videos. UMG |
| 4 | removed these works for various reasons, including simple data-entry errors, |
| 5 | changes in rights due to the passage of time, and similar corrections. |
| 6 | Veoh notes that on July 17, 2009, UMG withdrew additional infringing |
| 7 | videos from this action. Though this is technically accurate, UMG removed these |
| 8 | videos to expedite the parties' trial. The removals did not reduce either the number |
| 9 | of copyrighted works at issue or the potential money damages owed by Veoh. |
| 10 | Pursuant to Section 504(c)(1) of the Copyright Act, UMG is entitled to collect |
| 11 | statutory damages on a per work, not per video, basis. It was therefore sensible to |
| 12 | shorten UMG's list of infringing videos. Doing so will reduce the number of |
| 13 | disputes over particular videos between the parties. Veoh does not deny that these |
| 14 | removals will conserve UMG's, the Court's, and Veoh's time at trial. |


Since responding to Veoh's interrogatory, UMG has diligently reviewed its list of infringing videos. During the course of that review, UMG removed just 49 works and even fewer videos—from a list that numbers over 7,000 videos. UMG removed these works for various reasons, including simple data-entry errors, changes in rights due to the passage of time, and similar corrections.

Veoh notes that on July 17, 2009, UMG withdrew additional infringing videos from this action. Though this is technically accurate, UMG removed these videos to expedite the parties' trial. The removals did not reduce either the number of copyrighted works at issue or the potential money damages owed by Veoh. Pursuant to Section 504(c)(1) of the Copyright Act, UMG is entitled to collect statutory damages on a per work, not per video, basis. It was therefore sensible to shorten UMG's list of infringing videos. Doing so will reduce the number of disputes over particular videos between the parties. Veoh does not deny that these removals will conserve UMG's, the Court's, and Veoh's time at trial.

### III.   ARGUMENT

#### A.   **Evidence Of UMG's Withdrawing Works Is Irrelevant To UMG's Claims Or Veoh's Defenses**

Veoh advances one argument as to the relevance of this evidence: UMG's withdrawing copyrighted works from its list of infringements is relevant to Veoh's knowledge of infringing activity. More specifically, Veoh argues that UMG's withdrawing works proves that Veoh cannot know whether a work is infringing or not, implying that the works removed from UMG's list are not infringed. This argument fails.

UMG explained in its motion that the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(1)(A)(i), denies safe harbor to service providers that have "knowledge that the material or an activity using the material on the system or network is infringing." Similarly, a person is liable for contributory or inducing infringement if, among other things, they knew or had reason to know of direct

infringing activity. Ninth Circuit Manual of Model Jury Instructions Civil § 17.21 (2007). These elements do not require that one have knowledge of the copyright's *owner*, as distinct from the infringing activity itself. A service provider cannot display or distribute the motion picture *X-Men Origins: Wolverine*, for example, on the grounds that it does not know whether Paramount, Universal, or Twentieth Century Fox produced the film. It knows the work is copyrighted and that it lacks authorization to exploit it, even if it is does not know the owner.

The court in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006), made this point when it stated: the defendant "cannot seriously argue that it did not know that the popular music and movies traded on its network were copyrighted, particularly in light of the publicity surrounding the Napster litigation . . . ." *Id.* at 992. "It is common knowledge that most popular music and movies are copyrighted." *Id*. The *Grokster* court nowhere suggests that an infringer can plead ignorance of infringement on the basis of its being unaware of which music recording or publishing company owns a particular copyright.

Veoh likewise knows that it neither has nor had any right to display these works. The Court will search Veoh's opposition in vain for a statement or assertion of rights to display or distribute the works UMG removed from its infringement list. There is none. These works, like "most popular music and movies," "are copyrighted." *Id*. That some of those copyrights belong to someone other than UMG does not make Veoh's activity less infringing, or its knowledge of infringement less likely. Evidence of UMG's limited withdrawals is therefore irrelevant to Veoh's knowledge of infringement.

Veoh seeks to confuse this issue by suggesting that it has authorization to host music videos owned or controlled by "Sony BMG." It does not. (Veoh often floats this misleading representation to confuse the issues in this case.) First, no entity

named "Sony BMG" exists.[2]  Second, Veoh has no right or license to host Sony Music content on its servers, or display or distribute such content from those servers.  *See* Supplemental Declaration of Brian Ledahl ("Ledahl Decl."), Exhibit ("Ex.") L (Metzger Depo. at 45:21-46:13, 48:23-49:11).[3]  In other words, if every video or work removed by UMG – which Veoh displayed and distributed from its servers – was owned by Sony Music, Veoh's exploitation of those works would be without Sony Music's authorization and would infringe Sony Music's copyrights.  Its alleged arrangement with "Sony BMG" is thus no basis for Veoh's purported confusion over whether it had a right to host and display the removed works.  It did not.

### B. Evidence Of UMG's Withdrawing Works Is Excludable Under Rule 403

Veoh's opposition fails to rebut UMG's Rule 403 arguments.  UMG noted that if Veoh presents evidence or argument regarding these works, then UMG must respond by explaining why, for each of the 49 works, it ultimately determined not to claim damages.  This evidence would include simple data-entry errors and other ancillary issues.  After presenting this evidence, Veoh would still be unable to prove that its exploitation of videos embodying these copyrighted works was authorized or non-infringing.  Veoh disputes none of these facts.

Veoh instead argues: "apparently UMG now considers that it does not matter if it actually owns the works at issue and considers itself free to assert infringements against Veoh for works owned by other copyright owners."  Opp'n at 4:16-18.  This is nonsense.  UMG *removed* these works from its infringement list; it does not claim

---

[2] Sony sold its BMG Publishing assets to UMG several years ago.  Sony currently operates a recorded music company called Sony Music Entertainment.

[3] Veoh *links* to Sony Music's music videos through a process called "embedding," but there is no written arrangement between the companies.  Ledahl Decl., Ex. L (Metzger Depo. at 45:21-46:13).  This case is not about linking; it is about the infringing content hosted on Veoh's servers.

a right to collect damages for Veoh's infringement of these works.  Veoh further suggests that because no entity has sued Veoh over its display of these works, its use of these videos was not infringing.  This is false.  There is a notice provision in the DMCA, and there are knowledge and "red flag" provisions in the DMCA.  *See* 17 U.S.C. § 512(c).  The statute nowhere states that a notice of claimed infringement is the sole means by which a service provider gains knowledge or awareness of apparent infringing activity.  *Id.*  Hence it contemplates a service provider becoming aware of (and thus engaging in) infringing activity without notice – whether by letter or formal suit – from the copyright owner.  Veoh displayed and distributed videos embodying these copyrighted materials without authorization—a point undisputed in Veoh's motion.  That is copyright infringement.

Veoh then argues that "UMG's withdrawals are also highly probative to demonstrate why UMG's cooperation in identifying its alleged infringements is essential, and why UMG's refusal to identify works until well after this litigation was filed is so important." Opp'n at 4:25-27.[4]  Veoh does not explain why evidence of withdrawals is relevant to the necessity of "UMG's cooperation" in identifying infringements.  It is not, given that Veoh's use of these videos infringed others' copyrights, just as its use of UMG's videos infringed UMG's copyrights.  For example, suppose motion picture studio *X* sued Veoh for infringing its copyrights, noticed that Veoh displayed and distributed *Benjamin Button*, included the copyright for *Benjamin Button* on its list of infringements, and subsequently removed the work after realizing that studio *Y* controlled the Internet exploitation rights to the picture.  That removal is irrelevant to Veoh's identifying (or needing "cooperation"[5] to

---

[4] As to UMG's alleged "refusal to identify works until well after this litigation," UMG addressed this claim in Section II *supra*.  It is false.

[5] Of course, UMG has "cooperated" in identifying works as infringing.  The RIAA sent Veoh multiple notices of infringement on UMG's behalf, demanding that Veoh remove materials that infringed UMG's copyright.  UMG also provided "fingerprints" of its copyrighted works to the filtering service Audible Magic – in 2003, long before Veoh existed.  Had Veoh timely implemented that filter, it could

identify) the work as *infringing*, as distinct from Veoh's identifying *whose* rights it infringed. Clearly Veoh knew that it had no authorization to display or distribute the film even if it did not know who owned which rights. The situation is no different here.

Contributory liability and the DMCA turn on knowledge of infringement, not the owner of copyrights. As UMG stated in its motion, Veoh's presentation of this evidence will confuse that distinction in the minds of jurors, and the evidence is thus excludable under Rule 403.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should grant UMG's motion.

Dated: July 27, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl

Attorneys for Plaintiffs

---

have prevented the lion's share of infringements identified by UMG. It is Veoh, not UMG, that has been uncooperative.