Steven A. Marenberg (101033) (smarenberg@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>VEOH NETWORKS, INC., <br><br>Defendant. | Case No. CV-07-05744 AHM (AJWx) <br><br>**UMG'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE REFERENCE TO UMG'S UPLOADING MATERIALS TO OTHER WEBSITES (MOTION *IN LIMINE* NO. 5)** <br><br>**Filed Concurrently Herewith: Supplemental Declaration of Brian Ledahl in Support of UMG's Motions *in Limine*** <br><br>Date: August 3, 2009 <br>Time: 10:00 AM <br>Judge: Hon. A. Howard Matz <br>Ctrm: 14 <br><br>Discovery Cutoff: May 11, 2009 <br>Pretrial Conference: August 3, 2009 <br>Trial Date: August 18, 2009 |

2098326

## I. INTRODUCTION

UMG's motion *in limine* set forth a simple, uncontroversial point: central to this action is Veoh's conduct. UMG's copyright infringement claims turn on Veoh's displaying and distributing UMG's copyrighted works without authorization, and Veoh's alleged defense under Section 512(c) of the Digital Millennium Copyright Act ("DMCA"). Not at issue is evidence of UMG's uploading copyrighted materials to *other* websites. Such activity relates to no affirmative defense asserted by Veoh and is irrelevant to damages. Veoh's opposition fails to rebut this point.

Veoh argues that UMG's uploading materials to other websites is relevant to calculating a statutory damages award. According to Veoh, piracy is a predictable consequence of uploading materials to other sites and by doing so UMG invited Veoh's infringement, which should serve to reduce UMG's damages. This is wrong. UMG did not, by uploading materials to other websites, authorize persons to upload those materials to Veoh. UMG does not have a duty to prevent others from infringing its copyrights. Copyright law imposes a duty on *others* – including Veoh – not to infringe those copyrights. The evidence at issue is therefore irrelevant to statutory damages.

Veoh then argues that UMG's uploading materials to other sites is relevant to its affirmative defenses of unclean hands, implied license, and waiver. Veoh is wrong on all counts. First, Federal Rule of Civil Procedure 37(c)(1), which prohibits at trial the introduction of evidence or information requested but not produced during discovery, bars Veoh from now making this argument.[1] Plaintiff Universal Music Corp. ("UMC") propounded interrogatories asking that Veoh identify its bases for these defenses. Veoh identified the DMCA and UMG's alleged failure to abide by the statute's terms as the basis for each defense; it nowhere argued that UMG's uploading materials to other websites grounded these defenses.

---

[1] UMG made this point in its motion. *See* Mot. at 2 n.1. Veoh's opposition never responds to it.

Veoh's failure to supply this information during discovery bars it from asserting the relevance of this evidence at trial.

Rule 37 aside, this evidence is also irrelevant to Veoh's affirmative defenses. Case authority from the Central District of California and the Ninth Circuit holds that these defenses turn on direct interactions between the plaintiff and the infringer. Evidence of interactions with other persons or entities is irrelevant. UMG cited this authority in its motion, but Veoh ignores it.

UMG's motion further identified the juror confusion and waste of time that evidence of UMG's uploading materials to other websites will generate. Veoh does not respond to this argument. It only repeats its claim that such evidence is probative.

For all of these reasons, the Court should grant UMG's motion.

## II.   FACTUAL BACKGROUND

Veoh begins its opposition with two misrepresentations. UMG briefly corrects them here.

Veoh claims that "UMG has produced internal documents . . . that directly support that once a work is release on the internet, there is no stopping the work from being massively released online, and that the promotional benefit outweighs the damage." Opp'n at 1:22-24. Veoh cites the "Declaration of Brian Ledahl filed July 6, 2009" in support of this contention. *Id*. at 1:25-26. This is nonsense. The portion of the Ledahl Declaration to which Veoh cites is *Veoh's* expert report, which UMG attached to that declaration as an exhibit. The report itself references a single email (not "documents") in which two UMG executives discuss the interaction between a *non-UMG* artist's concert footage, available online, and his CD sales. The document nowhere states that the "promotional benefit" of freely distributing UMG's copyrighted materials across the Internet "outweighs the damage." Opp'n at

1:24.  Saying otherwise deliberately mischaracterizes the document.[2]  Regardless, UMG does not dispute that others – including Veoh – pirate UMG's copyrighted works once they reach the Internet.  It does not follow that they have authority to do so.

Veoh also alleges that "UMG uses 'street marketing' teams to distribute works onto the internet at no charge; indeed Veoh received a notice from a third party asserting that a video was in fact legitimate and authorized by UMG."  Opp'n at 2:6-9.  Veoh lacks any reliable evidence to support this claim.  The document cited is an email between Veoh's Copyright Compliance Officer and an individual who goes by "Say Street Ratt Promo," and whose email address is "varatts@aol.com."  Veoh cites and UMG has seen no evidence indicating that this individual is actually a Universal Music Group employee or agent, and thus his statements are not party admissions.  The document is therefore hearsay.  Moreover, the video referenced in the email is not a music video, not subject to a claim of infringement by UMG, and hence irrelevant to this action.

UMG now turns to the merits of Veoh's arguments.

### III.  ARGUMENT

#### A.  UMG's Uploading Materials To Other Websites Is Irrelevant To Statutory Damages

UMG's motion explained why its uploading materials to *other* websites is irrelevant to statutory damages.  UMG's license and sales arrangements with other websites and online services – such as YouTube and iTunes, for example – compensate UMG for their use of its copyrighted materials.  The rates and wholesale prices under those agreements do not change in the event UMG uploads its copyrighted materials to other websites.  So to the extent UMG's lost royalty and

---

[2] This document, and Veoh's expert's opinions regarding it, are the subject of a separate motion *in limine*.  *See* UMG's Motion *in Limine* No. 1 (Dkt. No. 515).

1  sales revenue are relevant to an award of statutory damages, that lost revenue does
2  not vary if UMG uploads material to other websites.

3  Veoh submits four arguments in opposition. They all fail. It claims that "this
4  Court has ruled that online marketing is relevant to assessing statutory damages."
5  Opp'n at 1:10-11. This Court did no such thing, a point easily confirmed by a
6  review of Veoh's cited "evidence." This "evidence" is (1) hearing transcripts (2)
7  regarding motions to compel (3) brought before Magistrate Judge Wistrich (4) in
8  separate (now settled) actions. Put differently, neither *this* Court nor Magistrate
9  Judge Wistrich *ruled* on this issue (and certainly not in this case), and Judge
10 Wistrich's comments on the record concerned the possible *discoverability* of online
11 marketing, not its relevance for purposes of admissibility at trial. Veoh cites no
12 order in which Judge Wistrich ruled that "online marketing is relevant to assessing
13 statutory damages," and it provides no pin-cite (in what are 80- and 144-page
14 documents) for the on-the-record comments that allegedly support its claim.

15 Second, Veoh claims that such evidence is relevant because it "demonstrates
16 the widespread availability of the product [sic] on the internet, which ultimately
17 benefits UMG by increasing product exposure without the expense of funding the
18 channel themselves." Opp'n at 2:25-27. This argument is senseless and
19 unsupported. The statutory damages awarded by the jury should turn on Veoh's
20 conduct, not UMG's interactions with others. *See Engel v. Wild Oats, Inc.*, 644 F.
21 Supp. 1089, 1091 (S.D.N.Y. 1986) (factors that inform the award of statutory
22 damages include "the nature of the copyright, the difficulty of proving actual
23 damages, the circumstances of the infringement, and in particular whether the
24 infringement was willful"). *Other* websites' display or distribution of UMG's
25 copyrighted materials – even if it benefited UMG – did not decrease the harm
26 caused by *Veoh*, just as the purchase of a CD by one consumer does not decrease the
27 harm caused by another who steals it. Veoh does not explain how it could.
28

2098326                               - 4 -                    UMG'S REPLY IN SUPPORT OF ITS MOTION IN
                                                                LIMINE TO PRECLUDE REFERENCE TO UMG'S
                                                                UPLOADING MATERIALS TO OTHER WEBSITES

1. Veoh then argues that "once a UMG product is widely available on the internet, it becomes nearly impossible to control or stop the number of digital copies made," and hence UMG's uploading materials to other sites is relevant. Opp'n at 3:11-12.[3] Put differently, Veoh suggests that UMG failed to prevent Veoh's infringement, and thus Veoh is liable for no damages. But UMG has no legal duty to prevent copyright infringement. The law imposes a duty on *others* not to infringe copyrights; it imposes no duty on UMG to prevent infringement of those rights, and it does not punish UMG for failing to stop those infringements. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007) ("The Court knows of no rule in copyright, and StreamCast has cited no authority for the proposition, that a copyright holder is bound to pursue either all infringers or none at all").

Finally, Veoh contends that UMG's uploading copyrighted materials "to other websites is" relevant to damages because it "demonstrate[s]" that UMG wished to "make its products generally available to the public for free." Opp'n at 3:20-23. This is false, and Veoh cites no authority for this position. Uploading copyrighted materials to other websites is not evidence that UMG wanted those materials on Veoh, or the Internet generally. At best, this evidence shows UMG's desire to have *those* materials on *those* sites. When UMG provides *Rolling Stone* with a new CD, that is not evidence that UMG wants *all* magazines to have that CD; nor would such evidence be admissible to show that persons who copied the CD without authorization harmed UMG less than if UMG had not given *Rolling Stone* a copy. That is Veoh's argument, and the Court should reject it..

---

[3] Veoh states, without citation to any evidence, that "this material was actually placed on Veoh.com by third parties at UMG's direction." Veoh does not explain what "material" it is referencing, what "third parties" placed it on Veoh.com, and what evidence indicates that UMG directed them to do so. The assertion is without support and should be ignored.

2098326 - 5 - UMG'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE REFERENCE TO UMG'S UPLOADING MATERIALS TO OTHER WEBSITES

### B. UMG's Uploading Materials To Other Websites Is Irrelevant To Veoh's Affirmative Defenses

#### 1. UMG's Uploading Materials To Other Websites Has No Relevance To Veoh's Unclean Hands Defense

Veoh argues that "UMG fails to grasp Veoh's inequitable conduct argument." Opp'n at 4:16-18. If so, it is because Veoh's opposition advances an unclean hands defense wholly different from that asserted in response to Universal Music Corp.'s ("UMC") Interrogatory No. 11. That Interrogatory asked that Veoh "[s]et forth the basis for" its contention that "Plaintiffs' claims are barred by unclean hands." *See* Declaration of Brian Ledahl in Support of UMG's Motions *in Limine*, Exhibit ("Ex.") E (Veoh's Responses to UMC's Interrogatories). Veoh's response identifies the DMCA and UMG's alleged refusal to abide by its terms as Veoh's basis for this defense. *Id.* It does not say, in these or different terms: "[u]ploading music videos to internet sites for marketing, promotion and investigation, and then suing later for infringement is clearly inequitable conduct." Nor did Veoh supplement its response to identify this argument or evidence.

Federal Rule of Civil Procedure 37(c)(1) therefore bars Veoh from presenting such evidence in support of unclean hands. Under Rule 37(c)(1), if a party fails to supply information in response to an interrogatory, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements" even if the party has not "violated an explicit court order to produce . . . and even absent a showing in the record of bad faith or willfulness"). Veoh has offered no justification for its failure to supplement, nor has Veoh established that its failure was harmless. *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 757 (E.D. Mich. 2008) ("A party requesting exclusion under Rule 37(c)(1) need not show prejudice; rather, the

burden is on the non-moving party to show that the non-disclosure was harmless or substantially justified"). Discovery is over; trial is less than one month away; and Veoh now advances a new basis for its defense of unclean hands. On these grounds the Court should exclude evidence of UMG's uploading materials to other websites as alleged support for Veoh's unclean hands defense.[4]

Even if Veoh's discovery responses did not bar its taking this position, Veoh's argument still fails on the merits. Veoh claims that it is "inequitable behavior for UMG" to "upload materials to other websites for the express purpose that they be virally distributed on the internet and then sue later for copyright infringement related [sic] distribution on the internet of the same works." First, Veoh cites no evidence that UMG uploaded copyrighted materials to other sites with the "express purpose" that they be distributed across the Internet, including to Veoh. There is no indication, for example, that when UMG supplies YouTube with copyrighted materials, it hopes that others will steal that content and distribute it to Veoh (or elsewhere). UMG's having the RIAA send Veoh notices of infringement belies UMG's alleged "express purpose" that copyrighted materials be distributed to Veoh.

Further, *Grokster* rejected Veoh's argument. The defendant there argued that "Plaintiffs' alleged decision to allow *other* peer-to-peer networks to distribute its copyrights g[ave the defendant] the right to do so as well." *Id.* at 1225-26. The court rejected this argument. It could not "agree that Plaintiffs' decision (assuming it is true) to allow other networks to distribute their copyrighted works permits [the defendant], along with the rest of the world, to do so as well." *Id.* at 1226.

---

[4] This argument also applies to Veoh's affirmative defenses of implied license and waiver and the alleged relevance of uploading materials to other websites to those defenses. Veoh's responses to UMC's interrogatories regarding implied license and waiver did not set forth this evidence as a basis for those defenses. *See* Ledahl Decl., Ex. E (Veoh's Responses to UMC's Interrogatories Nos. 9 and 13). In fact, Veoh repeats the same response – verbatim – as to each defense. *See id.*

## 2. Implied License Is No Basis For Admitting Evidence Of UMG's Uploading Materials To Other Websites

Evidence of UMG's uploading materials to other websites is irrelevant to implied license. Veoh's opposition fails to set forth the elements of the defense. They are: "'(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.'" *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (quoting *Lulirama Ltd., Inc. v. Axcess Broad Sews.*, 128 F.3d 872, 879 (5th Cir. 1997)). Evidence of UMG's uploading copyrighted materials to *other* websites would not satisfy these elements, which turn on direct interactions between the plaintiff and the defendant. Veoh's opposition ignores this point.

Veoh similarly ignores on-point Ninth Circuit authority, which rejected its implied license argument. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), rejected the argument that "plaintiffs granted the [defendant] an implied license by encouraging MP3 file exchange over the Internet." Such conduct could not, it held, give rise to any implied license, noting that "the [Recording Industry Association of American ("RIAA")] gave defendant express notice that it objected to the availability of its members' copyrighted music on Napster." *Id.* at 1026. The RIAA provided the same notice here (on UMG's behalf), alerting Veoh to hundreds of works available through its system that infringed UMG's copyrights. (And thus Veoh's statement that "UMG[] fail[ed] to provide Veoh with any type of notice as to purportedly infringing content," Opp'n at 5:22-23, is a deliberate misrepresentation.) Neither does Veoh cite *Grokster*, which, as set forth above, held: "This Court cannot agree that Plaintiffs' decision . . . to allow other networks to distribute their copyrighted works permits StreamCast . . . to do so as well." 518 F. Supp. 2d at 1226. These courts' rulings make clear that a copyright owner's interactions with others are irrelevant to a defendant's alleged implied license.

Veoh cites a single case in support of its claim of relevance: *Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006). That case is inapplicable. The plaintiff there manufactured an infringement claim against Google. He did so by manipulating technical features of Google's system, which then copied the plaintiff's copyrighted work. *Field*, 412 F. Supp. 2d at 1113. The plaintiff deliberately configured his web site in a manner calculated to communicate information specifically to Google; the configuration allowed Google to scan and cache a copy of his web site's contents. The plaintiff then brought copyright infringement claims against Google based on its reproduction and display of the contents of his site. *Id.* These unique facts have no relevance here. The plaintiff directly communicated with Google through settings on his web site; UMG did no such thing to Veoh. Even if it did, evidence of this activity would involve UMG's interactions with *Veoh*, not UMG's uploading materials to *other* websites.

### 3. **Evidence Of UMG's Uploading Materials To Other Websites Is Irrelevant To Veoh's Waiver Defense**

Veoh argues that UMG's "conduct with regard to third party websites was so intimately linked with Veoh's own conduct, that it affected UMG's direct conduct and communication with Veoh," and is thereby relevant to waiver. Opp'n at 8-11. Veoh cites *Grokster* in support of this argument. *Grokster* held the opposite. "Plaintiffs' actions with respect to other companies operating peer-to-peer networks are irrelevant." *Grokster*, 518 F. Supp. 2d at 1225. Even Veoh acknowledges that "[t]he waiver analysis should ordinarily be limited to evaluating the conduct and/or communications that occur between a plaintiff and a defendant claiming the waiver defense." *Id.* Nor does Veoh cite support for the alleged "intimate link" between UMG's uploading materials to other sites and Veoh's infringement. Its opposition identifies no video that UMG allegedly uploaded elsewhere and that subsequently ended up on Veoh's site. Even if it could, *Grokster* holds that such evidence is irrelevant.

### C. Evidence Of UMG's Uploading Material To Other Websites Is Inadmissible Under Rule 403

UMG's motion identified the juror confusion and waste of time that would follow the presentation of evidence of UMG's interactions with other sites. Veoh does not rebut these arguments. As to juror confusion, Veoh simply states: "[b]y precluding reference to this particular evidence, the jury will be forced to consider the remaining evidence out of context and without any way to understand UMG's own wrongful conduct with regards to Veoh's DMCA defense." Opp'n at 7:9-11. Veoh nowhere explains how UMG's uploading materials to other websites relates to Veoh's DMCA defense, nor could it. No provision of Section 512(c) turns on UMG's uploading materials to *other* websites, and such evidence is therefore not relevant and not admissible to establish that defense.

Nor does Veoh deny the waste of time such evidence will engender. UMG's motion noted five separate facts that Veoh must prove – under its own theory – to establish an implied license defense as to any single video UMG allegedly uploaded to another website. Veoh does not deny its obligation to prove those facts and offers no indication that it has evidence capable of proving them. Neither does it explain why proving those facts – in a case with over 7,000 videos and two central issues (Veoh's infringement and its Section 512(c) defense) – makes good use of the Court's time.

### IV. CONCLUSION

For all of the foregoing reasons, the Court should grant UMG's motion.

Dated: July 27, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl
Brian Ledahl
Attorneys for Plaintiffs