Steven A. Marenberg (101033) (smarenberg@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC., <br><br> Defendant. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE REFERENCE TO EVIDENCE OF VEOH'S CURRENT FINANCIAL POSITION, POTENTIAL BANKRUPTCY, AND LAYOFFS (MOTION *IN LIMINE* NO. 6)** <br><br> **Filed Concurrently Herewith: Supplemental Declaration of Brian Ledahl in Support of UMG's Motions *in Limine*** <br><br> Date: August 3, 2009 <br> Time: 10:00 AM <br> Judge: Hon. A. Howard Matz <br> Ctrm: 14 <br><br> Discovery Cutoff: May 11, 2009 <br> Pretrial Conference: August 3, 2009 <br> Trial Date: August 18, 2009 |

2097617

UMG'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE REFERENCE TO EVIDENCE OF VEOH'S CURRENT FINANCIAL POSITION, POTENTIAL BANKRUPTCY, AND LAYOFFS

Dockets.Justia.com

## I. INTRODUCTION

Veoh's opposition confirms the appropriateness of UMG's Motion *in Limine*. Within one sentence of beginning its brief, Veoh makes the following claim: "UMG would prefer that there be no evidence regarding the financial devastation that Veoh suffered as a result of UMG's baseless suit." Opp'n at 1:4-6. This is true: Veoh's inflammatory, groundless claim is the sort UMG's motion seeks to exclude. Veoh clearly reveals its intention to inflame the jury with irrelevant (and unsupported) claims about the costs of litigation and their purported effects on Veoh's finances.[1]

Veoh claims that evidence of its current financial position is relevant to two issues: (1) the direct financial benefit Veoh received from displaying and distributing UMG's copyrighted materials, and (2) any per work statutory damages award. Veoh is wrong on both counts. The direct financial benefit Veoh received from infringing activity turns on the nature of that benefit, not Veoh's current financial position. Hence if Veoh received revenue each and every time it displayed or distributed a video that infringed UMG's copyrights, it received a direct financial benefit from that infringing activity—even if it is now short on cash or assets. Second, Veoh's current financial position is irrelevant to per work statutory damages. The infringement at issue occurred in the past. Even assuming that historical revenue attributable to Veoh's infringement is relevant to a statutory damages award, its current financial position is not.[2]

---

[1] Notably, Veoh excludes from this discussion the fact that it had a litigation insurance policy to pay for this supposedly devastating litigation. Further, it offers no evidence (such as legal bills) to support its improper, inflammatory claims.

[2] Throughout its opposition, Veoh seeks to confuse evidence of its current financial position and evidence of its past performance. Evidence of Veoh's current financial position includes: its current assets or their value, its "burn rate" (or negative cash flow), and other similar evidence. Past performance may include, for example, Veoh's revenue and operating losses in 2008. UMG's motion only seeks to exclude the former.

Finally, Veoh's opposition nowhere challenges UMG's claim that evidence or argument regarding Veoh's potential bankruptcy or layoffs – as distinct from its current financial position – is irrelevant and unfairly prejudicial. Veoh has therefore waived any opposition to that portion of UMG's motion.[3]

## II. ARGUMENT

### A. Evidence of Veoh's Current Financial Position Is Irrelevant To Its Direct Financial Benefit From Infringing Activity

Veoh's current financial position is irrelevant to the direct financial benefit it derived from infringing UMG's copyrights. UMG has never claimed otherwise.[4] In prior pleadings, UMG explained how Veoh received a direct financial benefit from its display and distribution of UMG's copyrighted materials. Veoh served display advertising alongside UMG's content; pre-roll video advertisements preceding UMG's content; and overlay advertisements layered on top of UMG's content. Veoh charged its advertisers a "cost per impression" or "CPM" fee each time Veoh displayed such advertising, and thus earned revenue each time it displayed an advertisement to a viewer. The more viewers who watched infringing material on Veoh, the more revenue Veoh earned. These facts – relevant to UMG's claim for

---

[3] Veoh's opposition also includes various untrue claims that are irrelevant to the resolution of this motion. *See, e.g.,* Opp'n at 1:22-25 ("The entire point of this lawsuit has not been to punish an [sic] 'widescale copyright pirate' as UMG would have it; instead, it has been to bankrupt a small yet innovative and copyright-compliant business and replace it with a UMG entity of virtually the same name – UMG's recently [sic], and highly touted, Vevo"). Veoh repeats this charge – almost verbatim – in multiple motions *in limine*. It is false, based on no evidence, and irrelevant to the resolution of any motion.

[4] The exhibits and evidence cited by Veoh, *see* Opp'n at 2:19-3:10, do not refer to Veoh's *current* financial position and are thus not inconsistent with this motion. They simply prove that Veoh earned revenue and financing from displaying or distributing UMG's copyrighted materials. And contrary to Veoh's assertions, UMG has not claimed, nor will it at trial, that Veoh has been or is a profitable business.

vicarious infringement and Veoh's claim to Section 512(c)'s safe harbor – do not turn on Veoh's current financial position.

Veoh asks that the Court deny UMG's motion because it would allegedly preclude Veoh from disputing these facts. It would, according to Veoh, bar the introduction of evidence that Veoh is unprofitable, which allegedly refutes UMG's direct financial benefit claim. Opp'n at 2:22-3:26. This argument fails for two reasons. First, vicarious liability and Section 512(c) look to financial "benefits," not "profits." *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1023 (9th Cir. 2001); 17 U.S.C. § 512(c)(1)(B). Veoh received a financial *benefit* each time it displayed or distributed UMG's copyrighted materials: advertising revenue. Veoh's losses as a business do not refute that benefit. Congress and the courts wisely chose the term "benefit" over "profit." The latter would – insensibly – make copyright liability hinge on the quality of management, or the viability of a defendant's business model. A poorly managed business could infringe with impunity, so long as it continued to lose money. That is not the law. *Napster*, 239 F.3d at 1023 (finding direct financial benefit on the basis of possible "future revenue" that was "directly dependent" on the draw of infringing material).

But more fundamentally, UMG's motion does not seek to exclude evidence that Veoh was unprofitable. UMG limited its motion to Veoh's *current* financial position, *e.g.*, how many assets Veoh currently has, how much cash it currently has, Veoh's "burn rate," and similar evidence. Evidence or argument regarding these facts is irrelevant to the financial benefit Veoh received from displaying and distributing UMG's copyrighted materials, and Veoh's motion nowhere states otherwise.

### B. Evidence Of Veoh's Current Financial Position Is Irrelevant To Statutory Damages

Evidence of Veoh's current financial position has no relevance to statutory damages, and Veoh advances no argument to the contrary. As set forth above,

evidence of Veoh's current financial position includes the value of its current assets, its negative cash flow, and other similar evidence.  These present-day balance sheet figures have no bearing on a damages award for past infringement.  Neither Veoh's opposition nor its own expert, who did not incorporate these figures into his proposed damage award, dispute this claim.  Further, UMG's motion does not seek to exclude, for example, the amount of revenue Veoh generated by infringing UMG's copyrights.  Veoh's suggestion otherwise is false.  The issue of statutory damages is therefore no basis for admitting evidence of Veoh's current financial position.

### C. Evidence Of UMG's Motive Is Irrelevant

UMG sued Veoh for copyright infringement because – unsurprisingly – it was displaying and distributing UMG's copyrighted materials without authorization.  UMG has identified over 7,000 videos for which this charge is true.  But Veoh persists in claiming that "UMG's motive for filing suit was not to stop the alleged infringements but really to cripple a burgeoning technology company—either by extracting an extortionist settlement from Veoh or by draining Veoh's resources with a massive infringement suit . . . ."  Opp'n at 4:8-12.  Veoh argues that its financial position is relevant to UMG's alleged motive.  This is nonsense.  Rephrased, Veoh's argument reads: evidence that Veoh lost money proves that UMG desired Veoh to lose money.  This is induction—and unconvincing.  Further, Veoh identifies no claim or affirmative defense to which UMG's "motive" is relevant: whether Veoh displayed or distributed UMG's copyrighted works, or whether it is entitled to Section 512(c)'s safe harbor does not turn on UMG's alleged motive.  Veoh makes no argument to the contrary.

### D. Evidence of Veoh's Current Financial Position Is Barred By Rule 403

Veoh does not rebut UMG's Rule 403 argument.  It repeats its charge that UMG's motion seeks to exclude all evidence of Veoh's financial performance,

evidence which is allegedly "indispensable to Veoh's ability to lodge [sic] a proper defense." Opp'n 4:25-26. That is untrue, as set forth above. UMG's motion seeks to exclude evidence of Veoh's current financial position, not all evidence of Veoh's finances. Nor does Veoh adequately address UMG's "unfair prejudice" claim. It argues that the link between the jurors' "own findings of fact and the subsequent well-being of Veoh's employees" would be "attenuated" and therefore unlikely to result in unfair prejudice. *Id.* at 4:27-28. This is false. The consequences of the jury's damage award will be clear if the Court permits evidence of what Veoh terms its "current dire financial condition." *Id.* at 3:8. A simple subtraction exercise reveals those consequences: "current dire financial condition" – damage award = whether Veoh can or cannot pay its staff. But this evidence and calculation is irrelevant to an award of statutory damages (and everything else in this case) and thus presents the danger of unfair prejudice addressed by Rule 403.

### E. Veoh's Has Waived Any Opposition To The Court's Excluding Evidence of Veoh's Layoffs Or Potential Bankruptcy

Veoh's opposition only argues for the relevance of Veoh's current financial position. It nowhere claims that Veoh's layoffs – past or anticipated – are relevant to UMG's claims or Veoh's defenses. And it nowhere suggests that Veoh's potential bankruptcy (*i.e.,* evidence that it will, is preparing to, or may have to file for bankruptcy) is relevant to this action. Veoh has therefore waived any opposition to that portion of UMG's motion *in limine*.

///
///
///
///
///
///
///

2097617

- 5 -

UMG'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE REFERENCE TO EVIDENCE OF VEOH'S CURRENT FINANCIAL POSITION, POTENTIAL BANKRUPTCY, AND LAYOFFS

## III. CONCLUSION

For all of the foregoing reasons, the Court should grant UMG's motion.

Dated: July 27, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Brian Ledahl
Benjamin Glatstein

By: _____
Brian Ledahl

Attorneys for Plaintiffs