Steven A. Marenberg (101033) (smarenberg@irell.com)
Brian Ledahl (186579) (bledahl@irell.com)
Benjamin Glatstein (242034) (bglatstein@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VEOH NETWORKS, INC., <br><br> Defendant. | Case No. CV-07-05744 AHM (AJWx) <br><br> **UMG'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE REFERENCE TO EVIDENCE OF LAWSUITS BROUGHT BY UMG OR THE RIAA AGAINST PERSONS OR ENTITIES OTHER THAN VEOH (MOTION *IN LIMINE* NO. 7)** <br><br> **Filed Concurrently Herewith: Supplemental Declaration of Brian Ledahl in Support of UMG's Motions *in Limine*** <br><br> Date: August 3, 2009 <br> Time: 10:00 AM <br> Judge: Hon. A. Howard Matz <br> Ctrm: 14 <br><br> Discovery Cutoff: May 11, 2009 <br> Pretrial Conference: August 3, 2009 <br> Trial Date: August 18, 2009 |

2096955

## I.  INTRODUCTION

UMG's motion *in limine* set forth the improper purpose to which Veoh could put evidence of other litigations—namely, to suggest a purported tendency toward litigiousness.  Veoh's admits, without hesitation, its intention to use evidence of other litigations for exactly this improper purpose: "Evidence of prior lawsuits brought by UMG or its agents is admissible because it demonstrates UMG's pattern of litigating in a manner that not only thwarts the goals of the DMCA, but ultimately stifles innovation by forcing young start-up companies out of business if they cannot defend massively expensive lawsuits or pay antiquated balloon payments to avoid continuing litigation."  Opp'n at 1:2-6; *see also id.* at 6:26-28 ("Veoh should be allowed to pursue and refer to evidence regarding UMG's other lawsuits in order to establish that UMG had a large-scale plan to delay and force expensive litigation for its own improper business goals").  It is true that UMG brings infringement actions against those that steal its copyrighted works—including Veoh.  But using such evidence to prove UMG's tendency to enforce those rights is improper, according to both case law cited by Veoh and other federal authority.  Veoh's admission is thus sufficient grounds for granting UMG's motion.

The second purpose for which Veoh intends to introduce this evidence – in support of its alleged unclean hands defense – is no better.  Unclean hands is an equitable defense and thus triable before the court, not the jury.  It is therefore no justification for presenting evidence of other litigations to the jury.  Further, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) rejected the unclean hands defense now advanced by Veoh.  Veoh argues that its understanding of the DMCA is correct; that UMG's is not; and hence UMG's suing Veoh or other websites for copyright infringement is inequitable.  This argument is circular and was recognized as such by *Grokster*.  The argument assumes that Veoh has established its qualifications for Section 512(c)'s safe harbor.  Veoh has not (and cannot), and thus UMG's suit denying the merits of Veoh's

position is not inequitable. Finally, a defense of unclean hands turns on the plaintiff's alleged inequitable conduct vis-à-vis the defendant. UMG's or the Recording Industry Association of America's ("RIAA") suits against *other* persons or entities are – by definition – not inequitable vis-à-vis Veoh. They are therefore irrelevant to unclean hands.

Because Veoh has come forward with no proper purpose for introducing evidence of other litigations, the Court should grant UMG's motion.

## II. FACTUAL BACKGROUND

Veoh's opposition rests on multiple inaccuracies and affirmative misrepresentations. UMG briefly corrects them here.

Veoh claims that "UMG's goal in bringing this lawsuit was *not* to prevent suspected copyright infringement, or to punish a 'widescale copyright pirate' as UMG would have it; instead, it has been to bankrupt a young innovative and copyright-compliant business and replace it with a UMG entity of virtually the same name – UMG's recently announced new online video venture, which it has named 'Vevo.'" Opp'n at 1:9-13 (emphasis in original). But *Veoh* sued *UMG*. On August 9, 2007, Veoh sued UMG in the Southern District of California. UMG had brought no action against Veoh. Judge Whelan of the Southern District ultimately dismissed Veoh's suit. He "question[ed] [Veoh's] argument that [Veoh] does not and cannot know of any UMG copyrighted material on their service," given that UMG has a "reputation as a large, popular media copyright holder." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1270 n.4 (S.D. Cal. 2007). And he held that Veoh's action, "jurisdictionally and on the merits, [was] so ill-defined" that he "suspect[ed] its use [was] more a bargaining chip than a sincere prayer for relief." *Id.* at 1271.

Veoh also alleges that "UMG managed to drag this litigation out and drive up litigation costs through massive alleged statutory damages—all to inflict maximum

pressure on Veoh and further UMG's improper business goal of promoting 'Vevo.[1]'" Opp'n at 3:1-4. Veoh, not UMG, prolonged this litigation. Veoh refused to produce its videos, including those that infringed UMG's copyrights, until the Fall of 2008, despite UMG bringing suit in Fall 2007; Veoh destroyed metadata regarding those videos, metadata which Judge Wistrich ultimately held it had an obligation to preserve and provide to UMG (*see* Order Regarding UMG's Motion for Sanctions and to Compel Veoh to Produce Audible Magic Metadata (Dkt. No. 400)); and it improperly withheld documents, leading Judge Wistrich to state: "The court is concerned about what appear to be unreasonably narrow interpretations by Veoh of some of UMG's discovery requests, a practice which calls into question the completeness of its entire production. Anomalies in Veoh's production, which may or may not have an entirely innocent explanation, heighten that concern" (*see* Order Regarding UMG's Motion for Sanctions and to Compel Compliance with Prior Court Orders (Dkt. No. 401)). Veoh – not UMG – stalled this litigation through obfuscation and misconduct.

Veoh also alleges that "UMG has itself shifted to an ad-supported model following an initial agreement with a former defendant who was forced to pay the original balloon payment just to put an end to the unjustified litigation." Veoh does not name the alleged defendant nor could it. The statement is false, and Veoh identifies no basis for making it.

Finally, in this brief and others, Veoh repeats the same deliberate falsehood: that UMG did not "provid[e] takedown notices" to Veoh. Opp'n at 3:24. This is not true, and Veoh knows it. The RIAA sent multiple takedown notices to Veoh on

---

[1] Vevo, a web service jointly developed by UMG and YouTube, has no relation to Veoh. UMG and YouTube began developing this service more than a year after this suit commenced. There is no evidence that Vevo's creation was the product of a conspiracy to supplant Veoh. Veoh's claim otherwise is ironic given that UMG's Vevo service will be involved in making UMG's music content available. For this to impact Veoh at all, Veoh must contend that it too offers UMG's music content – the very infringement it so vehemently denies.

behalf of UMG. Those notices expressly state that the RIAA was acting on behalf of its member record labels, which include UMG. The notices then identify hundreds of videos available through Veoh, videos that are subject to claims of infringement in this action. Veoh knows this—it served a subpoena on the RIAA seeking "[a]ll documents evidencing . . . any and all notifications of claimed infringement . . . for works purportedly owned or controlled by plaintiffs," and the RIAA thereafter produced notices of infringement it issued to Veoh on UMG's behalf. Yet Veoh advances this misrepresentation in paper after paper.

UMG now turns to the merits of Veoh's arguments.

### III.  ARGUMENT

#### A.  Other Litigations Are Irrelevant To Veoh's Alleged DMCA Defense

Veoh spends one page setting forth its understanding of the Digital Millennium Copyright Act ("DMCA"). Opp'n 2:7-3:4. It spends no effort tying this understanding to the alleged relevance of other litigations. *Id.* Nor could it: no provision of Section 512(c) – from (1) to (3) – takes account of UMG's or the RIAA's suits against other person or entities. Veoh's alleged entitlement to 17 U.S.C. § 512(c)'s safe harbor turns on Veoh's conduct and its service, and Veoh cites nothing to the contrary.

#### B.  Rule 404(b) Does Not Allow Evidence Of UMG's Other Litigations

Rule 404(b) provides that "evidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith." "Litigiousness is the sort of character trait with which Rule 404(b) is concerned." *Powell v. Rowe*, 2007 WL 3071816, *1 (E.D. Mo. Oct. 19, 2007) (citing *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) (trial court erroneously permitted defendants' argument that plaintiff was "a perpetual litigant")). Therefore, to be admissible, evidence of a plaintiff's prior litigation "must tend to show something more than a plaintiff's tendency to sue." *Gastineau v. Fleet Mortgage*

1 *Corp.*, 137 F.3d 490, 495-96 (7th Cir. 1998).  UMG does enforce its intellectual property rights against those that steal them, including against services labeled infringers by the United States Supreme Court (Streamcast and Grokster) and the Ninth Circuit (Napster).  Veoh may prefer that UMG did not pursue actionable copyright infringement, but pursuant to Rule 404(b) it may not introduce evidence of other litigations to prove character for such enforcement.

Veoh therefore argues that Rule 404(b) allows for the admission of evidence of "other . . . wrongs, or acts" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," and thus evidence of other litigations is admissible here.  Opp'n at 3:7-13.  This is plainly wrong.  Missing from Veoh's argument is a single claim or affirmative defense in this action that turns on UMG's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  These elements are irrelevant to UMG's claims for direct, contributory, vicarious, and inducing copyright infringement.  Those claims turn on Veoh's copying and fostering the copying of UMG's copyrighted materials.  Nor does Veoh cite any affirmative defense – other than unclean hands, which UMG addresses below – to which UMG's alleged motive, intent, knowledge, or plan is relevant.

The cases cited by Veoh do not correct this defect.  They are either distinguishable or support UMG's position.[2]  *Van Deelen v. Johnson* involved a plaintiff that serially sued others for assault.  2008 WL 4683022, *3 (D. Kan. Oct. 22, 2008).  In that case, "the primary issue [was] the credibility of the parties," where only three parties, including the plaintiff, witnessed the events at issue.  *Id*. at *4.  The court determined that the plaintiff's past suits were relevant to his

---

[2] For example, in *Mathis v. Phillips Chevrolet, Inc.*, the Seventh Circuit affirmed exclusion of other litigations.  It noted that "a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant," particularly where the merits of such suits are contested.  269 F.3d 771, 776 (7th Cir. 2001).

credibility. *Id.* Credibility was also a central issue in *Gastineau*, where the court held that prior lawsuits "tend[ed] to show Gastineau's *modus operandi* of creating fraudulent documents in anticipation of litigation against his employers." 137 F.3d at 495. The *Gastineau* court expressly noted that evidence of prior lawsuits was not admissible to show a "plaintiff's tendency to sue." *Id.* at 496. But "tendency to sue" is the only use to which Veoh intends to put this evidence. *See, e.g.,* Opp'n at 3:24-27 ("UMG's litigation plan . . . is to cause massive unnecessary litigation costs to a fledgling start-up industry").

Veoh ignores the clear weight of federal authority that refuses to "admit evidence of prior suits unless they were fraudulently filed." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008); *see also McDonough v. City of Quincy*, 452 F.3d 8, 20 (1st Cir. 2006); *Outley*, 837 F.2d at 592; *Matthis*, 269 F.3d at 776-77. Veoh offers no evidence that UMG or the RIAA fraudulently filed prior suits.

The primary issues in this action are Veoh's infringement and its alleged entitlement to safe harbor under Section 512(c). Veoh nowhere explains how UMG's or the RIAA's other litigations are relevant to these issues, or how those litigations bear on UMG's credibility. Veoh either copied – directly or secondarily – UMG's copyrighted works, or it didn't. It is either entitled to Section 512(c)'s safe harbor, or it isn't. These issues do not turn on *UMG's* credibility, and thus the Court should grant UMG's motion.

### C. <u>Other Litigations Are Not Relevant To Veoh's Unclean Hands Defense</u>

Veoh argues that UMG's alleged "motive and refusal to cooperate with the DMCA" – in this litigation and others – are relevant to "inequitable conduct," and hence to Veoh's unclean hands defense. Such evidence is therefore admissible before the jury, according to Veoh. This argument fails for three independent reasons. First, unclean hands is an equitable defense and triable before the Court,

2096955 - 6 - UMG'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE REFERENCE TO OTHER LAWSUITS (MOTION IN LIMINE NO. 7)

not the jury, and is thus no justification for presenting such evidence to the jury. *See Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature"); *U.S. v. Kaczynski*, 551 F.3d 1120, 1129 (9th Cir. 2009) ("The doctrine of unclean hands is an equitable doctrine . . . ").

Second, the *Grokster* court expressly rejected Veoh's position. The defendant there alleged that the plaintiffs "acted inequitably by refusing to share" information that would assist the defendant in combating infringement. *Id.* at 1223. The court rejected this position, holding that the plaintiffs' "conduct was not inequitable." "Plaintiffs have taken the legal position . . . that StreamCast has the burden of effectively stopping infringement via Morpheus and that Plaintiffs are not required to assist in this process." *Id.* Further, "the law on this question is not fully clear, meaning the plaintiffs' legal position was objectively reasonable." Thus, the Court rejected "StreamCast's position that a copyright holder's assertion of what it plausibly believes to be its rights under an ambiguous statute can amount to an inequitable act." *Id.* (internal citations omitted).

Veoh simply restates Streamcast's rejected position. Veoh argues that because its understanding of the DMCA is correct, and UMG's is not, anything UMG did that is contrary to Veoh's understanding is inequitable. *Grokster* denied this circular argument.

Finally, Veoh never explains why UMG's alleged "motive and refusal to cooperate with the DMCA" as to other sites are relevant to UMG's "inequitable conduct" vis-à-vis Veoh. "To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted *against the defendant*; and (3) plaintiff's conduct *injured the defendant*." *Grokster*, 518 F. Supp. 2d at 1223 (citing *Survivor Productions LLC v. Fox Broadcasting Co.*, 2001 WL 35829270, *3 (C.D. Cal. June 12, 2001)) (emphasis added). UMG's or the RIAA's litigations are not

1  "against" Veoh and did not "injure" Veoh.  They are therefore irrelevant to an
2  unclean hands defense.

### D. <u>Evidence Of Other Litigations Is Inadmissible Under Rule 403</u>

Veoh argues that introducing evidence of other litigations will not waste time: "there will be no reason to go into the specifics of the alleged copyright infringements. . . . The key importance is the resulting business arrangements as a result of such lawsuits."  Opp'n at 4:26-28.  This is because – according to Veoh – "the evidentiary value of these lawsuits is that they demonstrate UMG's plan to drag out[3] expensive lawsuits for improper purposes, resulting in agreements that are not typical in today's business climate between content owns and service providers." *Id.* at 4:18-21.  This argument assumes that each and every entity against whom the UMG or the RIAA has litigated had a valid DMCA defense.  Put differently, Veoh can imagine no scenario in which an entity like itself could lack Section 512(c)'s protection, and thus each and every lawsuit stemmed from an improper purpose.  Because these sites are unquestionably innocent, Veoh argues, there will be nothing further to explain to the jury, and thus no waste of time.  The arrogance and lack of foundation to Veoh's argument is striking.[4]  Veoh has no grounds for its speculation that other entities are entitled to Section 512(c)'s protections, and introducing evidence of other suits *would* force UMG to explain why these entities stole its intellectual property and do not qualify for the DMCA's safe harbor.

---

[3] If Veoh intends to introduce evidence that UMG "plan[ned] to drag out expensive lawsuits," UMG will be forced counter with evidence from this suit that Veoh prolonged discovery, including by failing to produce its videos for one year, destroying metadata concerning those videos, and improperly withholding documents, as set forth in Section II *supra*.  This counter evidence will further lengthen the trial.

[4] And it further confirms what UMG said about Veoh's Motion for Summary Judgment: under Veoh's reading of the DMCA, no web service will ever touch the limits of Section 512(c), so long as it responds to a takedown notice.

Veoh is likewise wrong about the unfair prejudice of this evidence, and its own case law belies its claim.[5] The *Mathis* court noted that "a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant," particularly where the merits of such suits are contested. 269 F.3d at 776. This authority counsels against admitting evidence of other litigations.

### E. A Limiting Instruction Is Insufficient

Veoh argues that the Court may admit evidence of other litigations and offer an appropriate limiting instruction. This argument fails for two reasons. First, as set forth above, other litigations are not relevant to any claim or affirmative defense at issue. Thus a limiting instruction is inappropriate. Second, a limiting instruction will not sufficiently guard against the danger of unfair prejudice. Evidence of other litigations will color the jurors' evaluation of claims and defenses to which it is irrelevant. This evidence is unrelated to whether Veoh infringed UMG's copyrights or is entitled to Section 512(c)'s safe harbor, the central claims in this action. But if the jury accepts Veoh's groundless claim that UMG brings suits to "bankrupt fledgling industries," the evidence may color their verdict on these issues. That is unacceptable, and thus the Court should decline to permit this evidence with a mere limiting instruction.

### F. The Court Should Not Defer Its Ruling On UMG's Motion

There are no grounds for delaying ruling on UMG's motion *in limine*. Veoh no doubt requests a deferral so that it may present such evidence and sway the jury with its prejudicial effect—even if the Court ultimately declines to admit such

---

[5] Veoh cites *Van Deelen* as holding that "other suits were 'sufficiently similar in kind to the present suit as to be facially relevant to the limited purposes found to be proper above'" and not excludable on prejudicial grounds. Opp'n at 5:14-16. But the plaintiff's credibility in *Van Deelen* was central to resolution of the case, and the Court believed that his prior suits spoke to his credibility. *Van Deelen*, 2008 WL 4683022 at *4. Veoh does not and could not make a similar claim here. Its motion nowhere uses the term "credibility."

evidence. Both cases cited by Veoh – *Knudsen* and *Rambus* – delayed ruling on the issue of admissibility because the opposing party's proposed use of the evidence was uncertain. *Knudsen v. City of Tacoma*, 2008 WL 163667, *7 (W.D. Wash. Jan. 15, 2008); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 2951341, *12 (N.D. Cal. July 24, 2008).[6] There is no uncertainty here. Veoh's opposition sets forth its proposed use of this evidence: to suggest that UMG has engaged in "a large-scale plan to delay and force expensive litigation for its own improper business goals." Opp'n at 6:27-7:1. At no point does Veoh indicate any doubt about how it will use this evidence; it offers no purpose but to establish a baseless, inadmissible conspiracy theory. These are improper purposes designed to do nothing but inflame the jury. There are therefore no grounds for deferring ruling on UMG's motion.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should exclude evidence of UMG's or the RIAA's other litigations.

Dated: July 27, 2009

IRELL & MANELLA LLP
Steven A. Marenberg
Brian Ledahl
Benjamin Glatstein

By: /s/ Brian Ledahl
    Brian Ledahl

Attorneys for Plaintiffs

---

[6] In *Rambus*, the court ultimately concluded that the evidence was irrelevant. *Id.*