Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas P. Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant VEOH NETWORKS, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>VEOH NETWORKS, INC. *et al.*,<br><br>　　　　　Defendants. | ) **Case No. CV 07 5744 – AHM (AJWx)**<br>)<br>)<br>) **VEOH'S REPLY IN SUPPORT OF**<br>) **ITS MOTIONS *IN LIMINE* NOS. 1-7**<br>)<br>)<br>) Hearing Date:　　8/3/09<br>) Time:　　　　　10:00 a.m.<br>) Hon. A. Howard Matz<br>)<br>) |

**TABLE OF CONTENTS**

Page No.

I.     **INTRODUCTION** .................................................................................................. 1

II.    **THE COURT SHOULD GRANT VEOH'S SEVEN MOTIONS** .................. 1

       1.    UMG Should Be Precluded From Including Allegedly
           Infringing Videos That Are Not UMG's Music Videos .................. 1

       2.    UMG Should Be Precluded From Introducing Copies of
           Screenshots that Omit Certain Items that Would Appear to a
           Veoh User ..................................................................................... 8

       3.    UMG Should Be Precluded From Introducing Any
           Documents or Argument Specifying Any of Veoh's
           Investors ..................................................................................... 10

       4.    UMG Should Be Precluded From Introducing Any Evidence
           Regarding the Timing of Veoh's Implementation of Filtering
           Through Audible Magic .............................................................. 13

       5.    Evidence Constituting and Relating to Press Articles, Blogs
           and Communications From Veoh's Users (Other Than With
           Respect to the User's Own Alleged Infringement) Regarding
           Alleged Infringement on Veoh ................................................... 16

       6.    Evidence and Arguments that Support a Claim that Statutory
           Damages Should be Assessed by Any Means Other Than
           Per Compact Disc ("CD") .......................................................... 19

       7.    Evidence Constituting Veoh's Power Point Presentations
           and Other Internal Materials that Discuss or Refer to Music ........ 24

III.    **CONCLUSION** ........................................................................................ 25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bauman v. Volkswagenwerk Aktiengesellschaft,*
  621 F.2d 230 (6th Cir. 1980) ................................................................. 16

*Beech Aircraft Corp. v. Rainey,*
  488 U.S. 153 (1988)........................................................................... 9

*Bradley v. Pittsburgh Bd. of Educ.,*
  913 F.2d 1064 (3d Cir. 1990) ............................................................... 3

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994)........................................................................... 6

*Chemical Leaman Tank Lines, Inc. v. Aetna Cas*
  89 F.3d 976, 994 (3rd Cir. 1996). ........................................................ 7

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,*
  106 F.3d 284 (9th Cir. 1997) ......................................................... 22, 23

*Crawford v. United States,*
  212 U.S. 183 (1909).......................................................................... 9

*Doe v. U.S.,*
  976 F.2d 1071 (7th Cir. 1993) ............................................................ 18

*Dowling v. United States,*
  493 U.S. 342 (U.S. 1990) ................................................................. 18

*Fallaci v. New Gazette Literary Corp.,*
  568 F. Supp. 1172 (S.D.N.Y., 1983) .................................................... 12

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,*
  807 F.2d 1110 (2nd Cir. 1986) ...................................................... 11, 12

*Gamma Audio & Video, Inc. v. Ean-Chea,*
  11 F.3d 1106 (1st Cir. 1993).......................................................... 23, 25

*Hustler Magazine, Inc. v. Moral Majority, Inc.,*
  796 F.2d 1148 ................................................................................ 4

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Inc. v. MP3.com, Inc.*,
    109 F. Supp. 2d 223 (S.D.N.Y. 2000) .......................................................... 20, 21, 24

*Lenz v. Universal Music Corp.*,
    572 F.Supp.2d 1150 (N.D. Cal. 2008) .......................................................... 4, 5, 6

*Moe v. Avions Marcel Dassault-Breguet Aviation*,
    727 F.2d 917 (10th Cir. 1984) ..................................................................... 7

*Peer International Corp v. Luna Records Inc.*,
    887 F. Supp. 560 (S.D.N.Y. 1995) ............................................................. 12

*Perfect 10, Inc. v. CCBill LLC*,
    488 F. 3d 1102 (9th Cir. 2007) ........................................... 13, 14, 15, 19

*Perfect 10, Inc. v. CCBill, LLC et al.*
    488 F.3d 1077 (9th Cir. 2007) ................................................................... 14

*Playboy Enters., Inc.*,
    46 U.S.P.Q. at 1355-56 ............................................................................. 23

*Playboy Enters., Inc. v. Sanfilippo*,
    46 U.S.P.Q. 2d 1350 (S.D.Cal. 1998) ................................................... 23, 24

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ..................................................................... 16

*U.S. v. Ordonez*,
    737 F.2d 793 (9th Cir. 1984) ..................................................................... 17

*United States v. Castro-Cabrera*,
    534 F.Supp.2d 1156 (C.D. Cal. 2008) ......................................................... 9

*United States v. Millan*,
    230 F.3d 431 (1st Cir. 2000) ....................................................................... 9

*United States v. Soulard*,
    730 F.2d 1292 (9th Cir. 1984) ..................................................................... 9

*United States v. Washington*,
    12 F.3d 1128 (D.C. Cir. 1994) ..................................................................... 9

*Walt Disney Co. v. Powell*,
    897 F.2d 565 (D.C. Cir. 1990) ............................................................. 21, 22

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## STATUTES

17 U.S.C. § 107 ................................................................................................ 4

17 U.S. C. §§ 502-504 ..................................................................................... 20

17 U.S.C. § 504 ("Copyright Act") ................................................................ 20

17 U.S.C. § 504(c)(1) ................................................................................ 20, 24

17 U.S.C. §§ 512(c) and 512 (i) .................................................... 3, 14, 15, 19

17 USCS § 512(c)(3) (2009) ............................................................ 13, 14, 15

Copyright Act ............................................................................................. 4, 20

## OTHER AUTHORITIES

Fed. R. Evid. 106 ....................................................................................... 9, 10

Fed. R. Evid. 401 and 402 ............................................................................. 10

Fed. R. Evid. 403 ................................................................................... 7, 8, 13

Fed. R. Evid. 407 ........................................................................................... 16

Fed. R. Evid. 602 ........................................................................................... 17

Fed. R. Evid. 901(a) ...................................................................................... 17

Fed. R. Evid. 401-403, 407, 602 ..................................................................... 1

F.R.C.P Rule 26 ............................................................................................. 17

Charles A. Wright & Victor Gold,
   *31 Fed. Prac. & Proc. Evid.* § 7104 (2005)  ............................................. 17

WIGMORE, EVIDENCE § 283,
   at 175 (Chadbourn rev. 1979) ................................................................. 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In its opposition to Veoh's Motion *In Limine* Nos. 1-7, UMG fails to present any evidentiary value that would outweigh the significant concerns of prejudice, confusion and waste of time.  Pursuant to Federal Rules of Evidence[1] 401-403, 407, 602 and/or 901, and for the reasons stated in Veoh's Motions and herein, this Court should grant Veoh's Motions *in limine* to preclude Plaintiffs ("UMG") from introducing at trial any testimony or evidence regarding the seven matters at issue.

## II.    THE COURT SHOULD GRANT VEOH'S SEVEN MOTIONS

### 1.    UMG Should Be Precluded From Including Allegedly Infringing Videos That Are Not UMG's Music Videos

UMG complains that Veoh has failed to individually specify which of the 7,792 videos identified by UMG allegedly fall within the scope of this motion for exclusion. UMG's Opp. at p. 2:8-12.  Veoh attaches as Exhibit A to the Supplemental Declaration of Erin Ranahan, filed herewith, the specific videos that fall into each such category and a pie graph demonstrating the breakdown of these videos.[2]

After devoting considerable resources to reviewing all 7793 of the allegedly infringing videos, Veoh can confirm that only 2,217 files—or about 28%—are actual commercially-produced UMG music videos of the type one would expect to find on MTV, VH1, BET, etc.  The remaining 4,824—or 62%—are not music videos or videos bearing any identifiable connection whatsoever to UMG at all, while the remaining 10% are either deadlinks or duplicate sites.  (Ranahan Decl. ¶ 2 and Exh. A).

---

[1] All further statutory references are to the Federal Rules of Evidence unless otherwise noted.
[2] Veoh's analysis was based on the list of alleged infringements that UMG provided on May 11, 2009, the last day of the discovery period.  Just last Friday, on July 17, 2009, UMG once again amended its list of alleged infringements (marking the fourth time UMG has amended its list of infringements), this time purporting to remove certain duplicates and other videos that were erroneously included on its list, and numerous other videos.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

These videos, which are irrelevant to UMG's claim that Veoh was somehow capable of identifying UMG's copyrighted work and should have been reasonably on notice of the alleged infringements posted on its site consist of:

- 2,862 files (37%) that contain either clips from animated Japanese cartoons ("anime") or slideshows of Japanese comics ("manga"), generally set to music;
- 428 files (5%) classified as "video games," which contain either footage of video games or computer generated animation set to music;
- 634 files (8%) contain clips taken from TV shows, movies, or sports with music in the background;
- 433 files (6%) are homemade videos with music in the background (for example, a singing hand puppet, a man doing yoyo tricks, a child dancing in a hallway, etc.);
- 322 files (4%) are homemade slideshows of photographs, set to music;
- 79 files (1%) are pornographic in nature, meaning they either contain pornography (almost exclusively soft-core) or contain sexually explicit images or advertisements for pornographic websites;
- 26 files (<1%) are actual advertisements for products; and
- 40 files (1%) are simply images or backgrounds set to music.

None of these 4,824 videos bear any identification to indicate that the videos contain UMG's copyrighted works. Since UMG never bothered to notify Veoh of any infringing videos until over a year into this lawsuit (and Veoh took down those noticed by the RIAA) Veoh could not possibly know these videos contained UMG's alleged content.

       a.    <u>Evidence of Non-Music Videos Are Irrelevant and Their Exclusion Does Not Constitute Establishing a DMCA Defense</u>

UMG claims that by trying to exclude "the very evidence of Veoh's copyright infringement," Veoh is improperly launching a motion for summary judgment under

2

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

the guise of a motion *in limine*. Veoh is not seeking to exclude "the very evidence" of alleged infringement of UMG's copyrights, it is merely seeking to exclude 62% of the disclosed video files that Veoh would have no way to reasonably identify as UMG's copyrighted content. Veoh is simply requesting that the Court limit the overly broad group of video evidence offered by UMG. *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) ("Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.").

Contrary to UMG's claims, if the Court grants Veoh's motion *in limine* to exclude these videos, Veoh will not somehow automatically establish its DMCA defense without shouldering its burden of proof under 17 U.S.C. §§ 512(c) and 512 (i). Veoh will still need to prove its defense at trial with regards to the 28% potentially commercially-produced alleged UMG music videos by demonstrating that Veoh qualifies for the safe harbor provision because it: (1) acted promptly when it gained actual knowledge of alleged infringements; (2) was not aware of any "red flags;" (3) does not have the right nor ability to control the allegedly infringing activity; (4) did not receive a financial benefit attributable to the alleged infringement; and that it (5) maintained a valid repeat infringer policy. Of course, Veoh has already set forth its arguments on these points with respect to *all* of UMG's alleged infringements in its Motion for Summary Judgment, currently pending before this Court. The exclusion of irrelevant evidence would only narrow the scope of the evidence to a more relevant level for trial.

        b.    <u>Exclusion of Non-UMG Videos Does Not Constitute Establishing a Fair Use Defense Via Motion *in Limine*</u>.

Even if some of these video files contain snippets of UMG's music, a large portion should be excluded because they are vulnerable to a fair use defense under 17 U.S.C. § 107. As UMG has noted in footnote 2 of its opposition, Section 107 of the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Copyright Act provides four separate non-exclusive factors to determine whether alleged copyright infringement is fair use (and thus not infringing): (1) purpose and character of the use, including whether such use is of a commercial nature and whether the work transforms the original; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1151-56.

Veoh has identified specific videos that would be subject to a viable fair use defense with respect to these elements. Ranahan Decl. ¶ 2 and Exh. A. Contrary to UMG's cursory, conclusory footnote that all videos would not meet the four elements to establish a fair use test, thousands of the alleged infringing videos are obviously *not* commercial in nature; are plainly transformative; use only portions of UMG's alleged works and have no impact on the potential market for or value of the copyrighted work. If evidence of these videos were allowed, the Court and the parties would be forced to undergo an individual fair use analysis balancing the fair use elements with respect to these 4,824 videos, including, for example, 433 files (6%, as stated above) that are homemade videos with music in the background (as stated above); 322 files (4%, as stated above) that are homemade slideshows, set to music, which range from political or religious messages to memorial tributes to loved ones that have passed away; 17 files (<1%) that are classified as "brief," meaning they may show parts of a music video or play parts of a song, but the file ends after only a short period. *See e.g., Lenz v. Universal Music Corp.*, 572 F.Supp.2d 1150, 1156 (N.D. Cal. 2008) (where viable fair use defense applied to a homemade video of an infant dancing to a Universal-owned song posted on YouTube, court denied Universal's motion to dismiss claims against it alleging bad faith and deliberate ignorance under the DMCA).

As the *Lenz* court noted in denying Universal's motion to dismiss claims against it that it acted in bad faith under the DMCA, it is the burden of the copyright owner to investigate whether a viable fair use defense exists before even sending a DMCA takedown notice:

> Though Congress did not expressly mention the fair use doctrine in the DMCA, the Copyright Act provides explicitly that "the fair use of a copyrighted work ... is not an infringement of copyright." 17 U.S.C. § 107. Even if Universal is correct that fair use only excuses infringement, the fact remains that fair use is a lawful use of a copyright. Accordingly, in order for a copyright owner to proceed under the DMCA with "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," the owner must evaluate whether the material makes fair use of the copyright. 17 U.S.C. § 512(c)(3)(A)(v). An allegation that a copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine thus is sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA. Such an interpretation of the DMCA furthers both the purposes of the DMCA itself and copyright law in general. In enacting the DMCA, Congress noted that the "provisions in the bill balance the need for rapid response to potential infringement with the end-users [sic] legitimate interests in not having material re-moved without recourse." Sen. Rep. No. 105-190 at 21 (1998).
>
> *Id.* at 1154-55.

Because the Universal defendant in *Lenz* failed to evaluate whether the plaintiff had a fair use defense before issuing a takedown notice, and the plaintiff of the home video was required to submit a counter-notice and hire counsel in response to the takedown of the plaintiff's home video of her children dancing in the kitchen, the court found the plaintiff had stated a claim against Universal under the DMCA. *Id.* Though

5

here, UMG never sent Veoh a single DMCA takedown notice like Universal sent the plaintiff in *Lenz*, the holding of *Lenz* likewise applies in that UMG should have diligently reviewed the allegedly infringing videos prior to asserting them in this action, to determine if there was a viable fair use defense. Because there are countless home videos just like the videos found to have a viable fair use defense in *Lenz*, it is clear that UMG did not undertake this obligation, once again shirking its obligations under the DMCA.

UMG also argues that the nature of the postings mentioned above fall squarely within the core intended copyright protection, but this overstates the represented works in the 7,792 as a whole. In support, UMG cites to *Campbell v. Acuff-Rose Music, Inc.*, which addressed a rap artist's defense of parody. There, the Supreme Court noted that even where a work includes the original and creative expression falling within "the core of the copyright's protective purposes" (such as a copyrighted song) fair use may still apply to eliminate the infringement. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). Thus, the nature of a copyrighted work (and the fact that portions of UMG's alleged works may be included in the allegedly infringing files) is not always a deciding factor in a fair use analysis.

Veoh has identified thousands of videos that contain only a portion of the song and that are transformative in nature. UMG also argues that the effect of "Veoh's infringement has undoubtedly harmed the potential market for UMG recordings and musical compositions." This bald face assertion refers to the 7,792 disclosed files as a whole, without considering the non-commercial non-professional fair use videos that are posted on Veoh by members of the public. It is ludicrous for UMG, having obviously failed to view the videos itself (and failed to notify Veoh) to flatly contend that the videos share anything in common.

In any event, Veoh's point is not to engage in proof of its fair use defense in this motion, but rather to signify to the Court that its pursuit will present viable fair use defenses for 4,824 videos, and that the only adequate way to evaluate the fair use

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

defenses would be to litigate on a per video basis. This would require that the four fair use factors be applied separately to the 4,824 videos that are not actual UMG music videos. Under Rule 403, this Court has the authority to exclude such evidence for considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See, e.g., Chemical Leaman Tank Lines, Inc. v. Aetna Cas.* and *Sur. Co*., 89 F.3d 976, 994 (3rd Cir. 1996) (granting motion *in limine* to exclude evidence relating to plaintiff's environmental problems at other facilities it operated under Rule 403, because "for the jury properly to evaluate this evidence, a series of mini-trials relating to each site would have been required . . . [which] would cause undue delay and mislead and confuse the jury as to the ultimate factual issue"); *Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 935 (10th Cir. 1984) (affirming motion *in limine* to exclude evidence of other incidents, where such evidence's probative value was outweighed by the danger of unfair prejudice, confusion of issues and misleading the jury, and would constitute a mini-trial within a trial, resulting in undue delay, waste of time, and needless presentation of cumulative evidence).

Rather than waste time in the presentation of an individual fair use defense with respect to thousands upon thousands of videos, Veoh asks this Court to exclude at least the categories of video files that present a viable fair use because otherwise the Court would be forced to undergo an individual mini-trial with respect to each of these 4,824 videos. UMG does not and cannot dispute this fact. Especially when considering the low probative value of these videos that Veoh had no way of knowing were allegedly infringing—conducting mini-trials with respect to Veoh's fair use defense for 4,824 separate videos would be an incredible waste of time.

          c.    <u>Additional Videos Should Be Excluded Due to Lack of Probative Value and Risk of Prejudicial Effect.</u>

Allowance of all 7,792 video files into evidence—or even reference to them— would create an unnecessary prejudicial effect that would lead to confusion of the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

issues and mislead the jury. *See* Rule 403. UMG should not be allowed to bolster its figure of claimed infringements with such clearly irrelevant videos, including, for example:

- 356 files (approximately 5%) which are duplicate URL addresses.

If anything, these videos show the difficulty identifying alleged infringement and the haphazard disclosure of UMG's discovery, an attempt to shift infringement policing responsibility to Veoh, despite the goals of DMCA. *See supra* n.1. UMG should not be allowed to inflate its number of claimed infringements by counting some files twice.

For the reasons stated above, UMG should be precluded from introducing evidence of—or referring to—all 7,792 video files of alleged infringing content because many of them are irrelevant to the claims it is pursuing, it would cause a significant waste of time, and such an overly inclusive number of videos would be unnecessarily burdensome to the Court and misleading to the jury during trial.

**2. UMG Should Be Precluded From Introducing Copies of Screenshots that Omit Certain Items that Would Appear to a Veoh User**

UMG does not explain what, if any, probative value would exist in presenting manipulated evidence to mislead the jury into believing an exhibit was an accurate screenshot when admittedly it is not. As stated in Veoh's Motion, UMG has introduced screenshots as exhibits that do not appear as they would to a Veoh user. These screenshots did not appear as they would to a Veoh user because they fail to identify the permalink of the video, which would typically appear in the URL of the webpage, and is a tool for a user to identify the video. This permalink—omitted from UMG's proposed exhibits—is the tool for a copyright owner to identify a potentially infringing file. UMG should be precluded from introducing this incomplete and misleading evidence because it has no probative value. The Rule of Completeness, codified in Rule 106, explicitly requires that when a party seeks to introduce only a portion of a document, and a misunderstanding or distortion can be averted only

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

through presentation of another portion of the document, the material required for completion is relevant and admissible. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 172 (1988); Fed. R. Evid. 106 advisory committee's note ("The rule is based on two considerations. The first is the misleading impressions created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial."). Rule 106 is normally premised on admitting complete evidence, as opposed to excluding incomplete evidence. *United States v. Soulard,* 730 F.2d 1292, 1301 (9th Cir. 1984). However, courts have regularly relied on Rule 106 to exclude incomplete evidence. *United States v. Castro-Cabrera,* 534 F.Supp.2d 1156, 1159-60 (C.D. Cal. 2008) (holding that partial statement regarding defendant's citizenship would be excluded if the full statement was not introduced); *United States v. Millan,* 230 F.3d 431, 435 (1st Cir. 2000) (upholding district court's decision to exclude excerpts from an agreement where the trial court required introduction in full or not at all); *United States v. Washington,* 12 F.3d 1128, 1137 (D.C. Cir. 1994) (affirming trial court's decision to exclude excerpts of witness' prior statement, where the trial court required introduction of whole statement or nothing); *Crawford v. United States,* 212 U.S. 183, 198-200 (1909) (failure to admit defendant's reply to letter of accusation required exclusion of accusatory letter).

There is no probative value in introducing screenshots which a Veoh user would not have seen when they visited its site. Furthermore, screenshots presented inaccurately have the potential to mislead the jury into believing that it is more difficult to identify and notify Veoh of suspected infringing works than it actually is. Fed. R. Evid. 106; 403. UMG presents no reason why it is unable to simply offer screenshots in a complete and accurate manner. UMG also claims that Veoh fails to offer any explanation for why the screenshots' failure to identify the "permalink" of the video contained in the URL of the webpage would be unfairly prejudicial. *Id.* This is plainly false. Veoh's motion clearly explained why the "permalink" information is important and necessary, and why screenshots which exclude the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

information unfairly prejudice Veoh: "[p]resenting screenshots in an inaccurate manner by omitting identifying information has the potential to mislead the jury into making it seem more difficult than it actually is for users to identify and notify Veoh of suspected infringing work." (Mot. at p 5:4-7).

In its opposition, UMG attempts to argue that these screenshots should be admitted simply because Veoh's witness was able to authenticate them. UMG's Opp. at 6. The witness was obviously looking at the content of what was included on the screenshot. The witness was *not* asked whether the exhibit contained all items that a viewer accessing Veoh would encounter when viewing the page. Thus, this purported "authentication" has nothing to do with the basis for Veoh's efforts to preclude incomplete evidence. Thus, UMG should be precluded from introducing screenshots into evidence that do not appear in the same context as they would to a Veoh user.

### 3.     UMG Should Be Precluded From Introducing Any Documents or Argument Specifying Any of Veoh's Investors

UMG has repeatedly attempted – and failed – to haul Veoh's investors into this case. (*See* UMG's First Amended Complaint (Dkt. No. 104); UMG's Second Amended Complaint (Dkt. No. 308); Order Granting Investor Defendant's Motion to Dismiss with Prejudice, Dkt. No. 434.) Introducing any reference to Veoh's investors, including communications with them, has no bearing on the issues or rights of the parties in this case. Fed. R. Evid. 401 and 402. Introducing any documents that constitute communications with Veoh's investors or refer to the investors would also lead to prejudice.[3]

UMG's opposition sets forth a number of ill-conceived arguments as to why the identity of Veoh's investors should be introduced into this case, and ignores that communications from investors, when shown in full context, simply confirm Veoh's

---

[3] The fact that Veoh has included certain witnesses and documents that are connected or refer to the investors should have no bearing on this action, as such have all been subject to the Court's rulings on its motions *in limine,* and Veoh will of course abide by any rulings by adjusting its witness and exhibit lists to conform to such rulings.

10

efforts to prevent infringement. Contrary to UMG's claims, the communications that UMG seeks to introduce do not have any legal significance with regards to the "willfulness" of Veoh's alleged infringement at issue. As explained below, the cases that UMG cites to allegedly support this proposition are misconstrued and misrepresented.

        a.    <u>The identity of the investors are not relevant to willfulness</u>

UMG asserts in its reply that because "Veoh is owned and controlled by sophisticated businesspeople who have deep experience with copyrighted content" the identity of Veoh's investors is relevant to willfulness. UMG's Opp. at 8. The case law that UMG relies on for this assertion, however, does not support this point, and none of the cases cited by UMG support the notion that the identity or beliefs of third parties who have been dismissed from the case is somehow relevant to willfulness.

For example, UMG cites *Fitzgerald Publ'g Co. v. Baylor Publ'g Co*., 807 F.2d 1110, 1115 (2nd Cir. 1986), where the court found that the defendant, a professional publisher, "must have realized the unlawfulness of its conduct" when it was engaged in "deceptive conduct" in arranging for the manufacturing and distributing of copyrighted products.

Yet in *Fitzgerald Publ'g,* the purported "deceptive conduct" was by the defendant itself—not the conduct of a third party who had been dismissed from the case like the investors here. Moreover, there is absolutely no evidence that any of the investors engaged in any "deceptive conduct" here. Conversely, the evidence simply shows that the investors sought to comply with Veoh's DMCA policies. The *Fitzgerald* case also made no mention of the conduct of any third parties, let alone celebrity or well-known third parties. In other words, *Fitzgerald* fails to present any reason why the identity of Veoh's investors bears any relevance at all.

UMG also relies on *Peer International Corp v. Luna Records Inc*., 887 F. Supp. 560, 568 (S.D.N.Y. 1995) where copyright infringement was found willful when a music publishing executive continued using copyrighted material after receiving

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

notice revoking his license to use the material. Here, there has been no allegation that any of the investors continued to use copyrighted material after receiving notice of such allegedly infringing items, and certainly no allegation with respect to the specific alleged infringements at issue in this action. Thus, there is nothing remotely similar about *Peer International Corp.* to the facts in this case.

Finally, UMG relies on *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y., 1983), where court held that the publisher of a copyrighted newspaper "was or should have been aware that unauthorized reproduction of a newspaper article constituted copyright infringement." The circumstances are quite different in an internet video site; the executives of the company were not consciously publishing unauthorized content; rather, users were responsible for uploading the allegedly unauthorized content at issue.

UMG also points out that Veoh's investors are media or entertainment executives. This is precisely why there is a concern that the jury may be unfairly swayed by the identity of the investors in rendering their decision in this case. UMG has categorically failed to cite any case where the identity of investors was relevant to a copyright infringement action, and has not made a showing of the investors' relevance to the case other than to unfairly prejudice and mislead the jury. The prejudice accorded to Veoh by their inclusion in the case would far outweigh the probative value of its inclusion; UMG's true motivation has nothing to do with probative facts and instead is designed to create an end run around the Court's rulings.

### b. Investor/Owner Communications Are Irrelevant

In the limited instances where investors were directly notified of alleged infringements, the full context confirms, without fail, that Veoh immediately removed such works from its site. The "red flags" that UMG alleges are nothing more than red herrings, as none have to do with any of the alleged infringements in this action. Whereas UMG asserts the snippets of emails in their Opposition demonstrate that there were numerous "red flags," they instead do no more than demonstrate that there

12

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

may have been concerns over copyrights and their use, a natural concern for a video site. The Ninth Circuit has set a high bar to find these "red flags," especially with regards to the Congressionally mandated notice requirement. *Perfect 10, Inc. v. CCBill LLC*, 488 F. 3d 1102, 1114 (9th Cir. 2007). Communications such as those cited in UMG's Opposition are do not even approach the standard set forth by 17 USCS § 512(c)(3) (2009).

These communications are also not relevant to showing any direct financial benefit received by Veoh. UMG's reliance on the quote that there was "a major drop" in Veoh's traffic as a result of the installation of the Audible Magic filter to prove that there was a direct financial benefit derived from the infringing activity is misguided. This communication is merely reporting on steps Veoh has taken to prevent suspected infringement, which is a far cry from an example of Veoh benefiting financially from infringement.

These communications must be precluded; *none* are related to any of the alleged infringements in this action, and only serve to exacerbate the prejudice and increase the risk of confusing the jury. Fed R. Evid. 403. UMG's repeated efforts to mislead the jury into believing that Veoh's investors provide the company with substantially more assets than it has, as well as its misguided attempt to convince the court that "willfulness" is proven by the communications with said investors, should be rejected.

### 4. UMG Should Be Precluded From Introducing Any Evidence Regarding the Timing of Veoh's Implementation of Filtering Through Audible Magic

UMG's argument that Veoh should have implemented Audible Magic's automated filtering sooner than it did fails to address the relevant case law, which specifically rejects UMG's arguments for good reason: to adopt UMG's view of the world would punish service providers like Veoh for attempting to combat

infringement, a result the DMCA's legislative history makes clear that Congress did not intend.

a. <u>Veoh's Timing In Implementing Audible Magic Is Irrelevant To Knowledge</u>

UMG seeks to introduce evidence that the timing of Veoh's implementation of Audible Magic filtering supports that Veoh engaged in willful blindness. Veoh had originally devoted its resources to attempting to develop its own filtering software, and adopted a third party service when it became apparent it would be more feasible to do so, and had run its entire database through the filter in a matter of months. The DMCA imposes no obligation upon a service provider to monitor its service or affirmatively seek facts indicating infringing activity, and courts should not conclude that the service provider loses eligibility for safe harbor solely because it engaged in a monitoring program. Veoh, at its own expense, went above and beyond what the safe harbor requires and implemented third party filtering in an attempt to keep infringing material off its site. It would be ludicrous if Veoh's own efforts to do UMG's job for it could be used against it.

The Ninth Circuit's decision in *CCBill* makes clear that "[n]otice that fails to substantially comply with §512(c)(3) cannot be deemed to impart" so called red flag awareness pursuant to Section 512(c)(1)(A)(ii). *Perfect 10, Inc. v. CCBill, LLC et al.* 488 F.3d 1077, 1114 (9th Cir. 2007). "Notification" by Audible Magic does not comply with Section 512(c)(3), and cannot be deemed to impart red flag knowledge of infringements. With respect to termination of users identified by Audible Magic's filter, *CCBill* establishes that a service provider must only terminate users under circumstances specified in Section 512(c), and with respect to notifications of claimed infringement that meet the requirements of Section 512(c)(3):

> To identify and terminate repeat infringers, a service provider need not affirmatively police its users for evidence of repeat infringement. . . Were we to require service providers to terminate users under circumstances

other than those specified in § 512(c), § 512(c)'s grant of immunity
would be meaningless. This interpretation is supported by legislative
history. See H.R. Rep., at 61 (Section 512(i) is not intended 'to
undermine the … knowledge standard of [§ 512](c).)

*Id.* at 1111.

As Veoh was never obligated to affirmatively police its site, and its
implementation was above and beyond its obligations under the law, the timing of
implementation should not be used against Veoh.

b.    Veoh's Timing In Implementing Audible Magic Is Irrelevant
      To The Right And Ability to Control

Audible Magic did not provide Veoh with the practical ability to control the
infringements alleged by UMG. As explained in Veoh's motion for summary
judgment, of the first batch of 1,591 videos identified by UMG as infringing, 311
videos had already been independently run through the Audible Magic filter, but had
not matched and were still available on Veoh. Veoh's Motion for Summary Judgment
(Dkt. No. 470) at 10-11. This fact is undisputed by UMG. Veoh's Response to
UMG's Statement of Genuine Issues (Dkt. No. 473) ("RSGI") ¶ 65. It is unclear why
Audible Magic's filter did not identify hundreds of works alleged by UMG as
infringing in this action. Audible Magic's filtering system is dependent upon
matching against a library of content provided by content owners.

c.    The Timing of Veoh's Implementation of Audible Magic Is
      Precisely The Type of Subsequent Remedial Measure that
      Rule 407 is Designed to Preclude From Evidence

UMG's opposition confirms that it is intending to use the timing of Veoh's
implementation of Audible Magic in the precise means that Rule 407 is designed to
prevent. Specifically, though UMG has cited no authority that Veoh was actually
obligated under the DMCA or otherwise to introduce filtering at all, UMG asserts that
the delayed implementation of Audio Magic illustrates Veoh's "ability to control

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

infringing activity and its knowledge of infringing activity through willful blindness." UMG's Opp. at 16. But Rule 407 explicitly prohibits the introduction of evidence of measures that if taken previously would have made the harm less likely if used to show culpable or negligent conduct. Fed. R. Evid. 407; *see also Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 233 (6th Cir. 1980).

Here, Veoh has not contested that Audible Magic is feasible;[4] indeed, it has implemented the technology. The fact that Veoh did not use Audible Magic prior to 2007, however, is irrelevant because it was not an obligation. Nevertheless, UMG seeks to introduce this evidence in hopes of undermining the precautions that Veoh was utilizing prior to 2007. This is just the sort of irrelevance Rule 407 is designed to protect against. WIGMORE, EVIDENCE § 283, at 175 (Chadbourn rev. 1979). In other words, if other precautionary measures were available to Veoh does not speak to Veoh's ability or unwillingness to control infringing activity. *Pugh v. Tribune Co*., 521 F.3d 686, 695 (7th Cir. 2008) (the fact that subsequent remedial measures were taken does not suggest that earlier measures were unreasonable).

Veoh's Motion *In Limine* No. 4 should be granted.

**5.      Evidence Constituting and Relating to Press Articles, Blogs and Communications From Veoh's Users (Other Than With Respect to the User's Own Alleged Infringement) Regarding Alleged Infringement on Veoh**

UMG has repeatedly cited to uncorroborated statements made by third parties that allege infringement by Veoh. These statements are entirely different from the infringement alleged by UMG. This evidence is irrelevant, is clearly hearsay, and serves no purpose other than to unfairly prejudice the jury into believing Veoh had notice of the infringement alleged in this case when it did not.

---

[4] Moreover, UMG has not provided any competent evidence that it would have been feasible to implement Audible Magic at an earlier time. (*See* Veoh's Motion *In Limine* to Exclude UMG's Expert Horowitz, filed 7/6/09 and Veoh's Reply re same, filed 7/27/09, *passim*).

This evidence also suffers from a myriad of evidentiary infirmities, chief among them that UMG will be unable to authenticate these documents under Rule 901 or properly lay a foundation pursuant to Rule 602. The Federal Rules of Evidence require authentication as a prerequisite to the admission of documentary evidence, which is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Thus, "Rule 901(a) implicitly authorizes a court to exclude evidence where this rule is not satisfied." Charles A. Wright & Victor Gold, 31 Fed. Prac. & Proc. Evid. § 7104 (2005). The Ninth Circuit has held that the mere fact that a document is within the possession of a party is insufficient to admit it into evidence. *U.S. v. Ordonez,* 737 F.2d 793, 801 (9th Cir. 1984). Thus, UMG's insistence that because communications from third parties were within Veoh's possession and thus somehow renders them authentic fails to satisfy the authentication requirement.

Neither in accordance with Rule 26 nor in interrogatory responses has UMG disclosed that it will call any of the authors of these articles or communications as witnesses, nor has Veoh had the opportunity to depose these witnesses. UMG cannot begin to cure the evidentiary infirmities associated with this evidence unless it calls these authors as witnesses (assuming relevance) because it will be unable to authenticate or lay the proper foundation for these documents without them.

UMG attempts to argue that this evidence is somehow admissible because Veoh has not proved that this evidence is not authentic. UMG's Opp. at 16. This argument turns the Rules of Evidence on its head and is an attempt by UMG to avoid its burden. As the party offering the evidence, it is up to UMG to articulate for the Court why its evidence should be admitted. *See e.g., Dowling v. United States,* 493 U.S. 342, 351 (U.S. 1990); *Doe v. U.S.,* 976 F.2d 1071, 1079 (7th Cir. 1993) ("[H]earsay not within an enumerated exception is presumptively unreliable, and the burden of overcoming that presumption falls on the party seeking to introduce the evidence."). Veoh does not have the burden of proving why the evidence should not be admitted. *Id.* Thus,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

regardless of whether Veoh has proven that the evidence is not authentic, UMG must prove that it is. UMG cannot do so and its opposition brief does not dispute this. Furthermore, nowhere in its opposition brief does UMG contest Veoh's argument that the evidence lacks the proper foundation.

UMG also attempts to argue that there is no hearsay issue with this evidence because it does not offer it for the truth of the matter asserted (which of course it is doing). UMG's Opp. at 17. But at the same time, UMG maintains that these vague allegations of copyright infringement would somehow provide notice to Veoh of the specific copyrights at issue in this case. *Id.* UMG goes further by attempting to argue that because it is not allegedly submitting the evidence for the truth of the matter which it asserts, the credibility of the statements somehow does not factor into whether it is admissible. *Id.* These arguments are also wholly without merit. Unless UMG offers the evidence for the truth of the matter asserted, it has no relevance. If, as UMG claims in its opposition, the statements made by Veoh's users cannot be shown to be true, than they likewise cannot be found to provide any sort of adequate notice to Veoh of allegedly infringing works at all. Given that UMG has not even alleged that any of these unauthenticated documents relate in any way to copyrights at issue in this case, this evidence is irrelevant.

Finally, UMG claims that evidence that does not specifically concern the infringements at issue may still be used to prove awareness for purposes of the Section 512(c). UMG's Opp. at 17. In asserting this argument, UMG cites the Ninth Circuit's decision in *Perfect 10* which remanded to the district court the issue of whether DMCA notices from third parties were sufficient to provide fair warning. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1114–15 (9th Cir. 2007). This decision does not stand for the proposition which UMG claims it does. Instead, it merely requires the court to consider the nature of third party allegation to determine whether they may provide fair warning. *See id.* In the present case, the nature of the third party allegations, which are vague and unsubstantiated, and do not address the alleged

1    infringement at issue, could not have provided fair warning as contemplated by

2    Section 512(c).  They are not relevant.  UMG's arguments regarding this evidence are

3    wholly without merit.  Veoh's motion in limine should be granted.

4        **6.**     **Evidence and Arguments that Support a Claim that Statutory**

5             **Damages Should be Assessed by Any Means Other Than Per**

6             **Compact Disc ("CD")**

7             a.      This Issue Is Properly The Subject of a Motion *In Limine*

8        As a preliminary matter, UMG claims that it is "not clear" that this issue is

9    properly subject to a motion *in limine*.  UMG proposes no alternative about how this

10   issue would be more appropriately resolved, but given that it presents a pure legal

11   question (that UMG has yet to bring before the Court advocating its own counting

12   methodology on a summary judgment motion or otherwise) it makes no sense to waste

13   the jury's time listening to needless and prejudicial reasons about why the works

14   should be calculated per song if indeed this Court is inclined to follow the cases that

15   have already dealt with this issue and decided that works for purposes of statutory

16   damages should be calculated per CD.  Resolving this on a motion *in limine* allows

17   the Court to save resources and better streamline the trial.  There is no reason to allow

18   evidence of a method of counting statutory damages that is not grounded in fact or

19   law.  Veoh's Motion No. 6 is undoubtedly properly subject to an a motion in *limine,*

20   and should be granted.

21           b.      UMG Elected To Pursue Statutory Damages Per "Work"

22                   And Register Its Compilations On A Per CD Basis

23       The Copyright Act provides that the copyright owner may elect "an award of

24   statutory damages for all infringements involved in the action, with respect to any one

25   work. . . ."  17 U.S.C. § 504(c)(1) (emphasis added).  The Copyright Act goes on to

26   say "[f]or the purposes of this subsection, all the parts of a compilation or derivative

27   work constitute one work."  17 U.S.C. § 504(c)(1) (emphasis added).  Statutory

28   damages do not affect the protection of copyrightable works, they are just one of the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

numerous potential remedies.  See 17 U.S.C. §§ 502-504.  The Copyright Act does not limit other remedies to one award per compilation.  *See id.*  As such, had UMG thought it better to receive damages based on each sound recording, UMG should have elected to actual, not statutory, damages.  *See UMG recordings, Inc. v. MP3.com, Inc.*, 109 F. Supp. 2d 223 (S.D.N.Y. 2000).  Nevertheless, UMG freely chose statutory damages.  UMG is only permitted one award per CD based on the federal Copyright Act.

UMG's suggestion that this Court should grant an award of statutory damages for each sound recording Veoh may be found to have infringed is disingenuous at best.  UMG knew when it elected statutory damages that the plain language of the Copyright Act states that one award of statutory damages may be given for each compilation or works, and that CDs are compilations of sound recordings.  17 U.S.C. § 504 ("Copyright Act").  Nevertheless, as a means to inflate the potential statutory damages at issue by exponential proportions, UMG now argues that the relevant "work" unit for purposes of computing statutory damages is each individual, copyrighted song on each CD, as opposed to each copyrighted CD as a whole.  UMG suggests that it should be entitled to recover statutory damages for each individual song despite the fact that the court rejected UMG's attempt to do so in *UMG Recordings, Inc. v. MP3.com, Inc*., 109 F. Supp. 2d 223 (S.D.N.Y. 2000) (finding statutory damages should be assessed per CD, not per song).  UMG has presented no reason to compel a different outcome here.

        c.    <u>The Independent Economic Value Test Does Not Compel A Different Result</u>

Notwithstanding this, UMG attempts to convince this Court to apply the D.C. Circuit's "independent economic value test" without presenting any evidence that individual sound recordings had independent economic value during the period of alleged infringement in an effort to improperly expand Veoh's statutory liability beyond what is appropriate under the plain language of the statute.  UMG argues that

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

whether each infringed song is entitled to its own award of statutory damages, though
UMG cites to no case where this test has been applied in the context of CDs vs.
individual songs.

> (1)  The Independent Economic Value Test, as Set Forth by
> the D.C. Circuit in *Walt Disney,* Is Inapplicable

The independent economic value test, as set out in *Walt Disney Co. v. Powell*,
897 F.2d 565, 569 (D.C. Cir. 1990), states that:

> separate copyrights are not distinct works unless they can live their own
> copyright life . . . where separate copyrights have no separate economic
> value, whatever their artistic value, they must be considered part of [a] . .
> . work for purposes of the copyright statute. . . . [I]n order to qualify for a
> separate minimum award, the work which is the subject of a separate
> copyright would have to be in itself . . . . viable.

*Id.*

In *Walt Disney Co.,* the court applied the independent economic value test to six
separately-copyrighted pictures of Mickey Mouse and Minnie Mouse in various poses
and found that "[w]hile Mickey and Minnie are certainly distinct, viable works with
separate economic value and copyright lives of their own . . . Mickey is still Mickey
whether he is smiling or frowning, running or walking, waving his left hand or his
right. . . Powell's mouse-face shirts infringed only two of Disney's works."

The Ninth Circuit has *never* applied the independent economic value test to the
evaluation of statutory damages relating to songs and CDs, nor has any other court.
The Court should not extend the limited doctrine here, especially when other courts
that have considered this issue have found that a "work" constitutes the compilation of
a CD-- not each individual song.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(2) The Independent Economic Value Test, as Set Forth by the D.C. Circuit in *Walt Disney,* Even if Applied, Would Fail

Even if the Court does consider the independent economic value test in this case, the songs on each CD should be treated the same way as the pictures were treated in *Walt Disney Co.*  In *Walt Disney Co.*, Mickey Mouse's economic value was not held to be contained in one pose; Mickey Mouse's economic value comes from the character as a whole, the compilation of these poses.  Likewise, the value of a musical artist's work is not contained in an individual song.  The economic value comes from the compilation of songs distributed in the form of a CD.  This is apparent from UMG's practice of hiring artists for a full CD.

(3) The Ninth Circuit's Application of the Independent Economic Value Test in *Columbia Pictures Television* Is Wholly Distinguishable

The only Ninth Circuit case to which UMG cites in support of its argument that the independent economic value test applies is *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 295-96 (9th Cir. 1997); *See also Gamma Audio & Video, Inc. v. Ean-Chea,* 11 F.3d 1106, 1116-17 (1st Cir. 1993) (considering whether statutory damages for various episodes of a television series should be assessed per episode or as one work based on the independent economic value test.)  *Columbia Pictures Television* involved television episodes that were "broadcast over the course of weeks, months, and years." *Id*. at 295.  The court found it significant that the tapes of the television series each contained only a few episodes; that consumers could rent as few or as many episodes as they want and might never rent all the television series' episodes; and that each episode in the series was separately published and produced.  *Id.*

The facts at issue in the *Columbia Pictures Television* case are distinguishable from the facts at hand.  The court only used the independent economic value test in

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Columbia Pictures Television* and *Gamma* because the copyrightable elements were published, produced and originally sold separately, while here, the sound recordings on the CDs at issue were originally produced and published as a compilation, and sold to consumers as single unit. The initial method of publication is thus the dispositive inquiry. While the courts in *Columbia Pictures* and *Gamma* found that you cannot retroactively lump separately produced works into a compilation in an attempt to improperly reduce the plaintiff's potential statutory damages, by the same token, a plaintiff may not retroactively separate its compilation into separate works in order to obtain improper increase its potential statutory damages award.

(4)  UMG's Remaining Support for the Independent

Economic Value Test Are Inapplicable

The only other cases that UMG cites to with regards to the independent economic value test also do not deal with songs or CDs. *See e.g. Playboy Enters., Inc. v. Sanfilippo*, 46 U.S.P.Q. 2d 1350, 1355-56 (S.D.Cal. 1998) (discussing photographs in a magazine). The *Sanfilippo* case examined whether multiple statutory damage awards were appropriate where a defendant infringed upon thousands of individually copyright protected images within a Playboy publication. *Playboy Enters., Inc.,* 46 U.S.P.Q. at 1355-56. *Sanfilippo* involved the infringement of photographs, not musical works. Although pictures are also covered by the protections of Section 504(c)(1), the court specifically pointed to the different "authorship" behind each photograph; specifically, the court emphasized that each photograph had different photographers, models, themes or looks, locations and backdrops when deciding that it was appropriate to award statutory damages for each image. *Id.*  Conversely, individual songs on a CD are usually the work of single artist or group of artists and CDs do contain songs that promote a specific theme or genre. Furthermore, songs on a CD appear together, which binds the songs together in a way that is far more cohesive than wholly independent photos appearing in a magazine. Based on the

VEOH'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE* NOS. 1-7
Case No. CV 07 5744-AHM (AJWx)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Sanfilippo* reasoning, individual songs on a CD are a cohesive group and are a compilation consisting of one work whereas individual photos are separate works.

         d.    <u>Cases Similar to This, and Involving UMG, Have held That A "Work" For Purposes of Statutory Damages Should Be Assessed Per CD; Not Per Sound Recording</u>

      UMG heavy reliance on these non-binding authorities stands in direct contrast to its blatant disregard of its own (and more similar) case, *UMG Recordings, Inc. v. MP3.com, Inc.*, 109 F. Supp. 2d 223 (S.D.N.Y. 2000). *UMG Recordings, Inc.* is far more analogous given that it involves similar facts and the same plaintiff. In *UMG Recordings, Inc.*, the court denied UMG's motion to have the statutory damages computed on a per song rather than a per CD basis. *Id.* at 224. The court came to this decision by looking at the "unequivocal statutory language" of The Copyright Act, § 504(c)(1). *Id.* at 225. The court specifically referred to the section of the statute that stated "a compilation must be treated as a single 'work' for purposes of computing statutory damages." *Id.* UMG argued that the defendant in *UMG Recordings, Inc.* "listed individual songs, [and] encouraged users to create their own playlists without regard to a given CD album, and measured the traffic on its service according to the number of 'hits' received for each individual song-title." *Id.*

      Furthermore, UMG cited to *Gamma Audio & Video, Inc.* to support its argument in *UMG Recordings, Inc.*, just as UMG does here. *Id.* The court in *UMG Recordings, Inc.* considered these arguments, and found them wholly irrelevant in light of the clear statutory language. *Id.* at 224. The facts and UMG's failed arguments from *UMG Recordings, Inc.* are indisputably similar to the facts and UMG's arguments at issue now. Thus, UMG should not be permitted to introduce evidence or arguments at trial to support a claim that statutory damages should be assessed by any other means than per CD.

    **7.**    **Evidence Constituting Veoh's Power Point Presentations and Other Internal Materials that Discuss or Refer to Music**

Veoh's internal materials discussing general business strategy have minimal probative value.  None of these materials make reference to UMG or discuss a supposed effort by Veoh to feature or allow allegedly infringing content, and UMG does not dispute this fact.  Nevertheless, UMG seeks to introduce this evidence to show a "draw" towards UMG's allegedly infringing content on Veoh's website.  UMG fails to mention that there is a significant amount of legitimate music content available on Veoh through Veoh's partners, including SonyBMG.  RSGI ¶¶ 18, 135.  Moreover, the alleged presence of infringing content on Veoh does not in itself establish that the infringing material itself created a "draw."  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (the presence of infringing material on a website absent a showing that users logged on specifically to view that material cannot in itself establish a "draw" or direct financial benefit from that material).  It follows that the introduction of internal materials about general music content that makes no mention of UMG, and which never actually were implemented or came to fruition, would carry low probative value and would only serve to confuse and prejudice a jury and waste time.  Accordingly, Power Points and internal materials discussing general business strategy should be excluded under Rule 403.

## III.    CONCLUSION

For all the foregoing reasons and those set forth in Veoh's Motions *in limine* Nos. 1-7, Veoh respectfully requests that the Court grant its Motions *in limine* Nos. 1-7.

Dated:  July 27, 2009                      **WINSTON & STRAWN LLP**


By /s/ Erin R. Ranahan
    Rebecca Lawlor Calkins
    Erin R. Ranahan
    333 S. Grand Avenue
    Los Angeles, California 90071-1543
    (213) 615-1700 (Telephone)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(213) 615-1750 (Facsimile)

Jennifer A. Golinveaux
101 California Street
San Francisco, California 94111-5894
(415) 591-1000 (Telephone)
(415) 591-1400 (Facsimile)

Michael S. Elkin (*pro hac vice*)
Thomas P. Lane (*pro hac vice*)
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700 (Telephone)
(212) 294-4700 (Facsimile)

Attorneys for Defendant

VEOH'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE* NOS. 1-7
Case No. CV 07 5744-AHM (AJWx)