UMG Recordings, Inc. et al v. Veoh Networks, Inc. et al Doc. 567



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

- - - -

UMG RECORDINGS, INC.,

PLAINTIFF,

vs.

VEOH NETWORKS, INC., ET AL,

DEFENDANTS.

No. CV07-5744-AHM(AJWx)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

HELD IN CHAMBERS

LOS ANGELES, CALIFORNIA

MONDAY, MARCH 17, 2008

CINDY L. NIRENBERG
U.S. Official Court Reporter
312 North Spring Street, #438
Los Angeles, California 90012
*www.cindynirenberg.com*



Dockets.Justia.com

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

IRELL & MANELLA
BY: STEVEN A. MARENBERG, ATTORNEY AT LAW
BRIAN D. LEDAHL, ATTORNEY AT LAW
1800 AVENUE OF THE STARS
SUITE 900
LOS ANGELES, CA 90067
310-277-1010

FOR THE DEFENDANTS:

WINSTON & STRAWN
BY: MICHAEL S. ELKIN, ATTORNEY AT LAW
200 PARK AVENUE
NEW YORK, NY 10022
212-294-6700

WINSTON & STRAWN
BY: ERIN R. RANAHAN, ATTORNEY AT LAW
333 SOUTH GRAND AVENUE
38TH FLOOR
LOS ANGELES, CA 90071
213-615-1700

LOS ANGELES, CALIFORNIA; MONDAY, MARCH 17, 2008
2:04 P.M.
- - - - -

THE CLERK: Calling Item Number 5, CV07-5744, UMG Recordings, Inc. versus Veoh Networks, Inc., et al.

Counsel, state your appearances, please.

MR. MARENBERG: Good afternoon, Your Honor. Steve Marenberg, and with me is my colleague, Brian Ledahl, from Irell & Manella for the plaintiffs.

THE COURT: Good afternoon.

MR. ELKIN: Your Honor, Michael Elkin, Winston & Strawn, and with my colleague, Erin Ranahan, we represent the defendant, Veoh Network.

THE COURT: Okay. We are here for the scheduling conference, as you know. I have looked at the 16(b) report, and I have a couple of questions. The case in the Northern District, IO Group versus Veoh, who's the judge on that case?

MR. ELKIN: Harold Lloyd, U.S. Magistrate.

THE COURT: Wasn't there a district judge?

MR. ELKIN: There was, but the parties waived.

THE COURT: They did?

MR. ELKIN: Yes.

THE COURT: And which division is it in?

MR. ELKIN: It's in the San Jose division.

THE COURT: San Jose. And what's the name of the

magistrate?

MR. ELKIN: Harold Lloyd.

THE COURT: Okay. And has he issued any rulings that have any bearing on the management of this case or the issues that are revealed in this 16(b) report?

MR. ELKIN: No. There were obviously different deadlines imposed in the scheduling conference, the Rule 16 conference, but I --

THE COURT: Has he ruled on anything relating to the DMCA?

MR. ELKIN: No. We argued the motions for summary judgment on September 4, 2007, and the motions are sub judice. There was additional briefing requested and submitted I believe in late November of 2007. We're awaiting the decision.

THE COURT: And you were the moving party?

MR. ELKIN: Both parties were. We made a motion -- defense made a motion for a determination that Veoh was entitled to rely on Section 512(c), and the plaintiffs made a motion that their direct contributory vicarious liability motions, the claims should be adjudicated under Rule 56, and to save for trial the issues of damages. So both of those motions were argued and submitted, so cross motions, as it were.

THE COURT: Okay. But underlying those motions are some of the same contentions relating to the requirements under Section 512(c), correct?

MR. ELKIN: Correct.

THE COURT: Did you cite a lot of other rulings relating to the application of 512(c) in the context of the burden on the part of the plaintiff to identify the allegedly copyrighted material?

MR. ELKIN: If I understand Your Honor's question correctly, I believe that every conceivable Section 512 case that's been decided was briefed before the Court.

THE COURT: All right. Well, you lodge a copy of your briefs and the opposing sides' briefs so I have it here --

MR. ELKIN: Okay.

THE COURT: -- in the event that I want to see what the parties contended in that case, and I will just stop with that.

Now, Mr. Marenberg, you say on Page 8 that this approach of delaying discovery into ownership of the -- alleged ownership of the copyrights and chain of title -- I'm not sure exactly what that concept chain of title means, but I think I know -- has been consistently employed by courts. What courts? I don't see any reference to any.

MR. MARENBERG: We can supply you with the transcripts. First, Judge Patel in the Napster cases put off discovery on the chain of title on the works until the end. And second -- I'm just blanking on his name in the Southern District of New York -- recently addressed just this issue, and

we can get you a copy of the transcript or lodge it, where he put off the chain of title issues until the end.

THE COURT: Well, you tell me what you understand that shorthand reference to mean --

MR. MARENBERG: Sure.

THE COURT: -- as opposed to -- well, just tell me.

MR. MARENBERG: Let's posit that there are ultimately -- when we finally get all of the discovery, we need to identify every copyrighted work that was on the thousand different copyrights at issue, be it the sound recording copyright or the publishing copyright. We have gotten discovery in this case and others up front saying, "Give us every document that relates to the chain of title -- to your chain of title or the validity to your chain of title to every one of those copyrights."

Discovery also includes --

THE COURT: Well, wait a minute. What does chain of title encompass after you've established -- are these copyrighted works registered?

MR. MARENBERG: Yes.

THE COURT: So if you were to give them certificates of registration, what remains within the purview of the dispute suggested by the phrase chain of title? That you haven't assigned it, is that it?

MR. MARENBERG: The argument that we have been faced

with is that our copyright registrations are only prima facie evidence of validity in ownership and that they are entitled to go behind those registrations and see for themselves whether there is any defect in those chain of titles. And so, for example, we get this document request for every contract, every assignment that might be in that chain of title.

We also get document requests, "Tell us if anyone has ever raised a claim in any case, whether it went to lawsuit or not, as to the validity of your chain of title and produce those to us."

And, obviously, when you are in a mass infringement case, it's not like one work where you can say, "Here are the chain of title documents. Have at it if you want."

This is an enormous burden to produce and ultimately for no good reason, because let's assume -- and we don't even know that this is the case, but let's assume of the thousand works, there is a problem with one or two. That would not materially affect the damage award in any of these cases, but it does --

THE COURT: What evidence of ownership are you prepared to provide right now?

MR. MARENBERG: Well, for those -- well, we will provide them right now with the copyright of registrations, which is a prima fascia ownership. We have done that in MySpace and Grouper, we'll do it for Veoh. And we will also

identify, as we go along when we identify the works, the registration numbers so they can see that there is a registration for every work that we are claiming is infringed.

THE COURT: Is this contention on your part that going beyond that should not be permitted, during at least the first phase of discovery, something that has been addressed by Judge Wistrich in any of these cases?

MR. MARENBERG: It is before him. He has not ruled.

But that is something that I raised in the first round of motions that was filed and heard in October. And we are waiting for a ruling on that so that -- and depending on what the ruling is, we may bring that to you. And that's why we averted to it here as an issue, but it's not really ready to be teed up.

I suspect that it will get teed up before you in the context of MySpace or Grouper, and then we obviously think that however that comes out, we'd have to live with it in Veoh.

THE COURT: Yeah, well, I'm not going to preclude the initiation of discovery at this phase in this case.

I'm not familiar with the facts and the issues to the extent that I assume that Judge Wistrich is. And if the case comes to me on review of any decision he makes, then it would make sense to apply the same analysis and same conclusion to this case, unless there are factors here that require something materially different, and I doubt that.

But right now, the dates that I am going to set contemplate that discovery will be, for lack of a better term, reciprocal and without any preconceived or preliminary limitations and restrictions. So we'll see what happens on the other matter.

Now, before I recite the dates that I think should be applied here, have you -- meaning both sides here -- discussed coordinating any discovery in this case with the DivX matter?

MR. MARENBERG: No.

THE COURT: What's your preliminary view about that? I'm just throwing it out on the table.

MR. MARENBERG: I would not coordinate anything on this case with the DivX matter.

THE COURT: Because you are not going to be involved with it?

MR. MARENBERG: I'm not involved in the DivX matter. I'm not coming close to it.

THE COURT: Well, I have something under submission on that, so I'll not go any further, but -- well, I'll stop there.

What is this about suing the investors?

MR. MARENBERG: I don't know if you are familiar with this, but in the Napster case, ultimately the investors in Napster, such as --

THE COURT: Well, I'm familiar because of the --

MR. MARENBERG: -- were held liable. Here, Veoh is being sustained by some very well-healed investors, similar we think in the way --

THE COURT: Bear Stearns maybe?

MR. MARENBERG: Fortunately not. But Goldman Sachs is one of the investors, and we've subpoenaed those third parties. Discovery responses are due toward the end of the month. And once we get the discovery and find out what their role is, we'll make an appropriate determination.

THE COURT: How much time do you request before the pleadings can be deemed final and any Does who may have been named would have to be dismissed?

MR. MARENBERG: I believe we've been asking for extensions for responses of discovery until the end of March.

I would say -- and, presumably, if we get that discovery, I would say at the end of May, we could do that. And if for some reason we haven't, then we'll come back to you.

THE COURT: Okay. The last day for making motions -- and I hope the motions will be unnecessary, but I can't preclude somebody from opposing an amendment or in an effort to -- did you sue Does in the complaint here in this case?

MR. MARENBERG: I have the complaint.

MR. LEDAHL: I don't believe we identified them as Does, if I remember correctly.

THE COURT: Yeah, you named Does. There are Does

named in the caption.

Okay. So the last day to amend the complaint to identify Does or to add new parties or claims will be June 16th. That's approximately three months. And if the pleadings haven't been amended or a motion hasn't been made -- and I started to say I don't want to have to deal with motion practice relating to a 15(a) unless there is really a tenable basis to preclude amendment, given the liberal standard for amendment, unless there has been a change -- the Does will be dismissed automatically as of June 16th.

Now, what were you about to say, Mr. Elkins?

MR. ELKIN: Yes, Your Honor. Just one discrete matter.

THE COURT: Is it Elkins or Elkin?

MR. ELKIN: Elkin.

There's one discrete matter that I wanted to bring to the Court's attention that may or may not just affect your thinking with regard to the schedule. About ten days ago, UMG Recordings, the lead plaintiff here, filed an action against Veoh Networks in the Southern District by the Mitchell Silberberg firm --

THE COURT: Southern District of California?

MR. ELKIN: No, the Southern District of New York.

-- for exactly the same claims in this particular case. There is no difference except that they are seeking

redress in respect of so-called pre-1972 sound recordings under the New York common law.

We haven't had a chance yet to respond to that lawsuit, but we will in three, four weeks time.

We anticipate, consistent with our client's instructions, to make a motion to dismiss that case in favor of those claims being brought before Your Honor. We don't think there is any reason why -- if you are incapable of applying New York common law to the extent that you deem that appropriate. So I just want to mention that because it's not reflected in the submissions, and I didn't want you to be blindsided by that.

THE COURT: You're doing the right thing. Who is the judge in the Southern District?

MR. ELKIN: It's actually not in the Southern District. I apologize. It's in the Supreme Court. It's Herman Kahn.

THE COURT: Oh, you're going to have to remove it to federal court, then.

MR. MARENBERG: It's not removable, Your Honor. It relates to pre-nineteen- -- my understanding -- and we're not the counsel for UMG in this -- my understanding of that case is that it relates to pre-1972 sound recordings which were not covered by the Copyright Act.

THE COURT: Okay. Look, I am not going to go

further. If it comes here, it comes here. I get cases every day.

MR. ELKIN: I just wanted to bring that to Your Honor's attention.

THE COURT: Literally.

MS. RANAHAN: Your Honor?

THE COURT: That doesn't include the criminal cases. We drew a complex case today, 12 defendants.

MS. RANAHAN: Can I just ask one question about the June 16th deadline? Is that for filing a motion or --

THE COURT: Yes.

MS. RANAHAN: Filing. Okay. Thank you.

THE COURT: All right. Getting, then, to the schedule that I think would make sense here, given what I've said about there being a single phase for non-expert discovery with the existing limitations, I'll adopt the -- I'll give the parties more time than I am typically setting for scheduling conferences today, but not as much as the defendants want. The non-expert discovery cutoff will be October 27th.

Now, I think the parties appear to have, although starting with different dates, used my presumptive schedule with the various sequences and intervals that it calls for; is that correct?

MR. LEDAHL: I think that's largely correct, Your Honor. I think there may be some slight variance within that.

THE COURT: Well, I haven't had time to parse through it, but I will apply and ask the clerk to read off the dates that would follow from my presumptive schedule with a non-expert discovery cutoff of October 27th. That is likely to result in January 27th -- no. You have really changed things, I think, just glancing at this.

MR. MARENBERG: Yeah, let me -- I think I can explain this, Your Honor. In the Grouper and MySpace case --

THE COURT: I tell you what. I don't have time to try to absorb or rule upon differences.

If I give you the non-expert discovery cutoff, which is what I'm doing -- and I didn't think through it when I said October 27th. That's not what I should have said. Given the nature of this case and also the certainty that parties and lawyers will have other things to do during the holidays in December, the non-expert discovery cutoff will be January 12th.

Now, you then file a stipulation. Work out your differences about adjustments in the ensuing dates. January 19th will be the date to complete your compliance with Local Rule 16-14 relating to good faith efforts to achieve a settlement.

You should line up a mediator now because it will be difficult to find the best ones unless you give them ample notice.

Expert discovery will be something that you can

propose now that you know what the non-expert discovery cutoff is, and you can work out whatever adjustments.

I'm willing to work with you, as long as we have a trial date that would be not more than perhaps 18, at most 20, weeks from that non-expert discovery cutoff, which is longer than my typical range, but it may be appropriate here. But I'm not going to set other dates at the moment.

When you have determined who the mediator will be, it will be the plaintiff's duty to file a status report with me specifying who that individual is and what the date is -- at least the initial date -- that has been set aside for the mediation.

And we will set this down for a 12-day jury trial. I am confident we can do it in that. That's three full weeks, and that's a lot of time the way I handle trials. So that's something the clerk needs to know, and that's been set.

I think that takes care of everything. Anything else, counsel?

THE CLERK: Settlement procedure?

THE COURT: Pardon me?

THE CLERK: Settlement procedure?

THE COURT: It's a mediator, outside mediation.

File that stipulation by Friday of this week so that our records can reflect and we can send out a notice by not later than Monday of next week exactly what the scheduling

order will consist of.  Okay?

MR. MARENBERG:  Will do, Your Honor.

MR. ELKIN:  Good afternoon, Your Honor.

(Proceedings concluded.)

--oOo--