Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin (*pro hac vice*)
Email: melkin@winston.com
Thomas Patrick Lane (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant,
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>VEOH NETWORKS, INC., a California Corporation, et al.,<br><br>        Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)**<br><br>**VEOH'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 14, 2009<br>Time: 10:00 a.m.<br><br>Judgment Entered: November 3, 2009 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ................................................................... 3

    A. Veoh ............................................................................................ 3

    B. This Litigation ............................................................................ 4

    C. UMG Maximized Pressure on Veoh By Filing an Separate Action in New York and Far-Fetched Claims Against Veoh's Investors ...................................................................................... 7

    D. Prior Summary Judgment Decisions Regarding Veoh ............... 8

    E. Veoh's Rule 68 Offer of Judgment ............................................ 9

    F. This Court Grants Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c)Safe Harbor .............................. 9

III. ARGUMENT ..................................................................................... 10

    A. Veoh is Entitled to Costs, Including Reasonable Attorneys' Fees, As The Prevailing Party in an Action Brought Under the Copyright Act ............................................................................. 10

        1. The Legal Standard for Awarding Attorneys' Fees in a Copyright Action ............................................................... 10

        2. The Supreme Court's Fogerty Factors Support Awarding Veoh Fees as a Part of Costs ........................................... 12

    B. Rule 68 Provides An Independent Basis For The Court To Grant Veoh's Fees and Costs Since October 2008 .................. 18

        1. Rule 68 Requires That UMG Pay Veoh All Costs, Including Attorneys' Fees, Incurred Since its October 2008 Rule 68 Offer .......................................................... 18

    C. Calculation of Veoh's Fees ........................................................ 22

IV. CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Assessment Technologies of Wi., LLC v. WIREData, Inc.,*
    361 F.3d 434 (7th Cir. 2004) ........................................................................12

*Azizian, et al. v. Federated Dept. Stores, et al.,*
    499 F.3d 950 (9th Cir. 2007) ..............................................................3, 19, 20

*Baker v. Urban Outfitters, Inc.,*
    431 F.Supp.2d 351 (S.D.N.Y. 2006) ...............................................3, 20, 21

*Cruz v. Hauck,*
    762 F.2d 1230 (5th Cir. 1985) ......................................................................23

*Diamond Star Bldg. Corp. v. Freed,*
    30 F.3d 503 (4th Cir. 1994) ....................................................................12, 13

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994)............................................................................. passim

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .....................................................................................22

*Historical Research v. Cabral,*
    80 F.3d 377 (9th Cir. 1996) ..........................................................................12

*Io Group, Inc. v. Veoh Networks, Inc.*
    586 F. Supp. 2d 1132 (N.D. Cal. 2008) ...............................................1, 8, 9

*Jackson v. Axton,*
    25 F.3d 884 (9th Cir. 1994) ..........................................................................12

*Jordan v. Time, Inc.,*
    111 F.3d 102 (11th Cir. 1997) .....................................................................21

*Lucas v. Wild Dunes Real Estate. Inc.,*
    197 F.R.D. 172 (D.S.C. 2000) .....................................................................21

*Maljack Productions, Inc. v. Goodtimes Home Video Corp.,*
    81 F.3d 881 (9th Cir. 1996) ....................................................................12, 17

*Marek et al. v. Chesny, et al.,*
    473 U.S. 1 (1985).................................................................................. passim

*Mattel Inc. v. Walking Mountain Productions,*
    353 F.3d 792 (9th Cir. 2003) ........................................................................12

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
    380 F.3d 1154 (9th Cir. 2004) .......................................................................................13

*Perfect 10, Inc v. CCBill, LLC,*
    488 F.3d .....................................................................................................................15

*Screenlife Establishment v. Tower Video, Inc.,*
    868 F. Supp. 47 (S.D.N.Y. 1994) ...............................................................................14

*Traditional Cat Ass'n., Inc. v. Gilbreath,*
    340 F.3d 829 (9th Cir. 2003) .....................................................................................22

*UMG Recordings, Inc. v. Bertelsmann AG, et al.,*
    222 F.R.D. 408 (N.D. Cal. 2004).................................................................................8

*UMG Recordings, Inc. v. Veoh Networks, Inc.,*
    620 F. Supp. 2d 1081 (C.D. Cal. 2008) .......................................................1, 8, 16

*UMG Recordings, Inc. v. Veoh Networks, Inc.,*
    Case No. CV 07-5744 ...................................................................................................7

*Video-Cinema Films, Inc. v. CNN, Inc.,*
    No. 98 Civ. 7128, No. 98 Civ. 7129, No. 98 Civ. 7130, 2004 U.S. Dist. LEXIS 1428
    (S.D.N.Y. Feb. 3, 2004) ..............................................................................................14

*Wilson v. Nomura Securities Intern., Inc.,*
    361 F.3d 86 (2d. Cir. 2004)........................................................................................20


**STATUTES**

15 U.S.C. § 15(a) ("Section 4 of the Clayton Act")....................................................19

17 U.S.C. § 505 ("Copyright Act")........................................................................ passim

17 U.S.C. § 512(j).........................................................................................................10

42 U.S.C. § 1983...........................................................................................................19

42 U.S.C. § 1988...........................................................................................................19

Copyright Act of 1976 ("Copyright Act")....................................................................10

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2009, at 10:00 a.m., in the Courtroom of the Honorable A. Howard Matz, 312 N. Spring Street, Los Angeles, California 90012, Defendant Veoh Networks, Inc. ("Veoh") will move this Court, pursuant to Fed. R. Civ. P. 54(d)(2) and 17 U.S.C. § 505, for an award of attorneys' fees.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 9, 2009; and is subsequent to the Court's entering final judgment in this action on November 3, 2009 (Dkt. No. 582). This motion is brought on the grounds that Veoh is the prevailing party against Plaintiffs ("UMG") in the above-captioned action and is entitled to an award of reasonable attorneys' fees under the Copyright Act, 17 U.S.C. § 505, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), and Rule 68 of the Federal Rules of Civil Procedure.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declaration of Erin R. Ranahan ("Ranahan Decl.") and the exhibits attached thereto, and upon such other and further evidence and argument as may be presented to the Court prior to or at the time of hearing on this motion.

Dated: November 17, 2009      WINSTON & STRAWN LLP

By: _____
     Michael S. Elkin
     Thomas Patrick Lane
     Jennifer A. Golinveaux
     Rebecca Lawlor Calkins
     Erin R. Ranahan

     Attorneys for Defendant
     VEOH NETWORKS, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Veoh Networks, Inc. ("Veoh") seeks an award of its fees and costs in connection with this action pursuant to Section 505 of the Copyright Act and Rule 68 of the Federal Rules of Civil Procedure. Plaintiffs, members of the Universal Music Group ("UMG"), filed this action in September 2007, seeking tens of millions of dollars in statutory damages from Veoh for alleged infringements. After more than two years of litigation, this Court found that Veoh was entitled to safe harbor protection pursuant to Section 512(c) of the DMCA for any monetary damages sought by Plaintiffs.[1] (September 11, 2009 Order Granting Veoh's Motion for Summary Judgment, Dkt. No. 575 (the "Order")). As this Court recognized, Veoh's copyright policy "satisfies Congress' intent" with respect to handling claims of copyright infringement and terminating repeat infringers.

This was not the first time Veoh had been found to be entitled to Section 512(c) safe harbor. As UMG knew, last year, in a separate copyright infringement case brought against Veoh by the Io Group in the Northern District of California, Veoh was also found entitled to safe harbor under Section 512(c). *Io Group, Inc. v. Veoh Networks, Inc.* 586 F. Supp. 2d 1132 (N.D. Cal. 2008). As the *Io* Court recognized, "far from encouraging copyright infringement, Veoh has a strong DMCA policy, takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website." *Id.* at 1155.

The sad truth of this case is that if UMG had simply sent Veoh take-down notices, Veoh would have responded as it does with all such notices (and as it did with the RIAA notices) and disabled access to the material. This case would have been put to rest, saving this Court's, and the parties', precious resources. Instead, UMG

---

[1] Earlier in this case, the Court denied UMG's motion for partial summary judgment that Veoh was not eligible for safe harbor under Section 512(c) of the DMCA as a result of certain automated software functions that made material accessible to users. (December 29, 2008 Order, Dkt. No. 293); *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081 (C.D. Cal. 2008).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  decided simply not to participate in the notice and takedown provisions of the DMCA.

2  Remarkably, even after UMG filed suit, and Veoh offered to immediately take down

3  any allegedly infringing videos identified by UMG, UMG refused, claiming it was

4  Veoh's burden to try to figure out what alleged UMG rights might be infringed.

5  Rather than simply notify Veoh of infringements, UMG sat on its hands, refusing to

6  identify infringements to Veoh, and then filed this suit seeking a staggering windfall

7  sum in statutory damages.  In fact, UMG refused to identify a single infringing video

8  until more than a year after filing this suit, and then only after Veoh filed a motion to

9  compel the information in response to discovery.  By then, Veoh had already taken

10  down most of the videos identified by UMG, and immediately disabled access to the

11  few still up on the site.  The baseless allegations that form UMG's complaint, coupled

12  with tactics designed to protract these proceedings and maximize burden on Veoh,

13  were not what Congress had in mind when it enacted the DMCA.

14      As the prevailing party in this litigation, Veoh should be awarded costs and fees

15  pursuant to Section 505 of the Copyright Act.  As the Supreme Court has recognized

16  in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994), defendants in copyright actions

17  should be encouraged to pursue meritorious copyright defenses through fee awards.

18  *Id.* at 527.  Because copyright defendants do not have the same incentive of collecting

19  damages if successful, there is an even greater need to award fees to defendants that

20  have stayed the course, defended themselves based on meritorious defenses like the

21  safe harbor protection of the DMCA, and ultimately served to define the bounds of

22  Copyright Law.  Veoh is precisely that type of copyright defendant.

23      Moreover, UMG pursued objectively unreasonable claims against Veoh, and

24  did so in an undoubtedly objectively unreasonable manner—alleging claims for

25  infringements it refused to specify for more than a year.  In fact, when the alleged

26  infringements were finally specified, the vast majority had already been removed

27  pursuant to Veoh's policies.  UMG also litigated this action in a manner calculated to

28  drive up litigation costs, filing numerous discovery motions and *ex parte* applications,

2

and refusing to provide basic discovery like documents demonstrating UMG's ownership in the alleged infringements. In a maneuver designed to add maximum pressure on Veoh, UMG also dragged Veoh's investors as defendants into this lawsuit (though this court twice dismissed Veoh's investors from the action on a motion to dismiss, the second time with prejudice) and filed a separate lawsuit against Veoh in New York (that was also dismissed upon Veoh's motion). UMG's strategy in this action was to ignore the merits and instead drown Veoh in litigation costs, thus stifling innovation and trampling on the balance envisioned by the DMCA. Veoh should be awarded all of its fees and costs pursuant to Section 505, which total $4,613,062.20, in fees and $204,530.11 in costs. Ranahan Decl. ¶¶ 5-19 and Exh. D.

Veoh is also separately entitled to all fees incurred since its October 2008 Rule 68. *See Baker v. Urban Outfitters, Inc.,* 431 F.Supp.2d 351, 361, 367 (S.D.N.Y. 2006); *Azizian,* 499 F.3d 950, 957-959 (9th Cir. 2007); *Marek et al. v. Chesny, et al.,* 473 U.S. 1, 8-9 (1985) (superseded on other grounds). Rule 68 allows a defendant in a copyright action to recover all fees and costs from the time the defendant made an Offer of Judgment, where the amount offered is less than the total amount ultimately recovered by the plaintiff. In October 2008 ███████████████ o ███████████████████████████████████ o ███████████████ and which ultimately proved to far exceed UMG's ultimate award of zero monetary damages. Thus, Veoh is entitled to the $2,859,073.40 in fees, and $170,627.78 in costs incurred since October 2008.

For all of these reasons, Veoh respectfully requests that the Court award Veoh its costs and fees in this action.

## II. STATEMENT OF FACTS

### A. Veoh

Veoh was founded in 2005 to provide a forum for video content on the Internet, while providing strong protections for intellectual property. Veoh's website first became available in early 2006. Order, p. 3. From the beginning of its service, Veoh

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

3

has worked diligently with content owners to keep unauthorized works off of Veoh's service, has had a strong DMCA policy, has promptly disabled access to allegedly infringing content upon notice, and has promptly terminated any repeat infringers of its service. *Id.* at 3-6. Veoh specifically designed its system so that it could disable access to infringing content when it became aware of it.

Veoh has also been on the vanguard of inter-industry efforts to prevent copyright infringement, and utilizes cutting edge technologies to do so. Beginning in 2006, Veoh has identified duplicate file submissions by means of a unique fingerprint (called a "hash") of a video file. *Id.* at 5. Once Veoh disables access to a video for any reason, including copyright infringement, Veoh's system automatically disables access to any other duplicate videos with the identical hash, and also blocks any subsequently submitted videos that are duplicates of disabled videos. *Id.* Veoh had also gone above and beyond its legal obligations by investing significant resources into licensing and implementing Audible Magic's filtering service. *Id.* at 5-6. Veoh does not charge users for using its site or software and has never made a profit. *Id.* at 3.

## B. This Litigation

UMG filed its original complaint in this action on September 4, 2007, alleging claims for copyright infringement (at that time against defendant Veoh only). Order, p. 1. UMG decided not to comply with the DMCA and not to identify material that infringed UMG's copyrights so that Veoh could respond. Indeed, before filing this suit, UMG took the position that Section 512(c) did not apply to user generated content ("UGC") sites like Veoh, a position that has been rejected by this Court and in an earlier suit against Veoh. Although UMG's suit claimed generally that certain videos were uploaded to Veoh that infringed UMG's alleged copyrights, UMG failed to notify Veoh of any specific infringements before filing suit, and did not identify a single infringing video in its Complaint.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Promptly after UMG filed suit, Veoh's counsel wrote to UMG's counsel and explained that if UMG would identify the videos it contended were infringing, Veoh would promptly disable access to the videos. Veoh's Response to Statement of Genuine Issues , filed on or about June 8, 2009 in support of Veoh's Motion for Summary Judgment ("RSGI"), ¶ 57. In response, UMG refused to identify any allegedly infringing videos and instead insisted that Veoh should be able to figure out on its own which UMG "content" was on its site, and that UMG was not obligated "to identify each instance in which Veoh is displaying unauthorized content." *Id.*, ¶ 58. Though Veoh again asked UMG to identify any allegedly infringing videos, UMG refused. *Id.*,¶ 59.

On December 1, 2008, more than a year after filing suit (and only after Veoh filed a motion to compel the information), UMG finally identified the videos it claims were infringing. *Id.*, ¶ 60. Veoh promptly analyzed the videos identified by UMG as infringing to determine whether any were still available on Veoh. Of the first batch of 1,591 videos identified by UMG, twelve were duplicates. Of the 1,579 videos remaining, 1,268 had already been independently disabled by Veoh when they were identified by the Audible Magic filter, because they were duplicates of files that had been identified by the Audible Magic filter, or as part of Veoh's policy of disabling all videos for an account pursuant to Veoh's repeat infringer policy, or because they had been identified as possibly infringing. *Id.*, ¶¶ 61-62. The remaining 311 videos had already been independently run through the Audible Magic filter, but had not matched and were still available on Veoh. *Id.*, ¶ 63. Veoh immediately disabled access to those 311 videos and informed UMG. *Id.,* ¶ 64.

Of the second batch of 854 videos identified by UMG on January 16, 2009, two videos were duplicates, and all 852 videos had already been disabled by Veoh. *Id.*, ¶¶ 65-66. Nine had been cancelled when they were identified by the Audible Magic filter, and the remaining 844 had been cancelled by Veoh either as part of Veoh's policy of disabling all videos for an account pursuant to its repeat infringer policy, or

because they had been identified as possibly infringing. *Id.* Many of the videos in this second batch were identified in infringement notices sent to Veoh by the RIAA. *Id.* ¶ 68. Why UMG identified these videos as infringing is a mystery, given that UMG acknowledged that Veoh responded and removed all videos identified in the RIAA notices it received. *Id.,* ¶ 69 (Supp. Decl. of Calkins ¶ 2 and Exh. A (UMG's Supp. Interrogatory Response No. 21, p. 18:26-27 ("…it appears that Veoh removed the material located at the specific URLs identified in the notices it received…."); *See also,* Supp. Decl. of Stacie Simons (Docket No. 396-2) ¶¶ 4-13 (noting that for each of the works identified in the RIAA notices that UMG submitted with its prior opposition, such works were removed within 24 hours). The RIAA notices identified specific allegedly infringing videos by providing the URL for the videos. If UMG had similarly notified Veoh of the other infringements alleged in this case, Veoh would have done the same thing. None of the RIAA notices referenced UMG and none claim rights in all works by the identified artists.[2]

Finally, on May 11, 2009, the deadline for fact discovery in this case and more than a year and a half after filing suit, UMG further amended its list of alleged infringements, identifying a new total of 7,756 videos as allegedly infringing. *Id.,* ¶ 72. This final amendment withdrew at least eight more videos that UMG had previously identified as infringing in the prior two batches. *Id.,* ¶ 73. Veoh promptly analyzed the 7,756 videos, 14 of which were duplicates. *Id.,* ¶ 74. Of the remaining 7,742 videos, <u>all</u> had already been taken down by Veoh either due to identification by Audible Magic or pursuant to Veoh's DMCA policy. *Id.,* ¶ 75.

UMG also unnecessarily drove up litigation costs in this action through numerous depositions, motions, filings and other items that required extensive work by Veoh. UMG filed eight discovery motions (the first of which was 192-page stipulation containing eighteen separately enumerated categories), numerous other

---

[2] On April 22, 2009, UMG notified Veoh that its prior identifications of alleged infringements contained numerous errors and that UMG was withdrawing its allegations of infringement with respect to at least forty videos. RSGI, ¶ 71.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

discovery related briefs, and six *ex parte* applications. UMG took ten fact depositions, five third party depositions, and two expert depositions. UMG even went so far as to falsely accused Veoh of spoliation, forcing Veoh to incur great expense in correcting the record. (Dkt. No. 317).

**C. UMG Maximized Pressure on Veoh By Filing an Separate Action in New York and Far-Fetched Claims Against Veoh's Investors**

In February 2008, UMG filed an action against Veoh in New York for infringement of common law copyrights based upon the same allegations asserted in this case. The action was dismissed with prejudice. *See UMG Recordings, Inc. v. Veoh Networks, Inc.,* Case No. CV 07-5744, Index No. 600558/08, Nov. 24, 2008 Order Granting Veoh's Motion to Dismiss, attached to the Golinveaux Decl. in support of Veoh's motion for summary judgment, ¶ 14 & Ex. M.

In June 2008, on the last day to amend the pleadings, UMG filed a first amended complaint ("FAC"), alleging claims against certain of Veoh's investors, Shelter Capital Partners, LLC; Shelter Venture Fund, L.P.; The Tornante Company, LLC, Spark Capital, LLC and Spark Capital, L.P. (the "Investor Defendants") for vicarious copyright infringement, inducement of copyright infringement and contributory copyright infringement. The Court dismissed these claims pursuant to the Investor Defendants' motion to dismiss. *See* Feb. 2, 2009 Order, Dkt No. 298 and May 5, 2009 Order, Dkt. No. 434. While granting leave to amend, the court in the Veoh Action cautioned against amendment: "[a]lthough [UMG] may file a Second Amended Complaint, they should reflect carefully what is likely to result if they do so. The Court's existing scheduling requirements and the near-certain additional costs and complications that will flow from attempting to go after deep pockets whose potential liability could entail vexing issues of corporate governance caution that 'less may be more.'" Feb. 2, 2009 Order, Dkt No. 298, p. 10. Nevertheless, UMG proceeded to amend its complaint in the Action, again straining to state sufficient claims against the Investor Defendants. The Investor Defendants again moved to

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

7

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

dismiss the claims, and this time the Court dismissed the claims against the Investor Defendants with prejudice.[3]

The Court found "UMG's renewed attempt to apply *UMG Recordings, Inc. v. Bertelsmann AG, et al.,* 222 F.R.D. 408 (N.D. Cal. 2004)" to be "unpersuasive" because in that case the investors in Napster decided to "keep the Napster service in operation even after Napster had been found to be engaging in infringing conduct," "caused Napster to engage in infringing conduct independent of each other" and actually "ordered the infringing activity to take place." May 5, 2009 Order at p. 10-11. Here, as the Court duly noted, Veoh has not been found liable for direct or secondary infringement (Order, n. 4) and instead has been held in prior actions to be protected by the DMCA Section 512(c) safe harbor as a result of its strong DMCA policy. *Io Group, Inc. v. Veoh Networks, Inc.* 586 F. Supp. 2d 1132 (N.D. Cal. 2008).

The Court did not find any of UMG's allegations sufficient for UMG's liability claim to survive. As this Court recognized, UMG's claims against the Investor Defendants sought to impose vast new liabilities that would "expand the scope of copyright liability in a manner that presents a substantial risk of upending well-established concepts of corporate governance," and stifle innovative internet companies. May 5, 2009 Order, Dkt No. 434, p. 15.

**D. Prior Summary Judgment Decisions Regarding Veoh**

Veoh has been adjudicated to be both eligible for and entitled to Section 512(c) safe harbor. Earlier in this case, this Court denied UMG's motion for summary judgment that sought a ruling that Veoh was ineligible for Section 512(c) safe harbor. *UMG Recordings, Inc. v. Veoh Networks, Inc.* 620 F. Supp. 2d 1081 (C.D. Cal. 2008).[4] Last year, a court granted Veoh's motion for summary judgment regarding its entitlement to Section 512(c) safe harbor in a copyright infringement suit, holding that

---

[3] May 5, 2009 Order Granting Investor Defendants' Motion to Dismiss With Prejudice (Docket 434), p. 15.
[4] *See* Order Denying UMG's Mot. For Partial Sum. J, Docket No. 293.

VEOH'S MOTION FOR ATTORNEYS' FEES – CASE NO. 07 5744 – AHM (AJWx)

LA:259955.1

the record demonstrated that "far from encouraging copyright infringement, Veoh has a strong DMCA policy, takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website." *Io Group, Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1155 (N.D. Cal. Aug. 27, 2008).

### E.    Veoh's Rule 68 Offer of Judgment

In October 2008, in an effort to resolve this action in the most efficient manner possible, pursuant to Rule 68, Veoh offered Plaintiffs ███████. Ranahan Decl., Exh. A.  As was explicitly stated in Veoh's October 2008 Rule 68 Offer:

> If Plaintiff rejects this offer and does not obtain a more favorable judgment, pursuant to Rule 68(d), Plaintiff "must pay the costs incurred after the offer was made," which pursuant to Section 505 of the Copyright Act, includes reasonable attorneys' fees. *See Baker v. Urban Outfitters, Inc.,* 431 F.Supp.2d 351, 361, 367 (S.D.N.Y. 2006); *Azizian, et al. v. Federated Dept. Stores, et al.,* 499 F.3d 950, 957-959 (9th Cir. 2007); *Marek et al. v. Chesny, et al.,* 473 U.S. 1, 8-9 (1985) (superseded on other grounds).

Ranahan Decl. ¶ 2 and Exh. A.

███████████████████████████████

███████████████████████████████ *Id.* Exh. C.

### F.    This Court Grants Veoh's Motion for Summary Judgment Re Entitlement to Section 512(c)Safe Harbor

On September 11, 2009, this Court granted summary judgment in favor of Veoh, finding that it had satisfied all requirements of the Section 512(c) safe harbor, and was thus not liable to UMG for monetary relief.  (Sept. 11, 2009 Order, Dkt. No. 575).  In rejecting UMG's arguments that Veoh should not be entitled to safe harbor protection due to a general awareness of infringing activity, this Court noted that if this were enough to take Veoh out of the safe harbor, "the DMCA safe harbor would not serve its purpose of 'facilitat[ing] the robust development and world-wide

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

expansion of electronic commerce, communications, research, development, and education in the digital age.'" Order at 18.

As noted by the Court in its September 11, 2009 Order, "[a]lthough UMG strains to demonstrate a genuine issue of material fact as to the applicability of the section 512(c) safe harbor, for the most part the parties do not dispute the basic and material facts of this case." *Id.* at p. 1. The Court went on to note that "[t]hroughout UMG's Statement of Genuine Issues of Material Fact, it purports to 'dispute' a fact, but then states allegations that are consistent with the asserted fact. . . . The Court will not address these immaterial 'disputes,' which do nothing more than strain the Court's resources and distract from the real issues in this litigation." *Id.* at p. 2.

Finally, on November 3, 2009, at the Court's direction, the parties entered a stipulation whereby Veoh agreed to continue to comply with its policies and not put the allegedly infringing videos back up on the site or reinstate users who were terminated for uploading the videos. The parties further stipulated that any further relief permitted by 17 U.S.C. § 512(j) was moot. Nov. 13, 2009 Joint Stip. & Order, Dkt. No. 582.

## III.  ARGUMENT

### A.  Veoh is Entitled to Costs, Including Reasonable Attorneys' Fees, As The Prevailing Party in an Action Brought Under the Copyright Act

#### 1.  The Legal Standard for Awarding Attorneys' Fees in a Copyright Action

The Copyright Act of 1976 ("Copyright Act") provides, in pertinent part, that in any copyright action, the court in its discretion "may allow the recovery of full costs by or against any party. . . [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A party who successfully defends against an infringement claim is a "prevailing party" under Section 505.

LA:259955.1

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

In *Fogerty* 510 U.S. 517 (1994), the Supreme Court rejected the "dual standard" approach by which plaintiffs were more likely to recover their attorneys' fees than defendants, holding that "defendants who seek to advance. . . meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527. The Supreme Court overruled prior Ninth Circuit law that required the prevailing defendant to show frivolousness or bad faith on the part of the plaintiff. *Id.* at 521. According to the Supreme Court, "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright."*Id.* at 527. As a result, prevailing defendants are entitled to recover attorneys fees, in the Court's discretion. *Fogerty*, 510 U.S. at 534 (noting that the Supreme Court's decision in *Fogerty* permits the district court greater discretion to award attorneys' fees to prevailing defendants).

The Court is empowered by the Copyright Act with discretion to award attorneys' fees, and that discretion should be exercised to forward the policies of the Act. *Fogerty*, 510 U.S. at 534-35. "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them," in part because such defense ultimately encourages the promotion of "broad public availability of literature, music and the other arts."*Fogerty*, 510 U.S. at 526-27.

In *Fogerty*, the Supreme Court highlighted a list of nonexclusive factors to guide a district court's exercise of discretion in awarding attorneys' fees, including "frivolousness, motivation, objective unreasonableness (both factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 535, n. 19. Not all factors must be met to support an award of attorneys' fees, nor should the court use them to restrict awards of attorneys' fees to cases where the losing party was somehow culpable or acted in bad faith, since blameworthiness is not a prerequisite to awarding fees to a prevailing defendant. *Id.*Indeed, exceptional circumstances are *not* a

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

prerequisite to an award of attorneys' fees in copyright actions. *Historical Research v. Cabral,* 80 F.3d 377, 378 (9th Cir. 1996); *see also, Maljack Productions, Inc. v. Goodtimes Home Video Corp.,* 81 F.3d 881, 890-891 (9th Cir. 1996) (granting attorneys' fees to defendants for successfully defending against a copyright claim). As Judge Posner of the Seventh Circuit Court of Appeals has noted "[w]hen the prevailing party is the defendant. . .the presumption in favor of awarding fees is very strong." *Assessment Technologies of Wi., LLC v. WIREData, Inc.,* 361 F.3d 434, 439 (7th Cir. 2004), *citing Diamond Star Bldg. Corp. v. Freed,* 30 F.3d 503, 506 (4th Cir. 1994). "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Assessment Technologies,* 361 F.3d at 439.

**2.** **The Supreme Court's *Fogerty* Factors Support Awarding Veoh Fees as a Part of Costs**

Veoh is the prevailing party in this action, having obtained immunity from any monetary damages through its meritorious copyright defense under Section 512(c) of the DMCA. UMG's objectively unreasonable and frivolous arguments asserted against Veoh, pursued even after another court found Veoh protected by the Section 512(c) safe harbor, militate in favor of an attorneys' fee award. As discussed below, the factors set forth by the Supreme Court in *Fogerty* each support an award of attorneys' fees to Veoh. *Id.* at 534, n. 19; *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994).

**a.** **Defeating UMG's Claims Furthered the Purposes of the Copyright Act**

To determine whether to grant a prevailing defendant's attorneys' fees, the district court determines, in part, whether the successful defense furthered the purposes of the Copyright Act. *Mattel Inc. v. Walking Mountain Productions,* 353

F.3d 792, 816 (9th Cir. 2003).[5] Veoh prevailed in establishing its entitlement to DMCA safe harbor. Veoh's meritorious copyright defense furthered the purpose of the Copyright Act by preventing UMG from obscuring or obliterating established and sensible boundaries of copyright protection created by the DMCA and case law. *See Fogerty,* 510 U.S. at 527. ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* 380 F.3d 1154, 1167 (9th Cir. 2004) ("it is prudent for courts to exercise caution before restructuring liability theories for the purpose of addressing specific market abuses, despite their apparent present magnitude. Indeed, the Supreme Court has admonished us to leave such matters to Congress.")

UMG's theories of liability against Veoh would have adversely affected the public's access to creative works by deterring innovate Internet businesses from developing. As Veoh prevailed in defeating UMG's attempt to reconfigure the cooperation envisioned by the DMCA, it is within the Court's discretion to award attorneys' fees. *See Fogerty,* 94 F.3d at 559-560.

### b. UMG's Claims Against Veoh Were Objectively Unreasonable

Objective unreasonableness is one factor district courts consider in deciding whether to award fees under the Copyright Act. *See Fogerty,* 510 U.S. 517, 533, n. 19. A court can determine that a plaintiff acted objectively unreasonable when

---

[5] UMG apparently did not even own the rights to many of the underlying alleged infringements in this litigation, having withdrawn numerous allegations of infringement more than four months after finally identifying alleged infringements. The fact that a plaintiff does not own the rights asserted is even more reason to support a finding that plaintiff's claims are objectively unreasonable for purposes of awarding attorneys' fees to defendant. *See Maljack,* 81 F.3d 881, 889 (9th Cir. 1996) (upholding the attorneys' fees award to defendant and holding that the court was within its discretion to find the copyright claims were objectively unreasonable in light of the fact that plaintiff did not own the copyright asserted).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1     pursuing an infringement action that is utterly without merit. *See Diamond Star,* 30

2     F.3d at 506 (concluding that in a meritless infringement action, the objective

3     reasonableness factor strongly weighed in favor of awarding attorneys' fees and costs

4     to defendant).

5          A court may also determine that even claims that may have merit can be

6     pursued in an objectively unreasonable manner. When determining whether the

7     factual and legal components of a case qualify as "objectively unreasonable," courts

8     are not limited to reviewing only the claim asserted and whether that claim constitutes

9     a reasonable claim. Rather, courts look to whether a losing party made "objectively

10    unreasonable factual and legal arguments" throughout the underlying litigation. *See,*

11    *e.g., Video-Cinema Films, Inc. v. CNN, Inc.,* No. 98 Civ. 7128, No. 98 Civ. 7129, No.

12    98 Civ. 7130, 2004 U.S. Dist. LEXIS 1428, at *2 (S.D.N.Y. Feb. 3, 2004)

13    ("Throughout the underlying litigation, Plaintiff made objectively unreasonable

14    factual and legal arguments."); *Screenlife Establishment v. Tower Video, Inc.,* 868 F.

15    Supp. 47, 52 (S.D.N.Y. 1994) (awarding fees where, even if plaintiff had a good faith

16    basis to claim infringement could affect market value, damages claim and expert

17    testimony presented at trial was speculative and unreasonable).

18         UMG's action against Veoh was objectively unreasonable. UMG ignored its

19    responsibilities under the DMCA, dragged its feet in identifying infringements, and

20    then sought to use the very works that Veoh promptly removed pursuant to RIAA

21    notices received by Veoh, and works that Veoh proactively filtered from its website

22    through of Audible Magic, to increase the number of alleged infringements and run up

23    its alleged statutory damages to a staggering degree.

24         Here, UMG's arguments as to why Veoh should not be entitled to DMCA safe

25    harbor were objectively unreasonable. For example, UMG argued that Veoh had

26    knowledge of the alleged infringements sufficient to disqualify it from safe harbor

27    simply because it knew it was hosting music content (though Veoh has authorized

28    music content), and that Veoh should have sought out actual knowledge by searching

its system for all videos identified in RIAA notices (notices that made no mention of Plaintiffs whatsoever). As stated by this Court, however, "the Ninth Circuit provided clear guidance on how to apply the knowledge elements of the Section 512(c) safe harbor" in *CCBill* (Opinion at 12), which clearly rejects UMG's arguments. As explained by this Court, "[r]equiring Veoh to perform such searches would also conflict with the principle articulated in CCBill that '[t]he DMCA notification procedures place the burden of policing copyright infringement--identifying the potentially infringing material and adequately documenting infringement--squarely on the owners of the copyright.'" Opinion at 16 (citing *Perfect 10, Inc v. CCBill, LLC*, 488 F.3d at 1113.) UMG's arguments on knowledge specifically contradicted Ninth Circuit law directly on point well before UMG filed this lawsuit.

UMG's argument that Veoh should have been disqualified from safe harbor because it had the right and ability to control the alleged infringement was similarly unreasonable in light of the language of the DMCA itself and interpreting case law. UMG argued that Veoh had the right and ability to control because the allegedly infringing material resided on Veoh's system and Veoh had the ability to remove it, because Veoh could have and did implement filtering technology, and because Veoh could have searched for potentially infringing content. Opinion at 20. As this Court made clear "[t]he text of the statute and the case law on this element of the safe harbor compel the Court to conclude that Veoh did not have the requisite 'right and ability to control.'" *Id.* In advancing this argument, UMG simply ignored the clear language of Section 512(m) and case law from this circuit interpreting the DMCA.

Finally, UMG's arguments that Veoh was not eligible for safe harbor because it only terminated repeat infringers upon receipt of a second DMCA notice, and because it did not terminate users identified by Audible Magic's automated filtering technology was similarly unreasonable. As to the first argument, as this Court stated, "UMG points to nothing in the statute, legislative history, or case law establishing that such a policy is not reasonable or appropriate." Opinion at 28. The second argument

15

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  similarly lacked any reasonable basis given the clear guidance of *CCBill*.  Opinion
2  at 27.

3      UMG also pursued an unreasonable theory in an effort to seek to "disqualify"
4  Veoh from safe harbor by filing a motion for partial summary judgment on the
5  grounds that as a result of Veoh's automated functions that made videos accessible to
6  users, these videos were not "stored at the direction of a user."  *UMG Recordings, Inc.*
7  *v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081 (C.D. Cal. 2008).  UMG's interpretation
8  ran contrary to all caselaw and legislative history on the Section 512(c) safe harbor.
9  *Id.*  Indeed, UMG sought to ignore the legislative history and caselaw in favor of a
10  dictionary definition of the word "storage," rather than the intended meaning for
11  purposes of the statute.  UMG's Mot. for Partial Summary Judgment, filed on or about
12  September 5, 2008 at p. 13.  Because Veoh's functions fall squarely within those
13  intended by the Section 512(c) safe harbor, the Court denied UMG's motion for
14  partial summary judgment that Veoh was not eligible for safe harbor under Section
15  512(c) of the DMCA as a result of certain automated software functions that made
16  material accessible to users. (December 29, 2008 Order, Dkt. No. 293); *UMG*
17  *Recordings, Inc.,* 620 F. Supp. 2d 1089-1090.

18      Even if the Court considers UMG's underlying claims to bear some merit, there
19  is no doubt that UMG pursued its claims in an unreasonable manner.  UMG refused to
20  identify its works, even after multiple rounds of Veoh seeking to compel this
21  information.  UMG pursued discovery in an unnecessarily aggressive manner on all
22  fronts, forcing Veoh undergo significant expense in correcting the record, including
23  defending baseless claims of "spoliation."  Even when Veoh sought in good faith to
24  settle the action, UMG thumbed its nose at Veoh's offer, instead forcing Veoh to
25  undergo multiple sounds of summary judgment briefing, forcing its investors to file
26  two separate motions to dismiss, and requiring Veoh to defend itself in a separate
27  action brought by UMG on the other side of the country, and action that was also
28  dismissed.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

16

Because UMG's claims against Veoh were objectively unreasonable, and UMG pursued these claims in an objectively unreasonable manner, this factor weighs in favor of awarding fees to Veoh.

### c. An Award of Attorney's Fees Would Deter UMG, and Others Like UMG, From Filing Similar Actions

Deterrence is an additional factor district courts should consider in deciding whether to award fees under the Copyright Act. *See Fogerty,* 515 U.S. 517, 535, n. 19. An award of attorneys' fees to Veoh is imperative to deter other plaintiffs, and UMG itself, from continuing to file vexatious lawsuits seeking staggering damages without any reasonable basis. The doors to the overburdened courts of the federal judiciary should not be thrown open to actions like this where the plaintiff seeks to obtain jackpot damages by filing a massive infringement lawsuit against companies with strong copyright policies like Veoh. *See Maljack,* 81 F.3d at 890 (noting that fee award in case where defendant obtained total success in defending against baseless copyright claims may deter baseless suits). An award of attorneys' fees serves to filter the would-be litigant pool to those whose claims are built upon the good faith that the Federal Rules of Civil Procedure require, and would put other potential plaintiffs on notice that there are consequences to filing hyper-aggressive lawsuits that lack factual and legal support. For UMG's pursuit of its unwarranted claims against Veoh, UMG should be required to bear the costs of Veoh's defense.

### d. UMG's Motivation Was Contrary To The Purposes Of The Copyright Act

"Copyright law ultimately serves the purpose of enriching the general public through access to creative works."*Fogerty*, 510 U.S. at 527. Copyright law was not meant as a means for companies like UMG to extort massive copyright infringement damages on tenuous legal theories, intending to drive defendants out of business in the meantime. If UMG had been genuinely interested in attempting to stop the infringements it alleges in this case, it would have simply notified Veoh of them as

17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

required by the DMCA. Instead, UMG chose to litigate in a manner not designed to stop the infringements, because if that were the case UMG would not have waited over one year to identify them. UMG's strategy was quite clearly designed to either extract an extortionist settlement or cripple a young technology company with meager resources to defend this matter in multiple jurisdictions against multiple defendants, and endure countless motions that were designed to force it to spend money on litigation instead of developing new features and technologies. UMG's bad motivation runs contrary to the purposes of the Copyright Act, and is yet one more factor militating for an award of attorneys' fees to Veoh.

## B. Rule 68 Provides An Independent Basis For The Court To Grant Veoh's Fees and Costs Since October 2008

Rule 68 of the Federal Rules of Civil Procedure provides in pertinent part:

> (a) . . . At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment . . . with costs then accrued.
>
> (b). . . an unaccepted offer is not admissible except in a proceeding to determine costs
>
> . . .
>
> (d) . . . if the judgment that the offeree finally obtains is not more favorable that the unaccepted offer, the offeree must pay costs after the offer was made.

### 1. Rule 68 Requires That UMG Pay Veoh All Costs, Including Attorneys' Fees, Incurred Since its October 2008 Rule 68 Offer

In *Marek*, 473 U.S. 1, 9, the Supreme Court addressed how to determine whether attorneys' fees are included when assessing costs following the rejection of a Rule 68 Offer of Judgment that proved greater than the amount ultimately recovered by the offeree. In *Marek,* the Supreme Court held that where the underlying statute

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

18

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  authorizing costs included "fees," fees would be included as costs for purposes of

2  Rule 68. *Id.* The court applied this rule in finding that police officer defendants were

3  entitled to recover attorneys' fees incurred, pursuant to 42 U.S.C. § 1988, in an action

4  brought by the plaintiff under 42 U.S.C. § 1983, where the plaintiff recovered less

5  than the police officer defendants' Rule 68 Offer of Judgment. *Id.*

6  As the Supreme Court explained:

7  Rule 68's policy of encouraging settlement is neutral, favoring neither

8  plaintiff nor defendants; it expresses a clear policy of favoring settlement

9  of all lawsuits. . . Some plaintiffs will receive compensation in settlement

10  where, on trial, they might not have recovered less than what was

11  offered. And, even for those that would prevail at trial, settlement will

12  provide them with compensation at an earlier date without the burdens,

13  stress, and time of litigation . . . To be sure, application of Rule 68 will

14  require plaintiffs to 'think very hard' about whether continued litigation

15  is worthwhile; that is precisely what Rule 68 contemplates.

16  *Id.* at 10-11.

17  The Ninth Circuit has applied the Supreme Court's holding in *Marek* in

18  *Azizian, et al. v. Federated Dept. Stores, et al.,* 499 F.3d 950, 957-959 (9th Cir.

19  2007), holding that where Section 4 of the Clayton Act, 15 U.S.C. § 15(a)

20  includes costs, those "'costs on appeal" include all expenses defined as 'costs'

21  by an applicable fee-shifting statute, including attorney's fees." *Id.* at 958. As

22  the Ninth Circuit noted in explaining the holding of *Marek*:

23  'by the time Rule 68 was adopted. . . , federal statutes had authorized and

24  defined awards of costs' to include attorneys' fees 'for more than 85

25  years.' *Id.* at 7-8. [The Supreme Court] concluded that by not defining

26  the terms 'costs,' the drafters of Rule 68 likely 'intended to refer to all

27  costs properly awardable under the relevant substantive statute or other

28  authority.' *Id.* at 9. 'Thus, absent congressional expressions to the

19

1  contrary, where the underlying statute defines 'costs' to include

2  attorney's fees,' the court was 'satisfied such fees are to be included as

3  costs for purposes of Rule 68.'

4  *Azizian et al.,* 499 F.3d at 957.

5      In *Baker,* 431 F.Supp.2d 351, 361, 367 (S.D.N.Y. 2006), the prevailing

6  defendant manufacturer in a copyright infringement action filed a motion for fees

7  pursuant to Section 505 of the Copyright Act and Rule 68 of the Federal Rules of

8  Civil Procedure. In *Baker,* the professional photographer plaintiff brought an action

9  against a the defendant picture frame manufacturer alleging copyright infringement.

10 The defendant, Urban Outfitters, had inadvertently used a photograph to which the

11 plaintiff claimed rights as an insert in 862 plastic frames. *Id.* at 355. Upon the

12 defendant being informed of Baker's claims, the defendant apologized, immediately

13 stopped selling the products, and offered a settlement in an amount that more than

14 doubled the $3,896 in profit that it received from selling the frames. The plaintiff

15 rejected a Rule 68 Offer of Judgment in the amount of $9,096, and in the end,

16 recovered nothing from the litigation. In holding that the defendant was entitled to all

17 costs and attorney's fees incurred since the Offer of Judgment, the *Baker* court

18 explained:

19      As used in Rule 68, the term 'costs' refers to all costs awardable under

20      the statute or other authority that is the basis for the underlying claim.

21      *Marek* 473 U.S. 1, 9, (1985); *Wilson v. Nomura Securities Intern., Inc.,*

22      361 F.3d 86, 89 (2d. Cir. 2004). Thus, where the underlying statute

23      defines 'costs' to include attorney's fees, such fees are 'costs' for

24      purposes of Rule 68. *Wilson,* 361 F.3d at 89. The Copyright Act defines

25      'costs' to include attorneys' fees. Specifically, in Section 505, the statute

26      states as follows: 'In any civil action under this title, the court in its

27      discretion may allow the recovery of full costs. . . Except as otherwise

28      provided by this title, the court may also award a reasonable attorney's

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

fee to the prevailing party as part of the costs.' 17 U.S.C. § 505. For this reason, when the plaintiff in a copyright action recovers less than the defendant's formal offer of judgment under Rule 68 of the Federal Rules of Civil Procedure requires an award to defendant of its fees incurred after that offer. Nimmer on Copyright § 14.10 [B]. at 14-139, 14-140 (Matthew Bender & Co. Inc. 2005) (citing *Jordan v. Time, Inc.,* 111 F.3d 102, 104-05 (11th Cir. 1997)); *see also, Lucas v. Wild Dunes Real Estate. Inc.,* 197 F.R.D. 172, 175-76 (D.S.C. 2000) (awarding attorneys' fees to defendant, in view of Offer of Judgment that exceeded final judgment and in view of the fact that the Copyright Act, 17 U.S.C. § 505, defines 'costs' as including attorney's fees.)

*Id.* at 361.

Accordingly, the *Baker* court required the plaintiff to pay the defendant both its attorneys' fees and costs, totaling $388,424.54, after the making of the Offer of Judgment. *Id.* at 361-362. The *Baker* court calculated separately fees recoverable pursuant to Section 505 and Rule 68, and concluded that because the fees awarded under Section 505 of the Copyright Act represented the total amount of attorneys' fees, costs and expenses, it "subsumed" the Rule 68 amount.

Because the underlying fee-shifting statute, Section 505, defines costs to include attorney's fees, Rule 68 and the holdings of *Marek, Azizian and Baker* offer an independent basis to award Veoh its $2,859.073.40 in attorney's fees and $170,627.78 in costs incurred since Veoh's October 2008 Rule 68 Offer of Judgment. Veoh's Rule 68 Offer was for $100,000.00, which is more than the damages Plaintiffs received in light of Veoh's entitlement to the Section 512(c) safe harbor.

As the Supreme Court noted, Rule 68's "application . . . will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates." UMG, knowing that Veoh had already been found protected by the Section 512(c) safe harbor in another recent case, and with full

knowledge that Veoh had a strong DMCA policy and removed all alleged infringements at issue, continued to press on in the face of a reasonable settlement offer—requiring Veoh, a much smaller opponent, whose young business struggled under the cloud of enormously expensive litigation, to incur millions in additional attorneys' fees. ██████████████████████████████████ ██████████████████████████████ at the end of the day, UMG was awarded exactly zero in damages. UMG knew the risks, as Veoh cited the very caselaw discussed above in its Rule 68 Offer of Judgment, but chose to roll the dice in obtaining a decision on the merits. Accordingly, Rule 68 provides the Court an alternative basis to award to Veoh all fees and expenses incurred since October 2008 in the amount of $3,029,701.18. Ranahan Decl.

## C. **Calculation of Veoh's Fees**

For the reasons stated above, Veoh respectfully submit that the Court should order an award of reasonable attorneys' fees in favor of Veoh in this case. Once the Court has determined that Veoh is entitled to an award of attorneys' fees as the prevailing party, it must compute the amount of the reasonable attorneys' fees award. *Traditional Cat Ass'n., Inc. v. Gilbreath,* 340 F.3d 829, 832 (9th Cir. 2003). The Supreme Court has stated that "[t]he most useful starting point for determining the amount of a reasonable fee number is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

Based solely upon the time spent by Veoh's outside counsel on this case, these fees total $4,613,062.20. *See* Ranahan Decl., ¶¶ , Exh. D. Veoh's costs in this action total $204,530.11. Supporting documentation detailing the hours billed by outside counsel in this case and their hourly rates are attached to the Ranahan Decl. as Exh. D This documentation is summarized from contemporaneously prepared time records, and the requested rates are the customary rates charged by the fee movant's counsel in

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  similar litigation and are in line with those prevailing in the Los Angeles and New

2  York City legal markets. *See* Ranahan Decl., ¶ 16 and Exh. D.[6]

3  Since October 2008, when Veoh served UMG with its Rule 68 Offer of

4  Judgment, the time spent by Veoh's outside counsel on this case totals $2,859,073.40

5  in fees, and the costs incurred since October 2008 total $170,627.78.

6  As shown in the Declarations, Veoh's counsel spent substantial time on behalf

7  of Veoh, producing rounds of briefs simply seeking to have Plaintiffs identify the

8  works in this action and produce corresponding ownership information, participate in

9  extensive discovery, including extensive discovery motion practice (both offensive

10  and defensive), conducting and defending numerous depositions, investigating

11  UMG's claims, and preparing for trial, including filing and opposing numerous

12  motions *in limine* and *ex parte* applications. *Id.* The most recent docket report

13  demonstrates that this action is nearing 600 entries, and that number is skewed

14  downwards since attachments, such as declarations and proposed orders are reflected

15  as the same docket number as the original document.

16  Veoh reserves the right to supplement its request, adding to the amount sought

17  for attorney's fees time billed through December 14, 2009, including time spent

18  preparing this motion for attorneys' fees. A prevailing party is entitled to fees for time

19  preparing the fee application. *See Cruz v. Hauck,* 762 F.2d 1230 (5th Cir. 1985).

20  Accordingly, Veoh respectfully submits that, based on any one of the

21  independent grounds articulated above, an award of reasonable attorneys' fees in the

22  amount $4,613,062.20, (and/or $2,859,073.40 since October 2008), plus costs of

23  $204,530.11, (and/or $170,627.78 since October 2008), would be just and proper in

24  this case.

25

26

27  [6] Notably, Veoh does not seek to recover attorneys' fees for the considerable time and
effort expended by Veoh's in-house attorneys on this case, which could have been

28  devoted to more productive business-related matters.

# IV. **CONCLUSION**

For all of the foregoing reasons, Veoh is entitled to all fees and costs under Section 505 of the Copyright Act. Rule 68 provides an alternative basis to award Veoh its costs and fees since October 2008.

Dated: November 17, 2009

WINSTON & STRAWN LLP

By: _____
Michael S. Elkin
Thomas Patrick Lane
Jennifer A. Golinveaux
Rebecca Lawlor Calkins
Erin R. Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543