1    IRELL & MANELLA LLP
     Steven A. Marenberg (101033) (smarenberg@irell.com)
2    Brian D. Ledahl (186579) (bledahl@irell.com)
     Carter R. Batsell (254396) (cbatsell@irell.com)
3    1800 Avenue of the Stars, Suite 900
     Los Angeles, California 90067-4276
4    Telephone:   (310) 277-1010
     Facsimile:    (310) 203-7199
5
     Attorneys for Plaintiffs
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11   UMG RECORDINGS, INC., *et al*.,      )    Case No. CV-07-05744 AHM (AJWx)
                                          )
12            Plaintiffs,                 )    **UMG'S OPPOSITION TO VEOH'S**
                                          )    **MOTION FOR ATTORNEYS' FEES**
13        vs.                             )    **AND COSTS**
                                          )
14   VEOH NETWORKS, INC.,                 )    **Filed Concurrently Herewith:**
                                          )       **(1)  Declaration of Brian D. Ledahl**
15            Defendant.                  )            **in Support of UMG's**
                                          )            **Opposition**
16                                        )       **(2)  Declaration of Carter R.**
                                          )            **Batsell in Support of UMG's**
17                                        )            **Opposition**
                                          )
18                                        )    Judge:  Hon. A. Howard Matz
                                          )    Date:    December 21, 2009
19                                        )    Time:    10:00 AM
                                          )    Ctrm:    14
20   ─────────────────────────────────────

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2164180

UMG'S OPPOSITION TO VEOH'S MOTION FOR
ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  FACTS ........................................................................................................ 3

III.  ARGUMENT ................................................................................................. 9

    A.  Veoh Cannot Meet The Standard For "Prevailing Party" Status ........................................................................................ 9

    B.  Veoh Cannot Meet The Standard For Fee Awards Under 17 U.S.C. § 505 ........................................................................ 11

        1.  UMG's Motivation Was Proper ................................................. 11

        2.  UMG's Claims Against Veoh Were Reasonable ..................... 13

            a.  UMG asserted reasonable substantive claims ............... 13

            b.  UMG pursued its claims in a reasonable manner. .......................................................................... 16

        3.  Awarding Attorneys' Fees To Veoh Would Disserve The Purposes of the Copyright Act .......................... 18

    C.  Rule 68 Does Not Provide An Independent Basis For Awarding Fees And Costs Veoh Incurred After October 2008 ......................................................................................... 19

        1.  Veoh Must Satisfy Section 505 Even Under Rule 68 ............. 19

        2.  Veoh has not Shown that its Offer was More Favorable than the Injunctive Relief Obtained by UMG .................................................................................... 20

    D.  More Than $4 Million In Attorneys' Fees And Costs Is Not Reasonable ....................................................................... 21

        1.  Veoh has not Met its Burden of Showing that the Amount It Seeks Is Reasonable ............................................. 22

        2.  Veoh is not Entitled to Fees For Unreasonable Conduct ................................................................................. 24

    E.  If The Court Will Not Deny Veoh's Motion, It Should Defer Ruling Pending UMG's Appeal .................................... 25

IV.  CONCLUSION ............................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Abdallah,*
    948 F. Supp. 1449 (C.D. Cal. 1449) ................................................. 9

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001) ....................................................... 16

*Andretti v. Borla Performance Indus. Inc.,*
    426 F.3d 824 (6th Cir. 2005) ......................................................... 21

*Ariel (UK) Ltd. v. Reuters Group PLC,*
    2007 WL 194683, *1 (S.D.N.Y. Jan. 24, 2007) ............................... 18

*Assessment Technologies, LLC v. WIREData, Inc.,*
    361 F.3d 434 (7th Cir. 2004) ......................................................... 11

*Azizian v. Federated Dept. Stores, Inc.,*
    499 F.3d 950 (9th Cir. 2007) ......................................................... 20

*Baker v. Urban Outfitters, Inc.,*
    431 F. Supp. 2d 351 (S.D.N.Y. 2006) ............................................ 20

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health
    and Human Resources*, 532 U.S. 598 (2001) ................................... 9

*Childress v. Taylor*, 835 F. Supp.
    739 (S.D.N.Y. 1993) ...................................................................... 9

*Corbis Corp. v. Amazon.com, Inc.,*
    351 F. Supp.2d 1090 (W.D. Wash. 2004) ...................................... 16

*Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,*
    246 F.3d 142 (2d Cir. 2001) .......................................................... 22

*Crossman v. Marcoccio,*
    806 F.2d 329 (1st Cir. 1986) ......................................................... 19

*Data General Corp. v. Grumman Systems Support Corp.,*
    825 F. Supp. 361 (D. Mass. 1993) ................................................. 24

*Domanski v. Funtime, Inc.,*
    149 F.R.D. 556 (N.D. Ohio 1993) .................................................. 21

*Donald Frederick Evans and Associates, Inc. v. Continental Homes,
    Inc.*, 785 F.2d 897 (11th Cir. 1986) ............................................... 13

*E.E.O.C. v. Bailey Ford, Inc.,*
    26 F.3d 570 (5th Cir. 1994) ........................................................... 19

*Elektra Entertainment Group Inc. v. Brimley,*
    2006 WL 2367135, *4 (S.D. Ga. Aug. 15, 2006) ........................... 12

Page(s)

*Ellison v. Robertson,*
357 F.3d 1072 (9th Cir. 2004) ........................................................ 16

*Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994) ...............................................................passim

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
76 F.3d 259 (9th Cir. 1996) ........................................................ 16

*Garnier v. Andin Intern., Inc.,*
884 F. Supp. 58 (D.R.I. 1995) ........................................................ 13

*Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.,*
265 F.3d 638 (7th Cir. 2001) ........................................................ 20

*Hendrickson v. eBay, Inc.,*
165 F. Supp.2d 1082 (C.D. Cal. 2001) ........................................................ 16

*In re Aimster Copyright Litigation,*
334 F.3d 643 (7th Cir. 2003) ........................................................ 16

*Io Group, Inc. v. Veoh Networks, Inc.,*
586 F. Supp.2d 1132 (N.D. Cal. 2008) ................................................5, 6, 14

*Lifshitz v. Walter Drake & Sons, Inc.,*
806 F.2d 1426 (9th Cir. 1986) ........................................................ 13

*Lotus Dev. Corp. v. Borland Int'l Inc.,*
140 F.3d 70 (1st Cir. 1998) ........................................................ 13

*Luken v. Int'l Yacht Council, Ltd.,*
581 F. Supp.2d 1226 (S.D. Fla. 2008)........................................................ 12, 18

*Maljack Productions, Inc. v. Palisades Entertainment,*
1995 WL 779154 at *3 (C.D. Cal. Jun. 23, 1995) ........................................22

*Marek v. Chesny,*
473 U.S. 1 (1985) ........................................................ 19, 20

*Matthew Bender & Co. v. West Publ'g Co.,*
240 F.3d 116 (2d Cir. 2001) ........................................................ 18, 25

*Mercer v. Duke University,*
401 F.3d 199 (4th Cir. 2005) ........................................................ 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
545 U.S. 926 (2005) ........................................................ 16

*Mitek Holdings, Inc. v. Arce Eng'g Co.,*
198 F.3d 840 (11th Cir. 1999) ........................................................ 18

Page(s)

*O'Brien v. City of Greers Ferry*,
    873 F.2d 1115 (8th Cir. 1989)................................................................20

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ..............................................................................24

*Perfect 10, Inc. v. Amazon.com, Inc.*
    487 F.3d 701 (9th Cir. 2007)................................................................16

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007)...........................................................6, 16

*Perfect 10, Inc. v. CWIE, LLC*,
    2005 WL 5957973, *3 (C.D. Cal. Feb. 10, 2005)..............................18

*Queenie, Ltd. v. Nygard Int'l*,
    204 F. Supp. 2d 601 (S.D.N.Y. 2002)...................................................22

*Reiter v. MTA New York City Transit Authority*,
    457 F.3d 224 (2d Cir. 2006).................................................................21

*Robinson v. Lopez*,
    2003 WL 23162906, *3 (C.D. Cal. Nov. 24, 2003)..............................23

*The Football Association Premier League Limited, et al, v. YouTube,
    Inc., et al.*, Case No. 07-CV-02103 LLS (S.D.N.Y.) .....................14

*U.S. v. Trident Seafood Corp.*,
    92 F.3d 855 (9th Cir. 1996)..................................................................20

*UMG Recordings, Inc., et al. v. Grouper Networks, Inc., et al.*,
    06-CV-6561 AHM (AJWx)....................................................................15

*UMG Recordings, Inc., et al. v. MySpace, Inc., et al.*,
    06-CV-7361 AHM (AJWx)....................................................................15

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
    877 F.2d 1120 (2d Cir. 1989)................................................................10

**Statutes**

17 U.S.C. § 504(a) ...........................................................................................11

17 U.S.C. § 505.........................................................................................passim

17 U.S.C. § 512(c) ....................................................................................passim

17 U.S.C. § 512(c)(1) ........................................................................................9

17 U.S.C. § 512(j)........................................................................................6, 10

Page(s)

**Other Authorities**

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright
    § 12B.01 (Matthew Bender, Rev. Ed.) ........................................................ 14

**Rules**

Fed. R. Civ. P. 54 ................................................................................... 25

Fed. R. Civ. P. 54(d)(2)(B)(i) ................................................................ 25

Fed. R. Civ. P. 68 ........................................................................ 19, 20, 21

Fed. R. Civ. P. 68(d) ............................................................................. 20

# I.    **INTRODUCTION**

Defendant Veoh Networks, Inc. ("Veoh") fails to satisfy the standard for recovering attorneys' fees in this case under 17 U.S.C. § 505, the Supreme Court's *Fogerty* decision, and other applicable precedents.

Before this litigation began, Veoh operated an internet business that reproduced, displayed, and offered free downloads of thousands of videos embodying copyrighted sound recordings and musical compositions owned or controlled by Plaintiffs UMG Recordings, Inc., *et al*. (collectively "UMG"). Though Veoh reaped financial benefits from these uses of UMG's intellectual property, it did so without permission from UMG.  Despite objections from UMG, Veoh indicated it had no obligation to compensate UMG for the use of UMG's copyrighted material, had no obligation to use then-available filtering technologies, and no obligation to take steps to remedy the obvious and rampant unauthorized use of copyrighted works on its service.  Indeed, Veoh contended that it needed to do nothing but respond to specific notices of copyright infringement from UMG (or other copyright holders) and remove only the specific videos identified in such notices.  UMG disagreed then with Veoh's contentions and still does.

This disagreement ultimately led to litigation between the parties (which was actually initiated by Veoh, a fact unmentioned in Veoh's moving papers).  After Veoh brought a declaratory relief action in the Southern District of California, UMG filed suit in this Court to stop Veoh's rampant unauthorized and uncompensated use of UMG's copyrighted property.  Veoh ultimately succeeded in obtaining a partial summary judgment establishing its entitlement to a limitation on liability under the Digital Millennium Copyright Act ("DMCA") – a ruling with which UMG vigorously disagrees and is currently appealing.  After that ruling, the parties entered into a stipulation to facilitate the entry of final judgment.

By the time of that judgment, however, much had changed about Veoh.  Among other significant changes, Veoh completely reversed itself regarding the use

of filtering technology. Before this lawsuit began, Veoh had no content-based filtering of any kind. During this lawsuit, Veoh began using the Audible Magic filtering technology and eventually used that technology to screen all of its videos, a fact called out by the Court in granting summary judgment. Veoh's implementation of Audible Magic resulted in the removal of thousands of videos specifically containing UMG's copyrighted works in response to UMG's assertions of infringement in this case. Ultimately, even after the Court granted Veoh's motion for partial summary judgment, Veoh entered into a stipulated judgment that the videos UMG had identified were all removed from Veoh's service, that they could not be reinstated to Veoh's service, and that Veoh would maintain the termination of certain user accounts. Hence the relevant facts about Veoh at the end of this lawsuit were vastly changed from the circumstances at the time UMG filed this action.

Against this backdrop, Veoh asks the Court to award it more than $4 million in attorneys' fees and costs. Veoh seeks this award despite having been forced, in response to this lawsuit, to change its business practices significantly. Though the end result in this case was not the result sought by UMG, it is not an appropriate case to award fees to Veoh. Under Section 505 of the Copyright Act, to obtain an award of fees, Veoh must demonstrate that it is the prevailing party and that its fees are appropriate to award under standards laid out by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Under *Fogerty*, fees should only be awarded where four factors warrant such an award: (1) whether the claim was frivolous; (2) whether the claim was pursued with an improper motivation; (3) whether the claim was objectively unreasonable; and (4) whether there is a need in the particular circumstances to advance considerations of compensation and deterrence.

None of these factors supports an award of fees here. UMG's copyright claims were brought in good faith, for a legitimate purpose, and were objectively reasonable under any fair-minded view. UMG's claims and Veoh's defenses addressed important issues of copyright law, particularly those related to the

DMCA, in which this Court found that there were no controlling precedents.  For example, the Court stated, with respect to UMG's summary judgment motion, that key issues raised here concerning the DMCA were raised "in a context not previously addressed judicially."  To suggest that UMG's claims could be objectively unreasonable under such circumstances defies logic and precedent.

In an implicit acknowledgement that UMG's claims were objectively reasonable, Veoh also tries to paint UMG as needlessly overlitigating this case and increasing its cost.  The opposite is true, a careful review of the record reveals.  UMG litigated this case fairly and reasonably; Veoh did not.  As described below, and as confirmed by court orders in the case, Veoh repeatedly withheld relevant evidence in discovery (leading to an Order requiring sworn certification of its production), destroyed relevant data regarding its videos (leading to an Order requiring the preservation of the data), and filed excessive and wasteful motions (leading to, among other things, an Order that Veoh could no longer file *ex parte* applications).  Simply put, Veoh's suggestion that UMG was the party increasing the costs of this case is pure fiction.

Finally, even if Veoh was entitled to some attorneys' fees here (and it is not), its request for over $4 million is unsupportable.  As explained below, Veoh's attorneys' fees request – which seeks every penny it recorded in this case without any discount for any reason – is excessive and unreasonable.  On any and all of these grounds, this Court should deny Veoh's motion for attorneys' fees and costs.[1]

## II.    FACTS

Veoh's "Statement of Facts" paints a misleading picture of a lawsuit driven by improper motives and devoid of any reasonable basis.  Veoh further suggests that during the course of the litigation, UMG drove up the costs of suit through over-

---

[1] If the Court is inclined to award any fees, it should defer that award until UMG's appeal of the Court's judgment is resolved.  That resolution might confirm – even if the Ninth Circuit affirms this Court's rulings – that a fee award is inappropriate.

1   litigation.  This is a distortion, and the record reveals the opposite.[2]

2          This litigation began with a genuine dispute about the Copyright Act, the

3   DMCA, and how these statutes apply to a service like Veoh.  Before any lawsuit

4   was ever filed, the parties met to discuss such issues.  UMG had determined that

5   Veoh was hosting, displaying, and offering free downloads of thousands of videos

6   which embodied UMG's copyrighted works, all without UMG's permission.  The

7   parties fundamentally disagreed about whether the DMCA offered Veoh a limitation

8   on liability for these actions, and what responsibilities Veoh had to avoid such

9   infringement.  Ironically, given Veoh's claims in this motion, it was Veoh that filed

10  the first suit between the parties: a case filed in the Southern District of California

11  that was ultimately dismissed by the court as an improper, tactical declaratory relief

12  action.  Only after Veoh sued UMG, did UMG file suit against Veoh in this district.

13         When UMG filed suit, Veoh had not implemented any content-based filtering

14  technology, such as the Audible Magic filter.  Declaration of Brian Ledahl ("Ledahl

15  Decl.") Ex. A (9/11/2009 Order at 5) (Dkt. No. 575).  Veoh maintained from the

16  beginning that its only obligation was to respond to specific notices of copyright

17  infringement and that it had no other obligations to identify infringing content on its

18  service, whether through the application of filtering technology or other means.

19  UMG fundamentally disagreed with this view as a correct application of the

20  requirements of the Copyright Act.  Even after UMG's complaint identified various

21  infringed works and specific videos on Veoh's service that infringed UMG's

22  copyrights, Veoh did nothing to remove those videos or such content from its

23  service, still contending that only a formal DMCA infringement notice would lead

24  to removal of the videos.  *See* Ledahl Decl. Exs. B & C (Letters from M. Elkin and

25  S. Marenberg re: videos available through Veoh).

26

27         [2] UMG does not attempt here to respond to each individual factual error set
    forth in Veoh's motion, but rather to respond only to those most germane to the
28  instant motion.

1    The parties' disagreement over the requirements of the Copyright Act for
2  services such as Veoh's reflected complex issues of copyright law.  Numerous
3  contemporaneous press accounts characterized Veoh as a mass infringer of
4  copyrights.  Ledahl Decl. Exs. D-F.  UMG had previously brought similar claims
5  against other user-uploaded video businesses, such as MySpace and Grouper.  Those
6  cases were eventually resolved through confidential settlements.  Academic
7  literature and legal professionals described the issues presented by this dispute as
8  largely unresolved.  For example, at a June 2008 conference on internet businesses
9  held at Stanford University (approximately 9 months after UMG filed suit), panelists
10 expressed the view that the applicability of the DMCA to user-uploaded video
11 services like Veoh remained an unresolved issue.  Ledahl Decl. Ex. G at minutes
12 28:04-28:45, 50:30-51:06 (audio from conference).  The panelists included Andrew
13 Bridges, one of the attorneys for whom Veoh seeks fees here.

14    Veoh attempts to make much of an August 27, 2008 decision of a Magistrate
15 Judge in the Northern District of California in *Io Group, Inc. v. Veoh Networks, Inc.*,
16 586 F. Supp. 2d 1132 (N.D. Cal. 2008).  But the *Io Group* decision does not
17 remotely establish that UMG's claims were objectively unreasonable.  The *Io Group*
18 decision was issued long after this suit was commenced and only a few days before
19 UMG was to file its motion for partial summary judgment here pursuant to a
20 briefing schedule agreed between the parties.  Ledahl Decl., ¶ 2.  Further, as this
21 Court has held, the *Io Group* decision did not address issues raised by UMG in its
22 motion and UMG's motion "require[d] the Court to construe and apply the phrase
23 'by reason of the storage at the direction of a user' in a context not previously
24 addressed judicially."  Ledahl Decl. Ex. L (12/31/2008 Order at 2) (Dkt. No. 294).
25 Additionally, the *Io Group* decision was based upon a factual record very different
26 from this case.  For example, in *Io Group*, the court noted that Veoh displayed no
27 advertising with the infringing videos – unlike the admitted facts here.  *See Io*
28 *Group*, 586 F. Supp. 2d at 1136.  Similarly, the *Io Group* case lacked any

1  meaningful evidence relating to Veoh's knowledge (either actual or "red flag") as

2  was adduced in this case.  And in any event, this Court affirmatively disagreed with

3  the reasoning employed by the *Io Group* decision in important ways.  For example,

4  although this Court concluded that the "right and ability to control" standard in the

5  DMCA is *not* the same as the common law standard for vicarious liability and used

6  that reasoning to support its decision to grant Veoh's motion, the *Io Group* Court

7  reached the opposite conclusion, stating that "[t]hese requirements [of right and

8  ability to control and direct financial benefit] grew out of the common law standard

9  for vicarious liability, and the Ninth Circuit has indicated that these elements under

10 the DMCA are to be interpreted consistently with common law." *Id.* at 1150 (citing

11 *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007)).  Thus, if

12 anything, *Io Group* underscores the objective reasonableness of UMG's claims.

13     Veoh also asserts that this Court's December 31, 2008 Order somehow fully

14 resolved this case and that UMG's continued litigation of its claims after that

15 decision was improper and unreasonable.  But this Court rejected that view in the

16 December 31, 2008 Order.  There, the Court ruled that "Veoh asks that the Court

17 grant Veoh summary judgment 'with respect to its eligibility for Section 512(c) safe

18 harbor.'  The Court may not do so until Veoh has shown that it has met the other

19 requirements of that section (*e.g.*, that it does not receive a financial benefit directly

20 attributable to the infringing activity)." Ledahl Decl. Ex. L at 16 n.10.  These issues

21 remained properly unresolved until the Court's September 11, 2009 ruling on

22 Veoh's motion.  And even that ruling did not dispose of all issues in the case

23 because of the potential availability of injunctive relief under 17 U.S.C. § 512(j),

24 notwithstanding the Court's summary judgment ruling.  To facilitate the entry of

25 final judgment, Veoh stipulated to a judgment imposing the same obligations

26 contemplated by Section 512(j).

27     Veoh's "Statement of Facts" also strives to create the false impression that

28 UMG unnecessarily increased the costs of this litigation through discovery conduct.

1    Here, Veoh deliberately misstates or omits the true facts confirming that Veoh, not

2    UMG, increased the costs of litigation through sharp tactics.

3         UMG filed five discovery motions in this case (not eight as Veoh suggests),

4    and Magistrate Judge Wistrich granted all of them, in whole or in part.  *See*

5    Declaration of Carter Batsell ("Batsell Decl.") Exs. C, E-H (Dkt. Nos. 220, 267,

6    289, 400, 401).  These motions sought necessary, relevant discovery, improperly

7    withheld by Veoh.  During the hearing on UMG's first motion to compel, Judge

8    Wistrich commented to Veoh, which had theretofor refused to conduct a reasonable

9    search for responsive documents, that "some of what you agree to do in your letter

10   you should have done from the very beginning.  And I don't know why you're still

11   waiting to do that."  Batsell Decl., ¶ 6 & Ex. D (8/25/2008 Hrg. Tr. at 36).  UMG

12   was likewise forced to pursue motions to stop Veoh's ongoing destruction of

13   evidence.  Specifically, Veoh was actively destroying information it received from

14   Audible Magic about the copyrighted works the filter identified on Veoh's service.

15   Judge Wistrich issued an order directing Veoh to stop destroying this material.  *Id.*

16   at Ex. I (11/18/2008 Order) (Dkt. No. 217).  Finally, UMG was forced to bring a

17   motion to obtain discovery that Veoh was *already ordered* to provide, but

18   nonetheless continued to withhold.  Judge Wistrich ruled that "[t]he court is

19   concerned about what appear to be unreasonably narrow interpretations by Veoh of

20   some of UMG's discovery requests, a practice which calls into question the

21   completeness of its entire production.  Anomalies in Veoh's production, which may

22   or may not have an entirely innocent explanation, heighten that concern."  *Id.* at Ex.

23   H (Dkt. No. 401).  Judge Wistrich ordered Veoh to certify the completeness of its

24   production, under penalty of perjury.  It did so only after producing thousands of

25   additional documents – essentially admitting that it had improperly withheld

26   documents it was ordered to produce.  *Id.*; *see also* Ledahl Decl. Ex. H (Dkt. No.

27   430).  Notably, as explained below, Veoh is seeking to recover attorneys' fees

28   incurred in opposing all of these discovery matters.

1    Veoh, however, pursued wasteful discovery practices.  For example, Veoh

2  filed many meritless *ex parte* applications, so many in fact that Judge Wistrich

3  issued an order forbidding Veoh from filing any more without court permission.

4  Batsell Decl. Ex. P (12/05/2008 Order) (Dkt. No. 270)  Judge Wistrich

5  unambiguously stated: "Although the Court has perhaps been more liberal than it

6  should have been in tolerating Veoh's use of the ex parte application mechanism,

7  Veoh has overused it to the point that it is unduly burdening both the Court and

8  UMG's counsel.  Therefore, from this point forward, Veoh is forbidden from filing

9  ex parte applications regarding discovery disputes without obtaining the prior

10  telephonic permission of the Clerk."  *Id.*  Veoh also wasted resources by repeatedly

11  filing the same discovery motions.  On August 25, 2008, the Court denied Veoh's

12  first motion to compel, which was filed even before Veoh conducted a reasonable

13  review of the documents produced by UMG.  During the hearing, the court noted

14  that Veoh's motion contained "hundreds of requests," that it "exceed[ed] 300-

15  pages," that Veoh's grouping of requests was "so broad that [it] really [wasn't]

16  meaningful," and that many "of [Veoh's requests] probably have been largely

17  satisfied at this point."  *Id.* at Ex. D (8/25/2008 Hrg. Tr.) (19:16-18, 22:12-13).  The

18  Court therefore "den[ied Veoh's] motion to compel" without prejudice to Veoh's

19  right to "file [another] motion"—after "complet[ing its] review of [UMG's]

20  production" and provided that Veoh organized its subsequent motion "in a sensible

21  way."  *Id.* (21:23, 21:25-22:1, 23:16-17).  In defiance of Judge Wistrich's ruling,

22  Veoh renewed its motion on October 29, 2008, which the court denied (again) on

23  November 21, 2008, stating: "the court previously denied a motion to compel filed

24  by Veoh because that motion was presented in an unmanageable manner.  Rather

25  than file a new motion including copies of the discovery requests and responses

26  thereto that are at issue, Veoh merely refers the court to a portion of the 314-page

27  joint stipulation filed in support of the previously denied motion."  *Id.* at Ex. J

28

1    (11/21/2008 Order) (Dkt. No. 219).[3]  Yet again, Veoh seeks fees related to this

2    activity.

3                         III.    **ARGUMENT**

4    **A.    Veoh Cannot Meet The Standard For "Prevailing Party" Status**

5           To recover any award of attorneys fees, Section 505 requires that the party

6    seeking such an award be the "prevailing party" in the litigation.  17 U.S.C. § 505.

7    Prevailing party status is not used colloquially to refer to the party who generally is

8    more satisfied with the overall result in the action.  To the contrary, the "prevailing

9    party" for purposes of such awards is a party that "has been awarded some relief by

10   the court."  *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health*

11   *and Human Resources*, 532 U.S. 598, 603 (2001).  The Supreme Court further holds

12   that a party that receives "an award of nominal damages" or obtains relief through a

13   "settlement agreement[] enforced through a consent decree" qualifies as a prevailing

14   party.  *Id.* at 604.  Thus, although a defendant may be the party more satisfied with

15   the result of a copyright action, that defendant may not be the "prevailing party" for

16   purposes of an award of fees or costs.  For example, a plaintiff that recovered only

17   $1 on her claims was nonetheless the "prevailing party" for purposes of such

18   considerations.  *Mercer v. Duke University*, 401 F.3d 199, 203 (4th Cir. 2005).[4]

19          While these standards may not comport with a colloquial understanding of a

20          _____

21          [3] Veoh also tries to suggest that UMG unduly delayed in identifying the
     infringing videos at issue.  The record shows that the Court denied Veoh's motion to
22   compel such information because it was not yet ripe.  Batsell Decl. Ex. J
     (11/21/2008 Order) (Dkt. No. 219).  Further, the Court recognized that Veoh's own
23   destruction and delay in providing Audible Magic data hampered UMG's efforts
     and thus extended UMG's time to identify infringing videos to May 11, 2009.  *Id.* at
24   Ex. G (4/6/2009 Order) (Dkt. No. 400).

25          [4] *See also A&M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1460 (C.D.
     Cal. 1449) (only "prevailing plaintiffs are entitled to an injunction prohibiting the
26   defendant from any further infringement of the plaintiffs' . . . copyrighted
     material.");  *Childress v. Taylor*, 835 F. Supp. 739, 742-43 (S.D.N.Y. 1993) (a
27   plaintiff that "obtain[s] injunctive relief" but "fail[s] in significant measure to
     establish her claim for actual damages," even if "litigated to the hilt," is nonetheless
28   a prevailing party).

1  "prevailing party," they govern Veoh's motion, and under them, Veoh cannot

2  establish that it was the "prevailing party."  The Court concluded that Veoh was

3  entitled to Section 512(c)'s safe harbor.  That finding did not immunize Veoh's

4  infringement nor did it eliminate all relief available to UMG.  *See* 17 U.S.C.

5  § 512(c)(1) ("A service provider shall not be liable for monetary relief, or, except as

6  provided in subsection (j), for injunctive or other equitable relief . . . ").  The relief

7  under 17 U.S.C. § 512(j) remained available to UMG, as acknowledged in the

8  Court's October 2, 2009 minutes: "if Veoh seeks to have judgment entered in this

9  case it will have to move for summary judgment as to potential injunctive relief."

10  Ledahl Decl. Ex. J (Dkt. No. 579).  Veoh ultimately stipulated to the injunctive

11  relief provided under 17 U.S.C. § 512(j) despite the Court's summary judgment

12  rulings. Veoh "agree[d] to continue to disable access to the Allegedly Infringing

13  Video Files [thousands of which Veoh did not remove until after UMG filed suit]

14  and to continue to use hash filtering to prevent video files with hash values that are

15  identical to the Allegedly Infringing Video Files from being accessed by users."

16  Ledahl Decl. Ex. K (¶ 1.a).  Veoh also agreed "not [to] reinstate accounts that were

17  terminated as a consequence of Veoh receiving multiple DMCA notices concerning

18  the account holder posting allegedly infringing video files, and that included one or

19  more of the Allegedly Infringing Video Files," and "not [to] allow such terminated

20  account holders to open a new account with the same user name or email address

21  associated with the terminated account."  *Id.* (¶ 1.b).  While this is certainly not the

22  scope of relief that UMG sought, nor that UMG believes is appropriate, it

23  nonetheless renders Veoh unable to claim "prevailing party" status under the

24  applicable rules and precedents for purposes of seeking attorneys' fees.  In similar

25  circumstances, courts conclude that no party may claim "prevailing party" status.

26  *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126-27 (2d Cir.

27  1989) ("neither [the plaintiff's] nor [the defendant's] success was sufficiently

28  significant to mandate an award of attorneys' fees" where the plaintiff withdrew one

1   claim of infringement, earned only $100 in statutory damages and a permanent

2   injunction on the other, and the defendant "had offered to consent to the entry of a

3   permanent injunction long before trial began").

4   **B.    <u>Veoh Cannot Meet The Standard For Fee Awards Under 17 U.S.C. § 505</u>**

5          Even if Veoh was the prevailing party, the Court has "discretion" to award or

6   withhold Veoh's attorneys' fees.  17 U.S.C. § 505.  The Court should grant a party's

7   request for fees only if "frivolousness, motivation, objective unreasonableness (both

8   factual and in the legal components of the case) and the need in particular

9   circumstances to advance considerations of compensation and deterrence" warrant

10  the award.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).[5]

11         These factors are absent here.  UMG's claims against Veoh for direct,

12  contributory, vicarious, and inducing copyright infringement were non-frivolous,

13  objectively reasonable, and consistent with the purposes of the Copyright Act.  Nor

14  has Veoh introduced evidence that UMG had an improper motive in bringing suit.

15  UMG sought to hold Veoh accountable for its infringement of thousands of UMG's

16  copyrights—it was undisputed that Veoh displayed and/or distributed videos

17  implicating copyrights owned or controlled by UMG.  An award of fees for Veoh is

18  therefore inappropriate.

19         **1.    <u>UMG's Motivation Was Proper</u>**

20         UMG sued Veoh to protect its copyrights.  UMG asserted in this Court (and

21

22         [5] Veoh cites *Assessment Technologies, LLC v. WIREData, Inc.*, 361 F.3d 434,
    439 (7th Cir. 2004) to claim that for a prevailing defendant, there is a strong

23  presumption in favor of attorneys' fees.  Mot. at 12:5-7.  The decision does not
    support this claim and is not the law of this Circuit.  The court acknowledged its

24  break from Supreme Court and other circuits' precedent, including the Ninth
    Circuit's.  *Id.* at 436 ("[t]he courts have not said . . . that the symmetry of plaintiff

25  and defendant in copyright cases requires a presumption that the prevailing party,
    whichever it is, is entitled to an award of attorneys' fees.  They have instead left it to

26  judicial discretion by setting forth a laundry list of factors, all relevant but none
    determinative").  Though breaking from precedent, the opinion still confirms that

27  the strength of each party's case is a significant factor in determining the
    appropriateness of fees.  *Id.* at 436-37.

28

1  now asserts in the Court of Appeals) that Veoh is liable to UMG for direct,

2  contributory, vicarious, and inducing copyright infringement and not entitled to

3  Section 512(c)'s liability limitations.  UMG may pursue damages and injunctive

4  relief for such infringement, which here encompassed thousands of videos that were

5  collectively displayed and downloaded millions of times.  *See* 17 U.S.C. § 504(a).

6  There is nothing untoward or inappropriate about pursuing those remedies.  *See*

7  *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008)

8  ("[i]t goes without saying that protection of one's copyright constitutes a

9  permissible motivation in filing a copyright infringement case against one whom the

10  copyright holder believes in good faith to have infringed the copyright").  Veoh

11  argues that UMG was not "genuinely interested in attempting to stop the

12  infringements it alleges in this case" and should "have simply notified Veoh of them

13  as required by the DMCA."  Mot. at 17:27-18:1.  This argument misunderstands the

14  core dispute.  As a music company, copyrights are UMG's core assets.  Veoh used,

15  without permission, UMG's copyrighted content for Veoh's own financial gain.

16  Other businesses that operated similar services obtained licenses from UMG for the

17  use of its content and provided appropriate compensation for such use.  UMG could

18  not simply allow Veoh's actions to go unchallenged.  Such actions can devastate

19  UMG's business.  *See generally Elektra Entertainment Group Inc. v. Brimley*, 2006

20  WL 2367135, *4 (S.D. Ga. Aug. 15, 2006) ("The creation of online media

21  distribution systems, like the one used by Defendant, has left Plaintiffs' sound

22  recordings vulnerable to massive worldwide infringement by potentially tens of

23  millions of users.  Such widespread infringement, left unchecked will undoubtedly

24  result in recording companies' sustaining devastating financial losses.").

25      While Veoh asserts that the DMCA shields it from liability, UMG contended

26  that Veoh was not entitled to such protections and was responsible for preventing

27  that infringement.  UMG did not aim, as Veoh baselessly claims, to "extract an

28  extortionist settlement or cripple a young technology company" in pursuing

1    damages for that infringement.  Mot. at 18:4-5.  Rather, UMG sought to stop

2    rampant infringement of its rights and to obtain compensation for that unauthorized

3    use.  The record is clear that UMG has worked with numerous "young technology

4    companies" in creative ways to make UMG content available in a variety of formats.

5    UMG produced dozens of license agreements in this case documenting various

6    business arrangements with comparably young technology companies in the digital

7    arena.  Ledahl Decl., ¶ 3.  Likewise, through licenses (entered into without

8    litigation) with YouTube, or confidential settlements with MySpace and Grouper,

9    UMG has demonstrated its willingness to work with user-uploaded websites'

10   reliance on copyrighted audio-visual content.  Veoh was different – it espoused

11   nominal respect for copyrights, yet used copyrighted material without compensating

12   the copyright holders for its use.  As a business dependent on copyrighted content,

13   this was a practice UMG could not, and was not obliged to, ignore.

14          **2.    <u>UMG's Claims Against Veoh Were Objectively Reasonable</u>**

15          Veoh suggests that UMG's claims were objectively unreasonable and that

16   UMG litigated this case in an unreasonable manner.  These arguments are belied by

17   an analysis of the record.

18          **a.    UMG asserted reasonable substantive claims**

19          Far from being objectively unreasonable, UMG's claims and Veoh's defenses

20   presented important issues that the Court acknowledged were previously unresolved,

21   relating to the application of copyright law to user-uploaded video services, and the

22   obligations and responsibilities of such services to police themselves and avoid

23   infringement.  Where a case presents "substantial questions of first impression," an

24   award of attorneys' fees is not appropriate.  *See Lifshitz v. Walter Drake & Sons,*

25   *Inc.*, 806 F.2d 1426, 1435 (9th Cir. 1986) (denying attorneys' fees where issues

26   presented were "substantial questions of first impression in this circuit").  Similarly,

27   a court should not award attorneys' fees against a party that brought novel, complex,

28   or colorable claims, or took a "reasonable stand on an unsettled principle of law."

1  *Garnier v. Andin Intern., Inc.*, 884 F. Supp. 58, 62 (D.R.I. 1995) (denying request

2  for attorneys' fees by defendant that obtained summary judgment); *see also Donald*

3  *Frederick Evans and Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897,

4  916-17 (11th Cir. 1986) (affirming denial of attorneys' fees where plaintiff asserted

5  "colorable copyright claims"). "When close infringement cases are litigated,

6  copyright law benefits from the resulting clarification of the doctrine's boundaries."

7  *Lotus Dev. Corp. v. Borland Int'l Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (affirming

8  denial of attorneys' fees to prevailing defendant).

9      Veoh's contention that UMG's copyright claims were "objectively

10  unreasonable" borders on the preposterous. UMG's claims raised issues of

11  copyright law that third parties and Veoh's own lawyers recognized as important

12  and unresolved. When UMG brought suit, the press regularly referred to Veoh as a

13  massive copyright infringer. Ledahl Decl. Exs. D-F. The leading treatise on

14  copyright law has said "[a]mong the many particular questions to arise as to the

15  treatment of related defendants, one of the most difficult concerns the liability of

16  online service providers for copyright infringement by others that may traverse the

17  providers' facilities." 3 Melville B. Nimmer & David Nimmer, Nimmer on

18  Copyright § 12B.01 (Matthew Bender, Rev. Ed.). Similarly, at a June 2008

19  conference on internet businesses, panelists (including a Winston & Strawn partner

20  for whom Veoh seeks to recover fees) acknowledged that the issue of whether the

21  DMCA applied to services like Veoh's remained unresolved. Ledahl Decl. Ex. G.

22      This Court too acknowledged that UMG's motion for partial summary

23  judgment "require[d] [it] to construe and apply the phrase 'by reason of the storage

24  at the direction of a user' in a context not previously addressed judicially." Ledahl

25  Decl. Ex. L (12/31/2008 Order at 2). And the Court acknowledged "labor[ing]

26  extensively" in reaching its decision on Veoh's motion for summary judgment.

27  Ledahl Decl. Ex. I (9/8/2009 Hearing Tr.) (1:21-22). The Court also suggested that

28  no case but *Io Group* has addressed the applicability of Section 512(c) to user-

1  uploaded video sites and, as noted, that *Io Group* left unresolved many of the issues

2  presented by UMG's claims.  Ledahl Decl. Ex. L (12/31/2008 Order at 2).  The

3  Court's rulings belie Veoh's claim that UMG's suit was "objectively unreasonable."

4      Further, at least three contemporaneous cases – none of which were resolved

5  when UMG brought this action – raise claims similar to those UMG brought here.

6  *See Io Group*, 586 F. Supp. 2d at 1132; *The Football Association Premier League*

7  *Limited, et al, v. YouTube, Inc., et al.*, Case No. 07-CV-02103 LLS (S.D.N.Y.),

8  consolidated with *Viacom Int'l, Inc. v. YouTube, Inc.*  Were UMG's claims as

9  frivolous as Veoh asserts, it is unlikely that other respected organizations and

10  companies would be asserting them as well.[6]

11      In any event, UMG position was not, and is not, without substantial case law

12  support.  UMG's briefs and arguments were not based on speculation or

13  unreasonable assertions, but rather cited specific textual arguments from the DMCA

14  itself, its legislative history, and many case authorities.

15      Rather than meaningfully address the nature of UMG's claims, and the fact

16  that they presented important issues in a developing area of copyright law, Veoh

17  tries to parse out specific sub-issues in the case and suggest that UMG's position on

18  such issues was unreasonable.  In each case, Veoh ignores the fact that the core

19  issues in this case were not the subject of settled decisions in Veoh's favor – far

20  from it.  Such issues included the basic application of section 512(c) to Veoh's

21  activities, whether the facts supported a finding that Veoh had knowledge (actual or

22  "red flag" knowledge) of infringement on its service; whether Veoh had the right

23  and ability to control infringing activity, and whether Veoh received a direct

24  financial benefit from its infringing activity.

25      UMG's positions were not asserted in a vacuum.  UMG cited substantial

26  _____

27  [6] Similarly, if Veoh were correct, UMG and the defendants in *UMG Recordings, Inc., et al. v. Grouper Networks, Inc., et al.*, 06-CV-6561 AHM (AJWx), and in *UMG Recordings, Inc., et al. v. MySpace, Inc., et al.*, 06-CV-7361

28  AHM (AJWx), would not have amicably settled their disputes as they did.

textual, legislative history, and case authority in support of its positions on all of these issues. With respect to issues of knowledge, UMG relied on various cases, including *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001); and *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004). Similarly, with respect to Veoh's right and ability to control infringing activity for which it received a direct financial benefit, UMG relied upon substantial authorities, including the Supreme Court's decision in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 926 (2005), and the Ninth Circuit's decisions in *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), and *Perfect 10, Inc. v. Amazon.com, Inc.* 487 F.3d 701 (9th Cir. 2007). Further, UMG provided a detailed analysis of the facts of the case, applying the few cases to consider related issues to those facts. Veoh relied heavily on aspects of its operations that changed during the litigation (such as the implementation of filtering and the adoption of the "UGC Principles") in asserting its entitlement to summary judgment. *See* Veoh Motion for Summary Judgment (Dkt. # 449) at 7-9. The Court also credited these changed facts in granting Veoh's motion. *See* Ledahl Decl. Ex. A at 5-6. That Veoh, and even the Court, ultimately disagreed with UMG's analysis (and relied on facts not present when UMG filed suit) cannot render UMG's position "objectively unreasonable." Veoh suggests that UMG's positions ran directly counter to settled law. As shown above, the exact opposite is true.

### b.    UMG pursued its claims in a reasonable manner

Veoh also suggests that UMG pursued this action in an unreasonable manner in discovery. The facts demonstrate that the opposite is true. UMG conducted discovery in this action in an entirely reasonable manner while Veoh engaged in abusive and non-meritorious tactics that increased the costs of this litigation.

1          Veoh falsely contends that UMG refused to identify Veoh's infringing videos

2  in this case.  In fact, UMG timely identified infringing videos in response to an

3  interrogatory that Veoh did not serve until October 24, 2008.  Ledahl Decl., ¶ 4.

4  Veoh suggests that UMG did so only in response to a motion to compel.  In fact, the

5  motion to which Veoh refers was denied by Judge Wistrich because Veoh was

6  seeking to compel a response to its interrogatory before any response was due.

7  Batsell Decl. Ex. J (11/21/2008 Order).  Because Veoh destroyed information from

8  Audible Magic during the lawsuit and subsequently delayed production of such

9  information until late February 2009, the Court granted UMG until May 11, 2009 to

10  complete its identification.  *Id.* at Ex. G.  All of these facts put the lie to Veoh's

11  assertion that UMG refused to identify infringing videos.

12          Similarly, Veoh's suggestion that UMG pursued improper or unnecessary

13  discovery motions is belied by the record.  As set forth Section II, *supra*, UMG filed

14  five discovery motions, each of which was granted in whole or in part.  Judge

15  Wistrich specifically criticized Veoh at the hearing on UMG's first discovery

16  motion for its continuing failure to produce material that was "very plainly

17  relevant."  Batsell Decl. Ex. D (8/25/2008 Hearing Transcript at 36:22-23).  Veoh

18  suggests that UMG made false accusations of spoliation, but fails to acknowledge

19  that UMG obtained an Order from Judge Wistrich specifically directing Veoh to

20  retain evidence that it had previously been destroying.  *Id.* at Ex. I (11/18/2008

21  Order).  UMG also filed a subsequent motion seeking sanctions because Veoh failed

22  to produce materials the Court had ordered it to produce.  Among other things,

23  UMG identified documents produced by third parties that were plainly called for by

24  the Court's prior orders, indicated that Veoh should have had copies of such

25  documents, but had nonetheless withheld them from production.  Judge Wistrich

26  ruled that Veoh must provide a sworn certification from both in-house and outside

27  counsel that its production was complete.  *Id.* at Ex. H.  The Court stated that "The

28  court is concerned about what appear to be unreasonably narrow interpretations by

Veoh of some of UMG's discovery requests, a practice which calls into question the completeness of its entire production. Anomalies in Veoh's production, which may or may not have an entirely innocent explanation, heighten that concern." *Id.* Judge Wistrich's rulings in UMG's favor render Veoh's arguments nonsensical. If UMG's motion practice was unreasonable, as Veoh suggests, Judge Wistrich presumably would not have granted UMG's motions.

### 3.    Awarding Attorneys' Fees Would Disserve The Purposes of the Copyright Act

Few courts have construed 17 U.S.C. § 512(c) – even fewer in the context of user-uploaded video sites. Thus the statute's reach remains ill-defined. Deterring plaintiffs from litigating the boundaries of that section will ill-serve the Copyright Act. Awarding attorneys' fees in this action is therefore inappropriate.

"[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001) (citing *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842 (11th Cir. 1999). Courts recognize that parties should not be discouraged from asserting claims in unresolved areas by fear of massive attorneys' fee awards. "This is because such attorney fee awards may chill litigation of close cases, preventing the clear demarcation of the boundaries of copyright law. *Ariel (UK) Ltd. v. Reuters Group PLC*, 2007 WL 194683, *1 (S.D.N.Y. Jan. 24, 2007) (citing *Fogerty*, 510 U.S. at 527); *see also Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1246 (S.D. Fla. 2008) ("a party that advances a reasonable position should not be deterred from doing so for fear that it will have to pay attorney's fees if it loses"); *Perfect 10, Inc. v. CWIE, LLC*, 2005 WL 5957973, *3 (C.D. Cal. Feb. 10, 2005) (finding no reason to award attorneys' fees for deterrent purposes; "[a]warding attorney's fees would . . . punish the Plaintiff for advancing a theory in an unclear area of copyright law"). Thus, under the facts of this case, an award of attorneys' fees to Veoh would

1  not serve the principles of the Copyright Act and should be rejected.

2  **C.     Rule 68 Does Not Provide An Independent Basis For Awarding Fees And**
3       **Costs Veoh Incurred After October 2008**

4       Veoh argues that Federal Rule of Civil Procedure 68, coupled with Veoh's
5  $100,000 offer of judgment, is an independent basis for awarding fees.  That
6  contention is meritless.  Rule 68 adds nothing to Veoh's request for attorneys' fees
7  because even under Rule 68, Veoh still must establish its entitlement to such fees
8  under the applicable standards of Section 505 of the Copyright Act.  IN addition and
9  in any event, Veoh has not demonstrated that its offer was more favorable than the
10  injunctive relief ultimately obtained by UMG and thus cannot avail itself of Rule 68.

11      **1.     Veoh Must Satisfy Section 505 Even Under Rule 68**

12      UMG does not dispute that Rule 68 may, at times, permit the award of
13  attorneys' fees as costs when the underlying statute is so worded.  *Marek v. Chesny*,
14  473 U.S. 1, 3-4 (1985).  But Veoh improperly suggests that Rule 68 automatically
15  justifies an award of fees.  According to Veoh, so long as the judgment obtained by
16  the plaintiff is less favorable than the defendant's offer of judgment, attorneys' fees
17  are recoverable, whether or not Veoh can satisfy the requirements of Section 505.
18  Mot. at 21:19-25.  Veoh's argument has been rejected by clear precedents from the
19  Ninth Circuit and other courts.

20      Specifically, a defendant may recover fees under Rule 68 only if it satisfies
21  the otherwise-applicable standard for such recovery.  Thus, notwithstanding a Rule
22  68 offer, "a civil rights defendant may not be awarded attorney's fees under section
23  1988 unless the trial court determines that the plaintiff's action was 'frivolous,
24  unreasonable, or without foundation.'"  *Crossman v. Marcoccio*, 806 F.2d 329, 334
25  (1st Cir. 1986); *see also E.E.O.C. v. Bailey Ford, Inc.*, 26 F.3d 570, 571 (5th Cir.
26  1994) ("[E]ven if appellee were entitled to recover costs under Rule 68, its
27  attorneys' fees are not among the properly recoverable costs without a determination
28  that the action was frivolous, unreasonable or without foundation") (citing *O'Brien*

1    *v. City of Greers Ferry*, 873 F.2d 1115, 1120 (8th Cir. 1989)).  The Ninth Circuit

2    holds the same.  *See U.S. v. Trident Seafood Corp.*, 92 F.3d 855, 860 (9th Cir. 1996)

3    (holding that an award of attorneys' fees under Rule 68 is only allowed if the

4    requirements of the underlying statute – in that case the Clean Air Act – for

5    awarding such fees are satisfied); *see also Harbor Motor Co., Inc. v. Arnell*

6    *Chevrolet-Geo, Inc.*, 265 F.3d 638, 646-47 (7th Cir. 2001) (denying fees under Rule

7    68 to non-prevailing party because "the award of Rule 68 fees" is limited "to only

8    those costs that are properly awardable under the substantive statute at issue," and

9    "only the prevailing party is permitted to recover its attorney's fees" under the

10   Copyright Act).[7]

11       Veoh cites *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y.

12   2006), as contrary authority.  The *Baker* court found that the defendant separately

13   satisfied the standards of Section 505 and only then awarded fees under Rule 68.

14   *Baker*, 431 F. Supp. 2d at 356-60 (holding fees awardable under Section 505

15   because the plaintiff (1) lied in discovery, (2) filed the case in bad faith to obtain

16   publicity for the plaintiff and his counsel, and (3) advanced an objectively

17   unreasonable damages claim).  *Baker* confirms that a defendant must satisfy the

18   *Fogerty* factors, even under Rule 68.  Thus, Veoh's arguments under Rule 68 add

19   nothing to the analysis of its claim for fees.

20       **2.      Veoh has not Shown that its Offer was More Favorable than the**

21             **Injunctive Relief Obtained by UMG**

22       Rule 68 allows an award of costs only where the judgment obtained by the

23   plaintiff is less favorable than the defendant's offer.  Fed. R. Civ. P. 68(d) ("If the

24   _____

25       [7] Veoh suggests that *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950
     (9th Cir. 2007) holds otherwise.  It does not.  The Ninth Circuit affirmed the
26   Supreme Court's conclusion that Rule 68 "'refers to all costs *properly awardable*
     under the relevant substantive statute or other authority.'"  *Id.* at 957 (citing *Marek*,
27   473 U.S. at 9) (emphasis added).  Thus *Azizian* only confirms that attorneys' fees
     must be awardable "under the relevant substantive statute" (*i.e.*, "properly
28   awardable") before a court may award them under Rule 68.  *Id.* at 959.

1   judgment that the offeree finally obtains is not more favorable than the unaccepted

2   offer . . . "). The "burden is on the defendant-offeror to demonstrate that its 'offer

3   was more favorable than the judgment . . . .'" *Harbor Motor*, 265 F.3d at 648.

4   Under Rule 68, "a favorable judgment and an injunction can be more valuable to a

5   plaintiff than damages." *Andretti v. Borla Performance Indus. Inc.*, 426 F.3d 824,

6   837 (6th Cir. 2005). Thus in *Reiter v. MTA New York City Transit Authority*, 457

7   F.3d 224, 231 (2d Cir. 2006), the court held that the defendant "failed to carry" the

8   burden of "showing that [its] Rule 68 offer was more favorable than [a] judgment"

9   awarding injunctive relief. *See also Domanski v. Funtime, Inc.*, 149 F.R.D. 556, 558

10  (N.D. Ohio 1993) (holding injunctive judgment was more favorable than money

11  offered). Veoh offers no evidence or argument to explain how its offer of judgment

12  was more favorable than the injunctive relief to which it ultimately stipulated.

13  **D.      In Any Event, Veoh's Request For More Than $4 Million In Attorneys'**

14          **Fees And Costs Is Not Reasonable**

15          Should the Court determine that some fee award is warranted, it should still

16  not award the more than $4 million sought by Veoh. That amount is unreasonable.

17  It exceeds fees incurred in comparable cases, and Veoh's own misconduct and waste

18  produced this exorbitant sum. Having obtained partial summary judgment, Veoh

19  has simply totaled every dollar it spent on any aspect of this case (and some that

20  were not even part of this case) and seeks to charge them all to UMG. These

21  charges include numerous wasteful expenditures and unsuccessful activities pursued

22  by Veoh that had nothing to do with the result in this case. Veoh pursues fees spent

23  bringing failed discovery motions. It seeks fees spent opposing UMG's successful

24  discovery motions. It seeks fees spent bringing *ex parte* applications that the Court

25  ruled were abusive. These and many similar expenditures are simply unreasonable.

26  Even if Veoh were entitled to some recovery of fees (it is not), the amount it seeks is

27  grossly excessive and should be drastically reduced.

28

UMG'S OPPOSITION TO VEOH'S MOTION FOR
ATTORNEYS' FEES AND COSTS

1  **1.**   **Veoh has not Met its Burden of Showing that the Amount It Seeks**
2       **Is Reasonable**

3       Veoh is not entitled to any fee recovery because it has not met its required
4  burden.  The burden is on Veoh to "demonstrat[e] the time spent and that it was
5  reasonably necessary."  *Maljack Productions, Inc. v. Palisades Entertainment*, 1995
6  WL 779154 at *3 (C.D. Cal. Jun. 23, 1995); *see also Queenie, Ltd. v. Nygard Int'l*,
7  204 F. Supp. 2d 601, 608 (S.D.N.Y. 2002) ("[w]hile a party to a litigation may
8  choose its own level of litigation expense, it may not impose its own approach on a
9  losing adversary").  Veoh has not met this burden.

10      Veoh fails to establish that its aggregate fees are reasonable.  As noted above,
11 Veoh simply lumps all of its expenditures together and asserts that every dollar
12 should be awarded.  Veoh fails to establish that such expenditures were reasonable
13 or necessary.  Instead, Veoh includes numerous unnecessary and irrelevant
14 activities.  Veoh ultimately prevailed in defeating UMG's motion for partial
15 summary judgment and in obtaining partial summary judgment itself.  Veoh's
16 expenditures in connection with these two motions amounted to a total of
17 approximately $500,000.  *See* Batsell Decl., ¶¶ 12-13.  While Veoh fails to show
18 that even this amount was reasonable for such motions, it nonetheless is far less than
19 Veoh's excessive request for more than $4 million.

20      Even if Veoh were permitted to recover aggregate fees for the case, the fees
21 claimed by Veoh far exceed those incurred in connection with comparable cases.
22 *See* Ledahl Decl. Ex. M (American Intellectual Property Law Association: Report of
23 the Economic Survey 2009) (in copyright infringement cases seeking over $25
24 million, the average litigation cost was $1,696,000, and even cases in the third
25 quartile only cost $2,325,000).  Veoh seeks more than twice the average – more than
26 $4 million in fees.  This reveals the inherent unreasonableness of Veoh's request.

27      Further, Veoh's evidence is either incomplete or inconsistent, leaving the
28 Court and UMG unable to determine the sum Winston & Strawn actually billed to

Veoh.  In this respect, Veoh again fails to carry its burden.  *See Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("the actual billing arrangement is a significant . . . factor in determining what fee is 'reasonable'" under the Copyright Act, and in no event should the fees awarded amount to a windfall for the prevailing party"); *Robinson v. Lopez*, 2003 WL 23162906, *3 (C.D. Cal. Nov. 24, 2003) ("The actual billing arrangement provides a strong indication of what private parties believe a 'reasonable' fee would be").  Winston & Strawn claims to have billed at a blended rate of $480/hour through December 2007; $490/hour through December 2008; and "in a manner consistent with Winston & Strawn's customary billing practices" in 2009, but Veoh's supporting documents are either incomplete or inconsistent on the issue of the firm's billing practices.  Ranahan Decl. Ex. D at 381 (Lane billed at $598.98/hour; Elkin billed at $636.43/hour; Golinveaux billed at $502.72/hour); Supp. Ranahan Decl. Ex. 4 at 26 (Golinveaux at $460.00/hour; Elkin at $750.00/hour).  Nor do the summary statements in its declarations match the totals in the accompanying exhibits.  *See, e.g.*, Ranahan Decl. at ¶ 7 (T. Lane billed 1,217.70 hours, and J. Golinveaux billed 1,803.70 hours); *id.* at Ex. D at 381 (T. Lane billed 1219 hours, and J. Golinveaux billed 1813.60 hours); *id.* at ¶ 19 ("Fees Billed" equals $4,613,062.20); *id.* at Ex. D at 385 ("Matter Time Client Summary Total" equals $5,004,164.05).  These inconsistencies (or deficiencies) are not explained; no actual invoices accompany Veoh's motion.  Hence UMG is unable to confirm Winston & Strawn's true billing practices, and the amount it in fact billed Veoh.

These inconsistencies and the grievously high aggregate of Veoh's fee request render Veoh's showing inadequate to support a finding of reasonableness.  Veoh fails to explain or document the amounts it claims and fails to explain why more than $4 million was a reasonable expenditure in this matter.  As such the Court should deny Veoh's request for the independent reason that it failed to adequately support the reasonableness of its request.

1

### 2.    <u>Veoh is not Entitled to Fees For Unreasonable Conduct</u>

2      Veoh may only recover "reasonable" rather than "actual" attorneys' fees.  17

3 U.S.C. § 505.  A court may adjust downward the amount of fees awarded "to

4 account for unnecessary, unreasonable, or unproductive hours."  *Data General*

5 *Corp. v. Grumman Systems Support Corp.*, 825 F. Supp. 361, 365 (D. Mass. 1993)

6 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S.

7 546, 564-66 (1986)).  Vast amounts that Veoh seeks to recover were spent on

8 unnecessary or unreasonable activities and should not be recoverable in any event.

9 As set forth in greater detail in the accompanying declaration of Carter Batsell:

10 •   Veoh seeks more than $125,000 spent on various failed motions, including a

11      motion to dismiss in favor of the case Veoh filed in the Southern District of

12      California, an unsuccessful opposition to UMG's motion to amend the complaint

13      (to add other defendants), and similar activities.  *See* Batsell Decl., ¶ 5.

14 •   Veoh seeks more than $270,000 spent on work for entities or individuals other

15      than Veoh.  This includes time spent by Veoh's counsel responding to third-party

16      subpoenas issued to various Veoh investors, time spent preparing and reviewing

17      motions prepared by other parties that did not implicate Veoh, and similar

18      activities.  *See* Batsell Decl., ¶ 7.

19 •   Veoh seeks more than $360,000 spent preparing unsuccessful discovery motions

20      and opposing successful discovery motions by UMG.  *See* Batsell Decl., ¶ 6.

21 •   Veoh seeks more than $60,000 spent on *ex parte* applications that the Court

22      found abusive and unsupported.  *See* Batsell Decl., ¶ 8.

23 •   Veoh seeks more than $160,000 in fees and costs associated with its expert, Roy

24      Weinstein, who opined that UMG benefited from Veoh's infringement.  *See*

25      Supp. Ranahan Decl. Ex. 2.  That opinion is objectively unreasonable; was never

26      introduced as evidence; and should not be included.  *See* Batsell Decl., ¶ 10.

27 •   Veoh seeks approximately $29,000 in fees and costs that have no connection to

28      this case at all.  Clearly such activity should be excluded.  *See* Batsell Decl., ¶ 9.

- Veoh seeks more than $65,000 in costs for which it submits no description whatsoever of the associated charges. *See* Batsell Decl., ¶ 14.

- Veoh increased the amount it seeks by $251,714.33 in a belated supplemental declaration. *See* Supp. Ranahan Decl. ¶¶ 3-5. Rule 54 requires that any request for fees must be made not later than 14 days after entry of judgment. Veoh filed its motion within the required time, but then purported to tack on these additional requests after the deadline. That increase is untimely, *see* Fed. R. Civ. P. 54(d)(2)(B)(i), and thus the Court should deny it.

## E.    **If The Court Will Not Deny Veoh's Motion, It Should Defer Ruling Pending UMG's Appeal**

If the Court is inclined to grant any recovery of attorneys' fees, it should postpone ruling on the issue until the Ninth Circuit rules on the merits of this case. If the Ninth Circuit reverses, then no award of fees would be available. Even if the Court of Appeals affirms, a vigorous dissent could indicate that UMG's claims were reasonable. *See Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 122-23 (2d Cir. 2001) (plaintiff's copyright claims were objectively reasonable because, the merits appeals "provoked vigorous dissenting opinions agreeing with [plaintiff's] positions"). Given the impact the Ninth Circuit's opinion could have on the merits of this Motion, deferring ruling is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Veoh's Motion for Attorneys' Fees and Costs.

Dated:  December 7, 2009                IRELL & MANELLA LLP


By:  /s (with permission)
                    Brian D. Ledahl
                    Attorneys for Plaintiffs