Rebecca Lawlor Calkins (SBN: 195593)
Email: rcalkins@winston.com
Erin R. Ranahan (SBN: 235286)
Email: eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jennifer A. Golinveaux  (SBN 203056)
Email: jgolinveaux@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111
Tel: (415) 591-1506/Fax: (415) 591-1400

Michael S. Elkin  (*pro hac vice*)
Email: melkin@winston.com
Thomas Patrick Lane  (*pro hac vice*)
Email: tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Tel: (212) 294-6700/Fax: (212) 294-4700

Attorneys for Defendant,
VEOH NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC., a Delaware Corporation, et al., <br><br>            Plaintiffs, <br><br>     vs. <br><br> VEOH NETWORKS, INC., a California Corporation, et al., <br><br>            Defendants. | **Case No. CV 07 5744 -- AHM (AJWx)** <br><br> **VEOH'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Date:  December 21, 2009 <br> Time: 10:00 a.m. <br><br> Judgment Entered: November 3, 2009 |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................. 1

II.    UMG'S POSITION WOULD RENDER RULE 68 MEANINGLESS ............... 2

III.   VEOH IS CLEARLY THE PREVAILING PARTY ............................ 6

IV.    VEOH SATISFIES THE STANDARD FOR FEES UNDER SECTION 505 .. 12

       A.   UMG's Motivation Was Improper ................................. 12

       B.   UMG's Claims Were Objectively Unreasonable ................... 13

       C.   Awarding Veoh Its Fees Supports The Demarcation Of
            Copyright Law ................................................ 16

V.     VEOH'S FEES AND COSTS ARE REASONABLE ............................ 16

VI.    THE COURT SHOULD NOT DEFER ITS RULING ........................ 24

VII.   CONCLUSION ................................................................. 25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

CASES

*A&M Records, Inc. v. Abdallah*,
  948 F. Supp. 1449 (C.D. Cal. 1449) ....................................................................... 10

*Andretti v. Borla Performance Industries, Inc.*,
  426 F. 3d 824 (6th Cir. 2005) ........................................................................... 4, 5

*Assessment Technologies of Wi., LLC v. WIREData, Inc.*,
  361 F.3d 434 (7th Cir. 2004) ............................................................................... 13

*Baker v. Urban Outfitters, Inc.*,
  431 F.Supp.2d 351 (S.D.N.Y. 2006) ......................................................................... 2

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
  371 F.3d 883 (6th Cir. 2004) ............................................................................... 11

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and
  Human Resources*,
  532 U.S. 598 (2001)....................................................................................... 9, 10

*Childress v. Taylor*,
  835 F. Supp. 739 (S.D.N.Y. 1993) .......................................................................... 10

*Cramer v. Crestar Financial Corp.*,
  Nos. 94-2629, 95-1069, 1995 WL 541707 (4th Cir. Sept. 13, 1995).......... 11, 17, 18

*Crossman v. Marcoccio*,
  806 F.2d 329 (1st Cir. 1986).................................................................................. 4

*Domanski v. Funtime, Inc.*,
  149 F.R.D. 556 (N.D. Ohio 1993) ............................................................................ 6

*E.E.O.C. v. Bailey Ford, Inc.*,
  26 F.3d 570 (5th Cir. 1994) .................................................................................. 4

*Elektra Entertainment Group Inc. v. Brimley*,
  2006 WL 2367135 (S.D. Ga. Aug. 15, 2006)............................................................. 13

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

- ii -

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)............................................................................4, 12, 16

*Gorman v. Coogan*,
    324 F.Supp.2d 171 (D.Me. 2004).........................................................25

*Io Group, Inc. v. Veoh Networks, Inc.*,
    586 F. Supp. 2d 1132 (N.D. Cal. 2008)..............................................6, 16

*Jordan v. Time, Inc.*,
    111 F.3d 102 (11th Cir. 1997) ...............................................................3

*Lassiter v. Twentieth Century Fox Film Corp.*,
    Nos. 05-55587, 05-55916, 2007 WL 1183824 (9th Cir. Apr. 20, 2007) ...............25

*Lucas v. Wild Dunes Real Estate, Inc.*,
    197 F.R.D. 172 (D.S.C. 2000) ...............................................................3

*Luken v. Int'l Yacht Council, Ltd.*,
    581 F. Supp. 2d 1226 (S.D. Fla. 2008) ............................................12, 13

*Marek v. Chesny*,
    473 U.S. 1 (1985).............................................................................2, 3

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
    240 F.3d 116 (2d Cir. 2001) .................................................................25

*Mercer v. Duke University*,
    401 F.3d 199 (4th Cir. 2005) .............................................................9, 10

*Reiter v. MTA New York City Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006) ..................................................................6

*Religious Technology Center v. Scott*,
    Nos. 94-55781, 94-55920, 1996 WL 171443 (9th Cir. Apr. 11, 1996) ...........17, 18

*Synapsis Corp. Ltd. v. Veenstra*,
    No. 96-55447, 1997 WL 308832 (9th Cir. June 6, 1997) ................................17, 18

*Twentieth Century Fox Film Corp. v. Entertainment Dist.*,
    429 F.3d 869 (9th Cir. 2005) .................................................................18

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
    620 F. Supp. 2d 1081 (C.D. Cal. 2008) ..................................................14

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

- iii -

*Veoh v. UMG,*
  Case No. 07-CV-1568 ........................................................................................ 8

*Viacom Int'l, Inc. v. YouTube*,
  Case No. 07-CV-02103 LLS (S.D.N.Y.) ............................................................ 16

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
  877 F.2d 1120 (2d Cir. 1989) ...................................................................... 10, 11

*White v. New Hampshire Dept. of Employment Sec.*,
  455 U.S. 445 (1982) ..................................................................................... 24, 25

**STATUTES**

17 U.S.C. § 505 ....................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 54(d)(2)(B) ....................................................................... 24

Fed. R. Civ. Proc. 68 ........................................................................................ 2

VEOH'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES – CASE NO. 07 5744 – AHM (AJWx)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# I.    INTRODUCTION

UMG responds to Veoh's motion for attorneys' fees and costs with highly mechanical arguments that lack any merit and would disserve the purpose of the fee shifting statutes at issue.

UMG's assertion that this Court must first determine that Veoh should be rewarded its fees under Section 505 of the Copyright Act in order to be entitled to fees incurred since its Rule 68 offer of judgment in October 2008, would render Rule 68 meaningless in copyright cases, and finds no support in relevant authority.

Likewise, UMG's claim that Veoh is unable to be deemed the prevailing party in this action for purposes of Section 505 because it stipulated to continue to abide by policies that were in place long before this lawsuit was filed lacks any support and borders on the absurd.  Veoh prevailed entirely on its affirmative defense of entitlement to DMCA safe harbor, UMG's case was dismissed and it recovered nothing.  Veoh should quite clearly be deemed the prevailing party here.

UMG urges that its claims against Veoh were reasonable and that Veoh should foot the entire bill for defending the claims.  UMG's primary argument in this case— that Veoh was not entitled to safe harbor because of basic processing of user submitted videos—was rejected by this Court without even need for a hearing.  Its arguments opposing Veoh's own motion were frivolous.  Although UMG is right that this Court decided important issues of copyright law, it is Veoh which advanced those issues by pursuing a meritorious defense; not UMG.

Finally, UMG argues that the roughly $2 million dollars a year that Veoh was required to spend to litigate this case is "excessive and unreasonable."  To say that UMG aggressively litigated this case is an understatement.  UMG served hundreds of document requests that required Veoh to mine the far reaches of its electronic data for production, review hundreds of thousands of email communications and pages of other documents for production, defend itself against overreaching discovery motions, (significant portions of nearly all of which were denied) and review over 1.6 million

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

pages of documents dumped in vast batches by UMG, without any discernable order. This is to say nothing of the numerous third party subpoenas and depositions pursued by UMG, the dozens of depositions taken in this case, and the numerous purported experts presented by UMG. Moreover, this case was litigated to the very eve of trial, and both sides had largely completed pre-trial preparations and filings. Not surprisingly, although UMG argues strenuously that Veoh's $2 million per year in fees and costs was unreasonable, it says nothing about what it spent as contrast.

The safe harbor provisions of the DMCA were a compromise carefully crafted by Congress to encourage service providers and content owners to work together to combat piracy. As this Court has determined, Veoh fully lived up to its obligations under the safe harbor. UMG, by contrast, determined that the safe harbor provisions should simply not apply, and instead aggressively sued Veoh despite never first identifying the alleged infringing videos to Veoh, and despite the fact that the works that UMG did identify to Veoh in RIAA notices had been immediately cancelled. After two years of litigation against one of the largest and most powerful music conglomerates in the world, Veoh should not be required to pay the price for defending itself against UMG's gamble.

For all of these reasons, Veoh respectfully requests that the Court award Veoh its reasonable fees and costs under Section 505, and fees and costs incurred since October 2008 under Rule 68.

## II. UMG'S POSITION WOULD RENDER RULE 68 MEANINGLESS

"[W]hen the plaintiff in a copyright action recovers less than the defendant's formal offer of judgment. . . Rule 68 of the Federal Rules of Civil Procedure requires an award to defendant of its fees incurred after that offer." *See Baker v. Urban Outfitters, Inc.,* 431 F.Supp.2d 351, 361 (S.D.N.Y. 2006) (granting fees under Rule 68 where the plaintiff recovered nothing on copyright infringement claim). The Supreme Court in *Marek* held that "where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Rule 68." *Marek v. Chesny*, 473 U.S. 1, 9 (1985). In actions brought under the Copyright Act, courts have interpreted *Marek* as meaning merely that the underlying cost-shifting statute must define costs to include attorneys' fees for those fees to be available under Rule 68. *Jordan v. Time, Inc*., 111 F.3d 102, 105 (11th Cir. 1997); *Lucas v. Wild Dunes Real Estate, Inc*., 197 F.R.D. 172, 175-77 (D.S.C. 2000). In other words, the underlying statute simply provides for the availability of attorneys' fees under Rule 68, rather than simply costs.

Contrary to UMG's assertion, a defendant seeking fees under Rule 68 in a copyright infringement action does not need to "separately satisf[y] the standards of Section 505" (Opp at 20). *Jordan*, 111 F.3d at 105 (holding that defendant in copyright infringement action was entitled to attorneys' fees and costs under Rule 68 even where defendant was not the "prevailing party" under Section 505); *Lucas*, 197 F.R.D. at 175-77 (same). Unlike Section 505, "the mandatory language of the rule [68] leaves no room for district court discretion." *Jordan*, 111 F.3d at 105. As the *Lucas* court points out, "[b]y ruling that Rule 68's mandatory language controls, the Eleventh Circuit implicitly resolved an apparent tension between Rule 68's mandate that a district court award costs if Plaintiff obtains a judgment less favorable than the Offer of Judgment and the language of § 505 providing the district court with discretion as to whether or not to award a prevailing party attorney's fees as part of their costs." *Lucas*, 197 F.R.D. at 176.

UMG's interpretation of Rule 68 would render the statute meaningless in copyright cases. If the same standard as the underlying cost-shifting statute had to be satisfied, and it was necessarily only fees following a Rule 68 offer, in virtually every instance, the fees from Rule 68 would be less than the fees awarded pursuant to the underlying cost-shifting statute, and thus, superfluous. While the underlying cost-shifting statute is properly analyzed to determine whether attorneys' fees are included in costs (and UMG does not dispute that they are under Section 505), the Court need not determine that fees in a copyright action should be properly awarded within its

discretion under Section 505 when assessing fees under Rule 68. The parties assign value to their claims and defenses under Rule 68, and the rejecting party gambles in the face of a reasonable settlement offer. Rule 68's purpose in promoting settlement would be turned on its head if it had no independent force, and could not have been what Congress intended.

To support its argument, UMG cites two civil rights cases, *Crossman v. Marcoccio,* 806 F.2d 329, 334 (1st Cir. 1986) and *E.E.O.C. v. Bailey Ford, Inc.,* 26 F.3d 570, 571 (5th Cir. 1994), where fees were sought pursuant to Section 1988 and under Rule 68, and where the prevailing parties were required to show that the action was "frivolous, unreasonable or without foundation." Opp: 19:20-25. But a defendant is not required to show similar requirements of "frivolousness" to obtain fees and costs under Section 505, as the Supreme Court in *Fogerty* explicitly overruled prior Ninth Circuit law that required the prevailing defendant in a copyright infringement action to show frivolousness or bad faith on the part of the plaintiff before it could recover fees. *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 521 (1994).

UMG also cites *Andretti v. Borla Performance Industries, Inc*., where the plaintiff rejected a Rule 68 offer, which included damages and an offer to cease its advertisements that contained quotes attributable to the plaintiff. 426 F.3d 824, 828 (6th Cir. 2005). Ultimately, the defendant was awarded summary judgment on all the damage claims, but the lower court issued a permanent injunction prohibiting the defendant from further disseminating the advertisements. *Id.* The Sixth Circuit affirmed the lower court's decision to award the defendant its costs pursuant to Rule 68 because the defendant's offer included damages and a permanent injunction, but the plaintiff only obtained a permanent injunction in the end. *Id.* at 837. The court determined that the judgment injunction did not provide anything more favorable to the plaintiff than what the defendant offered to the plaintiff, especially because the plaintiff never took issue with the terms of the permanent injunction offered by the defendant—he only took issue with the monetary damages offered. *Id* at 837-38.

Similarly, UMG did not obtain anything from the joint stipulation entered by the parties in this case (Dkt. No. 580) ("Stipulation") that Veoh had not already provided in removing suspected infringements and enforcing its long-standing hash filtering and repeat infringer policies. In fact, the Stipulation was voluntarily agreed to; it was not imposed by the Court. UMG does not even attempt to assign a value to the Stipulation for Veoh to continue acting as it has always acted—in the same manner in which two Courts have found Veoh immunized from monetary liability.[1] UMG fails to specify the purported value it assigns to this Stipulation for purposes of Rule 68 for good reason—it cannot reasonably claim that it values the Stipulation anywhere close $100,000.00. Both this Court and the *Io* court have held Veoh's policies to be compliant with the DMCA, and, as discussed further below, the Stipulation did not in any way alter those policies. Given that the Stipulation covered policies already in place at the time Veoh made the offer to UMG in October 2008, UMG was already benefiting from the substance of the Stipulation when it rejected the Offer of Judgment. Furthermore, UMG did not complain of a lack of an injunctive component in Veoh's Offer of Judgment, instead complaining only that the monetary offer was too low. It would have made no sense for UMG to have spent presumably millions and millions in its own attorneys' fees to at the end of the day be left with a defendant that because of its DMCA compliance, was immune from monetary damages. But UMG took the position that the DMCA did not apply to services like Veoh, elected not to notify Veoh of infringements, and dragged Veoh through years of expensive and aggressive litigation. UMG should bear the costs of that risk.

UMG also cites *Domanski v. Funtime, Inc.*, where the court found that the judgment obtained by the plaintiff was more favorable than the offer made by defendant because it included permanent injunctive relief that was not in the offer.

[1] None of the cases cited by UMG denied Rule 68 costs on the ground that the defendant failed to meet its burden. To the extent that defendant is required to make such a demonstration, Veoh has met that burden.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

149 F.R.D. 556 (N.D. Ohio 1993). The court had ordered the defendant to destroy all plastic bags bearing plaintiff's copyrighted design and to cease the sale of such bags in all of its amusement parks. *Id.* at 557. This is in stark contrast to the Stipulation here, which simply memorialized Veoh's "strong DMCA policy [that] takes active steps to limit incidents of infringement on its website and works diligently to keep unauthorized works off its website." *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1155 (N.D. Cal. 2008).[2]

Even if injunctions are to be considered valuable in the field, UMG made it clear (in rejecting Veoh's offer due to a lack of zeros) that it valued monetary damages over an injunctive component that merely required Veoh to continue to implement its existing policies. *See also,* Declaration of Michael S. Elkin In Support of Veoh's Motion For Attorneys' Fees and Costs ("Elkin Declaration") ¶ 2. Veoh has established its entitlement to costs including fees from October 2008 onward under Rule 68.

## III. VEOH IS CLEARLY THE PREVAILING PARTY

While conceding that Veoh is more satisfied with the overall result and that the

---

[2] *Reiter v. MTA New York City Transit Auth.*, where the court determined that the injunctive relief that the lower court awarded to the plaintiff was more valuable than the monetary damages the plaintiff obtained, is easily distinguishable. 457 F.3d 224 (2d Cir. 2006). In *Reiter*, the plaintiff, who reported directly to the Senior Vice President, was a highly compensated senior executive in one of the world's largest and most important public transportation agencies. *Id.* at 226. He supervised over 900 employees, had a large, prominent corner office with a front view of Manhattan, one of the most experienced personal secretaries in the organization. *Id.* After his wife, who also worked for the New York City Transit Authority, filed charges alleging discrimination and harassment with the EEOC, the plaintiff received a negative annual review, was demoted to a position that did not require that he be a licensed architect or engineer and in which he had no staff, lost his secretary and was moved from his seventh floor corner office to a second floor office with a view of an alley. *Id.* The defendant offered plaintiff $20,001 under Rule 68. *Id.* at 227. Plaintiff refused it and the district court awarded him $10,000 and a reinstatement to his previous position. *Id.* at 227-28. The Court of Appeal found the determination that the plaintiff's reinstatement to his former position had no practical or economic significance was clearly erroneous. *Id.* at 229. The Court noted the importance of equitable relief in employment cases under Title VII and that, in fact, reinstatement under Title VII had been interpreted as the first choice. *Id.* at 230. According to the Court of Appeal, "the personal satisfaction and sense of gratification and achievement derived from…being given…significant professional responsibilities cannot be understated." *Id.* at 232. There is no such sentiment in copyright law.

ultimate outcome was "certainly not the scope of relief that UMG sought," Opp. at 10, UMG nonetheless asserts that Veoh should not be considered the prevailing party in this case. By any standard, Veoh should be determined the prevailing party.

UMG argues that the "prevailing party" is the party that has been awarded some relief by the Court and takes the indefensible position that the joint Stipulation by which Veoh agreed merely to *continue to enforce policies already in place when UMG brought this suit* renders Veoh unable to claim prevailing party status. UMG's position is ludicrous. During the September 8, 2009 hearing on Veoh's motion for summary judgment, the Court suggested that in the likely event that the Court granted Veoh's motion, the parties could enter a stipulation where Veoh agreed to continue to implement its DMCA compliant policies, specifically stating:

> THE COURT: . . . I think what the parties ought to do is in fairness to their respective clients, see if they can negotiate some kind of agreed-to statement about any remaining claim for injunctive relief because I don't see there being a trial on direct infringement claims . . .

> * * *

> THE COURT: . . . there is another way of looking at it and that is to have some kind of kiss and make up kind of consent decree saying Veoh will continue to engage in appropriate efforts using the available means that it has described in its papers to the Court to assure that infringing materials were removed and you got your injunction.

Declaration of Rebecca Lawlor Calkins in Support of Veoh's Reply in Support of Its Motion for Fees, filed concurrently herewith ("Calkins Decl.") ¶ 4 and Exh. 7 (Trans. 41:19-21; 43:3-9).

Accordingly, after the Court granted Veoh's motion, the parties jointly filed the Stipulation requesting judgment in this action, whereby Veoh merely agreed to continue to implement its DMCA policies with respect to the videos identified by UMG as infringing and the users terminated for uploading those videos. In other

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    words, the Stipulation that UMG claims divests Veoh of its prevailing party status

2    states that Veoh will *continue* to implement the same policies it always has—the

3    same policies that have twice been adjudicated to grant Veoh immunity from

4    monetary damages by DMCA safe harbor. UMG cannot seriously contend that it

5    filed this lawsuit with a goal that Veoh would memorialize its commitment to

6    continue its existing policies, which it offered years ago. *See also,* Elkin Declaration

7    ¶ 2.[3] It is hard to imagine how a copyright defendant could "prevail" in a more

8    convincing manner than being found immune from monetary damages with a

9    stipulation to continue its compliant conduct.[4]

10        UMG cites *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of*

11    ───────────────────

12    [3] Veoh did indeed seek declaratory relief—on the precise legal basis that this Court held rendered Veoh immune from any monetary damages against UMG—in the face of ongoing threats of litigation by UMG as described in the supporting Elkin Declaration (thereby attempting to avoid millions of dollars in legal fees by having its DMCA defense resolved at the outset). But Veoh is not seeking its fees in connection with pursuing that Declaratory Action, only in connection with its motion to dismiss the present action in favor of its first-filed action. Veoh's declaratory relief action was dismissed in favor of this action, based upon a finding that Veoh could not obtain immunity under the DMCA safe harbor until UMG defined the dispute by specifying the works at issue. *Veoh v. UMG,* Case No. 07-CV-1568, S.D Cal., 11/14/07 Order (Dkt. No. 28), pp. 4-5. Rather than defending the declaratory judgment action, UMG elected to pursue this massive infringement suit seeking millions in damages. Veoh's declaratory judgment action was an effort by Veoh to efficiently resolve this dispute based on the meritorious defense that has now twice exonerated Veoh in infringement actions.

19    [4] The Stipulation makes no mention of Veoh's use of Audible Magic filtering, and UMG's repeated attempts to suggest the relevance of Veoh's use of Audible Magic are immaterial. The Court's order granting Veoh's motion for summary judgment did not depend on Audible Magic filtering, stating: "UMG has not established that the DMCA imposes an obligation on a service provider to implement filtering technology at all, let alone technology from the copyright holder's preferred vendor or on the copyright holder's desired timeline." 9/11/09 Order (Dkt. No. 575) at 18-19. Moreover, contrary to UMG's suggestion that this lawsuit caused Veoh to implement filtering, it is undisputed that Veoh began working with Audible Magic and testing its filtering technology in the summer of 2007, before this action was filed. *Id.* at p. 5. UMG's claim that Veoh was "forced in response to this lawsuit, to change its business practices significantly," (Opp at 2) is simply false. None of Veoh's relevant policies changed due to this lawsuit. Though UMG also repeatedly suggests that Veoh took the position that it is only obligated to remove suspected infringements upon specific notice from the copyright owner, Veoh has also always removed any suspected infringement discovered through informal notice or otherwise.[4] Indeed, there were examples of UMG works being discovered and removed informally, without any notice whatsoever by UMG, in this very case. *See* RSGI (Dkt. No. 473) ¶¶ 21 and 64.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   *Health and Human Resources*, 532 U.S. 598, 603 (2001) (Opp: 9:10-11) to support its

2   argument, which holds that for a plaintiff to qualify as a "prevailing party" there must

3   be a "judicially sanctioned change in the legal relationship of the parties," such as a

4   judgment on the merits, court-ordered consent decree, or award of nominal damages.

5   *Id*. at 603-605. Here, the only change in the legal relationship of the parties was that

6   Veoh was found immune from liability with respect to UMG's claims because Veoh

7   (once again) satisfied all requirements for Section 512(c) safe harbor. 9/11/09 Order,

8   (Dkt. No. 575). The Stipulation entered by the parties did not require Veoh to change

9   its conduct, but instead requires Veoh to continue to abide by its long-standing

10  policies. Thus, under *Buckhannon*, Veoh is the "prevailing party" because there has

11  been a "judicially sanctioned change in the legal relationship of the parties" in its

12  favor. *Buckhannon*, 532 U.S. at 605. Further, in *Buckhannon,* the Supreme Court

13  rejected the "catalyst theory," which would allow a plaintiff to be designated as a

14  "prevailing party" where the lawsuit resulted in a voluntary change in the defendant's

15  conduct without "the necessary judicial imprimatur on the change." *Id.* The

16  Stipulation entered here did not require or result in any change in Veoh's conduct, and

17  in any event, was entered voluntarily.

18      UMG also cites *Mercer v. Duke University*, 401 F.3d 199, 203 (4th Cir. 2005)

19  (Opp: 9:14-18) for the proposition that a defendant is not necessarily a "prevailing

20  party" because it is "the party more satisfied with the result of a copyright action."

21  Not only does UMG mischaracterize Veoh's position (nowhere does Veoh contend

22  that it is the prevailing party merely because it is more satisfied with the result of the

23  action), but *Mercer* is inapposite. The *Mercer* court held that the plaintiff was eligible

24  for an award of attorney's fees as the "prevailing party" where the defendant was liable

25  under a federal statute, even though the plaintiff's recovery was limited to an award of

26  nominal damages. *Id*. at 203. Like *Buckhannon*, the court explained that "[a] plaintiff

27  prevails when actual relief on the merits of his claim materially alters the legal

28  relationship between the parties by modifying the defendant's behavior in a way that

9

directly benefits the plaintiff." *Id.* Unlike *Mercer*, this Court did not find that Veoh violated any statute, nor did it award UMG nominal damages. To the contrary, the Court specifically found that Veoh was absolved of any liability, and immune from monetary damages. Furthermore, the *Mercer* court affirmed an award of attorney's fees. Thus, even assuming that *Mercer* somehow applies, the holding supports Veoh's status as the "prevailing party," because this Court's summary judgment order "materially alter[ed] the legal relationship between the parties…in a way that directly benefits [Veoh]." *Id.*[5]

Finally, UMG cites *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126-27 (2d Cir. 1989) (Opp: 10:26-28) to support its claim that Veoh's stipulation to injunctive relief somehow precludes Veoh from "prevailing party" status. But *Warner Bros.* stands for the proposition that "[a] party's success on a claim that is 'purely technical or *de minims*' does not qualify him as a 'prevailing party.'" *Id.* at 1126. The defendant in *Warner Bros.* claimed that it was a "prevailing party" because the plaintiff had withdrawn one of its copyright infringement claims. *Id.* The court held that this "success" was not "sufficiently significant to mandate an award of attorneys' fees." *Id.* The court also held that, although the plaintiff had obtained a permanent injunction against future infringement on a different copyright claim, this success was

---

[5] UMG's reliance on *A&M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1460 (C.D. Cal. 1449) and *Childress v. Taylor*, 835 F. Supp. 739, 742-43 (S.D.N.Y. 1993) (Opp: 9:n.4) is similarly unavailing. In *A&M Records*, the court held that because the defendant was liable for willful contributory copyright infringement in violation of the Copyright Act, an award of attorney fees to the plaintiff was appropriate to "deter others from such flagrant violations of the Copyright Act." *A&M Records*, 948 F. Supp. at 1460. In *Childress*, the court held that despite the plaintiff's failure to establish her claim for actual damages, she was entitled to attorney's fees under the Copyright Act as a prevailing plaintiff because she successfully obtained injunctive relief. *Childress*, 835 F. Supp. at 743. The plaintiffs in both *A&M Records* and *Childress* obtained injunctive relief that required a change in the defendant's conduct, and the defendants in both cases were found to violate the Copyright Act. Thus, neither the facts nor the legal issues of these cases are analogous here where Veoh was not found liable for any violations, UMG was not awarded any relief, and the voluntary Stipulation for Veoh to continue its existing policies is simply not the equivalent of a court-ordered injunction requiring the defendant the alter its behavior as a result of violations of the Copyright Act.

10

VEOH'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES – CASE NO. 07 5744 – AHM (AJWx)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

also not sufficient to create "prevailing party" status because the defendant had previously offered to consent to the entry of a permanent injunction. *Id.* The court did not hold as UMG implies, however, that the defendant's lack of "prevailing party" status was based on the award of injunctive relief to the plaintiff. Unlike *Warner Bros.*, UMG did not voluntarily withdrawal its copyright infringement claim, nor did this Court award UMG a permanent injunction; UMG entered the Stipulation because it had no viable claims left for monetary relief against Veoh. Thus, Veoh's success was not "purely technical or *de minims*." *See id.* Rather, this Court's grant of summary judgment, in which it found Veoh's defense meritorious, is "sufficiently significant" to confer "prevailing party" status on Veoh, and is not negated by Veoh's voluntary stipulation.

"[W]hen a defendant succeeds in having summary judgment entered in its favor on the copyright infringement claims asserted against it, that defendant can only be described as having 'prevailed.'" *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 893 (6th Cir. 2004); *Cramer v. Crestar Financial Corp.*, Nos. 94-2629, 95-1069, 1995 WL 541707, at *6 (4th Cir. Sept. 13, 1995) (defendant was the prevailing party on copyright claims because it "won summary judgment in its favor against the allegation that it had committed certain copyright violations").[6] The Supreme Court has made clear that a defendant is eligible for an award of attorney's fee and costs as the "prevailing party" when it successfully defends a copyright infringement action. *Fogerty*, 510 U.S. at 527. Veoh, who undisputedly successfully defended itself action by prevailing on summary judgment, is the "prevailing party."

---

[6] Local Rule 54-2 Prevailing Party defines plaintiff as the prevailing party "when it recovers on the entire complaint," and the "defendant" as the prevailing party "when the proceeding is terminated by court-ordered dismissal or judgment in favor of defendant." Because this action was terminated by Stipulation after Veoh's obtaining summary judgment in its favor, that rendered Veoh immune from UMG recovering any monetary relief from its claims, Veoh is also properly considered the prevailing party under Local Rule 54-2.2.

UMG concedes, as it must, that the "end result in this case was not the result sought by UMG" (Opp at 2); "certainly not the scope of relief that UMG sought, nor that UMG believes is appropriate" (Opp at 10), and thus, UMG has appealed this Court's orders. Under any reasonable account, Veoh is the prevailing party.

## IV.   VEOH SATISFIES THE STANDARD FOR FEES UNDER SECTION 505

Not all *Fogerty* factors must be met under Section 505 to support an award of attorneys' fees, nor should the court use them to restrict awards of attorneys' fees to cases where the losing party was somehow culpable or acted in bad faith, since blameworthiness is not a prerequisite to awarding fees to a prevailing defendant. *Fogerty*, 510 U.S. at 535, n. 19. As set forth in Veoh's motion, an analysis of the *Fogerty* factors weigh in favor of awarding fees to Veoh, and as set forth below, UMG's authority regarding motivation, the alleged reasonableness of, and the pursuit of, UMG's claims, and the purposes of the Copyright Act, all support awarding Veoh fees and costs.

### A.   UMG's Motivation Was Improper

The authorities UMG cites as purported support for its motivation in this litigation are either readily distinguishable or support just the opposite conclusion. UMG cites *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008) (Opp: 12:6-10), to support its claimed proper motivation. In *Luken*, after the court denied the defendants' motions for summary judgment on copyright infringement claims, the plaintiff prevailed at a jury trial on its claims and subsequently sought an award of attorneys' fees. *Id*. at 1233-35. The defendants had argued that the plaintiff's purpose in filing the suit was based on the improper anti-competitive motive of putting the defendants out of business. *Id*. at 1245. The court concluded that because there was no other evidence of improper motivation, consideration of the "motivation" factor resulted "in a neutral finding neither favoring nor opposing an award of attorney's fees in this case." *Id*. Unlike the defendants in *Luken*, however, Veoh was not found liable for copyright infringement, and, in fact,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

was found entitled to safe harbor as a matter of law. Moreover, unlike in *Luken*, UMG's motivation in filing the suit went beyond simply the "protection of [its] copyright[s]."[7] Indeed, if UMG had been genuinely interested in attempting to stop the infringements alleged in this case, it would not have waited more than a year after filing suit to identify them. Even assuming that UMG's motivation in bringing the suit was merely to protect its copyright, under *Luken*, the "motivation" factor is merely "neutral" with respect to the balancing of factors. *See id.* at 1245.[8]

## B. UMG's Claims Were Objectively Unreasonable

UMG took a gamble by claiming that the DMCA should simply not apply to Veoh, and deciding to ignore its requirements. The arguments it advanced ran contrary to the statutory language and legislative history, and its summary judgment motion was denied without hearing. *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081 (C.D. Cal. 2008). That UMG's claims had not been "previously addressed judicially" does not mean they were reasonable—in fact it supports just the opposite conclusion. The arguments UMG advanced to oppose Veoh's own summary

---

[7] UMG also cites *Elektra Entertainment Group Inc. v. Brimley*, 2006 WL 2367135, *4 (S.D. Ga. Aug. 15, 2006) (Opp: 12:19-24) to support its claim of proper motivation because Veoh's actions could allegedly "devastate UMG's business." The legal issues and facts of *Elektra* are not analogous to this case. In *Elektra*, the issue was whether the plaintiff recording companies were entitled to summary judgment on their copyright infringement claims. *Id.* The court found that the defendant infringed the plaintiffs' copyrights by downloading their "sound recordings via an online media distribution system and distribut[ing] the copyrighted recordings to others by placing them in his share folder and making the recordings available to others on the peer-to-peer network." *Id.* at *2. Unlike in *Elektra*, Veoh was not found liable for copyright infringement. Moreover, there is no evidence that Veoh's actions could "devastate UMG's business," as simple notification to Veoh of allegedly infringing content—as required by the DMCA—would have resulted in disabled access to the material, and in any event, the vast majority of the works finally identified by UMG were already disabled pursuant to Veoh's copyright policy. *See* RSGI (Dkt. No. 473) ¶¶ 60-66.

[8] Moreover, UMG, as plaintiff, was also motivated to continue litigating this lawsuit by the fact that if it won, it could obtain hundreds of millions of dollars. Conversely, Veoh's motivation was to spend what it could afford to stay in business, and at most, potentially recover the money it was forced to spend defending itself. As Judge Posner has noted, "[w]hen the prevailing party is the defendant. . .the presumption in favor of awarding fees is very strong. . . . For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Assessment Technologies of Wi., LLC v. WIREData, Inc.*, 361 F.3d 434, 439 (7th Cir. 2004).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

judgment motion—pursuing attenuated theories of "knowledge," hyper-aggressive theories regarding implementation of a repeat infringer policy, and straining to create a disputed issue of fact—were by any account unreasonable.[9]

Finally, as explained in Veoh's motion and below, UMG's pursuit was objectively unreasonable because it withheld relevant discovery, and pursued discovery in a unreasonable manner exponentially increasing costs in this action. For example, despite Veoh's discovery requests and efforts to obtain basic information about the identification of the works at issue, and chain of title documentation regarding UMG's alleged ownership in the works at issue, UMG continually refused to provide this basic information, even though this Court ordered UMG to promptly produce exactly the same information in a closely similar action, *UMG Recordings, Inc. et al., v. Divx, Inc., et al*, at the initial scheduling conference.[10] UMG made excuse after excuse attempting to justify its failure to produce this most basic information. UMG always had access to the publicly available video files on Veoh, and should have been able to at least identify, from the outset of the lawsuit, any allegedly infringing works that were publicly accessible. With respect to videos to which Veoh had terminated access ("cancelled") for copyright or other reasons, Veoh provided UMG access to all of its video files including cancelled videos on 9/5/08.[11]

---

[9] Notably UMG now sees fit to cite *Io*, after refusing to acknowledge it in opposing Veoh's motion for summary judgment, an omission noted by the Court. Calkins Decl. ¶ 4 and Exh. 7 at 12:9-16. In *Io*, Veoh was held protected by Section 512(c) under very similar facts (a plaintiff that refused to comply with the DMCA). Now, UMG claims that *Io* differs from this Court with respect to the element of "right and ability to control." Opp: 6:2-12. But right and ability to control did "grow out of the common law," but also is not the "same," as the common law, so the decisions are not inconsistent, and of course, both decisions found in favor of Veoh.

[10] Specifically, during the initial scheduling conference, Judge Matz ordered UMG to identify all allegedly infringing works it was currently aware of within 28 days, and identify any remaining allegedly infringing works discovered within 119 days. At the same time, Judge Matz ordered UMG to produce corresponding rights information about these same works in accordance with the same schedule. Judge Matz set these deadlines in the *DivX* Action to "avoid avoidable" discovery disputes (like occurred in this case) and "especially avoid motion practice before the Magistrate Judge" (like Veoh was forced to engage in here). Calkins Decl. ¶ 5 and Exh. 8, p.7:9-14.

[11] The first "identification" of any allegedly infringing works was in UMG's motion for partial summary judgment filed on 9/5/08 (the same day Veoh provided access to

14

While UMG claims that Veoh's motion to compel identification of works was "not yet ripe" (Opp: 9:10-24), Veoh had explicitly moved on interrogatories[12] served months before the hearing and cited in the motion, in response to which UMG refused to identify any works.[13]  In the face of Veoh's motion, on December 1, 2008, more than a year into this case, and just over a month before the close of fact discovery, in response to a subsequently served interrogatory, UMG finally identified its first batch of 1,591 allegedly infringing video files.  UMG's list was a moving target, however, as UMG continued to amend the list through 5/09.  Calkins Decl. ¶ 7.[14]

With respect to UMG's chain of title production, in March 2009 the Court entered its Order granting, in part, Veoh's renewed motion to compel UMG to produce chain of title/rights information re allegedly infringing works.  Calkins Decl. ¶ 8 and Exh. 10 (Dkt. No. 321).  Shortly thereafter, UMG voluntarily withdrew a total of forty works, amounting to a reduction in $6,000,000 in potential statutory damages.  *Id.* at ¶ 8.  As Magistrate Judge Wistrich acknowledged at the 6/3/09 hearing, the exercise of UMG's searching for the chain of title documents had uncovered mistakes, and there

all available video files) which identified only five works—all five of which were independently cancelled by Veoh in 2007, some for suspected copyright infringements.  Stacie Simons Decl. filed in support of Veoh's Opp. to UMG's mot. for partial summary judgment (Dkt. No. 148) ¶ 6.

[12] These included Interrogatories 1 and 2: "[i]dentify all copyrights owned by, or exclusively licensed to, you that you claim Veoh has infringed, and for each, specify whether Veoh's alleged infringement was direct, contributory, or vicarious" and "[f]or each infringement for which you claim Veoh bears contributory or vicarious liability, identify the direct infringement from which the contributory or vicarious liability arises." Calkins Decl. ¶ 6 and Exh. 9.

[13] On Oct. 24, 2008, given UMG's continued refusal to respond to prior requests, Veoh explicitly requested even more specific information about the allegedly infringed works, including URL information, but UMG used this as its excuse to avoid producing any identifying information in response to Veoh's prior proper interrogatories, though is clear from Judge Matz' comments at the 8/25/08 *DivX* scheduling conference that URL information is expected as part of the identification of works.

[14] UMG's counsel represented that even though it had had access to the Audible Magic information it previously claimed as its last excuse for providing a complete list of alleged infringements for months and months, it still was not sure that it could commit to a deadline for identifying the remaining infringements.  Calkins Decl. ¶ 9 and Exh. 11, pp. 3-5.  In light of UMG's counsel's refusal to commit to finalizing its list even upon the expiration of the extended discovery cut-off, the Court noted that UMG would have to pursue any additional infringements in a separate lawsuit.

was no viable way for Veoh to rebut the rebuttable presumption of ownership without

the chain of title documents. Calkins Decl. ¶ 9 and Exh. 11. While the parties

ultimately entered a stipulation to defer the issue until trial on liability (7/27/09 Stip.

(Dkt. No. 560)), UMG's drawn out resistance to producing chain of title documents in

response to Veoh's basic, common and proper requests for this information led to

multiple rounds of briefing, significantly increasing costs in this action.[15]

## C. Awarding Veoh Its Fees Supports The Demarcation of Copyright Law

UMG concedes that Veoh's "defenses addressed important issues of copyright

law" Opp: 2:27-28, and led to "important issues in a developing area of copyright

law." Opp: 15:16. UMG's earlier settlements with *MySpace* and *Grouper*[16] only serve

to underscore the value in Veoh having prevailed on its meritorious copyright

defense.[17] As stated by the Supreme Court in *Fogerty*, "defendants who seek to

advance. . . meritorious copyright defenses should be encouraged to litigate them to

the same extent that plaintiffs are encouraged to litigate meritorious claims of

infringement." *Fogerty*, 510 U.S. at 527. Veoh's defense against UMG would have

never been determined on its merits if Veoh had simply caved in paying to UMG an

(unwarranted) settlement due to Veoh's massive potential exposure.

## V. VEOH'S FEES AND COSTS ARE REASONABLE

UMG implies that any fees and costs recovered[18] by Veoh should be limited to

---

[15] Judge Matz denied a motion for reconsideration of similar *DivX* order. Calkins Decl. ¶ 10 and Exh. 13.

[16] UMG's reference to these settlements as "amicable," after it sued alleging massive infringement ignores that the settlements were likely a business decision by defendants to avoid exposure to massive damages and protracted litigation.

[17] UMG also argues that the fact that three other actions with claims against separate defendants means that UMG's claims are somehow presumptively reasonable, though UMG cites to no rulings in those actions to support the strength of the UMG's claims. *Football Association v. YouTube* is actually Case No. 07-CV-03582 LLS (S.D.N.Y.) – filed on 5/4/07, *Viacom Int'l, Inc. v. YouTube*, Case No. 07-CV-02103 LLS (S.D.N.Y.) – filed in 3/13/07; *Io Group*, 586 F. Supp. 2d at 1132—filed 8/27/08.

[18] UMG does not claim that any particular attorney's time entries was unreasonable with respect to the time spent performing any specific tasks.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

those in connection with its successful motion for summary judgment—as if Veoh could simply have skipped directly to summary judgment in this case. Opp: 24:2-28. The Court vacated Veoh's first motion for summary judgment for safe harbor, ordering the parties to complete discovery before filing additional summary judgment motions. Calkins Decl. ¶ 11 and Exh. 14, 4/29/09 Order (Dkt. No. 431).

Contrary to UMG's suggestions, Section 505 does not limit fee awards to specified tasks. "[I]t is well-established in California law that no apportionment is necessary where the issues litigated are interrelated and necessary to the defense or prosecution of claims for which fees may properly be awarded and those for which they cannot." *Synapsis Corp. Ltd. v. Veenstra*, No. 96-55447, 1997 WL 308832, at *1 (9th Cir. June 6, 1997) (affirming award of attorney's fees to defendants under Section 505 after court granted summary judgment against the plaintiff in its action that included claims for copyright infringement). An award of attorney's fees under Section 505 is proper for the defense of any charges "related specifically to the copyright claims." *Cramer*, 1995 WL 541707, at *7 (affirming award of attorney's fees to defendant who won summary judgment in its favor against the allegation that it had committed certain copyright violations).

Courts do not limit the award of attorney's fees to work solely related to the dispositive motion. *See Religious Technology Center v. Scott*, Nos. 94-55781, 94-55920, 1996 WL 171443, at *6-7 (9th Cir. Apr. 11, 1996) (affirming award of almost $2.9 million in attorney's fees to the prevailing defendant based on its defense against a copyright claim that was dismissed along with the other claims in the case because "the number of hours submitted by the defendants…was reasonable taking into consideration the number of attorneys working on the case, the number of issues involved" and "the discovery standoffs"). The lower court took into account the amount of damages involved, and the great degree of success for prevailing defendant in determining the final fee amount, which was based upon hundreds of pages of time records that reflected work performed and billed, just like Veoh has provided here.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Thus, because the *Religious Technology Center* court determined that the lower court did not "rubber stamp" the attorney's fees request, but reviewed the declarations and exhibits that supported the amount and reasonableness of the fees, the court's award of $2.9 million in attorneys fees to the prevailing defendant was affirmed. *Id.*

In *Synapsis*, 1997 WL 308832, at *1, the court held that the lower court did not abuse its discretion in awarding attorney's fees pursuant to Section 505 to the defending companies in a copyright infringement case, because the lower court properly computed the fees based on the defending companies' detailed reviews of what services were performed by its counsel. The court stated that neither the failure of the defendants to provide time records to the lower court—which Veoh *has* provided here—nor their failure to segregate their work, resulted in an abuse of discretion, because the information that was provided was adequate for computing an award and "the issues litigated [were] interrelated and necessary to the defense." *Id.*

In *Cramer*, 1995 WL 541707, at *7, the defendant was properly awarded attorney's fees and costs by the lower court based on (1) the defendant's detailed reports itemizing the fees and costs; (2) the complexity of the case; (3) the fact that the fees were all related to the copyright claims (the court granted the defendant's summary judgment motion with respect to the copyright claims), and (4) because the unsuccessful plaintiff had fair warning that he risked an award of fees by pursuing the lawsuit. All four considerations are also present here.

Veoh underwent extensive and expensive discovery in this action.[19] UMG's attempts to lay the blame for the costs of discovery on Veoh are highly misleading and inaccurate. Contrary to UMG's mischaracterizations, there was never a finding by the

---

[19] Veoh collected emails, files and any instant messages of twenty-two custodians. Veoh reviewed and analyzed more than three million documents in preparation for production. Veoh also searched for and produced discovery from additional sources uncovered through Veoh's focused investigations. Certain of these items were produced in native form, and contained substantial volumes of responsive information that is not captured with traditional bates number counts. Calkins Decl. ¶ 17. Similarly, Veoh provided access to metadata of hundreds of thousands of cancelled video files. *Id.*

VEOH'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES – CASE NO. 07 5744 – AHM (AJWx)

Court that Veoh "destroyed" data, and in fact, the 11/18/08 Order to which UMG refers that required Veoh to begin logging certain Audible Magic data stated "[t]he Court expresses no view as to whether Veoh had an obligation to retain and produce the additional metadata fields prior to the date of this Order." Calkins Decl. ¶ 12 and Exh. 15 (Dkt. No. 217). Similarly, UMG's failed motion for "spoliation" did not result in any sanctions or findings that Veoh had "destroyed" evidence. The motion addressed a handful of innocuous emails that were either already produced, were not determined to be responsive to requests to Veoh during review, or were not in Veoh's possession (because they preceded the lawsuit and were not retained, or required to be retained). (Dkt. No. 322) pp. 5-7, 27-37. Judge Wistrich explicitly stated in his order that he thought any missing emails could have been innocent and asked that Veoh double check its document database for responsive documents, and then certify the completeness of Veoh's production (4/6/09 Order (Dkt. No. 401)) which Veoh did.

Further, although UMG complains of Veoh's allegedly "excessive" use of the *ex parte* process, UMG in fact filed more *ex parte* applications than Veoh did (UMG's six: Dkt Nos. 16, 166, 190, 212, 370, & 412 (several of which were denied[20]); and Veoh's five: Dkt Nos. 183,[21] 223, 239,[22] 268[23] and 425[24]). UMG also cites to the

---

[20] UMG's *ex parte* application to prevent Veoh from taking depositions to which it was entitled to take was denied (9/4/08 Order (Dkt. No. 201); UMG's *ex parte* application to continue the hearing on Veoh's summary judgment motion was denied. 3/20/09 Order (Dkt. No. 372); and UMG's *ex parte* to supplement the record on Veoh's summary judgment motion was denied. 4/29/09 Order (Dkt. No. 431). *See* Calkins Decl. ¶ 3 and Exh. 2, ¶ 11 and Exh. 14.

[21] Veoh's *ex parte* application for an order compelling compliance with prior orders was granted in part. *Id.* at ¶ 15 and Exh. 18 (11/26/08 Order (Dkt. No. 237)).

[22] Even though this *ex parte* application regarding deposition scheduling was "denied," the Court included the following instruction: "[h]owever, if UMG has not already done so, UMG is directed to provide Veoh with the dates on which it will produce the witnesses in question for deposition no later than November 24, 2008." 11/20/09 Order (Dkt. No. 218). UMG had not provided dates at that time, so the Order enabled Veoh to proceed with needed discovery in the face of UMG's improper refusals to provide deposition dates.

[23] Though this *ex parte* application by Veoh for permission to cease storing video files (given that all video files had already been produced to UMG and it was causing Veoh undue expense to continue to store the videos) was denied, it was without prejudice to its renewal under Local Rule 37. 12/5/08 Order (Dkt. No. 270).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

"denial" of Veoh's original motion to compel without prejudice (Dkt. 144), denied primarily based upon UMG strategically dumping 1.4 million pages of largely irrelevant data—recycled from its *MySpace* and *Grouper* productions—on Veoh shortly before the hearing on the motion to compel. As Veoh had not yet completed its review of the eleventh hour production at the time of the hearing,[25] the Court said it would make sense for Veoh to complete this review to see if any of the issues were resolved before seeking relief from the Court. Judge Wistrich acknowledged that he "agreed" with Veoh that he did "not really like the way [UMG] framed [their responses] because it seems to exclude the possibility of, for example, talking to people and asking them where relevant documents might be found. So I'd rather they phrase that differently." Calkins Decl. ¶ 13 and Exh. 16 (8/29/08 Hearing (Dkt. 107) at 10:13-11:15.) During the 8/29/08 hearing, the Court also ordered UMG to "go ahead and do what I ordered you to do previously" in the *MySpace* and *Grouper* actions.[26] *Id.* UMG refused to adhere to this Order, forcing Veoh to seek additional relief from the Court, which was granted in part. Calkins Decl. ¶ 14 and Exh. 17 (Dkt. No. 237). Moreover, the Court's 8/25/08 Order purportedly denying Veoh's motion required both parties to complete their "core production" by 9/30/08, and stated that

---

[24] At the same time UMG's *ex parte* application to supplement the record on Veoh's motion for summary judgment was denied, Veoh's *ex parte* application to supplement the record on Veoh's motion for summary judgment was denied, and Veoh's original summary judgment motion was vacated, to be re-noticed upon completion of discovery. Calkins Decl. ¶ 11 and Exh. 14 (4/29/09 Order (Dkt. No. 431)).

[25] While UMG claims that Veoh's motion was denied because Veoh's joint stipulation in support of its motion (which included UMG's arguments, the entirety of requests in dispute, and Local Rule 37-2.1explicitly states that there are no page limits) "exceeded 300 pages," this ignores that UMG's own joint stipulation in support of its motion was *192* pages (Dkt. No. 78) and would have been much longer if UMG had complied with L.R. 37 in including all of the requests and responses at issue. *See e.g.*, UMG's Joint Stip. in support of its motion to compel filed 7/21/08 (Dkt. No. 78) p. 8, note 2; p. 18, note 9 ("For the Court's convenience and in an effort to reduce the length of this Joint Stipulation, UMG includes only examples of the requests and responses . . ."). Veoh's Joint Stipulation complied precisely with Local Rule 37-2.1 in this regard. In other words, Veoh could have also condensed its joint stipulation to the length of UMG's if Veoh had failed to comply with Local Rule 37-2.1, that requires the Joint Stipulation set forth "verbatim" "both" the request and response at issue.

[26] *UMG Recordings, Inc., et al. v. MySpace, Inc.*, CV 06-07361 ("*MySpace*") & *UMG Recordings, Inc., et al., v. Grouper Networks, Inc., et al.*, CV 06-06561 ("*Grouper*").

VEOH'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES – CASE NO. 07 5744 – AHM (AJWx)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

"as to [UMG], the documents produced should include the types of documents which the Court previously ordered UMG to produce in *UMG v. Grouper* and *UMG v. MySpace*." 8/25/08 Order (Dkt. No. 144). Thus, UMG's suggestion that Veoh's original motion to compel efforts were wasted ignores the context, including the 1.4 million page data dump and the corresponding orders that UMG should produce its "core production" and what was previously ordered by in *MySpace* and *Grouper.*

UMG also attempts to suggest that Veoh's additional discovery efforts were wasted and unnecessary, when in fact, Veoh prevailed on numerous critical discovery motions and applications, including:

- The Court *GRANTED* Veoh's renewed motion to compel UMG to identify works at issue and to supplement certain interrogatory responses (Calkins Decl. ¶ 16 & Exh. 19 (Dkt. No. 285));

- The Court *GRANTED* Veoh's motion to compel the addition of certain custodians and organizational charts (*Id.* at ¶ 16, Exh. 20 (Dkt. No. 290));

- The Court *GRANTED,* after multiple rounds of briefing, Veoh's motion to compel UMG to produce chain of title/rights information regarding allegedly infringed works (*Id.* at ¶ 16 and Exh. 21 (2/2/09 Order (Dkt. No. 299); 2/11/09 Order (Dkt. No. 304)); which required UMG to ultimately produce a 20% sample chain of title documents (Dkt. No. 321), the production of which led to UMG's voluntary removal of numerous alleged infringements and millions in potential statutory damages;

- The Court *GRANTED* Veoh's motion to compel verified interrogatory responses to interrogatory nos. 4, 12, 14, 15, 16, 17, 20, 21 and 23 (*Id.* at ¶ 16 and Exh. 22 (Dkt. No. 379);

- The Court *GRANTED* Veoh's motion to compel production of instant messages (*Id.* at ¶ 16 and Exh. 23 (Dkt.No. 399));

- The Court *GRANTED* Veoh's motion to compel production of documents relating to financial information and damages (*Id.* at ¶ 16 and Exh. 24 (Dkt. No. 411)).

UMG also implies that the Court granted all of its discovery requests, though numerous requests and significant portions of each of the motions made by UMG were denied as further described in the Calkins Declaration ¶ 3 and Exhs. 2-6.

The Ninth Circuit also does not limit available costs under 17 U.S.C. § 505 to taxable costs or some other subset, but allows *full* costs. *Twentieth Century Fox Film Corp. v. Entertainment Dist.*, 429 F.3d 869, 884-85 (9th Cir. 2005) ("[W]e think that there can be no other import to the phrase "full costs" within § 505."). Nevertheless, UMG argues that the Court should not consider the additional $251,714.33 in costs sought by Veoh with its re-notice of its motion and supplemental cost information, which include costs incurred by Veoh and associated with experts, Veoh's electronic document vendor, and review of UMG's 20% ownership documents. (Opp. p. 25:3-8). Because all of this information was filed on 11/23/09, it falls well in advance of the 21-day notice period (Dkt. No. 596), which was re-noticed from 12/14 to 12/21 at the request of UMG, and provided UMG three weeks to prepare its opposition. The additional costs accounted for fees that were billed directly to Veoh, and thus not included in monthly costs from Winston & Strawn LLP. Since there is no prejudice to UMG in being provided adequate opportunity to respond to the supplemental costs on 28-days notice, and the costs are properly recoverable by Veoh, the Court should award these costs.

Though Veoh has already filed its complete time entries, as well as the amounts actually billed each month to the client (*See* Ranahan Decl., ¶ 19 (Dkt. No. 592)); Supp. Ranahan Decl. (Dkt. No. 600, ¶ 7 and Exh. 4), Veoh submits with its reply the invoices that match the chart of costs and fees billed to Veoh each month as previously submitted on at ¶ 19 of the Ranahan Declaration. Calkins Decl., ¶ 2 and

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Exh. 1; *compare with* Ranahan Decl. (Dkt. No. 592) ¶ 19.[27]   Contrary to UMG's claim

that "Veoh has simply totaled every dollar it spent on any aspect of this case," the very

billing "discrepancies" alleged by UMG demonstrate quite clearly that Veoh gave

over $400,000 in discounts from the time entries to the fees and costs actually billed

to Veoh.   *Compare,* Calkins Decl. ¶ 2 and Exh. 4 *with* Supp. Ranahan Decl. (Dkt. No.

600), ¶ 7 and Exh. 4.   While UMG points out the discrepancy between the services

rendered, and fees and costs billed, it fails to note that the distinction is *favorable*, in

that Veoh is seeking with its motion, and billed to Veoh, the *lesser* amount.   *Id.*

UMG also ignores that Veoh is not seeking fees for hundreds of hours spent in

this case by over a dozen summer associates (including reviewing allegedly infringing

videos and assisting with *motions in limine*), Veoh's in-house counsel, and other

employees.   Ranahan Supp. Decl. (Dkt. No. 600) ¶ 12.[28]   Moreover, as reflected on

Exh. 4 to the Ranahan Decl. (Dkt. No. 592), Veoh's fees were calculated in precisely

the manner described therein and in the supporting declaration with respect to period

in which blended rates applied.   *Id.* at ¶¶ 7-8 and Exh. 4; Ranahan Decl. (Dkt. No.

592).   There are no genuine discrepancies, as the supporting documents provided by

Veoh lay out, in detail, all services and time entries by attorneys in this case and the

rates charged, for the entire action, and confirm that Veoh provided not only a blended

rate for a certain period though an arrangement with the client, but additional

discounts to Veoh.

Thus, all of the fees incurred by Veoh, including those spent on extensive

discovery motion practice, reviewing and analyzing UMG's more than 1.4 million

---

[27] While UMG requested upon Veoh noticing its original motion that Veoh provide time detail for the fees incurred, and Veoh obliged (by providing Veoh's Client Matter Time Summary), UMG did not mention the need to also review underlying invoices until it filed its opposition.

[28] The fees and costs sought by Veoh also do not include the extensive storage and electronic costs incurred internally by Veoh to comply with preservation orders to keep storing millions of video files that UMG had access to for over a year, and begin undertaking new procedures, such as logging additional metadata from Audible Magic.   *See e.g.,* Dkt. Nos. 217 and 481.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

pages production, reviewing over three million documents in preparation for productions on behalf of Veoh, reviewing dozens of third party productions,[29] taking and defending dozens of depositions, and through expert costs to prepare its defense, are all properly awardable to Veoh. Veoh had no choice but to complete discovery and prepare for trial, especially after UMG rejected its reasonable settlement offer.

## VI. THE COURT SHOULD NOT DEFER ITS RULING

Without any direct support, UMG asks this Court to contravene federal and local rules that require this Court to decide attorneys' fees motions that have been timely filed, regardless of any pending appeal. The Federal Rules set a specific time limit for any motion for fees. Fed. R. Civ. Proc. 54(d)(2)(B) (motions for attorney fees are timely if filed no later than 14 days after entry of judgment, unless otherwise provided by statute or court order). Local Rule 83-9.1 then requires that the court render and file its decision on such a motion within 120 days after the matter is submitted for decision.

The Supreme Court has made clear that "district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees." *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 454 (1982) ("And of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits."). After *White*, some districts have written their local rules to delay submission of motions for attorney's fees until the appeals process is complete. *Gorman v. Coogan*, 324 F.Supp.2d 171, 175, n. 5 (D.Me. 2004). But the Central District has not adopted any such rule. If this District intended courts to "postpone

---

[29] Veoh reviewed and analyzed documents of third parties, which was an extension of Veoh's factual investigation to prepare Veoh's defense. This included productions from Tornante, Shelter, Time Warner, Audible Magic, Firefly 3, Jonathan Dolgen, Spark, Advertising.com (AOL), Audible Magic, Casale Media, Dan Klores Communications, Goldman Sachs, Limelight Networks, RIAA, and Time Warner. Calkins Decl. ¶ 17.

ruling on the [attorneys' fees] issue until the Ninth Circuit rules on the merits of th[e] case" (Opp at 25), it would have adopted a rule similar to the District of Maine.[30] California district courts routinely decide motions for attorneys' fees prior to any appellate decisions related to summary judgment rulings. Indeed, the common practice is for the district court to first decide the issue of attorney's fees, allowing the appellate court to consider appeals from fee awards together with any appeal from a final judgment on the merits as noted in *White*. *See, e.g.*, *Lassiter v. Twentieth Century Fox Film Corp.*, Nos. 05-55587, 05-55916, 2007 WL 1183824, at *1 (9th Cir. Apr. 20, 2007) (affirming both the summary judgment in favor of defendants and the award of the defendants' attorney's fees).

UMG's reliance on *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116 (2d Cir. 2001) (Opp: 25:15-18) is misplaced. In *Bender,* the court held that the plaintiff's bad faith conduct prior to the filing of the suit was a proper consideration in the award of fees. *Id.* at 126. But because the district court did not specifically refer to such incidents in its decision, the *Bender* court remanded the case so that the district court could clarify whether it relied on such bad faith conduct in its fee determination. *Id.* The *Bender* case did not address any issue related to the postponing of a district court fee decision due to a pending appeal, and, thus, is irrelevant here.

## VII. CONCLUSION

Veoh has established its entitlement to fees and costs in this case and respectfully requests that the Court grant this motion in its entirety.

Dated: December 14, 2009              WINSTON & STRAWN LLP


                                      By:  /s/ Erin R. Ranahan
                                           Michael S. Elkin
                                           Thomas Patrick Lane
                                           Jennifer A. Golinveaux

---

[30] *See* District of Maine Local Rule 54.2 ("A claim for fees filed before the final disposition of any appeal to the Court of Appeals shall have no effect and a new application must be filed within the prescribed time as described herein.").

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Rebecca Lawlor Calkins
Erin R. Ranahan

Attorneys for Defendant
VEOH NETWORKS, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VEOH'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES – CASE NO. 07 5744 – AHM (AJWx)