# EXHIBIT 1
# Pages 10 – 727
## * * *

# Confidential
**Lodged Under Seal per**
**Notice of Manual Filing Dkt. No. 609**

EXHIBIT 1  PAGE 9

# EXHIBIT 2

EXHIBIT 2  PAGE 728

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**CIVIL MINUTES--GENERAL**

Case No.   CV 07-5744 AHM (AJWx)                    Date: November 4, 2008

Title: <u>UMG RECORDINGS, INC., et al. v. VEOH NETWORKS, INC., et al.</u>
=================================================================
PRESENT:    **HON.  <u>ANDREW J. WISTRICH</u>, MAGISTRATE JUDGE**

<u>        Ysela Benavides        </u>              <u>                        </u>
          Deputy Clerk                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:
       None Present                              None Present

**ORDER REGARDING UMG'S EX PARTE APPLICATION FOR A PROTECTIVE ORDER**

The ex parte application is **denied.**

Veoh may take Geller's deposition.  The Ninth Circuit has not endorsed the rule of <u>Shelton v. American Motors Corp</u>., 805 F.2d 1323 (8th Cir. 1986), other courts have criticized it, <u>see</u>, <u>e.g.</u>, <u>In re Freidman</u>, 350 F.3d 65, 71-72 (2d. Cir. 2003), and even the Eighth Circuit has narrowed it. <u>See</u> <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 2726, 729-731 (8th Cir. 2002).  Moreover, Geller is not trial or litigation counsel, as even the authority on which UMG relies recognizes, <u>see</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 11:1142 (2008)(stating that "[t]he three <u>Shelton</u> criteria apply only when <u>trial and/or litigation counsel</u> (rather than in-house counsel) are being deposed")(emphasis in original), so <u>Shelton</u> and its progeny would not apply to him in any event.  Perhaps more to the point, considering all the circumstances, it seems plausible that Geller may possess some relevant information not shielded from discovery by the attorney-client privilege or the attorney work-product doctrine.  If it turns out that he does not, the deposition is likely to be brief.

Veoh is not precluded from taking other depositions regardless of UMG's dissatisfaction with Veoh's discovery responses.  Party A's ability to take depositions or pursue other discovery generally does not depend upon whether Party B is satisfied with the quality or completeness of Party A's discovery responses.  UMG has not convincingly demonstrated that an exception to that general rule is warranted in this case.  The court, of course, expresses no view concerning the quality or completeness of Veoh's discovery responses.

**IT IS SO ORDERED.**
cc:  Parties

EXHIBIT 2  PAGE 729

# EXHIBIT 3

EXHIBIT 3  PAGE 730

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

**CIVIL MINUTES--GENERAL**

Case No.  CV 07-5744 AHM (AJWx)              Date: November 21, 2008

Title: <u>UMG RECORDINGS, INC., et al. v. VEOH NETWORKS, INC., et al.</u>
==================================================================
PRESENT:     **HON.  ANDREW J. WISTRICH, MAGISTRATE JUDGE**

            <u>        Ysela Benavides        </u>            <u>                              </u>
                    Deputy Clerk                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:
        None Present                              None Present

**ORDER REGARDING UMG'S MOTION TO COMPEL VEOH TO PROVIDE RESPONSES OR
FURTHER RESPONSES TO DISCOVERY REQUESTS**

The 192 page joint stipulation is divided into 18 separately
numbered categories of discovery requests.  Some of the categories
contain a single request, while others contain multiple requests.
The categories are identified by roman numerals II - XIX.  For
convenience, this order follows the same convention.

The Court trusts that the parties already have complied with the
Court's August 25, 2008 ruling.  Only those issues not already
resolved during the August 25, 2008 hearing are addressed.[1]

As to category III, the motion is **granted**. In any event, Veoh has
represented that it is not withholding anything based upon its
objection to the definition of the term "Veoh software." [<u>See</u> Joint
Stipulation at 24-25].

As to Category IV, the motion is **granted**.  However, as to Request
58, insofar as actual litigation is concerned, Veoh need only
provide the names of the parties, the court, the case number, and
the filing date.  If UMG believes that it needs additional
information about a particular case, if any, after examining what
is available in public court files, it may serve a more specific
request seeking additional information regarding that particular
case.

As to category V, the motion is **denied.** These requests are overly
broad.  Narrower requests directed to these subjects might be
appropriate.  Veoh, of course, is not required to produce any
materials that it is prohibited from producing by the protective
order entered in the <u>Io Group</u> case in the absence of an order

---

[1]      As to categories II, VI, XVI, the motion was resolved on
the record during the August 25, 2008 hearing. [<u>See</u> Transcript of
August 25, 2008 Hearing at 57-58; Order dated August 25, 2008].

EXHIBIT 3 PAGE 731

authorizing it to do so from this court or from the court that issued the protective order in the <u>Io Group</u> case. Veoh's assertions concerning possible violations by UMG of the protective order in the <u>Io Group</u> case are not addressed in this order. Veoh may pursue them separately, preferably before the court that issued the protective order in the <u>Io Group</u> case, if necessary.

As to Category VII, the motion is **granted**, except that it is **denied** as to Requests 91 and 92 (which are overly broad), and **denied** as to Request 8 (which is moot). As to Interrogatories 3 and 4, Veoh must provide a high level summary or overview, and UMG may seek additional detail by means of depositions or more narrowly-focused interrogatories, if necessary.

As to category VIII, the motion is **granted**.

As to category IX, the motion is **granted**.

As to category X, the motion is **granted**.

As to category XI, the motion is **granted**, but Requests 59-61 are limited to licenses or other agreements under which Veoh obtained the rights to reproduce or use content owned or controlled by someone else.

As to category XII, the motion is **granted**.

As to category XIII, the motion is **granted**.

As to category XIV, the motion is **granted**. However, the motion is **denied** as to Interrogatory 1.

As to category XV, the motion is **granted**.

As to category XVII, the motion is **granted**. In any event, Veoh has represented to the court that it is not withholding unprivileged documents based on its objections. [<u>See</u> Joint Stipulation at 183].

As to category XVIII, the motion is **denied**, but if Veoh provided oral responses to one or more notices of copyrighted content, then it must serve a supplemental response to Interrogatory 6 describing such oral responses.

As to category XIX, the motion is **denied**.

EXHIBIT 3  PAGE 732

If the motion has been denied as to a category or request, Veoh nevertheless must produce any documents or information that it previously agreed or offered to produce in a writing, including but not limited to things it previously agreed or offered to produce in Veoh's June 13, 2008 letter.  Presumably, Veoh already has done so in response to the August 25, 2008 order.

The Court assumes that most of the documents and most of the information this order requires Veoh to produce already has been provided to UMG.  Therefore, compliance by December 8, 2008 is required.

**IT IS SO ORDERED.**

cc:  Parties

MINUTES FORM 11                            Initials of Deputy Clerk_____
CIVIL-GEN

EXHIBIT 3  PAGE 733

# EXHIBIT 4

EXHIBIT 4  PAGE 734

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**CIVIL MINUTES--GENERAL**

Case No.  CV 07-5744 AHM (AJWx)                    Date: December 23, 2008

Title: <u>UMG RECORDINGS, INC., et al. v. VEOH NETWORKS, INC., et al.</u>
==================================================================
PRESENT:    **HON.  <u>ANDREW J. WISTRICH</u>, MAGISTRATE JUDGE**

<u>     Ysela Benavides     </u>            <u>                      </u>
          Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:
       None Present                               None Present

**ORDER REGARDING UMG'S MOTION TO COMPEL REGARDING (1) SEARCH TERMS, (2) CUSTODIANS, AND (3) "SKYPE" ACCOUNTS**

As to issue 1, the motion is **granted** in part and **denied** in part. Veoh must search the files of the following additional custodians: Dimm, Resado, Rosenfeld, and Zahir.  In addition, UMG may select up to three video researchers or video research interns whose files Veoh must search. UMG must notify Veoh of those selected by January 2, 2009.

As to issue 2, the motion is **denied**.  The additional search terms proposed by UMG ("music" and "Youtube") are too broad, at least on the present record.

As to issue 3, the motion is **granted**.

Compliance by January 20, 2009 is required.

**IT IS SO ORDERED.**

cc:  Parties

# EXHIBIT 5

EXHIBIT 5  PAGE 736

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**CIVIL MINUTES--GENERAL**

Case No.  CV 07-5744 AHM (AJWx)                Date: April 6, 2009

Title: <u>UMG RECORDINGS, INC., et al. v. VEOH NETWORKS, INC., et al.</u>
==================================================================
PRESENT:   **HON.  <u>ANDREW J. WISTRICH</u>, MAGISTRATE JUDGE**

      <u>        Ysela Benavides        </u>                <u>                        </u>
           Deputy Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:
      None Present                              None Present

**ORDER REGARDING UMG'S MOTION FOR SANCTIONS AND TO COMPEL COMPLIANCE
WITH PRIOR COURT ORDERS**

As to Veoh's license agreements, the motion is **denied** as moot based
upon Veoh's representation that its production of license
agreements is complete. [Veoh's Supplemental Memorandum at 4].

As to lost or destroyed Skype files, the motion is **denied** as moot
based upon Veoh's representation that its production of Skype files
is complete. [Joint Stipulation at 42].[1]

The court is concerned about what appear to be unreasonably narrow
interpretations by Veoh of some of UMG's discovery requests [<u>see</u>,
<u>e.g.</u>, Joint Stipulation at 32-33], a practice which calls into
question the completeness of its entire production.  Anomalies in
Veoh's production, which may or may not have an entirely innocent
explanation, heighten that concern.  Nevertheless, the measures UMG
has asked the court to adopt are too draconian on the present
record.  Instead, Veoh is directed to review its production and to
have its general counsel (if any) and its lead trial counsel in
this case certify to the court under penalty of perjury that under
a fair reading of the requests for production as to which it has
agreed to produce documents or been ordered to produce documents,
its production is complete. Compliance within 21 days is required.

**IT IS SO ORDERED.**
cc:  Parties

MINUTES FORM 11                           Initials of Deputy Clerk_____
CIVIL-GEN

----

    [1]    The court expresses no view as to whether Veoh adequately
complied with its evidence preservation obligations with respect to
Skype logs or files pertaining to ex-employees or past or present
independent contractors.

EXHIBIT 5  PAGE 737

# EXHIBIT 6

EXHIBIT 6  PAGE 738

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**CIVIL MINUTES--GENERAL**

Case No.  CV 07-5744 AHM (AJWx)                Date: April 6, 2009

Title: UMG RECORDINGS, INC., et al. v. VEOH NETWORKS, INC., et al.
=================================================================
PRESENT:   **HON.  ANDREW J. WISTRICH, MAGISTRATE JUDGE**


_____Ysela Benavides_____          _____
Deputy Clerk                                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:
       None Present                              None Present

**ORDER REGARDING UMG'S MOTION FOR SANCTIONS AND TO COMPEL VEOH TO PRODUCE AUDIBLE MAGIC METADATA**

The motion is **granted** in part and **denied** in part as moot.  Veoh produced the Audible Magic metadata on February 26, 2009. [Joint Stipulation at 5, 32].  During the hearing, UMG conceded that the metadata appears to be complete.  The parties are directed to cooperate in resolving minor residual problems promptly. UMG shall have until May 11, 2009 to supplement its list of allegedly infringing videos/allegedly infringing works.  The request for sanctions is **denied**.

**IT IS SO ORDERED.**

cc:  Parties


MINUTES FORM 11                          Initials of Deputy Clerk_____
CIVIL-GEN

EXHIBIT 6  PAGE 739

# EXHIBIT 7

EXHIBIT 7  PAGE 740

1    the site.

2           I mean, I don't think that there is a serious

3    question that there is a direct financial benefit here.  And,

4    in fact, in their initial moving papers, they devoted virtually

5    nothing to that point.  Their silver bullet in their argument

6    is not the direct financial benefit prong, but the right and

7    ability to control.  There's clearly a direct financial benefit

8    here.

9           THE COURT:  Well, you know, it's kind of amusing to

10   me that you are stressing what they didn't deal with

11   extensively when you didn't deal with the IO case at all.

12          MR. MARENBERG:  Well, I think the IO case is actually

13   a decent case for me.

14          THE COURT:  Why didn't you even cite it?

15          MR. MARENBERG:  Well, because I don't like the result

16   and I don't think the analysis on many issues was sound.

17          But the judge in the IO case does go through the

18   analysis that I just gave you, and it does say that the

19   vicarious liability standard, the right and control element is

20   the same in vicarious liability and in the DMCA.

21          What the IO case didn't have -- and by the way, one

22   of the reasons we didn't do a lot -- and I understand your

23   workload, but I can tell you that our brief was 50 pages cut to

24   25 here, and there is a lot of stuff that got put on the

25   editing room floor.  I can't tell whether this in particular

EXHIBIT 7  PAGE 741

1    release.

2         MR. ELKIN:  Your Honor, may I be heard just on a

3    procedural matter?

4         THE COURT:  Oh, yeah.  I wanted to raise a procedural

5    matter.  I am glad those terms came to your mind.

6         MR. ELKIN:  I just wanted to inquire as to what Your

7    Honor was intending to do with regards to --

8         THE COURT:  The motions in limine and the pre-trial

9    conference?

10        MR. ELKIN:  Yes.

11        THE COURT:  Okay.  Let me ask some questions to Mr.

12   Marenberg, and then you will get your answer, Mr. Elkin.

13        So go to the lectern, Mr. Marenberg.

14        I looked over the 16.4 Memorandum of Contentions that

15   you filed in connection with the possibility of an anticipated

16   trial.  And on Page 2 relating to the claims for direct

17   infringement, I don't expect you to have this before you

18   necessarily, but you summarize what UMG's violations were,

19   referring to a various array of conduct or inaction that was

20   already covered in my previous rulings on 512(c).

21        So if I were to stick to my conclusion and grant

22   summary judgment on these claims, what's left?  And why should

23   we have a pre-trial conference and why should I somehow try to

24   find the time to work on these motions in limine?  There are a

25   ton of them.

1    just reflect on those authorities if you can.

2           THE COURT:  I have got a few things to reflect on, so

3    I'm not promising that I am going to lose sleep over that.  But

4    there is another way of looking at it and that is to have some

5    kind of kiss and make up kind of consent decree saying Veoh

6    will continue to engage in appropriate efforts using the

7    available means that it has described in its papers to the

8    Court to assure that infringing materials were removed and you

9    got your injunction.

10           Okay.  The matter is under submission.

11           The trial date will be vacated indefinitely as well.

12    Thank you, Counsel.

13        *(Proceedings concluded.)*

14                            --oOo--

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 7  PAGE 743

# EXHIBIT 8

EXHIBIT 8  PAGE 744

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

– – –

COPY

UMG RECORDING, INC. ET AL,               )
                                         )
                         PLAINTIFFS,     )
                                         )
            vs.                          ) No. CV07-6835-AHM(AJWx)
                                         )
DIVX, INC., ET AL.,                      )
                                         )
                         DEFENDANTS.     )
_____ )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, AUGUST 25, 2008

1:38 P.M.

_____

CINDY L. NIRENBERG, CSR 5059
U.S. Official Court Reporter
312 North Spring Street, #438
Los Angeles, California 90012
*www.cindynirenberg.com*

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 8  PAGE 745

```
 1   APPEARANCES OF COUNSEL:

 2


 3   FOR THE PLAINTIFFS:
                         ARNOLD AND PORTER
 4                       BY: RONALD L. JOHNSTON, ATTORNEY AT LAW
                             MURAD HUSSAIN, ATTORNEY AT LAW
 5                       777 SOUTH FIGUEROA STREET
                         44TH FLOOR
 6                       LOS ANGELES, CA 90017
                         213-243-4000
 7


 8


 9   FOR THE DEFENDANTS:
                         WILSON SONSINI GOODRICH & ROSATI
10                       BY: DAVID H. KRAMER, ATTORNEY AT LAW
                         650 PAGE MILL ROAD
11                       PALO ALTO, CA 94304-1050
                         650-493-9300
12


13                       DIVX IN-HOUSE COUNSEL
                         BY: LEE C. MILSTEIN, ATTORNEY AT LAW
14                       4780 EASTGATE MALL
                         SAN DIEGO, CA 92121
15                       858-882-0681

16

17

18

19

20

21

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 25, 2008

 2                        1:38 P.M.

 3                        - - - - -

 4          THE CLERK:  Calling Item Number 2, CV07-6835, UMG

 5  Recording, Inc., et al. versus DivX, Inc., et al.

 6          Counsel, state your appearances, please.

 7          MR. JOHNSTON:  Ronald Johnston and Murad Hussain for

 8  plaintiff UMG.

 9          THE COURT:  What's your name?

10          MR. HUSSAIN:  Murad Hussain.

11          THE COURT:  Okay.  H-U-S-A-N?

12          MR. HUSSAIN:  H-U-S-S-A-I-N.

13          THE COURT:  Okay.

14          MR. KRAMER:  I'm Dave Kramer from Wilson Sonsini for

15  DivX, Inc.  With me is Lee Milstein who is in-house counsel at

16  DivX.

17          THE COURT:  All right.  We're here for the scheduling

18  conference, as you know.

19          The first issue I want to raise is whether you've

20  received and read the order that I issued on Friday granting

21  the motion to dismiss the counterclaims.

22          MR. JOHNSTON:  Yes.

23          MR. KRAMER:  Yes, Your Honor.

24          THE COURT:  I don't think I need any further argument

25  on that, so that's going to stand as is.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 8  PAGE 747

1          MR. KRAMER:  Okay.

2          THE COURT:  Unless there is something that you think

3     is factually erroneous in the analysis.

4          MR. KRAMER:  I think, Your Honor, I'd like to speak

5     to one point in particular.

6          THE COURT:  Go ahead.

7          MR. KRAMER:  The Court's order assumes that the

8     declaratory relief counterclaims were addressed to the concern

9     that UMG would dismiss the entire action.  That is not what the

10    counterclaims were directed to.

11         They were directed instead to a practice that we have

12    seen in other cases brought by content providers against online

13    service providers where the process by which alleged

14    infringements are added on an ad hoc basis and then dropped

15    from the case when the defendants demonstrate the particular

16    claims of infringement, specific works and specific

17    infringements are meritless.

18         So we prove, for example, that UMG doesn't own the

19    copyrights to a particular work that they've put at issue in

20    this case or we prove that they've uploaded a particular work

21    to the Stage 6 site and, therefore, can't complain that that's

22    unauthorized.

23         And what the plaintiffs in these cases tend to do is

24    to say, well, never mind, that one's not part of this case.

25         And so our concern is to insure that those specific

EXHIBIT 8  PAGE 748

1    claims of infringement are resolved on the merits. So that

2    there is a judgment in DivX's favor, we need the declaratory

3    relief counterclaims.

4            It's not directed to the entirety of the action, but

5    rather this ad hoc addition and removal of claims.

6            THE COURT: Well, at the end of this process -- and

7    it won't go on that long, as you'll hear -- of selective

8    pruning of the claims or the identified works that supposedly

9    were infringed, you could independently turn around and bring a

10   declaratory action.

11           Alternatively or in addition, at the end of the fray

12   when it comes time to determine prevailing parties and award

13   attorneys' fees, I would give you leave to include whatever it

14   took to demonstrate the invalidity or the absence of merit to

15   the claims on those specified works of art as part of your

16   array that would go into an award of attorneys' fees to your

17   firm.

18           So in both respects, both in terms of the merits and

19   the cost of litigation, I can't see how DivX would be

20   prejudiced by this ruling. So I don't think that your point

21   really causes me to change my view.

22           MR. KRAMER: Understood, Your Honor.

23           THE COURT: Now, in terms of the scheduling

24   conference matters that are typically at issue and that are

25   raised -- I'll get to the issue of specification of precise

EXHIBIT 8  PAGE 749

1  allegedly infringed works and the conflict safeguards in a

2  moment -- let me just confirm some open issues.

3          Where do things stand with respect to the Protective

4  Order that is referred to at Page 11 of the 16(b) or 26(f)

5  report?

6          I'm referring to Page 11 in which I'm told that UMG

7  was going to propose a Protective Order.

8          MR. KRAMER:  They have not yet done so, Your Honor.

9          MR. JOHNSTON:  We will do so with haste.

10          THE COURT:  Okay.  And the parties don't anticipate

11  any sparring about that, right?

12          MR. KRAMER:  Hope not.

13          MR. JOHNSTON:  I do not.

14          THE COURT:  Okay.  Next question is -- well, let's

15  address this threshold issue or at least this important issue

16  of specification of infringed works.

17          I construe what I read in this report to mean that

18  within 30 days of today, you're prepared to identify the works

19  that you claim to own the copyright in that you know have been

20  infringed, right?

21          MR. JOHNSTON:  Correct.

22          THE COURT:  We'll make it 28 days from today, so --

23  because I function and my orders try to be based upon weekly

24  intervals that make for very efficient administration.

25          So I'm ordering that as to the works that, regardless

EXHIBIT 8  PAGE 750

1    of whatever the discovery from DivX may show, UMG currently or

2    by 28 days from now knows or knows part of the array of

3    supposedly infringed works, that those be identified and fully

4    identified.

5          And since there's going to be a clear and maybe

6    understandable effort on the part of DivX to challenge the

7    legitimacy of ownership claims, attach not only the

8    specification of the works but the ownership evidence as well.

9          Now, registration is presumptive.  Evidence of

10   ownership, if you have anything readily available that goes

11   beyond that, to avoid avoidable sideshows and disputes and

12   especially avoid motion practice before the magistrate judge --

13   and I'll get back to that later -- include it in the 28 days

14   from now.

15         Just anticipate what you are going to have to deal

16   with anyway.  Get it all together and identify it.

17         Now, in other cases -- and I just had this issue

18   arise in the Perfect 10/Google/Amazon litigation, there has

19   been varying lengths of time before which I've imposed a

20   deadline for the specification of the infringed works.  And the

21   deadline specification contemplates that that will be the

22   outside limit on potential issues of liability and

23   corresponding damages.  It doesn't address issues of

24   willfulness, punitive damages and the like; just sets the

25   contours for what the dispute is about.

EXHIBIT 8  PAGE 751

1        There have been issues in that case which I don't

2    think will arise here.  And I think this case may lend itself

3    more readily to settlement.  Apparently, that's been the course

4    that UMG has taken in parallel types of cases, but have you

5    discussed with each other what the legitimate or reasonable

6    time frame should be?  Because I definitely will impose that

7    obligation on UMG.  I'm not going to permit amendments.  I'm

8    not going to permit specifications right up to the date of

9    trial.

10        MR. JOHNSTON:  We have not discussed the timetable.

11    It depends upon looking at their website that's been archived,

12    as I understand it, and doing tests on that.

13        THE COURT:  It's been archived because it's been

14    closed down, right?

15        MR. JOHNSTON:  Right.

16        THE COURT:  And what kind of tests are you referring

17    to?

18        MR. JOHNSTON:  We need to have somebody analyze the

19    history of the content on it and what content is ours.

20        THE COURT:  What does that take in terms of time and

21    cost and effort?

22        MR. JOHNSTON:  I would be speculating.  I'm not sure

23    what the timetable would be.  We're forming discovery requests

24    now -- formulating discovery requests now to serve to get the

25    information that would best allow us to do that.  I can

EXHIBIT 8  PAGE 752

```
 1    certainly get back to the Court.

 2            THE COURT:  How long was the website up?

 3            MR. JOHNSTON:  The website was up for approximately

 4    18 months.

 5            THE COURT:  And when was it closed down?  How long

 6    ago approximately?

 7            MR. JOHNSTON:  February of this year.  January or

 8    February of this year.  It went up in August of 2006, I

 9    believe.

10            THE COURT:  Do you have a basis to give me with some

11    degree of reliability, if not precision, a guesstimate as to

12    the maximum number of infringing displays that you think you're

13    going to find?  A ballpark number.

14            MR. JOHNSTON:  The maximum number?  I believe we'll

15    find several thousand.  Under 5,000 would be a guess, but --

16            THE COURT:  Yeah, I'm not going to hold you to it.

17            MR. JOHNSTON:  Particularly if you look at the amount

18    of time it was up.  But that's really a guess.  I have reason

19    to believe we will show several thousand.

20            THE COURT:  You haven't served the discovery yet on

21    DivX?

22            MR. JOHNSTON:  Correct.

23            THE COURT:  So just tell us orally -- just describe

24    what the discovery will demand, what the request will demand.

25            MR. JOHNSTON:  The discovery that's being drafted
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 8  PAGE 753

1 would demand that they produce the archived website, as well as

2 other internal communications, so we -- we need to determine

3 the ownership of the content on the website, and then we need

4 to determine the conduct of the website in the sense of what

5 they knew, what they induced to have their users put on the

6 website. So I guess it's two buckets.

7 THE COURT: Those are two different issues.

8 MR. JOHNSTON: Correct.

9 THE COURT: I just want to address for the moment

10 what it was that was allegedly infringing. I don't know what

11 you mean by requiring that the archived website be provided, if

12 that's what you just said. Do you know what that would

13 encompass?

14 MR. KRAMER: I have a fear that it is a request for

15 an entire functioning copy of the Stage 6 service as it existed

16 at the time it was shut down, which would be a massive

17 engineering undertaking and require a significant amount of

18 time and expense to generate. But if UMG is willing to work

19 with us on the cost issues, I'm not suggesting that it's

20 infeasible.

21 MR. JOHNSTON: What we're looking for is the content

22 on the website more specifically than other services and

23 whatnot that were on the website.

24 THE COURT: I'll tell you what. I'm not going to be

25 able to negotiate a demand, and that wouldn't be reasonable

EXHIBIT 8 PAGE 754

1    even if it were feasible, so I don't want to spend too much

2    time trying to scope this out, but I got to tell you that I'm

3    going to be setting dates now.

4          I'm going to try to set dates on an informed basis,

5    which is why I'm asking these questions.  I'll be very loathed

6    to change the dates.  And I will add to the dates that I'm

7    imposing an outside date by which UMG will have to specify what

8    the allegedly infringed works were.

9          That's going to help the parties in settlement

10   anyway.  It won't preclude demands and counteroffers and the

11   like.  Just on the basis of that universe, people could

12   extrapolate and surmise and assume other facts, but at least it

13   will provide a focus.

14         Now, how much time do you want as time to respond to

15   that?

16         MR. JOHNSTON:  120 days.

17         THE COURT:  Oh, that sounds pretty reasonable to me.

18         MR. KRAMER:  Yes, Your Honor.  I think that 120 days

19   is fine provided we have a sufficient amount of time thereafter

20   to take discovery with respect to works that are added at the

21   last minute.  We may need to redepose witnesses.  We may need

22   to reserve document requests.  We may need to engage in motion

23   practice with respect to stuff that comes thereafter.

24         THE COURT:  Say it again.  Provided that what?

25         MR. KRAMER:  Provided that DivX has a sufficient

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 8  PAGE 755

1    opportunity to take discovery with respect to works that are

2    identified thereafter.

3            By thereafter, I mean if their deadline is 120 days

4    from today, then after that point, we will need an opportunity

5    for discovery with respect to whatever has been identified.  So

6    the last day, if we get a list of 50 more or 500 more

7    copyrighted works, that would --

8            THE COURT:  That's just the day where you know what

9    you have to deal with.

10           MR. KRAMER:  Understood.

11           THE COURT:  It doesn't preclude you from engaging in

12    other discovery as to that.  And that's going to be the last

13    day.

14           Okay.  I will read off other dates shortly, but it

15    will be 17 weeks from today -- that's 119 days -- that UMG has

16    to identify the works that it alleges were infringed by the

17    defendant and provide available corresponding proof of

18    ownership as to those works, which will, by the way, make it

19    fair to accelerate the amount of time or narrow the amount of

20    time that you need to conduct follow-up discovery.

21           You are going to be allowed to, but you are going to

22    get a lot of this stuff to begin with.

23           MR. KRAMER:  That would be my hope, Your Honor.

24           THE COURT:  And that's the last day, that 17 weeks.

25    So by that, I mean it can be rolling -- and it should be

EXHIBIT 8  PAGE 756

# EXHIBIT 9

EXHIBIT 9 PAGE 757

1  Steven A. Marenberg (101033) (smarenberg@irell.com)
   Elliot Brown (150802) (ebrown@irell.com)
2  Brian Ledahl (186579) (bledahl@irell.com)
   Benjamin Glatstein (242034) (bglatstein@irell.com)
3  IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone:  (310) 277-1010
5  Facsimile:  (310) 203-7199

6  Attorneys for Plaintiffs
   UMG Recordings, Inc.;
7  Universal Music Corp.;
   Songs of Universal, Inc.;
8  Universal-Polygram International Publishing, Inc.;
   Rondor Music International, Inc.;
9  Universal Music – MGB NA LLC;
   Universal Music – Z Tunes LLC;
10 and Universal Music – MGB Music Publishing Ltd.

11                UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14 UMG RECORDINGS, INC., *et al.*,      ) Case No. CV 07-05744 AHM (AJWx)

15            Plaintiffs,              )

16       v.                           ) **UMG RECORDINGS, INC.'S**
                                        **RESPONSES TO DEFENDANT**
17 VEOH NETWORKS, INC., a California   ) **VEOH NETWORKS, INC.'S FIRST**
   corporation, DOES 1-10, inclusive, ) **SET OF INTERROGATORIES**
18
            Defendants.               )
19                                      ) Judge:  Hon. A. Howard Matz
                                        ) Ctrm:   14
20                                      )

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1824402

EXHIBIT 9 PAGE 758

| | |
|---|---|
| 1 | Propounding Party: | Veoh Networks, Inc. |
| 2 | Responding Party: | UMG Recordings, Inc. |
| 3 | Set: | One |

4      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

5 UMG Recordings, Inc. ("UMG") hereby serves this Response to the First Set of

6 Interrogatories propounded by Defendant Veoh Networks, Inc. ("Veoh").

## PRELIMINARY STATEMENT

8      UMG's Responses are subject to the following qualifications and

9 explanations, which apply to each of the interrogatories, and which are incorporated

10 in full by this reference into each and every Response below as if fully set forth

11 therein:

12      A.    These responses, while based on diligent inquiry by UMG, are based

13 only upon UMG's perception and understanding of the nature and type of

14 information requested and upon information presently known and available to UMG

15 and its attorneys of record in this action. UMG has not completed its investigation

16 of facts or its discovery. These responses are neither intended as, nor shall in any

17 way be deemed, an admission or representation that further facts, documents or

18 witnesses having knowledge relevant to the subject matter of the interrogatories will

19 not be subsequently discovered, or that any fact or document presently available will

20 not be understood differently after discovery of further information. Accordingly,

21 without obligating itself to do so, UMG hereby reserves the right to supplement,

22 revise, modify, or amend these responses, and to rely upon such information in

23 subsequent proceedings, motions or trial in this action.

24      B.    UMG responds to the interrogatories as UMG reasonably interprets and

25 understands such interrogatories. If Defendant subsequently asserts an

26 interpretation of any individual interrogatories that differs from UMG's

27 understanding, UMG reserves the right to supplement its responses and/or

28 objections herein.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1824402

UMG RECORDINGS, INC.'S RESPONSES TO VEOH
NETWORKS, INC.'S FIRST SET OF
INTERROGATORIES

- 1 -

EXHIBIT 9 PAGE 759

1 the legal issues in this lawsuit. Nor has UMG determined which currently known
2 facts and documents it will present in support of its contentions. UMG has made an
3 effort to respond, where possible, to the extent that its contentions and the grounds
4 on which they are based are currently formulated. UMG expressly reserves the right
5 to amend any of its responses describing UMG's contentions and the grounds for
6 UMG's contentions at any future time.

7     13.    UMG objects to the interrogatories, and to any individual interrogatory
8 set forth therein, to the extent that any interrogatory seeks confidential or trade
9 secret-protected information. Such information will only be released subject to the
10 entry of an appropriate protective order, and consistent with the confidentiality
11 obligations UMG has to third parties.

12     14.    The General Objections set forth above, and the objections to specific
13 interrogatories set forth below, are made as to the matters that are clearly
14 objectionable on the face of the interrogatories. These objections are made without
15 prejudice to, or waiver of, UMG's right to object on all appropriate grounds to the
16 interrogatories hereafter, either prior to, or at the time of trial.

17

18 **INTERROGATORIES**

19 **INTERROGATORY NO. 1**:

20     Identify all copyrights owned by, or exclusively licensed to, you that you
21 claim Veoh has infringed, and for each, specify whether Veoh's alleged
22 infringement was direct, contributory, or vicarious.

23 **RESPONSE TO INTERROGATORY NO. 1**:

24     UMG incorporates by reference each of its General Objections. UMG further
25 objects to this interrogatory, which requires UMG to identify which works have
26 been infringed, on the grounds that such request is unduly burdensome and that this
27 information is within the possession, custody, and control of Veoh, and has not yet
28 been produced. In particular, UMG objects that the discovery necessary to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1824402

- 4 -

UMG RECORDINGS, INC.'S RESPONSES TO VEOH
NETWORKS, INC.'S FIRST SET OF
INTERROGATORIES

EXHIBIT 9 PAGE 760

1 determine whether the infringement was direct, contributory, or vicarious, may be
2 within Veoh's possession, custody, or control. In addition, this interrogatory
3 incorrectly assumes that Veoh provides UMG with the ability to comprehensively
4 identify all instances of copyright infringement by and through Veoh. In fact, while
5 Veoh has that ability, UMG does not. Indeed, it is Veoh and not UMG, that
6 possesses the most complete and accurate listing of copyrighted works that have
7 been infringed by Veoh. UMG expects that Veoh will take appropriate efforts to
8 identify and retain this information. Since UMG is unable to determine
9 comprehensively which of its copyrights have been infringed by Veoh, information
10 provided by UMG in response to this interrogatory is without waiver of any of
11 UMG's rights and without prejudice to UMG's right to identify additional
12 copyrighted works that have been infringed by Veoh when that information
13 becomes available to UMG.

14       Subject to and without waiving the foregoing objections, UMG responds as
15 follows: With the caveat that UMG's response to this interrogatory is not
16 necessarily exhaustive, UMG will produce, pursuant to Rule 33(d) of the Federal
17 Rules of Civil Procedure, relevant, non-privileged documents showing certain of its
18 copyrighted works that UMG has been able to identify as having been infringed by
19 Veoh for the limited period of time during which UMG performed a limited review
20 of Veoh. Though discovery is ongoing, and reserving its right to supplement its
21 response, pursuant to paragraphs 28-52 of the Complaint, UMG alleges direct,
22 vicarious, and contributory liability as to each of the works identified in response to
23 this Interrogatory.

24 **INTERROGATORY NO. 2:**

25       For each infringement for which you claim Veoh bears contributory or
26 vicarious liability, identify the direct infringement from which the contributory or
27 vicarious liability arises.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1824402

- 5 -

UMG RECORDINGS, INC.'S RESPONSES TO VEOH
NETWORKS, INC.'S FIRST SET OF
INTERROGATORIES

EXHIBIT 9 PAGE 761

1 further objects to the extent that this interrogatory calls for information subject to
2 confidentiality agreements between UMG and third parties. Nothing contained
3 herein shall be considered a waiver of such confidentiality obligations.

4 **INTERROGATORY NO. 5:**

5   Identify all distributors and all channels of distribution used for each work
6 identified in response to Interrogatory No. 1, including the quantity of works sold
7 through each distributor, and for the channels of distribution that include direct sales
8 to the public, state the quantity of each work sold directly to the public.

9 **RESPONSE TO INTERROGATORY NO. 5:**

10   UMG incorporates by reference each of its General Objections, as well as its
11 objections to Veoh's Interrogatory No. 1. UMG objects that this interrogatory is
12 vague and ambiguous, as well as overly broad and unduly burdensome, as to the
13 meaning of "distributors" and "channels of distribution." UMG further objects that
14 the discovery sought is overly broad and unduly burdensome in that, among other
15 things, it seeks the identification of all distributors and all channels of distribution
16 used for each work infringed by Veoh. UMG further objects that UMG's
17 distributors and channels of distribution are not relevant to the parties' claims or
18 defenses and such discovery is not reasonably calculated to lead to the discovery of
19 admissible evidence. UMG further objects that this interrogatory is overly broad,
20 unduly burdensome, and seeks information not relevant to the parties' claims or
21 defenses in that it seeks the quantity of works sold through each distributor, the
22 channels of distribution that include direct sales to the public, and the quantity of
23 works sold directly to the public. UMG objects to the extent that this interrogatory
24 calls for information subject to confidentiality agreements between UMG and third
25 parties. Nothing contained herein or produced in response hereto shall be
26 considered a waiver of such confidentiality obligations.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1824402

- 8 -

UMG RECORDINGS, INC.'S RESPONSES TO VEOH
NETWORKS, INC.'S FIRST SET OF
INTERROGATORIES

EXHIBIT 9 PAGE 762

**RESPONSE TO INTERROGATORY NO. 24**:

UMG incorporates by reference each of its General Objections. UMG further objects to this interrogatory on the grounds that it is overbroad and unduly burdensome insofar as it calls for UMG to identify all persons or entities who are "made responsible for ... works owned or controlled" by UMG. Additionally, this interrogatory purports to seek information relating to activities not involving Veoh. UMG further objects to this interrogatory as vague and ambiguous in its use of the terms "viral marketing," "viral marketing activities," "virally" marketing, and "reports prepared regarding said viral marketing activities." UMG further objects that this interrogatory seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. UMG further objects to the definition of "persons" as overly broad and unduly burdensome.

Dated: April 9, 2008

IRELL & MANELLA LLP
Steven A. Marenberg
Elliot Brown
Brian Ledahl
Benjamin Glatstein

By: _____
Brian Ledahl
Attorneys for Plaintiffs
UMG RECORDINGS, INC.;
UNIVERSAL MUSIC CORP.; SONGS
OF UNIVERSAL, INC.; UNIVERSAL-
POLYGRAM INTERNATIONAL
PUBLISHING, INC.; RONDOR MUSIC
INTERNATIONAL, INC.; UNIVERSAL
MUSIC – MGB NA LLC; UNIVERSAL
MUSIC – Z TUNES LLC; and MBG
MUSIC PUBLISHING LTD.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1824402

UMG RECORDINGS, INC.'S RESPONSES TO VEOH
NETWORKS, INC.'S FIRST SET OF
INTERROGATORIES

- 23 -
EXHIBIT 9 PAGE 763

# EXHIBIT 10

EXHIBIT 10  PAGE 764

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11  UMG RECORDINGS, INC., *et al*.,       )   Case No. CV-07-05744 AHM (AJWx)
                                          )
12              Plaintiffs,               )   **ORDER RE: VEOH'S RENEWED**
                                          )   **MOTION TO COMPEL**
13        vs.                             )   **PLAINTIFFS TO PRODUCE**
                                          )   **CHAIN OF TITLE/RIGHTS**
14  VEOH NETWORKS, INC., *et al*.,        )   **INFORMATION RE: ALLEGEDLY**
                                          )   **INFRINGING WORKS**
15              Defendants.               )
                                          )   Magistrate: Hon. Andrew J. Wistrich
16                                        )   Ctrm:   690
                                          )
17                                        )   Discovery Cutoff:  April 13, 2009
                                          )   Pretrial Conference: July 13, 2009
18  _____ )   Trial Date:  July 28, 2009

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations
2016092

EXHIBIT 10  PAGE 765

[PROPOSED] ORDER RE: VEOH NETWORKS, INC.'S
RENEWED MOTION TO COMPEL PLAINTIFFS TO
PRODUCE CHAIN OF TITLE/RIGHTS INFORMATION
RE: ALLEGEDLY INFRINGING WORKS

1     Veoh Networks, Inc's ("Veoh") Renewed Motion to Compel Plaintiff UMG

2  Recordings, Inc. to Produce Chain of Title/Rights Information Re Allegedly

3  Infringing Works ("Motion") came on for hearing before this Court on December

4  17, 2008.  The Court, having reviewed the Motion, memoranda, declarations and

5  other evidence submitted, and such other and further evidence as may be considered

6  by this Court, and good cause appearing, hereby rules as follows:

7     **IT IS HEREBY ORDERED** that Veoh's Motion is **GRANTED in part and**

8  **DENIED without prejudice in part** as follows:

9     (1)   <u>Documents to be Produced</u>.  For the sample works-in-suit[1] identified as

10  set forth in items (2) and (3) below, Plaintiffs shall produce:

11     a.    All chain of title documents directly bearing on Plaintiffs'

12  ownership of, or claims of rights in, the works-in-suit, including but not limited to,

13  all assignment agreements, recording agreements, work-for-hire agreements,

14  songwriter agreements, artist agreements and acquisition agreements;

15     b.    All copyright registrations and renewals;

16     c.    All Plaintiffs' correspondence with the copyright office, the

17  copyright holder, the copyright registrant, and the copyright applicant pertaining to

18  the copyright registration; and

19     d.    All correspondence regarding ownership of the works-in-suit

20  reflecting disagreement or dispute regarding Plaintiffs' ownership of, control over,

21  right to administer, or other interest in any of the works-in-suit which rose to a

22  sufficiently serious level that inside or outside counsel became involved.

23     (2)   <u>Sample Selection</u>.  The sample works-in-suit shall be chosen

24  exclusively by Veoh.

25

26

---

27     [1] "Works-in-suit" refers to the alleged infringements identified by Plaintiffs in
response to Veoh's Interrogatory No. 25, which Plaintiffs shall have the right to
28  supplement upon receipt of Audible Magic metadata from Veoh.

EXHIBIT 10  PAGE 766

[PROPOSED] ORDER RE: VEOH NETWORKS, INC.'S
RENEWED MOTION TO COMPEL PLAINTIFFS TO
PRODUCE CHAIN OF TITLE/RIGHTS INFORMATION
RE: ALLEGEDLY INFRINGING WORKS

2016092

1    (3)   <u>Sample Size</u>.  Veoh may select up to TWENTY PERCENT (20%) of

2 the works-in-suit identified by Plaintiffs.

3    (4)   <u>Deadlines</u>.

4    a.   Plaintiffs must produce the documents set forth above within

5 THIRTY (30) days after Veoh identifies in writing the selection of the sample

6 works-in-suit.

7    b.   Within TEN (10) days after Plaintiffs' production of documents,

8 Veoh shall identify to Plaintiffs any deficiencies in Plaintiffs' claimed ownership of

9 the sample works-in-suit. Within TWO (2) days thereafter, the Parties shall meet

10 and confer to try and reach agreement as to whether Plaintiffs should produce

11 additional ownership documents for the remaining works-in-suit.  If the Parties

12 cannot reach agreement, they are directed to contact the Court for instructions for

13 bringing the issue to the Court for resolution in an expedited manner.

14

15    **IT IS SO ORDERED.**

16

17 **Dated:  March 5, 2009**            _____

18                Hon. Andrew J. Wistrich

19                United States Magistrate Judge

                Central District of California

20

21

22

23

24

25

26

27

28

EXHIBIT 10  PAGE 767

2016092

[PROPOSED] ORDER RE: VEOH NETWORKS, INC.'S
RENEWED MOTION TO COMPEL PLAINTIFFS TO
PRODUCE CHAIN OF TITLE/RIGHTS INFORMATION
RE: ALLEGEDLY INFRINGING WORKS

# EXHIBIT 11

EXHIBIT 11  PAGE 768

1                   UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4        HONORABLE ANDREW J. WISTRICH, U.S. MAGISTRATE JUDGE

5                            PRESIDING

6

7    UMG RECORDINGS, INC.,    )
     et al.,                  )
8                            )
                 Plaintiffs, )
9                            ) CASE NO. CV 07-05744-AHM(AJWx)
            VS.              )
10                           ) (10:08 A.M.)
     VEOH NETWORKS, INC.,    )
11   et al.,                  )
                             )
12               Defendants. )
     _____)

13

14

15   VEOH'S MOTION TO COMPEL AND VEOH'S MOTION FOR PROTECTIVE

16                             ORDER

17                    LOS ANGELES, CALIFORNIA

18                       JUNE 3, 2009

19

20   COURT DEPUTY/RECORDER:       YSELA BENAVIDES

21   TRANSCRIBED BY:              HUNTINGTON COURT REPORTERS
                                  & TRANSCRIPTION INC.
22                                1450 W. COLORADO BOULEVARD
                                  SUITE 100
23                                PASADENA, CALIFORNIA 91105
                                  (626) 792-7250

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.          1

EXHIBIT 11  PAGE 769

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF THE PLAINTIFFS:

 4           IRELL AND MANELLA LLP
             BY:  BRIAN D. LEDAHL, ATTORNEY AT LAW
 5                    - AND -
                 STEVEN A. MARENBERG, ATTORNEY AT LAW
 6           1800 AVENUE OF THE STARS, SUITE 900
             LOS ANGELES, CA 90067
 7

 8   ON BEHALF OF DEFENDANT VEOH NETWORKS, INC.:

 9           WINSTON AND STRAWN
             BY:  JENNIFER A. GOLINVEAUX, ATTORNEY AT LAW
10           101 CALIFORNIA STREET, 39TH FLOOR
             SAN FRANCISCO, CA 94111
11
                      - AND -
12
             WINSTON AND STRAWN
13           BY:  ERIN R. RANAHAN, ATTORNEY AT LAW
             333 SOUTH GRAND AVENUE, 38TH FLOOR
14           LOS ANGELES, CA 90071

15

16

17

18

19

20

21

22

23

24

25
                                                        2
```

EXHIBIT 11  PAGE 770

```
 1            LOS ANGELES, CALIFORNIA, WEDNESDAY, JUNE 3, 2009

 2                              -o0o-

 3            THE CLERK:  THIS UNITED STATES DISTRICT COURT IS

 4    NOW IN SESSION.  THE HONORABLE ANDREW J. WISTRICH PRESIDING.

 5    PLEASE BE SEATED.  CALLING CV 07-5744-AHM(AJWx), UMG

 6    RECORDINGS V. VEOH NETWORKS, INCORPORATED, ET AL.

 7            COUNSEL, PLEASE MAKE YOUR APPEARANCES FOR THE

 8    RECORD.

 9            MR. LEDAHL:  GOOD MORNING, YOUR HONOR.  BRIAN

10    LEDAHL AND STEVE MARENBERG FROM IRELL AND MANELLA ON BEHALF

11    OF PLAINTIFFS.

12            MS. GOLINVEAUX:  GOOD MORNING, YOUR HONOR.

13    JENNIFER GOLINVEAUX AND ERIN RANAHAN FROM WINSTON AND STRAWN

14    ON BEHALF OF DEFENDANT.

15            THE COURT:  ALL RIGHT.  LET'S START WITH THE

16    PROTECTIVE ORDER MOTION.  AT THIS POINT WHY DO WE REALLY

17    NEED TO BE KEEPING ALL THIS MATERIAL?

18            MR. LEDAHL:  YOUR HONOR, I THINK, AS WE'VE

19    DISCUSSED PREVIOUSLY, PART OF THE ISSUE THAT WE'VE HAD IN

20    THIS CASE IS A DIFFICULTY IN -- WITHIN THE TIME FRAMES AND

21    THE TIME CONSTRAINTS THAT ARE APPLICABLE TO THIS CASE BEING

22    ABLE TO GET THROUGH ALL OF THE MATERIAL THAT WAS VERY

23    BELATEDLY PROVIDED TO US.  AND I WON'T BELABOR THE RECORD ON

24    THAT ISSUE, BUT I THINK THE COURT MAY RECALL THAT WE'VE HAD

25    A NUMBER OF INSTANCES WHERE WE'VE BEEN HERE TALKING ABOUT
```

                                                              3

```
 1   THE DIFFICULTIES WE'VE HAD IN OBTAINING SOME OF THEM.

 2              THE COURT:  I DO REMEMBER THAT, YES.

 3              MR. LEDAHL:  AS A CONSEQUENCE, THAT HAS IMPEDED

 4   PRACTICALLY SOME OF OUR ABILITY, AS WE'VE DISCUSSED BEFORE,

 5   TO REVIEW THE MATERIAL, TO ACCESS IT.  AND AS THE COURT WILL

 6   ALSO RECALL, WHEN WE WERE HERE FROM THE VERY BEGINNING, IN

 7   THE FIRST SET OF MOTION PRACTICE IN THIS CASE, ONE OF THE

 8   CORE ISSUES WAS VEOH'S PRODUCTION OF THE VIDEOS.  AS THE

 9   COURT RECALLS, THIS IS OBVIOUSLY CORE RELEVANT EVIDENCE.

10              THE COURT:  SO YOU'RE STILL NOT DONE WITH THAT IS

11   WHAT YOU'RE SAYING.  YOU ARE STILL DOING IT.

12              MR. LEDAHL:  WELL, THAT'S CORRECT, YOUR HONOR.

13   AND WE'VE PROVIDED AN IDENTIFICATION OF INFRINGING VIDEOS

14   FOR PURPOSES OF THIS ACTION IN LIGHT OF WHAT WE'VE BEEN ABLE

15   TO IDENTIFY WITHIN THE TIME CONSTRAINTS OF THIS CASE.  WE DO

16   NOT, HOWEVER, BELIEVE THAT THAT FULLY COMPRISES EVERYTHING

17   AS WE'VE SAID BEFORE THAT VEOH HAS INFRINGED UPON.  WE

18   BELIEVE THAT THE APPROPRIATE MECHANISM GIVEN THE RULINGS THE

19   COURT HAS ISSUED IS THAT WE RESERVE THE RIGHT TO PURSUE

20   ADDITIONAL INFRINGEMENTS IN A SEPARATE ACTION, AND THAT THE

21   FACT THAT WE'VE IDENTIFIED WORKS FOR PURPOSES OF THIS CASE

22   DOES NOT PRECLUDE US, AND INDEED WE DISCUSSED THAT WITH THE

23   COURT WHEN WE WERE HERE ON MARCH 6TH, THAT THAT DOES NOT

24   PRECLUDE US FROM BRINGING A SUBSEQUENT LAWSUIT, AND THAT

25   REALLY WHAT WE ARE TALKING ABOUT HERE IS NOT A PROTECTIVE
                                                          4
```

1    ORDER AT ALL.  WHAT WE ARE TALKING ABOUT IS ESSENTIALLY A

2    REQUEST FOR AN ADVISORY OPINION THAT DESTROYING EVIDENCE OF

3    THAT INFRINGEMENT THAT IS POTENTIALLY THE SUBJECT OF THIS

4    ACTION WOULD SOMEHOW NOT CONSTITUTE SPOLIATION, CONTRARY TO

5    ALL THE NORMAL RULES THAT GOVERN SUCH THINGS.

6         THE COURT:  SO YOU WOULD ARGUE, I GUESS, THAT

7    YOU'VE ESSENTIALLY PUT VEOH ON NOTICE THAT YOU MAY BE FILING

8    A SEPARATE LAWSUIT, MAY NOT BE, BUT MAY BE, AND THEY NEED TO

9    PRESERVE THIS MATERIAL.

10        MR. LEDAHL:  THAT'S CORRECT, YOUR HONOR.  AND THIS

11   IS SOMETHING -- CERTAINLY UMG HAS A LOT OF MATERIAL THAT

12   WE'D PREFER NOT TO SPEND THE MONEY TO RETAIN AND PRESERVE IN

13   CONNECTION WITH LOTS OF DIFFERENT ISSUES.  ESSENTIALLY, IT'S

14   A COST OF DOING BUSINESS AND THAT'S THE WAY THINGS GO, BUT

15   THIS IS CLEARLY RELEVANT MATERIAL.  THE CASES VEOH CITES ARE

16   CASES WHERE COURTS LOOK AT, WELL, WE ARE TALKING ABOUT

17   COMPLETELY IRRELEVANT INFORMATION THAT DOESN'T HAVE TO

18   NECESSARILY BE PRODUCED.  VEOH DOESN'T CITE A SINGLE CASE

19   WHERE A COURT CONCLUDES HERE'S EVIDENCE THAT'S RELEVANT TO A

20   POTENTIAL CLAIM AND YOU CAN GO AHEAD AND DESTROY IT.

21        AND, FRANKLY, YOUR HONOR, FROM OUR PERSPECTIVE, IF

22   VEOH WERE ALLOWED TO DO THIS, THEY WOULD ESSENTIALLY BE

23   OBTAINING THE SUBSTANTIVE BENEFIT OF HAVING DESTROYED AND

24   DELAYED THE EVIDENCE ABOUT THE SUBSTANCE OF WHAT WAS ON

25   THEIR SYSTEM THAT WE'VE WORKED SO HARD TO GET IN THIS CASE,

5

EXHIBIT 11  PAGE 773

1    BECAUSE ESSENTIALLY IT WOULD ALLOW THEM TO TRY TO ESCAPE

2    LIABILITY FOR SOME OF THAT INFRINGEMENT.  AND FUNDAMENTALLY

3    THAT SEEMS UNFAIR THAT THE DELAY AND DIFFICULTY THAT HAS

4    BEEN THROWN UP --

5            THE COURT:  AS FAR AS THIS CASE IS CONCERNED,

6    WOULD YOUR CLIENT BE WILLING TO PAY FOR THE COST OF STORAGE?

7            MR. LEDAHL:  WELL, I THINK, YOUR HONOR, THAT

8    RAISES THE QUESTION OF WHETHER VEOH IS WILLING TO PAY FOR

9    THE COST OF OUR STORAGE OF VARIOUS MATERIALS.  IT SEEMS TO

10   ME THAT THIS IS A COST OF DOING BUSINESS FOR ANY COMPANY

11   THAT'S SUBJECT TO LIABILITY, AND THE FACT THAT VEOH HAS

12   ENGAGED IN WIDESPREAD COPYRIGHT INFRINGEMENT SHOULD NOT BE

13   USED AS A MECHANISM TO ESSENTIALLY INFLICT FURTHER DETRIMENT

14   TO OUR CLIENT WHICH IS ESSENTIALLY THE VICTIM OF THAT

15   INFRINGEMENT.

16           THE COURT:  WELL, I MEAN, THE COST IS NOT THAT

17   HIGH.  I GUESS IT'S, WHAT, 30,000 A MONTH THEY'VE ESTIMATED

18   OR MAYBE 50,000 FOR AN OUTSIDE CONSULTANT TO DUPLICATE THIS.

19   IT DOESN'T SEEM LIKE A WHOLE LOT OF MONEY TO ME.  HOW

20   IMPORTANT IS IT TO YOU TO HAVE THIS MATERIAL AVAILABLE FOR

21   THIS CASE?

22           MR. LEDAHL:  WELL, YOUR HONOR, I THINK IT'S

23   IMPORTANT IN THE SENSE THAT -- THERE'S A NUMBER OF ISSUES.

24   FIRST OF ALL, IT REMAINS IMPORTANT IN THE SENSE THAT THIS IS

25   EVIDENCE OF WHAT THEY WERE DOING THAT IS STILL THE SUBJECT

                                                              6

1    OF THIS LAWSUIT.  AS THE COURT MAY RECALL, WHEN WE WERE HERE

2    TALKING ABOUT PRODUCTION OF THESE VIDEOS AT THE VERY

3    BEGINNING OF THE CASE, WE URGED THAT THEY SHOULD BE

4    PRODUCED, THAT WE SHOULD BE PROVIDED WITH COPIES OF THE

5    VIDEOS.  VEOH SAID NO.  THEY SAID WE DON'T WANT TO DO THAT.

6    WE WANT TO MAKE THEM AVAILABLE IN THIS MECHANISM THAT THE

7    CONTENTION AND THE REPRESENTATION MADE TO US AND TO THIS

8    COURT WAS --

9          THE COURT:  WAS THE FUNCTIONAL EQUIVALENT.

10         MR. LEDAHL:  EXACTLY.  CLEARLY THAT'S NOT BEEN THE

11   CASE.  AND IF THEY ARE ALLOWED TO GET RID OF THE MATERIAL

12   AND EFFECTIVELY DESTROY IT, THAT'S EVEN MORE SO.  AND SO THE

13   SUGGESTION THAT NOW HAVING SORT OF LED US DOWN THIS GARDEN

14   PATH VEOH SHOULD BE PERMITTED TO PULL THE RUG OUT FROM

15   EVERYONE AND SAY NOW WE ARE GOING TO GET RID OF EVERYTHING,

16   CLEARLY THAT'S NOT THE FUNCTIONAL EQUIVALENT OF HAVING

17   PRODUCED THE MATERIAL AS WAS REPRESENTED TO US AND TO THIS

18   COURT AND WE SUBMIT WOULD HAVE BEEN THE BASIS FOR THIS

19   COURT'S ALLOWING THAT TO BE THE MECHANISM.

20         THE COURT:  SO THE ANSWER TO MY QUESTION IS?

21         MR. LEDAHL:  THE ANSWER TO YOUR QUESTION IS, IT

22   REMAINS IMPORTANT FROM AN EVIDENTIARY PERSPECTIVE FOR THIS

23   CASE AND IT REMAINS IMPORTANT IN THE SENSE THAT WE ARE

24   TALKING ABOUT POTENTIALLY THOUSANDS OF ADDITIONAL

25   INFRINGEMENTS THAT ARE THE POTENTIAL SUBJECT OF AN

7

EXHIBIT 11  PAGE 775

```
 1  ADDITIONAL LAWSUIT WHICH WOULD HAVE AGAIN POTENTIALLY
 2  MILLIONS AND MILLIONS OF DOLLARS IN DAMAGES.
 3          THE COURT:  ALL RIGHT.  SO MY QUESTION TO YOU
 4  REALLY IS, IS YOUR CLIENT WILLING TO PAY FOR THE COST OF
 5  STORING THIS MATERIAL OR PRESERVING IT?
 6          MR. LEDAHL:  WELL, I THINK, YOUR HONOR --
 7          THE COURT:  IF IT COMES TO THAT.
 8          MR. LEDAHL:  IF WE ARE TALKING ABOUT THE COST OF
 9  OUR COPY -- IF WE WERE TALKING ABOUT PAPER DOCUMENTS, FOR
10  EXAMPLE, THIS WOULD BE A RELATIVELY STRAIGHTFORWARD ANALYSIS
11  IN THE SENSE THAT WITH -- UNDER RULE 34 A PARTY CAN PROVIDE
12  ACCESS TO PAPER MATERIALS THAT CAN THEN BE REPRODUCED
13  USUALLY THROUGH SOME KIND OF PHOTOCOPYING SERVICE AND THE
14  PARTY REQUESTING THEM CAN OBTAIN PAYMENT FOR THE COPIES.
15  YOU DON'T PAY FOR THE COST OF SOMEONE TO GO AND FIND THE
16  DOCUMENTS.  YOU DON'T PAY FOR THE COST OF CONSULTANTS TO GO
17  AND SEARCH.  YOU MAYBE PAY FOR THE ACTUAL PHYSICAL COPIES.
18  NOW, HERE WE'RE TALKING ABOUT ELECTRONIC FILES.  I THINK IF
19  ALL WE'RE TALKING ABOUT IS PROVIDING A PHYSICAL MEDIUM, THEN
20  THAT'S PROBABLY SOMETHING WE COULD ADDRESS OURSELVES TO.
21  WHAT'S BEEN SUGGESTED, HOWEVER, IS VERY DIFFERENT AND IS NOT
22  SOMETHING THAT I THINK RULE 34 CONTEMPLATES WHEN WE ARE
23  TALKING ABOUT PRODUCTION OF MATERIALS.
24          THE COURT:  WELL, THE SITUATION IS A LITTLE BIT
25  UNUSUAL AND I'M JUST TRYING TO GET A SENSE OF -- I'M NOT
```

                                                            8

EXHIBIT 11  PAGE 776

1    SURE THAT THIS WOULD BE APPROPRIATE, BUT WHETHER YOUR CLIENT

2    WOULD BE WILLING TO PAY WHATEVER COST IS REQUIRED TO ENSURE

3    THAT YOU HAVE CONTINUED ACCESS TO THIS.  AND I'M GETTING AN

4    EQUIVOCAL RESPONSE, SO I GUESS THE ANSWER IS NO.

5              MR. LEDAHL:  I'M BEING EQUIVOCAL IN PART BECAUSE

6    IT CREATES A PERVERSE INCENTIVE.  WHEN YOU SPEAK OF PAY

7    WHATEVER COST IS REQUIRED, VEOH HAS LITTLE INCENTIVE TO DO

8    THIS IN A WAY THAT'S EITHER EFFICIENT OR SIGNIFICANTLY COST

9    AVOIDING.  AND SO IF THEY'VE GOT A RIGHT TO SORT OF A BLANK

10   CHECK FROM MY CLIENT FOR THE COST OF PRESERVING THIS, I

11   DON'T THINK THAT'S --

12             THE COURT:  WELL, WE CAN TALK ABOUT THE DETAILS OF

13   IT.  ONE POSSIBILITY WOULD BE, YOU KNOW, YOU DO IT HOWEVER

14   YOU WANT AT YOUR EXPENSE AND THEN YOU WILL HAVE WHATEVER

15   SORT OF ACCESS TO IT YOU WANT TO HAVE FOREVER.

16             MR. LEDAHL:  I THINK, YOUR HONOR, THE ANSWER TO

17   YOUR QUESTION IS THAT THE DEVIL IS IN THE DETAILS HERE AND

18   THAT WE ARE OPEN TO A DISCUSSION.  WHAT WE'VE BEEN PRESENTED

19   WITH ARE NOT THOSE KINDS OF DISCUSSIONS AND CERTAINLY WE ARE

20   NOT OPEN TO THE SUGGESTION THAT IT'S OKAY TO JUST -- AS I

21   SAID, TO USE THE EXAMPLE OF DOCUMENTS, I DON'T THINK MOST

22   PEOPLE WOULD SUGGEST THAT IT WOULD BE OKAY TO BURN DOWN A

23   WAREHOUSE FULL OF RELEVANT DOCUMENTS BECAUSE IT WAS COSTLY

24   TO PAY THE RENT ON THE WAREHOUSE, AND THAT'S ESSENTIALLY

25   WHAT WE ARE TALKING ABOUT HERE.  AND WE DON'T THINK THAT'S

9

EXHIBIT 11  PAGE 777

```
 1   AN APPROPRIATE REMEDY OR AN APPROPRIATE MECHANISM.

 2            THE COURT:  OKAY.

 3            MS. GOLINVEAUX:  GOOD MORNING, YOUR HONOR.  FIRST

 4   TO ADDRESS THE ISSUE OF COST FOR A MOMENT.  MR. LEDAHL IS

 5   SAYING IT WOULD BE -- WHO KNOWS WHAT THE COST MIGHT BE.  WE

 6   HAVEN'T PUT ANYTHING IN THE RECORD ON THAT.  WE'VE ACTUALLY

 7   BEEN VERY SPECIFIC IN THE RECORD ON THAT POINT.  UMG

 8   ESTIMATES COSTS FOR THE HARDWARE ITSELF TO COPY THE FILES

 9   ONTO AT ABOUT $75,000.  AND AS WE EXPLAIN IN A SUPPLEMENTAL

10   DECLARATION FROM MR. PAPPA (PHONETIC), THE TIME FOR AN

11   INDEPENDENT CONTRACTOR TO COME IN AND MANAGE THAT PROJECT

12   WHICH WOULD TAKE ROUGHLY TWO TO THREE MONTHS WOULD BE ABOUT

13   $50,000.  SO IT'S A MUCH MORE CONCRETE-TYPE NUMBER I THINK

14   THAN YOU WERE JUST HEARING FROM MR. LEDAHL.

15            THE COURT:  SO THE NUMBER AGAIN WAS 150 DID YOU

16   SAY?

17            MS. GOLINVEAUX:  BETWEEN 125 AND 150 I THINK IS A

18   FAIR ESTIMATE.

19            THE COURT:  OKAY.  NOW, I TAKE IT THAT IF I WERE

20   TO REQUIRE UMG TO PAY FOR THIS, YOU'D LET THEM DO IT HOWEVER

21   THEY WANTED TO.

22            MS. GOLINVEAUX:  IN TERMS OF -- SO LONG AS IT

23   DIDN'T IMPEDE VEOH'S BUSINESS.  IF THEY ARE TALKING ABOUT --

24   WHAT THEY'VE PROPOSED IS, FOR EXAMPLE, PROVIDING --

25            THE COURT:  I MEAN, IF I WERE TO DO THAT STEP, AND
                                                          10
```

EXHIBIT 11  PAGE 778

1    I'M NOT SUGGESTING THAT THAT'S THE DIRECTION I'M HEADED

2    NECESSARILY, I WOULD WANT THEM TO BE ABLE TO DO IT HOWEVER

3    THEY WANTED TO IN THE MOST EFFICIENT AND INEXPENSIVE WAY FOR

4    THEM.  WOULD YOU HAVE A PROBLEM WITH THAT?

5            MS. GOLINVEAUX:  I THINK THAT'S REASONABLE, YOUR

6    HONOR, SO LONG AS MY CLIENT DOESN'T COME BACK AND SAY

7    TECHNICALLY WHAT THEY ARE PROPOSING IS NOT POSSIBLE OR

8    SOMETHING LIKE THAT.

9            THE COURT:  THEN IT WOULD BE THEIR PROBLEM,

10   WOULDN'T IT, IF THEY CHOSE THAT METHOD?  THEY COULDN'T COPY

11   IT THAT WAY, THEN IT WOULD BE THEIR PROBLEM, NOT YOURS OR

12   YOUR CLIENT'S.

13           MS. GOLINVEAUX:  WELL, THAT MAY BE, YOUR HONOR,

14   BUT UNFORTUNATELY I THINK WE'D PROBABLY BE BACK IN COURT AND

15   IT WOULD BE THE COURT'S PROBLEM AGAIN BECAUSE WE'D BE

16   FIGHTING OVER THE DETAILS OF IT.  BUT WHAT THEY'VE PROPOSED

17   IS 75 ONE-TERABYTE HARD DRIVES AND COPYING THE FILES ONTO

18   THOSE HARD DRIVES.  AND MY CLIENT HAS SAID THAT'S FEASIBLE.

19   I HAVE TO -- WE'RE TALKING ABOUT A VERY LARGE QUANTITY OF

20   DATA WHICH IS WHY THE COPIES WEREN'T MADE IN THE FIRST PLACE

21   WHILE WE PROVIDED ACCESS, BECAUSE IT WAS PROHIBITIVELY

22   EXPENSIVE TO COPY --

23           THE COURT:  WELL, I THINK MR. LEDAHL MADE A VERY

24   GOOD POINT EARLIER WHEN HE SAID, YOU KNOW, THIS WAS

25   BASICALLY THE METHOD OF MAKING THESE MATERIALS AVAILABLE

                                                              11

EXHIBIT 11  PAGE 779

1   THAT YOU CHOSE, THAT YOU ARGUED FOR, THAT YOU PREFERRED, AND

2   NOW YOU ARE SORT OF PULLING THE RUG OUT FROM UNDER ALL OF

3   US, AREN'T YOU?

4          MS. GOLINVEAUX:  YOUR HONOR, IT WAS

5   PROHIBITIVELY -- WELL, TO TALK ABOUT THE VOLUME OF DATA AT

6   ISSUE HERE, WE ARE TALKING ABOUT 725,000 GIGABYTES FOR THE

7   CANCELLED VIDEOS THAT VEOH HAS BEEN MAINTAINING FOR ALMOST

8   TWO YEARS NOW ONLY FOR PURPOSES OF THIS LITIGATION.  TO PUT

9   IT IN CONTEXT, THAT -- A HIGH-END PERSONAL COMPUTER HOLDS

10  ABOUT 30 TO 50 GIGABYTES.  SO WE ARE TALKING ABOUT THE

11  EQUIVALENT OF COPYING ALL DATA FROM 15,000 PERSONAL

12  COMPUTERS.  THIS IS NOT A SMALL TASK TO EFFECTIVELY TRY

13  TO --

14         THE COURT:  WELL, I'M NOT SUGGESTING IT IS.  BUT,

15  YOU KNOW, WE COULD HAVE COPIED IT WAY BACK WHEN AND THAT WAS

16  WHAT UMG WANTED.  YOU SAID NO, LET'S MAKE IT AVAILABLE THIS

17  OTHER WAY.  NOW YOU'RE SAYING NO, WE DON'T EVEN WANT TO MAKE

18  IT AVAILABLE THAT WAY ANYMORE.

19         MS. GOLINVEAUX:  WELL, YOUR HONOR, WE'VE PROVIDED

20  THEM ACCESS, THE SAME ACCESS TO THE FILES THAT VEOH HAD, AND

21  UMG HAS BEEN ABLE TO MAKE COPIES OF ANY FILES THEY'VE WANTED

22  TO FOR CLOSE TO A YEAR NOW AND THEY'VE TOLD US THAT THEY IN

23  FACT HAVE MADE COPIES OF FILES THAT THEY WERE INTERESTED IN.

24  WE PUT THAT INTO THE RECORD AS WELL.  SO THEY'VE BEEN FREE

25  TO MAKE AS MANY COPIES AS THEY'VE WANTED SINCE LAST

                                                          12

EXHIBIT 11  PAGE 780

1   SEPTEMBER.  THEY'VE HAD ALL OF THE AUDIBLE MAGIC DATA THAT

2   THEY SAID WOULD MAKE IT EASY FOR THEM TO IDENTIFY

3   INFRINGEMENTS FOR MORE THAN THREE MONTHS.  WHAT WE ARE

4   TALKING ABOUT -- OF THE 725,000 GIGABYTES OF DATA THAT VEOH

5   IS MAINTAINING, THEY'VE IDENTIFIED A -- THE FILES THAT

6   THEY'VE IDENTIFIED AMOUNT TO LESS THAN ONE HALF OF ONE

7   PERCENT OF THAT DATA.  SO WE ARE TALKING ABOUT A VERY LARGE

8   VOLUME OF DATA AND A VERY SMALL FOCUSED SET OF POTENTIALLY

9   RELEVANT DATA AND VEOH IS WILLING TO RETAIN THOSE FILES.  I

10  THINK THEY'VE IDENTIFIED NOW SOMETHING AROUND 7700 VIDEO

11  FILES THAT THEY CLAIM MAY BE INFRINGING.  VEOH WOULD NOT

12  DELETE THOSE.  IT WOULD CONTINUE TO RETAIN THEM, ALTHOUGH WE

13  UNDERSTAND THAT PLAINTIFFS HAVE ALREADY MADE THEMSELVES

14  COPIES OF THOSE FILES AND COULD HAVE MADE THEMSELVES COPIES

15  OF ANY OTHER FILES THEY WANTED.

16        THE COURT:  I THINK THERE WAS AN ISSUE RAISED

17  ABOUT AUTHENTICATION, FOUNDATION FOR DOCUMENTS THAT MIGHT

18  NEED TO BE USED AT TRIAL AND THE NEED TO PROTECT THE

19  INTEGRITY OF THE DATA FOR THAT REASON.  WHAT ABOUT THAT

20  ARGUMENT?

21        MS. GOLINVEAUX:  WELL, YOUR HONOR, THE DEADLINE

22  FOR THEM TO IDENTIFY INFRINGEMENTS IN THIS CASE HAS COME AND

23  GONE, AND VEOH IS WILLING TO RETAIN THE 7700-ODD FILES AND

24  THEY WILL CONTINUE TO STORE THOSE THROUGH THIS CASE SO THAT

25  THAT'S NOT AN ISSUE.

                                                    13

1              IF I COULD ADDRESS ONE OTHER ISSUE.  MR. LEDAHL

2    SAID THAT WE HAVEN'T POINTED TO ANY AUTHORITY WHERE A JUDGE

3    HAS GRANTED A PROTECTIVE ORDER IN THESE CIRCUMSTANCES.  IN

4    FACT, WE DID CITE AN ORDER THAT JUDGE HILLMAN ENTERED IN THE

5    MICROSOFT/PERFECT 10 LITIGATION.  AND MICROSOFT SOUGHT A

6    PROTECTIVE ORDER ALLOWING IT TO DELETE CERTAIN TYPES OF

7    DATA.  IN THAT CASE IT WASN'T A BURDEN ISSUE FOR MICROSOFT.

8    IT WAS BECAUSE ITS PRIVACY POLICY REQUIRED IT TO DELETE THIS

9    TYPES OF DATA AFTER A CERTAIN PERIOD OF TIME.  AND JUDGE

10   HILLMAN SAID ALTHOUGH IT WAS AN UNUSUAL WAY TO FOCUS A

11   PROTECTIVE ORDER, HE THOUGHT IT WAS LEGITIMATE AND HE

12   GRANTED THAT PROTECTIVE ORDER.  AND HE SAID OTHERWISE IT

13   WOULD REALLY BE EQUIVALENT TO ALLOWING PERFECT 10 TO LEAVE

14   MICROSOFT TWISTING IN THE WIND MAINTAINING THIS DATA AT

15   PERFECT 10'S --

16              THE COURT:  ALL RIGHT.  SO WHAT SORT OF MATERIAL

17   DID HE SAY COULD BE DISCARDED?

18              MS. GOLINVEAUX:  IN THAT CASE IT WAS IP ADDRESSES

19   AND WHAT ARE REFERRED TO AS CROSS-SESSION IDENTIFIERS.  SO

20   IT WAS INFORMATION THAT MIGHT POSSIBLY HAVE IDENTIFIED USERS

21   OF MICROSOFT, SO MICROSOFT WAS CONCERNED ABOUT ITS PRIVACY

22   POLICY.

23              THE COURT:  YEAH.

24              MS. GOLINVEAUX:  BUT JUDGE HILLMAN ALSO CITED TO

25   ANOTHER CASE, THE GULFSTREAM WORLDWIDE CASE FROM THE

                                                          14

EXHIBIT 11  PAGE 782

1   DISTRICT OF NEW MEXICO, AND THAT CASE IS VERY SIMILAR TO

2   THIS CASE.  THERE THE PARTY WAS SEEKING TO DELETE BACKUP

3   TAPES BASICALLY AND THEY EXPLAINED TO THE COURT THAT TO

4   MAINTAIN THE BACKUP TAPES WOULD COST ABOUT $60,000, SO MUCH

5   LESS THAN IS AT ISSUE TO RETAIN THE DATA HERE.

6           THE COURT:  WELL, HERE IT'S, WHAT, $30,000 A MONTH

7   YOU'VE ESTIMATED?

8           MS. GOLINVEAUX:  THIRTY THOUSAND A MONTH.

9   SOMETHING LIKE 125 TO 150 TO COPY IT ONTO HARD DRIVES FOR

10  PLAINTIFFS IF THAT'S WHAT THEY CHOSE TO DO.  SO IN THE

11  GULFSTREAM CASE, WE'RE LOOKING AT A SMALLER AMOUNT OF MONEY.

12  THE JUDGE SAID CONSIDERING THAT THESE -- THESE BACKUP TAPES

13  MAY POSSIBLY HAVE RELEVANT INFORMATION, BUT WEIGHING THAT

14  AGAINST THE BURDEN OF REQUIRING THIS COMPANY TO PAY

15  SUBSTANTIALLY SUMS TO RETAIN -- AND THEY WANTED TO RECYCLE

16  THE BACKUP TAPES TO CONTINUE TO USE THEM AND THE JUDGE

17  INDICATED THAT HE WOULD GRANT THE PROTECTIVE ORDER AND ALLOW

18  THEM TO DO THAT BECAUSE OF THE BURDEN OF RETAINING THEM AND

19  THE SMALL POSSIBILITY THAT THEY MIGHT POSSIBLY CONTAIN

20  RELEVANT.  SO THERE IS AUTHORITY DIRECTLY ON THIS POINT.

21          THE COURT:  ALL RIGHT.  WHAT ABOUT THE ISSUE

22  THAT'S BEEN RAISED OF WHETHER VEOH SIMPLY HAS AN OBLIGATION

23  TO KEEP THIS MATERIAL BECAUSE IT MAY BE RELEVANT TO FUTURE

24  CLAIMS?

25          MS. GOLINVEAUX:  WELL, YOUR HONOR, I THINK THAT'S
                                                          15

EXHIBIT 11  PAGE 783

1    WHY WE'RE SEEKING THIS PROTECTIVE ORDER RATHER THAN

2    CONTINUING WITH ITS -- WHAT WOULD BE ITS NORMAL CUSTOM OF

3    BUSINESS AND RECYCLING THIS DATA BECAUSE IT HAS NO BUSINESS

4    USE.  WE'VE PROVIDED PLAINTIFFS WITH QUITE A LONG AMOUNT OF

5    TIME TO MAKE COPIES OF ANY THAT THEY FIND ARE RELEVANT, BUT

6    IT'S SIMPLY NOT FAIR TO LEAVE VEOH TWISTING IN THE WIND

7    INDEFINITELY.  THEY'RE NOT ASKING FOR TWO MORE WEEKS OR

8    ANOTHER MONTH OR SOMETHING LIKE THAT.  THEY'RE SAYING THAT

9    VEOH SHOULD RETAIN THIS ENORMOUS AMOUNT OF DATA AT GREAT

10   EXPENSE INDEFINITELY AND THAT'S WHY WE'RE SEEKING A

11   PROTECTIVE ORDER.

12          THE COURT:  WELL, DIDN'T THEY REALLY SAY UNTIL

13   ENTRY OF JUDGMENT?

14          MS. GOLINVEAUX:  AT ONE POINT THEY HAVE, BUT I

15   THINK THAT THEY BACKED OFF OF THAT SINCE, YOUR HONOR,

16   BECAUSE THEY ARE SAYING THEY MAY NEED IT FOR FUTURE POSSIBLE

17   CASES.

18          THE COURT:  WELL, I MEAN, AT LEAST THAT'S A

19   STARTING POINT.  YOU KNOW, THE TRIAL DATE IS AUGUST 18?

20          MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR.

21          THE COURT:  ALL RIGHT.  SO WE ARE LOOKING AT MAYBE

22   THREE TO FOUR MONTHS?

23          MS. GOLINVEAUX:  SO SOMEWHERE AGAIN BETWEEN 100-

24   AND $150,000.

25          THE COURT:  WOULD IT BE APPROPRIATE TO RETAIN THE
                                                          16

EXHIBIT 11  PAGE 784

```
 1   MATERIAL THAT LONG AND REVISIT THE ISSUE THEN IF NECESSARY?

 2           MS. GOLINVEAUX:  YOUR HONOR, GIVEN THAT THE

 3   DEADLINE FOR PLAINTIFFS TO IDENTIFY INFRINGEMENTS IN THIS

 4   CASE HAS COME AND GONE, THAT THEY'VE HAD MONTHS AND MONTHS

 5   TO DO SO, IF THEY FOR SOME REASON FEEL LIKE IT'S NECESSARY

 6   FOR THIS DATA TO BE RETAINED -- AND AGAIN, WE WILL RETAIN

 7   THE FILES THAT THEY'VE IDENTIFIED, THAT'S NOT AN ISSUE.

 8   THOSE WILL BE RETAINED BY VEOH.  BUT IF FOR SOME REASON THEY

 9   WANT VEOH TO RETAIN THE OTHER 99 AND A HALF PERCENT OF THESE

10   CANCELLED VIDEO FILES --

11           THE COURT:  WELL, HERE'S THE PROBLEM I HAVE.  YOU

12   KNOW, WE'VE HEARD FROM THEM THAT THEY MAY CONTEMPLATE FILING

13   A SEPARATE LAWSUIT.  AND IF THEY SENT YOU A LETTER TODAY AND

14   SAID, YOU KNOW, WE REALLY THINK WE ARE GOING TO BE FILING A

15   SEPARATE LAWSUIT, YOU HAVE AN OBLIGATION TO KEEP THESE

16   CANCELLED VIDEO FILES BECAUSE THEY MAY BE RELEVANT TO THAT

17   SEPARATE LAWSUIT, WOULDN'T YOU HAVE TO KEEP THEM?

18           MS. GOLINVEAUX:  I THINK, YOUR HONOR, WHAT WE

19   WOULD SAY IS YOU'VE IDENTIFIED ALL FILES THAT YOU CONSIDER

20   RELEVANT.  IF YOU FOR SOME REASON WANT THE REST OF THESE

21   CANCELLED VIDEO FILES, WE MIGHT AGREE TO MAKE COPIES BUT IT

22   WOULD HAVE TO BE AT YOUR COST.  VEOH CANNOT PAY --

23           THE COURT:  BUT, I MEAN, HOW COULD YOU JUST

24   DESTROY THE MATERIAL FACED WITH A LETTER LIKE THAT?  I DON'T

25   THINK YOU COULD, COULD YOU?
```

                                                                    17

EXHIBIT 11  PAGE 785

```
1          MS. GOLINVEAUX:  WELL, AND I THINK THAT WOULD BE
2    THE RESPONSE AND THAT'S WHY WE'RE HERE IN THE CONTEXT OF
3    THIS LITIGATION SEEKING A PROTECTIVE ORDER.
4          THE COURT:  ALL RIGHT.  WHAT ABOUT THE POSSIBILITY
5    OF OTHER COPYRIGHT HOLDERS FILING CLAIMS?  HAVE THERE BEEN
6    OTHER CLAIMS FILED FOR COPYRIGHT INFRINGEMENT AGAINST VEOH?
7          MS. GOLINVEAUX:  NOT THAT I'M AWARE OF, YOUR
8    HONOR.
9          THE COURT:  ARE THERE ANY THAT ARE CONTEMPLATED?
10          MS. GOLINVEAUX:  NOT THAT I'M AWARE OF, YOUR
11    HONOR.
12          THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WANTED
13    TO TELL ME ABOUT THIS?
14          MS. GOLINVEAUX:  NO.  I JUST WANTED TO STRESS THAT
15    THIS COMPANY HAS LAID OFF MORE THAN HALF OF ITS EMPLOYEES.
16    IT REALLY CANNOT AFFORD THE $30,000 A MONTH TO RETAIN THESE.
17    IT WOULD MEAN LITERALLY LAYING OFF ADDITIONAL EMPLOYEES TO
18    BE ABLE TO PAY FOR THAT IF THE COURT REQUIRED IT.  IF
19    PLAINTIFFS TRULY BELIEVE THAT THEY NEED THIS DATA WHICH IS
20    HIGHLY UNLIKELY TO HAVE RELEVANT INFORMATION GIVEN THAT
21    THEY'VE IDENTIFIED EVERYTHING THEY CONSIDER RELEVANT, THEY
22    SHOULD BE REQUIRED TO PAY THE COST OF EITHER MAINTAINING IT
23    OR GETTING COPIES OF THE DATA.
24          THANK YOU, YOUR HONOR.
25          MR. LEDAHL:  YOUR HONOR, IF I MAY, TWO VERY BRIEF
```
                                                              18

EXHIBIT 11  PAGE 786

1    POINTS.  FIRST, I THINK THE COURT'S HYPOTHETICAL QUESTION IS

2    ABSOLUTELY CORRECT IN THE SENSE THAT FACED WITH A THREAT OF

3    A CLAIM, THE OBLIGATION TYPICALLY IS TO PRESERVE EVIDENCE

4    RELEVANT TO THAT CLAIM.  THAT'S WHAT WE ARE TALKING ABOUT

5    HERE.  AND PRESERVING SUCH EVIDENCE IS A COST OF DOING

6    BUSINESS FOR ANY COMPANY WHEN YOU ARE FACED WITH THOSE

7    ISSUES.

8          THE SECOND POINT I WOULD RAISE, YOUR HONOR, IS I

9    THINK IT'S OBVIOUS THAT, AS WE'VE STATED, IF UMG PREVAILS ON

10   THE SUBSTANTIVE MERITS OF THIS CASE AND VEOH IS HELD LIABLE

11   FOR COPYRIGHT INFRINGEMENT, IT'S QUITE LIKELY THAT NOT ONLY

12   UMG BUT OTHER COPYRIGHT CLAIMANTS WILL BE IN THE WINGS.

13   OBVIOUSLY WE CAN'T SPEAK ON THEIR BEHALF, BUT CERTAINLY, AS

14   WE'VE SAID, UMG ALREADY BELIEVES THERE'S ADDITIONAL

15   INFRINGEMENT THAT IS LIKELY TO BE THE SUBJECT OF A FUTURE

16   ACTION.

17         THE COURT:  ALL RIGHT.  COULD YOU ELABORATE ON ONE

18   POINT FOR ME, PLEASE, AND THAT IS, WHAT NEED THERE MIGHT BE

19   FOR THE CANCELLED VIDEO FILES IN TERMS OF FOUNDATION OR

20   AUTHENTICATION THAT YOU HAVE NOT ALREADY BEEN ABLE TO

21   SATISFY.

22         MR. LEDAHL:  WELL, YOUR HONOR, I THINK, FIRST OF

23   ALL, IF I UNDERSTAND THE REPRESENTATION WHICH IS PERHAPS

24   MORE CLEAR TODAY THAN IT WAS IN THE PAPERS.  THE

25   REPRESENTATION IS, AS I UNDERSTAND IT, THAT EVERY VIDEO

                                                          19

EXHIBIT 11  PAGE 787

1    THAT'S THE SUBJECT OF AN ACTUAL CLAIM IN THE CASE WILL BE

2    PRESERVED AS SUCH.  THAT MAY ADDRESS MANY OF THOSE ISSUES.

3    I THINK AS TO THE OTHERS THERE ARE POTENTIAL FOUNDATION

4    ISSUES TO THE EXTENT WE HAVE DISPUTES ABOUT WHETHER SOME

5    OTHER MATERIAL WAS PRESENT ON THE SITE.  AS AN EXAMPLE, SOME

6    OF THE ISSUES THAT ARE RELEVANT TO THIS CASE TURN ON, UNDER

7    THE DMCA, THINGS LIKE THE EXTENT TO WHICH VEOH PROMPTLY

8    RESPONDS TO NOTICES OF INFRINGEMENT, NOT JUST FROM UMG, BUT

9    FROM ANYONE; THE EXTENT TO WHICH VEOH PROMPTLY REMOVES FILES

10   THAT ARE IDENTIFIED BY OTHERS, NOT JUST UMG; THE EXTENT TO

11   WHICH VEOH HAS NOTICE OF RED FLAGS OF INFRINGEMENT, AND WE

12   SUBMIT THAT MEANS NOT JUST NOTICES OF INFRINGING OUR

13   COPYRIGHTS, BUT OF OTHERS.

14        AS A CONSEQUENCE OF THAT, EVEN VIDEOS THAT ARE NOT

15   THE SUBJECT OF OUR INFRINGEMENT CLAIM ARE RELEVANT EVIDENCE

16   THAT PERTAIN TO WHETHER OR NOT VEOH CAN ESTABLISH ITS BASIS

17   UNDER THOSE THEORIES OF LIABILITY AND AS SUCH THEY REMAIN

18   IMPORTANT SUBJECTS FOR AUTHENTICATION, POTENTIAL EVIDENCE IF

19   THERE IS A DISPUTE ABOUT WAS THIS REALLY THAT VIDEO.  THERE

20   ARE LOTS OF POTENTIAL ISSUES THAT CAN ARISE IN THAT CONTEXT

21   AT A TRIAL THAT WOULD ALSO RAISE AUTHENTICATION CONCERNS.

22        THE COURT:  ALL RIGHT.  LET'S TURN TO THE OTHER

23   MOTION.  WOULD YOU LIKE TO BEGIN?

24        MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.  SO, YOUR

25   HONOR, THIS MOTION ADDRESSES THE CHAIN OF TITLE PRODUCTION

20

EXHIBIT 11  PAGE 788

1    BY UMG.  PURSUANT TO YOUR MARCH 5 ORDER, VEOH PROMPTLY

2    IDENTIFIED 20 PERCENT OF THE WORKS AT ISSUE IN THE CASE AT

3    THAT POINT WHICH CAME TO 241 WORKS.  UMG PRODUCED ABOUT

4    100,000 PAGES IN RESPONSE AND THEN TWO WEEKS AFTER THE

5    PRODUCTION, IN LATE APRIL, UMG SENT VEOH A LETTER

6    WITHDRAWING ITS CLAIMS WITH RESPECT TO 40 OF THE WORKS, 26

7    OF WHICH WERE IN THAT 20 PERCENT THAT VEOH HAD ASKED FOR.

8    THEN ON MAY 11TH, UMG SUPPLEMENTED ITS LIST OF INFRINGEMENTS

9    IN THIS CASE AND IT WITHDREW AN ADDITIONAL EIGHT WORKS FROM

10   THE 20 PERCENT.  SO NOW UMG HAS WITHDRAWN 32 OF THE WORKS

11   FROM THE INITIAL 20 PERCENT THAT VEOH HAD REQUESTED.

12            THE COURT:  YOU SAID 32?

13            MS. GOLINVEAUX:  YES, YOUR HONOR, 32.

14            THE COURT:  SO 26 THE FIRST TIME AND?

15            MS. GOLINVEAUX:  AND AN ADDITIONAL EIGHT.

16            THE COURT:  ALL RIGHT.  THIRTY-FOUR THEN.

17            MS. GOLINVEAUX:  SORRY, 34.

18            THE COURT:  OKAY.

19            MS. GOLINVEAUX:  VEOH ASKED FOR 32 REPLACEMENT --

20   FOR UMG TO PRODUCE CHAIN OF TITLE DOCUMENTATION FOR 32

21   REPLACEMENT WORKS AND UMG REFUSED.  WHEN UMG SUPPLEMENTED

22   ITS LIST OF INFRINGEMENTS ON MAY 11, IT MOVED -- THE TOTAL

23   LIST OF THEIR CLAIMED INFRINGING VIDEOS IS NOW AROUND 7700

24   AND VEOH ASKED FOR 20 PERCENT OF THOSE WORKS-IN-SUIT BECAUSE

25   THAT'S WHAT YOUR ORDER HAD CONTEMPLATED.  AND UMG REFUSED

                                                        21

EXHIBIT 11  PAGE 789

1   AND SAID THAT IN EFFECT THAT YOUR ORDER WAS FOR A SPECIFIC

2   POINT IN TIME AND THEY HAD NO OBLIGATION TO PRODUCE

3   20 PERCENT OF THE WORKS-IN-SUIT.

4           WHAT WE WOULD ARGUE, YOUR HONOR, IS THAT GIVEN THE

5   DEFECTS THAT UMG HAS ITSELF IDENTIFIED IN THE 20 PERCENT

6   THAT LED IT TO WITHDRAW 13 PERCENT OF THOSE, VEOH SHOULD BE

7   ENTITLED TO RECEIVE CHAIN OF TITLE DOCUMENTATION FOR ALL OF

8   THE WORKS, BECAUSE WE ARE TALKING ABOUT JUST THE ONES THAT

9   THEY'VE WITHDRAWN ALREADY REPRESENT A REDUCTION IN POTENTIAL

10  STATUTORY DAMAGES OF NEARLY $5 MILLION.  VEOH HAS NOT HAD AN

11  OPPORTUNITY TO YET COMPLETE ITS REVIEW OF THE CHAIN OF TITLE

12  DOCUMENTS UMG HAS PRODUCED, BUT WE HAVE GONE THROUGH AND

13  ORGANIZED THE DOCUMENTS AND REVIEWED A GOOD NUMBER OF THEM.

14  THE DOCUMENTS THEY ORIGINALLY PRODUCED WHICH AMOUNTED TO

15  ABOUT 26 BOXES, ONCE WE WENT THROUGH AND SPENT QUITE A BIT

16  OF TIME ORGANIZING THOSE AND SIMPLY REMOVING DUPLICATE

17  DOCUMENTS AND REMOVING THOSE THAT UMG WITHDREW FROM THE CASE

18  AFTER PRODUCING, REDUCED DOWN TO ABOUT SEVEN BOXES OF

19  DOCUMENTS WHICH VEOH HAS BEEN REVIEWING.  AND WE PROVIDED A

20  SUPPLEMENTAL BRIEF TO THE COURT ON MONDAY DESCRIBING SOME

21  MORE OF THE DEFICIENCIES THAT WE'VE ALREADY FOUND IN OUR

22  REVIEW OF THOSE DOCUMENTS.  AND WE THINK THAT COMBINED WITH

23  THE DEFICIENCIES UMG ITSELF OBVIOUSLY HAS IDENTIFIED

24  JUSTIFIES PRODUCTION OF THE REMAINDER OF THE CHAIN OF TITLE

25  DOCUMENTS.

                                                      22

EXHIBIT 11  PAGE 790

```
 1              THE COURT:  WELL, SUPPOSE I WERE TO RULE THAT WAY.
 2   YOU HAVEN'T BEEN ABLE TO COMPLETE YOUR REVIEW OF 20 PERCENT.
 3   HOW COULD YOU POSSIBLY REVIEW THE CHAIN OF TITLE DOCUMENTS
 4   FOR ALL OF THE WORKS?
 5              MS. GOLINVEAUX:  WELL, YOUR HONOR, WE HAVE -- WE
 6   ARE CLOSE TO COMPLETING THE REVIEW NOW THAT THEY'RE ALL
 7   ORGANIZED AND ALL THE IRRELEVANT DOCUMENTS AND DUPLICATE
 8   DOCUMENTS THAT UMG HAS PRODUCED HAVE BEEN CULLED OUT.  IT
 9   WILL NOT TAKE MUCH LONGER TO PRODUCE IT.  AND VEOH HAS A
10   GREAT INCENTIVE TO REVIEW THOSE DOCUMENTS PRIOR TO TRIAL
11   GIVEN THAT EACH WORK THAT COMES OUT OF --
12              THE COURT:  SO YOU ARE TELLING ME THAT IF I
13   ORDERED UMG TO PRODUCE THE CHAIN OF TITLE DOCUMENTS FOR 7700
14   WORKS THAT YOU WOULD REVIEW ALL OF THOSE BEFORE TRIAL?
15              MS. GOLINVEAUX:  YOUR HONOR, IT ACTUALLY WOULD NOT
16   BE 7700 WORKS.  THEY'VE IDENTIFIED ABOUT 7700 VIDEOS.
17              THE COURT:  OKAY.
18              MS. GOLINVEAUX:  BASED ON OUR CALCULATIONS, THAT
19   TRANSLATES TO ABOUT APPROXIMATELY 1500 WORKS-IN-SUIT AT THIS
20   POINT.
21              THE COURT:  ALL RIGHT.  SO THAT'S, WHAT, SIX TIMES
22   AS MANY AS YOU'VE REVIEWED ALREADY, SEVEN TIMES AS MANY?
23              MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR, BUT A
24   GOOD AMOUNT OF OUR TIME SPENT ON THIS FIRST BATCH WAS
25   WEEDING OUT THE ONES THAT AFTER THEY PRODUCED THE DOCUMENTS
```
                                                              23

1    THEY WITHDREW.  SO WE HAD TO WEED OUT THOSE 30-SOME-ODD

2    DOCUMENTS, ORGANIZE THE DOCUMENTS.  THE DOCUMENTS -- UMG

3    SAYS THEY WERE PRODUCED IN AN ORGANIZED MANNER AND THEY'D

4    PICK OUT A COUPLE OF EXAMPLES OF ONES, BUT THEY WEREN'T.

5    AND --

6            THE COURT:  ALL RIGHT.  WELL, I DON'T WANT TO

7    NECESSARILY GET INTO THE QUALITY OF THEIR PRODUCTION, BUT DO

8    YOU HAVE A REASON TO THINK THAT THE QUALITY OF THEIR NEXT

9    PRODUCTION IS REALLY GOING TO BE ANY DIFFERENT THAN WHAT

10   THEY PRODUCED BEFORE?  I MEAN, YOU KNOW, ONE OF MY CONCERNS

11   HERE IS, AND I HAVE A NUMBER OF CONCERNS ABOUT THIS MOTION,

12   BUT ONE IS ARE YOU ACTUALLY GOING TO BE ABLE TO REVIEW THIS

13   MATERIAL?  BECAUSE IF YOU'RE NOT ACTUALLY GOING TO BE ABLE

14   TO DO THAT BEFORE TRIAL, THEN I HAVE TO QUESTION THE VALUE

15   OF IT.

16           MS. GOLINVEAUX:  AND, YOUR HONOR, SO LONG AS WE

17   GOT IT IN TIME TO REVIEW IT BEFORE TRIAL, SO WE DIDN'T GET

18   IT DUMPED ON US JUST BEFORE TRIAL, THE ANSWER IS ABSOLUTELY

19   YES, BECAUSE THE DOCUMENTS ARE JUST TOO IMPORTANT TO VEOH IN

20   TERMS OF THE POTENTIAL REDUCTION OF DAMAGES.

21           THE COURT:  ALL RIGHT.  WELL, WE'D HAVE TO ALLOW

22   THEM -- THIS IS A LOT MORE MATERIAL THAN THEY HAVE PRODUCED

23   PREVIOUSLY.  WE WOULD HAVE TO ALLOW THEM SOME TIME TO DO

24   THAT.  WHAT DO YOU THINK WOULD BE A REASONABLE TIME FRAME?

25           MS. GOLINVEAUX:  YOUR HONOR, I THINK UMG WOULD BE

24

EXHIBIT 11  PAGE 792

1    IN A BETTER POSITION TO TELL US WHAT THEY THINK IS

2    REASONABLE.  I THINK WITHIN TWO OR THREE WEEKS WE WOULD

3    REALLY NEED TO RECEIVE THESE DOCUMENTS GIVEN THAT WE HAVE

4    TRIAL SCHEDULED IN AUGUST.

5            THE COURT:  ALL RIGHT.  WELL, LET'S SAY YOU GOT

6    THE MATERIAL BY THE END OF JUNE.  YOU THEN HAVE SIX WEEKS TO

7    REVIEW SIX OR SEVEN TIMES AS MUCH AS YOU'VE REVIEWED

8    ALREADY.

9            MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR.

10           THE COURT:  AND HOW MUCH TIME HAVE YOU SPENT ON

11   THE REVIEW SO FAR?

12           MS. GOLINVEAUX:  IT'S, I BELIEVE, FIVE OR SIX

13   WEEKS.

14           THE COURT:  I MEAN, I GUESS YOU ARE TELLING ME YOU

15   WOULD STAFF UP AND YOU WOULD GET IT DONE.  IT JUST SEEMS

16   LIKE A VERY CHALLENGING TASK.

17           MS. GOLINVEAUX:  YOUR HONOR, ANOTHER THING WE ARE

18   SEEING IS PATTERNS IN TERMS OF THE DEFICIENCIES.  SO IT

19   WON'T TAKE THE SAME AMOUNT OF TIME TO REVIEW, SAY, DOCUMENTS

20   FOR 1500 WORKS AS IT DID FOR THE FIRST CLOSE TO 250 WORKS.

21           THE COURT:  ALL RIGHT.  OTHER THAN THE ONES THAT

22   THEY HAVE WITHDRAWN, TELL ME ABOUT THE DEFICIENCIES THAT

23   YOU'VE FOUND THAT WILL ALLOW YOU TO, IN YOUR VIEW, DEFEAT

24   THEIR ABILITY TO RECOVER ON PARTICULAR ALLEGEDLY INFRINGED

25   WORKS.

25

EXHIBIT 11  PAGE 793

1          MS. GOLINVEAUX:  YES, YOUR HONOR, AND THE BRIEF WE

2    FILED MONDAY EVENING WAS INTENDED TO DO THAT IN PART.  IT

3    IDENTIFIED -- IT LISTED KIND OF BY CATEGORY THE TYPES OF

4    DEFICIENCIES WE'RE SEEING.  BUT WE'RE SEEING THAT, FIRST OF

5    ALL, ON A LARGE NUMBER OF THESE WORKS THERE IS NO PLAINTIFF

6    IN THIS ACTION THAT'S LISTED ON THE ACTUAL COPYRIGHT

7    REGISTRATION.  AND WHAT WE ARE SEEING IS THAT FOR THE WORKS

8    THAT WE'VE IDENTIFIED, THERE'S BEEN A FAILURE TO PRODUCE THE

9    NECESSARY ASSIGNMENTS.  IN OTHER DOCUMENTS, LIKE RECORDING

10   AND SONGWRITER AGREEMENTS, TO ACTUALLY TRANSFER THE WORKS TO

11   ANY PLAINTIFF IN THIS CASE.  SO WE HAVE INCOMPLETE CHAIN OF

12   TITLE, WHICH UMG IS GOING TO HAVE TO PROVE UP AT TRIAL

13   ANYWAY IF THEY WANT TO RECOVER WHAT THEY -- THEY ARE ASKING

14   FOR $150,000 PER WORK IN STATUTORY DAMAGES.  SO THAT'S

15   ONE --

16          THE COURT:  IF UMG ISN'T LISTED ON THE

17   CERTIFICATE.

18          MS. GOLINVEAUX:  WELL, EVEN IF THEY ARE --

19          THE COURT:  YOU MEAN THEY COULD RELY ON THE

20   PRESUMPTION, I GUESS.

21          MS. GOLINVEAUX:  WHICH WOULD BE A REBUTTABLE

22   (INAUDIBLE), YOUR HONOR.

23          THE COURT:  RIGHT.  AND THEN YOUR ARGUMENT WOULD

24   BE YOU'RE ENTITLED TO THE MATERIAL THAT MIGHT ENABLE YOU TO

25   TRY TO REBUT IT.

                                                         26

EXHIBIT 11  PAGE 794

```
1              MS. GOLINVEAUX:  THAT'S RIGHT, YOUR HONOR.  FOR A
2    NUMBER OF THE WORKS THEY HAVEN'T PRODUCED ANY CHAIN OF TITLE
3    DOCUMENTS AT ALL, NOT JUST DOCUMENTS INSUFFICIENT TO
4    COMPLETE THE TRANSFER OF TITLE.  SO FOR THE FIRST CATEGORY,
5    WE ARE SEEING SOME ASSIGNMENTS AND SOME AGREEMENTS BUT NOT
6    SUFFICIENT TO TRANSFER TO ANY PLAINTIFF IN THE ACTION.  FOR
7    OTHER WORKS THERE'S NO CHAIN OF TITLE DOCUMENTS SHOWING
8    TRANSFER AT ALL TO ANY OF THE PLAINTIFFS IN THE ACTION.
9              OTHERS OF THE DOCUMENTS AT BEST WOULD ONLY
10   TRANSFER A NONEXCLUSIVE LICENSE TO UMG THAT WOULD NOT BE
11   SUFFICIENT TO GIVE THEM STANDING TO PURSUE THE WORK -- TO
12   PURSUE DAMAGES FOR THE WORK IN THIS ACTION.  THOSE ARE SOME
13   OF THE KEY CATEGORIES OF DOCUMENTS WE SUMMARIZED.
14             THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WANT TO
15   RAISE AT THIS POINT?
16             MS. GOLINVEAUX:  THE OTHER THING, YOUR HONOR, IS
17   THAT UMG IS PRIMARILY ARGUING BURDEN HERE AND I THINK IT'S
18   NOTABLE IN THE PAPERS THAT THEY'VE RELIED FOR THEIR BURDEN
19   ARGUMENT ENTIRELY ON A DECLARATION THAT'S ALMOST A YEAR OLD
20   NOW FROM MR. OSTROFF AND HE'S TALKING ABOUT THE FACT THAT
21   UMG OWNS 100,000 PLUS WORKS.  WELL, WE ARE NOT TALKING
22   ABOUT GETTING THIS KIND OF DOCUMENTATION FOR 100,000-PLUS
23   WORKS.  WE ARE TALKING ABOUT SOMETHING LIKE 1500 WORKS.  SO
24   IT'S VERY DIFFERENT.  WE DON'T SEE ANYTHING IN THE RECORD
25   ABOUT THE BURDEN, FOR EXAMPLE, IT TOOK UMG TO ACTUALLY PULL
                                                          27
```

EXHIBIT 11  PAGE 795

1    TOGETHER THE 20 PERCENT THAT THEY ALREADY HAVE.

2            THE COURT:  WELL, I MEAN, IF IT'S TAKEN YOU FIVE

3    OR SIX WEEKS JUST TO READ THEM, I THINK WE CAN INFER

4    SOMETHING ABOUT THE BURDEN THAT MAY HAVE BEEN REQUIRED TO

5    PRODUCE THEM.

6            MS. GOLINVEAUX:  WELL, YOUR HONOR, THERE IS

7    SPECIAL CIRCUMSTANCES ON OUR SIDE AS WELL IN TERMS OF COST

8    LIMITATIONS THAT OUR CLIENT IS EXPERIENCING RIGHT NOW.  WE

9    IN FACT HAD TO FIND ATTORNEYS AT LOWER COSTS TO DO SOME OF

10   THE REVIEW AND OUTSIDE OUR FIRM AND IT TOOK SOME TIME TO

11   ORGANIZE THAT BECAUSE THE CLIENT SIMPLY COULDN'T PAY FULL

12   FEES TO HAVE SOME OF THIS STUFF ORGANIZED.  SO I THINK THAT

13   IT WOULD HAVE BEEN DONE MUCH MORE QUICKLY IF WE HAD THE

14   RESOURCES THAT THE PLAINTIFFS IN THIS CASE HAS.

15           THE COURT:  AND I GUESS YOU'RE SAYING NOW YOU HAVE

16   A SYSTEM IN PLACE SO YOUR REVIEW WILL GO MUCH MORE QUICKLY

17   IF YOU GET ADDITIONAL MATERIAL?

18           MS. GOLINVEAUX:  WELL, THAT'S IN PART CORRECT,

19   YOUR HONOR.  AND AGAIN, WE ARE SEEING PATTERNS IN TERMS OF

20   THE DEFICIENCIES, SO THE REVIEW IS FASTER FOR SUBSEQUENT

21   WORKS THAN IT WAS FOR THE FIRST BATCH.

22           THE COURT:  ALL RIGHT.

23           MR. LEDAHL:  YOUR HONOR, I THINK OUR CONCERN IS

24   NOT THAT DIFFERENT FROM THE COURT'S EXPRESSED CONCERN THAT

25   THIS IS MATERIAL THAT'S BEING SOUGHT FOR VERY LITTLE

                                                         28

EXHIBIT 11  PAGE 796

1    PRACTICAL PURPOSE.  AS A GENERAL MATTER, AS THE COURT

2    UNDOUBTEDLY RECALLS, THIS WAS THE SUBJECT OF A LENGTHY

3    DISPUTE WHICH THE COURT ENTERED WHAT I WILL CHARACTERIZE AS

4    A COMPROMISE ORDER REQUIRING US TO PRODUCE CERTAIN MATERIALS

5    FOR A SUBSET OF THE WORKS AT ISSUE AND THEN CONTEMPLATING

6    THAT THE PARTIES WOULD MEET AND CONFER TO THE EXTENT VEOH

7    IDENTIFIED ANY DEFECTS AFTER A SET TIME PERIOD, AND THAT

8    WOULD PROVIDE WE PRESUMED A MECHANISM THAT IF THESE PRESUMED

9    DEFECTS WERE IN FACT MISUNDERSTANDINGS AS OPPOSED TO TRUE

10   DEFECTS, THAT COULD BE RESOLVED RATHER THAN MOVING FORWARD

11   TO SOME OTHER PRACTICE BEFORE THIS COURT.

12          THAT'S NOT WHAT HAPPENED HERE.  AND IN FACT,

13   FRANKLY, VEOH HAS FROM THE BEGINNING AND INDEED IT SEEMS TO

14   US FROM THE DAY THE COURT ISSUED ITS MARCH 5TH ORDER SOUGHT

15   THE BASIS TO COME IN AND ASK FOR THE REST BEFORE ANYTHING

16   ELSE COULD HAPPEN.  AS WE PRODUCED THE MATERIALS CONSISTENT

17   WITH THE COURT'S ORDER ON APRIL 9TH, THEY'VE HAD THEM FOR

18   NOW ALMOST TWO MONTHS.  UNTIL THE BRIEF THAT WAS FILED ABOUT

19   24 HOURS AGO, VEOH NEVER IDENTIFIED A SINGLE DEFECT THAT

20   THEY CONTENDED THEY HAD FOUND TO US.  THE ONLY BASIS THEY

21   EVER CAME BACK TO US WITH WAS, WELL, IN CLEANING UP YOUR

22   LIST, REMOVING SOME TYPOGRAPHICAL ERRORS FOR ONE THING,

23   REMOVING SOME THINGS THAT HAD INADVERTENTLY BEEN LISTED,

24   THAT SOMEHOW PROVIDED THE BASIS AND THE EXCUSE NOW WE NEED

25   ALL THE OTHER DOCUMENTS.

                                                        29

EXHIBIT 11  PAGE 797

1           THE COURT:  WELL, I MEAN, ONE THING THAT DID OCCUR

2    TO ME IS THAT GOING THROUGH THIS PROCESS OF PRODUCTION SEEMS

3    TO HAVE HAD A DISCIPLINING EFFECT AND A HARD LOOK WAS TAKEN

4    AND SOME MISTAKES WERE ELIMINATED.

5           MR. LEDAHL:  WELL, YOUR HONOR, AND I GUESS TO THE

6    EXTENT THAT THAT'S WHAT WE ARE TALKING ABOUT HERE, THAT HARD

7    LOOK WAS NOT LIMITED TO THESE 20 PERCENT.  AS MS. GOLINVEAUX

8    CONCEDES, THAT'S NOT THE ONLY PLACE WHERE SOME CORRECTIONS

9    WERE MADE.  WE DIDN'T JUST GO THROUGH A LITTLE PIECE OF THE

10   LIST AND LEAVE EVERYTHING ELSE ON THE REST.  INDEED, COUNSEL

11   IDENTIFIED AND POINTED OUT THE FACT THAT SOME ENTRIES WERE

12   REMOVED.  NOT ALL OF THEM WERE IN THE 20 PERCENT SAMPLE THAT

13   THEY CAME UP WITH.  WE IDENTIFIED PLACES ELSEWHERE WHERE

14   CERTAIN THINGS WERE CLEANED UP.

15          BUT WHAT WE ARE REALLY TALKING ABOUT HERE IS

16   PUNISHING THAT DILIGENCE BY SUGGESTING, WELL, BECAUSE YOU

17   WERE CAREFUL AND DID THIS AS A PRACTICAL MATTER, CLEAN-UP OF

18   THE LIST, SOMEHOW NOW YOU SHOULD BE IMPOSED -- HAVE THIS

19   MASSIVE ADDITIONAL BURDEN IMPOSED ON YOU.

20          THE COURT:  WELL, ARE YOU TELLING ME NOW THAT

21   THERE ARE NO ALLEGEDLY INFRINGED WORKS THAT YOU DON'T HAVE

22   THE RIGHTS TO SUE ON, THAT EVERY MISTAKE HAS BEEN

23   ELIMINATED, THAT GOING THROUGH THE PROCESS OF PRODUCING

24   WOULD NOT RESULT IN YOUR VERY CONSCIENTIOUSLY AND

25   APPROPRIATELY KNOCKING SOME OF THE ADDITIONAL WORKS OFF THE

                                                    30

1    LIST BECAUSE YOU FIND, YES, THERE IS A GAP HERE OR WE DON'T

2    HAVE THE RIGHT TO SUE ON THIS?

3          MR. LEDAHL:  BY DEFINITION, OF COURSE, I CAN'T

4    REPRESENT THAT MISTAKES HAVE ALL BEEN ELIMINATED BECAUSE

5    THEY WOULDN'T BE MISTAKES OTHERWISE.  THAT SAID, WE CONTINUE

6    TO ENGAGE IN A CAREFUL AND CONSCIENTIOUS ANALYSIS.  I ALSO,

7    THOUGH, WANT TO REALLY HIGHLIGHT THAT THE BREAKDOWN IN THE

8    PROCESS THAT WE'VE HAD HERE IS REALLY PROBLEMATIC AND THE

9    REASON WE ARE HERE IN MANY RESPECTS IS VEOH'S PURSUIT OF

10   THIS MATERIAL WITHOUT HAVING A BASIS FOR IT.

11         MS. GOLINVEAUX POINTS TO SOME ALLEGED DEFECTS THAT

12   WERE IDENTIFIED IN THE BRIEF THAT WAS FILED A LITTLE OVER 24

13   HOURS AGO.  OBVIOUSLY, WE HAVE OBJECTIONS TO THE SUBMISSION

14   OF THAT BRIEF GIVEN THAT IT WAS NOT AUTHORIZED BY THE COURT.

15   IT WAS INAPPROPRIATE FROM OUR PERSPECTIVE IN THAT RESPECT.

16   IT'S ALSO SUBSTANTIVELY COMPLETELY WRONG.  AND I WANT TO --

17   I'M HAPPY TO GO THROUGH EVERY SINGLE WORK THAT'S IDENTIFIED

18   IN THAT BRIEF BECAUSE WE OWN THE RIGHTS TO EVERY ONE OF

19   THEM.  EVERY ASSERTION THEY MAKE IS WRONG.  AND I'M HAPPY TO

20   GO THROUGH THEM.  AS AN EXAMPLE, MS. GOLINVEAUX --

21         THE COURT:  WELL, RATHER THAN HAVE YOU DO THAT

22   THIS MORNING, MAYBE I SHOULD GIVE YOU A FEW DAYS TO FILE A

23   RESPONSE.

24         MR. LEDAHL:  AND WE WOULD BE HAPPY TO, YOUR HONOR.

25   I THINK THE POINT I'M MAKING IS WE PERCEIVE THIS TO BE THE

                                          31

EXHIBIT 11  PAGE 799

1   REASON THE COURT CONTEMPLATED A MEET AND CONFER IN THE FIRST

2   PLACE.  NOW, VEOH HAS HAD THESE --

3          THE COURT:  WELL, I GUESS MY HOPE WAS THAT THERE

4   MIGHT NOT BE ANY PROBLEMS, THAT WE WOULD FIND, YOU KNOW, A

5   PERFECT CHAIN OF TITLE FOR ALL THE WORKS, AND THAT EVEN VEOH

6   WOULD CONCEDE THERE'S NO -- WE PICKED THIS 20 PERCENT,

7   THERE'S NO POINT IN CONTINUING ON WITH THIS.  THIS IS A

8   FUTILE EXERCISE.  THEY DON'T SEEM TO HAVE BEEN PERSUADED OF

9   THAT.  AND IN FACT, SOME INSTANCES OF MISTAKES TURNED OUT

10  WHICH IS NOT SURPRISING, I GUESS.

11         MR. LEDAHL:  AND, YOUR HONOR, I WANT TO HIGHLIGHT,

12  FOR EXAMPLE, SOME OF THE MISTAKES THAT WE ARE TALKING ABOUT.

13  IN PREPARING THIS LIST OF SEVERAL THOUSAND VIDEOS, SOMEONE

14  INADVERTENTLY MISTYPED THE REGISTRATION NUMBER FOR A SONG

15  THAT APPEARED SEVERAL TIMES ON THE LIST IN A COUPLE OF THE

16  ENTRIES SO THAT WE HAD TO CORRECT TO CONFORM THEM.  THIS

17  ISN'T SOMETHING THAT PREVENTED THEM FROM KNOWING THAT WE

18  OWNED THIS SONG.  IT WAS A TYPOGRAPHICAL ERROR.  WE ARE NOT

19  TALKING ABOUT SOME, YOU KNOW, OVERREACHING CLAIM WHERE WE

20  SAID, OH, WELL, WE OWN THIS SONG AND WE REALLY DON'T OR WE

21  THOUGHT WE OWNED IT AND WE REALLY DIDN'T.  THERE ARE SOME

22  THINGS THAT THROUGH HUMAN ERROR WERE INCLUDED THAT NEEDED TO

23  BE PULLED BACK OFF JUST INADVERTENTLY.

24         I THINK SOME OF THE REPRESENTATIONS THAT HAVE BEEN

25  MADE TODAY, THOUGH -- AS JUST ONE EXAMPLE, THERE'S A LIST OF

                                                              32

EXHIBIT 11  PAGE 800

1  SONGS THAT MS. GOLINVEAUX SUGGESTS NONE OF THE NAMED

2  PLAINTIFFS IS PART OF THE COPYRIGHT CHAIN OF TITLE.  THAT'S

3  JUST NOT TRUE.  NOW, IT IS TRUE THAT CERTAIN OF THE NAMED

4  PLAINTIFFS HAVE OPERATED UNDER DIFFERENT NAMES IN THE PAST

5  AND THAT SOME OF THESE ASSIGNMENT AGREEMENTS ASSIGN THE WORK

6  TO A PRIOR NAME OF A NAMED PLAINTIFF, SUCH AS UNIVERSAL

7  MUSIC Z TUNES USED TO BE KNOWN AS ZOMBA MUSIC INTERNATIONAL,

8  I BELIEVE.  THAT'S THE PARTY THAT'S NAMED ON THE ASSIGNMENT

9  AGREEMENT.  IT'S THE SAME COMPANY, AND IT'S A NAMED

10  PLAINTIFF.  SO THESE ARE NOT SUBSTANTIVE ASSERTIONS THAT

11  HAVE A BASIS IN FACT.

12       THE COURT:  AND YOU ARE SAYING IF THEY HAD RAISED

13  THAT ISSUE WITH YOU, YOU COULD HAVE DEMONSTRATED TO THEM?

14       MR. LEDAHL:  ABSOLUTELY, YOUR HONOR.  AND THAT'S

15  TRUE FOR EVERY SINGLE ONE OF THE THINGS IDENTIFIED IN THIS

16  LATE SUPPLEMENTAL BRIEF.  IT'S NOT AN ISOLATED CIRCUMSTANCE.

17  IT'S EVERY ONE OF THEM.  WE HAD TO SPEND SUBSTANTIAL

18  RESOURCES IN THE LAST 24 HOURS GOING THROUGH THAT LIST,

19  BUT -- AND INDEED, THESE ARE NOT DOCUMENTS THAT WE'VE

20  SOMEHOW WITHHELD EITHER.  THESE ARE DOCUMENTS THAT WERE

21  PRODUCED.

22       AND I KNOW THE COURT DOESN'T WANT TO HEAR A LOT

23  ABOUT THE QUALITY OF THE PRODUCTION OR THE NATURE THEREOF,

24  BUT THE ASSERTION THAT IT WAS SOMEHOW DONE IN AN IMPROPER

25  MANNER, VEOH HAS REALLY ARGUED TWO FUNDAMENTALLY

33

1    INCONSISTENT POSITIONS HERE.  FIRST, THEY COMPLAINED THAT IT

2    WASN'T ORGANIZED IN SOME MANNER, WHICH WAS FALSE, AND NOW

3    THEY ARE COMPLAINING THAT THERE WERE DUPLICATES.  WELL, LET

4    ME TRY TO EXPLAIN VERY BRIEFLY WHAT WE ARE TALKING ABOUT

5    HERE.  FOR EACH COPYRIGHT THERE WAS A GROUP OF MATERIALS

6    THAT INCLUDED THE REGISTRATION AND RELATED AGREEMENTS.  SOME

7    AGREEMENTS PRACTICALLY RELATE TO MORE THAN ONE COPYRIGHT ON

8    THEIR LIST.  AS A CONSEQUENCE, WE KEPT THEM ORGANIZED IN

9    SUCH A WAY SO THAT THE AGREEMENT WOULD REPEAT ITSELF WHEN IT

10   WAS WITH EACH RELEVANT COPYRIGHT.  AS ONE EXAMPLE, AND THIS

11   IS ONE THAT THEY IDENTIFIED IN THE BRIEF --

12          THE COURT:  SO IF THEY WERE INTERESTED IN A

13   PARTICULAR WORK, ALL OF THE MATERIAL RELATING TO THAT WORK

14   WOULD BE TOGETHER.

15          MR. LEDAHL:  THAT IS CORRECT, YOUR HONOR.

16          THE COURT:  OKAY.

17          MR. LEDAHL:  SO AS ONE EXAMPLE, THEY IDENTIFIED --

18          THE COURT:  I THINK I UNDERSTAND THAT.

19          MR. LEDAHL:  THEY IDENTIFY A SONG CALLED *SMACK*

20   *THAT* RECORDED BY THE MUSICAL ARTIST AKON.  THAT SONG HAS TWO

21   SONGWRITERS.  ONE OF THEM IS AN ARTIST WHO GOES BY THE

22   POPULAR NAME EMINEM.  HIS SONGWRITER AGREEMENT WITH THE

23   COMPANY IS PRODUCED A COUPLE TIMES BECAUSE THERE ARE A

24   COUPLE OF HIS -- A COUPLE SONGS ON WHICH HE IS THE

25   SONGWRITER.  I SUSPECT THAT PERHAPS IN THE ORGANIZATION THAT

34

EXHIBIT 11  PAGE 802

1    VEOH SAYS IT PERFORMED THEY MAY HAVE TOSSED THAT OUT FROM

2    THE RIGHT SPOT AND THEN COME TO THE CONCLUSION THAT WE

3    DIDN'T PRODUCE THE RIGHT AGREEMENTS.  NOW, HE'S LISTED ON

4    THE COPYRIGHT REGISTRATION AS THE SONGWRITER AND IMMEDIATELY

5    AFTER THAT REGISTRATION OR IMMEDIATELY BEFORE IT WE PRODUCED

6    HIS SONGWRITER AGREEMENT WITH THE COMPANY.  SO THESE

7    SUGGESTIONS THAT THERE ARE THESE MASSIVE DEFECTS ARE

8    COMPLETELY FALSE.

9         INDEED, WHAT WE ARE TALKING ABOUT HERE AND TO THE

10    COURT'S EARLIER POINT, THEY'VE HAD NEARLY TWO MONTHS WITH

11    THIS MATERIAL AND HAVE YET TO IDENTIFY A SINGLE INCORRECT

12    CLAIM OF COPYRIGHT INFRINGEMENT.  WE'VE CLEANED UP SOME

13    THINGS ON OUR LIST THAT WE NEEDED TO CLEAN UP.  VEOH HASN'T

14    USED THESE DOCUMENTS TO FIND A SINGLE ONE.  AND THE

15    PRODUCTION OF THIS MASSIVE ADDITIONAL PILE WHICH I SUSPECT

16    FRANKLY WOULD TAKE MY CLIENT LONGER TO PRODUCE THAN THE

17    TRIAL DATE THAT'S APPROACHING WILL NOT CHANGE THAT IN ANY

18    MEANINGFUL WAY.

19         THE COURT:  ALL RIGHT.  NOW, HERE'S A CONCERN THAT

20    I HAVE.  ALL RIGHT.  LET'S SAY THAT WE'RE AT TRIAL AND YOU

21    WANT TO PROVE OWNERSHIP OF ONE OF THE WORKS THAT'S NOT IN

22    THESE 20 PERCENT AND YOU INTRODUCE THE CERTIFICATE AND THEY

23    SAY WE WANT AN OPPORTUNITY TO TRY TO REBUT THIS, HOW DO THEY

24    DO IT?

25         MR. LEDAHL:  WELL, YOUR HONOR, I THINK -- FIRST

                                                        35

EXHIBIT 11  PAGE 803

1   LET ME SUGGEST THAT IF THAT'S THE TRIAL WE ARE GOING TO

2   HAVE, THEN IT'S GOING TO BE A VERY LONG TRIAL.  AND

3   OBVIOUSLY I KNOW THAT'S A QUESTION FOR JUDGE MATZ, BUT WHEN

4   WE ARE TALKING ABOUT -- I DON'T ACCEPT COUNSEL'S

5   REPRESENTATION AS TO THE NUMBER OF WORKS.  I THINK IT'S

6   ACTUALLY A LITTLE HIGHER THAN WHAT SHE STATED, BUT

7   REGARDLESS --

8           THE COURT:  YOU MEAN HIGHER THAN 1500?

9           MR. LEDAHL:  CORRECT.  BUT REGARDLESS, IF WE HAVE

10  A TRIAL IN WHICH WE ARE SEPARATELY INTRODUCING AND TALKING

11  ABOUT EACH OF 1500 OR 2000 DIFFERENT COPYRIGHTS --

12          THE COURT:  WELL, I MEAN, ISN'T THERE GOING TO

13  BE -- LET'S ASSUME FOR A MOMENT THAT YOU PREVAIL, OKAY,

14  HYPOTHETICALLY I WANT TO EMPHASIZE, ISN'T THERE GOING TO BE

15  A TIME AT WHICH YOU ARE GOING TO HAVE TO PROVE THAT YOU OWN

16  THE WORKS THAT ARE AT ISSUE?

17          MR. LEDAHL:  YES, YOUR HONOR.

18          THE COURT:  AND NOW, WHETHER THAT'S DONE BY

19  STIPULATION BECAUSE THERE'S NO REASONABLE BASIS TO OPPOSE IT

20  OR, YOU KNOW, WHETHER IT'S DONE IN SOME SPECIAL PROCEEDING

21  THAT'S ORGANIZED IN A VERY EFFICIENT WAY, BUT AT SOME POINT

22  YOU ARE GOING TO HAVE TO DO THAT, AREN'T YOU?

23          MR. LEDAHL:  YOUR HONOR, AND I THINK THERE ARE A

24  NUMBER OF -- THAT'S CORRECT.  I THINK THERE ARE A NUMBER OF

25  MEANS BY WHICH WE CAN DO THAT, INCLUDING THROUGH TESTIMONY

                                                              36

EXHIBIT 11  PAGE 804

```
1    OF WITNESSES, INCLUDING THROUGH, YOU KNOW, THE REGISTRATIONS
2    THEMSELVES.  IT'S NOT -- OUR BURDEN IS NOT TO COME FORWARD
3    WITH ALL OF THE EVIDENCE RELATING TO EACH WORK AND ALL OF
4    THE ASSIGNMENTS.  IF WE OFFER EVIDENCE THAT WE ARE IN FACT
5    THE PROPER OWNERS WITH RIGHTS TO ASSERT ALL OF THESE
6    COPYRIGHTS, THEN THAT'S A SUFFICIENT BASIS.  NOW, WHAT WE
7    ARE REALLY DEALING WITH HERE IS THE QUESTION OF WHETHER
8    THERE IS A PRODUCTIVE BASIS TO REQUIRE THIS MASSIVE
9    ADDITIONAL BURDEN OF DISCOVERY.
10            THE COURT:  WELL, BEFORE WE GET TO THAT POINT, YOU
11   PUT ON SOME EVIDENCE AND WHAT DO THEY DO NOW FOR THESE WORKS
12   OTHER THAN THE 20 PERCENT?  THEY HAVE NO INFORMATION.
13            MR. LEDAHL:  WELL, YOUR HONOR --
14            THE COURT:  HOW CAN THEY RESPOND TO THAT?  THIS IS
15   WHAT HAS TROUBLED ME ABOUT THIS ISSUE ALL LONG.  AND I'D
16   HOPED THROUGH THIS SAMPLING PROCEDURE WE WOULD FIND A WAY TO
17   GET BEYOND THAT.  THAT DOESN'T SEEM TO HAVE HAPPENED.  SO
18   WHAT I'M LEFT WITH, AND I REALLY WANT TO ARTICULATE THIS
19   BECAUSE IT CONCERNS ME AND I WANT TO GET YOUR RESPONSE, IS I
20   FEEL LIKE I MUST LET THEM HAVE ACCESS TO THIS, OTHERWISE I'M
21   DEPRIVING THEM OF THE ABILITY TO RESPOND TO YOUR PROOF.  WHY
22   SHOULDN'T I BE CONCERNED ABOUT THAT?
23            MR. MARENBERG:  YOUR HONOR, MAY I SPEAK TO THAT --
24            THE COURT:  YES.
25            MR. MARENBERG:  -- BECAUSE I THINK THAT THIS IS --
                                                            37
```

EXHIBIT 11  PAGE 805

1    IT'S AN IMPORTANT QUESTION.  OBVIOUSLY, WE CONTEND THAT WE

2    ARE ENTITLED TO RELY ON THE PRESUMPTION FROM THE COPYRIGHT

3    REGISTRATION, BUT LET'S ASSUME THAT THERE ARE ISOLATED

4    INSTANCES IN WHICH THEY WANT TO ATTACH THEM.  I THINK THIS

5    IS ACTUALLY SOMETHING THAT YOU NEED TO DISCUSS WITH JUDGE

6    MATZ.  CASES OF MASS COPYRIGHT INFRINGEMENT LIKE THIS POSE

7    DIFFERENT PROBLEMS THAN WE'VE GOT ONE OR TWO WORKS, WE CAN

8    PUT IN IN OUR DIRECT CASE EVIDENCE OF CHAIN OF TITLE VERY

9    EFFICIENTLY.  IT WOULD TAKE AN HOUR OR TWO TO DO THAT, AND

10   THEN WE CAN MOVE ON TO WHAT REALLY THE BATTLE GROUND IS IN

11   OUR COPYRIGHT INFRINGEMENT CASE, SUBSTANTIAL SIMILARITY OR

12   SOME OTHER ISSUE.  IN THIS CASE IT WOULD BE ENTITLEMENT TO A

13   SAFE HARBOR UNDER THE DMCA.

14        IT SEEMS TO ME -- AND THERE HAVE BEEN OTHER

15   MASSIVE INFRINGEMENT CASES WHERE THERE IN A SENSE HAS BEEN

16   SOME POST-VERDICT TRUE-UP OF WHERE INDIVIDUAL WORKS CAN BE

17   WEEDED OUT IF THAT IS SOMETHING THAT THEY WANT TO TAKE THE

18   EXPENSE OF DOING TO DO THAT.  THE DOCUMENTS THAT WE'VE GIVEN

19   THEM THUS FAR AND PARTICULARLY WHEN YOU'VE ASKED FOR

20   20 PERCENT, WHICH UNDER ANY SAMPLING REGIME IS FAR MORE THAN

21   IS NECESSARY TO HAVE AN ACCURATE SAMPLE, HAS REVEALED THAT

22   THERE ARE NO SUBSTANTIVE DEFECTS IN OUR ASSERTIONS OF

23   COPYRIGHT.  YES, THERE WERE TYPOGRAPHICAL ERRORS AND WE TOOK

24   IT UPON OURSELVES TO CLEAN UP OUR LIST BEFORE WE GOT

25   (INAUDIBLE), BUT THEY'VE COME FORWARD WITH NO EVIDENCE NOT

38

EXHIBIT 11  PAGE 806

```
1    ONLY THAT THERE IS A SYSTEMIC PROBLEM WITH WHAT WE'VE DONE

2    HERE, BUT THAT THERE IS A (INAUDIBLE) PROBLEM WITH WHAT

3    WE'VE DONE HERE.  AND SO IT SEEMS TO ME THAT THERE IS A

4    BASIS -- AND MAYBE YOU SHOULD HAVE A CONVERSATION WITH JUDGE

5    MATZ AS TO HOW HE WANTS TO RUN THE TRIAL, BECAUSE I DOUBT HE

6    WANTS US TO TAKE THE TIME IN HIS COURTROOM TO PUT ON THE

7    CHAIN OF TITLE --

8              THE COURT:  WHY WOULD ANYONE WANT THAT?

9              MR. MARENBERG:  TO PUT ON 1700 OR 2000 OR WHATEVER

10   THE NUMBER IS CHAINS OF TITLE IN THESE DOCUMENTS RATHER --

11   YOU KNOW, WHEN I WAS A LAW CLERK AND WE HAD EMPLOYMENT

12   DISCRIMINATION CLAIMS ON THE BASIS OF CLASSES -- I STILL

13   REMEMBER THE UNITED AIRLINES FLIGHT ATTENDANTS WHO ALL GOT

14   FIRED BECAUSE THEY GOT MARRIED.  THAT'S HOW LONG AGO I WAS A

15   CLERK.  THERE WERE HEARINGS AFTERWARDS AS TO WHETHER ANY

16   INDIVIDUAL CLAIMANT WAS ENTITLED TO BACK PAY, REINSTATEMENT,

17   ET CETERA.  IT SEEMS TO ME THAT THAT'S THE WAY IT WOULD

18   PROBABLY EFFICIENTLY BE HANDLED IN THIS CASE.  AND IF IT'S

19   GOING TO BE DONE IN THAT WAY BY JUDGE MATZ, THEN CERTAINLY

20   THE PRODUCTION THAT'S BEEN HAD SO FAR IS SUFFICIENT TO GO

21   FORWARD WITH THE TRIAL AND HAVE THAT TRIAL, AND IF AFTER

22   POST -- IF THEY WIN, I DON'T THINK THAT WILL HAPPEN, WELL,

23   THEN WE DON'T NEED TO DO THIS.

24             THE COURT:  RIGHT.

25             MR. MARENBERG:  AND IF THEY LOSE AND THEY WANT TO
                                                        39
```

EXHIBIT 11  PAGE 807

```
 1   PAY OR WANT TO GO THROUGH THE EXPENSE, AND THERE WILL BE

 2   EXPENSE FOR BOTH PARTIES POST-VERDICT, THEN WE CAN PUT OFF

 3   ANY SUBSEQUENT PRODUCTION THAT MIGHT BE NECESSARY UNTIL THAT

 4   POINT.  IT SEEMS TO ME THAT'S REALLY THE MOST EFFICIENT,

 5   COST EFFECTIVE WAY TO DO THIS, BUT I DO ACKNOWLEDGE THAT

 6   THAT REQUIRES SOME CONSULTATION BETWEEN YOU AND JUDGE MATZ.

 7   I KNOW THAT JUDGE MATZ HAS BEEN VERY BUSY OVER THE LAST SIX

 8   MONTHS AND I DON'T KNOW WHETHER HE'S HAD THE CHANCE TO FOCUS

 9   ON HOW HE PLANS TO STRUCTURE THE HEARING, THE TRIAL IN THIS

10   CASE.

11         BUT CERTAINLY I THINK THERE IS NO BASIS FOR

12   IMPOSING THE MASSIVE EXPENSE OF PRODUCING ALL THESE CHAIN OF

13   TITLE DOCUMENTS NOW WHICH WOULD, ONE -- WELL, ONE, IT WOULD

14   BE EXPENSIVE.  TWO, IT WOULD PROBABLY PUSH OFF THE TRIAL

15   JUST FOR US TO DO IT.  AND THREE, THEY WOULD NEVER REVIEW

16   IT.  I MEAN, YOU KNOW, WHAT YOU'VE HEARD AND READING BETWEEN

17   THE LINES TODAY IS THAT THEY DON'T HAVE THE RESOURCES TO

18   REVIEW IT ANYMORE.

19         MR. LEDAHL:  AND, YOUR HONOR, I THINK ONE OTHER

20   POINT.

21         THE COURT:  BEFORE YOU GET TO THAT, I WOULD LIKE

22   TO HAVE VEOH'S COUNSEL RESPOND TO WHAT MR. MARENBERG JUST

23   SAID.

24         MR. LEDAHL:  CERTAINLY, YOUR HONOR.

25         THE COURT:  BECAUSE I HAVE TO SAY I THINK THAT
```
                                                              40

EXHIBIT 11  PAGE 808

1    MAKES A LOT OF SENSE.  THERE MUST BE SOME WAY TO HANDLE THIS

2    MORE EFFICIENTLY THAN WHAT YOU ARE PROPOSING.

3          MS. GOLINVEAUX:  YOUR HONOR, I THINK IT CERTAINLY

4    MAKES SENSE FOR YOU TO CONSULT WITH JUDGE MATZ ABOUT THIS.

5    IT IS A VERY -- WE ARE TALKING ABOUT A VERY LARGE NUMBER OF

6    WORKS.  WE CALCULATED IT SOMETHING LIKE 1500.  IT SEEMS

7    SURPRISING THAT PLAINTIFFS DON'T KNOW HOW MANY THEY'VE

8    IDENTIFIED YET, BUT IT DOESN'T SOUND LIKE THEY ARE FAR NORTH

9    OF 1500.  WE ARE SOMEWHERE IN THAT AREA.  BUT I DON'T THINK

10   VEOH WOULD HAVE A PROBLEM WITH TRYING TO APPROACH THIS IN A

11   MANNER, PARTICULARLY WITH VEOH'S SUMMARY JUDGMENT MOTION

12   PENDING, THAT WOULD MAKE SENSE FOR BOTH PARTIES.

13         IF I COULD JUST ADDRESS A COUPLE OF POINTS THAT

14   MR. LEDAHL MADE, THOUGH.  IT'S -- VEOH IDENTIFIED 20 PERCENT

15   OF THE WORKS FOR THE CHAIN OF TITLE DOCUMENTS.  UMG ITSELF

16   WITHDREW 34 OF THOSE WORKS.  NOW, IT WOULD BE IRONIC TO SAY

17   BECAUSE UMG IDENTIFIED THE DEFICIENCIES RATHER THAN VEOH

18   IDENTIFYING THE DEFICIENCIES IT DOESN'T JUSTIFY PRODUCTION

19   OF MORE WORKS.  IT'S NOT COINCIDENTAL EITHER, WE THINK, THAT

20   60 PERCENT --

21         THE COURT:  WELL, OKAY, THAT'S ABOUT ONE-EIGHTH OF

22   THE 20 PERCENT; CORRECT?

23         MS. GOLINVEAUX:  THAT'S CORRECT, YOUR HONOR.

24   BUT --

25         THE COURT:  AND IS IT TRUE AS I UNDERSTOOD

                                                          41

EXHIBIT 11  PAGE 809

1    MR. LEDAHL TO SAY THAT THE REASONS FOR DELETING WORKS FROM

2    THE LIST WAS AT LEAST IN MOST INSTANCES NOT THAT THEY DIDN'T

3    HAVE THE RIGHT TO SUE ON THAT WORK, IT WAS BECAUSE THERE WAS

4    A CLERICAL ERROR OR SOMETHING OF THAT SORT?

5            MS. GOLINVEAUX:  WELL, IT'S INTERESTING, YOUR

6    HONOR, COUNSEL TODAY HAS REPEATEDLY SAID THEY WERE

7    TYPOGRAPHICAL ERRORS, BUT IN THE BRIEFING, AND I'M QUOTING,

8    THEY SAY THEY WERE DUE TO, QUOTE, TYPOGRAPHICAL ERRORS AND,

9    QUOTE, CHANGES IN RIGHTS DUE TO PASSAGE OF TIME.  SO THAT'S

10   NOT A TYPOGRAPHICAL ERROR.  THAT MEANS THEY PULLED TOGETHER

11   THE CHAIN OF TITLE DOCUMENTS AND REALIZED THEY DIDN'T HAVE

12   THE RIGHT TO SUE ON THESE DOCUMENTS ANYMORE -- ON THESE

13   WORKS ANYMORE.  AND WITH 34 WITHDRAWALS, WE ARE TALKING

14   ABOUT A REDUCTION OF DAMAGES CLOSE TO $5 MILLION.

15           THE COURT:  WELL, I UNDERSTAND THAT, BUT, I MEAN,

16   SEVEN-EIGHTHS OF THE 20 PERCENT APPEAR TO BE FINE.

17           MS. GOLINVEAUX:  BUT, YOUR HONOR, ONE-EIGHTH IS A

18   SIGNIFICANT PERCENT.

19           THE COURT:  WELL, I'M NOT SAYING THAT'S NOT

20   IMPORTANT GIVEN THE POTENTIAL STATUTORY DAMAGES THAT COULD

21   BE ATTACHED TO THAT.  BUT, OF COURSE, ONLY A PORTION OF

22   THOSE ARE ONES WHERE EVEN YOU WERE SUGGESTING THEY MAY NOT

23   HAVE THE RIGHT TO SUE ON.  OTHERS WERE JUST MISTAKES OF ONE

24   KIND OR ANOTHER.  SO ISN'T -- YOU KNOW, WOULD THIS SAMPLE

25   THAT YOU HAVE NOW BE ENOUGH TO PROCEED ON, YOU KNOW, AS FAR

                                                        42

EXHIBIT 11  PAGE 810

1    AS THE MAIN PORTION OF THE TRIAL IS CONCERNED?

2              MS. GOLINVEAUX:  YOUR HONOR, ABSOLUTELY NOT.  IF

3    WE HAD A ONE-EIGHTH REDUCTION IN THE 1500 WORKS THAT THEY

4    ARE NOW ALLEGING, THAT WOULD BE HUGELY SIGNIFICANT AND WE

5    ABSOLUTELY HAVE TO HAVE THE CHAIN OF TITLE DOCUMENTS IN

6    ORDER TO DETERMINE THAT.

7              THE COURT:  WELL, OKAY.  I GUESS I WASN'T CLEAR ON

8    MY QUESTION.  WHAT MR. MARENBERG WAS SUGGESTING, WHICH IS

9    SOMETHING THAT I THINK WE'VE ALL CONTEMPLATED AT ONE POINT

10   OR ANOTHER, IS, YOU KNOW, A TRIAL THAT DEALS WITH, AT LEAST

11   ON THIS CHAIN OF TITLE ISSUE, PROOF AS TO SOME OF THE WORKS

12   WITH THE BULK OF IT BEING LEFT, AT LEAST ON THAT ISSUE,

13   UNTIL LATER IF IT'S NECESSARY TO GET TO THAT POINT AND

14   HANDLED IN A MORE EFFICIENT MANNER THAN ONE WOULD NORMALLY

15   CONTEMPLATE DURING A TRIAL, IF YOU WANT TO CONTEST

16   PARTICULAR WORKS, DOESN'T THAT KIND OF STRUCTURE MAKE SENSE

17   AND WOULDN'T YOU HAVE ENOUGH NOW WITH THIS 20 PERCENT LESS

18   ONE-EIGHTH OF THAT 20 PERCENT TO PROCEED WITH THE MAIN

19   PORTION OF THE TRIAL?

20             MS. GOLINVEAUX:  SO LONG AS WE HAD THE ABILITY TO

21   RECEIVE THE REST OF THE DOCUMENTS AT THE RIGHT TIME IF THAT

22   WASN'T A STAGED -- IF JUDGE MATZ THINKS THAT THE MOST

23   EFFICIENT WAY TO DO THAT WOULD BE IN SOME KIND OF STAGED

24   TRIAL, THAT MIGHT MAKE SENSE, YOUR HONOR.

25             THE COURT:  ALL RIGHT.  HERE'S WHAT I WOULD LIKE

                                                           43

EXHIBIT 11  PAGE 811

1    YOU TO DO, AND I KNOW MR. LEDAHL WANTED TO RAISE SOMETHING

2    WITH ME SO I WANT TO HEAR THAT, BUT I WOULD LIKE TO TAKE A

3    RECESS IN A FEW MINUTES AND I WOULD LIKE TO HAVE YOU THINK

4    ABOUT THIS TOGETHER A LITTLE BIT AND SEE IF YOU CAN AT LEAST

5    SKETCH OUT AN APPROACH TO TRYING THIS CASE EFFICIENTLY

6    WITHOUT PRODUCING EVERYTHING NOW BUT PRESERVING VEOH'S RIGHT

7    TO HAVE ADDITIONAL MATERIAL PRODUCED LATER IF TRULY

8    NECESSARY AND APPROPRIATE.  YOU KNOW, I THINK BETTER FOR ME

9    AND JUDGE MATZ TO HAVE THE BENEFIT OF YOUR THINKING THAN FOR

10   HE AND I TO TRY TO HAVE AN UNFOCUSED DISCUSSION ABOUT THIS

11   AS BEST WE CAN OURSELVES.

12          MS. GOLINVEAUX:  I THINK THAT MAKES SENSE, YOUR

13   HONOR.

14          THE COURT:  OKAY.  MR. LEDAHL, DID YOU WANT TO

15   ADDRESS ANYTHING?

16          MR. LEDAHL:  ONLY, YOUR HONOR, I WAS GOING TO

17   POINT OUT THAT, AS THE COURT MIGHT PREDICT, WE HAVE EVERY

18   REASON TO BELIEVE THAT IN CHOOSING THE 20 PERCENT SAMPLE

19   VEOH UNDOUBTEDLY LOOKED FOR THE WORKS THEY THOUGHT THEY HAD

20   THE BEST CHANCE OF MAKING AN ARGUMENT ABOUT AND I THINK IT'S

21   TELLING WHAT WE SEE FROM THAT.

22          THE COURT:  OKAY.  ALL RIGHT.  SO WE WILL TAKE A

23   RECESS.  LET MY CLERK KNOW WHEN YOU ARE READY TO HAVE ME

24   COME BACK.

25          THE CLERK:  THE COURT IS IN RECESS.

44

EXHIBIT 11  PAGE 812

```
 1                    (RECESS.)

 2          THE CLERK:  THIS COURT IS AGAIN IN SESSION.

 3          MS. GOLINVEAUX:  YOUR HONOR, WE UNDERSTAND THE

 4   COURT'S DESIRE TO TRY TO COME UP WITH A CREATIVE SOLUTION

 5   HERE GIVEN THE NUMBER OF WORKS AT ISSUE.  WE HAVEN'T BEEN

 6   ABLE TO REACH OUR CLIENT.  SO WHAT I WOULD LIKE TO PROPOSE

 7   AND WHAT I PROPOSED TO MR. MARENBERG IS THAT WE ADJOURN THE

 8   HEARING FOR A DAY OR TWO WITH THE COURT'S PERMISSION, HAVE

 9   THE OPPORTUNITY TO DISCUSS WITH OUR CLIENT AND FURTHER MEET

10   AND CONFER WITH PLAINTIFFS AND THEN RE-ADJOURN WITH YOUR

11   HONOR PERHAPS TELEPHONICALLY IF THAT WOULD WORK.

12          THE COURT:  WELL, I THINK THAT MAKES A LOT OF

13   SENSE.  I WANT YOU TO HAVE PLENTY OF TIME TO THINK ABOUT

14   THIS BECAUSE THIS IS IMPORTANT AND I THINK IT'S TO

15   EVERYONE'S BENEFIT TO COME UP WITH A GOOD PRACTICAL SOLUTION

16   HERE.  SO JUST LET MY CLERK KNOW HOW THINGS ARE GOING AND

17   WHEN YOU NEED SOME INVOLVEMENT FROM ME.

18          MS. GOLINVEAUX:  OKAY.

19          THE COURT:  OKAY.

20          MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

21          MR. MARENBERG:  JUST SO THE COURT HAS THE BENEFIT

22   OF WHAT WE'VE DISCUSSED.

23          THE COURT:  SURE.

24          MR. MARENBERG:  WE WERE ABLE TO REACH OUR CLIENT.

25   OBVIOUSLY, IT WILL ALL BE SUBJECT TO FURTHER DISCUSSIONS,
```
                                                          45

EXHIBIT 11  PAGE 813

1    BUT THE IDEA THAT WE HAD IS BASED ON OUR REVIEW SO FAR, WE

2    HAVE -- THEY SAID WE SHOULD KNOW THE EXACT NUMBER OF

3    INFRINGED WORKS.  WE DO.  IT'S 1990.

4            THE COURT:  OKAY.

5            MR. MARENBERG:  THAT'S THE REASON WHY I SAID 2000.

6    AND WHAT WE PROPOSED IS THAT FOR PURPOSES -- IS THAT WE

7    BIFURCATE THE PROCEEDINGS IN THE FOLLOWING WAY.  FOR

8    PURPOSES OF LIABILITY AND DETERMINING AN AMOUNT PER WORK OF

9    STATUTORY DAMAGES THAT WE WOULD HAVE A STIPULATION THAT SAID

10   AT LEAST 1500 DIFFERENT WORKS WERE INFRINGED.  THAT'S -- WE

11   PICKED THAT NUMBER PLAYING OFF OF THE -- WELL, THE BEST CASE

12   IN OUR VIEW THEY'VE GOT ONE-EIGHTH, BUT NOT SO RANDOM

13   SAMPLE, IN OUR VIEW CHERRY PICKED WORKS, AND THAT DISCOUNT

14   OF THE NUMBER OF WORKS WOULD BE FAR GREATER THAN ONE-EIGHTH.

15   IT'S ALMOST ONE-QUARTER.  AND SO THAT'S WHY WE THOUGHT AT

16   LEAST 1500 WAS THE RIGHT NUMBER OR A FAIR NUMBER BASED ON

17   WHAT WE'VE SEEN SO FAR IN THE RANDOM SAMPLE, OR THE NOT SO

18   RANDOM SAMPLE BUT THE DISCOVERY TO DATE, BUT THAT WAS A FAIR

19   NUMBER FOR BOTH SIDES TO USE FOR PURPOSES OF TRIAL.

20           AND THEN THERE WOULD BE A PROCEEDING POST-VERDICT

21   ONCE THE AMOUNT PER WORK WERE DETERMINED BY THE TRIER OF

22   FACT AS TO COMING UP WITH THE FINAL NUMBER AND AS TO WHETHER

23   ANY INDIVIDUAL WORK WAS ENTITLED TO GET THAT PER WORK

24   STATUTORY FEE.  THEY WOULD HAVE THE OPPORTUNITY IN A

25   POST-VERDICT PROCEEDING TO CHALLENGE ANY PARTICULAR WORK,

                                                            46

EXHIBIT 11  PAGE 814

1    AND THE DISCOVERY THAT WOULD BE PERMITTED IN ORDER TO DO

2    THAT AT THAT POINT IN TIME WOULD BE SUBJECT TO DETERMINATION

3    EITHER BY YOU, OR IF THERE WAS A SPECIAL MASTER APPOINTED TO

4    DO THAT REVIEW, BY THAT SPECIAL MASTER.  THAT'S THE KIND OF

5    THING THAT WE WERE ENVISIONING, THAT WE WOULDN'T PUT ON 1990

6    DIFFERENT CHAIN OF TITLES.

7          THE COURT:  ALL RIGHT.  WELL, GOOD.  I MEAN, I

8    THINK THAT'S EXACTLY THE KIND OF DISCUSSION THAT YOU SHOULD

9    BE HAVING.  LET ME WHILE YOU'RE HERE JUST MENTION SOMETHING

10   TO YOU.  I CAME ACROSS -- I'VE BEEN FRUSTRATED A LITTLE BIT

11   AT HOW LITTLE HAS BEEN WRITTEN ABOUT STATUTORY DAMAGES, AND

12   I CAME ACROSS A FORTHCOMING LAW REVIEW ARTICLE ABOUT IT BY

13   PAMELA SAMUELSON AND TARA WHEATLAND.  IF YOU'D LIKE, I CAN

14   HAVE MY CLERK GIVE YOU A COPY.  WOULD YOU LIKE THAT?  I'M

15   NOT ENDORSING THIS.  IT JUST IS A PRETTY THOROUGH ANALYSIS

16   AND I THOUGHT IT MIGHT SAVE YOU SOME TIME AND HELP EVERYBODY

17   IN THINKING ABOUT SOME OF THOSE ISSUES.  SO IF YOU WAIT A

18   FEW MINUTES, SHE'LL BRING YOU OUT EACH A COPY.

19         ANYTHING ELSE WE NEED TO TAKE UP?  I'M GOING TO

20   SUBMIT BOTH OF THESE MATTERS.  ONE I WILL AWAIT HEARING FROM

21   YOU AS TO HOW YOUR DISCUSSIONS ARE GOING.  THE OTHER I WILL

22   RULE ON IN A FEW DAYS.  ALL RIGHT?

23         MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

24         MS. RANAHAN:  THANK YOU, YOUR HONOR.

25         THE COURT:  OKAY.

47

EXHIBIT 11  PAGE 815

```
 1              MR. MARENBERG:  ONE QUESTION.

 2              THE COURT:  YES.

 3              MR. MARENBERG:  SHOULD WE DEFER -- OBVIOUSLY,

 4    DURING YOUR COLLOQUY WITH MR. LEDAHL YOU MENTIONED THAT WE

 5    HAVE AN ANSWER TO EVERY ONE OF THE THINGS --

 6              THE COURT:  RIGHT.

 7              MR. MARENBERG:  -- THAT THEY MENTIONED IN THEIR

 8    SUPPLEMENTAL BRIEF.  SHOULD WE DEFER FILING THAT BRIEF UNTIL

 9    WE RESOLVE THIS --

10              THE COURT:  ALL RIGHT.  IS THAT GOING TO HELP YOUR

11    DISCUSSIONS OR CAN WE DEFER THAT?  I WOULD LIKE -- IF I'M

12    GOING TO HAVE TO RULE ON THIS, I WOULD LIKE TO HAVE THE

13    RECORD COMPLETED IN THAT RESPECT, BUT I'D LIKE NOT TO PUT

14    PEOPLE TO UNNECESSARY WORK IF WE CAN AVOID IT.

15              MS. GOLINVEAUX:  I THINK WE COULD HAVE THE

16    DISCUSSION FIRST, YOUR HONOR.

17              THE COURT:  OKAY.  SO WHAT WE WILL DO THEN IS WE

18    WILL JUST WAIT AND SEE WHAT HAPPENS AND WE'LL ADDRESS IT

19    THEN.  OKAY.  THANK YOU.

20              MR. LEDAHL:  THANK YOU, YOUR HONOR.

21              (CONCLUSION OF RECORDED MATERIAL.)

22

23

24

25
                                                        48
```

```
1                    TRANSCRIPTIONIST CERTIFICATE

2

3           I, DINA L. HARAND, DO HEREBY CERTIFY:

4           THAT THE FOREGOING AUDIOTAPED PROCEEDING WAS

5    RECEIVED AND TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION

6    AND SUPERVISION;

7           AND I HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT

8    IS A FULL, TRUE AND CORRECT TRANSCRIPT OF THE AUDIOTAPED

9    RECORDING GIVEN TO ME.

10          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

11   NOR RELATED TO ANY PARTY TO SAID ACTION, NOR ANYWISE

12   INTERESTED IN THE OUTCOME THEREOF.

13          IN WITNESS THEREOF, I HAVE HEREUNTO SUBSCRIBED MY

14   NAME THIS 1ST DAY OF JULY, 2009.

15

16

17              DINA L. HARAND, CSR #10152_

18              TRANSCRIPTIONIST

19

20

21

22

23

24

25
                                                      49
```